APPEAL CASE NOS. 13-56243, 13-56244
CROSS-APPEAL CASE NOS. 13-56257, 13-56259

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

LAURA SIEGEL LARSON

*Plaintiff, Counterclaim-Defendant, Appellant, and Cross-Appellee.*

v.

WARNER BROS. ENTERTAINMENT INC., DC COMICS

*Defendants, Counterclaimants, Appellees, and Cross-Appellants.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
THE HONORABLE OTIS D. WRIGHT II, JUDGE
CASE NOS. CV-04-8400 ODW (RZX), CV-04-8776 (RZX)

_____

**APPELLANT LAURA SIEGEL LARSON'S EXCERPTS OF RECORD
VOL. 1 OF 16**

_____

TOBEROFF & ASSOCIATES, P.C.
Marc Toberoff
 *mtoberoff@ipwla.com*
Keith G. Adams
 *kadams@toberoffandassociates.com*
22337 Pacific Coast Highway, #348
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Plaintiff-Appellant, Laura  Siegel
Larson, individually and as personal
representative of the Estate of Joanne Siegel*

# INDEX TO EXCERPTS OF RECORD (Volume 1)

*Larson v. Warner Bros. Entertainment Inc. et al.,*
CD Cal Case No. 04-CV-08400

| Docket No. | Filing Date | Document Title | Vol. | Page |
|---|---|---|---|---|
| 735 | 6/18/13 | 59(e) Amended Judgment | 1 | 1 |
| 734 | 6/18/13 | 59(e) Order | 1 | 6 |
| 724 | 4/18/13 | "Final Judgment" In Superman | 1 | 8 |
| 723 | 4/18/13 | Order Granting Motion For Summary Judgment Re: Superboy And The Superman Ads | 1 | 12 |
| 717 | 3/20/13 | Order Granting In Part Defendant's Motion For Summary Judgment | 1 | 23 |

## INDEX TO EXCERPTS OF RECORD (all volumes)

| Docket No. | Filing Date | Document Title | Vol. | Page |
|---|---|---|---|---|
| 735 | 6/18/13 | 59(e) Amended Judgment | 1 | 1 |
| 734 | 6/18/13 | 59(e) Order | 1 | 6 |
| 724 | 4/18/13 | "Final Judgment" In Superman | 1 | 8 |
| 723 | 4/18/13 | Order Granting Motion For Summary Judgment Re: Superboy And The Superman Ads | 1 | 12 |
| 717 | 3/20/13 | Order Granting In Part Defendant's Motion For Summary Judgment | 1 | 23 |
| 714 | 3/12/13 | Order Granting Plaintiff Leave to File A Sur-Reply | 2 | 39 |
| 740 | 7/17/13 | Defendants Notice Of Cross-Appeal | 2 | 41 |
| 738 | 7/16/13 | Plaintiff's Notice of Appeal | 2 | 43 |
| 595 | 10/30/09 | Order on Motion for Reconsideration | 2 | 45 |
| 560 | 8/12/09 | Order on Additional Issues | 2 | 87 |
| 293 | 3/26/08 | Order on the Parties' Cross-Motions for Summary Judgment | 2 | 186 |
| 9th Cir. Case 11-55863, | 1/10/13 | Memorandum Disposition [Of Prior Appeal] | 2 | 272 |

| 70-1 | | | | |
|---|---|---|---|---|
| 674 | 6/15/11 | Defendant's Prior Notice of Cross-Appeal | 2 | 278 |
| 671 | 5/27/11 | Plaintiff's Prior Notice of Appeal | 2 | 280 |
| 669 | 5/17/11 | Judgment | 2 | 282 |
| 667 | 5/17/11 | Order Granting Plaintiff's Motion for Entry of Judgment Pursuant to Rule 54(b) | 2 | 285 |
| 664 | 5/5/11 | Order Vacating March 15, 2011 Judgment and Striking Superfluous Allegations from Counterclaim | 2 | 287 |
| 659 | 3/15/11 | Order Granting rule 54(b) Motion | 2 | 288 |
| 656 | 3/3/11 | Answer to Second Amended Counterclaims | 2 | 292 |
| 646 | 2/17/11 | Second Amended Counterclaims | 3 | 323 |
| 645 | 2/17/11 | Answer to Third Amended Complaint | 3 | 361 |
| 644 | 2/3/11 | Third Amended Complaint | 3 | 374 |
| 733 | 6/17/13 | Plaintiff's 59(e) Reply | 3 | 399 |
| 732 | 6/5/13 | Defendants' 59(e) Opposition | 3 | 416 |
| 731 | 5/16/13 | Plaintiff's 59(e) Motion | 3 | 437 |
| 731-1 | 5/16/13 | Plaintiff's Proposed 59(e) Order | 3 | 468 |
| 731-2 | 5/16/13 | Plaintiff's Proposed 59(e) Judgment | 3 | 470 |
| 730 | 5/16/13 | Declaration of Patrick T. Perkins In | 3 | 475 |

iii

| | | Support of Defendants' Reply In Support Of Application to Tax Costs | | |
|---|---|---|---|---|
| 730 | 5/16/13 | *Exhibit 1:  Invoice For Steranko Deposition* | 3 | 479 |
| 730 | 5/16/13 | *Exhibit 2:  Invoice For Evanier Deposition* | 3 | 481 |
| 730 | 5/16/13 | *Exhibit 3:  Invoice for Lewellen Deposition* | 3 | 483 |
| 730 | 5/16/13 | *Exhibit 4:  Invoice for Larson Deposition* | 3 | 485 |
| 729 | 5/14/13 | Defendants' Reply In Support of Application to Tax Costs | 3 | 487 |
| 729-1 | 5/14/13 | Declaration of Brian Pearl In Support of Defendants' Reply in support of Application to Tax Costs | 3 | 498 |
| 729-1 | 5/14/13 | *Exhibit A:  Transcript Cover Sheet for Peary Deposition* | 3 | 501 |
| 729-1 | 5/14/13 | *Exhibit B:  Transcript Cover Sheet for Peavy Deposition* | 3 | 504 |
| 729-1 | 5/14/13 | *Exhibit C:  Transcript Cover Sheet for Feiffer Deposition* | 3 | 507 |
| 729-1 | 5/14/13 | *Exhibit D: Transcript Cover Sheet for Steranko Deposition* | 3 | 511 |
| 729-1 | 5/14/13 | *Exhibit E:  Transcript Cover Sheet for  Evanier Deposition* | 3 | 514 |
| 729-1 | 5/14/13 | *Exhibit F:  Transcript Cover Sheet* | 3 | 518 |

|  |  | for Lewellen Deposition |  |  |
|---|---|---|---|---|
| 729-1 | 5/14/13 | *Exhibit G: Transcript Cover Sheet for Larson Deposition* | 3 | 522 |
| 729-1 | 5/14/13 | *Exhibit H: Transcript Cover Sheet for Halloran Deposition* | 3 | 526 |
| 722 | 4/4/13 | Plaintiff's Supplemental Brief re: "Ads" and "Superboy" | 3 | 530 |
| 722-1 | 4/4/13 | Declaration of Keith Adams In Support Of Plaintiff's Supplemental Brief re: "Ads" and "Superboy" | 3 | 549 |
| 722-1 | 4/4/13 | *Exhibit 1: Excerpts from April 12, 1947 Findings of Fact and Conclusions of Law* | 3 | 553 |
| 722-1 | 4/4/13 | *Exhibit 2: October 19, 2001 letter from Kevin Marks to John Schulman* | 3 | 560 |
| 722-1 | 4/4/13 | *Exhibit 3: October 26, 2001 letter from Schulman to Marks* | 3 | 566 |
| 722-1 | 4/4/13 | *Exhibit 4: February 1, 2002 letter from Patrick Perkins to Marks* | 4 | 574 |
| 722-1 | 4/4/13 | *Exhibit 5: November 8, 2002 Notice of Termination re: Superboy* | 4 | 631 |
| 722-1 | 4/4/13 | *Exhibit 6: March 23, 2006 Summary Judgment Order in Superboy Case* | 4 | 644 |
| 722-1 | 4/4/13 | *Exhibit 7: June 12, 2006 Affidavit of Damon Bonesteel* | 4 | 661 |

| 722-1 | 4/4/13 | *Exhibit 8:  Excerpts from DC's April 30, 2007 Motion for Summary Judgment* | 4 | 672 |
|---|---|---|---|---|
| 722-1 | 4/4/13 | *Exhibit 9:  Excerpts from DC's June 25, 2007 Reply re: Summary Judgment* | 4 | 689 |
| 722-1 | 4/4/13 | *Exhibit 10:  September 10, 2007 Affidavit of Donna Josephson* | 4 | 714 |
| 722-1 | 4/4/13 | *Exhibit 11:  Excerpts from September 17, 2007 Oral Argument in Superman and Superboy Cases* | 4 | 717 |
| 722-1 | 4/4/13 | *Exhibit 12:  March 5, 2012 Notice of Termination re: Superman Advertisements* | 4 | 756 |
| 722-1 | 4/4/13 | *Exhibit 13:  DC's Fourth Brief on Cross-Appeal in the Siegel Appeal, filed on June 19, 2012* | 4 | 762 |
| 722-1 | 4/4/13 | *Exhibit 14:  September 5, 2012 Oral Argument in the Siegel Appeal* | 4 | 798 |
| 722-2 | 4/4/13 | Declaration of Laura Siegel Larson In Support Of Plaintiff's Supplemental Brief re: "Ads" and "Superboy" | 4 | 840 |
| 721 | 4/4/13 | Defendants' Supplemental Brief re: "Ads" and "Superboy" | 4 | 842 |
| 715 | 3/18/13 | Plaintiff's Court Authorized Sur-Reply re: Defendants' Motion for Summary Judgment | 4 | 867 |

| 713 | 3/8/13 | Defendants' Response to Plaintiffs Genuine Issues and Additional Facts re: Defendants' Motion for Summary Judgment | 5 | 873 |
|---|---|---|---|---|
| 711 | 3/8/13 | Defendants' Reply In Support Of Defendants' Motion for Summary Judgment | 5 | 943 |
| 711-1 | 3/8/13 | Declaration of Matthew T. Kline In Support Of Defendants' Motion for Summary Judgment | 5 | 961 |
| 711-2 | 3/8/13 | *Exhibit A: Appellant Laura Siegel Larson's First Brief On Cross-Appeal, filed in Ninth Circuit Case Nos. 11-55863, 11-56034, DN 12* | 5 | 964 |
| 711-2 | 3/8/13 | *Exhibit B: Appellant Laura Siegel Larson's Third Brief On Cross-Appeal, filed in Ninth Circuit Case Nos. 11- 55863, 11-56034, DN 43-1* | 5 | 1048 |
| 711-2 | 3/8/13 | *Exhibit C: Reply Brief Of Cross-Appellants And Appellees Warner Bros. Entertainment Inc. And DC Comics, filed in Ninth Circuit Case Nos. 11-55863, 11-56034, DN 49* | 6 | 1139 |
| 711-2 | 3/8/13 | *Exhibit D: Letter from Marc Toberoff to Daniel Petrocelli, dated March 7, 2013.* | 6 | 1176 |
| 711-2 | 3/8/13 | *Exhibit E: Excerpt from the transcript of the deposition of Laura Siegel Larson, dated August 1,* | 6 | 1179 |

| | | | | |
|---|---|---|---|---|
| | | *2006.* | | |
| 711-2 | 3/8/13 | *Exhibit F: Excerpt from Plaintiffs Joanne Siegel And Laura Siegel Larson's Responses To Defendant DC Comics' First Set Of Interrogatories No. 1-19, dated January 25, 2006.* | 6 | 1185 |
| 709 | 3/4/13 | Plaintiff's Opposition to Defendants' Motion for Summary Judgment | 6 | 1192 |
| 709-1 | 3/4/13 | Plaintiff's Statement of Genuine Issues and Additional Facts re: Defendants' Motion for Summary Judgment | 6 | 1224 |
| 709-2 | 3/4/13 | Declaration of Keith Adams In Support Of Plaintiff's Opposition to Defendants' Motion for Summary Judgment | 6 | 1252 |
| 709-2 | 3/4/13 | *Exhibit 1: October 19, 2001 letter from Kevin Marks to John Schulman* | 6 | 1257 |
| 709-2 | 3/4/13 | *Exhibit 2: October 26, 2001 letter from Schulman to Marks* | 6 | 1263 |
| 709-2 | 3/4/13 | *Exhibit 3: February 1, 2002 letter from Patrick Perkins to Marks* | 6 | 1271 |
| 709-2 | 3/4/13 | *Exhibit 4: May 9, 2002 letter from Joanne Siegel to Richard D. Parsons* | 6 | 1328 |
| 709-2 | 3/4/13 | *Exhibit 5: May 22, 2002 letter from* | 6 | 1331 |

| | | *Parsons to Joanne Siegel* | | |
|---|---|---|---|---|
| 709-2 | 3/4/13 | *Exhibit 6:  September 21, 2002 letter from the Siegels to Marks* | 6 | 1332 |
| 709-2 | 3/4/13 | *Exhibit 7: November 8, 2002 Notice of Termination re: Superboy* | 6 | 1333 |
| 709-2 | 3/4/13 | *Exhibit 8:  Letter sent by Ari Emanuel to Bruce Rosenblum* | 6 | 1346 |
| 709-2 | 3/4/13 | *Exhibit 9:  Excerpts from August 1, 2006 deposition of Laura Siegel Larson* | 6 | 1347 |
| 709-2 | 3/4/13 | *Exhibit 10:  Excerpts from October 7, 2006 deposition of Kevin Marks* | 6 | 1354 |
| 709-2 | 3/4/13 | *Exhibit 11:  Excerpts from November 2, 2006 deposition of Ari Emanuel* | 6 | 1388 |
| 709-2 | 3/4/13 | *Exhibit 12:  Excerpts from November 11, 2006 deposition of Paul Levitz* | 6 | 1402 |
| 709-2 | 3/4/13 | *Exhibit 13:  Excerpts from Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, filed May 29, 2007* | 6 | 1416 |
| 709-2 | 3/4/13 | *Exhibit 14:  October 23, 2007 Order* | 7 | 1436 |
| 709-2 | 3/4/13 | *Exhibit 15:  March 5, 2012 Notice of Termination re: Superman Advertisements* | 7 | 1441 |

| 709-2 | 3/4/13 | *Exhibit 16: DC's Second Brief on Cross-Appeal in the Siegel Appeal, filed on March 23, 2012* | 7 | 1447 |
|---|---|---|---|---|
| 709-2 | 3/4/13 | *Exhibit 17: Larson's Third Brief on Cross-Appeal in the Siegel Appeal, filed on May 24, 2012.* | 7 | 1506 |
| 709-2 | 3/4/13 | *Exhibit 18: DC's Fourth Brief on Cross-Appeal in the Siegel Appeal, filed on June 19, 2012* | 7 | 1562 |
| 709-2 | 3/4/13 | *Exhibit 19: September 5, 2012 Oral Argument in the Siegel Appeal* | 7 | 1579 |
| 709-2 | 3/4/13 | *Exhibit 20: January 29, 2013 Letter from Daniel Petrocelli to Marc Toberoff* | 7 | 1621 |
| 709-2 | 3/4/13 | *Exhibit 21: February 9, 2013 Letter from Toberoff to Petrocelli* | 7 | 1623 |
| 709-2 | 3/4/13 | *Exhibit 22: February 12, 2013 Letter from Petrocelli to Toberoff* | 7 | 1626 |
| 709-2 | 3/4/13 | *Exhibit 23: Excerpts from DC's Statement of Genuine Issue re: Motion for Summary Judgment in DC Comics, filed on February 16, 2013.* | 7 | 1628 |
| 709-2 | 3/4/13 | *Exhibit 24: February 27, 2013 Letter from Toberoff to Petrocelli* | 7 | 1632 |
| 709-2 | 3/4/13 | *Exhibit 25: February 28, 2013 Letter from Petrocelli to Toberoff* | 7 | 1633 |
| 708 | 2/25/13 | Joint Status Report Re: The Superman and Superboy Cases | 7 | 1635 |

| 702 | 2/7/13 | Defendants' Motion for Summary Judgment | 7 | 1651 |
|---|---|---|---|---|
| 702-1 | 2/7/13 | Declaration of Daniel M. Petrocelli In Support Of Defendants' Motion for Summary Judgment | 7 | 1663 |
| 702-2 | 2/7/13 | *Exhibit A: Email Correspondence between Parties Counsel re: Motion for Summary Judgment* | 7 | 1666 |
| 702-2 | 2/7/13 | *Exhibit B: October 19, 2001 letter from Kevin Marks to John Schulman* | 7 | 1683 |
| 702-2 | 2/7/13 | *Exhibit C: Excerpts from DC's Reply In Support Of Motion for Partial Summary Judgment on Its First and Third Claims For Relief in Pacific Pictures case, Case No. CV-10-3633, DN 468* | 7 | 1691 |
| 702-2 | 2/7/13 | *Exhibit D: Order Granting Plaintiff's Motion for Partial Summary Judgment and Denying Defendants' Cross-Motion in Pacific Pictures case, Case No. CV-10-3633, DN 507* | 7 | 1694 |
| 702-3 | 2/7/13 | Defendants' Proposed Statement of Uncontroverted Facts and Conclusions of Law | 7 | 1713 |
| 702-4 | 2/7/13 | Defendant's Proposed Summary Judgment Order | 7 | 1718 |
| 702-5 | 2/7/13 | Defendants' Proposed Judgment | 7 | 1720 |

| 681 | 12/5/11 | Order Certifying and Forwarding Supplemental Record | 7 | 1724 |
|---|---|---|---|---|
| 680 | 12/2/11 | Joint Stipulation To Certify And Forward Supplemental Record | 7 | 1726 |
| 680 | 12/2/11 | *Exhibit A: Excerpt from October 7, 2006 deposition of Kevin Marks* | 8 | 1729 |
| 602 | 12/21/09 | Joint Status Report | 8 | 1773 |
| 373-3 | 9/29/08 | Declaration of Dennis Kitchen re: Defendants' September 26, 2008 Objections | 8 | 1798 |
| 373-3 | 9/29/08 | *Exhibit A: November 12, 1934 Correspondence from Jerome Siegel to Russell Keaton* | 8 | 1801 |
| 364-2 | 9/22/08 | Declaration of Marc Toberoff re: Objections to September 18, 2008 Objections and Exhibit A (Thompson & Thompson Report) | 8 | 1714 |
| 364-1 | 9/22/08 | *Exhibit A: February 1996 Thompson & Thompson Copyright Report re: Superman* | 8 | 1817 |
| 361-1 | 9/18/08 | Exhibit B: Declaration of Michael Bergman re: Objections to Plaintiffs' July 28, 2008 Brief | 8 | 1827 |
| 361-3 | 9/18/08 | *Exhibit C: Copyright Registrations for the First Two Weeks of "Superman" Newspaper Strips* | 8 | 1830 |
| 353-1 | 8/5/08 | Declaration of Michael Bergman re: | 8 | 1867 |

| | | Response in Objection to Motion | | |
|---|---|---|---|---|
| 353-2 | 8/5/08 | *Exhibit A – January 10, 1938 letter from Vin Sullivan to Jerome Siegel* | 8 | 1871 |
| 353-2 | 8/5/08 | *Exhibit B – September 28, 1938 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1873 |
| 353-2 | 8/5/08 | *Exhibit C – September 30, 1938 letter from Jerome Siegel to J.S. Liebowitz* | 8 | 1877 |
| 353-2 | 8/5/08 | *Exhibit D – April 21, 1938 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1879 |
| 353-2 | 8/5/08 | *Exhibit E – January 23, 1940 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1882 |
| 353-2 | 8/5/08 | *Exhibit F – February 8, 1940 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1885 |
| 353-2 | 8/5/08 | *Exhibit G – May 2, 1940 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1887 |
| 353-2 | 8/5/08 | *Exhibit H – November 5, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1890 |
| 353-2 | 8/5/08 | *Exhibit I – January 22, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1893 |
| 353-2 | 8/5/08 | *Exhibit J – January 29, 1940 letter from J.S. Liebowitz to Jerome* | 8 | 1896 |

| | | *Siegel* | | |
|---|---|---|---|---|
| 353-2 | 8/5/08 | *Exhibit K – March 18, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1899 |
| 353-2 | 8/5/08 | *Exhibit L – November 4, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1901 |
| 353-2 | 8/5/08 | *Exhibit M – February 19, 1941 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1903 |
| 353-3 | 8/5/08 | *Exhibit N – November 12, 1942 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1906 |
| 353-3 | 8/5/08 | *Exhibit O – February 21 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1908 |
| 353-3 | 8/5/08 | *Exhibit P – February 3, 1947 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1910 |
| 353-3 | 8/5/08 | *Exhibit Q – Exhibit showing 1937-1947 payments to Siegel and Shuster* | 8 | 1914 |
| 353-3 | 8/5/08 | *Exhibit R – Renewal Certificates for Post-March 1, 1938 Superman Works* | 8 | 1916 |
| 347 | 7/28/08 | Declaration of Marc Toberoff re: Plaintiffs' Memorandum of Points and Authorities in Opposition and Exhibits A-JJ | 8 | 1946 |

| 347-2 | 7/28/08 | *Exhibit A – Seven-Page Superman Synopsis* | 8 | 1951 |
|---|---|---|---|---|
| 347-2 | 7/28/08 | *Exhibit B – November 21, 1974 letter from Jerome Siegel to Laura Siegel* | 8 | 1959 |
| 347-2 | 7/28/08 | *Exhibit C – June 12, 1934 letter from Jerome Siegel to Russell Keaton* | 8 | 1962 |
| 347-2 | 7/28/08 | *Exhibit D – Superman story illustrated by Russell Keaton* | 8 | 1964 |
| 347-3 | 7/28/08 | *Exhibit E – Continuity for 15 daily "Superman" Newspaper Strips, c. 1934* | 8 | 1974 |
| 347-4 | 7/28/08 | *Exhibit G – Action Comics, No. 2* | 8 | 1981 |
| 347-5 | 7/28/08 | *Exhibit H – Action Comics, No. 3* | 8 | 1990 |
| 347-6 | 7/28/08 | *Exhibit I – Action Comics, No. 4* | 8 | 1999 |
| 347-7 | 7/28/08 | *Exhibit J – Action Comics, No. 5* | 8 | 2008 |
| 347-8 | 7/28/08 | *Exhibit K – Action comics, No. 6* | 8 | 2015 |
| 347-9 | 7/28/08 | *Exhibit L – Excerpts from Superman, No. 1* | 8 | 2024 |
| 347-9 | 7/28/08 | *Exhibit M – June 21, 1941 Saturday Evening Post Article, "Up, Up and Awa-a-y"* | 9 | 2029 |
| 347-9 | 7/28/08 | *Exhibit N – Excerpts from Trial Transcript of 1947 Action* | 9 | 2036 |

| 347-9 | 7/28/08 | *Exhibit O – December 4, 1937 Agreement between Jerome Siegel, Joseph Shuster, and Detective Comics, Inc.* | 9 | 2050 |
|-------|---------|------|---|------|
| 347-9 | 7/28/08 | *Exhibit P – September 22, 1938 Agreement between Jerome Siegel, Joseph Shuster, and Detective Comics, Inc.* | 9 | 2053 |
| 347-9 | 7/28/08 | *Exhibit Q – Seprember 22, 1938 Agreement between the McClure Newspaper Syndicate, Jerome Siegel, Joseph Shuster, and Detective Comics, Inc.* | 9 | 2057 |
| 347-9 | 7/28/08 | *Exhibit R – Excerpts from "The Creation of a Superhero" by Jerome Siegel* | 9 | 2061 |
| 347-9 | 7/28/08 | *Exhibit S – April 18, 1938 letter from Jerome Siegel to J.S. Liebowitz* | 9 | 2068 |
| 347-9 | 7/28/08 | *Exhibit T – September 7, 1938 letter from Chas Lounsbury to Jerome Siegel* | 9 | 2070 |
| 347-9 | 7/28/08 | *Exhibit U – Excerpts from Superman: The Dailies* | 9 | 2073 |
| 347-9 | 7/28/08 | *Exhibit V – Copyright Registration Certificate for Superman No. 1* | 9 | 2080 |
| 347-10 | 7/28/08 | *Exhibit W – Excerpts from the United States Copyright Office Catalogue of Copyright Entries* | 9 | 2083 |

| 347-10 | 7/28/08 | *Exhibit X – March 1, 1973 Affidavit of Jerome Siegel* | 9 | 2098 |
|--------|---------|---|---|------|
| 347-10 | 7/28/08 | *Exhibit Y – Excerpts from Superman: Sunday Classics* | 9 | 2110 |
| 347-10 | 7/28/08 | *Exhibit Z - Excerpts from Superman: The Dailies* | 9 | 2119 |
| 347-11 | 7/28/08 | *Exhibit AA – Excerpts from the February 27, 2007 deposition of Mark Waid* | 9 | 2130 |
| 347-11 | 7/28/08 | *Exhibit BB – Article "K-Metal: The Lost Superman Tale" by Mark Waid* | 9 | 2153 |
| 347-11 | 7/28/08 | *Exhibit CC – Unpublished 26-page Superman story* | 9 | 2161 |
| 347-12 | 7/28/08 | *Exhibit DD – Checks and Bank Statements from the American Artists League* | 9 | 2175 |
| 347-12 | 7/28/08 | *Exhibit EE – Excerpts from the business ledger of Jerome Siegel* | 9 | 2196 |
| 347-12 | 7/28/08 | *Exhibit FF – Excerpts from the July 8, 1969 deposition of Jerome Siegel* | 9 | 2204 |
| 347-12 | 7/28/08 | *Exhibit GG – Excerpts from The Story Behind Superman No. 1 by Jerome Siegel* | 9 | 2208 |
| 340 | 7/21/08 | Declaration of Michael Bergman in Support of Defendants' Brief on Additional Issues | 9 | 2211 |
| 340-1 | 7/21/08 | *Exhibit A:  December 19, 1939* | 9 | 2213 |

| | | | | |
|---|---|---|---|---|
| | | *Agreement between Jerome Siegel, Joseph Shuster and Detective Comics, Inc.* | | |
| 340-1 | 7/21/08 | *Exhibit B:  April 8, 1938 letter from J.S. Liebowitz to Jerome Siegel* | 9 | 2217 |
| 337 | 7/21/08 | Declaration of Keith Adams re: Plaintiff's Memorandum of Points and Authorities Pursuant to the Court's July 3, 2008 Order | 9 | 2219 |
| 337-2 | 7/21/08 | *Exhibit A:  Stipulation re: Scheduling Order and Order Thereon, entered by the Court on March 20, 2007* | 9 | 2227 |
| 337-2 | 7/21/08 | *Exhibit G:  January 12, 2007 Expert Report of James Steranko* | 9 | 2235 |
| 337-2 | 7/21/08 | *Exhibit H:  January 12, 2007 Expert Report of Mark Evanier* | 9 | 2259 |
| 337-3 | 7/21/08 | *Exhibit I:  February 9, 2007 Expert Rebuttal Report of Mark Evanier* | 9 | 2284 |
| 337-3 | 7/21/08 | *Exhibit J:  Excerpts from the March 30, 2007 Deposition of Mark Evanier* | 10 | 2316 |
| 337-3 | 7/21/08 | *Exhibit M:  Excerpts from "The Creation of a Superhero" by Jerome Siegel* | 10 | 2331 |
| 290 | 2/21/08 | Stipulation for Order Requesting Status Conference and Briefing Schedule | 10 | 2336 |

| | | | | |
|---|---|---|---|---|
| 196 | 6/25/07 | Reply Declaration of Marc Toberoff In Support Of Plaintiff's Motion for Partial Summary Judgment | 10 | 2340 |
| 196 | 6/25/07 | *Exhibit A:  Tolling Agreement Between Plaintiffs and DC Comics, dated April 6, 2000* | 10 | 2343 |
| 196 | 6/25/07 | *Exhibit B:  October 28, 2002 letter from Joanne Siegel and Laura Siegel Larson to Lillian J. Laserson* | 10 | 2349 |
| 196 | 6/25/07 | *Exhibit C:  Excerpts from listings from the Library of Congress' Catalog of Copyright Entries for the years 1939, 1940 and 1976* | 10 | 2352 |
| 196 | 6/25/07 | *Exhibit D:  Plaintiff's Memorandum of Points and Authorities In Support of Motion to Compel Production of Documents* | 10 | 2367 |
| 196 | 6/25/07 | *Exhibit E:  Excerpts from November 7, 2006 Deposition of Paul Levitz* | 10 | 2474 |
| 196 | 6/25/07 | *Exhibit F:  Excerpts from October 7, 2006 Deposition of Kevin Marks, Esq.* | 10 | 2479 |
| 196 | 6/25/07 | *Exhibit G: Excerpts from August 6, 2006 Deposition of Plaintiff Laura Siegel Larson* | 10 | 2485 |
| 196 | 6/25/07 | *Exhibit H:  Defendants' Answer to First Amended Complaint* | 10 | 2491 |
| 194 | 6/25/07 | Plaintiff's Reply In Support Of | 10 | 2508 |

| | | Motion for Partial Summary Judgment | | |
|---|---|---|---|---|
| 184 | 5/29/07 | Declaration of Michael Bergman re: Plaintiffs' Motion for Summary Judgment | 10 | 2590 |
| 184 | 5/29/07 | *Exhibit A: Copyright Registration and Excerpts from "The Creation of a Superhero" by Jerome Siegel* | 10 | 2595 |
| 184 | 5/29/07 | *Exhibit B: June 12, 1934 letter from Jerome Siegel to Russell Keaton* | 11 | 2608 |
| 184 | 5/29/07 | *Exhibit D: March 1, 1938 Assignment from Jerome Siegel and Joseph Shuster to Detective Comics* | 11 | 2623 |
| 184 | 5/29/07 | *Exhibit L: Copy of Superman No. 1* | 11 | 2625 |
| 184 | 5/29/07 | *Exhibit P: April 15, 1999 letter from Paul Levitz to Joanne Siegel* | 11 | 2639 |
| 181 | 5/29/07 | Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment | 11 | 2641 |
| 163 | 4/30/07 | Declaration of Marc Toberoff re: Plaintiffs' Motion for Summary Judgment | 11 | 2739 |
| 163 | 4/30/07 | *Exhibit A: November 21, 1947 Opinion* | 11 | 2745 |
| 163 | 4/30/07 | *Exhibit B: April 12, 1948 Findings of Fact and Conclusions of Law* | 11 | 2758 |

| 163 | 4/30/07 | *Exhibit C:  May 19, 1948 Stipulation of Settlement* | 11 | 2801 |
|---|---|---|---|---|
| 163 | 4/30/07 | *Exhibit D:  May 21, 1948 Consent Judgment* | 11 | 2813 |
| 163 | 4/30/07 | *Exhibit F:  June 1, 1965 Renewal Copyright Registrations re: Superman* | 11 | 2825 |
| 163 | 4/30/07 | *Exhibit G:  Notice of Termination re: March 31, 1938 Grant* | 11 | 2830 |
| 163 | 4/30/07 | *Exhibit H:  Notice of Termination re: December 4, 1937 Agreement* | 11 | 2840 |
| 163 | 4/30/07 | *Exhibit I:  Notice of Termination re: September 22, 1938 Agreement* | 11 | 2850 |
| 163 | 4/30/07 | *Exhibit J:  Notice of Termination re: September 22, 1938 Agreement with McClure* | 11 | 2860 |
| 163 | 4/30/07 | *Exhibit K:  Notice of Termination re: 1948 Stipulation* | 11 | 2870 |
| 163 | 4/30/07 | *Exhibit L:  Notice of Termination re: December 19, 1939 Agreement* | 11 | 2880 |
| 163 | 4/30/07 | *Exhibit M:  Notice of Termination re:  December 23, 1975 Agreement* | 11 | 2890 |
| 163 | 4/30/07 | *Exhibit N:  Certificates of Recordation re: Notices of Termination* | 12 | 2900 |
| 164 | 4/30/07 | *Exhibit R:  Defendants' First Amended Counterclaim* | 12 | 2915 |

| 164 | 4/30/07 | *Exhibit S: Siegel v. National Periodical Publications, Inc. et al., 364 F. Supp. 1032 (S.D.N.Y. 1973)* | 12 | 2956 |
|---|---|---|---|---|
| 164 | 4/30/07 | *Exhibit T: Siegel v. National Periodical Publications, Inc. et al., 508 F.2d 909 (2d Cir. 1974)* | 12 | 2965 |
| 164 | 4/30/07 | *Exhibit U: March 24, 2006 Order by Judge Ronald S. W. Lew in Civ. Case No. 04-08776 RSWL (RZx)* | 12 | 2973 |
| 164 | 4/30/07 | *Exhibit V: May 23, 2006 Order by Judge Ronald S. W. Lew in Civ. Case No. 04-08776 RSWL (RZx)* | 12 | 2991 |
| 164 | 4/30/07 | *Exhibit W: Appellate Brief of National Periodical Publications, Inc. et. al. from Siegel v. National Periodical Publications, Inc. et al., 508 F.2d 909 (2d Cir. 1974)* | 12 | 2995 |
| 164 | 4/30/07 | *Exhibit X: Plaintiff's Complaint* | 12 | 3014 |
| 164 | 4/30/07 | *Exhibit Y: December 23, 1975 Agreement between Warner Communications, Inc and Jerome Siegel and Joseph Shuster* | 12 | 3044 |
| 164 | 4/30/07 | *Exhibit Z: April 6, 2000 Tolling Agreement between Plaintiffs and DC Comics* | 12 | 3057 |
| 164 | 4/30/07 | *Exhibit AA: September 21, 2002 letter from Joanne Siegel to Kevin S. Marks and Bruce M. Ramer* | 12 | 3061 |

| 164 | 4/30/07 | *Exhibit BB:  October 19, 2001 letter from Kevin Marks to John Schulman* | 12 | 3063 |
|---|---|---|---|---|
| 164 | 4/30/07 | *Exhibit CC:  October 26, 2001 letter from Schulman to Marks* | 12 | 3070 |
| 164 | 4/30/07 | *Exhibit DD:  February 1, 2002 letter from Patrick Perkins to Kevin Marks* | 12 | 3079 |
| 164 | 4/30/07 | *Exhibit EE:  Excerpts from October 7, 2006 Deposition of Kevin Marks* | 12 | 3137 |
| 164 | 4/30/07 | *Exhibit FF:  March 15, 1982 letter from Martin D. Payson to Joanne Siegel* | 12 | 3156 |
| 164 | 4/30/07 | *Exhibit GG: Plaintiff's First Amended Complaint* | 12 | 3158 |
| 161 | 4/30/07 | Plaintiffs' Motion for Partial Summary Judgment | 13 | 3192 |
| 159 | 4/30/07 | Defendants' Motion for Partial Summary Judgment | 13 | 3255 |
| 46 | 11/1/05 | Plaintiffs' Reply to Defendants' First Amended Counterclaims | 13 | 3373 |
| Case No 04-8776, 125 | 4/30/07 | Declaration of Michael Bergman re: Defendants' Motion for Summary Judgment | 13 | 3407 |
| Case No 04- | 4/30/07 | Exhibit A:  December 4, 1937 Agreement between Jerome Siegel, | 13 | 3413 |

| | | | | |
|---|---|---|---|---|
| 8776, 125 | | Joseph Shuster and Detective Comics, Inc. | | |
| Case No 10-3633, 74 | 9/20/10 | Minutes From September 20, 2010 Discovery Hearing [1] | 14 | 3416 |
| Case No 10-3633, 348 | 11/25/11 | Defendant Laura Siegel Larson's Answer to First Amended Complaint | 14 | 3418 |
| Case No 10-3633, 1 | 5/14/10 | Plaintiff DC Comics' Complaint | 14 | 3456 |
| | 2/19/14 | Docket Report (Case No. 04-8400) | 14 | 3521 |

---

[1] Larson requests that this court take judicial notice of certain documents files in the *Pacific Pictures* case – which was deemed "related" to the case below and transferred to the same district court judge – pursuant to Federal Rule of Evidence 201.  As this Court has established, "[m]aterials from a proceeding in another tribunal are appropriate for judicial notice." *Biggs v Terhune*, 334 F.3d 910, 916 (9th Cir. 2003) (overruled on other grounds); *see also Reyn's Pasta Bella, LLC v Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (taking judicial notice of "pleadings, memoranda, expert reports, etc." from related case); *U.S. ex rel. Robinson Rancherita Citizen Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("we may take notice of proceedings in other courts") (internal quotations and citations omitted); *U.S. v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases")

## EXCERPTS OF RECORD (From Case No. 04-8776)

| Docket No. | Filing Date | Document Title | Vol. | Page |
|---|---|---|---|---|
| 254 | 6/18/13 | 59(e) Amended Judgment | 15 | 3598 |
| 253 | 6/18/13 | 59(e) Order | 15 | 3603 |
| 243 | 4/18/13 | "Final Judgment"  In Superboy | 15 | 3605 |
| 242 | 4/18/13 | Order Granting Motion For Summary Judgment Re: Superboy And The Superman Ads | 15 | 3609 |
| 235 | 3/20/13 | Order Granting In Part Defendant's Motion For Summary Judgment | 15 | 3620 |
| 175 | 3/31/08 | Order Denying Cross-Motions for Partial Summary Judgment | 15 | 3636 |
| 151 | 7/27/07 | Order Granting Defendants' Motion for Reconsideration | 15 | 3638 |
| 82 | 3/23/06 | Order Granting Plaintiffs' Motion for Partial Summary Judgment & Denying Defendants' Motion for Summary Judgment | 15 | 3711 |
| 259 | 7/16/13 | Defendants' Notice of Cross-Appeal | 16 | 3728 |
| 257 | 7/16/13 | Plaintiff's Notice of Appeal | 16 | 3730 |
| 250 | 6/17/13 | Plaintiff's 59(e) Motion | 16 | 3732 |
| 227 | 2/25/13 | Joint Status Report Re: The Superman and Superboy Cases | 16 | 3763 |

| 184 | 12/21/09 | Joint Status Report | 16 | 3779 |
| 103 | 1/12/07 | Defendants' Motion for Reconsideration | 16 | 3804 |
| 56 | 2/15/06 | Defendants' Motion for Summary Judgment | 16 | 3806 |
| 51 | 2/15/06 | Plaintiff's Motion for Partial Summary Judgment | 16 | 3838 |
| 47 | 11/4/05 | Answer to First Amended Counterclaims | 16 | 3870 |
| 44 | 10/18/05 | First Amended Counterclaims | 16 | 3904 |
| 37 | 9/7/05 | Answer to First Supplemental Complaint | 16 | 3943 |
| 34 | 4/13/05 | First Supplemental Complaint | 16 | 3957 |
|  | 2/19/14 | Docket Report (Case No. 04-8776) | 16 | 3986 |

1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

10

| | |
|---|---|
| LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL,<br>     Plaintiff,<br>     v.<br>WARNER BROS. ENTERTAINMENT INC., DC COMICS, and DOES 1-10,<br>     Defendants and Counterclaimants. | Case No: 04-CV-08400 ODW (RZx)-**<br>Case No: 04-CV-08776 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**AMENDED JUDGMENT** |
| LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL,<br>     Plaintiff,<br>     v.<br>TIME WARNER INC., WARNER COMMUNICATIONS INC., WARNER BROS. ENTERTAINMENT INC., WARNER BROS. TELEVISION PRODUCTION INC., DC COMICS, and DOES 1-10,<br>     Defendants and Counterclaimants. | |

25

26

27

28

**ER 1**

**JUDGMENT**

In a series of published decisions dated March 26, 2008; August 12, 2009; and October 30, 2009, in the "Superman" case (Case No. 04-CV-08400, ECF Nos. 293, 560, 595), the Court resolved Plaintiff Laura Siegel Larson's First Claim and Defendant-Counterclaimant DC Comics' First and Second Counterclaims, filed in both the "Superman" case and the "Superboy" case (Case No. 04-CV-08776). The Court thereby determined that, pursuant to the Copyright Act, 17 U.S.C. § 304(c), the Siegels validly terminated on April 16, 1999, all prior grants or transfers by Jerome Siegel to any of the Defendants, or their predecessors-in-interest, of his interest in the renewal copyrights in and to *Action Comics*, No. 1, as well as *Action Comics*, No. 4, *Superman*, No. 1 (pages 3–6), and the first two weeks of the Superman newspaper strips and that, as of April 17, 1999, the effective terminate date, the Siegels owned the aforesaid recaptured copyright interests.

On January 10, 2013, the United States Court of Appeals for the Ninth Circuit reversed Judge Larson's March 26, 2008 partial summary-judgment order in part and held that, "as a matter of law," Plaintiff Larson entered into an enforceable settlement agreement with DC Comics on October 19, 2001. *Larson v. Warner Bros. Entm't Inc.*, Nos. 11-55863, 11-56034, 2013 WL 1113259, at *1 (9th Cir. Jan. 10, 2013). "Statements from the attorneys for both parties establish that the parties had undertaken years of negotiations . . . , and that the letter" sent by Larson's attorney, Kevin Marks, on October 19, 2001, "accurately reflected the material terms they had orally agreed to." *Id.* The Ninth Circuit directed this Court to "reconsider DC's third and fourth counterclaims in light of [its] holding that the October 19, 2001, letter created an agreement." *Id.* at *2. The Ninth Circuit did not reach or address Plaintiff's First Claim in the "Superman" case, or the First and Second Counterclaims in the "Superman" and "Superboy" cases.

This Court's March 20 and April 18, 2013 Orders collectively granted DC's February 7, 2013 Motion for Summary Judgment on its Fourth Counterclaim. The

Court then entered DC's proposed final judgment on April 18, 2013.  On June 18, 2013, the Court issued an Order ("Superman" case, ECF No. 734; "Superboy" case, ECF No. 253) granting in part Plaintiff's Motion to Amend the Judgment ("Superman" case, ECF No. 731; "Superboy" case, ECF No. 250).

Based on the decisions set forth above, this Court now enters an amended final judgment based on DC's Fourth Counterclaim in two of three long-running Superman cases presently before this Court:  (1) the "Superman" case; and (2) the "Superboy" case.  In the parties' October 19, 2001 settlement agreement, Larson (and her family) "transfer[red] all of [their] rights" to DC, "resulting in 100% ownership to D.C. Comics," effective October 19, 2001.  Declaration of Daniel M. Petrocelli ("Petrocelli Decl.") Ex. B, at 21; *Larson*, 2013 WL 1113259, at *1.  This complete transfer on October 19, 2001, bars certain of Larson's remaining claims in this case and entitles DC to judgment on its Fourth Counterclaim, which seeks a declaration confirming the October 19, 2001 settlement agreement against Larson.    The remaining claims are granted, denied, or dismissed as set forth below.  Therefore:

**A.     Plaintiff's Claims (Superman, Case No. CV-04-8400)**

IT IS ORDERED AND ADJUDGED that Plaintiff's First Claim for Relief in the "Superman" case, for "Declaratory Relief re: Termination," is GRANTED, *but only* to the extent that it sought a declaration that on April 16, 1999, the Siegels validly terminated under the Copyright Act all prior grants, assignments, or transfers by Jerome Siegel to any of the Defendants, or their predecessors-in-interest, of the renewal copyrights in and to *Action Comics*, No. 1, as well as *Action Comics*, No. 4, *Superman*, No. 1 (pages 3–6), and the first two weeks of the Superman newspaper strips, and judgment is hereby entered in Plaintiff's favor on this claim as set forth herein.  *See* "Superman" case, ECF Nos. 293, 560.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's Second Claim for "Declaratory Relief re: Profits from Recaptured Copyrights," Third Claim for "Declaratory Relief re: Use of the 'Superman' Crest," and Fourth Claim for

"Accounting for Profits" in the "Superman" case are DISMISSED, WITHOUT PREJUDICE, AS MOOT.

**B.      Plaintiff's Claims (Superboy Case, Case No. CV-04-8776)**

IT IS ORDERED AND ADJUDGED that Plaintiff's First Claim for "Copyright Infringement," Second Claim for "Declaratory Relief re: Termination," Third Claim for "Violation of the Lanham Act § 43(a)(1)(B)," Fourth Claim for "Violation of California Business and Professions Code, §§ 17200 *et seq.*," and Fifth Claim for "Injunctive Relief" in the "Superboy" case are DISMISSED, WITHOUT PREJUDICE, AS MOOT.

**C.      DC's Counterclaims (Superman and Superboy Cases)**

IT IS ORDERED AND ADJUDGED that DC's First Counterclaim, "For Declaration That The Superman Notices And The Superboy Notice Are Ineffective," is DENIED WITH PREJUDICE in its entirety in the "Superman" case and as to Parts (1), (2), and (5) in the "Superboy" case. *See* "Superman" case, ECF Nos. 293, 664 (striking parts (3) and (4) from the First Counterclaim in the "Superman" case).

IT IS FURTHER ORDERED AND ADJUDGED that DC's Second Counterclaim, "For Declaration That Any Claim By The Siegels For Co-Ownership Of Superman (Including Its Derivative Superboy) Is Barred By The Statute Of Limitations," is DENIED WITH PREJUDCE. *See* "Superman" case, ECF No. 293.

IT IS FURTHER ORDERED AND ADJUDGED that DC's Fourth Counterclaim, for "Declaratory Relief Regarding the [2001 Settlement] Agreement," is GRANTED in part as follows. The Court declares that the parties' October 19, 2001 settlement agreement (embodied in Kevin Marks's letter of the same date) remains binding and enforceable solely under the terms contained in that agreement. Under that agreement, Larson and her family transferred to DC, worldwide and in perpetuity, any and all rights, title, and interest, including all copyright interests, that they had in Superman and Superboy, effective October 19, 2001. Petrocelli Decl. Ex. B, at 19, 21; *Larson*, 2013 WL 1113259, at *1–2. Judgment is hereby entered in

1   DC's favor and against Larson on this counterclaim.

2          IT IS FURTHER ORDERED that DC's Third, Fifth, and Sixth Counterclaims

3   are DISMISSED, WITHOUT PREJUDICE, AS MOOT.

4

5

6   IT IS SO ORDERED.

7

8    Dated:  June 18, 2013          _____

9                                          Hon. Otis D. Wright II.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, <br>        Plaintiff, <br> v. <br> WARNER BROS. ENTERTAINMENT INC., DC COMICS, and DOES 1-10, <br>        Defendants and Counterclaimants. | **Case No: 04-CV-08400 ODW (RZx) \*\*** <br> Case No: 04-CV-08776 ODW (RZx) <br><br> Hon. Otis D. Wright II, U.S.D.J. <br> Hon. Ralph Zarefsky, U.S.M.J. <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND THE COURT'S APRIL 18, 2013 JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(e) [731]** |
| LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, <br>        Plaintiff, <br> v. <br> TIME WARNER INC., WARNER COMMUNICATIONS INC., WARNER BROS. ENTERTAINMENT INC., WARNER BROS. TELEVISION PRODUCTION INC., DC COMICS, and DOES 1-10, <br>        Defendants and Counterclaimants. | |

IT IS HEREBY ORDERED that Plaintiff's Motion to Amend the Court's April 18, 2013 Judgment Pursuant To Fed. R. Civ. P. 59(e) is **GRANTED in part and DENIED in part**. The Court will not withdraw Section "B" of its March 20, 2013 summary-judgment order. The Court determines that Section "B"—finding that the 2001 Agreement remains an enforceable contract because Larson had not rescinded it and DC had not abandoned it—is a necessary prerequisite to the Court's subsequent finding in Section "C" that the still-valid Agreement had operated to transfer the Siegels' Superman rights to DC (the continued legal effect of which depends on the continued enforceability of the Agreement). But, for the well-articulated reasons set forth on pages 19:9 to 22:9 of Plaintiff's moving papers, the Court will enter Plaintiff's proposed amended judgment in Case Nos. 04-CV-8400 and 04-CV-8776.

IT IS SO ORDERED.

Dated: June 18, 2013 _____

Hon. Otis D. Wright II.

ORDER GRANTING PLAINTIFF'S MOTION TO AMEND THE JUDGMENT

Case: 13-56243   02/25/2014   ID: 8992563   DktEntry: 22-1   Page: 35 of 66

JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, <br><br>          Plaintiff, <br><br>        v. <br><br> WARNER BROS. ENTERTAINMENT INC., DC COMICS, and DOES 1-10, <br><br>         Defendants and <br>        Counterclaimants. | Case No.  CV 04-8400 ODW (RZx) <br><br> **FINAL JUDGMENT IN THE *SIEGEL* SUPERMAN CASE** <br><br> The Hon. Otis D. Wright II |

**JUDGMENT**

On January 10, 2013, the United States Court of Appeals for the Ninth Circuit reversed Judge Larson's March 26, 2008 partial summary-judgment order and held that, "as a matter of law," Plaintiff Laura Siegel Larson (referred to herein in her individual capacity and as personal representative of the Estate of Joanne Siegel as "Larson") entered into an enforceable settlement agreement with Defendants (collectively, "DC") on October 19, 2001. *Larson v. Warner Bros. Entm't Inc.*, Nos. 11-55863, 11-56034, 2013 WL 1113259, at *1 (9th Cir. Jan. 10, 2013). "Statements from the attorneys for both parties establish that the parties had undertaken years of negotiations . . . , and that the letter" sent by Larson's attorney, Kevin Marks, on October 19, 2001, "accurately reflected the material terms they had orally agreed to." *Id.* The Ninth Circuit directed this Court to "reconsider DC's third and fourth counterclaims in light of [its] holding that the October 19, 2001, letter created an agreement." *Id.* at *2.

Consistent with this Court's March 20 and April 18, 2013 Orders collectively granting DC's February 7, 2013 Motion for Summary Judgment (ECF Nos. 717, 723), this Court may now enter final judgment in DC's favor in two of three long-running Superman cases presently before this Court: (1) the above-titled "*Siegel* Superman" case, Case No. CV-04-8400; and (2) the related "*Siegel* Superboy" case, Case No. CV-04-8776 (addressed in a separate Final Judgment filed concurrently herewith). In the parties' October 19, 2001 settlement agreement, Larson (and her family) "transfer[red] all of [their] rights" to DC, "resulting in 100% ownership to D.C. Comics." Declaration of Daniel M. Petrocelli ("Petrocelli Decl.") Ex. B, at 21; *Larson*, 2013 WL 1113259, at *1. This complete transfer bars Larson's remaining claims in this case and entitles DC to judgment on its Fourth Counterclaim in this case, which seeks a declaration confirming the October 19, 2001 settlement agreement against Larson. DC's remaining counterclaims are dismissed, without prejudice, as moot. Therefore:

FINAL JUDGMENT

**ER 9**

A. Larson's Claims

IT IS ORDERED AND ADJUDGED that Larson's First Claim for Relief, for "Declaratory Relief re: Termination," is DENIED, and judgment is hereby entered in DC's favor and against Larson on this claim. *See also* DN 293, 560.

IT IS FURTHER ORDERED AND ADJUDGED that Larson's Second Claim for Relief, for "Declaratory Relief re: Profits from Recaptured Copyrights," is DENIED, and judgment is hereby entered in DC's favor and against Larson on this claim. *See also* DN 293, 560.

IT IS FURTHER ORDERED AND ADJUDGED that Larson's Third Claim for Relief, for "Declaratory Relief re: Use of the 'Superman' Crest," is DENIED, and judgment is hereby entered in DC's favor and against Larson on this claim. *See also* DN 293, 560.

IT IS FURTHER ORDERED AND ADJUDGED that Larson's Fourth Claim for Relief, for "Accounting for Profits," is DENIED, and judgment is hereby entered in DC's favor and against Larson on this claim. *See also* DN 293, 560.

B. DC's Counterclaims

IT IS ORDERED AND ADJUDGED that DC's Fourth Counterclaim, for "Declaratory Relief Regarding the [2001 Settlement] Agreement," is GRANTED, and judgment is hereby entered in DC's favor and against Larson on this counterclaim. The Court declares that, under the parties' October 19, 2001 settlement agreement, Larson and her family transferred to DC, worldwide and in perpetuity, any and all rights, title, and interest, including all copyright interests, that they may have in Superman, Superboy, and Spectre. Petrocelli Decl. Ex. B, at 19, 21; *Larson*, 2013 WL 1113259, at *1–2.

/ / /

/ / /

/ / /

/ / /

FINAL JUDGMENT

ER 10

1       IT IS ACCORDINGLY FURTHER ORDERED that DC's First, Second,

2  Third, Fifth, and Sixth Counterclaims are DISMISSED, WITHOUT PREJUDICE,

3  AS MOOT.

4       IT IS SO ORDERED.

5

6  Dated:  April 18, 2013        _____

7                       Honorable Otis D. Wright, II
                          Judge, United States District Court

8  OMM_US:71247304

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINAL JUDGMENT

O

1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL,<br><br>        Plaintiff,<br>    v.<br><br>WARNER BROS. ENTERTAINMENT INC., DC COMICS, and DOES 1–10,<br><br>        Defendants. | Case No. 2:04-cv-08400-ODW(RZx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: SUPERBOY AND THE SUPERMAN ADS**<br>**[04-cv-8400, ECF No. 702]** |

11
12
13
14
15
16

17

| |
|---|
| 18  LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL,<br><br>        Plaintiff,<br>    v.<br><br>TIME WARNER INC., WARNER COMMUNICATIONS INC., WARNER BROS. ENTERTAINMENT INC., WARNER BROS. TELEVISION PRODUCTION INC., DC COMICS, and DOES 1–10,<br><br>        Defendants. |

18
19
20
21
22
23
24
25

26  / / /

27  / / /

28  / / /

# I.   INTRODUCTION

On March 20, 2013, this Court granted Defendants' February 7, 2013 Motion for Summary Judgment in part, holding on remand from the Ninth Circuit that the parties' October 19, 2001 settlement agreement remained binding and enforceable. The Court also ordered the parties to file supplemental briefs addressing how that holding affected the parties' respective rights to Superboy and the Superman ad works.  The Court now holds that the 2001 settlement agreement encompassed those works.   The remainder of Defendants' Motion is therefore **GRANTED**, and this litigation of superhero proportions now draws to a close.

# II.   FACTUAL BACKGROUND

On March 1, 1938, writer Jerome Siegel and artist Joe Shuster signed an agreement selling Superman to DC Comics for $130.  *Siegel v. Warner Bros. Entm't Inc.*, 542 F. Supp. 2d 1098, 1107 (C.D. Cal. 2008).  DC intended to publish Superman in the inaugural issue of *Action Comics*, which it promoted in advance in black-and-white advertisements in two of its other magazines (the "Ads").  *Id.*  The Ads reproduced the cover of the forthcoming *Action Comics No. 1* with accompanying text:



ER 13

In 1938, following Superman's successful debut, Siegel "pitched the idea to [DC] of serializing a comic concerning the exploits of Superman as a young man." *Siegel v. Warner Bros. Entm't Inc.*, 496 F. Supp. 2d 1111, 1114 (C.D. Cal. 2007.) DC twice declined to publish Siegel's proposed Superboy comic. *Id.* at 1115. But while Siegel was stationed abroad with the U.S. Army in 1943, DC published a five-page "Superboy" comic strip without Siegel's consent and without giving him notice. *Id.* Several rounds of litigation ensued, but suffice it to say for present purposes that the parties continue to dispute ownership, publication, and copyrightability of various aspects of Superboy.

In 1997, Laura Siegel Larson and Joanne Siegel (Siegel's daughter and now-deceased widow, respectively) served DC with a "nearly six-pound, 546-page termination notice" of Siegel's Superman copyright grants under 17 U.S.C. § 304(c). (Petrocelli Decl. in Support of Def.'s Supp. Br. ("Petrocelli Decl.") Ex. 11); *Siegel v. Warner Bros. Entm't Inc.*, 658 F. Supp. 2d 1036, 1095 (C.D. Cal. 2009). This 1997 termination notice "applie[d] to each and every work (in any medium whatsoever, whenever created) that include[d] or embodie[d] any character, story element, or indicia reasonably associated with SUPERMAN or the SUPERMAN stores, such as, without limitation, Superman . . . Superboy, . . . [or] Smallville." (Petrocelli Decl. Ex. 11, at 93 n.1; *see also* Pl.'s Supp. Br. 3 ("[T]he 1997 Terminations applied to Siegel's Superman works published between 1938 and 1943, although they listed derivative works outside this 'window' out of an abundance of caution.").) In other words, the Notice purported on its face to cover not only Superman, but also Superboy and the Superman Ads.

Shortly before the termination's 1999 effective date, DC contested the scope and validity of 1997 termination notice and subsequently entered settlement negotiations with the Siegels. After four years, these negotiations culminated in the October 19, 2001 letter that the Ninth Circuit and this Court have found constitutes the operative agreement between the parties. The 2001 agreement, like the 1997 notice of

**ER 14**

termination, purported to cover Superboy and the Superman Ads.  (*See* Petrocelli Decl. Ex. 12, at 647 (defining "The Property" subject to the settlement as "all Superman, Superboy and related properties (including, for example, Supergirl, Steel, Lois & Clark and Smallville), and the Spectre property, and includes all pre- and post-termination works (including the so-called Superman library, characters, names and trademarks relating to the property").)

But then efforts to reduce the 2001 agreement to a long-form contract broke down.  As a result, the Siegels repudiated the agreement, served an additional notice of termination in 2002 purporting to recover the Superboy works, and sued DC in 2004 for declaratory relief with respect to the 1997 and 2002 notices of termination. The Siegels later served a subsequent 2012 notice of termination regarding the Ads, after Judge Larson held earlier in this litigation that the 2001 agreement was not binding and that the 1997 notice of termination failed to capture the Ads.  The parties now dispute the effect of the 2001 settlement agreement on the Superboy and Ad works in light of the 2002 and 2012 notices of termination.

## III.   DISCUSSION

DC maintains that the October 19, 2001 agreement constituted a revocation and re-grant of the Siegels' copyright interests (if any) in the Superboy and Superman Ad works that precluded the Siegels' 2002 and 2012 termination notices for those works. (DC's Supp. Br. 3–4.)  The Siegels respond that the October 19, 2001 agreement cannot constitute a revocation and re-grant, because it "contains *no language of revocation*, let alone the requisite express revocation."  (Pl.'s Supp. Br. 9 (citing *Milne*, 430 F.3d at 1040–41, 1047–48; *Mewborn*, 532 F.3d at 980–81, 986, 988–89).)

Two important appellate decisions undergird the parties' revocation-and-re-grant arguments: *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036 (9th Cir. 2005) and *Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d 193 (2d Cir. 2008). *Milne* concerned author A.A. Milne's classic *Winnie the Pooh* works.  *Milne*, 430 F.3d at 1039.  In 1930, Milne granted producer Stephen Slesinger certain copyright

interests in Pooh in exchange for royalties.  *Id.*  Slesinger then transferred his Pooh rights to Stephen Slesinger, Inc. (SSI), which in turn granted its rights exclusively to Disney.  *Id.* at 1039–40. Milne later died in 1956, survived by his widow and son, Christopher Robin.  *Id.*

Twenty years later, Congress passed the 1976 Copyright Act, which (among other things) extended the 1909 Act's renewal term and created a new termination right so that authors or certain of their heirs could take advantage of that extended term.  *Id.*  In 1983, faced with the possibility that Christopher Robin might seek to terminate his 1930 grant to SSI (but before any termination right had been exercised), Disney proposed that the parties renegotiate the rights to the Pooh works.  *Id.* "Christopher accepted Disney's proposal and, using the bargaining power conferred by his termination right, negotiated and signed on April 1, 1983 a more lucrative deal with SSI and Disney that would benefit" Milne's heirs.  *Milne*, 430 F.3d at 1040.

In 1998, Congress passed the Sonny Bono Copyright Term Extension Act ("CTEA"), Pub. L. No. 105-298, 112 Stat. 2827 (1998) (codified at 17 U.S.C. §§ 108, 203, 310–304).  Of particular importance here, the CTEA further extended the term of copyright protection, granted an extended termination window *only for pre-1978 copyright grants*, and provided more favorable treatment to authors' heirs.  *See* 17 U.S.C. § 304(c)–(d); *Milne*, 430 F.3d at 1038–39, 1041.

Years later, Christopher's daughter, Clare, attempted to terminate Milne's 1930 grant.  The Ninth Circuit rejected this effort, holding that Christopher's 1983 grant revoked the pre-1978 grant and re-granted the same rights, thereby pulling the 1930 agreement from the grasp of the CTEA's extended termination provisions.  *Id.* at 1048.

The Ninth Circuit further held that Christopher's 1983 grant did not constitute an ineffective "agreement to the contrary" under 17 U.S.C. § 304(c)(5).  *Id.* at 1046. In so holding, the Ninth Circuit reasoned that Congress had "anticipated that parties may contract, as an alternative to statutory termination, to revoke a prior grant by

replacing it with a new one." *Id.* But more importantly for this case, the Ninth Circuit found that Christopher's 1983 grant had effectively fulfilled Congress's objectives in disallowing authors or their heirs from entering into an agreement contrary to the future exercise of their newly granted statutory termination rights:

> The rationale behind [the CTEA] was to 'safeguard[] authors against unremunerative transfers' and improve the 'bargaining position of authors' by giving them a second chance to negotiate with more advantageous grants in their works after the works had been sufficiently 'exploited' to determine their 'value.' *Congress sought to foster this purpose by permitting an author's heirs to use the increased bargaining power conferred by the imminent threat of statutory termination to enter into new, more advantageous grants.* This is exactly what Christopher and the other beneficiaries of the Pooh Properties Trust did in 1983." *Milne*, 430 F.3d at 1046 (emphasis added) (quoting H.R. Rep. No. 94-1476 at 124, 1976 U.S.C.C.A.N. at 5740).

*Steinbeck* mirrored the *Milne* scenario. In 1938, author John Steinbeck executed a publishing agreement covering several of his best-known works; the agreement was extended in 1939 to cover four additional works. *Steinbeck*, 537 F.3d at 196. The agreements were later assigned to Penguin Group, and Steinbeck thereafter properly renewed the copyrights subject to those agreements. *Id.* Steinbeck died in 1968, survived by his widow, Elaine, and two sons from a previous marriage, Thomas and John IV. *Id.*

In 1994, Elaine and Penguin entered into a new agreement for continued publication of all works subject to the 1938 agreement, plus additional other Steinbeck works. *Id.* The 1994 agreement also altered the economic terms of the 1938 agreement to Elaine's benefit and expressly "cancel[ed] and supersede[d] the previous agreements, as amended, for the [works] covered [t]hereunder." *Id.*

Elaine then died in 2003, and in 2004 Thomas and John IV's son jointly served a notice of termination purporting to terminate the grants made by the 1938 agreement. *Id.* Citing *Milne* with approval, the Second Circuit in *Steinbeck* held that

Elaine's 1994 agreement (1) "terminated and superseded" the 1938 agreement, *id.* at 200; and (2) was not an invalid "agreement to the contrary," "even if the agreement had the effect of eliminating a termination right that Congress did not provide until 1998." *Id.* at 202. Similar to the Ninth Circuit in *Milne*, the Second Circuit noted that Elaine had renegotiated and canceled the 1938 agreement "while wielding the threat of termination" and found that "this kind of renegotiation appears to be exactly what was intended by Congress." *Id.*

The Siegels' 1997 Termination notice and subsequent 2001 settlement agreement with DC presents this Court with an even clearer case than either *Milne* or *Steinbeck*. At the outset, the Court notes that this case does not—despite the parties' many pages of argument on the issue—implicate a revocation and re-grant scenario. In both *Milne* and *Steinbeck*, the courts began their analyses with the recognition that the CTEA's extended termination rights, which became effective in 1999, only applied to grants made *before* January 1, 1978. *Steinbeck*, 537 F.3d at 200; *Milne*, 430 F.3d at 1042. Thus, because the Milne and Steinbeck heirs had entered into post-1978 agreements that terminated and superseded the pre-1978 grants, those heirs were statutorily precluded from exercising the CTEA's new grant of termination rights.

Here, in contrast, DC and the Siegels entered into the 2001 agreement *after* the CTEA became effective in 1999. Because the extended termination rights the CTEA bestowed had already vested by the time the 2001 agreement was consummated, the Court need only concern itself with whether the 2001 agreement constituted an "agreement to the contrary" under § 304(c)(5).

Both *Milne* and *Steinbeck* preclude a finding that the 2001 settlement agreement constituted an "agreement to the contrary" under § 305(c)(5). In finding that the post-1978 revocation-and-re-grant agreements did not constitute agreements to the contrary, the courts in both *Milne* and *Steinbeck* ardently emphasized the fact that the heirs had vindicated Congress's intent by wielding their termination rights to extract more lucrative deals. The Ninth Circuit in *Classic Media, Inc. v. Mewborn* has since

**ER 18**

expressly relied on this point in contrasting the facts of that case with those in *Milne*: "When the Milne heir chose to use the leverage of imminent vesting to revoke the pre-1978 grant and enter into a highly remunerative new grant of the same rights, it was tantamount to following the statutory formalities, and *achieved the exact policy objectives for which § 304(c) was enacted.*"   532 F.3d 978, 987 (9th Cir. 2008) (emphasis added); *see also id.* at 988 (the subject agreement was consistent with and "fully honored Christopher's right of termination which could vest immediately if he served notice"; "[t]he avenue chosen by Christopher and the studio secured the exact equivalent result for him and his fellow heirs, and in no way subverted the termination rights and the congressional purpose underlying them.").   Christopher, the Ninth Circuit noted, had chosen "to avoid the statutory formalities whereby the rights would actually vest in him and then he would have to renegotiate with the studio." *Id.* at 988.  Further, "the deal resulted in a net gain of hundreds of millions of dollars to [the Milne heirs], landing the studio and [the heirs] in the same place had [they] followed the formalities." *Id.*

By the 1997 termination notice and 2001 settlement agreement, the Siegels here went a step further than the heirs in *Milne* by actually engaging in the statutory formalities: While Christopher simply *could have* served a termination notice, the Siegels actually *did* serve a termination notice listing a vast spectrum of Superman and Superboy works.  Sure, DC disputed the validity and scope of the Siegels' 1997 notice.  And the Siegels served another termination notice in 2002 targeting Superboy in particular.  When Judge Larson later held that the Ads fell outside the scope of the 1997 termination notice,   the Siegels apparently felt compelled to file a 2012 termination notice with respect to the Ads.  But in construing the parties' October 2001 settlement agreement, the Court must focus on the subject of the settlement negotiations—the 1997 notice of termination that encompassed Superman, Superboy, and the Ads.  As of the date of the 1997 notice, it was an open question between the parties whether and to what extent any of these works were  within the ambit of the

8

1997 notice. This uncertainty resulted in a lengthy four-year negotiation process that culminated in an October 19, 2001 settlement agreement whereby the Siegels *explicitly* granted DC their rights to "*all* Superman, *Superboy*, and related properties (including, for example, . . . *Smallville*," as well as "all pre- and post-termination works (including the so-called Superman library), characters, names and trademarks relating to" these rights. (Petrocelli Decl. Ex. 12, at 647.) In exchange for this grant, the Siegels received a $2 million advance, a $1 million non-recoupable signing bonus, forgiveness of a previous $250,000 advance, a guarantee of $500,000 per year for 10 years, a 6% royalty of gross revenues, and various other royalties. Simply put, the Siegels entered into a *highly* remunerative new deal with DC as a *direct result* of their 1997 notice of termination that purported to encompass the Superboy and Superman Ad works now at issue. "[T]his kind of renegotiation appears to be exactly what was intended by Congress." *See Steinbeck*, 537 F.3d at 202.

Later decisions holding that Superboy and the Ads were not properly terminated by the 1997 notice do not change this result. The course of litigation in this matter teaches that the Superboy and the Superman Ads were likely not properly terminated by the 1997 notice of termination, notwithstanding the fact that those works were listed in the notice. The Court will therefore assume without deciding that absent the 2001 Agreement, the Siegels would have properly terminated Superboy through their 2002 notice of termination and the Ads through their 2012 notice of termination. Under this presumption, the Siegels would have settled away their termination rights to Superboy and the Ads by way of the 2001 settlement agreement. On the surface, this would appear to be an agreement to the contrary. But the Siegels freely and intelligently entered into the 2001 agreement as a direct result of their 1997 attempt to terminate the Superboy and Ad works. In 2001, they knew full well that the CTEA had been effective for more than two years. And like Christopher, the Siegel heirs here had very much "in hand with which to bargain" in 2001 when they negotiated the settlement stemming from their 1997 termination notice. *Mewborn*, 532 F.3d at 989.

The import of the 2001 agreement could not possibly have been lost on the Siegels at the time: they had already served a termination notice purporting to recapture the rights to the entire universe of Superman works.  They had used that termination as leverage "to obtain considerably more money as a result of [their increased] bargaining power."  *Id.* at 988.  Clearly the 2001 agreement was not *contrary* to the Siegels' termination rights at all; "it was an agreement consistent with, and which fully honored [the Siegels'] right of termination" they undoubtedly *intended* to exercise as to Superboy and the Ads by the 1997 termination.  *Id.*

Given that the Siegels settled their rights to Superboy and the Ads well before any court decided the 1997 termination notice did not in fact encompass those works, the Court cannot see how the 2001 settlement agreement could be an "agreement to the contrary" simply because it had the effect of eliminating certain termination rights the Siegels believed they had already exercised.

## IV.   CONCLUSION

The Court holds that the 2001 settlement agreement between DC and the Siegels re-granted the Siegels' Superman, Superboy, and Superman Ad works to DC in return for substantial advances and royalties.  Because the agreement leveraged the Siegels' all-encompassing 1997 termination notice to extract a highly remunerative new grant of the same rights, it was tantamount to following the statutory formalities and thus does not constitute an "agreement to the contrary" under 17 U.S.C. § 303(c)(5).

DC's February 7, 2013 Motion for Summary Judgment is therefore **GRANTED** in its entirety.  To recap, the October 19, 2001 agreement (embodied in Kevin Marks' letter of the same date) remains binding and enforceable solely under the terms embodied in that agreement.  That agreement encompasses all of the works subject to the related Superman and Superboy actions.  *Siegel v. Warner Bros. Entm't Inc.*, No. 2:04-cv-08400-ODW-RZ (C.D. Cal. filed Oct. 8, 2004); *Siegel v. Time Warner Inc.*, No. 2:04-cv-08776-ODW-RZ (C.D. Cal. filed Oct. 22, 2004).  Whether and how that

right has been affected by the parties' actions after October 19, 2001, is not now before the Court, as DC has voluntarily dismissed its third counterclaim for breach of contract, and the Siegels do not assert any contract claims related to the October 19 agreement. Thus, to the extent that any party contends any delay in performance or other breach gives rise to any damages, such a claim is properly subject to a separate state-court action for breach of contract.

A judgment will issue.

**IT IS SO ORDERED.**

April 18, 2013

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

11

**O**

<br>

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, <br><br> Plaintiff, <br><br> v. <br><br> WARNER BROS. ENTERTAINMENT INC., DC COMICS, and DOES 1–10, <br><br> Defendants. | **\*Case No. 2:04-cv-08400-ODW(RZx)\*** <br> Case No. 2:04-cv-08776-ODW(RZx) <br><br> **ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ORDERING FURTHER BRIEFING** <br> **[04-cv-8400, ECF No. 702]** <br> **[04-cv-8776, ECF No. 222]** |
| LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, <br><br> Plaintiff, <br><br> v. <br><br> TIME WARNER INC., WARNER COMMUNICATIONS INC., WARNER BROS. ENTERTAINMENT INC., WARNER BROS. TELEVISION PRODUCTION INC., DC COMICS, and DOES 1–10, <br><br> Defendants. | |

/ / /

/ / /

## I.  INTRODUCTION

Defendants DC Comics; Warner Bros. Entertainment Inc.; Warner Communications, Inc.; Warner Bros. Television Production, Inc.; and Time Warner Inc. (collectively "DC") move for summary judgment in these consolidated Superman and Superboy cases following entry of the Ninth Circuit's February 4 Mandate.  The Ninth Circuit has directed this Court to reconsider DC's third and fourth counterclaims in view of its holding that an October 19, 2001 letter from the legal representative of the heirs to Superman co-creator Joe Siegel to Warner Bros. (and by extension DC Comics) created an agreement between the parties.  DC has effectively withdrawn its third counterclaim, and the Court **GRANTS** Defendants' Motion on its fourth counterclaim.

## II.  FACTUAL BACKGROUND

In 2004, Joanne Siegel and Laura Siegel Larson,[1] the heirs to Superman co-creator Jerry Siegel, sued DC seeking a judicial declaration that the copyright termination notices the Siegels served on DC in 1997 effectively recaptured their copyright interests in Superman.  DC counterclaimed that the parties had entered into a settlement agreement that the Siegels repudiated.  Specifically, DC's third counterclaim alleges that the Siegels breached a written October 19, 2001 agreement drafted by the Siegels' then-legal representative, Kevin Marks.  (Second Amended Counterclaims (SACC) ¶¶ 97–101.)  This agreement memorialized an earlier October 16, 2001 telephone conversation between Marks and Warner Bros.'s then-general counsel, John Schulman, during which the parties negotiated the final points of a deal giving DC the continued rights to Superman in exchange for substantial financial consideration.  (*See id.*)

/ / /

---

[1] Joanne Siegel, Jerry Siegel's widow, has since passed away.  As a result, Plaintiff Laura Siegel Larson remains the only Plaintiff in this matter, both in her individual capacity and as the personal representative of the estate of the late Joanne Siegel.  For consistency with earlier rulings and the earlier facts of this case, Court will continue refer to Plaintiff as "the Siegels."

**ER 24**

DC's fourth counterclaim, in turn, sought a declaration that, by the October 19, 2001 agreement, the Siegels had "transferred or [is] contractually obligated to transfer to DC Comics" any and all of their Superman rights. (*Id.* ¶¶ 102–05.)

On March 26, 2008, now-resigned Judge Steven G. Larson held on partial summary judgment "that the parties' settlement negotiations did not result in an enforceable agreement [on October 19, 2001,] resolving the issues before the Court." (ECF No. 293, at 62.) In so holding, Judge Larson considered the parties' 2001–2002 settlement negotiations and found that "[o]ne need only review the language of the parties' correspondence, their conduct in relation thereto, and the numerous material differences between the terms relayed in the October 19 and 26, 2001, letters and the February 1, 2002[] draft to reach the conclusion that the parties failed to come to an agreement on all material terms." (ECF No. 293, at 61.) Judge Larson's holding effectively rejected DC's third and fourth counterclaims.

On November 5, 2012, the Ninth Circuit reversed Judge Larson's March 26, 2008 summary-judgment order, holding that the much-disputed October 19, 2001 letter from Marks to Schulman "constituted an acceptance of terms negotiated between the parties, and thus was sufficient to create a contract" as a matter of law. *Larson v. Warner Bros. Entmt., Inc.*, – F. App'x –, –, 2012 WL 6822241, at *1 (9th Cir. 2012). The court further explained that it

> reject[ed the Siegels'] arguments that either state or federal law precludes a finding that such a contract could have been created by the October 19, 2001, letter. California law permits parties to bind themselves to a contract, even when they anticipate that some material aspects of the deal will be papered later. This principle applies notwithstanding the lack of an express reference to an intended future agreement, so long as the terms of any contract that may have been formed are sufficiently definite that a court could enforce them (as is undoubtedly the case here). *Larson*, 2012 WL 6822241, at *1 (internal quotation marks, alterations, and citations omitted).

///

The Ninth Circuit then directed this Court "to reconsider DC's third and fourth counterclaims in light of [its] holding that the October 19, 2001, letter created an agreement." *Id.* at *2.

DC brings the issue back before the Court on remand by way of its February 7, 2013 Motion for Summary Judgment. DC contends quite simply that the "Ninth Circuit's binding ruling compels judgment in DC's favor on its Fourth Counterclaim in both Siegel cases; renders DC's remaining counterclaims in the cases moot . . . ; and requires denial of [the Siegels'] claims in the cases." (Mot. i.) The Siegels, on the other hand, maintain that the Court's job isn't quite so simple, as the Court (or the factfinder, as the case may be) must now determine "[w]hat exactly the October 19, 2001 agreement meant, and whether and to what extent it is still enforceable given DC's subsequent conduct." (Opp'n 2.) While DC perhaps overstates the simplicity of the matter, it is nevertheless correct that the Ninth Circuit's ruling obliges the Court to grant its fourth counterclaim.

## III.   LEGAL STANDARD

On remand, this Court is bound by the Ninth Circuit's mandate. Fed. R. App. P. 41(c); *see also Ins. Grp. Comm. v. Denver & R.G.W.R.R.*, 329 U.S. 607, 612 (1947) ("When matters are decided by an appellate court, [the appellate court's] rulings, unless reversed by it or by a superior court, bind the lower court."). "[A] mandate is controlling as to all matters within its compass, while leaving any issue not expressly *or impliedly* disposed of on appeal available for consideration by the trial court on remand." *Odima v. Westin Tuscon Hotel*, 53 F.3d 1484, 1498 (9th Cir. 1995) (emphasis added) (quoting *Firth v. United States*, 554 F.2d 990, 993 (9th Cir. 1977)).

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

/ / /

/ / /

**ER 26**

# IV.    DISCUSSION

While DC insists the Court need only enter judgment in its favor to resolve this matter once and for all, the Siegels urge on remand that the Court must instead conduct further proceedings in light of the Ninth Circuit's holding to determine what the October 19 agreement means today.  (Opp'n 7–8.)  DC concedes that its third counterclaim for breach of the October 19, 2001 agreement "can be dismissed without prejudice, if DC prevails on its Fourth Counterclaim."[2]  (Mot. 1.)  The Court therefore looks first to DC's fourth counterclaim to determine the extent to which the Ninth Circuit's mandate leaves open additional questions for resolution by this Court.  Because the Court finds that resolution of additional issues impacting the continued enforceability of the agreement remains necessary to resolve DC's fourth counterclaim, the Court proceeds to address and resolve those issues.  The Court holds that the agreement remains enforceable and therefore does not reach DC's third counterclaim.[3]

## A.    The Ninth Circuit's Mandate does not fully resolve DC's fourth counterclaim

The Court begins its analysis with the recognition that the Ninth Circuit's "holding that the October 19, 2001, letter created an agreement" does not dispense entirely with DC's fourth counterclaim—at least not immediately.  Indeed, had the Circuit thought its ruling on the October 19, 2001 Letter disposed of DC's counterclaims, it would have said so.

DC's fourth counterclaim asks the Court to declare, based on a finding that the October 19 agreement remains binding and enforceable, that the Siegels either already

/ / /

---

[2] DC apparently intends to seek attorney's fees under the Copyright act and for its fourth counterclaim rather than pursuing damages for breach of contract under its third counterclaim.  (Mot. 8.)

[3] As noted *supra* at 2, DC's third counterclaim alleges the Siegels' breach of the October 19, 2001 agreement.  (Second Amended Counterclaims ¶¶ 97–101.)

**ER 27**

have or now remain contractually obligated to transfer their rights in the Superman works to DC:

> An actual controversy now exists between DC Comics and Plaintiffs/Counterclaim Defendants, in that DC Comics contends the Agreement *is binding and enforceable* and, therefore, that: Plaintiffs/Counterclaim Defendants *either have transferred or are contractually obligated to transfer to DC Comics*, worldwide and in perpetuity, any and all rights, title, and interest, including all United States copyrights, which they may have in the Superman Works. . . . DC Comics seeks a judicial determination of the parties' respective rights and obligations, which is necessary and appropriate to allow them to properly govern their future conduct. (Second Amended Counterclaims ¶¶ 103(a), 105 (emphasis added).)

The Ninth Circuit's holding didn't go quite so far as to fully settle this claim. The Ninth Circuit held only that "the October 19, 2001, letter *created an agreement*." Both this holding and the related finding that the October 19 letter created an agreement with terms sufficiently definite for a court to enforce necessarily imply only that the agreement was binding and enforceable *at the time of the agreement's creation*. But subsequent events may have affected the present enforceability of that contract, as by a material breach followed by an effective rescission of the deal. In order to pass on the present enforceability of the October 19 contract, the Court must therefore proceed to determine whether events after October 19, 2001, rendered the October 19 agreement subsequently unenforceable.

**B.    The October 19, 2001 agreement remains enforceable**

The Court is concerned here only with the present enforceability of the October 19 contract. The Siegels' breach and repudiation defenses do not affect the enforceability of the agreement, but rather constitute grounds for termination or a breach-of-contract action. *See, e.g.*, *Whitney Inv. Co. v. Westview Dev. Co.*, 273 Cal. App. 2d 594, 602 (1969) ("A breach does not terminate a contract as a matter of course but is a ground for termination at the option of the injured party.") Because no

6

ER 28

party presently asserts a breach-of-contract claim, these defenses therefore are not properly before the Court.  But the Siegels' rescission and abandonment defenses do inform the continued enforceability of the October 19 agreement, as the Siegels' rescission or DC's abandonment of that agreement could have discharged the agreement, thereby rendering it presently unenforceable.  These defenses therefore merit consideration.

### 1.   *The Siegels failed to rescind the October 19, 2001 agreement*

The Siegels contend that the October 19, 2001 agreement is no longer enforceable because that agreement was properly rescinded on May 9, 2002, and their rescission was subsequently confirmed on September 21, 2002.

Under California law, one party to a contract may rescind the contract if the other party refuses or fails to fully perform.  Cal. Civ. Code § 1689(b)(2); *Loop Bldg. Co. v. De. Coo*, 97 Cal. App. 354, 364 (1929).  To properly effect a rescission, the rescinding party must "give notice of rescission to the party as to whom he rescinds" and either restore or offer to restore "to the other party everything of value which he has received from him under the contract."  Cal. Civ. Code § 1691.  A section 1691 notice of rescission need not be formal and explicit; rather, "it is sufficient that notice shall be given to the other party which clearly shows the intention of the person rescinding to consider the contract at an end."  *Hull v. Ray*, 211 Cal. 164, 167 (1930).  Further, the requirement of a restoration of consideration is unnecessary where, as here, nothing of value was received by the plaintiff.  *See* Cal. Civ. Code § 1691(b) (must restore "everything of value"); *Rosemead Co. v. Shipley Co.*, 207 Cal. 414, 421 (1929).  Failure to comply with section 1691's rescission procedures bars judicial enforcement of rescissory relief.  *Golem v. Fahey*, 191 Cal. App. 2d 474, 477 (1961) ("Since appellant failed to rescind upon learning of the mistake or within a reasonable time thereafter and failed to comply with any of the provisions of Civil Code, section 1691, he cannot now seek relief in this forum.").

/ / /

In response to Kevin Marks's October 19 letter to John Shulman "accept[ing] D.C. Comics [*sic*] offer of October 16, 2001," Shulman sent Marks a letter on October 26, 2001, enclosing what he believed was a "more fulsome outline" of the deal terms. (SUF 8; Adams Decl. Ex. 2.) On February 1, 2002, DC's outside counsel followed up with a draft long-form agreement. (SUF 18; Adams Decl. Ex. 3.)[4]

On May 9, 2002, Joanne Siegel sent a letter to Richard Parsons, Chief Operating Officer of DC's parent, AOL Time Warner Inc., objecting to the February draft. The Siegels now contend that the following language in the May 2002 letter "properly invoked [their] right of rescission":

> We made painful concessions assured if we did we would arrive at an agreement. When we made these difficult concessions and reluctantly accepted John Shulman's last proposal [on October 19, 2001], we were stabbed in the back with a shocking contract.
> Your company's unconscionable contract dated February [1], 2002 contained new, outrageous demands that were not in the [October 16] proposal. . . . (SUF 25; Adams Decl. Ex. 4.)
> After four years we have no deal and this [February 1] contract makes an agreement impossible. (SUF 25; Adams Decl. Ex. 4.)

Several months later, on September 21, 2002, the Siegels wrote to Marks to terminate him as their legal representative and reaffirm their intent, as the Siegels now contend, to "rescind" their contract with DC:

> As we previously discussed with you and hereby affirm, we rejected DC Comics' offer for the Siegel Family interest in Superman and other characters sent to us by you on February [1], 2002. We similarly reject your redraft of [that] document which you sent us on July 15, 2002. Therefore due to irreconcilable differences, after four years of painful and unsatisfying negotiations, this letter serves as formal notification that we are totally stopping and ending all negotiations with DC Comics . . . . (SUF 29; Adams Decl. Ex. 6.)

---

[4] These letters (and the new and materially different terms they allegedly contained) formed the basis of the Siegels and DC's dispute over whether Marks's October 19 letter had formed an agreement at all.

The Court finds as a matter of law that the May 9 and September 21, 2002, letters do not constitute proper notices of rescission under section 1691.  First and foremost, neither letter even recognizes a contract at all, much less expresses the intent to rescind the contract.  While a rescission notice does not have to be formal or explicit, basic logic suggests that one cannot "clearly indicate to the defaulting party that the injured party considers the contract to be terminated," *Whitney*, 273 Cal. App. 2d 594, 602, while simultaneously rejecting the very existence of the contract in the first place.  Indeed, repudiation and rescission are distinct legal concepts that can yield very different legal rights and remedies.

Granted, the May 9 letter notes that the Siegels had "reluctantly accepted John Shulman's last proposal" on October 19, 2001.  But any indication that this language recognized the existence of a contract on October 19 is undermined by the subsequent reference to DC's "unconscionable contract dated February [1]" and unambiguous statement that "[a]fter four years *we have no deal*."  The clear objective intent of the May and September 2002 letters was thus to deny the existence of a contract altogether (or otherwise repudiate the continued existence of one due to a breakdown in negotiations), not to rescind it.  And the Ninth Circuit's holding that a contract did in fact exist does not empower the Siegels now to retroactively convert that intent just because it turns out the facts were not what they believed at the time—especially when the unambiguous contents of those letters simply don't support the Siegels' newfound interpretation of the letters' meaning.

Even if the Court could concede that the May and September letters recognized the existence of a contract the Siegels clearly intended to rescind, the stated grounds on which the Siegels sought to rescind nevertheless do not warrant rescission as a matter of law.  Both letters cite the Siegels' disdain for DC's February 1, 2002 long-form draft contract as the basis for the breakdown in negotiations (or for rescission of the contract, as they now contend on remand).  But disputes over the terms of the long-form contract cannot invalidate or breach the underlying short-form agreement.

**ER 31**

*Clark v. Fiedler*, 44 Cal. App. 2d 838, 847 (1941) (allowing draft long-form agreements to undermine the earlier agreement would improperly allow a party to escape a contract "by simply suggesting other and additional terms"); *see Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1037–38 (9th Cir. 2011). And, "[o]f course, a mere notice purporting to rescind an agreement cannot have that effect unless the party giving such notice is entitled to rescind." *Brown v. Roberts*, 121 Cal. App. 654, 659 (1932).

The Court does acknowledge that a statement in the notice of certain grounds for rescission does not prevent the party from thereafter relying upon different and proper grounds. *Hull*, 211 Cal. at 167. The Siegels' Opposition to DC's Motion appears to do just that by arguing that DC had materially breached the October 19 agreement when it "failed to provide a royalty statement to the Siegels by March 31, 2001, as agreed in the October 19, 2001 Letter, and failed to pay or offer to pay the Siegels their royalties." (Opp'n 21; *see also id.* ("It is well-settled that a breach of the royalty provisions in a copyright contract can give rise to a right of rescission.").) But the Siegels' change of pace now is too little too late. As DC correctly notes, the Siegels have argued since the inception of this litigation only that no contract was formed with DC at all. Until now, they have not contended that DC breached the deal or that the Siegels rescinded it. Further, Federal Rule of Civil Procedure 8(d) permits parties to plead inconsistent defenses in the alternative, and the Siegels chose not to. "Allowing [the Siegels] to raise such defenses now—when DC was deprived discovery on them or the chance the litigate them before—would violate Rule 8, prejudice DC, and be an affront to the multiple courts that spent years adjudicating DC's settlement claim and Larson's defense that no deal was ever made." (Reply 6.)

In sum, the Court finds that the Siegels' May 9 and September 21, 2002 letters failed to effect a rescission under California Civil Code section 1691 because those letters do not clearly and objectively convey their intent to rescind an existing contract. The plain text of those letters manifestly conveyed the intent to *deny or*

**ER 32**

*repudiate* the very existence of a contract; grafting the intent to *rescind* onto those letters now—more than ten years after the fact—would be to entertain a fiction.

2.     *DC did not abandon the October 19, 2001 agreement or acquiesce to its rescission*

The Siegels also seek to destroy the current enforceability of the October 19 agreement on grounds that DC acquiesced in the Siegels' rescission or otherwise abandoned the October 19 agreement. They contend that Parsons's May 21, 2002, letter in response to their May 9 letter "did ***not*** argue that the Siegels were in breach or had otherwise acted improperly, nor did DC claim any rights under the October 19, 2001 Letter." (Opp'n 22 (citing SUF 28, 33).) But nor did the May 21 letter acquiesce to the Siegels' purported rescission (to the extent their May 9 letter could be construed as such). In fact, Parsons's May 21 letter actually *supports* the notion that an agreement existed on October 19 and would be followed by additional negotiations regarding the long-form contract. Parsons notes, "As in all negotiations, . . . we expected that you and your representatives would have comments and questions on the draft, which comments and questions we would need to resolve." (Adams Decl. Ex. 5.) And despite the Siegels' clear statement in their May 9 letter that "[a]fter four years we have no deal and this [February 1] contract makes an agreement impossible," Parsons persists in the May 21 response with the "hope that this agreement can be closed based upon the earlier discussions with your lawyers." *Id.* On its face, the May 21 letter simply does not support DC's acquiescence in any purported rescission by the Siegels.

As for the Siegels' contention that DC did nothing to enforce the October 19 agreement following receipt of their September 21 letter, this argument is belied by the entire course of this litigation. As DC notes, "Over the past eight years, DC spent *millions of dollars* litigating and enforcing the 2001 agreement." (Reply 10.) DC even specifically counterclaimed for breach of the October 19 agreement on October 18, 2005, noting that it "always has been and remains ready, willing, and able to

perform all of its obligations under the Agreement."  (First Amended Counterclaims (ECF No. 42) ¶ 99.)

Aside from the fact that the Siegels have waited nearly eight years to raise their abandonment and acquiescence defenses, those defenses are simply unsupported by the factual record and are insufficient to preclude the enforceability of the October 19 agreement.  Further, the parties' arguments regarding breach and repudiation are not properly before this Court on DC Comics's fourth counterclaim for declaratory relief, as those arguments go to performance of the October 19 agreement, not the agreement's underlying enforceability today.  Because the Court finds there was no rescission, acquiescence, or abandonment as a matter of law, the contract remains in existence and enforceable, and any claims for breach of that agreement are now appropriate in a separate state-law action for breach of contract.

## C.     The October 19, 2001 agreement transferred the Siegels Superman rights to DC

Having found that the October 19, 2001 agreement remains enforceable, the Court must now determine and declare "the parties' rights and obligations."  The pivotal dispute in this fray is whether the October 19 letter itself effected a transfer of the Siegels' Superman rights, or whether the actual transfer remains to be made.  According to DC, "the Ninth Circuit also held that the [October 19] contract satisfied all the requirements for a valid copyright transfer under the Copyright Act."  (Mot. 7.)  The Siegels respond that the October 19 letter could not have transferred the Siegels' copyrights because the very terms of that agreement state that "[t]he Siegel Family *would* transfer all of its rights in the 'Superman' and 'Spectre properties (including 'Superboy').'  (*See* Opp'n 1.)  They further maintain that should the Court accept "that the term 'would' is ambiguous – as opposed to flatly contradicting DC's interpretation – summary judgment in DC's favor remains improper."  (Opp'n 10.)

Viewed in a vacuum, the language of the October 19 agreement plainly supports the Siegels' contention that the agreement itself did *not* operate to transfer

ER 34

the Siegels' Superman rights to DC Comics. The plain language of the agreement—"The Siegel Family *would* transfer all of its rights"—suggests that the transfer wasn't immediately operative. Rather, insofar as the October 19 letter was a valid contract, it appears to have created a contractual duty on the Siegels' part to transfer their rights and a contractual right on DC's part to receive those rights.

Nevertheless, a somewhat perplexing aspect of the Ninth Circuit's mandate cause the Court to question its reading of the October 19 agreement in this way. It appears instead that the Ninth Circuit implicitly found the October 19 agreement to constitute "an agreement transferring ownership of a copyright" under 17 U.S.C. § 204(a).

In their briefs before the Ninth Circuit, the Siegels argued that the October 19 letter could not have created an enforceable contract because "a written contract was required as a matter of law" under 17 U.S.C. § 204(a), and "Marks'[s] October 19 Letter could not possibly qualify as the required 'writing.'" (Kline Decl. Ex B, at 123–25.) Thus, the Siegels posited on appeal that "[t]he October 19 Letter is not 'a transfer' of the Siegels' copyrights to Warner; rather, it contemplates that the Siegels 'would [make such] transfer in a final executed agreement." (*Id.* at 125.) The Siegels' counsel made an identical argument at oral argument: "Marks' letter does not assign any trans— any copyrights. It says, 'We will. We anticipate signing those contracts.'" (Adams Decl. Ex. 19, at 364:5–7.)

Apparently in direct response to the Siegels' arguments, the Circuit explicitly found that § 204(a) was not "a bar to the validity of [the October 19] contract[, as] that statute expressly permits an agreement transferring ownership of a copyright to be signed by a 'duly authorized agent' of the copyright owner, and [the Siegels do] not contest that the heirs' attorney was such an agent." This Court reads this language to reflect the Ninth Circuit's view that the October 19 letter *was* a proper written transfer of copyright ownership under § 204(a) signed by the Siegels' duly authorized agent. Indeed, § 204(a) solely concerns the "transfer of copyright ownership, other than by

operation of law"; had the Ninth Circuit determined that the October 19 agreement did not itself operate as a presently operative transfer of the Siegels' Superman rights to DC, there would have been no need to raise § 204(a) at all.  The Court therefore holds, in keeping with the Ninth Circuit's mandate, that the October 19, 2001 agreement operated to transfer the Siegels' Superman rights to DC as of the date of that agreement.

Finally, the Court notes that the determination whether the Siegels have already transferred their rights is of little consequence to the final resolution of this case considering the Court's holding that the agreement remains enforceable.  The Court is bound by the Ninth Circuit's implied finding that the October 19 letter did in fact transfer copyright ownership under § 204(c).  But to the extent one prefers this Court's reading of the agreement over the Ninth Circuit's presumed reading, the Siegels maintain that "[a] declaration that [the Siegels are] still obligated, under the October 19, 2001 Letter, to transfer her Superman rights to DC is procedurally flawed and does little to resolve this matter" because DC would have to seek specific performance to enforce that obligation.  (Opp'n 12.)  To this, the Court responds that its declaration that the October 19, 2001 agreement remains enforceable *does* conclude this matter, as DC seeks *only* declaratory relief.  How DC would choose to proceed from here armed with a declaration that the contract remained enforceable but that the Siegels were still obligated to effect the transfer is beyond the purview of this Court.

In short, DC's fourth counterclaim seeks only declaratory—not affirmative— relief.  The Court **GRANTS** DC's motion for summary judgment on DC's fourth counterclaim and holds that the October 19, 2001 agreement remains enforceable and operated itself to transfer the Siegels Superman rights to DC.  This ends this Court's involvement in the parties' dispute (save for resolution of the Superboy and Superman Ad issue, as discussed below).  That DC may have additional rights and duties

/ / /

**ER 36**

flowing from the Court's declaration that the October 19 agreement does not prevent final termination of this case.

**D.  The Court requires additional briefing on the issues of Superboy and Superman ads**

What may preclude immediate closure of this chapter of the continuing Superman saga, however, is the lingering issue of what to do with Superboy and the early Superman ads.

Upon review of the parties' papers and the nearly insurmountable record in these cases, the Court has determined that it requires additional briefing on the effect of the October 19, 2001 agreement on the Superboy and early Superman ad works. The parties are therefore **ORDERED** to file supplemental briefs addressing how the Court's holding that the October 19 agreement remains binding and enforceable today affects the parties' respective rights to Superboy and the Superman ad works. The briefs should not exceed 15 pages in length and should devote particular attention to the relevant factual and procedural history with respect to these works, including the continued effect various earlier rulings by the Court have on these claims today. The briefs must also include a brief proposal for swift resolution of the Superboy and Superman ad issues should the Court find that the October 19 agreement does not extend to these works. The parties shall submit all documents on which they rely as exhibits. The parties' supplemental briefs are due no later than 5:00 p.m. on Thursday, March 28, 2013.

## V.  CONCLUSION

Because there has, to date, been no unequivocal rescission or termination of the October 19, 2001 agreement (embodied in Kevin Marks' letter of the same date), that agreement remains binding and enforceable. As a result, the parties are bound by the terms memorialized in Marks's October 19 letter; nothing more. *See Facebook*, 640 F.3d at 1038. Whether and how that right has been affected by the parties' actions after October 19, 2001, is not now before the Court, as DC has voluntarily

ER 37

dismissed its third counterclaim for breach of contract, and the Siegels do not assert any contract claims related to the October 19 agreement.  Thus, to the extent that any party contends any delay in performance or other breach gives rise to any damages, such a claim is properly subject to a separate state-court action for breach of contract.

Because the Court finds that DC must prevail on its fourth counterclaim as a matter of law, the Court dismisses DC's third counterclaim as moot.  The Court will enter judgment and close this case following resolution of the lingering Superboy and Superman Ad issues.

**IT IS SO ORDERED.**

March 20, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing with the Clerk of the Court for the

United States Court of Appeals for the Ninth Circuit by using the appellate

CM/ECF system on February 21, 2014, and that all participants in the case are

registered CM/ECF users.


Dated:  February 21, 2014                    /s/ Marc Toberoff
                                                        Marc Toberoff