APPEAL CASE NOS. 13-56243, 13-56244
CROSS-APPEAL CASE NOS. 13-56257, 13-56259

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

LAURA SIEGEL LARSON

*Plaintiff, Counterclaim-Defendant, Appellant, and Cross-Appellee.*

v.

WARNER BROS. ENTERTAINMENT INC., DC COMICS

*Defendants, Counterclaimants, Appellees, and Cross-Appellants.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
THE HONORABLE OTIS D. WRIGHT II, JUDGE
CASE NOS. CV-04-8400 ODW (RZx), CV-04-8776 (RZx)

_____

**APPELLANT LAURA SIEGEL LARSON'S EXCERPTS OF RECORD
VOL. 8 OF 16**

_____

TOBEROFF & ASSOCIATES, P.C.
Marc Toberoff
 *mtoberoff@ipwla.com*
Keith G. Adams
 *kadams@toberoffandassociates.com*
22337 Pacific Coast Highway, #348
Malibu, CA 90265
Telephone:  (310) 246-3333
Facsimile:  (310) 246-3101

*Attorneys for Plaintiff-Appellant, Laura  Siegel
Larson, individually and as personal
representative of the Estate of Joanne Siegel*

# INDEX TO EXCERPTS OF RECORD (Volume 8)

*Larson v. Warner Bros. Entertainment Inc. et al.,*
CD Cal Case No. 04-CV-08400

| Docket No. | Filing Date | Document Title | Vol. | Page |
|---|---|---|---|---|
| 680 | 12/2/11 | *Exhibit A:  Excerpt from October 7, 2006 deposition of Kevin Marks* | 8 | 1729 |
| 602 | 12/21/09 | Joint Status Report | 8 | 1773 |
| 373-3 | 9/29/08 | Declaration of Dennis Kitchen re: Defendants' September 26, 2008 Objections | 8 | 1798 |
| 373-3 | 9/29/08 | *Exhibit A:  November 12, 1934 Correspondence from Jerome Siegel to Russell Keaton* | 8 | 1801 |
| 364-2 | 9/22/08 | Declaration of Marc Toberoff re: Objections to September 18, 2008 Objections and Exhibit A (Thompson & Thompson Report) | 8 | 1714 |
| 364-1 | 9/22/08 | *Exhibit A:  February 1996 Thompson & Thompson Copyright Report re:  Superman* | 8 | 1817 |
| 361-1 | 9/18/08 | Exhibit B: Declaration of Michael Bergman re:  Objections to Plaintiffs' July 28, 2008 Brief | 8 | 1827 |
| 361-3 | 9/18/08 | *Exhibit C:  Copyright Registrations for the First Two Weeks of "Superman" Newspaper Strips* | 8 | 1830 |

| 353-1 | 8/5/08 | Declaration of Michael Bergman re: Response in Objection to Motion | 8 | 1867 |
|---|---|---|---|---|
| 353-2 | 8/5/08 | *Exhibit A – January 10, 1938 letter from Vin Sullivan to Jerome Siegel* | 8 | 1871 |
| 353-2 | 8/5/08 | *Exhibit B – September 28, 1938 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1873 |
| 353-2 | 8/5/08 | *Exhibit C – September 30, 1938 letter from Jerome Siegel to J.S. Liebowitz* | 8 | 1877 |
| 353-2 | 8/5/08 | *Exhibit D – April 21, 1938 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1879 |
| 353-2 | 8/5/08 | *Exhibit E – January 23, 1940 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1882 |
| 353-2 | 8/5/08 | *Exhibit F – February 8, 1940 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1885 |
| 353-2 | 8/5/08 | *Exhibit G – May 2, 1940 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1887 |
| 353-2 | 8/5/08 | *Exhibit H – November 5, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1890 |
| 353-2 | 8/5/08 | *Exhibit I – January 22, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1893 |

| 353-2 | 8/5/08 | *Exhibit J – January 29, 1940 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1896 |
|---|---|---|---|---|
| 353-2 | 8/5/08 | *Exhibit K – March 18, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1899 |
| 353-2 | 8/5/08 | *Exhibit L – November 4, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1901 |
| 353-2 | 8/5/08 | *Exhibit M – February 19, 1941 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1903 |
| 353-3 | 8/5/08 | *Exhibit N – November 12, 1942 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1906 |
| 353-3 | 8/5/08 | *Exhibit O – February 21 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1908 |
| 353-3 | 8/5/08 | *Exhibit P – February 3, 1947 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1910 |
| 353-3 | 8/5/08 | *Exhibit Q – Exhibit showing 1937-1947 payments to Siegel and Shuster* | 8 | 1914 |
| 353-3 | 8/5/08 | *Exhibit R – Renewal Certificates for Post-March 1, 1938 Superman Works* | 8 | 1916 |
| 347 | 7/28/08 | Declaration of Marc Toberoff re: Plaintiffs' Memorandum of Points | 8 | 1946 |

| | | and Authorities in Opposition and Exhibits A-JJ | | |
|---|---|---|---|---|
| 347-2 | 7/28/08 | *Exhibit A – Seven-Page Superman Synopsis* | 8 | 1951 |
| 347-2 | 7/28/08 | *Exhibit B – November 21, 1974 letter from Jerome Siegel to Laura Siegel* | 8 | 1959 |
| 347-2 | 7/28/08 | *Exhibit C – June 12, 1934 letter from Jerome Siegel to Russell Keaton* | 8 | 1962 |
| 347-2 | 7/28/08 | *Exhibit D – Superman story illustrated by Russell Keaton* | 8 | 1964 |
| 347-3 | 7/28/08 | *Exhibit E – Continuity for 15 daily "Superman" Newspaper Strips, c. 1934* | 8 | 1974 |
| 347-4 | 7/28/08 | *Exhibit G – Action Comics, No. 2* | 8 | 1981 |
| 347-5 | 7/28/08 | *Exhibit H – Action Comics, No. 3* | 8 | 1990 |
| 347-6 | 7/28/08 | *Exhibit I – Action Comics, No. 4* | 8 | 1999 |
| 347-7 | 7/28/08 | *Exhibit J – Action Comics, No. 5* | 8 | 2008 |
| 347-8 | 7/28/08 | *Exhibit K – Action comics, No. 6* | 8 | 2015 |
| 347-9 | 7/28/08 | *Exhibit L – Excerpts from Superman, No. 1* | 8 | 2024 |

# INDEX TO EXCERPTS OF RECORD (all volumes)

| Docket No. | Filing Date | Document Title | Vol. | Page |
|---|---|---|---|---|
| 735 | 6/18/13 | 59(e) Amended Judgment | 1 | 1 |
| 734 | 6/18/13 | 59(e) Order | 1 | 6 |
| 724 | 4/18/13 | "Final Judgment" In Superman | 1 | 8 |
| 723 | 4/18/13 | Order Granting Motion For Summary Judgment Re: Superboy And The Superman Ads | 1 | 12 |
| 717 | 3/20/13 | Order Granting In Part Defendant's Motion For Summary Judgment | 1 | 23 |
| 714 | 3/12/13 | Order Granting Plaintiff Leave to File A Sur-Reply | 2 | 39 |
| 740 | 7/17/13 | Defendants Notice Of Cross-Appeal | 2 | 41 |
| 738 | 7/16/13 | Plaintiff's Notice of Appeal | 2 | 43 |
| 595 | 10/30/09 | Order on Motion for Reconsideration | 2 | 45 |
| 560 | 8/12/09 | Order on Additional Issues | 2 | 87 |
| 293 | 3/26/08 | Order on the Parties' Cross-Motions for Summary Judgment | 2 | 186 |
| 9th Cir. Case 11-55863, | 1/10/13 | Memorandum Disposition [Of Prior Appeal] | 2 | 272 |

| 70-1 | | | | |
|---|---|---|---|---|
| 674 | 6/15/11 | Defendant's Prior Notice of Cross-Appeal | 2 | 278 |
| 671 | 5/27/11 | Plaintiff's Prior Notice of Appeal | 2 | 280 |
| 669 | 5/17/11 | Judgment | 2 | 282 |
| 667 | 5/17/11 | Order Granting Plaintiff's Motion for Entry of Judgment Pursuant to Rule 54(b) | 2 | 285 |
| 664 | 5/5/11 | Order Vacating March 15, 2011 Judgment and Striking Superfluous Allegations from Counterclaim | 2 | 287 |
| 659 | 3/15/11 | Order Granting rule 54(b) Motion | 2 | 288 |
| 656 | 3/3/11 | Answer to Second Amended Counterclaims | 2 | 292 |
| 646 | 2/17/11 | Second Amended Counterclaims | 3 | 323 |
| 645 | 2/17/11 | Answer to Third Amended Complaint | 3 | 361 |
| 644 | 2/3/11 | Third Amended Complaint | 3 | 374 |
| 733 | 6/17/13 | Plaintiff's 59(e) Reply | 3 | 399 |
| 732 | 6/5/13 | Defendants' 59(e) Opposition | 3 | 416 |
| 731 | 5/16/13 | Plaintiff's 59(e) Motion | 3 | 437 |
| 731-1 | 5/16/13 | Plaintiff's Proposed 59(e) Order | 3 | 468 |
| 731-2 | 5/16/13 | Plaintiff's Proposed 59(e) Judgment | 3 | 470 |
| 730 | 5/16/13 | Declaration of Patrick T. Perkins In | 3 | 475 |

|  |  | Support of Defendants' Reply In Support Of Application to Tax Costs |  |  |
|---|---|---|---|---|
| 730 | 5/16/13 | *Exhibit 1: Invoice For Steranko Deposition* | 3 | 479 |
| 730 | 5/16/13 | *Exhibit 2: Invoice For Evanier Deposition* | 3 | 481 |
| 730 | 5/16/13 | *Exhibit 3: Invoice for Lewellen Deposition* | 3 | 483 |
| 730 | 5/16/13 | *Exhibit 4: Invoice for Larson Deposition* | 3 | 485 |
| 729 | 5/14/13 | Defendants' Reply In Support of Application to Tax Costs | 3 | 487 |
| 729-1 | 5/14/13 | Declaration of Brian Pearl In Support of Defendants' Reply in support of Application to Tax Costs | 3 | 498 |
| 729-1 | 5/14/13 | *Exhibit A: Transcript Cover Sheet for Peary Deposition* | 3 | 501 |
| 729-1 | 5/14/13 | *Exhibit B: Transcript Cover Sheet for Peavy Deposition* | 3 | 504 |
| 729-1 | 5/14/13 | *Exhibit C: Transcript Cover Sheet for Feiffer Deposition* | 3 | 507 |
| 729-1 | 5/14/13 | *Exhibit D: Transcript Cover Sheet for Steranko Deposition* | 3 | 511 |
| 729-1 | 5/14/13 | *Exhibit E: Transcript Cover Sheet for Evanier Deposition* | 3 | 514 |
| 729-1 | 5/14/13 | *Exhibit F: Transcript Cover Sheet* | 3 | 518 |

| | | | | |
|---|---|---|---|---|
| | | *for Lewellen Deposition* | | |
| 729-1 | 5/14/13 | *Exhibit G: Transcript Cover Sheet for Larson Deposition* | 3 | 522 |
| 729-1 | 5/14/13 | *Exhibit H: Transcript Cover Sheet for Halloran Deposition* | 3 | 526 |
| 722 | 4/4/13 | Plaintiff's Supplemental Brief re: "Ads" and "Superboy" | 3 | 530 |
| 722-1 | 4/4/13 | Declaration of Keith Adams In Support Of Plaintiff's Supplemental Brief re: "Ads" and "Superboy" | 3 | 549 |
| 722-1 | 4/4/13 | *Exhibit 1: Excerpts from April 12, 1947 Findings of Fact and Conclusions of Law* | 3 | 553 |
| 722-1 | 4/4/13 | *Exhibit 2: October 19, 2001 letter from Kevin Marks to John Schulman* | 3 | 560 |
| 722-1 | 4/4/13 | *Exhibit 3: October 26, 2001 letter from Schulman to Marks* | 3 | 566 |
| 722-1 | 4/4/13 | *Exhibit 4: February 1, 2002 letter from Patrick Perkins to Marks* | 4 | 574 |
| 722-1 | 4/4/13 | *Exhibit 5: November 8, 2002 Notice of Termination re: Superboy* | 4 | 631 |
| 722-1 | 4/4/13 | *Exhibit 6: March 23, 2006 Summary Judgment Order in Superboy Case* | 4 | 644 |
| 722-1 | 4/4/13 | *Exhibit 7: June 12, 2006 Affidavit of Damon Bonesteel* | 4 | 661 |

| 722-1 | 4/4/13 | *Exhibit 8:  Excerpts from DC's April 30, 2007 Motion for Summary Judgment* | 4 | 672 |
|---|---|---|---|---|
| 722-1 | 4/4/13 | *Exhibit 9:  Excerpts from DC's June 25, 2007 Reply re: Summary Judgment* | 4 | 689 |
| 722-1 | 4/4/13 | *Exhibit 10:  September 10, 2007 Affidavit of Donna Josephson* | 4 | 714 |
| 722-1 | 4/4/13 | *Exhibit 11:  Excerpts from September 17, 2007 Oral Argument in Superman and Superboy Cases* | 4 | 717 |
| 722-1 | 4/4/13 | *Exhibit 12:  March 5, 2012 Notice of Termination re: Superman Advertisements* | 4 | 756 |
| 722-1 | 4/4/13 | *Exhibit 13:  DC's Fourth Brief on Cross-Appeal in the Siegel Appeal, filed on June 19, 2012* | 4 | 762 |
| 722-1 | 4/4/13 | *Exhibit 14:  September 5, 2012 Oral Argument in the Siegel Appeal* | 4 | 798 |
| 722-2 | 4/4/13 | Declaration of Laura Siegel Larson In Support Of Plaintiff's Supplemental Brief re: "Ads" and "Superboy" | 4 | 840 |
| 721 | 4/4/13 | Defendants' Supplemental Brief re: "Ads" and "Superboy" | 4 | 842 |
| 715 | 3/18/13 | Plaintiff's Court Authorized Sur-Reply re: Defendants' Motion for Summary Judgment | 4 | 867 |

| 713 | 3/8/13 | Defendants' Response to Plaintiffs Genuine Issues and Additional Facts re: Defendants' Motion for Summary Judgment | 5 | 873 |
|---|---|---|---|---|
| 711 | 3/8/13 | Defendants' Reply In Support Of Defendants' Motion for Summary Judgment | 5 | 943 |
| 711-1 | 3/8/13 | Declaration of Matthew T. Kline In Support Of Defendants' Motion for Summary Judgment | 5 | 961 |
| 711-2 | 3/8/13 | *Exhibit A: Appellant Laura Siegel Larson's First Brief On Cross-Appeal, filed in Ninth Circuit Case Nos. 11-55863, 11-56034, DN 12* | 5 | 964 |
| 711-2 | 3/8/13 | *Exhibit B: Appellant Laura Siegel Larson's Third Brief On Cross-Appeal, filed in Ninth Circuit Case Nos. 11- 55863, 11-56034, DN 43-1* | 5 | 1048 |
| 711-2 | 3/8/13 | *Exhibit C: Reply Brief Of Cross-Appellants And Appellees Warner Bros. Entertainment Inc. And DC Comics, filed in Ninth Circuit Case Nos. 11-55863, 11-56034, DN 49* | 6 | 1139 |
| 711-2 | 3/8/13 | *Exhibit D: Letter from Marc Toberoff to Daniel Petrocelli, dated March 7, 2013.* | 6 | 1176 |
| 711-2 | 3/8/13 | *Exhibit E: Excerpt from the transcript of the deposition of Laura Siegel Larson, dated August 1,* | 6 | 1179 |

| | | | | |
|---|---|---|---|---|
| | | *2006.* | | |
| 711-2 | 3/8/13 | *Exhibit F:  Excerpt from Plaintiffs Joanne Siegel And Laura Siegel Larson's Responses To Defendant DC Comics' First Set Of Interrogatories No. 1-19, dated January 25, 2006.* | 6 | 1185 |
| 709 | 3/4/13 | Plaintiff's Opposition to Defendants' Motion for Summary Judgment | 6 | 1192 |
| 709-1 | 3/4/13 | Plaintiff's Statement of Genuine Issues and Additional Facts re: Defendants' Motion for Summary Judgment | 6 | 1224 |
| 709-2 | 3/4/13 | Declaration of Keith Adams In Support Of Plaintiff's Opposition to Defendants' Motion for Summary Judgment | 6 | 1252 |
| 709-2 | 3/4/13 | *Exhibit 1:  October 19, 2001 letter from Kevin Marks to John Schulman* | 6 | 1257 |
| 709-2 | 3/4/13 | *Exhibit 2:  October 26, 2001 letter from Schulman to Marks* | 6 | 1263 |
| 709-2 | 3/4/13 | *Exhibit 3: February 1, 2002 letter from Patrick Perkins to Marks* | 6 | 1271 |
| 709-2 | 3/4/13 | *Exhibit 4:  May 9, 2002 letter from Joanne Siegel to Richard D. Parsons* | 6 | 1328 |
| 709-2 | 3/4/13 | *Exhibit 5:  May 22, 2002 letter from* | 6 | 1331 |

| | | | | |
|---|---|---|---|---|
| | | *Parsons to Joanne Siegel* | | |
| 709-2 | 3/4/13 | *Exhibit 6: September 21, 2002 letter from the Siegels to Marks* | 6 | 1332 |
| 709-2 | 3/4/13 | *Exhibit 7: November 8, 2002 Notice of Termination re: Superboy* | 6 | 1333 |
| 709-2 | 3/4/13 | *Exhibit 8: Letter sent by Ari Emanuel to Bruce Rosenblum* | 6 | 1346 |
| 709-2 | 3/4/13 | *Exhibit 9: Excerpts from August 1, 2006 deposition of Laura Siegel Larson* | 6 | 1347 |
| 709-2 | 3/4/13 | *Exhibit 10: Excerpts from October 7, 2006 deposition of Kevin Marks* | 6 | 1354 |
| 709-2 | 3/4/13 | *Exhibit 11: Excerpts from November 2, 2006 deposition of Ari Emanuel* | 6 | 1388 |
| 709-2 | 3/4/13 | *Exhibit 12: Excerpts from November 11, 2006 deposition of Paul Levitz* | 6 | 1402 |
| 709-2 | 3/4/13 | *Exhibit 13: Excerpts from Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, filed May 29, 2007* | 6 | 1416 |
| 709-2 | 3/4/13 | *Exhibit 14: October 23, 2007 Order* | 7 | 1436 |
| 709-2 | 3/4/13 | *Exhibit 15: March 5, 2012 Notice of Termination re: Superman Advertisements* | 7 | 1441 |

| | | | | |
|---|---|---|---|---|
| 709-2 | 3/4/13 | *Exhibit 16: DC's Second Brief on Cross-Appeal in the Siegel Appeal, filed on March 23, 2012* | 7 | 1447 |
| 709-2 | 3/4/13 | *Exhibit 17: Larson's Third Brief on Cross-Appeal in the Siegel Appeal, filed on May 24, 2012.* | 7 | 1506 |
| 709-2 | 3/4/13 | *Exhibit 18: DC's Fourth Brief on Cross-Appeal in the Siegel Appeal, filed on June 19, 2012* | 7 | 1562 |
| 709-2 | 3/4/13 | *Exhibit 19: September 5, 2012 Oral Argument in the Siegel Appeal* | 7 | 1579 |
| 709-2 | 3/4/13 | *Exhibit 20: January 29, 2013 Letter from Daniel Petrocelli to Marc Toberoff* | 7 | 1621 |
| 709-2 | 3/4/13 | *Exhibit 21: February 9, 2013 Letter from Toberoff to Petrocelli* | 7 | 1623 |
| 709-2 | 3/4/13 | *Exhibit 22: February 12, 2013 Letter from Petrocelli to Toberoff* | 7 | 1626 |
| 709-2 | 3/4/13 | *Exhibit 23: Excerpts from DC's Statement of Genuine Issue re: Motion for Summary Judgment in DC Comics, filed on February 16, 2013.* | 7 | 1628 |
| 709-2 | 3/4/13 | *Exhibit 24: February 27, 2013 Letter from Toberoff to Petrocelli* | 7 | 1632 |
| 709-2 | 3/4/13 | *Exhibit 25: February 28, 2013 Letter from Petrocelli to Toberoff* | 7 | 1633 |
| 708 | 2/25/13 | Joint Status Report Re: The Superman and Superboy Cases | 7 | 1635 |

xiii

| 702 | 2/7/13 | Defendants' Motion for Summary Judgment | 7 | 1651 |
|---|---|---|---|---|
| 702-1 | 2/7/13 | Declaration of Daniel M. Petrocelli In Support Of Defendants' Motion for Summary Judgment | 7 | 1663 |
| 702-2 | 2/7/13 | *Exhibit A: Email Correspondence between Parties Counsel re: Motion for Summary Judgment* | 7 | 1666 |
| 702-2 | 2/7/13 | *Exhibit B: October 19, 2001 letter from Kevin Marks to John Schulman* | 7 | 1683 |
| 702-2 | 2/7/13 | *Exhibit C: Excerpts from DC's Reply In Support Of Motion for Partial Summary Judgment on Its First and Third Claims For Relief in Pacific Pictures case, Case No. CV-10-3633, DN 468* | 7 | 1691 |
| 702-2 | 2/7/13 | *Exhibit D: Order Granting Plaintiff's Motion for Partial Summary Judgment and Denying Defendants' Cross-Motion in Pacific Pictures case, Case No. CV-10-3633, DN 507* | 7 | 1694 |
| 702-3 | 2/7/13 | Defendants' Proposed Statement of Uncontroverted Facts and Conclusions of Law | 7 | 1713 |
| 702-4 | 2/7/13 | Defendant's Proposed Summary Judgment Order | 7 | 1718 |
| 702-5 | 2/7/13 | Defendants' Proposed Judgment | 7 | 1720 |

| 681 | 12/5/11 | Order Certifying and Forwarding Supplemental Record | 7 | 1724 |
|---|---|---|---|---|
| 680 | 12/2/11 | Joint Stipulation To Certify And Forward Supplemental Record | 7 | 1726 |
| 680 | 12/2/11 | *Exhibit A:  Excerpt from October 7, 2006 deposition of Kevin Marks* | 8 | 1729 |
| 602 | 12/21/09 | Joint Status Report | 8 | 1773 |
| 373-3 | 9/29/08 | Declaration of Dennis Kitchen re: Defendants' September 26, 2008 Objections | 8 | 1798 |
| 373-3 | 9/29/08 | *Exhibit A:  November 12, 1934 Correspondence from Jerome Siegel to Russell Keaton* | 8 | 1801 |
| 364-2 | 9/22/08 | Declaration of Marc Toberoff re: Objections to September 18, 2008 Objections and Exhibit A (Thompson & Thompson Report) | 8 | 1714 |
| 364-1 | 9/22/08 | *Exhibit A:  February 1996 Thompson & Thompson Copyright Report re:  Superman* | 8 | 1817 |
| 361-1 | 9/18/08 | Exhibit B: Declaration of Michael Bergman re:  Objections to Plaintiffs' July 28, 2008 Brief | 8 | 1827 |
| 361-3 | 9/18/08 | *Exhibit C:  Copyright Registrations for the First Two Weeks of "Superman" Newspaper Strips* | 8 | 1830 |
| 353-1 | 8/5/08 | Declaration of Michael Bergman re: | 8 | 1867 |

| | | Response in Objection to Motion | | |
|---|---|---|---|---|
| 353-2 | 8/5/08 | *Exhibit A – January 10, 1938 letter from Vin Sullivan to Jerome Siegel* | 8 | 1871 |
| 353-2 | 8/5/08 | *Exhibit B – September 28, 1938 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1873 |
| 353-2 | 8/5/08 | *Exhibit C – September 30, 1938 letter from Jerome Siegel to J.S. Liebowitz* | 8 | 1877 |
| 353-2 | 8/5/08 | *Exhibit D – April 21, 1938 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1879 |
| 353-2 | 8/5/08 | *Exhibit E – January 23, 1940 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1882 |
| 353-2 | 8/5/08 | *Exhibit F – February 8, 1940 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1885 |
| 353-2 | 8/5/08 | *Exhibit G – May 2, 1940 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1887 |
| 353-2 | 8/5/08 | *Exhibit H – November 5, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1890 |
| 353-2 | 8/5/08 | *Exhibit I – January 22, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1893 |
| 353-2 | 8/5/08 | *Exhibit J – January 29, 1940 letter from J.S. Liebowitz to Jerome* | 8 | 1896 |

| | | *Siegel* | | |
|---|---|---|---|---|
| 353-2 | 8/5/08 | *Exhibit K – March 18, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1899 |
| 353-2 | 8/5/08 | *Exhibit L – November 4, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1901 |
| 353-2 | 8/5/08 | *Exhibit M – February 19, 1941 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1903 |
| 353-3 | 8/5/08 | *Exhibit N – November 12, 1942 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1906 |
| 353-3 | 8/5/08 | *Exhibit O – February 21 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1908 |
| 353-3 | 8/5/08 | *Exhibit P – February 3, 1947 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1910 |
| 353-3 | 8/5/08 | *Exhibit Q – Exhibit showing 1937-1947 payments to Siegel and Shuster* | 8 | 1914 |
| 353-3 | 8/5/08 | *Exhibit R – Renewal Certificates for Post-March 1, 1938 Superman Works* | 8 | 1916 |
| 347 | 7/28/08 | Declaration of Marc Toberoff re: Plaintiffs' Memorandum of Points and Authorities in Opposition and Exhibits A-JJ | 8 | 1946 |

| 347-2 | 7/28/08 | *Exhibit A – Seven-Page Superman Synopsis* | 8 | 1951 |
|---|---|---|---|---|
| 347-2 | 7/28/08 | *Exhibit B – November 21, 1974 letter from Jerome Siegel to Laura Siegel* | 8 | 1959 |
| 347-2 | 7/28/08 | *Exhibit C – June 12, 1934 letter from Jerome Siegel to Russell Keaton* | 8 | 1962 |
| 347-2 | 7/28/08 | *Exhibit D – Superman story illustrated by Russell Keaton* | 8 | 1964 |
| 347-3 | 7/28/08 | *Exhibit E – Continuity for 15 daily "Superman" Newspaper Strips, c. 1934* | 8 | 1974 |
| 347-4 | 7/28/08 | *Exhibit G – Action Comics, No. 2* | 8 | 1981 |
| 347-5 | 7/28/08 | *Exhibit H – Action Comics, No. 3* | 8 | 1990 |
| 347-6 | 7/28/08 | *Exhibit I – Action Comics, No. 4* | 8 | 1999 |
| 347-7 | 7/28/08 | *Exhibit J – Action Comics, No. 5* | 8 | 2008 |
| 347-8 | 7/28/08 | *Exhibit K – Action comics, No. 6* | 8 | 2015 |
| 347-9 | 7/28/08 | *Exhibit L – Excerpts from Superman, No. 1* | 8 | 2024 |
| 347-9 | 7/28/08 | *Exhibit M – June 21, 1941 Saturday Evening Post Article, "Up, Up and Awa-a-y"* | 9 | 2029 |
| 347-9 | 7/28/08 | *Exhibit N – Excerpts from Trial Transcript of 1947 Action* | 9 | 2036 |

| 347-9 | 7/28/08 | *Exhibit O – December 4, 1937 Agreement between Jerome Siegel, Joseph Shuster, and Detective Comics, Inc.* | 9 | 2050 |
|-------|---------|------|---|------|
| 347-9 | 7/28/08 | *Exhibit P – September 22, 1938 Agreement between Jerome Siegel, Joseph Shuster, and Detective Comics, Inc.* | 9 | 2053 |
| 347-9 | 7/28/08 | *Exhibit Q – Seprember 22, 1938 Agreement between the McClure Newspaper Syndicate, Jerome Siegel, Joseph Shuster, and Detective Comics, Inc.* | 9 | 2057 |
| 347-9 | 7/28/08 | *Exhibit R – Excerpts from "The Creation of a Superhero" by Jerome Siegel* | 9 | 2061 |
| 347-9 | 7/28/08 | *Exhibit S – April 18, 1938 letter from Jerome Siegel to J.S. Liebowitz* | 9 | 2068 |
| 347-9 | 7/28/08 | *Exhibit T – September 7, 1938 letter from Chas Lounsbury to Jerome Siegel* | 9 | 2070 |
| 347-9 | 7/28/08 | *Exhibit U – Excerpts from Superman: The Dailies* | 9 | 2073 |
| 347-9 | 7/28/08 | *Exhibit V – Copyright Registration Certificate for Superman No. 1* | 9 | 2080 |
| 347-10 | 7/28/08 | *Exhibit W – Excerpts from the United States Copyright Office Catalogue of Copyright Entries* | 9 | 2083 |

| 347-10 | 7/28/08 | *Exhibit X – March 1, 1973 Affidavit of Jerome Siegel* | 9 | 2098 |
|---|---|---|---|---|
| 347-10 | 7/28/08 | *Exhibit Y – Excerpts from Superman: Sunday Classics* | 9 | 2110 |
| 347-10 | 7/28/08 | *Exhibit Z - Excerpts from Superman: The Dailies* | 9 | 2119 |
| 347-11 | 7/28/08 | *Exhibit AA – Excerpts from the February 27, 2007 deposition of Mark Waid* | 9 | 2130 |
| 347-11 | 7/28/08 | *Exhibit BB – Article "K-Metal: The Lost Superman Tale" by Mark Waid* | 9 | 2153 |
| 347-11 | 7/28/08 | *Exhibit CC – Unpublished 26-page Superman story* | 9 | 2161 |
| 347-12 | 7/28/08 | *Exhibit DD – Checks and Bank Statements from the American Artists League* | 9 | 2175 |
| 347-12 | 7/28/08 | *Exhibit EE – Excerpts from the business ledger of Jerome Siegel* | 9 | 2196 |
| 347-12 | 7/28/08 | *Exhibit FF – Excerpts from the July 8, 1969 deposition of Jerome Siegel* | 9 | 2204 |
| 347-12 | 7/28/08 | *Exhibit GG – Excerpts from The Story Behind Superman No. 1 by Jerome Siegel* | 9 | 2208 |
| 340 | 7/21/08 | Declaration of Michael Bergman in Support of Defendants' Brief on Additional Issues | 9 | 2211 |
| 340-1 | 7/21/08 | *Exhibit A:  December 19, 1939* | 9 | 2213 |

| | | Agreement between Jerome Siegel, Joseph Shuster and Detective Comics, Inc. | | |
|---|---|---|---|---|
| 340-1 | 7/21/08 | *Exhibit B:  April 8, 1938 letter from J.S. Liebowitz to Jerome Siegel* | 9 | 2217 |
| 337 | 7/21/08 | Declaration of Keith Adams re: Plaintiff's Memorandum of Points and Authorities Pursuant to the Court's July 3, 2008 Order | 9 | 2219 |
| 337-2 | 7/21/08 | *Exhibit A:  Stipulation re: Scheduling Order and Order Thereon, entered by the Court on March 20, 2007* | 9 | 2227 |
| 337-2 | 7/21/08 | *Exhibit G:  January 12, 2007 Expert Report of James Steranko* | 9 | 2235 |
| 337-2 | 7/21/08 | *Exhibit H:  January 12, 2007 Expert Report of Mark Evanier* | 9 | 2259 |
| 337-3 | 7/21/08 | *Exhibit I:  February 9, 2007 Expert Rebuttal Report of Mark Evanier* | 9 | 2284 |
| 337-3 | 7/21/08 | *Exhibit J:  Excerpts from the March 30, 2007 Deposition of Mark Evanier* | 10 | 2316 |
| 337-3 | 7/21/08 | *Exhibit M:  Excerpts from "The Creation of a Superhero" by Jerome Siegel* | 10 | 2331 |
| 290 | 2/21/08 | Stipulation for Order Requesting Status Conference and Briefing Schedule | 10 | 2336 |

| 196 | 6/25/07 | Reply Declaration of Marc Toberoff In Support Of Plaintiff's Motion for Partial Summary Judgment | 10 | 2340 |
|---|---|---|---|---|
| 196 | 6/25/07 | *Exhibit A:  Tolling Agreement Between Plaintiffs and DC Comics, dated April 6, 2000* | 10 | 2343 |
| 196 | 6/25/07 | *Exhibit B:  October 28, 2002 letter from Joanne Siegel and Laura Siegel Larson to Lillian J. Laserson* | 10 | 2349 |
| 196 | 6/25/07 | *Exhibit C:  Excerpts from listings from the Library of Congress' Catalog of Copyright Entries for the years 1939, 1940 and 1976* | 10 | 2352 |
| 196 | 6/25/07 | *Exhibit D:  Plaintiff's Memorandum of Points and Authorities In Support of Motion to Compel Production of Documents* | 10 | 2367 |
| 196 | 6/25/07 | *Exhibit E:  Excerpts from November 7, 2006 Deposition of Paul Levitz* | 10 | 2474 |
| 196 | 6/25/07 | *Exhibit F:  Excerpts from October 7, 2006 Deposition of Kevin Marks, Esq.* | 10 | 2479 |
| 196 | 6/25/07 | *Exhibit G: Excerpts from August 6, 2006 Deposition of Plaintiff Laura Siegel Larson* | 10 | 2485 |
| 196 | 6/25/07 | *Exhibit H:  Defendants' Answer to First Amended Complaint* | 10 | 2491 |
| 194 | 6/25/07 | Plaintiff's Reply In Support Of | 10 | 2508 |

| | | | | |
|---|---|---|---|---|
| | | Motion for Partial Summary Judgment | | |
| 184 | 5/29/07 | Declaration of Michael Bergman re: Plaintiffs' Motion for Summary Judgment | 10 | 2590 |
| 184 | 5/29/07 | *Exhibit A: Copyright Registration and Excerpts from "The Creation of a Superhero" by Jerome Siegel* | 10 | 2595 |
| 184 | 5/29/07 | *Exhibit B: June 12, 1934 letter from Jerome Siegel to Russell Keaton* | 11 | 2608 |
| 184 | 5/29/07 | *Exhibit D: March 1, 1938 Assignment from Jerome Siegel and Joseph Shuster to Detective Comics* | 11 | 2623 |
| 184 | 5/29/07 | *Exhibit L: Copy of Superman No. 1* | 11 | 2625 |
| 184 | 5/29/07 | *Exhibit P: April 15, 1999 letter from Paul Levitz to Joanne Siegel* | 11 | 2639 |
| 181 | 5/29/07 | Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment | 11 | 2641 |
| 163 | 4/30/07 | Declaration of Marc Toberoff re: Plaintiffs' Motion for Summary Judgment | 11 | 2739 |
| 163 | 4/30/07 | *Exhibit A: November 21, 1947 Opinion* | 11 | 2745 |
| 163 | 4/30/07 | *Exhibit B: April 12, 1948 Findings of Fact and Conclusions of Law* | 11 | 2758 |

| 163 | 4/30/07 | *Exhibit C:  May 19, 1948 Stipulation of Settlement* | 11 | 2801 |
|---|---|---|---|---|
| 163 | 4/30/07 | *Exhibit D:  May 21, 1948 Consent Judgment* | 11 | 2813 |
| 163 | 4/30/07 | *Exhibit F:  June 1, 1965 Renewal Copyright Registrations re: Superman* | 11 | 2825 |
| 163 | 4/30/07 | *Exhibit G:  Notice of Termination re: March 31, 1938 Grant* | 11 | 2830 |
| 163 | 4/30/07 | *Exhibit H:  Notice of Termination re: December 4, 1937 Agreement* | 11 | 2840 |
| 163 | 4/30/07 | *Exhibit I:  Notice of Termination re: September 22, 1938 Agreement* | 11 | 2850 |
| 163 | 4/30/07 | *Exhibit J:  Notice of Termination re: September 22, 1938 Agreement with McClure* | 11 | 2860 |
| 163 | 4/30/07 | *Exhibit K:  Notice of Termination re: 1948 Stipulation* | 11 | 2870 |
| 163 | 4/30/07 | *Exhibit L:  Notice of Termination re: December 19, 1939 Agreement* | 11 | 2880 |
| 163 | 4/30/07 | *Exhibit M:  Notice of Termination re:  December 23, 1975 Agreement* | 11 | 2890 |
| 163 | 4/30/07 | *Exhibit N:  Certificates of Recordation re: Notices of Termination* | 12 | 2900 |
| 164 | 4/30/07 | *Exhibit R:  Defendants' First Amended Counterclaim* | 12 | 2915 |

| 164 | 4/30/07 | *Exhibit S: Siegel v. National Periodical Publications, Inc. et al., 364 F. Supp. 1032 (S.D.N.Y. 1973)* | 12 | 2956 |
|---|---|---|---|---|
| 164 | 4/30/07 | *Exhibit T: Siegel v. National Periodical Publications, Inc. et al., 508 F.2d 909 (2d Cir. 1974)* | 12 | 2965 |
| 164 | 4/30/07 | *Exhibit U: March 24, 2006 Order by Judge Ronald S. W. Lew in Civ. Case No. 04-08776 RSWL (RZx)* | 12 | 2973 |
| 164 | 4/30/07 | *Exhibit V: May 23, 2006 Order by Judge Ronald S. W. Lew in Civ. Case No. 04-08776 RSWL (RZx)* | 12 | 2991 |
| 164 | 4/30/07 | *Exhibit W: Appellate Brief of National Periodical Publications, Inc. et. al. from Siegel v. National Periodical Publications, Inc. et al., 508 F.2d 909 (2d Cir. 1974)* | 12 | 2995 |
| 164 | 4/30/07 | *Exhibit X: Plaintiff's Complaint* | 12 | 3014 |
| 164 | 4/30/07 | *Exhibit Y: December 23, 1975 Agreement between Warner Communications, Inc and Jerome Siegel and Joseph Shuster* | 12 | 3044 |
| 164 | 4/30/07 | *Exhibit Z: April 6, 2000 Tolling Agreement between Plaintiffs and DC Comics* | 12 | 3057 |
| 164 | 4/30/07 | *Exhibit AA: September 21, 2002 letter from Joanne Siegel to Kevin S. Marks and Bruce M. Ramer* | 12 | 3061 |

| 164 | 4/30/07 | *Exhibit BB: October 19, 2001 letter from Kevin Marks to John Schulman* | 12 | 3063 |
|---|---|---|---|---|
| 164 | 4/30/07 | *Exhibit CC: October 26, 2001 letter from Schulman to Marks* | 12 | 3070 |
| 164 | 4/30/07 | *Exhibit DD: February 1, 2002 letter from Patrick Perkins to Kevin Marks* | 12 | 3079 |
| 164 | 4/30/07 | *Exhibit EE: Excerpts from October 7, 2006 Deposition of Kevin Marks* | 12 | 3137 |
| 164 | 4/30/07 | *Exhibit FF: March 15, 1982 letter from Martin D. Payson to Joanne Siegel* | 12 | 3156 |
| 164 | 4/30/07 | *Exhibit GG: Plaintiff's First Amended Complaint* | 12 | 3158 |
| 161 | 4/30/07 | Plaintiffs' Motion for Partial Summary Judgment | 13 | 3192 |
| 159 | 4/30/07 | Defendants' Motion for Partial Summary Judgment | 13 | 3255 |
| 46 | 11/1/05 | Plaintiffs' Reply to Defendants' First Amended Counterclaims | 13 | 3373 |
| Case No 04-8776, 125 | 4/30/07 | Declaration of Michael Bergman re: Defendants' Motion for Summary Judgment | 13 | 3407 |
| Case No 04- | 4/30/07 | Exhibit A: December 4, 1937 Agreement between Jerome Siegel, | 13 | 3413 |

| | | | | |
|---|---|---|---|---|
| 8776, 125 | | Joseph Shuster and Detective Comics, Inc. | | |
| Case No 10-3633, 74 | 9/20/10 | Minutes From September 20, 2010 Discovery Hearing [1] | 14 | 3416 |
| Case No 10-3633, 348 | 11/25/11 | Defendant Laura Siegel Larson's Answer to First Amended Complaint | 14 | 3418 |
| Case No 10-3633, 1 | 5/14/10 | Plaintiff DC Comics' Complaint | 14 | 3456 |
| | 2/19/14 | Docket Report (Case No. 04-8400) | 14 | 3521 |

---

[1] Larson requests that this court take judicial notice of certain documents files in the *Pacific Pictures* case – which was deemed "related" to the case below and transferred to the same district court judge – pursuant to Federal Rule of Evidence 201. As this Court has established, "[m]aterials from a proceeding in another tribunal are appropriate for judicial notice." *Biggs v Terhune*, 334 F.3d 910, 916 (9th Cir. 2003) (overruled on other grounds); *see also Reyn's Pasta Bella, LLC v Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (taking judicial notice of "pleadings, memoranda, expert reports, etc." from related case); *U.S. ex rel. Robinson Rancherita Citizen Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("we may take notice of proceedings in other courts") (internal quotations and citations omitted); *U.S. v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases")

## EXCERPTS OF RECORD (From Case No. 04-8776)

| Docket No. | Filing Date | Document Title | Vol. | Page |
|---|---|---|---|---|
| 254 | 6/18/13 | 59(e) Amended Judgment | 15 | 3598 |
| 253 | 6/18/13 | 59(e) Order | 15 | 3603 |
| 243 | 4/18/13 | "Final Judgment" In Superboy | 15 | 3605 |
| 242 | 4/18/13 | Order Granting Motion For Summary Judgment Re: Superboy And The Superman Ads | 15 | 3609 |
| 235 | 3/20/13 | Order Granting In Part Defendant's Motion For Summary Judgment | 15 | 3620 |
| 175 | 3/31/08 | Order Denying Cross-Motions for Partial Summary Judgment | 15 | 3636 |
| 151 | 7/27/07 | Order Granting Defendants' Motion for Reconsideration | 15 | 3638 |
| 82 | 3/23/06 | Order Granting Plaintiffs' Motion for Partial Summary Judgment & Denying Defendants' Motion for Summary Judgment | 15 | 3711 |
| 259 | 7/16/13 | Defendants' Notice of Cross-Appeal | 16 | 3728 |
| 257 | 7/16/13 | Plaintiff's Notice of Appeal | 16 | 3730 |
| 250 | 6/17/13 | Plaintiff's 59(e) Motion | 16 | 3732 |
| 227 | 2/25/13 | Joint Status Report Re: The Superman and Superboy Cases | 16 | 3763 |

| 184 | 12/21/09 | Joint Status Report | 16 | 3779 |
| 103 | 1/12/07 | Defendants' Motion for Reconsideration | 16 | 3804 |
| 56 | 2/15/06 | Defendants' Motion for Summary Judgment | 16 | 3806 |
| 51 | 2/15/06 | Plaintiff's Motion for Partial Summary Judgment | 16 | 3838 |
| 47 | 11/4/05 | Answer to First Amended Counterclaims | 16 | 3870 |
| 44 | 10/18/05 | First Amended Counterclaims | 16 | 3904 |
| 37 | 9/7/05 | Answer to First Supplemental Complaint | 16 | 3943 |
| 34 | 4/13/05 | First Supplemental Complaint | 16 | 3957 |
|  | 2/19/14 | Docket Report (Case No. 04-8776) | 16 | 3986 |

**EXHIBIT A**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 32 of 331

ORIGINAL SHIPPED   OCT 1 7 2006

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOANNE SIEGEL and LAURA          )
SIEGEL LARSON,                   )
                                 )
          Plaintiffs,            )
                                 )
     vs.                         )     No. 04-8400 (RSWL)(RZx)
                                 )
WARNER BROS. ENTERTAINMENT )
INC., et al.,                    )           -and-
                                 )
          Defendants.            )     No. 04-8776 (RSWL)(RZx)
_____)
AND RELATED COUNTERCLAIMS.

**CERTIFIED COPY**

DEPOSITION OF KEVIN S. MARKS

Beverly Hills, California

Saturday, October 7, 2006

Volume 1

Reported by:

DAVID S. COLEMAN

CSR No. 4613

**U.S. LEGAL**

*Support*

*Certified Shorthand Reporters*

15250 Ventura Boulevard, Suite 410
Sherman Oaks, CA 91403

800-993-4464 • Fax 800-984-4464
www.uslegalsupport.com

*Los Angeles • Orange County • San Diego • Inland Empire • Ventura • San Jose • San Francisco • Sacramento . . . and across the nation*

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 33 of 331

10:38 1    log, Exhibit 1?

10:38 2       A  I don't know.

10:38 3       Q  Okay.  Could you take a quick look and let me

10:38 4    know?

10:38 5       A  I do not know if it is referred to in these

10:38 6    entries on the privilege log.

10:39 7       MR. MARMARO:  And I will just note that without

10:39 8    looking at the subpoena, I don't know whether that

10:39 9    document would have been within the call of any of the

10:3910    requests in the subpoena.

10:3911       MR. BERGMAN:  Okay.  I understand.

10:3912       MR. MARMARO:  And if it was not, it would

10:3913    certainly not be on the log.

10:3914    BY MR. BERGMAN:

10:3915       Q  Aside from Mr. Ramer and yourself, Mr. Marks,

10:3916    was any other Gang, Tyre attorney involved in the

10:3917    representation of the Superman termination interest?

10:3918       A  No.

10:3919       Q  And were both you and Mr. Ramer generally

10:3920    involved in all aspects of that representation?

10:3921       MR. MARMARO:  The question is vague, overbroad.

10:3922       THE WITNESS:  How I understand "all aspects," I

10:3923    would have to say no.  As the matter progressed, I

10:4024    believe that I was the person who was, if you will, the

10:4025    point person and the one principally involved.

24

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 34 of 331

10:40 1   BY MR. BERGMAN:

10:40 2       Q    Is there a particular time period you could

10:40 3   estimate for me when that evolution occurred, that is,

10:40 4   when you became the primary attorney representing the

10:40 5   interest?

10:40 6       A    It was -- I recall there being what was a second

10:40 7   meeting at Warner Bros., a second in-person meeting at

10:40 8   Warner Bros. that I attended and Bruce did not, and I

10:40 9   really believe that that -- by that time I was, if you

10:4010   will, the principal point person on this matter.

10:4111       Q    It's correct, though, isn't it, that after that

10:4112   second meeting Mr. Ramer did attend at least some

10:4113   meetings with the DC representatives?

10:4114       A    I'm not sure.

10:4115       Q    Okay.  At the point that you became the lead

10:4116   counsel for your client, did you thereafter confer with

10:4117   Mr. Ramer from time to time regarding the progress of the

10:4118   matter?

10:4119       A    Yes.

10:4120       Q    And, incidentally, in preparation for the

10:4121   deposition, did you speak with Mr. Ramer concerning this

10:4122   matter?

10:4123       A    I -- yes, I did.

10:4224       MR. MARMARO:  Michael, when you reach a

10:4225   convenient breaking point, could we just quickly break?

25

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 35 of 331

10:46 1      Q   At the point in time that you became retained,

10:46 2  as you put it, by the interest, was there to your

10:46 3  knowledge any written agreement between Joanne and Laura

10:46 4  Siegel on the one hand and Michael Siegel on the other

10:46 5  concerning their respective interests in the termination

10:46 6  right?

10:46 7            THE WITNESS:  May I answer that question?

10:46 8            MR. MARMARO:  Yes.

10:46 9            THE WITNESS:  To my knowledge was there an

10:4610  agreement, no.

10:4611  BY MR. BERGMAN:

10:4612      Q   And there certainly was no entity that had been

10:4613  formed called the "Superman Termination Interest," had

10:4614  there?

10:4615      A   There was no entity, correct.

10:4716      Q   The documents reflect the names of some other

10:4717  attorneys outside of Gang, Tyre, and I'd like to ask you

10:4718  a few questions about them.

10:4719          First of all, there is Arthur Levine.  Can you

10:4720  identify who Mr. Levine was?

10:4721      A   Yes.  Arthur Levine --

10:4722      Q   I'm sorry.

10:4723      A   -- is a Washington, D.C.-based copyright

10:4724  attorney.

10:4725      Q   And was Mr. Levine the attorney who actually

27

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 36 of 331

10:47 1  filed the termination notices?

10:47 2      A    I believe so.

10:47 3      Q    And am I correct that Mr. Levine remained

10:47 4  involved in the representation of the Siegels subsequent

10:47 5  to Gang Tyre's retention?

10:48 6          MR. MARMARO:  It's a yes or no question.

10:48 7          THE WITNESS:  Yes.

10:48 8  BY MR. BERGMAN:

10:48 9      Q    And did he -- did there come a point in time

10:4810  when Mr. Levine no longer acted in that capacity?

10:4811          MR. MARMARO:  That question lacks foundation.

10:4812          THE WITNESS:  I don't know that his capacity

10:4813  ever changed.  I do know that there did come a point in

10:4814  time where I was no longer speaking with him.

10:4815  BY MR. BERGMAN:

10:4816      Q    Okay.  In my review of the privilege log,

10:4817  Exhibit 1, I noted that the last entry referring to

10:4818  Mr. Levine was in May 2001.  That is number 489 if you

10:4919  care to look.

10:4920          MR. MARMARO:  Would you like him to look?

10:4921          MR. BERGMAN:  No.

10:4922          MR. MARMARO:  Okay.

10:4923  BY MR. BERGMAN:

10:4924      Q    Does that generally coincide with your

10:4925  recollection as to the period of time in which you were

28

ER 1734

03:45 1   where the Superman property and the Spectre property were

03:45 2   commingled with other DC Comics properties.

03:45 3       Q   Was another component of the offer that you made

03:45 4   to Mr. Schulman that all advances were to be interest-

03:45 5   free?

03:45 6       A   I recall at least at some point having that --

03:45 7   that being a component of an offer we made.

03:46 8       Q   With respect to the elements of an offer that

03:46 9   I've just been asking about, did Mr. Schulman in mid

03:46 10  September respond negatively to any of those elements?

03:47 11      A   At some point in this time period I recall a

03:47 12  negative response to an element of the proposal but not

03:47 13  these elements.

03:47 14      Q   Do you recall what element that was, sir, and if

03:47 15  so, what was it?

03:47 16      A   Well, excepting the generality of the question,

03:47 17  at some point I think we continued to propose a transfer

03:47 18  of 90 percent of the rights and holding back 10 percent

03:47 19  of the rights and then licensing it exclusively to DC

03:48 20  Comics, and John would have responded negatively to that.

03:48 21  There came a time in the discussions after September

03:48 22  where we did have discussion about another issue that

03:48 23  John responded -- John's response was negative.

03:48 24      Q   And what was that issue, sir?

03:48 25      A   The issue was that -- I think I first need to

                                                            125

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 38 of 331

03:48 1    give some context for this.  In our proposals I think

03:48 2    going back from the beginning and probably continuing

03:49 3    through the summer, our proposal was to have the royalty

03:49 4    attach to the DC Comics worldwide gross revenues for so

03:49 5    long as DC Comics received revenues.  So if in a hundred

03:49 6    years there were still revenues coming in to DC Comics

03:49 7    from the exploitation of Superman, the Siegel family and

03:49 8    their heirs and whoever is the Siegel family at that time

03:49 9    would still receive a royalty.

03:49 10        The DC Comics position was different.  The DC

03:49 11   Comics' position was that royalties would terminate at

03:49 12   such time as Action Comics 1 went into the public domain.

03:49 13   That was DC's position.

03:50 14        With that context in mind, I recall that in our

03:50 15   discussions in October I made the point to John that we

03:50 16   would -- should provide that when Action Comics No. 1

03:50 17   does go into the public domain, the Siegels would have

03:50 18   the same rights that any member of the public has in

03:50 19   regards to exploitation, which is to say that if

03:50 20   copyrighted material is in the public domain, anybody can

03:50 21   exploit it, people at this table and complete strangers.

03:50 22        I raised that term, trying to be careful, and in

03:50 23   fact have used a customary term in my experience defined

03:50 24   in rights agreements, and I recall John saying he would

03:50 25   have to get back to me.

126

ER 1736

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 39 of 331

03:50 1          He did.  The DC response was, "No.  If we're

03:51 2   paying you all this money," and I really believe those

03:51 3   are the words John used, "then the family cannot ever

03:51 4   exploit the Superman property."

03:51 5          I said to John, "Anybody else in the world can,"

03:51 6   and he said, "That may be, but the Siegels can't."

03:51 7      Q   How was that point ultimately resolved?

03:51 8          MR. MARMARO:  Assumes facts not in evidence, and

03:51 9   it's vague and ambiguous in terms of the word "resolved."

03:5110          MR. TOBEROFF:  Concur.

03:5111          THE WITNESS:  On that particular issue, the

03:5112   Siegels relented.

03:5113   BY MR. BERGMAN:

03:5214      Q   Before I go into the balance of the October

03:5215   conversations, Mr. Marks, did you ever attempt or did

03:5216   anyone at Gang, Tyre attempt to place a valuation, a

03:5217   dollar valuation on what it contended to be the Siegel

03:5218   interest?

03:5219          MR. MARMARO:  Excuse me.  The question calls for

03:5220   the invasion of the attorney-client and attorney work

03:5221   product privilege, and I will object and instruct the

03:5222   witness not to answer.

03:5223          (Instruction not to answer.)

03:5224          MR. BERGMAN:  I am not asking what it was.  I

03:5225   think I am asking whether it was done.

127

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 40 of 331

04:04 1    you?

04:04 2        A    No.   Unlike perhaps many attorneys, I make most

04:04 3    of my phone calls.

04:04 4        Q    I see.   Okay.

04:05 5            MR. TOBEROFF:   Good for you.

04:05 6            MR. BERGMAN:   Let's mark as Exhibit 20 a letter

04:05 7    dated October 19, 2001, from Mr. Marks to Mr. Schulman,

04:05 8    GTRB 302 through 308.

04:05 9            (Deposition Exhibit 20 marked.)

04:0510    BY MR. BERGMAN:

04:0511        Q    To begin with, your letter, Exhibit 20, makes

04:0512    reference to an offer of October 16.

04:0513            Was that offer made over the phone?

04:0514        A    Yes.

04:0515        Q    Can you tell me to the best of your recollection

04:0616    what that offer was?

04:0617        A    Well, in the phone call my recollection is we

04:0618    discussed what at the time I believe was the last open

04:0619    point.

04:0620        Q    I see.

04:0621        A    The last open point was the public domain issue

04:0622    that I referred to a few minutes ago, and John held very

04:0623    firm to the DC position that once the Superman

04:0624    property -- excuse me -- Action Comics 1 went into the

04:0625    public domain or, frankly, any element of the Superman

132

ER 1738

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 41 of 331

04:06 1    property went into the public domain, the Siegels would

04:07 2    be prohibited from using the property in a way that any

04:07 3    other member of the public could.   That was DC Comics'

04:07 4    final, unflinching position.

04:07 5       Q    Would it be correct then to say that with the

04:07 6    exception of that position, the other elements of the

04:07 7    proposal that are listed in the October 19 letter had

04:07 8    previously been agreed upon between you and Mr. Schulman?

04:07 9       A    Well --

04:0710       MR. MARMARO:   The question lacks foundation, and

04:0711    it's vague and ambiguous and calls for a legal

04:0712    conclusion.

04:0713       MR. TOBEROFF:   Concur.

04:0714       THE WITNESS:   I mean the other items that were

04:0715    reflected in the October 19th letter were no longer open

04:0816    items, but as I said before, this was an entire package,

04:0817    so there wasn't a sense that you would have a deal until

04:0818    you had, if you will, an understanding that all the terms

04:0819    of that package were acceptable.

04:0820    BY MR. BERGMAN:

04:0821       Q    And when you say, Mr. Marks, that there were no

04:0822    longer open points, by that you mean that you and

04:0823    Mr. Schulman had previously agreed upon them?

04:0824       MR. MARMARO:   Same objections.

04:0825       THE WITNESS:   We had come to an understanding

                                                              133

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 42 of 331

04:08 1   that on that point, that would be the basis of the

04:08 2   resolution.  That was the resolution of that particular

04:08 3   component in the overall deal, yes.

04:09 4   BY MR. BERGMAN:

04:09 5        Q   And when the final element of the public domain

04:09 6   point that you've been referring to was resolved, that

04:09 7   that closed the deal?

04:09 8        MR. MARMARO:  The question is vague and

04:09 9   ambiguous, assumes facts not in evidence.

04:09 10        You can answer subject to those objections.

04:09 11        THE WITNESS:  Yes.

04:09 12        MR. BERGMAN:  Okay.

04:09 13        THE WITNESS:  May we go off the record for just

04:09 14   a moment?

04:09 15        MR. BERGMAN:  We certainly can.

04:10 16        (Recess.)

04:14 17        MR. BERGMAN:  Back on the record.

04:14 18   BY MR. BERGMAN:

04:14 19        Q   Referring to Exhibit 20, the first sentence

04:14 20   states, "This is to confirm our telephone conversation of

04:14 21   October 19, 2001."

04:14 22        Can you tell me as best as you can recall,

04:14 23   Mr. Marks, what was said by each of you and Mr. Schulman

04:14 24   in that phone conversation?

04:14 25        A   Yes.  I recall calling John and saying to him

134

ER 1740

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 43 of 331

04:15 1    words in substance and effect, "We are closed."  I told

04:15 2    John I would send to him a confirming letter which set

04:15 3    forth the terms.  John said that he would get me a long

04:15 4    form that would be ready when I returned, because John

04:15 5    knew I would be away for a period of time.

04:15 6         And then I made one other point, and I said,

04:15 7    "While it's not a part of the deal, John, you should know

04:15 8    that after all this time this negotiation has ended on a

04:15 9    very bitter note.  The public domain issue and the DC

04:1610    position was very difficult, problematic and emotional

04:1611    for my clients, and my suggestion to you outside the deal

04:1612    is to make some gesture of some sort to help take away

04:1613    that very bitter taste."

04:1614         Q    Okay.  And what did Mr. Schulman say?

04:1615         A    You know, I don't recall him specifically

04:1616    responding.

04:1617         Q    The next sentence of the letter states, quote,

04:1618    "The Siegel Family (through Joanne Siegel and Laura

04:1619    Siegel Larson, the majority owners of the terminated

04:1620    copyright interests) has accepted D.C. Comics offer of

04:1621    October 16, 2001 in respect of the 'Superman' and

04:1722    'Spectre' properties," close quote.

04:1723         Prior to the time, Mr. Marks, that you sent this

04:1724    letter to Mr. Schulman, had Laura and Joanne Siegel

04:1725    authorized you to communicate to John Schulman the fact,

135

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 44 of 331

04:29 1        whether he did so in this case.")

04:30 2        MR. TOBEROFF:  I'll object on the basis that

04:30 3  "offer" is -- that he's asking for a legal conclusion and

04:30 4  that "offer" is vague and ambiguous as to what offer was

04:30 5  being accepted, but other than that I'll allow that.  It

04:30 6  just barely makes it under the line, in my opinion.

04:30 7        MR. MARMARO:  If you have the question in mind

04:30 8  after the colloquy, go ahead and answer it.  If you would

04:30 9  like it reread...

04:30 10        THE WITNESS:  If you could, there are one or

04:30 11  more negatives in that question, so I would like to be

04:30 12  clear.

04:30 13        MR. TOBEROFF:  And I'll add vague and ambiguous

04:30 14  to my objections.

04:30 15        (Record read as follows:

04:28 16        "Q   Putting aside this action,

04:28 17        have you ever accepted an offer on

04:28 18        behalf of a client without first

04:28 19        receiving your client's authority to

04:28 20        do so?

04:28 21        "MR. TOBEROFF:  Vague and ambiguous.

04:28 22        "MR. MARMARO:  Yeah.

04:28 23        "THE WITNESS:  May I answer?

04:28 24        "MR. MARMARO:  Sure.

04:28 25        "THE WITNESS:  No.

145

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 45 of 331

04:28 1        "BY MR. BERGMAN:

04:28 2            "Q   Did you do so in this case?")

04:31 3        THE WITNESS:  If I understand the question, and

04:31 4   now that I am permitted to answer it, no.

04:31 5   BY MR. BERGMAN:

04:31 6        Q   Okay.  Had you in fact been authorized to accept

04:31 7   the October 16 offer?

04:31 8        MR. TOBEROFF:  Objection --

04:31 9        MR. MARMARO:  On the basis of privilege?

04:31 10       MR. TOBEROFF:  Yes.  And same objections as to

04:31 11  the word "offer."  Vague and ambiguous.

04:31 12       MR. MARMARO:  And calls for a legal conclusion.

04:31 13  And then based on Mr. Toberoff's privilege objection, I

04:31 14  will also object and instruct on that ground.

04:31 15       (Instruction not to answer.)

04:31 16  BY MR. BERGMAN:

04:31 17       Q   Mr. Marks, do you have an understanding of what

04:31 18  the October 16, 2001 offer was?

04:32 19       A   It is -- my understanding is exactly as set

04:32 20  forth in this letter.

04:32 21       Q   Prior to sending this letter, had you been

04:32 22  authorized by your clients to communicate their

04:32 23  acceptance of the October 16, 2001 offer?

04:32 24       MR. TOBEROFF:  Same objection.  Asked and

04:32 25  answered.  Same objection.  Vague and ambiguous.

                                                              146

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 46 of 331

04:32 1   Attorney-client privilege --

04:32 2         MR. MARMARO:  Based --

04:32 3         MR. TOBEROFF:  -- it calls for a legal

04:32 4   conclusion.

04:32 5         MR. MARMARO:  Based on that, we will also

04:32 6   object, and I will instruct.

04:32 7         (Instruction not to answer.)

04:32 8         MR. BERGMAN:  And, Mr. Toberoff, you were asking

04:32 9   for an instruction to the witness not to answer that

04:3210   question?

04:3211         MR. TOBEROFF:  Yes.

04:3212         MR. MARMARO:  I am assuming that's been true

04:3213   with the entire line of questions.

04:3214         MR. BERGMAN:  I am too.  I just wanted to make

04:3215   it clear.

04:3316      Q   You were about to leave on an extended trip at

04:3317   the time you wrote this October 19 letter, weren't you?

04:3318      A   Yes.

04:3319      Q   And your letter states on its last page, page 6,

04:3320   that you would be out of the office for four weeks

04:3321   following that time.

04:3322         Do you recall approximately when you returned?

04:3323      A   I believe my first day back in the office was

04:3324   Thanksgiving week.

04:3325      Q   And your letter closes with the statement,

                                                            147

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 47 of 331

04:33 1    quote, "Many thanks for help and patience in reaching

04:33 2    this monumental accord," close quote.

04:33 3         What monumental accord were you referring to?

04:33 4    A    The terms set forth in the October 19, 2001

04:34 5    letter.

04:34 6    Q    And at the time that you wrote that letter, was

04:34 7    it your belief that the monumental accord had in fact

04:34 8    been reached?

04:34 9         MR. MARMARO:  The question is vague and

04:3410    ambiguous, calls for a legal conclusion.

04:3411         MR. TOBEROFF:  Concur.

04:3412         THE WITNESS:  I had -- I believed that an accord

04:3413    had been reached on the terms exactly set forth in this

04:3414    letter.

04:3415    BY MR. BERGMAN:

04:3416    Q    I notice in the logs, Mr. Marks, that during

04:3517    your absence there were certain documents -- I think

04:3518    they're items 618 through 629 -- which were authored by

04:3519    Lisa Liebman, who is identified as an assistant at your

04:3520    firm.

04:3521         Was Ms. Liebman at the time your assistant?

04:3522    A    Yes.

04:3523    Q    And the log also -- and is Miss Liebman still

04:3524    employed by the firm?

04:3525    A    Yes.

148

ER 1745

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 48 of 331

04:35 1  Q Still your assistant?

04:35 2  A Yes.

04:35 3  Q The log also refers at items 630 through -32 to

04:35 4 a paralegal at your firm by the name of Hillel Elkins.

04:35 5   Is Mr. Elkins still employed by the firm?

04:35 6  A No.

04:35 7  Q Do you know where he is presently employed?

04:35 8  A I don't.

04:36 9   MR. BERGMAN:  Will you then mark as Exhibit 21

04:36 10 an October 26 letter from Mr. Schulman to Mr. Marks, GTRB

04:36 11 145 through 152.

04:36 12   (Deposition Exhibit 21 marked.)

04:36 13 BY MR. BERGMAN:

04:36 14  Q Had you left the office, Mr. Marks, by the time

04:36 15 this October 26 letter was faxed?

04:37 16  A Yes.

04:37 17  Q And when you returned to the office around

04:37 18 Thanksgiving, as you stated, in 2001, how soon after your

04:37 19 return do you believe you reviewed the October 26th

04:37 20 letter?

04:37 21  A I don't specifically recall, but it would have

04:37 22 either been that week or certainly the following week.

04:37 23  Q After you reviewed the letter, did you discuss

04:37 24 it with Mr. Ramer?

04:37 25   MR. MARMARO:  I think -- I was going to say the

149

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 49 of 331

04:37 1   nature of the question, even though it's phrased as a yes

04:37 2   or no question, calls for the witness to divulge work

04:37 3   product information which is to discuss matters with, and

04:38 4   I would object and instruct on that basis.

04:38 5          (Instruction not to answer.)

04:38 6          MR. BERGMAN:  Okay.

04:38 7      Q   After you reviewed this October 26 letter, did

04:38 8   you compare the terms set forth in the letter with those

04:38 9   set forth in your October 19 letter?

04:3810          THE WITNESS:  Can I answer that?

04:3811          MR. MARMARO:  Yes, unless Mr. Toberoff has an

04:3812   issue with it.

04:3813          MR. TOBEROFF:  I'm not going to object.  It's

04:3914   work product, but I think it's yours.

04:3915          MR. MARMARO:  As long as you have no objection,

04:3916   he can answer the question.

04:3917          THE WITNESS:  I was even a month or five or six

04:3918   weeks after the fact of the October 19th letter pretty

04:3919   familiar with the terms that set -- that were set forth

04:3920   in that letter, so on first read I didn't -- I don't

04:3921   believe I did a line-by-line comparison, but I believe I

04:3922   later did.

04:3923   BY MR. BERGMAN:

04:3924      Q   Okay.  Did you at any time after that line-by-

04:3925   line comparison advise Mr. Schulman that there was any

                                                              150

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 50 of 331

04:40 1    inconsistency between your October 19 letter and his

04:40 2    October 26 letter?

04:40 3         A    I don't believe so.

04:40 4         Q    Your incoming phone log at GTRB 600 reflects a

04:40 5    call from Mark Toberoff on November 29, 2001.

04:40 6              MR. TOBEROFF:  What page is that on?

04:41 7              MR. BERGMAN:  600.

04:41 8         Q    Was that call completed?

04:41 9         A    No.

04:41 10        Q    Did you at any time return that call?

04:41 11        A    No.

04:41 12        Q    May I ask why?

04:41 13             MR. MARMARO:  I think you're going to be

04:41 14   invading his mental processes and work product, and I'll

04:41 15   object and instruct on that basis.

04:41 16             (Instruction not to answer.)

04:41 17             MR. BERGMAN:  Okay.

04:41 18        Q    If you would turn, please, Mr. Marks, to GTRB

04:41 19   604, that reflects a call from Mark Toberoff, quote, "Re:

04:42 20   Superman - potential buyout (end of November)."

04:42 21             Did you speak with Mr. Toberoff on that day?

04:42 22        A    I don't know if I spoke with Mr. Toberoff that

04:42 23   day.

04:42 24        Q    Did you return that call at some subsequent

04:42 25   time?

                                                              151

**U.S. LEGAL SUPPORT**

ER 1748

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 51 of 331

04:42 1    A    I returned that call that day or subsequently,

04:42 2 yes.

04:42 3    Q    Can you tell me to the best of your recollection

04:42 4 what Mr. Toberoff said during that conversation and what

04:42 5 you said?

04:42 6    A    Yes.  I think Mr. Toberoff started the call by

04:43 7 saying that he had called me earlier and that I hadn't

04:43 8 returned his call, for which I apologized, and then he

04:43 9 introduced himself.  He said he was a lawyer and that he

04:43 10 represented individuals that had interests in rights to

04:43 11 movie and other properties that had come into those

04:43 12 rights either by way of reversions under the law or

04:43 13 reversions under Guild agreements.  I also recall him

04:43 14 saying that he had a separate company that was in the

04:43 15 business of acquiring intellectual property rights.  I

04:44 16 recall him saying that he was interested in the Superman

04:44 17 property and the Superboy property and had understood

04:44 18 that I was representing the Siegel family interest, and

04:44 19 he asked if he could talk to me about that.

04:44 20    My recollection is that my response was that we

04:44 21 were very far along with DC Comics and at a documentation

04:44 22 phase.  I may have said DC Comics or Warner Bros. because

04:45 23 I do think that part of the conversation, I have a

04:45 24 recollection of Mr. Toberoff saying that he had dealt

04:45 25 with Warner Bros. before, the people at Warner Bros., in

152

ER 1749

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 52 of 331

05:04 1          THE WITNESS:  John's letter -- cover letter that

05:04 2     attaches the outline says, "We're working on the draft

05:04 3     agreement so that by the time you have accomplished

05:04 4     something of truly momentous import, we will have the

05:04 5     super-matter transaction in document form," and I very

05:05 6     much took that to mean that by the time you get back,

05:05 7     you'll have a long-form agreement that we can work off

05:05 8     of, and I wanted to see that long-form agreement.

05:05 9     BY MR. BERGMAN:

05:05 10         Q    I see.  And anticipated that the disparities

05:05 11    between the two short forms to be resolved in the long

05:05 12    form?

05:05 13         MR. MARMARO:  I'm going to object to the form of

05:05 14    the question.  Vague and ambiguous and -- well, vague and

05:05 15    ambiguous.

05:05 16         MR. TOBEROFF:  Same objection and leading.

05:05 17         MR. MARMARO:  You're asking if that was the

05:05 18    reason?

05:05 19         Go ahead, you can answer subject to the

05:05 20    objections.

05:05 21         THE WITNESS:  I hope I'm answering the question.

05:05 22    I thought it would be a good thing for the process to get

05:05 23    the long form to move it forward rather than bring it to

05:05 24    a screeching halt at this point, so I wanted to allow

05:06 25    this process to move forward.  My thought was let's raise

                                                              163

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 53 of 331

05:06 1   these issues in the context of the long form.

05:06 2         MR. BERGMAN:  I see.

05:06 3         Why don't we take a five-minute break.

05:06 4         MR. MARMARO:  Sure.

05:06 5         (Recess.)

05:13 6         MR. BERGMAN:  Back on the record.

05:13 7   Q    Just to complete this question of the two

05:13 8   letters, Mr. Marks, when you prepared your October 19

05:13 9   letter, did you believe that you accurately recorded the

05:1410   deal as Mr. Schulman had offered it to you?

05:1411   A    I believe that I had accurately recorded the

05:1412   deal that was negotiated between the parties.

05:1413   Q    Okay.

05:1414   A    Mr. Bergman, I do want to be clear, on October

05:1415   16 I don't recall the conversation as being a recitation

05:1416   of each term.  The October 16th conversation was focused

05:1417   on the one open item.  That's my recollection.

05:1418   Q    I understand that.  I appreciate it.

05:1419   A    But I -- to answer your question, yes, I believe

05:1520   I at this confirmation letter set forth the terms as

05:1521   agreed.  Of course, I invited John to tell me if I had

05:1522   misstated it in any way.

05:1523   Q    Okay.  And at no time until you had reviewed the

05:1524   long-form agreement did you have any discussion with

05:1525   Mr. Schulman concerning any disparity that might exist

164

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 54 of 331

05:15 1      between the two letters?

05:15 2              MR. MARMARO:  Do you mean the draft long form?

05:15 3              MR. BERGMAN:  Yes.

05:15 4              THE WITNESS:  I did put a call in to

05:15 5      Mr. Schulman during this time period, but I don't recall

05:15 6      that we spoke.  I found out he was on vacation.  Or I

05:16 7      would later learn he was on vacation.

05:16 8      BY MR. BERGMAN:

05:16 9          Q    Returning to your phone register at page 614 --

05:1610          A    One moment, please.

05:1611          Q    There is a reference to a phone call from

05:1612      Mr. Toberoff at 6:09.  Was that call completed that day?

05:1613      Did you return it?

05:1614          A    I don't know if it was completed that day.

05:1615          Q    Did you return it at some point?

05:1616          A    Yes, I believe so.

05:1717          Q    Before I get into that, let me just make sure.

05:1718      If you look at page 615, you'll see another reference to

05:1719      a phone call from Mr. Toberoff.

05:1720              Was your reply to the phone call that you

05:1721      received on the 24th made prior to the 30th, or was it

05:1722      after the 30th?

05:1723              MR. MARMARO:  30th of July?

05:1724              MR. BERGMAN:  Yes.

05:1725              THE WITNESS:  I believe, looking at these

                                                                    165

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 55 of 331

05:17 1   records, that what must have happened is I returned the

05:17 2   call, didn't reach Mr. Toberoff; he called back, and

05:17 3   we -- on the 30th, and we spoke subsequent, either on

05:17 4   that day or subsequent to that day.

05:17 5   BY MR. BERGMAN:

05:17 6       Q    Would it be accurate to say that you do not

05:18 7   recall speaking -- actually speaking with Mr. Toberoff

05:18 8   twice during the last week of July '02?

05:18 9       A    I recall one conversation.

05:1810      Q    Okay.  Can you tell me to the best of your

05:1811   recollection what was said by each of you and

05:1812   Mr. Toberoff in that conversation?

05:1813      A    I think Mr. Toberoff said he was -- wanted to

05:1814   check in with me to see where we were in our dealings

05:1815   with DC Comics, and I think I told him then that -- and I

05:1816   may have also said it in our first conversation -- that

05:1817   we had a confidentiality agreement with DC Comics, and I

05:1918   didn't feel at liberty to discuss the status of our

05:1919   dealings with him.

05:1920          Mr. Toberoff said, "Can you tell me what DC

05:1921   Comics offered you," and I said, "No.  We have a

05:1922   confidentiality agreement."

05:1923          And I believe Mr. Toberoff said, "Would you be

05:1924   willing to enter into negotiations with me," and I

05:1925   believe I said, "Initiating negotiations, no.  That's

166

05:19 1    something that makes me very uncomfortable.  If you have

05:19 2    an offer, present it to me, and I'll present it to the

05:19 3    client."

05:19 4        Q   Do you recall what he said in response?

05:20 5        A   I think that was the summary of the substance of

05:20 6    the conversation other than goodbyes.

05:20 7        Q   If you turn the page to 616, you will see a

05:20 8    reference to a conference call, quote, "with Mark, Kevin,

05:20 9    and Ari Emanuel at Endeavor," close quote.  There also

05:20 10   appears to be a notation, "approximately 20 minutes."

05:20 11        Do you see that?

05:20 12        A   Yes, and it looks like the "20" is crossed out,

05:20 13   and it says "5 to 10" above it.

05:20 14        Q   I see.  Okay.

05:20 15        Off the record.

05:20 16        (Discussion held off the record.)

05:20 17   BY MR. BERGMAN:

05:20 18        Q   Would you describe to the best of your

05:21 19   recollection and as specifically as possible what was

05:21 20   said by each of the three of you during that

05:21 21   conversation?

05:21 22        A   I think this record may actually be setting up a

05:21 23   conference call rather than the conference call, but

05:21 24   ultimately there was a conference call at this time

05:21 25   period.

167

**U.S. LEGAL SUPPORT**

ER 1754

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 57 of 331

05:21 1      Q    I see.  Okay.

05:21 2           Do you recall how long after August 7 that

05:21 3    conference call took place?

05:21 4      A    Within the next day or two.

05:21 5      Q    I see.

05:21 6           Would you tell me --

05:21 7      A    If not on that date.

05:21 8      Q    -- what was involved and what was said in that

05:21 9    conversation?

05:21 10     A    Yes.  Mr. Toberoff and Mr. Emanuel both spoke.

05:22 11   I can't completely tell you who said what, but I think

05:22 12   Mr. Toberoff may have very briefly referenced past

05:22 13   conversations, and then I believe it was Mr. Emanuel who

05:22 14   explained that either they or some other people or

05:22 15   perhaps some members of the Endeavor Talent Agency had

05:22 16   set up a fund or were in the process of setting up a fund

05:22 17   to acquire intellectual property rights which they would

05:22 18   then package with clients from the Endeavor Talent

05:23 19   Agency, then take those to studios to exploit the

05:23 20   package, and they understood that the Siegel family had

05:23 21   an interest in the termination rights and viewed that as

05:23 22   perhaps the most valuable of properties and wanted to

05:23 23   make a proposal.

05:23 24     Q    Okay.  What did you say?

05:23 25     A    I said in substance and effect, "I'm listening."

                                                              168

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 58 of 331

05:23 1   And I'm not sure who spoke, but they made a proposal of

05:23 2   $15 million and what was described as a meaningful back

05:23 3   end, which I understood to be a contingent compensation

05:23 4   position or a royalty position in the exploitation of the

05:23 5   property.

05:24 6        Q    And was that for the entire Siegel Superman

05:24 7   interest?  Did it include Michael's?

05:24 8        A    I don't think that was discussed, but that's how

05:24 9   I understood it.

05:2410        Q    Did they say -- attempt to quantify what that

05:2411   meaningful back end would be?

05:2412        A    They did not.  I believe I asked, but they did

05:2413   not.

05:2414        Q    And what else did you say?

05:2415        A    I asked if there was anything else, and they

05:2416   said "No," and then I asked if this was a proposal that

05:2417   was conditioned on their doing due diligence about the

05:2418   rights, and they said again in substance and effect, "No,

05:2519   it's not.  We've done our due diligence already.  This is

05:2520   the offer."

05:2521        Q    Anything else you can recall of that

05:2522   conversation?

05:2523        A    I think I said, "Thank you, and I will

05:2524   communicate this to the client" or "take this back to the

05:2525   client."

169

ER 1756

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 59 of 331

05:25 1    Q   And did you in fact do that?

05:25 2    MR. MARMARO:  Before you answer the question, is

05:25 3  there any objection to the answer?  The question calls

05:25 4  for a communication between Mr. Marks and the clients.

05:25 5    MR. TOBEROFF:  Without a waiver, no, whether or

05:25 6  not you communicated that to the client.

05:25 7    MR. MARMARO:  A yes or a no.

05:25 8    THE WITNESS:  Yes.

05:25 9  BY MR. BERGMAN:

05:2510    Q   And was that a communication within let's say a

05:2511  week of the conference call?

05:2512    A   Yes.

05:2513    Q   Your phone register, 617, indicates a call from

05:2614  Mr. Toberoff on August 29.  Was that call returned?

05:2615    A   I -- was it returned.  I don't know.

05:2616    MR. TOBEROFF:  Which number -- Bates number?

05:2617    MR. BERGMAN:  617.

05:2618    Q   Do you recall having a telephone conversation

05:2619  with Mr. Toberoff subsequent to the conference call?

05:2620    A   The best I can say is that it may be that

05:2621  Mr. Toberoff called to see if I had a response, and I

05:2622  could only have said at that time that the clients had

05:2723  been away, and I don't have a response.  I have -- I am

05:2724  not certain about that.

05:2725    Q   Did there ever come a time when you communicated

170

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 60 of 331

05:37 1    BY MR. BERGMAN:

05:37 2        Q   Okay.  In response to the second paragraph of

05:37 3    this letter, did you make any attempt to telephone

05:38 4    Mr. Schulman and tell him in substance that there were

05:38 5    disparities between the October 19 and 26 letters?

05:38 6        MR. MARMARO:  Let me have that question read

05:38 7    back, please.

05:38 8            (Record read.)

05:38 9        THE WITNESS:  I had made an attempt before this

05:3810    letter, but I don't recall making an attempt after this

05:3811    letter.

05:3912        MR. BERGMAN:  Would you mark as Exhibit 23 a

05:3913    letter dated February 1, 2002, with an attachment, a

05:3914    draft long-form agreement, Bates stamped GTRB 350 through

05:3915    399.

05:3916            (Deposition Exhibit 23 marked.)

05:4017    BY MR. BERGMAN:

05:4018        Q   Am I correct, Mr. Marks, that Exhibit 23 is a

05:4019    copy of the long-form agreement that you received in

05:4020    early February?

05:4021        A   Yes.

05:4022        Q   Did there come a time following your receipt of

05:4023    this agreement when you began a redraft of the agreement?

05:4024        MR. MARMARO:  The question is vague and

05:4025    ambiguous, and again I am going to...  I'm going to state

177

05:46 1          Do you recall stating that to Mr. Schulman with

05:46 2     respect to the draft long form?

05:46 3          A    Not with respect to the draft long form.

05:46 4          Q    Okay.  Do you recall during that conversation

05:46 5     stating to Mr. Schulman anything to the effect of "can

05:46 6     deal with it"?

05:47 7          MR. MARMARO:  The question is vague in the --

05:47 8     well, the question is vague and ambiguous, but go ahead

05:47 9     and answer.

05:47 10         THE WITNESS:  Yes, but some context is required

05:47 11    here.

05:47 12    BY MR. BERGMAN:

05:47 13         Q    Please give me the context.

05:47 14         A    In this time period I believe there are two

05:47 15    calls.  The first call, John calls me and says -- said,

05:47 16    "Did you know that your client had written to Dick

05:47 17    Parsons and accused the Time Warner people of acting like

05:47 18    Gestapo," and I said "No."

05:47 19         He said, "Well, I've just received a letter."

05:47 20         I said, "Could you send it to me?"  John asked

05:47 21    for my fax number, and he sent it to me.

05:48 22         And I read the letter, and I think I called him

05:48 23    back and said, "As you're presenting it to me, I knew

05:48 24    nothing about this."

05:48 25         And I think John would have in the letter, among

                                                                    181

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 61 of 331

ER 1759

05:48 1   other things -- it was a letter from Joanne Siegel -- was

05:48 2   critical of the draft document that had been sent, and I

05:48 3   think John was asking me what I thought about it.

05:48 4        And now to get to your question, my -- I think

05:48 5   my comment goes to I can deal with the process of it.  I

05:48 6   think by this time I had formed an opinion that I could

05:48 7   not deal with that draft itself, but I could deal with

05:48 8   the process of moving forward on a long form.  I don't

05:49 9   think that long form.  At least that's how I felt at the

05:49 10  time.

05:49 11      Q    Okay.  The next statement attributed to you in

05:49 12  Exhibit 24 is, quote, "'contains a lot of sep,'" which I

05:49 13  take to mean separate, "'docs,'" which I am assuming

05:49 14  documents; that is, it would read, quote, "'contains a

05:49 15  lot of separate documents,'" close quote.

05:49 16      MR. MARMARO:  Is that what you're representing

05:49 17  Mr. Schulman -- because that's not my reading of it.

05:49 18      THE WITNESS:  I read it differently as well.

05:49 19      MR. BERGMAN:  Then I may be wrong.

05:49 20      MR. MARMARO:  But if you're representing

05:49 21  that's --

05:49 22      MR. BERGMAN:  No, I am not.  I am representing

05:49 23  that that is how I read what Mr. Schulman states are his

05:49 24  notes.

05:49 25      Q    How do you read that phrase?

182

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 62 of 331

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 63 of 331

06:07 1     Q    As you'll observe, Mr. Marks, as your client --

06:07 2  as your attorney has pointed out, the phrase "contains

06:07 3  stuff not agreed to" is not incorporated within quotation

06:07 4  marks.

06:07 5     Do you recall saying that in substance to

06:07 6  Mr. Schulman?

06:07 7     A    I recall saying in substance yes, there were

06:07 8  many things not agreed to.

06:07 9     Q    The last sentence, which also lacks quotation

06:0710  marks, says, "not contrary to what agreed to."

06:0811     Do you recall saying that in substance to

06:0812  Mr. Schulman?

06:0813     A    I recall saying, as I said before, it contained

06:0814  many additional terms that were not agreed to, not even

06:0815  discussed, and John saying something like, "Anything

06:0816  contrary?" with a question mark at the end of the

06:0817  sentence, and I have a recollection or a sense of saying,

06:0818  "Not as to the money terms, the 1 million, the 2 million,

06:0819  the 500,000, that's right."

06:0820     Q    Okay.  When you redrafted the long form, was it

06:0821  more than 20 pages?

06:0822     MR. TOBEROFF:  Objection --

06:0823     MR. MARMARO:  Let me just hear Mr. Toberoff's

06:0924  objections.

06:0925     MR. TOBEROFF:  I don't want you talking about

192

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 64 of 331

06:15 1    certain I expressed some surprise.

06:16 2    BY MR. BERGMAN:

06:16 3        Q    Okay.  In your practice, Mr. Marks, when you

06:16 4    reach some understanding -- I won't use the term

06:16 5    "agreement" -- with another party and it's embodied in a

06:16 6    letter or something like a short agreement, and then

06:16 7    you're submitted a long-form agreement which contains

06:16 8    terms that are not consistent, perhaps even trap doors,

06:16 9    it's your custom and practice to comment upon those and

06:1610    revise them or seek to eliminate them, isn't it?

06:1611        MR. MARMARO:  The question is compound, vague

06:1612    and ambiguous and -- well, I'll stick with those.

06:1713        MR. TOBEROFF:  And leading.

06:1714        MR. MARMARO:  And assumes facts not in evidence.

06:1715    Go ahead.

06:1716        THE WITNESS:  Yes, but I formed a view that I

06:1717    could not do that here.

06:1718    BY MR. BERGMAN:

06:1719        Q    When did you form that view?

06:1720        MR. TOBEROFF:  You can answer.

06:1721        THE WITNESS:  Not immediately.  I read the

06:1722    document several times with a view to going through the

06:1723    process that you described of marking it up, making

06:1724    comments, suggesting inserts, deleting various

06:1725    provisions, but I found the document highly problematic,

                                                                    196

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 65 of 331

06:17 1    that among other things it introduced many new material

06:18 2    terms that were not reflected in the October 19th letter,

06:18 3    that had terms that were inconsistent with the October

06:18 4    19th letter in what I thought the agreement had been, and

06:18 5    beyond that, as I said, I had a problem with trap doors,

06:18 6    without regard to whether they were intentional or

06:18 7    inadvertent, and I also found it to be a very

06:18 8    difficult -- convoluted, difficult document to understand

06:18 9    and read, and I formed the view that no matter how hard I

06:1810    tried, this document was going to be a problem in respect

06:1811    of advancing this documentation phase of the deal, and so

06:1812    I formed a view that I should do something that I don't

06:1913    recall doing before, which is effectively dispense with

06:1914    the document and start over and draft the document from

06:1915    scratch myself.

06:1916    BY MR. BERGMAN:

06:1917        Q    Okay.  And am I correct that you did in fact

06:1918    redraft the agreement and send it to the Siegels on or

06:1919    about July 15, 2002?

06:1920        And before there is an objection, I think, as

06:1921    Mr. Toberoff noted earlier, there has been produced a

06:1922    letter dated September 21, 2002, whereby the services of

06:1923    Gang, Tyre were terminated, and in the letter the Siegels

06:2024    state that they similarly reject your redraft of the

06:2025    February 2002 document which you sent to us on July 15,

                                                                    197

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 66 of 331

06:20 1   2002.  So to the extent the question might otherwise have

06:20 2   been privileged, it's --

06:20 3        MR. TOBEROFF:  I'll allow him to confirm that he

06:20 4   sent a redraft -- a brand-new draft to the client.

06:20 5        THE WITNESS:  Could I just have the question

06:20 6   part of that read again, please?

06:20 7        MR. BERGMAN:  Let me --

06:20 8        THE WITNESS:  I appreciate --

06:20 9        MR. MARMARO:  The speech part.

06:2010        THE WITNESS:  The contextual part.  I need the

06:2011   question part.

06:2012   BY MR. BERGMAN:

06:2013     Q   Okay.  Did you create and send to the Siegels on

06:2014   or about July 15, 2002, a redrafted long-form agreement

06:2015   embodying the October 19 letter terms?

06:2116        MR. TOBEROFF:  Objection as to the last part as

06:2117   to what it embodied.

06:2118        MR. MARMARO:  Objection and instruction?

06:2119        MR. TOBEROFF:  Yes, as to the last part.

06:2120        If you hadn't asked that -- if you hadn't put

06:2121   that tail on it, there would not have been an objection

06:2122   based on that letter.

06:2123        (Instruction not to answer.)

06:2124        MR. BERGMAN:  I'll never learn.

06:2125     Q   Let me reask the question of you.  Did you

                                                              198

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 67 of 331

06:21 1    prepare a new draft of the long-form agreement and send

06:21 2    it to the Siegels on or about July 15, 2002?

06:21 3         A    Yes.

06:21 4              MR. MARMARO:  Let's go off the record for a

06:21 5    moment.

06:21 6              (Discussion held off the record.)

06:22 7              (Recess.)

06:29 8    BY MR. BERGMAN:

06:29 9         Q    Do you recall speaking with Mr. Perkins in July,

06:2910    approximately July 18, concerning certain discovery

06:2911    issues which had arisen in the dissolution proceeding

06:2912    between Laura and Dennis Larson?

06:2913         A    I don't have a recollection of the date, but I

06:2914    do have a recollection of one or more conversations with

06:3015    Mr. Perkins on that subject.

06:3016         Q    Do you recall during one of those conversations

06:3017    Mr. Perkins asking you what the status of the agreement

06:3018    was?

06:3019         A    As I've thought about it, it seems like I had or

06:3020    must have had a conversation with Mr. Perkins along those

06:3021    lines, but I don't specifically recall.  I don't

06:3022    specifically recall it.

06:3023         Q    Do you recall telling him that your proposed

06:3024    draft was with your client and that you now had to

06:3025    negotiate with them?

                                                            199

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 68 of 331

06:30 1      A    What date is this?

06:30 2      Q    July 18, '02.

06:30 3      A    Well, it's true the draft was with the client at

06:30 4  that time.  I don't specifically recall any of the

06:31 5  conversation with Mr. Perkins on that point.

06:31 6      Q    We previously referred to this letter.  Let me

06:31 7  just make it part of our record.

06:31 8           Am I correct that on September 21 you received a

06:31 9  letter from Joanne and Laura stating that they were

06:3210  terminating the law firm and instructing you not to take

06:3211  any further action?

06:3212      A    I don't recall what date the letter was

06:3213  received, but it was received sometime after the letter

06:3214  was dated.

06:3215      Q    The letter begins, and you will forgive me, I

06:3216  don't have --

06:3217      A    A copy of it?

06:3218      Q    -- a copy of it.  I can take two minutes and

06:3219  make a copy of it, but --

06:3220      A    Okay.

06:3221      Q    Here, let me show it to you -- no, I can't.

06:3222  Strike that.

06:3223           When do you recall...

06:3224           MR. MARMARO:  It doesn't appear to be a

06:3225  controversial point in the case, and it's late.  Just

                                                              200

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 69 of 331

06:33 1    give the date of the letter.

06:33 2          MR. BERGMAN:   The date of the letter is

06:33 3    September 21.   It was produced as GTRB 0321.

06:33 4      Q    The letter begins, and I will quote it to you

06:33 5    accurately, "Dear Kevin and Bruce," quote, "As we

06:33 6    previously discussed with you and hereby affirm," close

06:33 7    quote, and they go on to terminate your services.

06:33 8          How long prior to the date of September 21, the

06:33 9    date that the letter bears, had they advised you of that

06:3310    fact?

06:3311          MR. MARMARO:   Let me stop and make sure there is

06:3312    no objection from Mr. Toberoff to that question.   It just

06:3413    seeks a time for a communication.

06:3414          MR. TOBEROFF:   You can answer as to the time as

06:3415    long as not the substance of the communication.

06:3416          THE WITNESS:   This letter was the first time I

06:3417    had heard our services had been terminated, and there was

06:3418    no prior telephone conversation.

06:3419    BY MR. BERGMAN:

06:3420      Q    Okay.   Your call register at page 624 indicates

06:3421    a phone call from Mr. Schulman on September 25, '02.

06:3522          MR. TOBEROFF:   What Bates number?

06:3523          MR. BERGMAN:   624.

06:3524      Q    You see that?

06:3525      A    Yes.

201

**U.S. LEGAL SUPPORT**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 70 of 331

06:35 1     Q   And as you may or may not know, a copy of the

06:35 2   September 21 letter was sent to Paul Levitz and, in turn,

06:35 3   brought to Mr. Schulman's attention.

06:35 4         When he called you on the 25th, did the two of

06:35 5   you actually speak?

06:35 6     A   I again don't know the precise date, but I did

06:35 7   have a conversation with Mr. Schulman.

06:35 8     Q   Did he ask you in substance what happened?

06:35 9     A   No.

06:3510     Q   What do you recall him saying at that time?

06:3511     A   I recall calling John, and I believe he must

06:3612   have called me back, and saying, "You have likely seen it

06:3613   already because Paul Levitz was copied, but we've been

06:3614   terminated from representing the Siegel interests, and we

06:3615   won't be speaking anymore."

06:3616     Q   Okay.

06:3617     A   And he said he had not seen the letter or heard

06:3618   about it.

06:3619     Q   Did he say anything else?

06:3620     A   He did not ask why --

06:3621         MR. MARMARO:  The question was did he say

06:3622   anything else.

06:3623         THE WITNESS:  Oh, did he say anything else?

06:3624   Other than a cordial and professional thank you and

06:3625   goodbye, that was it.  It was a short conversation.

202

06:37 1        MR. BERGMAN:  Okay.  I have nothing further of

06:37 2    you, sir.  Thank you.

06:37 3        THE WITNESS:  Thank you.

06:37 4        MR. BERGMAN:  Mr. Toberoff, may we stipulate --

06:37 5        MR. TOBEROFF:  I just have one quick question.

06:37 6        MR. BERGMAN:  Oh.

06:37 7

06:37 8                    EXAMINATION

06:37 9    BY MR. TOBEROFF:

06:3710        Q    It's with reference to Exhibit 21, an October

06:3711    26, 2001 letter from John Schulman to Kevin Marks.

06:3712        My question is did you at any time furnish a

06:3713    copy of that letter to Laura Siegel and/or Joanne Siegel?

06:3714        A    No.

06:3715        MR. TOBEROFF:  I have no further questions.

06:3716        MR. BERGMAN:  Okay.  Shall we stipulate that the

06:3717    court reporter will be relieved of his statutory

06:3818    obligations and that the transcript of Mr. Marks'

06:3819    deposition will be delivered to his counsel and will be

06:3820    signed by Mr. Marks under penalty of perjury and that

06:3821    this will be accomplished within 30 days?

06:3822        MR. MARMARO:  30 days of receipt, yes.

06:3823        MR. TOBEROFF:  That's fine.  So stipulated.

06:3824        MR. BERGMAN:  Thank you.

06:3825        THE REPORTER:  Mr. Toberoff, do you want a copy

                                                         203

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 71 of 331

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 72 of 331

06:38 1    of the transcript?

06:38 2           MR. TOBEROFF:  Yes, I want a copy.  Thanks.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

204

ER 1770

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 73 of 331

1

2

3

4

5

6

7

8            I, KEVIN S. MARKS, do hereby declare under

9   penalty of perjury that I have read the foregoing

10  transcript; that I have made any corrections as appear

11  noted, in ink, initialed by me, or attached hereto; that

12  my testimony as contained herein, as corrected, is true

13  and correct.

14            EXECUTED this _____ day of _____,

15  20_____, at _____, _____.
                         (City)              (State)

16

17

18

19         _____

20         KEVIN S. MARKS

21

22

23

24

25

                                                    205

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 74 of 331

```
 1   STATE OF CALIFORNIA    )
                            ) ss
 2   COUNTY OF LOS ANGELES  )

 3

 4          I, DAVID S. COLEMAN, a Certified Shorthand

 5   Reporter, do hereby certify:

 6          That prior to being examined, the witness in

 7   the foregoing proceedings was by me duly sworn to

 8   testify to the truth, the whole truth, and nothing

 9   but the truth;

10          That said proceedings were taken before me at

11   the time and place therein set forth and were taken

12   down by me in shorthand and thereafter transcribed

13   into typewriting under my direction and supervision;

14          I further certify that I am neither counsel

15   for, nor related to, any party to said proceedings,

16   nor in anywise interested in the outcome thereof.

17          In witness whereof, I have hereunto subscribed

18   my name.

19

20   Dated:   OCT 1 7 2006

21

22

23   _____
     DAVID S. COLEMAN
24   CSR No. 4613

25
```

ER 1772

1   Attorneys for Plaintiffs and counterdefendants:
    TOBEROFF & ASSOCIATES, P.C.
2   Marc Toberoff (State Bar No. 188547)
    Nicholas C. Williamson (State Bar No. 231124)
3   Keith G. Adams (State Bar No. 240497)
    2049 Century Park East, Suite 2720
4   Los Angeles, California, 90067
    Telephone: (310) 246-3333
5   Fax:        (310) 246-3101

6   Attorneys for Defendants and counterclaimant:
    WEISSMANN WOLFF BERGMAN
7     COLEMAN GRODIN & EVALL LLP
    Michael Bergman (SBN 37797)
8   9665 Wilshire Boulevard, Ninth Floor
    Beverly Hills, California 90212
9   Telephone: (310) 858-7888
    Fax:        (310) 550-7191

10  FROSS ZELNICK LEHRMAN & ZISSU, P.C.
    Roger L. Zissu (Admitted pro hac vice)
11  James D. Weinberger (Admitted pro hac vice)
    866 United Nations Plaza
12  New York, New York 10017
    Telephone: (212) 813-5900
13  Fax:        (212) 813-5901

14  PERKINS LAW OFFICE, P.C.
    Patrick T. Perkins (Admitted pro hac vice)
15  1711 Route 9D
    Cold Spring, New York 10516
16  Telephone: (845) 265-2820
    Fax:        (845) 265-2819

17

18                    UNITED STATES DISTRICT COURT

19        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

20  JOANNE SIEGEL and LAURA SIEGEL     Case No. CV-04-8700 ODW (RZx)
    LARSON,                            Case No. CV-04-8776 ODW (RZx)
21
             Plaintiffs,               Hon. Otis D. Wright II, U.S.D.J
22
        v.
23
    TIME WARNER INC.; WARNER           **JOINT STATUS REPORT**
    COMMUNICATIONS INC.; WARNER
24  ENTERTAINMENT INC.; WARNER BL
    TELEVISION PRODUCTION INC.; DC
25  COMICS; and DOES 1-10,

26           Defendants.

27
    _____
28  AND RELATED COUNTER-CLAIMS

394090v1

Plaintiffs Joanne Siegel and Laura Siegel Larson (collectively, "Plaintiffs") and Defendants Time Warner Inc. ("Time-Warner"), Warner Communications Inc., Warner Bros. Entertainment, Inc. ("Warner Bros."), Warner Bros. Television Production Inc., and Defendant and Counterclaimant DC Comics ("DC") (collectively, "Defendants") hereby submit this joint status report in Cases Nos. CV 04-8400 (the "Superman Action") and CV 04-8776 (the "Superboy Action"), as directed by the Court.[1]

Plaintiffs Joanne Siegel and Laura Siegel Larson are the widow and daughter, respectively, of Jerome Siegel ("Siegel") who, with Joseph Shuster ("Shuster"), co-created Superman. Siegel and Shuster co-authored the first Superman comic book story which was later published in 1938 by Detective Comics, Inc. ("Detective"), the predecessor of defendant DC Comics, in a new publication entitled *Action Comics No. 1*. By agreement dated March 1, 1938, Siegel and Shuster granted to Detective all worldwide rights in their Superman story and character, and Detective exploited those rights in various media over the next seventy years. During the period at issue, from 1938 to 1943, Siegel and Shuster wrote, hundreds of additional Superman comic book stories published by Detective, and hundreds of Superman newspaper strips syndicated by the McClure Newspaper Syndicate.

The 1976 Copyright Act, which became effective on January 1, 1978, provided authors and their families with new rights to recapture the author's original copyright(s) for the extended renewal term by noticing the termination of previous grants of copyright. *See* 17 U.S.C. §§ 304(c), 304(d), 203(a). Pursuant to 304(c) of the 1976 Act, Plaintiffs served notices of termination with respect to Superman and Superboy ("Termination Notices" or "Terminations") on Defendants on April 3, 1997, and November 8, 2002, respectively, and filed such notices with the U.S. Copyright Office, pertaining to Siegel's alleged copyright interest in Superman and Superboy that had been the subject of certain grants. Pursuant to section 304(c), the Superman Termination Notices set forth an

---

[1] The parties have worked in good faith to prepare a mutually acceptable joint statement and agree that neither party will be prejudiced by the descriptions of the claims, defenses, and arguments presented herein.

394090v1

effective Termination date of April 16, 1999, and the Superboy Termination Notices set forth an effective Termination date of November 17, 2004.

Defendants challenged the scope and effectiveness of Plaintiffs' Superman and Superboy Termination Notices. In response, Plaintiffs initiated, in October 2004, the Superman Action and the Superboy Action for declaratory relief as to the validity of the Superman and Superboy Terminations, respectively, and additional claims.

Superman is considered a joint work under the Copyright Act because it was co-authored by Siegel and Shuster. As such, each co-author originally owned an undivided 50% interest in such joint work's copyright. Joint owners of a copyright each have the non-exclusive right to exploit such copyright subject to a duty to account to one another. The Superman Termination Notices related to Siegel's (but not his co-author Shuster's) 50% interest in the Superman copyrights. Therefore, because DC is currently still the successor of Shuster's joint copyright interest, the Superman Action is principally an action for an accounting of Plaintiffs' allocable share of profits from the exploitation of Plaintiffs' recaptured Siegel Superman copyrights after April 16, 1999, the noticed Superman Termination date.

The Superboy Action, in contrast, is based on Siegel's alleged sole authorship of the original Superboy story, and is therefore principally a copyright infringement action, based on Defendants' alleged exploitation of the allegedly recaptured Superboy copyrights after November 17, 2004, the noticed Superboy Termination date.

In the more than five years since Plaintiffs filed their actions, the Court has issued a number of wide-ranging opinions that have substantially refined and narrowed the issues presented. In the sections that follow, we set forth the procedural history of each case, describing the issues that have been determined along with the issues that remain pending.

## I. The Superman Action (Case No. CV 04-8400).

On April 3, 1997, Plaintiffs served seven notices of termination pursuant to 17 U.S.C. § 304(c), all effective as of April 16, 1999, purporting to terminate Siegel's copyright grants to DC's predecessors in the Superman character and comic book series

394090v1

2

ER 1775

1  dating back to 1938.

2         Plaintiffs filed their initial Complaint in the Superman Action on October 4, 2004.

3  The Complaint contained the following causes of action:

4  •  Plaintiffs' First Cause of Action sought declaratory relief to affirm the validity of

5         Plaintiffs' Superman Termination Notices pursuant to 17 U.S.C. § 304(c), and to

6         declare that Plaintiffs, having recaptured Siegel's fifty percent share of the original

7         Superman copyrights, were entitled to an accounting from Defendants for fifty

8         percent of their profits from the continued exploitation of the recaptured Superman

9         copyrights after April 16, 1999;

10  •  Plaintiffs' Second Cause of Action sought declaratory relief as to the scope of

11        Defendants' duty to account to Plaintiffs for post-April 16, 1999 profits from

12        exploitation of Plaintiffs' recaptured Superman copyrights, including declarations:

13        (a) that Defendants' duty to account extends to profits from foreign territories based

14        on "predicate acts" in the United States; (b) that "apportionment" is applicable to

15        copyright *infringement* claims actions and not to an accounting of profits between

16        joint copyright owners; (c) that if apportionment is held to apply, its application

17        should be limited to derivative Superman works created by the accounting

18        Defendant(s), but not to passive Superman licensing by such accounting Defendant;

19        (d) that profits should include profits from any derivative Superman works created,

20        produced or manufactured on or after the effective Termination date; (e) that profits

21        should not be limited to the Superman profits of Warner Bros.' wholly owned

22        subsidiary, DC, but should include Superman profits of Warner Bros. and Time-

23        Warner as well; and (f) that, in determining profits, deductible costs should be

24        limited to those customarily deducted in arm's-length agreements and comply with

25        Generally-Accepted Accounting Principles ("GAAP");

26  •  Plaintiffs' Third Cause of Action sought a declaration that Defendants have a duty

27        to account for post-April 16, 1999 exploitation of the Superman "crest" and/or

28        Superman "shield" on the ground that they are copyrighted works derivative of the

394090v1

3

ER 1776

1    copyrighted Superman crest in *Action Comics No. 1*;

2    •   Plaintiffs' Fourth Cause of Action sought an accounting from all Defendants for

3        their respective exploitation of recaptured Superman copyrights after the effective

4        Termination date;

5    •   Plaintiffs' Fifth Cause of Action alleged a claim for waste of the recaptured

6        Superman copyrights after the effective Termination date;

7    •   Plaintiffs' Sixth Cause of Action alleged that Defendants violated the Lanham Act

8        by falsely representing exclusive ownership of Superman after the noticed

9        Termination date;[2]

10   •   Plaintiffs' Seventh Cause of Action alleged that Defendants violated California

11       Business and Professions Code §§ 17200 *et seq.* by omitting the Terminations from

12       Time-Warner's public financial disclosures.

13

14    Defendants filed their initial Answer and Counterclaims in the Superman Action on

15 November 22, 2004. Defendant DC Comics asserted the following counterclaims:

16   •   DC's First Counterclaim requested declaratory relief that the Termination Notices

17       are ineffective, alleging five independent reasons: (a) Plaintiffs did not send a

18       notice of termination with respect to a May 21, 1948 Consent Agreement; (b)

19       Plaintiff Joanne Siegel continued to accept benefits under a December 23, 1975

20       agreement, although she served a termination notice listing that agreement; (c)

21       Plaintiffs' Superboy Notice was ineffective because it was based on works that were

22       unpublished and therefore not subject to termination because they were neither in

23       their first nor their second term of copyright as of January 1, 1978, as required by 17

24       U.S.C. § 304(c); (d) Siegel's Superboy proposal and story sent to DC's predecessor-

25       in-interest were either prepared without the authorization of the copyright owner

26

27   [2] Plaintiffs did not include the Fifth and Sixth Causes of Action in their Second Amended Complaint, which was filed on October 8, 2008, with the Court's permission. Defendants filed their Answer to Plaintiffs' Second Amended Complaint on October 20, 2008.

28

394090v1

ER 1777

1  and/or were "works made for hire," and therefore Siegel did not own any copyright

2  interest therein that would be subject to copyright termination; and (e) the Superman

3  Termination Notices were not timely served;

4  • DC's Second Counterclaim requested a declaration that the Siegels' claims are

5  barred by the statute of limitations;

6  • DC's Third and Fourth Counterclaims alleged that the parties had entered into a

7  settlement agreement that the Siegels had repudiated,

8  • DC's Fifth Counterclaim alleged on the basis of various limitations provided in

9  section 304(c) that the Court limit the scope and reach of the Superman and

10  Superboy notices in the following seven ways: (a) Plaintiffs failed to terminate

11  certain Superman Ads published prior to the publication of *Action Comics No. 1*, so

12  that the copyrights therein are still exclusively owned by DC Comics; (b) DC

13  Comics retains the rights to exploit Superman "derivative works" prepared prior to

14  the effective dates of the Superman and Superboy Notices; (c) DC owns all

15  copyrights in post-*Action Comics No. 1* "derivative works," including new super

16  powers, villains, components to the Superman universe, or any other new Superman

17  elements contained therein; (d) Superboy is a "derivative work" based on Superman;

18  (e) Superboy is a joint work of authorship; (f) the television show "Smallville" is not

19  derived from the Siegel Superboy Submissions or any other Superboy work

20  exploited prior to May 21, 1948; and (g) certain "Additional Action Comics No. 1

21  Materials" were works made for hire;

22  • DC's Sixth Counterclaim sought a determination regarding the application of a

23  number of accounting principles in the event that the Superman Termination Notices

24  and/or Superboy Termination Notice were deemed valid and effective.

25

26  The parties subsequently entered into a stipulation permitting Plaintiffs to file their

27  First Amended Complaint and permitting Defendants to file their First Amended

28  Counterclaims, and the Court adopted the stipulation on October 18, 2005.

394090v1

ER 1778

1    Plaintiffs' First Amended Complaint largely tracked their initial complaint, except

2  for substantive amendments to Plaintiffs' sixth cause of action under the Lanham Act.

3    Defendants' First Amended Counterclaims contained additional allegations

4  concerning Defendants' alleged "settlement" defense.  Defendants filed their Answer to

5  Plaintiffs' First Amended Complaint on November 1, 2005.  Plaintiffs filed their Reply to

6  Defendants' First Amended Counterclaims on November 4, 2005.

7  **A.    The Parties' April 30, 2007 Partial Summary Judgment Motions.**

8    On April 30, 2007, the parties filed cross-motions for partial summary judgment in

9  the Superman Action.  Plaintiffs sought partial summary judgment as follows:

10  •    That Defendants' Third and Fourth Alternative Counterclaims should be dismissed

11      because the parties failed to consummate a binding settlement agreement;

12  •    That the Superman Termination is valid as a matter of law with respect to at least

13      the original Superman story published in *Action Comics No. 1*, and that Plaintiffs

14      have thereby recaptured Siegel's co-authorship share of the copyrights therein;

15  •    That the defenses to the Terminations alleged in Defendants' First and Second

16      Alternative Counterclaims and parts of their Fifth Alternative Counterclaim lacked

17      merit because: (a) Siegel and Shuster's Superman story published in *Action Comics*

18      *No. 1* is not a "work made for hire" as it was independently created by them long

19      before their relationship with Detective; (b) that a May 21, 1948 consent judgment

20      need not have been listed in Plaintiffs' Termination Notices because it was not a

21      copyright grant and, in any event, is duplicative of the May 19, 1948 stipulation

22      listed in the Termination Notices; (c) that the December 23, 1975 agreement, was

23      not a copyright grant and, in any event, Plaintiff Joanne Siegel's acceptance of

24      certain pension benefits from Defendants did not reinstate any copyright grants; (d)

25      that the Superman Termination was timely served; and (e) that the Superman

26      Termination is not barred by the statute of limitations; and

27  •    That Plaintiffs are entitled to an accounting of all profits earned from Plaintiffs'

28      recaptured Superman copyrights in the United States and in foreign territories (to the

394090v1

1 extent such foreign profits are based on Defendants' predicate acts in the United
2 States).
3
4 Defendants sought partial summary judgment as follows:
5 • That Plaintiffs have no right under the Copyright Act to share in Defendants' profits
6 derived (a) from the foreign exploitation of any Superman work, including
7 "Superboy," or any other juvenile version of Superman, (b) from the exploitation of
8 the Superman family of trademarks, or (c) from the continued exploitation of any
9 Superman "derivative work," including "Superboy," or any other juvenile version of
10 Superman, created prior to the effective dates of Plaintiffs' Terminations;
11 • That as a result of Plaintiffs' alleged failure to terminate certain copyrighted works
12 as prescribed by the Copyright Act, Defendants remain free to use such
13 unterminated works and the elements contained therein without accounting to
14 Plaintiffs and without liability for copyright infringement; and
15 • That neither Warner Bros. nor Time-Warner is the "alter ego" of DC, and Plaintiffs
16 therefore are not entitled to reach any Superman-related profits of either of these
17 two Defendants.
18
19 The Court issued its ruling on the parties' partial summary judgment motions on
20 March 26, 2008.
21 The Court granted Plaintiffs' motion with respect to Defendants' work-for-hire
22 defense, concluding that "all the Superman material contained in <u>Action Comics</u>, Vol. 1, is
23 not a work-made-for-hire and therefore is subject to termination." *Siegel v. Warner Bros.*
24 *Ent. Inc.*, 542 F.Supp.2d 1098, 1130 (C.D. Cal. 2008) ("*Siegel II*"). The court also granted
25 Plaintiffs' motion in holding that Plaintiffs' omission of the 1948 consent judgment in the
26 Termination Notices did not diminish or invalidate the Notices. *Id.* at 1132. The Court
27 likewise granted Plaintiffs' motion that Joanne Siegel's continued acceptance of benefits
28 under the parties' 1975 agreement did not constitute a "grant" of copyrights under section

394090v1

1  304(c)(6)(D) and had no effect on Plaintiffs' Terminations. *Id.* at 1134. The Court also

2  granted Plaintiffs' motion in denying Defendants' statute of limitations defense, holding

3  that Plaintiffs' action was timely filed. *Id.* at 1136. The Court likewise granted Plaintiffs'

4  motion in denying Defendants' defense that the parties had allegedly entered into a

5  binding settlement agreement in 2001, ruling that "the parties' settlement negotiations did

6  not result in an enforceable agreement." *Id.* at 1139.

7      The Court granted Defendants' motion in ruling that certain "promotional

8  announcements," due to their earlier publication, fell outside the statutory time "window"

9  of Plaintiffs' Termination Notices. *Id.* at 1126. The Court defined the scope of the

10  elements in the Promotional Announcements. *Id.*

11      In addition, the Court granted Defendants' motion on the foreign profits issue and

12  denied Plaintiffs' motion, ruling that the "the termination notice is <u>not</u> effective as to …

13  defendants' exploitation of the work abroad," and that therefore Defendants "must account

14  to plaintiffs only for the profits from such domestic exploitation of the Superman

15  copyright." *Id.* at 1142. The Court also granted Defendants' motion that "plaintiffs cannot

16  share in defendants' profits 'purely attributable to [Superman] trademark rights,'" but

17  preserved the issue of Defendants' "accounting [for] the mixed use of trademark and

18  copyright." The Court also granted Defendants' motion that Plaintiffs' accounting "should

19  not include any profits attributable to the 'post-termination exploitation of [Superman]

20  derivative works prepared prior to termination,'" but preserved the issue as to the extent a

21  post-termination "alteration [of] pre-termination derivative works" creates a post-

22  termination derivative work for which Defendants must account. *Id.*

23      The Court denied Defendants' motion to dismiss Plaintiffs' "alter ego" claims,

24  holding that "whether the license fees paid [to DC Comics for the Superman rights]

25  represents the fair market value therefor, or whether the license for the works between the

26  entities was a 'sweetheart deal,' are questions of fact that are not answered on summary

27  judgment…." *Id.* at 1145.

28      Both parties moved for clarification and/or reconsideration of certain portions of the

394090v1

8

1  Court's March 26, 2008 Partial Summary Judgment Order. Defendants' motion (Docket

2  Entry #307) requested that the Court reconsider its statement regarding the scope of

3  copyrightable material contained in the "promotional announcements." Plaintiffs' motion

4  (Docket Entry # 300, 312) requested that the Court "(a) clarify that Defendants did not

5  secure any copyrightable Superman elements via the 'promotional announcements;'" and

6  (b) clarify that the promotional announcements did not detract from Plaintiffs' recaptured

7  Superman copyrights. Plaintiffs also sought clarification that the Court's statements in the

8  background section of its order regarding the Superman elements it did not see in *Action

9  Comics No. 1* were *dicta*, on the ground that this literary issue had not been joined.

10  On July 3, 2008, the Court issued an order denying Defendants' motion. In denying

11  Defendants' motion, the Court "affirm[ed] its conclusion on the scope of the copyrightable

12  material contained in those [promotional] announcements." Order at 3-4. The Court

13  denied Plaintiffs' motion, but without prejudice, stating that "[s]hould plaintiffs wish for

14  the Court to deal with the questions identified in their motion, they may append them to

15  those issues identified in the March 31, 2008 Order requiring further briefing." Order at 4.

16  *See* Discussion of Additional Issues Briefing in Section I(B), *infra*.

17  **B.    Additional Issues Briefing.**

18  On February 21, 2008, a month before the Court issued its March 26, 2008 Partial

19  Summary Judgment Order, the parties filed a stipulation with the Court, requesting that it

20  accept briefing on and decide certain "Additional Issues" that would substantially impact

21  the nature, conduct and length of the trial, as well as the parties' pre-trial preparations.

22  The Additional Issues were:

23  •    If Plaintiffs are successful in their Superman copyright termination claim, is

24       Plaintiffs' share of post-termination profits as a joint owner of the recaptured

25       Superman copyright(s) subject to reduction via an "apportionment" analysis?

26  •    If Plaintiffs are successful in their Superman copyright termination claim, are the

27       following to be determined by the Court or by the jury: (a) the amount of post-

28       termination Superman profits at issue and (b) the degree, if any, to which Plaintiffs'

394090v1

1     share of such profits should be reduced by "apportionment"?

2 •   If an "apportionment" analysis is held to be appropriate, is the trier of fact (be it the

3     Court or the jury) required to make a separate and independent apportionment

4     determination, if any, for each post-termination Superman work?

5 •   Do Plaintiffs or Defendants bear the burden of proof on (a) the issue of Defendants'

6     profits, and (b) the issue of the apportionment, if any, of those profits?

7 •   If Plaintiffs are successful in their Superman copyright termination claim, are

8     Plaintiffs only entitled to profits derived from Plaintiffs' recaptured copyright

9     interest in *Action Comics No. 1*; that is, was Jerome Siegel's contribution on all

10     *subsequent* Superman works (within the termination "window") as a "work-made-

11     for-hire" and accordingly not subject to termination?

12

13     In a March 31, 2008 Order, issued several days after the Court's Partial Summary

14 Judgment Order, the Court ordered the parties to engage in settlement mediation, and

15 stated that it would set a briefing schedule for the Additional Issues if the parties were

16 unable to reach a settlement.[3] The Court also requested that the parties brief (along with

17 the Additional Issues) the following issues that had been left unresolved by the Court's

18 March 26, 2008 Partial Summary Judgment Order:

19 •   Whether and to what extent post-termination alterations to pre-termination

20     derivative works fall within the scope of what Plaintiffs regained through their

21     termination notices; and

22 •   Whether and to what extent mixed uses of trademarks and copyright fall within the

23     scope of what Plaintiffs regained through their termination notices.

24

25     Pursuant to the Court's July 3, 2008 Order regarding Plaintiffs' motion for

26 clarification, Plaintiffs also re-briefed the issues of (a) the scope of Defendants' rights

27

28  [3] The parties' mediation efforts are described in Section III below.

based on the "promotional announcements," and (b) whether the Court's background statements concerning the absence of certain Superman elements in *Action Comics No. 1* were *dicta*.

The parties submitted their initial briefs on the Additional Issues on July 21, 2008 and their responsive briefs on July 28, 2008. The Court heard oral argument on September 16, 2008, during which the Court bifurcated the trial, with separate trials on (1) the alter ego issues identified in the Court's March 26, 2008 Partial Summary Judgment Order, to determine which Defendants were required to account to Plaintiffs for their Superman profits; and (2) the ultimate accounting claim.

On October 6, 2008, the Court issued an Order denying Plaintiffs' request for a jury trial on their "alter ego" and accounting claims. *Siegel v. Warner Bros. Entm't Inc.*, 581 F. Supp. 2d 1067 (C.D. Cal. 2008).[4] The Court "reserve[d decision on the other Additional Issues] until shortly before the time of [the accounting] trial." *Id.* at 1076.

## C.    Plaintiffs' Lanham (Trademark) Act and Waste Claims

Trial on Plaintiffs' Lanham Act and waste claims was set for November 4, 2008. On September 25, 2008, the parties submitted a stipulation seeking leave for Plaintiffs to file their Second Amended Complaint, removing Plaintiffs' Lanham Act and waste claims. On October 6, 2008, the Court held a status conference to address the parties' stipulation and other trial scheduling issues. The Court then accepted the parties' stipulation, granting Plaintiffs leave to file the Second Amended Complaint, which they did on October 8, 2008. Defendants filed their Answer to Plaintiffs' Second Amended Complaint on October 20, 2008.

In the Court's October 6, 2008 Order on the jury issues, the Court bifurcated the trial, with separate trials on: (1) the alter ego issues identified in the Court's March 26,

---

[4] Plaintiffs had alternatively requested an advisory jury to the extent the Court engaged in an "apportionment" analysis. Plaintiffs contend that the Court did not decide Plaintiffs' request that it empanel an "advisory jury." Defendants contend that the Court rejected any claim for a jury in connection with the accounting trial and did not leave the question of an advisory jury for later decision.

1  2008 partial summary judgment Order, which would determine which Defendants'

2  Superman profits would be subject to an accounting, and (2) the ultimate accounting

3  claims. The Court scheduled the alter ego trial for January 20, 2009 and the accounting

4  trial for March 16, 2009.

5  **D.   The "Alter-Ego Trial"**

6       In its March 26, 2008 Partial Summary Judgment Order, the Court found, with

7  respect to the close relationship between DC and Warner Bros., that "[t]his fact alone

8  raises a specter of a 'sweetheart deal' entered into by related entities in order to pay a less

9  than market value fee for licensing valuable copyrights." *Siegel II,* 542 F.Supp.2d at 1144.

10  Accordingly, the Court conducted the "alter-ego trial" from April 28, 2009 to May 13,

11  2009, and heard closing arguments on May 19, 2009. In its March 13, 2009 Final Pre-

12  Trial Conference Order, the Court stated:

13      Given the nature and the characterization of the property in question, the trial shall
14      determine whether the value of the various Superman option and assignment
        agreements between DC Comics and TWEC [Time Warner Entertainment
15      Company, LP], Warner Bros. Entertainment's predecessor in interest, and the
        amounts paid to DC Comics by TWEC (and its successor Warner Bros.
16      Entertainment) thereunder, reflect the fair market value of the nonexclusive rights
        that the Court has determined were transferred from DC Comics to TWEC (and its
17      successor Warner Bros. Entertainment), and, if not, what accounting shall be
        required of Warner Bros. Entertainment to ensure an equitable result.

18  Final Pretrial Conference Order at 7-8.

19       After the parties finished their closing arguments on May 19, 2009, the Court

20  dismissed Time-Warner from the case pursuant to Rule 52(c) (Tr. at 1598:2 – 1598:3) and

21  held that there was insufficient evidence to establish that the consumer products agreement

22  or animation agreements at issue were not fair market agreements. (Tr. at 1598:4 –

23  1598:8).

24       The Court took the other issues under submission. On July 8, 2009, the Court issued

25  its findings of fact and conclusions of law concerning the "alter-ego trial." The court

26  found in favor of Defendants as of the time of trial with respect to each of the agreements

27  at issue, concluding that:

28  •    "there is insufficient evidence that the Superman film agreement between DC

394090v1

Comics and Warner Bros., whether judged by its direct economic terms or its
indirect ones, was consummated at below its fair market value." Order at 28; and

• "the Court finds that there is no evidence introduced at trial that demonstrates that
the Smallville agreement was for less than fair market terms." *Id.*

However, the Court held that because the Defendants' Superman film agreement did
not contain a customary "reversion" clause in DC's favor, Plaintiffs could seek damages if
filming on a Superman sequel has not commenced by 2011:

• "If, however, by 2011, no filming has commenced on a Superman sequel, plaintiffs
could bring an accounting action at that time to recoup the damages then realized for
the Superman film agreement's failure to contain a reversion clause." *Id.* at 29.

**E.     The August 12, 2009 Decision on "Work-For-Hire" Issues.**

On August 12, 2009, the Court issued an "Order Resolving Additional Issues."  In
its Order, the Court ruled on the work-for-hire arguments presented in the parties'
Additional Issues briefing, and denying Plaintiffs' request for a jury trial on the work-for-
hire issue.  At issue was whether the following works were "works-made-for-hire":  (i) a
description of "future Superman exploits" written by Siegel; Superman comic strips
created by Siegel and artist Russell Keaton (the "Keaton Material"); *Action Comics Nos. 2-
61*; *Superman Nos. 1-6*; and Superman newspaper strips syndicated by the McClure
Newspaper Syndicate.  In pertinent part, the Court ruled as follows:

• The "future Superman exploits" paragraph written before the publication of *Action
Comics No. 1* could not be terminated because it was too generalized to achieve
copyright protection. *Siegel v. Warner Bros. Entertainment, Inc.*, 2009 U.S. Dist.
LEXIS 78193 at *58-*61 (C.D. Cal. Aug. 9, 2009) ("Siegel III");

• The "Keaton Material" was unpublished and therefore could not be terminated,
because it did not "acquire[] statutory copyright protection under the 1909 Act, as it
was either never published with the requisite notice or registered as an unpublished

1   work." *Id.* at *61;

2   • The Superman material "appearing in <u>Action Comics</u> No. 4 is based almost

3   verbatim on Siegel's pre-1938 script, . . . the Superman material appearing therein

4   was not a work for hire and is subject to termination" and recaptured by Plaintiffs.

5   *Id.* at *66-*67;

6   • <u>Superman</u> No. 1, pages three through six, was not a work made for hire and was

7   thus subject to termination and recaptured by Plaintiffs. *Id.* at *69-*70;

8   • "[T]he Superman material in <u>Action Comics</u> Nos. 2-3 and 5-6 . . . were works made

9   for hire." *Id.* at *78-*79;

10  • "[T]he Superman materials created by Siegel and Shuster during the term of their

11  employment agreement (namely, <u>Action Comics</u> Nos. 7-61, and to <u>Superman</u> Nos.

12  1-23) were works made for hire." *Id.* at *86-*87;

13  • "[T]he two weeks' worth of newspaper comic strip material created by Siegel and

14  Shuster during the spring of 1938, <u>before</u> the execution of the syndication agreement

15  were <u>not</u> works made for hire" and therefore were subject to termination and

16  recaptured by Plaintiffs. *Id.* at *129;

17  • The failure to list the two weeks of newspaper strips in the termination notices "was

18  'harmless error' that does not affect the validity of termination notice" regarding

19  these newspaper strips; and

20  • "[T]he newspaper strips created by Siegel and Shuster after September 22, 1938,

21  were works made for hire, [and] the right to terminate does not reach the grant to

22  those works." *Id.* at *119.

23  As a result of these various rulings, Plaintiffs have recaptured Jerome Siegel's co-

24  authorship interests in, and co-own with Defendant DC, the copyrights to the following

25  works: the first Superman story as published in *Action Comics No. 1, Action Comics No.*

26  *4, Superman No. 1* (pages three through six), and the first two weeks of the Superman

27  newspaper strips. The Court declined to address the remaining Additional Issues that have

28  been pending before the Court since the parties briefed them in July of 2008, reserving

394090v1

decision on those issues to a later date in advance of the accounting trial. *Id.* at *165, n.

27. Defendants filed a motion on October 2, 2009, seeking reconsideration of the Court's ruling that the omission of the first two weeks of the Superman newspaper strips from the Termination Notices was "harmless error." Plaintiffs filed a motion on October 3, 2009, requesting reconsideration of the Court's ruling that the McClure newspaper strips created by Siegel and Shuster after September 22, 1938 were works made for hire. In an opinion dated October 30, 2009, the Court denied both parties' motions.

**F.     Discovery Matters Impacting the Accounting Trial.**

The discovery cut-off in these actions was November 16, 2006. After that discovery cutoff, the Court decided several discovery motions, and ordered on August 13, 2007 an audit of Defendants. In addition, the parties entered into a stipulation on June 9, 2008 in which they agreed to supplement production in advance of trial, and Defendants agreed to supplement their financial production at the end of each financial quarter. Defendants last supplemented their financial information on June 1, 2009.

On October 1, 2009, the Court adopted a stipulation by the parties which granted Plaintiffs leave to replace their former expert Mark Halloran. The stipulation also granted Defendants leave to appoint a new rebuttal expert and if necessary provide limited supplemental rebuttal reports from previously designated experts.

The parties' accounting experts will also need to prepare supplemental reports updating their prior analysis of DC's profits as of June 30, 2007, based on the most recent financial data available.

**G.     Current Status of the Superman Action.**

The Court will need to schedule the trial and corresponding pretrial deadlines for the accounting action. As established in the alter-ego trial, the accounting action will concern Defendant DC's profits from the exploitation of those Superman copyrights that the Court has held were recaptured by Plaintiffs' Terminations and are co-owned by DC and Plaintiffs (namely, the first Superman story published in *Action Comics No. 1, Action Comics No. 4, Superman No. 1* (pages three through six), and the first two weeks of the

394090v1

ER 1788

Superman newspaper strips).

Both parties respectfully request, however, that the Court determine the remaining undecided Additional Issues which the parties briefed in 2008. Because such Additional Issues define the contours of the pending accounting trial, the parties cannot properly prepare for trial prior to a determination of the Additional Issues. The Additional Issues are not *in limine* motions and have far too large an impact on the trial to be decided like *in limine* motions, only days before trial. These remaining Additional Issues include:

- The impact, if any, that Defendants' pre-*Action Comics No. 1* "promotional announcements" have on the scope of Plaintiffs' recaptured copyrights;
- Whether principles of apportionment should be applied to the calculation of Plaintiffs' share of the profits from the recaptured copyrights;
- Whether the apportionment analysis, if applicable, should be on a work-by-work basis or pursuant to a general "template," or whether there should be an alternative method of apportionment;
- Who bears the burden of proof on what issues;
- How broad or narrow is the scope of the mixed use – copyright/trademark – products and merchandise as to which an accounting is required (*e.g.*, t-shirts with both Superman trademarks and copyrightable imagery);
- How much or how little is needed to transform the post-termination sale of a pre-termination "derivative work" into a post-termination "derivative work" so as to require an accounting (*e.g.*, DVD boxed sets of pre-1999 Superman films); and
- Whether the Court's background statements in its March 26, 2008 Partial Summary Judgment Order concerning the literary elements in *Action Comics No. 1* are *dicta*.

The Court's decision on these remaining Additional Issues will materially impact the parties' pretrial preparations and the accounting trial itself. Without guidance from the Court on these Additional Issues, well in advance of the deadlines set by the Court for the parties' pretrial submissions, the parties' pretrial submissions will likely be unnecessarily

394090v1

duplicative and not conform to the standards the Court ultimately adopts to govern the trial.

**II.     The Superboy Action (Case No. CV 04-8776).**

On November 2, 2002, Plaintiffs served a separate notice of termination under 17 U.S.C. § 304(c), as of November 17, 2004, regarding Siegel's copyright grants of the Superboy character to DC's predecessors.

Plaintiffs filed their initial Complaint in the Superboy Action on October 22, 2004. The Complaint contained the following causes of action:

- Plaintiffs' First Cause of Action sought declaratory relief confirming the validity of Plaintiffs' Superboy Termination Notice pursuant to 17 U.S.C. § 304(c). Unlike the Superman Action, where Plaintiffs acknowledged that Siegel co-authored Superman and that Plaintiffs therefore co-own recaptured Superman copyrights, Plaintiffs alleged that Siegel solely authored the first Superboy story and that therefore Plaintiffs solely own recaptured Superboy copyrights.

- Plaintiffs' Second Cause of Action alleged that Defendants violated the Lanham Act by falsely representing that they are the exclusive owners of Superboy.

- Plaintiffs' Third Cause of Action alleged that Defendants violated California Business and Professions Code §§ 17200 *et seq.* by omitting mention of the Superboy Termination from Time-Warner's public financial disclosures.

- Plaintiffs' Fourth Cause of Action sought injunctive relief preventing Defendants from exploiting derivative post-termination Superboy works.

Defendants filed their initial Answer and Counterclaims on November 22, 2004. The Counterclaims asserted therein mirrored those included in Defendants' Counterclaims filed in the Superman case. *See Section I, supra.*

Plaintiffs filed their First Supplemental Complaint on April 19, 2005. The principal change from their initial Complaint was the inclusion of a First Cause of Action for Defendants' alleged copyright infringement after November 17, 2004, the effective date of the Superboy Termination. Plaintiffs alleged that any Superboy works (*e.g.*, the *Smallville*

394090v1

17

**ER 1790**

1 television series) released by Defendants after the effective Termination date would
2 infringe Plaintiffs' recaptured original Superboy copyright. Defendants filed their Answer
3 to Plaintiffs' First Supplemental Complaint on September 7, 2005.

4     On October 18, 2005, the Court adopted the parties' stipulation permitting Plaintiffs
5 to file their First Amended Supplemental Complaint, and Defendants to file their First
6 Amended Counterclaims. Defendants filed their Answer to the First Amended
7 Supplemental Complaint on November 1, 2005, and Plaintiffs filed their Reply to
8 Defendants' First Amended Counterclaims on November 4, 2005.

9 **A.**     **February 15, 2006 Cross-Motions for Summary Judgment.**

10     On February 15, 2006, the parties filed cross-motions for summary judgment.
11 Plaintiffs moved for partial summary judgment, requesting a ruling that their statutory
12 Termination was valid and effective under 17 U.S.C. §304(c), arguing:

13 •     That Jerry Siegel alone created Superboy as embodied in a November 30, 1938
14     "pitch" letter from Mr. Siegel to DC's predecessor, Detective, and a thirteen-page
15     typed "Superboy" script Mr. Siegel submitted to Detective in December, 1940 (the
16     "Siegel Superboy Materials").

17 •     That the judicial findings in a prior 1947 action between the parties' predecessors in
18     the Supreme Court of the State of New York are binding on Defendants under the
19     doctrines of *res judicata* and collateral estoppel.

20 •     That the 1947 action held that "Siegel is the originator and sole owner of the comic
21     strip feature Superboy."

22 •     That the preclusive effect of the findings and conclusions in the 1947 action was
23     explicitly confirmed by the Second Circuit Court of Appeals in *Jerome Siegel, et al.*
24     *v. National Periodical Publications*, et al., 509 F.2d 909, 912-913 (2nd Cir. 1974).

25 •     That Plaintiffs' Superboy Notices of Termination complied with the requirements
26     set forth in 17 U.S.C. § 304(c).

27 •     That Plaintiffs' Superboy Notices of Termination were not required to list the 1948
28     Consent Judgment from the 1947 action, as the Consent Judgment was not a grant

394090v1

18

**ER 1791**

and as Plaintiffs listed the duplicative 1948 Stipulation between the parties; and

- That the Superboy materials created by Siegel were not "works-for-hire."

Defendants cross-moved for summary judgment, arguing:

- That because Superboy is derivative of Superman, Plaintiffs should not be permitted to proceed in a separate Superboy action;

- That because the Siegel Superboy Materials were never published or registered as an unpublished work, there was no "copyright subsisting in either its first or renewal term on January 1, 1978," and the "Superboy works" were therefore not eligible for termination under 17 U.S.C. § 304(c);

- That the Siegel Superboy Materials were not eligible for termination because they were "works for hire;"

- That the Siegel Superboy Materials were joint works of Siegel and Shuster, so that if otherwise terminable, Plaintiffs could only recapture a one-half share to the copyrights in such works;

- That Plaintiffs failed to terminate the grant in the May 21, 1948 Final Consent Agreement; and

- Plaintiffs' claim that the *Smallville* television series infringes the copyright in the Siegel Superboy Materials should be dismissed because Plaintiffs cannot meet the test for establishing infringement.

Judge Lew, who presided over the Superboy Action at that time, issued a decision on the parties' cross-motions on March 24, 2006, granting Plaintiffs' motion for partial summary judgment and denying Defendants' motion for summary judgment.

One of the principal disputes briefed by the parties and addressed in Judge Lew's ruling was whether the 1948 findings of fact and conclusions of law issued in support of an interlocutory ruling in the 1947 state court action had preclusive effect in the Superboy litigation. Judge Lew concluded that the 1948 findings of fact and conclusions of law have

394090v1

ER 1792

preclusive effect:

> "Having relied on [the 1947 action's] findings for previous favorable determinations regarding Superman, Defendants now take the inconsistent position that this Court is not bound by the state court findings, as they relate to Superboy…Contrary to Defendants' assertions now, both the Southern District of New York and Second Circuit looked directly to, even citing to, Judge Young's findings of fact. This Court holds that it is consistent to continue this position and will look to Judge Young's as binding where relevant."

*See* March 24, 2006 Order at 7:4-7; 7:14-19.

Judge Lew also held that "no genuine issue of material fact exists regarding the effectiveness of [Plaintiffs'] termination of the Superboy copyrights." *Id.* at 12:8-11. Judge Lew also denied Defendants' motion that Defendants' *Smallville* television series does not infringe Plaintiffs' recaptured copyrights in the Siegel Superboy Material, preserving this issue for trial. *Id.* at 15:8-16:26.

Defendants filed a certification motion pursuant to 28 U.S.C. § 1292(b) on April 17, 2006, requesting that Judge Lew certify the matter for appeal. Judge Lew denied the certification request in an order dated May 22, 2006.

Judge Lew thereafter took senior status and these actions were reassigned to Judge Larson on October 26, 2006. On January 12, 2007, Defendants filed a motion for reconsideration, requesting that Judge Larson reconsider Judge Lew's holding that "Judge Young's findings of fact [in the 1948 Westchester Action between the parties' predecessors] have preclusive res judicata and collateral estoppel effect on this Court." Defendants requested in the alternative that Judge Larson reconsider Judge Lew's denial of Defendants' April 17, 2006 certification motion.

Judge Larson granted Defendants' reconsideration motion in an order dated July 27, 2007. In that ruling, Judge Larson concluded that the referee's findings in the Westchester Action should have preclusive effect, but as a matter of collateral estoppel, not judicial estoppel. However, Judge Larson ruled that "contrary to the March 24, 2006 Order, those findings are not necessarily determinative of all the issues." *Siegel v. Time Warner Inc.*, 496 F. Supp. 2d 1111, 1131 (C.D. Cal. 2007) ("*Siegel I*"). Judge Larson summarized his rulings as follows:

394090v1

> Based on the referee's findings, the Court has determined that Siegel's Superboy submissions were not a work made for hire, but the Court is unable to conclude whether the requisite 'publication' of the Superboy submissions occurred due to the unresolved matter regarding the submissions' derivative nature. Similarly, the Court was unable to conclude whether the Superboy submissions were part of a joint work, but only because the issue of whether the submissions are a derivative work remains unresolved (and a subject of further court-ordered briefing).

*Id.* at 1155.

Judge Larson therefore requested supplemental briefing by the parties on the issue of "the derivative nature, if any, of Siegel's Superboy submissions, bearing in mind the legal principles set forth in *Nichols* [*v. Universal Pictures Corp.*, 45 F.2d 119 (2d Cir. 1930)] as expounded in [*Detective Comics, Inc. v.*] *Bruns Publications*[*, Inc.*, 111 F.2d 432 (2d Cir. 1940)], *Warner Bros.* [*v. Am. Broad. Cos.*, 720 F.2d 231 (2d Cir. 1983)], and *Sapon* [*v. DC Comics*, 62 U.S.P.Q.2d 1691 (S.D.N.Y. 2002)]." *Id.* The parties submitted their supplemental briefing on September 10, 2007, but Judge Larson did not issue a ruling on the matter.

**B.      The Parties' April 30, 2007 Partial Summary Judgment Motions**

Between the time Defendants moved for reconsideration of Judge Lew's March 24, 2006 Order and the time Judge Larson issued his July 27, 2007 decision granting reconsideration, the parties filed partial summary judgment motions in both cases on April 30, 2007.  Defendants sought partial summary judgment in the Superboy Action (some of which overlaps with their motions in the Superman Action) on the follow grounds:

- That Plaintiffs have no right under the Copyright Act to share in Defendants' profits derived (a) from the foreign exploitation of any Superboy work, including "Superboy" or any other juvenile version of Superman, (b) from the exploitation of the Superman family of trademarks, or (c) from the continued exploitation of any Superman "derivative work," including "Superboy," or any other juvenile version of Superman, created prior to the effective dates of Plaintiffs' Terminations;

- That as a result of Plaintiffs' alleged failure to terminate certain copyrighted works as prescribed by the Copyright Act, Defendants remain free to use such unterminated works and the elements contained therein without accounting to

394090v1

1    Plaintiffs and without liability for copyright infringement; and

2  •   That the episodes of the television series *Smallville* prepared on or after November

3    17, 2004 are not "substantially similar" to, and therefore do not infringe upon, any

4    of the Superboy copyrights recaptured by Plaintiffs pursuant to their Termination

5    Notices.

6    Plaintiffs cross-moved for partial summary judgment on the following grounds:

7  •   That Plaintiffs are entitled to an accounting of all profits earned from Plaintiffs'

8    recaptured Superboy copyrights, both in the United States and in foreign territories,

9    to the extent that such foreign profits flow from Defendants' exploitation of such

10   copyrights within the United States.

11

12   As discussed in detail in Section I(A) above, the Court issued its ruling on the

13   parties' Superman partial summary judgment motions on March 26, 2008.  In addition, the

14   Court issued a separate order related to the Superboy Action on March 31, 2008, in which

15   the Court denied the parties' motions for partial summary judgment in the Superboy

16   Action as moot:

17   As the Court stated during the September 17, 2007 hearing on the parties' cross
     motions for partial summary judgment in these cases, the issues raised by the parties

18   in the Superboy action . . ., in light of the Court's earlier ruling on July 27, 2007,
     and with a forthcoming ruling in the companion Superman action . . ., would be

19   rendered moot.

20   Order at 1.

21   The Court further stated:

22   "[T]he Court reserves issuing an order on the remaining issues brought up in the
     Court's July 27, 2007 Order in the Superboy case (and to which the parties have

23   provided both supplemental briefing and oral argument), and setting the pre-trial and
     trial-dates in the Superboy matter, if needed, until after the conclusion of the trial in

24   the Superman case."

25   Order at 2.

26   **C.    Current Status of the Superboy Action.**

27   Plaintiffs' position is that the Court never issued a final ruling that the Siegel

28   Superboy Materials were a "joint work."  Defendants' position is that the Court ruled that

394090v1

22

JOINT STATUS REPORT

ER 1795

1  the Siegel Superboy Materials were a "joint work" if and to the extent that they were

2  copyrightable at all.  In addition, given the Court's July 27, 2007 ruling along with its

3  March 31, 2008 ruling, the parties agree that the Court still needs to make determinations

4  on: (1) the extent of the original copyrightable material in Siegel's Superboy Materials, if

5  any; and (2) whether the original material, if any, from the Superboy Materials was

6  published in a work allegedly subject to recapture pursuant to the Superboy Termination

7  Notices.

8        Although Judge Larson suggested in his March 31, 2008 Order that he would wait to

9  resolve these issues until after the conclusion of the accounting trial in the Superman

10  action, the parties submit that they should properly be decided in advance of the Superman

11  accounting trial so that the parties can also account in the Superman Action for Siegel's

12  Superboy Materials, if such is held to be appropriate.

13  **III.    The Parties' Mediation Efforts.**

14        The parties have engaged in two settlement mediations before the Hon. Daniel

15  Weinstein (Ret.), the first in May-June 2008, and the second in September 2009.  On

16  November 11, 2009, the parties each submitted a status report to the mediator pursuant to

17  the mediator's directive.  Despite the parties' mediation efforts, to date they have not

18  settled these cases.

19

20

21

22

23

24

25

26

27

28

394090v1

ER 1796

1 | Respectfully submitted,

2

3 | DATED: December 21, 2009     WEISSMANN WOLFF BERGMAN
           COLEMAN GRODIN & EVALL LLP

4 |                    -and-

5 |       FROSS ZELNICK LEHRMAN & ZISSU, P.C.

6 |                    -and-

7 |       PERKINS LAW OFFICE, P.C.

8

9

10

11 |       By: _____

12 |           Michael Bergman

         Attorneys for Defendants and counterclaimant

13 | DATED: December 21, 2009     TOBEROFF & ASSOCIATES, P.C.

14

15

16

17 |       By: _____

18 |           Marc Toberoff

19 |       Attorneys for Plaintiffs/Counterclaim-Defendants

20

21

22

23

24

25

26

27

28

Marc Toberoff (CA State Bar No. 188547)
Nicholas C. Williamson (CA State Bar No. 231124)
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
Email: MToberoff@ipwla.com

Attorneys for Plaintiffs and Counterclaim Defendants
JOANNE SIEGEL and LAURA SIEGEL LARSON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> TIME WARNER INC., a corporation; WARNER COMMUNICATIONS INC., a corporation; WARNER BROS. ENTERTAINMENT INC., a corporation; WARNER BROS. TELEVISION PRODUCTION INC., a corporation; DC COMICS, a general partnership; and DOES 1-10, <br><br> Defendants. | Case No.: CV 04-08400 SGL (RZx) <br><br> Honorable Stephen G. Larson, U.S.D.J. <br> Honorable Ralph Zarefsky, U.S.M.J. <br><br> **DECLARATION OF DENIS KITCHEN IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO PLAINTIFFS' SEPTEMBER 23, 2008 FILINGS** |
| DC COMICS, <br><br> Counterclaimant, <br><br> vs. <br><br> JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, <br><br> Counterclaim Defendants. | |

ER 1798

1    I, Denis Kitchen, declare as follows:

2    1.    I am a cartoonist, writer, editor and publisher and have been involved in

3    the comic book industry since 1968.   I was the owner and publisher of Kitchen Sink

4    Press from 1969 until 1999.  At Kitchen Sink Press, I co-published with DC Comics

5    several anthologies of Superman works, including *Superman: The Dailies: 1939-1942*

6    in 1999, and *Superman: The Sunday Classics: 1939-1943* in 1998.  I am currently a

7    partner and literary agent with Kitchen & Hansen Agency LLC, and the owner of

8    Denis Kitchen Publishing Co., LLC.   I have personal knowledge of the facts set forth

9    in this declaration and, if called as a witness, could and would testify competently to

10   such facts under oath.

11   2.    Since 1990, I have run the Denis Kitchen Art Agency, which both sells

12   original artwork and acts as the exclusive literary and marketing agent for a number of

13   graphic artists.   In or about November, 1993, I began representing Virginia Keaton,

14   the widow of the comic strip artist Russell Keaton.

15   3.    While representing Virginia Keaton, I received from her copies of various

16   correspondence from Jerome Siegel to Russell Keaton.  Among these documents was a

17   letter from Siegel to Keaton dated November 13, 1934 enclosing a continuity/story

18   Siegel had written regarding Superman playing in a football game.  Attached hereto as

19   Exhibit "A" is a true and correct copy of Siegel's Superman continuity and cover letter.

20   4.    After being contacted by Joanne Siegel and Laura Siegel Larson's

21   attorney, Marc Toberoff, in September, 2008, I scanned into PDF format true and

22   correct copies of Siegel's Superman football story and November 13, 1934 cover letter.

23   I then e-mailed this PDF file to Mr. Toberoff on September 19, 2008.

24   I declare under penalty of perjury of the laws of the United States of America

25   that the foregoing is true and correct.

26   Executed on September 29, 2008 in Shutesbury, Massachusetts.

27

28
_____
Denis Kitchen

1

DECLARATION OF DENIS KITCHEN                          **ER 1799**

I, Denis Kitchen, declare as follows:

1.    I am a cartoonist, writer, editor and publisher and have been involved in the comic book industry since 1968. I was the owner and publisher of Kitchen Sink Press from 1969 until 1999. At Kitchen Sink Press, I co-published with DC Comics several anthologies of Superman works, including *Superman: The Dailies: 1939-1942* in 1999, and *Superman: The Sunday Classics: 1939-1943* in 1998. I am currently a partner and literary agent with Kitchen & Hansen Agency LLC, and the owner of Denis Kitchen Publishing Co., LLC. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.    Since 1990, I have run the Denis Kitchen Art Agency, which both sells original artwork and acts as the exclusive literary and marketing agent for a number of graphic artists. In or about November, 1991, I began representing Virginia Keaton, the widow of the comic strip artist Russell Keaton.

3.    While representing Virginia Keaton, I received from her copies of various correspondence from Jerome Siegel to Russell Keaton. Among these documents was a letter from Siegel to Keaton dated November 13, 1934 enclosing a continuity/story Siegel had written regarding Superman playing in a football game. Attached hereto as Exhibit "A" is a true and correct copy of Siegel's Superman continuity and cover letter.

4.    After being contacted by Joanne Siegel and Laura Siegel Larson's attorney, Marc Toberoff, in September, 2008, I scanned into PDF format true and correct copies of Siegel's Superman football story and November 13, 1934 cover letter. I then e-mailed this PDF file to Mr. Toberoff on September 19, 2008.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on September 29, 2008 in Shutesbury, Massachusetts.

Denis Kitchen

1

DECLARATION OF DENIS KITCHEN

# EXHIBIT A

10622 Kimberley Avenue,
Cleveland, Ohio,
November 12, 1934.

Dear Keaton:

That Publishers is at least interested is good news. And you're doing a good job of attempting to convince Mr. Anderson. I am enclosing with this letter script for releases No. 13, 14, & 15, since you say that Mr. Anderson wishes to see at least three more strips. I am also enclosing a synopsis of what will occur during the next two months. Sports has been chosen as a background for the first adventure of SUPERMAN so as to demonstrate his prowess as an athlete. We will not, of course, stick to sports. The next adventure will be of an entirely different and more serious character. -- In this synopsis I've tried to plan a good story. If I've failed, let me know and I'll immediately get to work and attempt to produce something better. I hope you like it, though.

I have omitted the note about myself for the present, for a very good reason, as you shall see. My sole experience consists as follows: I've been attempting to break in with a cartoon strip since 1929, have produced many of them, but think that SUPERMAN is the best idea of them all. My first sale was to WONDER STORIES, a cartoon strip. The strip was returned a few weeks ago, nine months after acceptance. The editor said he and the publisher thought it excellent but they had to return it after all these months because they had no room for it.

My second acceptance was from Super Magazines Inc. N. Y. They accepted two of my strips, then reversed their decision because the artist had done a poor job. At present they're considering issuing a cartoon magazine for which I would supply all the continuity.

These two corporations, I believe, would reccommend me.

Then there is Mr. Livingston, President of The Consolidated Book Publishers, Chicago, who issued the magazine DETECTIVE DAN. He informed me a few weeks ago that we might get together on a deal with Marsh upon a DAN DUNN book to be released in the five-and-tens. Mr. Livingston might vouch for me.

And there is the Eastern Color Ptg. Co. of New York, who publish the magazine FAMOUS FUNNIES, who, I believe, have accepted some strips of mine, which they hope to syndicate some time after appearance in their magazine. They, though, I'm afraid, might not reccommend me because they may want my sole services (something like the situation between Dille's and yourself). I will of course drop these strips to work upon SUPERMAN, gladly.

This is not a good "experience record". Do you advise me to mention it at all, to Mr. Anderson? -- Because I've spent all these years on strips, I've sent no stories to magazines, so have no story publications to list. -- As to my reputation, I've been too busy trying to break in with a cartoon strip, to go out and earn a bad one.

What do you suggest I do about this woeful record of mine?
Best wishes....

Jerome Siegel

Jerome Siegel

ER 1802

# SUPERMAN

### By Jerome Siegel and Russell Keaton

13. (Explanetory panel)   In the years that followed, Sam and Molly instilled in their adopted son the conviction that he must turn his titanic strength into channels that would benefit mankind. When Clark's beloved foster-parents passed away, he swore at their death-beds a binding oath. And so was created SUPERMAN, the physical marvel who champions the oppressed!

13.a.   Clark: It's no use! I've puzzled over this unintelligible note, which holds the secret of my origin, hundreds of times. But I'm no closer to its secret.

(NOTE: Clark, in his bedroom, is seated at a table, reading the note Sam and Molly had found in the projectile, long years ago. On the table, open, is the small metal box in which he keeps the note.)

13.b.   Replacing the Mystery Note in a metal box, Clark prepares to retire --

Clark: I'll look at it again, in the morning.

13.c.   --unaware that a prowler crouches outside his window.

Prowler:  He acts like whatever's in th' box is worth plenty. I'll wait 'till he's asleep, then sneak in.

(NOTE: The prowler is on the roof of the house, peering into the room. You might show Clark, in his pajamas, about to turn off the room's light.)

.      .      .

14.a. (Picture shows the burglar coming into the room through the window. Kent is asleep in his bed.)

14.b.   (The burglar's flashlight is shining on the metal box, which one of his hands is grasping.)

Prowler: Here she is!

14.c.   Suddenly the lights flash on!

(NOTE: Clark, awakened, has arisen. His hand is on the light-switch.)

Clark: I thought so -- a petty thief! Put down that box, pronto!

14.d.   Prowler: Button your lip! One more peep or move an' you get punctured. -- Say, what're you grinnin' at?

(NOTE: On the wall of the room is placed two crossed swords. As the burglar speaks, he snatches one of the swords down from the wall, holding it in readiness.)

.      .      .

Case 2:04-cv-08400-ODW-RZ Document 663-3 Filed 09/23/08 Page 106 of 331 Page ID #:3043

15.a. (Clark is stepping forward, grinning. The burglar has the sword raised in two hands, ready to crash down with it.)

     Prowler: I'm warnin' yuh — stand back!

     Clark:  Drop that sword, you fool, before you hurt yourself!

15.b.  Prowler: You asked for it!

     (Clark has sprung forward. With all his strength, the burglar smashes the blade against Clark.)

15.c.  The blade harmlessly glances off Clark's super-tough skin, leaving not even a scratch!

15.d. (The burglar is cowering back, speechless with fear and amazement. Clark is breaking and crumbling the sword to pieces in his two bare hands.)

     Clark:  You're next!

     Prowler:  No — no! Don't touch me!

      •     •     •

Case 2:04-cv-08400-ODW-RZ Document 933562 Filed 09/23/08 Page 107 of 331 Page ID #:3044

The prowler, frantic with fear, dives through the window and makes his escape. Clark, discovering that the burglar has taken with him the box which contains the Mystery Note, quickly dons the uniform he wears when assuming the character of SUPERMAN, springs to his window-sill and takes a tremendous leap out into the night, after the speeding car in which is fleeing the prowler. The burglar, glancing back and seeing the catapulting figure outlined against the sky, believes he is being pursued by a demon.

SUPERMAN lands beside some railroad tracks. He staggers back as a train rushes by, missing him by inches. Glancing ahead, he sees, far down upon upon the track, the prowler's car, stalled.

On board the hurtling train, the engineer looks cautiously at the back of the stoker, then slips a bottle of whiskey out of a back pocket and takes a swig. Slyly replacing the bottle in his pocket, he rubs his lips with the back of his hand, and stares out at the road running parallel to the tracks. He grips the side of the engine and stares amazed, as he sights a fleet figure running along the road, racing the train. As he watches, breathless, the figure draws ahead, <u>passes up the train!</u> Stammering and gesticulating he attempts to describe what he has seen to the stoker. The stoker, glimpsing the bottle in the engineer's pocket, grins understandingly.

SUPERMAN, ahead of the train, vaults into the burglar's car. The burglar struggles insanely with him, as the train thunders down and looms over them.

A bare instant before the train smashes the auto, SUPERMAN springs into the air, with the prowler in his arms. He lands upon the top of the train, wavers and regains his balance. He lowers the burglar, re-

moves the metal box tightly clenched in his hands, then he discovers that the prowler has died of fright.

Leaning over the side of the car, he grasps the top of an open window and swinging down, sweeps through the window into a room. A moment later he hears feet approaching, voices, and the door begins to open.

Quickly, he hides behind a large armchair. A man and two younger men enter. They have entered so that they can speak in privacy. From their conversation SUPERMAN learns that the older man is Coach Randall of Dale University and these are two professional football players he has hired. They are soon to play against Cordell University, and Randall instructs them to "get" Stevens, Burns, and Dennis, star-players on the Cordell team, right at the beginning of the game. The men leave the room as the train stops, and excited cries are heard that the train has struck an auto. -- SUPERMAN has already conceived a plan of action.

The next day he looks through newspaper files at pictures of the Cordell team. At last he finds someone who resembles him in general build -- a substitute named Tommy Burke. At his home, applying make-up, he transforms his features so that they resemble Burke's.

That night: Tommy Burke is walking his girl-friend, Mary, home. She informs him that she is through with him. He's not the football hero he had said he would be. He is a disgrace to the uniform he wears; why, in his three years at college he's not even gotten into a single game. To his protests she replies she has a new boy-friend, a real athlete: Wallace Dodd, the Tennis Champion. As Burke disconsolately leaves her, he thinks, "I'll show her! Just wait'll I make good; I won't even look at her!" He does not realize he is being shadowed.

Abruptly Burke is stopped by a figure threatening him with a gun. He thinks he is the victim of a holdup, then he sights the face of the other -- an exact replica of how own! -- and gasps, "Say! - you! - you're me!" In

Case 2:04-cv-08400-ODW-RZ Document 373-3 Filed 09/29/08 Page 109 of 131 Page ID #:3046

answer to which he is informed, "No, you're wrong. You're not looking at Tommy Burke: substitute. You're looking at Tommy Burke, the greatest football player of all time!" Suddenly the pseudo-Burke lurches forward. Burke feels the sting of a hypodermic-needle on his arm, then he collapses, into the others arms.

Burke awakens to find himself in his own apartement, lying in bed, confronted by his counterpart, who still trains a gun upon him. He is informed not to be afraid. His counterpart is going to take his place in life for only a few days. He is being kept captive by a harmless drug which induces instant sleep upon application. SUPERMAN, disguised as Burke, reports to the locker-room of Cordell University, prepatory to football practise. He does not know which locker belongs to Burke, and is suddenly confronted by Roy Martin, a veteran player, who harshly demands to know why the pseudo-Burke is examining his (Martin's) locker.

Martin is hot-tempered and a bully. He uppercuts SUPERMAN and proceeds to pummel him furiously. SUPERMAN takes the blows unconcernedly, while the onlookers exclaim at his ability to "take it". Finally, SUPERMAN reaches out and delivers a light slap to Martin's face. Martin flies back against the lockers and collapses -- out! knocked cold!

Cordell's coach, Stanley Oliver, rushes up, sights Martin's recumbant form and demands to know who is responsible. Then he says: "Oh, so it's you, Burke! Well, Mr. Scrapper, you needn't bother about your uniform. I don't want you around here. Scram!"

All the players leave the locker-room. SUPERMAN is left alone. He ruminates that thus far all he's succeeded in doing is playing a dirty trick on the real Burke. He dons a uniform. As he comes out on the field, Martin says to a fellow-player: "Look -- there's Burke. He's disregarded the coach's orders!" The fellow-player replies: "I wonder what's come over the guy. He

always was meek as a lamb, but today -- !"

A football is soaring in the air. Suddenly a figure streaks out upon the field and snags it. Coach Oliver recognizes Burke. Angered because Burke has disobeyed his orders, he shouts for the members of the team to give him the "bum's rush", throw him off the field.

SUPERMAN, starting from a goal-post, runs leisurely forward. All the players on the field are sprinting toward him. The coach says: "This is going to be good! The sap is running for a goal, with everyone on the field trying to stop him. There goes Martin for him. Watch Burke come down faster than a window-shade!"

Martin is the first to reach SUPERMAN. As he dives for a tackle he says: "This is for poking into my locker!" SUPERMAN's outthrust arm connects with Martin's face, thrusting off the tackler. "And this," says SUPERMAN, "is for busting me on the jaw!"

Three more players close in on SUPERMAN, from all sides. The coach says to his assistant: "He'll have to be a superman to get by them." SUPERMAN leaps to the shoulder of one of the three oncoming players, and springs on over the other two. The coach's assistant replies: "There's your superman!"

SUPERMAN is already half-way down the field. The coach's assistant says: "I believe he's going to make it!" To which Coach Oliver replies: "Just fool's luck so far. Wait until he meets our 'unbeatables' -- Stevens, Burns, and Dennis." The entire remaining team piles onto SUPERMAN. The coach yells: "They've got him!" But the coach is fooled. For SUPERMAN continues to dash down the field, <u>with the entire team hanging onto him</u>!

Just before SUPERMAN reaches the goal-post, he shakes off the players. The coach's assistant shouts: "TOUCHDOWN!", while Coach Oliver gapes, mouth open. SUPERMAN, who has scored a touchdown, looks down the field and sees players slumped all over it staring stupidly up at him.

Coach Oliver rushes up to SUPERMAN, exclaiming: "Burke, have you

been holding out on me!" The members of the team, crowding around, are say-
ing: "Boy! What a run!"...."What's come over, Burke?....etc. Later, in his
office, the coach says: "And to think I let that guy sit on the bench through
six entire seasons!" His assistant replies: "But we'll get him in the last
game, the one with Dale, which decides the championship." Coach Oliver phones
the sports editor of a newspaper and reports the discovery of his new phenom-
ena. He gets laughed at, for Burke has the reputation of being the joke of
Cordell's team.

In Burke's apartement -- where he is being held prisoner — Burke
is eating. A gun, trained upon him, is held by the disguised SUPERMAN. SUPER-
MAN, reading a newspaper article, laughs aloud. Burke inquires what is so
funny. SUPERMAN replies that it is about Burke, that the writer has written a
humerous article -- but it's good publicity. Burke demands to read the article.

The two professional football players, Butch and Lefty, enter the
office of Coach Randall of Dale University, demanding to know about Cordell's
new "flash". Butch suggests that perhaps an accident might happen on the foot-
ball field. Burke might break a leg or something. Coach Randall says: "And
wouldn't that be just too bad!"

During the following days, the Cordell team practises heavily. The
coach cannot understand how Burke could have become so good practically over-
night. At the close of practise, the day before the big game, he informs the
members of the team: "Now remember -- early to bed tonight, no sweets, and
no women!"

It is the night before the game. Coach Randall of Dale, speaking to
Butch and Lefty, who are slipping on masks, says, "You know what to do!" They
are in a dark alley. Butch and Lefty enter Burke's apartement. They gag and
bind him, wondering why he does not resist. They do not know that he is under
the influence of the sleep-inducing drug. Neither do they know that they are
being observed by SUPERMAN who, attired in his uniform, is poised on a wooden

panel near the ceiling, in a dark corner of the room.

The two kidnappers carry the bound figure of Burke into their car, and drive off. SUPERMAN follows fleetly by foot, keeping the car in sight. The kidnappers take Burke into an old deserted house, binding him to a chair. They remove the gag from his mouth. SUPERMAN, hanging by his finger-tips, watches what occurs, through a window.

Burke: (awakening) Where -- where am I?

Butch: Where you can't escape from to get into tomorrow's game.

Burke: But why kidnap me? I -- I'm only a substitute.

Lefty: Only a substitute! -- ha! ha!

Butch: We're gangsters, see! -- hired by gamblers who've placed large bets on Dale to win.

Burke: But you don't understand. I'm not going to play tomorrow. I —

Lefty: Now do you really think you're foolin' us?

Butch: Listen! You're Tommy Burke, ain't y'?

Burke: Yes, but -- !

Butch: Then, shut up! That's all we want to know! And so that you'll keep your trap shut, I'm goin' to put the gag back on.

Outside the house, SUPERMAN grins. These men have unwittingly taken a problem off his hands. And he knows that they will do Tommy no physical harm. The next morning, in the locker-room, Coach Oliver gives a last-minute pep-talk to his men.... while people crowd into the stadium, little realising that they are about to witness the most amazing football game of all time.

Coach Randall drops in on Coach Oliver to see how he is taking the absence of the man on whom he has pinned all his hopes. After exchanging greetings, Oliver calls over SUPERMAN and introduces him to Randall. Coach Randall almost collapses with surprise upon seeing the pseudo-Burke.

After Oliver walks off, SUPERMAN informs Randall that he knows all about his dirty dealings and that unless he resigns as coach of Dale University

11

ER 1810

and Butch and Lefty quit the Dale team, he will expose them all after the game. Randall pretends he is indignant and hurries away. He confronts Butch and Lefty, tells them that they are all about to be exposed, and calls them idiots for leaving Burke alone in the deserted house so that he might escape. Butch says not to worry too much about Burke squealing. He slips a pocket-knife out of his pocket, suggestively, as he speaks.

The spectators cheer as the opposing teams come out on the field. Lefty nudges Butch and points out SUPERMAN. The starting-gun cracks, and Dale "kicks off".

The ball sails toward SUPERMAN. He snatches it and is off! The crowd cheers. Back in the deserted house, Burke struggles free of his bonds. Dashing out into the street he hails a taxi and instructs the driver to speed to the stadium.

SUPERMAN charges into his opponents, bowling them over, sending them flying in all directions, and runs on -- for a touchdown, in the first few seconds of the game! It is over scarcely before the crowd realises it!

Coach Oliver comments that this game is going to make history. Coach Randall realises that the pseudo-Burke is a fighting machine and that unless he is eliminated at once, his career as a coach is finished. Meanwhile, the real Burke is urging the taxi driver to greater speed.

At the stadium, Dale decides to take the "kick-off". Then the same thing happens again. SUPERMAN gets the ball and is off, scoring another touchdown! A radio announcer, describing the event, is tremendously excited. He has just witnessed two touchdowns by the same man, in the space of a few seconds. On the field, SUPERMAN's fellow-players grumble: "Who does he think he is, the whole team?"... "When do we do something!"... But Roy Martin receives the next "kick-off".

SUPERMAN streaks ahead and batters everyone out of the way, clearing openings for Martin to follow through. Roy scores the touchdown, but, embittered

he takes off his helmet and smashes it to the ground in disgust. A man and wife, listening to their radio, hear the announcer say: "Who can blame Martin for burning up? With such splendid interference as offered by Burke, a two-year-old babe could have carried the ball down the field and over the line." The husband has snatched up his hat and is dashing out of the room. The wife says: "Harry, where are you going?" Her husband replies: "To the game! Boy, I wouldn't miss this for anything!" The wife, running after him, adds: "Wait! I'm coming with you!"

Burke, reaching the stadium, goes to the player's entrance but is denied admittance. Fighting his way through a mob at the ticket-gate, he purchases a ticket and enters. Inside, he stands dumbfounded, watching what apparently is himself, score a touchdown.

Excited, he is about to call a policeman, when he hears a familiar voice cheering. Then he sights his former girl-friend, Mary, cheering frenziedly for him. Mary's escort, the Tennis Champion, protests. She informs him: "You may be Tennis Champ, but you're only a white lily compared to my Tommy!" Burke looks on, astounded.

He realises for the first time that everyone idolizes him. Suddenly, he starts shrieking and cheering: "Come on, Burke! Tear 'em to pieces!"

On the field, Lefty says to Butch: "Here he comes -- get him!" Butch throws himself on SUPERMAN's back, and stabs with his pocket-knife. The blade, of course, does not penetrate SUPERMAN's skin. SUPERMAN grasps Butch and swings him against Lefty. A little while later, Butch and Lefty, on stretchers, are carried past Coach Randall, who groans at the sight.

Coach Randall scribbles a note -- his resignation -- and instructs the water-boy to give it to Dale University's president. In the locker-room, Butch and Lefty, badly battered, decide to flee to Europe, anyplace -- anyplace where Burke won't find them. At the end of the half, the Cordell players tramp sullen-

**13**

ly into the locker-room; though they are winning, they feel that they are all superfluous, except for Burke. The pseudo-Burke is missing. The real Burke hurries down toward the locker-room. On the way he meets SUPERMAN, who gives him his uniform and tells him to continue on to the locker-room.

The team comes out for the second quarter. The ball drops toward Burke, and the crowd holds its breath, expecting to witness another spectacular play. Burke holds out his hands awkwardly. The ball drops through his outstretched arms and bounces haphazardly about, while Burke chases after it, confused. Finally, he gets the ball, but at the same instant a dozen players pile on top of him. When they arise, he is found at the bottom of the heap, unconscious. He is carried off the field.

Mary is frantic with concern. Deserting her Tennis Champion, she runs to the locker-room where she finds Burke sitting up, dizzy. At first he repulses her. But finally she wins him over. "Tommy," Mary says, "you were wonderful, splendid. But I want you to promise me something. Give up football; it's too -- too brutal." Burke exclaims, apparently horrified, "Give up football! Mary, you don't know what you're asking of me!" Then -- "But for you, Mary -- I'll do it!" As he takes her in his arms, he thinks: "And how!"

x        x        x

End of SUPERMAN's first adventure, which will cover at least sixty releases............

14

Marc Toberoff (CA State Bar No. 188547)
Nicholas C. Williamson (CA State Bar No. 231124)
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
Email: MToberoff@ipwla.com

Attorneys for Plaintiffs and Counterclaim Defendants
JOANNE SIEGEL and LAURA SIEGEL LARSON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual,<br><br>        Plaintiffs,<br><br>    vs.<br><br>TIME WARNER INC., a corporation; WARNER COMMUNICATIONS INC., a corporation; WARNER BROS. ENTERTAINMENT INC., a corporation; WARNER BROS. TELEVISION PRODUCTION INC., a corporation; DC COMICS, a general partnership; and DOES 1-10,<br><br>        Defendants. | Case No.: CV 04-08400 SGL (RZx)<br><br>Honorable Stephen G. Larson, U.S.D.J.<br>Honorable Ralph Zarefsky, U.S.M.J.<br><br>**DECLARATION OF MARC TOBEROFF ATTACHING MATERIALS DISCUSSED AT THE SEPTEMBER 16, 2008 HEARING** |
| DC COMICS,<br><br>        Counterclaimant,<br><br>    vs.<br><br>JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual,<br><br>        Counterclaim Defendants. | |

DECLARATION OF MARC TOBEROFF

I, Marc Toberoff, declare as follows:

1.     I am an attorney at Toberoff & Associates, P.C., counsel of record for plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs").  I am a member in good standing of the State Bar of California and submit this declaration to follow-up on statements made by me at the hearing on September 16, 2008 in this matter in response to the Court's questions.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.     Attached hereto as Exhibit "A" is a true and correct copy of the Thomson and Thomson report concerning Superman, referred to by me at the September 16, 2008 hearing on defendants' motion for summary adjudication of the "work for hire" issues in this case ("Oral Argument").

3.     As further mentioned at Oral Argument, I recently read a blog entry on the Internet regarding plaintiffs' "work-for-hire" briefing as to Jerome Siegel's ("Siegel") 1934 sample Superman story illustrated by Russell Keaton, which alleged possession of an additional Superman story/"continuity" written by Jerry Siegel in 1934.

4.     On September 19, 2008, I obtained a copy of this additional Superman story together with a cover letter from Siegel to Russell Keaton dated November 13, 1934 enclosing (and dating) the story.  The story is the Superman "football story" mentioned in Jerome Siegel's 1934 preview of future Superman comics (*see* Exhibit "A" to my Declaration of Marc Toberoff in Opposition to Defendants' Brief on Additional Issues) and subsequently published by Detective Comics in *Action Comics No. 4*.  True and correct copies of Siegel's 1934 "football story" and cover letter dated November 13, 1934 are attached hereto as composite Exhibit "B."

5.     For the Court's convenience, and for purposes of comparison, a true and correct copy of *Action Comics No. 4*, incorporating and publishing Siegel's 1934 "football" story, is attached hereto as Exhibit "C."  *Action Comics No. 4* was previously attached as Exhibit "I" to the Declaration of Marc Toberoff in Opposition

1

DECLARATION OF MARC TOBEROFF

1    to Defendants' Brief on Additional Issues.

2

3        I declare under penalty of perjury of the laws of the United States of America

4    that the foregoing is true and correct.

5        Executed on September 22, 2008 in Los Angeles, California.

6

7                              _____/s/_____

                                        Marc Toberoff
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                           2

                          DECLARATION OF MARC TOBEROFF                    **ER 1816**

# EXHIBIT A

 # Copyright Research Report

**:lient Name:**  George Zadorozny, Esq.

**\ttention:**

**)ate Received:**  2/23/96

**)ate Mailed:**  2/29/96

**Property Searched:   SUPERMAN**

**For:  Comic Magazine**

**Analyst:**  Jerry L. Robb

**Scope of Search:  Full**

**Service:**   __X__  Reg.     ____  Expedited

Acceptance and reliance upon this report by the client constitutes an acceptance of its terms, conditions and limitations.  Any liability arising out of the preparation of this report is limited to a refund of the search fee paid.

We have taken all reasonable steps to ensure the completeness and accuracy of this report; however, due to the highly subjective nature of copyright and title searching we cannot otherwise guarantee these results.  This search is valid only for the property or title noted above.  If the property or title which was the subject of this search is changed, even slightly, a new search should be conducted.  Please note that this report in no way constitutes a legal opinion.

**COPYRIGHT RESEARCH GROUP,** 1750 K St., N.W., Suite 200, Washington, DC  20006-2305
Telephone: (202) 835-0240 (800) 356-8630 FAX: (202) 728-0744

Thomson & Thomson

Redacted

04

Thomson & Thomson

February 29, 1996

<u>**VIA TELECOPIER**</u>
<u>**VIA OVERNIGHT DELIVERY**</u>

George Zadorozny, Esq.
Business Center
3780 Tampa Road
Oldsmar, Florida 34677

Copyright Report - SUPERMAN

Dear Mr. Zadorozny:

A search of the records of the Copyright Office and the
records and files of this office reveals that the character
known as **SUPERMAN** created by Jerry Siegel and Joe Shuster,
first appeared in <u>Action Comics</u>, No. 1, issue of June 1938,
with copyright secured on the blanket copyright on this
periodical in the name of Detective Comics, Inc. as of a
publication date of April 18, 1938, under entry No. B: 379787.
The copyright in the story entitled **SUPERMAN** was separately
renewed in the names of Jerome Siegel and Joe Shuster, claiming
as authors, April 19, 1965, under entry No. R: 361642.  It was
also renewed in the name of National Periodical Publications
Inc., claiming as proprietor of copyright in a work made for
hire, June 1, 1965, under entry No. R: 362188.

The story as originally published in <u>Action Comics</u> was
reportedly incomplete, but was later republished in its
entirety in the summer of 1939 as the comic book **SUPERMAN**, Vol.
1, No. 1.  Although we find no record of copyright registration
or subsequent renewal of a work identified as Vol. 1, No. 1 of
this periodical, the records do contain a registration for a
work entitled **SUPERMAN (THE COMPLETE STORY OF THE DARING
EXPLOITS OF THE ONE AND ONLY SUPERMAN)**, by Jerome Siegel and
Joe Shuster, which was **registered for copyright** in the name of
Detective Comics Inc., as of a publication date of May 18,
1939, under entry No. AA: 299871.  This copyright was renewed
in the name of National Periodical Publications, Inc., claiming
as proprietor of copyright in a work made for hire, July 1,
1966, under entry No. R: 388937.

1750 K Street NW, Suite 200   Washington, D.C. 20006-2305   Telephone: 800-356-8630, 202-835-0240   Fax: 800-822-8823, 202-728-0744

Washington, D.C. • Boston • New York • Chicago • Los Angeles • Antwerp • London • Paris • Montreal • Toronto

05

ER 1819

## COPYRIGHT REPORT - SUPERMAN

The character **SUPERMAN** made its debut as a daily comic strip on January 16, 1939, and as a Sunday strip on November 5, 1939. It was distributed by and **registered for copyright** in the name of the McClure Newspaper Syndicate, through September 30, 1949. Beginning in October 1949, the strip was drawn by Wayne Boring, and **registered for copyright** in the name of National Comics Publications, Inc. Beginning in 1958, the strip was drawn by Curt Swann, and **registered for copyright** in the name of Superman, Inc. In 1961, the strip was **registered for copyright** in the name of National Periodical Publications Inc. It was discontinued in 1967. These copyrights were renewed in the names of Jerome Siegel and Joe Shuster, claiming as authors. The copyrights in the comic strips originally published through 1943 were renewed both in the names of Jerome Siegel and Joe Shuster, claiming as authors, and in the name of National Periodical Publications Inc., claiming as proprietors of copyright in a work made for hire. Thereafter, renewals were made in the name of National Periodical Publications Inc., and later, beginning with the 1950 releases, in the name of DC Comics Inc.

The character **SUPERMAN** continued to be presented in Action Comics, issues of which were **registered for copyright** in the name of Detective Comics, Inc., with the story entitled **SUPERMAN** renewed both in the names of Jerome Siegel and Joe Shuster, claiming as authors, and in the name of National Periodical Publications Inc., claiming as proprietor of copyright in a work made for hire, through the 1943 issues.

The comic book **SUPERMAN** was published quarterly and **registered for copyright** in the name of Detective Comics Inc. through the issue of Spring 1940. Beginning in the summer of 1940, the comic book was published bimonthly, and **registered for copyright** in the name of Superman Inc. Beginning in February of 1946, the comic book was **registered for copyright** in the name of National Comics Publications Inc. through 1949, when it was again **registered for copyright** in the name of Superman Inc. Beginning in 1950, registrations began in the name of National Periodical Publications Inc.; beginning in 1976, issues were **registered for copyright** in the name of DC Comics Inc. In 1986, the title of the comic book was changed to **THE ADVENTURES OF SUPERMAN**. The copyrights in the issues published through 1943 were renewed both in the names of Jerome Siegel and Joe Shuster, claiming as authors, and in the name of National Periodical Publications, claiming as proprietor of copyright in a work made for hire. Thereafter, renewals were made only in the name of National Periodical Publications Inc., and, beginning with issues published in 1950, in the name of DC Comics Inc, claiming as proprietor of copyright in a work made for hire. Renewal registrations continue to be made in the name of DC Comics, Inc., through the present.

2

COPYRIGHT REPORT - SUPERMAN

A series of 14 prints by Jerry Siegel and Joe Shuster, with titles such as **SUPERMAN ATTACKING AN AEROPLANE IN MIDAIR, SUPERMAN CARRYING A MAN UNDER EACH ARM**, were registered for copyright in the name of Superman Inc. as of a publication date of July 26, 1940.  We find no record of renewal for these copyright registrations.

A comic book entitled **SUPERMAN-TIM** commenced publication on August 1, 1942, and was **registered for copyright** in the name of Superman Inc.  From 1947 through 1950, this periodical was **registered for copyright** in the name of National Comics Publications Inc.  These copyrights were renewed in the name of National Periodical Publications Inc., claiming as proprietor of copyright in a work made for hire.

In addition to the above-referenced comic books, several other comic books featuring the character have been published, including **SUPERMAN ANNUAL**, later **SUPERMAN - THE MAN OF STEEL ANNUAL** (1964 - present); **SUPERMAN'S GIRLFRIEND, LOIS LANE** (1958-1974); and **SUPERMAN'S PAL, JIMMY OLSEN** (1954 - 1974), retitled **THE SUPERMAN FAMILY** (1974 - until at least 1984), which were originally **registered for copyright** in the name of National Periodical Publications Inc., and later in the name of DC Comics Inc.  Renewals are being made as they come due in the name of DC Comics Inc.  A comic book entitled **SUPERMAN: THE MAN OF STEEL** commenced publication in 1991, with issues **registered for copyright** in the name of DC Comics Inc.

A novel entitled **SUPERMAN**, by George Lowther, based on the cartoon character, and illustrated by Joe Shuster, was **registered for copyright** in the name of Superman, Inc., as of a publication date of November 2, 1942, under entry No. A: 168596.  We find no record of renewal for this copyright registration.

An anthology entitled **SUPERMAN - FROM THE THIRTIES TO THE SEVENTIES**, with an introduction by E. Nelson Bridwell, was published by Crown Publishers and **registered for copyright** in the name of National Periodical Publications Inc., as of a publication date of December 14, 1971, under entry No. A: 303583.  The application authors are E. Nelson Bridwell and Carmine Infantino.  Copyright is claimed on dedication, introduction and compilation.

A book entitled **THE DEATH OF SUPERMAN**, by Dan Jurgens, Jerry Ordway, Louise Simonson, and Roger Sterm, was created in 1992, published December 1, 1992, and **registered for copyright** in the name of DC Comics (employer for hire), February 22, 1993, under entry No. TX: 3-496-004.  Copyright is claimed on selection and compilation.

3

## COPYRIGHT REPORT - SUPERMAN

A novel entitled **THE DEATH AND LIFE OF SUPERMAN**, by Roger Stern, was created in 1992, published by Bantam Books, August 2, 1993, and **registered for copyright** in the name of DC Comics (employer for hire), September 28, 1993, under entry No. TX: 3-640-100.

A work entitled **SUPERMAN** (spine title: **SUPERMAN STYLE GUIDE**) was created in 1991, published November 11, 1991, and **registered for copyright** in the name of DC Comics, Inc., December 18, 1991, under entry No. TX: 3-221-758.  Copyright is claimed on new graphics of old and new characters, new artwork and text.

Another work, entitled **SUPERMAN BETTER THAN EVER** (application title **SUPERMAN, BETTER THAN EVER STYLE GUIDE**), containing text and illustrations, was created in 1993 and **registered for copyright** as an unpublished work in the name of DC Comics, July 16, 1993, under entry No. TXU: 579-563. Copyright is claimed on new graphics of old and new characters, new art and new text.

Numerous other **"Superman"** works, including books, single-issue comic books, coloring books, cut-out books, puzzles, etc., have been published and **registered for copyright** over the years, generally in the name of Superman, Inc., National Comics Publications Inc., National Periodical Publications, Inc., and most recently in the name of DC Comics Inc.

The comic magazine entitled **SUPERMAN** is still being **registered for copyright** in the name of D.C. Comics, Inc.

## Derivative Works

The records disclose a radio program, several motion pictures and several television series featuring the character **SUPERMAN**.

## Recorded Instruments

By instrument dated **September 12, 1946**, recorded February 18, 1948, in Vol. 659, pages 48-77, it is recited that by an agreement dated August 15, 1940, Detective Comics Inc. had granted a license to Fleisher Studios to produce and release one-reel cartoons based on the comic strip **SUPERMAN**, but by a supplemental document, Paramount recites that it failed to exercise the option provided under an agreement dated April 22, 1941, relating to these cartoons and, accordingly, that

4

ER 1822

**COPYRIGHT REPORT - SUPERMAN**

Superman, Inc. had the right to produce and release motion pictures of any kind, based on the **"Superman"** material. Paramount reserved from this declaration such rights as it originally had acquired in the seventeen one-reel cartoons produced under the earlier agreement.  The 1946 instrument thereupon recites the terms of the agreement between Detective Comics Inc. and Columbia Pictures Corporation, whereby Columbia was granted the right to produce a serial photoplay of not more than fifteen episodes based on the **"Superman"** material, both present and future, and the right to produce a feature photoplay therefrom for release in Europe, the United Kingdom and certain other countries abroad with such rights to endure exclusively for a period of two and one-half years after the release of the first episode of the serial and for an additional three years thereafter.

By instrument dated **February 24, 1947**, recorded March 25, 1947, in Vol. 626, pages 5-10, Superman, Inc., Detective Comics Inc. and other publishing companies were merged into National Comics Publications, Inc. and all the copyrights in the cartoon strips published by such earlier companies were assigned to National Comics Publications, Inc.

There is of record a Final Judgment dated **May 21, 1948**, recorded June 1, 1965, in Vol. 1207, pages 1-12, wherein the New York court dismissed the complaint of Jerome Siegel and Joe Shuster, and adjudged that National Comics Publications, Inc. was the sole and exclusive owner of the **SUPERMAN** comic strip material and certain related rights.  (See the "Litigation" section of this report for additional information.)

Redacted

By Assignment and Consolidation dated **January 20, 1966**, recorded February 4, 1966, in Vol. 1222, pages 348-369, National Periodical Publications Inc., successor in interest to Detective Comics Inc. and National Comics Publications, Inc., reciting that by an instrument (attached as "Exhibit A") dated July 3, 1944, McClure Newspaper Syndicate assigned to Detective Comics, Inc. all its right, title and interest in all copyrights in **SUPERMAN**, including the copyrights and all renewals and extensions thereof; that by an instrument (attached as "Exhibit B") dated September 30, 1946, Detective Comics, Inc., was consolidated with other corporations into National Comics Publications, Inc.; that by an instrument (attached as "Exhibit C") dated June 29, 1961, National Comics Publications Inc. was consolidated with another corporation into National Periodical Publications, Inc.; that National Periodical Publications, Inc., thereby became vested with all the properties of Detective Comic, Inc., and National Comics Publications, Inc.; thereby stated that it is the owner of and is vested with title to all of the copyrights (and renewals and extensions thereof) in the artistic and literary works

5

ER 1823

COPYRIGHT REPORT - SUPERMAN

Redacted

consisting of newspaper cartoon strips or continuities entitled SUPERMAN which the McClure Newspaper Syndicate had from the first day of publication to July 3, 1944.

By Mortgage and Assignment of Copyright dated **December 21, 1979** and **May 2, 1980**, recorded May 6, 1980, in Vol. 1786, pages 201-214, Film Export A.G. mortgaged and assigned to N.V. Slavenburg's Bank all its right, title and interest in the copyrights and other property listed on an attached Schedule A, and all renewals and extensions of such copyrights, as security for a loan pursuant to the terms of a Loan agreement and Security Assignment dated December 21, 1979 among Film Export AG, International Film Production, Inc., Dovemead Limited, Mr. Alexander Salkind, and N.V. Slavenburg's Bank, to which this instrument is subject.   The document further states that the assignor's rights derive from the Agreement between National Periodical Publications, Inc., and Film Export AG dated November 6, 1974, and that, pursuant to an agreement made January 15, 1975, Film Export AG granted to Film Trust S.A. the sole and exclusive right and license to exercise such rights of Film Export AG under the License Agreement to produce two films entitled SUPERMAN and SUPERMAN II; by an assignment dated January 31, 1977, Film Trust S.A. assigned to International Film Production Inc. all of its right, title, and interest under the Film Trust Agreement; by agreement dated January 31, 1977, as subsequently modified, International Film Production Inc. granted to Film Export AG the exploitation rights in the two films; pursuant to an Agreement dated May 10, 1978 between International Film Production Inc. and Dovemead Limited, International Film Production Inc. engaged Dovemead Ltd. to make the films, and Dovemead granted to International Film Production Inc. the entire copyright and all rights therein. Schedule A enumerates the collateral, including all right, title and interest of Film Export A.B. in and to a license to produce, exhibit and distribute any number of motion picture based on the name, title, characterizations of SUPERMAN and other characters as part of the "Superman family", on radio, television and other entertainment media.   Attached to the document is a list of Warner distribution agreements relating to SUPERMAN I and SUPERMAN II.

By Mortgage and Assignment of Copyright dated **December 21, 1979** and **May 2, 1980**, recorded May 6, 1980, in Vol. 1786, pages 215-228, International Film Production, Inc., executed a similar document to N.V. Slavenburg's Bank.

By Mortgage and Assignment of Copyright dated **December 21, 1979**, and **May 1, 1980**, recorded May 6, 1980, in Vol. 1786, pages 229-242, Dovemead, Ltd. executed a similar document to N.V. Slavenburg's Bank.

6

## COPYRIGHT REPORT - SUPERMAN

By Short-Form Collateral Assignment of Rights dated
**December 31, 1985**, recorded January 9, 1986, in Vol. 2159,
pages 293-295, Cantharus Productions, N.V. assigned to Tri-Star
Pictures, Inc., (1) all of its rights in and to that certain
Rights Agreement regarding film right to the character **SUPERMAN**
and other characters between Tri-Star's predecessor-in-
interest, Film Export A.G., and D.C. Comics, Inc. (formerly
known as National Periodical Publishing Inc.) dated November 6,
1974, and any motion pictures produced after November 5, 1985
under the authority of and based on the rights granted in that
Rights Agreement, but excluding all rights subject to options
in favor of Warner Bros, Inc. and any agreements between Warner
and Cantharus or its predecessors-in-interest previously
entered into and all rights and options in favor of The Cannon
Group Inc. or Cannon Productions N.V. under that memorandum
agreement dated May 21, 1985 between Alexander Salkind, on
behalf of Cantharus, and Yoram Globus and Menahem Golan, on
behalf of Cannon, and (2) all of its right, title and interest
in or to the Cannon Agreement and all benefits accruing
thereunder, all sums or other distributions paid or payable to
and rights and options reverting to or held by Cantharus
pursuant to the Cannon Agreement, and all motion pictures
produced pursuant to the Cannon Agreement to the extent that
Cantharus has any interests therein, all as more fully
described in that certain Indemnity Agreement dated as of July
1, 1985.

Redacted

There is recorded an undated statement recorded September
20, 1994 in Vol. 3029, page 75, from Warner Brothers, a
division of Time Warner Entertainment Company, L.P. (by Nils
Victor Montan, assistant secretary) declaring that it is the
sole and exclusive owner of all rights in and to the **SUPERMAN**
motion pictures, television programs, etc. and owns sole and
exclusive rights to any and all future **SUPERMAN** motion
pictures, television programs, animated cartoons, etc. whether
or not they are deemed sequels to the currently titled
**SUPERMAN** V motion picture.

No further document affecting any right, title or interest
in the comic magazine or the character entitled **SUPERMAN** is
found of record in the Copyright Office. However, the records
disclose numerous documents recorded in connection with the
various adaptations of the comic magazine.

## Biographical Information

Joseph Schuster died in August 1992 at the age of 78. We
have no information with regard to his heirs and the records of
the Copyright Office do not disclose an address for them.

7

## COPYRIGHT REPORT - SUPERMAN

Jerome Siegel was born in Cleveland, Ohio on October 17, 1914 and died in Los Angeles, California on January 30, 1996. According to his obituary, he was married and had one son and one daughter. The records of the Copyright Office do not disclose an address for his heirs. In 1986 he was living at 11928 Darlington Avenue, Apartment 102, Los Angeles, CA 90049.

## Notes

If we may be of any further assistance to you, or if you have any questions regarding this report, please do not hesitate to contact me at 1-800-356-8630 (ext. 3312).

Sincerely yours,

Jerry L. Robb

JLR/kah/dms

8

# EXHIBIT B

ER 1827

1   WEISSMANN WOLFF BERGMAN
      COLEMAN GRODIN & EVALL LLP
2   Michael Bergman (SBN 37797)
  Anjani Mandavia (SBN 94092)
3   Adam Hagen (SBN 218021)
  9665 Wilshire Boulevard, Ninth Floor
4   Beverly Hills, California 90212
  Telephone: (310) 858-7888
5   Fax: (310) 550-7191
  mbergman@wwllp.com
6
  FROSS ZELNICK LEHRMAN & ZISSU, P.C.
7   Roger L. Zissu (Admitted *pro hac vice*)
  James D. Weinberger (Admitted *pro hac vice*)
8   866 United Nations Plaza
  New York, New York 10017
9   Telephone: (212) 813-5900
  Fax: (212) 813-5901
10
  PERKINS LAW OFFICE, P.C.
11   Patrick T. Perkins (Admitted *pro hac vice*)
  1711 Route 9D
12   Cold Spring, New York 10516
  Telephone: (845) 265-2820
13   Fax: (845) 265-2819
  Attorneys for Defendants and Counterclaimant
14

15         **UNITED STATES DISTRICT COURT**
    **CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION**
16

| | |
|---|---|
| 17   JOANNE SIEGEL and LAURA SIEGEL LARSON, | Case No.: CV 04-8400 SGL (RZx) |
| 18           Plaintiffs, | Hon. Stephen G. Larson, U.S.D.J. Hon. Ralph Zarefsky, U.S.M.J. |
| 19       vs. | |
| 20   TIME WARNER INC.; WARNER COMMUNICATIONS INC.; | **DECLARATION OF MICHAEL BERGMAN IN SUPPORT OF DEFENDANTS' OBJECTION AND** |
| 21   WARNER BROS. ENTERTAINMENT INC.; WARNER BROS. TELEVISION PRODUCTION INC.; DC COMICS; | **RESPONSE TO NEW ARGUMENTS MADE AT HEARING** |
| 22   and DOES 1-10, | |
| 23          Defendants. | |
| 24 | |
| 25 | |
| 26   AND RELATED COUNTERCLAIMS | |
| 27 | |

28

                                         **ER 1828**

I, Michael Bergman, declare and state as follows:

1.     I am a member of Weissmann Wolff Bergman Coleman Grodin & Evall LLP, counsel for Defendants. This declaration, based upon my own personal knowledge and on our office's records, is submitted in support of Defendants' Objection and Response to New Arguments Made at Hearing.

2.     Attached hereto as Exhibit <u>A</u> is a true and correct copy of the Complaint filed in the Southern District of New York in *Siegel v. National Periodical Publications, Inc.*, case No. 69 Civ. 1429.

3.     Attached hereto as Exhibit <u>B</u> is a true and correct copy of Plaintiffs Joanne Siegel and Laura Siegel Larson's Response to Defendant DC Comics First Set of Requests for Admission.

4.     Attached hereto as Exhibit <u>C</u> is a true and correct copy of copyright registrations for the first two weeks of McClure newspaper daily strips published beginning January 16, 1939.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated this 18th day of September, 2008 at Beverly Hills, California.

Michael Bergman

**DECLARATION OF MICHAEL BERGMAN**

**EXHIBIT C**

CLASS K5 No. 55490

# Copyright Office
## Of the United States of America

## THE LIBRARY OF CONGRESS
★ ★ ★ WASHINGTON ★ ★ ★

### Certificate of Copyright Registration

**This is to certify,** in conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright, approved March 4, 1909, as amended by the Act approved March 2, 1913, that ONE copy of the issue of the newspaper or periodical containing the PERIODICAL CONTRIBUTION named herein has been deposited in this Office under the provisions of the Act of 1909, and that registration of a claim to copyright for the first term of twenty-eight years has been duly made in the name of ................................................................

McClure Newspaper Syndicate, ..................................................................

75 West St., ......................................................................................

New York, 6, N. Y. ..............................................................................

Title of contribution: Superman. ...............................................................

..........................................................................................................

..........................................................................................................

..........................................................................................................

Author: ....Jerry Siegel and Joe Shuster, of United States. .......

.........................................................................................................

Published on ...Jan. 16, 1939 ................................................................

in ...The Milwaukee Journal, Milwaukee, Wis., .......................................

............Jan. 16, 1939, Page 4, C. S. ...............................................

Copy received ...Apr. 13, 1944 .............................................................

**Entry: Class** K5 No. 55490

*Richard C. DeWolf*
Acting Register of Copyrights

[SEAL]

ER 1031

Page 3

# Certificate of Registration of a Claim to Renewal Copyright

**FORM R**

REGISTRATION NO.

R 381954

DO NOT WRITE HERE

This Is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Abraham L. Kaminstein*

Register of Copyrights
United States of America



**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

(a) Name ..... NATIONAL PERIODICAL PUBLICATIONS, INC.

Address ..... 575 Lexington Avenue, New York, New York 10022

Claiming as Proprietor of copyright in a work made for hire

(b) Name ...........................................................................................

Address .........................................................................................

Claiming as .....................................................................................

(c) Name ...........................................................................................

Address .........................................................................................

Claiming as .....................................................................................

**2. (a) Title:**

SUPERMAN

**(b) Renewable Matter:**

**(c) Contribution to Periodical or Other Composite Work:**

THE MILWAUKEE JOURNAL; Milwaukee, Wisconsin
(Title of periodical or composite work)

If a periodical, give Vol. ..............; No. ...............; Issue ..............; Date ... January 16, 1939

**3. Authors of Renewable Matter:**

Jerry Siegel and Joe Shuster, as employees of a work made for hire

**4. Facts of Original Registration:**

Original registration number: Class ..... K5 ...........; No. 55490

If registered as published, give date of publication ..................... January 16, 1939

If registered as unpublished, give date of registration .....................................

Original copyright claimant McCLURE NEWSPAPER SYNDICATE

**EXAMINER**

*Complete all applicable spaces on next page*

ER 1832

5. Deposit account:

6. Send correspondence to:

Name    WILLIAM K. FRIEDMAN    Address 11 E. 44th St., New York, N.Y. 10017

7. Send certificate to:

(Type or print name and address)

Name  WILLIAM K. FRIEDMAN

Address  11 East 44th Street
               (Number and street)

New York          New York          10017
(City)                (State)                (ZIP code)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

NATIONAL MEDICAL PUBLICATIONS, INC.

*When to renew.* The original term of copyright in a published, 1940, would be eligible for renewal between June 15, 1967, work lasts for 28 years from the date of publication; in the case and June 15, 1968. of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

*Caution:* Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

## How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

## Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only* in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* ............ *and/or the child (children) of the deceased author* ............
(Name of author)

3. The author's executor(s), if the author left a will and

if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author* ............
(Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author* ............ *there being no will.*
(Name of author)

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the individual author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

*a corporate body otherwise than as assignee or licensee of the individual author.* (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

| Application received | FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|---|
| FEB 21 1966 | | |
| MAR 22 1966 | | |
| Fee received | | |
| $4.00 | | |
| 69690 FEB 21 '66 | | |

CLASS K5 No. 55491

# Copyright Office
## Of the United States of America
## THE LIBRARY OF CONGRESS
### ★ ★ ★ WASHINGTON ★ ★ ★

## Certificate of Copyright Registration

**This is to certify,** in conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright, approved March 4, 1909, as amended by the Act approved March 2, 1913, that ONE copy of the issue of the newspaper or periodical containing the PERIODICAL CONTRIBUTION named herein has been deposited in this Office under the provisions of the Act of 1909, and that registration of a claim to copyright for the first term of twenty-eight years has been duly made in the name of ..................................................................

McClure Newspaper Syndicate, ......................................................

75 West St., ....................................................................................

New York, 6, N. Y. ........................................................................

Title of contribution: Superman. ..................................................

....................................................................................................

....................................................................................................

....................................................................................................

Author: Jerry Siegel and Joe Shuster, of United States. ..........

....................................................................................................

Published on Jan. 17, 1939 ............................................................

in The Milwaukee Journal, Milwaukee, Wis., ............................

Jan. 17, 1939, Page 4, G. S. ............................................

Copy received Apr. 13, 1944 ........................................................

Entry: Class K5 No. 55491

Richard W. DeWolf

Acting Register of Copyrights

[SEAL]

Page 3

# Certificate of Registration of a Claim to Renewal Copyright

**FORM R**

REGISTRATION NO.

R⁷ - 385829

DO NOT WRITE HERE

This Is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Abraham L. Kaminstein*

Register of Copyrights
United States of America

**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

(a) Name NATIONAL PERIODICAL PUBLICATIONS, ICN.

Address 575 Lexington Avenue, New York, New York 10022

Claiming as Proprietor of copyright in a work made for hire

(b) Name

Address

Claiming as

(c) Name

Address

Claiming as

**2. (a). Title:**

SUPERMAN

**(b) Renewable Matter:**

**(c) Contribution to Periodical or Other Composite Work:**

THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin, page 4
(Title of periodical or composite work) U.S.

If a periodical, give: Vol. ; No. ; Issue ; Date January 17, 1939

**3. Authors of Renewable Matter:**

Jerry Siegel and Joe Shuster, as employees of a work
made for hire

**4. Facts of Original Registration:**

Original registration number: Class K5 ; No. 55491

If registered as published, give date of publication January 17, 1939

If registered as unpublished, give date of registration

Original copyright claimant McCLURE NEWSPAPER SYNDICATE

EXAMINER

*Complete all applicable spaces on next page*

3. **Deposit account:**

4. **Send correspondence to:**

Name **WILLIAM F. FRIEDMAN** Addr **11 E. 44th St., New York, N.Y. 10017**

7. **Send certificate to:**

(Type or print name and address)

Name **WILLIAM F. FRIEDMAN**

Address **11 East 44th Street**
(Number and street)

**New York** **New York** **10017**
(City) (State) (ZIP code)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### Time limits

*When to renew.* The original term of copyright . . . . . . . . . . . . . . . . June 15, 1967, work lasts for 28 years from the date of publication . . . . . . . . . . and June 15, 1968. of a work originally registered in unpublished form the copy-right term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

*Caution:* Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only* in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* ........................... *and/or the child (children) of the deceased author* ...........................
(Name of author)

3. The author's executor(s), if the author left a will and

if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author* ...........................
(Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author* ...........................
........................... *there being no will.*
(Name of author)

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

a corporate body otherwise than as assignee or licensee of the individual author." (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of a print or label.*

| Application received | FOR COPYRIGHT OFFICE USE ONLY |
|---|---|
| MAY 10 1966 | |
| Fee received | |
| $4.00   Dep. Acct. • Sundry O'pd. | |

U.S. GOVERNMENT PRINTING OFFICE: 1965—O-781-832. (Dec. 1965—50,000)

Page 4

ER 1836

**CLASS** K5 No. 55492

# Copyright Office
## Of the United States of America
## THE LIBRARY OF CONGRESS
### ★ ★ ★ WASHINGTON ★ ★ ★

## *Certificate of Copyright Registration*

**This is to certify,** in conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright, approved March 4, 1909, as amended by the Act approved March 2, 1913, that ONE copy of the issue of the newspaper or periodical containing the PERIODICAL CONTRIBUTION named herein has been deposited in this Office under the provisions of the Act of 1909, and that registration of a claim to copyright for the first term of twenty-eight years has been duly made in the name of ..............................................................

McClure Newspaper Syndicate,

75 West St.,

New York, 6, N. Y.

Title of contribution: Superman.

Author: Jerry Siegel and Joe Shuster, of United States.

Published on Jan. 18, 1939

in The Milwaukee Journal, Milwaukee, Wis.,

Jan. 18, 1939, Page 4, G. S.

Copy received Apr. 13, 1944

Entry; Class K5 No. 55492

Richard W. DeWolf
Acting Register of Copyrights

[SEAL]

Page 3

# Certificate of Registration of a Claim to Renewal Copyright

**FORM R**

REGISTRATION NO.

R 385828

DO NOT WRITE HERE

This is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office.   In witness whereof the seal of the Copyright Office is hereto affixed.

*Abraham L. Kaminstein*

Register of Copyrights
United States of America

**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

(a) Name ........... NATIONAL PERIODICAL PUBLICATIONS, INC. ......

Address ........ 575 Lexington Avenue, New York, N. Y. 10022 ....

Claiming as Proprietor of copyright in a work made for hire .....

(b) Name .....................................................

Address ...................................................

Claiming as ...............................................

(c) Name ....................................................

Address ...................................................

Claiming as ...............................................

**2. (a) Title:**

.............. SUPERMAN ....................................

**(b) Renewable Matter:**

**(c) Contribution to Periodical or Other Composite Work:**

.............. THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin, pg.4,
(Title of periodical or composite work)                G.S.

If a periodical, give: Vol. ........; No. ...........; Issue .........; Date January 18, 1939 ......

**3. Authors of Renewable Matter:**

.............. Jerry Siegel and Joe Shuster, as employees of a work

.............. made for hire ...............................

**4. Facts of Original Registration:**

Original registration number: Class ..... B5 ...........; No. 55422 ...........

If registered as published, give date of publication ................ January 18, 1939 ................

If registered as unpublished, give date of registration ...............................................

Original copyright claimant .. MCCLURE NEWSPAPER SYNDICATE ................

EXAMINER

*Complete all applicable spaces on next page*

**5. Deposit account:**

**6. Send correspondence to:**

Name ......WILLIAM K. FRIEDMAN........ Add.11. E. 44th St., New York, N.Y. 10017

**7. Send certificate to:**

(Type or print name and address)

> Name ....WILLIAM K. FRIEDMAN....
>
> Address ....11 East 44th Street....
> (Number and street)
>
> New York ........ New York ........ 10017
> (City) ............ (State) ............ (ZIP code)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### Time limits

*When to renew.* The original term of copyright is limited. A work would be eligible for renewal between June 15, 1967, work lasts for 28 years from the date of publication, in the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

*Caution:* Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C. 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal only in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* ........ *and/or the child* ........ *(children) of the deceased author.* ........

3. The author's executor(s), if the author left a will and

if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author* ........ (Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author* ........ (Name of author) *there being no will.*

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

a corporate body otherwise than as assignee or licensee of the individual author. (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| Application received MAY 10 1966 | |
| Fee received $4.00 Dep. Acct. - Sundry O'pd. | |

U.S. GOVERNMENT PRINTING OFFICE: 1965—O-781-332 (Dec. 1965—40,000)

*Page 4*

ER 1839

CLASS K5 No. 55493

# Copyright Office
## Of the United States of America
## THE LIBRARY OF CONGRESS
### ★ ★ ★ WASHINGTON ★ ★ ★

## Certificate of Copyright Registration

**This is to certify,** in conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright, approved March 4, 1909, as amended by the Act approved March 2, 1913, that ONE copy of the issue of the newspaper or periodical containing the PERIODICAL CONTRIBUTION named herein has been deposited in this Office under the provisions of the Act of 1909, and that registration of a claim to copyright for the first term of twenty-eight years has been duly made in the name of .................................................

McClure Newspaper Syndicate,

75 West St.,

New York, 6, N. Y.

Title of contribution: Superman.

Author: Jerry Siegel and Joe Shuster, of United States.

Published on Jan. 19, 1939

in The Milwaukee Journal, Milwaukee, Wis.,

Jan. 19, 1939, Page 4 G. S.

Copy received Apr. 13, 1944

Entry: Class K5 No. 55493

Richard W. DeWolf

Acting Register of Copyrights

[SEAL]

Page 3

# Certificate of Registration of a Claim to Renewal Copyright

**FORM R**

REGISTRATION NO.

R 385827

DO NOT WRITE HERE

This Is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*[signature]*

Register of Copyrights
United States of America



**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

(a) Name .......... NATIONAL PERIODICAL PUBLICATIONS, INC. ..........

Address .......... 575 Lexington Avenue, New York, N. Y. 10022 ..........

Claiming as .......... Proprietor of copyright in a work made for hire ..........

(b) Name ..........

Address ..........

Claiming as ..........

(c) Name ..........

Address ..........

Claiming as ..........

**2. (a) Title:**

.......... SUPERMAN ..........

**(b) Renewable Matter:**

**(c) Contribution to Periodical or Other Composite Work:**

.......... THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin, pg. 4 ..........
(Title of periodical or composite work)

G.S.

If a periodical, give: Vol. .......... No. .......... Issue .......... Date January 19, 1939 ..........

**3. Authors of Renewable Matter:**

.......... Jerry Siegel and Joe Shuster, as employees of a work made for hire ..........

**4. Facts of Original Registration:**

Original registration number: Class .... K5 ....; No. .... 55493 ....

If registered as published, give date of publication .......... January 19, 1939 ..........

If registered as unpublished, give date of registration ..........

Original copyright claimant .......... McCLURE NEWSPAPER SYNDICATE ..........

EXAMINER

*Complete all applicable spaces on next page*

**5. Deposit account:**

**6. Send correspondence to:**

Name ....WILLIAM K. FRIEDMAN....... Addr..11 E. 44th St., New York, N.Y. 10017

**7. Send certificate to:**

(Type or print, name and address)

Name **WILLIAM K. FRIEDMAN**

Address **11 East 44th Street**
(Number and street)

**New York**      **New York**      **10017**
(City)      (State)      (ZIP code)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

*When to renew.* The original term of copyright in a published work lasts for 28 years from the date of publication; in the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

**NATIONAL PERIODICAL PUBLICATIONS, INC.** is the valid period for renewal between June 15, 1967, and June 15, 1968.

*Caution:* Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

## How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

## Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only* in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* .................... and/or *the child*
(Name of author)

(children) of the deceased author ....................
(Name of author)

3. The author's executor(s), if the author left a will and

if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author* ....................
(Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author* ....................

.................... *there being no will.*
(Name of author)

B. In the case of any of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

*a corporate body otherwise than as assignee or licensee of the individual author.* (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

FOR COPYRIGHT OFFICE USE ONLY

Application received

MAY 10 1966

Fee received

$4.00   Dep. Acct. - Sundry O'pd.

ER 1842

CLASS K5 No. 55494

# Copyright Office
## Of the United States of America
### THE LIBRARY OF CONGRESS
★ ★ ★ WASHINGTON ★ ★ ★

## *Certificate of Copyright Registration*

**This is to certify,** in conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright, approved March 4, 1909, as amended by the Act approved March 2, 1913, that ONE copy of the issue of the newspaper or periodical containing the PERIODICAL CONTRIBUTION named herein has been deposited in this Office under the provisions of the Act of 1909, and that registration of a claim to copyright for the first term of twenty-eight years has been duly made in the name of ................................................................

McClure Newspaper Syndicate,

75 West St.,

New York, 6, N. Y.

Title of contribution: Superman.

Author: Jerry Siegel and Joe Shuster, of United States.

Published on Jan. 20, 1939

in The Milwaukee Journal, Milwaukee, Wis.,

Jan. 20, 1939, Page 4 G. S.

Copy received Apr. 13, 1944

Entry: Class K5 No. 55494

Richard W. DeWolf

Acting Register of Copyrights

[SEAL]

ER 1843

Page 3

# Certificate of Registration of a Claim to Renewal Copyright



**FORM R**

REGISTRATION NO.

R **385826**

DO NOT WRITE HERE

**This Is To Certify** that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.



Register of Copyrights
United States of America

**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

(a) Name ...... NATIONAL PERIODICAL PUBLICATIONS, INC. ......

Address ...... 575 Lexington Avenue, New York, N. Y. 10022 ......

Claiming as Proprietor of copyright in a work made for hire ......

(b) Name ......

Address ......

Claiming as ......

(c) Name ......

Address ......

Claiming as ......

**2. (a) Title:**

...... SUPERMAN ......

(b) Renewable Matter:

......

(c) Contribution to Periodical or Other Composite Work:

...... THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin, pg. 4, 6, S.
(Title of periodical or composite work)

If a periodical, give Vol. ......; No. ......; Issue ......; Date January 20, 1939 ......

**3. Authors of Renewable Matter:**

...... Jerry Siegel and Joe Shuster, as employees of a work made for hire ......

**4. Facts of Original Registration:**

Original registration number: Class ...... XB ......; No. ...... 55494 ......

If registered as published, give date of publication ...... January 20, 1939 ......

If registered as unpublished, give date of registration ......

Original copyright claimant ...... McCLURE NEWSPAPER SYNDICATE ......

EXAMINER

*Complete all applicable spaces on next page*

**5. Deposit account:**

**6. Send correspondence to:**

Name ..WILLIAM..F...FRIEDMAN.......... Addr..ll E..44th St.,New York,N.Y.10017

**7. Send certificate to:**

(Type or
print
name and
address)

| | |
|---|---|
| Name | WILLIAM F. FRIEDMAN |
| Address | 11 East 44th Street |
| | (Number and street) |
| | New York        New York        10017 |
| | (City)              (State)              (ZIP code) |

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### Time limits

*When to renew.* The original term of copyright lasts for 28 years from the date of publication, or, in the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

[a work registered for renewal between June 15, 1967, and June 15, 1968]

*Caution:* Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only* in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works *except* those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* .................. and/or *the child*

..........................
(Name of author)

*(children) of the deceased author* ..............
(Name of author)

3. The author's executor(s), if the author left a will and

if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author*

..........................
(Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author*

.................. *there being no will.*
(Name of author)

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

a corporate body otherwise than as assignee or licensee of the individual author. (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

| Application received | FOR COPYRIGHT OFFICE USE ONLY |
|---|---|
| MAY 10 1966 | |
| Fee received | |
| $4.00    Fee. Acct - Sundry O'pd. | |

Page 4

ER 1845

CLASS K5 No. 55495

# Copyright Office
## Of the United States of America
## THE LIBRARY OF CONGRESS
★ ★ ★ WASHINGTON ★ ★ ★

## Certificate of Copyright Registration

**This is to certify,** in conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright, approved March 4, 1909, as amended by the Act approved March 2, 1913, that ONE copy of the issue of the newspaper or periodical containing the PERIODICAL CONTRIBUTION named herein has been deposited in this Office under the provisions of the Act of 1909, and that registration of a claim to copyright for the first term of twenty-eight years has been duly made in the name of ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

McClure Newspaper Syndicate,

75 West St.,

New York, 6, N. Y.

Title of contribution: Superman.

Author: Jerry Siegel and Joe Shuster, of United States.

Published on ⎯⎯ Jan. 21, 1939

in ⎯ The Milwaukee Journal, Milwaukee, Wis.

⎯ Jan. 21, 1939, Page 4, G. S.

Copy received Apr. 13, 1944

Entry: Class K5 No. 55495

Richard M. DeWolf
Acting Register of Copyrights

[SEAL]

ER 1846

**Page 3**

# Certificate of Registration of a Claim to Renewal Copyright

**FORM R**

REGISTRATION NO.

R 385825

DO NOT WRITE HERE

**This Is To Certify** that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*[signature]*

Register of Copyrights
United States of America



**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

(a) Name ...... NATIONAL PERIODICAL PUBLICATIONS, INC.

Address .... 575 Lexington Avenue, New York, N. Y. 10022

Claiming as .. Proprietor of copyright in a work made for hire

(b) Name ......................................................................................

Address ......................................................................................

Claiming as ................................................................................

(c) Name ......................................................................................

Address ......................................................................................

Claiming as ................................................................................

**2. (a) Title:**

.......... SUPERMAN ..........

**(b) Renewable Matter:**

..........................................................................................................

**(c) Contribution to Periodical or Other Composite Work:**

.................. THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin, pg. 4, C. S.
(Title of periodical or composite work)

If a periodical, give: Vol. ................; No. ................; Issue ................; Date .. January 21, 1939

**3. Authors of Renewable Matter:**

.................. Jerry Siegel and Joe Shuster, as employees of a work

.......... made for hire

**4. Facts of Original Registration:**

Original registration number: Class ...... KK ................; No. ... 55495

If registered as published, give date of publication .... January 21, 1939

If registered as unpublished, give date of registration ......................................

Original copyright claimant ... McCLURE NEWSPAPER SYNDICATE

*Complete all applicable spaces on next page*

EXAMINER

**5. Deposit account:**

**6. Send correspondence to:**

Name ........ WILLIAM X. FRIEDMAN ................ Address E.44th St., New York, N.Y. 10017

**7. Send certificate to:**

(Type or print name and address)

Name    WILLIAM X. FRIEDMAN

Address    11 East 44th Street
(Number and street)

New York          New York          10017
(City)              (State)            (ZIP code)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### Time Limits

*When to renew.* The original term of copyright lasts for 28 years from the date of publication; in the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

[NATIONAL PUBLISHERS ... work ... eligible for renewal between June 15, 1967, and June 15, 1968 ...]

*Caution:* Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only* in the five cases listed in Paragraph B, below.

**A.** The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* .......................... and/or *the child*
(Name of author)

*(children) of the deceased author* ..........................
(Name of author)

3. The author's executor(s), if the author left a will and

if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author*

.......................... (Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author*

.......................... *there being no will.*
(Name of author)

**B.** In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

a corporate body otherwise than as assignee or licensee of the individual author. (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

| FOR COPYRIGHT OFFICE USE ONLY |
|---|
| Application received |
| MAY 10 1968 |
| Fee received |
| $4.00    Exp. Acct. - Sundry O'pd |

ER 1848

CLASS K5 No. 55496

# Copyright Office
## Of the United States of America
### THE LIBRARY OF CONGRESS
★ ★ ★ WASHINGTON ★ ★ ★

## Certificate of Copyright Registration

**This is to certify,** in conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright, approved March 4, 1909, as amended by the Act approved March 2, 1913, that ONE copy of the issue of the newspaper or periodical containing the PERIODICAL CONTRIBUTION named herein has been deposited in this Office under the provisions of the Act of 1909, and that registration of a claim to copyright for the first term of twenty-eight years has been duly made in the name of ............................................................

McClure Newspaper Syndicate,

75 West St.,

New York, 6, N. Y.

Title of contribution: Superman.

Author: Jerry Siegel and Joe Shuster, of United States.

Published on Jan. 23, 1939

in The Milwaukee Journal, Milwaukee, Wis.

Jan. 23, 1939, Page 4 G. S.

Copy received Apr. 13, 1944

Entry: Class K5 No. 55496

Richard W. DeWolf
Acting Register of Copyrights

[SEAL]

Page 3

# Certificate of Registration of a Claim to Renewal Copyright

**FORM R**

REGISTRATION NO.

R 385824

DO NOT WRITE HERE

**This Is To Certify** that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Abraham L. Kaminstein*

Register of Copyrights
United States of America



1. **Renewal Claimant(s), Address(es), and Statement of Claim:**

   (a) Name ...... NATIONAL PERIODICAL PUBLICATIONS, INC.

   Address ...... 575 Lexington Avenue, New York, N. Y. 10022

   Claiming as: Proprietor of copyright in a work made for hire

   (b) Name ......................................................

   Address ......................................................

   Claiming as ...................................................

   (c) Name ......................................................

   Address ......................................................

   Claiming as ...................................................

2. (a) **Title:**

   SUPERMAN

   (b) **Renewable Matter:**

   (c) **Contribution to Periodical or Other Composite Work:**

   THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin, pg. 4 G.S.
   (Title of periodical or composite work)

   If a periodical, give: Vol. ............; No. ............; Issue ............; Date ...... January 23, 1939

3. **Authors of Renewable Matter:**

   Jerry Siegel and Joe Shuster, as employees of a work made for hire

4. **Facts of Original Registration:**

   Original registration number: Class ...... XX ......; No. 55496

   If registered as published, give date of publication ...... January 23, 1939

   If registered as unpublished, give date of registration ......................................................

   Original copyright claimant ...... McCLURE NEWSPAPER SYNDICATE

   *Complete all applicable spaces on next page*

   EXAMINER

5. Deposit account:

6. Send correspondence to:

Name .... WILLIAM K. FRIEDMAN ..................... Add 11 E. 44th St., New York, N.Y. 10017

7. Send certificate to:

(Type or print Name)
name and address Address

WILLIAM K. FRIEDMAN

11 East 44th Street
(Number and street)

New York          New York          10017
(City)            (State)           (ZIP code)

### Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

*When to renew.* The original term of copyright... *Time limits*... would be eligible for renewal between June 15, 1967, work lasts for 28 years from the date of publication, or ... and June 15, 1968. of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

*Caution:* Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal only in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* ........................ and/or *the child* ........................
   (Name of author)

   *(children) of the deceased author* ........................
   (Name of author)

3. The author's executor(s), if the author left a will and

if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author*
........................
(Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author*

........................ *there being no will.*
(Name of author)

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

*a corporate body otherwise than as assignee or licensee of the individual author.* (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| Application received | |
| MAY 10 1966 | |
| Fee received | |
| $4.00 Dep. Acct - Sundry Clk | |

ER 1851

CLASS K5 No. 55497

# Copyright Office
## Of the United States of America
### THE LIBRARY OF CONGRESS
★  ★  ★  W A S H I N G T O N  ★  ★  ★

## *Certificate of Copyright Registration*

**This is to certify,** in conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright, approved March 4, 1909, as amended by the Act approved March 2, 1913, that ONE copy of the issue of the newspaper or periodical containing the PERIODICAL CONTRIBUTION named herein has been deposited in this Office under the provisions of the Act of 1909, and that registration of a claim to copyright for the first term of twenty-eight years has been duly made in the name of ..................................................................

McClure Newspaper Syndicate,

75 West St.,

New York, 6, N. Y.

Title of contribution: Superman.

Author: Jerry Siegel and Joe Shuster, of United States.

Published on Jan. 24, 1939

in The Milwaukee Journal, Milwaukee, Wis.,

Jan. 24, 1939, Page 4 G. S.

Copy received Apr. 13, 1944

Entry: Class   K5-No. 55497

*Richard W. DeWolf*
Acting Register of Copyrights

[SEAL]

Page 3

# Certificate of Registration of a Claim to Renewal Copyright



FORM R

REGISTRATION NO.

R 387104

DO NOT WRITE HERE

**This Is To Certify** that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Register of Copyrights*
*United States of America*

1. **Renewal Claimant(s), Address(es), and Statement of Claim:**

    (a) Name ___NATIONAL PERIODICAL PUBLICATIONS, INC.___

    Address ___575 Lexington Avenue, New York, New York 10022___

    Claiming as ___Proprietor of copyright in a work made for hire___

    (b) Name _____

    Address _____

    Claiming as _____

    (c) Name _____

    Address _____

    Claiming as _____

2. (a) Title: _____

    ___SUPERMAN___

    (b) Renewable Matter: _____

    (c) Contribution to Periodical or Other Composite Work:

    ___THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin, page G.S.___
    (Title of periodical or composite work)

    If a periodical, give Vol. _____; No. _____; Issue _____, Date ___January 24, 1939___

3. **Authors of Renewable Matter:**

    ___Jerry Siegel and Joe Shuster, as employees of a work___

    ___made for hire___

4. **Facts of Original Registration:**

    Original registration number: Class ___K5___; No. ___55497___

    If registered as published, give date of publication ___January 24, 1939___

    If registered as unpublished, give date of registration _____

    Original copyright claimant ___MCCLURE NEWSPAPER SYNDICATE___

    EXAMINER

    *Complete all applicable spaces on next page*

**5. Deposit account:**

--------------------------------------------------------------------------------

**6. Send correspondence to:**

Name .. WILLIAM. K.. FRIEDMAN.................... Add.11. E.44th St.,New. York,N.Y.. 10017

**7. Send certificate to:**

| (Type or print name and address) | | | |
|---|---|---|---|
| Name | WILLIAM K. FRIEDMAN | | |
| Address | 11 East 44th Street | | |
| | | (Number and street) | |
| | New York | New York | 10017 |
| | (City) | (State) | (ZIP code) |

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### Time limits

*When to renew.* The original term of copyright in a published work lasts for 28 years from the date of publication; in the case of a work originally registered in unpublished form the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

NATIONAL... ...ICAL PUBLICATIONS, INC 1940 would be eligible for renewal between June 15, 1967, and June 15, 1968.

*Caution:* Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C. 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained in Paragraph B, below. The present owner (proprietor) of a copyright is entitled to claim renewal *only* in the five cases listed in Paragraph B, below:

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* .................... and/or *the child*
(Name of author)

*(children) of the deceased author* ....................
(Name of author)

3. The author's executor(s), if the author left a will and

if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author*

....................
(Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author*

.................... *there being no will:*
(Name of author)

B. In the case of the following five types of works, the law gives the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

a corporate body otherwise than as *assignee or licensee of the individual author.* (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| Application received | |
| JUN --1 .:56 | |
| Fee received | |
| $4.00  1 6 2 7 6 2 JUN-1 '86 | |

U.S. GOVERNMENT PRINTING OFFICE: 1965:—O-781-332     (Dec. 1965—50,000)     Page 4

ER 1854

CLASS K5 No. 55498

# Copyright Office
## Of the United States of America
### THE LIBRARY OF CONGRESS
★ ★ ★ WASHINGTON ★ ★ ★

## Certificate of Copyright Registration

**This is to certify**, in conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright, approved March 4, 1909, as amended by the Act approved March 2, 1913, that ONE copy of the issue of the newspaper or periodical containing the PERIODICAL CONTRIBUTION named herein has been deposited in this Office under the provisions of the Act of 1909, and that registration of a claim to copyright for the first term of twenty-eight years has been duly made in the name of ..........................................................

McClure Newspaper Syndicate,

75 West St.,

New York, 6, N. Y.

Title of contribution: Superman.

Author: Jerry Siegel and Joe Shuster, of United States.

Published on ____ Jan. 25, 1939

in _The Milwaukee Journal, Milwaukee, Wis.,

_____ Jan. 25, 1939, Page 4 G. S.

Copy received ____ Apr. 13, 1944

Entry: Class     K5 No. 55498

*Richard W. DeWolf*
Acting Register of Copyrights

[SEAL]

ER 1855

Page 3

# Certificate of Registration of a Claim to Renewal Copyright

**FORM R**

REGISTRATION NO.

R 387105

DO NOT WRITE HERE

**This Is To Certify** that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Register of Copyrights*
*United States of America*



**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

(a) Name ............ NATIONAL PERIODICAL PUBLICATIONS, INC.

Address ........ 575 Lexington Avenue, New York, New York 10022

Claiming as .... Proprietor of copyright in a work made for hire

(b) Name ..............................................................................................

Address ..............................................................................................

Claiming as ..........................................................................................

(c) Name ..............................................................................................

Address ..............................................................................................

Claiming as ..........................................................................................

**2. (a) Title:**

.................... SUPERMAN ....................

**(b) Renewable Matter:**

..............................................................................................

**(c) Contribution to Periodical or Other Composite Work:**

........................., THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin, pg. 4, G. 3.
(Title of periodical or composite work)

If a periodical, give: Vol. ................; No. ................; Issue ................: Date January 25, 1939

**3. Authors of Renewable Matter:**

.................... Jerry Siegel and Joe Shuster, as employees of work

.................... made for hire

**4. Facts of Original Registration:**

Original registration number: Class ...... K5 ........; No. 55498 ........

If registered as published, give date of publication ............ January 25, 1939

If registered as unpublished, give date of registration ..............................................

Original copyright claimant .... McCLURE NEWSPAPER SYNDICATE

EXAMINER

*Complete all applicable spaces on next page*

**5. Deposit account:**

**6. Send correspondence to:**

Name **WILLIAM K. FRIEDMAN**    Addr **11 E. 44th St., New York, N.Y. 10017**

**7. Send certificate to:**

(Type or print Name)   **Mr. WILLIAM K. FRIEDMAN**

name and address Address   **11 East 44th Street**
(Number and street)

**New York**    **New York**    **10017**
(City)    (State)    (ZIP code)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

**Time limits.**

*When to renew.* The original term of copyright in a published work lasts for 28 years from the date of publication; in the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

**NATIONAL PERIODICAL PUBLICATIONS, INC.** would be eligible for renewal between June 15, 1967, and June 15, 1968.

*Caution:* Unless a valid renewal claim is ... the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

## How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

## Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal only in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* _____ and/or *the child (children) of the deceased author* _____
(Name of author)

(Name of author)

3. The author's executor(s), if the author left a will and

if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author* _____
(Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author* _____ *there being no will.*
(Name of author)

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

a corporate body otherwise than as assignee or licensee of the individual author. (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

---

FOR COPYRIGHT OFFICE USE ONLY

Application received

JUN -1 1966

Fee received.

$4.00   102732 JUN-1 '66

U.S. GOVERNMENT PRINTING OFFICE: 1965—O-781-332 ... (Rev. 1965—50,000) .

CLASS K5 No. 55499

# Copyright Office
## Of the United States of America
## THE LIBRARY OF CONGRESS
### ★ ★ ★ WASHINGTON ★ ★ ★

## Certificate of Copyright Registration

**This is to certify**, in conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright, approved March 4, 1909, as amended by the Act approved March 2, 1913, that ONE copy of the issue of the newspaper or periodical containing the PERIODICAL CONTRIBUTION named herein has been deposited in this Office under the provisions of the Act of 1909, and that registration of a claim to copyright for the first term of twenty-eight years has been duly made in the name of ........................................................

McClure Newspaper Syndicate,

75 West St.,

New York, 6, N. Y.

Title of contribution: Superman,

Author: Jerry Siegel and Joe Shuster, of United States.

Published on Jan. 26, 1939

in The Milwaukee Journal, Milwaukee, Wis.,

Jan. 26, 1939, Page 4 G. S.

Copy received Apr. 13, 1944

Entry: Class K5 No. 55499

Richard L. DeWolf
Acting Register of Copyrights

[SEAL]

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-8, Page 161 of 331

**Page 3**

# Certificate of Registration of a Claim to Renewal Copyright

**FORM R**

REGISTRATION NO.

R 387106

DO NOT WRITE HERE



This Is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Register of Copyrights*
*United States of America*

**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

(a) Name .....NATIONAL PERIODICAL PUBLICATIONS, INC.............................

Address .....575 Lexington Avenue, New York, New York 10022.............

Claiming as..Proprietor of copyright in a work made for hire....................

(b) Name...........................................................................................................

Address..........................................................................................................

Claiming as....................................................................................................

(c) Name..........................................................................................................

Address..........................................................................................................

Claiming as....................................................................................................

**2. (a) Title:**

.................SUPERMAN.............................................................................

(b) **Renewable Matter:**

(c) **Contribution to Periodical or Other Composite Work:**

.......................THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin, pg. 4. G.S.
*(Title of periodical or composite work)*

If a periodical, give: Vol. ................; No. ..............; Issue ................; Date .January 26, 1939....

**3. Authors of Renewable Matter:**

.................Jerry Siegel and Joe Shuster, as employees of a work

.....made for hire......................................................................................

**4. Facts of Original Registration:**

Original registration number: Class .....KK.............; No.55499..............

If registered as published, give date of publication ..................January 26, 1939.........................

If registered as unpublished, give date of registration ....................................................

Original copyright claimant ..McCLURE NEWSPAPER SYNDICATE.....................................
*Complete all applicable spaces on next page*

EXAMINER

ER 1859

**5. Deposit account:**

**6. Send correspondence to:**

Name ...WILLIAM K. FRIEDMAN... Address ...11 East 44th Street, New York, N.Y. 10017

**7. Send certificate to:**

(Type or print Name name and address)

> WILLIAM K. FRIEDMAN
>
> 11 East 44th Street
> (Number and street)
>
> New York     New York     10017
> (City)     (State)     (ZIP code)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### Time limits

When to renew. The original term of copyright MARION PUBLICATIONS INC. lasts for 28 years from the date of may be made for renewal between June 15, 1967, work originally registered in unpublished form and June 15, 1968. of a work originally registered in unpublished form.

Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

Caution: Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

Procedure to follow. Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal only in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: the author.

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: the widow (widower) of the author ........................ and/or the child

   (children) of the deceased author ........................
   (Name of author)

3. The author's executor(s), if the author left a will and

if there is no surviving widow, widower, or child. State the claim as: the executor(s) of the author

........................
(Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: the next of kin of the deceased author

........................ there being no will.
(Name of author)

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: proprietor of copyright in a posthumous work.

2. Periodical, cyclopedic, or other composite work. State the claim as: proprietor of copyright in a composite work.

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: proprietor of copyright in a work copyrighted by

a corporate body otherwise than as assignee or licensee of the individual author. (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: proprietor of copyright in a work made for hire.

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: proprietor of copyright in a print or label.

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| Application received<br><br>JUN - 1 1966 | |
| Fee received<br><br>$4.00   102732 JUN-1 66 | |

U.S. GOVERNMENT PRINTING OFFICE: 1965—O-791=382    (Dec. 1965—50,000)

Page 4

ER 1860

CLASS K5 No. 55500

# Copyright Office
## Of the United States of America
## THE LIBRARY OF CONGRESS
### ★ ★ ★ WASHINGTON ★ ★ ★

## Certificate of Copyright Registration

**This is to certify**, in conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright, approved March 4, 1909, as amended by the Act approved March 2, 1913, that ONE copy of the issue of the newspaper or periodical containing the PERIODICAL CONTRIBUTION named herein has been deposited in this Office under the provisions of the Act of 1909, and that registration of a claim to copyright for the first term of twenty-eight years has been duly made in the name of ............................................................

McClure Newspaper Syndicate,

75 West St.,

New York, 6, N. Y.

Title of contribution: Superman.

Author: Jerry Siegel and Joe Shuster, of United States.

Published on Jan. 27, 1939

in The Milwaukee Journal, Milwaukee, Wis.,

Jan. 27, 1939, Page 4 G. S.

Copy received Apr. 13, 1944

Entry: Class K5 No. 55500

_Richard W. DeWolf_
Acting Register of Copyrights

[SEAL]

ER 1861

Page 3

**FORM R**



REGISTRATION NO.

R 387107

DO NOT WRITE HERE

# Certificate of Registration of a Claim to Renewal Copyright

**This is To Certify** that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Register of Copyrights*
*United States of America*

**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

(a) Name ...... NATIONAL PERIODICAL PUBLICATIONS, INC.

Address ...... 575 Lexington Avenue, New York, New York 10022

Claiming as Proprietor of a copyright in a work made for hire

(b) Name ......

Address ......

Claiming as ......

(c) Name ......

Address ......

Claiming as ......

**2. (a) Title:**

...... SUPERMAN

(b) Renewable Matter:

......

(c) Contribution to Periodical or Other Composite Work:

...... THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin, pg. 4 C.S.
(Title of periodical or composite work)

If a periodical, give: Vol. ......; No. ......; Issue ......; Date ...... January 27, 1939

**3. Authors of Renewable Matter:**

...... Jerry Siegel and Joe Shuster, as employees of a work
made for hire

**4. Facts of Original Registration:**

Original registration number: Class ...... XX ......; No. 55500

If registered as published, give date of publication ...... January 27, 1939

If registered as unpublished, give date of registration ......

Original copyright claimant ...... McCLURE NEWSPAPER SYNDICATE

*Complete all applicable spaces on next page*

EXAMINER

ER 1862

**5. Deposit account:**

**6. Send correspondence to:**

Name .......WILLIAM K. FRIEDMAN...................... Address 11 E. 44th St., New York, N.Y. 10017

**7. Send certificate to:**

(Type or print Name and address)

Name .......WILLIAM K. FRIEDMAN..................

Address .......11 East 44th Street..................
(Number and street)

.......New York...........NEW YORK.........10017.......
(City)　　　　　　(State)　　　　　(ZIP code)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### Time limits

*When to renew.* The original term of copyright in a work lasts for 28 years from the date of copyright. In the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

NATIONAL LAMPOON PUBLICATIONS, INC. eligible for renewal between June 15, 1967, and June 15, 1968.

*Caution:* Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only in the five cases listed in Paragraph B, below.*

**A.** The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* ..................... and/or *the child*
(Name of author)

(*children*) *of the deceased author* ..................
(Name of author)

3. The author's executor(s), if the author left a will and

if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author*

..................................................................
(Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author*

....................................... *there being no will.*
(Name of author)

**B.** In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body other than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

a corporate body other than as assignee or licensee of the individual author. (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| Application received<br><br>JUN -1 1966 | |
| Fee received<br><br>$4.00　 102732 JUN-1 66 | |

U.S. GOVERNMENT PRINTING OFFICE: 1965—O—791-532　　(Dec. 1965—59,000)

*Page 4*

CLASS K5 No. 55501

# Copyright Office
## Of the United States of America
### THE LIBRARY OF CONGRESS
★ ★ ★ W A S H I N G T O N ★ ★ ★

## *Certificate of Copyright Registration*

**This is to certify,** in conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright, approved March 4, 1909, as amended by the Act approved March 2, 1913, that ONE copy of the issue of the newspaper or periodical containing the PERIODICAL CONTRIBUTION named herein has been deposited in this Office under the provisions of the Act of 1909, and that registration of a claim to copyright for the first term of twenty-eight years has been duly made in the name of ........................................................................

McClure Newspaper Syndicate,.........................................................................

75 West St.,.........................................................................................................

New York, 6, N. Y.............................................................................................

Title of contribution: Superman..................................................................

..........................................................................................................................

..........................................................................................................................

..........................................................................................................................

Author: ...Jerry Siegel and Joe Shuster, of United States...................

..........................................................................................................................

Published on ...Jan. 28, 1939....................................................................

in ...The Milwaukee Journal, Milwaukee, Wis.,..................................

...............Jan. 28, 1939, Page 4, G. S....................................................

Copy received ...Apr. 13, 1944...................................................................

Entry: Class    K5 No. 55501

Richard L. DeWolf

Acting Register of Copyrights

[SEAL]

Page 3

## Certificate of Registration of a Claim to Renewal Copyright

**FORM R**

REGISTRATION NO.

R 387108

DO NOT WRITE HERE



**This Is To Certify** that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Register of Copyrights*
*United States of America*

**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

(a) Name ___ NATIONAL PERIODICAL PUBLICATIONS, INC. ___

Address ___ 575 Lexington Avenue, New York, New York 10022 ___

Claiming as ___ Proprietor of copyright in a work made for hire ___

(b) Name ___

Address ___

Claiming as ___

(c) Name ___

Address ___

Claiming as ___

**2. (a) Title:** ___ SUPERMAN ___

**(b) Renewable Matter:** ___

**(c) Contribution to Periodical or Other Composite Work:**

___ THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin, pg. 4 G.S. ___
(Title of periodical or composite work)

If a periodical, give: Vol. ___ ; No. ___ ; Issue ___ ; Date ___ January 23, 1939 ___

**3. Authors of Renewable Matter:**

___ Jerry Siegel and Joe Shuster, as employees of a work ___
___ made for hire ___

**4. Facts of Original Registration:**

Original registration number: Class ___ K5 ___ ; No. ___ 55501 ___

If registered as published, give date of publication ___ January 28, 1939 ___

If registered as unpublished, give date of registration ___

Original copyright claimant: ___ McCLURE NEWSPAPER SYNDICATE ___

EXAMINER

*Complete all applicable spaces on next page*

**5. Deposit account:**

------------------------------------------------------------

**6. Send correspondence to:**

Name ...WILLIAM K. FRIEDMAN........... Add.... 11 E. 44th St., New York, N.Y. 10017

**7. Send certificate to:**

| | |
|---|---|
| (Type or print name and address) | Name  WILLIAM K. FRIEDMAN |
| | Address  11 East 44th Street |
| | (Number and street) |
| | New York          New York          10017 |
| | (City)          (State)          (ZIP code) |

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### Time limits

*When to renew.* The original term of copyright if published NATIONAL MEDICAL PUBLICATIONS, INC. work lasts for 28 years from the date of publication. In the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15, 1940, would be eligible for renewal between June 15, 1967, and June 15, 1968.

*Caution:* Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only* in the five cases listed in Paragraph B, below.

**A.** The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. **The author, if living.** State the claim as: *the author.*

2. **The widow, widower, and/or children of the author, if the author is not living.** State the claim as: *the widow (widower) of the author* ...................... *and/or the child (children) of the deceased author* ......................
(Name of author)

3. **The author's executor(s),** if the author left a will and

if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author*
...................... (Name of author)

4. **The next of kin of the author,** if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author* ...................... *there being no will.*
(Name of author)

**B.** In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. **Posthumous work** (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. **Periodical, cyclopedic, or other composite work.** State the claim as: *proprietor of copyright in a composite work.*

3. **"Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author."** State the claim as: *proprietor of copyright in a work copyrighted by*

a corporate body otherwise than as assignee or licensee of the individual author. (This type of claim is considered appropriate in relatively few cases.)

4. **Work copyrighted by an employer for whom such work was made for hire.** State the claim as: *proprietor of copyright in a work made for hire.*

5. **Print or label originally registered in the Patent Office** prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

| FOR COPYRIGHT OFFICE USE ONLY |
|---|
| Application received<br><br>JUN −1 1966 |
| Fee received<br><br>$4.00    102732 JUN−1 '66 |

ER 1866

1    WEISSMANN WOLFF BERGMAN
        COLEMAN GRODIN & EVALL LLP
2    Michael Bergman (SBN 37797)
     Anjani Mandavia (SBN 94092)
3    9665 Wilshire Boulevard, Ninth Floor
     Beverly Hills, California 90212
4    Telephone: (310) 858-7888
     Fax: (310) 550-7191
5
     FROSS ZELNICK LEHRMAN & ZISSU, P.C.
6    Roger L. Zissu (Admitted *pro hac vice*)
     James D. Weinberger (Admitted *pro hac vice*)
7    866 United Nations Plaza
     New York, New York 10017
8    Telephone: (212) 813-5900
     Fax: (212) 813-5901
9
     PERKINS LAW OFFICE, P.C.
10   Patrick T. Perkins (Admitted *pro hac vice*)
     1711 Route 9D
11   Cold Spring, New York 10516
     Telephone: (845) 265-2820
12   Fax: (845) 265-2819

13   Attorneys for Defendants and Counterclaimant

14              **UNITED STATES DISTRICT COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 16  JOANNE SIEGEL and LAURA SIEGEL LARSON, | Case No. SA CV 04-8400 SGL (RZx) Case No. SA CV 04-8776 SGL (RZx) |
| 17          Plaintiffs, | Hon. Stephen G. Larson, U.S.D.J. |
| 18      vs. | |
| 19  WARNER BROS. ENTERTAINMENT INC.; TIME WARNER INC.; DC COMICS; and DOES 1-10, | DECLARATION OF MICHAEL BERGMAN IN SUPPORT OF DEFENDANTS' OBJECTION TO PLAINTIFFS' JULY 28, 2008 |
| 20          Defendants. | OPPOSITION BRIEF SUBMITTED PURSUANT TO THE COURT'S JULY 3, 2008 ORDER |
| 21  JOANNE SIEGEL and LAURA SIEGEL LARSON, | |
| 22          Plaintiffs, | |
| 23      vs. TIME WARNER INC.; WARNER COMMUNICATIONS INC.; WARNER | Time:     3:00 p.m. Date:     August 11, 2008 |
| 24  BROS. ENTERTAINMENT INC.; WARNER BROS. TELEVISION | Place:    Courtroom 1 |
| 25  PRODUCTION INC.; DC COMICS; and DOES 1-10, | |
| 26          Defendants. | |
| 27  AND RELATED COUNTERCLAIMS | |

28

{F0327369.1 }                                        **ER 1867**

1 I, MICHAEL BERGMAN, declare under penalty of perjury:

2     1.     I am a member of Weissmann Wolff Bergman Coleman Grodin &
3 Evall LLP, counsel for Defendants. This Declaration is made to submit further
4 documentary evidence in support of Defendants' Objection to Plaintiffs' July 28,
5 2008 opposition brief submitted pursuant to the Court's July 3, 2008 Order. I have
6 personal knowledge of the facts contained within this declaration, and, if called
7 upon as a witness, I could and would testify competently thereto.

8     2.     For the convenience of the Court, I have used headings to identify the
9 subjects to which Defendants consider these documents to have relevance. In some
10 cases, documents relate to multiple subjects. All of these documents were produced
11 in the course of discovery. Those documents containing bates numbers beginning
12 with "DCC" were produced by Defendant D.C. Comics. Those documents
13 containing bates numbers without any prefix were produced by Plaintiffs.

14 *Instance/ Right of Control*

15     3.     Attached hereto as Exhibit <u>A</u> is a true and correct copy of a letter from
16 Vin Sullivan to Jerome Siegel, dated January 10, 1938.

17     4.     Attached hereto as Exhibit <u>B</u> is a true and correct copy of a letter from
18 J.S. Liebowitz to Jerome Siegel, dated September 28, 1938.

19     5.     Attached hereto as Exhibit <u>C</u> is a true and correct copy of a letter from
20 Jerome Siegel to J.S. Liebowitz, dated September 30, 1938.

21     6.     Attached hereto as Exhibit <u>D</u> is a true and correct copy of a letter from
22 J.S. Liebowitz to Jerome Siegel, dated April 21, 1939.

23     7.     Attached hereto as Exhibit <u>E</u> is a true and correct copy of a letter from
24 J.S. Liebowitz to Jerome Siegel, dated January 23, 1940.

25     8.     Attached hereto as Exhibit <u>F</u> is a true and correct copy of a letter from
26 J.S. Liebowitz to Jerome Siegel, dated February 8, 1940.

27     9.     Attached hereto as Exhibit <u>G</u> is a true and correct copy of a letter from
28 J.S. Liebowitz to Jerome Siegel, dated May 2, 1940.

**ER 1868**

10. Attached hereto as Exhibit <u>H</u> is a true and correct copy of a letter from Whitney Ellsworth to Jerome Siegel, dated November 5, 1940.

*Exercise of Control*

11. Attached hereto as Exhibit <u>I</u> is a true and correct copy of a letter from Whitney Ellsworth to Jerome Siegel, dated January 22, 1940.

12. Attached hereto as Exhibit <u>J</u> is a true and correct copy of a letter from J.S. Liebowitz to Jerome Siegel, dated January 29, 1940.

13. Attached hereto as Exhibit <u>K</u> is a true and correct copy of a letter from Whitney Ellsworth to Jerome Siegel, dated March 18, 1940.

14. Attached hereto as Exhibit <u>L</u> is a true and correct copy of a letter from Whitney Ellsworth to Jerome Siegel, dated November 4, 1940.

15. Attached hereto as Exhibit <u>M</u> is a true and correct copy of a letter from Whitney Ellsworth to Jerome Siegel, dated February 19, 1941.

16. Attached hereto as Exhibit <u>N</u> is a true and correct copy of a letter from Whitney Ellsworth to Jerome Siegel, dated November 12, 1942.

17. Attached hereto as Exhibit <u>O</u> is a true and correct copy of a letter from Whitney Ellsworth to Jerome Siegel, dated February 21. The year is not disclosed.

*Expense*

18. Attached hereto as Exhibit <u>P</u> is a true and correct copy of a letter from J.S. Liebowitz to Jerome Siegel, dated February 3, 1947.

19. Attached hereto as Exhibit Q is a true and correct copy of an exhibit from prior litigation showing "Payments made to plaintiffs SIEGEL and SHUSTER from 1937 up to institution of this action in March 1947 by DETECTIVE COMICS, INC., SUPERMAN, INC. and NATIONAL COMICS PUBLICATIONS, INC.

*Copyright Renewal Certificates*

20. Attached hereto as Exhibit <u>R</u> is a true and correct copy of the renewal copyright certificates from various post-March 1, 1938 Superman works.

ER 1869

{F0327369.1}                                   2

1      I declare under penalty of perjury of the laws of the United States of America

2 that the foregoing is true and correct.

3      Dated this 5th day of August, 2008 at Beverly Hills, California.

                              Michael Bergman

# EXHIBIT A

ER 1871

MUrray Hill 4-2517

# DETECTIVE COMICS, Inc.
## ~~432 FOURTH AVENUE~~
### NEW YORK, N. Y.

January 10th.

Mr. Jerome Siegel,
10622 Kimberley Ave.,
Cleveland, Ohio.

Dear Jerry:-

No doubt you're quite surprised to be hearing from me from the above address .... well, you know by now just what has happened: Nicholson Pub. in the hands of receivers, the suspension, for the time being, of FUN and ADVENTURE COMICS, the taking over of the publication of Detective Comics by the firm in which Mr. Leibowitz is business manager, etc.

I have on hand now several features you sent to Mr. Leibowitz in connection with the new magazine that is still in the embryonic stage. The one feature I liked best, and the one that seems to fit into the proposed schedule, is that "Superman". From the drawing I can readily see that Joe Schuster was the person who handled the pen-and-ink end of the job. With all the work Joe is doing now (and that includes the features he drew for Fun and Adventure) would it be possible for him to still turn out 13 pages of this new feature?

Joe, of course, seems to have the proper touch in putting your stories on drawing paper, and if it were humanly possible I'd like to have him turn out this "Superman" for the new magazine. As it is now, he's handling 27 pages for the other three magazines: 6 FUN, 4 ADVENTURE, 17 DETECTIVE. It strikes me that adding another 13 pages to his already filled schedule is loading him up to the neck. Please let me know immediately whether or not he can do this extra feature.

Of the other artists whose work you submitted, Tex Garnley appears to be the only outstanding one, and even his work can still stand a great deal of improvement. I'll communicate with you further on these others but for the present enlighten me on Joe's capability of doing 13 pages of "Superman".

Best regards,

Vin Sullivan

000002109

-4-

ER 1872

# EXHIBIT B



**DETECTIVE COMICS**

Publishers of
DETECTIVE COMICS
MORE FUN COMICS
NEW ADVENTURE COMICS
ACTION COMICS
NEW BOOK COMICS

September 28, 1958

480 LEXINGTON AVE.
NEW YORK, N. Y.

Mr. Jerome Siegel,
10622 Kimberley Avenue,
Cleveland, Ohio.

Dear Jerry:

Your letter of the 26th reached me yesterday afternoon, just as Mr. Gaines and I were going over the syndicate contract and making the changes which you discussed with him the last day you were in New York. That is, an 8 months' option instead of 4 months, with the further provision that if a war should break out in Europe, in which England should be involved during the first 4 months of this 8 months option period, McClure would have the right to cancel the agreement.

I am sending you herewith three copies of the contract with the corrections indicated thereon, as well as the contract between ourselves. Please note that you and Joe are to sign all three contracts between McClure, Detective Comics and yourselves and you are also to initial the changes where I have already put my initials on all three copies. Please return these three signed copies together with the two copies of our agreement signed by both of you by return mail, so that when Mr. Donenfeld comes back to New York in the next day or two, he can then sign them and I will then have Mr. Gaines get the McClure Syndicate signature on your copy and return your copy of each contract.

Now, in reply to your letter. Frankly, when I got through reading it, it took my breath away. I did not anticipate that when I asked you to come to New York to discuss this matter of newspaper syndication, that you would want to take advantage of this visit and try to boost up your price on "Superman". You must bear in mind, Jerry, that when we started Action Comics, we agreed to give you $10.00 a page, which is $4.00 a page more than anyone else is getting for any feature in any of our four books.

In addition, we're paying you $9.00 and $10.00 a page for the other four features you are drawing for us - again $3.00 and $4.00 a page more than we are paying any other artist. Where you got the idea that anyone was receiving $15.00 a page I'd like to know. As regard your mention that other features contain 6 panels, I beg you to be a little more observant. You will find that all contain 8, with the exception of where the action calls for a double spread. You, who have been the most flagrant violator in this particular respect, should have the least to say about such matters.

**000000463**

−5−



**DETECTIVE COMICS**

Publishers of
**DETECTIVE COMICS**
**MORE FUN COMICS**
**NEW ADVENTURE COMICS**
**ACTION COMICS**
**NEW BOOK COMICS**

-2-

480 LEXINGTON AVE.
NEW YORK, N. Y.

Also, take into consideration that when we decided to come out with Action Comics, we were taking a tremendous gamble involving many thousands of dollars. We have no assurance from anybody that Action Comics would not be a losing proposition - you took no such gamble.

As far as the rate of $25.00 for reprint material is concerned, when "Superman" reaches the same popularity as Dick Tracy, Orphan Annie, Skippy, Mutt & Jeff and dozens of other top-notch features, you will be in a position to ask for more money - and we will be more than happy to compensate you accordingly.

As far as the popularity poll is concerned, we have approximately 500 letters in reply to this contest. If you were so observant, you may have seen that the majority of these letters have not been opened as yet and I don't know whether "Superman" heads the list or "Zatara" or any other feature carried in this book. If you base the popularity of your strip on the basis of 500 replies, you are grossly exaggerating the importance of "Superman". Don't forget that there are 64 pages in the magazine and that there isn't any magazine being published today that can sell on the basis of any one feature, whether that feature is Pop-Eye, Mickey Mouse, or any other top-notch strip and if I thought for a moment that our magazine depended on your strip, I would certainly make every effort to avoid any such situation.

As a matter of fact, we have today opened the other mail on the poll and we have found that about 25% indicate "Zatara" to be their favorite feature, 20% like "Pep Morgan", 15% like "Tex Thomson" and only 30% have designated "Superman" as their favorite, the balance being scattered among the other features in the magazine, so come off your high horse.

Is it possible that because we treated you like a human being - you suddenly got a swell head? It may also be that you are under the mistaken delusion that because you came into town to a large organization, which gave you time and showed you every courtesy which would be accorded to any big personage, you construed all these actions in the wrong light, that we were trying to get something from you. The case is distinctly the reverse. We were trying to give you, an inexperienced young man, the benefit of our experience and good will, in order that you get ahead in your ambition to become somebody in the comic field.

Don't get the idea that everyone in New York is a "gyp" and a highbinder and because you are treated as a gentleman and an equal, not only by ourselves but by Mr. Gaines and the McClure people, that we are seeking to take advantage of you.

As I have pointed out to you many times, our company has very little to gain in a monetary sense from the syndication of this material. Also

000000464

ER 1875

# DETECTIVE COMICS
### INCORPORATED

**Publishers of**
DETECTIVE COMICS
MORE FUN COMICS
NEW ADVENTURE COMICS
ACTION COMICS
NEW BOOK COMICS

480 LEXINGTON AVE.
NEW YORK, N. Y.

–5–

bear in mind, that we own the feature "Superman" and that we can at any time replace you in the drawing of that feature and that without our consent this feature would not be syndicated and therefore you would be the loser in the entire transaction.

The amount of increase you demand does not hurt me as much as your attitude in the entire matter. I don't want to be too harsh about it, because I realize that because of your inexperience you have made an unfair request. In time, if our association continues, you will learn that you have been very fortunate in meeting up with people who are looking out for your interest as well as their own.

Don't forget Jerry, you and Joe are still young men. When we started to work with you, you were getting very little from Nicholson — when you got it, and not getting anywhere. We have more than doubled your revenue in the last six or seven months and only the future can tell how much farther you will go.

Please give the entire matter your serious thought. It is entirely up to you and Joe, whether you wish our pleasant relationship to continue and whether you wish the strip "Superman" to be syndicated.

Very truly yours,
DETECTIVE COMICS, INC.

J. S. LIEBOWITZ

JSL:MN

P.S. As there were too many changes in the contract, we decided to re-type it, therefore there will be nothing to initial.

000000465

–7–

# EXHIBIT C

"HOW TO BE FUNNY"

*Dept. E & H*

LAUGH AS YOU LEARN

## The Siegel-Shuster School of Humor
### 10822 KIMBERLEY AVENUE
### CLEVELAND, OHIO

September 30, 1938.

Dear Jack:

Thanks for your long detailed letter in which you've explained many things to our complete satisfaction. Enclosed herewith you will find signed and returned the six contracts you forwarded. Please see that we get a signed copy of each of these contracts as soon as possible (we were never sent a copy of the earlier contract we signed with you).

My previous letter was evidently written under a misunderstanding. You see, we had absolutely no idea what you are paying for other features in the magazines. Too, we had heard that a 6-panel per page feature in one of the original comics magazines (now out of existence) had received $15.00 per page. (I was not referring to a 6-panel page in your publications.) At the time it appeared to us that SUPERMAN at least deserved whatever top rates you were paying for material (we thought that perhaps you were paying $15.00 per page for some material such as perhaps for O'Mealia whom we believe to be a high-priced man.) — Your information that we are already receiving $4.00 and $3.00 more per page than other contributors gives us the proper perspective. As I've mentioned before, Joe and I appreciate (especially after having worked for Nicholson) that we are getting a good deal from Detective Comics, Inc. Your payments are prompt, your handling friendly and courteous — and who could ask for anything more!

It looks like Great Britian will not enter a war so that clause in the contract shouldn't create any difficulty. Joe and I are anxious and ready to do our best on SUPERMAN so that all parties concerned will profit. And we still wear the same size hats.

All this month's page are herewith enclosed under separate cover except the last seven pages of SUPERMAN which have come in late from the apprentice. We'll get these last pages onto you. — We're already on next month's pages and are confident we'll be able to turn in at least two months' releases of magazine work.

Best wishes to all the staff and best personal wishes to yourself. Thanks for showing me a good time while I was in New York...

Cordially,

-8-

ER 1878 DCC00045463

# EXHIBIT D

# DETECTIVE COMICS
## INCORPORATED

Publishers of
**DETECTIVE COMICS**
**MORE FUN COMICS**
**NEW ADVENTURE COMICS**
**ACTION COMICS**
**NEW BOOK COMICS**

April 21, 1939

480 LEXINGTON AVE
NEW YORK, N. Y.

Mr. Jerome Siegel,
10622 Kimberley Avenue,
Cleveland, Ohio.

Dear Jerry:

I have written to you many times in the past on the impossibility of allowing conditions affecting the work you are doing for us and for McClure to exist as they are. Every morning it seems to me I receive copies of criticisms and complaints sent to you by Miss Baker of McClure. To that I can also add the many unwritten letters of complaints that we have to offer.

Now it seems to me, that if you don't already realize that your success and that of Joe is hampered by every mistake you make, with particular reference to the newspaper strip. In the publication of that strip you reach a wider and more critical audience, not only in adult readers, but in the managing editors who seem to see great possibilities for this strip, but predict complete failure if a change is not quickly made.

To my mind, without casting any reflections on your ability, you have the germ of a great idea in SUPERMAN but you need constant editorial supervision and an alter-ego who can criticize and point out small details which are noticeable to an outsider and which may make or break the strip.

We have discussed with you on numerous occasions the need for your submitting the continuity for the SUPERMAN magazine strip in advance, so that we may be helpful with many suggestions. You have made promises that you would comply with our request. So far we continue to get the work from you in haphazard fashion, a page today and more tomorrow and this month particularly you are holding up our schedule over 20 days. Because of our need to meet printing schedules, we many times are forced to take whatever is sent on, but we have too much at stake in a situation like this to go on without making an effort at a solution.

My suggestion and of our other associates here, is that you and Joe should come on to New York where we can be at a moments touch with everything that you do. I think with a daily routine in an office, you will be able to accomplish a great deal more away from distractions from working at home.

Mr. Nimis of McClure was here today and he stated that they definitely do not intend to go on as they are. While they realize it might at some future time make money for everybody, they feel that the time and effort and aggravation encountered in getting this thing going properly is not worth while, because of

000002134

ER 1880

PLAZA 5-0741

# DETECTIVE COMICS
## INCORPORATED

Publishers of
**DETECTIVE COMICS**
**MORE FUN COMICS**
**NEW ADVENTURE COMICS**
**ACTION COMICS**
**NEW BOOK COMICS**

480 LEXINGTON AVE.
NEW YORK, N. Y.

Mr. Jerome Siegel      -2-      April 21, 1939

your lack of cooperation.

Now you and Joe give this serious consideration. Do not be guided by your present monetary results. We have made every effort to increase your earning capacity and we are hoping to do more, but you must invest now in building for the future.

Your residence in New York need not be forever, but at least until such time that you have the thing going properly and have succeeded in getting ahead on your work.

I would appreciate a prompt reply as to your reaction to my suggestions.

Very truly yours,
DETECTIVE COMICS, INC.

J. S. LIEBOWITZ

JSL:MN

000002135

ER 1881

# EXHIBIT E

PLAZA 3-0741

*Pl. Ex. 24*



**Publishers of**
DETECTIVE COMICS
MORE FUN COMICS
NEW ADVENTURE COMICS
ACTION COMICS
NEW BOOK COMICS

**January 25, 1940**

480 LEXINGTON AVE.
NEW YORK, N. Y.

Mr. Jerome Siegel,
10622 Kimberley Avenue,
Cleveland, Ohio.

Dear Jerry:

I received your last letter in which you enclosed the clipping from the Plain Dealer. I can imagine how proud you and Joe must have been to see yourself in print in your home town.

In this interview there seems to have been a lot of misstatements. One in particular relating to the manufacture of Superman sweaters and emblems. Also, a remark regarding movie and radio. On the radio proposition, we expect to sign any day with Becker Flour Co. - we to pay the cost of producing the program and they pay so much per station. The net result of this transaction will show us a loss of $600. every week, so at the present time this is nothing to gloat over. Our job, in order to get out of this hole, will be to sell other radio stations from record transcriptions which we make from the original broadcast. This will not come for a long time, depending of course whether the present program is successful.

We also plan to go after various licenses. In connection with this we have set up a publicity department which is to issue all information regarding Superman. It is therefore important that you gave no further interviews. You might have mentioned in your interview that the first ones who saw something in the Superman strip was Detective Comics, Inc., who bought all rights to it. You might have also said that you have a very satisfactory arrangement with Detective Comics, Inc. as compensation for the transfer of all your rights, so hereafter we forbid you to grant any interviews relating to Superman and its development. Please refer all inquiries to our office. You can readily see the harm that will be done if things are not handled from a central source and if statements are issued which do not conflict with one another.

I notice that you are quite enthusiastic about Mr. Boring's work. When we received the proofs of the daily that he did, we certainly were shocked at the many shortcomings. These criticisms have already been conveyed to you by Whit. I cannot reiterate too strongly the need for painstaking work which is necessary on the Superman daily, Sunday and magazine pages. You can see from our manner of going about things now, such as criticizing and approving the scripts, that we will not tolerate or accept slipshod work. I know that you can do and that you can influence Joe to do a very good job on this strip.

Whit sent you an okayed cover design. This must be in by the end of this week. Tell Joe that when he sketches covers to bear in mind that Superman must always appear the largest figure and a front view.

It is now the 23rd of the month and I have yet to receive any releases on Superman which

000002141

ER 1883

-2-

Mr. Jerome Siegel                                                    January 25, 1940

is needed for the May issue of Action. Let me know by return air mail just when this is coming in. The Syndicate has also called saying that they are right up to deadline. Haven't you turned out any Sunday or daily strips since you left here? Please do not forget that all copy must clear through our office. How long does the present continuity on the dailies continue and are you working on any new script? You've got to give us plenty of time for okaying, so get busy.

I have not received a copy of the detailed Superman continuity which has been recently okayed by us. We are going over this script with a fine tooth comb. Please type your synopsis double spaced and on one side of the paper. Get behind your work with zest and ambition to improve and forget about book rights, movie rights and all other dreams. I'll let you know as soon as things happen. After all, you must realize that we have a bigger stake in it than you have and we will take care of things in the proper manner.

Very sincerely yours,

J. S. LIEBOWITZ

JSL:MN

P.S. We're sending you a couple of Superman #4 preview copies. Also enclosing a check for $104.00.

We notice in the last daily release that Clark Kent is flying in the air not dressed in Superman costume. We think it's an unwise policy to show him without the Superman costume when performing any of his feats.

000002142

ER 1884

-12-

# EXHIBIT F

PLAZA 5-9741

# DETECTIVE COMICS
## INCORPORATED

Publishers of
**S U P E R M A N**
**ACTION COMICS**
**DETECTIVE COMICS**
**ADVENTURE COMICS**
**MORE FUN COMICS**

480 LEXINGTON AVE.
NEW YORK, N. Y.

February 8, 1940

Mr. Jerome Siegel,
10622 Kimberley Avenue,
Cleveland, Ohio.

Dear Jerry:

I hope that everything is now on an even keel with Cassidy and Boring at work. Also, that you have forgotten about our unpleasant episode of last week. From now on, I hope we will only have nice things to write to each other.

I am enclosing a copy of a letter which was received by McClure from the New York Post, which is self-explanatory. Many other people have had the same criticism lately. Just this morning Mr. Waldo called me about the same matter. It is very important that Joe do the entire Superman figure as there seems to be noone who is able to copy his style and the facial expression of Superman. I hope that you will see to it that this is done and that the quality of the rest of the strip will continually improve.

I like the present arrangement on the editing of the strip and I think you do too, as it gives us an opportunity to catch any mistakes. Whit knows his business and is very anxious to cooperate with you. We are, however, encountering trouble and delay on your other continuities. For example, the man who draws the Spy strip has now been delayed an entire week. He is unusually slow as it is, to delay him another week holds up the production of our magazine. You should try and get ahead.

I have also received a letter from the syndicate in which they insist that you catch up with the daily and the Sunday strips, as it is causing them a lot of needless expense and delay. I think, however, from now on these conditions will be remedied.

With kindest regards to all, I am

Sincerely yours,

J. S. LIEBOWITZ

JSL:MN

P.S. The syndicate has just called up stating that they received a contract from a California paper. They want to start some time in May and the syndicate is therefore anxious to know how long the present daily continuity will run – also the Sunday. I have asked you once before to give me this inf— Will you please be good enough by return mail to let me know the

000002261

— 13 —

# EXHIBIT G

PLAZA 3-0741

# DETECTIVE COMICS

Publishers of
S U P E R M A N
ACTION COMICS
DETECTIVE COMICS
ADVENTURE COMICS
MORE FUN COMICS

480 LEXINGTON AVE.
NEW YORK, N. Y.

May 2, 1940

Mr. J. Siegel,
Box 1898,
University Center Station,
Cleveland, Ohio.

Dear Jerry:

I am enclosing a check for $520.00 for the two Superman releases lately received and a check to yourself for the Spectre release.

By this time you no doubt have received the Syndicate check. This is quite a substantial sum and I have every hope that these will continue to grow, provided however, you pay strict attention to the plotting and the art work on the Superman. Inciuently, I must say that the last two releases were not at all to our liking. This may be altogether due to your method of working, which is on a piece work basis in factory style. We've got to have tailor made releases. The fact that you pay Cassidy on a piece work basis certainly does not allow the man to take the pains necessary to plan and draw. Naturally, if he is to earn a good living, he has to bat the stuff out no matter what results. I think your income at present is large enough to warrant your taking a little additional expense which will prove to be a very wise investment, if we are to perpetuate the Superman strip. Pay the man a little more so that he will be able to allow himself a little more time and give it better quality.

The new artist is still in the process of working on his first release. We have seen some of the work and feel assured that it will definitely be an improvement over what we have been getting. I cannot at the present time figure out the cost, but as soon as the releases are finished I will write you.

As to your continuities, there is no need to go into it in detail again after our long telephone conversation. While in your last letter you seem to be imbued with a new spirit to raise the standard of the material, I am afraid that you will in a few weeks lapse into your old way of doing things. I hope that you will see to it that this does not happen.

Incidently, the Syndicate thinks that the current daily releases are absolutely the worse that they have ever read. They criticize our editorial supervision and you know that we are not at fault in this respect. So put on your thinking cap and get us some real good stuff.

While we are in the process of negotiations with several

ER 1888 05

Mr. J. Siegel                    -2-                    May 2, 1940

licensees, none of them has materialized as yet.  I believe I told
you that the picture rights have been sold to Republic for release
as a 15 part serial.  The price we got was $8,000. and while this sum
may seem insignificant we have gone ahead feeling assured that all the
publicity we will receive as a result of this venture would aid us
materially in building up the radio end and promoting the sale of
licensed merchandise.

                    Incidently, Macy's is building for their Thanksgiving
Day Parade a figure of Superman 4-1/2 stories high and it will cost
approximately $15,000.  I think that this will induce you to come into
town for the parade.

                    This morning we received the decision from the Court
of Appeals on the case which Fox took to a higher court.  The verdict
was altogether in our favor and the decision in the lower court was sus-
tained.  We are now in the process of examining competitive magazines
for any infringements of Superman, whether in costume or in deeds.

                    We have received no synopsis from you lately.  Better
hurry up so that we will have sufficient time for comment.  Please let me
hear from you as to what you plan to do to improve the art work.

                    Regards from everyone here to yourself, Joe and Mrs.
Siegel.

                                        Sincerely,


JSL:MN                                  J. S. LIEBOWITZ


P.S. The St. Louis Post Dispatch would like you to do a scene such as is
described on the attached sheet.  They plan to use this as part of a
promotion.  When you have this ready send it on to me so that I can forward
it to them.

ER 1889

# EXHIBIT H

ER 1890

PLaza 3-0741

# DETECTIVE COMICS, Inc.

### 480 LEXINGTON AVENUE
### NEW YORK, N. Y.

*Publishers of*
DETECTIVE COMICS
ADVENTURE COMICS
MORE FUN COMICS
ACTION COMICS

November 5, 1940

Dear Jerry:-

I'm returning herewith your latest 26-page
script. I've talked it over with Jack, and we both feel
that there is nothing important enough about the story
to justify its going to such length. As a matter of
policy, we'd prefer to stick to four 13-page releases
in each issue of the SUPERMAN bi-monthly anyway. It
makes the kids feel that they're getting more for their
money, and it also makes it possible to alternate
advertising and other such pages between the SUPERMAN
stories. I'd suggest that you take this script and
re-write it for a 13-page story, which would tighten it
up considerably anyway.

This morning's mail brought another Sunday
page and a set of dailies. It's perfectly ridiculous to
write scripts, send them on to me, and then go right
ahead with the drawing before I've had a chance to so
much as get the script back to you. It's simply a waste
of my time, which, believe it or not, is somewhat valu-
able. One of these days we'll be turning down a whole
daily or Sunday continuity after you've had it drawn-----
which will cost you money. Frankly, we are so sick and
tired of the way the entire feature is being handled that
we feel that we're going to have to do something particu-
larly drastic about it, as I said yesterday to you. From
the standpoint of the guy who's supposed to be responsible for
holding up the editorial end of the business, I've been in
a very unenviable position for some time now as regards
SUPERMAN. You are never far enough ahead with script to
make it possible to wait for the editorial okay before the
artists start working, in spite of the fact that we've been
to considerable trouble and expense to purchase synopses
for you. As a matter of fact, you haven't even let me know
which of the submitted scripts you are going to use, though
I've asked you at least twice for that information.

DCC00045487
ER 1891

-16-

PLaza 3-0741

# DETECTIVE COMICS, Inc.

### 480 LEXINGTON AVENUE
### NEW YORK, N. Y.

*Publishers of*
DETECTIVE COMICS
ADVENTURE COMICS
MORE FUN COMICS
ACTION COMICS

On top of all this, the art work which has been coming in is hardly less than atrocious, though almost every letter you write to us puts up a terrific sales talk on the stuff. Are you trying to talk us into believing that the stuff is really good, or do you and Joe both honestly believe that it IS good? To forget everything else, do either you or Joe believe that the SUPERMAN figures are SUPERMAN as you and Joe visualize him? Take a look at the enclosed photostat of one panel which I recently had to redraw before sending it to the engraver. IS THIS SUPERMAN? Actually, it's embarrassing for me to have such stuff coming out of our grist mill under my editorship.

Something's going to have to be done, and soon.

Sincerely,

ER 1892    DCC00045488

# EXHIBIT I

ER 1893

# DETECTIVE COMICS
## INCORPORATED

**Publishers of**
DETECTIVE COMICS
MORE FUN COMICS
NEW ADVENTURE COMICS
ACTION COMICS
NEW BOOK COMICS

480 LEXINGTON AVE
NEW YORK, N. Y.

January Twenty Second
1 9 4 0

Dear Jerry:

Returned herewith are Joe's sketches for the next cover. The one marked "okay" will be okay, except that we suggest the thug be grabbing a string of gems from the gal's neck instead of holding a gun on her. We're trying to get away a little from the excessive use of firearms and knives on the covers, at least. The other two sketches are too much of the same old routine, and also they take SUPERMAN away from the camera instead of toward it.

We've been having considerable talk about the daily releases on SUPERMAN, and I believe Jack is writing to you to have you send all the material here before it goes to the syndicate for release. You'll note that a number of queries have been noted on the enclosed proof-sheet for the latest set of releases; in my opinion, and in the opinion of the others most vitally interested, the drawing is not nearly so good as it must be if SUPERMAN is going to continue to be a success. In the first place, most of the figures are too small, giving the impression of small men rather than of large men——and that includes Kent and his alter ego, SUPERMAN. And in the picture in the second strip in which Kent takes the other guy to the top of the flagpole, the other guy is a dead ringer for Charlie McCarthy. In the third strip, the two running guards look more like Western Union boys who have just got their walking papers, and in the third picture of that same strip, Kent's figure leaves a great deal to be desired artistically.

Now for the fourth strip. In the first panel, SUPERMAN'S physique is a bit on the lah-de-dah side; I like particularly his nice fat bottom. His pose in the second picture is reminiscent of certain FLIT ads done by a cartoonist who signs himself "Dr. Seuss."

There is nothing quite so explicit to criticize in the last two strips, so I'll have to speak more generally and simply say that the art work is not up to standard.

000002259

ER 1894

NO. 2

Now, Jerry, I don't write you a piece like this so
you can show it to the artist who's working on the stuff to
prove to him that he's no good; I do write it to you to impress
you with the fact that you must exercise close supervision over
the stuff so that what comes out in the papers will be as good
as anybody else's stuff. You know, we build a feature with
Joe's drawings, and then try to hoodwink publishers with the
idea that what we now give him is just as good——which isn't right.

Between you, you and Joe ought to be able to tell
what's good and what isn't; and you ought to insist that you
get nothing but good stuff. If one particular man can't
deliver, then it's a case of trying to find one who can. Your
present and future, as you probably realize, are closely aligned
with the success of SUPERMAN. If you treat your feature well, he'll
probably take care of you for a long time; on the other hand,
kick him around and he'll let you down——and you'll find that
you're up against a mighty tough proposition trying to sell some-
body on another idea. You'd find it tougher, I daresay, to sell
another idea under these conditions than if you'd never sold
another idea.

Believe me, Jerry, it's absolutely imperative that you
tighten up on the stuff from all angles. Watch it very closely,
and let's see a decided improvement on the next batch. The
improvement will have to be quick, for it's no time to experiment
when you've got a feature that's going good.

best regards

Whit Ellsworth

000002260

−19−

# EXHIBIT J



# DETECTIVE COMICS
### INCORPORATED

Publishers of
DETECTIVE COMICS
MORE FUN COMICS
NEW ADVENTURE COMICS
ACTION COMICS
NEW BOOK COMICS

January 23, 1940

480 LEXINGTON AVE.
NEW YORK, N. Y.

Mr. Jerome Siegel,
10622 Kimberley Avenue,
Cleveland, Ohio.

Dear Jerry:

In looking over the daily releases by Boring, I must say that there is a decided improvement. If the quality is kept up, I'm inclined to believe that we will not have to worry about the art. Working together with Joe, I think, will produce the necessary quality.

Received the Sunday release and noticed one material mistake in the continuity. I note that you say that a hemophiliac is a person with lack of blood. If you will consult the dictionary, you will note the definition that "hemophilia is a tendency to profuse bleeding even from slight wounds". We have notified McClure to make the change.

I wish you would let me know how long the present continuity for the Sunday release will run. From what I've seen of this release it's not so hot. Has the next Sunday continuity been written? If so, please send me a copy immediately, so that we may be in a position to edit same.

I am enclosing a copy of a letter from the St. Louis Dispatch, which is self-explanatory. I must inform you that at the present time there seems to be a concerted drive against movies and comic books which parent-teachers groups and womens clubs claim are harmful for children. I know that there is definite objection to the Dick Tracy serial in the movies. We must point our editorial policy with a view of obtaining the approval of parents, while still not sacrificing the adventure and the thrill Superman has always brought to children.

I am also enclosing a synopsis which we think is suitable for a Superman release. After reading it I am sure that you can elaborate in detail action where necessary. As soon as you have completed playing out or writing the detailed panel script for this story, we would like to have it before it goes into work. Let me know what you think of this synopsis.

I have just received the first Superman release which will be inserted in Action, May issue. I've got to get at least one more before the month is over, which is just two more days. From your promised five releases a month I'm down to one. For anyone to have fallen down that badly, you are certainly a Superman in reverse. Now get behind these magazine releases and by the end of next month I've got to have five in order not to be delayed on the Superman quarterly.

I'm returning the letter from Cassidy. Let me know as soon as he gets

000002143

ER 1897

Mr. Jerome Siegel                         -2-                    January 29, 1940

This last Saturday we signed with Hecker Products for a radio program.   The
first broadcast will be February 12th from 5:15 to 5:30.  The New York station
is WOR and WGN in Buffalo.  These stations are the nearest to Cleveland.  This
is only a 10 station hookup covering the New England stations  and as I've
written you before, the cost of producing the program and the amount we get
from them show us a net loss of about $700.00 a week without overhead.  However,
if the program is good, we may be able to sell other stations and sponsors.

We have shown you that we're a live organization and we will get you some place,
providing you cooperate by getting your stuff in on time and putting the best
possible quality in the releases.

Best regards to Joe and have him drop me a line.

                                             Very sincerely yours,

JSL:MN                                       J. S. LIEBOWITZ

000002144

ER 1898

-21-

# EXHIBIT K

PLAZA 3-0741

# DETECTIVE COMICS
## INCORPORATED

Publishers of
**SUPERMAN**
**ACTION COMICS**
**DETECTIVE COMICS**
**ADVENTURE COMICS**
**MORE FUN COMICS**

480 LEXINGTON AVE.
NEW YORK, N. Y.

March Eighteenth
1940

Mr. Jerry Siegel,
10622 Kimberley Avenue,
Cleveland, Ohio.

Dear Jerry:

Enclosed herewith is your script on Sunday pages for
SUPERMAN.

The last set of dailes, as well as the last Sunday pages
which you sent in were not entirely satisfactory. Again let me
remind you that you must unremittingly watch the work of the artists
who are turning out the stuff. Some of the figures are absolutely
too grotesque and thereby detract from the tone of the whole job.
We don't know whether it is simply a case of your artists not being
good enough or whether they are just not made to do their best work.
For example, the release which you did for "Look" magazine was
pretty good. I understand that was done by Boring and the thing I
can't understand is why he can't keep up to the same standard. The
thing that you should shoot for, Jerry, is to have all the material
look as Joe himself had done it.

I suggested some time back that it would be a good thing
to use that Benday paper for your daily releases. Let me repeat
that it would be a <u>very</u> good idea, because it would give your stuff
the color which it so badly needs at the present time.

Regards to you and Joe.

Sincerely,

DETECTIVE COMICS, INC.

Whitney Ellsworth, Editor

WE*ICH

000002263

ER 1900

# EXHIBIT L

ER 1901

6 x 34

November 4th, 1940

Mr. Jerry Siegel
2402 Clendon Road
University Heights
Cleveland, Ohio

Dear Jerry:

I am returning herewith scripts for "dailies", the first week
of which arrived in art form today. In the future, may I say
again, will you please get the scripts to us far enough in advance so that we can do our editorializing before the artists
go to work.

The artwork on both "dailies" and "Sundays" was again quite
bad, along the same lines as my recent complaints to Joe. It
was necessary, for me to spend the entire day, with my mediocre
talents, trying to shorten a number of ape-like arms, and to
remove extremely curly forelocks from Superman's forehead, and
to de-sex Lois. All I can say is that I would like to know if
you and Joe are satisfied yourselves with the quality of the
artwork which you are sending us.

The magazine releases are even worse than anything I have to
say about the syndicate stuff. Even the 28-page release which
you took back with you for corrections still seems pretty bad.

We are sending back the two ACTION COMICS covers as they are
not at all suitable either from a standpoint of idea or execution. In the future, as we have requested in the past, please
let us see sketches before doing covers.

As for continuity, don't have any artwork done on that new 28-
pager. I am still wading through it, but have thus far found
nothing which would indicate that it deserves that many pages.

All in all, Jack Liebowitz and I are both very much disappointed
with the artwork, and we both feel that something drastic is
soon going to have to be done. It is possible that we may come

out either this week or next, if press of business allows.

In spite of all this, best regards.          Whitney Ellsworth

DCC00045486
ER 1902

# EXHIBIT M

Feb. 19, 1941

Dear Jerry:-

We have just received a magazine release and a bunch
of dailies. Murray and I have gone over the magazine stuff, and we
find that a great deal hasn't been done to make Lois look better.
The roly-poly hair-do is still the same way we complained about.
And why it is necessary to shade Lois' breasts and the underside of
her tummy with vertical pen-lines we can't understand. She looks
pregnant. Murray suggests that you arrange for her to have an abortion
on the baby and get it over with so that her figure can return to
something a little more like the tasty dish she is supposed to be.
She is much too stocky and much, much too unpleasantly sexy. Please
call it to the attention of Joe and his lads that the better artists
in this field draw their heroines more or less by a certain formula
that makes them look desirable and cute. This they do by having the
hair prettily done instead of making it look like a rat's nest. On
top of this they make the face pretty——and they try to draw it the
same way every time. Then by drawing the shoulders wider than the hips
they give the gal a lissome quality that is absent when the accent is
on hips. Also, the waistline is drawn higher than it would be in real
life, and the legs are longer and slimmer. There is usually no attempt
to prove pictorially that the female tummy has a certain roundness if
not confined within a girdle, nor that bosoms cast terrific shadows by
virtue of their outstanding quality. While the dames in SMILIN' JACK
may be very tasty and exciting, I certainly do not approve of them for
exploitation in publications like ours. You know as well as I do
what sort of censure we are always up against, and how careful we must
be.

Now, I make no pretensions about being an artist, but I'm
a halfway critic (as you may agree). Herewith, then, is roughly my
idea of what proportions should maintain in drawing a heroine. What
I'd like to see is Lois drawn merely as the nice, capable gal we know
her to be really.

Whit



YOU USED TO HAVE 'N
HER MORE OR LESS 'N
THIS MANNOR —SLIM
AND SLEEK

SEE NEXT S

000002182

- 24 -

ER 1904

## PART 2

Since writing the first page of this, Mr. Jack Liebowitz has seen the
artwork in question, and is extremely dissatisfied with Lois. He says
that in addition to making Lois look like a witch, you have apparently
dressed her out of a Montgomery Ward catalogue. He suggests Vogue,
Vanity Fair and Harper's Bazaar as likelier spots for dress-research.

This latest release has gone back to you by air express. We have not
marked it up, for it should be obvious that Lois needs attention in
practically every case.

You or Joe—— If not both of you, should realize just as readily as we
do that the gal ain't being done right by, and that she should be.
I'd suggest, where paste-overs are resorted to, that the artists use
bond paper rather than bristol board, for the bristol casts shadows
at the edges. Even if the drawings seem to show through the bond paper,
they will not photograph.

regards,

000002183

# EXHIBIT N



**PLAZA 3-0740**

**480 LEXINGTON AVE.
NEW YORK, N.Y.**

November 12, 1942
One day closer to Victory

Mr.Jerry Siegel
2402 Glendon Road
University Heights
Cleveland, Ohio

Dear Jerry:

Under separate cover we are returning samples of art work
which you sent to us. I would say that the man whose samples are
marked "A" is about the only one who might work out for you — and
then only if you supervise him carefully. The man whose work is marked
"F" seems to pencil pretty well, but his ink technique is bad indeed.
If you needed only pencilling, he _might_ be O.K.

I have today hired Winsor McCay, Jr., whose work you will
probably remember as following in his pappy's footsteps with Little Nemo.
Strangely enough, his straight illustrative stuff is quite good and it
even looks a little bit as though he might work out on Superman. We are
going to start him off here for a while and see how he works out, after
which we might be able to make arrangements to lend-lease him to you.

I also have in mind having Citron and Komisarow do Superman
releases complete from your scripts. They are the boys who are doing
Robotman and all the ghosting on Leading Comics. I think they can handle
Superman. You, of course, would have to supply the scripts and be paid
for them on the same basis as you are now working with Joe, and Joe would
be given whatever differential existed between what he would normally get
and what we would have to pay Citron and Komisarow. This would enable us,
if we decide to do it, to get a little back log of Superman releases,
which I am sure would be a comfortable feeling for all concerned.

Will you please let me know your reactions to all of this?

Very best regards to all.

Sincerely,

SUPERMAN, INC.

F.W.Ellsworth

FWE/bmk

DCC00045511
ER 1907

# EXHIBIT O

ER 1908



PLAZA 3-0740



480 LEXINGTON AVE.
NEW YORK, N.Y.

Saturday, Feb. 21

Dear Jerry:-

    A set of dailies arrived this morning.
If there were sufficient time, I'd certainly
return them to you for more work; as it is,
I shall simply have to have one of the artists
here try to do some work on them before we send
them to the syndicate. I'm particularly upset,
because I wrote you about the same troubles
after receiving the last set. It seems imposs-
ible that you look them over before sending.
them out; either that, or you are very com-
placent about the guy you invented. SUPERMAN
looks like a different person in almost every
picture, and worse in each. Even if such details
as bad hands, bad figures and bad action are
passed over lightly, we just can't get away from
the fact that SUPERMAN's face is incredibly bad
in more than fifty percent of its renditions.
I have written you repeatedly about the manner
in which his jock strap is drawn, and absolutely
nothing is ever done about it. I have no com-
plaint about the backgrounds, which are very well
handled, but perhaps more attention is paid to
backgrounds than to the figure work. All in
all, the sad truth is that after all these
years, SUPERMAN is not outstandingly well
drawn either in the magazins or in the syndi-
cate stuff. Very discouraging it is, too.
And it is getting to the point where I feel
that if at least the syndicate material doesn't
show a marked improvement, we shall have to
consider it "unacceptable", and make other
arrangements to have it done.

    Incidentally, I note too that some of
the editorial changes in the dailies are not
being made.

    Altogether, the situation is serious
enough to warrant your doing some real worrying.

- 27 -

DCC00045503
ER 1909

# EXHIBIT P

February 3, 1947

Mr. Jerome Siegel
2402 Glendon Road
University Heights
Ohio

Dear Mr. Siegel:

My reason for not answering your letter of January 23 sooner
is that I wanted to take time to deliberate. When I received that
letter I was, frankly, extremely annoyed at its tone and the insulting
manner in which it was written. I was going to answer immediately,
but on second thought decided to wait until the first impact had
subsided, so that I might write you fully and coolly. However, your
almost daily letters after that were apparently designed to keep me
as annoyed as possible, for they continued in the same vein. Also,
your sarcastic remarks about me in letters to Whit Ellsworth were
certainly not designed to placate me.

I would like to go on record at this time as resenting the
tone and content of your recent letters. I have tried to be reason-
able in the face of your unreasonableness, only to be bombarded with
sarcasm and insults. When you returned from the army, I realized that
it might take you some time to readjust, and I was considerate of the
situation. I had several talks with you, welcomed you back sincerely,
and we talked about renewal of your contract at expiration. I express-
ed the wish that we might have a lifelong association. We seemed to be
in complete agreement and harmony, but after your return to your home
your letters began to indicate a change of heart.

You complained about editorial supervision, and about Weisinger
and Schiff. With a desire to be as cooperative as possible, and want-
ing you to be content, we then assigned Boltinoff to work with you.
However, as soon as Boltinoff had occasion to criticize any of your
synopses, you didn't like him. You had earlier abandoned a policy of
sitting down for story conferences with the editorial staff---a policy
which paid off in acceptances and a well-balanced production. You
state in one letter that our editors "can help immeasurably by conced-
ing that I know more about Superman than they do, and stop rejecting
my output wholesale." You seem to forget that these men are able edi-
tors, that their interest is in turning out well-balanced magazines that
will sell, and that they have been able to do it with a long list of
magazines---even including many issues of SUPERMAN and ACTION COMICS
with which you had nothing whatever to do. In this connection it might
also be pointed out that you were paid for material which you did not
write while you were in the army (a situation, incidentally, which still
maintains to this day), and you were gratuitously sent a check in the
amount of $5000.00 at the end of 1945---a check which you did not see
fit to acknowledge, though you did deposit it.

DCC00045640
ER 1911

-28-

Jerome Siegel-2

Magazine sales have increased. The fact that the syndicate income on Superman has fallen while you were not writing it may not be due entirely or even in part to poor script, but to any one of several other factors: (1) The syndicate business during the war was at a standstill. (2) Shortage of newsprint and consequent curtailment of space caused cancellation of many features, including comics. (3) The McClure Syndicate did no selling during the war. In fact, due to internal conditions in the syndicate, there has been little sales effort for several years.

In your letter of January 27, you state that you are apprehensive about our being connected with your FUNNYMAN feature, and you quote our record of what you call "flops." The fact that Batman and Wonder Woman did not prosper as newspaper features does not detract from their value to us. So far as I am concerned, they are as valuable any day as Superman, and far less trouble to handle. You might also be reminded at this time that National Comics derives no income whatever from the syndicated Superman strip, all such income going to you and Shuster; as a matter of fact, we absorb editorial overhead, and pay cash for lettering and coloring on the feature.

I never indicated that we would take your Funnyman feature, but as long as your ego tells you that anything you do must be a preordained success, I would be interested, just for the record, in having you name one feature—other than Superman—out of the numerous ones you've developed, which has enjoyed even a moderate success.

My manner of handling the acceptance or rejection of Funnyman was dictated by your insistence on a formal letter addressed to you and Shuster. Actually, it came as something of a surprise to me to learn that Shuster was connected with the project in any way, since you had told me in an earlier conversation that he had nothing to do with it. It seems to me that it would have been much better to have handled the matter in an open and above-board manner—even if that involved telling me, if such was your desire, that you'd prefer to take the feature elsewhere. It may be that you have no desire to continue your relationship with us beyond the term of your present contract; your letter of January 25 might easily be construed as meaning just that. In any case, I'd appreciate a statement from you in plain English as to just what that letter did mean. I have neither the time nor the desire to indulge in whimsy or guessing games.

A postscript to your letter of January 23 says: "Why do you want to legally consider FUNNYMAN? Why not brazenly TAKE it, as you did SUPERBOY?" This is a very serious attitude for you to take, not to say an insulting and possibly libelous one. Superboy is merely an extension of the basic Superman theme, and deals with the same character at an earlier age, a period between the time when the infant from Krypton arrived on Earth and the time when he had grown to man's estate. The powers and costume and physical attributes of Superboy are identical with those of Superman because Superboy is Superman, which, by the terms of our contract with you and Shuster, is the property of National Comics Publications, Inc. Likewise any other character, major or minor, appearing in the Superman feature is the property of National Comics.

Your burning desire to take on additional writing chores seems somewhat incompatible with the fact that you have supplied us with only approximately one-third the number of Superman scripts necessary to take

DCC00045641
ER 1912

Jerome Siegel-3

care of our regular production needs. Is this perhaps because, although we had to purchase two-thirds of our requirements from other writers, you were paid a considerable sum for scripts which you did not write?

I am enclosing our check in the amount of $1534.78, along with a statement, representing your half of the 5% due you and Shuster on Superman radio and licensing profits for the year 1946. This check brings your earnings for 1946 to $25,465.07.

As to the matter of a bonus: your attitude does not give me any great feeling of compulsion to make such gifts a matter of policy. Therefore I am leaving the matter open until such time as Mr. Donenfeld returns to New York, which should be at the end of February. I will then discuss this and other matters pertaining to you with him.

In the meantime I would appreciate your writing to me only on matters of business, and in a businesslike way.

Yours very truly,

J.S. Liebowitz
Vice President

JSL/fw

ER 1913 DCC00045642

# EXHIBIT Q

Payments made to plaintiffs SIEGEL
and SHUSTER from 1937 up to insti-
tution of this action in March 1947,
by DETECTIVE COMICS, INC., SUPERMAN,
INC. and NATIONAL COMICS PUBLICATIONS,
INC.

| | Magazine Publication | Newspaper Syndication | Outside Exploitation | Total |
|---|---|---|---|---|
| 1937 | $ 612.00 | $ | $ | $ 612.00 |
| 1938 | 4,530.00 | | | 4,530.00 |
| 1939 | 7,442.28 | 1,169.93 | | 8,612.21 |
| 1940 | 16,826.80 | 21,253.62 | | 38,080.42 |
| 1941 | 24,151.00 | 31,922.48 | 500.00 | 56,573.48 |
| 1942 | 21,391.00 | 35,385.46 | 7,000.00 | 63,776.46 |
| 1943 | 23,670.00 | 31,819.90 | 6,000.00 | 61,489.90 |
| 1944 | 19,372.00 | 32,266.52 | 6,000.00 | 57,638.52 |
| 1945 | 16,280.00 | 22,514.46 | 10,000.00 | 48,794.46 |
| 1946 | 26,022.00 | 23,916.58 | | 49,938.58 |
| 1947 (up to March when this action was instituted) | 2,330.00 | 5,749.26 | 3,069.56 | 11,148.82 |
| | $162,627.08 | $205,998.21 | $32,569.56 | $401,194.85 |

-31-

DCC00046025
ER 1915

# EXHIBIT R

CONFIDENTIAL

Page 3

# Certificate of Registration of a Claim to Renewal Copyright

FORM R

REGISTRATION NO.

R 371934

DO NOT WRITE HERE

This Is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Abraham L. Kaminstein*

Register of Copyrights
United States of America



**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

(a) Name ... NATIONAL PERIODICAL PUBLICATIONS, INC.

Address ... 575 Lexington Avenue, New York, New York 10022

Claiming as ... Proprietor of copyright in a work made for hire

(b) Name ..................................................................

Address ..................................................................

Claiming as ..................................................................

(c) Name ..................................................................

Address ..................................................................

Claiming as ..................................................................

**2. (a) Title:**

"SUPERMAN" a comic strip constituting front cover and pages 1-13 inclusive in body of ACTION COMICS — Vol. 1, No. 7, December 1938 issue.

(b) Renewable Matter:

..................................................................

(c) Contribution to Periodical or Other Composite Work: ..................................................................

..................................................................
(Title of periodical or composite work)

If a periodical, give: Vol. ..................; No. ..................; Date ..................

**3. Authors of Renewable Matter:**

..................................................................

..................................................................

**4. Facts of Original Registration:**

Original registration number: Class ... B ...; No. ... 399,214 ...

If registered as published, give date of publication ... October 25, 1938 ...

If registered as unpublished, give date of registration ..................................................................

Original copyright claimant ... DETECTIVE COMICS, INC.

*Complete all applicable spaces on next page*

EXAMINER

WB008005

ER 1917

CONFIDENTIAL

Detective Comics Inc.,
New York, N.Y.

Title of periodical: National Comics

Baltimore

EXHIBIT

U. S. Dist. Court
S. D. of N. Y.

APR 6 1939

vol. 1:7 , no. 7 , Dec. , 1935 .

Published on Oct. 2nd , 1935. Copies received Oct. __ __ ; 1935 .

Entry; Class B, No. _____

[SEAL]

C. L. Bouvé
Register of Copyrights.

U. S. GOVERNMENT PRINTING OFFICE

WB008006

ER 1918

-33-

Page 3

# Certificate of Registration of a Claim to Renewal Copyright

**FORM R**

REGISTRATION NO.

**R  388937**

DO NOT WRITE HERE

This Is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office.   In witness whereof the seal of the Copyright Office is hereto affixed.



*Register of Copyrights*
*United States of America*

1.  **Renewal Claimant(s), Address(es), and Statement of Claim:**

    (a) Name ....... NATIONAL PERIODICAL PUBLICATIONS, INC.

    Address ...... 575 Lexington Avenue, New York, New York 10022

    Claiming as .. Proprietor of   copyright in a work made for hire

    (b) Name ...............................................................................

    Address ...............................................................................

    Claiming as ...........................................................................

    (c) Name ...............................................................................

    Address ...............................................................................

    Claiming as ...........................................................................

2.  **(a) Title:**

    **SUPERMAN**

    **(b) Renewable Matter:**

    **(c) Contribution to Periodical or Other Composite Work:**

    *(Title of periodical or composite work)*

    If a periodical, give: Vol. ...............; No. ...............; Issue ...............; Date ...............

3.  **Authors of Renewable Matter:**

    Jerome Siegel and Joe Schuster also known as Joe

    Shuster, as employees of a work made for hire

4.  **Facts of Original Registration:**

    Original registration number: Class ....... AA .......; No. 299,871

    If registered as published, give date of publication ....... May 18, 1939

    If registered as unpublished, give date of registration .......

    [EXAMINER]

DCC00141238

ER 1919

**5. Deposit account:**

**6. Send correspondence to:**

Name **WILLIAM K. FRIEDMAN** Addr **31 E. 44th St., New York, N.Y. 10017**

**7. Send certificate to:**

(Type or
print Name **WILLIAM K. FRIEDMAN**
name and
address) Address **31 East 44th Street**
(Number and street)

**New York** **New York** **10017**
(City) (State) (ZIP code)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

**When to renew.** The original term of copyright applies.... 1940) would be eligible for renewal between June 15, 1967, work lasts for 28 years from the date of publication, in the case and June 14, 1968.
of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

**Caution:** Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

## How to register your claim

**Procedure to follow.** Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

## Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only* in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* ..................... *and/or the child* (Name of author)

(children) *of the deceased author* ...........................
(Name of author)

3. The author's executor(s), if the author left a will and

if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author* .................................... (Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author* .................................... *there being no will.*
(Name of author)

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

*a corporate body otherwise than as assignee or licensee of the individual author.* (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| Application received | |
| JUL -1 1966 | |
| Fee received | |
| $4.00 | |
| 102735 - Jun. 1. '66 | |

DCC00141239

**ER 1920**

Detective Comics Inc.
New York, N.Y.

Title of book: Superman.

By Jerome Siegel and
Joe Schuster.

Author's of the United States.

Date of publication May 18, 1939. Affidavit received June 3, 1939

Copies received May 25, 1939 Entry: Class AA, No. 2-99871

[SEAL]

C. L. Bouvé

*Register of Copyrights.*

U. S. GOVERNMENT PRINTING OFFICE: 1933

DCC00141240

ER 1921

**5. Deposit account:**

...........................................................................................................

**6. Send correspondence to:**

Name ............WILLIAM K. FRIEDMAN............ Address 11 E. 44th St., New York, N.Y. 10017

**7. Send certificate to:**

```
(Type or
print    Name ................WILLIAM K. FRIEDMAN................
name and
address) Address ................11 East 44th Street................
                                (Number and street)
         ........New York........ ........New York........ ....10017....
                 (City)              (State)              (ZIP Code)
```

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### Time limits

*When to renew.* The original term of copyright in a published work lasts for 28 years from the date of publication; in the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

1942 would be eligible for renewal between June 15, 1969, and June 15, 1970.

*Caution:* Unless a valid renewal claim and fee are *received* in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C. 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

### Who may claim renewal

Except in the case of four specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only in the cases listed in Paragraph B, below.*

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* ........................ *and/or the child* (Name of author)

   *(children) of the deceased author* ........................ (Name of author)

5. The author's executor(s), if the author left a will and

if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author* ........................ (Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author* ........................ *there being no will.* (Name of author)

B. In the case of the following four types of works, the owner (proprietor at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the

claim as: *proprietor of copyright in a work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author.* (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| Application received | |
| Fee received | |
| 78000 MAR 16 '70 | |

DCC00141241

ER 1922

*Detective Comics Inc.*

*New York, N.Y.*

Title of book: *Superman*

*By Jerome Siegel and*

*Joe Schuster.*

Author(s) of the United States.

Date of publication May 18, 1939. Affidavit received June 3, 1939

Copies received May 25, 1939 Entry: Class AA, No. 2-99874

[SEAL.]

*C. L. Bouvé*
Register of Copyrights.

U. S. GOVERNMENT PRINTING OFFICE 1939

LIBRARY OF CONGRESS

COPYRIGHT OFFICE OF THE UNITED STATES OF AMERICA

WASHINGTON

AA

CERTIFICATE OF COPYRIGHT REGISTRATION

**This is to certify,** in conformity with section 55 of the Act to Amend and Consolidate the Acts respecting Copyright approved March 4, 1909, as amended by the Act approved March 2, 1913, that TWO copies of the BOOK named herein have been deposited in this Office under the provisions of the Act of 1909, together with the AFFIDAVIT prescribed in section 16 thereof; and that registration of a claim to copyright for the first term of 28 years from the date of publication of said book has been duly made in the name of

[OVER]

DCC00141242

ER 1923

Page 3

## Certificate of Registration of a Claim to Renewal Copyright



**FORM R**

REGISTRATION NO.

R 381954

DO NOT WRITE HERE

This is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Abraham L. Kaminstein*

Register of Copyrights
United States of America

1. **Renewal Claimant(s), Address(es), and Statement of Claim:**

    (a) Name ..... NATIONAL PERIODICAL PUBLICATIONS, INC.

    Address ..... 575 Lexington Avenue, New York, New York 10022

    Claiming as ..... Proprietor of copyright in a work made for hire

    (b) Name .....

    Address .....

    Claiming as .....

    (c) Name .....

    Address .....

    Claiming as .....

2. (a) **Title:**

    ..... SUPERMAN

    (b) **Renewable Matter:**

    (c) **Contribution to Periodical or Other Composite Work:**

    THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin
    (Title of periodical or composite work)

    If a periodical, give: Vol. .....; No. .....; Issue .....; Date ..... January 16, 1939

3. **Authors of Renewable Matter:**

    Jerry Siegel and Joe Shuster, as employees of a work

    made for hire

4. **Facts of Original Registration:**

    Original registration number: Class ..... K5 .....; No. 55490

    If registered as published, give date of publication ..... January 16, 1939

    If registered as unpublished, give date of registration .....

    Original copyright claimant ..... McCLURE NEWSPAPER SYNDICATE

    Complete all applicable spaces on next page

    EXAMINER

DCC00141263

ER 1924

−39−

**5. Deposit account:**

**6. Send correspondence to:**

Name  **WILLIAM K. FRIEDMAN**  Address **11 E. 44th St., New York, N.Y.** 10017

**7. Send certificate to:**

(Type or print name and address)

Name  **WILLIAM K. FRIEDMAN**

Address  **11 East 44th Street**

(Number and street)

**New York**     **New York**     **10017**

(City)          (State)          (ZIP code)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### NATIONAL PERIODICAL PUBLICATIONS, INC.

*When to renew.* The original term of copyright in a published work lasts for 28 years from the date of publication; in the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration. In the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15, 1940, would be eligible for renewal between June 15, 1967, and June 15, 1968.

*Caution:* Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only* in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* .................... *and/or the child*

   (children) *of the deceased author* ....................
   (Name of author)

3. The author's executor(s), if the author left a will and

there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author* ....................
(Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author* ....................
(Name of author) *there being no will.*

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

a corporate body otherwise than as assignee or licensee of the individual author. (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office before July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

**For copyright office use only**

Application received:

FEB 21 1966

MAR 2 1966

Fee received

$4.00

69090 FEB 21 '66

Page 4

DCC00141264

Page 3

## Certificate of Registration of a Claim to Renewal Copyright



**FORM R**

REGISTRATION NO.

R 385829

DO NOT WRITE HERE

This Is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Abraham L. Kaminstein*

Register of Copyrights
United States of America

**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

(a) Name .... NATIONAL PERIODICAL PUBLICATIONS, ICN.

Address .. 575 Lexington Avenue, New York, New York 10022

Claiming as .. Proprietor of copyright in a work made for hire

(b) Name ....................................................................

Address ....................................................................

Claiming as ....................................................................

(c) Name ....................................................................

Address ....................................................................

Claiming as ....................................................................

**2. (a) Title:**

.... SUPERMAN

(b) Renewable Matter:

....................................................................

(c) Contribution to Periodical or Other Composite Work:

.... THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin, page 4
(Title of periodical or composite work) U.S.

If a periodical, give: Vol. ................; No. ................; Issue ................; Date January 17, 1939

**3. Authors of Renewable Matter:**

.... Jerry Siegel and Joe Shuster, as employees of a work made for hire

**4. Facts of Original Registration:**

Original registration number: Class ........ K5 ........; No. 55891

If registered as published, give date of publication ........ January 17, 1939

If registered as unpublished, give date of registration ....................................................................

Original copyright claimant .. McClure Newspaper Syndicate.

EXAMINER

Complete all applicable spaces on next page

DCC00141265

-41-

ER 1926

**5. Deposit account:**

**6. Send correspondence to:**

Name ..**WILLIAM K. FRIEDMAN**............. Addre..**1 E. 44th St., New York, N.Y. 10017**

**7. Send certificate to:**

(Type or print name and address)

Name **WILLIAM K. FRIEDMAN**

Address **11 East 44th Street**
(Number and street)

**New York**          **New York**          **10017**
(City)                    (State)                  (ZIP code)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### Time limits

*When to renew.* The original term of copyright lasts for 28 years from the date of publication in the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if it is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15, between June 15, 1967, and June 15, 1968.

*Caution:* Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only* in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* ..................... *and/or the child* (Name of author)

   *(children) of the deceased author* ........................ (Name of author)

3. The author's executor(s), if the author left a will and

if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author* ........................ (Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author* ........................ *there being no will.* (Name of author)

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyrights in a work copyrighted by*

a corporate body otherwise than as assignee or licensee of the individual author. (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

| FOR COPYRIGHT OFFICE USE ONLY |
|---|
| Application received |
| MAY 10 1966 |
| Fee received |
| $4.00   Dep. Acct. - Sundry O'pd. |

U.S. GOVERNMENT PRINTING OFFICE, 1965—O—781-512          (Dec. 1964—30,000)          **Page 4**

DCC00141266

Page 3

## Certificate of Registration of a Claim to Renewal Copyright

**FORM R**

REGISTRATION NO.

R 385828

DO NOT WRITE HERE

This is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Abraham L. Kaminstein*

Register of Copyrights
United States of America



**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

(a) Name ............ **NATIONAL PERIODICAL PUBLICATIONS, INC.** ..............

Address ......... **575 Lexington Avenue, New York, N. Y. 10022** ....................

Claiming as ... **Proprietor of copyright in a work made for hire** ................

(b) Name ...................................................................................................

Address ...................................................................................................

Claiming as ...............................................................................................

(c) Name ...................................................................................................

Address ...................................................................................................

Claiming as ...............................................................................................

**2. (a) Title:**

.......................... **SUPERMAN** ........................................................................

(b) Renewable Matter:

...............................................................................................................

(c) Contribution to Periodical or Other Composite Work:

.......................... **THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin, pg.4,**
(Title of periodical or composite work)                                    **G.8.**

If a periodical, give: Vol. ...............; No. ...............; Issue ...............; Date **January 18, 1939** .......

**3. Authors of Renewable Matter:**

.......................... **Jerry Siegel and Joe Shuster, as employees of a work**

.......... **made for hire** ................................................................................

**4. Facts of Original Registration:**

Original registration number: Class ...... **KK** ..............; No. **55498** ..............

If registered as published, give date of publication ................. **January 18, 1939** .............

If registered as unpublished, give date of registration .................................................

Original copyright claimant ... **MCCLURE NEWSPAPER SYNDICATE** .............

EXAMINER

*Complete all applicable spaces on next page*

DCC00141267

43 -

**5. Deposit account:**

**6. Send correspondence to:**

Name ...**WILLIAM K. FRIEDMAN**................... Add.**11 E. 44th St., New York, N.Y. 10017**

**7. Send certificate to:**

(Type or print name and address)

> Name ... **WILLIAM K. FRIEDMAN**
>
> Address ... **11 East 44th Street**
> _(Number and street)_
>
> **New York** .......... **New York** .......... **10017**
> _(City)_ _(State)_ _(ZIP code)_

## Information concerning renewal copyright

Two *important* points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### Time limits

*When to renew.* The original term of copyright **NATIONAL PERIODICAL PUBLICATIONS, INC.** would be eligible for renewal between June 15, 1967, work lasts for 28 years from the date of publication, in the case and June 15, 1968 *periodical publications Cal.* of a work originally registered in unpublished form, the copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

*Caution:* Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C. 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of the statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only* in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* ......................... *and/or the child* ......................... *(Name of author)*

   *(children) of the deceased author* ......................... *(Name of author)*

3. The author's executor(s), if the author left a will and

   if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author* ......................... *(Name of author)*

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author* ......................... *(Name of author)* ......................... *there being no will.*

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

a corporate body otherwise than as assignee or licensee of the individual author. (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

---

**FOR COPYRIGHT OFFICE USE ONLY**

Application received

**MAY 10 1966**

Fee received

**$4.00** Dep. Acct. - Sundry D'pd.

U.S. GOVERNMENT PRINTING OFFICE: 1965—O-781-941 (Doc. 1965—80/901) **Page 4**

DCC00141268

Page 3

# Certificate of Registration of a Claim to Renewal Copyright



**FORM R**

REGISTRATION NO.

**R 385827**

DO NOT WRITE HERE

This is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Abraham L. Kaminstein*

Register of Copyrights
United States of America

1. **Renewal Claimant(s), Address(es), and Statement of Claim:**

   (a) Name ...... **NATIONAL PERIODICAL PUBLICATIONS, INC.**

   Address ...... **575 Lexington Avenue, New York, N. Y. 10022**

   Claiming as ...... **Proprietor of copyright in a work made for hire**

   (b) Name ......

   Address ......

   Claiming as ......

   (c) Name ......

   Address ......

   Claiming as ......

2. (a) **Title:**

   ...... **SUPERMAN** ......

   (b) **Renewable Matter:**

   (c) **Contribution to Periodical or Other Composite Work:**

   ...... **THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin, pg. 4**
   (Title of periodical or composite work)

   If a periodical, give: Vol. ......; No. ......; Issue ......; Date **January 19, 1939**.

3. **Author(s) of Renewable Matter:**

   ...... **Jerry Siegel and Joe Shuster, as employees of a work**

   **made for hire**

4. **Facts of Original Registration:**

   Original registration number: Class ...... **KK** ......; No. ...... **55493**

   If registered as published, give date of publication ...... **January 19, 1939**

   If registered as unpublished, give date of registration ......

   Original copyright claimant ...... **McCLURE NEWSPAPER SYNDICATE**

   EXAMINER

   Complete all applicable spaces on next page

DCC00141269

**ER 1930**

5. Deposit account

6. Send correspondence to:

Name ...... WILLIAM K. FRIEDMAN ...... Address E. 44th St., New York, N.Y. 10017

7. Send certificate to:

(Type or
print      Name     WILLIAM K. FRIEDMAN
name and
address)   Address  11 East 44th Street
                              (Number and street)

           New York            New York            10017
              (City)             (State)           (ZIP code)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### Time limits

*When to renew.* The original term of copyright lasts for 28 years from the date of publication (in the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the *last (28th) year of the original copyright term.* For example, a work copyrighted on June 15,

*Caution:* Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal only in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* ...... *and/or the child*
   (Name of author)

   *(children) of the deceased author* ......
                              (Name of author)

3. The author's executor(s), if the author left a will and

if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author*
                              (Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author*
                              (Name of author)
...... *there being no will.*

B. In the case of the following types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

*a corporate body otherwise than as assignee or licensee of the individual author.* (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

Application received

MAY 10 1968

Fee received

$4.00

DCC00141270

Page 3

# Certificate of Registration of a Claim to Renewal Copyright



**FORM R**

REGISTRATION NO.

R   385826

DO NOT WRITE HERE

This Is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office.   In witness whereof the seal of the Copyright Office is hereto affixed.

*Abraham L. Kaminstein*

Register of Copyrights
United States of America

**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

  (a) Name ...... NATIONAL PERIODICAL PUBLICATIONS, INC.

    Address ...... 575 Lexington Avenue, New York, N. Y. 10022

    Claiming as Proprietor of copyright in a work made for hire

  (b) Name ......

    Address ......

    Claiming as ......

  (c) Name ......

    Address ......

    Claiming as ......

**2. (a) Title:**

...... SUPERMAN

  **(b) Renewable Matter:**

  **(c) Contribution to Periodical or Other Composite Work:**

...... THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin, pgs. 4,6,8.
(Title of periodical or composite work)

If a periodical, give Vol. ......; No. ......; Issue ......; Date January 20, 1959

**3. Authors of Renewable Matter:**

...... Jerry Siegel and Joe Shuster, as employees of a work
...... made for hire

**4. Facts of Original Registration:**

Original registration number: Class ...K5...; No. ...55494...

If registered as published, give date of publication ...... January 20, 1959

If registered as unpublished, give date of registration ......

Original copyright claimant ...... McCLURE NEWSPAPER SYNDICATE

EXAMINER

Complete all applicable spaces on next page

DCC0041271

ER 1932

**5. Deposit account:**

**6. Send correspondence to:**

Name ....WILLIAM K. FRIEDMAN.................... Address: 11 East 44th St., New York, N.Y. 10017

**7. Send certificate to:**

(Type or
print
name and
address)

Name WILLIAM K. FRIEDMAN

Address 11 East 44th Street
(Number and street)

New York            New York            10017
(City)                  (State)                 (ZIP code)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### Time limits

*When to renew.* The original term of copyright for a published work lasts for 28 years from the date of publication. In the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

*Caution.* Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal only in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow, (widower) of the author* ................ and/or *the child* (children) of the deceased author ......................
(Name of author)

3. The author's executor(s), if the author left a will and if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author* .............
(Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author* ....................... *there being no will.*
(Name of author)

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

a corporate body otherwise than as assignee or licensee of the individual author. (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

---

Application received

MAY 10 1966

Fee received

$4.00   Dep. Acct. - Subsidy O'pd.

---

DCC00141272

-48-

Page 3

## Certificate of Registration of a Claim to Renewal Copyright

**FORM R**

REGISTRATION NO.

**R 385825**

DO NOT WRITE HERE

This Is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Abraham L. Kaminstein*

Register of Copyrights
United States of America



1. **Renewal Claimant(s), Address(es), and Statement of Claim:**

    (a) Name ....NATIONAL PERIODICAL PUBLICATIONS, INC.....

    Address ...575 Lexington Avenue, New York, N. Y. 10022...

    Claiming as ...Proprietor of copyright in a work made for hire...

    (b) Name ....................................................................

    Address ....................................................................

    Claiming as ....................................................................

    (c) Name ....................................................................

    Address ....................................................................

    Claiming as ....................................................................

2. (a) **Title:**

    ....SUPERMAN....

    (b) **Renewable Matter:**

    ....................................................................

    (c) **Contribution to Periodical or Other Composite Work:**

    ....THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin, pg. 4, 0. S.
    (Title of periodical or composite work)

    If a periodical, give: Vol. ....................; No. ....................; Issue ....................; Date ...January 21, 1939...

3. **Authors of Renewable Matter:**

    ....Jerry Siegel and Joe Shuster, as employees of a work
    made for hire....

4. **Facts of Original Registration:**

    Original registration number: Class ....XX....; No. ...55495....

    If registered as published, give date of publication ...January 21, 1939...

    If registered as unpublished, give date of registration ....................................................................

    Original copyright claimant ...McCLURE NEWSPAPER SYNDICATE...

    **EXAMINER**

    Complete all applicable spaces on next page

DCC00141273

5. **Deposit account:**

6. **Send correspondence to:**

Name ........ WILLIAM F. FRIEDMAN ........ Address .... E. 44th St., New York, N.Y. 10017

7. **Send certificate to:**

(Type or
print
name and
address)

Name ........ WILLIAM F. FRIEDMAN ........

Address .... 11 East 44th Street ........
(Number and street)

New York ........ New York ........ 10017
(City) (State) (ZIP code)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

*When to renew.* The original term of copyright lasts for 28 years from the date of first publication, or, in the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if it is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

*Caution:* Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

## How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

## Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only* in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* ............ *and/or the child*
(Name of author)

(children) of the deceased author ............
(Name of author)

3. The author's executor(s), if the author left a will and

   If there is no surviving widow, widower, or child.
   State the claim as: *the executor(s) of the author*
   ............
   (Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author* ............ *there being no will.*
(Name of author)

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

a corporate body otherwise than as assignee or licensee of the individual author. (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

| Application received | FOR COPYRIGHT OFFICE USE ONLY |
|---|---|
| MAY 10 1966 | |
| Fee received | |
| $4.00 Fee Acct. Sundry O'pd | |

U.S. GOVERNMENT PRINTING OFFICE

Page 4

DCC00141274

— 50 —

Page 3

# Certificate of Registration of a Claim to Renewal Copyright

**FORM R**

REGISTRATION NO.

R 387104

DO NOT WRITE HERE

**This Is To Certify** that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Register of Copyrights*
*United States of America*

**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

(a) Name __NATIONAL PERIODICAL PUBLICATIONS, INC.__

Address __575 Lexington Avenue, New York, New York 10022__

Claiming as __Proprietor of copyright in a work made for hire__

(b) Name ................................................................

Address ................................................................

Claiming as ................................................................

(c) Name ................................................................

Address ................................................................

Claiming as ................................................................

**2. (a) Title:**

__SUPERMAN__

**(b) Renewable Matter:**

**(c) Contribution to Periodical or Other Composite Work:**

__THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin, pg#4, C.S.__
(Title of periodical or composite work)

If a periodical, give: Vol. ................; No. ................; Issue ................; Date __January 24, 1939__

**3. Authors of Renewable Matter:**

__Jerry Siegel and Joe Shuster, as employees of a work__

__made for hire__

**4. Facts of Original Registration:**

Original registration number: Class __K5__; No. __55497__

If registered as published, give date of publication __January 24, 1939__

If registered as unpublished, give date of registration ................................................................

Original copyright claimant __MCCLURE NEWSPAPER SYNDICATE__

EXAMINER

*Complete all applicable spaces on next page*

DCC00141275

51

**5. Deposit account:**

**6. Send correspondence to:**

Name....WILLIAM K. FRIEDMAN............ Add11 E. 44th St., New York, N.Y. 10017

**7. Send certificate to:**

<table>
<tr><td>(Type or<br>print<br>name and<br>address)</td><td>Name</td><td colspan="3">WILLIAM K. FRIEDMAN</td></tr>
<tr><td></td><td>Address</td><td colspan="3">11 East 44th Street<br>(Number and street)</td></tr>
<tr><td></td><td></td><td>New York<br>(City)</td><td>New York<br>(State)</td><td>10017<br>(ZIP code)</td></tr>
</table>

### Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

*When to renew.* The original term of copyright in a published work lasts for 28 years from the date of publication. If the work was originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

NATIONAL HISTORICAL PUBLICATIONS, INC 1940, would be eligible for renewal between June 15, 1967, and June 15, 1968.

*Caution:* Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only* in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* ....................... *and/or the child* ........................
   (Name of author)
   *(children) of the deceased author* ......................
   (Name of author)

3. The author's executor(s), if the author left a will and

   if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author*
   ................................
   (Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author*
   .......................... *there being no will.*
   (Name of author)

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

a corporate body otherwise than as assignee or licensee of the individual author. (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

---

**FOR COPYRIGHT OFFICE USE ONLY**

Application received

JUN -1 1966

Fee received

$4.00  102732 JUN-1 '66

---

U.S. GOVERNMENT PRINTING OFFICE: 1965 O—780-833  (Dec. 1965—50,000)

Page 4

52

DCC00141276

Page 3

**FORM R**

REGISTRATION NO.

R 424458

DO NOT WRITE HERE

# Certificate of Registration of a Claim to Renewal Copyright

This Is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*~~~~~~ L. Kaministam*

Register of Copyrights
United States of America



1. **Renewal Claimant(s), Address(es), and Statement of Claim:**

   (a) Name ........ NATIONAL PERIODICAL PUBLICATIONS, INC.

   Address ........ 575 Lexington Avenue, New York, N. Y. 10022

   Claiming as ........ Proprietor of copyright in a work made for hire

   (b) Name ........

   Address ........

   Claiming as ........

   (c) Name ........

   Address ........

   Claiming as ........

2. **(a) Title:**

   ........ SUPERMAN

   **(b) Renewable Matter:**

   **(c) Contribution to Periodical or Other Composite Work:**

   ........ THE MILWAUKEE JOURNAL
   (Title of periodical or composite work)

   If a periodical, give: Vol. 58th yr.; No. ........; Issue ........; Date December 17, 1939

3. **Authors of Renewable Matter:**

   ........ Jerome Siegel and Joe Shuster, as employes of a work

   ........ made for hire

4. **Facts of Original Registration:**

   Original registration number: Class ........ CIB ........; No. ........ 438533

   If registered as published, give date of publication ........ December 17, 1939

   If registered as unpublished, give date of registration ........

   Original copyright claimant ........ THE JOURNAL CO., 333 W. State St.
   ........ Milwaukee, Wisconsin
   (Complete all applicable spaces on next page)

   EXAMINER
   0797

DCC00141277

**5. Deposit account:**

**6. Send correspondence to:**

Name ....WILLIAM K. FRIEDMAN.................... Address ...K.44th St., New York, N.Y. 10017

**7. Send certificate to:**

(Type or
print      Name
name and
address)  Address

> WILLIAM K. FRIEDMAN
>
> 11 East 44th Street
> (Number and street)
>
> New York      New York      10017
> (City)         (State)        (ZIP code)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### Time limits

*When to renew.* The original term of copyright protection for a work lasts for 28 years from the date of publication; in the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15, 1940, would be eligible for renewal between June 15, 1967, and June 15, 1968.

*Caution:* Unless a valid renewal claim and fee are *received* in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C. 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal only in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* ............................... *and/or the child (children) of the deceased author* ...............................
(Name of author)

3. The author's executor(s), if the author left a will and

if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author* ...............................
(Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author* ............................... *there being no will.*
(Name of author)

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. **Posthumous work** (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

a corporate body otherwise than as assignee or licensee of the individual author. (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

---

**FOR COPYRIGHT OFFICE USE ONLY**

Application received

DEC 14 1967

Fee received

48998 DEC 14 '67

U.S. GOVERNMENT PRINTING OFFICE : 1965 O—154-428          (Oct. 1966—25,000)          **Page 4**

DCC00141278

ER 1939

Page 3

## Certificate of Registration of a Claim to Renewal Copyright

**FORM R**

REGISTRATION NO.

**R 385824**

DO NOT WRITE HERE

This Is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Abraham L. Kaminstein*

Register of Copyrights
United States of America

**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

(a) Name ........ NATIONAL PERIODICAL PUBLICATIONS, INC. ........

Address ........ 575 Lexington Avenue, New York, N. Y. 10022 ........

Claiming as ........ Proprietor of copyright in a work made for hire ........

(b) Name ........

Address ........

Claiming as ........

(c) Name ........

Address ........

Claiming as ........

**2. (a) Title:**

........ SUPERMAN ........

(b) Renewable Matter:

........

(c) Contribution to Periodical or Other Composite Work:

........ THE MILWAUKEE JOURNAL, Milwaukee, Wisconsin, pg.4 G.S. ........
(Title of periodical or composite work)

If a periodical, give: Vol. ........; No. ........; Issue ........; Date ........ January 23, 1939 ........

**3. Authors of Renewable Matter:**

........ Jerry Siegel and Joe Shuster, as employees of a work ........

........ made for hire ........

**4. Facts of Original Registration:**

Original registration number: Class ........ KK ........; No. ........ 55426 ........

If registered as published, give date of publication ........ January 23, 1939 ........

If registered as unpublished, give date of registration ........

Original copyright claimant ........ McCLURE NEWSPAPER SYNDICATE ........

EXAMINER

*Complete all applicable spaces on next page*

DCC00141279

55

5. Deposit account:

6. Send correspondence to:

Name ....WILLIAM K. FRIEDMAN.................... Add... 11 44th St. New York,N.Y.10017

7. Send certificate to:

(Type or
print      Name ........WILLIAM K. FRIEDMAN..................
name and
address)   Address ......11 East 44th Street.....................
                         (Number and street)

           ...New York......... ...New York....... ...10017....
              (City)              (State)           (ZIP code)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

**When to renew.** The original term of copyright of a published work, would be eligible for renewal between June 15, 1967, work lasts for 28 years from the date of publication, in the case and June 15, 1968. of a work originally registered in unpublished form, the copy-right term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

NATIONAL PERIODICAL PUBLICATIONS, INC.

Friedman Cull

**Caution:** Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

## How to register your claim

**Procedure to follow.** Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

## Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal only in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (wid-ower) of the author* ................ *and/or the child* (Name of author)

   *(children) of the deceased author* ................ (Name of author)

3. The author's executor(s), if the author left a will and

   if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author* ................ (Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author* ................ *there being no will.* (Name of author)

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *pro-prietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

   *a corporate body otherwise than as assignee or licensee of the individual author.* (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| Application received | |
| MAY 10 1966 | |
| Fee received | |
| $4.00 | |

Page 4

DCC00141280

56

*[handwritten] Order PER 25 + ?gmissing*

Page 3

**FORM R**

## Certificate of Registration of a Claim to Renewal Copyright

REGISTRATION NO.

R 424162

DO NOT WRITE HERE

This Is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*[signature]*

Register of Copyrights
United States of America

**1. Renewal Claimant(s), Address(es), and Statement of Claim:**

(a) Name ............ NATIONAL PERIODICAL PUBLICATIONS, INC. ...............

Address .......... 575 Lexington Avenue, New York, N. Y. 10022 ..................

Claiming as ..... Proprietor of copyright in a work made for hire ...............

(b) Name .......................................................................................

Address .......................................................................................

Claiming as .................................................................................

(c) Name .......................................................................................

Address .......................................................................................

Claiming as .................................................................................

**2. (a) Title:**

........................ SUPERMAN ...........................................................

**(b) Renewable Matter:**

.......................................................................................................

**(c) Contribution to Periodical or Other Composite Work:**

.................. San Francisco Chronicle, San Francisco, Cal., 2nd Comic
(Title of periodical or composite work) ........................ Section — last page

If a periodical, give Vol. ...............; No. ...............; Issue ...............; Date ...... Dec. 24, 1939 ..........

**3. Authors of Renewable Matter:**

.................. Jerry Siegel and Joe Shuster, as employees of a work

.................. made for hire ........................................................

**4. Facts of Original Registration:**

Original registration number: Class ......... A5 .........; No. .... 132985 .........

If registered as published, give date of publication ........................ December 24, 1939 ............

If registered as unpublished, give date of registration .......................................................

Original copyright claimant .... McCLURE NEWSPAPER SYNDICATE ..............................
Complete all applicable spaces on next page

EXAMINER

DCC00141281

ER 1942

**5. Deposit account** ..

**6. Send correspondence to:**

Name ...... WILLIAM K. FRIEDMAN .................... Add.. E. 44th St., New York, N.Y. 10017

**7. Send certificate to:**

(Type or print name and address)

Name ........ WILLIAM K. FRIEDMAN

Address ........ 11 East 44th Street
(Number and street)

New York ............ New York ........ 10017
(City) (State) (ZIP code)

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

### Time limits

*When to renew.* The original term of copyright in a published work lasts for 28 years from the date of publication. In the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15,

(*NATIONAL LITURGICAL PUBLICATIONS INC.*)
1940, would be eligible for renewal between June 15, 1967, and June 15, 1968.

*Caution:* Unless a valid renewal claim and fee are *received* in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

### How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

### Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only* in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* ........................ *and/or the child*

(*children*) *of the deceased author* ..........................
(Name of author)

3. The author's executor(s), if the author left a will and

if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author*

........................
(Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author*

........................ *there being no will.*
(Name of author)

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

a corporate body otherwise than as assignee or licensee of the individual author. (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| Application received<br><br>DEC 11 1967<br><br>Fee received<br><br>47613 DEC 11 '67 | |

U.S. GOVERNMENT PRINTING OFFICE : 1966 O—234-656     (Oct 1966—75,000)     **Page 4**

DCC00141282

Page 3

# Certificate of Registration of a Claim to Renewal Copyright

FORM R

REGISTRATION NO.

R 424163

DO NOT WRITE HERE

This is To Certify that the statements set forth on this certificate have been made a part of the records of the Copyright Office. In witness whereof the seal of the Copyright Office is hereto affixed.

*Sarah L. Kaminstein*

Register of Copyrights
United States of America



1. Renewal Claimant(s), Address(es), and Statement of Claim:

   (a) Name .........NATIONAL PERIODICAL PUBLICATIONS, INC.

   Address ......575 Lexington Avenue, New York, N. Y. 10022

   Claiming as ....Proprietor of copyright in a work made for hire

   (b) Name .........................................................................................

   Address ..........................................................................................

   Claiming as .....................................................................................

   (c) Name .........................................................................................

   Address ..........................................................................................

   Claiming as .....................................................................................

2. (a) Title:

   .........................SUPERMAN

   (b) Renewable Matter:

   (c) Contribution to Periodical or Other Composite Work:

   ................................SAN FRANCISCO CHRONICLE, San Francisco, Cal., pg. 16,.
   (Title of periodical or composite work)                        Comic Section

   If a periodical, give: Vol. ...................; No. ...............; Issue ................; Date ....Dec. 31, 1939

3. Authors of Renewable Matter:

   .................Jerry Siegel and Joe Shuster, as employees of a work

   .................made for hire

4. Facts of Original Registration:

   Original registration number: Class ......AA.........; No. ......132888

   If registered as published, give date of publication .....................December 31, 1939

   If registered as unpublished, give date of registration ..........................................

   Original copyright claimant ...McCLURE NEWSPAPER SYNDICATE
   Complete all applicable spaces on next page

EXAMINER

DCC00141283

**5. Deposit accounts**

........................................................................................................

**6. Send correspondence to:**

Name ........WILLIAM K. FRIEDMAN........ Address..11 E. 44th St., New York, N.Y. 10017

**7. Send certificate to:**

| (Type or print name and address) Address | | | |
|---|---|---|---|
| | WILLIAM K. FRIEDMAN | | |
| | 11 East 44th Street | | |
| | (Number and street) | | |
| | New York | New York | 10017 |
| | (City) | (State) | (ZIP code) |

## Information concerning renewal copyright

Two important points must be kept in mind with respect to renewal copyright: (1) there are strict time limits for securing it, and (2) it can be claimed only by certain specified persons named in the law.

*When to renew.* The original term of copyright in a published work lasts for 28 years from the date of publication; in the case of a work originally registered in unpublished form, the copyright term lasts for 28 years from the date of registration in the Copyright Office. In either case, the copyright may be renewed for a second 28-year term only if a claim is registered in the Copyright Office within the last (28th) year of the original copyright term. For example, a work copyrighted on June 15, NATIONAL TECHNICAL PUBLICATIONS, INC. 1940, would be eligible for renewal between June 15, 1967, and June 15, 1968.

*Caution:* Unless a valid renewal claim and fee are received in the Copyright Office before the first copyright term expires, copyright protection is lost permanently and the work enters the public domain. The Copyright Office has no discretion to extend the renewal time limits.

## How to register your claim

*Procedure to follow.* Complete an application for renewal registration on Form R and send it to the Register of Copyrights, Washington, D.C., 20540. The application should be accompanied by the registration fee of $4. Do not send copies of the work.

## Who may claim renewal

Except in the case of five specific types of works, the law gives the right to claim renewal to the individual author of the work, regardless of who owned the copyright during the original term. If the author is deceased, the statute gives the right to claim renewal to certain of his statutory beneficiaries as explained below. The present owner (proprietor) of a copyright is entitled to claim renewal *only* in the five cases listed in Paragraph B, below.

A. The following persons may claim renewal in all types of works except those enumerated in Paragraph B, below:

1. The author, if living. State the claim as: *the author.*

2. The widow, widower, and/or children of the author, if the author is not living. State the claim as: *the widow (widower) of the author* ...................... *and/or the child* (Name of author)

   *(children) of the deceased author* ...................... (Name of author)

3. The author's executor(s), if the author left a will and

   if there is no surviving widow, widower, or child. State the claim as: *the executor(s) of the author*

   ...................... (Name of author)

4. The next of kin of the author, if the author left no will and if there is no surviving widow, widower, or child. State the claim as: *the next of kin of the deceased author*

   ...................... *there being no will.* (Name of author)

B. In the case of the following five types of works, the proprietor (owner of the copyright at the time of renewal registration) may claim renewal:

1. Posthumous work (work first published and copyrighted after the death of the author). State the claim as: *proprietor of copyright in a posthumous work.*

2. Periodical, cyclopedic, or other composite work. State the claim as: *proprietor of copyright in a composite work.*

3. "Work copyrighted by a corporate body otherwise than as assignee or licensee of the individual author." State the claim as: *proprietor of copyright in a work copyrighted by*

   a corporate body otherwise than as assignee or licensee of the individual author. (This type of claim is considered appropriate in relatively few cases.)

4. Work copyrighted by an employer for whom such work was made for hire. State the claim as: *proprietor of copyright in a work made for hire.*

5. Print or label originally registered in the Patent Office prior to July 1, 1940. State the claim as: *proprietor of copyright in a print or label.*

| FOR COPYRIGHT OFFICE USE ONLY | |
|---|---|
| Application received | |
| DEC 11 1967 | |
| Fee received | |
| 47613 DEC 11 67 | |

DCC00141284

ER 1945

1 | Marc Toberoff (CA State Bar No. 188547)
Nicholas C. Williamson (CA State Bar No. 231124)
2 | LAW OFFICES OF MARC TOBEROFF, PLC
2049 Century Park East, Suite 2720
3 | Los Angeles, CA 90067
Telephone: (310) 246-3333
4 | Facsimile: (310) 246-3101
Email: MToberoff@ipwla.com
5 |
Attorneys for Plaintiffs and Counterclaim Defendants
6 | JOANNE SIEGEL and LAURA SIEGEL LARSON

7 | **UNITED STATES DISTRICT COURT**

8 | **CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION**

9 |

10 | JOANNE SIEGEL, an individual; and
LAURA SIEGEL LARSON, an

11 | individual,

12 | Plaintiffs,

vs.

13 |

14 | TIME WARNER INC., a corporation;
WARNER COMMUNICATIONS

15 | INC., a corporation; WARNER

16 | BROS. ENTERTAINMENT INC., a
corporation; WARNER BROS.

17 | TELEVISION PRODUCTION INC.,
a corporation; DC COMICS, a general

18 | partnership; and DOES 1-10,

19 |

20 | Defendants.

21 | DC COMICS,

22 | Counterclaimant,

23 | vs.

24 |

25 | JOANNE SIEGEL, an individual; and
LAURA SIEGEL LARSON, an

26 | individual,

27 | Counterclaim Defendants.

28 |

---

Case No.: CV 04-08400 SGL (RZx)

Honorable Stephen G. Larson, U.S.D.J.
Honorable Ralph Zarefsky, U.S.M.J.

**DECLARATION OF MARC
TOBEROFF IN OPPOSITION
TO DEFENDANTS' BRIEF ON
ADDITIONAL ISSUES**

[Complaint filed: October 8, 2004]

Date:     August 11, 2008
Time:     3:00 p.m.
Place:    Courtroom 1

[Opposition Memorandum of Points
and Authorities Filed Concurrently]

---

DECLARATION OF MARC TOBEROFF IN OPPOSITION TO DEFENDANTS' BRIEF ON ADDITIONAL ISSUES

ER 1946

I, Marc Toberoff, declare as follows:

1.     I am an attorney at the Law Offices of Marc Toberoff, PLC, counsel of record for plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs"). I am a member in good standing of the State Bar of California and submit this declaration in opposition to Defendants' Brief on Additional Issues filed pursuant to the Court's July 3, 2008 order. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.     Attached hereto as Exhibit "A" is a true and correct copy of a seven page Superman synopsis created by Jerome Siegel as listed in Plaintiffs' Notices of Termination filed pursuant to 17 U.S.C. § 304(c).

3.     Attached hereto as Exhibit "B" is a true and correct copy of a letter from Jerome Siegel to Laura Siegel dated November 21, 1976.

4.     Attached hereto as Exhibit "C" is a true and correct copy of a letter from Jerome Siegel to Russell Keaton dated June 12, 1934.

5.     Attached hereto as Exhibit "D" is a true and correct copy of a Superman story in comic book form created by Jerome Siegel and illustrated by Russell Keaton as listed in Plaintiffs' Notices of Termination filed pursuant to 17 U.S.C. § 304(c).

6.     Attached hereto as Exhibit "E" is a true and correct copy of the continuity for 15 Superman daily comic strips created by Jerome Siegel as listed in Plaintiffs' Notices of Termination filed pursuant to 17 U.S.C. § 304(c).

7.     Attached hereto as Exhibit "F" are true and correct copies of excerpts from the October 5, 2007 deposition of Laura Siegel Larson which I attended.

8.     Attached hereto as Exhibit "G" is a true and correct copy of *Action Comics No. 2* produced by Defendants in this action.

9.     Attached hereto as Exhibit "H" is a true and correct copy of *Action Comics No. 3* produced by Defendants in this action.

10.     Attached hereto as Exhibit "I" is a true and correct copy of *Action Comics*

1

*No. 4* produced by Defendants in this action.

    11.    Attached hereto as Exhibit "J" is a true and correct copy of *Action Comics No. 5* produced by Defendants in this action.

    12.    Attached hereto as Exhibit "K" is a true and correct copy of *Action Comics No. 6* produced by Defendants in this action.

    13.    Attached hereto as Exhibit "L" are true and correct copies of excerpts from *Superman No. 1* produced by Defendants in this action.

    14.    Attached hereto as Exhibit "M" is a true and correct copy of a June 21, 1941 article from the *Saturday Evening Post* produced by Defendants in this action.

    15.    Attached hereto as Exhibit "N" are true and correct copies of excerpts from the trial transcript from the action entitled *Jerome Siegel and Joseph Shuster v. National Periodical Publications, et al.* in the Supreme Court of the State of New York, Westchester County.

    16.    Attached hereto as Exhibit "O" is a true and correct copy of a December 4, 1937 agreement between Jerome Siegel and Joseph Shuster and Detective Comics, Inc.

    17.    Attached hereto as Exhibit "P" is a true and correct copy of a September 22, 1938 agreement between Jerome Siegel and Joseph Shuster and Detective Comics, Inc.

    18.    Attached hereto as Exhibit "Q" is a true and correct copy of a September 22, 1938 agreement between Jerome Siegel and Joseph Shuster, Detective Comics, Inc., and the McClure Newspaper Syndicate.

    19.    Attached hereto as Exhibit "R" is a true and correct copy of *Creation of a Superhero* by Jerome Siegel as produced by Defendants in this action.

    20.    Attached hereto as Exhibit "S" is a true and correct copy of a letter from Jerome Siegel to J.S. Liebowitz dated April 18, 1938.

    21.    Attached hereto as Exhibit "T" is a true and correct copy of a letter from Chas E. Lounsbury of the The Register Tribune Syndicate to Jerome Siegel dated

2

DECLARATION OF MARC TOBEROFF IN OPPOSITION TO DEFENDANTS' BRIEF ON ADDITIONAL ISSUES

September 7, 1938.

22. Attached hereto as Exhibit "U" is a true and correct copy of the "Superman is Born" newspaper dailies as they appear in *Superman: The Dailies, Strips 1-966, 1939-1942*, published by Kitchen Sink Press and DC Comics in 1998.

23. Attached hereto as Exhibit "V" is a true and correct copy of the registration of copyright for *Superman No. 1* I caused to be researched and copied at the Copyright Office in Washington D.C.

24. Attached hereto as Exhibit "W" are true and correct copies of excerpts from the United States Copyright Office Catalogue of Copyright Entries which I caused to be researched and copied at the Los Angeles Public Library, Central Branch.

25. Attached hereto as Exhibit "X" is a true and correct copy of the affidavit of Jerome Siegel dated March 1, 1973 as submitted in the action *Jerome Siegel and Joseph Shuster v. National Periodical Publications, Inc. et al.*, 364 F. Supp. 1032 (S.D.N.Y. 1973).

26. Attached hereto as Exhibit "Y" are true and correct copies of excerpts from *Superman, Sunday Classics 1939-1943*, published by Kitchen Sink Press and DC Comics in 1998.

27. Attached hereto as Exhibit "Z" are true and correct copies of excerpts from *Superman: The Dailies, Strips 1-966, 1939-1942*, published by Kitchen Sink Press and DC Comics in 1998.

28. Attached hereto as Exhibit "AA" are true and correct copies of excerpts from the February 27, 2007 deposition of Defendants' expert Mark Waid.

29. Attached hereto as Exhibit "BB" is a true and correct copy of the article "K-Metal: The "Lost" Superman Tale" by Mark Waid authenticated by Mr. Waid at his February 27, 2007 deposition which I attended.

30. Attached hereto as Exhibit "CC" is a true and correct copy of a 26 page unpublished Superman story by Jerome Siegel as produced by Defendants in this action.

3

DECLARATION OF MARC TOBEROFF IN OPPOSITION TO DEFENDANTS' BRIEF ON ADDITIONAL ISSUES

31.     Attached hereto as Exhibit "DD" are true and correct copies of excerpts of checks and bank statements from Siegel and Shuster's company, American Artists League.

32.     Attached hereto as Exhibit "EE" are true and correct copies of excerpts from a business ledger kept by Jerome Siegel.

33.     Attached hereto as Exhibit "FF" are true and correct copies of excerpts from the July 8, 1969 deposition of Jerome Siegel in *Jerome Siegel and Joseph Shuster v. National Periodical Publications, Inc. et al.*, 364 F. Supp. 1032 (S.D.N.Y. 1973).

34.     Attached hereto as Exhibit "GG" is a true and correct copy of an excerpt from *The Story Behind Superman No. 1* by Jerome Siegel.

35.     Attached hereto as Exhibit "HH" is a true and correct copy of the web page "Krypto the Super-Dog," published by the website "Superman Super Site," as retrieved on July 27, 2008, and as available at: http://www.supermansupersite.com/kryptocartoon.html

36.     Attached hereto as Exhibit "II" is a true and correct copy of a letter from John Schulman to Joanne Siegel dated April 16, 1997.

37.     Attached hereto as Exhibit "JJ" is a true and correct copy of excerpts from the Reporter's Transcript of Proceedings for the parties' cross-motions for partial summary judgment held September 17, 2007.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on July 28, 2008 in Los Angeles, California.

_____
/s/
Marc Toberoff

4

DECLARATION OF MARC TOBEROFF IN OPPOSITION TO DEFENDANTS' BRIEF ON ADDITIONAL ISSUES

# EXHIBIT A

Jerome Siegel,
10622 Kimberley Ave.,
Cleveland, Ohio.

## SUPERMAN (Synopsis)

### (Releases for 2nd Week)

7.     Returning to his apartment, SUPERMAN enters thru a window. Next morn-
ing, having donned the glasses which give him a meek appearance, as he leaves
for the newspaper on which he holds the position of reporter, the janitor of
his building, shows him the morning paper which headlines Curry's innocence.
Clark Kent is pleased to note that there is no mention of his dual-self,
SUPERMAN, for he wishes to avoid as much publicity as possible.  At the same
moment, the governor, in his private chamber is speaking to a group of the
country's most powerful men.  Relating his encounter with SUPERMAN to them,
he states he still cannot believe his senses, and that he thanks heaven SUPER-
MAN is apparently on the side of law and order.

8.     Reporting at the office, Kent is informed that the City Editor wishes
to see him.  As Clark seats himself before the City Editor, he is asked if he
ever heard of SUPERMAN.  Clark is startled but before he can say very much the
editor continues.  The City Editor explains that reports have been steadily
streaming in that a fellow with gigantic strength named SUPERMAN actually ex-
ists.  The editor states he is making it Kent's steady assignment to make re-
ports on this half-mythical character.  He asks Kent if he thinks he can handle
the assignment.  Kent, with a deprecatory wave of his hand replies, "Listen,
Chief. If I can't find out anything about this SUPERMAN, no one can!"

9.     A desk man informs Kent that a call has just come in revealing that there
is a wife-beating at 211 Court Avenue.  Kent hurries off at the information, to

ER 1952

SUPERMAN (Synopsis)  For 2nd Week   -- 2 --

cover the tip.  At 211 Court Avenue, the bully who is beating his unconscious wife with a strap, looks up to see SUPERMAN charging into the room and snarls, "What d' you want?"  SUPERMAN seizes him by the shirt and holds him high above his head while the bully cries, "Don't get tough!" to which SUPERMAN replies, "Tough, is putting **mildly** the treatment you're going to get."  A slight slap from SUPERMAN's palm sends the bully flying across the room to a wall at its far end where plaster flies as the bully smashes into it.  The bully draws a knife and leaping upon SUPERMAN drives it at his heart crying, "Y' asked for it!"

10.    The knife's blade snaps upon SUPERMAN's tough skin, and the bully cowers back, quivering like a leaf at the miracle performed before his eyes, while SUPERMAN says grimly, "And now you're going to get a lesson you'll never forget." But before SUPERMAN can administer the "lesson" the bully faints in his arms. SUPERMAN hears the shrieking of police-sirens outside the house and hurriedly dons his street-clothes over his uniform.  As the policemen crowd into the room, they find Clark Kent kneeling over the bully's unconscious body. Replying to the police captain's questions, Kent explains he arrived to find the place torn and battered as it is.  "Looks as though our friend SUPERMAN dropped in to pay a visit," he says.

11.    Back at the office Clark asks Lois, the girl reporter he is in love with, to go with him that night.  She replies, "I suppose I'll give you a break -- for a change."  At a roadhouse that night, while they are dancing, Clark asks her why she always avoids him at the office, to which she replies, "Please, Clark! I've been writing sob stories all day.  Please don't ask me to dish out another."  Sitting at a nearby table, watching Clark and Lois dance, are three hoodlums.  The leader rises  and proclaims to this friends he's going to cut in on their dance and if Clark doesn't like it, he'll push his face in.  Accosting Lois, the hoodlum,

SUPERMAN (Synopsis)     For 2nd Week   -- 3 --

Butch, upon being refused, takes her arm and insists she is going to dance with him and like it. Lois turns to Clark who is standing uncomfortably by and asks if he is going to stand for it.

12.    Clark reluctantly adheres to his role of a coward. He pleads with Lois to be reasonable, dance with the fellow and then they'll leave immediately. Lois says to Clark, "You can stay and dance with him if you wish, but I'm leaving." As Butch seeks to detain her she gives him a terrific slap that SUPERMAN himself would be proud of, for it almost knocks Butch off his feet. Butch, enraged, leans upon Clark and pushes his face, seeking to provoke a fight. Clark, however, states he has no desire at all to fight and hurries, arms outstretched, after Lois, who is walking swiftly away in disgust. Outside the roadhouse, as Lois enters a taxi, alone, she says to his pleas, "You asked me earlier in the evening why I always avoid you. I'll tell you why now. Because you are a spineless, unbearable coward!"

. . . . . . . . . .

End of Second week's releases.......

008

ER 1954

From:
Jerome Siegel,
10622 Kimberley Ave.,
Cleveland, Ohio.

SUPERMAN (Synopsis)

Releases for Weeks 3 and 4

13.  Back in the roadhouse Butch tells his friends he is not going to let Lois get away with her insult to him and asks them to come with him. As they leave the roadhouse, they do not see the figure of SUPERMAN, up on the roof of the roadhouse, observing them.  Overtaking the taxi in which Lois is riding, they force it into a ditch and dragging her out of it, force her into their car.

14.  As they tear madly along the road, Butch says he is sorry he let Lois' yellow boy-friend off so easily.  A friend beside him says, "Well, maybe it won't be long before you see him again."  Suddenly the man beside Butch cries, "Look! There's a man standing in the road ahead of us."  Butch chuckles and says, "Watch me scare the wits out of him."  He steps on the gas and roars down upon the calmly waiting figure of SUPERMAN until he is so close the man beside him shrieks, "Watch out! You'll hit him!"

15.  SUPERMAN easily hurdles the speeding car.  Then he turns and chases after the madly rocketing auto, easily overtaking it.  Upon reaching it he lifts it high above his head with one hand, while its occupants shriek out their lungs in stark fear.

SUPERMAN --- By Jerome Siegel and Joe Shuster                    Page Two

16.  SUPERMAN shakes the occupants out of the car, catching Lois in his free hand as she falls.  He then proceeds to smash the car to bits against the side of the cliff at the edge of the road, while the car's former occupants run screaming in all directions.

17.  SUPERMAN, with a single leap, catches up with the fleeing Butch, saying, "Just a minute!"  With Butch under one arm he leaps up into the air to the top of a telephone pole and ties Butch to the top by his pants.  Butch, suspended precariously, shouts to SUPERMAN who is a trifle below him suspended straight out supported only by the grip of one hand on a spike in the pole, "Get me offa here!"  But when SUPERMAN says, "O.K.  I'll cut you loose.", he screams, "No, no!  I'd fall!"

18.  Lois is cowering back against the wreckage of the destroyed car as SUPER-MAN leaps down from the top of the telephone pole to her side and cautions her he means to do her no harm.  Taking her under his arm he returns her to the outskirts of the city, from the country road, and warns her to forget all that has happened that night.  In the morning, Lois tells the editor of her paper that she saw SUPERMAN last night, but he says, "Are you sure it wasn't pink elephants you saw?"

                    (End of third week.......)

                    ─────────────

                    (Beginning of fourth week)

19.  At the office, Clark begs Lois' pardon for his cowardly behavior, but she refuses to even speak to him.  Called into the editor's office, he learns that things are so dull the editor had decided to send him down to report the doings of a small South American war.  He is to take a camera with him and send back

010

SUPERMAN --- By Jerome Siegel and Joe Shuster                    Page Three

pictures with his articles. Kent takes a train, not toward South America, but to Washington D.C. There, he attends a session of Congress and has a certain Senator Barrows pointed out to him, as he sits in the gallery. -- Why is SUPERMAN interested in Senator Barrows?

20. As Senator Barrows is leaving the Congress chambers he is stopped by a fugitive figure who asks when they may see each other. The Senator tells the man to come to his private office at eight that evening. SUPERMAN, pressed behind a pillar, hears everything and snaps a picture, with his camera, of the two men. Going to the "morgue" of the local newspaper, he shows the developed picture to the man in charge and learns that the man with Barrows is a prominent Washington lobbyist; no one knows who the lobbyist works for. That evening, at eight o'clock, SUPERMAN hangs suspended by his fingertips outside the window of Senator Barrows and listens to an interesting conversation.

21. Barrows informs the lobbyist of the progress he has made in pushing a certain bill. It is certain to pass and before others realize what has happened, plung the United States into war with an unnamed foreign power. The lobbyist, satisfied, informs Barrows he'll be well taken care of financially for his good work. Smirking, Barrows says, "I suppose you're going to be well taken care of yourself." Outside the window, SUPERMAN grimly thinks to himself, "You bet he will!"

22. As the lobbyist leaves Barrows' office he is accosted on the street by SUPERMAN who seized his arm and demands to know who is behind him in corrupting Senator Barrows. The lobbyist says he doesn't know what SUPERMAN is talking about. SUPERMAN says, "One of these silent men, eh! We'll see whether you'll talk." The lobbyist says, "Let go of my arm!" SUPERMAN says, "Your foot will do just as well!" And seizing the man by one foot he leaps up into the air straight for the telephone wires overhead.

011

ER 1957

SUPERMAN --- By Jerome Siegel and Joe Shuster                    Page Four

23.     SUPERMAN runs along the telephone wires at top speed while the lobby-
ist shrieks, "Let me down! We'll be electrocuted!" SUPERMAN says, "Oh, no
we won't! Birds sit on telephone wires and <u>they</u> aren't electrocuted! -- Not
unless they touch a pole and are grounded!" As he says this he hurdles a
pole and says, "Oops! Just missed it!" The lobbyist shrieks his lungs out.

24.     They come in view of the Capitol, and against the lobbyists protests,
SUPERMAN leaps from the wires to it.  There upon the huge dome of the cap-
itol, the lobbyist screams down to the far distant streets below for help.
SUPERMAN points out a far building and suggests they leap to it.  The lob-
byist begs him not to jump, but SUPERMAN seizes him and makes the attempt.
They miss the building -- and commence to fall toward the street, eighty
stories below!

                    (End of fourth week's releases)

            _____

            This ends the first month's releases and yet the potentialities of
the character, SUPERMAN, has barely been scratched. He's headed for the
most exciting and yet humerous adventures this world has ever seen. He
will win a war single-handed, battle an airplane with his bare hands,
swim several hundred miles and think nothing of it, etc. He's <u>different</u>
and sure to become the idol of young and old. He'll participate in sports
and astound the nation; he'll single-handed, rescue a town from a flood
through his super-strength. -- Unlike most adventure strips the scene of
the story will not be laid in some fantastic, unknown jungle or planet or
country, but will be all the more astounding for having its locale on fam-
iliar city streets. SUPERMAN will operate against a background of America's
most well-known cities, buildings, and pleasure-spots.

# EXHIBIT B

# JERRY SIEGEL

11928 Darlington Avenue, Apt. 102
West Los Angeles, California 90049
November 21, 1976

Ms. Laura Siegel
11928 Darlington Avenue, Apt. 102
West Los Angeles, California 90049

Dear Laura:

You are a wonderful person and a loving daughter and you have given me a lot of happiness.

I wish I could do a lot more for you. But there is something I can and want to do at once.

This is a letter of conveyance — and with this letter I am presenting to you as a gift, to do with as you wish, what I believe to be some very valuable material.

Six original photostat positive reproductions of the first week of the SUPERMAN daily strip, which was conceived by me, written by me, and drawn by Joe Shuster in late 1934. Also, six original photostat negatives of the same material. (Both of these photostat reproductions of the original art work of the first week of the SUPERMAN daily strip were made in late 1934.)

From 1934 on, this material was submitted by me to numerous newspaper syndicates, and publishers, in an attempt to make a deal for the publication of Superman. When, in 1938, a deal was made for SUPERMAN to be published in the new magazine ACTION COMICS, practically all of the original drawings from which these photostats were made were cut up and pasted onto comic book pages, with slight alterations (some panels trimmed, other panels slightly extended in size). A few of the panels in these photostats were never published... in daily strip number 1, I believe panel 1 was redrawn and the title and by-line inserted; I believe panel 3 of that strip was redrawn, and I believe the final panel of that first daily strip may have been redrawn.

That first week of SUPERMAN daily strip photostats was submitted to potential markets with two additional manuscripts I wrote. Fortunately, the original typed pages of those two rare Superman manuscripts are still in existence, and I hereby present them to you, in addition to the above described photostats.

The first "SUPERMAN (Synopsis)" manuscript, 3 pages long, contains a description of "(Releases for 2nd Week")". The story in the manuscript continues where the first six drawn-up daily strips of Superman ended. The manuscript contains a detailed description of what the second week of proposed Superman daily strips would contain...daily strips 7, 8, 9, 10, 11 and 12. This contains not only detailed descriptions, but some dialogue, too. This synopsis manuscript describes exactly what appeared in the second week of SUPERMAN daily strips. The drawn daily strips of Superman, herein described, were later cut up, pasted onto pages, and reproduced together with the

014

EP 1969
000003541

# JERRY SIEGEL

Ms. Laura Siegel                    November 21, 1976                    — 2

art of daily strip week one, in ACTION COMICS No. 1, June, 1938 issue.

The second "SUPERMAN (Synopsis)" manuscript, 4 pages long, contains a description of ("Releases for Weeks 3 and 4"). The story in the manuscript continues where the story of "2nd week" in the first manuscript ends. The manuscript contains a detailed description of what Superman daily strip weeks 3 and 4 contained; describing in week 3, daily strips 13, 14, 15, 16, 17 and 18. And it describes in week 4, daily strips 19, 20, 21, 22, 23 and 24. Again, both descriptions and some dialogue are in the manuscript. This synopsis manuscript describes exactly what appeared in the 3rd and 4th week of the SUPERMAN daily strips. The drawn strips of Superman, herein described, were later cut up, pasted onto pages, and reproduced together with the art of daily strips week one and two in ACTION COMICS No. 1, June, 1938. On page four of this second manuscript is some material I wrote in which I described why I felt Superman would become a great hit "sure to become the idol of young and old." In it, I described more of the proposed format for the adventures of Superman.

The Superman daily strip art work for weeks 2, 3 and 4 was prepared after I wrote detailed script based on these two synopses manuscripts.

This material is the original conception of the SUPERMAN comic strip, as conceived and written by me. It was in this material, created by me in late 1934 (this concept was not published until June, 1938 issue of ACTION COMICS No. 1) — the version which went into publication — that Superman emerged to become one of the most successful fiction characters of all time.

Most creators of successful literary properties leave valuable estates to their heirs. I am very sorry that because of my inexperience that this is not true in your case. I am glad, though, that this original material in which Superman was first created has survived through the years, and I am giving this to you, my beloved daughter Laura, in the hope that someday you will be able to market this for its full value and get some material benefit from being the daughter of the originator of Superman.

With loving regards from your father...


                    Jerry Siegel



015

ER0003542

Case: 13-56243 02/25/2014 ID: 8992563 DktEntry: 22-8 Page: 264 of 331

# EXHIBIT C

10622 Kimberley Avenue,
Cleveland, Ohio,
June 12, 1934.

Dear Mr. Keaton:

You will find enclosed the first week's script for the cartoon strip, SUPERMAN. While the idea is a trifle fantastic -- a man with "infinite strength" -- I think it will follow the lines you like. We begin with "Superman" as a child and follow his history all the way up to maturity when the real story begins: of his adventures in helping those in need. Since Clark Kent possesses incredible strength there are great possibilities for humor and adventure in his experiences as a child and youth. The story of his youth will run at great length before we detail his adventures as an adult. Early, he will find that his great strength, instead of making friends for him, cause people to fear him. Mothers will not permit their children to associate with him, he will be hated in school sports because he never loses, etc. We can weave a very human story about him.

Here is the script for a possible sunday strip. It will acquaint you with the secret of Clark Kent's origin.

I.

1. In his laboratory, the last man on earth worked furiously. He had only a few moments left.

2. Giant cataclysms were shaking the reeling planet, destroying mankind. It was in its last days, dying....

3. The last man placed his infant babe within a small time-machine he had completed, launching it as ---

4. --- the laboratory walls caved-in upon him.

5. The time-vehicle flashed back thru the centuries, alighting in the primitive year, 1935 A. D.   A passing motorist sighted the metal cylinder...

6. ...and upon investigating discovered the sleeping babe within.

7. The infant was placed in an orphanage. The first day, it playfully bent its metal bed out of shape. The astounded attendents, of course, did not realize they were caring for a child whose physical structure was millions of years advanced from their own.

8. The babe, named Clark Kent, was a physical wonder. At the age of five, when an older boy sought to bully him, Clark sent him flying thru the air.

9. Clark's colossal strength was a source of wonder and pleasure to him. He found, at twelve, that he could easily shatter the world's high jump and dash records.

10. His powers increased unbelievably. When maturity had been attained, Kent discovered he could leap over a ten story building, raise unheard-of weights, run as fast as an express train, and that nothing less than a bursting shell could penetrate his tough skin.

11. & 12. Early, Kent decided he must turn his titanic strength into channels that would benefit mankind. And so was created SUPERMAN, champion of the oppressed, the physical marvel who had sworn to devote his existence to helping those in need!

........

Let me know if you would care to work with me upon this strip. I'll be glad to receive suggestions. The idea, incidently, is liked by the General Manager of Bell Syndicate. Awaiting your reply....

Sincerely,

*Jerome Siegel*

ER 1963

017

# EXHIBIT D

018

ER 1964

Case 2:04cr10400-CDW-RZ Document 94-62 Filed 07/29/08 Page 267 of 331 Page ID #2756







ER 1963



Case 2:04-cv-08400-ODW-RZ Document 347-2 Filed 07/28/08 Page 20 of 23 Page ID #:2171










Case: 13-56263 02/25/2014 ID: 8992563 DktEntry: 22-8 Page: 276 of 331

# EXHIBIT E

028

ER 1974

From:
Jerome Siegel,
10622 Kimberly Ave.,
Cleveland, Ohio.

## SUPERMAN

1.a. Molly: "Why did you stop the car, Sam!"

Sam: "There's something blocking the road -- looks like a metal cylinder. I'm go-
ing to see what's in it."

(NOTE: Illustration shows elderly couple have stopped their car on a highway to
investigate the cylinder which blocks their path.)

1.b. Kent: "Great Heavens, Molly! Look -- there's a child sleeping inside!"

Molly: "Why it might have been run over and killed! Who could have left it here!"

(NOTE: The man and wife are kneeling at the side of the cylinder and regarding
the sleeping babe within.)

1.c. Molly: "What are we going to do with it, Sam!"

Sam: "We'll turn him over to the people at the Edgewood Orphan Home. They'll take
good care of him."

• • • • • • • • • • • • • •

Explanatory panel: While driving along the highway, Sam Kent and his wife Molly discov-
ered a sleeping child within a strange cylinder. Together they journ-
eyed toward the Edgewood Orphan home where they turned the youngster
over to Miss Andrews, the matron.)

2.a. Miss Andrews: "I assure you the child will be well taken care of."

Molly: "Sam! His eye-lids are fluttering! He's awakening!"

(NOTE: They are standing at the side of the bed where the child lies asleep.)

2.b. Sam: "Don't startle him. The little tyke seems scared."

Miss Andrews: "There, there, little fellow -- now don't you be frightened."

(NOTE: Miss Andrews is reaching out to stroke the child's cheek.)

2.c. (NOTE: The child has sprung from the bed, is leaping high over their heads. Miss
Andrews is shrieking and fainting.)

Miss Andrews: "EEeee!"

Molly: "Sam! -- this can't be!"

Sam: "Stop him!"

• • • • • • • • • • • • • •

Explanatory panel: Sam and Molly Kent, upon finding a child in a weird metal cylinder
directly in the center of a roadway, apparently abandoned, had turned
it over to the attendants of an orphan asylum. Awakening, the baby
had been frightened, and to the amazement of the horrified onlookers,
proceeded to leap over their heads -- a feat impossible, of course,
for an infant obviously only two or three years old.)

3.a. The child struck its head against a cabinet and fell.

Sam: "He seems all right. The jar knocked him unconscious, though."

Molly: "Oh, Sam, what can it mean? That infant -- it leapt over our heads.
It's impossible!"

(NOTE: Sam is lifting the child in his arms.)

3.b. Miss Andrews: "I -- I'm all right. That child! It's abnormal -- a freak!"

An attendant: "You'd better leave now, Mr. and Mrs. Kent. We'll be glad to have
you call again."

(NOTE: Miss Andrews is being supported by an attendant.)

3.c. Miss Andrews, as soon as the Kents had departed, took a precaution...

Miss Andrews: "There! Let's see you jump through those iron bars you -- you little
monster!"

(NOTE: Metal bars have been placed about the bed.)

• • • • • • • • • • • • • •

(Continued on the next page)

ER 1975    029

Page Two.

Superman

Explanatory panel: (After being severely shocked upon seeing a three-year-old youngster spring over her head, Miss Andrews took care that there should be no reoccurence of the incident. Under her directions, the incredible infant was placed within metal bars.)

4.a. Miss Andrews: "I tell you, Doctor Hines, he almost hit the ceiling. And then I fainted. I --"
Doctor Hines: "Nonsense, Miss Andrews. You are only joking..."
(They are speaking within an office of the orphan home.)

5.b. Attendant: "Miss Andrews! You'd better come! That child you had confined, well he ---"
Miss Andrews: "Come along, Doctor Hines. We'll see whether I was joking."
(NOTE: The attendant has rushed into the office; is excited.)

4.c. (They have entered the room where the child is kept to see the baby tearing the metal bars apart, playing with them. They are all thunderstruck by the sight.)

4.d. Miss Andrews: "Water! Quick! The doctor has fainted!"
(NOTE: Doctor Hines had fainted in her arms.)

. . . . . . . . . . . . . . . . . . .

Explanatory panel: Frightened by having a three-year-old child leap up to the ceiling, Miss Andrews had him confined within a metal cage. Then, to her consternation she found him twisting and crumpling the metal bars as though they had been made of putty.)

5.a. Miss Andrews: "He belongs in a circus, not an orphan-asylum. I won't stand for the creature being here, and that's final!"
Doctor: "Do not be hasty, you can't ---"
Attendant: "Mr. and Mrs. Kent are here to see you, Miss Andrews."

5.b. Sam: "Yes, we'd like to adopt the youngster."
Molly: "You see, we have no children of our own, and we \ -- we like the little fellow
Miss Andrews: "I'm sure it can be arranged."

5.c. And so, a few days after they had brought the child to the asylum, the Kents adopted
Sam: "Well, he's our son now, Molly."
Molly: "We'll be the best parents in the world to him."

. . . . . . . . . . . . . . . . . . .

Explanatory panel: The Kents soon discovered that their adopted son lisped words entirely foreign to them.

6.a. Sam: "It can't be baby-talk. He's too old for that. And yet, it sounds like no languag I ever heard, and I've heard plenty of 'em."
Molly: "Perhaps his people came from a foreign country."

6.b. Sam examined the metal cylinder for a clue to their adopted son's origin...
Sam: "The inside is lined with a soft velvety material. It looks like expensive stuff.
Molly: "And there's machinery too! What do you make of it?"

6.c. ...,and discovered a clue!
Sam: "A note! It was hidden in the folds of the cloth."
Molly: "What does it say?"

. . . . . . . . . . . . . . . . . . .

NOTE: I have included the explanatory panel material so as to follow the lay-out used in the other John Dille strips.

## SUPERMAN

### By Jerome Siegel and Russell Keaton

7.a. While searching within the metal projectile for a hint as to their adopted son's origin, Molly and Sam had discovered a note.
Sam: "It's written in a foreign language -- makes no sense to me."
Molly: "Well, we'll save it. Someday, when Clark is grown, we'll show it to him. The boy has a right to learn who his real parents are."

7.b. News of the adoption spread swiftly.
Woman-Neighbor: "Have you heard, Mrs. Pryin! The Kents have adopted a three-year-old child!"
Mrs. Pryin: "Really!"

7.c. (NOTE: Mrs. Pryin is calling to her boy from the door of her house. Her son, Edgar, is straddling a smaller boy and twisting his arm behind him.)
Edgar: "Say, 'Uncle'!"
Boy on Ground: "Ouch! Aw, cut it out, Ed!"
Mrs. Pryin: "Behave, Edgar! Now come into the house and get cleaned up. We're going calling on the Kents!"

. . . . . . . . . . . . . . . .

8.a. (NOTE: Scene is in the home of the Kents. Mrs. Pryin has just entered.)
Mrs. Pryin: "You play with Clark, honey, while I talk to Mrs. Kent."
Edgar: "I ain't gonna play with no baby!"

8.b. (NOTE: Clark is playing with an electric-train. Edgar scornfully kicks it off the track. -- The parents have gone into the next room.)
Edgar: "An' if you weren't so little, I'd do the same to you!"

8.c. Mrs. Pryin: "When my Edgar was as old as Clark, I used to feed him lots of cereals and vegetables. Now if you want Clark to be as strong and healthy as my Edgar, well spinach and carrotts are...."
Mrs. Kent: "Thank you for the advice, Mrs. Pryin, but ----"
Shout from the Next Room: "MA-A-A-a-a-a!"

8.d. Mrs. Kent: " --- you see, Clark is quite strong and healthy all ready!"
(Mrs. Pryin is astounded.)
Edgar: "Ma! Make him let go!"
(Clark, angered, is holding Edgar up in the air with one hand, and shaking him vigorously.)

. . . . . . . . . . . . . . .

9.a. Sam: "Molly, this is serious! These exhibitions of Clark's super strength must stop! The entire neighborhood is talking. I'm squeamish only for the boy's sake."
Molly: "I know! If he is to live a normal life, he can't keep this up. People fear and resent his superior strength."

9.b. But when Molly and Sam entered Clark's nursery...
Sam: "He's gone! Look! ... the window is open!"
Molly: "We've got to find him at once! He may already be involved in some terrible mess!"

9.c. Finally, they discovered him.
(NOTE: Molly and Sam are looking down into the cellar from the xtop of the stairs. They see Clark sobbing, his arms flung around the metal projectile.)
Sam: "Why ... he's crying! Molly, I think he's homesick -- for his real parents."
Molly: "If only we knew from where he came and who is parents are!"

031

# SUPERMAN

### By Jerome Siegel and Russell Keaton

10.a. (NOTE: Molly and Clark are on the second floor of their home, in Clark's nursery, looking out of the window at Sam, who is across the street, waving at them.)

Molly: "Look, Clark --- daddy's coming home from work. See him waving to us!"

10.b. But Clark's sharp eyes note Sam is in peril of his life. An automobile, out of the driver's control is careening toward the tree at Sam's side!
(NOTE: Picture shows car swerving toward Sam, who is unaware of the danger.)

10.c. (NOTE: Clark is leaping into action, seeing his father is in danger. He has sprung onto the window-sill and is preparing to leap out of the window.)

Molly: "Clark! --- Don't! --- Oh-h!"

10.d. (Picture shows Clark springing down from the second-story window. Molly has rushed to the window and is looking down after him, horrified.)

. . . . . . . . . . . .

11. (Explanatory panel:) Seeing his father menaced by a swerving automobile, three-year-old Clark Kent had leapt down from a second-story window.

11.a. Landing with scarcely a jar, and pausing not for an instant, Clark sped toward his father with the speed of an unleashed arrow....

11.b. ....vaulting over a passing truck that barred his way!

11.c. Too late!
(NOTE: Picture shows auto crashing into tree. The tree snaps at its narrow base and is toppling upon Sam, who, transfixed with fear, cannot avoid its path. Clark, straining himself to the utmost to arrive in time, is bearing down -- but it can be seen he will arrive too late to avert the tragedy.)

. . . . . . . . . . . .

12.a. The fallen tree, which has pinned Sam to the earth, is slowly crushing out his life. Clark with a final spring reaches the tree's side, braces his feet firmly against the ground, and pits his strength against its bulk ---

12.b. Slowly the great weight rises! With his free hand, Clark drags his father to safety!
(NOTE: Clark is supporting the raised tree with one hand, and with the other he is dragging his father from out under the tree.)

12.c. (NOTE: Sam, in a hospital, is sitting up in bed and speaking to Molly who has come with Clark to visit him. Perhaps you might place a nurse and interne in the background.)

Sam: "We've been blind, Molly. The lad's strength is a god-send! I see now that he's destined for wonderful things. It is our duty to train him, Molly -- raise him so that he will use his super strength to help those in need of assistance."

Molly: "You're right, Sam! We have a duty now, a duty greater than that of being simply loving parents to our -- our SUPERMAN!"

. . . . . . . . . . . . .

End of Second Week's Release

# SUPERMAN

### By Jerome Siegel and Russell Keaton

13. (Explanetory panel) In the years that followed, Sam and Molly instilled in their adopted son the conviction that he must turn his titanic strength into channels that would benefit mankind. When Clark's beloved foster-parents passed away, he swore at their death-beds a binding oath. And so was created SUPERMAN, the physical marvel who champions the oppressed!

13.a. Clark: It's no use! I've puzzled over this unintelligible note, which holds the secret of my origin, hundreds of times. But I'm no closer to its secret.

(NOTE: Clark, in his bedroom, is seated at a table, reading the note Sam and Molly had found in the projectile, long years ago. On the table, open, is the small metal box in which he keeps the note.)

13.b. Replacing the Mystery Note in a metal box, Clark prepares to retire —

13.c. Clark: I'll look at it again, in the morning.
—unaware that a prowler crouches outside his window.
Prowler: He acts like whatever's in th' box is worth plenty. I'll wait 'till he's asleep, then sneak in.

(NOTE: The prowler is on the roof of the house, peering in-to the room. You might show Clark, in his pajamas, about to turn off the room's light.)

14.a. (Picture shows the burglar coming into the room through the window. Kent is asleep in his bed.)

14.b. (The burglar's flashlight is shining on the metal box, which one of his hands is grasping.)
Prowler: Here she is!

14.c. Suddenly the lights flash on!
(NOTE: Clark, awakened, has arisen. His hand is on the light-switch.)
Clark: I thought so — a petty thief! Put down that box, pronto!

14.d. Prowler: Button your lip! One more peep or move an' you get punctured. — Say, what're you grinnin' at?
(NOTE: On the wall of the room is placed two crossed swords. As the burglar speaks, he snatches one of the swords down from the wall, holding it in readiness.)

ER 1979

15.a. (Clark is stepping forward, grinning. The burglar has
the sword raised in two hands, ready to crash down with it.)
        Prowler: I'm warnin' yuh -- stand back!
        Clark:  Drop that sword, you fool, before you hurt
yourself!
15.b. Prowler: You asked for it!
        (Clark has sprung forward. With all his strength, the
burglar smashes the blade against Clark.)
15.c. The blade harmlessly glances off Clark's super-tough
skin, leaving not even a scratch!
15.d. (The burglar is cowering back, speechless with fear
and amazement. Clark is breaking and crumbling the sword to
pieces in his two bare hands.)
        Clark:  You're next!
        Prowler!  No -- no! Don't touch me!

# EXHIBIT G



DCC 00141550















DCC 00141551





DCC 00141552



DCC 00141553

DCC 00141554





DCC 00141555

DCC 00141556



# EXHIBIT H



ER 1991
DCC 00141557





DCC 00141558

DCC 00141559





ER 1993





DCC 00141560

DCC 00141561



DCC 00141562







DCC 001141563





DCC 00141564

# EXHIBIT I



DCC 00141565





DCC 00141566



DCC 00141567

ER 2002

078



DCC 00141568





DCC 00141569

DCC:00141570







DCC 00141571

68  SUPERMAN ARCHIVES



ER 2007
DCC 00141572

Case: 13-56243 02/25/2014 ID: 8992563 DktEntry: 22-6 Page: 310 of 331

# EXHIBIT J



ER 2009
DCC 00141573





DCC 00141574

DCC 00141575



DCC 00141576













DCC 00141577



176 SUPERMAN ARCHIVES

















# EXHIBIT K



R 2016
DCC 0014079

Case 0:56249 02/25/2011 ID: 8092563 DktEntry: 22-08 Page: 319 of 331





DCC 0014580





DCC 0014158





DCC 00141582









DCC 00141584

ER 2021





DCC 00141585

192  SUPERMAN ARCHIVES











DCC 00141586

# EXHIBIT L



ER 2025 PAGE 124
EXHIBIT J

A thousand years ago, the state of the art that combines words and pictures was the illuminated manuscript – a carefully crafted, fragile document telling a tale only a select few would ever be privileged to read.  A thousand years from now, the art form may evolve so that each of us takes the raw electrons from the air and turns them into our own fantasies, moving and speaking on  command for the world to access.  In between those forms, we have comics.

DC Comics celebrates the millennium mark by offering you the best and most vital examples of our art form. This millennium collection represents our most creative, most cataclysmic and most collectible issues for your shelf.

Paul Levitz
EXECUTIVE VICE PRESIDENT & PUBLISHER

## REMEMBERING THE MILLENNIUM

**Things were happening faster than a speeding bullet back in 1939** for the Man of Steel.  Barely a year after his debut in ACTION COMICS #1, Superman was about to make a leap even more impressive than the measly eighth of a mile he could muster at the time!

Until 1938 most comics were usually filled with reprint material spotlighting the more successful newspaper strips of the day. And while ACTION COMICS was one of the first titles filled with original material — created from scratch for less money than it would have cost to reprint existing comic strips — few could have been ready for the sensation its

### SUPERMAN #1
### *The Man of Steel's First Solo Flight*

cover-featured star would cause! ACTION #1 spotlighted the debut performance of the world's first — and still foremost — super-hero: SUPERMAN!

It's been well documented else-where, since his June 1938 debut in that ten-cent comic book, just how huge an impression the arrival of Superman on Earth had made on the unsuspecting populace. He really was more than just an alien — he was alien to the world of the anthology comic book. Nearly all other recurring characters in titles like DETEC-TIVE COMICS and MORE FUN COMICS were private investigators, policemen or other earthbound adventurers. Superman was more fantastic, more unusual than any-thing the world had ever seen. (In fact, many a publisher rejected Jerry Siegel and Joe Shuster's creation claiming that he was simply TOO different.)

It soon became clear that nothing short of 64 pages of his own title could contain·this Man of Tomorrow!



*continued on inside back cover* →

MILLENNIUM EDITION: SUPERMAN 1. December, 2000 (Originally published as SUPERMAN No. 1, Summer 1939. Copyright 1939). Published by DC Comics, 1700 Broadway, New York, NY 10019. Cover and introduction copyright © 2000 DC Comics, All rights reserved. The DC bullet, all characters featured in this issue, the distinctive likenesses thereof, and all related indicia are trademarks of DC Comics. The stories, characters and incidents featured in this publication are entirely fictional. Printed in Canada.

DC Comics. A division of Warner Bros.—A Time Warner Entertainment Company. 











PAGE 126
EXHIBIT J



## **CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing with the Clerk of the Court for the

United States Court of Appeals for the Ninth Circuit by using the appellate

CM/ECF system on February 21, 2014, and that all participants in the case are

registered CM/ECF users.


Dated:  February 21, 2014                    /s/ Marc Toberoff
                                                            Marc Toberoff