APPEAL CASE NOS. 13-56243, 13-56244
CROSS-APPEAL CASE NOS. 13-56257, 13-56259

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

LAURA SIEGEL LARSON

*Plaintiff, Counterclaim-Defendant, Appellant, and Cross-Appellee.*

v.

WARNER BROS. ENTERTAINMENT INC., DC COMICS

*Defendants, Counterclaimants, Appellees, and Cross-Appellants.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
THE HONORABLE OTIS D. WRIGHT II, JUDGE
CASE NOS. CV-04-8400 ODW (RZx), CV-04-8776 (RZx)

_____

**APPELLANT LAURA SIEGEL LARSON'S EXCERPTS OF RECORD
VOL. 10 OF 16**

_____

TOBEROFF & ASSOCIATES, P.C.
Marc Toberoff
 *mtoberoff@ipwla.com*
Keith G. Adams
 *kadams@toberoffandassociates.com*
22337 Pacific Coast Highway, #348
Malibu, CA 90265
Telephone:  (310) 246-3333
Facsimile:  (310) 246-3101

*Attorneys for Plaintiff-Appellant,Laura  Siegel
Larson, individually and as personal
representative of the Estate of Joanne Siegel*

# INDEX TO EXCERPTS OF RECORD (Volume 10)

*Larson v. Warner Bros. Entertainment Inc. et al.,*
CD Cal Case No. 04-CV-08400

| Docket No. | Filing Date | Document Title | Vol. | Page |
|---|---|---|---|---|
| 337-3 | 7/21/08 | *Exhibit J: Excerpts from the March 30, 2007 Deposition of Mark Evanier* | 10 | 2316 |
| 337-3 | 7/21/08 | *Exhibit M: Excerpts from "The Creation of a Superhero" by Jerome Siegel* | 10 | 2331 |
| 290 | 2/21/08 | Stipulation for Order Requesting Status Conference and Briefing Schedule | 10 | 2336 |
| 196 | 6/25/07 | Reply Declaration of Marc Toberoff In Support Of Plaintiff's Motion for Partial Summary Judgment | 10 | 2340 |
| 196 | 6/25/07 | *Exhibit A: Tolling Agreement Between Plaintiffs and DC Comics, dated April 6, 2000* | 10 | 2343 |
| 196 | 6/25/07 | *Exhibit B: October 28, 2002 letter from Joanne Siegel and Laura Siegel Larson to Lillian J. Laserson* | 10 | 2349 |
| 196 | 6/25/07 | *Exhibit C: Excerpts from listings from the Library of Congress' Catalog of Copyright Entries for the years 1939, 1940 and 1976* | 10 | 2352 |

| 196 | 6/25/07 | *Exhibit D: Plaintiff's Memorandum of Points and Authorities In Support of Motion to Compel Production of Documents* | 10 | 2367 |
|---|---|---|---|---|
| 196 | 6/25/07 | *Exhibit E: Excerpts from November 7, 2006 Deposition of Paul Levitz* | 10 | 2474 |
| 196 | 6/25/07 | *Exhibit F: Excerpts from October 7, 2006 Deposition of Kevin Marks, Esq.* | 10 | 2479 |
| 196 | 6/25/07 | *Exhibit G: Excerpts from August 6, 2006 Deposition of Plaintiff Laura Siegel Larson* | 10 | 2485 |
| 196 | 6/25/07 | *Exhibit H: Defendants' Answer to First Amended Complaint* | 10 | 2491 |
| 194 | 6/25/07 | Plaintiff's Reply In Support Of Motion for Partial Summary Judgment | 10 | 2508 |
| 184 | 5/29/07 | Declaration of Michael Bergman re: Plaintiffs' Motion for Summary Judgment | 10 | 2590 |
| 184 | 5/29/07 | *Exhibit A: Copyright Registration and Excerpts from "The Creation of a Superhero" by Jerome Siegel* | 10 | 2595 |

## INDEX TO EXCERPTS OF RECORD (all volumes)

| Docket No. | Filing Date | Document Title | Vol. | Page |
|---|---|---|---|---|
| 735 | 6/18/13 | 59(e) Amended Judgment | 1 | 1 |
| 734 | 6/18/13 | 59(e) Order | 1 | 6 |
| 724 | 4/18/13 | "Final Judgment" In Superman | 1 | 8 |
| 723 | 4/18/13 | Order Granting Motion For Summary Judgment Re: Superboy And The Superman Ads | 1 | 12 |
| 717 | 3/20/13 | Order Granting In Part Defendant's Motion For Summary Judgment | 1 | 23 |
| 714 | 3/12/13 | Order Granting Plaintiff Leave to File A Sur-Reply | 2 | 39 |
| 740 | 7/17/13 | Defendants Notice Of Cross-Appeal | 2 | 41 |
| 738 | 7/16/13 | Plaintiff's Notice of Appeal | 2 | 43 |
| 595 | 10/30/09 | Order on Motion for Reconsideration | 2 | 45 |
| 560 | 8/12/09 | Order on Additional Issues | 2 | 87 |
| 293 | 3/26/08 | Order on the Parties' Cross-Motions for Summary Judgment | 2 | 186 |
| 9th Cir. Case 11-55863, | 1/10/13 | Memorandum Disposition [Of Prior Appeal] | 2 | 272 |

| 70-1 | | | | |
|------|------|------|------|------|
| 674 | 6/15/11 | Defendant's Prior Notice of Cross-Appeal | 2 | 278 |
| 671 | 5/27/11 | Plaintiff's Prior Notice of Appeal | 2 | 280 |
| 669 | 5/17/11 | Judgment | 2 | 282 |
| 667 | 5/17/11 | Order Granting Plaintiff's Motion for Entry of Judgment Pursuant to Rule 54(b) | 2 | 285 |
| 664 | 5/5/11 | Order Vacating March 15, 2011 Judgment and Striking Superfluous Allegations from Counterclaim | 2 | 287 |
| 659 | 3/15/11 | Order Granting rule 54(b) Motion | 2 | 288 |
| 656 | 3/3/11 | Answer to Second Amended Counterclaims | 2 | 292 |
| 646 | 2/17/11 | Second Amended Counterclaims | 3 | 323 |
| 645 | 2/17/11 | Answer to Third Amended Complaint | 3 | 361 |
| 644 | 2/3/11 | Third Amended Complaint | 3 | 374 |
| 733 | 6/17/13 | Plaintiff's 59(e) Reply | 3 | 399 |
| 732 | 6/5/13 | Defendants' 59(e) Opposition | 3 | 416 |
| 731 | 5/16/13 | Plaintiff's 59(e) Motion | 3 | 437 |
| 731-1 | 5/16/13 | Plaintiff's Proposed 59(e) Order | 3 | 468 |
| 731-2 | 5/16/13 | Plaintiff's Proposed 59(e) Judgment | 3 | 470 |
| 730 | 5/16/13 | Declaration of Patrick T. Perkins In | 3 | 475 |

| | | Support of Defendants' Reply In Support Of Application to Tax Costs | | |
|---|---|---|---|---|
| 730 | 5/16/13 | *Exhibit 1: Invoice For Steranko Deposition* | 3 | 479 |
| 730 | 5/16/13 | *Exhibit 2: Invoice For Evanier Deposition* | 3 | 481 |
| 730 | 5/16/13 | *Exhibit 3: Invoice for Lewellen Deposition* | 3 | 483 |
| 730 | 5/16/13 | *Exhibit 4: Invoice for Larson Deposition* | 3 | 485 |
| 729 | 5/14/13 | Defendants' Reply In Support of Application to Tax Costs | 3 | 487 |
| 729-1 | 5/14/13 | Declaration of Brian Pearl In Support of Defendants' Reply in support of Application to Tax Costs | 3 | 498 |
| 729-1 | 5/14/13 | *Exhibit A: Transcript Cover Sheet for Peary Deposition* | 3 | 501 |
| 729-1 | 5/14/13 | *Exhibit B: Transcript Cover Sheet for Peavy Deposition* | 3 | 504 |
| 729-1 | 5/14/13 | *Exhibit C: Transcript Cover Sheet for Feiffer Deposition* | 3 | 507 |
| 729-1 | 5/14/13 | *Exhibit D: Transcript Cover Sheet for Steranko Deposition* | 3 | 511 |
| 729-1 | 5/14/13 | *Exhibit E: Transcript Cover Sheet for Evanier Deposition* | 3 | 514 |
| 729-1 | 5/14/13 | *Exhibit F: Transcript Cover Sheet* | 3 | 518 |

| | | | | |
|---|---|---|---|---|
| | | *for Lewellen Deposition* | | |
| 729-1 | 5/14/13 | *Exhibit G: Transcript Cover Sheet for Larson Deposition* | 3 | 522 |
| 729-1 | 5/14/13 | *Exhibit H: Transcript Cover Sheet for Halloran Deposition* | 3 | 526 |
| 722 | 4/4/13 | Plaintiff's Supplemental Brief re: "Ads" and "Superboy" | 3 | 530 |
| 722-1 | 4/4/13 | Declaration of Keith Adams In Support Of Plaintiff's Supplemental Brief re: "Ads" and "Superboy" | 3 | 549 |
| 722-1 | 4/4/13 | *Exhibit 1: Excerpts from April 12, 1947 Findings of Fact and Conclusions of Law* | 3 | 553 |
| 722-1 | 4/4/13 | *Exhibit 2: October 19, 2001 letter from Kevin Marks to John Schulman* | 3 | 560 |
| 722-1 | 4/4/13 | *Exhibit 3: October 26, 2001 letter from Schulman to Marks* | 3 | 566 |
| 722-1 | 4/4/13 | *Exhibit 4: February 1, 2002 letter from Patrick Perkins to Marks* | 4 | 574 |
| 722-1 | 4/4/13 | *Exhibit 5: November 8, 2002 Notice of Termination re: Superboy* | 4 | 631 |
| 722-1 | 4/4/13 | *Exhibit 6: March 23, 2006 Summary Judgment Order in Superboy Case* | 4 | 644 |
| 722-1 | 4/4/13 | *Exhibit 7: June 12, 2006 Affidavit of Damon Bonesteel* | 4 | 661 |

| 722-1 | 4/4/13 | *Exhibit 8: Excerpts from DC's April 30, 2007 Motion for Summary Judgment* | 4 | 672 |
|---|---|---|---|---|
| 722-1 | 4/4/13 | *Exhibit 9: Excerpts from DC's June 25, 2007 Reply re: Summary Judgment* | 4 | 689 |
| 722-1 | 4/4/13 | *Exhibit 10: September 10, 2007 Affidavit of Donna Josephson* | 4 | 714 |
| 722-1 | 4/4/13 | *Exhibit 11: Excerpts from September 17, 2007 Oral Argument in Superman and Superboy Cases* | 4 | 717 |
| 722-1 | 4/4/13 | *Exhibit 12: March 5, 2012 Notice of Termination re: Superman Advertisements* | 4 | 756 |
| 722-1 | 4/4/13 | *Exhibit 13: DC's Fourth Brief on Cross-Appeal in the Siegel Appeal, filed on June 19, 2012* | 4 | 762 |
| 722-1 | 4/4/13 | *Exhibit 14: September 5, 2012 Oral Argument in the Siegel Appeal* | 4 | 798 |
| 722-2 | 4/4/13 | Declaration of Laura Siegel Larson In Support Of Plaintiff's Supplemental Brief re: "Ads" and "Superboy" | 4 | 840 |
| 721 | 4/4/13 | Defendants' Supplemental Brief re: "Ads" and "Superboy" | 4 | 842 |
| 715 | 3/18/13 | Plaintiff's Court Authorized Sur-Reply re: Defendants' Motion for Summary Judgment | 4 | 867 |

| 713 | 3/8/13 | Defendants' Response to Plaintiffs Genuine Issues and Additional Facts re: Defendants' Motion for Summary Judgment | 5 | 873 |
|---|---|---|---|---|
| 711 | 3/8/13 | Defendants' Reply In Support Of Defendants' Motion for Summary Judgment | 5 | 943 |
| 711-1 | 3/8/13 | Declaration of Matthew T. Kline In Support Of Defendants' Motion for Summary Judgment | 5 | 961 |
| 711-2 | 3/8/13 | *Exhibit A: Appellant Laura Siegel Larson's First Brief On Cross-Appeal, filed in Ninth Circuit Case Nos. 11-55863, 11-56034, DN 12* | 5 | 964 |
| 711-2 | 3/8/13 | *Exhibit B: Appellant Laura Siegel Larson's Third Brief On Cross-Appeal, filed in Ninth Circuit Case Nos. 11- 55863, 11-56034, DN 43-1* | 5 | 1048 |
| 711-2 | 3/8/13 | *Exhibit C: Reply Brief Of Cross-Appellants And Appellees Warner Bros. Entertainment Inc. And DC Comics, filed in Ninth Circuit Case Nos. 11-55863, 11-56034, DN 49* | 6 | 1139 |
| 711-2 | 3/8/13 | *Exhibit D: Letter from Marc Toberoff to Daniel Petrocelli, dated March 7, 2013.* | 6 | 1176 |
| 711-2 | 3/8/13 | *Exhibit E: Excerpt from the transcript of the deposition of Laura Siegel Larson, dated August 1,* | 6 | 1179 |

| | | | | |
|---|---|---|---|---|
| | | *2006.* | | |
| 711-2 | 3/8/13 | *Exhibit F: Excerpt from Plaintiffs Joanne Siegel And Laura Siegel Larson's Responses To Defendant DC Comics' First Set Of Interrogatories No. 1-19, dated January 25, 2006.* | 6 | 1185 |
| 709 | 3/4/13 | Plaintiff's Opposition to Defendants' Motion for Summary Judgment | 6 | 1192 |
| 709-1 | 3/4/13 | Plaintiff's Statement of Genuine Issues and Additional Facts re: Defendants' Motion for Summary Judgment | 6 | 1224 |
| 709-2 | 3/4/13 | Declaration of Keith Adams In Support Of Plaintiff's Opposition to Defendants' Motion for Summary Judgment | 6 | 1252 |
| 709-2 | 3/4/13 | *Exhibit 1: October 19, 2001 letter from Kevin Marks to John Schulman* | 6 | 1257 |
| 709-2 | 3/4/13 | *Exhibit 2: October 26, 2001 letter from Schulman to Marks* | 6 | 1263 |
| 709-2 | 3/4/13 | *Exhibit 3: February 1, 2002 letter from Patrick Perkins to Marks* | 6 | 1271 |
| 709-2 | 3/4/13 | *Exhibit 4: May 9, 2002 letter from Joanne Siegel to Richard D. Parsons* | 6 | 1328 |
| 709-2 | 3/4/13 | *Exhibit 5: May 22, 2002 letter from* | 6 | 1331 |

| | | *Parsons to Joanne Siegel* | | |
|---|---|---|---|---|
| 709-2 | 3/4/13 | *Exhibit 6:  September 21, 2002 letter from the Siegels to Marks* | 6 | 1332 |
| 709-2 | 3/4/13 | *Exhibit 7: November 8, 2002 Notice of Termination re: Superboy* | 6 | 1333 |
| 709-2 | 3/4/13 | *Exhibit 8:  Letter sent by Ari Emanuel to Bruce Rosenblum* | 6 | 1346 |
| 709-2 | 3/4/13 | *Exhibit 9:  Excerpts from August 1, 2006 deposition of Laura Siegel Larson* | 6 | 1347 |
| 709-2 | 3/4/13 | *Exhibit 10:  Excerpts from October 7, 2006 deposition of Kevin Marks* | 6 | 1354 |
| 709-2 | 3/4/13 | *Exhibit 11:  Excerpts from November 2, 2006 deposition of Ari Emanuel* | 6 | 1388 |
| 709-2 | 3/4/13 | *Exhibit 12:  Excerpts from November 11, 2006 deposition of Paul Levitz* | 6 | 1402 |
| 709-2 | 3/4/13 | *Exhibit 13:  Excerpts from Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, filed May 29, 2007* | 6 | 1416 |
| 709-2 | 3/4/13 | *Exhibit 14:  October 23, 2007 Order* | 7 | 1436 |
| 709-2 | 3/4/13 | *Exhibit 15:  March 5, 2012 Notice of Termination re: Superman Advertisements* | 7 | 1441 |

| 709-2 | 3/4/13 | *Exhibit 16: DC's Second Brief on Cross-Appeal in the Siegel Appeal, filed on March 23, 2012* | 7 | 1447 |
|---|---|---|---|---|
| 709-2 | 3/4/13 | *Exhibit 17: Larson's Third Brief on Cross-Appeal in the Siegel Appeal, filed on May 24, 2012.* | 7 | 1506 |
| 709-2 | 3/4/13 | *Exhibit 18: DC's Fourth Brief on Cross-Appeal in the Siegel Appeal, filed on June 19, 2012* | 7 | 1562 |
| 709-2 | 3/4/13 | *Exhibit 19: September 5, 2012 Oral Argument in the Siegel Appeal* | 7 | 1579 |
| 709-2 | 3/4/13 | *Exhibit 20: January 29, 2013 Letter from Daniel Petrocelli to Marc Toberoff* | 7 | 1621 |
| 709-2 | 3/4/13 | *Exhibit 21: February 9, 2013 Letter from Toberoff to Petrocelli* | 7 | 1623 |
| 709-2 | 3/4/13 | *Exhibit 22: February 12, 2013 Letter from Petrocelli to Toberoff* | 7 | 1626 |
| 709-2 | 3/4/13 | *Exhibit 23: Excerpts from DC's Statement of Genuine Issue re: Motion for Summary Judgment in DC Comics, filed on February 16, 2013.* | 7 | 1628 |
| 709-2 | 3/4/13 | *Exhibit 24: February 27, 2013 Letter from Toberoff to Petrocelli* | 7 | 1632 |
| 709-2 | 3/4/13 | *Exhibit 25: February 28, 2013 Letter from Petrocelli to Toberoff* | 7 | 1633 |
| 708 | 2/25/13 | Joint Status Report Re: The Superman and Superboy Cases | 7 | 1635 |

| 702 | 2/7/13 | Defendants' Motion for Summary Judgment | 7 | 1651 |
|---|---|---|---|---|
| 702-1 | 2/7/13 | Declaration of Daniel M. Petrocelli In Support Of Defendants' Motion for Summary Judgment | 7 | 1663 |
| 702-2 | 2/7/13 | *Exhibit A: Email Correspondence between Parties Counsel re: Motion for Summary Judgment* | 7 | 1666 |
| 702-2 | 2/7/13 | *Exhibit B: October 19, 2001 letter from Kevin Marks to John Schulman* | 7 | 1683 |
| 702-2 | 2/7/13 | *Exhibit C: Excerpts from DC's Reply In Support Of Motion for Partial Summary Judgment on Its First and Third Claims For Relief in Pacific Pictures case, Case No. CV-10-3633, DN 468* | 7 | 1691 |
| 702-2 | 2/7/13 | *Exhibit D: Order Granting Plaintiff's Motion for Partial Summary Judgment and Denying Defendants' Cross-Motion in Pacific Pictures case, Case No. CV-10-3633, DN 507* | 7 | 1694 |
| 702-3 | 2/7/13 | Defendants' Proposed Statement of Uncontroverted Facts and Conclusions of Law | 7 | 1713 |
| 702-4 | 2/7/13 | Defendant's Proposed Summary Judgment Order | 7 | 1718 |
| 702-5 | 2/7/13 | Defendants' Proposed Judgment | 7 | 1720 |

| 681 | 12/5/11 | Order Certifying and Forwarding Supplemental Record | 7 | 1724 |
|---|---|---|---|---|
| 680 | 12/2/11 | Joint Stipulation To Certify And Forward Supplemental Record | 7 | 1726 |
| 680 | 12/2/11 | *Exhibit A: Excerpt from October 7, 2006 deposition of Kevin Marks* | 8 | 1729 |
| 602 | 12/21/09 | Joint Status Report | 8 | 1773 |
| 373-3 | 9/29/08 | Declaration of Dennis Kitchen re: Defendants' September 26, 2008 Objections | 8 | 1798 |
| 373-3 | 9/29/08 | *Exhibit A: November 12, 1934 Correspondence from Jerome Siegel to Russell Keaton* | 8 | 1801 |
| 364-2 | 9/22/08 | Declaration of Marc Toberoff re: Objections to September 18, 2008 Objections and Exhibit A (Thompson & Thompson Report) | 8 | 1714 |
| 364-1 | 9/22/08 | *Exhibit A: February 1996 Thompson & Thompson Copyright Report re: Superman* | 8 | 1817 |
| 361-1 | 9/18/08 | Exhibit B: Declaration of Michael Bergman re: Objections to Plaintiffs' July 28, 2008 Brief | 8 | 1827 |
| 361-3 | 9/18/08 | *Exhibit C: Copyright Registrations for the First Two Weeks of "Superman" Newspaper Strips* | 8 | 1830 |
| 353-1 | 8/5/08 | Declaration of Michael Bergman re: | 8 | 1867 |

| | | Response in Objection to Motion | | |
|---|---|---|---|---|
| 353-2 | 8/5/08 | *Exhibit A – January 10, 1938 letter from Vin Sullivan to Jerome Siegel* | 8 | 1871 |
| 353-2 | 8/5/08 | *Exhibit B – September 28, 1938 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1873 |
| 353-2 | 8/5/08 | *Exhibit C – September 30, 1938 letter from Jerome Siegel to J.S. Liebowitz* | 8 | 1877 |
| 353-2 | 8/5/08 | *Exhibit D – April 21, 1938 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1879 |
| 353-2 | 8/5/08 | *Exhibit E – January 23, 1940 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1882 |
| 353-2 | 8/5/08 | *Exhibit F – February 8, 1940 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1885 |
| 353-2 | 8/5/08 | *Exhibit G – May 2, 1940 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1887 |
| 353-2 | 8/5/08 | *Exhibit H – November 5, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1890 |
| 353-2 | 8/5/08 | *Exhibit I – January 22, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1893 |
| 353-2 | 8/5/08 | *Exhibit J – January 29, 1940 letter from J.S. Liebowitz to Jerome* | 8 | 1896 |

| | | *Siegel* | | |
|---|---|---|---|---|
| 353-2 | 8/5/08 | *Exhibit K – March 18, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1899 |
| 353-2 | 8/5/08 | *Exhibit L – November 4, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1901 |
| 353-2 | 8/5/08 | *Exhibit M – February 19, 1941 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1903 |
| 353-3 | 8/5/08 | *Exhibit N – November 12, 1942 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1906 |
| 353-3 | 8/5/08 | *Exhibit O – February 21 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1908 |
| 353-3 | 8/5/08 | *Exhibit P – February 3, 1947 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1910 |
| 353-3 | 8/5/08 | *Exhibit Q – Exhibit showing 1937-1947 payments to Siegel and Shuster* | 8 | 1914 |
| 353-3 | 8/5/08 | *Exhibit R – Renewal Certificates for Post-March 1, 1938 Superman Works* | 8 | 1916 |
| 347 | 7/28/08 | Declaration of Marc Toberoff re: Plaintiffs' Memorandum of Points and Authorities in Opposition and Exhibits A-JJ | 8 | 1946 |

| 347-2 | 7/28/08 | *Exhibit A – Seven-Page Superman Synopsis* | 8 | 1951 |
|---|---|---|---|---|
| 347-2 | 7/28/08 | *Exhibit B – November 21, 1974 letter from Jerome Siegel to Laura Siegel* | 8 | 1959 |
| 347-2 | 7/28/08 | *Exhibit C – June 12, 1934 letter from Jerome Siegel to Russell Keaton* | 8 | 1962 |
| 347-2 | 7/28/08 | *Exhibit D – Superman story illustrated by Russell Keaton* | 8 | 1964 |
| 347-3 | 7/28/08 | *Exhibit E – Continuity for 15 daily "Superman" Newspaper Strips, c. 1934* | 8 | 1974 |
| 347-4 | 7/28/08 | *Exhibit G – Action Comics, No. 2* | 8 | 1981 |
| 347-5 | 7/28/08 | *Exhibit H – Action Comics, No. 3* | 8 | 1990 |
| 347-6 | 7/28/08 | *Exhibit I – Action Comics, No. 4* | 8 | 1999 |
| 347-7 | 7/28/08 | *Exhibit J – Action Comics, No. 5* | 8 | 2008 |
| 347-8 | 7/28/08 | *Exhibit K – Action comics, No. 6* | 8 | 2015 |
| 347-9 | 7/28/08 | *Exhibit L – Excerpts from Superman, No. 1* | 8 | 2024 |
| 347-9 | 7/28/08 | *Exhibit M – June 21, 1941 Saturday Evening Post Article, "Up, Up and Awa-a-y"* | 9 | 2029 |
| 347-9 | 7/28/08 | *Exhibit N – Excerpts from Trial Transcript of 1947 Action* | 9 | 2036 |

| 347-9 | 7/28/08 | *Exhibit O – December 4, 1937 Agreement between Jerome Siegel, Joseph Shuster, and Detective Comics, Inc.* | 9 | 2050 |
|---|---|---|---|---|
| 347-9 | 7/28/08 | *Exhibit P – September 22, 1938 Agreement between Jerome Siegel, Joseph Shuster, and Detective Comics, Inc.* | 9 | 2053 |
| 347-9 | 7/28/08 | *Exhibit Q – Seprember 22, 1938 Agreement between the McClure Newspaper Syndicate, Jerome Siegel, Joseph Shuster, and Detective Comics, Inc.* | 9 | 2057 |
| 347-9 | 7/28/08 | *Exhibit R – Excerpts from "The Creation of a Superhero" by Jerome Siegel* | 9 | 2061 |
| 347-9 | 7/28/08 | *Exhibit S – April 18, 1938 letter from Jerome Siegel to J.S. Liebowitz* | 9 | 2068 |
| 347-9 | 7/28/08 | *Exhibit T – September 7, 1938 letter from Chas Lounsbury to Jerome Siegel* | 9 | 2070 |
| 347-9 | 7/28/08 | *Exhibit U – Excerpts from Superman: The Dailies* | 9 | 2073 |
| 347-9 | 7/28/08 | *Exhibit V – Copyright Registration Certificate for Superman No. 1* | 9 | 2080 |
| 347-10 | 7/28/08 | *Exhibit W – Excerpts from the United States Copyright Office Catalogue of Copyright Entries* | 9 | 2083 |

| 347-10 | 7/28/08 | *Exhibit X – March 1, 1973 Affidavit of Jerome Siegel* | 9 | 2098 |
|---|---|---|---|---|
| 347-10 | 7/28/08 | *Exhibit Y – Excerpts from Superman: Sunday Classics* | 9 | 2110 |
| 347-10 | 7/28/08 | *Exhibit Z - Excerpts from Superman: The Dailies* | 9 | 2119 |
| 347-11 | 7/28/08 | *Exhibit AA – Excerpts from the February 27, 2007 deposition of Mark Waid* | 9 | 2130 |
| 347-11 | 7/28/08 | *Exhibit BB – Article "K-Metal: The Lost Superman Tale" by Mark Waid* | 9 | 2153 |
| 347-11 | 7/28/08 | *Exhibit CC – Unpublished 26-page Superman story* | 9 | 2161 |
| 347-12 | 7/28/08 | *Exhibit DD – Checks and Bank Statements from the American Artists League* | 9 | 2175 |
| 347-12 | 7/28/08 | *Exhibit EE – Excerpts from the business ledger of Jerome Siegel* | 9 | 2196 |
| 347-12 | 7/28/08 | *Exhibit FF – Excerpts from the July 8, 1969 deposition of Jerome Siegel* | 9 | 2204 |
| 347-12 | 7/28/08 | *Exhibit GG – Excerpts from The Story Behind Superman No. 1 by Jerome Siegel* | 9 | 2208 |
| 340 | 7/21/08 | Declaration of Michael Bergman in Support of Defendants' Brief on Additional Issues | 9 | 2211 |
| 340-1 | 7/21/08 | *Exhibit A:  December 19, 1939* | 9 | 2213 |

| | | | | |
|---|---|---|---|---|
| | | *Agreement between Jerome Siegel, Joseph Shuster and Detective Comics, Inc.* | | |
| 340-1 | 7/21/08 | *Exhibit B:  April 8, 1938 letter from J.S. Liebowitz to Jerome Siegel* | 9 | 2217 |
| 337 | 7/21/08 | Declaration of Keith Adams re: Plaintiff's Memorandum of Points and Authorities Pursuant to the Court's July 3, 2008 Order | 9 | 2219 |
| 337-2 | 7/21/08 | *Exhibit A:  Stipulation re: Scheduling Order and Order Thereon, entered by the Court on March 20, 2007* | 9 | 2227 |
| 337-2 | 7/21/08 | *Exhibit G:  January 12, 2007 Expert Report of James Steranko* | 9 | 2235 |
| 337-2 | 7/21/08 | *Exhibit H:  January 12, 2007 Expert Report of Mark Evanier* | 9 | 2259 |
| 337-3 | 7/21/08 | *Exhibit I:  February 9, 2007 Expert Rebuttal Report of Mark Evanier* | 9 | 2284 |
| 337-3 | 7/21/08 | *Exhibit J:  Excerpts from the March 30, 2007 Deposition of Mark Evanier* | 10 | 2316 |
| 337-3 | 7/21/08 | *Exhibit M:  Excerpts from "The Creation of a Superhero" by Jerome Siegel* | 10 | 2331 |
| 290 | 2/21/08 | Stipulation for Order Requesting Status Conference and Briefing Schedule | 10 | 2336 |

| 196 | 6/25/07 | Reply Declaration of Marc Toberoff In Support Of Plaintiff's Motion for Partial Summary Judgment | 10 | 2340 |
|---|---|---|---|---|
| 196 | 6/25/07 | *Exhibit A:  Tolling Agreement Between Plaintiffs and DC Comics, dated April 6, 2000* | 10 | 2343 |
| 196 | 6/25/07 | *Exhibit B:  October 28, 2002 letter from Joanne Siegel and Laura Siegel Larson to Lillian J. Laserson* | 10 | 2349 |
| 196 | 6/25/07 | *Exhibit C:  Excerpts from listings from the Library of Congress' Catalog of Copyright Entries for the years 1939, 1940 and 1976* | 10 | 2352 |
| 196 | 6/25/07 | *Exhibit D:  Plaintiff's Memorandum of Points and Authorities In Support of Motion to Compel Production of Documents* | 10 | 2367 |
| 196 | 6/25/07 | *Exhibit E:  Excerpts from November 7, 2006 Deposition of Paul Levitz* | 10 | 2474 |
| 196 | 6/25/07 | *Exhibit F:  Excerpts from October 7, 2006 Deposition of Kevin Marks, Esq.* | 10 | 2479 |
| 196 | 6/25/07 | *Exhibit G: Excerpts from August 6, 2006 Deposition of Plaintiff Laura Siegel Larson* | 10 | 2485 |
| 196 | 6/25/07 | *Exhibit H:  Defendants' Answer to First Amended Complaint* | 10 | 2491 |
| 194 | 6/25/07 | Plaintiff's Reply In Support Of | 10 | 2508 |

| | | | | |
|---|---|---|---|---|
| | | Motion for Partial Summary Judgment | | |
| 184 | 5/29/07 | Declaration of Michael Bergman re: Plaintiffs' Motion for Summary Judgment | 10 | 2590 |
| 184 | 5/29/07 | *Exhibit A: Copyright Registration and Excerpts from "The Creation of a Superhero" by Jerome Siegel* | 10 | 2595 |
| 184 | 5/29/07 | *Exhibit B: June 12, 1934 letter from Jerome Siegel to Russell Keaton* | 11 | 2608 |
| 184 | 5/29/07 | *Exhibit D: March 1, 1938 Assignment from Jerome Siegel and Joseph Shuster to Detective Comics* | 11 | 2623 |
| 184 | 5/29/07 | *Exhibit L: Copy of Superman No. 1* | 11 | 2625 |
| 184 | 5/29/07 | *Exhibit P: April 15, 1999 letter from Paul Levitz to Joanne Siegel* | 11 | 2639 |
| 181 | 5/29/07 | Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment | 11 | 2641 |
| 163 | 4/30/07 | Declaration of Marc Toberoff re: Plaintiffs' Motion for Summary Judgment | 11 | 2739 |
| 163 | 4/30/07 | *Exhibit A: November 21, 1947 Opinion* | 11 | 2745 |
| 163 | 4/30/07 | *Exhibit B: April 12, 1948 Findings of Fact and Conclusions of Law* | 11 | 2758 |

| 163 | 4/30/07 | *Exhibit C:  May 19, 1948 Stipulation of Settlement* | 11 | 2801 |
|---|---|---|---|---|
| 163 | 4/30/07 | *Exhibit D:  May 21, 1948 Consent Judgment* | 11 | 2813 |
| 163 | 4/30/07 | *Exhibit F:  June 1, 1965 Renewal Copyright Registrations re: Superman* | 11 | 2825 |
| 163 | 4/30/07 | *Exhibit G:  Notice of Termination re: March 31, 1938 Grant* | 11 | 2830 |
| 163 | 4/30/07 | *Exhibit H:  Notice of Termination re: December 4, 1937 Agreement* | 11 | 2840 |
| 163 | 4/30/07 | *Exhibit I:  Notice of Termination re: September 22, 1938 Agreement* | 11 | 2850 |
| 163 | 4/30/07 | *Exhibit J:  Notice of Termination re: September 22, 1938 Agreement with McClure* | 11 | 2860 |
| 163 | 4/30/07 | *Exhibit K:  Notice of Termination re: 1948 Stipulation* | 11 | 2870 |
| 163 | 4/30/07 | *Exhibit L:  Notice of Termination re: December 19, 1939 Agreement* | 11 | 2880 |
| 163 | 4/30/07 | *Exhibit M:  Notice of Termination re:  December 23, 1975 Agreement* | 11 | 2890 |
| 163 | 4/30/07 | *Exhibit N:  Certificates of Recordation re: Notices of Termination* | 12 | 2900 |
| 164 | 4/30/07 | *Exhibit R:  Defendants' First Amended Counterclaim* | 12 | 2915 |

| 164 | 4/30/07 | *Exhibit S: Siegel v. National Periodical Publications, Inc. et al., 364 F. Supp. 1032 (S.D.N.Y. 1973)* | 12 | 2956 |
|---|---|---|---|---|
| 164 | 4/30/07 | *Exhibit T: Siegel v. National Periodical Publications, Inc. et al., 508 F.2d 909 (2d Cir. 1974)* | 12 | 2965 |
| 164 | 4/30/07 | *Exhibit U: March 24, 2006 Order by Judge Ronald S. W. Lew in Civ. Case No. 04-08776 RSWL (RZx)* | 12 | 2973 |
| 164 | 4/30/07 | *Exhibit V: May 23, 2006 Order by Judge Ronald S. W. Lew in Civ. Case No. 04-08776 RSWL (RZx)* | 12 | 2991 |
| 164 | 4/30/07 | *Exhibit W: Appellate Brief of National Periodical Publications, Inc. et. al. from Siegel v. National Periodical Publications, Inc. et al., 508 F.2d 909 (2d Cir. 1974)* | 12 | 2995 |
| 164 | 4/30/07 | *Exhibit X: Plaintiff's Complaint* | 12 | 3014 |
| 164 | 4/30/07 | *Exhibit Y: December 23, 1975 Agreement between Warner Communications, Inc and Jerome Siegel and Joseph Shuster* | 12 | 3044 |
| 164 | 4/30/07 | *Exhibit Z: April 6, 2000 Tolling Agreement between Plaintiffs and DC Comics* | 12 | 3057 |
| 164 | 4/30/07 | *Exhibit AA: September 21, 2002 letter from Joanne Siegel to Kevin S. Marks and Bruce M. Ramer* | 12 | 3061 |

| 164 | 4/30/07 | *Exhibit BB:  October 19, 2001 letter from Kevin Marks to John Schulman* | 12 | 3063 |
|---|---|---|---|---|
| 164 | 4/30/07 | *Exhibit CC:  October 26, 2001 letter from Schulman to Marks* | 12 | 3070 |
| 164 | 4/30/07 | *Exhibit DD:  February 1, 2002 letter from Patrick Perkins to Kevin Marks* | 12 | 3079 |
| 164 | 4/30/07 | *Exhibit EE:  Excerpts from October 7, 2006 Deposition of Kevin Marks* | 12 | 3137 |
| 164 | 4/30/07 | *Exhibit FF:  March 15, 1982 letter from Martin D. Payson to Joanne Siegel* | 12 | 3156 |
| 164 | 4/30/07 | *Exhibit GG: Plaintiff's First Amended Complaint* | 12 | 3158 |
| 161 | 4/30/07 | Plaintiffs' Motion for Partial Summary Judgment | 13 | 3192 |
| 159 | 4/30/07 | Defendants' Motion for Partial Summary Judgment | 13 | 3255 |
| 46 | 11/1/05 | Plaintiffs' Reply to Defendants' First Amended Counterclaims | 13 | 3373 |
| Case No 04-8776, 125 | 4/30/07 | Declaration of Michael Bergman re: Defendants' Motion for Summary Judgment | 13 | 3407 |
| Case No 04- | 4/30/07 | Exhibit A:  December 4, 1937 Agreement between Jerome Siegel, | 13 | 3413 |

| | | | | |
|---|---|---|---|---|
| 8776, 125 | | Joseph Shuster and Detective Comics, Inc. | | |
| Case No 10-3633, 74 | 9/20/10 | Minutes From September 20, 2010 Discovery Hearing [1] | 14 | 3416 |
| Case No 10-3633, 348 | 11/25/11 | Defendant Laura Siegel Larson's Answer to First Amended Complaint | 14 | 3418 |
| Case No 10-3633, 1 | 5/14/10 | Plaintiff DC Comics' Complaint | 14 | 3456 |
| | 2/19/14 | Docket Report (Case No. 04-8400) | 14 | 3521 |

---

[1] Larson requests that this court take judicial notice of certain documents files in the *Pacific Pictures* case – which was deemed "related" to the case below and transferred to the same district court judge – pursuant to Federal Rule of Evidence 201. As this Court has established, "[m]aterials from a proceeding in another tribunal are appropriate for judicial notice." *Biggs v Terhune*, 334 F.3d 910, 916 (9th Cir. 2003) (overruled on other grounds); *see also Reyn's Pasta Bella, LLC v Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (taking judicial notice of "pleadings, memoranda, expert reports, etc." from related case); *U.S. ex rel. Robinson Rancherita Citizen Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("we may take notice of proceedings in other courts") (internal quotations and citations omitted); *U.S. v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases")

## EXCERPTS OF RECORD (From Case No. 04-8776)

| Docket No. | Filing Date | Document Title | Vol. | Page |
|---|---|---|---|---|
| 254 | 6/18/13 | 59(e) Amended Judgment | 15 | 3598 |
| 253 | 6/18/13 | 59(e) Order | 15 | 3603 |
| 243 | 4/18/13 | "Final Judgment" In Superboy | 15 | 3605 |
| 242 | 4/18/13 | Order Granting Motion For Summary Judgment Re: Superboy And The Superman Ads | 15 | 3609 |
| 235 | 3/20/13 | Order Granting In Part Defendant's Motion For Summary Judgment | 15 | 3620 |
| 175 | 3/31/08 | Order Denying Cross-Motions for Partial Summary Judgment | 15 | 3636 |
| 151 | 7/27/07 | Order Granting Defendants' Motion for Reconsideration | 15 | 3638 |
| 82 | 3/23/06 | Order Granting Plaintiffs' Motion for Partial Summary Judgment & Denying Defendants' Motion for Summary Judgment | 15 | 3711 |
| 259 | 7/16/13 | Defendants' Notice of Cross-Appeal | 16 | 3728 |
| 257 | 7/16/13 | Plaintiff's Notice of Appeal | 16 | 3730 |
| 250 | 6/17/13 | Plaintiff's 59(e) Motion | 16 | 3732 |
| 227 | 2/25/13 | Joint Status Report Re: The Superman and Superboy Cases | 16 | 3763 |

| 184 | 12/21/09 | Joint Status Report | 16 | 3779 |
| 103 | 1/12/07 | Defendants' Motion for Reconsideration | 16 | 3804 |
| 56 | 2/15/06 | Defendants' Motion for Summary Judgment | 16 | 3806 |
| 51 | 2/15/06 | Plaintiff's Motion for Partial Summary Judgment | 16 | 3838 |
| 47 | 11/4/05 | Answer to First Amended Counterclaims | 16 | 3870 |
| 44 | 10/18/05 | First Amended Counterclaims | 16 | 3904 |
| 37 | 9/7/05 | Answer to First Supplemental Complaint | 16 | 3943 |
| 34 | 4/13/05 | First Supplemental Complaint | 16 | 3957 |
|  | 2/19/14 | Docket Report (Case No. 04-8776) | 16 | 3986 |

# EXHIBIT J

ER 2316

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOANNE SIEGEL and LAURA SIEGEL LARSON,

     Plaintiffs,

    vs.

WARNER BROS. ENTERTAINMENT INC., et al.,

     Defendants.

AND RELATED CROSS-ACTION.

No. 04-8400 SGL (RZx)

-and-

No. 04-8776 SGL (RZx)

**CERTIFIED ORIGINAL**

VIDEOTAPED DEPOSITION OF MARC S. EVANIER

Beverly Hills, California

Friday, March 30, 2007

Reported by:

DAVID S. COLEMAN

CSR No. 4613



**US LEGAL SUPPORT**

Certified Shorthand Reporters

15250 Ventura Boulevard
Suite 410
Sherman Oaks, CA 91403

800-993-4464 • Fax 800-984-4464
www.uslegalsupport.com

```
 1              Videotaped deposition of MARC S. EVANIER,

 2         taken on behalf of Defendants and Counter-

 3         claimants, at 9665 Wilshire Boulevard, 9th

 4         Floor, Beverly Hills, California, beginning

 5         at 10:18 AM and ending at 7:48 PM on Friday,

 6         March 30, 2007, before DAVID S. COLEMAN,

 7         Certified Shorthand Reporter No. 4613.

 8

 9

10    APPEARANCES:

11

12    For Plaintiffs:

13         LAW OFFICES OF MARC TOBEROFF
           BY:  MARC TOBEROFF
14         Attorney at Law
           2049 Century Park East, Suite 2720
15         Los Angeles, California 90067
           310-246-3333
16

17

18    For Defendants and Counterclaimant:

19         WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL
           9665 Wilshire Boulevard, 9th Floor
           Beverly Hills, California 90212
20         310-858-7888
           (Of Record But Not Present.)
21

                -and-
22
           PERKINS LAW OFFICE, PC
23         BY:  PATRICK T. PERKINS
           Attorney at Law
24         1711 Route 9D
           Cold Springs, New York 10516
25         845-265-2820
```

                                                              2

**U.S. LEGAL SUPPORT**

136

ER 2318

```
 1    APPEARANCES (Continued):

 2

 3    THE VIDEOGRAPHER:

 4        SEAN COUTU
          U.S. LEGAL SUPPORT
 5        15250 Ventura Boulevard, Suite 410
          Sherman Oaks, California 91403
 6        800-993-4464

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

**U.S. LEGAL SUPPORT**

ER 2319

137

A   I do not believe there is.

Q   Are Clark Kent's adoptive parents, the Kents, in Action Comics No. 1?

A   I don't believe so.  I'd have to check it again and make sure.

Q   Is there a newspaper called the Daily Planet in Action Comics No. 1?

A   I don't think so, no.

Q   Is there a town called Metropolis in Action Comics No. 1?

A   There is a town in Action Comics No. 1.

Q   Is the town named Metropolis?

A   The town is not named Metropolis in that story to my knowledge.

Q   Does -- in Action Comics No. 1, in your opinion does Superman have the ability to fly?

A   I believe he does.

Q   And is his ability to fly in Action Comics No. 1 the same as the manner in which it's manifested in the motion picture SUPERMAN RETURNS?

MR. TOBEROFF:  Vague and ambiguous.

THE WITNESS:  I don't know.  I don't know the answer to that.

BY MR. PERKINS:

Q   Isn't it true that in Action Comics No. 1 he is

130

138

ER 2320

refers to as leaping?

    A    I believe that's how they explained it, yes.

    Q    Does Superman have x-ray vision in Action Comics
No. 1?

    A    I believe there was a section that some
animation -- animation -- comic book scholars have
suggested implies that, but I don't recall the use of
that term.

    Q    Where is it implied?  Do you know?

    A    There is a scene where Lois is in a car being
taken away, and Superman is some distance from her, and
you can't see into the car, and the suggestion has been
made that that -- that it's implied and actually even in
some places more explicit that Superman has great senses,
super-heightened senses and in that particular scene he
is using the equivalent of x-ray vision, as it were later
called, to notice that Lois is in the car, because he was
not present at the time she was put into the car.

    Q    And who are the experts that you're referring
to?

    A    I can't remember specific people mentioning it.
You know, with over 35 years of talking about these
comics with people, you hear it from different people.

    Q    And is it your opinion that he has x-ray vision
in Action No. 1?

                                                        131

A    It's my opinion that he has superhuman senses. I don't know that I have an opinion on whether he has x-ray vision specifically or he just can see very far and has just incredibly good vision.

Q    Do you believe that he has telescopic vision in Action Comics No. 1?

A    I believe he probably does.  I believe that's implied in the story.

Q    Do you believe that he has heat vision in Action Comics No. 1?

A    I don't recall any moment in the story that suggests that.

Q    How about superhearing, does he have that?

A    There is a place in the story where it would seem that he has more than normal hearing ability, yes.

Q    What about superbreath, does he have that in Action No. 1?

A    I just exhaled.  I'm sorry.

I would have to review the story again to see if I remembered that.

Q    What about the ability to travel unprotected through space, does he have that in Action Comics No. 1?

A    Same answer:  I'd have to see it again.

Q    Is there any character named Perry White in Action Comics No. 1?

132

Q   Was that Samantha's dual identity?

A   No.  That was the actress who played it's dual identity.

MR. PERKINS:  Would you mark that, please?

(Deposition Exhibit 5 was marked for identification by the reporter and is attached hereto.)

BY MR. PERKINS:

Q   I have asked the court reporter to mark as Evanier 5 a multi-page document.  Mr. Evanier, do you recognize what this is?

A   This is a reprint of -- and may I say a bad reprint of the Superman story that appeared in Action Comics No. 1 as it was reprinted in the Action Comics Archive Book that DC Comics published a couple years ago.

Q   Now, going back to some of the questions I asked you before, can you show me where in Action Comics No. 1 there is a demonstration of Superman's super-senses?

A   All right.  Give me a minute here.

Well, on page 17 of the xerox you gave me, which is in panel 56 of the story -- the panels are numbered -- we see Superman some distance from the car which Lois Lane is in, and he seems to know that she's in it even though there is no evidence -- I take that back.  Wait a minute.  I'm sorry.  I was confused.  Let me start over

141

here.

On page 17, panel 54, he sees her get into a cab. He is not present when -- at the top of the following page when Lois is taken out of the cab and put into the other car, yet he seems to know by the middle of the page, of what's page 18 on the xerox, that the car contains somebody he's interested in, somebody he needs to stop, in this case probably because Lois has been abducted, and the assumption that I would make from that is that he has used some sort of super-sensitive ability to find out that she is in that car, that that car is even relevant to his life, because otherwise we have no way of -- he has seen the hoodlums on the previous page, but he doesn't know that Lois is in that car necessarily and --

    Q   Well, she is not in that car in that panel, is she?

    A   In that panel I think she is in the car.

    MR. TOBEROFF:  Which panel are you referring to?

BY MR. PERKINS:

    Q   On page 17?

    A   On page 17, no, she is not in that car.

    MR. TOBEROFF:  He was referring to page 18.

    THE WITNESS:  I'm lost here.  What are we talking about here?

142

Hold on. I need to -- I need a Kleenex break here.

All right.

MR. TOBEROFF: Take your time when you are reviewing --

THE WITNESS: Okay.

MR. TOBEROFF: -- this panel by panel --

MR. TOBEROFF: Okay.

MR. TOBEROFF: -- in the material.

THE WITNESS: Thank you. I will. I will.

On page 18 of the xerox, which is the page I'm looking at now, Superman decides to stop the car and confront them, which he has no reason to do if he does not know that Lois is in the car. Earlier, in the top of the page, Lois is forced out of the taxi and into the car. She is abducted, and he was not present for that. Therefore what I would assume from this is that somehow, via some ability beyond normal senses, he has found out that Lois is in that car, either through visual or audio means, and so he's stopping the car because he knows she is in that car and needs to be rescued from the hoodlums. That is one place. I think there's another one later where I believe he is demonstrating super-senses.

On the bottom of page 21 -- well, on page 21 Superman's hanging outside a window eavesdropping on a

143

conversation inside. One would have to have enormously good hearing to be hanging on a window ledge and hearing what's going on inside, and yet it's clearly established at the bottom of that page when he says, "You bet he will," that he is hearing expressly the dialogue within, and that says to me he has better-than-normal hearing.

BY MR. PERKINS:

Q    Well, do we know that the window isn't open, for example?

    You're looking at panel --

A    Yes.

Q    82?

A    Panel 82? Do we know that the window is open, no, I can't tell from this, which is a, you know, nineteenth-generation copy of the material, if the window is supposed to be drawn open or not.

Q    And the superhearing that Superman exhibits now in the SUPERMAN RETURNS motion picture, for example, would he need to be right outside the window in order to hear what's going on inside?

A    Probably not.

Q    Now, can you show me where is a demonstration of x-ray vision, if at all, in Action Comics No. 1?

A    Well, the -- as I said earlier, the scene where he knows that she's in the car could be taken as a

144

demonstration of x-ray vision.

Q   How do we know that he knows she's in the car?

A   Because he has no reason to stop the car if he doesn't know Lois is in there.  He sees the car -- at the bottom of page 17 he sees the crooks leaving the roadhouse.  They're right there in front of him.  If he had reason to stop them, if he had any reason to take action against them, he could have done it right there. The only thing that has changed in the story at the point where he does decide to take action and jump in front of their car and stop them from leaving is that Lois has been has been abducted.  Therefore I assume he knows that Lois has been abducted, and that is his reason for stopping the car.  He has -- nothing else has changed.

Q   Well, is it possible that he could have seen the car drive by on the road and seen in the window that Lois was in the car?

A   That's not in the story.

Q   Well, neither is the super -- the x-ray vision, is it.

A   No, but he knows -- he knows that Lois is in the car.

Q   And he could have found out by seeing in the window.

Correct?

145

A    That's not in the story.

Q    But he could have.

Correct?

A    There could have been a panel -- there could have been a panel here where he says, "Oh, look she's driving down the road and" -- "they're driving down the road in the car," but that panel is not in the story here. You are asking me to speculate on what panels could be in here that are not in this story.

Q    Well, but you're speculating that there was some kind of event that took place where he exercised x-ray vision.

Correct?

MR. TOBEROFF: Argumentative. That's not his testimony.

THE WITNESS: No, that's not my testimony. Sorry. Sorry for repeating what you said.

No. I am testifying that the event -- there is an event here. We see it. It is established at the top of page 18 that Lois has been abducted. She has been taken out of the car and put into the -- to Butch's car, identified. She's taken out of the taxi she was in. She's put into Butch's car. That has changed.

Now, a couple panels later Superman, who previously had not decided to stop that car, has decided

146

to stop that car. We see no evidence of him being near the car. We see no evidence of the car driving past him. He is just ahead of them in the road. He has gone ahead of them, so that they are now driving towards him. He is not racing alongside the car. He is ahead of them. So what I would assume from that is that he has found out through his senses, which may have been x-ray vision or maybe it was superhearing that he heard her voice, that he now knows something he did not know five panels earlier, and he has found that out somehow.

And, you know, this is a man who has been established in the story as having abilities far beyond, you know, as they say, mortal men and that he is a guy who can do things that you and I can't do, so I don't find it unreasonable then to assume he has lots of abilities of things he can do, that he is an incredible guy. Throughout the story he is continually surprising us with abilities he has that you and I do not have. I don't have them. Perhaps you do. And so my assumption is, wow, he did something amazing there. He somehow knew that she was in that car.

BY MR. PERKINS:

    Q  But there is no panel that shows him exercising x-ray vision.

      Correct?

147

A   I don't -- no.  I think that is -- I think that is implied there, but there is no panel where he -- where the term "x-ray vision" is used or he is shown with beams coming through his eyes, as is later represented.

Q   And the only reason that we'd be talking about x-ray vision in connection with Superman is because that power is established in a later story.

Correct?

A   That power is explicitly mentioned, that term, in later stories, yes.

Q   If Action Comics No. 1 were the only Superman story ever written, would there ever be any reason to believe that Superman had x-ray vision?

A   If Action Comics No. 1 had been the only one ever written, we wouldn't be sitting here now.

Would there be -- no, because the term "x-ray vision" -- we wouldn't be using the term "x-ray vision." We would be talking about how this guy has incredible senses and powers.

Q   Could you turn to page 4 of your report, please?

A   Page 4 of my report.

MR. PERKINS:  I'm sorry.  We need to take a short break for the videographer.

THE VIDEOGRAPHER:  We are off the record.  The time is 3:08 PM.

148

**U.S. LEGAL SUPPORT**

# EXHIBIT M

Jerry Siegel
11928 Darlington Avenue, Apt. 102
Los Angeles, California 90049
(213) 820-2492

CREATION OF A SUPERHERO

By Jerry Siegel

MW 1404

EXHIBIT
167
ER 2332
Waid

To Joanne, Laura and Joe

yesterday, today and forever

Chapter Five

MY FRIEND SUPERMAN

When I first originated the "Superman" comic strip, I wanted to do a fantasy
adventure strip, but I knew it was important to come up with a new angle. The
adventures of "Buck Rogers" occurred in the future, and in outer space... "Flash
Gordon" battled incredible menaces on the planet Mongo ... "Tarzan"'s adventures
took place in the jungle. It occurred to me, why not have a comics hero's astound-
ing adventures take place right here on Earth ... in cities similar to those we
are familiar with. He would battle the type of wrongs we read about in our daily
newspapers. He would use his magnificent abilities to help ordinary people like
you and me. I figured a lot of people could identify with that.

I thought I would pull a switch, do something "different" in "Superman".
Most fiction heroes were constantly being harassed by villains, and their perils
would grow worse and worse. This was what kept the reader intensely interested.
I thought, since Superman is so incredibly powerful, I'll reverse the usual
fiction formula. Instead of a beleaguered hero constantly trying to survive
menaces, I had Superman do the chasing, and he constantly had the bad guys
on the run. But I learned that if things are too easy for a hero, that can
sabotage the suspense of a story ... and so I had Superman hounded by
super-villains such as Luthor, the mad scientist.

In the early days when Joe and I were producing comics which were being
published, I would hurriedly walk over to his apartment, every day, sit down
and start writing script for what he was to draw that day. I didn't send
plots or scripts to editors, first. Usually, I did not know what would be
happening in the story the next day. Yet I knew that the comics had to be
very lively and inventive ... that a lot of fun and action should be going on.

MW 1483

ER 2334

concentrated so much on what we were creating that we gave little thought about protecting ourselves and our heirs, in the event "Superman" became the tremendous hit we were confident it would become. We just couldn't conceive, while creating and developing "Superman" that anyone would every try to downgrade our contribution.

We didn't realize that it is not enough to create a hit. You must also protect your interests as its originator.


It has been said that the "Superman" comic strip has changed greatly through the years, since it was originated by Joe Shuster and me.

Has it really?

Superman still is a being from another world who uses his super-powers, including super-strength, here on Earth to crusade against evil. When not attired in his famous colorful Superman costume, he masquerades in his secret identity of Clark Kent. He is still admired by reporter Lois Lane, who does not know that he is secretly Clark Kent. Superman still wears his costume. Clark Kent still wears glasses he really doesnt need.

All the above was in the concept I dreamt up in the early 1930s, and it still appears in the comic strip today. This is the very guts, the backbone of the "Superman" concept.

I am of the opinion that if the owners of "Superman" were to hire the world's greatest artists, the universe's greatest literary geniuses, the cosmos' most brilliant editors and told them to produce the "Superman" comic strip wihout using those integral elements, that the property would suffer severely.

Should Clark Kent no longer pretend to be meek and mild, but instead be very macho?

That could be done via editorial surgery. But then, it the would be like

1   WEISSMANN WOLFF BERGMAN
       COLEMAN GRODIN & EVALL LLP
2   Michael Bergman (SBN 37797)
    Anjani Mandavia (SBN 94092)
3   9665 Wilshire Boulevard, Ninth Floor
    Beverly Hills, California 90212
4   Telephone: 310-858-7888
    Fax:        310-550-7191
5
    FROSS ZELNICK LEHRMAN & ZISSU, P.C.
6   Roger L. Zissu (Admitted *pro hac vice*)
    866 United Nations Plaza
7   New York, New York 10017
    Telephone: 212-813-5900
8   Fax:        212-813-5901

9   PERKINS LAW OFFICE, P.C.
    Patrick T. Perkins (Admitted *pro hac vice*)
10  1711 Route 9D
    Cold Spring, NY 10516
11  Telephone: 845-265-2820
    Fax:        845-265-2819
12
    Attorneys for Defendants and Counterclaimant
13
                    UNITED STATES DISTRICT COURT
14     CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

15  JOANNE SIEGEL and LAURA          )  Case No. CV 04-8400 SGL (RZx)
    SIEGEL LARSON,                   )
16                                   )  Hon. Stephen G. Larson, U.S.D.J.
                                     )  Hon. Ralph Zarefsky, U.S.M.J.
17           Plaintiffs,            )
                                     )
18       vs.                        )  **STIPULATION REQUESTING**
                                     )  **STATUS CONFERENCE AND**
19  TIME WARNER INC., WARNER         )  **BRIEFING SCHEDULE**
    COMMUNICATIONS INC., WARNER      )  **REGARDING CERTAIN TRIAL**
20  BROS. ENTERTAINMENT INC.,        )  **AND PRE-TRIAL MATTERS**
    WARNER BROS. TELEVISION          )
21  PRODUCTION INC., DC COMICS,      )
    and DOES 1-10,                   )
22                                   )
             Defendants.            )
23                                   )
                                     )
24                                   )
                                     )
25                                   )
                                     )
26  _____)
                                     )
27  AND RELATED COUNTERCLAIMS.       )
                                     )
28

                                                        **ER 2336**

              STIPULATION REQUESTING STATUS CONFERENCE

1   Plaintiffs/counterclaim-defendants Joanne Siegel and Laura Siegel Larson
2   (collectively "Plaintiffs"), and defendants Warner Bros. Entertainment Inc., Time
3   Warner Inc., Warner Communications Inc. and Warner Bros. Television
4   Production Inc. and defendant/counterclaimant DC Comics (collectively
5   "Defendants"), by and through their respective counsel of record, hereby stipulate
6   and agree as follows:

7   WHEREAS, trial in this matter is presently set to commence on May 13,
8   2008, and the Final Pre-trial Conference is scheduled for April 28, 2008;

9   WHEREAS, the parties have identified certain issues for resolution after the
10  Court's pending ruling on the parties' cross-motions for summary judgment which
11  issues may substantially affect the conduct of the trial and the parties' pre-trial
12  preparations, as well as the length of the trial. These issues are as follows:

14  1.   If Plaintiffs are successful in their Superman copyright termination claim,
15       is Plaintiffs' share of post-termination profits as a joint owner of the
16       recaptured Superman copyright(s) subject to reduction via an
17       "apportionment" analysis.

19  2.   If Plaintiffs are successful in their Superman copyright termination claim,
20       are the following to be determined by the Court or by the jury: (a) the
21       amount of post-termination Superman profits at issue and (b) the degree,
22       if any, to which Plaintiffs' share of such profits should be reduced by
23       "apportionment"?

25  3.   If an "apportionment" analysis is held to be appropriate, is the trier of
26       fact (be it the Court or the jury), required to make a separate and
27       independent apportionment determination, if any, for each post-
28       termination Superman work?

4. Do Plaintiffs or Defendants bear the burden of proof on (a) the issue of Defendants' profits, and (b) the issue of the apportionment, if any, of those profits?

WHEREAS, the parties believe that the forgoing issues are of sufficient importance to the conduct of the trial such that these issues should be fully briefed and argued and, for the sake of efficiency, addressed by the Court in advance of the Final Pre-trial Conference;

WHEREAS, the parties have identified the following additional issue, but are not in agreement as to when it should be determined, in that Plaintiffs believe it improperly presents an additional motion for partial summary judgment after the dispositive motion deadline and, in any event, presents multiple issues of fact to be determined at trial while Defendants believe that the issue is properly the subject of a motion in limine, the import of which requires that it should be determined substantially prior to trial in that it is fundamental to the presentation of any "apportionment" analysis:

5. If Plaintiffs are successful in their Superman copyright termination claim, are Plaintiffs only entitled to profits derived from Plaintiffs' recaptured copyright interest in Action Comics No. 1; that is, was Jerome Siegel's contribution on all subsequent Superman works (within the termination "window") as a "work-made-for-hire" and accordingly not subject to termination?

NOW THEREFORE, the parties respectfully request that the Court set a status conference at its earliest convenience to set a briefing schedule for the parties to brief the above issues after the Court's determination of the parties'

**ER 2338**

3

1    pending motions for partial summary judgment so that they might be determined in

2    an orderly fashion. The parties are concurrently submitting a stipulation regarding

3    the rescheduling of the trial and pre-trial dates in this matter in a manner that

4    would reasonably follow the Court's rulings on the parties' pending motions for

5    partial summary judgment; accordingly, the parties respectfully request that in the

6    event the Court does not grant that concurrent stipulation, those trial and pre-trial

7    scheduling matters also be discussed at the requested status conference.

8

9    Respectfully submitted,

10    DATED: February 21, 2008      WEISSMANN WOLFF BERGMAN
                                            COLEMAN GRODIN & EVALL LLP

11

12                                    FROSS ZELNICK LEHRMAN & ZISSU,
                                   P.C.

13                                    PERKINS LAW OFFICE, P.C.

14

15                                    By: _____
                                         Michael Bergman

16                                    Attorneys for Defendants

17    DATED: February __, 2008      LAW OFFICES OF MARC TOBEROFF,
                                            PLC

18

19                                    By:_____

20                                          Marc Toberoff
                                   Attorneys for Plaintiffs

21

22

23

24

25

26

27

28

4

ER 2339

STIPULATION REGARDING SCHEDULING ORDER

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 53 of 321



Marc Toberoff (CA State Bar No. 188547)
Nicholas C. Williamson (CA State Bar No. 231124)
LAW OFFICES OF MARC TOBEROFF, PLC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
Email: MToberoff@ipwla.com

Attorneys for Plaintiffs and Counterclaim Defendants
JOANNE SIEGEL and LAURA SIEGEL LARSON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA- EASTERN DIVISION

| | |
|---|---|
| JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS, a general partnership; and DOES 1-10, <br><br> Defendants. | Case No. CV 04-8400 SGL (RZx) <br><br> [Honorable Stephen G. Larson] <br><br> **REPLY DECLARATION OF MARC TOBEROFF IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> [Complaint filed: October 8, 2004] <br><br> Date: July 23, 2007 <br> Time: 10:00 a.m. <br> Place: Courtroom 1 |
| DC COMICS, <br><br> Counterclaimant, <br><br> vs. <br><br> JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, <br><br> Counterclaim Defendants. | [Reply Memorandum; Reply Declaration of Mark Evanier; Response to Defendants' Local Rule 56-2 Statement of Genuine Issues and Evidentiary Objections Filed Concurrently Herewith] |

Reply Declaration Of Marc Toberoff In Support Of Plaintiffs' Motion For Partial Summary Judgment



Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 54 of 321

# DECLARATION OF MARC TOBEROFF

I, Marc Toberoff, declare as follows:

1.      I am an attorney at the Law Offices of Marc Toberoff, PLC, counsel of record for plaintiffs Laura Siegel Larson and Joanne Siegel ("Plaintiffs"). I am a member in good standing of the State Bar of California and submit this reply declaration in support of Plaintiff's Motion for Partial Summary Judgment. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      Attached hereto as "Exhibit A" is a true and correct copy of a tolling agreement dated April 6, 2000 between Plaintiffs and DC Comics.

3.      Attached hereto as "Exhibit B" is a true and correct copy of a letter from Joanne Siegel and Laura Siegel Larson to Lillian J. Laserson, General Counsel, DC Comics, dated October 28, 2002.

4.      Attached hereto as "Exhibit C" are true and correct copies of listings from the Library of Congress' Catalog of Copyright Entries for the years 1939, 1940 and 1976 I caused to be copied.

5.      Attached hereto as "Exhibit D" is a true and correct copy of Plaintiffs' Memorandum of Points and Authorities In Support of Motion to Compel Defendant DC Comics' Production of documents filed April 23, 2007.

6.      Attached hereto as "Exhibit E" is a true and correct copy of excerpts from the November 7, 2006 deposition of DC Comics' president, Paul Levitz that I conducted.

7.      Attached hereto as "Exhibit F" is a true and correct copy of excerpts from the October 7, 2006 deposition of Kevin Marks, Esq.

8.      Attached hereto as "Exhibit G" is a true and correct copy of excerpts from the August 6, 2006 deposition of Plaintiff Laura Siegel Larson.

1

Reply Declaration Of Marc Toberoff In Support Of Plaintiffs' Motion For Partial Summary Judgment



9.    Attached hereto as "Exhibit H" is a true and correct copy of Defendants' Answer to First Amended Complaint for case no. 04-8400 SGL (RZx) served November 1, 2005.

I declare under penalty of perjury under the laws of California and of the United States that the foregoing is true and correct.

Executed on June 25, 2007 in Los Angeles, California.



                                                    _____
                                                    Marc Toberoff

Reply Declaration Of Marc Toberoff In Support Of Plaintiffs' Motion For Partial Summary Judgment

ER 2342

# EXHIBIT A

# TOLLING AGREEMENT

THIS AGREEMENT is made and entered into this 6th day of April, 2000, by and between DC COMICS ("DC") and JOANNE and LAURA SIEGEL ("SIEGEL").

WHEREAS, SIEGEL served upon DC and other entities the Notices of Termination of Transfer Covering Extended Renewal Term listed in Exhibit A hereof, which contain certificates stating that these were mailed on April 3, 1997 (the "Notices");

WHEREAS, DC by letter dated April 15, 1999 rejected the validity and scope of the Notices;

WHEREAS, at this time, DC and SIEGEL are in negotiations to find an amicable resolution in respect of the Notices;

NOW, THEREFORE, in consideration of the mutual covenants and conditions herein contained and to encourage continued negotiations between the parties, DC and SIEGEL for themselves, their predecessors, successors, past and present subsidiaries or affiliates, and legal representatives agree as follows:

1. The parties agree not to assert any statute of limitations or laches defenses relating to or rights claimed based upon, the validity, invalidity, or legal effect of the Notices, or any one of them, where such defenses become available because of the passage of time during the period from the date hereof until cancellation of this Tolling Agreement pursuant to paragraph 7 hereof (the "Tolling Period"). The parties agree that this Agreement shall not be construed as, nor considered to be, a waiver of any other claims or defenses to any lawsuits or actions, including such defenses available because of the passage of time prior to the date hereof.

2. The parties acknowledge that nothing in this Agreement (nor its execution) is, or shall be construed as an admission or acknowledgement of liability or an admission or

SENT BY:
FHX NO. : 310-827-7227
5- 0 : 6:21PM :
pr. 06 2000 03:10PM P3
827 7227
# 6/12

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 58 of 321

acknowledgement that any laches or statute of limitations claim is or would be valid. Nor shall this Agreement constitute a litigation standstill agreement by any of the parties hereto under which any of them agrees not to institute litigation to protect or enforce their rights except that, if a party terminates negotiations under Paragraph 7 hereof, no party shall initiate litigation for a period of 10 business days.

3. The parties irrevocably acknowledge and agree that they are now and forever estopped and precluded from contesting or denying the validity and enforceability of this Agreement, and have been advised of the legal effect of this Agreement by their respective legal counsel.

4. The parties acknowledge and agree that this Agreement is not admissible in any litigation proceedings for any purpose other than enforcement of the terms hereof, nor shall it otherwise be considered an admission by any party hereto.

5. This Agreement constitutes the entire agreement among the parties hereto and sets forth all promises, covenants, agreements, conditions, and understandings between the parties with respect to the tolling of any statute of limitations or laches defenses.

6. Any controversy regarding this Agreement shall be decided without regard to rules of construction regarding authorship.

7. The Tolling Period provided for in this Agreement shall remain in effect until 10 business days after the earlier of: (a) one of the parties terminating negotiations, in writing, relating to the Notices, or (b) the parties reaching an amicable resolution of the disputes between them relating to the Notices. Cancellation of the Tolling Period by one of the above events shall not alter or extinguish the parties' other rights hereunder. Any notices required under this Agreement shall be sent by United States Certified Mail, Return Receipt Requested to:

2



Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 59 of 321

| To DC Comics | To The Siegels |
|---|---|
| Lillian J. Laserson<br>General Counsel<br>DC Comics<br>1700 Broadway<br>New York, New York 10019 | Joanne Siegel<br>13900 Panay Way, R-115<br>Marina Del Ray, CA 90292<br><br>Laura Siegel Larson<br>6400 Pacific Avenue, No. 106<br>Playa del Rey, CA 90293 |
| **With a copy to:** | **With a copy to:** |
| Carol F. Simkin/Roger L. Zissu<br>Pross Zelnick Lehrman & Zissu, P.C.<br>866 United Nations Plaza<br>New York, New York 10017 | Bruce Ramer/Kevin S. Marks<br>Gang, Tyre, Ramer & Brown, Inc.<br>132 South Rodeo Drive<br>Beverly Hills, CA 90212-2403 |

8.  The terms of this Agreement apply to Michael Siegel as between Michael Siegel and

DC.

AGREED:

DC COMICS

By:_____

Date:_____

JOANNE SIEGEL

*Joanne Siegel*

Date: *April 6, 2000*

LAURA SIEGEL LARSON

*Laura Siegel Larson*

Date: *April 6, 2000*

I:\HOME\PPERKINS\DOCS\DOCS\SUPER\010404-TOLLING AGREEMENT-cp.doc

3

FROM : LARSON
SENT BY :

DC *ICS LEGAL*
FAX NO. : 318-327-7227
4- 5- 0 ; 6:22PM ;
27 7287 Pa
18 7/12

To DC Comics                    To The Siegels

Lillian J. Laderman            Joanne Siegel
General Counsel                11808 Pacific Way, #115
DC Comics                      Marina Del Rey, CA 90292
1700 Broadway
New York, New York 10019       Laura Siegel Larson
                               6402 Pacific Avenue, No. 106
                               Playa del Rey, CA 90293

With a copy to:                With a copy to:

Carol F. Simkin/Roger L. Zissu  Bruce Ramer/Kevin S. Marks
Frem Zelnick Lehrman & Zissu, P.C.  Gang, Tyre, Ramer & Brown, Inc.
866 United Nations Plaza       132 South Rodeo Drive
New York, New York 10019       Beverly Hills, CA 90212-2403

8.  The terms of this Agreement apply to Michael Siegel as between Michael Siegel and

DC.

AGREED:

DC COMICS                      JOANNE SIEGEL

By: *[signature]*              *[signature]*

Date: 4/7/2000                 Date: *[illegible]*

                               LAURA SIEGEL LARSON

                               *[signature]*

                               Date: *April 6, 2000*

3

RECEIVED TIME APR. 7. 2:38PM
SENT BY:GANG TYRE RAMER BROWN
ER 2347

6




Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 61 of 321

## EXHIBIT A

1. Notice of Termination of Transfer Covering Extended Renewal Term re: December 4, 1937 Agreement

2. Notice of Termination of Transfer Covering Extended Renewal Term re: March 1, 1938 Agreement

3. Notice of Termination of Transfer Covering Extended Renewal Term re: September 22, 1938 Agreement

4. Notice of Termination of Transfer Covering Extended Renewal Term re: September 22, 1938 Agreement

5. Notice of Termination of Transfer Covering Extended Renewal Term re: December 19, 1939 Agreement

6. Notice of Termination of Transfer Covering Extended Renewal Term re: May 19, 1948 Agreement

7. Notice of Termination of Transfer Covering Extended Renewal Term re: December 23, 1975 Agreement

4

# EXHIBIT B

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 63 of 321

**Joanne Siegel**
**13929 Marquesas Way #201A**
**Marina Del Rey, CA 90292**

**Laura Siegel Larson**
**6400 Pacific Avenue #106**
**Playa Del Rey, CA 90293**

October 28, 2002

Lillian J. Laserson
General Counsel
DC Comics
1700 Broadway
New York, New York 10019

Dear Ms. Laserson,

Per the Tolling Agreement dated April 6, 2000 between DC Comics ("DC") on the one hand, and Joanne Siegel and Laura Siegel Larson ("Siegel") on the other, enclosed please find a copy of our written notice to DC Comics, Inc., the parent company AOL Time Warner and all of its representatives and associates concerning the Jerry Siegel Family's rights to Superman, Superboy, the Spectre and all related characters and entities.

According to page 2, of the Tolling Agreement:

"The Tolling Period provided for in this Agreement shall remain in effect until 10 business days after the earlier of: (a) one of the parties terminating negotiations, in writing, relating to the Notices, or (b) the parties reaching an amicable resolution of the disputes between them relating to the Notices."

In view of the foregoing, the Tolling Period has been cancelled.

As required by the April 6, 2000 Tolling Agreement, this notice is being sent to you by United States Certified Mail, Return Receipt Requested with a copy to:

Carol F. Simkin/Roger L. Zissu
Fross Zelnick Lerhman & Zissu, P.C.
866 United Nations Plaza
New York, New York 10017

Lillian J. Laserson
General Counsel
DC Comics
October 28, 2002
Page 2

Sincerely,                                    Sincerely,

*Joanne Siegel* (signature)                  *Laura Siegel Larson* (signature)

Joanne Siegel                                Laura Siegel Larson

Enclosure: September 21, 2002 written notification to Paul Levitz terminating
negotiations

CC: Carol F. Simkin/Roger L. Zissu
    Michael Siegel
    Don W. Bulson, Esq.

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 64 of 321

# EXHIBIT C

Case: 13-56243, 02/25/2014, ID: 8991563, DktEntry: 22-10, Page 66 of 321

THE LIBRARY OF CONGRESS

U.S. COPYRIGHT OFFICE

# CATALOG

OF

# COPYRIGHT ENTRIES

PART 1

Books, Group 2

NEW SERIES, VOLUME 36

FOR THE YEAR 1939

Nos. 1-12



LOS ANGELES COUNTY
**LAW LIBRARY**

Published by authority of the Acts of Congress of March 3, 1891,
of June 30, 1906, and of March 4, 1909

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1940

KB159
A12U5
s

# LIBRARY OF CONGRESS

COPYRIGHT OFFICE

1-4388

# CATALOG

OF

# COPYRIGHT ENTRIES

PUBLISHED BY AUTHORITY OF THE ACTS OF CONGRESS OF MARCH 3, 1891,
OF JUNE 30, 1906, AND OF MARCH 4, 1909

PART 1, GROUP 2

PAMPHLETS, LEAFLETS, CONTRIBUTIONS TO
NEWSPAPERS OR PERIODICALS, ETC.

LECTURES, SERMONS, ADDRESSES FOR ORAL DELIVERY

MAPS

1939

NEW SERIES, VOLUME 36

No. 1

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1939

ER 2354
11

Case: 13-57095, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 67 of 321

Sehner, H. & A., inc.• Elkhart, Ind.   23748–23743
   Contest autographs. © Apr. 3, 1939; AA 300561.

Glen Gray's Casa Loma reed section doubling chart. © Apr. 15, 1939; AA 300580.

Selling suits for musical salesmen. v. 4, nos. 1, 2. © Jan. 15, Apr. 5, 1939; AA 300582, 300583.

Step up! © Jan. 25, 1939; 300584.

Take a trip to trumpet heaven. Apr. 10, 1939; AA 300585.

Seneca Lake, N. Y. Seneca Lake directory of the owners of cottages and homes. 303448; John V. Stark, Penn Yan, N. Y. © June 14, 1939; AA 23754

Sentry co.• Foxboro, Mass. Instructions for the Sentry diamond block method of hardening high speed steel. © May 25, 1939; AA 302126. 23755

Senz, Melvin John.• Fort Angeles, Wash. Three point. Rules [and illustration] © May 2, 1939; AA 301844. 23730

Serrel, inc.• Evansville, Ind.

By popular demand . . . 27747–23751 1939; AA 301680.

Free. Win this beautiful Servel Electrolux (new 1939) Duchess model) in the P & G white naphtha soap contest. © May 12, 1939; AA 301682.

Free; cash and prizes totaling more than $101,000. © May 12, 1939; AA 301681.

How to win prospects and make sales. © May 12, 1939; AA 301738. Keep the crowd coming! © May 12, 1939; AA 301683.

Settles, J. Calvin.• Oakland, Calif. God's gift is law made manifest. Apr. 27, 1939; AA 301736. 23762

Severson, Albert.• St. Paul. Adjustable parting knife. © May 25, 1939; 23743

Shannokin, Pa. Polk's Shannokin (Northumberland County, Pa.) directory. 1939. v. 27. © May 25, 1939; A 128822; R. L. Polk & co., inc., Boston. 23764

Shapiro, Edward & Kanter, Sam.• Brooklyn. Citizenship up-to-the-minute. © May 24, 1939; AA 289525. 23765

Shasta water co.• San Francisco. Sparkling news! Shasta water bottled? © May 23, 1939; A 301675. (pt. 2) © May 22, AA 301675.

Sheaf, v. 17, 1939. © June 1, AA 300807; William C. Ralke, Ill.

Sheafer, W. A pen co.• Fort Madison, Ia. Mark dad's lifetime developed—give him the only lifetime service. © June 13, 1939; A 08440.

Sheffield, Herman E.• New York. AA 301675.

Shell chemical co.• San Francisco. Shell carbon. Its properties and its use in the rubber industry. © May 22, 1939; AA 300788.

Shell oil co.• New York. History and tour tips. 1939. © May 25, 1939; AA 298776.

Shelton, Fredonia. Puzzle poems. 1, by Fredonia Shelton and Tate; illustrated by Ethel May. 1, 1939; AA 298682; Shelton and New Jersey.

[Shelton, Sam J.] Inside O'Malley's bold effort to collect on loss from General life. © May 8, 1939; AA 298837; Pulitzer pub. co., St. Louis.

Shepard, Frank co.• New York.

Shepard's citations. May, Alabama. v. 24, no. 1. A 128950.

Arizona. v. 22, no. 1. A 128850.

Atlantic reporter. v. 24, no. 3. © Apr. 18; A 128882.

California. pt. 1, no. 3. © Apr. 20; A 128841. pt. 2, no. 3. © Apr. 20; A 128851.

Howard Underwood.• New York. How to read blue-print index ratings of new passenger registrations. 1939. © Apr. 25, 1939; AA 298786.

Margaret) Table setting for the home. © May 5, 1939; AA Meredith pub. co., 22860

[ . . . & Arnold, inc.• New York. Arnold's specialty index ratings of new passenger registrations. 1939. © Apr. 20, 1939; AA 298760. 23799

Specialty co.• Chicago. Safe-guard your customer's health with Sheridan sanitary toothpick. 1939. © May 1, 1939; A 128840. 23798

Shiesler, Frances Isabella.• Lewiston, Ill. Story of Indian uprising by Mrs. Frances Shiesler. © Apr. 6, 1939; A 301123. 23808

Sholder co.• Detroit. You will find enclosed two copies and illustrated explanation sheet of Sholder multiple listing service. © June 7, 1939; 304257.

Shoen, Harriet H.   23805, 23806 Key to workbook for The American nation yesterday and today, Book 1. © Mar. 29, 1939; AA 303960.

Workbook to be used with Tryon, Lingley and Morehouse's The American nation yesterday and today, pt. 2, new ed. Book 2, by H. H. Shoen, Frances Morehouse. © May 10, 1939; AA 303963. Ginn & co., Boston.

Short, Byron E. Heat transfer and pressure drop in heat exchangers. May 15, 1939; AA 298776; University of Texas, Austin, Tex. 23807

Short, Marion. Information free. © Sept. 1, 1938; 23808, 23890. Rural lays (Incorporated) 1, 1838; AA 301080. © Sept. Wetmore declamation bureau, Sioux City, Ia. 23810

Shupp, Simon E.• Springfield, O. Geography work and study manual. Based on How the world lives and works. © June 1, 1939; AA 304091. 23811

Siegel, Jerome. Superman, by Jerome Siegel and Joe Shuster. 1939; AA 298671; Detective comics, inc., New York. 23812

Sigiloff, Leon.• Denver. Astrology, wheel of celestial correspondence and facts. © May 1, 1939; AA 300472. 23813

Sibert, Myron S.• Newton, Mass. Significance of fashion. Apr. 18, 1938; AA 300601. 23813

Silman, Sanford.• Brooklyn. 23814, 23815 Lorraine candlewick rugs and mats line, hemmed in a jiffy over clothes line, 12. © May 22, 1939; AA 303800. 303800. Superior quality Lorraine stamped needlework creations designed for F. W. Woolworth co. © May 23,

Shedler, Harold Franklin.* Chicago.
Omniarchic party, 1939.
Omniarch, 5th issue. © July 25;
AA 307252.
T. O. P. special instruction. 5th
cal index and ra...
T. O. P. examination questions.
© Aug. 3; 1939; AA 307383.
© Aug. 8; 1939; AA 307100.

[Shelton, Samuel J.]
$17,000,000 state building program
contracts to be checked up by grand
jury. © Aug. 21, 1939; A 106260.
union electric made up deficit in elec-
tion light. © Aug. 14, 1939;
A 106182.
© Pulitzer pub. co.,* St. Louis.

Shepard, Frank co.,* New York.
Shepard's citations.
California. Statutes. 5th ed., sup-
plement (1919-1939) © July 21,
1939; A 131468.
Connecticut. v. 33, no. 2, July,
1939.
Federal reporter. v. 29, no. 3, July,
1939. © July 11, 1939; A 131467.
Illinois. v. 31, no. 2, July, 1939.
© July 10, 1939; AA 131450.
Kansas. 2d ed., supplement (1929-
1939) © July 21, 1939; A
131451.
Michigan. v. 31, no. 1, July, 1939.
© June 27, 1939; A 131464.
New Jersey. v. 24, no. 3, July,
1939.
Northeastern reporter. v. 31, no.
3, July, 1939. © June 12, 1939;
A 131463.
Ohio. v. 5, no. 4, July, 1939. ©
July 21, 1939; A 131461.
Pennsylvania Superior
court. v. 24, no.
July 15, 1939; A 131462.
Pennsylvania Supreme
court. v. 24, no. 2,
1939; A 131465.
Southern reporter. v. 31, no.
2, July, 1939. © June 21,
1939; A 131460.
United States. v. 38, no. 3, July,
1939. © June 28, 1939; A 131466.

Virginia. v. 28, no. 2, July, 1939.
© June 20, 1939; A 131457.
West Virginia. v. 27, no. 2, July,
1939. © June 21, 1939; A 131455.
Shepard's New Jersey classified topi-
cal index and table of cases. v. 14,
no. 3, July, 1939. © July 26, 1939;
A 131458.
Shepard's New York Court of appeals,
July, 1939. © July 11, 1939; A
131453.
Shepard's New York miscellaneous,
July, 1939. © July 11, 1939; A
131452.
Shepard's New York Supreme court
and statutory advance sheet edi-
tion, July, 1939. © July 11, 1939;
A 131451.
© Shepard's Pennsylvania classified
topical index and table of cases. v.
15, no. 2, July, 1939. © June 19,
1939; A 131454.

Sherlock & Arnold, inc.,* New York.
Near sales analysis by towns and
villages. © Aug. 18, 1939; AA
306488, 307483.

Sherman, Charles Q. corp.,* New York.
Quick frozen foods merchandising
manual. © July 26, 1939; AA
306206.

Shockey co.,* Detroit.
Detroit multiple listings of real estate
for sale of June
22, 1939; AA 305777.

Shoe and leather reporter annual, 1939.
© May 31, 1939;
305989; Shoe & leather reporter
co., Boston.
Shoe and leather reporter, directory of
leather manufacturers, 1939.
Mar. 17, 1939; AA 305863; Shoe &
leather reporter co., Boston.

Shoemaker, Edgar A.* Your child's
health. © July 13, 1939; A 305959?;
Leader printing co., inc., Lake Mills,
Wis.

Shonnard, Muriel W.* Montclair, N. J.
Educating yours. © July 28,
1939; AA 305324.

Siegel, D. co.,* New York. Saddle
cloth, the modern golden fleece.
© July 14, 1939; ...

Sinclair, Upton.* Pasadena, Calif. Ex-
pect no peace! © Mar. 22, 1939; AA
308184.

Siegel, Jerry. Superman, by Jerry
Siegel, and Joe Shuster.
7-12, ... © Aug. 1-5,
14-19, 21-28, 1939;
100041,
100041,
100102,
100103,
100104,
100170,
100182,
100214,
100231,
100278,
101214,
101283,
101333,
1013376-100378, 100388;
McClure news-
paper syndicate, New York.

Simmons, V. I., I., R.* Grand Rapids,
Mich. Tribal Indian languages. ©
June 30, 1939; AA 304972.

Simmons hardware co.,* St. Louis.
Simmons toy and gift show, Christ-
mas, 1939. © Aug. 1, 1939; AA
307464.

Simons, Jane Kealhofer. Guide to
Columbia, South Carolina's capital
city, by Jane Kealhofer Simons; ed.
by Margaret Babcock Meriwether
and The Columbia sesquicentennial
historical market committee. © July
12, 1939 A 306511; Columbia ses-
quicentennial comm., Columbia, S. C.

Simplex brooder stove co.,* Grand
Rapids, Mich. Catalog no.
Jan. 13, 1939; 304940.

Simpson, Charles A.* Medway, Mass.
Spectrum puzzle and game. © July
18, 1939; AA 305060.

Simpson, Studwell & Swick, ltd.,* New
York. These Chukker rounds have
been sent to you with the compli-
ments of ... © July 25, 1939;
AA 307385.

Simons-Michelson co.,* Detroit.
A newspaper advertising service for
credit jewelers. ©
July 20, 1939; AA 308321.
AA newspaper ad service for credit
jewelers, Aug. 1, 1939;
AA 308331.
Greatest fur coat contest ever held!
© July 11, 1939; A 306883.

Silver, Burdett co.,* New York. How
the Catholic music hour series helps
the teacher to meet the requirements
of the course of study prescribed for
the elementary schools of the Arch-
diocese of New York by the Catholic
school board, 1938. © July 12,
1939; AA 303504.
Pretty Helen Reese often rides across
Chicago's famous Michigan Avenue
bridge. © July 27, 1939; A 101256.

Sinclair refining co., inc.,* New York.
Driving in traffic gives lots of folks
the jitters. © Aug. 9, 1939;
100252.
Here's the special combination price
to Sinclair-ize your car for winter.
© Aug. 15, 1939; AA 305398.
I've always had to stretch my fam-
ily's money a long way. © July 26,
New York state distributor records
steady 12-year progress. © Aug.
2, 1939; A 100297.

Singer refining co.,* Elizabethport, N. J.
And now—88 years of Singer skill
bring you a new achievement!
1939; A 100813.
Handy pocket book guide to New
York for World's fair visitors. ©
June 20, 1939; AA 306902.
Help from Singer! © June 10, 1939;
A 100814.
Singer's economy budget electric. ©
Aug. 1, 1939; A 100815.

Sipes, Leon.* El Dorado, Ark. Little
red schoolhouse. © July 25, 1939;
AA 308086.

Siren (Die) nr. 12, erstes Juniheft,
1939. © July 8, 1939; A for. 44973;
Deutscher verlag, Berlin.

Singo enterprises,* Ripon, Wis. Singo
(or) Songo (or) Winnit. [Instruc-
tions] © Aug. 9, 1939; AA 308872.

Sisalkraft co.,* Chicago.
How to build a Sisalkraft temporary
silo. © July 12, 1939; AA 307384.
Yes sir! You can build a silo for as
little as $18.50. © July 27, 1939;
AA 307385.
Yes sir! You can build a Sisalkraft
temporary silo for as little as $18.50.
© July 17, 1939; AA 307386.

Sisters of the poor of St. Francis,* War-
wick, N. Y. Bridgetown cometh.

Scotford, John B. Spanning a continent. © June 27, 1939; AA 306721; 1. Friendship press, inc. 36411

Scott, Harry Fletcher. Latin book [by] H. F. Scott, Abbott Horn, John Flagg Gummere. © Text, Aug. 31, 1939; AA 306682; Scott, Foresman & co., Chicago. 36412

Scrap book, 10th ed. © Sept. 1, 1939; AA 306789; Barnes-Ross co., Indianapolis. 36413

Seagram-distillers corp.* New York. 36414-36423
America's finest. 1939.
Salute to Pennsylvania. © May 10, June 21; A 101605.
Salute to Tennessee. © May 24; A 101500.
Salute to the New York world's fair. © May 10, June 21; A 101604, 101591.
Future of our business depends upon your good-will. © Apr. 14, 1939; A 101506.
Good will is the mightiest practical force in the universe. © June 8, 1939; A 101593.
It's up to us to win your good-will. © May 11, 1939; A 101605.
Seagram's good will campaign applauded by America's finest bars and stores. © Aug. 25, 1939; A 101607.
$200,000 to build good-will for you! © Mar. 1, 1939; A 101596.
Your favorite bartender is a moderne. © Aug. 25, 1939; A 101605.

Seegrist, Walter H.* Chicago. M. E. 36424
101 & 102. © Aug. 7, 1939; AA 306782.

Servel, inc.* Evansville, Ind. 36426, 36427
4-H club program can and will increase your Servel Electrolux rural business if you will let it! © Aug. 22, 1939; AA 306778.
Maintenance manual. © Aug. 18, 1939; AA 306874.

Shurr, Elizabeth.* Stockton, Calif.
Story with a secret. © Aug. 31, 1939; AA 306745. 36428

Sheaffer, W. A. pen co.* Fort Madison, Ia.
Sheaffer's, the only lifetime pen ... © Aug. 6, 1939; A 100619.
New dynamic Skrip rocket moving conductor type dynamic pen-phone. © Aug. 6, 1939; A 100619.

Shepard, Frank co.* New York. 36431-36449
Shepard's citations. 1939.
Arkansas. v. 25, no. 2, Aug. 28; A 132400.
Atlantic reporter. v. 25, no. 1, Aug. 28; A 132398.
California. (In two parts) pts. 1, 2. v. 30, no. 2, Aug. © July 19;
Colorado. v. 32, no. 2, Aug. © July
Dakota. v. 28, no. 2, Aug. 28; A 132399.
Federal reporter. Advance sheet. v. 11, no. 2, Aug. © Sept.
Florida. v. 26, no. 2, Aug. © July
Georgia. v. 31, no. 2, Aug. © July
Indiana. v. 31, no. 2, Aug. © July
Kansas. v. 11, no. 2, Aug. © July
Massachusetts. v. 32, no. 3, Aug. © July
Michigan. v. 6, no. 2, Aug. Advance sheet. © Sept. 15; A 132395.
Pacific reporter. v. 32, no. 3, Aug. © July 14; A 132394.
Shepard's Indiana classified topical index and table of cases. v. 32, no. 3, 1939. © July 12; A 132401.
Southwestern reporter. v. 32, no. 3, 1939. © July 27; A 132396.
West Virginia. West Virginia acts, regular session. Special addendum. © July 27; A 132386.
Wyoming. v. 32, no. 2, Aug. © July 21; A 132302.

Sinclair refining co, inc.* New York. 36476-36482
Constance Moore, featured in Johnny Downs in the new Universal picture, Hawaiian nights. © Aug. 25, 1939; A 100596.
A newspaper ad service for credit jewelers. Sept. 1939. © Aug. 28, 1939; A 100597.
My husband and I like to take a motor trip every weekend ... © Aug. 16, 1939; A 100598.
Richard Arlen, star of the new Universal picture, Mutiny on the Blackhawk ... © Aug. 15, 1939; A 100570.
To me driving is a real pleasure. © Aug. 23, 1939; A 100592.
Too old to drive in traffic? © Aug. 30, 31, 1939; A 100594, 100594.
Tops 11 years steady progress with new gallonage record. © Aug. 30, Chicago.

Shure bros.* Chicago. 36461-36463
Look at these new Shure streamlined ... © Aug. 5, 1939; AA 308808.
New dynamic Shure rocket moving conductor type dynamic microphone. © Aug. 5, 1939; AA 308807.
Free catalog. Microphones, phono pickups, accessories ... © Sept. 10, 1939; AA 308809.

Siegel, Henry and Joe Slusser, by Jerry Siegel. 36454-36460
Sept. 2, 4-9, 11-15, 1939; A 100408, 100731, 100421, 101498, 101403, 100854, 100474, 100521, 100508, 100590, 100501, 100531, 101754; McClure newspaper syndicate, New York.

Sievering, Philip, inc.* New York.
Fifty years of finer plating. v. 1, 1939; AA 308881.

Sign animation corp. of California.* Los Angeles. Sign action for attraction. © July 22, 1939; AA 308880.

Simkins, Denher.* Syracuse, N. Y.
Greater stock market profit. © July 12, 1939; AA 310170.

Sinker, Henry.* New York. Forty plus. © Aug. 31, 1939; AA 309011.

Simons-Michelson co.* Detroit. 36474, 36475
A newspaper ad service for credit jewelers. Sept. 1939. © Aug. 28, 1939; AA 306877.

Singer mfg. co.* Elizabeth, N. J. 36482-36495
Caution. Instructions for oiling machine. 157-3. © Aug. 11, 1939; AA 308848.
Instructions for oiling machines 157-3. © Aug. 11, 1939; AA 308848.
Gee! Where did you get those keen clothes? © Aug. 28, 1939; AA 308849. 101757.
Improved high speed unison feed machine. Ball bearing Singer 153w1. © Aug. 8, 1939; AA 308844.
Instructions for using and adjusting Singer sewing machine 157-3 for making lugs, automatic oiling system. © July 21; AA 308849.
Singer sewing machines 221-7 and 221-8 two needles and two flap covers. © Aug. 14; AA 308846.
Instructions for using the Singer bias binder 121737 for single needle machines of classes 31, 44, 55, 96 and 1200. © Aug. 11, 1939; AA 308850.
List of parts. 1939.
Machine no. 47w71. © Aug. 16;
Machine no. 4. © Aug. 16;
Machines nos. 90-91 and 96-84. July 21; AA 308847.
1000 R. P. M. increase in speed with 112w147 for staying seams of shoes. © Aug. 21, 1939; AA 308845.
Singer machine 115w102 for automatically embroidering scallops. © Aug. 11, 1939; AA 308843.
Spring balancer for 146 machines. © Aug. 16, 1939; AA 308851.
3 free lessons at your Singer sewing center, no purchase—no obligation. © Sept. 1, 1939; AA 101756.

[Sipie, Walter H.] Catalogue of the Taft museum. © Sept. 15, 1939; A 132296; Taft museum, Cincinnati; in substitute of fine arts, Cincinnati. 36496

Sirene (Die) nr. 13, 14. © June 29, July 4, 1939; A for. 44400, 44401; Deutscher verlag, Berlin. 36497

Sisalkraft co.* Chicago. Sisalkraft silos built of American steel silo fabric (welded wire) ... © Aug. 24, 1939; AA 308942. 36498

Sisters of St. Joseph, Brentwood, N. Y. Sixth book in reading. © Aug. 25, 1939; A 132254; Schwartz, Kirwin & Fauss, New York. 36499

963

DktEntry: 22-10, Page 70 of 321
Case: 13-56243, 02/25/2014, ID: 8992563

# THE LIBRARY OF CONGRESS
## COPYRIGHT OFFICE

## CATALOG OF

# COPYRIGHT ENTRIES

PUBLISHED BY AUTHORITY OF THE ACTS OF CONGRESS OF MARCH 3, 1891
OF JUNE 30, 1906, AND OF MARCH 4, 1909

### PART 1, GROUP 2
PAMPHLETS, LEAFLETS, CONTRIBUTIONS TO
NEWSPAPERS OR PERIODICALS, ETC.
LECTURES, SERMONS, ADDRESSES FOR ORAL DELIVERY
MAPS

---

## 1940
### NEW SERIES, VOLUME 37
#### No. 7

---

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON: 1940

Number of entries of maps included in the catalog since

Washington (State) Road map of Washington. [1940 ed.] © May 1, 1940; F 14624; H. M. Gousha co., Chicago. 27718

Washington, D. C. © May 11, 1940; F 14711; Majcraft, Boston. 27719

AAA official road map, the National Capital area. © May 17, 1940; F 14781; American automobile assn., Washington. 27720

Yesterday in Washington, D. C., 1790–1800. © Apr. 16, 1940; F 14601; Thelma E. Fryer, Washington. 27721

Wayne County, Mich. Road map of Wayne county, Mich. © Apr. 17, 1940; F 14641; Board of county commissioners of the county of Wayne, Detroit. 27722

Willimantic, Conn. New map of Willimantic & Windham, Conn. © June 7, 1940; F 14773; Price & Lee co., New Haven. 27723

Wisconsin. © June 1, 1940; F 14784; School products bureau, Chicago. 27724

Case: 13-56243, 02/25/2014, ID=8992563, DktEntry: 22-10, Page 72 of 321

**Schmidt brewing co.*** Detroit. 30310–30313

For a grand and glorious 4th look for that red, white, and blue label. © July 3, 1940; A. 114570.

**Schmidt's say:** Look for this sign when you're looking for draught beer at its best. © July 8, 1940; A 113705.

What every true bride should know. © June 24, 1940; A. 113582.

What is Schmidt's beer? © July 4, 1940; A 114571.

**Schour, I.** Chronology of tooth development, by I. Schour and H. G. Poncher. © June 6, 1940; AA 340000; Mead Johnson & co., Evansville, Ind.

**Schreder, C. N.*** Chicago. Attention—all those who can typewrite. © Oct. 10, 1939; AA 332040. 30315

**Schulz, Herbert G.*** New York. How not to play the horses. © June 27, 1940; AA 338758. 30316

**Schwabacher & co.*** Los Angeles. Removal investment account, Bal. 6, 1940; AA 338791. 30317

**Schwalenbach, Lewis B.** American forum: Shall we declare an embargo against Japan? Yes! By Lewis B. Schwalenbach. No! By Ernest Lundeen. © June 13, 1940; A 114706; United feature syndicate, inc., New York. 30318

**Scientific model airplane co.*** Newark, N. J. Scientific catalog no. 11. © June 20, 1940; AA 337786. 30319

**Scola, Kathryn.** House across the bay. © May 10, 1940; AA 338661; Walter Wanger productions, inc., Hollywood. 30320

**Scott, Elmer F.** [Serial] © May 15, 1940; AA book co.,

Screeno and Screeno ...

Screeno an

**Scrren Institute.*** New York. 30324, 30325
n. s., v. 87
Facts about a new science. © June 25, 1940; AA 338883.
Learn what your handwriting reveals. © June 6, 1940; AA 338890. 30325

**Sealey, William C.** Efficiency tests, [Serial] 5449. Ed. 1. © May 10, 1940; AA 335072; International textbook co., Scranton.

**Seniest, Inc.*** New York. food adviser—spring, 1940. © May 1, 1940; AA 335451. 30326  30327

**Sears, Roebuck & co.*** Chicago, New York. missions, 1940. Leuler's ed. © June 28; AA 339798. 30330
Student's ed. © June 28; AA 339794.
Board of publication of the United Lutheran church in American, Philadelphia.

Season's greetings and best wishes from American calendar co. 1940. 1, 1939; AA 338543; American calendar co., Greeneville, Tenn. 30331

**Securities tabulating corp.*** New York. 30331
Callable bond survey. July, 1940. no. 2. © July 2, 1940; AA 338882.
Corporate bond handbook, June, 1940. © June 6, 1940; AA 335018. 30332  30333
Report no. 9. Forms for creation of stock bonus trust plan. © July 6; AA 338880. 30334

**Security superstores, inc.*** Chicago. Associated gas & electric system. Revised ed. © July 1, 1940; AA 337871.

**Sethering rubber co.*** Akron, O. So tough it eats nails! © June 27, 1940; AA 337690. 30337

[Siegel, Jerry] Superman coloring book [by Jerry Siegel and Joe Shuster] © June 17, 1940; AA 338686. 30338  30339  30340

[Superman cut-outs [by Jerry Siegel and Joe Shuster] © Superman, inc., New York. AA 336587.]

**Seichow & Righter co.*** New York. We wow wang. Directions for playing. © Apr. 1, 1940; AA 335718. 30331

**Selling, Lowell S. & Vaughn, Charles L.*** Detroit. Self-administering life history form. © July 1, 1940; AA 337848.

**Seinbrich immarital assn.*** Lake George, N. Y. Outline of the career of Madame Marcella Sembrich. © June 20, 1940; AA 337735. 30340

**Seiner, H. & A Inc.*** Elkhart, Ind. Seiner Elasti-glass six strap. © June 28, 1940; AA 335754. 30343

**Servel, inc.*** Evansville, Ind. 30341
Addition to pur. 7, maintenance manual—pumps and replacing parts. Form SV1.453. © June 26, 1940; AA 338696. 30345
Addition to pur. 33.7, maintenance operation analysis and refrigerator—maintenance. © June 24, 1940; AA 338697. 30341
How farm requirements are met with Serrel's adaptability. 1940; AA 338008. © June 24.
Increase your sales of Serrel Electrolux beyond the gas mains! © June 11, 1940; AA 337647.
Now for less than 1½ cent each blanket every home beyond the gas mains in your territory with this tested salesmakeup. © June 14, 1940; AA 337546.
Serrel all year gas-operated air conditioner. © June 13, 1940; AA 337648. 30341

**Severance, George Sawyer.*** Chicago. Social time recorder. © June 18, 1940; AA 335006. 30353

**Shadduck, B. H.*** Ashtabula, O. Mistakes God did not make. 1st ed. © June 10, 1940; AA 338600. 30351

[Shaklee free en... © June 14, 194... Shaklee free ... June 1, 1940; ...]

**Shaklee, F. C.*** Oa...

**Shartle, Edward C.*** Lease... ery store, knack... 1940; AA 339552. 30331

**Shell oil co., inc.*** New Y...
Oil burner owner's guid... 20, 1940; AA 338938...
Story of Shell fuel oil... 1940; AA 338933. 30332

**Shenefield, Hale T.*** Assess... In appraising value of the... © Apr. 28, 1940; AA 339... administration service, C...

**Shepard, Frank co.*** New Y... ard's citations... 30341
New York statute... 2d ed...
New York digest, 1940; A 142... (Grayson County, Tex.)... A 142250;...
New York supplement... A 142453. © June 27, 194...
Oregon, 4th ed., v. 1... 4, 1387; A 142123, 1151...

**Sherlock & Arnold, inc.*** ... New passenger car sales... and villages... May (1940) © June 27, 194... June 28, 1940; AA 338627...

**Sherwood, Robert E.** Rebec... Sherwood and Joan Har... May 15, 1940; AA 338603... international pictures,... York.

**Shimon, Louis C.*** Milwauke... something good about you... 18, 1920; AA 340055.

**Shipley, Walter C.*** Shiple... scale for measuring intel... patie... May 23, 1940... manual of dire... AA 33948... psychiatric institute of... retreat, Hartford,...

**Shopro, inc.*** Chicago. Shopro sizing book. © May 27, 1940; AA 30351

Sherman, Tex. Worley's... tory, 1940; v. 14... A 142250; John F. Worle... co., Dallas.

ER 2359
16

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 73 of 321

Scout publications, inc. • New York.
Scout's standard postage stamp catalogue. 27th ed.] [Sig. 5-18] 342522, 342542. [Sig. 19-30] © Aug. 2; AA 342503-342514.

Scrap book. 11th ed. © Aug. 6, 1940; AA 340485; Barnes-Ross co., Indianapolis.

Scriven, George B. 34014, 34015, 34013
Our family the church. (J. B. Scriven; illustrated by I. Taylor and K. Ozier.) © June 21, 1940; AA 342401. 34201.
Procedure guide for the work book for the use of our family the church. © July 20, 1940; AA 342901. religious-Gorham co., New

cudder, Stevens & Clark. • New York.

Heading forth? 343633
We, the people. AA 343538

Quu, Wm. S. co. • Camden, N. J.
your store today? © June 24, 1940; A 114813. 34018

uttest, inc. • New York. 34010-34021
Sealtest laboratory manual. Revised ed. © May 9, 1940; AA 343434, the nation's health. © June 2; ealtest in white contribute to 1940.
tect men in while help to pro-ducts. Sealtest-supervised dairy prod-
© May 6, 1940; A 114838.

uck & co. • Chicago.
America's no. 1 sale. 34822-34887
Atlanta. © May 17; AA 343635.
Boston. © May 18; AA 343668.
Chicago. © May 18; AA 343688.
Dallas. © May 16; AA 343890.
Kansas City. © May 16; AA 343862.
Los Angeles. © May 18; AA 343688. 34864, Los Angeles. © May 16; AA 343894.
Minneapolis. © May 16; AA 343686. Philadelphia. © May 17; AA 343686.

Seattle.
Concrete machinery. 34884, 34882
How to decorate your home. 20, 1940; AA 343881. Powermatic electric plants. 18, 1940; AA 343892. Sears Handiman tractors for workmen and small acreage farms. 21, 1940; AA 343892.
Sears record notes. 1940; AA 343402.
There's somebody at the front door.

Seattle, Wash. Polk's Seattle (Washington) city directory. 1940. 81st ed. © July 29, 1940; AA 142880; R. L. Polk & co., Seattle.

Securities research corp. • Boston.
Insurance research charts. Fire and marine insurance companies.
ed. © July 25, 1940; AA 34087 d-read cycli-graphs. 2d semi-annual ed. © July 3, 1940; AA
a trend security charts. July, 1940.
342519, 343018

Security plan co. • Sabetha, Kan.
Organization agreement. Ap-1940; AA 344106.

Sedlacek, Rudolph A. • Palmpeset. © July 31, 1940; 34071.

Seerforth service. • Chicago. 34944, 34945
Seerforth service monthly supplement no. 11 July, 1940; AA 344170.
Trusts for employees.
Sales 1940; AA 343288.
Report no. 10.
© July 18.

Seeger, Herbert Henry • Denver. Course in mechanical drawing for high schools. © Aug. 8, 1940; AA 344150. 34949

Seeger, (Ellen) Dionne quints pic-tures to paint. (Covery by Ellen Seeger; body pages by Horton.)
Aug. 2, 1940; AA 343696; Merrill pub.
34047

Seven up bottling co. • St. Louis 34902, 34903
Don't blame the camel. 1940; he can't help guzzling! © July 24, 1940; A 114881.
Sky's the limit when camel's start guzzling! © June 10, 1940; A 114880.

Seven up co. • St. Louis. 7-up sales manual. © July 17, Aug. 2, 1940; AA 344229, 34984

Seven-up co. • St. Louis.
Whaddaya mean, a tire with a safety valve? © July 17, Aug. 2; 113918, 115064.

Selarision co. • Greensboro, N. C. II your present salary, stop. your and your family watch supports © Feb. 12, 1938; AA 343452.
Seiden, Arzeno E. • Lansing, Mich.
Seiden the stratosphere unnn. 1940; 343933
Selected as the feature free attrac-tion. © June 25; A 115100.
Selected at the opening free attrac-tion. © June 22; A 116440. 34056
Seilers, Royce B. • Lit. Morris, Mich. Industry instructions. © July 16, 1940; AA 342255.
Sanefelder co., inc. • New York. Sone-felt auction. © July 18, 1940; AA 342154. 34051

Sentry co. • Foxborough, Mass. Sen-tri-lumond block method of atmos-spheric control for hardening high-speed steel. © June 13, 1940; AA 338874.
No. 115. History lesson. 342697
14; AA 342697.
© June

Serral, Inc. • Evansville, Ind. Serrel gas refrigerator. Maintenance man-ual. © July 12, 1940; AA 341183.

Serralde, Juan Klein. Manual de aero-dinámico. © Aug. 2, 1940; A 142907.
Aviation press, San Francisco.

Serrel, Inc. • New York. 34058
Bulletin no. 4008N. © July 10, 1940; AA 344064.
Use and lubrication of rubber parts in the modern automobile.
16, 1940; AA 344045.

[Seigel, Jerry] Superman coloring book [by Jerry Seigel and Joe Shuster] © June 2; to win customers and influence pros-pects ... give good will builders.
© Aug. 2, 1940; AA 344635. 34850

Shattinger, Asia Cora. Fragments, Aug. 1, 1940; AA 342450; Charles Shattinger, Los Angeles. 34968

Shattuck, Marquis E. Beacon lights of literature. Book 6. © Aug. 5, 1940; A 144000; Iroquois pub. co., inc. 34967

Shen, Mildred G. Letter writing, by M. G. Shea, Isabelle S. Forsyth Ar-lie M. Stirk. © June 21, 1940; A 342722; Dominic William Buccaro, Shrewsbury, Mass. 34066

Sheaffer, W. A. pen co. • Fort Madison, Ia. Sheaffer's Skyboy, the airplane special. © July 26, 1940; A 115068. 34069

Sheboygan, Wis. Wright's Sheboygan (Sheboygan County, Wis.) city di-rectory, 1940, including Kohler, Plym-outh, Sheboygan Falls and Sheboygan County. © July 30, 1940; A 142722; Wright directory co., Milwaukee. 34070

Sheehan, Michael, ed. Automotive ob-servations. 1940. 34973
No. 113. The Boogey-man! © Feb. 12; AA 342205. © July 18, 1940; AA 342245; North-western press, Minneapolis. 34974

Shepard, Frank co. • New York.
Shepard's citations. June, 1940. 34975-34985
California. June, 1940. AA 342245; Advance sheet ed. 8, no. 2.
Illinois. v. 35, no. 1. © June 4;
Kentucky. v. 4, no. 1. 6; A 142118.
Louisiana. v. 22, no. 2. A 142115.
Massachusetts. v. 7, no. 4. © June 21; A 142102.
Minnesota. v. 40, no. 2. Missouri. v. 30, no. 2.
A 142110. © June

Seymour, F. P. • Chicago. Here's how perts ... 34905

ER 2360

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 74 of 321

Shepard, Frank co. • New York.
48102.
Shepard's citations, 1940.
Federal reporter, v. 30, no. 4.
© Oct. 17; A 147382.
Illinois. Advance sheet ed.
no. 3, Oct. © Oct. 22; A 14
Kentucky, v. 4, no. 2, Oct.
24; A 147373.
Maryland, v. 18, no. 2, Oct.
Oct. 25; A 147371.
Michigan, v. 32, no. 2, Oct.
Oct. 14; A 147378.
Minnesota, v. 40, no. 3, Oct.
Oct. 24; A 147372.
New York supplement.
Advance sheet ed. v. 7, no. 1,
Oct. © Sept. 25; A 147364.
Northeastern reporter, v. 32, no. 4,
Ohio. Advance sheet ed. v. 7, no.
1, Oct. © Oct. 22; A 147362.
Pennsylvania Superior and lower
court, v. 25, no. 4, Oct.
© Oct. 17; A 147375.
Pennsylvania Supreme court, v.
25, no. 4, Oct. © Oct. 22;
147375.
Southern reporter, v. 34, no. 3,
© Oct. 22; A 147374.
Texas, v. 17, A 14
United States
Sept. 30)
Wisconsin
v. 7, A 1
Oct. 10;
Shepard's
jewels of
1940.
©
Shepard's
Oct. 10, 1
schools.
©
Shepard's
advance
Oct. 10, 1
347367.
Shepard's Pennsylvania classified
topical index and table of cases.
v. 18, Oct. © Oct. 16, 1940; A
147367.

Shuster, Joel]
Siegel]
Superman coloring
[By Joe Shuster &
Superman, inc.] New York.
48106.
© Nov. 1, 1940; AA
English vocabulary distributions con-
verted to the general vocabulary
scale ... for forty-two
schools. © June 12, 1940;
348988.
Index to test words of vocabulary
workbooks. © Sept. 28, 1940;
AA 350596.
Johnson O'Connor, Boston.

Sherwood, Edward H.

Shreveport poetry inc. • Shreveport, La.
Red River sand.
© Nov. 15, 1940; AA
348106.
Shreveport, La. Bruegenhoff's Shreve-
port (Crido Bruegenhoff's direc-
tory, 1940. v. 82. © Nov. 6, 1940;
A 149421; R. L. Polk & co., Dallas.
48104.

Sloop voting machine corp. • Philadel-
phia. Voice of the press.
1940; AA 351228.
© Oct. 14,

Shupulski, the perfect service for
jewelers.
© Nov. 4, 1940;
48108.

Shupelur identification receipt.
No. 4. © Nov. 4, 1940;
48108.

Shupelur, inc. • Bangor, Me.
48101, 48102.

Sherwood, Iris.
Bowling scores of.
No. 6, 1940; AA 348949.
48108.

Sherwin-Williams co. • Cleveland,
Ohio.
Handbook of synthetic resins
Revised
© Oct. 10, 1940; AA 351551.

Shupman, Nathan G. • Washington.
Plan for a national lottery.
© Oct. 21; A 147348.

Sherman & Marguerite, inc. • Chicago.
Stepmother.
© Nov. 27;
117487.

Bradford citizens. • Houston.
AA 348824.
48106.

Sifton, Edith. • Seattle. Criteria for
the construction and interpretation of
graphs. © Nov. 12, 1940; AA 348800.
48110.

Signal. Sonderausgabe der Berliner il-
lustrirten zeitung. nr. 6–11.
no. 6, 11, 25, Aug. 10, 25, Sept. 10, 1940;
A for. 46775–46782, 46888 ; Deutscher
verlag, Berlin.
48200–48205.

Silex co. • Hartford.
Exclusive Silex features.
gus models. © Aug. 30, 1940; AA
351780.
Restaurant equipment, electric and
gas models. © July 15,
351780.
Nos. 170–21 and 176–22. © Nov. 6,

Silverman, Hirsch Lazaar. Commen-
tary on life from Plaeuus to the uni-
verse. © Nov. 1, 1940; AA 349898;
Century house publishers, New York.
48208.

Simons, Michelson co. • Detroit.
48200–48212.
A newspaper advertising service for
credit jewelers.
Dec., 1940.
351070.
Dec., 1940.
351050.
A. newspaper ad service for credit
jewelers.
Nov., 1940.
351820.
Nov., 1940.
351850.
Dec., 1940. © Oct. 25, 1940; AA
351070.

Singer mfg. co. • Elizabeth, Elizabeth-
port, N. J.
48213–48230.
Instrucciones y lista de piezas del
aditador Singer no. 121736.
15, 1940 ; AA 351417.
Instructions for using and adjusting
the Singer sewing machines
class 111w117.
AA 352080.
Instructions for using Singer ma-
chine 111w117.
AA 352080.
Instructions for using Singer sewing
machines 127–12 and 127–14.
Nov. 2, 1940; AA 348864.
Instructions for using the Singer
lockstitch family sewing machines.
© Oct. 30, 1940; AA 348868.
List of parts. Machine.
No. 79–101.
351421.
No. 79–102.
352881.

Skinner, Richard Dana. Trend re-
ports. Weekly series. Weeks ended
Oct. 23, 30, Nov. 6, 13, 20, 1940.
Prepared and edited [by] R. D.
Skinner and E. Carroll Skinner.
© Oct. 30, Nov. 6, 13, 20, 27,
351619–351619, 352033; Townsend-
Skinner & co., New York.

[Smith, Evelyn]
France-puzzle-cut-out book © Dec.
6, 1940; AA 352744.
One stamp.
349864.
© Grinnell lithographic co., inc., New
York.

Sloan, LeRoy Hendricks. Acute appen-
dicitis. v. 1, revised
[To be inserted in] Tice's practice of
medicine. © Dec. 9, 1940;
352664 ; W. F. Prior co., inc., Hagers-
town, Md.

Sixth annual register of the organiza-
tion of Pasadena and vicinity.
Out of 1940 ; AA 351815 ; Turner &
Stevens co., Pasadena, Calif.

Singer style digest, fall, winter, 1940.
© Aug. 29, 1940; AA 351587.

Singer 96w182.
351413.
Singer 176–22.
351413.

Skeltkraft co. • Chicago. Picture story
of Skeltkraft uses.
AA 351722.

Sisters of Saint Joseph of Boston.
Sixth reader, prepared by Sisters of
St. Joseph ... Boston, with Arthur
I. Gates as adviser in reading method.
© Dec. 10, 1940 ; A 147583 ; Macmil-
lan co., New York.

Singer 96w124.
349859.
Singer 176w134.
Singer 176w154.

Case: 13-56243, 02/25/2014, ID: 8992863, DktEntry: 22-10, Page 75 of 321

**Siegel (Jerry)** Superman coloring
service bureau.
[By] Jerry Siegel and Joe
Shuster]
Superman, inc., New York.
© Jan. 27, 1941; AA 358483.
6996

**Stfit** (Constance Beroulece) * Union
City, N. J.  Alien naturalization
service bureau.
© May 29, 1940; AA 354800.
6992

A newspaper ad service for credit
jewelers, Feb., 1941.
© Jan. 23, 1941; AA 357181.
6994

A newspaper ad service for credit
jewelers, Jan., 1941.
© Jan. 3, 1941; AA 356554.
6991

A newspaper advertising service for
credit jewelers.
© Jan. 3, 1941.
6995

**Simons-Michelson co.** * Detroit.

**Silver, Burdett co.** * New York.
Ancestry and descendants
reading.  Kindergarten—grade 6.
Jan. 13, 1941; AA 358785.
6993

**Signal nr. 13.** Sonderausgabe der Ber-
liner Illustrirten zeitung.  Nov. 7,
1940. A for nr. 47177: Deutscher verlag,
Berlin.

**Skinner mfg. co.** * Omaha.

**Sinsson** (Hannah F.) * Dothan, Ala.
Southern hospitality service.
Jan. 9, 1941; AA 357337.

**Sitzberger** (Elizabeth) * Chicago.

**Sisson** (Richard Dana) Trend re-
ports.  Weekly series.

**Singer mfg. co.** * Elizabeth, N. J.
Care and use of Singer H. R. sewing
machine.
© Jan. 14, 1941; AA

**Sloane-Blabon corp.** * Trenton.

**Smith** (C. N.) * Tampa, Fla.  How to
organize and conduct a club or asso-
ciation.
© Jan. 9, 1941; AA 355140.
6634



R660848 (con.)
Super. © 22Jun49; AJ3819. Donald E.
Super (A); 6Apr77; R660848.

R660849.
Darbies are sale. By Bernard DeVoto.
(In Woman's day, Nov. 1949) © 10Oct49;
B213326. Avis DeVoto (W); 27May77;
R660849.

R660851.
Husbands and lovers. Editor: Elizabeth
Abell & Joseph Greene. NM: anthology.
© 7Dec49; AA1484. Elizabeth Abell (A);
25Apr77; R660851.

R660854.
Roosevelt and Hopkins; an intimate
history. By Robert E. Sherwood. NM:
foreword, additions & revisions.
© 15Mar50; AA1914. Madeline Sherwood
(Mrs. Robert E. Sherwood) (W); 13Apr77;
R660854.

R660872.
Superman. By National Comics Pub-
lications, Inc. & Harry Donenfeld. (In
Lowell)(NA) sun, Aug. 1, 1949) © 1Aug49;
B5-15462. DC Comics, Inc. (PWH);
18May77; R660872.

R660873.
Superman. By National Comics Pub-
lications, Inc. & Harry Donenfeld. (In
Lowell)(NA) sun, Aug. 2, 1949) © 2Aug49;
B5-15463. DC Comics, Inc. (PWH);
18May77; R660873.

R660874.
Superman. By National Comics Pub-
lications, Inc. & Harry Donenfeld. (In
Lowell)(NA) sun, Aug. 3, 1949) © 3Aug49;
B5-15464. DC Comics, Inc. (PWH);
18May77; R660874.

R660875.
Superman. By National Comics Pub-
lications, Inc. & Harry Donenfeld. (In
Lowell)(NA) sun, Aug. 4, 1949) © 4Aug49;
B5-15465. DC Comics, Inc. (PWH);
18May77; R660875.

R660876.
Superman. By National Comics Pub-
lications, Inc. & Harry Donenfeld. (In
Lowell)(NA) sun, Aug. 5, 1949) © 5Aug49;
B5-15466. DC Comics, Inc. (PWH);
18May77; R660876.

R660877.
Superman. By National Comics Pub-
lications, Inc. & Harry Donenfeld. (In
Lowell)(NA) sun, Aug. 6, 1949) © 6Aug49;
B5-15467. DC Comics, Inc. (PWH);
18May77; R660877.

R660878.
Superman. By National Comics Pub-
lications, Inc. & Harry Donenfeld. (In
New York Sunday mirror, Aug. 7, 1949)
© 7Aug49; B5-15468. DC Comics, Inc.
(PWH); 18May77; R660878.

R660879.
Superman. By National Comics Pub-
lications, Inc. & Harry Donenfeld. (In
Lowell)(NA) sun, Aug. 8, 1949) © 8Aug49;
B5-15469. DC Comics, Inc. (PWH);
18May77; R660879.

R660880.
Superman. By National Comics Pub-
lications, Inc. & Harry Donenfeld. (In
Lowell)(NA) sun, Aug. 9, 1949) © 9Aug49;
B5-15470. DC Comics, Inc. (PWH);
18May77; R660880.

R660881.
Superman. By National Comics Pub-
lications, Inc. & Harry Donenfeld. (In
Lowell)(NA) sun, Aug. 10, 1949)
© 10Aug49; B5-15471. DC Comics, Inc.
(PWH); 18May77; R660881.

R660882.
Superman. By National Comics Pub-
lications, Inc. & Harry Donenfeld. (In
Lowell)(NA) sun, Aug. 11, 1949)
© 11Aug49; B5-15472. DC Comics, Inc.
(PWH); 18May77; R660882.

R660883.
Superman. By National Comics Pub-
lications, Inc. & Harry Donenfeld. (In
Lowell)(NA) sun, Aug. 12, 1949)
© 12Aug49; B5-15473. DC Comics, Inc.
(PWH); 18May77; R660883.

R660884.
Superman. By National Comics Pub-
lications, Inc. & Harry Donenfeld. (In
Lowell)(NA) sun, Aug. 13, 1949)
© 13Aug49; B5-15474. DC Comics, Inc.
(PWH); 18May77; R660884.

R660885.
Cooperative literary comprehension and
appreciation test. Form A. © 3Mar50;
AA143832. Educational Testing Service
(PWH); 16May77; R660885.

R660886.
Cooperative English test. Test B1:
effectiveness of expression (lower level)
Form Y. © 3Mar50; AA143833. Educational
Testing Service (PWH); 16May77; R660886.

R660887.
Cooperative English test. Test C1:
reading comprehension (lower level) Form
R. © 3Mar50; AA143834. Educational
Testing Service (PWH); 16May77; R660887.

R660888.
United States Military Academy aptitude
test. Form TWP-1950. © 7Mar50;
AA144420. Educational Testing Service
(PWH); 16May77; R660888.

R660889.
United States Military Academy special
examination in United States history.
Form TWP-1950. © 7Mar50; AA144421.
Educational Testing Service (PWH);
16May77; R660889.

R660890.
United States Military Academy regular
and validating examination in mathematics.
Form TWP-1950. © 8Mar50; AA144422.
Educational Testing Service (PWH);
16May77; R660890.

R660891.
United States Military Academy regular
and validating examination in English.
Form TWP-1950. © 8Mar50; AA144423.
Educational Testing Service (PWH);
16May77; R660891.

R660892.
Advanced examination in chemistry. Form
YAC. © 8Mar50; AA144424. Educational
Testing Service (PWH); 16May77; R660892.

R660893.
Advanced examination in mathematics.
Form YAC. © 8Mar50; AA144425.
Educational Testing Service (PWH);
16May77; R660893.

R660894.
Advanced examination in biology. Form
YAC. © 8Mar50; AA144426. Educational
Testing Service (PWH); 16May77; R660894.

R660895.
Advanced examination in physics. Form
YAC. © 8Mar50; AA144427. Educational
Testing Service (PWH); 16May77; R660895.

R660896.
College Entrance Examination Board
English composition, YAC2. © 11Mar50;
AA144456. Educational Testing Service
(PWH); 16May77; R660896.

R660897.
College Entrance Exa
Italian and Greek test
© 11Mar50; AA144457.
Service (PWH); 16May7

R660898.
College Entrance Exa
achievement tests. Fo
AA144458. Educational
(PWH); 16May77; R660

R660899.
College Entrance Exa
scholastic aptitude te
mathematical sections
AA144459. Educational
(PWH); 16May77; R660

R660900.
College Entrance Exa
scholastic aptitude te
mathematical sections
AA144460. Educational
(PWH); 16May77; R660

R660901.
College Entrance Exa
scholastic aptitude te
mathematical sections
AA144461. Educational
(PWH); 16May77; R660

R660902.
College Entrance Exa
scholastic aptitude te
mathematical sections
AA144462. Educational
(PWH); 16May77; R660

R660903.
College Entrance Exa
scholastic aptitude te
mathematical sections
AA144463. Educational
(PWH); 16May77; R660

R660904.
College Entrance Exa
scholastic aptitude te
mathematical sections
AA144464. Educational
(PWH); 16May77; R660

R660905.
College Entrance Exa
scholastic aptitude te
mathematical sections
AA144465. Educational
(PWH); 16May77; R660

R660906.
College Entrance Ex
scholastic aptitude t
mathematical sections
AA144466. Educational
(PWH); 16May77; R660

R660907.
College Entrance Ex
scholastic aptitude t
mathematical sections
AA144467. Educationa
(PWH); 16May77; R660

R660908.
College Entrance Ex
scholastic aptitude t
mathematical sections
© 11Mar50; AA144468.
Service (PWH); 16May

R660909.
College Entrance Ex
scholastic aptitude t
mathematical sections
© 11Mar50; AA144469.
Service (PWH); 16May

R660910.
College Entrance E
scholastic aptitude t
mathematical section:

3314

R640378 (con.)
AA122232. West Publishing Company (PWH):
7Jul76; R640378.

R640379.
Atlantic digest. Vol. 1-35. 1949
cumulative annual pocket part. © 29Jun49;
AA122233. West Publishing Company (PWH):
7Jul76; R640379.

R640380.
West's Ohio digest, 1893 to date. Vol.
5. © 29Jun49; AA122234. West Publishing
Company (PWH); 7Jul76; R640380.

R640381.
Iowa rules of civil procedure. 1949
cumulative pocket part. By Wayne G. Cook.
© 30Jun49; AA122427. West Publishing
Company (PWH); 7Jul76; R640381.

R640382.
Smith-Hurd Illinois annotated statutes:
permanent ed. June 1949 cumulative
pamphlet. By West Publishing Company &
Burdette Smith Company, employers for
hire. © 24Jun49; AA122428. West
Publishing Company (PWH); 7Jul76;
R640382.

R640383.
New Jersey statutes annotated; permanent
ed. June 1949 cumulative pamphlet. By West
© 28Jun49; AA122429. West Publishing
Company (PWH); 7Jul76; R640383.

R640384.
Purdon's Pennsylvania legislative
service, 1949. No. 4. © 23Jun49;
AA122430. West Publishing Company (PWH);
7Jul76; R640384.

R640385.
Waltzinger's New Jersey practice under
the rules. Vol. 1-2. 1949 pocket part.
By Fredrick J. Waltzinger. © 3May49;
AA121564. West Publishing Company (PWH);
7Jul76; R640385.

R640386.
Federal digest; cumulative table of
cases affirmed, reversed or modified. NM:
revisions & additions. © 31May49;
AA123569. West Publishing Company (PWH);
7Jul76; R640386.

R640387.
Corpus juris 1949 annotations. By the
American Law Book Company, employer for
hire. © 13Jun49; AA123942. West
Publishing Company (PWH); 7Jul76;
R640387.

R640548.
Little Squire Jim. By Robert K.
Marshall. © 8Mar49; A30788. Robert K.
Marshall (A); 1Sep76; R640548.

R640549.
Basic theory; administration and
application of activity vector analysis.
By Walter Vernon Clarke. © 15Jun49;
A31268. Walter Vernon Clarke (A);
2Sep76; R640549.

R640558.
The Sun Valley recipe book. By John K.
Donabedian. © 20Aug49; AA129358. John
K. Donabedian (A); 2Sep76; R640558.

R640559.
This same flower. By Jeannette Covert
Nolan. © 30Sep48; A25879. Val Nolan,
Kathleen Nolan Lobley & Alan T.
Nolan(C); 2Sep76; R640559.

R640597.
Uniform buttons. Vol. 1-2. By David F.
Johnson. © 10ct49; A27925. Century
House (PWH); 9Sep76; R640597.

R640601.
ABC's of childbearing. By Donita

Ferguson. (In Today's woman, Oct. 1948)
© 20Sep48; B157902. Donita Ferguson (A);
30Aug76; R640601.

R640602.
The Golden trumpet. By Aaron Kramer.
© 22Aug49; AA133543. Aaron Kramer (A);
13Sep76; R640602.

R640603.
The Home book of trees and shrubs: a
complete guide to the design, care, and
planting of the home grounds, with
information on lawns, etcetera. By J. J.
Levison. NM: revisions & additions.
© 12Apr49; A31863. Myrtle Powell Lader
Levison (W); 10Sep76; R640603.

R640604.
McCoy's Star songs set to familiar
tunes. By William L. Nissenson.
© 12Apr49; AA79609. Macoy Publishing and
Masonic Supply Company, Inc. (PWH);
7Apr76; R640604.

R640605.
The Lost art of profanity. By Burgess
Johnson, foreword by Henry Louis Mencken,
illustrator: Orson Lowell. © 13Sep48;
A25719. Mercantile-Safe Deposit and Trust
Company (E of Henry Louis Mencken);
25Sep76; R640605.

R640606.
Verbs new and old. By Henry Louis
Mencken. (In American speech, Feb. 1948)
© 25ep48; B154272. Mercantile-Safe
Deposit and Trust Company (E); 23Aug76;
R640606.

R640607.
Postscripts to the American language.
By Henry Louis Mencken. (In The New
Yorker, Sept. 25, 1948) © 23Sep48;
B154854. Mercantile-Safe Deposit and
Trust Company (E); 23Aug76; R640607.

R640608.
Mencken in gloomy mood, view of
candidates leaves him uninspired. By
Henry Louis Mencken. (In The Baltimore
sun, Sept. 22, 1948) © 22Sep48; B5-7247.
Mercantile-Safe Deposit and Trust Company
(E); 23Aug76; R640608.

R640614.
Back in town. By Frederick Nebel. (In
Liberty, Oct. 1948) © 20Oct48; B159619.
Dorothy B. Nebel (W); 27Jul76; R640614.

R640640.
You can call it a day. By Peter Cheyney.
© 20Jun49; AI-2304; 25Aug49; A35296. William
Collins (E); 1Sep76; R640640.

R640656.
Vogue patterns. Pamphlet, Aug. 15
collection. By Ruth Sedoc Cooke.
© 8Jul49; AA122465. The Conde Nast
Publications, Inc. (PWH); 2Aug76;
R640656.

R640657.
Junior Vogue patterns. Catalogue, Sept.
1949. By Ruth Sedoc Cooke. © 25Jul49;
AA123811. The Conde Nast Publications,
Inc. (PWH); 2Aug76; R640657.

R640658.
Vogue patterns.Catalogue, Sept. 1949.
By Ruth Sedoc Cooke. © 25Jul49;
AA123812. The Conde Nast Publications,
Inc. (PWH); 2Aug76; R640658.

R640659.
Vogue patterns. Pamphlet, Sept. 1
collection. By Ruth Sedoc Cooke.
© 25Jul49; AA123823. The Conde Nast
Publications, Inc. (PWH); 2Aug76;
R640659.

R640671.
Superman. By National Comics Pub-
lications, Inc., Harry Donenfeld,
president. (In Lowell (MA) sun, Feb. 28,
1949) © 28Feb49; B5-11381. DC Comics,
Inc. (PWH); 3Sep76; R640671.

R640672.
Superman. By National Comics Pub-
lications, Inc., Harry Donenfeld,
president. (In Lowell (MA) sun, Feb. 26,
1949) © 26Feb49; B5-11383. DC Comics,
Inc. (PWH); 3Sep76; R640672.

R640673.
Superman. By National Comics Pub-
lications, Inc., Harry Donenfeld,
president. (In Lowell (MA) sun, Feb. 25,
1949) © 25Feb49; B5-11384. DC Comics,
Inc. (PWH); 3Sep76; R640673.

R640674.
Superman. By National Comics Pub-
lications, Inc., Harry Donenfeld,
president. (In Lowell (MA) sun, Feb. 24,
1949) © 24Feb49; B5-11385. DC Comics,
Inc. (PWH); 3Sep76; R640674.

R640675.
Superman. By National Comics Pub-
lications, Inc., Harry Donenfeld,
president. (In Lowell (MA) sun, Feb. 22,
1949) © 22Feb49; B5-11387. DC Comics,
Inc. (PWH); 3Sep76; R640675.

R640676.
Superman. By National Comics Pub-
lications, Inc., Harry Donenfeld,
president. (In Lowell (MA) sun, Feb. 21,
1949) © 21Feb49; B5-11388. DC Comics,
Inc. (PWH); 3Sep76; R640676.

R640677.
Superman. By National Comics Pub-
lications, Inc., Harry Donenfeld,
president. (In Spider mirror, New York,
Feb. 20, 1949) © 20Feb49; B5-11389. DC
Comics, Inc. (PWH); 3Sep76; R640677.

R640678.
Superman. By National Comics Pub-
lications, Inc., Harry Donenfeld,
president. (In Lowell (MA) sun, Feb. 19,
1949) © 19Feb49; B5-11390. DC Comics,
Inc. (PWH); 3Sep76; R640678.

R640679.
Superman. By National Comics Pub-
lications, Inc., Harry Donenfeld,
president. (In Lowell (MA) sun, Feb. 18,
1949) © 18Feb49; B5-11391. DC Comics,
Inc. (PWH); 3Sep76; R640679.

R640680.
Superman. By National Comics Pub-
lications, Inc., Harry Donenfeld,
president. (In Lowell (MA) sun, Feb. 17,
1949) © 17Feb49; B5-11392. DC Comics,
Inc. (PWH); 3Sep76; R640680.

R640681.
Superman. By National Comics Pub-
lications, Inc., Harry Donenfeld,
president. (In Lowell (MA) sun, Feb. 16,
1949) © 16Feb49; B5-11393. DC Comics,
Inc. (PWH); 3Sep76; R640681.

R640682.
Superman. By National Comics Pub-
lications, Inc., Harry Donenfeld,
president. (In Lowell (MA) sun, Feb. 15,
1949) © 15Feb49; B5-11394. DC Comics,
Inc. (PWH); 3Sep76; R640682.

R640683.
Superman. By National Comics Pub-
lications, Inc., Harry Donenfeld,
president. (In Lowell (MA) sun, Feb. 14,
1949) © 14Feb49; B5-11395. DC Comics,
Inc. (PWH); 3Sep76; R640683.

R640684.
Superman. By National Comics Pub-

DktEntry: 22.10, Page 77 of 321                    ER-8002563, 4-29-2013

R640684 (con.)
lications, Inc., Barry Donenfeld,
president. (In Sunday mirror, New York,
Feb. 13, 1949) © 13Feb49; B5-11396. DC
Comics, Inc. (PWH); 3Sep76; R640684.

R640685.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Sunday (MA) sun, Feb. 12,
1949) © 12Feb49; B5-11397. DC Comics,
Inc. (PWH); 3Sep76; R640685.

R640686.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Lowell (MA) sun, Feb. 11,
1949) © 11Feb49; B5-11398. DC Comics,
Inc. (PWH); 3Sep76; R640686.

R640687.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Oakland (CA) post,
Feb. 10, 1949) © 10Feb49;
B5-11399. DC Comics, Inc. (PWH); 3Sep76;
R640687.

R640688.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Lowell (MA) sun, Feb. 09,
1949) © 9Feb49; B5-11400. DC Comics,
Inc. (PWH); 3Sep76; R640688.

R640689.
Superman. (In San Bernardino (CA)
telegram, Jan. 01, 1949) © 1Jan49;
B5-11579. National Periodical Publi-
cations, Inc. (PWH); 11Aug76; R640689.

R640690.
Superman. (In Sunday mirror, New York,
Jan. 02, 1949) © 2Jan49; B5-11580.
National Periodical Publications, Inc.
(PWH); 11Aug76; R640690.

R640691.
Superman. (In Lowell (MA) sun, Jan. 03,
1949) © 3Jan49; B5-11581. National
Periodical Publications, Inc. (PWH);
11Aug76; R640691.

R640692.
Superman. (In Lowell (MA) sun, Jan. 04,
1949) © 4Jan49; B5-11582. National
Periodical Publications, Inc. (PWH);
11Aug76; R640692.

R640693.
Superman. (In Lowell (MA) sun, Jan. 05,
1949) © 5Jan49; B5-11583. National
Periodical Publications, Inc. (PWH);
11Aug76; R640693.

R640694.
Superman. (In Lowell (MA) sun, Jan. 06,
1949) © 6Jan49; B5-11584. National
Periodical Publications, Inc. (PWH);
11Aug76; R640694.

R640695.
Superman. (In Lowell (MA) sun, Jan. 07,
1949) © 7Jan49; B5-11585. National
Periodical Publications, Inc. (PWH);
11Aug76; R640695.

R640696.
Superman. (In Lowell (MA) sun, Jan. 08,
1949) © 8Jan49; B5-11586. National
Periodical Publications, Inc. (PWH);
11Aug76; R640696.

R640697.
Superman. (In Sunday mirror, New York,
Jan. 09, 1949) © 9Jan49; B5-11587.
National Periodical Publications, Inc.
(PWH); 11Aug76; R640697.

R640698.
Superman. (In Lowell (MA) sun, Jan. 10,
1949) © 10Jan49; B5-11588. National

Periodical Publications, Inc. (PWH);
11Aug76; R640698.

R640699.
Superman. (In Lowell (MA) sun, Jan. 11,
1949) © 11Jan49; B5-11589. National
Periodical Publications, Inc. (PWH);
11Aug76; R640699.

R640700.
Superman. (In Lowell (MA) sun, Jan. 12,
1949) © 12Jan49; B5-11590. National
Periodical Publications, Inc. (PWH);
11Aug76; R640700.

R640701.
Superman. (In Lowell (MA) sun, Jan. 13,
1949) © 13Jan49; B5-11591. National
Periodical Publications, Inc. (PWH);
11Aug76; R640701.

R640702.
Superman. (In Lowell (MA) sun, Jan. 14,
1949) © 14Jan49; B5-11592. National
Periodical Publications, Inc. (PWH);
11Aug76; R640702.

R640703.
Superman. (In Lowell (MA) sun, Jan. 15,
1949) © 15Jan49; B5-11593. National
Periodical Publications, Inc. (PWH);
11Aug76; R640703.

R640704.
Superman. (In Sunday mirror, New York,
Jan. 16, 1949) © 16Jan49; B5-11594.
National Periodical Publications, Inc.
(PWH); 11Aug76; R640704.

R640705.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Lowell (MA) sun, Jan. 31,
1949) © 31Jan49; B5-11409. National
Periodical Publications, Inc. (PWH);
11Aug76; R640705.

R640706.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Sunday mirror, New York,
Jan. 30, 1949) © 30Jan49; B5-11410.
National Periodical Publications, Inc.
(PWH); 11Aug76; R640706.

R640707.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Lowell (MA) sun, Jan. 29,
1949) © 29Jan49; B5-11411. National
Periodical Publications, Inc. (PWH);
11Aug76; R640707.

R640708.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Lowell (MA) sun, Jan. 28,
1949) © 28Jan49; B5-11412. National
Periodical Publications, Inc. (PWH);
11Aug76; R640708.

R640709.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Lowell (MA) sun, Jan. 27,
1949) © 27Jan49; B5-11413. National
Periodical Publications, Inc. (PWH);
11Aug76; R640709.

R640710.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Lowell (MA) sun, Jan. 26,
1949) © 26Jan49; B5-11414. National
Periodical Publications, Inc. (PWH);
11Aug76; R640710.

R640711.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Lowell (MA) sun, Jan. 25,
1949) © 25Jan49; B5-11415. National

Periodical Publications, Inc. (PWH);
11Aug76; R640711.

R640712.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Lowell (MA) sun, Jan.
24, 1949) © 24Jan49; B5-11416. National
Periodical Publications, Inc. (PWH);
11Aug76; R640712.

R640713.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Sunday mirror, New York,
Jan. 23, 1949) © 23Jan49; B5-11417.
National Periodical Publications, Inc.
(PWH); 11Aug76; R640713.

R640714.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Lowell (MA) sun, Jan.
22, 1949) © 22Jan49; B5-11418. National
Periodical Publications, Inc. (PWH);
11Aug76; R640714.

R640715.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Lowell (MA) sun, Jan.
21, 1949) © 21Jan49; B5-11419. National
Periodical Publications, Inc. (PWH);
11Aug76; R640715.

R640716.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Lowell (MA) sun, Jan.
20, 1949) © 20Jan49; B5-11420. National
Periodical Publications, Inc. (PWH);
11Aug76; R640716.

R640717.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Lowell (MA) sun, Jan.
19, 1949) © 19Jan49; B5-11421. National
Periodical Publications, Inc. (PWH);
11Aug76; R640717.

R640718.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Lowell (MA) sun, Jan.
18, 1949) © 18Jan49; B5-11422. National
Periodical Publications, Inc. (PWH);
11Aug76; R640718.

R640719.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Lowell (MA) sun, Jan.
17, 1949) © 17Jan49; B5-11423. National
Periodical Publications, Inc. (PWH);
11Aug76; R640719.

R640720.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Lowell (MA) sun, Feb.
08, 1949) © 8Feb49; B5-11401. National
Periodical Publications, Inc. (PWH);
11Aug76; R640720.

R640721.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Lowell (MA) sun, Feb.
07, 1949) © 7Feb49; B5-11402. National
Periodical Publications, Inc. (PWH);
3Sep76; R640721.

R640722.
Superman. By National Comics Pub-
lications, Inc., Barry Donenfeld,
president. (In Sunday mirror, New York,
Feb. 06, 1949) © 6Feb49; B5-11403.
National Periodical Publications, Inc.
(PWH); 3Sep76; R640722.

R640723.
Superman. By National Comics Pub-

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 78 of 321

R640723 (con.)
lications, Inc., Harry Donenfeld,
president. (In Lovell) (NA) sum, Feb. 05,
1949 @ 1Feb49; B5-11404. National
Periodical Publications, Inc. (PWH);
3Sep76; R640723.

R640724.
Superman. By National Comics Pub-
lications, Inc., Harry Donenfeld,
president. (In Lovell) (NA) sum, Feb. 04,
1949) @ 2Feb49; B5-11405. National
Periodical Publications, Inc. (PWH);
3Sep76; R640724.

R640725.
Superman. By National Comics Pub-
lications, Inc., Harry Donenfeld,
president. (In Lovell) (NA) sum, Feb. 03,
1949) @ 3Feb49; B5-11406. National
Periodical Publications, Inc. (PWH);
3Sep76; R640725.

R640726.
Superman. By National Comics Pub-
lications, Inc. (In Lovell) (NA) sum, Feb.
07, 1949) @ 2Feb49; B5-11407. National
Periodical Publications, Inc. (PWH);
3Sep76; R640726.

R640727.
Superman. By National Comics Pub-
lications, Inc. (In Lovell) (NA) sum, Feb.
8, 1949) @ 1Feb49; B5-11408. National
Periodical Publications, Inc. (PWH);
3Sep76; R640727.

R640728.
A circus of our own. By Irmengarde
Eberle. @ 7Sep48; A25409. Irmengarde
Eberle (A); 15ep76; R640728.

R640729.
The Flush and Nary Duncan. By Honte
Sohn. @ 7Sep48; A25412. Mrs. Honte Sohn
(W); 15ep76; R640729.

R640730.
Royal gorge. By Peter Dawson, pseud. of
Jonathan H. Glidden. @ 7Sep48; A25413.
Dorothy Ewing (W of Peter Dawson, pen name
of Jonathan H. Glidden); 15ep76;
R640730.

R640731.
Hostly California. By Don Blanding.
@ 7Sep48; A25414. Security-First
National Bank of Los Angeles (E); 15ep76;
R640731.

R640743.
Roasted English. Tory heaven. By
Marghanita Laski (Marghanita Laski Howard)
Feb. abroad 29Apr48; AI-1733. @ 26Apr49;
I32327. Marghanita Laski Howard (A);
9Aug76; R640743. (Both reg. entered
under British Proclamation of 10Mar49)

R640758.
Tomorrow in war comes. By Frank
O'Rourke. (In Saturday evening post, Jan-
01, 1949) @ 29Dec48; B172752. Frank
O'Rourke (A); 7Apr76; R640758.

R640759.
Cold water and cherry pie. By Frank
O'Rourke. (In Esquire, Feb. 1949)
@ 7Jan49; B176442. Frank O'Rourke (A);
7Apr76; R640759.

R640760.
The last pitch. By Frank O'Rourke. (In
Saturday evening post, Mar. 19, 1949)
@ 16Mar49; B182646. Frank O'Rourke (A);
7Apr76; R640760.

R640762.
Keep the wagons moving. By West
Lathrop, pseud. of Dorothy West Lathrop,
illustrator: Douglas Duer. @ 20Jan49;
A29315. Hartford National Bank and Trust
Company (E of West Lathrop) & Random

House, Inc. (PWH of Douglas Duer);
25Jun76; R640762.

R640763.
House of storm. By Mignon G. Eberhart.
Condensed version prev. pub. in Ladies
home journal, Mar. 1949 issue. NM:
revisions & additions. @ 16Apr49;
A32280. Mignon G. Eberhart (A); 25Jun76;
R640763.

R640766A.
A Henckes chrestomathy. Edited &
annotated by Henry Louis Mencken.
@ 13Jan49; A13302. Mercantile-Safe
Deposit and Trust Company (E); 25Jun76;
R640766A.

R640766.
House of storm. By Mignon G. Eberhart.
(In Ladies' home journal, Mar. 1949)
@ 25Feb49; B179664. Mignon G. Eberhart
(A); 25Jun76; R640765.

R640766.
Pleasure island. By E. H. Auden. (In
Commentary, may 1949) @ 29Apr49;
B189024. Maurice K. Spears & William
Meredith (E); 25Jun76; R640766.

R640767.
The Managers. By W. H. Auden. (In The
Reporter, May 10, 1949) @ 3Hay49;
B191112. Maurice K. Spears & William
Meredith (E); 25Jun76; R640767.

R640768.
Theologia Germanica. Translation of
introd. & notes by Willard Trask. NM:
translation of introd. & notes.
@ 12May49; A32690. Random House, Inc.
(PWH); 9Aug76; R640768.

R640769.
New day. By Victor Stafford Reid.
@ 10Feb49; A30141. Victor Stafford Reid
(A); 9Aug76; R640769.

R640770.
The Track of the cat. By Walter Van
Tilbury Clark. @ 9May49; A32644. Robert
Morse Clark (C); 9Aug76; R640770.

R640771.
A Rage to live. By John O'Hara.
@ 28Jul49; A34607. Wylie O'Hara Doughty
(C); 9Aug76; R640771.

R640772.
French self-taught. By Francisco Ibarra
& Armand Gregoire. @ 22Jun49; A34395.
Francisco Ibarra & Armand Gregoire (A);
9Aug76; R640772.

R640773.
The Wisdom of Catholicism. Pref.,
introd., notes, translation, various
selections by Anton C. Pegis. @ 24Jun49;
A34397. Anton C. Pegis (A); 9Aug76;
R640773.

R640774.
Love in a cold climate. By Nancy
Mitford (Mrs. Peter Rodd) @ 21Jun49;
A34398. Nancy Mitford (A); 9Aug76;
R640774.

R640775.
Second rater. By Lee Knight. (In
American girl, July 1949) @ 22Jun49;
B197863. Random House, Inc. (PWH);
9Aug76; R640775.

R640776.
Plow culture and hoe culture: a study is
contrasts. By Oscar Lewis. (In Rural
sociology, June 1949) @ 28Jun49;
B198578. Ruth H. Lewis (W); 9Aug76;
R640776.

R640785.
Marriage '48. By Vera Caspary. (In
Collier's magazine, Sept. 18, 1948)

@ 10Sep48; B153640. Vera Caspary (A);
2Sep76; R640785.

R640786.
Marriage '48. By Vera Caspary. (In
Collier's magazine, Sept. 25, 1948)
@ 17Sep48; B154669. Vera Caspary (A);
2Sep76; R640786.

R640787.
Marriage '48. By Vera Caspary. (In
Collier's magazine, Oct. 02, 1948)
@ 24Sep48; B154689. Vera Caspary (A);
2Sep76; R640787.

R640788.
Marriage '48. By Vera Caspary. (In
Collier's magazine, Oct. 09, 1948)
@ 1Oct48; B155928. Vera Caspary (A);
2Sep76; R640788.

R640789.
Marriage '48. By Vera Caspary. (In
Collier's magazine, Oct. 16, 1948)
@ 8Oct48; B158489. Vera Caspary (A);
2Sep76; R640789.

R640799.
Bugs Bunny, super sleuth. By Warner
Brothers Cartoons. @ 14Sep48;
AA100624. Warner Brothers, Inc. (PWH);
3Sep76; R640799.

R640800.
Bugs Bunny and Klondike gold. By Warner
Brothers Cartoons, Inc. @ 17Sep48;
AA102568. Warner Brothers, Inc. (PWH);
3Sep76; R640800.

R640801.
Bugs Bunny. By Warner Brothers
Cartoons, Inc. (In NEA service weekly,
Sept. 06, 1948) @ 6Sep48; B5-7679.
Warner Brothers, Inc. (PWH); 3Sep76;
R640801.

R640802.
Bugs Bunny. By Warner Brothers
Cartoons, Inc. (In NEA service weekly,
Sept. 13, 1948) @ 13Sep48; B5-7680.
Warner Brothers, Inc. (PWH); 3Sep76;
R640802.

R640803.
Bugs Bunny. By Warner Brothers
Cartoons, Inc. (In NEA service weekly,
Sept. 20, 1948) @ 20Sep48; B5-7681.
Warner Brothers, Inc. (PWH); 3Sep76;
R640803.

R640804.
Bugs Bunny. By Warner Brothers
Cartoons, Inc. (In NEA service weekly,
Sept. 27, 1948) @ 27Sep48; B5-7682.
Warner Brothers, Inc. (PWH); 3Sep76;
R640804.

R640805.
Bugs Bunny. By Warner Brothers
Cartoons, Inc. (In NEA service weekly,
Oct. 04, 1948) @ 4Oct48; B5-7683.
Warner Brothers, Inc. (PWH); 3Sep76;
R640805.

R640806.
Bugs Bunny. By Warner Brothers
Cartoons, Inc. (In NEA service weekly,
Oct. 11, 1948) @ 11Oct48; B5-7684.
Warner Brothers, Inc. (PWH); 3Sep76;
R640806.

R640807.
Bugs Bunny. By Warner Brothers
Cartoons, Inc. (In NEA service weekly,
Oct. 18, 1948) @ 18Oct48; B5-7685.
Warner Brothers, Inc. (PWH); 3Sep76;
R640807.

R640808.
Bugs Bunny. By Warner Brothers
Cartoons, Inc. (In NEA service weekly,
Oct. 25, 1948) @ 25Oct48; B5-7686.

Docket Entry: 22-10 · Page 79 of 321　Case 1:13-cv-01338-CKK-CP-RJL · 07/09/2013 · ID #: 802563

# EXHIBIT D

COPY

FILED

2007 APR 23 PM 3:35

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

1  Marc Toberoff (CA State Bar No. 188547)
   Nicholas C. Williamson (CA State Bar No. 231124)
2  LAW OFFICES OF MARC TOBEROFF, PLC
   2049 Century Park East, Suite 2720
3  Los Angeles, CA 90067
   Telephone: (310) 246-3333
4  Facsimile: (310) 246-3101

5  Attorneys for Plaintiffs and Counterclaim Defendants
   JOANNE SIEGEL AND LAURA SIEGEL LARSON
6

7              UNITED STATES DISTRICT COURT
             CENTRAL DISTRICT OF CALIFORNIA
8

| | |
|---|---|
| 9  JOANNE SIEGEL and LAURA SIEGEL LARSON, | Case No.: CV 04-8400 SGL (RZx) |
| 10         Plaintiffs, | [Consolidated with Case No. 04-8776 SGL (RZx)] |
| 11    vs. | |
| 12  WARNER BROS. ENTERTAINMENT INC.; TIME WARNER INC.; DC COMICS; and DOES 1-10, | Hon. Stephen G. Larson, U.S.D.J. |
| 13 | Hon. Ralph Zarefsky, U.S.M.J. |
| 14         Defendants. | |
| 15 | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DEFENDANT DC COMICS' PRODUCTION OF DOCUMENTS** |
| 16  JOANNE SIEGEL and LAURA SIEGEL LARSON, | |
| 17         Plaintiffs, | |
| 18    vs. | **DISCOVERY MATTER LOCAL RULE 37-2.4** |
| 19  TIME WARNER INC.; WARNER COMMUNICATIONS INC.; WARNER BROS. ENTERTAINMENT INC.; WARNER BROS. TELEVISION PRODUCTION INC.; DC COMICS; and DOES 1-10, | [Notice of Motion and Declaration of Marc Toberoff, Esq. Filed Concurrently Herewith] |
| 20 | Time: 10:00 a.m. |
| 21 | Date: May 14, 2007 |
| 22         Defendants. | Courtroom: 540 |
| 23 | Mag. Judge Ralph Zarefsky |
| 24 | Discovery Cutoff: May 15, 2007 |
| 25 | |
| 26  AND RELATED COUNTERCLAIMS | |

27

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 81 of 321

**24**
ER 2368

# TABLE OF CONTENTS

I.   **INTRODUCTION** ..................................................................1

II.  **PLAINTIFFS' CONTENTIONS** ................................................2

A.   Procedural History And Background ....................................2

B.   The Disputed Discovery .......................................................6

C.   Compliance With Local Rule 37-1 ........................................6

D.   Legal Standard ...................................................................10

E.   Argument ............................................................................13

   1.   Defendants Boilerplate Objections To The Production Of Relevant Documents Are Without Merit ......................14

   2.   DC Has Not Produced The Financial Documents Requested Based On DC's Duty To Plaintiffs ................15

   3.   DC Did Not Produce The Requested Documents Referred To In The Depositions Of DC's And Warner's Officers ................................................................19

   4.   Defendants Should Be Compelled To Produce The Financial Documents Requested By Plaintiffs ................................................................22

      a.   Plaintiffs' First Set Of Requests Regarding "Superman" ..............................................22

      b.   Plaintiffs' Second Set Of Requests Regarding "Superman" ..............................................26

      c.   Plaintiffs' Second Set Of Requests Regarding "Smallville" ..............................................34

      d.   Plaintiffs' Second Set Of Requests Regarding "The Adventures Of Superboy" ..................40

      e.   Plaintiffs' Second Set of Requests Regarding "Superboy" ..............................................48

   5.   Defendants Should Be Compelled To Produce Documents Regarding Its Exploitation of "Superman" And "Superboy" ................................................60

      a.   Request Nos. 151-153, 159, 162, 199, 202 (Second Set) ..............................................60

      b.   Request Nos. 80, 81, 84 (First Set) and 223-225 (Second Set) ..............................................64

i

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 82 of 321

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 83 of 321

c. Request No. 37 (First Set).............................................67

d. Request No. 91 (Second Set)...........................................68

6. DC Should Be Compelled To Produce Documents Related To Its Legal Defenses......................................69

a. Documents Related To Defendants' Work-For-Hire Defenses Are Relevant And Must Be Produced.........69

b. Documents Regarding The Creation And Development Of *Smallville* Are Relevant And Must Be Produced.................................................................81

c. DC Should Be Compelled To Produce Documents Regarding The Extent Of Its Exploitation Of "Superman" / "Superboy" Within The United States.....................................................................87

7. DC Should Be Compelled To Produce Documents Pertainimg To Their Negotiations With Warner Bros. Regarding "Superman" And "Superboy"...................91

8. DC Should Be Compelled To Produce Documents Responsive To Additionally Relevant Requests.............94

9. Plaintiffs Are Entitled To Reimbursement Of Their Attorneys' Fees And Costs ..................................98

III. **PLAINTIFFS' CONCLUSION**.....................................98

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                    **Page**

*Brune v. IRS,*
    861 F.2d 1284, 1288 (D.C. Cir. 1988)...........................................12

*Collins v. JC Penney Life Ins. Co.*
    2003 U.S. Dist. LEXIS 8455, at \*5 (S.D. Cal. 2003)..................14, 96

*Curb v. MCA Records, Inc.,*
    898 F. Supp. 586, 595 (M.D.Tenn. 1995)................................87

*EGH, Inc. v. Blue Cross & Blue Shield of Oregon,*
    1991 U.S. Dist. LEXIS 13965, \*4-5 (D. Or. 1991)........................11

*Expediters Int'l v. Direct Line Cargo Mgmt. Servs.,*
    995 F. Supp. 468, 477 (D.N.J. 1998)...................................87

*Epstein v. MCA, Inc.,*
    54 F.3d 1422, 1423 (9th Cir. 1995)...................................95

*Hickman v. Taylor,*
    329 U.S. 495, 507 (1947)...........................................12

*Hitachi, Ltd. v. Amtran Tech. Co,*
    2006 U.S. Dist. LEXIS 52361 (N.D. Cal. 2006)........................11

*Humphreys v. Regents of the Univ. of Cal.,*
    2006 U.S. Dist. LEXIS 20148 (N.D. Cal. 2006)........................98

*International Union of Petroleum and Industrial Workers, AFL-CIO,*
    870 F.2d 1450, 1452 (9th Cir. 1989)..................................11

*Katz v. Batavia Marine & Sporting Supplies, Inc.,*
    984 F.2d 422, 424 (Fed. Cir. 1993)..................................12

*Laborers' Int'l Union of N. Am. v. Department of Justice,*
    772 F.2d 919, 921 (D.C. Cir. 1984)..................................12

*Miller v. IBM,*
    2006 U.S. Dist. LEXIS 27649 (N.D. Cal. 2006)........................11

*Oakes v. Havorsen Marine Ltd.,*
    179 F.R.D. 281, 283 (C.D. Cal. 1998)............................12, 95

*Oddo v. Ries,* 743 F.2d 630, 633 (9th Cir. 1984)........................15

*Ragg v. MCA/Universal Studios,*
    165 F.R.D. 601, 603 (C.D. Cal. 1995)...............................11

*Searock v. Stripling,*
    736 F.2d 650 (11th Cir. 1984).....................................11

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 85 of 321

*Shotwell v. Stevenson*,
  2006 U.S. Dist. LEXIS 93674 (E.D. Cal. 2006)...........................98

*Trevino v. ABC Am., Inc.*,
  232 F.R.D. 612 (N.D. Cal. 2006)........................................15

*United States v. Weinstock*,
  1998 WL 472344 *5 (6th Cir.)...........................................11

*Walker v. Lakewood Condo. Owners Ass'n*,
  186 F.R.D. 584, 587 (C.D. Cal. 1999)...................................14

**Federal Statutes**

17 U.S.C. § 106.............................................................87

17 U.S.C. § 304 (c).....................................................passim

17 U.S.C. § 504(a)......................................................4, 15

**Federal Rules**

Federal Rule of Civil Procedure 26.....................................passim

Federal Rule of Civil Procedure 34.....................................passim

Federal Rule of Civil Procedure 37.....................................passim

**Miscellaneous**

Central Dist. Of Cal. Local Rule 37....................................passim

1-6 *Nimmer on Copyright* §§ 6.10 .........................................87

1-6 *Nimmer on Copyright* § 6.12 ..........................................87

1-6 *Nimmer on Copyright* § 11.03..........................................15

1-6 *Nimmer on Copyright* § 11.04..........................................15

Schwarzer, Tashima, Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Proc.*
*Before Trial* (Rutter 2006).................................................98

# I.   INTRODUCTION

Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs") are the widow and daughter, respectively, of Jerome Siegel ("Siegel"), the co-author of the world renowned comic book hero, "Superman," and the author of "Superboy." These actions, consolidated solely for purposes of discovery, arise out of Plaintiffs' proper exercise of their right under section 304(c) of the 1976 United States Copyright Act, 17 U.S.C. § 304(c), to recapture Siegel's original copyrights in "Superman" and "Superboy" by serving statutory notices on the defendants herein ("Defendants") in 1997 and 2002, respectively terminating Siegel's prior grant(s) of "Superman" and "Superboy" to Defendants' predecessor(s) (the "Termination(s)").

As the co-owner and owner, respectively, of the recaptured original copyrights underlying these properties, Plaintiffs are entitled to an accounting from Defendants for the profits earned by these properties since the Terminations. Documents relating to Defendants' revenues and expenses are therefore essential to Plaintiffs' determination of damages and remedies under federal law. To that end, Plaintiffs served requests for production ("Requests") carefully drafted to elicit the specific financial documents in Defendants' possession which relate to Defendants' revenues and expenses in connection with their exploitation of "Superman" and "Superboy." Such documents were specifically targeted and requested under the guidance of Plaintiffs' expert, Steven D. Sills ("Sills"), a leading entertainment industry forensic accountant with over 20 years of experience auditing Warner Bros. However, Defendants have refused to provide the requisite accounting documents requested, instead dumping thousands of pages of unrelated documents, insisting that the sheer quantity of DC's production somehow substitutes for the key relevant documents specifically requested by Plaintiffs.

Defendants have similarly ignored numerous Requests for non-financial documents, and for other such Requests have produced some documentation, but

1

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 86 of 321

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 87 of 321

1    avoided producing key documents in the categories requested.  For instance, despite
2    the clear relevance of documents relating to the copying/manufacturing of Superman
3    and Superboy derivative works in the United States or to Defendants' purported
4    defenses in these actions, Defendants refused to answer Requests seeking such
5    documents.  Defendants' obvious stonewalling of discovery has seriously hampered
6    Plaintiffs' ability to prosecute their case and must not be allowed to continue.
7    Pursuant to L.R. 37-1, Plaintiffs have made a diligent effort to meet and confer with
8    Defendants regarding these outstanding Requests.  Unfortunately, Defendants by
9    their evasive conduct and positions have made it readily apparent that Plaintiffs
10   must move to compel before a resolution of this problem can be achieved.

11           This motion is based on well-settled principles of civil discovery: the
12   requested documents are relevant to the subject matter of this litigation, are
13   reasonably calculated to lead to the discovery of admissible evidence, and are not
14   privileged.  DC's objections, refusal to comply and/or self-serving limitations on
15   discovery are without justification.  Accordingly, the Court should order DC to
16   produce immediately the documents requested by Plaintiffs.

17   **II.    PLAINTIFFS' CONTENTIONS**

18           **A.    PROCEDURAL HISTORY AND BACKGROUND**

19           Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs") are the widow
20   and daughter, respectively, of Jerome Siegel ("Siegel"), the co-author of the world
21   renowned comic book hero, "Superman," and the author of "Superboy."  This case
22   arises out of Plaintiffs' proper exercise of their right under section 304(c) of the
23   1976 United States Copyright Act, 17 U.S.C. § 304(c), to recapture Siegel's original
24   copyrights in "Superman" and "Superboy" by serving statutory notices on the
25   defendants herein ("Defendants") on April 3, 1997 and March 8, 2002, respectively
26   terminating Siegel's prior grant(s) of "Superman" and "Superboy" to Defendants'
27   predecessor(s) (the "Termination(s)").  The "Superman" Termination recaptured

28

2

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 88 of 321

1  Siegel's 50% j   ownership interest in the original "Superman" copyrights and the

2  Superboy Termination recaptured Siegel's exclusive ownership of the original

3  "Superboy" copyrights.

4      Plaintiffs' Terminations complied with all the requirements of 17 U.S.C. §

5  304(c) and 37 C.F.R. § 201.10, the regulations promulgated thereunder by the

6  Register of Copyrights. Accordingly, on April 16, 1999, the noticed "Superman"

7  termination date, all rights Siegel conveyed in "Superman" to Defendants'

8  predecessors duly reverted to Plaintiffs. On November 17, 2004, the noticed

9  "Superboy" Termination date, all rights that Siegel had conveyed in "Superboy" to

10  Defendants' predecessors duly reverted to Plaintiffs.

11      Shortly after Plaintiffs served their "Superman" Termination notices the

12  general counsel of Defendant Warner Bros. Entertainment Inc. ("WB") and the

13  President of DC Comics ("DC"), a wholly owned WB subsidiary, both

14  acknowledged the validity of the "Superman" Termination and the parties began

15  negotiations for Defendants' licensing of Plaintiffs' recaptured copyright interests.

16  However, negotiations broke down due to Defendants' aggressive demands.

17  Thereafter, in reversal of Defendants' prior acknowledgement of the Termination,

18  Defendants contested the "Superman" Termination claiming it was somehow

19  invalid.

20      Defendants thereafter also claimed that the "Superboy" Termination was

21  invalid. Plaintiffs consequently commenced the instant action for declaratory relief

22  and *an accounting* regarding the "Superman" Termination on October 8, 2004 and

23  the instant action for declaratory relief, copyright infringement and *an accounting*

24  regarding the "Superboy" Termination on October 22, 2004.[1] (*See* Declaration of

25

---

26  [1] Plaintiffs moved for partial summary adjudication on February 15, 2006 that their statutory
   "Superboy" Termination is valid and that Plaintiffs thereby recaptured Siegel's "Superboy"

27  copyrights. Defendants cross-moved for summary judgment claiming the "Superboy"
   Termination was invalid based in large part on the same purported claims and defenses asserted

28  with respect to "Superman." On March 23, 2006, the Court *granted* Plaintiffs' motion in its

3

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 89 of 321

1  Marc Toberoff in Support of Plaintiffs' Motion to Compel ("Toberoff Decl."), Exs.

2  K, L.)

3        Plaintiffs first requested DC's documents related to their claims/damages and

4  Defendants' claims/defenses on May 13, 2005, pursuant to Plaintiffs' Request for

5  Production of Documents and Things to Defendant DC Comics, Set One ("First

6  Set"). (Toberoff Decl., Ex. A.) Defendants served written objections and responses

7  to these requests for production on June 13, 2005. (*Id.*, Ex. B.) DC thereafter made

8  a small portion of their non-privileged documents available for copying on August

9  9, 2005. (*Id.*, ¶ 4.) However, DC did not serve a privilege log until April 7, 2006,

10 *ten months* after DC's responses were due.[2] (*Id.*)

11       Plaintiffs subsequently requested further specific financial documents

12 pursuant to Plaintiffs' Second Set of Requests for Production of Documents and

13 Things to Defendant DC Comics ("Second Set") on October 17, 2006 and Plaintiffs'

14 Fourth Set of Requests for Production of Documents and Things to Defendants

15 Warner Bros. Entertainment Inc., Warner Bros. Television Inc., Time Warner Inc.

16 and DC Comics ("Fourth Set") on October 18, 2006. (*Id.*, Exs. D, E.)

17       The Requests for financial documents were crafted under the guidance of

18 Steven D. Sills ("Sills"), a leading entertainment industry accountant, to specifically

19 identify the documents necessary for Plaintiffs to determine copyright infringement

20 damages under 17 U.S.C. § 504. Sills' knowledge of pertinent financial documents

21 kept by Warner Bros. in the ordinary course of business was gleaned from his

22 numerous audits of Warner Bros., DC's parent company, over the past 25 years.

23

24 entirety and *denied* Defendants' motion in its entirety. Defendants subsequently moved to have
   this order certified for appeal, which motion was also *denied* by the Court.

25

26 [2] Despite DC's extremely late service of a privilege log on April 7, 2006, Defendants thereafter
   argued in their motion to compel filed July 23, 2006 that *Plaintiffs'* more timely service of a

27 privilege log resulted in a complete waiver of Plaintiffs' attorney-client privilege. (Toberoff Decl,
   ¶ 15, Ex. N, at. 23:4-21). This claim was denied by the Court in its order dated August 18, 2006,

28 denying Defendants' motion.

4

PLAINTIFFS' MOTION TO COMPEL

32  ER 2376

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 90 of 321

1    Mr. Sills' singular expertise and experience handling complex entertainment

2    industry forensic accounting matters was expressly acknowledged by Mike

3    Edwards, Warner Bros.' Senior Vice President, Financial Contract Reporting and

4    Administration, during his November 13, 2006 deposition (Toberoff Decl., Ex. M,

5    86:9-87:7):

6

7    Q:    Do you know a gentleman by the name of Steven Sills?
     A:    I do know Steven. Yes...

8    Q:    What's your opinion of his expertise and professionalism as an auditor?
9    A:    I think I have said publicly on many occasions Steve is in my view the
           best of the bunch.
10

11   Q:    Do you know how many times Mr. Sills has audited Warner Bros.?
     A:    Steve has been auditing Warners since his days at Laventhal & Horvath
12         in the early 80's. And we're blessed or cursed, depending on how you
           look at it, to have Steve personally working at Warner at least two days
13         a week. And so he's done probably hundreds of audits with us over the
           course the last 20-odd years...
14

15   Q:    Do you charge him rent?
     A:    ...No, we gave him a nice audit room. He has two staff people that are
16         in our building five days a week every week.

17       In addition, the First Requests to DC, Second Requests to DC and Fourth

18   Requests to DC (collectively, the "Requests") sought documents regarding

19   Defendants' publication/exploitation of Superman and Superboy derivative works

20   and Defendants' defenses in the instant actions.

21       Defendants served written objections and responses to the Second Requests to

22   DC and the Fourth Requests to DC on November 16 and 17, 2007, respectively.

23   (Id., Exs. F, G). In addition, DC's counsel sent a November 17, 2006 letter to

24   Plaintiffs wherein DC purported to make thousands of documents available for

25   copying. (Id., Ex. H). Despite the large volume of document production, DC's

26   production was largely evasive and deficient – filled with irrelevant internal

27   marketing statements and thousands of duplicates – particularly in light of the

28

                                        5

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 91 of 321

1  ongoing discussions between the parties wherein Plaintiffs' counsel made clear
2  specific areas of document production vital to these cases. (Toberoff Decl., ¶ 10).

3        DC's deficient production has left Sills (designated as an expert witness by
4  Plaintiffs on January 12, 2006) unable to submit a complete expert report pursuant
5  to FRCP 26 or to effectively compute and verify Plaintiffs' damages. (Toberoff
6  Decl., ¶ 16., Ex. O).

7  **B.**   **THE DISPUTED DISCOVERY**

8        The Requests, Responses and corresponding document production at issue in
9  this Motion entail Plaintiffs' Request Nos. 4-8, 27-30, 33, 37, 39, 41-42, 44-51, 45-
10 51, 62-63, 69-72 (First Set), 80-81, 84, 91, 96-113, 114-126, 127-145, 147-150, 154-
11 158, 160-161, 163, 173-174, 176, 178-182, 187-191, 194-198, 200-201, 203, 212-
12 214, 216-221, 223-225 (Second Set) and 265-272, 276-294 (Fourth Set). Each
13 subject Request and Response is set forth verbatim below.

14 **C.**   **COMPLIANCE WITH LOCAL RULE 37-1**

15       In light of DC's continuing failure to produce responsive documents or
16 engage in meaningful discussions regarding production, Plaintiffs sent Defendant
17 DC a letter on February 26, 2007, pursuant to L.R. 37-1, detailing DC's deficient
18 responses and production and requesting a conference to discuss these issues. (*Id..,*
19 ¶ 10, Ex. I.)  Plaintiffs also sent a second letter to DC dated February 26, 2007
20 detailing documents referenced by DC officers, Paul Levitz, Patrick Caldon and
21 Warner Bros. Television, Inc.'s officer, Brett Paul, in their depositions but not
22 produced, though squarely within Plaintiffs' Requests. *Id*. DC finally responded in
23 writing to both letters on March 8, 2007 (the tenth and last day to respond per L.R.
24 37-1). The parties were unable, however, to resolve these discovery disputes. *Id*.

25       Thereafter, pursuant to L.R. 37-2.2, Plaintiffs served their portion of a joint
26 stipulation ("Joint Stipulation") to Defendants on April 12, 2007. *Id*. Ex. Y.
27 However, Defendants refused to cooperate in the preparation of the Joint Stipulation

28

PLAINTIFFS' MOTION TO COMPEL

   ER 2378

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 92 of 321

1  and provide their portion of the Joint Stipulation per L. R. 37-2.2 and 37-4. *Six days*

2  *later*, by letter dated April 18, 2007, Defendants "objected" to Plaintiffs' service of

3  the Joint Stipulation on April 12, 2007 as purportedly a couple hours late and stated

4  that Plaintiffs should follow the unilateral filing procedures set forth in L.R. 37-4.

5  *Id.*, Ex. Z. Plaintiffs offered Defendants an extra day to provide their portion of the

6  Joint Stipulation, which they also refused. *Id.*, Ex. AA.

7      Defendants' refusal to provide their portion of the Joint Stipulation is based

8  on the specious claim that Plaintiffs' portion of the Joint Stipulation was untimely

9  served. *Id.* This claim not only lacks merit, but contradicts the cooperative

10  procedures agreed to and followed by the parties, as permitted by L.R. 37.2.2, in

11  handling the multiple motions to compel previously filed in this litigation.

12      L.R. 37.2-2 provides that after the opposing party receives the joint

13  stipulation they have five court days to submit their portion to the moving party who

14  then assembles the document. The assembled document is then returned to the

15  opposing party who must sign and return it "no later than the end of the next

16  business day." L.R. 37-2. Though somewhat ambiguous, the rule arguably leaves

17  two full business days plus the day of filing to assemble the document from the time

18  the moving party returns its portion on the fifth court day. However, L.R. 37.2-2

19  also says that the parties are free to agree on a different schedule and procedure. *Id.*

20      Given the near instantaneous time advantages of e-mail and word processing

21  the parties, from the very first motion filed pursuant to L.R. 37, agreed that the

22  moving party would e-mail their portion of the joint stipulation in the electronic

23  "Word" format to the opposing party two business days before the date of filing,

24  leaving one full business day plus the date of filing to assemble and execute the joint

25  stipulation. Toberoff Decl., ¶ 30. Thus, the opposing party merely had to "cut and

26  paste" their portion into the joint stipulation, thereby instantaneously completing it

27  at that moment well in advance of the movant's filing of the motion. *Id.*, Exs. BB,

28

7

PLAINTIFFS' MOTION TO COMPEL

1  CC.

2      By choosing to have the opposing party "paste" their portion directly into the

3  joint stipulation and email the completed document on the fifth "court" day, the

4  parties eliminated the intermediate "assembly step" provided for in L.R. 37.2-2. *Id.*

5  The instantaneous advantages of e-mail and word processing enabled the parties to

6  assemble the joint stipulations and arrange for signatures on a *much* faster basis than

7  anticipated by the rules. Under the party's procedures the joint stipulation could

8  easily be filed the day after the opposing party electronically added its portion to the

9  joint stipulation and emailed the *completed* document to the moving party. In fact,

10  this arrangement allowed the opposing party to submit an executed signature page at

11  the same time it submitted the completed joint stipulation as they had "review[ed]"

12  (L.R. 37.2-2) the now completed document before sending it back, thereby further

13  shortening the time needed to process the joint stipulation for filing – a practice that

14  was often followed by the parties. *Id.*, Ex. DD.

15      Here, Plaintiffs emailed their portion of the Joint Stipulation regarding DC's

16  deficient interrogatory responses on Thursday, April 12, 2007. *Id.*, Ex. Y. Pursuant

17  to L.R. 37-2.2 and the parties' arranged procedure, this meant Defendants needed to

18  insert their portion into the Joint Stipulation and email it five business days later on

19  the following Thursday, April 19, 2007 – in more than ample time to be filed on or

20  before the Monday, April 23, 2007 filing deadline. *Id.*, Ex. FF. In fact, if

21  Defendants needed additional time they could have requested this, and Plaintiffs

22  would have agreed to their returned and executed the Joint Stipulation with their

23  portion on Friday, April 20, 2007, as this still would have left more than sufficient

24  for Plaintiffs to file the Joint Stipulation on April 23, 2007. The parties have made

25  this accommodation as well in the past. *Id.*, ¶¶ 35-36, Exs. DD, GG, HH.

26      Here, in contrast, after service of Plaintiffs' portion of the Joint Stipulation on

27  April 12, 2007, Defendants kept silent. Six days later on April 18, 2007, Defendants

28

8

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 94 of 321

1  sent a letter to Plaintiffs which cynically ignored the parties' well-worn joint

2  stipulation assembly arrangement, objected to Plaintiffs' service as purportedly

3  untimely and refused to furnish their portion of the Joint Stipulation.   Even though,

4  as always, Defendants had a full week to review and respond to Plaintiffs' motion

5  and would view it as an instantaneously completed document once they cut and

6  pasted their portion into the Joint Stipulation, Defendants speciously claimed for the

7  first time that they required a full day after they inserted their portion in the Joint

8  Stipulation to review the document, which, of course, makes no sense.  *Id.* Ex. Z.

9        Firstly, this blatantly ignored the parties' e-mail and electronic assembly

10  procedures.  Secondly, if Defendants had, as required, submitted their portion on

11  April 19, 2007, by cut and pasting it into the completed Joint Stipulation, they

12  would have had *four* days (two court days and the weekend) to "review" the

13  document (after already working on it for a full week), with time to spare before

14  Plaintiffs filing of the Joint Stipulation on April 23, 2007.

15        Defendants' claim that Plaintiffs' motion was "untimely" is simply false.

16  Firstly, L.R. 37-2.2 provides that the opposing party must serve its portion of the

17  joint stipulation within five (5) court days of *receipt* of the document.  It is

18  unquestionable that Defendants received Plaintiffs portion of the Joint Stipulation on

19  April 12, 2007 at 9:24 p.m.[3]  *Id.* Ex. Y.  Secondly, pursuant to their somewhat

20  altered schedule for assembling the joint stipulations the parties have never required,

21  nor in practice, always furnished their portion of the joint stipulation by "close of

22  business."  For instance, Plaintiffs sent via email their joint stipulation regarding

23  Defendants' deficient interrogatory responses at 11:26 p.m. the evening of

24

25  _____

   [3] The motion was emailed at 9:24 p.m. Pacific Standard Time to Defendants' Los Angeles
26  counsel. Toberoff Decl., Ex. Y. The fact this mailing is after midnight for Defendants'
   New York Counsel is of no moment as this case is being litigated in California and the
27  parties have never agreed otherwise to have deadlines keyed to Eastern Standard Time.

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 95 of 321

1  Thursday, March 8, 2007, for filing by Monday, March 19, 2007. *Id.*, Ex. CC.
2  Defendants that same evening emailed their joint stipulation regarding purported
3  "whistleblower" documents at 8:48 p.m. *Id.*, Ex. EE.  In the cooperative spirit of
4  L.R. 37, at no time was such service objected to by either party as untimely, nor did
5  either party ever refuse to provide their portion of the Joint Stipulation.[4]

6       It therefore appears that Defendants' specious objection and refusal to
7  cooperate in the Joint Stipulation process as required by L.R. 37-1and 37-4 is no
8  more than a tactical manipulation of the Local Rules to grab more time to respond
9  by effectively converting the Joint Stipulation procedure of L.R. 37-1 into an L.R. 6-
10 1 noticed motion under L.R. 37-2.4.  Under this new schedule Defendants'
11 opposition would be due April 30, 2007, instead of April 19, 2007 under L.R. 37-
12 2.2's joint stipulation schedule, providing Defendants eleven more days to respond.

13      Defendants' conduct runs afoul of the mandate in L.R. 37-1and 37-4 that the
14 parties cooperate in presenting motions to compel in the form of a joint stipulation
15 for the Court's convenience.  Defendants' failure to approach Plaintiffs shortly after
16 service of the Joint Stipulation on April 12, 2007 to work out a satisfactory schedule
17 to complete the Joint Stipulation by April 23, 2007 also violates L.R. 37's mandate
18 that that the parties cooperate to resolve discovery disputes before burdening the
19 court.  Defendants' gamesmanship is but further evidence of their stonewalling
20 tactics and should not be countenanced by the Court.

21 **D.  LEGAL STANDARD**

22      Pursuant to Rule 34(a) of the Federal Rules of Civil Procedure ("FRCP"),

23

24 ───────────────
   [4] Defendants have repeatedly submitted incorrect exhibits with their joint stipulations.
25 Toberoff Decl. Ex.II. Furthermore, in one instance, Defendants improperly served
   Plaintiffs with an incomplete "redlined" Joint Stipulation.  *Id.*, Exs. JJ, KK.  In all of these
26 cases, instead of contending that Defendants' respective joint stipulations were "untimely,"
   Plaintiffs reasonably asked for the proper document(s) to be sent and responded
27 accordingly in recognition of the overarching purpose of L.R. 37 to present motions to
   compel in the form of joint stipulations for the Court's convenience.
28

10

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 96 of 321

1  "any party may serve on any other party a request to produce and permit the party

2  making the request...to inspect and copy any designated documents...which are in

3  the possession, custody or control of the party upon whom the request is served."

4  FRCP 34(a)(1).  Where a responding party fails to make the required disclosures,

5  the propounding party may move to compel the production of documents.  FRCP

6  37(a).  For the purposes of determining whether a party has failed to respond to

7  requests for inspection under FRCP 34, "an evasive or incomplete disclosure,

8  answer, or response is to be treated as a failure to disclose, answer, or respond."

9  FRCP 37(a)(3).

10      The party to whom an inspection demand is issued must produce all

11  documents which are in its "possession, custody or control."  FRCP 34(a).  "Control

12  is defined as the legal right to obtain documents upon demand," *International Union*

13  *of Petroleum and Industrial Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir.

14  1989)(*citing Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984)), and

15  "[f]ederal courts construe 'control' very broadly under FRCP 34." *Miller v. IBM*,

16  2006 U.S. Dist. LEXIS 27649, *9 (N.D. Cal. 2006). *See Hitachi, Ltd. v. Amtran*

17  *Tech. Co*, 2006 U.S. Dist. LEXIS 52361, *4 (N.D. Cal. 2006)("a subsidiary will be

18  required to produce documents wholly owned by the parent company"); *EGH, Inc.*

19  *v. Blue Cross & Blue Shield of Oregon*, 1991 U.S. Dist. LEXIS 13965, *4-5 (D. Or.

20  1991)("wholly-owned subsidiary['s argument that] it does not have access to the

21  financial documents of its parent company" not compelling).

22      The general purpose of discovery is to remove surprise from trial preparation

23  so that parties obtain evidence necessary to evaluate and resolve their dispute. *See*

24  *Ragg v. MCA/Universal Studios*, 165 F.R.D. 601, 603 (C.D. Cal. 1995); *United*

25  *States v. Weinstock*, 153 F.3d 272, 277 (6th Cir. 1998) ("[The fact-finder] is entitled

26  to know the 'setting' of a case.  It cannot be expected to make its decision in a void -

27  without knowledge of the time, place and circumstances of the acts which form the

28

11

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 97 of 321

1   basis of the charge.") (internal quotations omitted).

2       The scope of discovery is rather broad, as defined by the Federal Rules of

3   Civil Procedure:

4       "Parties may obtain discovery regarding any matter, not privileged, that
        is relevant to the claim or defense of any party ... Relevant information
5       need not be admissible at the trial if the discovery appears reasonably
        calculated to lead to the discovery of admissible evidence." FRCP
6       26(b)(1).

7       Courts have long held that pretrial discovery is "to be accorded a broad and

8   liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)("No longer can the

9   time-honored cry of 'fishing expedition' serve to preclude a party from inquiring

10  into the facts underlying his opponent's case"). *See Epstein v. MCA, Inc.*, 54 F.3d

11  1422, 1423 (9th Cir. 1995)("The Federal Rules of Civil Procedure creates a 'broad

12  right of discovery' because 'wide access to relevant facts serves the integrity and

13  fairness of the judicial process by promoting the search for the truth.'"); *Oakes v.*

14  *Havorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998)("the scope of

15  permissible discovery, after all, extends to all information as to which any

16  possibility exists that it may be relevant to the subject matter of the action, whether

17  or not it would be admissible at trial"); *Katz v. Batavia Marine & Sporting Supplies,*

18  *Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993)("It is a premise of modern litigation that the

19  Federal Rules contemplate liberal discovery, in the interest of just and complete

20  resolution of disputes").

21      District courts have considerable discretion in handling discovery matters.

22  *See, e.g., Brune v. IRS*, 861 F.2d 1284, 1288 (D.C. Cir. 1988); *Laborers' Int'l Union*

23  *of N. Am. v. Department of Justice*, 772 F.2d 919, 921 (D.C. Cir. 1984)("Control of

24  discovery is a matter entrusted to the sound discretion of the trial courts"). In light

25  of the prevailing policy of allowing broad discovery, and the clear mandate from

26  FRCP 37(a) that incomplete responses to the inspection demands be construed as

27  failures to respond, the authority is clear that, given DC's evasive responses and

28

12

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 98 of 321

1 deficient production, DC should be ordered to produce the requested documents
2 immediately.

3     **E.**    **ARGUMENT**

4     DC has systematically stonewalled Plaintiffs' ability to conduct even basic
5 document discovery, particularly financial documents plainly relevant to
6 determining Plaintiffs' damages in this matter. Many of Plaintiffs' Requests were
7 crafted under the guidance of their forensic accountant, Mr. Sills, and identified the
8 financial documents kept by DC in the ordinary course of business, necessary for
9 Plaintiffs to determine DC's revenues and profits from the "Superman" and
10 "Superboy" properties after the dates Plaintiffs recaptured the underlying copyrights
11 (April 16, 1999 and November 17, 2004, respectively). The Requests were based in
12 large part on Sills' special knowledge of pertinent financial documents as kept by
13 Defendants in the ordinary course of business, gleaned from his numerous audits of
14 Warner and associated entities like DC over the years. (Toberoff Decl., ¶ 16, Ex.
15 O.)

16     Despite the obvious relevance of Plaintiffs' Requests, Defendants failed to
17 produce the documents necessary for Mr. Sills to provide Plaintiffs with the analysis
18 needed to reasonably prosecute this action, compute Plaintiffs' damages or entertain
19 any meaningful settlement discussions. DC's grossly deficient production has
20 extended equally to Plaintiffs' Requests regarding Defendants' claims/defenses in
21 the instant actions and Defendants' exploitation/publication of Superman and
22 Superboy derivative works.

23     There is no reasonable dispute that the document Requests at issue in this
24 motion to compel are proper under the Federal Rules of Civil Procedure. *Epstein v.*
25 *MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995)(requests proper where reasonably
26 calculated to lead to the discovery of admissible evidence). There is also no
27 justification for DC's failure to produce these documents on the purported basis that
28

PLAINTIFFS' MOTION TO COMPEL

**41**   ER 2385

they contain confidential or proprietary information, as the parties are operating under a negotiated protective order entered by the Court. (Toberoff Decl., Ex. P).

1. **Defendants' Boilerplate Objections To The Production Of Relevant Documents Are Without Merit**

DC included with every Response to Plaintiffs' Requests set forth below the boilerplate objection – "Defendants further object to this request on grounds that it is vague, ambiguous, overbroad, burdensome, oppressive and seeks the production of confidential and/or proprietary information." (Toberoff Decl., Exs. B, F, G.) It is well settled that such unsupported, "[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condo. Owners Ass'n,* 186 F.R.D. 584, 587 (C.D. Cal. 1999); *Collins v. JC Penney Life Ins. Co.,* 2003 U.S. Dist. LEXIS 8455 at *5 (S.D. Cal. 2003)("Bare assertions that the discovery requested is overly broad, burdensome, oppressive or irrelevant are ordinarily insufficient, standing alone, to bar production."). As shown below, Plaintiffs' specifically defined Requests were by no means vague and ambiguous. Moreover, DC can hardly claim that the Requests are vague, ambiguous, overbroad and burdensome when its own Executive Vice President, Patrick Caldon, acknowledged in his deposition what documents were being requested and that DC had such documents in its possession in the ordinary course of its business. (Toberoff Decl., Ex. T, at 70:4-71:7, 90:7-98:10.)

DC's repeated objections that a Request seeks the production of "confidential and/or proprietary information" are also without merit in light of the parties' stipulated Protective Order entered by the Court. (Toberoff Decl., Ex. P.) Lastly, DC's periodic objections that Requests relating to business information violate the privacy rights of third parties is tenuous as the Requests relate to business placed at issue in Defendants' counterclaims. (Toberoff Decl., Ex. R.) *See* FRCP 26(b)(1)(right to discover non-privileged information "relevant to the claim or

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 99 of 321

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 100 of 321

1  defense of any party"). In addition, privacy concerns, if any, are greatly mitigated
2  by the Protective Order. (Toberoff Decl., Ex. P.)

### 2. DC Has Not Produced The Financial Documents Requested Based On DC's Duty To Account To Plaintiffs

5  Pursuant to Plaintiffs' recapture of their copyright termination interests under
6  17 U.S.C. § 304 (c), Plaintiffs became the co-owner and owner, respectively, of the
7  underlying "Superman" and "Superboy" copyrights. *See Nimmer on Copyright* §§
8  11.03, 11.04. Therefore, Plaintiffs are entitled under copyright law to an accounting
9  of Defendants' profits from all exploitations of such copyrights as of the effective
10 dates of the Terminations. *See* 17 U.S.C. § 504(a) (profits as remedy for
11 infringement); *Nimmer on Copyright* § 6.12 (joint owner's duty to account); *Oddo v.*
12 *Ries*, 743 F.2d 630, 633 (9th Cir. 1984). Where a defendant's financial information,
13 including profits, relates to a claim's remedy under federal law, such information is
14 plainly relevant and *must be produced*. *Trevino v. ABC Am., Inc.*, 232 F.R.D. 612,
15 617 (N.D. Cal. 2006)(for plaintiffs to assess damages, defendants were "ordered to
16 produce complete annual financial statements for the past three years, including, but
17 not limited to, balance sheets, and profit and loss statements with notes").

18 Accordingly, Plaintiffs have served Requests carefully drafted to elicit the
19 specific financial documents (the "Sills Documents") relating to DC's revenues and
20 expenses (*i.e.*, profits) in connection with Defendants' exploitation of the
21 "Superman" and "Superboy" properties after the effective Termination dates. Such
22 documents were sought in Plaintiffs' **Request Nos. 33, 41-42, 45-51, 62-63 (First**
23 **Set) and Request Nos. 80-81, 84, 91, 96-113, 122, 127-145, 147-163, 173-174,**
24 **176, 178-182, 187-191, 225 (Second Set)** which are listed in section 4 a.- e. below.
25 These documents are absolutely essential to Plaintiffs' remedies under federal law.
26 (Toberoff Decl., Ex. A, pp. 17-22, Ex. D, pp. 13-37).

27 Plaintiffs' requested these specific documents to compute and verify DC's

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 101 of 321

1   profits from four basic categories of copyright exploitation ("Categories"): (i)

2   SUPERMAN or any SUPERMAN DERIVATIVE WORK; (ii) SUPERBOY or any

3   SUPERBOY DERIVATIVE WORK; (iii) the television series SMALLVILLE; and

4   (iv) the television series THE ADVENTURES OF SUPERBOY, all as defined in

5   Plaintiffs' Requests.  (Toberoff Decl., Ex. A, p. 5, Ex. D, p. 5-6).

6       In response to nearly every Request for Sills Documents in each of the above

7   Categories, Defendant DC responded with the aforementioned boilerplate

8   objections, followed by the same boilerplate statement that *"Defendants will*

9   *produce non-privileged documents sufficient to show their gross revenues and*

10  *expenses related to the [Category]."*  As DC well knows, such response is improper

11  as DC is required to inform Plaintiffs as to whether it will produce the particular

12  document(s) requested by Plaintiffs, not simply what *DC* deems "sufficient to show

13  their gross revenues and expenses."  Underscoring the inadequacy of such response,

14  DC then proceeded to handicap Plaintiffs by *failing* to produce documents

15  "sufficient to show" its profits or "sufficient" to demonstrate, or enable Plaintiffs to

16  verify, DC's gross revenues and expenses relating to their exploitations of

17  "Superman" and "Superboy" after the respective Termination dates.  (Toberoff

18  Decl., ¶ 16.)

19      Despite surface statements of cooperation and compliance, DC's deficient

20  responses and production have prevented Plaintiffs from obtaining the detailed

21  documentation from which a proper damage analysis can be conducted.  For

22  example, in Plaintiffs' Request Nos. 194-225 (Second Set) Plaintiffs specifically

23  requested the Sills Documents regarding any SUPERMAN OR SUPERMAN

24  DERIVATIVE WORK (as defined in the Requests, *see* Toberoff Decl., Ex. D, p. 5)

25  pertaining to the period on or after April 16, 1999 including without limitation:  all

26  "actual" and "net" income and expense statements, schedules of actual residuals,

27  and internal "ultimate" financial projections. (Toberoff Decl., Ex. D.)  Instead of

28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 102 of 321

1  either agreeing refusing to produce the specific documents requested, DC merely

2  repeated the following boilerplate objections in response to 29 of these 31 Requests

3  regarding Superman. No part of DC's responses alleged that DC was not in

4  possession or control of the specific documents requested. *See* DC's Responses to

5  Request Nos. 194-225. (Toberoff Decl. Ex. F):

> 6  "DC further objects to this request on the grounds that it is vague, ambiguous,
> 7  overbroad, burdensome, oppressive, seeks the production of confidential
>    and/or proprietary information, and violates the privacy rights of persons who
> 8  are not parties to this action. Subject to and without waiving the foregoing
>    objections, DC will produce non-privileged documents sufficient to show its
> 9  gross revenues and expenses related to the exploitation of any SUPERMAN
> 10 OR SUPERMAN DERIVATIVE WORK created after April 16, 1999."

11      Also by way of example, in Plaintiffs' Second Request Nos. 147-193 they

12  specifically identified the same Sills Documents regarding any SUPERBOY OR

13  SUPERBOY DERIVATIVE WORK (as defined in the Requests, *see* Toberoff

14  Decl., Ex. D, p. 5) pertaining to the period on or after November 17, 2004, including

15  without limitation: all "actual" and "net" income and expense statements, schedules

16  of actual residuals, and internal "ultimate" financial projections. In lieu of either

17  agreeing or refusing to produce the specific documents requested, DC merely

18  repeated the following boilerplate objections and responses to 40 of these 46

19  Requests regarding Superboy. Again, no part of DC's responses alleged that DC

20  was not in possession or control of the specific documents requested. *See* DC

21  Responses to Request Nos. 147-193 (Toberoff Decl., Ex. F.):

> 22 "DC further objects to this request on the grounds that it is vague, ambiguous,
>    overbroad, burdensome, oppressive, seeks the production of confidential
> 23 and/or proprietary information, and violates the privacy rights of persons who
> 24 are not parties to this action. Subject to and without waiving the foregoing
>    objections, DC will produce non-privileged documents sufficient to show its
> 25 gross revenues and expenses related to the exploitation of any SUPERBOY
> 26 OR SUPERBOY DERIVATIVE WORK created after November 17, 2004."

27

28

17

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 103 of 321

1    DC likewise responded to Plaintiffs' financial Requests pertaining to both the
2    television series, SMALLVILLE and THE ADVENTURES OF SUPERBOY with
3    the same deficient boilerplate objections and responses.  *See* DC Responses to
4    Request Nos. 96-113 and 127-145, respectively.  (Toberoff Decl., Ex. F.)  Again, no
5    portion of DC's responses alleged that DC was not in possession or control of the
6    specific documents requested.

7         DC's argument that they have produced documents responsive to the
8    aforementioned financial Requests relies heavily on the minutia of a "general
9    ledger" which DC produced covering 1999-2005 and subsequently 2005- February
10   23, 2007.  (Toberoff Decl., Ex. J.)  Firstly, the "general ledger" DC produced is
11   largely unintelligible, devoted almost exclusively to listing minute dollar amounts
12   correlated to incomprehensible numbered entries, unsupported by any index or
13   "key."  (*See* general ledger excerpts, *Id.,* Ex. Q.)  Secondly, as DC is well aware, its
14   general ledger, while a relevant back-up document, *in no way fulfills DC's discovery*
15   *obligations* to produce the documents properly requested by Plaintiffs.  It is a very
16   poor substitute for the variety of cross-referenced financial statements (in
17   compliance with GAAP) and financial projections kept by a large company such as
18   DC in the ordinary course of business.  A general ledger is but one of *many* financial
19   documents kept and reviewed (as a last resort) in an audit or accounting of financial
20   performance.

21        DC's general ledger is <u>not</u> "*sufficient* to show revenues or profits regarding
22   Superman received by DC on or after April 16, 1999" as repeatedly promised by DC
23   in their responses.  (*Id.,* Ex. F.)  In sum, Plaintiffs are unable to either analyze,
24   compute or verify DC's profits from "Superman" and "Superboy" subsequent to the
25   respective Termination dates from DC's largely incomprehensible general ledger
26   and are entitled under FRCP 26(b)(1) and 34(a) to the financial documents requested
27   which will permit such analysis and computation.

28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 104 of 321

### 3. DC Did Not Produce The Requested Documents Referred To In The Depositions Of DC's and Warner's Officers

In addition to the requested financial documents kept by DC in the ordinary course of business, DC and Warner executives referred in their depositions to other important documents covered by Plaintiffs' Requests. These documents were again requested by Plaintiffs at the respective depositions, and thereafter in Plaintiffs' letter to Defendants dated February 26, 2007, but still never produced. (Toberoff Decl., Ex. I.)

DC's President, Paul Levitz, emphasized at his November 7, 2006 deposition that DC had allegedly established a specific "reserve account" on behalf of the Plaintiffs pursuant to the contingent compensation terms of the purported Settlement Agreement claimed by Defendants (see DC's Counterclaim, ¶¶ 52-53, Toberoff Decl., Ex. R) and testified that at least $20 million had accumulated in that account. (Toberoff Decl., Ex. U, at 289:21-23; 295:9-11.) Plaintiffs specifically requested all documents pertaining to this alleged "reserved account" at the deposition, as such were clearly covered by Plaintiffs' Requests, but they were never produced. (Toberoff Decl., Ex. U, at 296:3; see e.g., Plaintiffs' Request No. 44 (First Set), Toberoff Decl., Ex. A.) However, DC continued to fail to produce this important documentation while continuing to rely on it. [5]

Thereafter, Plaintiffs reiterated their request for DC's alleged "reserve account" documents in their second February 26, 2007 letter to Defendants. (Toberoff Decl., Ex. I.) By letter dated March 8, 2007, DC dubiously claimed that their alleged "reserve account" is somehow reflected in the minutia of their unintelligible "general ledger," and refused to produce the "reserve account"

---

[5] DC's attorney, Patrick Perkins, while taking the deposition of Plaintiffs' expert witness, Mark Evanier, reiterated DC's claim that it purportedly had kept a settlement agreement "reserve account" on behalf of Plaintiffs which allegedly had a current balance of "$20-25 million." Toberoff Decl., ¶ 23.)

19

PLAINTIFFS' MOTION TO COMPEL

**47**  ER 2391

1  documents. (Id. Exs. J, p. 5; Ex Q.)

2       Plaintiffs' Request No. 44 (First Set) and DC's Response are set forth below:

3  **Request No. 44**

4       ALL DOCUMENTS that REFER OR RELATE TO COMMUNICATIONS

5  by OR between ANY of the DEFENDANTS RELATING TO profits payable or

6  potentially payable to PLAINTIFFS on and after April 16, 1999 REGARDING

7  SUPERMAN.

8  **Response**

9       DC further objects to this request on the grounds that it is vague, ambiguous,

10  overbroad, burdensome, and oppressive.  Subject to and without waiving the

11  foregoing objections, DC will produce all non privileged correspondence between

12  defendants relating to profits payable to Plaintiffs pursuant to the parties' settlement

13  agreement.

14       Notwithstanding DC's response, DC failed to produce responsive documents

15  and, when called to task by Plaintiffs, DC erroneously claimed that *all*

16  documentation responsive to Plaintiffs' Request No. 44 is work product or

17  privileged and purportedly identified on DC's privilege log.  DC failed to explain

18  why or to point out which entries on its privilege log allegedly correspond to this

19  Request.  (Toberoff Decl., Ex. J.)  Such documents are clearly relevant to the

20  "Superman" case.  Moreover, DC's unarticulated "work product" argument appears

21  to be erroneous.  *See* FRCP 26(b)(3)(qualified immunity only extends to materials

22  "prepared in anticipation of litigation").  Moreover, responsive documents such as

23  communications relating to DC's purported "reserve account" were expressly placed

24  in issue and relied upon by DC.  *See* FRCP 26(b)(1)(right to discover non-privileged

25  information "relevant to the claim or defense of any party").  DC should be

26  compelled to produce these essential documents identified by their President.

27       DC's Executive Vice President, Patrick Caldon, when asked at his November

28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 106 of 321

1   8, 2007 deposition about Plaintiffs' document Requests to DC, confirmed that DC

2   kept the following responsive documents in the ordinary course of business: sales

3   reports from all distributors of DC publications, "monthly flash reports,"

4   "management reports," "quarterly blue books" and "quarterly green books."

5   (Toberoff Decl., Ex. T, at 90:7-98:10). These relevant financial documents were

6   never produced by DC despite being covered by Plaintiffs' Requests (*e.g.*, Request

7   Nos. 96, 154, 194, Toberoff Decl., Ex. D), being specifically requested at Mr.

8   Caldon's deposition and being again requested by letter dated February 26, 2007.

9   (Toberoff Decl., Ex. I.) Rather than produce these plainly relevant documents in

10  their possession, Defendants again have dubiously claimed that the information is

11  reflected in their undecipherable general ledger, and have hidden behind boilerplate

12  objections of "overbroad, burdensome and oppressive." (Toberoff Decl., Ex. J, p.

13  6.)

14          Warner Bros Television, Inc.'s ("WBTV") Executive Vice President,

15  Business Affairs, Brett Paul, testified in his November 3, 2006 deposition that there

16  exists a "template agreement" between DC and WBTV for WBTV to exploit

17  categories of DC's characters. (Toberoff Decl., Ex. V at 126:2-5.) This document

18  and documents relating thereto are plainly relevant and covered by Plaintiffs'

19  Requests. (*See* Request Nos. 64 (First Set), 77-82, 86 (Second Set), Toberoff Exs.

20  A, D.) Plaintiffs reiterated their request for such documents at Mr. Paul's deposition

21  and again by letter to Defendants' counsel dated February 26, 2007. (Toberoff

22  Decl., Ex. I.) Yet, Defendants continued not to refuse production of these

23  documents on the erroneous basis that Brett Paul is "not a DC employee" and that

24  "it does not appear that such a document was requested from [WBTV]." (Toberoff

25  Decl., Ex. J at p. 6). Firstly, DC is a party to the agreement testified to by an

26  executive of its sister company in the same corporate Time-Warner family and

27  would logically have a copy of such agreement and related documents. Secondly,

28

21

PLAINTIFFS' MOTION TO COMPEL

**49**  ER 2393

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 107 of 321

1 such documents are covered by Plaintiffs' document requests to Defendant WBTV

2 (*see* Plaintiffs' Third Set of Requests for Production of Documents to Defendants

3 Warner Bros. Entertainment Inc., Warner Bros. Television, Inc. and Time Warner

4 Inc., Request No. 260, Toberoff Decl., Ex. W), but not produced by WBTV either,

5 and are subject as well to Plaintiffs' concurrent motion to compel Warner Bros. to

6 produce documents.

7    **4.**   **Defendants Should Be Compelled To Produce The Financial**

8         **Documents Requested By Plaintiffs**

9    Despite the obvious relevance of the documents specifically sought by

10 Plaintiffs pertaining to each of the exploitation Categories below, and the unfounded

11 nature of DC's objections, it produced only a small fraction of the documents

12 requested. Accordingly, Plaintiffs hereby move to compel DC to produce

13 documents responsive to Plaintiffs' **Request Nos. 45, 47-51, 62-63 (First Set) and**

14 **96, 99-106, 108-113, 127-145, 147-150, 154-158, 160-161, 163, 173-174, 176, 178-**

15 **182, 187-190, 194-198, 200-201, 203, 212-214, 216-221 (Second Set)** set forth

16 below. To the extent Defendants argue or imply that all documents responsive to

17 any Request has been produced, they must unequivocally represent this without

18 open-ended qualifiers such as "consistent with [DC's] understanding of this

19 request."

20    **a.**   **Plaintiffs' First Set of Requests Regarding**

21         **"Superman"**

22 **Request No. 45:**

23    ALL AGREEMENTS OR TRANSACTIONS pursuant to which DC OR

24 WARNER is obligated to pay ANY percentage of ANY revenues OR profits to

25 ANY PERSON REGARDING SUPERMAN.

26 **Response:**

27    DC further objects to this request on the grounds that it is vague, ambiguous,

28

22

PLAINTIFFS' MOTION TO COMPEL

**50** ER 2394

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 108 of 321

1  overbroad, burdensome, and oppressive.  Subject to and without waiving the
2  foregoing objections, DC will produce copies of all agreements pursuant to which
3  DC is obligated to pay any percentage of revenues or profits from any exploitation
4  of Superman, with the exception of talent agreements, that were entered into in the
5  last 10 years, documents sufficient to show payment histories concerning same,
6  samples of its current work-for-hire agreements for publications, and documents
7  sufficient to show publishing royalties relating to Superman paid in the last ten
8  years.

9  **Request No. 47:**

10      ALL DOCUMENTS that REFER OR RELATE TO the payment of ANY
11  percentage of ANY revenues or profits to ANY PERSON, on or after April 16,
12  1999, REGARDING SUPERMAN.

13  **Response:**

14      DC further objects to this request on the grounds that it is vague, ambiguous,
15  overbroad, burdensome, and oppressive.  Subject to and without waiving the
16  foregoing objections, DC will produce copies of all agreements concerning the
17  exploitation of Superman, with the exception of talent agreements, that were in
18  effect as of April 16, 1999, documents sufficient to show payment histories
19  concerning same, samples of its current work-for-hire agreements for publications
20  and documents sufficient to show publishing royalties related to Superman paid on
21  or after April 16, 1999.

22  **Request No. 48:**

23      ALL profit participation statements OR revenue accounting statements sent to
24  ANY PERSON on or after April 16, 1999 REGARDING SUPERMAN.

25  **Response:**

26      DC further objects to this request on the grounds that it is vague, ambiguous,
27  overbroad, burdensome, and oppressive.  Subject to and without waiving the

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 109 of 321

1  foregoing obje⬤ns, DC will produce copies of all ⬤greements concerning the

2  exploitation of Superman, with the exception of talent agreements, that were entered

3  in effect as of April 16, 1999, documents sufficient to show payment histories

4  concerning same, samples of its current work-for-hire agreements for publications

5  and documents sufficient to show publishing royalties related to Superman paid on

6  or after April 16, 1999.

7  **Request No. 49:**

8      ALL accounting statements sent to or received from WARNER OR TIME

9  WARNER reflecting revenues OR profits on or after April 16, 1999 REGARDING

10  SUPERMAN.

11  **Response:**

12      DC further objects to this request on the grounds that it is vague, ambiguous,

13  overbroad, burdensome, and oppressive. Subject to and without waiving the

14  foregoing objections, DC will produce documents sufficient to show revenues or

15  profits regarding Superman received by DC on or after April 16, 1999.

16  **Request No. 50:**

17      ALL DOCUMENTS that REFER OR RELATE to ANY revenues, profits or

18  consideration of any kind paid or payable to DC on or after April 16, 1999

19  REGARDING SUPERMAN.

20  **Response:**

21      DC further objects to this request on the grounds that it is vague, ambiguous,

22  overbroad, burdensome, and oppressive. Subject to and without waiving the

23  foregoing objections, DC will produce copies of all agreements concerning the

24  exploitation of Superman, with the exception of talent agreements, that were entered

25  in effect as of April 16, 1999, documents sufficient to show payment histories

26  concerning same, samples of its current work-for-hire agreements for publications

27  and documents sufficient to show publishing royalties related to Superman paid on

28

1 or after April 1?, 1999.

2 **Request No. 51:**

3    ALL "profits" definitions contained in any AGREEMENT OR

4 TRANSACTION entered into between DC OR WARNER, on the one hand, and

5 ANY PERSON, on the other hand.

6 **Response:**

7    DC further objects to this request on the grounds that it is vague, ambiguous,

8 overbroad, burdensome, and oppressive. Subject to and without waiving the

9 foregoing objections, DC will produce copies of all agreements concerning the

10 licensing of Superman, with the exception of talent agreements, that were entered

11 into in the last ten years, documents sufficient to show payment histories concerning

12 same, samples of its current work-for-hire agreements for publications, and

13 documents sufficient to show publishing royalties relating to Superman paid in the

14 last ten years.

15 **Request No. 62:**

16    ALL general ledgers (or similar type of accounting DOCUMENTS) that

17 REFER OR RELATE to the revenues received by or due WARNER in connection

18 with SUPERMAN on or after April 16, 1999.

19 **Response:**

20    DC further objects to this request on the grounds that it is vague, ambiguous,

21 overbroad, burdensome, oppressive, seeks the production of confidential and/or

22 proprietary information, and seeks documents not likely to lead to the discovery of

23 admissible evidence. Subject to and without waiving the foregoing objections, DC

24 will produce copies of all agreements concerning the exploitation of Superman, with

25 the exception of talent agreements, that were entered in effect as of April 16, 1999,

26 documents sufficient to show payment histories concerning same, samples of its

27 current work-for-hire agreements for publications and documents sufficient to show

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 111 of 321

1    publishing roya___es related to Superman paid on or ___er April 16, 1999.

2    **Request No. 63**:

3        ALL general ledgers (or similar type of accounting DOCUMENTS) reflecting

4    the expenses incurred by WARNER in connection with SUPERMAN on or after

5    April 16, 1999.

6    **Response:**

7        DC further objects to this request on the grounds that it is vague, ambiguous,

8    overbroad, burdensome, oppressive, seeks the production of confidential and/or

9    proprietary, and seeks documents not reasonably calculated to lead to the discovery

10    of admissible evidence.

11            b.     **Plaintiffs' Second Set of Requests Regarding**

12                    **"Superman"**

13    **Request No. 194**

14        ALL income AND expense statements, financial reports AND computer runs

15    REGARDING the exploitation of SUPERMAN OR ANY SUPERMAN

16    DERIVATIVE WORK on OR after April 16, 1999 in ANY form, manner, media

17    OR territory throughout the world.

18    **Response**

19        DC further objects to this request on the grounds that it is vague, ambiguous,

20    overbroad, burdensome, oppressive, seeks the production of confidential and/or

21    proprietary information, and violates the privacy rights of persons who are not

22    parties to this action. Subject to and without waiving the foregoing objections, DC

23    will produce non-privileged documents sufficient to show its gross revenues and

24    expenses related to the exploitation of any SUPERMAN OR ANY SUPERMAN

25    DERIVATIVE WORK created after April 16, 1999.

26    **Request No. 195**

27        ALL "actual" statements, reports OR computer runs REGARDING the

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 112 of 321

1 exploitation of SUPERMAN OR ANY SUPERMAN DERIVATIVE WORK on OR

2 after April 16, 1999 in ANY form, manner, media OR territory throughout the

3 world.

4 **Response**

5     DC further objects to this request on the grounds that it is vague, ambiguous,

6 overbroad, burdensome, oppressive, seeks the production of confidential and/or

7 proprietary information, and violates the privacy rights of persons who are not

8 parties to this action. Subject to and without waiving the foregoing objections, DC

9 will produce non-privileged documents sufficient to show its gross revenues and

10 expenses related to the exploitation of any SUPERMAN OR ANY SUPERMAN

11 DERIVATIVE WORK created after April 16, 1999.

12 **Request No. 196**

13     ALL "net" statements, reports OR computer runs REGARDING the

14 exploitation of SUPERMAN OR ANY SUPERMAN DERIVATIVE WORK on OR

15 after April 16, 1999 in ANY form, manner, media OR territory throughout the

16 world.

17 **Response**

18     DC further objects to this request on the grounds that it is vague, ambiguous,

19 overbroad, burdensome, oppressive, seeks the production of confidential and/or

20 proprietary information, and violates the privacy rights of persons who are not

21 parties to this action. Subject to and without waiving the foregoing objections, DC

22 will produce non-privileged documents sufficient to show its gross revenues and

23 expenses related to the exploitation of any SUPERMAN OR ANY SUPERMAN

24 DERIVATIVE WORK created after April 16, 1999.

25 **Request No. 197**

26     ALL DOCUMENTS reflecting OR REGARDING YOUR gross revenue from

27 publishing RELATING TO SUPERMAN OR ANY SUPERMAN DERIVATIVE

28

27

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 113 of 321

1 WORK on OR ~~~~~er April 16, 1999, including but ~~~ limited to a summary listing

2 each domestic and foreign publisher; the amounts received and reported for each

3 publisher; and copies of ALL publishing AGREEMENTS AND statements

4 RELATING TO ANY SUPERMAN DERIVATIVE WORK on OR after April 16,

5 1999.

6 **Response**

7  DC further objects to this request on the grounds that it is vague, ambiguous,

8 overbroad, burdensome, oppressive, seeks the production of confidential and/or

9 proprietary information, and violates the privacy rights of persons who are not

10 parties to this action. Subject to and without waiving the foregoing objections, DC

11 will produce non-privileged documents sufficient to show its gross revenues and

12 expenses related to the exploitation of any SUPERMAN OR ANY SUPERMAN

13 DERIVATIVE WORK created after April 16, 1999.

14 **Request No. 198**

15  ALL DOCUMENTS reflecting OR REGARDING YOUR gross revenue from

16 the exploitation of ANY merchandising RELATING TO SUPERMAN OR ANY

17 SUPERMAN DERIVATIVE WORK on OR after April 16, 1999.

18 **Response** .

19  DC further objects to this request on the grounds that it is vague, ambiguous,

20 overbroad, burdensome, oppressive, seeks the production of confidential and/or

21 proprietary information, and violates the privacy rights of persons who are not

22 parties to this action. Subject to and without waiving the foregoing objections, DC

23 will produce non-privileged documents sufficient to show its gross revenues and

24 expenses related to the exploitation of any SUPERMAN OR ANY SUPERMAN

25 DERIVATIVE WORK created after April 16, 1999.

26 **Request No. 200**

27  ALL accountings, statements or projections from ANY PERSON

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 114 of 321

1 REGARDING ⬤ merchandising of SUPERMAN OR ANY SUPERMAN

2 DERIVATIVE WORK on OR after April 16, 1999.

3 **Response**

4     DC further objects to this request on the grounds that it is vague, ambiguous,

5 overbroad, burdensome, oppressive, seeks the production of confidential and/or

6 proprietary information, and violates the privacy rights of persons who are not

7 parties to this action. Subject to and without waiving the foregoing objections, DC

8 will produce non-privileged documents sufficient to show its gross revenues and

9 expenses related to the exploitation of any SUPERMAN OR ANY SUPERMAN

10 DERIVATIVE WORK created after April 16, 1999.

11 **Request No. 201**

12     ALL DOCUMENTS reflecting OR REGARDING revenue from the

13 exploitation on OR after April 16, 1999 of SUPERMAN OR ANY SUPERMAN

14 DERIVATIVE WORK in DOMESTIC OR FOREIGN television, including "free"

15 television, "pay" television, "basic cable" television and syndication.

16 **Response**

17     DC further objects to this request on the grounds that it is vague, ambiguous,

18 overbroad, burdensome, oppressive, seeks the production of confidential and/or

19 proprietary information, and violates the privacy rights of persons who are not

20 parties to this action. Subject to and without waiving the foregoing objections, DC

21 will produce non-privileged documents sufficient to show its gross revenues and

22 expenses related to the exploitation of any SUPERMAN OR ANY SUPERMAN

23 DERIVATIVE WORK created after April 16, 1999.

24 **Request No. 203**

25     ALL DOCUMENTS reflecting OR REFERRING TO the income and

26 expenses RELATING TO the exploitation on OR after April 16, 1999 of

27 SUPERMAN OR ANY SUPERMAN DERIVATIVE WORK for ANY media as

28

PLAINTIFFS' MOTION TO COMPEL

1 applicable (e.g. theatrical, non-theatrical, home video, music, merchandising, etc.)
2 AND in ANY territory throughout the world.

3 **Response**

4     DC further objects to this request on the grounds that it is vague, ambiguous,
5 overbroad, burdensome, oppressive, seeks the production of confidential and/or
6 proprietary information, and violates the privacy rights of persons who are not
7 parties to this action. Subject to and without waiving the foregoing objections, DC
8 will produce non-privileged documents sufficient to show its gross revenues and
9 expenses related to the exploitation of any SUPERMAN OR ANY SUPERMAN
10 DERIVATIVE WORK created after April 16, 1999.

11 **Request No. 212**

12     ALL DOCUMENTS reflecting OR REFERRING TO the revenue from music
13 and record licensees RELATING TO ANY SUPERMAN DERIVATIVE WORK on
14 OR after April 16, 1999, including but not limited to AGREEMENTS with AND the
15 statements from sub-distributors, licensees AND related parties.

16 **Response**

17     DC further objects to this request on the grounds that it is vague, ambiguous,
18 overbroad, burdensome, oppressive, seeks the production of confidential and/or
19 proprietary information, and violates the privacy rights of persons who are not
20 parties to this action. Subject to and without waiving the foregoing objections, DC
21 will produce non-privileged documents sufficient to show its gross revenues and
22 expenses related to the exploitation of ANY SUPERMAN DERIVATIVE WORK
23 created after April 16, 1999.

24 **Request No. 213**

25     ALL DOCUMENTS showing or reflecting the residuals paid or payable in
26 connection with ANY SUPERMAN DERIVATIVE WORK on OR after April 16,
27 1999, including but not limited to the "residual worksheets" for such work.

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 115 of 321

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 116 of 321

**Response**

DC further objects to this request on the grounds that it is vague, ambiguous, overbroad, burdensome, oppressive, seeks the production of confidential and/or proprietary information, and violates the privacy rights of persons who are not parties to this action. Subject to and without waiving the foregoing objections, DC will produce non-privileged documents sufficient to show its gross revenues and expenses related to the exploitation of ANY SUPERMAN DERIVATIVE WORK created after April 16, 1999.

**Request No. 214**

ALL schedules of actual residuals paid in connection with ANY SUPERMAN DERIVATIVE WORK on OR after April 16, 1999.

**Response**

DC further objects to this request on the grounds that it is vague, ambiguous, overbroad, burdensome, oppressive, seeks the production of confidential and/or proprietary information, and violates the privacy rights of persons who are not parties to this action. Subject to and without waiving the foregoing objections, DC will produce non-privileged documents sufficient to show its gross revenues and expenses related to the exploitation of ANY SUPERMAN DERIVATIVE WORK created after April 16, 1999.

**Request No. 216**

ALL DOCUMENTS reflecting OR REGARDING YOUR gross revenue from the exploitation of ANY SUPERMAN DERIVATIVE WORK on OR after April 16, 1999 in home video, including in the DVD and VHS formats.

**Response**

DC further objects to this request on the grounds that it is vague, ambiguous, overbroad, burdensome, oppressive, seeks the production of confidential and/or proprietary information, and violates the privacy rights of persons who are not

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 117 of 321

1 parties to this action. Subject to and without waiving the foregoing objections, DC

2 will produce non-privileged documents sufficient to show its gross revenues and

3 expenses related to the exploitation of any SUPERMAN DERIVATIVE WORK

4 created after April 16, 1999.

5 **Request No. 217**

6     ALL DOCUMENTS reflecting OR REGARDING YOUR gross revenue OR

7 benefits from "commercial tie-ins" RELATING TO SUPERMAN OR ANY

8 SUPERMAN DERIVATIVE WORK on OR after April 16, 1999.

9 **Response**

10     DC further objects to this request on the grounds that it is vague, ambiguous,

11 overbroad, burdensome, oppressive, seeks the production of confidential and/or

12 proprietary information, and violates the privacy rights of persons who are not

13 parties to this action. Subject to and without waiving the foregoing objections, DC

14 will produce non-privileged documents sufficient to show its gross revenues and

15 expenses related to the exploitation of any SUPERMAN OR SUPERMAN OR

16 SUPERMAN DERIVATIVE WORK created after April 16, 1999

17 **Request No. 218**

18     ALL DOCUMENTS reflecting OR REGARDING YOUR gross revenue OR

19 benefits from Internet sources REALTING TO SUPERMAN OR ANY

20 SUPERMAN DERIVATIVE WORK on OR after April 16, 1999.

21 **Response**

22     DC further objects to this request on the grounds that it is vague, ambiguous,

23 overbroad, burdensome, oppressive, seeks the production of confidential and/or

24 proprietary information, and violates the privacy rights of persons who are not

25 parties to this action. Subject to and without waiving the foregoing objections, DC

26 will produce non-privileged documents sufficient to show its gross revenues and

27 expenses related to the exploitation of any SUPERMAN OR SUPERMAN OR

28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 118 of 321

1 SUPERMAN DERIVATIVE WORK created after April 16, 1999.

2 **Request No. 219**

3     ALL DOCUMENTS reflecting OR REGARDING YOUR gross revenues

4 from ANY source on OR after April 16, 1999 RELATING TO SUPERMAN OR

5 ANY SUPERMAN DERIVATIVE WORK on OR after April 16, 1999.

6 **Response**

7     DC further objects to this request on the grounds that it is vague, ambiguous,

8 overbroad, burdensome, oppressive, seeks the production of confidential and/or

9 proprietary information, and violates the privacy rights of persons who are not

10 parties to this action. Subject to and without waiving the foregoing objections, DC

11 will produce non-privileged documents sufficient to show its gross revenues and

12 expenses related to the exploitation of any SUPERMAN OR SUPERMAN OR

13 SUPERMAN DERIVATIVE WORK created after April 16, 1999.

14 **Request No. 220**

15     ALL DOCUMENTS reflecting OR REGARDING YOUR expenses OR

16 charges that are attributable to OR which have been attributed by YOU to OR

17 charged to SUPERMAN OR ANY SUPERMAN DERIVATIVE WORK on OR

18 after April 16, 1999, including supporting documentation (invoices, journals entries,

19 etc.) for any expense OR charge in an amount exceeding $1,000.

20 **Response**

21     DC further objects to this request on the grounds that it is vague, ambiguous,

22 overbroad, burdensome, oppressive, seeks the production of confidential and/or

23 proprietary information, and violates the privacy rights of persons who are not

24 parties to this action. Subject to and without waiving the foregoing objections, DC

25 will produce non-privileged documents sufficient to show its gross revenues and

26 expenses related to the exploitation of any SUPERMAN OR SUPERMAN OR

27 SUPERMAN DERIVATIVE WORK created after April 16, 1999.

28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 119 of 321

**Request No. 2.**

ALL "ultimates" OR financial projections regarding YOUR income and expense on OR after April 16, 1999 REGARDING  SUPERMAN OR ANY SUPERMAN DERIVATIVE WORK.

**Response**

DC further objects to this request on the grounds that it is vague, ambiguous, overbroad, burdensome, oppressive, seeks the production of confidential and/or proprietary information, and violates the privacy rights of persons who are not parties to this action.  Subject to and without waiving the foregoing objections, DC will produce non-privileged documents sufficient to show its gross revenues and expenses related to the exploitation of any SUPERMAN OR SUPERMAN OR SUPERMAN DERIVATIVE WORK created after April 16, 1999.

        c.    **Plaintiffs' Second Set of Requests Regarding *Smallville***

**Request No. 96**

ALL income AND expense statements, financial reports AND computer runs REGARDING SMALLVILLE on OR after November 17, 2004.

**Response**

DC further objects to this request on the grounds that it is vague, ambiguous, overbroad, burdensome, oppressive, and seeks the production of confidential and/or proprietary information.  Subject to and without waiving the foregoing objections, DC will produce non-privileged documents sufficient to show its gross revenues and expenses related to exploitation of works related to Smallville created after November 17, 2004.

**Request No. 99**

ALL DOCUMENTS reflecting OR REGARDING revenue from the exploitation of SMALLVILLE in DOMESTIC television on OR after November 17, 2004, including "pay" television," "basic cable" television and syndication.

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 120 of 321

1 **Response**

2    DC further objects to this request on the grounds that it is vague, ambiguous,

3 overbroad, burdensome, oppressive, and seeks the production of confidential and/or

4 proprietary information.  Subject to and without waiving the foregoing objections,

5 DC will produce non-privileged documents sufficient to show its gross revenues and

6 expenses related to exploitation of works related to Smallville created after

7 November 17, 2004.

8 **Request No. 100**

9    ALL DOCUMENTS reflecting OR REGARDING revenue from the

10 exploitation of SMALLVILLE in FOREIGN television on OR after November 17,

11 2004.

12 **Response**

13    DC further objects to this request on the grounds that it is vague, ambiguous,

14 overbroad, burdensome, oppressive, and seeks the production of confidential and/or

15 proprietary information.  Subject to and without waiving the foregoing objections,

16 DC will produce non-privileged documents sufficient to show its gross revenues and

17 expenses related to exploitation of works related to Smallville created after

18 November 17, 2004.

19 **Request No. 101**

20    ALL DOCUMENTS reflecting OR REFERRING TO the income and

21 expenses RELATING TO the exploitation of SMALLVILLE on OR after

22 November 17, 2004 for each media (e.g., home video, music, merchandising, etc.)

23 AND each territory AND the amount reported for each month since November 17,

24 2004.

25 **Response**

26    DC further objects to this request on the grounds that it is vague, ambiguous,

27 overbroad, burdensome, oppressive, and seeks the production of confidential and/or

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 121 of 321

1   proprietary information.  Subject to and without waiving the foregoing objections,
2   DC will produce non-privileged documents sufficient to show its gross revenues and
3   expenses related to exploitation of works related to Smallville created after
4   November 17, 2004.

5   **Request No. 102**

6       ALL DOCUMENTS reflecting OR REGARDING DC's gross revenue from
7   the exploitation of SMALLVILLE in home video on OR after November 17, 2004,
8   including in the DVD and VHS formats.

9   **Response**

10      DC further objects to this request on the grounds that it is vague, ambiguous,
11  overbroad, burdensome, oppressive, and seeks the production of confidential and/or
12  proprietary information.  Subject to and without waiving the foregoing objections,
13  DC will produce non-privileged documents sufficient to show its gross revenues and
14  expenses related to exploitation of works related to Smallville created after
15  November 17, 2004.

16  **Request No. 103**

17      ALL DOCUMENTS reflecting OR REGARDING DC's gross revenue from
18  publishing on OR after November 17, 2004 RELATING TO SMALLVILLE,
19  including but not limited to a summary listing each domestic and foreign publisher;
20  the amounts received and reported for each publisher; and copies of ALL publishing
21  AGREEMENTS AND statements RELATING TO SMALLVILLE on OR after
22  November 17, 2004.

23  **Response**

24      DC further objects to this request on the grounds that it is vague, ambiguous,
25  overbroad, burdensome, oppressive, and seeks the production of confidential and/or
26  proprietary information.  Subject to and without waiving the foregoing objections,
27  DC will produce non-privileged documents sufficient to show its gross revenues and

28

36

64   ER 2408

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 122 of 321

1   expenses related to exploitation of works related to Smallville created after

2   November 17, 2004.

3   **Request No. 104**

4       ALL DOCUMENTS reflecting OR REGARDING DC's gross revenue from

5   the exploitation of ANY merchandising RELATING TO SMALLVILLE on OR

6   after November 17, 2004.

7   **Response**

8       DC further objects to this request on the grounds that it is vague, ambiguous,

9   overbroad, burdensome, and oppressive. Subject to and without waiving the

10   foregoing objections, DC will produce non-privileged responsive items sufficient to

11   show its gross revenues and expenses related to exploitation of works related to

12   Smallville created after November 17, 2004.

13   **Request No. 105**

14       ALL DOCUMENTS summarizing OR listing each DOMESTIC and

15   FOREIGN licensee, distributor OR licensing agent involved in SMALLVILLE

16   merchandising on OR after November 17, 2004.

17   **Response**

18       DC further objects to this request on the grounds that it is vague, ambiguous,

19   overbroad, burdensome, oppressive, and seeks the production of confidential and/or

20   proprietary information and violates the privacy rights of persons who are not

21   parties to this action. Subject to and without waiving the foregoing objections, DC

22   will produce non-privileged documents sufficient to show its gross revenues and

23   expenses related to exploitation of works related to Smallville created after

24   November 17, 2004.

25   **Request No. 106**

26       ALL accountings, statements or projections from WARNER OR ANY

27   PERSON REGARDING the exploitation of SMALLVILLE merchandising on OR

28

37

PLAINTIFFS' MOTION TO COMPEL

1 after November 17, 2004.

2 **Response**

3     DC further objects to this request on the grounds that it is vague, ambiguous,

4 overbroad, burdensome, oppressive, and seeks the production of confidential and/or

5 proprietary information. Subject to and without waiving the foregoing objections,

6 DC will produce non-privileged documents sufficient to show its gross revenues and

7 expenses related to exploitation of works related to Smallville created after

8 November 17, 2004.

9 **Request No. 108**

10     ALL DOCUMENTS reflecting OR REGARDING YOUR gross revenues

11 from ANY source on OR after November 17, 2004 RELATING TO

12 SMALLVILLE.

13 **Response**

14     DC further objects to this request on the grounds that it is vague, ambiguous,

15 overbroad, burdensome, oppressive, and seeks the production of confidential and/or

16 proprietary information. Subject to and without waiving the foregoing objections,

17 DC will produce non-privileged documents sufficient to show its gross revenues and

18 expenses related to exploitation of works related to Smallville created after

19 November 17, 2004.

20 **Request No. 109**

21     ALL DOCUMENTS reflecting OR REGARDING YOUR expenses OR

22 charges that are attributable to OR which have been attributed by YOU to OR

23 charged to SMALLVILLE on OR after November 17, 2004, including supporting

24 documentation (invoices, journals entries, etc.) for any expense OR charge in an

25 amount exceeding $1,000.

26 **Response**

27     DC further objects to this request on the grounds that it is vague, ambiguous,

28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 123 of 321

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 124 of 321

1 overbroad, burdensome, oppressive, and seeks the production of confidential and/or
2 proprietary information. Subject to and without waiving the foregoing objections,
3 DC will produce non-privileged documents sufficient to show its gross revenues and
4 expenses related to exploitation of works related to Smallville created after
5 November 17, 2004.

6 **Request No. 110**

7    ALL "ultimates" OR financial projections regarding YOUR income and
8 expense on OR after November 17, 2004 REGARDING SMALLVILLE.

9 **Response**

10    DC further objects to this request on the grounds that it is vague, ambiguous,
11 overbroad, burdensome, oppressive, and seeks the production of confidential and/or
12 proprietary information. Subject to and without waiving the foregoing objections,
13 DC will produce non-privileged documents sufficient to show its gross revenues and
14 expenses related to exploitation of works related to Smallville created after
15 November 17, 2004.

16 **Request No. 111**

17    ALL accountings, financial statements, projections AND reports provided on
18 OR after November 17, 2004 by WB to DC REGARDING SMALLVILLE.

19 **Response**

20    DC further objects to this request on the grounds that it is vague, ambiguous,
21 overbroad, burdensome, oppressive, and seeks the production of confidential and/or
22 proprietary information. Subject to and without waiving the foregoing objections,
23 DC will produce non-privileged documents sufficient to show its gross revenues and
24 expenses related to exploitation of works related to Smallville created after
25 November 17, 2004.

26 **Request No. 112**

27    ALL accountings, financial statements, projections AND reports provided on
28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 125 of 321

1  OR after November 17, 2004 by WBTV to DC REGARDING SMALLVILLE.

2  **Response**

3      DC further objects to this request on the grounds that it is vague, ambiguous,

4  overbroad, burdensome, oppressive, and seeks the production of confidential and/or

5  proprietary information.  Subject to and without waiving the foregoing objections,

6  DC will produce non-privileged documents sufficient to show its gross revenues and

7  expenses related to exploitation of works related to Smallville created after

8  November 17, 2004.

9  **Request No. 113**

10     ALL accountings, financial statements, projections AND reports provided on

11  OR after November 17, 2004 by ANY PERSON (other than WARNER OR WBTV)

12  to DC REGARDING SMALLVILLE.

13  **Response**

14     DC further objects to this request on the grounds that it is vague, ambiguous,

15  overbroad, burdensome, oppressive, and seeks the production of confidential and/or

16  proprietary information.  Subject to and without waiving the foregoing objections,

17  DC will produce non-privileged documents sufficient to show its gross revenues and

18  expenses related to exploitation of works related to Smallville created after

19  November 17, 2004.

20          d.    **Plaintiffs' Second Set of Requests Regarding "The**

21                **Adventures Of Superboy"**

22  **Request No. 127**

23     ALL income AND expense statements, financial reports AND computer runs

24  REGARDING THE ADVENTURES OF SUPERBOY on OR after November 17,

25  2004.

26  **Response**

27     DC further objects to this request on the grounds that it is vague, ambiguous,

28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 126 of 321

1  overbroad, burdensome, oppressive, and seeks the production of confidential and/or
2  proprietary information.  Subject to and without waiving the foregoing objections,
3  DC will produce non-privileged documents sufficient to show its gross revenues and
4  expenses related to the exploitation of The Adventures of Superboy created after
5  November 17, 2004.

6  **Request No. 128**

7      ALL income AND expense statements, financial reports AND computer runs
8  REGARDING THE ADVENTURES OF SUPERBOY on OR after November 17,
9  2004.

10  **Response**

11      DC further objects to this request on the grounds that it is vague, ambiguous,
12  overbroad, burdensome, oppressive, and seeks the production of confidential and/or
13  proprietary information.  Subject to and without waiving the foregoing objections,
14  DC will produce non-privileged documents sufficient to show its gross revenues and
15  expenses related to the exploitation of The Adventures of Superboy created after
16  November 17, 2004.

17  **Request No. 129**

18      ALL "actual" statements, reports OR computer runs REGARDING THE
19  ADVENTURES OF SUPERBOY on OR after November 17, 2004

20  **Response**

21      DC further objects to this request on the grounds that it is vague, ambiguous,
22  overbroad, burdensome, oppressive, and seeks the production of confidential and/or
23  proprietary information.  Subject to and without waiving the foregoing objections,
24  DC will produce non-privileged documents sufficient to show its gross revenues and
25  expenses related to the exploitation of The Adventures of Superboy created after
26  November 17, 2004.

27  **Request No. 130**

28

PLAINTIFFS' MOTION TO COMPEL

**ER 2413**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 127 of 321

1      ALL "net" statements, reports OR computer runs REGARDING THE

2 ADVENTURES OF SUPERBOY on OR after November 17, 2004.

3 **Response**

4      DC further objects to this request on the grounds that it is vague, ambiguous,

5 overbroad, burdensome, oppressive, and seeks the production of confidential and/or

6 proprietary information. Subject to and without waiving the foregoing objections,

7 DC will produce non-privileged documents sufficient to show its gross revenues and

8 expenses related to the exploitation of The Adventures of Superboy created after

9 November 17, 2004.

10 **Request No. 131**

11      ALL DOCUMENTS reflecting OR REGARDING revenue from the

12 exploitation of THE ADVENTURES OF SUPERBOY in DOMESTIC television on

13 OR after November 17, 2004, including "pay" television, "basic cable" television

14 and syndication.

15 **Response**

16      DC further objects to this request on the grounds that it is vague, ambiguous,

17 overbroad, burdensome, oppressive, and seeks the production of confidential and/or

18 proprietary information. Subject to and without waiving the foregoing objections,

19 DC will produce non-privileged documents sufficient to show its gross revenues and

20 expenses related to the exploitation of The Adventures of Superboy created after

21 November 17, 2004.

22 **Request No. 132**

23      ALL DOCUMENTS reflecting OR REGARDING revenue from the

24 exploitation of THE ADVENTURES OF SUPERBOY in FOREIGN television on

25 OR after November 17, 2004.

26 **Response**

27      DC further objects to this request on the grounds that it is vague, ambiguous,

28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 128 of 321

1  overbroad, burdensome, oppressive, and seeks the production of confidential and/or

2  proprietary information. Subject to and without waiving the foregoing objections,

3  DC will produce non-privileged documents sufficient to show its gross revenues and

4  expenses related to the exploitation of The Adventures of Superboy created after

5  November 17, 2004.

6  **Request No. 133**

7      ALL DOCUMENTS reflecting OR REFERRING TO the income and

8  expenses RELATING TO the exploitation of THE ADVENTURES OF

9  SUPERBOY on OR after November 17, 2004 for each media (e.g., home video,

10  music, merchandising, etc.) AND each territory AND the amount reported for each

11  month since November 17, 2004.

12  **Response**

13      DC further objects to this request on the grounds that it is vague, ambiguous,

14  overbroad, burdensome, oppressive, and seeks the production of confidential and/or

15  proprietary information. Subject to and without waiving the foregoing objections,

16  DC will produce non-privileged documents sufficient to show its gross revenues and

17  expenses related to the exploitation of The Adventures of Superboy created after

18  November 17, 2004.

19  **Request No. 134**

20      ALL DOCUMENTS reflecting OR REGARDING DC's gross revenue from

21  the exploitation of THE ADVENTURES OF SUPERBOY in home video on OR

22  after November 17, 2004, including in the DVD and VHS formats.

23  **Response**

24      DC further objects to this request on the grounds that it is vague, ambiguous,

25  overbroad, burdensome, oppressive, and seeks the production of confidential and/or

26  proprietary information. Subject to and without waiving the foregoing objections,

27  DC will produce non-privileged documents sufficient to show its gross revenues and

28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 129 of 321

1 expenses related to the exploitation of The Adventures of Superboy created after
2 November 17, 2004.

3 **Request No. 135**

4     ALL DOCUMENTS reflecting OR REGARDING DC's gross revenue from
5 publishing on OR after November 17, 2004 RELATING TO THE ADVENTURES
6 OF SUPERBOY, including but not limited to a summary listing each domestic and
7 foreign publisher; the amounts received and reported for each publisher; and copies
8 of ALL publishing AGREEMENTS AND statements RELATING TO THE
9 ADVENTURES OF SUPERBOY on OR after November 17, 2004.

10 **Response**

11     DC further objects to this request on the grounds that it is vague, ambiguous,
12 overbroad, burdensome, oppressive, and seeks the production of confidential and/or
13 proprietary information. Subject to and without waiving the foregoing objections,
14 DC will produce non-privileged documents sufficient to show its gross revenues and
15 expenses related to the exploitation of The Adventures of Superboy created after
16 November 17, 2004.

17 **Request No. 136**

18     ALL DOCUMENTS reflecting OR REGARDING DC's gross revenue from
19 the exploitation of ANY merchandising RELATING TO THE ADVENTURES OF
20 SUPERBOY on OR after November 17, 2004.

21 **Response**

22     DC further objects to this request on the grounds that it is vague, ambiguous,
23 overbroad, burdensome, oppressive, and seeks the production of confidential and/or
24 proprietary information. Subject to and without waiving the foregoing objections,
25 DC will produce non-privileged documents sufficient to show its gross revenues and
26 expenses related to the exploitation of The Adventures of Superboy created after
27 November 17, 2004.

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 130 of 321

**Request No. 137**

ALL DOCUMENTS summarizing OR listing each DOMESTIC and FOREIGN licensee, distributor OR licensing agent involved in THE ADVENTURES OF SUPERBOY merchandising on OR after November 17, 2004.

**Response**

DC further objects to this request on the grounds that it is vague, ambiguous, overbroad, burdensome, oppressive, seeks the production of confidential and/or proprietary information, and violates the privacy rights of persons who are not parties to this action. Subject to and without waiving the foregoing objections, DC will produce non-privileged documents sufficient to show its gross revenues and expenses related to the exploitation of The Adventures of Superboy created after November 17, 2004.

**Request No. 138**

ALL accountings, statements or projections from WARNER OR ANY PERSON REGARDING the exploitation of THE ADVENTURES OF SUPERBOY merchandising on OR after November 17, 2004.

**Response**

DC further objects to this request on the grounds that it is vague, ambiguous, overbroad, burdensome, oppressive, and seeks the production of confidential and/or proprietary information. Subject to and without waiving the foregoing objections, DC will produce non-privileged documents sufficient to show its gross revenues and expenses related to the exploitation of The Adventures of Superboy created after November 17, 2004.

**Request No. 139**

ALL DOCUMENTS reflecting OR REGARDING YOUR gross revenue OR benefits from Internet sources of revenue RELATING TO THE ADVENTURES OF SUPERBOY on OR after November 17, 2004.

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 131 of 321

**Response**

DC further objects to this request on the grounds that it is vague, ambiguous, overbroad, burdensome, oppressive, and seeks the production of confidential and/or proprietary information. Subject to and without waiving the foregoing objections, DC will produce non-privileged documents sufficient to show its gross revenues and expenses related to the exploitation of The Adventures of Superboy created after November 17, 2004.

**Request No. 140**

ALL DOCUMENTS reflecting OR REGARDING YOUR gross revenues from ANY source on OR after November 17, 2004 RELATING TO THE ADVENTURES OF SUPERBOY.

**Response**

DC further objects to this request on the grounds that it is vague, ambiguous, overbroad, burdensome, oppressive, and seeks the production of confidential and/or proprietary information. Subject to and without waiving the foregoing objections, DC will produce non-privileged documents sufficient to show its gross revenues and expenses related to the exploitation of The Adventures of Superboy created after November 17, 2004.

**Request No. 141**

ALL DOCUMENTS reflecting OR REGARDING YOUR expenses OR charges that are attributable to OR which have been attributed by YOU to OR charged to THE ADVENTURES OF SUPERBOY on OR after November 17, 2004, including supporting documentation (invoices, journals entries, etc.) for any expense OR charge in an amount exceeding $1,000.

**Response**

DC further objects to this request on the grounds that it is vague, ambiguous, overbroad, burdensome, oppressive, and seeks the production of confidential and/or

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 132 of 321

1 proprietary information. Subject to and without waiving the foregoing objections,

2 DC will produce non-privileged documents sufficient to show its gross revenues and

3 expenses related to the exploitation of The Adventures of Superboy created after

4 November 17, 2004.

5 **Request No. 142**

6       ALL "ultimates" OR financial projections regarding YOUR income and

7 expense on OR after November 17, 2004 REGARDING  THE ADVENTURES OF

8 SUPERBOY.

9 **Response**

10       DC further objects to this request on the grounds that it is vague, ambiguous,

11 overbroad, burdensome, oppressive, and seeks the production of confidential and/or

12 proprietary information. Subject to and without waiving the foregoing objections,

13 DC will produce non-privileged documents sufficient to show its gross revenues and

14 expenses related to the exploitation of The Adventures of Superboy created after

15 November 17, 2004.

16 **Request No. 143**

17       ALL accountings, financial statements, projections AND reports provided on

18 OR after November 17, 2004 by WB to DC REGARDING THE ADVENTURES

19 OF SUPERBOY.

20 **Response**

21       DC further objects to this request on the grounds that it is vague, ambiguous,

22 overbroad, burdensome, oppressive, and seeks the production of confidential and/or

23 proprietary information. Subject to and without waiving the foregoing objections,

24 DC will produce non-privileged documents sufficient to show its gross revenues and

25 expenses related to the exploitation of The Adventures of Superboy created after

26 November 17, 2004.

27 **Request No. 144**

28

47

1    ALL accountings, financial statements, projections AND reports provided on

2 OR after November 17, 2004 by WBTV to DC REGARDING THE

3 ADVENTURES OF SUPERBOY.

4 **Response**

5    DC further objects to this request on the grounds that it is vague, ambiguous,

6 overbroad, burdensome, oppressive, and seeks the production of confidential and/or

7 proprietary information.  Subject to and without waiving the foregoing objections,

8 DC will produce non-privileged documents sufficient to show its gross revenues and

9 expenses related to the exploitation of The Adventures of Superboy created after

10 November 17, 2004.

11 **Request No. 145**

12    ALL accountings, financial statements, projections AND reports provided on

13 OR after November 17, 2004 by ANY PERSON (other than WARNER OR WBTV)

14 to DC REGARDING THE ADVENTURES OF SUPERBOY.

15 **Response**

16    DC further objects to this request on the grounds that it is vague, ambiguous,

17 overbroad, burdensome, oppressive, and seeks the production of confidential and/or

18 proprietary information.  Subject to and without waiving the foregoing objections,

19 DC will produce non-privileged documents sufficient to show its gross revenues and

20 expenses related to the exploitation of The Adventures of Superboy created after

21 November 17, 2004.

22    e.    **Plaintiffs' Second Set of Requests Regarding**

23    **"Superboy"**

24 **Request No. 147**

25    ALL accountings, financial statements, projections AND reports RELATING

26 TO the exploitation of SUPERBOY OR ANY SUPERBOY DERIVATIVE WORK

27 on OR after November 17, 2004 in ANY form, manner, media (e.g., theatrical, non-

28

1 theatrical, television, home video, merchandising, internet, etc.) OR in ANY
2 territory.

3 **Response**

4     DC further objects to this request on the grounds that it is vague, ambiguous,
5 overbroad, burdensome, oppressive, seeks the production of confidential and/or
6 proprietary information, and violates the privacy rights of persons who are not
7 parties to this action. Subject to and without waiving the foregoing objections, DC
8 will produce non-privileged documents sufficient to show its gross revenues and
9 expenses related to the exploitation of any SUPERBOY OR SUPERBOY
10 DERIVATIVE WORK created after November 17, 2004.

11 **Request No. 148**

12     ALL accountings, financial statements, projections AND reports provided by
13 WARNER to DC on OR after November 17, 2004 REGARDING SUPERBOY OR
14 ANY SUPERBOY DERIVATIVE WORK.

15 **Response**

16     DC further objects to this request on the grounds that it is vague, ambiguous,
17 overbroad, burdensome, oppressive, seeks the production of confidential and/or
18 proprietary information, and violates the privacy rights of persons who are not
19 parties to this action. Subject to and without waiving the foregoing objections, DC
20 will produce non-privileged documents sufficient to show its gross revenues and
21 expenses related to the exploitation of any SUPERBOY OR SUPERBOY
22 DERIVATIVE WORK created after November 17, 2004.

23 **Request No. 149**

24     ALL accountings, financial statements, projections AND reports provided by
25 WBTV to DC on OR after November 17, 2004 REGARDING SUPERBOY OR
26 ANY SUPERBOY DERIVATIVE WORK.

27 **Response**

28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 135 of 321

1  DC further objects to this request on the grounds that it is vague, ambiguous,
2  overbroad, burdensome, oppressive, seeks the production of confidential and/or
3  proprietary information, and violates the privacy rights of persons who are not
4  parties to this action. Subject to and without waiving the foregoing objections, DC
5  will produce non-privileged documents sufficient to show its gross revenues and
6  expenses related to the exploitation of any SUPERBOY OR SUPERBOY
7  DERIVATIVE WORK created after November 17, 2004.

8  **Request No. 150**

9  ALL accountings, financial statements, projections AND reports provided by
10 WARNER's Consumer Products division to DC on OR after November 17, 2004
11 REGARDING SUPERBOY OR ANY SUPERBOY DERIVATIVE WORK.

12 **Response**

13 DC further objects to this request on the grounds that it is vague, ambiguous,
14 overbroad, burdensome, oppressive, seeks the production of confidential and/or
15 proprietary information, and violates the privacy rights of persons who are not
16 parties to this action. Subject to and without waiving the foregoing objections, DC
17 will produce non-privileged documents sufficient to show its gross revenues and
18 expenses related to the exploitation of any SUPERBOY OR SUPERBOY
19 DERIVATIVE WORK created after November 17, 2004.

20 **Request No. 154**

21 ALL income AND expense statements, financial reports AND computer runs
22 REGARDING the exploitation of SUPERBOY OR ANY SUPERBOY
23 DERIVATIVE WORK on OR after November 17, 2004 in ANY form, manner,
24 media OR territory throughout the world.

25 **Response**

26 DC further objects to this request on the grounds that it is vague, ambiguous,
27 overbroad, burdensome, oppressive, seeks the production of confidential and/or
28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 136 of 321

1 proprietary information, and violates the privacy rights of persons who are not

2 parties to this action. Subject to and without waiving the foregoing objections, DC

3 will produce non-privileged documents sufficient to show its gross revenues and

4 expenses related to the exploitation of any SUPERBOY OR SUPERBOY

5 DERIVATIVE WORK created after November 17, 2004.

6 **Request No. 155**

7     ALL "actual" statements, reports OR computer runs REGARDING the

8 exploitation of SUPERBOY OR ANY SUPERBOY DERIVATIVE WORK on OR

9 after November 17, 2004 in ANY form, manner, media OR territory throughout the

10 world.

11 **Response**

12     DC further objects to this request on the grounds that it is vague, ambiguous,

13 overbroad, burdensome, oppressive, seeks the production of confidential and/or

14 proprietary information, and violates the privacy rights of persons who are not

15 parties to this action. Subject to and without waiving the foregoing objections, DC

16 will produce non-privileged documents sufficient to show its gross revenues and

17 expenses related to the exploitation of any SUPERBOY OR SUPERBOY

18 DERIVATIVE WORK created after November 17, 2004.

19 **Request No. 156**

20     ALL "net" statements, reports OR computer runs REGARDING the

21 exploitation of SUPERBOY OR ANY SUPERBOY DERIVATIVE WORK on OR

22 after November 17, 2004 in ANY form, manner, media OR territory throughout the

23 world.

24 **Response**

25     DC further objects to this request on the grounds that it is vague, ambiguous,

26 overbroad, burdensome, oppressive, seeks the production of confidential and/or

27 proprietary information, and violates the privacy rights of persons who are not

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 137 of 321

1 parties to this action.  Subject to and without waiving the foregoing objections, DC

2 will produce non-privileged documents sufficient to show its gross revenues and

3 expenses related to the exploitation of any SUPERBOY OR SUPERBOY

4 DERIVATIVE WORK created after November 17, 2004.

5 **Request No. 157**

6     ALL DOCUMENTS reflecting OR REGARDING YOUR gross revenue from

7 publishing RELATING TO SUPERBOY OR ANY SUPERBOY DERIVATIVE

8 WORK on OR after November 17, 2004, including but not limited to a summary

9 listing each domestic and foreign publisher; the amounts received and reported for

10 each publisher; and copies of ALL publishing AGREEMENTS AND statements

11 RELATING TO ANY SUPERBOY DERIVATIVE WORK on OR after November

12 17, 2004.

13 **Response**

14     DC further objects to this request on the grounds that it is vague, ambiguous,

15 overbroad, burdensome, oppressive, seeks the production of confidential and/or

16 proprietary information, and violates the privacy rights of persons who are not

17 parties to this action.  Subject to and without waiving the foregoing objections, DC

18 will produce non-privileged documents sufficient to show its gross revenues and

19 expenses related to the exploitation of any SUPERBOY OR SUPERBOY

20 DERIVATIVE WORK created after November 17, 2004.

21 **Request No. 158**

22     ALL DOCUMENTS reflecting OR REGARDING YOUR gross revenue from

23 the exploitation of ANY merchandising RELATING TO SUPERBOY OR ANY

24 SUPERBOY DERIVATIVE WORK on OR after November 17, 2004.

25 **Response**

26     DC further objects to this request on the grounds that it is vague, ambiguous,

27 overbroad, burdensome, oppressive, seeks the production of confidential and/or

28

PLAINTIFFS' MOTION TO COMPEL     **80**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 138 of 321

1  proprietary information, and violates the privacy rights of persons who are not

2  parties to this action.  Subject to and without waiving the foregoing objections, DC

3  will produce non-privileged documents sufficient to show its gross revenues and

4  expenses related to the exploitation of any SUPERBOY OR SUPERBOY

5  DERIVATIVE WORK created after November 17, 2004.

6  **Request No. 160**

7      ALL accountings, statements or projections from ANY PERSON

8  REGARDING the merchandising of SUPERBOY OR ANY SUPERBOY

9  DERIVATIVE WORK on OR after November 17, 2004.

10  **Response**

11      DC further objects to this request on the grounds that it is vague, ambiguous,

12  overbroad, burdensome, oppressive, seeks the production of confidential and/or

13  proprietary information, and violates the privacy rights of persons who are not

14  parties to this action.  Subject to and without waiving the foregoing objections, DC

15  will produce non-privileged documents sufficient to show its gross revenues and

16  expenses related to the exploitation of any SUPERBOY OR SUPERBOY

17  DERIVATIVE WORK created after November 17, 2004.

18  **Request No. 161**

19      ALL DOCUMENTS reflecting OR REGARDING revenue from the

20  exploitation on OR after November 17, 2004 of SUPERBOY OR ANY

21  SUPERBOY DERIVATIVE WORK in DOMESTIC OR FOREIGN television,

22  including "free" television, "pay" television, "basic cable" television and

23  syndication.

24  **Response**

25      DC further objects to this request on the grounds that it is vague, ambiguous,

26  overbroad, burdensome, oppressive, seeks the production of confidential and/or

27  proprietary information, and violates the privacy rights of persons who are not

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 139 of 321

1 parties to this action. Subject to and without waiving the foregoing objections, DC

2 will produce non-privileged documents sufficient to show its gross revenues and

3 expenses related to the exploitation of any SUPERBOY OR SUPERBOY

4 DERIVATIVE WORK created after November 17, 2004.

5 **Request No. 163**

6 ALL DOCUMENTS reflecting OR REFERRING TO the income and

7 expenses RELATING TO the exploitation on OR after November 17, 2004 of

8 SUPERBOY OR ANY SUPERBOY DERIVATIVE WORK for each media as

9 applicable (e.g., theatrical, non-theatrical, home video, music, merchandising, etc.)

10 AND in each territory throughout the world.

11 **Response**

12 DC further objects to this request on the grounds that it is vague, ambiguous,

13 overbroad, burdensome, oppressive, seeks the production of confidential and/or

14 proprietary information, and violates the privacy rights of persons who are not

15 parties to this action. Subject to and without waiving the foregoing objections, DC

16 will produce non-privileged documents sufficient to show its gross revenues and

17 expenses related to the exploitation of any SUPERBOY OR SUPERBOY

18 DERIVATIVE WORK created after November 17, 2004.

19 **Request No. 173**

20 ALL DOCUMENTS showing or reflecting the residuals paid or payable in

21 connection with ANY SUPERBOY DERIVATIVE WORK on OR after November

22 17, 2004, including but not limited to the "residual worksheets" for such work.

23 **Response**

24 DC further objects to this request on the grounds that it is vague, ambiguous,

25 overbroad, burdensome, oppressive, seeks the production of confidential and/or

26 proprietary information, and violates the privacy rights of persons who are not

27 parties to this action. Subject to and without waiving the foregoing objections, DC

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 140 of 321

1  will produce non-privileged documents sufficient to show its gross revenues and

2  expenses related to the exploitation of any SUPERBOY DERIVATIVE WORK

3  created after November 17, 2004.

4  **Request No. 174**

5      ALL schedules of actual residuals paid in connection with ANY SUPERBOY

6  DERIVATIVE WORK on OR after November 17, 2004.

7  **Response**

8      DC further objects to this request on the grounds that it is vague, ambiguous,

9  overbroad, burdensome, oppressive, seeks the production of confidential and/or

10  proprietary information, and violates the privacy rights of persons who are not

11  parties to this action.  Subject to and without waiving the foregoing objections, DC

12  will produce non-privileged documents sufficient to show its gross revenues and

13  expenses related to the exploitation of any SUPERBOY DERIVATIVE WORK

14  created after November 17, 2004.

15  **Request No. 176**

16      ALL DOCUMENTS reflecting OR REGARDING YOUR gross revenue from

17  the exploitation of ANY SUPERBOY DERIVATIVE WORK on OR after

18  November 17, 2004 in home video, including in the DVD and VHS formats.

19  **Response**

20      DC further objects to this request on the grounds that it is vague, ambiguous,

21  overbroad, burdensome, and oppressive.  Subject to and without waiving the

22  foregoing objections, DC will produce non-privileged documents sufficient to show

23  its gross revenues and expenses related to the exploitation of any SUPERBOY

24  DERIVATIVE WORK created after November 17, 2004.

25  **Request No. 178**

26      ALL DOCUMENTS reflecting OR REGARDING YOUR gross revenue OR

27  benefits from Internet sources RELATING TO SUPERBOY OR ANY SUPERBOY

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 141 of 321

1  DERIVATIVE WORK on OR after November 17, 2004.

2  **Response**

3      DC further objects to this request on the grounds that it is vague, ambiguous,

4  overbroad, burdensome, oppressive, seeks the production of confidential and/or

5  proprietary information, and violates the privacy rights of persons who are not

6  parties to this action. Subject to and without waiving the foregoing objections, DC

7  will produce non-privileged documents sufficient to show its gross revenues and

8  expenses related to the exploitation of any SUPERBOY OR SUPERBOY

9  DERIVATIVE WORK created after November 17, 2004.

10 **Request No. 179**

11     ALL DOCUMENTS reflecting OR REGARDING YOUR gross revenues

12 from ANY source on OR after November 17, 2004 RELATING TO SUPERBOY

13 OR ANY SUPERBOY DERIVATIVE WORK on OR after November 17, 2004.

14 **Response**

15     DC further objects to this request on the grounds that it is vague, ambiguous,

16 overbroad, burdensome, oppressive, seeks the production of confidential and/or

17 proprietary information, and violates the privacy rights of persons who are not

18 parties to this action. Subject to and without waiving the foregoing objections, DC

19 will produce non-privileged documents sufficient to show its gross revenues and

20 expenses related to the exploitation of any SUPERBOY OR SUPERBOY

21 DERIVATIVE WORK created after November 17, 2004.

22 **Request No. 180**

23     ALL DOCUMENTS reflecting OR REGARDING YOUR expenses OR

24 charges that are attributable to OR which have been attributed by YOU to OR

25 charged to SUPERBOY OR ANY SUPERBOY DERIVATIVE WORK on OR after

26 November 17, 2004, including supporting documentation (invoices, journals entries,

27 etc.) for any expense OR charge in an amount exceeding $1,000.

28

PLAINTIFFS' MOTION TO COMPEL

**84**

ER 2428

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 142 of 321

1 **Response**

2    DC further objects to this request on the grounds that it is vague, ambiguous,

3 overbroad, burdensome, oppressive, seeks the production of confidential and/or

4 proprietary information, and violates the privacy rights of persons who are not

5 parties to this action.  Subject to and without waiving the foregoing objections, DC

6 will produce non-privileged documents sufficient to show its gross revenues and

7 expenses related to the exploitation of any SUPERBOY OR SUPERBOY

8 DERIVATIVE WORK created after November 17, 2004.

9 **Request No. 181**

10    ALL "ultimates" OR financial projections regarding YOUR income and

11 expense on OR after November 17, 2004 REGARDING SUPERBOY OR ANY

12 SUPERBOY DERIVATIVE WORK.

13 **Response**

14    DC further objects to this request on the grounds that it is vague, ambiguous,

15 overbroad, burdensome, oppressive, seeks the production of confidential and/or

16 proprietary information, and violates the privacy rights of persons who are not

17 parties to this action.  Subject to and without waiving the foregoing objections, DC

18 will produce non-privileged documents sufficient to show its gross revenues and

19 expenses related to the exploitation of any SUPERBOY OR SUPERBOY

20 DERIVATIVE WORK created after November 17, 2004.

21 **Request No. 182**

22    ALL accountings, financial statements, projections AND reports provided by

23 YOU to DC on OR after November 17, 2004 REGARDING OR RELATING TO

24 SUPERBOY OR ANY SUPERBOY DERIVATIVE WORK.

25 **Response**

26    DC further objects to this request on the grounds that it is vague, ambiguous,

27 overbroad, burdensome, oppressive, seeks the production of confidential and/or

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 143 of 321

1  proprietary information, and violates the privacy rights of persons who are not
2  parties to this action. Subject to and without waiving the foregoing objections, DC
3  will produce non-privileged documents sufficient to show its gross revenues and
4  expenses related to the exploitation of any SUPERBOY OR SUPERBOY
5  DERIVATIVE WORK created after November 17, 2004.

6  **Request No. 187**

7      ALL accountings, financial statements, projections AND reports RELATING
8  TO the exploitation of SUPERBOY OR ANY SUPERBOY DERIVATIVE WORK
9  on OR after November 17, 2004 in ANY form, manner, media (e.g., theatrical, non-
10 theatrical, television, home video, merchandising, internet, etc.) OR in ANY
11 territory.

12 **Response**

13     DC further objects to this request on the grounds that it is vague, ambiguous,
14 overbroad, burdensome, oppressive, seeks the production of confidential and/or
15 proprietary information, and violates the privacy rights of persons who are not
16 parties to this action. Subject to and without waiving the foregoing objections, DC
17 will produce non-privileged documents sufficient to show its gross revenues and
18 expenses related to the exploitation of any SUPERBOY OR SUPERBOY
19 DERIVATIVE WORK created after November 17, 2004.

20 **Request No. 188**

21     ALL accountings, financial statements, projections AND reports provided by
22 WARNER to DC on OR after November 17, 2004 REGARDING SUPERBOY OR
23 ANY SUPERBOY DERIVATIVE WORK.

24 **Response**

25     DC further objects to this request on the grounds that it is vague, ambiguous,
26 overbroad, burdensome, oppressive, seeks the production of confidential and/or
27 proprietary information, and violates the privacy rights of persons who are not

28

PLAINTIFFS' MOTION TO COMPEL                    **86**

**ER 2430**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 144 of 321

1  parties to this action. Subject to and without waiving the foregoing objections, DC

2  will produce non-privileged documents sufficient to show its gross revenues and

3  expenses related to the exploitation of any SUPERBOY OR SUPERBOY

4  DERIVATIVE WORK created after November 17, 2004.

5  **Request No. 189**

6     ALL accountings, financial statements, projections AND reports provided by

7  WBTV to DC on OR after November 17, 2004 REGARDING SUPERBOY OR

8  ANY SUPERBOY DERIVATIVE WORK.

9  **Response**

10     DC further objects to this request on the grounds that it is vague, ambiguous,

11  overbroad, burdensome, oppressive, seeks the production of confidential and/or

12  proprietary information, and violates the privacy rights of persons who are not

13  parties to this action. Subject to and without waiving the foregoing objections, DC

14  will produce non-privileged documents sufficient to show its gross revenues and

15  expenses related to the exploitation of any SUPERBOY OR SUPERBOY

16  DERIVATIVE WORK created after November 17, 2004.

17  **Request No. 190**

18     ALL accountings, financial statements, projections AND reports provided by

19  WARNER's Consumer Products division to DC on OR after November 17, 2004

20  REGARDING SUPERBOY OR ANY SUPERBOY DERIVATIVE WORK.

21  **Response**

22     DC further objects to this request on the grounds that it is vague, ambiguous,

23  overbroad, burdensome, oppressive, seeks the production of confidential and/or

24  proprietary information, and violates the privacy rights of persons who are not

25  parties to this action. Subject to and without waiving the foregoing objections, DC

26  will produce non-privileged documents sufficient to show its gross revenues and

27  expenses related to the exploitation of any SUPERBOY OR SUPERBOY

28



1 DERIVATIVE WORK created after November 17, 2004.

2 **Request No. 191**

3     ALL AGREEMENTS REGARDING OR RELATING TO the exploitation of

4 SUPERBOY OR a SUPERBOY DERIVATIVE WORK on OR after November 17,

5 2004 in ANY form, manner, media OR territory throughout the world.

6 **Response**

7     DC further objects to this request on the grounds that it is vague, ambiguous,

8 overbroad, burdensome, oppressive, seeks the production of confidential and/or

9 proprietary information, and violates the privacy rights of persons who are not

10 parties to this action. Subject to and without waiving the foregoing objections, DC

11 will produce non-privileged responsive items consistent with its understanding of

12 the request.

13     **5.**     **DC Should Be Compelled To Produce Documents Regarding**

14            **Its Exploitation Of "Superman" and "Superboy"**

15         **a.**     **Request Nos. 151-153, 159, 162, 199, 202 (Second Set)**

16     Plaintiffs' Request Nos. 151-153, 159, 162, 199, 202 (Second Set) sought the

17 production of relevant documents relating to DC's agreements or transactions to

18 exploit "Superman" on or after the effective "Superman" Termination date (April

19 16, 1999) or to exploit "Superboy" on or after the effective "Superboy" Termination

20 date (November 17, 2004). The obvious purpose of such Requests is to gauge the

21 nature and extent of DC's exploitation, to allow Plaintiffs to assess and verify DC's

22 revenues flowing from such transactions and to project DC's future revenues from

23 such transactions.

24     However, rather than inform Plaintiffs whether it would produce the

25 requested relevant documents, DC blithely sidestepped each Request responding

26 repeatedly that "DC will produce non-privileged documents sufficient to show its

27 gross revenues and expenses related to the exploitation of any SUPERBOY OR

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 145 of 321

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 146 of 321

1 SUPERBOY DERIVATIVE WORK created after November 17, 2004" [or "of any

2 SUPERMAN OR ANY SUPERMAN DERIVATIVE WORK created after April 16,

3 1999."] This is clearly improper and insufficient as it thwarts the very discovery

4 intended by the Requests and only provides financial information at one point in

5 time as opposed to the transactional infrastructure of DC's exploitation of the

6 properties in question which generates revenues now and in the future. The subject

7 Request Nos. 151-153, 159, 162, 199, 202 (Second Set) and DC's Responses are as

8 follows:

9 **Request No. 151**

10     ALL AGREEMENTS REGARDING OR RELATING TO the exploitation of

11 SUPERBOY OR a SUPERBOY DERIVATIVE WORK on OR after November 17,

12 2004 in ANY form, manner, media OR territory throughout the world.

13 **Response**

14     DC further objects to this request on the grounds that it is vague, ambiguous,

15 overbroad, burdensome, oppressive, seeks the production of confidential and/or

16 proprietary information, and violates the privacy rights of persons who are not

17 parties to this action. Subject to and without waiving the foregoing objections, DC

18 will produce non-privileged documents sufficient to show its gross revenues and

19 expenses related to the exploitation of any SUPERBOY OR SUPERBOY

20 DERIVATIVE WORK created after November 17, 2004.

21 **Request No. 152**

22     ALL DOCUMENTS REGARDING ANY TRANSACTIONS RELATING

23 TO the exploitation of SUPERBOY OR ANY SUPERBOY DERIVATIVE WORK

24 on OR after November 17, 2004 in ANY form, manner, media OR territory

25 throughout the world.

26 **Response**

27     DC further objects to this request on the grounds that it is vague, ambiguous,

28

PLAINTIFFS' MOTION TO COMPEL          **89**

ER 2433

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 147 of 321

1  overbroad, burdensome, oppressive, seeks the production of confidential and/or

2  proprietary information, and violates the privacy rights of persons who are not

3  parties to this action.  Subject to and without waiving the foregoing objections, DC

4  will produce non-privileged documents sufficient to show its gross revenues and

5  expenses related to the exploitation of any SUPERBOY OR SUPERBOY

6  DERIVATIVE WORK created after November 17, 2004.

7  **Request No. 153**

8      ALL COMMUNICATIONS RELATING TO the exploitation of SUPERBOY

9  OR ANY SUPERBOY DERIVATIVE WORK on OR after November 17, 2004 in

10  ANY form, manner, media OR territory throughout the world.

11  **Response**

12      DC further objects to this request on the grounds that it is vague, ambiguous,

13  overbroad, burdensome, oppressive, seeks the production of confidential and/or

14  proprietary information, and violates the privacy rights of persons who are not

15  parties to this action.  Subject to and without waiving the foregoing objections, DC

16  will produce non-privileged documents sufficient to show its gross revenues and

17  expenses related to the exploitation of any SUPERBOY OR SUPERBOY

18  DERIVATIVE WORK created after November 17, 2004.

19  **Request No. 159**

20      ALL DOCUMENTS summarizing OR listing each DOMESTIC and

21  FOREIGN licensee, distributor OR licensing agent involved in the merchandising of

22  SUPERBOY OR ANY SUPERBOY DERIVATIVE WORK on OR after November

23  17, 2004.

24  **Response**

25      DC further objects to this request on the grounds that it is vague, ambiguous,

26  overbroad, burdensome, oppressive, seeks the production of confidential and/or

27  proprietary information, and violates the privacy rights of persons who are not

28

PLAINTIFFS' MOTION TO COMPEL

**90**  ER 2434

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 148 of 321

1 parties to this action. Subject to and without waiving the foregoing objections, DC
2 will produce non-privileged documents sufficient to show its gross revenues and
3 expenses related to the exploitation of any SUPERBOY OR SUPERBOY
4 DERIVATIVE WORK created after November 17, 2004.

5 **Request No. 162**

6     ALL sales contracts pertaining to or REGARDING SUPERBOY OR ANY
7 SUPERBOY DERIVATIVE WORK on OR after November 17, 2004. With respect
8 to package sales including ANY SUPERBOY DERIVATIVE WORK, please
9 include ALL DOCUMENTS REFERRING TO the amounts allocated to each work
10 in the package and ALL DOCUMENTS which REFER TO or explain the
11 methodology used in each allocation.

12 **Response**

13     DC further objects to this request on the grounds that it is vague, ambiguous,
14 overbroad, burdensome, oppressive, seeks the production of confidential and/or
15 proprietary information, and violates the privacy rights of persons who are not
16 parties to this action. Subject to and without waiving the foregoing objections, DC
17 will produce non-privileged documents sufficient to show its gross revenues and
18 expenses related to the exploitation of any SUPERBOY OR SUPERBOY
19 DERIVATIVE WORK created after November 17, 2004.

20 **Request No. 199**

21     ALL DOCUMENTS summarizing OR listing each DOMESTIC and
22 FOREIGN licensee, distributor OR licensing agent involved in the merchandising of
23 SUPERMAN OR ANY SUPERMAN DERIVATIVE WORK on OR after April 16,
24 1999.

25 **Response**

26     DC further objects to this request on the grounds that it is vague, ambiguous,
27 overbroad, burdensome, oppressive, seeks the production of confidential and/or
28

PLAINTIFFS' MOTION TO COMPEL

ER 2435

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 149 of 321

1  proprietary information, and violates the privacy rights of persons who are not
2  parties to this action.  Subject to and without waiving the foregoing objections, DC
3  will produce non-privileged documents sufficient to show its gross revenues and
4  expenses related to the exploitation of any SUPERMAN OR ANY SUPERMAN
5  DERIVATIVE WORK created after April 16, 1999.

6  **Request No. 202**

7       ALL sales contracts pertaining to or REGARDING SUPERMAN OR ANY
8  SUPERMAN DERIVATIVE WORK on OR after April 16, 1999.  With respect to
9  package sales including ANY SUPERMAN DERIVATIVE WORK, please include
10  ALL DOCUMENTS REFERRING TO the amounts allocated to each work in the
11  package and ALL DOCUMENTS which REFER TO or explain the methodology
12  used in each allocation.

13  **Response**

14       DC further objects to this request on the grounds that it is vague, ambiguous,
15  overbroad, burdensome, oppressive, seeks the production of confidential and/or
16  proprietary information, and violates the privacy rights of persons who are not
17  parties to this action.  Subject to and without waiving the foregoing objections, DC
18  will produce non-privileged documents sufficient to show its gross revenues and
19  expenses related to the exploitation of any SUPERMAN OR ANY SUPERMAN
20  DERIVATIVE WORK created after April 16, 1999.

21       b.    **Request Nos. 80, 81, 84 (First Set) and 223-225 (Second**
22             **Set)**

23       Plaintiffs' Request Nos. 80, 81, 84 (First Set) and 223-225 (Second Set), set
24  forth below, sought the production of relevant documents relating to DC's
25  agreements with Defendant Warner Bros., WBTV or Time-Warner regarding
26  "Superman" and any "Superman Derivative Work" and/or "Superboy" and any
27  "Superboy Derivative Work."  In their Response to each Request, DC improperly

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 150 of 321

1  limited their production to *"items dating back to January 1, 1999."* (Toberoff Decl.,

2  Exs. B, F.)  This makes no sense.  Firstly, it is unclear what Defendants mean by

3  this, and whether this also entails documents after January 1, 1999.  Secondly,

4  whereas, Plaintiffs are entitled to an accounting of Defendants' profits from the

5  exploitation of "Superman" and "Superboy" on and after the Termination dates of

6  April 16, 1999 and November 17, 2004, respectively, an agreement pre-dating

7  January 1, 1999 between the Defendants may still be in force during this relevant

8  time period and govern revenues during the relevant period.  Thirdly, the history of

9  agreements between DC and other members of its Time-Warner family is very

10  relevant to Plaintiffs' claim that DC's agreements with its corporate cousin, Warner

11  Bros. are not at arms length.  (Toberoff Decl., Exs. K, ¶¶ 12-13, Ex. L, ¶¶ 14-15).

12  The subject Request Nos. 80, 81, 84 (First Set) and 223-225 (Second Set) and DC's

13  Responses are as follows:

14  **Request No. 80**

15  　　　ALL AGREEMENTS between YOU AND WARNER which REFER OR

16  RELATE to SUPERMAN OR ANY SUPERMAN DERIVATIVE WORK,

17  including ALL exhibits, schedules, addendums or amendments thereto AND ALL

18  drafts, red-lined drafts, notes, comments, revisions AND ALL

19  COMMUNICATIONS REGARDING such AGREEMENTS.

20  **Response**

21  　　　DC further objects to this request on the grounds that it is vague, ambiguous,

22  overbroad, burdensome, and oppressive.  Subject to and without waiving the

23  foregoing objections, DC will produce non-privileged responsive items dating back

24  to January 1, 1999, consistent with its understanding of this request.

25  **Request No. 81**

26  　　　ALL DOCUMENTS RELATING TO NEGOTIATIONS between YOU AND

27  WARNER REGARDING ANY AGREEMENT OR TRANSACTION which

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 151 of 321

1 REFERS OR RELATES to SUPERMAN OR ANY SUPERMAN DERIVATIVE
2 WORK.

3 **Response**

4     DC further objects to this request on the grounds that it is vague, ambiguous,
5 overbroad, burdensome, and oppressive. Subject to and without waiving the
6 foregoing objections, DC will produce non-privileged responsive items dating back
7 to January 1, 1999, consistent with its understanding of this request.

8 **Request No. 84**

9     ALL DOCUMENTS RELATING TO NEGOTIATIONS between YOU AND
10 WARNER REGARDING ANY AGREEMENT OR TRANSACTION which
11 REFERS OR RELATES to SUPERMAN, ANY SUPERMAN DERIVATIVE
12 WORK, SUPERBOY OR ANY SUPERBOY DERIVATIVE WORK.

13 **Response**

14     DC further objects to this request on the grounds that it is vague, ambiguous,
15 overbroad, burdensome, and oppressive. Subject to and without waiving the
16 foregoing objections, DC will produce non-privileged responsive items dating back
17 to January 1, 1999, consistent with its understanding of this request.

18 **Request No. 223**

19     ALL AGREEMENTS between WARNER and DC REGARDING,
20 RELATING TO OR applicable to the exploitation of SUPERMAN OR ANY
21 SUPERMAN DERIVATIVE WORK on OR after April 16, 1999.

22 **Response**

23     DC further objects to this request on the grounds that it is vague, ambiguous,
24 overbroad, burdensome, oppressive, seeks the production of confidential and/or
25 proprietary information, and violates the privacy rights of persons who are not
26 parties to this action. Subject to and without waiving the foregoing objections, DC
27 will produce non-privileged responsive items dating back to January 1, 1999,

28

consistent with its understanding of this request.

**Request No. 224**

    ALL AGREEMENTS between TIME-WARNER and DC REGARDING, RELATING TO OR applicable to the exploitation of SUPERMAN OR ANY SUPERMAN DERIVATIVE WORK on OR after April 16, 1999.

**Response**

    DC further objects to this request on the grounds that it is vague, ambiguous, overbroad, burdensome, oppressive, seeks the production of confidential and/or proprietary information, and violates the privacy rights of persons who are not parties to this action. Subject to and without waiving the foregoing objections, DC will produce non-privileged responsive items dating back to January 1, 1999, consistent with its understanding of this request.

**Request No. 225**

    ALL AGREEMENTS between WBTV and DC REGARDING, RELATING TO OR applicable to the exploitation of SUPERMAN OR ANY SUPERMAN DERIVATIVE WORK on OR after April 16, 1999.

**Response**

    DC further objects to this request on the grounds that it is vague, ambiguous, overbroad, burdensome, oppressive, seeks the production of confidential and/or proprietary information, and violates the privacy rights of persons who are not parties to this action. Subject to and without waiving the foregoing objections, DC will produce non-privileged responsive items dating back to January 1, 1999, consistent with its understanding of this request.

    **c.**    **Request No. 37 (First Set)**

    Plaintiffs' Request Nos. 37 (First Set), set forth below, sought the production of documents relating to transactions or agreements regarding DC's primary business of publishing "Superman" after April 16, 1999, the effective Termination

67

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 152 of 321

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 153 of 321

1    date. DC's Response was improper. (Toberoff Decl., Ex. B.) Rather than agree to

2    provide such relevant agreements, DC agreed to provide only "documents sufficient

3    to show publishing royalties related to Superman paid on agreements that were in

4    effect as of April 16, 1999." DC does not appear to have provided even this.

5    Moreover, DC's unilateral limitation deprives Plaintiffs of the ability to verify DC's

6    publishing figures or to understand how such publishing royalties are derived and

7    computed now and in the future. The subject Request Nos. 37 (First Set) and DC's

8    Response are as follows:

9    **Request No. 37:**

10       ALL DOCUMENTS that REFER OR RELATE to ANY TRANSACTION

11    OR AGREEMENT REGARDING publishing RELATING TO SUPERMAN on OR

12    after April 16, 1999.

13    **Response:**

14       DC further objects to this request on the grounds that it is vague, ambiguous,

15    overbroad, burdensome, and oppressive. Subject to and without waiving the

16    foregoing objections, DC will produce samples of its current form work-for-hire

17    agreements and documents sufficient to show publishing royalties related to

18    Superman paid on agreements that were in effect as of April 16, 1999.

19       **d.**     **Request No. 91 (Second Set)**

20       Plaintiffs' **Request Nos. 91 (Second Set),** set forth below, sought the

21    production of documents relating to DC's plans, projections or projects in

22    development regarding the exploitation of "Superman" on or after April 16, 1999.

23    In response, DC improperly refused to provide any responsive documents on the

24    basis of boilerplate objections and alleged irrelevance. (Toberoff Decl., Ex. F.) As

25    Plaintiffs have an ongoing right to an accounting by DC for its profits from the

26    exploitation of "Superman" the requested documents are plainly relevant.

27    Moreover, knowledge of projections and future exploitations of "Superman" is also

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 154 of 321

1   important to any settlement discussions between the parties which would likely
2   involve an ongoing participation or royalty from such exploitations.  The subject
3   Request Nos. 91 (Second Set) and DC's Response are as follows:

4   **Request No. 91**

5         ALL DOCUMENTS RELATING TO YOUR plans, projections OR projects
6   in development REGARDING the exploitation OR licensing OF SUPERMAN OR
7   ANY SUPERMAN DERIVATIVE WORK on OR after April 16, 1999.

8   **Response**

9         DC further objects to this request on the grounds that it is vague, ambiguous,
10  overbroad, burdensome, and oppressive and seeks information which is neither
11  relevant nor will lead to the discovery of admissible evidence.

12        **6.    DC Should Be Compelled To Produce Documents Related To**
13              **Its Legal Defenses**

14        Plaintiffs' **Request Nos. 4-8, 27-30, 39, 69-70, 72 (First Set), 114-126**
15  **(Second Set) and 265-272, 276-294 (Fourth Set)** sought documents related to a
16  number of DC's claims and defenses in the instant actions, including that Jerry
17  Siegel's work on "Superman" and "Superboy" was "work for hire" (see DC's First
18  Amended Counterclaims, ¶¶ 10-12, 14-15, 81-85, Toberoff Decl., Ex. R), or that the
19  creation and development of Smallville is in no way derived from "Superboy" (*Id.*,
20  ¶¶ 59-64, 129-131).  Documents related to DC's purported claims and defenses are
21  clearly relevant under the broad discovery mandate of FRCP 26.  DC's Responses
22  which unilaterally narrowed Plaintiffs' Requests and DC's insufficient responsive
23  production are improper.

24        **a.    Documents Related To Defendants' Work-For-Hire**
25              **Defenses Are Relevant And Must Be Produced**

26        As noted above, DC's counterclaims allege that Siegel's work on "Superman"
27  and "Superboy" was "work for hire."  (*Id.*, ¶¶ 10-12, 14-15, 81-85).  The relevance
28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 155 of 321

1  of documents related to this issue is not in question.  Such documents are vital.  *See*

2  *McCormick v. Cohn,* 1992 U.S. Dist. LEXIS 21187, *12 (S.D. Cal. 1992)(party

3  charged with discovery abuse and unclean hands where it concealed "documents

4  which would have had an impact on the defense of the copyright claims," including

5  "the nonapplicability of the work-for-hire doctrine").  However, DC's production in

6  this area has been very narrow and largely relegated to documents produced by

7  Plaintiffs.  For example, when requested to produce all documents that "REFER OR

8  RELATE to the creation of the ORIGINAL SUPERMAN" and several other similar

9  requests, DC agreed to make available only "comic books, comic strips, stories,

10  archived artwork, unpublished histories and published histories," and not

11  correspondence and internal memoranda (see DC responses to Request Nos. 4-5, 7).

12  However, DC's expert witnesses in this action have relied *heavily* on such

13  correspondence supplied to them by DC when opining on the "work for hire" issue.

14  *See e.g.,* Defendants' Expert Rebuttal Report of Neil Netanel, pp. 1-2, 4-6, 8

15  (Toberoff Decl., Ex. S) and Defendants' Expert Rebuttal Report of Jeff Rovin, pp.

16  7-8 (Toberoff Decl., Ex. X).

17          Despite the obvious relevance of the documents sought by Plaintiffs, DC has

18  produced only a small fraction of the documents requested and in their possession.

19  Accordingly, Plaintiffs respectfully request that Defendants be ordered to produce

20  documents responsive to the following Requests immediately.  In those instances

21  where Defendants argue that all documents responsive to a Request have been

22  produced, they must unequivocally represent this without open-ended qualifiers

23  such as "consistent with [DC's] understanding of this request."

24  **Request No. 4:**

25          ALL DOCUMENTS that REFER OR RELATE to the creation of the

26  ORIGINAL SUPERMAN.

27  **Response:**

28

PLAINTIFFS' MOTION TO COMPEL                    **98**

ER 2442

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 156 of 321

1      DC further objects to this request on the grounds that it is vague, ambiguous,
2 overbroad, burdensome, and oppressive. Subject to and without waiving the
3 foregoing objections, DC will make available for inspection and copying at its
4 offices all comic books, comic strips, stories, archived artwork, unpublished
5 histories and published histories (other than items not published or licensed by DC)
6 relating to the creation of Superman.

7 **Request No. 5:**

8      ALL DOCUMENTS that REFER OR RELATE to the creation of
9 SUPERMAN ACTION 1-6 OR ANY of such comic books.

10 **Response:**

11      DC further objects to this request on the grounds that it is vague, ambiguous,
12 overbroad, burdensome, and oppressive. Subject to and without waiving the
13 foregoing objections, DC will make available for inspection and copying at its
14 offices all comic books, comic strips, stories, archived artwork, unpublished
15 histories and published histories (other than items not published or licensed by DC)
16 relating to the creation of Superman as depicted in Action Comics 1-6.

17 **Request No. 6:**

18      ALL DOCUMENTS which YOU believe support YOUR contention that
19 SUPERMAN ACTION 1-6 OR ANY of such comic books constitutes a "work(s)
20 made-for-hire" under the U.S. Copyright Act of 1909.

21 **Response:**

22      DC further objects to this request on the grounds that it is vague, ambiguous,
23 overbroad, burdensome, and oppressive. Subject to and without waiving the
24 foregoing objections, DC will produce all non-privileged responsive items
25 consistent with its understanding of this request.

26 **Request No. 7:**

27      ALL DOCUMENTS that REFER OR RELATE to the creation of

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 157 of 321

1  SUPERMAN ACTION 7-61 OR ANY of such comic books.

2  **Response:**

3      DC further objects to this request on the grounds that it is vague, ambiguous,

4  overbroad, burdensome, and oppressive.  Subject to and without waiving the

5  foregoing objections, DC will make available for inspection and copying at its

6  offices all comic books, comic strips, stories, archived artwork, unpublished

7  histories and published histories (other than items not published or licensed by DC)

8  relating to the creation of Superman as depicted in Action Comics 7-61.

9  **Request No. 8:**

10      ALL DOCUMENTS which YOU believe support your contention that

11  SUPERMAN ACTION 7-61 OR ANY of such comic books constitute a "work(s)

12  made-for-hire" under the U.S. Copyright Act of 1909.

13  **Response:**

14      DC further objects to this request on the grounds that it is vague, ambiguous,

15  overbroad, burdensome, and oppressive.  Subject to and without waiving the

16  foregoing objections, DC will produce all non-privileged responsive items

17  consistent with its understanding of this request.

18  **Request No. 27:**

19      The employee records and payroll records of YOUR alleged predecessors,

20  including Detective Comics, Inc. and Superman, Inc., from 1938 through 1943.

21  **Response:**

22      DC further objects to this request on the grounds that it is vague, ambiguous,

23  overbroad, burdensome, and oppressive.  Subject to and without waiving the

24  foregoing objections, DC will produce all requested non-privileged employee and

25  payroll records that relate solely to Jerome Siegel or Joseph Schuster.

26  **Request No. 28:**

27      ALL payment AND tax records, such as "1099" forms (or similar documents)

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 158 of 321

1  RELATING TO independent contractors engaged by YOUR alleged predecessors,

2  including Detective Comics, Inc. and Superman, Inc., from 1938 through 1943.

3  **Response:**

4       DC further objects to this request on the grounds that it is vague, ambiguous,

5  overbroad, burdensome, and oppressive.  Subject to and without waiving the

6  foregoing objections, DC will produce all requested non-privileged payment and tax

7  records that relate solely to Jerome Siegel or Joseph Schuster.

8  **Request No. 29:**

9       The State and Federal tax returns of YOUR alleged predecessors, including

10  Detective Comics, Inc. and Superman, Inc., for each of the years, 1938 through

11  1943.

12  **Response:**

13       DC further objects to this request on the grounds that it is vague, ambiguous,

14  overbroad, burdensome, and oppressive and that it seeks documents not reasonably

15  calculated to lead to the discovery of admissible evidence.

16  **Request No. 30:**

17       A list (or similar type of document) of ALL beneficiaries of ANY insurance

18  policies held by YOUR alleged predecessors, including Detective Comics, Inc. and

19  Superman, Inc., for each of the years, 1938 through 1943.

20  **Response:**

21       DC further objects to this request on the grounds that it is vague, ambiguous,

22  overbroad, burdensome, and oppressive and that it seeks documents not reasonably

23  calculated to lead to the discovery of admissible evidence.

24  **Request No. 69:**

25       ALL DOCUMENTS that REFER OR RELATE to OR which YOU believe

26  support DEFENDANTS' allegation in paragraph 11 of their COUNTERCLAIMS

27  that "[a]t the instance and expense of DCI [Detective Comics, Inc.] and subject to its

28

PLAINTIFFS' MOTION TO COMPEL                    **101**

ER 2445

1   <u>right of control</u> Siegel and Shuster cut and pasted the comic strips, and added certain

2   additional material, to create a thirteen page comic book story which was accepted

3   for publication by DCI." (Emphasis added).

4   **Response:**

5       DC further objects to this request on the grounds that it is vague, ambiguous,

6   overbroad, burdensome, and oppressive. Subject to and without waiving the

7   foregoing objections, DC will produce all non-privileged responsive items

8   consistent with its understanding of this request upon which defendants and

9   counterclaimant will rely at trial.

10   **Request No. 70:**

11       ALL DOCUMENTS that REFER OR RELATE to OR which YOU believe

12   support DEFENDANTS' allegation in paragraph 27 of their ANSWER that

13   "following Action Comics No. 1, <u>at the instance and expense of Detective Comics,</u>

14   <u>Inc., and subject to its right of control</u>, Siegel and Shuster jointly created some

15   additional Superman episodes that appeared in subsequent issues of Action

16   Comics..." (emphasis added).

17   **Response:**

18       DC further objects to this request on the grounds that it is vague, ambiguous,

19   overbroad, burdensome, and oppressive. Subject to and without waiving the

20   foregoing objections, DC will produce all non-privileged responsive items

21   consistent with its understanding of this request upon which defendants and

22   counterclaimant will rely at trial.

23   **Request No. 72:**

24       ALL DOCUMENTS that REFER OR RELATE to OR which YOU believe

25   support YOUR allegation in paragraph 14 of YOUR COUNTERCLAIMS that "<u>in</u>

26   <u>response to DCI's [Detective Comics, Inc.'s] instruction ....and subject to DCI's</u>

27   <u>[Detective Comics, Inc.'s] right of control</u>, Siegel and Shuster created additional

28

74

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 160 of 321

1  materials to complete Action Comics No. 1." (Emphasis added.)

2  **Response:**

3    DC further objects to this request on the grounds that it is vague, ambiguous,
4  overbroad, burdensome, and oppressive. Subject to and without waiving the
5  foregoing objections, DC will produce all non-privileged responsive items
6  consistent with its understanding of this request upon which defendants and
7  counterclaimant will rely at trial.

8  **Request No. 276:**

9    ALL DOCUMENTS RELATING to YOUR contention that DC's
10  predecessor(s) was the source of Jerome Siegel's instrumentalities and tools used in
11  the creation of "Superboy."

12  **Response:**

13    DC further objects to this request on the grounds that it is vague, ambiguous,
14  overbroad, burdensome, and oppressive. Subject to and without waiving the
15  foregoing objections, Defendants will produce non-privileged responsive items
16  consistent with their understanding of this request.

17  **Request No. 277:**

18    ALL DOCUMENTS RELATING to YOUR contention that DETECTIVE
19  was the source of Jerome Siegel's and Joseph Shuster's instrumentalities and tools
20  in creating "Superman."

21  **Response:**

22    DC further objects to this request on the grounds that it is vague, ambiguous,
23  overbroad, burdensome, and oppressive. Subject to and without waiving the
24  foregoing objections, Defendants will produce non-privileged responsive items
25  consistent with their understanding of this request.

26  **Request No. 278:**

27    ALL DOCUMENTS RELATING to YOUR contention that DETECTIVE

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 161 of 321

1  provided the workspace where Jerome Siegel OR Joseph Shuster created

2  SUPERMAN stories and comic books.

3  **Response:**

4  DC further objects to this request on the grounds that it is vague, ambiguous,

5  overbroad, burdensome, and oppressive. Subject to and without waiving the

6  foregoing objections, Defendants will produce non-privileged responsive items

7  consistent with their understanding of this request.

8  **Request No. 279:**

9  ALL DOCUMENTS RELATING to YOUR contention that DC's

10  predecessor(s) provided the workspace where Jerome Siegel created "Superboy."

11  **Response:**

12  DC further objects to this request on the grounds that it is vague, ambiguous,

13  overbroad, burdensome, and oppressive. Subject to and without waiving the

14  foregoing objections, Defendants will produce non-privileged responsive items

15  consistent with their understanding of this request.

16  **Request No. 280:**

17  ALL DOCUMENTS RELATING to DETECTIVE having the right to assign

18  projects to Jerome Siegel AND Joseph Shuster to work on at the time Jerome Siegel

19  and Joseph Shuster created "Superman."

20  **Response:**

21  DC further objects to this request on the grounds that it is vague, ambiguous,

22  overbroad, burdensome, and oppressive. Subject to and without waiving the

23  foregoing objections, Defendants will produce non-privileged responsive items

24  consistent with their understanding of this request.

25  **Request No. 281:**

26  ALL DOCUMENTS RELATING to DC's predecessor(s) having the right to

27  assign projects to Jerome Siegel to work on at the time Jerome Siegel created

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 162 of 321

1   "Superboy,"

2   **Response:**

3      DC further objects to this request on the grounds that it is vague, ambiguous,

4   overbroad, burdensome, and oppressive. Subject to and without waiving the

5   foregoing objections, Defendants will produce non-privileged responsive items

6   consistent with their understanding of this request.

7   **Request No. 282:**

8      ALL DOCUMENTS RELATING to DETECTIVE having the discretion to

9   determine when AND for how long Jerome Siegel AND Joseph Shuster worked on

10   "Superman" comic books.

11   **Response:**

12      DC further objects to this request on the grounds that it is vague, ambiguous,

13   overbroad, burdensome, and oppressive. Subject to and without waiving the

14   foregoing objections, Defendants will produce non-privileged responsive items

15   consistent with their understanding of this request.

16   **Request No. 283:**

17      ALL DOCUMENTS RELATING to how AND when Jerome Siegel AND

18   Joseph Shuster were paid for their work REGARDING SUPERMAN by

19   DETECTIVE.

20   **Response:**

21      DC further objects to this request on the grounds that it is vague, ambiguous,

22   overbroad, burdensome, and oppressive. Subject to and without waiving the

23   foregoing objections, Defendants will produce non-privileged responsive items

24   consistent with their understanding of this request.

25   **Request No. 284:**

26      ALL DOCUMENTS RELATING to how AND when Jerome Siegel AND

27   Joseph Shuster were paid for their work REGARDING SUPERBOY by DC's

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 163 of 321

1  predecessor(s).

2  **Response:**

3      DC further objects to this request on the grounds that it is vague, ambiguous,

4  overbroad, burdensome, and oppressive. Subject to and without waiving the

5  foregoing objections, Defendants will produce non-privileged responsive items

6  consistent with their understanding of this request.

7  **Request No. 285:**

8      ALL DOCUMENTS RELATING to DETECTIVE employing ANY persons

9  who worked for Jerome Siegel OR Joseph Shuster REGARDING SUPERMAN OR

10  SUPERBOY.

11  **Response:**

12      DC further objects to this request on the grounds that it is vague, ambiguous,

13  overbroad, burdensome, and oppressive. Subject to and without waiving the

14  foregoing objections, Defendants will produce non-privileged responsive items

15  consistent with their understanding of this request.

16  **Request No. 286:**

17      ALL DOCUMENTS RELATING to DETECTIVE paying ANY person who

18  worked for Jerome Siegel OR Joseph Shuster REGARDING SUPERMAN OR

19  SUPERBOY.

20  **Response:**

21      DC further objects to this request on the grounds that it is vague, ambiguous,

22  overbroad, burdensome, and oppressive. Subject to and without waiving the

23  foregoing objections, Defendants will produce non-privileged responsive items

24  consistent with their understanding of this request.

25  **Request No. 287:**

26      ALL DOCUMENTS RELATING to DETECTIVE providing employee

27  benefits to ANY person who worked for Jerome Siegel OR Joseph Shuster

28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page-164 of 321

1  REGARDING SUPERMAN OR SUPERBOY.

2  **Response:**

3      DC further objects to this request on the grounds that it is vague, ambiguous,

4  overbroad, burdensome, and oppressive.  Subject to and without waiving the

5  foregoing objections, Defendants will produce non-privileged responsive items

6  consistent with their understanding of this request.

7  **Request No. 288:**

8      ALL DOCUMENTS RELATING to DETECTIVE providing employee

9  benefits to Jerome Siegel AND Joseph Shuster during the time period Jerome Siegel

10  AND Joseph Shuster worked on SUPERMAN OR SUPERBOY.

11  **Response:**

12      DC further objects to this request on the grounds that it is vague, ambiguous,

13  overbroad, burdensome, and oppressive, and to the extent it would require

14  Defendants to create a document.  Subject to and without waiving the foregoing

15  objections, Defendants will produce non-privileged responsive items consistent with

16  their understanding of this request.

17  **Request No. 289:**

18      ALL DOCUMENTS RELATING to DETECTIVE paying employee taxes

19  RELATING TO Jerome Siegel AND Joseph Shuster during the time period Jerome

20  Siegel AND Joseph Shuster worked on SUPERMAN OR SUPERBOY.

21  **Response:**

22      DC further objects to this request on the grounds that it is vague, ambiguous,

23  overbroad, burdensome, and oppressive.  Subject to and without waiving the

24  foregoing objections, Defendants will produce non-privileged responsive items

25  consistent with their understanding of this request.

26  **Request No. 290:**

27      ALL DOCUMENTS RELATING to DETECTIVE paying employee taxes

28

PLAINTIFFS' MOTION TO COMPEL          **107**

ER 2451

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 165 of 321

1  RELATING TO ANY person working for Jerome Siegel AND Joseph Shuster
2  REGARDING SUPERMAN OR SUPERBOY.

3  **Response:**

4      DC further objects to this request on the grounds that it is vague, ambiguous,
5  overbroad, burdensome, and oppressive. Subject to and without waiving the
6  foregoing objections, Defendants will produce non-privileged responsive items
7  consistent with their understanding of this request.

8  **Request No. 291:**

9      ALL DOCUMENTS RELATING to DETECTIVE treating OR identifying
10  Jerome Siegel AND Joseph Shuster (OR monies paid to Jerome Siegel AND Joseph
11  Shuster) on DETECTIVE'S Federal and State Income Tax Returns during the time
12  period Jerome Siegel AND Joseph Shuster worked on SUPERMAN.

13  **Response:**

14      DC further objects to this request on the grounds that it is vague, ambiguous,
15  overbroad, burdensome, and oppressive. Subject to and without waiving the
16  foregoing objections, Defendants will produce non-privileged responsive items
17  consistent with their understanding of this request.

18  **Request No. 292:**

19      ALL DOCUMENTS RELATING to DETECTIVE treating OR identifying
20  Jerome Siegel AND Joseph Shuster (OR monies paid to Jerome Siegel AND Joseph
21  Shuster) on DETECTIVE'S Federal and State Income Tax Returns during the time
22  period Jerome Siegel AND Joseph Shuster worked on SUPERBOY.

23  **Response:**

24      DC further objects to this request on the grounds that it is vague, ambiguous,
25  overbroad, burdensome, and oppressive. Subject to and without waiving the
26  foregoing objections, Defendants will produce non-privileged responsive items
27  consistent with their understanding of this request.

28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 166 of 321

**Request No. 293:**

ALL DOCUMENTS RELATING to how DC's predecessor(s) treated OR identified Jerome Siegel AND Joseph Shuster with respect OR REGARDING ANY unions, collective bargaining associations OR collective bargaining AGREEMENTS.

**Response:**

DC further objects to this request on the grounds that it is vague, ambiguous, overbroad, burdensome, and oppressive. Subject to and without waiving the foregoing objections, Defendants will produce non-privileged responsive items consistent with their understanding of this request.

**Request No. 294:**

Documents sufficient to demonstrate OR determine that DC licenses SUPERMAN from DC's offices in the United States.

**Response:**

DC further objects to this request on the grounds that it is vague, ambiguous, overbroad, burdensome, and oppressive, and to the extent it would require Defendants to create a document. Subject to, and without waiving the foregoing objections, to the extent responsive items exist, they will be produced by Defendants WBEI and/or WBTV.

      b.   **Documents Regarding The Creation And Development Of _Smallville_ Are Relevant And Must Be Produced**

As noted above, DC has taken the unlikely position that "Smallville" has nothing to do with Siegel's "Superboy," and that the development of "Smallville" never involved Siegel's "Superboy" or any "succeeding Superboy comic or Superboy work exploited by DC Comics and/or its predecessors," even though the series is explicitly named after "Superboy's" hometown. (Toberoff Decl., Ex. R ¶ 130.) Plaintiffs' **Request Nos. 114-126 (Second Set)** thus targeted documents

81

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 167 of 321

1  demonstrating the connection between "Superboy" and "Smallville."

2  However, DC produced few, if any, documents regarding DC's input in the
3  creation and development of "Smallville." Whereas relevant "Smallville" pilot
4  drafts and storyboards where produced by third party witnesses pursuant to
5  subpoenas, DC for the most part also failed to produce documents, including
6  correspondence, evidencing the underlying comic book materials furnished by it and
7  used in conceiving "Smallville." Plaintiffs' Request Nos. 114-118 cover precisely
8  such important documents.

9  Despite the obvious relevance of the documents sought by Plaintiffs, DC has
10  produced a small portion of the documents requested. Accordingly, Plaintiffs
11  respectfully request that Defendants be ordered to produce documents responsive to
12  the following Request Nos. 114-126 (Second Set). To the extent Defendants argue
13  or imply that all documents responsive to any Request have been produced, they
14  must unequivocally represent this without open-ended qualifiers such as "consistent
15  with [DC's] understanding of this request."

16  **Request No. 114**

17  ALL COMMUNICATIONS AND ANY other DOCUMENTS RELATING
18  TO the concept "pitch" which led to the development and production of
19  SMALLVILLE.

20  **Response**

21  DC further objects to this request on the grounds that it is vague, ambiguous,
22  overbroad, burdensome, oppressive, and seeks the production of confidential and/or
23  proprietary information. Subject to and without waiving the foregoing objections,
24  DC will produce non-privileged documents sufficient to show its gross revenues and
25  expenses related to exploitation of works related to Smallville created after
26  November 17, 2004.

27  **Request No. 115**

28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 168 of 321

1  ALL literary material RELATING TO the pilot episode of SMALLVILLE,
2  including but not limited to ALL outlines, treatments and teleplay drafts
3  REGARDING the pilot teleplay.
4  **Response**
5  DC further objects to this request on the grounds that it is vague, ambiguous,
6  overbroad, burdensome, oppressive, and seeks the production of confidential and/or
7  proprietary information. Subject to and without waiving the foregoing objections,
8  DC will produce non-privileged documents responsive to this Request.
9  **Request No. 116**
10  ALL DOCUMENTS RELATING TO the development of the pilot teleplay
11  for SMALLVILLE, including ALL notes and comments.
12  **Response**
13  DC further objects to this request on the grounds that it is vague, ambiguous,
14  overbroad, burdensome, oppressive, and seeks the production of confidential and/or
15  proprietary information. Subject to and without waiving the foregoing objections,
16  DC will produce non-privileged documents responsive to this Request.
17  **Request No. 117**
18  ALL DOCUMENTS RELATING TO the origins AND evolution of the basic
19  concept OR format for SMALLVILLE.
20  **Response**
21  DC further objects to this request on the grounds that it is vague, ambiguous,
22  overbroad, burdensome, oppressive, and seeks the production of confidential and/or
23  proprietary information. Subject to and without waiving the foregoing objections,
24  DC will produce non-privileged documents responsive to this Request.
25  **Request No. 118**
26  ALL DOCUMENTS REFERRING OR RELATING TO both SMALLVILLE
27  and SUPERBOY.
28

PLAINTIFFS' MOTION TO COMPEL        111

ER 2455

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 169 of 321

**Response**

    DC further objects to this request on the grounds that it is vague, ambiguous, overbroad, burdensome, oppressive, and seeks the production of confidential and/or proprietary information. Subject to and without waiving the foregoing objections, DC will produce non-privileged documents responsive to this Request.

**Request No. 119**

    ALL DOCUMENTS REFERRING OR RELATING TO both SMALLVILLE and PLAINTIFFS.

**Response**

    DC further objects to this request on the grounds that it is vague, ambiguous, overbroad, burdensome, oppressive, and seeks the production of confidential and/or proprietary information. Subject to and without waiving the foregoing objections, DC will produce non-privileged documents responsive to this Request.

**Request No. 120**

    ALL COMMUNICATIONS to or from PETER ROTH REGARDING SUPERBOY OR ANY SUPERBOY DERIVATIVE WORK.

**Response**

    DC further objects to this request on the grounds that it is vague, ambiguous, overbroad, burdensome, oppressive, seeks the production of confidential and/or proprietary information, and violates the privacy rights of persons who are not parties to this action. Subject to and without waiving the foregoing objections, DC will produce non-privileged documents responsive to this Request that relate to Superboy works or Superboy derivative works after November 17, 2004.

**Request No. 121**

    ALL COMMUNICATIONS to or from WBTV from 1998 to the present REGARDING SUPERBOY OR ANY SUPERBOY DERIVATIVE WORK.

**Response**

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 170 of 321

1   DC further objects to this request on the grounds that it is vague, ambiguous,
2   overbroad, burdensome, oppressive, seeks the production of confidential and/or
3   proprietary information, and violates the privacy rights of persons who are not
4   parties to this action. Subject to and without waiving the foregoing objections, DC
5   will produce non-privileged documents responsive to this Request that relate to
6   Superboy works or Superboy derivative works after November 17, 2004.

7   **Request No. 122**

8       ALL COMMUNICATIONS to or from BRYAN SINGER REGARDING
9   SUPERMAN OR ANY SUPERMAN DERIVATIVE WORK OR SUPERBOY OR
10  ANY SUPERBOY DERIVATIVE WORK.

11  **Response**

12      DC further objects to this request on the grounds that it is vague, ambiguous,
13  overbroad, burdensome, oppressive, seeks the production of confidential and/or
14  proprietary information, and violates the privacy rights of persons who are not
15  parties to this action. Subject to and without waiving the foregoing objections, DC
16  will produce non-privileged documents responsive to this Request that relate to
17  Superboy works or Superboy derivative works after November 17, 2004.

18  **Request No. 123**

19      ALL COMMUNICATIONS to or from BRIAN ROBBINS REGARDING
20  SUPERBOY OR ANY SUPERBOY DERIVATIVE WORK.

21  **Response**

22      DC further objects to this request on the grounds that it is vague, ambiguous,
23  overbroad, burdensome, oppressive, seeks the production of confidential and/or
24  proprietary information, and violates the privacy rights of persons who are not
25  parties to this action. Subject to and without waiving the foregoing objections, DC
26  will produce non-privileged documents responsive to this Request that relate to
27  Superboy works or Superboy derivative works after November 17, 2004.

28

PLAINTIFFS' MOTION TO COMPEL

**113**

ER 2457

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 171 of 321

1 **Request No. 124**

2     ALL COMMUNICATIONS to or from MIKE TOLLINS REGARDING

3 SUPERBOY OR ANY SUPERBOY DERIVATIVE WORK.

4 **Response**

5     DC further objects to this request on the grounds that it is vague,

6 ambiguous, overbroad, burdensome, oppressive, seeks the production of confidential

7 and/or proprietary information, and violates the privacy rights of persons who are

8 not parties to this action.  Subject to and without waiving the foregoing objections,

9 DC will produce non-privileged documents to this Request that relate to Superboy

10 works or Superboy derivative works after November 17, 2004.

11 **Request No. 125**

12     ALL COMMUNICATIONS to or from ALFRED GOUGH REGARDING

13 SUPERBOY OR ANY SUPERBOY DERIVATIVE WORK.

14 **Response**

15     DC further objects to this request on the grounds that it is vague, ambiguous,

16 overbroad, burdensome, and oppressive.  Subject to and without waiving the

17 foregoing objections, DC will produce non-privileged documents responsive to this

18 Request that relate to Superboy works or Superboy derivative works after November

19 17, 2004.

20 **Request No. 126**

21     ALL COMMUNICATIONS to or from MILES MILLAR REGARDING

22 SUPERBOY OR ANY SUPERBOY DERIVATIVE WORK.

23 **Response**

24     DC further objects to this request on the grounds that it is vague, ambiguous,

25 overbroad, burdensome, oppressive, seeks the production of confidential and/or

26 proprietary information, and violates the privacy rights of persons who are not

27 parties to this action.  Subject to and without waiving the foregoing objections, DC

28

PLAINTIFFS' MOTION TO COMPEL

**114**

ER 2458

1 will produce non-privileged documents responsive to this Request that relate to
2 Superboy works or Superboy derivative works after November 17, 2004.

      **c.**     **DC Should Be Compelled To Produce Documents Regarding The Extent Of Its Exploitation Of "Superman" / "Superboy" Within The United States**

6       Defendants have claimed that they need not account to Plaintiffs for profits
7 derived from the exploitation of "Superman" and "Superboy" outside of the United
8 States due to alleged extraterritorial limitations of United States copyright laws.
9 (Defendant DC's First Amended Counterclaims, ¶ 137, Toberoff Decl., Ex. R.)
10 Plaintiffs have claimed that if Defendants' revenues from exploitations outside the
11 United States stem from an exploitation of any of the rights in the subject
12 "Superman" and "Superboy" copyrights within the United States, such profits must
13 still be accounted for. (Plaintiffs' "Superman" Complaint, ¶ 58, Toberoff Decl., Ex.
14 K.) *See* 17 U.S.C. § 106 (copyright owner has "the exclusive rights to do and to
15 authorize" activities listed in § 106(1)-(5)); *Curb v. MCA Records, Inc.*, 898 F.
16 Supp. 586, 595 (M.D.Tenn. 1995); *Expediters Int'l v. Direct Line Cargo Mgmt.*
17 *Servs.*, 995 F. Supp. 468, 477 (D.N.J. 1998); 1-6 *Nimmer on Copyright* §§ 6.10,
18 6.12.)

19       Accordingly, the location where Defendants have exploited rights under the
20 "Superman" and "Superboy" copyrights since the respective Termination dates is
21 very relevant. Although, Defendants answered the Requests relating to this issue by
22 stating they would produce all responsive documents, they do not appear to have
23 done so. Therefore Plaintiffs respectfully request that Defendants be ordered to
24 produce documents responsive to the following **Request Nos. 39 (First Set); 265-**
25 **272 and 294 (Fourth Set).** In those instances where Defendants argue that all
26 documents responsive to a Request have been produced, they must unequivocally
27 represent this without open-ended qualifiers such as "consistent with [DC's]
28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 172 of 321

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 173 of 321

1  understanding of this request."

2  **Request No. 39:**

3      ALL DOCUMENTS that REFER OR RELATE to the location where ANY

4  work derived from SUPERMAN has or will be produced, reproduced OR copied on

5  or after April 16, 1999.

6  **Response:**

7      DC further objects to this request on the grounds that it is vague, ambiguous,

8  overbroad, burdensome, oppressive, may violate the privacy rights of persons who

9  are not parties to this action, and seeks documents not likely to lead to the discovery

10  of admissible evidence.

11  **Request No. 265:**

12      DOCUMENTS sufficient to demonstrate OR determine that WARNER

13  licenses SUPERMAN from WARNER'S offices in the United States.

14  **Response:**

15      DC further objects to this request on the grounds that it is vague, ambiguous,

16  overbroad, burdensome, and oppressive, and to the extent it would require

17  Defendants to create a document.  Subject to, and without waiving the foregoing

18  objections, to the extent responsive items exist, they will be produced by Defendants

19  WBEI and/or WBTV.

20  **Request No. 266:**

21      DOCUMENTS sufficient to demonstrate or determine that DC publishes

22  SUPERMAN from DC's offices in the United States.

23  **Response:**

24      DC further objects to this request on the grounds that it is vague, ambiguous,

25  overbroad, burdensome, and oppressive, and to the extent it would require

26  Defendants to create a document.  Subject to and without waiving the foregoing

27  objections, Defendants will produce non-privileged responsive items consistent with

28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 174 of 321

1  their understanding of this request.

2  **Request No. 267:**

3    DOCUMENTS sufficient to demonstrate OR determine what approximate

4  percentage of ALL SUPERMAN publications are manufactured and copied in the

5  United States.

6  **Response:**

7    DC further objects to this request on the grounds that it is vague, ambiguous,

8  overbroad, burdensome, and oppressive, and to the extent it would require

9  Defendants to create a document. Subject to and without waiving the foregoing

10  objections, Defendants will produce non-privileged responsive items consistent with

11  their understanding of this request.

12  **Request No. 268:**

13    DOCUMENTS sufficient to demonstrate OR determine what approximate

14  percentage of ALL SUPERMAN FILM prints are manufactured and copied in the

15  United States.

16  **Response:**

17    DC further objects to this request on the grounds that it is vague, ambiguous,

18  overbroad, burdensome, and oppressive, and to the extent it would require

19  Defendants to create a document. Subject to and without waiving the foregoing

20  objections, to the extent responsive items exist, they will be produced by Defendants

21  WBEI and/or WBTV.

22  **Request No. 269:**

23    DOCUMENTS sufficient to demonstrate OR determine what approximate

24  percentage of ALL DVDs of the SUPERMAN FILM (authorized by WARNER) are

25  copied OR manufactured in the United States.

26  **Response:**

27    DC further objects to this request on the grounds that it is vague, ambiguous,

28

PLAINTIFFS' MOTION TO COMPEL

ER 2461

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 175 of 321

1  overbroad, burdensome, and oppressive, and to the extent it would require
2  Defendants to create a document. Subject to and without waiving the foregoing
3  objections, to the extent responsive items exist, they will be produced by Defendants
4  WBEI and/or WBTV.

5  **Request No. 270:**

6      DOCUMENTS sufficient to demonstrate OR determine what approximate
7  percentage of ALL CDs containing the SUPERMAN FILM soundtrack (authorized
8  by WARNER) are copied OR manufactured in the United States.

9  **Response:**

10     DC further objects to this request on the grounds that it is vague, ambiguous,
11  overbroad, burdensome, and oppressive, and to the extent it would require
12  Defendants to create a document. Subject to and without waiving the foregoing
13  objections, to the extent responsive items exist, they will be produced by Defendants
14  WBEI and/or WBTV.

15  **Request No. 271:**

16     DOCUMENTS sufficient to demonstrate OR determine what approximate
17  percentage of ALL SUPERMAN FILM copies that are used for television
18  broadcasts in Foreign Territories have been copied OR manufactured in the United
19  States.

20  **Response:**

21     DC further objects to this request on the grounds that it is vague, ambiguous,
22  overbroad, burdensome, and oppressive, and to the extent it would require
23  Defendants to create a document. Subject to and without waiving the foregoing
24  objections, to the extent responsive items exist, they will be produced by Defendants
25  WBEI and/or WBTV.

26  **Request No. 272:**

27     DOCUMENTS sufficient to demonstrate OR determine what approximate

28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 176 of 321

1  percentage of ALL Internet exploitations of SUPERMAN (authorized by ANY of
2  the DEFENDANTS) originated from OR were produced in the United States.

3  **Response:**

4      DC further objects to this request on the grounds that it is vague, ambiguous,
5  overbroad, burdensome, and oppressive, and to the extent it would require
6  Defendants to create a document.

7  **Request No. 294:**

8      DOCUMENTS sufficient to demonstrate OR determine that DC licenses
9  SUPERMAN from DC's offices in the United States.

10 **Response:**

11     DC further objects to this request on the grounds that it is vague, ambiguous,
12 overbroad, burdensome, and oppressive, and to the extent it would require
13 Defendants to create a document.  Subject to, and without waiving the foregoing
14 objections, to the extent responsive items exist, they will be produced by Defendants
15 WBEI and/or WBTV.

16      **7.    DC Should Be Compelled To Produce Documents Pertaining**
17            **To Their Negotiations With Warner Bros.  Regarding**
18            **"Superman" And "Superboy"**

19      Plaintiffs' Requests have sought documents related to negotiations between
20 DC and Warner Bros., which are within the same Time-Warner family, because
21 such documents are relevant to the allegations in Plaintiffs' complaint that DC's sale
22 of "Superman" and "Superboy" rights to its corporate cousin, Warner Bros., were
23 not at arms-length.  *See* Plaintiffs' "Superman" Complaint, ¶¶ 12-13 (Toberoff Decl.
24 Ex. K.)  At a minimum, three basic agreements are at issue: (1) an agreement dated
25 November 6, 1999 between DC and Warner Bros. providing for the sale to Warner
26 Bros. of exclusive motion picture rights to the "Superman" mythology (the "Film
27 Agreement"); (2) an agreement dated December 5, 2000 between DC and WBTV

28

PLAINTIFFS' MOTION TO COMPEL

119 ER 2463

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 177 of 321

providing for the sale to WBTV of exclusive television rights to the "Superman" mythology (the "TV Agreement"), and (3) an overall agreement between DC and Warner Consumer Products regarding the licensing of DC's characters for merchandising (the "Merchandising Agreement"). (*See* Defendant DC's First Amended Counterclaims, ¶¶ 54.)

Unfortunately, DC has responded to document Requests regarding Defendants' intra-corporate negotiations by either agreeing to produce requested documents *except those related to negotiations* (*see* DC's Response to Request No. 33) or by simply refusing to produce any responsive documents based on purported confidentiality (*see* DC's Response to Request No. 46) and failed to amend their responses in light of the parties' stipulated Protective Order. (Toberoff Decl., Ex. P.)

Whereas, DC produced some drafts of the Film Agreement, it failed, true to its improper responses, to produce all correspondence and notes relating to the negotiation of such agreement. DC's production with respect to the TV Agreement and Merchandising Agreement was even more spotty, consisting mainly of the final agreements and little or no documents reflecting the negotiation of such agreements. Accordingly, Plaintiffs respectfully request that Defendants be ordered to produce documents responsive to the following **Request Nos. 33, 41, 45-46 (1st Set)**. To the extent Defendants argue or imply that all documents responsive to any Request have been produced, they must unequivocally represent this without open-ended qualifiers such as "consistent with [DC's] understanding of this request."

**Request No. 33:**

ALL DOCUMENTS that REFER OR RELATE to ANY NEGOTIATIONS, TRANSACTIONS OR AGREEMENTS between DC and WARNER OR TIME WARNER REGARDING SUPERMAN.

**Response:**

1     DC further objects to this request on the grounds that it is vague, ambiguous,

2 overbroad, burdensome, and oppressive. Subject to and without waiving the

3 foregoing objections, DC will produce all agreements between DC and Warner or

4 Time Warner regarding Superman and payment histories concerning same.

5 **Request No. 41:**

6     ALL DOCUMENTS that REFER OR RELATE to ANY transfer, sale,

7 license, or assignment of any right(s) OR interest(s) in SUPERMAN in the last ten

8 years.

9 **Response:**

10     DC further objects to this request on the grounds that it is vague, ambiguous,

11 overbroad, burdensome, and oppressive. Subject to and without waiving the

12 foregoing objections, DC will produce copies of all agreements concerning the

13 exploitation of Superman, with the exception of talent agreements, in the last ten

14 years, documents sufficient to show payment histories concerning same, samples of

15 its current form work-for-hire agreements for publications, and documents sufficient

16 to show publishing royalties related to Superman paid in the last ten years.

17 **Request No. 45:**

18     ALL AGREEMENTS OR TRANSACTIONS pursuant to which DC OR

19 WARNER is obligated to pay ANY percentage of ANY revenues OR profits to

20 ANY PERSON REGARDING SUPERMAN.

21 **Response:**

22     DC further objects to this request on the grounds that it is vague, ambiguous,

23 overbroad, burdensome, and oppressive. Subject to and without waiving the

24 foregoing objections, DC will produce copies of all agreements pursuant to which

25 DC is obligated to pay any percentage of revenues or profits from any exploitation

26 of Superman, with the exception of talent agreements, in the last 10 years,

27 documents sufficient to show payment histories concerning same, samples of its

28

PLAINTIFFS' MOTION TO COMPEL

ER 2465

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 178 of 321

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 179 of 321

1 current form work-for-hire agreements for publications and documents sufficient to

2 show publishing royalties related to Superman paid in the last ten years.

3 **Request No. 46**

4     ALL DOCUMENTS RELATING TO the NEGOTIATION of each

5 AGREEMENT OR TRANSACTION responsive to PLAINTIFFS' Request For

6 Production No. 45.

7 **Response:**

8     DC further objects to this request on the grounds that it is vague, ambiguous,

9 overbroad, burdensome, oppressive, and seeks the production of confidential and/or

10 proprietary information.

11     **8.   DC Should Be Compelled To Produce Documents Responsive**

12        **To Additionally Relevant Requests**

13     DC improperly responded to and/or failed to produce documents responsive

14 to a number of other Requests seeking information relevant to these cases. Each

15 such Request is listed below, followed by DC's Response and the reasons DC

16 should be compelled to produce responsive documents in its possession or control.

17 **Request No. 42:**

18     ALL DOCUMENTS that REFER OR RELATE to ANY claim or dispute

19 whatsoever in which ANY of the DEFENDANTS have been involved, whether as a

20 party or otherwise RELATING TO SUPERMAN.

21 **Response:**

22     DC further objects to this request on the grounds that it is vague, ambiguous,

23 overbroad, burdensome, and oppressive. Subject to and without waiving the

24 foregoing objections, DC will produce all non-privileged responsive items

25 consistent with its understanding of this request to the extent they relate to Jerome

26 Siegel and/or Joseph Shuster.

27 **Reason To Compel**

28

PLAINTIFFS' MOTION TO COMPEL

  ER 2466

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 180 of 321

1    Defendants improperly limited their production to documents regarding
2    disputes "to the extent they relate to Jerome Siegel and/or Joseph Shuster."
3    Plaintiffs are entitled to the documents requested without Defendants' narrowing
4    limitation, as the positions taken by Defendants or information supplied in prior
5    disputes or litigations involving "Superman" may be very illuminating, or even
6    constitute admissions, as to the many issues involved in this case (e.g., the
7    circumstances of "Superman's" and "Superboy's" creation, "work-for-hire" issues,
8    and the origins of the derivative television series' "Smallville" etc.). (*See* Defendant
9    DC's First Amended Counterclaims, ¶¶ 10-12, 14-15, 59-64, 81-85, 129-131,
10   Toberoff Decl., Ex. R; Plaintiffs' "Superboy" Complaint, ¶¶ 21-22, 31-32, 43-45,
11   115, *Id.*, Ex. L).  The scope of discovery as defined FRCP 26(b)(1) ("reasonably
12   calculated to lead to the discovery of admissible evidence") is sufficiently broad to
13   permit this Request. *See Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir.
14   1995)("The Federal Rules of Civil Procedure creates a 'broad right of discovery'
15   because 'wide access to relevant facts serves the integrity and fairness of the judicial
16   process by promoting the search for the truth.'"); *Oakes v. Havorsen Marine Ltd.*,
17   179 F.R.D. 281, 283 (C.D. Cal. 1998)("the scope of permissible discovery…extends
18   to all information as to which any possibility exists that it may be relevant to the
19   subject matter of the action").

20   **Request No. 122**

21        ALL COMMUNICATIONS to or from BRYAN SINGER REGARDING
22   SUPERMAN OR ANY SUPERMAN DERIVATIVE WORK OR SUPERBOY OR
23   ANY SUPERBOY DERIVATIVE WORK.

24   **Response**

25        DC further objects to this request on the grounds that it is vague, ambiguous,
26   overbroad, burdensome, oppressive, seeks the production of confidential and/or
27   proprietary information, and violates the privacy rights of persons who are not
28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 181 of 321

1 parties to this action. Subject to and without waiving the foregoing objections, DC
2 will produce non-privileged documents responsive to this Request that relate to
3 Superboy works or Superboy derivative works after November 17, 2004.

4 **Reason To Compel**

5   Bryan Singer directed and is closely associated with Warner Bros.' 2006
6 feature film, "Superman Returns," the profits from which are derived from the
7 original "Superman" copyrights (e.g., the copyright to Action Comics No. 1, the
8 first "Superman" comic book) and subject to Defendants' duty to account to
9 Plaintiff as the co-owner of such copyrights. (*See* Plaintiffs' "Superman"
10 Complaint, Toberoff Decl., Ex. K, ¶ 73.) To reduce, the amount of profits for which
11 Defendants are accountable, they have argued that the original "Superman"
12 works/copyrights played a small part in "Superman Returns" and on this basis that
13 profits should be drastically apportioned in their favor. (*See* Defendant DC's First
14 Amended Counterclaims, Toberoff Decl., Ex. R, ¶¶ 31-34, 137.)

15   Because Mr. Singer is in many respects a driving creative force behind
16 "Superman Returns" Plaintiffs requested all COMMUNICATIONS between him
17 and DC regarding "Superman" and "Superboy" to investigate what comics or other
18 material influenced him in the creation of "Superman Returns" (e.g., whether he
19 requested or DC furnished him with a copy of Action Comics No. 1 or other early
20 "Superman" comics, co-owned by Plaintiffs). DC improperly responded by refusing
21 to produce any communications relating to "Superman," while offering to produce
22 documents relating only to "Superboy" (probably because none exist).

23   DC's objections are without merit. It is well settled that DC's "[b]oilerplate,
24 generalized objections are inadequate and tantamount to not making any objection at
25 all." *Walker*, 186 F.R.D. at 587; *Collins*, 2003 U.S. Dist. LEXIS 8455, at *5 ("Bare
26 assertions that the discovery requested is overly broad, burdensome, oppressive or
27 irrelevant are ordinarily insufficient, standing alone, to bar production."). Further,

28

PLAINTIFFS' MOTION TO COMPEL

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 182 of 321

1 DC's objection that the requested documents seek private, "confidential and/or

2 proprietary information" is without merit as the parties have long ago stipulated to a

3 protective order entered by the Court. (Toberoff Decl., Ex. P.)

4 **Request No. 71**:

5      ALL DOCUMENTS that REFER OR RELATE to OR which YOU believe

6 support YOUR allegations in paragraph 13 of YOUR COUNTERCLAIMS that

7 Detective Comics, Inc. "advertised the publication of the new comic story Superman

8 and the new title 'Action Comics No.1' in others of its publications, including but

9 not limited to, 'More Fun Comics No. 31,' 'Detective Comics No. 15,' 'New

10 Adventure Comics No. 26,' all of which are cover dated May 1938 and, upon

11 information and belief, were distributed in copies to the public on or before April 1,

12 1938."

13 **Response:**

14      DC further objects to this request on the grounds that it is vague, ambiguous,

15 overbroad, burdensome, and oppressive. Subject to and without waiving the

16 foregoing objections, DC will produce all non-privileged responsive items

17 consistent with its understanding of this request upon which defendants and

18 counterclaimant will rely at trial.

19 **Reason To Compel**

20      Defendants have cited these ads in their Counterclaims as a purported defense

21 to Plaintiffs' "Superman" Termination, claiming they contained key "Superman"

22 elements and are outside the reach of the Termination due to their alleged dates of

23 publication. (Defendant DC's First Amended Counterclaims, ¶¶ 13, 109-113,

24 Toberoff Decl., Ex. R.) Whereas DC produced selected pages containing the ads

25 purportedly from More Fun Comics No. 31, and Detective Comics No. 15 they did

26 not produce and should have produced the ads in the context of the entire comic

27 book in which they are alleged to have appeared. DC also neglected to produce the

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 183 of 321

1   ads alleged in New Adventure Comics No. 26. DC also appears not to have
2   produced documents evidencing its key allegation that each of these three comic
3   books "were distributed in copies to the public on or before April 1, 1938." (*Id.*)

4   **9.   Plaintiffs Are Entitled To Reimbursement Of Their**
5   **Attorneys' Fees And Costs**

6   DC has willfully refused without justification to produce numerous requested
7   and *plainly relevant* documents crucial to Plaintiffs' claims and computation of
8   damages, including claims which call for an accounting and seek damages based on
9   Defendants' profits (revenues minus expenses) from the "Superman" and
10  "Superboy" properties. The need for such documents is abundantly clear.
11  Accordingly, the Federal Rules of Civil Procedure require that the party who
12  prevails on a motion to compel is entitled to its expenses, including reasonable
13  attorney fees, unless, as is not the case here, the losing party was substantially
14  justified. Fed. R. Civ. Proc. 37(a)(4). *See Schwarzer, Tashima, Wagstaffe,* Cal.
15  Prac. Guide: Fed. Civ. Proc. Before Trial § 11:1960 (Rutter 2006)("If a motion to
16  compel responses is filed, the court usually awards expenses, including attorney
17  fees, against the losing party..."); *Humphreys v. Regents of the Univ. of Cal.,* 2006
18  U.S. Dist. LEXIS 20148, *3-4 (N.D. Cal. 2006); *Shotwell v. Stevenson,* 2006 U.S.
19  Dist. LEXIS 93674, *9-10 (E.D. Cal. 2006).

20  **III.   PLAINTIFFS' CONCLUSION**

21  For the foregoing reasons, Plaintiffs respectfully request that the Court grant
22  its motion to compel, and order Defendants to produce documents responsive to
23  Plaintiffs' Request Nos. 4-8, 27-30, 33, 37, 39, 41-42, 44-51, 45-51, 62-63, 69-72
24  (First Set), 80-81, 84, 91, 96-113, 114-126, 127-145, 147-150, 154-158, 160-161,
25  163, 173-174, 176, 178-182, 187-191, 194-198, 200-201, 203, 212-214, 216-221,
26  223-225 (Second Set) and 265-272, 276-294 (Fourth Set). Plaintiffs further request
27  an order precluding Defendants from presenting any evidence or argument at trial
28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 184 of 321

1  based on documents they have failed to produce in response to Plaintiffs' reasonable

2  document Requests.   Plaintiffs further respectfully request that the Court award

3  sanctions in its favor, and against Defendants, in the amount of $ 6,400.

4

5  DATED:  April 23, 2007                LAW OFFICES OF MARC TOBEROFF, PLC
                                          Marc Toberoff
6                                         Nicholas C. Williamson

7

8  By: _____
        Marc Toberoff

9

10  Attorneys for Plaintiffs/Counterclaim-Defendants
    Joanne Siegel and Laura Siegel Larson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 185 of 321

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is: 2049 Century Park East, Suite 2720, Los Angeles, California 90067.

On April 23, 2007, I served the attached documents described as:

**Plaintiffs Joanne Siegel and Laura Siegel Larson's Notice of Motion and Motion to Compel Defendant DC Comics' Production of Documents**

**Plaintiffs' Memorandum of Points and Authorities in Support of Motion to Compel Defendant DC Comics' Production of Documents**

**Declaration of Marc Toberoff In Support of Plaintiffs' Motion to Compel Defendant DC Comics' Production of Documents**

as follows:

[X]  :BY HAND:

As follows: I delivered to the address listed above by hand the documents listed herein.

Michael Bergman
WEISSMAN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, CA 90212

[X]  :BY MAIL:

As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. I placed ____ the original  _X_  a true copy thereof enclosed in sealed envelope(s) addressed as follows:

James D. Weinberger
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, NY 10017

[X]  :BY FACSIMILE:

As follows: I caused the transmission of the above named documents to the fax number set forth below, or on the attached service list.

James D. Weinberger
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, NY 10017
Facsimile No. 212-813-5901

**128**

**ER 2472**

1     Patrick T. Perkins
2     PERKINS LAW OFFICE, P.C.
     1711 Route 9D
3     Cold Spring, NY 10516
     Facsimile No. 845-265-2819

4     Michael Bergman
     WEISSMAN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP
5     9665 Wilshire Boulevard, Ninth Floor
     Beverly Hills, CA 90212
6     Facsimile No. 310-550-7191

7     :(STATE) - I declare under penalty of perjury under the laws of the State of California that the
8 above is true and correct.

    [X] :(FEDERAL) – I declare that I am employed in the office of a member of the bar of this court at
9 whose direction the service was made.

10     I declare under penalty of perjury that the foregoing is true and correct.

11     EXECUTED on April 23, 2007, in Los Angeles, California.

12

13                               _____
14                               Nicholas C. Williamson

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**129** ER 2473

# EXHIBIT E

ER 2474

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 188 of 321

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

-- - - -

| | |
|---|---|
| JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> WARNER BROS. ENTERTAINMENT INC., a corporation; TIME WARNER INC., a corporation; DC COMICS, a general partnership; and DOES 1-10, <br><br> Defendants. <br> DC COMICS, <br><br> Counterclaimant, <br><br> vs. <br><br> JOANNE SIEGEL, an individual; andLAURA SIEGEL LARSON, an individual, <br><br> Counterclaim <br> Defendants. | Civil Case No. 04-8840 (RXz) <br> & <br> 04-8776 (RXz) |

DEPOSITION OF PAUL LEVITZ

Los Angeles, California

Tuesday, November 7, 2006

Volume II: Pages 223 to 464

ATKINSON-BAKER, INC.
COURT REPORTERS
(800) 288-3376
www.depo.com

REPORTED BY: Sharon Campbell, CSR NO. 8643, RPR

FILE NO.: A009B58

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 189 of 321

1    MR. BERGMAN:  That's a wholly inappropriate

2 question to ask the witness at a deposition.  It's a

3 proper subject of an interrogatory.

4         I do instruct the witness not to answer.

5    MR. TOBEROFF:  I see.

6         Can you mark that question, please.

7    Q    If you can turn to page 27, paragraph 99.

8    A    (Witness complies.)

9    Q    If you go -- the second sentence starts:

10        "Specifically, and without limiting

11   the foregoing, DC Comics established a

12   reserve account of the monies due to

13 Plaintiff's/Counterclaim Defendants based upon

14   the Financial Terms."

15        And the financial terms are financial terms of

16 a purported agreement with the Siegels regarding their

17 termination interests.

18        Do you see that sentence?

19   A    I do.

20   Q    Okay.

21        To your knowledge, did DC establish such a

22 reserve account?

23   A    We did.

24   Q    Okay.  What bank is that -- does that

25 reserve -- when did you establish that reserve account?

1    MR. BERGMAN:  Objection.

2         Mischaracterizes the testimony of the witness.

3    Q    BY MR. TOBEROFF:  Anything else you did?

4    A    I would not be aware if there was anything else

5 physically done.

6    Q    How much money is in this, quote, reserve

7 account, end quote?

8    A    I'm not sure what the current balance is.

9    Q    Any idea?

10   A    I would estimate that it's to the order of

11 $20 million at this point.

12   Q    And when was the last time you checked that

13 balance?

14   A    I probably received some information on the

15 balance several months ago.

16   Q    Is this accrual done electronically?

17   MR. BERGMAN:  Objection.

18        Vague and ambiguous.

19   THE WITNESS:  I don't know how the physical

20 processes are done.  I mean, it would involve something

21 in computer technology somewhere along the way.

22   MR. TOBEROFF:  Okay.

23        Again, this is one of the areas where I find it

24 appalling that you have not produced these numbers to

25 us although they were requested under multiple

1 requests.

2          There's no reason not to have produced that

3 information, and I'd like it produced immediately.

4     MR. BERGMAN:  To begin with, if it was requested,

5 which I'm not sure of, and if it was not objected to,

6 you've had 20 months within which to complain about it,

7 Mr. Toberoff, and have not done so.

8     MR. TOBEROFF:  And that relieves you of your

9 responsibility to produce requested information; is

10 that correct?

11    MR. BERGMAN:  I'm not going to give you a course in

12 federal practice or the proper way to maintain

13 litigation.

14    MR. TOBEROFF:  I see.

15         I'd like to mark as Exhibit 22.

16        (Plaintiffs' Exhibit No. 22 was

17        marked for identification by the

18        reporter and is included herewith.)

19    THE WITNESS:  Uh-huh.

20    Q    BY MR. TOBEROFF:  Exhibit 22 says:  "June 9,

21 2006:  'Superman Returns' Press Junket, Roundtable

22 Interview with Paul Levitz (Head of DC Comics)"  It's

23 Bates No. 1895 to 1900.

24         Do you recall giving this interview on or about

25 June 9, 2006?

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 191 of 321

# EXHIBIT F

ORIGINAL SHIPPED   OCT 1 7 2006

CERTIFIED
COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOANNE SIEGEL and LAURA          )
SIEGEL LARSON,                   )
                                 )
        Plaintiffs,              )
                                 )
   vs.                           )      No. 04-8400 (RSWL)(RZx)
                                 )
WARNER BROS. ENTERTAINMENT )          -and-
INC., et al.,                    )
                                 )      No. 04-8776 (RSWL)(RZx)
        Defendants.              )
_____)
AND RELATED COUNTERCLAIMS.

DEPOSITION OF KEVIN S. MARKS

Beverly Hills, California

Saturday, October 7, 2006

Volume 1

Reported by:

DAVID S. COLEMAN

CSR No. 4613

U.S. LEGAL
Support

Certified Shorthand Reporters

15250 Ventura Boulevard, Suite 410
Sherman Oaks, CA 91403

800-993-4464 • Fax 800-984-4464
www.uslegalsupport.com

Los Angeles • Orange County • San Diego • Inland Empire • Ventura • San Jose • San Francisco • Sacrament

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 194 of 321

1          Deposition of KEVIN S. MARKS, taken on

2     behalf of Defendants and Counterclaimants,

3     at 9665 Wilshire Boulevard, 9th Floor, Beverly

4     Hills, California, beginning at 10:05 AM on

5     Saturday, October 7, 2006, before DAVID S.

6     COLEMAN, Certified Shorthand Reporter No. 4613.

7

8

9     APPEARANCES:

10

11    For Plaintiffs:

12         LAW OFFICES OF MARC TOBEROFF
           BY:  MARC TOBEROFF
13         Attorney at Law
           2049 Century Park East, Suite 2720
14         Los Angeles, California 90067
           310-246-3333
15

16    For Defendants and Counterclaimant:

17         WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL
           BY:  MICHAEL BERGMAN
18         Attorney at Law
           9665 Wilshire Boulevard, 9th Floor
19         Beverly Hills, California 90212
           310-858-7888
20         mbergman@wwllp.com

21             -and-

22         PERKINS LAW OFFICE
           BY:  PATRICK T. PERKINS
23         Attorney at Law
           1711 Route 9D
24         Cold Springs, New York 10516
           845-265-2820

25

                                                    2

**U.S. LEGAL SUPPORT**

ER 2481

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 195 of 321

APPEARANCES (Continued):


For the Witness:

    JEFFER MANGELS BUTLER & MARMARO
    BY:   MARC MARMARO
    Attorney at Law
    1900 Avenue of the Stars, 7th Floor
    Los Angeles, California 90067-4308
    310-203-8080

3

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 196 of 321

05:04 1          THE WITNESS:  John's letter -- cover letter that

05:04 2   attaches the outline says, "We're working on the draft

05:04 3   agreement so that by the time you have accomplished

05:04 4   something of truly momentous import, we will have the

05:04 5   super-matter transaction in document form," and I very

05:05 6   much took that to mean that by the time you get back,

05:05 7   you'll have a long-form agreement that we can work off

05:05 8   of, and I wanted to see that long-form agreement.

05:05 9   BY MR. BERGMAN:

05:0510      Q    I see.  And anticipated that the disparities

05:0511   between the two short forms to be resolved in the long

05:0512   form?

05:0513          MR. MARMARO:  I'm going to object to the form of

05:0514   the question.  Vague and ambiguous and -- well, vague and

05:0515   ambiguous.

05:0516          MR. TOBEROFF:  Same objection and leading.

05:0517          MR. MARMARO:  You're asking if that was the

05:0518   reason?

05:0519          Go ahead, you can answer subject to the

05:0520   objections.

05:0521          THE WITNESS:  I hope I'm answering the question.

05:0522   I thought it would be a good thing for the process to get

05:0523   the long form to move it forward rather than bring it to

05:0524   a screeching halt at this point, so I wanted to allow

05:0625   this process to move forward.  My thought was let's raise

                                                                    163

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 197 of 321

06:37 1       MR. BERGMAN:  Okay.  I have nothing further of

06:37 2   you, sir.  Thank you.

06:37 3       THE WITNESS:  Thank you.

06:37 4       MR. BERGMAN:  Mr. Toberoff, may we stipulate --

06:37 5       MR. TOBEROFF:  I just have one quick question.

06:37 6       MR. BERGMAN:  Oh.

06:37 7

06:37 8                       EXAMINATION

06:37 9   BY MR. TOBEROFF:

06:3710       Q    It's with reference to Exhibit 21, an October

06:3711   26, 2001 letter from John Schulman to Kevin Marks.

06:3712       My question is did you at any time furnish a

06:3713   copy of that letter to Laura Siegel and/or Joanne Siegel?

06:3714       A    No.

06:3715       MR. TOBEROFF:  I have no further questions.

06:3716       MR. BERGMAN:  Okay.  Shall we stipulate that the

06:3717   court reporter will be relieved of his statutory

06:3818   obligations and that the transcript of Mr. Marks'

06:3819   deposition will be delivered to his counsel and will be

06:3820   signed by Mr. Marks under penalty of perjury and that

06:3821   this will be accomplished within 30 days?

06:3822       MR. MARMARO:  30 days of receipt, yes.

06:3823       MR. TOBEROFF:  That's fine.  So stipulated.

06:3824       MR. BERGMAN:  Thank you.

06:3825       THE REPORTER:  Mr. Toberoff, do you want a copy

                                                            203

# EXHIBIT G

ER 2485

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOANNE SIEGEL and LAURA
SIEGEL LARSON,

      Plaintiffs,

   vs.

WARNER BROS. ENTERTAINMENT
INC., et al.,

      Defendants.

No. 04-8400 (RSWL)(RZx)
-and-
No. 04-8776 (RSWL)(RZx)

AND RELATED COUNTERCLAIMS.

# ORIGINAL

DEPOSITION OF LAURA SIEGEL LARSON

Beverly Hills, California

Tuesday, August 1, 2006

Reported by:
DAVID S. COLEMAN
CSR No. 4613

Job No. 1-50934

**139**

www.sarnoffcourtreporters.com

Irvine • Los Angeles • San Francisco

phone 877.955.3855 • fax 949.955.3854



**SARNOFF**
*Court Reporters and*
*Legal Technologies*

ER 2486

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 200 of 321

1　　　　　　　　UNITED STATES DISTRICT COURT

2　　　　　　　　CENTRAL DISTRICT OF CALIFORNIA

3

4　JOANNE SIEGEL and LAURA
　　SIEGEL LARSON,

5
　　　　　　Plaintiffs,

6
　　　　vs.　　　　　　　　　No. 04-8400 (RSWL) (RZx)

7
　　WARNER BROS. ENTERTAINMENT

8　INC., et al.,

9　　　　　　Defendants.
　　　　　　　　　　　　　　　　　　-and-
　_____

10　JOANNE SIEGEL and LAURA
　　SIEGEL LARSON,

11
　　　　　　Plaintiffs,

12　　　　　　　　　　　　No. 04-8776 (RSWL)(RZx)
　　　　vs.

13
　　TIME WARNER INC., WARNER

14　COMMUNICATIONS INC., WARNER
　　BROS. ENTERTAINMENT INC., WARNER

15　BROS. TELEVISION PRODUCTION INC.,
　　DC COMICS, and DOES 1-10,

16
　　　　　　Defendants.

17　_____

　　AND RELATED COUNTERCLAIMS.

18

19　_____

20　　　　　　Deposition of LAURA SIEGEL LARSON, taken on

21　behalf of Defendants and Counterclaimants, at 9665

22　Wilshire Boulevard, 9th Floor, Beverly Hills, California,

23　beginning at 10:05 AM and ending at 8:50 PM on Tuesday,

24　August 1, 2006, before DAVID S. COLEMAN, Certified

25　Shorthand Reporter No. 4613.

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

ER 2487
140

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 201 of 321

```
 1    APPEARANCES:

 2

 3    For Plaintiffs:

 4        LAW OFFICES OF MARC TOBEROFF
          BY:  MARC TOBEROFF
 5        Attorney at Law
          2049 Century Park East, Suite 2720
 6        Los Angeles, California 90067
          310-246-3333
 7

 8

      For Defendants and Counterclaimant:
 9

          WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL
10        BY:  MICHAEL BERGMAN
          Attorney at Law
11        9665 Wilshire Boulevard, 9th Floor
          Beverly Hills, California 90212
12        310-858-7888
          mbergman@wwllp.com
13

              -and-
14

          FROSS ZELNICK LEHRMAN & ZISSU
15        BY:  ROGER L. ZISSU
          Attorney at Law
16        866 United Nations Plaza
          New York, New York 10017
17        212-813-5900
          rzissu@frosszelnick.com
18

19

      Also Present:
20

          LILLIAN LASERSON
21

22

23

24

25
```

3

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 202 of 321

1    reluctantly accepted John Schulman's last proposal six

2    months ago, we were stabbed in the back with a shotgun

3    contract," close quote.

4            Now, first, it's true that your mother uses the

5    word "accepted" here, not "approved," which you say you

6    prefer.

7            Isn't that true?

8    A    I prefer the word "approved."

9    Q    But she said "accepted."

10   A    She said that in this letter.

11   Q    Right.

12           And, by the way, what was John Schulman's last

13   proposal six months ago?

14   A    It was the -- our understanding of the

15   discussion that he had had with Kevin Marks --

16   Q    What was --

17   A    -- on October 16th.

18   Q    Was -- okay.  Is that a reference to a letter

19   that Mr. Schulman wrote?

20   A    No, there was no letter.  It was a verbal

21   discussion.

22           MR. ZISSU:  Let's have marked as Defendants'

23   Exhibit 24 a letter dated October 26 from John Schulman

24   to Kevin Marks.

25           (Defendants' Exhibit 24 marked.)

**SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES**
**877.955.3855**

BY MR. ZISSU:

Q    Have you seen that before?

A    The first time I saw this was when Warner Bros. produced this during this litigation.

Q    You never saw that before?

A    No.

Q    Did your mother see it before?

A    No.

Q    So her -- your mother's reference wasn't to that letter --

A    No.

Q    -- in the --

A    She never saw --

Q    In this Defendants' Exhibit 23, your mother was not referring to Defendants' Exhibit 24.

Correct?

A    Correct.

Q    Now going back to Defendants' Exhibit 23, and I will read again the last sentence of the portion I read before:  "When we made those difficult concessions and reluctantly accepted John Schulman's last proposal six months ago, we were stabbed in the back with a shocking contract."

Now, your mother didn't say that the acceptance was conditional, did she, in this letter?

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

# EXHIBIT H

ER 2491

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 205 of 321

1   FROSS ZELNICK LEHRMAN & ZISSU, P.C.
    Roger L. Zissu (Admitted *pro hac vice*)
2   James D. Weinberger (Admitted *pro hac vice*)
    Justin Deabler
3   866 United Nations Plaza
    New York, New York 10017
4   Telephone: (212) 813-5900
    Fax: (212) 813-5901
5
    PERKINS LAW OFFICE, P.C.
6   Patrick T. Perkins (Admitted *pro hac vice*)
    1711 Route 9D
7   Cold Spring, New York 10516
    Telephone: (845) 265-2820
8   Fax: (845) 265-2819
9   WEISSMANN WOLFF BERGMAN
        COLEMAN GRODIN & EVALL LLP
10  Michael Bergman (SBN 37797)
    David L. Burg (SBN 130403)
11  Adam Hagen (SBN 218021)
    9665 Wilshire Boulevard, Ninth Floor
12  Beverly Hills, California 90212
    Telephone: (310) 858-7888
13  Fax: (310) 550-7191
14  Attorneys for Defendants Warner Bros.
    Entertainment Inc., Time Warner Inc,, and DC
15  Comics

16              **UNITED STATES DISTRICT COURT**

17              **CENTRAL DISTRICT OF CALIFORNIA**

18  
    JOANNE SIEGEL, an individual; and          Case No. CV 04-8400 RSWL (RZx)
19  LAURA SIEGEL LARSON, an individual,       (related to CV 04-8776 RSWL (RZx))

20          Plaintiffs,                        **ANSWER TO FIRST AMENDED
                                                COMPLAINT**
21          vs.

22  WARNER BROS. ENTERTAINMENT
    INC., a corporation; TIME WARNER
23  INC., a corporation; DC COMICS, a
    general partnership; and DOES 1-10,
24
            Defendants.
25
26  AND RELATED COUNTERCLAIM
27
28

                                    1
314759v1 02231.0811

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 206 of 321

1    Defendants Warner Bros. Entertainment Inc. ("Warner Bros."), Time Warner
2 Inc. ("Time Warner"), and DC Comics ("DC" or "DC Comics") (collectively
3 "Defendants"), by their attorneys, answer the First Amended Complaint, filed
4 October 18, 2005:[1]

5    1.    Defendants admit only that plaintiffs have brought this civil action for
6 the alleged causes of action set forth in the Complaint, but otherwise deny the
7 allegations in paragraph 1.

8    2.    Defendants admit only that plaintiffs purport to assert that this Court
9 has subject matter jurisdiction as alleged in paragraph 2 but otherwise deny the
10 allegations contained in the Complaint.

11    3.    Defendants admit only that plaintiffs purport to assert that this Court
12 has supplemental jurisdiction as alleged in paragraph 3 but otherwise deny the
13 allegations contained in the Complaint.

14    4.    Defendants admit only that they regularly do business in the State of
15 California and in this District but otherwise deny the allegations in paragraph 4.

16    5.    Admitted.

17    6.    Defendants lack knowledge or information sufficient to form a belief as
18 to the truth of the allegations contained in paragraph 6 and on that basis deny the
19 same.

20    7.    Defendants lack knowledge or information sufficient to form a belief as
21 to the truth of the allegations contained in paragraph 7 and on that basis deny the
22 same.

23    8.    Admitted.

24
25
26
27    [1] The filing of this Answer to First Amended Complaint does not and is not
28 intended to affect in any manner Defendants' amended counterclaims, filed in this
action on October 18, 2005.

2
ANSWER TO FIRST AMENDED COMPLAINT

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 207 of 321

9. Defendants deny the allegations contained in paragraph 9 except admit that DC Comics is a New York General Partnership comprised of Warner Communications, Inc. and E.C. Publications, Inc.

10. Defendants deny the allegations in paragraph 10 except admit that DC Comics is the successor-in-interest to, *inter alia*, Detective Comics, Inc. and National Periodical Publications, Inc. and except to the extent the allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

11. Defendants deny the allegations contained in paragraph 11 except admit that Time Warner Inc. is a Delaware corporation with its corporate headquarters in the State of New York and that certain of its wholly owned subsidiaries regularly conduct business in the State of California and in the County of Los Angeles. Defendants further admit that defendant Warner Bros. is affiliated with defendant Time Warner Inc. and that DC Comics is a New York general partnership whose general partners are entities affiliated with defendant Time Warner Inc.

12. Denied.

13. Denied.

14. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 and on that basis deny the same.

15. Denied.

16. Defendants admit only that in 1933 Siegel and Shuster co-created a character entitled Superman, which character was thereafter substantially changed prior to its first publication in 1938 but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 16 and on that basis deny the same.

**146**

ANSWER TO FIRST AMENDED COMPLAINT

314759v1 02231.0811

**ER 2494**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 208 of 321

17.     Defendants admit only that during the 1930s Siegel and Shuster created twenty-four days of comic strips featuring a character entitled Superman and a paragraph previewing future Superman exploits, but lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 and on that basis deny the same.

18.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 and on that basis deny the same.

19.     Defendants admit only that Siegel and Shuster's work on features entitled "Henri Duval" and "Dr. Occult" was published by the Nicholson Publishing Company during the 1930s, that Malcolm Wheeler-Nicholson was involved with Detective Comics, Inc. and that work that Siegel and Shuster did on features entitled "Slam Bradley" and "Spy" was published in a comic magazine entitled "Detective Comics No. 1," but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 19 and on that basis deny the same.

20.     Defendants admit only that on or about December 4, 1937, Jerry Siegel and Joe Shuster entered into an agreement with Detective Comics, Inc. but deny the remaining allegations in paragraph 20 except to the extent the allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

21.     Defendants deny that Superman and his "miraculous powers" had all been completely developed by early 1938 and otherwise Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 and on that basis deny the same.

22.     Defendants admit only that in early 1938 defendants' predecessor, Detective Comics, Inc., requested that Siegel and Shuster turn certain Superman

4

314759v1 02231.0811

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 209 of 321

1  comic strips they had co-created, along with additional material that Siegel and
2  Shuster would newly create, into a 13-page comic book story suitable for
3  publication in a comic magazine format, and that Siegel and Shuster thereafter
4  delivered such a comic book story to Detective Comics, Inc. and that such story
5  contained approximately 90 separate panels, but defendants lack knowledge or
6  information sufficient to form a belief as to the truth of the remaining allegations
7  contained in paragraph 22 and on that basis deny the same.

8      23.    Defendants deny the allegations contained in paragraph 23 except
9  admit that certain elements and characters of the Superman mythology such as his
10  origins from a distant planet, some of his physical traits, and his secret identity as
11  Clark Kent were contained in Action Comics No. 1 and except to the extent the
12  allegations accurately reflect the contents of documents, and respectfully refer the
13  Court to such documents for evidence of the contents thereof.

14      24.    Defendants admit only that Siegel and Shuster entered into an
15  agreement with Detective Comics, Inc. dated March 1, 1938 whereby Siegel and
16  Shuster transferred to Detective Comics, Inc. "the strip entitled 'Superman' . . . all
17  good will attached thereto and exclusive right to the use of the characters and story,
18  continuity and title of strip . . ." and agreed not to employ Superman and other
19  characters in the strip "by their names contained therein," but otherwise deny the
20  allegations contained in paragraph 24 except to the extent the allegations accurately
21  reflect the contents of documents, and respectfully refer the Court to such
22  documents for evidence of the contents thereof.

23      25.    Defendants admit that Detective Comics, Inc. published a Superman
24  comic story in Action Comics No. 1 with a cover date of June 1938, lack knowledge
25  or information sufficient to form a belief as to the truth of the allegations contained
26  in paragraph 25 relating to the "Revised 1934 Superman Comic Strip" and on that
27  basis deny the same, and deny the remaining allegations in paragraph 25, except to

28

ANSWER TO FIRST AMENDED COMPLAINT
314759v1 02231.0811

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 210 of 321

1    the extent the allegations accurately reflect the contents of documents, and

2    respectfully refer the Court to such documents for evidence of the contents thereof.

3         26.    Defendants deny the allegations in paragraph 26 except admit that

4    Action Comics No. 1 contains Superman's origin from a distant, unnamed planet,

5    some of his physical traits, his secret identity as Clark Kent, a co-worker named

6    "Lois," and deny the remaining allegations in paragraph 26 except to the extent the

7    allegations accurately reflect the contents of documents, and respectfully refer the

8    Court to such documents for evidence of the contents thereof.

9         27.    Defendants admit only that following Action Comics No. 1, at the

10   instance and expense of Detective Comics, Inc., and subject to its right of control,

11   Siegel and Shuster jointly created some additional Superman episodes that appeared

12   in subsequent issues of Action Comics but deny the remaining allegations in

13   paragraph 27, except to the extent the allegations accurately reflect the contents of

14   documents, and respectfully refer the Court to such documents for evidence of the

15   contents thereof.

16        28.    Defendants admit only that between March 1938 and September 1938,

17   Siegel and Shuster jointly created Superman strips, stories and continuities at the

18   instance and expense of Detective Comics, Inc. and subject to its right of control,

19   but deny the remaining allegations in paragraph 28, except to the extent the

20   allegations accurately reflect the contents of documents, and respectfully refer the

21   Court to such documents for evidence of the contents thereof.

22        29.    Defendants admit only that on September 22, 1938 Detective Comics,

23   Inc., Siegel, Shuster, and The McClure Newspaper Syndicate entered into an

24   agreement but deny the remaining allegations in paragraph 29, except to the extent

25   the allegations accurately reflect the contents of documents, and respectfully refer

26   the Court to such documents for evidence of the contents thereof.

27

28                                                              **149**

ANSWER TO FIRST AMENDED COMPLAINT

314759v1 02231.0811                                             **ER 2497**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 211 of 321

30.  Defendants admit only that on September 22, 1938 Detective Comics, Inc., Siegel, and Shuster entered into an agreement but otherwise deny the allegations in paragraph 30 except to the extent the allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

31.  Defendants admit only that between March 1938 and September 1938, Siegel and Shuster provided certain of the contents for Action Comics Nos. 1-6 and that Action Comics Nos. 2-6 were created at the instance and expense of Detective Comics, Inc. and subject to its right of control, and that Action Comics Nos. 1-5 were published prior to September 22, 1938; lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 relating to the publication date of Action Comics No. 6 and on that basis deny the same; and deny the remaining allegations in paragraph 31, except to the extent the allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

32.  Denied.

33.  Defendants only admit that Siegel and Shuster entered into an agreement with Detective Comics, Inc. on December 19, 1939 but otherwise deny the allegations in paragraph 33, except to the extent the allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

34.  Defendants deny the allegations contained in the first three sentences of paragraph 34, except that with respect to the allegations in the third sentence of paragraph 34, to the extent they accurately reflect the contents of documents, respectfully refer the Court to such documents for evidence of the contents thereof. Defendants otherwise lack knowledge or information sufficient to form a belief as to

**150**

314759v1 02231.0811

**ER 2498**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 212 of 321

1   the truth of the allegations contained in paragraph 34 and on that basis deny the

2   same.

3        35.    Defendants admit the allegations of paragraph 35 except that

4   defendants deny that the Official Referee's opinion in the 1947 Action was dated

5   November 1, 1947, deny that the Official Referee only "up[held] the contracts in

6   some respects," and lack knowledge or information sufficient to form a belief as to

7   whether the Official Referee "signed" detailed findings of fact on April 12, 1948

8   and on that basis deny the same.

9        36.    Defendants admit the allegations contained in the first sentence of

10   paragraph 36 except as to the date on which the dispute arose, but otherwise deny

11   the allegations in paragraph 36 except to the extent the allegations accurately reflect

12   the contents of documents, and respectfully refer the Court to such documents for

13   evidence of the contents thereof.

14        37.    Defendants deny the allegations in paragraph 37 except to the extent

15   the allegations accurately reflect the contents of documents, and respectfully refer

16   the Court to such documents for evidence of the contents thereof.

17        38.    Defendants admit only that on December 23, 1975 Siegel and Shuster

18   entered into an agreement with Warner Communications, Inc., but deny the

19   remaining allegations in paragraph 38 except to the extent the allegations accurately

20   reflect the contents of documents, and respectfully refer the Court to such

21   documents for evidence of the contents thereof.

22        39.    Defendants admit only that plaintiffs purport to have mailed notices of

23   termination dated April 3, 1997 to defendants and various other entities, but deny

24   the remaining allegations in paragraph 39 except to the extent the allegations

25   accurately reflect the contents of documents, and respectfully refer the Court to such

26   documents for evidence of the contents thereof.

27

28

**151**

ANSWER TO FIRST AMENDED COMPLAINT

314759v1 02231.0811

**ER 2499**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 213 of 321

40. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 and on that basis deny the same.

41. Admitted.

42. Denied.

43. Denied.

44. Denied.

45. Denied.

46. Denied.

47. Defendants deny the allegations in paragraph 47 except to the extent the allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents and all other documents related thereto for evidence of the contents thereof.

48. Defendants deny the allegations in paragraph 48 except to the extent the allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents and all other documents related thereto for evidence of the contents thereof.

49. Defendants admit only that on April 15, 1999, plaintiffs received a letter from DC Comics' attorneys that, *inter alia,* rejected the termination notices and the validity thereof, and stated that DC Comics continued to claim sole copyright ownership in Superman as of that date. Defendants deny the remaining allegations in paragraph 49 except to the extent the allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents and any documents related thereto for evidence of the contents thereof.

50. Defendants deny the allegations in paragraph 50 except to the extent the allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

**152**

ANSWER TO FIRST AMENDED COMPLAINT

314759v1 02231.0811

**ER 2500**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 214 of 321

51.    Defendants deny that plaintiffs own any copyright rights to Superman, or that any such rights have been "recaptured," but otherwise admit the allegations in paragraph 51.

## FIRST CLAIM FOR RELIEF

52.    Defendants re-allege and incorporate by reference paragraphs 1 through 51 inclusive, as though fully set forth herein.

53.    Defendants deny the allegations contained in paragraph 53 except admit that an actual and justiciable controversy has arisen and now exists between the parties.

54.    Defendants admit that plaintiffs contend and that defendants deny all of the assertions contained in paragraph 54, including but not limited to, subparagraphs (a) – (d).

55.    Defendants deny the allegations contained in paragraph 55 except admit that a declaration of the Court is necessary.

## SECOND CLAIM FOR RELIEF

56.    Defendants re-allege and incorporate by reference paragraphs 1 through 55 inclusive, as though fully set forth herein.

57.    Defendants deny the allegations in paragraph 57 except admit only that an actual and justiciable controversy has arisen and now exists between plaintiffs and defendants.

58.    Defendants admit that plaintiffs contend and that defendants deny all of the assertions contained in paragraph 58, including but not limited to, subparagraphs (a) – (f).

59.    Defendants deny the allegations contained in paragraph 55 except admit that a declaration of the Court is necessary.

**153**

ANSWER TO FIRST AMENDED COMPLAINT

314759v1 02231.0811

**ER 2501**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 215 of 321

1 **THIRD CLAIM FOR RELIEF**

2     60.   Defendants re-allege and incorporate by reference paragraphs 1 through

3 59 inclusive, as though fully set forth herein.

4     61.   Defendants deny that plaintiffs are entitled to exploit the Superman

5 crest and that plaintiffs are entitled to any accounting of any profits from any

6 exploitation thereof and otherwise deny the allegations of paragraph 61.

7     62.   Defendants admit that they own and possess the exclusive right to use a

8 trademark interest in the Superman "S in Shield" device, but otherwise deny the

9 allegations in paragraph 62 except to the extent the allegations accurately reflect the

10 contents of documents, and respectfully refer the Court to such documents for

11 evidence of the contents thereof.

12     63.   Defendants admit that plaintiffs contend and that defendants deny all of

13 the assertions contained in paragraph 63, including but not limited to, subparagraphs

14 (a) – (e).

15     64.   Defendants deny the allegations contained in paragraph 55 except

16 admit that a declaration of the Court is necessary.

17 **FOURTH CLAIM FOR RELIEF**

18     65.   Defendants re-allege and incorporate by reference paragraphs 1 through

19 64 inclusive, as though fully set forth herein.

20     66.   Defendants admit that defendant DC Comics has, continuously on an

21 exclusive basis licensed and commercially exploited and intends to continue to

22 license and exploit its copyright rights in Superman. Defendants further admit that

23 defendant Warner Bros. Entertainment Inc. has made use of the Superman

24 copyrights under license from defendant DC Comics. Defendants deny the

25 remaining allegations in paragraph 66.

26     67.   Defendants admit that defendant DC Comics has earned profits from its

27 exploitation of the Superman copyrights, and that defendant Warner Bros.

28

**154**

ANSWER TO FIRST AMENDED COMPLAINT

314759v1 02231.0811

**ER 2502**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 216 of 321

1  Entertainment Inc. has earned profits from its licensed use of the Superman

2  copyrights, but deny the remaining allegations in paragraph 67.

3      68.    Denied.

4      69.    Denied.

5      70.    Defendants admit that plaintiffs have demanded an accounting but

6  otherwise deny the allegations in paragraph 70.

7      71.    Admitted.

8      72.    Denied.

9      73.    Denied.

10                    **FIFTH CLAIM FOR RELIEF**

11      74.    Defendants re-allege and incorporate by reference paragraphs 1 through

12  73 inclusive, as though fully set forth herein.

13      75.    Denied.

14      76.    Denied except to the extent the allegations accurately reflect the

15  contents of documents, and respectfully refer the Court to such documents for

16  evidence of the contents thereof.

17      77.    Defendants admit that defendant DC Comics has continuously and

18  consistently asserted to plaintiffs exclusive ownership and control of all rights in

19  Superman but deny the remaining allegations in paragraph 77.

20      78.    Defendants lack knowledge or information sufficient to form a belief as

21  to the truth of the allegations contained in paragraph 78 and on that basis deny the

22  same.

23      79.    Denied.

24      80.    Denied.

25      81.    Denied.

26      82.    Denied.

27

28

**155**

12

ANSWER TO FIRST AMENDED COMPLAINT

314759v1 02231.0811

**ER 2503**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 217 of 321

1

**SIXTH CLAIM FOR RELIEF**

2    83.    Defendants re-allege and incorporate by reference paragraphs 1 through

3    82 inclusive, as though fully set forth herein.

4    84.    Denied.

5    85.    Defendants deny the allegations contained in paragraph 85 except

6    admit that DC Comics regularly enters into licensing agreements concerning

7    Superman.

8    86.    Denied.

9    87.    Denied.

10    88.    Denied.

11    89.    Denied.

12    90.    Denied.

13    91.    Denied.

14    92.    Denied.

15    93.    Denied.

16    94.    Denied.

17    95.    Denied.

18    **SEVENTH CLAIM FOR RELIEF**

19    96.    Defendants re-allege and incorporate by reference paragraphs 1 through

20    95 inclusive, as though fully set forth herein.

21    97.    Defendants admit that defendant Time Warner has made no mention of

22    plaintiffs' ineffective termination notices in publicly reported documents, but

23    otherwise deny the allegations in paragraph 97.

24    98.    Denied.

25    99.    Denied.

26    100.    Denied.

27    101.    Denied.

28

13

314759v1 02231.0811

**156**

**ER 2504**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 218 of 321

1    102.  Denied.

2    103.  Denied.

3    104.  Denied.

4                    **FIRST AFFIRMATIVE DEFNSE**

5        105.  Plaintiffs' complaint fails to state a claim upon which relief may be

6    granted.

7                **SECOND AFFIRMATIVE DEFENSE**

8        106.  Plaintiffs' claims are barred by the doctrines of laches, waiver,

9    acquiescence, and/or estoppel.

10                **THIRD AFFIRMATIVE DEFENSE**

11        107.  Plaintiffs' claims are barred because plaintiffs have not sent a Notice of

12    Termination with respect to a separate and complete grant of rights in Superman by

13    Siegel and Shuster.

14                **FOURTH AFFIRMATIVE DEFENSE**

15        108.  Plaintiffs' claims are barred because plaintiffs have continued to accept

16    the benefits of one of the grants of rights in Superman they allege to have

17    terminated, even after the purported effective date of such termination.

18                **FIFTH AFFIRMATIVE DEFENSE**

19        109.  The "Unpublished Superman" works are not eligible for termination

20    under the Copyright Act or, if they are, any such termination is premature.

21                **SIXTH AFFIRMATIVE DEFENSE**

22        110.  Plaintiffs' claims are barred by the statute of limitations, including but

23    not limited to, 17 U.S.C. § 507 (b).

24                **SEVENTH AFFIRMATIVE DEFENSE**

25        111.  Plaintiffs' claims are barred because the notices of termination sent by

26    plaintiffs were not timely served.

27

28                                                           **157**

314759v1 02231.0811          ANSWER TO FIRST AMENDED COMPLAINT          **ER 2505**

1   ## EIGHTH AFFIRMATIVE DEFENSE

2   112.  Plaintiffs' claims are barred on the basis of settlement.

3   ## NINTH AFFIRMATIVE DEFENSE

4   113.  Defendants incorporate herein by reference their Third and Fourth

5   Alternative Counterclaims.  Plaintiffs' claims are barred on the basis of the

6   Agreement.

7   ## TENTH AFFIRMATIVE DEFENSE

8   114.  Because the various paragraphs of plaintiffs' Complaint do not comply

9   with Fed. R. Civ. P. 8(a) and (e), defendants are not required to separately admit or

10  deny each averment contained therein.

11      FOR THESE REASONS, defendants pray that the Court dismiss all of

12  plaintiffs' claims and find for defendants on all counts, that defendants be awarded

13  costs, including reasonable attorneys' fees under Section 505 of the United States

14  Copyright Act, and pray for such other and further relief as this Court deems just

15  and proper.

16  DATED:  November 1, 2005      FROSS ZELNICK LEHRMAN & ZISSU, P.C.
                                  Roger L. Zissu
17                                James D. Weinberger
                                  Justin Deabler
18
                                  PERKINS LAW OFFICE, P.C.
19                                Patrick T. Perkins

20                                          -and-

21                                WEISSMANN WOLFF BERGMAN
                                     COLEMAN GRODIN & EVALL LLP
22                                Michael Bergman
                                  David L. Burg
23                                Adam Hagen

24
                                  By: _____
25                                    Michael Bergman

26                                Attorneys for Defendants Warner Bros.
                                  Entertainment Inc., Time Warner Inc,, and DC
27                                Comics

28                                                      **158**

                            15
            ANSWER TO FIRST AMENDED COMPLAINT
314759v1 02231.0811                                     **ER 2506**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 220 of 321

PROOF OF SERVICE
1013A(3) C.C.P. Revised 5/1/88

STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 9665 Wilshire Blvd, Suite 900, Beverly Hills, CA 90212. On the date shown below, I served the foregoing document described as **ANSWER TO FIRST AMENDED COMPLAINT** on the interested parties in said action9, by placing a true copy thereof enclosed in a sealed envelope, addressed as follows:

Marc Toberoff
Law Offices of Marc Toberoff, PLC
1999 Avenue of the Stars, Suite 1540
Los Angeles, CA 90067

__XX__ **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Beverly Hills, California. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

__—__ **(FACSIMILE SERVICE)** I caused such document to be transmitted via facsimile to the offices of the addressees at the numbers listed above.

__—__ **(BY FEDERAL EXPRESS)** I caused a copy of such document(s) to be delivered to the offices of the addressee(s) via Federal Express, next business day delivery service.

Executed on **November 1, 2005**, at Beverly Hills, California.

__—__ **STATE** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

__XX__ **FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
Adrienne Crayton-Sarpy

1  Marc Toberoff (CA State Bar No. 188547)
   Nicholas C. Williamson (CA State Bar No. 231124)
2  LAW OFFICES OF MARC TOBEROFF, PLC
   2049 Century Park East, Suite 2720
3  Los Angeles, CA 90067
   Telephone: (310) 246-3333
4  Facsimile: (310) 246-3101
   E-mail: MToberoff@ipwla.com
5
   Attorneys for Plaintiffs and Counterclaim Defendants
6  JOANNE SIEGEL and LAURA SIEGEL LARSON

7           **UNITED STATES DISTRICT COURT**

8    **CENTRAL DISTRICT OF CALIFORNIA- EASTERN DIVISION**

9

| | |
|---|---|
| 10  JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an | Case No. CV 04-08400 SGL (RZx) |
| 11  individual, | [Honorable Stephen G. Larson] |
| 12           Plaintiffs, | |
| 12           vs. | **PLAINTIFFS JOANNE SIEGEL** |
| 13 | **AND LAURA SIEGEL LARSON'S** |
| 14  WARNER BROS. | **REPLY MEMORANDUM OF** |
|     ENTERTAINMENT INC., a | **POINTS AND AUTHORITIES IN** |
| 15  corporation; TIME WARNER INC., a | **SUPPORT OF MOTION FOR** |
|     corporation; DC COMICS, a general | **PARTIAL SUMMARY** |
| 16  partnership; and DOES 1-10, | **JUDGMENT** |
| 17 | |
|             Defendants. | [Complaint filed: October 8, 2004] |
| 18 | |
| 19 | Date:  July 23, 2007 |
|     | Time:  10:00 a.m. |
| 20  DC COMICS, | Place:  Courtroom 1 |
| 21 | |
|             Counterclaimant, | [Reply To Defendants' Local Rule 56- |
| 22  vs. | 2 Statement Of Genuine Issues; |
| 23 | Reply Declaration of Marc |
|     JOANNE SIEGEL, an individual; and | Toberoff; Reply Declaration of Mark |
| 24  LAURA SIEGEL LARSON, an | Evanier and Evidentiary Objections |
|     individual, | Filed Concurrently Herewith] |
| 25 | |
| 26          Counterclaim Defendants. | |
| 27 | |
| 28 | |

0

Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs") submit this memorandum of points and authorities in reply to defendants Warner Bros. Entertainment, Inc. ("Warner Bros."), Time Warner, Inc. ("Time-Warner"), DC Comics' ("DC")( collectively, "Defendants") memorandum in opposition ("Opposition" or "Opp.") to Plaintiffs' Motion for Partial Summary Judgment ("Motion" or "Mot.") in Case No. CV 04-8400 SGL (RZx)(the "Superman Action").

## SUMMARY OF ARGUMENT

Plaintiffs' Motion establishes that as a matter of law their statutory notices of termination under section 304(c) of the United States Copyright Act with respect to "Superman" ("Termination Notices") validly terminated the prior copyright grant(s) by Jerome Siegel ("Siegel") and Joseph Shuster ("Siegel and Shuster") of their original "Superman" comic strip as published by Detective Comics, Inc. ("Detective") in Action Comics, No. 1. ("Original Superman Strips" or "Action No. 1"); and Plaintiffs thereby recaptured Siegel's joint ownership of the copyright to the Original Superman Strips (the "Superman Termination").  17 U.S.C. § 304(c).

As demonstrated below, Defendants' Opposition fails to resuscitate any of their purported counterclaims and defenses to Plaintiffs' Superman Termination, all of which were thoroughly discredited in Plaintiffs' Motion.  Tellingly, with respect to nearly every issue Defendants fail to address Plaintiffs' legal analysis head on; instead, they bloat their Opposition with straw men dissertations, while mischaracterizing Plaintiffs' claims, arguments and the record.  A common theme emerges in Defendants' papers and conduct.  Defendants run roughshod over well worn legal principles of *res judicata*, collateral estoppel and *law of the case* in ignoring 70 years of litigation history between the parties' predecessors, and even the current well considered rulings of the Honorable Ronald S. Lew.

Defendants fail to raise any genuine issues of material fact in their Opposition with respect to the validity of the Superman Termination as to Action No. 1. Defendants focus on their four purported counterclaims/defenses to the Termination –

1

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

(1) work for hire;" (2) the 1948 consent judgment; (3) Joanne Siegel's acceptance of a pension; and (4) statute of limitations – but acknowledge, by not opposing, Plaintiffs' compliance with the procedural aspects of 17 U.S.C. §304(c) and 37 C.F.R. 201.10 as set forth in section III D. 1 of Plaintiffs' Motion.

Plaintiffs demonstrate in their Motion and herein that each of Defendants' four purported counterclaims/defenses is erroneous as a matter of law.

Defendants' claim that so-called "additional material" added by Siegel and Shuster in the process of converting their "Superman" newspaper strip to a magazine format is "work for hire," owned by Detective at inception. However, Defendants' re-litigation of this purported claim, defense or issue is barred by *res judicata* and collateral estoppel because the Second Circuit in *Jerome Siegel v. National Periodical Publications, Inc. et al.,* 508 F.2d 909, 914 (2d Cir. 1974) (the "1974 Action"), specifically adjudicated and held that Plaintiffs' conversion at Detective's request did not constitute "work for hire." Defendants' claim that it alone owns certain panels and the color of Action No. 1 also fails as a matter of law because Action No. 1 is an admitted "joint work," the words, pictures and color of which are inextricably merged into "a unitary whole" with one copyright. Plaintiffs have an "undivided" joint copyright interest in Action No. 1 as tenants in common with Defendants, having recaptured Siegel's share of this joint work.

Defendants' claim/defense that Plaintiffs' Termination is somehow defective for not *also* listing the May 21, 1948 consent judgment fails as a matter of law. Firstly, Defendants never moved to reconsider Judge Lew's March 24, 2006 order that held it was unnecessary to list the consent judgment in the analogous "Superboy" termination notice, and this issue does not differ with respect to "Superman." Secondly, the consent judgment is a judgment, not a "grant," and therefore need not be listed per 37 C.F.R. § 201.10 (b)(1)(iv). Thirdly, and as noted by Judge Lew, the May 21, 1948 consent judgment merely follows the parties' underlying May 19, 1948 settlement stipulation which *is* explicitly identified in Plaintiffs' Termination Notice

2

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

No. 6. Fourthly, because Siegel and Shuster's March 1, 1938 grant to Detective ("March 1, 1938 Grant") constituted the operative "Superman" grant, the subsequent May 21, 1948 consent judgment, even if incorrectly deemed a "grant," as a matter of law, could not have conveyed the "Superman" copyright previously assigned in 1938.

Defendants' unsupported claim/defense that Joanne Siegel's acceptance of a pension renders Plaintiffs' Termination invalid also fails as a matter of law. Firstly, the December 23, 1975 agreement between Siegel and Shuster and Warner Communications, Inc. ("WCI"), that Defendants claim is somehow reinstated, contains only an *acknowledgement* of WCI's rights as successor to the March 1, 1938 Grant. It is not a "grant" under 37 C.F.R. § 201.10 (b)(1)(iv) and, as a matter of law, could not have granted that which was in already in WCI's possession according to *Siegel*, 508 F.2d 909, 912-913. Secondly, the acceptance of a pension by Joanne Siegel alone could not, as Defendants argue, function as a "de facto …post-termination grant to DC," as a matter of law, because (i) under 17 U.S.C. § 204(a) a copyright assignment must be *in writing* signed by both Plaintiffs as the copyright owners; and (ii) under 17 U.S.C. § 304(c)(6)(C) a "further grant [of the recaptured copyright interest]…is valid only if signed by" both Plaintiffs, as well. Thirdly, Defendants provide virtually no legal support for their convoluted theory.

Lastly, Defendants' statute of limitations claim fails as a matter of law. Plaintiffs demonstrated to the day that, even if the statute was held to run against a statutory notice of termination under the Copyright Act, their complaint was filed within the statute. Defendants oppose with two erroneous arguments: (i) that they purportedly triggered the statute prior to their express notice of repudiation dated April 15, 1999, and (ii) that the parties' tolling agreement ("Tolling Agreement") purportedly ceased on October 19, 2001 even though Defendants thereafter continued settlement negotiations. The first fails as a matter of law because *Zuill v. Shanahan*, 80 F.3d 1366 (9th Cir. 1996), on which Defendants rely, requires a "plain and express repudiation" before a claim accrues. Defendants' April 15, 1999 letter, by their own

3

admission, is the first time they put Plaintiffs on clear notice that they rejected the Superman Termination, previously acknowledged by Defendants.  The second fails because the undisputed record reflects that the parties continued settlement negotiations under their Tolling Agreement until terminated at the earliest by Plaintiffs' letter dated September 21, 2002.

Defendants' second string claim/defense that the statute has run with respect to Warner Bros. also fails because (i) Warner Bros., prior to this action, never expressly repudiated the Termination per *Zuill*, and (ii) the Tolling Agreement was entered into by DC "for themselves, their predecessors, past and present subsidiaries or affiliates," which includes Warner Bros.

Accordingly, as each of Defendants' purported defenses to the Termination fails as a matter of law, and the Superman Termination is otherwise procedurally valid, Plaintiffs should be held to have recaptured Siegel's joint copyright interest in Action No. 1.

Defendants' remaining unsupported claims (i) that Plaintiffs are purportedly not entitled to an accounting of any foreign profits and (ii) that Defendants supposedly purchased Plaintiffs' recaptured copyright interest on October 19, 2001, can also be readily disposed of on summary judgment.

Regarding foreign profits, Defendants heavily rely on the Copyright Act's extra-territoriality doctrine.  However, once, as here, joint ownership is established under copyright law, it is well settled that the duty to account amongst co-owners is *not* governed by the Copyright Act, but by equitable State law principles governing "tenants in common," unjust enrichment and constructive trust, pursuant to the Ninth Circuit decision, *Oddo v. Ries*, 743 F.2d 630, 632-33 (9th Cir. 1996).  *Oddo v. Reis* entitles Plaintiffs, as co-owners, to their fair share of any and all profits.  Defendants emphasize *Oddo v. Ries'* controlling holding when it suited them in their cross-motion, yet back-track and fail to address it in Plaintiffs' motion.  Defendants similarly fail to address *Goodman v. Lee*, 78 F.3d 1007, 1015 (5th Cir. 1996) *cert.*

4

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

*denied* 519 U.S. 861 (1996), wherein the Fifth Circuit applied *Oddo v. Ries* <u>exactly</u> as Plaintiffs do to include foreign profits in an accounting action by copyright co-owner. Defendants assert without legal support that 17 U.S.C. § 304(c)(6)(E) (termination "in no way affects rights arising under any other Federal, State, or foreign laws") somehow changes this result. However, this simply maintains the status quo, including the State law accounting principles which favor Plaintiffs.

Lastly, Defendants belated claim after *three years of silence* that the parties consummated an agreement for the purchase of Plaintiffs' recaptured copyright interest crumbles on inspection under established contract law. Defendants admit, as they must, that that there can be no contract unless and until there is a "meeting of the minds on all material terms." It is readily apparent from an examination of the controlling documents – an October 19, 2001 deal point outline from Plaintiffs' counsel, a diverging October 26, 2001 reply outline from Warner Bros.' counsel and Defendants' vastly different February 1, 2002 contract draft, expanding upon their October 26, 2001 outline – that there was no "meeting of the minds on all material terms." Accordingly, an agreement was not consummated as a matter of law.

Defendants' conduct objectively comports with this conclusion. Defendants did not accept the October 19, 2001 outline, as evident from their October 26, 2001 response and February 1, 2002 draft; nor did they ever perform or tender performance under the supposed agreement, nor claim, in over three years, that there was such an agreement until Plaintiffs filed suit in October, 2004 to enforce their right to an accounting. Defendants utterly fail to meet their burden of establishing any genuine issue of material fact as to their unfounded contract claim. As such, the Court can and should dispose of it on summary judgment.

For all these reasons, and as further demonstrated below, Plaintiffs respectfully request that their motion for partial summary judgment be granted in its entirety in the form lodged separately as the Proposed Judgment.

**ER 2513**
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

**ARGUMENT**

I.   **DEFENDANTS FAIL TO RAISE ANY GENUINE ISSUE OF MATERIAL FACT PRECLUDING SUMMARY JUDGEMENT AS TO PLAINTIFFS' RECAPTURE OF SIEGEL'S COPYRIGHT IN THE FIRST SUPERMAN STORY PUBLISHED IN ACTION COMICS, NO. 1.**

   A.   **Defendants Do Not And Cannot Raise A Material Issue Of Fact As To Whether A Portion Of The "Superman" Story In Action Comics, No. 1 Is A Work-For-Hire**

   Defendants argue that Siegel and Shuster revised their pre-existing "Superman" strip ("Original Superman Strip") at Detective Comic, Inc.'s ("Detective") *request* and that therefore the revisions purportedly constituted "work for hire," owned at inception by Detective as its putative "author." The materials at issue, according to Defendants, consist of a couple additional panels and the color in Siegel and Shuster's original "Superman" story as published in Action Comics, No. 1 ("Action No. 1"). Defendants' argument fails as a matter of law for a number of reasons as set forth in Plaintiffs' Motion and reinforced below.

   Firstly, Defendants' contrived argument is barred by *Siegel*, 508 F.2d at 912-913, between the parties' predecessors, under the doctrines of *res judicata* and collateral estoppel. Secondly, as a matter of law, Defendants' cannot separately own the copyright to a couple of panels and the colors of Action No. 1, because as an admitted "joint work," Action No. 1's parts are inextricably merged in an indivisible whole. Lastly, although completely mooted by the first two conclusions, Defendants mischaracterize the evidence and fail to meet their burden of establishing a genuine issue of material fact as to whether Action No. 1 was a work made for hire.

   1.   **Defendants' Work For Hire Arguments Are Precluded By The 1974 Federal Action As A Matter Of Law**

   Defendants weakly claim that notwithstanding the Second Circuit's contrary holding in *Siegel*, 508 F.2d at 912-914, between the parties' predecessors-in-interest,

6

that "portions" of the "Superman" materials created by Siegel and Shuster were "work for hire."[1] Defendants are precluded from making this argument, decades later, by the principles of *res judicata* and collateral estoppel.[2]

### a. Res Judicata

Application of the *res judicata* doctrine to judgments of federal courts are a matter of federal common law. *Hansen v. Moore (In re Hansen)*, 2007 Bankr. LEXIS 1670 (9th Cir. 2007). "Res Judicata, or claim preclusion, precludes a litigant from advancing in a new action all claims or defenses that were or could have been raised in a prior proceeding in which the same parties or their privies were involved and that resulted in a judgment on the merits." *In re PCH Associates*, 949 F.2d 585, 594 (2d. Cir. 1991). *Res judicata* prevents litigation of all grounds for, or defenses to, recovery that was previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. *Chicot County Drainage Dist. V. Baxter State Bank*, 308 U.S. 371, 378 (1940). *Res judicata* is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties. *Owens v. Kaiser Found. Health Plan, Inc.*, 244, F. 3d 708, 713 (9th Cir. 2001). Identity of claims exists when two suits arise from "the same transactional nucleus of facts." *Id.*

Here, there was a final summary judgment in *Jerome Siegel v. National Periodical Publications, Inc. et al.*, 364 F.Supp. 1032, 1033 (S.D.N.Y. 1973) *aff'd* 508 F.2d 909 (2nd Cir. 1974); it is was claimed by National Periodical Publications,

---

[1] The Second Circuit, in turn, reached its conclusion in large part based on the findings ("1948 FOF") and conclusions ("1948 COL") of Judge Young ("1948 Findings") after a full trial on the merits in the 1947 action between the parties' predecessors in Westchester, New York ("1947 Action"). Toberoff Decl., Ex. B. Defendants make a big fuss over Plaintiffs' statement that "no appeal was perfected," accusing it as "designed to mislead" (Opp. at 13, fn. 8); however, these were the same words used in *Jerome Siegel v. National Periodical Publications, Inc. et al.*, 364 F.Supp. 1032, 1035 (S.D.N.Y. 1973)("neither side perfected an appeal") in reviewing the 1947 Action.

[2] Defendants should also be *judicially estopped* from changing their tune and story in nuanced arguments based on the same facts before their predecessor and the courts in the 1974 Action. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001); 18 *Moore's Federal Practice* § 134.30 (3d ed. 2000).

7

Inc. ("National") that Action No. 1 was "work for hire," which was denied, and it is undisputed that Defendants are in privity with National as they have admitted that National is DC's predecessor-in-interest. Bergman Decl. Ex. GG (Defendants' First Amended Counterclaim ("FACC")) at ¶¶ 1, 10, 23, 68. *See Stratosphere Litig. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1142 n. 3 (9th Cir. 2002).

In response to Plaintiffs' preclusion claim, Defendants speciously argue that Plaintiffs have provided no "final judgment from the National Litigations." (Opp at. 37). However, Plaintiffs submitted both the district court's summary judgment order and the Second Circuit's decision upholding that judgment. Toberoff Decl., Exs. S, T. *Siegel*, 364 F.Supp. at 1033, *aff'd* 508 F.2d 909 (2nd Cir. 1974).

As Defendants well know, in the 1974 Action their predecessor, National, sought summary judgment at the district court level that it owned the renewal copyright to "Superman." National's claim was unquestionably based, in large part, on their assertion that Action No. 1 was "work for hire." *Id. at* 1033-37. The district court granted National's motion for summary judgment dismissing Siegel and Shuster's complaint and affirming that defendants owned "Superman" for its renewal term of copyright. *Id.* In arriving at this conclusion, the district court held that "Superman" was a work for hire pursuant to 17 U.S.C. § 26 as claimed by National. *Id.* at 1036.

The district court's grant of summary judgment in favor of National as affirmed by the Second Circuit is a "final judgment" for purposes of *res judicata*. *G&T Terminal Packaging Co. v. Consolidated R. Corp.*, 719 F. Supp. 153 (S.D.N.Y. 1989)("the court in that case reached a final judgment on the merits since it granted summary judgment on behalf of defendants on all of plaintiffs' claims.... such a judgment constitutes a "final judgment on the merits" for the purposes of res judicata"). *See also International Assoc. of Machinists & Aerospace Workers v. Aloha Airlines, Inc.*, 790 F.2d 727 (9th Cir. 1986)(principles of *res judicata* can even be applied to *partial* summary judgment)*; Strange v. Montefiore Hospital & Medical*

1    *Center*, 59 N.Y.2d 737, 739 (1983); 21A Federal Procedure, Lawyer's Edition §

2    51:247 ("For claim preclusion purposes, a summary judgment generally constitutes a

3    judgment on the merits").

4        Siegel and Shuster appealed the district court's summary judgment order. The

5    Second Circuit affirmed the district court's decision but rejected its reasoning. The

6    Second Circuit expressly considered the 1948 Findings on Siegel and Shuster's

7    conversion of their 1934 "Superman" newspaper strip to a magazine format *at*

8    *Detective's request* and concluded that these circumstances were wholly insufficient

9    to transform Action No. 1 into a "work for hire":

> 10   "There was no conclusion of law in the state court that the comic strip was a work for hire so as to create the presumption that the employer was the author. That issue was not litigated at all in state court. On the contrary, the court's finding of fact no. 8 was that the plaintiffs were 'the originators and authors of the cartoon character **SUPERMAN** and of the title **SUPERMAN** and first created cartoon material in which the said character and title first appeared in 1934. . .' ***The court below*** instead ***relied upon finding of fact no. 22 in which the state court found that the plaintiffs did revise and expand the Superman material at the request of the defendants*** and that this revised material constituted the formula for the ensuing series of strips. ***We do not consider this tantamount to a conclusion that Superman was a work for hire.*** That doctrine is applicable only when the employee's work is produced at the instance and expense of the employer…or, in other words, when the 'motivating factor in producing the work was the employer who induced the creation…'"

18    508 F.2d at 914 (citations omitted). The Second Circuit concluded that "Superman"

19    and his powers had been fully developed by Siegel and Shuster on their own and that

20    any revisions that may have been requested by Detective shortly before

21    "Superman's" first publication in Action Comics, No. 1 were simply to accommodate

22    a magazine format:

> 23   "Superman had been spawned by the plaintiffs four years before the relationship between the authors and the defendants existed…Superman and his miraculous powers were completely developed long before the employment relationship was instituted. ***The record indicates that the revisions directed by the defendants were simply to accommodate Superman to a magazine format.*** We do not consider this sufficient to create the presumption that the strip was a work for hire.

* * * * * * *

27
28   Accordingly, we affirm the dismissal of the complaint, but only on the ground that the 1947 state court action, in interpreting the agreements between the parties, precludes the plaintiffs from contesting ever again

9

1  that all rights in Superman, including in the renewal copyright, have passed forever to defendants."

2  *Id.* (emphasis added).[3]

3  The Second Circuit's based its ultimate affirmation of the district court's

4  decision on the 1948 judgment, Judge Young's 1948 Findings and the language of the

5  March 1, 1938 grant by Siegel and Shuster to Detective ("March 1, 1938 Grant") of

6  the "exclusive right" to Action No. 1 "forever." *Id*. at 913.  If National owned

7  "Superman" as a work for hire, as it had argued, there would have been no need for

8  the Court to have examined any assignment or grant language.  Toberoff Decl., Ex.

9  W (National's appellate brief) at 8 ("Defendant National owns the renewal term of

10  the copyright of the first Superman Strip as a work made for hire.")  Thus,

11  Defendants' work for hire claim was fully and finally adjudicated.

12  To mislead, Defendants misrepresent the holding in Siegel, *supra*.[4]

13  Notwithstanding Defendants' mischaracterizations and rationalizations, an

14  "identity of claims" exists between the work for hire claim in the 1974 Action and

15  this action because both arise from "the same transactional nucleus of facts"

16  regarding the creation of Action No. 1.  *Owens*, 244 F. 3d at 713.  There is no doubt

17  _____

18  [3] Defendants insincerely state:  "The Second Circuit made no finding that Action Comics No. 1 was

19  *not* a work for hire…only that the other evidence of record was not "sufficient to create the presumption that the script was a work for hire."  (Opp. at 38:26 – 39:2).  Yet, as Defendants well know the Second Circuit spoke in terms of a work for hire "presumption" because under the 1909

20  Copyright Act, when one person employed another to create an artistic work it gave rise to a

21  *presumption* that the parties' mutual intent for title to the copyright to belong to the employer at whose instance and expense the work is created.  However, the presumption of copyright in the

22  employer is rebutable, as it "is based on the *presumed* mutual intent of the parties."  *May v. Morganelli-Heumann & Assoc.*, 618 F.2d 1363, 1368 (9th Cir.1980).  In *Siegel*, 508 F.2d at 914, the

23  Second Circuit found that the circumstances of Action No. 1's creation and conversion to a

24  magazine format in no way warranted even the rebuttable presumption that it was "work for hire."

25  [4] Defendants falsely assert "[s]ince the only issue raised by Siegel and Shuster in the Federal Action

26  related to the copyright ownership of *their own contribution,* the case did not relate to the ownership of…any Additional Action Comics No. 1 Materials added to the first Superman story by Detective's employees" and later that the Second Circuit's holding only applied "to the Superman material

27  authored by Siegel and Shuster that pre-existed their submission of it to Detective."  (Opp. at 36:13-16, 26 - 37:3).  As demonstrated by the above quotes from the Second Circuit's decision this is

28  untrue.  The Court specifically considered Siegel and Shuster's re-formatting of their work to a magazine format.  *Siegel*, 508 F. 2d at 914.

10

1    that their predecessor's work for hire argument is based on the same facts and

2    circumstances as their work for hire argument.  In fact, Defendants repeat many of

3    National's "work for hire" arguments ultimately rejected in the 1974 Action.[5]

4         Defendants' refining of their previously rejected argument (i.e., Defendants

5    own bits and pieces of Action No. 1 as works for hire) is precisely the sort of claim

6    *res judicata* is meant to weed out in the interest of judicial economy and repose.

7    *Montana v. U.S.*, 440 U.S. 147, 153-154, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979) (*Res*

8    *judicata* and collateral estoppel protect litigants against "the expense and vexation

9    attending multiple lawsuits, conserve judicial resources, and foster reliance on

10   judicial action by minimizing the possibility of inconsistent decisions.").

11        Defendants' claim that "a portion" of Action No. 1 is work for hire is

12   subsumed within their predecessor's claim that all of it was work for hire.  At best, it

13   is merely a variety of the work for hire claim previously made by Defendants'

14   predecessors in the 1974 Action.  Defendants' contrary argument makes no sense.  If

15   the entire Action No. 1 is held not to be "work for hire," then it logically follows that

16   a portion of that same work also cannot be "work for hire."  Defendants' "portion"

17

---

18   [5] For instance, National previously argued that they owned Superman as a work made for hire
     pursuant to the parties' December 4, 1937 agreement.  Toberoff Decl., Ex. W (National's appellate
19   brief) at 17-18 ("Plaintiffs were employees of Detective…pursuant to the written Employment
     Agreement of December 1937…Based upon these undisputable facts, it is clear the Superman
20   strips…were 'works made for hire.'")  Defendants mirror this argument today: "As demonstrated
     above, Detective held an exclusive option to Superman under the December 4, 1937 Agreement
21   with Siegel and Shuster." (Opp. at 33).

22   National contended in the prior Federal action: "After reviewing [Siegel and Shuster's Superman
     Strip], Detective determined that the material would be appropriate for publication if revised and
23   expanded into a full 13 page color comic strip suitable for a comic magazine.  Pursuant to
     Detective's instructions, plaintiffs submitted the revised and expanded material in February 1938."
24   "[W]hat eventually appeared as Superman in "Action Comics" may have contained the central
     character from the 1933 material, but it also contained the…instructions of Detective…[t]he
25   decision to produce the Superman Strip was Detective's and pursuant thereto it directed plaintiffs to
     change their work schedule so as to produce the Superman Strip in preference to other prior work
26   assignments."  Toberoff Decl., Ex. W (National's appellate brief) at 4, 14, 19-20.  Defendants
     repeat these arguments: "DC requested detailed revisions and changes in order to make the story
27   suitable for publication…While much of what ended up in Action Comics No. 1 was prepared
     before…the 'several pictures' that make up the Additional Action Comics No. 1 Materials were
28   prepared only after Detective made the commitment that they would publish Superman and only
     after Detective told Siegel and Shuster they 'could proceed'" (Opp. at 28-32).

11

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

argument is necessarily precluded and fails on this ground alone.

Moreover it is clear from the Second Circuit's decision that it *focused*, as Defendants do now, on Siegel and Shuster's *revisions* of their "Superman" story in the process of converting it from a newspaper to magazine format. *Siegel*, 508 F.2d at 914 ("The record indicates that the revisions directed by the defendants were simply to accommodate Superman to a magazine format. We do not consider this…a work for hire.").

Ironically, the evidence submitted and mischaracterized by Defendants for their nuanced work for hire claim consists of the affidavits of Siegel and Shuster *in the 1974 Action* regarding whether Action No. 1 was "work for hire," further underscoring that Defendants' predecessor had a full and fair opportunity to adjudicate this claim in the prior Federal action when all witnesses were alive and the evidence was still fresh. Bergman Decl., Ex. G (Shuster affidavit), Ex. H (Siegel affidavit).

Defendants nonetheless make the absurd argument that their predecessor could not have raised their claim that it owns "a portion of *Action Comics No. 1*" as work for hire because it would not have "achieved National's objective of establishing that Siegel and Shuster were not entitled to the renewal right for all of the material comprising this feature." (Opp. at 37). However, National clearly *could* have raised this alternative "portion" argument, just as easily as Defendants do now. As such, Defendants' derived argument is precluded. *Chicot*, 308 U.S. at 378 (res judicata prevents litigation of all grounds for, or defenses to, recovery previously available to parties regardless of whether asserted or determined in prior proceeding). *See also Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992), *cert. denied*, 506 U.S. 1053 (1993) (for *res judicata* purposes, the true identity of the facts surrounding an occurrence constitutes the cause of action, not the legal theory upon which a party chooses to frame its complaint); *Berlitz Sch. Of Lang. of Am., Inc. v. Everest House*, 619 F.2d 211, 215 (2d Cir. 1980)("When the factual predicate upon which claims are

12

1    based are substantially identical, the claims are deemed to be duplicative for purposes

2    of *res judicata*."); *In re Teltronics Servs., Inc.*, 762 F.2d 185, 193 (2d Cir. 1985)

3    ("New legal theories do not…defeat *res judicata*").

4          Undoubtedly, Defendants' predecessor did not make the "portion" argument 30

5    years ago because then, as today, it fails as a matter of law with respect to an

6    indivisible "joint work" such as Action No. 1 (*see* section A. 2 below).  Regardless,

7    Defendants belated nuanced claim is barred by *res judicata*.

8                          **b.    Collateral Estoppel**

9          Defendants' work for hire argument is also precluded by the collateral estoppel

10   doctrine.  Collateral estoppel bars re-litigation of *issues* actually adjudicated in earlier

11   litigation.  *Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995), *as*

12   *amended*, 75 F.3d 1391 (9th Cir. 1996).  A federal court decision has collateral

13   estoppel effect where (1) the issue decided at the previous proceeding is the same as

14   the one sought to be re-litigated; (2) the first proceeding ended with a final judgment

15   on the merits; and (3) the party against whom collateral estoppel is asserted was a

16   party or in privity with a party at the first proceeding.  *Hydranautics v. Filmtec Corp*.,

17   204 F.3d 880, 885 (9th Cir. 2000).

18         Collateral estoppel precludes re-litigation of both issues of law and issues of

19   fact.  *Steen v. John Hancock Mut. Life Ins. Co*., 106 F.3d 904, 910 (9th Cir. 1997).

20   The preclusive effect extends to issues not specifically addressed but which "by

21   necessary implication... [are] contained in that which [was] explicitly decided."

22   *Norris v. Grosvenor Mktg. Ltd*., 803 F.2d 1281, 1285 (2d. Cir. 1986).  "Collateral

23   estoppel, like the related doctrine of *res judicata*, has the dual purpose of protecting

24   litigants from the burden of re-litigating an identical issue with the same party or his

25   privy and of promoting judicial economy by preventing needless litigation."

26   *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

27         As set forth above, there is no question that DC as the successor to National is

28   in privity with a party to the 1974 Action.  Bergman Decl. Ex. GG (FACC)) at ¶¶ 1,

10, 23, 68. There is also no question that the Second Circuit's decision affirming an award of summary judgment constitutes a final judgment for purposes of collateral estoppel and otherwise. *Kourtis v. Cameron*, 419 F.3d 989, 996 (9th Cir. 2005).

The same "work for hire" issue based on Detective's purported instructions, control, "instance and expense" was raised previously by National and necessarily decided in the 1974 Action. Toberoff Decl., Ex. W (National appellate brief) at 4, 14, 19-20; *Siegel*, 364 F.Supp. at 1033 *aff'd* 508 F.2d at 914. Moreover, preclusion applies to issues raised as well as to issues that could have been raised at the time of the earlier action. *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 84, 104 S.Ct. 892, 79 L.Ed. 2d 56 (1984). The purported issue of whether a portion of Action No. 1 is a "work for hire" is naturally subsumed within the litigated issue of whether Action No. 1 was a "work for hire," rejected by the Second Circuit. *Siegel*, 508 F.2d at 914. Moreover, the Second Circuit focused on the very revisions made by Siegel and Shuster at Detective's request that Defendants trumpet today. *Id*.

It also cannot reasonably be disputed that Defendants' predecessor had a full and fair opportunity to litigate the work for hire issue raised yet again by Defendants. *Fuchsberg & Fuchsberg v. Galizia,* 300 F.3d 105, 109 (2d Cir. 2002) ("Collateral estoppel prevents a party from re-litigating an issue decided against that party in a prior adjudication" in which that party had a "'full and fair opportunity'" to litigate); *Johnson v. Watkins*, 101 F.3d 792, 794-95 (2d Cir. 1996)(same).

The resolution of the "work for hire" issue was also necessary to the Second Circuit's decision in *Siegel, supra*.[6] Its consideration and subsequent rejection of the work for hire argument clarified that the "Superman" copyright was originally owned

---

[6] Ironically, even the case on which Defendants chiefly rely, *Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869, 880 (9th Cir. 2005), notes that *Siegel*, 508 F.2d at 914, held that "the Superman comic strip was not created at the employer's instance where the Superman character 'had been spawned by the [author] four years before the relationship between [the] authors and the [employer].'" *Playboy Enters. v. Dumas*, 53 F.3d 549, 554 (2d Cir. N.Y. 1995), on which Defendants rely, also notes *Siegel's* work for hire holding: "In *Siegel,* we found that the comic strip character Superman was not a work for hire because although the creators revised and expanded the comic strip at the request of the publishers and were paid for that work, the Superman character was completely developed long before the employment relationship existed.")

14

by Siegel and Shuster, and that National's alleged ownership could only be based on Siegel and Shuster's March 1, 1938 Grant to Detective. *Siegel*, 504 F. 2d at 913-14. In holding that the March 1, 1938 Grant transferred the renewal copyright to Detective, the Second Circuit perfected the district court's holding otherwise subject to reversal on its erroneous work for hire conclusion. *Siegel*, 364 F. Supp. at 1036; 504 F. 2d at 913-14.

Defendants have been operating profitably under the Second Circuit's decision for decades now. Part and parcel of the Second Circuit's ruling that Siegel and Shuster owned the Action No. 1 copyright and transferred it to Detective, including its renewal term, was its well-considered holding that Action No. 1 was *not* owned by Detective *at inception* as work for hire. *Siegel*, 504 F. 2d at 913-14. *See Norris*, 803 F.2d at 1285 (collateral estoppel extends to issues which "by necessary implication…[are] contained in that which [was] explicitly decided."). Defendants cannot pick and choose the portions of the decision that are favorable, while ignoring its underlying rationale. Defendants are precluded from raising the previously adjudicated work for hire issue on collateral estoppel grounds.

> ### 2. Defendants Cannot Own Parts Of Action No. 1 As A Matter Of Law Because It Is A Joint Work, The Elements Of Which Are Merged Into An Indivisible Unitary Whole

Defendants' entire "work for hire" argument is falsely premised on the erroneous assumption that Detective could segregate and own separate copyrights in mere portions of the jointly authored Action No. 1, namely, the limited alleged "additional materials" and the "colors" included therein. Unsurprisingly, Defendants fail to provide *any* legal authority for their false underlying assumption.

Siegel and Shuster's "Superman" comic book story first published in Action Comics, No. 1 is a classic collaborative "joint work" in which the pictures and text are deemed merged into a unitary whole. Bergman Decl., Ex. J (Action No. 1); *Picture Music, Inc. v. Bourne, Inc.*, 314 F. Supp. 640, 645-647 (S.D.N.Y. 1970),

15

1  *aff'd*, 457 F.2d 1213 (2d Cir. 1972); *see* 1 *Nimmer* § 6.03, at 6-6.  Defendants cannot

2  unilaterally pluck the "additional materials" (purportedly, a couple of panels) and the

3  color from this copyrighted *joint work*, and claim a copyright therein separate and

4  apart from the unitary work it comprises.

5  It is undisputed and admitted by Defendants that Action No. 1 was a "joint

6  work" created by co-authors, Siegel and Shuster: "In the 1930's, Plaintiffs'

7  predecessor, Siegel, along with his creative partner, artist Joseph Shuster … ***jointly***

8  conceived of and created a comic strip that ultimately became the first Superman

9  story." (Opp. at 5:5-7 (emphasis added); *see also* Opp. at 17:15-18; 57:3-4:

10  "Plaintiffs accurately note the general principle that each of two joint authors own an

11  ***undivided*** fifty percent interest in the copyright of the work…" (emphasis added) ).

12  The 1909 Act did not contain a definition of "joint authorship" or "joint work,"

13  which was left to the Courts to define.  *Shapiro, Bernstein & Co. v. Jerry Vogel*

14  *Music Co.*, 161 F.2d 406, 409 (2d Cir. 1946) *cert. denied*, 67 S. Ct. 1310 (1947), a

15  leading joint authorship case under the 1909 Act, defined a "joint work" as "a work

16  by two or more authors who merge their contributions into a single composition

17  which is perceived by the audience as a unit." [7]

18  "Superman" satisfies this definition as Siegel merged his story/continuity with

19  Shuster's illustrations into a single composition in Action No. 1 comprised of

20  numerous panels, perceived as a unified "Superman" story.  *Shapiro,* 161 F.2d at 409.

21  The 1976 Copyright Act did not alter this definition.  It defines "joint work" as

22  "a work prepared by two or more authors with the intention that their contribution be

23  ***merged into inseparable or interdependent parts of a unitary whole***." 17 U.S.C. §

24  101.  *See Erickson v. Trinity Theatre*, 13 F.3d 1061, (7th Cir. 1994)("The legislative

---

[7] Under the 1909 Act, a joint work resulted "[w]hen two or more authors pursuing a common design together create a single work."  *Picture Music*, 314 F. Supp. at 645-647, *aff'd*, 457 F.2d 1213 (2d Cir. 1972).  Intent is evident from a collaborative effort to merge components into a unitary whole, as Siegel and Shuster's words and pictures are merged in Action No. 1.  *See Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 266, 267 (2d Cir. 1944), *modified*, 140F.2d 268 (2d Cir. 1944) ("it is enough that they mean their contributions to be complimentary in the sense that they are to be embodied in a single work").

16

history states that…an example of interdependent parts are the lyrics and music for a song."); *BTE v. Bonnecaze,* 1998 U.S. Dist. LEXIS 18166 (E.D. 1998)("Parts of a unitary whole are considered "interdependent" when "they have some meaning standing alone but achieve their primary significance because of their combined effect."); *Childress v. Taylor*, 945 F.2d 500, 505 (2nd Cir. 1991).

As acknowledged by Defendants in their Motion for Partial Summary Judgment ("Def. MPSJ"):

> "Under the 1909 Act as today, each joint owner is a co-owner who possesses an *'undivided ownership in the entire work, including all of the contributions contained therein'* 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 6.03 at 6-7 (2005)…subject to a duty to account to the other co-owners for their share of profits"

(Def. MPSJ at 19:2-6).  *See Pye v. Mitchell*, 574 F.2d 476, 480 (9th Cir. 1978); *Sweet Music, Inc. v. Melrose Music Corp*., 187 F. Supp. 655, 659 (S.D. Cal. 1960).

To dilute Plaintiffs' recaptured copyright interest, Defendants incorrectly assert that Action No. 1's so-called "additional materials," color, and cover (shown in allegedly prior "in house announcements;" *see* Def. MPSJ at 38:17-20) each purportedly constitute separate copyrights owned by Defendants, contrary to Action No. 1's admitted status as an indivisible joint work.[8]  Defendants do not and cannot cite any legal authority for this erroneous premise as it is contrary to the law governing joint works.  *See Edward B. Marks Music Corp. v. Jerry Vogel Music Co*., 140 F.2d 266, 267 (1944) (L. Hand)(song comprised of lyrics and music "had to be renewed as a whole, or not at all, for it was the indivisible product of 'joint authors.'"); *see also* William F. Patry, 2 *Patry on Copyright* § 5:123 ("There is no such thing as divisibility of the [joint] work.").[9]

---

[8] Even notwithstanding this, Defendants overstate the copyrightability of Detective's purported coloration of Action No. 1.  As noted in 37 C.F.R. §202.1(a), "mere variations of typographic ornamentation, lettering or coloring" are not the subject of copyright.

[9] Defendants self-serving claims are belied by Defendants and its predecessors' own conduct. Consistent with Action No. 1's status as an indivisible joint work, Defendants and/or its predecessors solely registered and renewed Action No. 1 as a single work.  Toberoff Decl., Ex. F. Unsurprisingly, Defendants have provided no evidence of separate copyright registrations or renewals corresponding to their suddenly convenient, if not absurd, assertions that they wholly own separate copyrights in the so-called "Additional Action Comics No. 1 Materials," the Action No. 1

17

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

While admitting that "Superman" is a joint work by Siegel and Shuster, Defendants have not hesitated to assert that they own an undivided 50% interest in "Superman" as the successor in interest to *Shuster's* un-terminated joint interest. (Opp. at 17:15-18; 57:3-4; Def. MPSJ at 5: 13-15; 15:12-16). Yet, Defendants, without any legal authority, impermissibly slice and dice the "inseparable or interdependent parts of [this] unitary whole," in a vain attempt to reduce the value of Siegel's joint interest, recaptured by Plaintiffs. 17 U.S.C. § 101; *see* 1 *Nimmer on Copyright*, § 6.03 at 6-7 (joint owner possesses "undivided ownership in the entire work, including all of the contributions contained therein"); *Pye*, 574 F.2d at 480 (9th Cir. 1978).

Even if Defendants' dubious position that some small portion of Action No. 1 is "work for hire" were correct (it is not) this would not alter the result. Detective would be deemed the "author" of this limited "additional material." 17 USC § 26 (repealed). However, as this material, including the color, is merged within the joint work, Action No. 1, Plaintiffs, as the successor to co-author Siegel, would still be entitled as a tenant in common to share in the profits earned by the copyright in the entire "undivided" joint work. 1 *Nimmer on Copyright*, § 6.10; *Oddo v. Ries*, 743 F.2d at 632-33.

**3.** **Defendants Mischaracterize The Evidence And Fail To Raise A Genuine Issue Of Fact As To Whether A Small Portion Of Action No. 1 Is Work For Hire**

Although precluded by *res judicata* and collateral estoppel principles and moot as to a joint work, Defendants also fail to meet their evidentiary burden of demonstrating a genuine issue of material fact under as to their purported "work for hire" claim. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323; 106 S. Ct. 2548; 91 L. Ed. 2d 265 (1986). *See also Self-Realization Fellowship Ch. v.*

---

Cover, its color, etc. *See* 2-7 *Nimmer on Copyright* § 7.16("[W]here there was a failure to promptly register and deposit, under the 1909 Act, some questions as to the viability of the copyright might be raised").

18

*Ananda Ch.*, 206 F.3d 1322, 1331 (9th Cir. 2000)(Ninth Circuit evaluates "claims that a work was 'made for hire'" by requiring "credible evidence that the work was done at the 'instance and expense' of the commissioning party"); *quoting Dolman v. Agee*, 157 F.3d 708, 712 (9th Cir. 1998). <u>Plaintiffs' discussion below of Defendants' failure to meet its evidentiary burden under Fed. R. Civ. P. 56(e) should not be mistaken for raising issues of fact, as any evidentiary issues are mooted by Plaintiffs' above legal analysis.</u>

Defendants' admissions and documentary evidence all point to the conclusion that the purported limited material added by Siegel and Shuster in converting their original "Superman" story from a newspaper to magazine format was *not* "work made for hire." *See Siegel*, 508 F.2d at 914.

Defendants' assertion that Detective owned the purported additional material "at inception" merely because Detective requested that Siegel and Shuster cut and paste their "Superman" story into a magazine format makes little sense. Siegel and Shuster did so "on spec" on their own volition as they were still simply trying to get their work published.[10] Toberoff Decl., Ex. B (1948 FOF) at Facts 32, 34. *See Forward v. Thorogood,* 985 F.2d 604, (1st Cir. 1993) (holding demo tapes prepared by artist for the purposes of enticing record company to produce and distribute them were not created at the instance of the employer). Siegel and Shuster were under no obligation to convert their "Superman" strip to a magazine format and Detective was under no obligation to pay for such conversion should they ultimately have rejected Action No. 1 as re-cut. Thus, this conversion was undertaken by Siegel and Shuster

---

[10] The cases cited by Defendants are either readily distinguishable or held that the works in question were not "works for hire": *Twentieth Century Fox Film Corp. v. Entm't Distrib*., 429 F.3d 869 (9th Cir. Cal. 2005)(book held to be work for hire because author clearly did not begin writing it until after he entered into agreement with publisher guaranteeing him payment); *Playboy Enters. v. Dumas,* 53 F.3d 549, 554 (2d Cir. N.Y. 1995)(paintings produced by artist only after being retained by employer constituted works for hire); *Niss v. Columbia Pictures Indus.,* 2000 U.S. Dist. LEXIS 18328, (S.D.N.Y. Dec. 20, 2000)(finding that writer's story treatment was not completed before employment); *Easter Seal Soc. for Crippled Children & Adults, Inc. v. Playboy Enterprises,* 815 F.2d 323 (5th Cir. 1987)(video-tape of Mardi Gras parade held not to be work for hire); *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, (9th Cir. Cal. 2000)(monk's writings held not to be work for hire).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1    at their own risk and expense, with no guarantee of payment by Detective.

2          While purporting to rely on *Twentieth Century*, 429 F. 3d 869, Defendants

3    unwittingly distinguish the case by quoting it.  (Opp. at 33:16-19: "The 'expense'

4    prong of the instance and expense test is also met [where]…the hiring party takes on

5    all the financial risk.  *Twentieth Century*, 429 F. 3d 869 at 881.")  Plaintiffs' similarly

6    distinguish *Playboy*, while purporting to rely on it.  (Opp. 33: 19: "The expense

7    element is also satisfied when the employing party 'simply' pays a sum certain to the

8    creator – regardless… of whether these works were ever published.  *Playboy*, 53 F.3d

9    at 555.")  Here, it is clear that if Detective did not ultimately accept Siegel and

10   Shuster's re-cut "Superman" strip, Siegel and Shuster would be stuck with their time,

11   effort and the expense of creating the material.[11]

12         It is undisputed that the March 1, 1938 assignment paying Siegel and Shuster

13   $130 for the finished product was entered into *after* the thirteen page Action No. 1

14   had been completed and accepted by Detective for publication.  Toberoff Decl., Ex. B

15   (1948 FOF) at Facts 32 ("The first thirteen pages of SUPERMAN material …were in

16   existence…before the execution of the instrument of March 1, 1938.") and 34; *Siegel*,

17   364 F.Supp. at 1034; *Siegel*, 508 F.2d at 911,  Toberoff Decl., Ex. E (March 1, 1938

18   Grant).  Defendants acknowledge this.  Toberoff Decl., Ex. R (FACC), ¶ 11 ("Siegel

19   and Shuster cut and pasted the [newspaper] comic strips…to create a thirteen page

20   comic book story which was accepted for publication by [Detective]").  This is

21   simply not "work for hire," as held in *Siegel*, 508 F.2d at 914.

22         In addition to this evidence, the March 1, 1938 assignment, itself, runs counter

23   to any work for hire relationship wherein Siegel and Shuster's work would be owned

24   by Detective at inception without need of a grant.  *See Dolman*, 157 F.3d at 712

25   (written assignment of songs to employer's company rebutted any work for hire

---

[11] Under their subsequent September 22, 1938 agreement with Detective, Siegel and Shuster were to
be paid $10 per page, but only for work ultimately accepted by Detective for publication.  Bergman
Decl., Ex. L (September 22, 1938 agreement).  Siegel and Shuster, not Detective, assumed "the
financial risk." *Twentieth Century*, 429 F.3d at 881.  If the work was rejected, Detective was under
no obligation to pay for it.  *Id.*; *Playboy*, 53 F.3d at 555; Bergman Decl., Ex. L.

**ER 2528**
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

presumption); *Shapiro,* 221 F.2d at 570, (no work for hire where employer *purchased* song from employee).

Defendants grossly mischaracterize the statements made by Siegel and Shuster regarding their minor revisions of their "Superman" story to convert it from a newspaper to magazine format, in the hopes of manufacturing issues of material fact. *See Siegel*, 508 F.2d at 911, 914. Specifically, Defendants contend that Siegel and Shuster's affidavits in the 1974 Action reveal that the minor revisions (consisting of a couple of panels added by Siegel and Shuster to their pre-existing "Superman" story on page 1 and one panel on page 13 of Action No. 1) were created under Detective's direction and control. (Opp. at 28). However, Siegel and Shuster made no such representations. *See* Bergman Decl., Exs. G (Shuster affidavit), H (Siegel affidavit).

In fact, Siegel and Shuster both testify clearly that the steps taken to convert their original "Superman" story from a newspaper to magazine format, were taken on their own volition and at their expense to facilitate its acceptance for publication. Bergman Decl., Ex G (Shuster affidavit) at 2; Ex. H (Siegel affidavit) at 4-5; *Siegel*, 364 F.Supp. at 1034; 508 F.2d at 911, 914. In reality, Detective merely provided Siegel and Shuster with the specifications of their magazine format (13 pages with 8 panels per page) and left it to Siegel and Shuster to figure it out. *See* Bergman Decl., Ex. C (Detective's letter: "just lay the thing out.")

In a vain attempt to prove their legally un-cognizable claim that a small part of Action No. 1 was "work for hire," Defendants misleadingly quote Siegel and Shusters' affidavits out of context, misrepresenting Shuster as indicating "DC requested detailed revisions and changes." (Opp. at 28: 11-12). In fact, Shuster is adamant in declaring that none of the revisions he undertook were subject to Detective's direction or control: "I am aware that the defendants on this motion have taken the position that they directed Jerry and I to revise and expand the Superman material submitted to them. This contention is false….We were given no instructions or directions by Detective as to what to do or what to include in Superman." Bergman

21

Decl., Ex. G (Shuster affidavit) at 2. Shuster explains that these changes were minor and done only to "conform to Detective's page size" and to be certain of "having a sufficient number of panels to make a thirteen page release." *Id.* Shuster also highlights how Detective had no control over the content of Superman: "…Detective preferred having eight panels per page but in our judgment this would hurt the property…We did not want to alter this because of its dramatic effect. Accordingly, on this page but six panels appeared." *Id.*

Siegel is equally clear in his affidavit, again, selectively quoted by Defendants to mislead, that Superman was not created at Detective's instance and expense. Siegel states: "At no time did Detective direct or even request that this material be revised. In fact it was published as we submitted it…It must be remembered, too, that we had no responsibility to Detective regarding 'Superman.' We could well have ignored its requests and placed the property elsewhere." Bergman Decl., Ex. H (Siegel affidavit) at 4-5. Significantly, Siegel points out that the minor additional pictures added by Shuster to satisfy the magazine's 8 page format "illustrated the story continuity [Siegel] had already written." *Id.* at 5. Siegel also dismisses the relevance of the letters sent by National's editor, Vin Sullivan, submitted by defendants in the 1974 Action and in this action. (Bergman Decl., Exs. B, C, I):

> "The Wallace affidavit makes much of the fact that the number of panels per page were of interest to editor Vin Sullivan. This was the most inconsequential of considerations, his only concern being that there be enough panels per page to make a thirteen page feature…These minor additions were done on our initiative without any assistance or direction from Detective."

Bergman Decl., Ex. H (Siegel affidavit) at 5. *See Lin-Brook Builders Hardware v. Gertler*, 352 F.2d 298, 300 (9th Cir 1965) (work for hire status turns on "mutual intent of the parties").

Defendants disingenuously state: "DC [*sic*] requested detailed revisions and changes in order to make the story suitable for publication" (Opp. at 28: 12-13) without out any evidence of this, when all Detective asked was for Siegel and Shuster

22

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1    to re-cut their newspaper strip to fit a certain number of pages/panels per page.

2    Defendants further contend that the comic book printer, not Siegel and Shuster

3    added the color to Action No. 1.  (Opp. 7: 13-24).  As set forth above, Defendants'

4    argument that Action No. 1's color is a separately copyrightable contribution to this

5    *joint work* is erroneous as a matter of law.  Additionally, problems plague

6    Defendants' evidence.

7    Firstly, the declaration of Jack Adler ("Adler") on which Defendants rely

8    contains numerous inadmissible statements, while artfully drafted to give the

9    appearance that he has personal knowledge.  *See* Plaintiffs' Evidentiary Objections

10   filed concurrently herewith.  Defendants bill Adler as an "eye-witness" (Opp. 29: 24);

11   yet, Adler never states that he, himself, was involved in or witnessed the colorizing of

12   Siegel and Shuster's "Superman" story, and it strongly appears that he was not.  *See*

13   Reply Declaration of Mark Evanier ("Evanier Reply Decl."), ¶¶ 6-10.  The most he

14   can muster is a vague statement that leaves in question whether he has any personal

15   knowledge of the purported colorization of Action No. 1:  "Color was applied as part

16   of the regular printing process."  Adler Decl., ¶ 3.  Adler only talks about the general

17   process of coloring comic books and states that he is "aware" that a fellow employee

18   selected the color for just the "S" on Superman's costume, begging the question about

19   the rest of Action No. 1.  *Id*.  In opposing Plaintiffs' motion for partial summary

20   judgment, Defendants may not rest on such a generalized declaration, but must

21   "designate specific facts" showing a genuine issue for trial.  F.R.C.P. 56(e); *Hansen*

22   *v. United States*, 7 F.3d 137, 138 (9th Cir. 1993)(Taxpayers declaration they did not

23   receive IRS tax notice insufficient to raise triable issue because they were "required

24   to present 'specific facts' showing that the IRS did not send them notice and

25   demand.").

26   Moreover, even if the mechanical colorization of Action No. 1 was handled by

27   the engravers, this would not prevent Siegel and Shuster from choosing the colors of

28   their "pet project" from 1933, in the form of "color guides" or sketches as this was

23

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

common place for comic strip artists at that time.  *See* Evanier Reply Decl., ¶ 9; *Siegel*, 504 F.2d at 911.

Defendants point to National's renewal registration of Action Comics, No. 1 "as proprietor of a work made for hire" in 1965, 27 years after its initial publication by Detective.  (Opp. 8:6-7, *citing* Toberoff Decl., Ex. F at Bates no. DCC 00045628). However, the renewal registration cited by Defendants of the blanket copyright to Detective's collective periodical, has little relevance to the "work for hire" status of a "Superman" story contained therein.  Defendants vaguely refer to original and renewal copyright registrations subsequent to Action Comics, No. 1, without citing to or presenting any evidence of same.  (Opp. at 10:14-19).  Moreover, an examination of *Detective's* early copyright registrations regarding "Superman" reveals that *Detective listed Siegel and Shuster as the authors*, not Detective as the putative author or proprietor of a "work made for hire."  Toberoff Reply Decl., Ex. C.[12]

Having offered little other than the calculated misrepresentations of the contents of Siegel and Shuster's affidavits, and Adler's vague, objectionable declaration as to Action No. 1's color, even if Defendants were not barred as they are by the doctrines of *res judicata* and/or collateral estoppel, or had not failed as they did to present a legally cognizable theory, Defendants have not met their evidentiary burden of demonstrating a genuine issue of material fact as to Siegel and Shuster's ownership of the Action No. 1 copyright prior to its assignment to Detective on

---

[12] As the Action Comics, No. 1 magazine was a collective periodical containing several stories, its registration would not include the authors.  However, "Superman" soon deserved his own magazine, the first issue of which was "Superman, No. 1."  Tellingly, Detective's registration of "Superman, No. 1" in 1939 listed Siegel and Shuster as its authors.  Toberoff Reply Decl., Ex. C at 12 ("Superman, by Jerome Siegel and Joe Shuster").  Similarly, the McClure newspaper syndicate listed Siegel and Shuster as the authors when it registered the copyrights to the 1939 "Superman" daily newspaper strips.  *Id.*, Ex. C at 13, 14 ("Superman, by Jerry Siegel and Joe Shuster"). Even the copyrights of early "Superman" merchandise, such as 1940 "Superman" coloring books and "cut-outs" listed Siegel and Shuster as the authors.  *Id.*, Ex C at 17 ("Superman coloring book by Jerry Siegel and Joe Shuster").  Significantly, this material was allegedly created under the two September 22, 1938 agreements relied on by Defendants to suggest a "work for hire" relationship after Siegel and Shuster completed Action No. 1.  These earlier registrations lie in sharp contrast to National's later copyright registrations of "Superman," for instance, in 1976.  *Id.*, Ex. C at 20 ("Superman.  By National Comics Publications, Inc. & Harry Donenfeld" [President]).

24

1    March 1, 1938.  *Siegel*, 508 F.2d at 914.

2    **B.**    **Plaintiffs' Termination Notice Complied With 17 U.S.C. § 304(c)**

3          **And Is Not Invalidated By Not Listing The Consent Judgment**

4          **Which Is Not A Copyright "Grant"**

5    Defendants acknowledge, as they must, that Judge Ronald S. Lew's March 24,

6 2006 Order granting Plaintiffs' Motion for Partial Summary Judgment as to the

7 validity of their analogous notice of termination in the "Superboy" action, case no.

8 04-8776 ("March 24, 2006 Order")[13] resolved that Plaintiffs need not have listed the

9 May 22, 1948 consent judgment ("May 22, 1948 Consent Judgment") in their

10 termination notice.  (Opp. at 39, fn. 30).  Judge Lew held as follows:

11      "Defendants argued that Plaintiffs failed to comply with the termination
regulations, because ***the termination notices only list the May 19, 1948***

12      ***stipulated agreement, but did not list the May 21, 1948 'Final Consent***
***Agreement.'***

13

14      This court finds that ***no genuine issue exists*** that the operative grant of
"Superboy" by Jerome Siegel was the May 19, 1948 stipulated

15      settlement and that ***the consent judgment merely followed the parties'***
***stipulation and was entered by the Court two days later***.  Additionally,

16      Regulation 201.10(b)(1)(iv) merely requires a "brief statement
reasonably identifying the grant to which the notice of termination

17      applies."  In fact, Regulation 201.10(e) provides that:

18          harmless errors in a notice that do not materially affect the
adequacy of the information required to serve the purposes of

19          …section 304(c) … shall not render the notice invalid.

20      Here, by listing the May 19, 1948 stipulated settlement, the termination
notices provide a brief statement reasonably identifying the grant in

21      question.  Even, if including the May 21, 1948 consent judgment would
have provided additional notice, ***its absence in no way materially***

22      ***affected the adequacy of Plaintiffs' notice***."

23 Toberoff Decl., Ex. U (March 24, 2006 Order) at 12-13.

24    This holding and rationale applies with equal force to the Superman Action

25 "where the operative grant" of Siegel's original "Superman" copyrights was the

26

27 _____

[13] Defendants erroneously assert that "the bulk" of their counterclaims and defenses to Plaintiffs'
"Superboy" Notice of Termination "were not litigated as part of Plaintiffs' motion" (Opp. at 25:28-

28 26:2).  This is belied by the parties' cross-motions and by Judge Lew's Order, denying Defendants'
motion and granting Plaintiffs' motion in its entirety.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1    March 1, 1938 Grant and the May 19, 1948 Stipulation of settlement (underlying the

2    May 22, 1948 Consent Judgment) were both identified in Plaintiffs' respective

3    Termination Notices. Toberoff Decl., Exs. G, K.

4         Defendants' mention their procedurally improper motion for reconsideration,

5    but fail to acknowledge that the motion does not request reconsideration of Judge

6    Lew's denial of their purported defense regarding the May 21, 1948 Consent

7    Judgment. Judge Lew's holding that the May 21, 1948 Consent Judgment need not

8    have been listed in Plaintiffs' termination notices and that its omission did not affect

9    the validity of the termination is the "law of the case." *United States v. Alexander,*

10   106 F.3d 874, 876 (9th Cir. Cal. 1997). (Under the "law of the case doctrine, a court

11   is generally precluded from reconsidering an issue that has already been decided by

12   the same court, or a higher court, in the identical case.") The law of the case doctrine

13   applies "not only to issues decided explicitly in an earlier opinion, but also to issues

14   decided by necessary implication." *United States v. Iron Mt. Mines, Inc.,* 987 F.

15   Supp. 1244, 1246 (E.D. Cal. 1997). Moreover, "so long as the issue was decided by

16   necessary implication, it does not matter if the treatment of the issue was summary or

17   somewhat ambiguous." *Id*., *citing Leslie Salt Co. v. United States*, 55 F.3d 1388,

18   1392 (9th Cir. 1995).

19        As shown in Plaintiffs' Motion (section III D 1.) and their well-researched

20   Notices of Termination, Plaintiffs meticulously complied with 17 U.S.C. § 304(c) and

21   37 C.F.R. § 201.10. Toberoff Decl., Exs. G-N. Plaintiffs served the proper parties

22   and filed the Notices with the U.S. Copyright Office, all within the statutorily defined

23   time frame. The Notices also reflect considerable due diligence with respect to the

24   research and detailed listing of the works that are affected and those which could

25   potentially be affected by the Terminations in compliance with the regulations and

26   *Burroughs v. Metro-Goldwyn Mayer, Inc.*, 683 F.2d 610 (2d Cir. 1982). *Id*.

27        It is evident from Plaintiffs' detailed Notices that the reason the 1948 Consent

28   Judgment was not listed was because the judgment cannot be viewed, even remotely,

26

1   as a grant.  Section 304(c) provides only for the termination of a "grant of a transfer

2   or license of the renewal copyright."  The Register of Copyright's regulations ask for

3   "a brief statement reasonably identifying the grant to which the notice of termination

4   applies." 37 C.F.R. § 201.10 (b)(1)(iv).

5       In compliance, Plaintiffs' Termination Notice (No. 1) identified the March 1,

6   1938 Grant, which for purposes of Plaintiffs' Motion is the operative grant to

7   Defendants' predecessor, Detective, of Siegel and Shuster's original "Superman"

8   story, published in Action Comics, No. 1.  Toberoff Decl., Ex. G.   Plaintiffs' served

9   on Defendants and filed with the Copyright Office six additional Termination Notices

10  (Nos. 2-7), out of an abundance of caution, to the extent that the respective agreement

11  identified therein might be construed to have granted any "Superman" works co-

12  authored by Siegel.  Toberoff Decl., Exs. H-M.  Among Plaintiffs' additional notices,

13  Termination Notice No. 6 identified the May 19, 1948 stipulation ("May 19,1948

14  Stipulation") that settled the 1947 Action, wherein Siegel and Shuster re-

15  acknowledged National's ownership of "Superman" and received money for Siegel's

16  grant of "Superboy" to National.  Toberoff Decl., Ex. K (Termination Notice No. 6)

17  at ¶ 3, p. 551; Toberoff Decl., Ex. C (May 19, 1948 Stipulation).  The May 19, 1948

18  Stipulation provided for the May 21, 1948 Consent Judgment that was entered two

19  days later incorporating the terms agreed upon in the stipulation.

20      Defendants' argument that the service of multiple Termination Notices proves

21  that the May 21, 1948 Consent Judgment is a grant of copyright in "Superman"

22  makes no sense.  (Opp. at 40).  The March 1, 1938 Grant was held in both the 1947

23  Action and in the 1974 Action to have conveyed all rights in "Superman" to

24  Detective.  *Siegel*, 364 F. Supp at 1035, 1037-38, *aff'd* 508 F.2d at 911-912; Toberoff

25  Decl., Ex. B (1948 COL) Conclusion No. 1.   As all of Siegel's copyright interest in

26  "Superman" had been granted to Detective prior to the May 21, 1948 Consent

27  Judgment, even in the unlikely event the judgment could even be considered a

28  "grant," it could not, as a matter of law, have granted to National such rights already

27

1    in National's possession as Detective's successor. *Siegel*, 364 F. Supp. at 1034.[14]

2    Defendants vaguely sneer at this legal reasoning, but do not, because they cannot,

3    counter it.

4        Instead, Defendants disingenuously state that in the May 21, 1948 Consent

5    Judgment Siegel "effectuated the transfer to National of the sole and exclusive

6    ownership of all rights relating to 'Superman'" (Opp. 39:21-23), contrary to *Siegel*,

7    364 F. Supp at 1035, 1037-38, *aff'd* 508 F.2d at 911-912 and Judge Young's first

8    conclusion of law noted in *Siegel*, *supra*. Toberoff Decl., Ex. B (1948 COL) No. 1.

9    In fact, the May 21, 1948 Consent Judgment:

10

11       "DECLARED and ADJUDGED that by virtue of the instrument of
         March 1, 1938, plaintiffs validly transferred to DETECTIVE…all of
12       their rights, in and to the comic strip SUPERMAN, including the title,
         names, characters, concept and formula as same was set forth in [Action
13       No. 1]…and that by virtue of that instrument, said DETECTIVE…
         became the absolute owner of the comic strip SUPERMAN…"

14   Toberoff Decl., Ex. D (May 21, 1948 Consent Judgment) at 3.

15       To the extent it is argued that the judgment is a "grant" (it clearly is not) the

16   identification in Plaintiffs' Termination Notice No. 6 of the underlying May 19, 1948

17   Stipulation, which provided for the consent judgment, and which the May 21, 1948

18   Consent Judgment follows verbatim, "reasonably identifies" the consent judgment

19   entered two days later pursuant to the stipulation. Toberoff Decl. Exs. C, D.

20       The Register of Copyright's regulations, on which Defendants attempt to base

21   their argument, specifically dissuade hyper-technical attempts to invalidate a

22   termination notice: "Harmless errors in a notice that do not materially affect the

23   adequacy of the information required to serve the purposes of [304(c)] shall not

24   render the notice invalid," 37 CFR § 201.10(e)(1), nor is such a result supported by

25   case law or any other authority.[15]

26

27   [14] Each of the other agreements identified in Plaintiffs' additional Termination Notices, out of an abundance of caution, speak for themselves as to whether in light of the March 1, 1938 Grant, they can be considered "Superman" copyright grants.

28

[15] The 1948 Consent Judgment can also have no adverse future impact on Plaintiffs' Termination as

28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Defendants miss-cite *Burroughs,* 683 F.2d at 621-22, for their unsupported

2  claim. *Burroughs* held that a notice of termination applies to those *works* that are

3  listed in the notice. *Id*. at 622. However, with respect to *grants*, the Court found that

4  a termination notice identifying a single 1923 grant and 35 titles was <u>not</u> rendered

5  ineffective by its' failure to list the later grants by which many of the titles had been

6  assigned. *Id*. at 610, 614, 618, 622.

7    Defendants also miss-cite and incorrectly describe *Milne v. Stephen Slesinger,*

8  *Inc.*, 430 F.3d 1036 (9th Cir. 2005) as somehow supporting their position. But *Milne*

9  in no way concerns the listing of "grants" in a termination notice. *Milne* held that a

10  *post-1978 grant* could not be terminated under 17 U.S.C. § 304(c), where its

11  predecessor pre-1978 grant had long ago been revoked. *Id*. at 1048.

12    In *Music Sales Corp. v. Morris*, 73 F. Supp. 2d 364, 378 (S.D.N.Y. 1999) the

13  termination notice simply identified the grant as a "grant or transfer of copyright and

14  the rights of copyright proprietor." *Id*. The Court held such notice to be adequate

15  though such "generic statement would not seem to reasonably identify the grant." *Id*.

16    In sum, as found by Judge Lew with respect to the analogous "Superboy"

17  Notice of Termination, Defendants received more than ample notice within the

18  statutory period of Plaintiffs' intention to terminate all prior grants of "Superman"

19  under 17 U.S.C. § 304(c) and were in no way prejudiced by Plaintiffs not listing the

20  May 21,1948 Consent Judgment, when the operative March 1, 1938 Grant conveying

21  "Superman" and, in addition, the underlying May 19, 1948 Stipulation, were clearly

22  identified in Plaintiffs' Termination Notices. Toberoff Decl., Ex. U, at 12-13.

23    **C.    Defendants Continued Payment Of A Pension To Joanne Siegel Has**

24        **No Affect On The Validity Of Plaintiffs' "Superman" Termination**

25    Defendants make the dubious argument that Joanne Siegel's acceptance of

26

27  some sort of prospective grant as "[t]ermination…may be effected notwithstanding any agreement
   to the contrary" 17 U.S.C. § 304(c)(5) and neither Siegel's nor Plaintiffs' reversionary termination

28  interest under Section 304(c) could have been assigned until "after the notice of termination ha[d]
   been served [in 1996]." 17 U.S.C. § 304(c)(6)(B),(D).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Warner's voluntary pension payments somehow transforms the mere acknowledgement in the December 23, 1975 Agreement of Warner Communications, Inc.'s ("WCI") ownership of "Superman," based on Siegel and Shuster's prior operative grants, into a re-instated "copyright grant," purportedly destroying Plaintiffs' recapture of the original "Superman" copyrights via termination of the operative the March 1, 1938 Grant. This imaginary, unsupported claim can and should be disposed of on summary judgment.[16]

## 1. The 1975 Agreement On Its Face Is Not A Copyright Grant, Nor Could It Be As A Matter of Law

As a matter of law, even if Defendants' unproven theories somehow reinstated the December 23, 1975 Agreement, it is not, on its face, a copyright **grant** in "Superman." Toberoff Decl., Ex. Y. Moreover, even if it purported to be such a grant, which it does not, it could not have granted the "Superman" copyrights previously assigned to Detective and already in WCI's possession as its successors-in-interest. Defendants' Opposition does not, because it cannot, effectively address or counter this conclusion, rendering the rest of Defendants' arguments legally moot.

Defendants do not and cannot provide any evidence to support their erroneous premise that the December 23, 1975 Agreement is a copyright grant. Instead, Defendants argue solely that the 1975 agreement is a copyright grant because (1) Plaintiffs purportedly made a "judicial admission" in referring to the terminated agreements, along with the 1975 agreement, as "alleged grants" (Opp. at 10:16), and (2) Plaintiffs filed a notice of termination (Opp. at 44:17-27) listing the 1975 agreement in case Defendants attempted, as they do, to claim it is a grant.

In asserting a supposed "judicial admission," Defendants state misleadingly that Plaintiffs referred to the 1975 agreement as a "grant" in paragraphs 38 and 39 of

---

[16] In place of considered legal analysis, Defendants once again attempt to prejudice the Court's review by *repeatedly* and gratuitously reciting purported large amounts of money collectively paid to Joanne Siegel over the years as a pension, knowing the amount allegedly paid is legally immaterial. (Opp. 14:23-15:2, 41:9-11).

30

their First Amended Complaint ("FAC") and on page 1 of Plaintiffs' opening brief. In fact, Plaintiffs specifically define and refer to the December 23, 1975 Agreement in its FAC, along with the other agreements for which notices were served, merely as "Alleged Grants."  Toberoff Decl., Ex. GG (FAC) at ¶¶ 38-39.  Nor do Plaintiffs refer to the December 23, 1975 Agreement as a copyright grant in their opening brief which explicitly shows that it is *not* a grant.

The second prong of Defendants' argument is equally meritless.  Plaintiffs could not and did not transform the December 23, 1975 Agreement into a copyright grant by serving a Termination Notice regarding the December 23, 1975 Agreement, just in case Defendants attempted (as they now do) to misconstrue it as a grant. Plaintiffs were well advised and can hardly be faulted for serving a Termination Notice identifying the December 23, 1975 Agreement and certain other agreements as a precautionary measure.[17]  Toberoff Decl., Exs. M, Y.

The 1974 Action expressly confirmed that Defendants' predecessor, Detective, was assigned the original "Superman" copyrights by Siegel and Shuster in their March 1, 1938 Grant.  *Siegel*, 364 F. Supp at 1035, 1037-38, *aff'd* 508 F.2d at 911-912; *see also* Toberoff Decl., Ex. B (1948 COL) No. 1.[18]  It is undisputed that the December 23, 1975 Agreement contains no grant language regarding Siegel and Shuster's "Superman" copyrights and that it specifically acknowledged that WCI already owned all rights to "Superman":  "The Court of Appeals unanimously decided that 'all rights in Superman, including the renewal copyright, have passed forever to [National Periodical Publications, Inc., a Warner subsidiary.]'"  Toberoff

---

[17] From the outset Plaintiffs, have consistently defined the March 1, 1938 Grant as a copyright "grant" and the other agreements identified in their Termination Notices as "agreements," aware that certain of these, particularly the 1975 agreement, do not legally constitute copyright grants.  *See* Bergman Decl., Ex. Q (FAC) at ¶¶ 24, 29, 30, 33, 35, 38; Toberoff Decl., Exs. E, G.

[18] Additional agreements followed the March 1, 1938 Grant which re-affirmed Detective's and then their successors' ongoing ownership of "Superman."  *See Siegel*, 364 F. Supp. at 1034. These agreements were also identified by Plaintiffs in separate Termination Notices as a cautionary measure.  Toberoff Decl., Exs. H-M.

31

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Decl., Ex. Y (December 23, 1975 Agreement), ¶ 3.

2          WCI nonetheless agreed in the December 23, 1975 Agreement to pay Siegel

3    and Shuster a small monthly stipend to counter negative publicity regarding their

4    treatment of Siegel and Shuster prior to the release of its first "Superman" movie.

5    Toberoff Decl., Ex. Y (December 23, 1975 Agreement) at ¶ 5.  Plaintiffs were not

6    parties to the December 23, 1975 Agreement.  *Id.*

7          The December 23, 1975 Agreement acknowledged that the payment to Siegel

8    and Shuster was not a negotiated rights payment, but merely voluntary:

9          "4.    Warner does not have any legal obligation to pay you any sum of
         money whatsoever and does not acknowledge that any wrong has been
10        done to you.

11        5.     Warner has nevertheless determined, in consideration for your
         past services to Warner and in view of your present circumstances, to
12        make the following voluntary payments."

13   *Id.*, ¶¶ 4-5.

14         Moreover, it is axiomatic that even if the December 23, 1975 Agreement had

15   been styled a "grant," that it could *not*, as a matter of law, have granted "Superman"

16   copyrights held to have been previously assigned by Siegel and Shuster to its

17   predecessor(s).  *Siegel*, 508 F.2d at 913-914. *See Larry Speier v. Bourne Co.*, 953

18   F.2d 774, 777 (2d Cir. 1992)(reiteration of an *inter vivos* grant by author in his will

19   does not void statutory heirs' termination right because author had already granted

20   the copyright to the terminated grantee while alive and had nothing left to grant);

21   *Steinbeck et al. v. Mcintosh & Otis et al.*, 453 F. Supp. 2d 395, 402 (S.D.N.Y.

22   2006)(author's 1938 grant of copyrights to publisher was subject to termination by

23   author's sons; the author's third wife could not have been granted in 1968 copyrights

24   previously granted in 1938).

25         By virtue of the foregoing, Defendants claim/defense regarding the December

26   23, 1975 Agreement fails as a matter of law and has no effect on Plaintiffs' recapture

27   of the original "Superman" copyrights via termination of the March 1, 1938 Grant.

28

32

**2.** **Defendants' Unsupported Theory That Mrs. Siegel's Acceptance Of Benefits Constitutes A "*De Facto* Post-Termination [Copyright] Grant To DC" Is Invalid As A Matter Of Law Under The Copyright Act**

Faced with Plaintiffs' Motion, Defendants for the first time narrowed their purported claim regarding the December 23, 1975 Agreement in their Opposition. Defendants admit that the 1975 Agreement could not have the effect of "assign[ing] Plaintiffs' termination interest to Defendants" because such "would be an ineffective 'agreement to the contrary' under section 304(c)(5)." (Opp. at 45: 17-22). However, Defendants attempt to achieve retroactively the same result by claiming "[i]nstead" that by Joanne Siegel's acceptance of pension benefits "Plaintiffs have thus de facto made a further post-termination grant to DC…and waived their right to make such grant to anyone else," citing two distinguishable rent cases discussed below. (Opp. at 46: 3-6).

Thus, it is even clearer that Defendants' unsupported theory is invalid *as a matter of law* under the Copyright Act's termination provisions. As set forth in Plaintiffs' moving brief, Plaintiffs, as Siegel's widow and daughter, respectively, constituted a majority sufficient to exercise the termination right and own the recaptured copyright interest under 17 U.S.C. §304(c)(1) and (2).[19]

Under 17 U.S.C. § 304(c)(6)(C):

> (C) Where the author's rights revert to two or more persons under clause (2) of this subsection …*a further grant, or agreement to make a further grant*, of a particular author's share with respect to any right

---

[19] Section 304(c) allows termination by the author's "widow" and "surviving children" which together own and are entitled to exercise more than one-half of the author's termination interest under the statute. 17 U.S.C. §304(c)(1) and (c)(2)(A),(B). Plaintiff Joanne Siegel is the author Siegel's widow and she therefore owns fifty percent (50%) of Siegel's termination interest. 17 U.S.C. §304(c)(2)(A); Toberoff Decl., Ex. R (First Amended Counterclaim ("FACC")), ¶ 2. Plaintiff Laura Siegel Larson is one of Siegel's two children, and she therefore owns twenty-five (25%) of Siegel's termination interest. 17 U.S.C. §304(c)(2)(A); Toberoff Decl., Ex. R (FACC), ¶ 3. Together Plaintiffs own and constitute the more than one-half of Siegel's termination interest required to effect the Termination. 17 U.S.C. § 304(c)(1).

33

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

covered by a terminated grant ***is valid only if it is signed by the same number and proportion of the owners, in whom the right has vested*** under this clause, as are required to terminate the grant under clause (2) of this subsection.

It is undisputed that the pension or widow's benefits in question have *only* been paid to and accepted by Joanne Siegel, not Laura Siegel Larson who co-owns the recaptured copyright interest. (Opp. 40:22-23); Toberoff Decl., Ex. R (FACC), ¶¶ 73, 75. Therefore, even if Defendants vague theories made sense (they do not), section 304(c)(6)(C) would prohibit even an explicit unilateral post-termination grant by Joanne Siegel alone. For this second reason, Defendants' theory also fails as a matter of law.

Moreover, under the Copyright Act, a grant of copyright must be in writing signed by the copyright owner(s). 17 U.S.C. § 204(a) ("A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance …is in writing and signed by the owner of the rights conveyed…").[20]

Hence, section 304(c)(6)(C) of the Copyright Act's termination provisions also mandates that a further grant of any copyright interest recaptured under section 304 (c)***"is valid only if it is signed"*** by all owners of such interest. Thus, Defendants' claim of a "*de facto*…post-termination grant to DC" fails as a matter of law for this third reason as well.

### 3. Defendants Provide No Support For Their Claim That Mrs. Siegel's Acceptance Of Voluntary Pension/Medical Benefits Nullifies Plaintiffs' Statutory Termination

In addition to the failure of Defendants' theory as a matter of law for the three distinct reasons set forth above, Defendants also completely fail to meet their burden of establishing that Joanne Siegel's acceptance of pension / medical benefits, voluntarily paid by Warner, nullifies Plaintiffs' termination of the December 23, 1975

---

[20] This provision was carried over in the current Copyright Act from section 28 of the 1909 Copyright Act which provided that a copyright might be "assigned, granted, or mortgaged" but that this could be done only "by an instrument in writing signed by the proprietor." 3-10 *Nimmer on Copyright* §10.03; *see also Roddenberry v. Roddenberry,* 44 Cal. App. 4th 634, 662 (1996), *Gardner v. Nizer*, 391 F.Supp. 940 (S.D.N.Y. 1975).

34

1   Agreement under the Copyright Act to the extent, if any, such agreement is construed

2   to contain a copyright grant.  17 U.S.C. § 304(c).

3          Defendants' do not "connect the dots" or provide any legal support for their

4   loosely articulated theory.[21]  While proclaiming that their ruminations are based on

5   purported "black letter principle[s]," Defendants cite to only two distinguishable rent

6   cases, *Kern Sunset Oil Co. v. Good Roads Oil Co.*, 214 Cal. 435, 440 (1931) and

7   *Miller v. Reidy*, 85 Cal. App. 757, 762 (1927) (re: month to month tenancy), holding

8   that a leassor's acceptance of rent prevents it from claiming forfeiture of a lease for

9   the paid rental period.  Defendants' misleadingly cite to one other case, *Milne,* 430

10  F.3d at 1048, which has absolutely nothing to do with Defendants' theory.  *Milne*

11  does not even stand for Defendants' bracketed summary: "(copyright termination

12  invalid where pre-1978 grant is still effective)." (Opp. at 46:23-24).  *Milne*, 430 F.3d

13  1036, 1048 held that a *post*-1978 copyright grant is not subject to termination under

14  17 U.S.C. §304(d).

15         Under section 304(c) of the Copyright Act only "the exclusive or nonexclusive

16  grant of a transfer or license of the renewal copyright or any right under it, executed

17  before January 1, 1978, is subject to termination." 17 U.S.C. § 304(c).  Therefore the

18  December 23, 1975 Agreement would be terminated by Plaintiffs' statutory notice to

19  the extent of a copyright grant therein.  This is further confirmed by section

20  304(c)(6)(E) ("Termination of a grant under this subsection affects only those rights

21  covered by the grants that arise under this title and in no way affects rights arising

22  under any other Federal, State or foreign laws.").

23         Other contractual provisions relating to pensions, "Created by" credit to Siegel

24  and Shsuter, etc. are not subject to termination under the Copyright Act.  The

25  agreement, itself, states that the pension is purely "voluntary."  Toberoff Decl., Ex. Y

---

26  [21] Instead, Defendants attempt to divert the Court's attention by spending a good part of their
27  Opposition on this issue, immaterially knocking down a straw man argument never made by
    Plaintiffs.  (Opp. at 42:3-7: "Recognizing their untenable position, Plaintiffs now argue that the
28  widow benefits being paid to Mrs. Siegel are [] the product of…some freestanding unrelated
    agreement.  (Pl. Mem. at 38)."  (Opp. at 42-43).

35

(December 23, 1975 Agreement), ¶ 4 ("Warner does not have any legal obligation to pay you any sum of money whatsoever…"); ¶ 5 ("voluntary payments").  This undercuts Defendants' theory that the continued acceptance of such voluntary pension, already left in tact by Plaintiffs' section 304(c) termination, nonetheless nullifies the termination to the extent of any copyright grant.

Though mooted by all of the above, Defendants misleadingly state that "the 1975 Agreement provides that after Jerry Siegel's death, Mrs. Siegel will be paid $10,000 per year for the remainder of her life." (Opp. 42:10-11).  In fact the December 23, 1975 Agreements states:

> "In addition, ***if Jerry Siegel dies, on or before December 31, 1985***, Warner will pay his wife, Joanne Siegel, if she survives him, monthly payments at the rate of $20,000 a year, commencing on the date of Jerry's death, and ending December 31, 1985, and thereafter monthly payments at the rate of $10,000 a year for the balance of her life."

 Toberoff Dec., Ex. Y, ¶ 5 b (emphasis added).  It is undisputed that Jerry Siegel died on January 28, 1996.  Thus, Joanne Siegel was not even eligible for any payments under the terms of the December 23, 1975 Agreement.[22]

Defendants also fail to establish how Warner's voluntary payment of a pension to Joanne Siegel after the effective date of the Termination Notice somehow reinstates a non-existent grant in the December 23, 1975 Agreement to which Mrs. Siegel was not even a party.

**D.** **Defendants' Purported Statute Of Limitations Defense Fails As A Matter of Law**

**1.** **Plaintiffs Timely Filed Their Complaint Within The Statute**

As demonstrated in Plaintiffs' opening brief, to the extent mere denial by a publisher grantee of a termination under the Copyright Act is even held to trigger the

---

[22] Although also completely moot, it appears that WCI agreed in 1982 to amend the benefit amount payable to Mrs. Siegel so as to equal the increased amount payable to her husband.  Bergman Decl., Exs. MM, NN.  The letters cited by Defendants do not reflect an amendment of the December 31, 1985 cut-off date.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

statute of limitations, Plaintiffs timely filed their complaint within the statute.

Defendants fail to raise a genuine issue of material fact as to their unsupported claim.

To recap, Plaintiffs served their Termination Notices on April 3, 1997. Toberoff Decl., Exs. G-M. On April 15, 1999, one day before the Termination Date, DC sent Plaintiffs a letter (the "April 15, 1999 Letter") "rejecting the scope and validity of the [Terminations]." Toberoff Decl., Ex. R (FACC), ¶ 71. To facilitate settlement negotiations, the parties entered into a tolling agreement effective April 6, 2000 (the "Tolling Agreement"), tolling any time-based defenses by either side. Reply Declaration of Marc Toberoff ("Toberoff Reply Decl."), Ex. A, at ¶ 1. The Tolling Agreement remained in force until:

> "10 business days after the earlier of: (a) one of the parties terminating negotiations, in writing, relating to the Notices, or (b) the parties reaching an amicable resolution of the disputes between them relating to the Notices [of Termination]."

*Id*. at ¶ 7. On September 21, 2002, Plaintiffs sent a letter to DC "ending negotiations…effective immediately." Toberoff Decl., Ex. AA. Consequently, the Tolling Agreement ended "10 business days" later on October 4, 2002. *Id*.

Therefore, to the extent the statute of limitations was even applicable or triggered, the proper calculation would be as follows: Three years equals 1,095 days. April 15, 1999 to April 6, 2000 (commencement of the Tolling Agreement) equals 357 days, with 738 days remaining on the statute. Toberoff Reply Decl., Ex. A, at ¶ 1. The Tolling Agreement was in place until October 4, 2002, "ten business days after [Plaintiffs] terminat[ed] negotiations" by their September 21, 2002 letter. *Id*. at ¶ 7; Toberoff Decl., Ex. AA. October 4, 2002 plus the 738 days remaining, means the statute, if applicable, would run on **October 12, 2004**.[23] Plaintiffs timely filed

---

[23] Although unnecessary given the above calculation, it is quite arguable that Tolling Period did not end until October 28, 2002, in which case the statute of limitations would not run until **November 18, 2004.** The basis for this is as follows: Paragraph 7 of the Tolling Agreement which concerns termination of negotiations, states that "any notices required under this agreement shall be sent by United States Certified Mail, Return Receipt Requested to: [lists Lillian J. Laserson, Carol F. Simkin, Roger L. Zissu and addresses]." Toberoff Reply Decl., Ex. A at ¶ 7. Plaintiffs' September 21, 2002 letter to Paul Levitz ending negotiations did not provide notice in this fashion. Therefore,

37

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1  their complaint regarding the "Superman" Terminations on **October 8, 2004**.

2  Toberoff Decl., Ex. X.

3          Defendants fail to counter Plaintiffs' timely filing, mustering two erroneous

4  arguments:  (1) that they purportedly triggered the statute prior to their express notice

5  of repudiation dated April 15, 1999, and (2) that the Tolling Agreement purportedly

6  ceased on October 19, 2001 even though Defendants clearly continued settlement

7  negotiations thereafter.

8          a.    **Defendants' Claim That They Provided Plaintiffs With**

9                **"Plain And Express Notice of Repudiation" Prior To**

10               **April 15, 1999 Is Without Merit**

11         Defendants rely on *Zuill,* 80 F.3d at 1369, for their statute of limitations

12  argument that Plaintiffs must bring their claim "within three years after the claim

13  accrued."  (Opp. at 4).  However, *Zuill* requires that for a claim to accrue "plain and

14  express repudiation of co-ownership [must be] communicated to the claimant."  *Id*.

15  *See also Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000) ("plain and

16  express repudiation" required under 17 U.S.C. § 507(b)).

17         Defendants admitted in their pleadings and even in their cross-motion that they

18  first placed Plaintiffs on notice of Defendants' repudiation of the "Superman"

19  Termination Notices by letter dated April 15, 1999 (the "April 15, 1999 Letter").  *See*

20  Toberoff Decl., Ex. R (FACC), ¶ 91 ("effective at least as early as April 15, 1999,

21  Plaintiffs/Counterclaim Defendants were on notice that DC Comics rejected the

22  Superman Notices"); Def. MPSJ at 15: 4-9 ("On April 3, 1997, Plaintiffs served

23  seven separate notices of termination under Section 304(c)…By letter dated April 15,

24  1999, DC rejected the Superman Notices…"); Toberoff Decl., Ex. Q.  (April 15, 1999

25  Letter)("[O]ur client has no alternative but to move to the next stage of putting your

26  clients on clear notice … that DC Comics rejects both the validity and scope of the

27  _____

28  on October 28, 2002 Plaintiffs sent a second letter to Lillian J. Laserson, Carol F. Simkin and Roger
    L. Zissu by Certified Mail, Return Receipt Requested specific to the Tolling Agreement and
    informing Defendants that the Tolling Period had ended.  *See* Toberoff Reply Decl., Ex. B.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Notices"); Toberoff Reply Decl., Ex. A (Tolling Agreement)("WHEREAS, DC by letter dated April 15, 1999 rejected the validity and scope of the [Termination Notices").

Defendants' disingenuous argument that they conveyed a clear and express repudiation prior to their April 15, 1999 Letter is belied by their own conduct. In fact, Defendants originally acknowledged that the Terminations were effective, and that Plaintiffs had recaptured and jointly owned the original "Superman" copyrights.

On April 16, 1997, in response to Plaintiffs' April 3, 1997 service of the Termination Notices, John Schulman, Executive Vice President and General Counsel of Warner Bros. wrote a letter to Joanne Siegel, stating in relevant part:

> "As to the Notices of Termination, I wasn't surprised at their arrival…After the effective date of the termination, there will still remain 14 years of copyright protection left to the joint copyright holders of the original Superman elements. Those are what we should share."

Toberoff Decl., Ex. O.

Defendants similarly acknowledged that they have a duty to account to Plaintiffs for the original "Superman" copyright(s). On October 10, 1997, Paul Levitz, President and Publisher of DC, wrote to Plaintiffs, stating in relevant part:

> "The [Superman] rights involved are non-exclusive; they are shared with DC. Since both you and DC would have these rights, we would each have the obligation to pay the other for using those rights if you did not re-grant them to DC."

Toberoff Decl., Ex. P.

Contrary to all their prior statements, Defendants now claim in the hopes of prematurely triggering the statute of limitations, that a financial offer from DC dated December 18, 1997 ("December 18, 1997 Letter"), supposedly constituted an "express repudiation" of each of Plaintiffs' Termination Notices. Tellingly, Defendants fail to cite any portion of the six-page December 18, 1997 Letter (Defendants also curiously miss-cite the letter as "Bergman Decl., Exh. GG").

Firstly, the letter, containing "an offer from DC…to resolve the above matter"

(after Defendants' acknowledgements a couple months earlier) and labeled for the first time "FOR SETTLEMENT PURPOSES," hardly comes across as "a plain and express repudiation" of Plaintiffs' Notices. Bergman Decl., Ex. U; *Zuill*, 80 F.3d at 1369. Secondly, the December 18, 1997 Letter clearly acknowledges Plaintiffs' copyright co-ownership as opposed to repudiating it.[24] *See e.g*., Bergman Decl., Ex. U (December 18, 1997 letter) at 208, first full ¶ ("As you know, if the Siegels do not execute a re-grant to DC, beginning in April of 1999, DC will be joint owners of the United States copyright in the 'Superman' comic published in Action Comics No. 1 in June, 1938."); at 210, sixth ¶ ("Under the copyright laws, as joint owners with DC of the Superman Comic, the Siegels are only entitled to participate in the portion of revenues attributable to the copyright in the Superman Comic.").

Finally, DC's April 15, 1999 Letter, one day before the effective Termination date, itself, suggests and corroborates that it is the first time Defendants placed Plaintiffs on "clear notice" that DC rejects the validity and scope of Plaintiffs' Notices of Termination:

> "[T]he absence of any steps towards negotiation for two years, particularly on the "eve" of the April 16, 1999 purported "effective" date of the termination, leaves us concerned. Thus ***our client has no alternative but to move to the stage of putting your clients on clear notice***, as set forth below, of DC Comics' rights and of its determination, if it becomes necessary, to take all appropriate and necessary steps to protect those rights. First, ***your clients are hereby put on notice that DC Comics rejects both the validity and scope of the Notices*** and will vigorously oppose any attempt by your clients to exploit or authorize the exploitation of any copyrights, or indeed any rights at all, in Superman."

Toberoff Decl. Ex. Q. (April 15, 1999 Letter) (emphasis added).

---

[24] Notwithstanding FRE 408, the statements in the December 18, 1997 Letter can certainly be used to counter Defendants' erroneous argument that the letter constitutes "a plain and express repudiation" of Plaintiffs' recaptured copyright interests. *See Crues v. KGC Corp*., 768 F.2d 230, 233 (8th Cir. 1985)(FRE 408 does not apply when evidence of compromise is offered into evidence by the offeror against the offeree.); *see also Bankcard Am., Inc. v. Universal Bancard Sys.,* 203 F.3d 477, (7th Cir. 2000)("It would be an abuse of Rule 408 to allow one party during compromise negotiations to lead his opponent to believe that he will not enforce applicable time limitations and then object when the opponent attempts to prove the waiver of time limitations").

40

**b.** **Defendants' Argument That The Tolling Agreement**
**Failed To Cover The Parties' Settlement Discussions**
**After October 19, 2001 Is Equally Meritless**

Defendants' second and final argument that the parties' Tolling Agreement ended when Plaintiffs' attorney sent an October 19, 2001 letter is frivolous.

The Tolling Agreement on its face states that that its purpose of tolling any time-based defenses "is to encourage continued [settlement] negotiations between the parties." Toberoff Reply Decl., Ex. A, at 1. Defendants admit that the obvious purpose of the Tolling Agreement was to encourage settlement negotiations. (Opp. at 19, fn. 14, Declaration of John Schulman, ¶ 5).

As set forth above, paragraph 7 of the Tolling Agreement states that it will remain in force until: "10 business days after the earlier of: (a) one of the parties terminating negotiations, in writing, relating to the Notices, or (b) the parties reaching an amicable resolution of the disputes between them relating to the Notices." Toberoff Decl., Ex. Z at ¶ 7.

The October 19, 2001 letter from Plaintiffs' attorney, Kevin Marks ("Marks"), purporting to accept basic deal points of what he perceived to be Defendants' offer of October 16, 2001, clearly did not end the parties' Tolling Agreement, as asserted herein for the first time by Defendants nearly six years later. Toberoff Decl., Ex. BB. Paragraph 7(a) of the Tolling Agreement clearly envisaged a final settlement agreement after which its purpose would be moot. There can be no dispute that settlement negotiations (which the Tolling Agreement was designed to "encourage") continued well after the October 19, 2001 letter.

By letter dated October 26, 2001, Warner's General Counsel, John Schulman, responded to the October 19, 2001 letter by not agreeing with it and enclosed "a more fulsome outline of we believe the deal…is," containing new and different terms of a deal in Defendants' favor (*see* Mot. at 48-57). Toberoff Decl., Ex. CC (October 26, 2001 letter). On February 1, 2002, Defendants continued the negotiation by

41

providing the first proposed draft of a settlement agreement adding even more new terms in Defendants' favor (*see* Mot. at 48-57). Toberoff Decl., Ex. DD (February 1, 2002 Draft).

Defendants admit that as late as May, 2002, the parties were still negotiating, by recounting a purported settlement discussion wherein Marks informed Schulman that the February 1, 2002 draft was "very aggressive;" and a letter dated May 21, 2002 from Richard Parsons, Time-Warner's CEO, to Joanne Siegel stating "we continue to hope that this agreement will be closed." (Opp. at 23:12-21). *See* Bergman Decl., Ex. AA (May 21, 2002 Letter) at 235. Defendants further allege that Marks drafted a new settlement agreement and transmitted it to Plaintiffs on July 15, 2002, but that it was not accepted. (Opp. at 24: 4-8).

It is undisputed that on October 28, 2002, Plaintiffs sent a letter to DC's General Counsel, Lillian Laserson, by certified mail, return receipt requested, specifically informing DC that pursuant to paragraph 7 of the Tolling Agreement the Tolling Period ended due to Plaintiffs' September 21, 2002 cancellation of further settlement negotiations. Toberoff Reply Decl., Ex. B. At no time until Defendants' recent Opposition did any of the Defendants disagree with Plaintiffs' explicit letter.

Defendants' artificial claim that the October 19, 2001 letter ended the Tolling Agreement, and prematurely deprived the parties of its protections, while they clearly continued to talk settlement makes no practical or legal sense.

Based on the foregoing, summary judgment should be granted against Defendants on their Second Alternative Counterclaim and Sixth Affirmative Defense because Defendants have failed to meet their burden of demonstrating any genuine issue of material fact as to Plaintiffs' clear filing of their complaint within the statute of limitations.

        **c.**    **Defendants Argument Than The Statute Has Run Against Warner Bros. Lacks Merit**

            **(i)**    **Warner Bros. Never Plainly And Expressly**

42

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

### **Repudiated Plaintiffs' Notices Of Termination**

Defendants argue that even if the statute of limitations has not run with respect to DC, it has run against Plaintiffs' declaratory relief claims involving Warner Bros. It is undisputed that even if the statute of limitations is held to run against a notice of termination under the Copyright Act, it would in no event start to run until Warner Bros. provided Plaintiffs with "a plain and express repudiation" of each of Plaintiffs' claims for relief in their complaint. *Zuill*, 80 F.3d at 1369.

Even if the April 15, 1999 Letter rejecting Plaintiffs' Termination Notices is viewed as triggering the statute of limitations, the April 15, 1999 repudiation was solely from DC, not Warner Bros. or any other Defendant. *See* Toberoff Decl. Ex. Q. (April 15, 1999 Letter). The letter *only* expresses DC's rejection of Plaintiffs' Termination Notices: "First, your clients are hereby put on notice that DC Comics rejects both the validity and scope of the Notices…" *Id*. at 171 and the letter focuses solely on DC's rights throughout. The Letter was clearly written solely on DC's behalf, and closes by stating: "This letter does not exhaustively set forth all of DC Comic's rights with respect to the Notices or Superman and is written without prejudice to any of our client's [singular] rights or remedies…", making it crystal clear that the April 15, 1999 Letter was written on behalf of one client: DC. *Id*. at 173. Nowhere does the April 15, 1999 Letter even mention Defendants Warner Bros. or Time-Warner.

The December 18, 1997 Letter, which, as set forth above, acknowledges Plaintiffs' recaptured copyright interest rather than repudiating it, is similarly written on behalf of DC. Bergman Decl., Ex. U at 207 ("[W]e are enclosing an offer from DC Comics"). The letter also nowhere mentions Warner Bros. or Time-Warner. *Id*.

Thus, at no time, prior to filing its answer and counterclaim in this action, have Defendants Warner Bros. or Time-Warner served Plaintiffs with a "plain and express repudiation" of its copyright claims. *Zuill*, 80 F.3d at 1369. Because Defendants have not met and cannot meet their burden of demonstrating such "plain and express

43

1  repudiation," their claim that the statute has run with respect to Defendants Warner

2  Bros. and Time Warner fails as a matter of law.

3  **(ii)** **The Tolling Agreement, In Any Event Applies To**

4  **Warner Bros.**

5  Although mooted by the above, Defendants' argument that the Tolling

6  Agreement does not apply to Warner Bros. is disingenuous.  The Tolling Agreement

7  expressly states:

8  "NOW, THEREFORE, in consideration of the mutual covenants and
   conditions herein contained and to encourage negotiations between the

9  parties, DC and SIEGEL *for themselves, their predecessors, past and
   present subsidiaries or affiliates*, and legal representatives **agree as**

10 **follows**:"

11 Toberoff Reply Decl., Ex. A at 1.

12 Warner Bros. admits it is "a past and present… affiliate" of DC.  *See* Def.

13 MPSJ at 77-79; supporting declarations of Paul Levitz, at ¶ 13, and Janice Cannon, at

14 ¶ 5.  Warner Bros. is also a "past" "predecessor" of DC with respect to the

15 "Superman" property, as evident from the December 23, 1975 Agreement

16 acknowledging WCI "as the sole and exclusive owner of all right, title and interest in

17 and to the Superman…copyright…including any and all renewals and extensions…"

18 Bergman Decl., Ex. MM, ¶ 2.[25]

19 Therefore, the Tolling Agreement by its plain terms applies to Warner Bros.[26]

20 Moreover, it is undisputed that the settlement negotiations which the Tolling

21 Agreement was designed to "encourage" (Toberoff Reply Decl., Ex. A at 1) were

22 conducted by Warner Bros.' General Counsel, John Schulman (Opp. at 19: 6-8 and

23 fn. 13; Declaration of John Schulman, ¶ 4), and that Warner Bros. was intimately

24

25 [25] This close unity of interest and vertical integration between Time Warner, Warner Bros. and DC
   is further argued in Plaintiffs' opposition to Defendants' cross-motion for partial summary

26 judgment on the issue of Warner Bros.' duty to account to Plaintiffs for profits earned from
   Plaintiffs' recaptured "Superman" copyrights.

27
   [26] In any event, Defendants could not have it both ways; *i.e.*, that DC's alleged repudiation of the

28 Termination Notices is somehow a repudiation by Warner Bros. as well, but that the Tolling
   Agreement does not cover Warner Bros.

44

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1   involved in the settlement negotiations from A to Z.  (Opp. at 23:25-26, claiming

2   settlement agreement was with "AOL Time Warner"); *see also* Toberoff Decl., Ex.

3   CC (Schulman's October 26, 2001 Letter).

**2.**      ***Zuill* Applies To Co-Authorship Disputes Not Present Here**

5   While the Court need not make this determination due to Plaintiffs' timely

6   filing of their complaint, it is noteworthy that Defendants' reliance on *Zuill,* 80 F.3d

7   at 1371 is misplaced.   *Zuill,* 80 F.3d at 1371 is readily distinguishable as premised on

8   an *authorship* dispute, not present here.  The cases that follow *Zuill* are similarly

9   based on *authorship* disputes.  *See Aalmuhammed*, 202 F.3d at 1231 ("movie credits

10   plainly and expressly repudiated *authorship* [claim]"); *Mappa Music Co. v.*

11   *Universal-Polygram Int'l Publ'g,* 2001 U.S. Dist. LEXIS 24554, *22 (C.D. Cal.

12   2001) (*co-authorship* claims barred where author of derivative work waited 40 years

13   to file suit); *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H.*

14   *& Co. Kg.,* 2006 U.S. Dist. LEXIS 65452, *6 (D. Mass. 2006) (disputed *co-*

15   *authorship* claim).

16   In fact, *Zuill's* co-authorship doctrine does not appear to have ever have relied

17   upon in the Ninth Circuit to bar non-authorship claims.  *See Roger Miller Music, Inc.*

18   *v. Sony/ATV Publ'g, LLC*, 2005 U.S. Dist. LEXIS 24813,*28-29 (M.D. Tenn. 2005)

19   (holding that because parties are not in a co-authorship relationship, "Plaintiffs'

20   ownership claims, for purposes of summary judgment, are not time-barred").

21   *Zuill*, 80 F.3d at 1369 is thus based on very different policy considerations

22   governing stale claims of creative ***co-authorship***, not copyright co-ownership by

23   operation of law.  *Zuill* concerned claims of *co-authorship* involving relative creative

24   contributions to a work, which in the first instance are hard to assess and with the

25   passage of time are even harder to determine.  *Id.* at 1366-67.

26   This focus on issues of ***co-authorship*** and creation is inseparable from the

27   holding in *Zuill*, 830 F.3d at 1371, and the way the Court distinguished such claims

28   from infringement claims:

45

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

> "An infringement occurs every time the copyrighted work is published, but creation does not. ***Creation***, rather than infringement, ***was the gravamen of plaintiffs' co-ownership claim***, so the claim did not accrue upon subsequent publication."

*Id.* (emphasis added). *Aalmuhammed,* 202 F.3d at 1230-31, similarly held:

> "***Because creation*** rather than infringement ***is the gravamen of an authorship claim, the claim accrues on account of creation***, not subsequent infringement, and ***is barred three years from 'plain and express repudiation' of authorship***."

*Id.* (emphasis added), *citing Zuill*, 830 F.3d at 1371.

Because a co-author of a work is by definition a co-owner, *Zuill* speaks in terms of "co-ownership," but is grounded in concerns peculiar to *co-authorship* claims. For instance, the *Zuill* Court states:

> "It is inequitable to allow the putative co-owner [co-author] to lie in the weeds for years after his claim has been repudiated, while large amounts of money are spent [by the other co-author] developing a market for the copyrighted material, and then pounce on the prize after it has been brought in by another [co-author]'s effort.

*Id.* By contrast, this case is not a co-authorship dispute. In fact, it is undisputed that Siegel and Shuster co-authored the original "Superman" story, published in Action Comics, No. 1. Nor can it be said that Plaintiffs, having served Defendants upfront with advance statutory notices of termination, were laying in wait "in the weeds."

If Siegel had been the sole author of "Superman," Plaintiffs would have recaptured the entire original "Superman" copyright under section 304(c), as Plaintiffs have been held by Judge Lew to have recaptured Siegel's "Superboy" copyrights. Toberoff Decl., Ex. U (March 24, 2006 Order). In such case this action, like the "Superboy" action, would be one for infringement, rather than an accounting, and section 507(b) would not bar a claim, but simply limit damages to those accruing three years before commencement of suit. *Roley v. New World Pictures, Ltd*., 19 F.3d 479, 481 (9th Cir. 1994), *Zuill*, 830 F.3d at 1370.

It would not seem appropriate to blindly apply *Zuill*'s distinguishable holding

46

here, where copyright co-ownership, like copyright ownership, results by operation of law under section 304(c) by the ministerial act of giving advance notice of termination. 17 U.S.C. §§ 304(d)(1), (c)(4)(A).

### 3. Strong Policy Considerations Militate Against Defendants' Statute Of Limitations Argument

It is also worth mentioning that Defendants' unsupported extension of *Zuill's* co-authorship holding is particularly onerous in the context of a section 304 (c) termination. 17 U.S.C.§304(c). In essence, Defendants advocate a new requirement not found anywhere in the Copyright Act. According to Defendants, when a publisher-grantee predictably denies a section 304 (c) termination, the terminating author or his heirs must file a declaratory relief action within three years or forever lose their copyright. Surely, this was not Congress' intention, nor the purpose of section 507(b). [27]

The Supreme Court has recognized the Copyright Act's termination provisions reflect Congress' manifest intent to create an "inalienable authorial right to revoke a copyright transfer" to "enhance the author's position" and adjust "the author/publisher balance." *New York Times v. Tasini,* 533 U.S. 483, 497; 121 S. Ct. 2381; 150 L. Ed.

---

[27] As Plaintiffs' copyright interest exists by operation of law under §304(c) (not a disputed co-authorship claim as in *Zuill, supra*) it should not be extinguished by § 507(b) which goes to their remedies. "As a matter of constitutional law...statutes of limitations go to matters of remedy, not to destruction of fundamental rights." *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314, 89 L.Ed. 1628, 65 S.Ct. 1137 (1944). *See also Osmundsen v. Todd Pac. Shipyard*, 755 F.2d 730, 733 (9th Cir. 1985) ("Statutes of limitations generally cut off the remedy without extinguishing the right."). This bedrock principle was applied directly to §507(b). *See Stone v. Williams*, 970 F.2d 1043, 1051 (2d Cir. 1992). In *Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 340 (5th Cir. 1971), the Fifth Circuit held after considerable analysis that § 507(b) "affect[s] the remedy only, not the substantive right" based on the legislative history of its nearly identical predecessor, § 115(b):

"The committee [on the Judiciary] wishes to emphasize that it is the committee's intention that the [Copyright Act's] statute of limitations, contained in this bill, is to extend to the remedy of the person affected thereby, and not to his substantive rights." S. Rep. No. 1014, 85th Cong., 1st Sess. 3 (1957). The House Report stated: "[A]ll state statutes of limitation, which now govern the Federal courts in copyright actions, are limitations upon the remedy, and the present bill has been drawn to apply this concept to a uniform Federal period of limitations... Moreover, it was considered that the long-standing fact that both the copyright bar and the courts have become accustomed to a limitation based upon the remedy warranted a continuation of this concept in the present bill." H.R. Rep. No. 150, 85th Cong., 1st Sess. 2 (1957).

47

2d 500 (2001) (discussed comparable termination power in § 203(a)(5)); *Stewart v. Abend*, 495 U.S. at 230;  H.R. Rep. at 124.  It has also been held that section 304(c) reflects a concerted Congressional effort to relieve authors "of the consequences of ill-advised and unremunerative grants [to publishers]" in recognition of the unequal bargaining power between authors and publishers.  *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172-73 (1985).  The importance Congress placed of this recapture right is further evidenced by the safeguards built into the Copyright Act's termination provisions.  *See e.g.,* 17 U.S.C. §304(c)(5) ("Termination of the grant may be effected notwithstanding any agreement to the contrary").

If Defendants' unsupported position is accepted, it would mean that the recipient of a statutory termination notice could by a mere meritless denial, foil and destroy this important statutory right.  If the author or his family does not incur or, as will often be the case, cannot afford to incur the expense of a full scale legal action to uphold its recaptured copyright within three years of any such denial, it would, according to Defendants, be forever lost after fifty-six years of waiting for the statutory recapture window to open.  Such interpretation contradicts and would undermine the strong protective policies behind the Copyright Act's termination provisions.

### E.    Plaintiffs' Motion Should Be Granted As To Their Recapture Of Siegel's Joint Copyright Interest In Action No. 1

Plaintiffs demonstrated that Plaintiffs' "Superman" Termination Notices are compliant with 17 U.S.C. §304(c) and 37 C.F.R.§ 201.10, the regulations promulgated thereunder by the Register of Copyrights.  Defendants' Opposition did not and cannot refute this, nor did Defendants meet their burden on any defense to the validity of the Notices.  As shown above, each of Defendants' purported counterclaims/affirmative defenses to Plaintiffs' Superman Termination fails as a matter of law.

Accordingly, for all of the foregoing reasons, Plaintiffs respectfully request an

48

Order (A) granting Plaintiffs' First Claim for Relief as to the validity of Plaintiffs' Superman Termination Notices and successful recapture of Siegel's joint copyright in the first "Superman" story published in Action Comics, No. 1; and (B) dismissing Defendants' (i) Fifth Alternative Counterclaim ("#7")(alleging that so-called "Additional Action Comics, No. 1 Materials" are "works made for hire"), (ii) First Alternative Counterclaim ("#1") and Third Affirmative Defense (regarding the May 22, 1948 Consent Judgment),  (iii) First Alternative Counterclaim ("#2") and Fourth Affirmative Defense (regarding Joanne Siegel's pension and the December 23, 1975 Agreement) and (iv) Second Alternative Counterclaim and Sixth Affirmative Defense (alleging the statute of limitations).

## II.   UNDER STATE LAW, WHICH GOVERNS THE RIGHT OF CO-OWNERS TO AN ACCOUNTING, PLAINTIFFS ARE ENTITLED TO AN ACCOUNTING INCLUSIVE OF FOREIGN PROFITS; DEFENDANTS APPLY THE WRONG LAW AND IGNORE THEIR OWN PRECEDENT

Ironically, Defendants argue that Plaintiffs have "misstated" the law governing a joint-owner's duty to account (Opp. at 57), while casting a blind eye to the controlling precedent, *Oddo v. Ries,* 743 F.2d 630, 633 (9th Cir. 1984), cited by Defendants in their own cross-motion.   Tellingly, Defendants engage in a lengthy irrelevant discourse on copyright "extra-territoriality," rather than address Plaintiffs' legal analysis directly, in the hopes of drawing the Court's attention from Plaintiffs' proper conclusions.[28]

---

[28] Earlier in their Opposition, Defendants falsely portray Plaintiffs as overreaching with respect to profits earned by their recaptured "Superman" copyrights by mischaracterizing Plaintiffs' position on issues not before the Court on Plaintiffs' Motion.  For instance, Defendants make believe that Plaintiffs claim "profits arising from the exploitation of Superman trademarks" (Opp. at 18) when Plaintiffs claim only that they are entitled to profits from mixed trademark uses to the extent such exploit recaptured copyright elements (e.g., "Superman's costume). Toberoff Decl., Ex. GG (FAC) at ¶ 63.  Defendants similarly make believe that Plaintiffs claim profits from the exploitation of pre-termination derivative works (Opp. at 18), when Plaintiffs freely acknowledge the Copyright Act's exclusion of pre-termination derivative works, so long as such works are not altered so as to become post-termination derivative works.  *Id*. at ¶ 58 d; 17 U.S.C. § 304(c)(6)(A).

49

Defendants' "straw man" arguments ignore well-settled law. Plaintiffs clearly demonstrate in their moving papers that (1) once joint ownership is established under copyright law, the duty to account amongst joint-owners is *not* governed by the Copyright Act or other Federal law, but by State law principles governing tenants in common, and (2) the Copyright Act's non-extraterritoriality, while applicable to a copyright infringement action, is inapplicable to an accounting between co-owners which falls under State law. *Oddo v. Ries*, 743 F.2d at 633; *Goodman*, 78 F.3d at 1012.

A. **It Is Well Settled That Because Plaintiffs Bring An Accounting Claim Under State Law, Not A Federal Copyright Infringement Claim, That The Extra-Territoriality Doctrine Is Inapplicable**

Defendants knowingly confuse the extra-territoriality doctrine applicable to *copyright infringement* in a foreign territory with the state law principles governing an *accounting* case, like this, between co-owners of a copyright. Because the U.S. copyright laws do not have extraterritorial application, "infringing actions that take place entirely outside the United States are not actionable" under the U.S. Copyright Act. *Subafilms, Ltd. v. MGM-Pathe Communications Co*., 24 F.3d 1088, 1094 (9th Cir. 1994) (*en banc*) cert. denied, 513 U.S. 1001 (1994). However, Plaintiffs' claim for an accounting of profits is *not* for copyright infringement. Indeed, as Defendants are quick to point out a co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright. (Opp. at 53:22). *See Oddo v Ries*, 743 F.2d at 632-33; *Zuill*, 80 F.3d at 1369. "Consequently, a suit to bring the co-owner of a copyright to account does not fall within the district court's jurisdiction over actions arising under the copyright law." *Oddo v. Ries*, 743 F.2d at 633 n.2 (relied on by Defendants). "The extra-territorial nature of copyright law is inapposite to whether plaintiff[s] are entitled to an accounting of foreign royalties received by defendants." *Goodman v. Lee*, 1994 U.S. Dist. LEXIS 18468, *11, 13 (E.D. La. 1994); *aff'd* 78 F.3d 1007, 1015 (5th Cir. 1996).

50

Defendants' unsupported contrary argument ignores several fundamental principles. As set forth above, once it is established that Plaintiffs jointly own the original "Superman" copyright(s) under the Copyright Act, the applicability of Federal law ends with that determination, as Plaintiffs' claim for an accounting is governed *in all respects* by state law. *Oddo v. Ries,* 743 F.2d at 633 ("A co-owner of a copyright must account to other co-owners for any profits he earns from licensing or use of the copyright, but the duty to account does not derive from the copyright law's proscription of infringement. Rather, such duty to account is derived from 'equitable doctrines relating to unjust enrichment and general principles of law governing the rights of co-owners'" (internal citations omitted)); *Gaiman v. McFarlane*, 360 F.3d 644, 652 (7th Cir. 2004)(Once copyright co-ownership is established "the only issue therefore is the contractual, or in the absence of contract the equitable, division of the profits from the copyrighted work, there is no issue of copyright law and the suit for an accounting of profits therefore arises under state rather than federal law.").

Secondly, termination of a grant "affects only those rights covered by the grant that arise under this title, and in no way affects rights arising under any other Federal, State, or foreign laws." 17 U.S.C. § 304(c)(6)(E). In other words, there is nothing about a section 304(c) termination that affects rights arising under state law, including a co-owner's right to an accounting. *Oddo v. Ries,* 743 F.2d at 633; *Goodman*, 1994 U.S. Dist. LEXIS 18468, at *13; *aff'd* 78 F.3d at 1015.

In fact, the legislative history of 17 U.S.C. § 304(c) specifically states: "Where the extended term reverts to joint authors or to a class of renewal beneficiaries who have joined in executing a grant, *their rights would be governed by the general rules of tenancy in common; each co-owner would have an independent right to sell his share, or to use or license the work subject to an accounting* to the other co-owners for any profits" (emphasis added). H.R. Rep., No. 94-1476, 94th Cong., 2d Sess. 121 (1976). *See also Nimmer on Copyright* § 12.01[A][1][b]("As there can "be no

51

1  copyright infringement between co-authors of a work, it follows that state courts have

2  exclusive competence to determine the fact of co-authorship and the rights of

3  assignment *and accounting* that flow therefrom."; c*iting Oddo v. Ries,* 743 F.2d at

4  633, n.2; *Picture Music, Inc. v. Bourne, Inc*., 314 F. Supp. 640, 646-47 (S.D.N.Y.

5  1970)("It is clearly established that where a truly 'joint work' is created, each co-

6  owner is akin to a tenant in common."); *Korman v. Iglesias*, 736 F. Supp. 261, 265

7  (S.D. Fla. 1990); *Community for Creative Non-Violence,* 846 F.2d 1485, 1498 (D.C.

8  Cir. 1988).

9       Defendants' extra-territoriality argument simply does not hold up.  This is not

10  an action for copyright infringement in a foreign country governed by that nation's

11  copyright laws under the extra-territoriality doctrine.  Plaintiffs' accounting action,

12  arising under State law, is to determine how much money the "Superman" copyrights

13  earned for Defendants, U.S. companies, and Plaintiffs, U.S. citizens. The money to be

14  accounted for is all U.S. money, paid in the U.S., based on domestic and foreign

15  collections.  Plaintiffs are not suing an infringer in Germany or Japan.  Plaintiffs are

16  enforcing Defendants' State law duty to account as tenants in common for moneys

17  earned by their co-owned property.

18       Plaintiffs cited several key cases which support their position and yet

19  Defendants did not bother to address them, particularly *Goodman,* 78 F.3d at 1012,

20  which is directly on point.  As set forth in Plaintiffs' opening brief, *Goodman* held:

21       **"**The applicability of federal law ends with that [joint ownership]

22  determination, as Goodman's claim for an accounting is governed in all
   respects by state law.  It is widely recognized that '[a] co-owner of a
   copyright must account to other co-owners for any profits he earns from

23  the licensing or use of the copyright.... Significantly, '*the duty to account
   does not derive from the copyright law's proscription of infringement.*

24  *Rather, it comes from"... general principles of law governing the rights
   of co-owners.*' As those general principles are rooted in state law, we

25  look to the law of Louisiana for answers to the remaining issues
   presented by this appeal."

26

27  *Id.*  (emphasis in original), *citing Oddo v. Ries,* 743 F.2d at 633, n.2.  *Goodman*

28  expressly rejected the application of the extraterritoriality doctrine to an accounting

52

between joint owners as ***"[t]he extra-territorial nature of copyright law is inapposite to whether plaintiff is entitled to an accounting of foreign royalties received by defendants."*** *Goodman*, 1994 U.S. Dist. LEXIS 18468, at *13; *Goodman*, 78 F.3d at 1015 ("we affirm the district court's judgment declaring Goodman a joint owner of the copyright of "Let the Good Times Roll"…and awarding her one-half of ***all royalties received*** by the Lees since 1976 together with prejudgment interest")(emphasis added); *Oddo v. Ries*, 743 F.2d at 633 ("A co-owner of a copyright must account to other co-owners for ***any profits he earns from licensing or use of the copyright"***)(emphasis added).

Tellingly, Defendants' Opposition does not distinguish, explain or otherwise deal with *Oddo v. Ries* or with *Goodman's* on-point rejection of Defendants' extra-territoriality argument in light of *Oddo v. Ries*. It is also noteworthy that Defendants overstate the reach and effect of the "extra-territoriality" doctrine inherent in United States copyright law to buttress their tenuous straw man. As shown by the "predicate act" line of cases, the Copyright Act while not reaching acts of *foreign* copyright *infringement*, will allow parties to reach foreign profits that flow from acts of *domestic infringement. Los Angeles News Service v. Reuters Television International, Ltd*., 340 F.3d 926 (9th 2003)(*"Reuters IV"*) *cert. denied* 541 U.S. 1041 (2004); *see also* 4-17 *Nimmer on Copyright* § 17.02; 17 U.S.C. §106. Thus, where some infringing acts take place in the United States, it is well settled that a plaintiff may recover through a constructive trust the extraterritorial profits derived from those infringing acts. *See Reuters IV*, 340 F. 3d at 932.

**B.** **Section 304(c)'s Preservation Of The Status Quo Under Federal, State And Foreign Laws Does Not Affect *Oddo v. Ries'* Holding**

Section 304(c)(6)(E) of the Copyright Act's termination provision states:

"(E)   Termination of a grant under this subsection affects only those rights covered by the grants that arise under this title and in no way affects rights arising under any other Federal, State or foreign laws."

Defendants argue, without any citations or support, that this provision which

53

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1  simply preserves the *status quo* under all laws ("Federal State or foreign"), somehow

2  overrides the holding and logic of *Oddo v. Ries*, 743 F.2d at 630, 633 n.2 and

3  *Goodman*, 78 F.3d at 1015.[29]  It clearly does not.

4      As explained in the legislative history, this neutral provision simply means

5  "that rights under other Federal, State or foreign laws are unaffected."   H. Rep. at

6  126 (describing the same term in 17 U.S.C. § 203(b)(1),(5), regarding the comparable

7  termination of post-1978 grants).

8      Thus, as Plaintiffs are not suing for copyright infringement abroad, foreign

9  laws remain "unaffected" under §304(c)(6)(E).  Likewise, as the duty of copyright

10 co-owners to account is not governed by the Copyright Act, but by general State law

11 principles, Federal law remains "unaffected" under §304(c)(6)(E). The applicable

12 State law principles treating copyright co-owners as tenants in common and

13 impressing a constructive trust on all profits therefrom, would likewise remain

14 "unaffected" under §304(c)(6)(E).  *See Picture Music,* 314 F. Supp. at 646-47 ("It is

15 clearly established that where a truly 'joint work' is created, each co-owner is akin to

16 a tenant in common.  Accordingly… compensation obtained from the unilateral

17 exploitation of the joint work by one of the co-owners…is held in a 'constructive

18 trust' for the mutual benefit of all owners, and there is a duty to account therefor.")

19     As pointed out, Plaintiffs' accounting claim, arising under State law, does not

20 implicate, contradict or disturb foreign copyright laws.  *Oddo v. Ries*, 743 F.2d at

21 630, 633 n.2 and *Goodman*, 78 F.3d at 1015.  Defendants' *straw man* that Plaintiffs

22 claim to have "recaptured a share of foreign copyrights" (Opp. 58:8-10, 65:1-2) is

23 nonsensical and nowhere claimed by Plaintiffs.

24     Defendants further falsely premise their argument on the wholly unsupported

25 ─────────────────────
[29] While ignoring *Oddo v. Ries*, *Goodman* and the other relevant cases cited by Plaintiffs concerning

26 a co-owner's duty to account, Defendants' rely on and skew the wholly distinguishable *Fred Ahlert*
*Music Corp. v. Warner/Chappell Music*, 155 F.3d 17 (2d Cir. N.Y. 1998).  *Fred Ahlert* does not

27 analyze or even address the scope of the duty to account between joint copyright owners. As
Defendants acknowledge (Opp. 63:9-12), this case specifically examined section 304(c)'s

28 "derivative works exception" as applied to a particular music license.  155 F. 3d at 19-20, 17 U.S.C.
§ 304(c)(6)(A).

54

conclusion that the duty of a U.S. company to account to a U.S. citizen for profits entails a "foreign copyright right." ***For this erroneous proposition Defendants do not and cannot cite a single case or treatise.*** (Opp. at 58). As set forth above, foreign copyright law, like the Copyright Act's extra-territoriality doctrine, is not implicated because Plaintiffs are not suing for infringing acts in a foreign country. If under *Oddo v. Ries*, 743 F.2d at 630, the duty of copyright co-owners to account for "any profits" does not implicate the U.S. Copyright Act, it certainly does not invoke or involve foreign copyright law.

To prop up their straw men, Defendants similarly trundle out assorted commentators' statements on how termination only affects "grants of rights based upon United States copyright laws" (Opp. at 64), which, though a given, completely misses the point. Once it is established under federal law that a party is the co-owner of a copyright, it must account to the other co-owner for "any profits," as this relationship, unlike an infringement action, is governed by state law, not federal or foreign copyright laws. *Oddo v. Ries*, 743 F.2d at 633; *Goodman*, 1994 U.S. Dist. LEXIS 18468, at *13 *aff'd* 78 F.3d at 1015. Despite admitting this in their papers, Defendants strain to re-impose Federal or foreign copyright law on an issue to which neither apply.

For all the foregoing reasons, Plaintiffs respectfully request an Order granting Plaintiffs' Second Claim for Relief as it relates to Plaintiffs' entitlement to profits from foreign sources, and dismissing Defendants' Sixth Alternative Counterclaim to the extent it limits Plaintiffs' profits to revenues from U.S. sources contrary to controlling Ninth Circuit case law.

## III. IT IS CLEAR FROM THE OCTOBER 19, 2001 LETTER, THE OCTOBER 26, 2001 REPLY LETTER AND THE FEBRUARY 26, 2002 DRAFT THAT NO AGREEMENT WAS CONSUMMATED BY THE PARTIES AS A MATTER OF LAW

Defendants strain to create issues of fact regarding the formation of an alleged

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

contract between the parties that was clearly never consummated as a matter of law. As such, this issue is ripe for summary judgment. It is crystal clear from three key documents – (1) the October 19, 2001 letter ("October 19, 2001 Letter") from Plaintiffs' former counsel, Kevin Marks ("Marks"), to Defendants' counsel, John Schulman ("Schulman"), (2) the October 26, 2001 reply letter ("October 26, 2001 Letter") from Schulman to Marks and (3) the February 1, 2002 proposed draft of agreement ("February 1, 2002 Draft") – that no contract was formed as a matter of law. Toberoff Decl., Exs. BB, CC and DD. Defendants' purported claim is readily disposed of on the face of the documents in question, and does not depend on the weighing of witness credibility or any outstanding genuine issues of material fact.

Courts routinely decide such issues of contract formation on summary judgment. "A number of cases have found [summary judgment] proper and indeed required in situations involving actions for specific performance of alleged…contracts which were in fact illusory and consisted only of…offers and counteroffers which did not define with precision and clarity an agreement of sale." *Krasley v. Superior Court*, 101 Cal. App. 3d 425, 433 (1980)(collecting cases; summary judgment for the sellers after finding no enforceable contract because the buyer's counteroffer was a new offer that constituted a rejection of seller's original offer and the buyer never accepted the counteroffer.). *See e.g., Roth v. Malson*, 67 Cal. App. 4th 552, 559 (1998)(affirming seller's motion for summary judgment on grounds that no contract was formed because plaintiff's counteroffer was a qualified acceptance of defendant's counteroffer, which was not accepted by defendant); *Ajax Holding Co. v. Heinsbergen*, 64 Cal. App. 2d 665, 670 (1980) (affirming summary judgment as "alleged contract for the sale of realty turned out to be a myth"); *Tibbs v. Smart & Final Iris Co.,* 152 Cal. App. 2d 618, (1957).

Defendants' contract claim is falsely premised on the notion they can artificially limit the scope of the legal analysis to the October 19, 2001 Letter and call it a contract, irrespective of their materially different October 26, 2001 Letter in reply

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

(*"I enclose…a more fulsome outline of what we believe the deal …is"*) and their vastly different February 1, 2001 Draft which were both part and parcel of the same settlement negotiation.  *See Levitz v. The Warlocks*, 148 Cal. App. 4th 531, 534 (2007)(A settlement with open material terms is not a "conditional settlement."  To the contrary, it is not a settlement at all…"); *see also Duran v. Duran*, 150 Cal. App. 3d 176, 180 (1983).

Defendants admit, as they must, that that there is no contract until there has been a meeting of the minds by the parties on *all* material terms (Opp. at 68:12-14), citing the Ninth Circuit decision cited by Plaintiffs, *Callie v. Near*, 829 F.2d 888, 891 (9th Cir. 1987) ("In addition to the intent to bind themselves, the formation of a settlement contract requires agreement on its material terms.")  *See also Banner Entnm't v. Superior Court*, 62 Cal. App. 4th 348, 357-8 (1998) ("California law is clear that there is no contract until there has been a meeting of the minds on *all* material points [citations omitted].");  cited as well by Plaintiffs and Defendants.

Yet, Defendants erroneously argue that Plaintiffs' motion is "doomed" because they did not "provide any sworn testimony from either of them containing any objective evidence that the October 19, 2001 Letter did not represent a 'meeting of the minds' on all material terms."  (Opp. at 68: 15-18).  However, under *Celotex*, 477 U.S. at 323, while "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion…[there is] no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  Whereas Defendants' *post hoc* testimony and after-the-fact rationalizations are inherently non-objective (*see* Declaration of John Schulman) their objective manifestation of intent in the documents at issue speak volumes in decisively proving that there was no "'meeting of the minds' on all material terms." [30]  *See* Toberoff

---

[30]  If Plaintiffs had relied on such testimony Defendants would be the first to argue, as they do anyway that the Court cannot assess "the credibility of []witnesses" on summary judgment. (Opp. at 67: 24).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Decl., Ex. CC (Schulman's October 26, 2001 Letter), Ex. DD (DC's February 1, 2002 Draft). *Banner*, 62 Cal. App. 4th at 357-8. The existence of mutual consent is determined by objective rather than subjective criteria. *Meyer v. Benko*, 55 Cal. App. 3d 937, 943 (1976). *See Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1587 (2005) (Question of "[m]utual assent to a contract is based upon objective and outward manifestations of the parties"); *see also* Cal. Civ. Code § 1639.

One need only glance at the numerous material differences between the terms of the October 19, 2001 Letter, the October 26, 2001 Letter and the February 1, 2002 Draft to reach the conclusion that the parties failed to consummate an agreement of all material terms. Toberoff Decl., Exs. BB, CC, DD. *See Grove v. Grove Valve & Reg. Co.*, 4 Cal. App. 3d. 299, 311-312 (1970) (failure to reach meeting of the minds on all material points prevents contract formation even though parties orally agreed on many terms, or have taken action relating to the contract). From this evidence, no reasonable juror could find a contract as there was never a "'meeting of the minds' on all material terms." *Banner*, 62 Cal. App. 4th at 357-8; *Callie*, 829 F.2d at 891.

The issue of whether a contract has been formed is based on such objective evidence, not after-the-fact explanations in declarations promoting a point of view. *See Russell v. Union Oil Co.*, 7 Cal. App. 3d 110, 114 (1970)("Mutual assent is gathered from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understanding.").

Defendants boast at the outset of their Opposition that they will demonstrate that (i) "a meeting of the minds on all material terms pursuant to which Plaintiffs would convey their Superman copyright interests to DC;" (ii) "the parties intended to be bound by the terms of [the October 19, 2001 Letter] notwithstanding the fact that they contemplated negotiating… thereafter;" (iii) "the parties were proceeding…with the drafting and re-drafting of their more formal documentation until Plaintiffs suddenly appeared to have second thoughts after being presented with a seemingly more lucrative offer…" (Opp. at 68:19 – 69:4).

58

However, Defendants present only the self-serving, carefully worded declaration of their General Counsel, Schulman, but do not, because they cannot present, any objective manifestation of his statements that refute the clear documentary evidence to the contrary. *Gasaway v. Nothwestern Mut. Life Ins. Co*. 26 F.3d 957, 960 (9th Cir. 1994) ("mere allegations or denials" do not meet the non-movants' burden); *Celotex*, 477 U.S. at 324 (On summary judgment, the non-moving party must go beyond the pleadings and "designate 'specific facts showing that there is a genuine issue for trial.'")

Firstly, the material differences between the October 19, 2001 Letter, the October 21, 2001 Letter and the February 1, 2001 Draft (*see* Mot. at 48-57) unquestionably demonstrate that there was <u>no</u> "meeting of the minds on all material terms." Toberoff Decl., Exs. BB, CC, DD. Secondly, Defendants made it abundantly clear that they did <u>not</u> intend to be bound by the October 19, 2001 Letter by their divergent October 26, 2001 Letter in reply and thereafter by their aggressive February 1, 2001 Draft. Toberoff Decl., Exs. CC, DD. Thirdly, the October 26, 2001 Letter and February 1, 2001 Draft in no way constitute the mere "drafting of more formal documentation" of a fixed agreement as Defendants now make believe in retrospect. The documents speak for themselves as the ongoing *negotiation* of terms considerably more favorable to Defendants. *Id*. Finally, the record is clear that Plaintiffs vehemently rejected Defendants' overreaching proposals by letter dated May 9, 2002.[31] Bergman Ex. Z (May 9, 2002 letter).

Tellingly, after Plaintiffs' rejection on May 9, 2002 and formal termination of negotiations on September 21, 2002 (Bergman Decl., Ex. DD), Defendants uttered not even a whisper. Not once did Defendants claim or even hint that the October 19, 2001 Letter constituted a binding agreement or that they had *any* agreement with Plaintiffs. Nor did Defendants tender payment or ever attempt to perform under their

---

[31] This rejection occurred long before the August, 2002 third party offer alleged by Defendants to muddy the waters and falsely imply a motive for rejection unrelated to the egregious new terms contained in their proposals. (Opp. at 23:3-11, 24:16-18).

59

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1  fictitious purported agreement.[32]  It is undisputed that the first time, Defendants made

2  their unlikely claim was on November 22, 2004 in answer to Plaintiffs' complaint to

3  enforce their "Superman" Termination Notices.  Defendants' Opposition does not,

4  because it cannot, explain these inconsistencies and further objective manifestations

5  that no agreement had been consummated.

6        Instead, Defendants lard their Opposition with inaccurate, immaterial and

7  misleading assertions that are apparently designed to prejudice the Court against

8  Plaintiffs and their counsel.  Though immaterial to the unmistakable conclusion that

9  no contract was completed, Plaintiffs briefly address Defendants' accusations and

10  innuendo below.

11        Defendants recite the irrelevant prior involvement of Plaintiffs' counsel, Marc

12  Toberoff ("Toberoff") in other companies, and incorrectly state that in late

13  November, 2001 he "informed Mr. Marks that he was interested in acquiring Siegel's

14  interest in the Superman property," citing to Marks' deposition transcript at 152:3-

15  153:22 which nowhere states this.  (Opp. at 22:3-17).  Defendants nonetheless admit

16  that Marks and Toberoff *had no substantive communications until August, 2002*.

17  (Opp. 24:16).  Defendants then inaccurately state that in early August, 2002, "Mr.

18  Toberoff's company, IPW, offered to purchase Plaintiffs' Superman copyright

19  interests," citing to Marks' deposition transcript at 167:7-169:25 which again does

20  not indicate this.  (Opp. 24: 16-18).  Defendants recite in the next sentence that "[o]n

21  September 21, 2002, Plaintiffs abruptly terminated Mr. Marks without any prior

22  notice" (without evidence that this was either "abrupt" or "without prior notice") and

23  "sent a separate letter to defendants repudiating the October 19 agreement" (citing

24  Plaintiffs' letter which nowhere mentions the October 19, 2001 Letter).  (Opp. 24: 20-

25  24).  In reality, Plaintiffs September 21, 2002 letter consistently states:

26

27

28

---

[32] *See* 1 Witkin Sum. Cal. Law Contracts, § 769 (a "tender [of performance] when properly made, has the effect of placing the other party in default if he or she refuses to accept it, and the party making the tender may rescind, or sue for breach of contract or for specific performance where this remedy is available.")

60

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1
2
3
4
5

> "We regret to inform you that after many years of difficult negotiations with your representatives culminating in an offer sent to us on February 4, 2002 [February 1, 2002 Draft], irreconcilable differences that cannot be overcome.  Therefore, effective immediately we are totally stopping and ending negotiations with DC…It is shame that four years were wasted due to your representatives desire to wear [us] down…Putting outrageous, never discussed, unacceptable demands into DC's February document made it clear that no agreement could ever be reached."

6  Bergman Decl., Ex. DD.  Defendants end by stating that Plaintiffs thereafter retained

7  Mr. Toberoff and an agent to represent them.  (Opp. at 25:1-8).

8  Defendants' three page recitation of largely immaterial information and

9  disinformation is designed to prejudice the straightforward legal analysis that so

10  disfavors them.  Defendants' thinly veiled narration falsely implies that Plaintiffs'

11  counsel interfered with their so-called "agreement" and that Plaintiffs reneged on this

12  non-extant contract for a better offer.   None of this false innuendo is supported by

13  the record, and all of it is a poor substitute for legal analysis.

14  It *is* clear from the record that Joanne Siegel by letter dated May 9, 2002 (long

15  before Toberoff had a single substantive conversation with Marks) expressed great

16  dissatisfaction with Defendants' aggressive negotiating tactics and their February 1,

17  2002 Draft in the strongest of terms, much like those in Plaintiffs' September 22,

18  2002 letter, formally terminating negotiations:

19
20
21
22

> "Your company's unconscionable contract dated February 4, 2002 [*sic*] contained new, outrageous demands that were not in the proposal.  The document is a heartless attempt to rewrite the history of Superman's creation and to strip Laura and me of the dignity and respect that we deserve…After four years we have no deal and this contract makes an agreement impossible."

23  Bergman Decl., Ex. Z (May 9, 2002 letter); Ex. DD (September 22, 2002 letter).

24  Having blown the negotiation by their own avarice, Defendants now desperately

25  attempt to shift the blame.

26  Notwithstanding Defendants' *post hoc* mischaracterizations and muddying, the

27  parties' objective manifestations of their intent, in the form of their written

28  communications and conduct at the time in question, tell an exceedingly clear story.

61

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

As is sometimes the case in negotiations, Defendants continued by their October 26, 2001 Letter and February 1, 2002 Draft to grind Plaintiffs on numerous material terms, losing their trust, and eventually "blowing" all prospects of a deal. Thereafter, Defendants sat back, played their hand and continued not to account to Plaintiffs for any "Superman" profits, betting Plaintiffs would need money and eventually come around. When this strategy backfired and Plaintiffs filed suit on October 4, 2004 to enforce their statutory Termination, Defendants for the first time in three years tried to hold Plaintiffs to the terms of an October 19, 2001 Letter, long ago rejected.

A. **Defendants' Entire Claim Is Falsely Premised On Viewing The October 19, 2001 Letter In A Vacuum Without Regard To The Realities Of The Parties' Actual Negotiation**

When one boils down Defendants' contract claim it rests entirely on the erroneous premise that the Court should view Marks' October 19, 2001 Letter[33] in isolation without regard to Defendants' diverging October 26, 2001 reply and very different February 1, 2002 Draft. However, in assessing whether a contract has been formed the Court obviously must consider both sides' objective manifestations of intent to gauge if an agreement on all material terms has been reached. *Donovan v. RRL Corp.,* 26 Cal. 4th 261, 271 (2001)(determination of whether an agreement has been consummated "depends upon all the surrounding circumstances"), *citing* 1 Corbin, Contracts (rev. ed. 1993) § 2.2, at 105; *see Callie*, 829 F.2d at 891; *Stewart*, 134 Cal. App. 4th at 1587.

Marks' October 19, 2001 Letter purported to accept an October 16, 2001 offer by Defendants, but clearly asked for Defendants' confirmation (*"if there is any aspect of the above that is somehow misstated, please let me know"*). Toberoff

---

[33] Defendants make much ado over Marks' authority as Plaintiffs' attorney, when Plaintiffs have freely acknowledged throughout this litigation that Marks as their attorney had authority to conduct settlement negotiations, while resisting Defendants repeated attempts to attack their attorney-client privilege. Defendants nonetheless cite *Pereira v. Sonia Holdings In re Artha Mgmt.,* 91 F.3d 326, 329 (2d Cir.1996) to prop up their *straw man* argument even though the issue is moot.

62

Decl., Ex. BB (October 19, 2001 Letter) at 6. In response, Schulman's October 26, 2001 Letter let Marks know that the terms set forth in his October 19, 2001 Letter did not reflect Defendants' October 16, 2001 offer (*"I enclose a more fulsome outline of what we believe the deal we discussed is"*) and proceeded to outline all sorts of additional terms in Defendants' favor. Toberoff Decl., Ex. CC (October 26, 2001 Letter). Right there it is it clear that no "meeting of the minds on all material terms" and therefore, no contract had been reached as a matter of law. *Banner*, 62 Cal. App. 4th at 357-8. Such "negotiations are not the functional equivalent of a valid, subsisting agreement." *Kruse v. Bank of America*, 202 Cal. App.3d 38, 59 (1988)

The parties' divergent positions were exacerbated when Defendants' February 1, 2002 Draft elaborated on the additional terms in Schulman's October 26, 2001 Letter, and added many more material terms, again in Defendants' favor, but clearly rejected by Plaintiffs. Toberoff Decl., Ex. DD (February 1, 2002 Draft). *See Weddington Prods. v. Flick*, 60 Cal. App. 4th 793, 818-19 (1998)("It is undisputed that there was no 'writing signed by the parties' setting forth the terms of the licensing agreement…there was no document of agreed content to which the parties were referring when they used [certain] terms…To the contrary, the parties had sharply conflicting ideas of what terms a licensing agreement should contain.").

Years after their negotiating strategy failed, Defendants claimed for the very first time that a contract had been formed. Yet not even Defendants can possibly tell us from the parties' differing exchange all material terms that make up this purported contract. Contract law precludes specific enforcement of a contract when it cannot be determined exactly what terms the parties agreed upon. *Weddington*, 60 Cal. App. 4th at 801 (1998). Moreover, a Court or jury cannot supply such terms. *Id*.; *Industrial Indemnity v. Superior Court*, 224 Cal. App. 3d 828, 832 (1990) (directing summary judgment for petitioner as "courts will not write a new contract"); *Appeling v. State Farm*, 340 F.3d 769, 777-779 (9th Cir. 2003) (affirming summary judgment where opposing party tried to graft new terms on purported contract).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs second false premise is that Schulman's different October 26, 2001 response which *disagreed* with Marks' October 19, 2001 recitation of material deal points merely "started the process of the more formal documentation" of a purported contract. This is nonsense. It is clear from the parties' correspondence containing differing terms that all material terms had yet to be agreed upon. Toberoff Decl., Exs. BB, CC. This was not a question of merely "more formal documentation." It was still a matter of trying to nail down all the material terms of an agreement. The new deal point *outline* attached by Schulman is written in even more outline form than the October 19, 2001 Letter. Toberoff Decl., Ex. CC. It does not constitute "more formal documentation," but differing deal terms (*"I enclose a more fullsome outline of what we believe the deal we discussed is"*). *Id.*

When Courts and parties speak of "more formal documentation" it is not in this set of circumstances when no contract has yet been made. It is usually in the context of the parties having *signed* a binding agreement, which contemplates a long form agreement incorporating the terms thereof and customary *boilerplate* (*e.g.*, full mutual releases in a settlement agreement).

Even in instances where both parties *sign* a settlement memorandum containing primary deal points, there is no agreement if a material dispute subsequently arises in drafting as to terms of a final settlement agreement because a court does not have the authority to create material terms of a settlement. *Weddington*, 60 Cal. App. at 810-811; *see also Terry v. Conlan*, 131 Cal. App. 4th 1445, 1459-1461 (2005) (trial court improperly attempted to fill in the gaps of a settlement agreement). Here the parties had not arrived at all material terms of a contract (of any length) and Defendants were continuing to negotiate in the diverging October 26, 2001 Letter and by adding numerous new deal points in the February 1, 2002 Draft proposal. *See* 1 Witkin Sum. Cal. Law Contracts, § 134 ("Where any of the terms are left for future determination …no contract results until this is done").

Moreover, the parties did not execute nor contemplate executing a

64

memorandum of agreement to be followed by a long form agreement. The parties

had been negotiating over a lengthy period of time. (Opp. at 19:12). Due to the

complexities and importance of the subject matter, the parties clearly contemplated

that the form of agreement would be a detailed written contract, subject to all parties'

review, consent and execution. *See Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309,

316 (9th Cir. 1996)("[T]here is no contract where the objective manifestations of

intent demonstrate that the parties chose not to bind themselves until a subsequent

agreement [was] made.").

Defendants argue that that the Schulman letter "contains no indication" that the

parties contemplated that their assent must be reflected in a final written agreement.

However, Schulman's October 26, 2001 Letter clearly states: "We're working on the

draft agreement so that by the time you have [returned] we will have this super-matter

transaction in document form." Toberoff Decl., Ex. CC ("October 26, 2001 Letter) at

318. Obviously, Defendants did not consider either the mere outline in the October

19, 2001 Letter which they rejected or their own October 26, 2001 reply outline to be

the "document form" in which the parties intended that their assent be manifested.

*See also* Toberoff Decl., Ex. DD (February 1, 2002 Draft) at 326 ("As our clients

have not seen this latest version of the agreement, I must reserve their right to

comment"); Toberoff Reply Decl., Ex. F (Marks Depo. Tr. 163: 1-9). *See Duran v.*

*Duran*, 150 Cal. App.3d at 180 ("assent to [contract] terms must be evidenced in the

manner agreed upon or it does not become a binding or completed contract."); *Kruse*,

202 Cal. App.3d at 59 ("A manifestation of willingness to enter into a bargain is not

an offer [or contract] if the person to whom it is addressed knows or has reason to

know that the person making it does not intend to conclude a bargain until he has

made a further manifestation of assent.") *See also Beck v. American Health Group*

*Int'l, Inc.*, 211 Cal. App. 3d 1555, 1562-63 (1989)(party manifested intent not to be

bound until formal contract was written.); *Roth v. Garcia Marquez*, 942 F.2d 617,

626-627 (9th Cir. 1991).

65

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants disingenuously state that they "do not dispute that the parties contemplated further documentation of their agreement, including the preparation of formal [copyright] assignments…However…the parties intended to be bound to the terms of the agreement reached on October 19, 2001…" (Opp. at 72:6-12). Firstly, this squarely contradicts Defendants' objective manifestation of their intent in the October 26, 2001 Letter *not to follow* the October 19, 2001 Letter. Toberoff Decl., Ex. CC (*"I enclose a more fulsome outline of what we believe the deal we discussed is"*). Secondly, the supposed "further documentation" at issue is the contract, itself, reflected in Defendants' very different and wholly unacceptable February 1, 2002 Draft, not the short-form copyright "assignments" that are *pro-forma* and thus, had not yet been submitted. Toberoff Decl., Ex. DD ("…the draft agreement makes reference to certain 'Stand Alone Assignments'…as soon as they are ready we will forward them to you.").

As Plaintiffs consistently point out, Defendants never claimed that the October 19, 2001 Letter constituted a binding agreement or claimed that there was any other agreement between the parties until for the first time *three years later* when Plaintiffs filed their complaint in October, 2004. *See* Bergman Decl., Ex. GG (FACC), at ¶¶ 98-105 and Defendants' Answer, at ¶¶ 112-113 (Toberoff Reply Decl., Ex. H). Such objective manifestation of Defendants' intent is the "nail in the coffin" of their unsupportable contract claim.

Significantly, when Joanne Siegel wrote to Time-Warner on May 9, 2002, asserting "[a]fter four years we have no deal and this contract makes an agreement impossible" (Bergman Decl., Ex. Z), Defendants never asserted that the October 19, 2001 Letter constitutes a binding agreement. Moreover, when Plaintiffs again wrote to Defendants on September 22, 2002, terminating negotiations and similarly stating that "[i]t is shame that four years were wasted due to your representatives desire to wear [us] down…ma[king] it clear that no agreement could ever be reached," Defendants never once responded asserting that the parties had a supposed October

66

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

19, 2001 agreement. Defendants' failure to claim an agreement is wholly consistent with their rejection of Plaintiffs' October 19, 2001 Letter and their insistence on materially different terms in the October 26, 2001 Letter and February 1, 2002 Draft.

Defendants nonetheless weakly claim that DC "affirmatively acted" on the October 19, 2001 Letter by "negotiating" with their corporate cousin Warner to include Plaintiffs' credit in "Superman Returns." Yet, Defendants do not state that such "Siegel Family" credit was provided on the film (it was not), nor does the October 19, 2001 Letter even provide Plaintiffs with a "Siegel Family" credit. Toberoff Decl., Ex. BB.[34] Defendants also dubiously claim that DC supposedly established a "reserve account" for Plaintiffs' benefit. Yet, when Plaintiffs specifically requested documents evidencing this purported account or the reservation of profits for Plaintiffs, Defendants unsurprisingly did not and could not provide any such documentation, just as they now fail to provide such documentation to the Court.[35] Toberoff Reply Decl., Exs. D, E (Levitz Tr. 289: 9-23; 295: 6-11).

Defendants lastly cite to statements *out of context* from Joanne Siegel's May 9, 2002 Letter to Time-Warner's CEO, Richard Parsons. However, as set forth above the letter made clear that no agreement had been reached by the parties, and that the October 16, 2001 proposal that Plaintiffs believed had been the basis for agreement, as set forth in the October 19, 2001 Letter, was, in fact, very different from the egregious agreement Defendants submitted on February 1, 2002.[36] Bergman Decl.,

---

[34] Defendants gave a standard "Superman" character credit to Siegel & Shuster on the film as this is part of the comics' well known history and Defendants were already obligated to do so. Bergman Decl., Ex. MM.

[35] Plaintiffs filed a motion to compel Defendants to provide documentation evidencing such purported "reserve account" (if any exists) and to compel numerous other categories of documents relating to their claims/defenses, particularly financial documents, which have been suppressed. Toberoff Reply Decl., Ex. D at 19-20.

[36] In discovery, it was revealed that Marks had not shown Schulman's October 26, 2001 Letter to Plaintiffs, presumably not to upset them. Toberoff Reply Decl., Ex. F (Marks Tr. 203: 3710-14); Ex. G ( Laura Siegel Tr. 139:22- 140:17).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Ex. Z ("We made painful concessions assured if we did we would arrive at an agreement…Your company's unconscionable contract dated February 4, 2002 [*sic*] contained new unconscionable demands that were not in ***the proposal***.")(emphasis added).

Defendants tellingly skip over Mr. Parson's letter dated May 21, 2002 in reply to Mrs. Siegel's letter which, although carefully worded, *admits* that as of that late date an agreement had *not* been consummated.  Bergman Decl., Ex. AA ("John [Schulman] and Paul [Levitz] look forward to meeting with your representatives, and ***we continue to hope that this agreement can be closed*** based upon the earlier discussions with your lawyers (emphasis added).")

Defendants further state disingenuously that there is "*no evidence whatsoever* of their [Plaintiffs'] purported intention not to be bound."  (Opp. at 74:3-5 (emphasis in original).  Yet, as set forth above, Mrs. Siegel's May 9, 2002 letter made this abundantly clear.  Bergman Decl., Ex. Z ("After four years ***we have no deal*** and this [February 1, 2002] contract makes an agreement impossible.")

Defendants miss-cite and purport to rely on cases that actually support Plaintiffs' Motion, while failing to distinguish the cases cited by Plaintiffs.  *See Beck*, 211 Cal. App. 3d 1563 (sustaining a demurrer to a breach of written contract claim, where a letter outlining terms of a proposed contract did not constitute a binding contract, but was merely an agreement to agree which could not sustain a cause of action); *Harris v. Rudin, Richman & Appel,* 74 Cal. App. 4th 299, 307 (1999) (affirming denial of plaintiff's motion to enforce a settlement letter from defendants' counsel because plaintiff's had not signed the letter).[37]

---

[37] Defendants also cite distinguishable cases.  In ***Ersa Grae Corp. v. Fluor Corp.,*** 1 Cal. App. 4th 613, 624, at n.4 (1991), unlike here, the parties had clearly agreed to all material terms of the contract which were sufficiently set forth.  In *King v. Stanley*, 32 Cal. 2d 584, 588 (1948), unlike here, there was clear mutual assent to identical material terms of an agreement to purchase real property, as defined under CCP § 1624(4). In the inapposite *House of Prayer v. Evangelical Assn. for India,* 113 Cal. App. 4th 48, 58 (2003), a written agreement to sell real property, sufficient in every other respect, was not unenforceable for merely failing specify a time of performance, "because the law implies a reasonable time."  In *Alexander v. Codemasters Group Limited*, 104 Cal. App. 4th 129, 141 (2002) the issue was one of contract interpretation not formation, as in this case.  The Court found that the defendant had not met its burden on summary judgment on the close

68

Particularly instructive is *Inamed Corp. v. Kuzmak,* 275 F. Supp. 2d 1100, 1104-5, 1121-2 (C.D. Cal. 2002) which Defendants miss-cite for their argument that the question of whether the October 19, 2001 Letter constitutes a contract cannot be decided on summary judgment. The issue before the Court in *Inamed* was whether a certain letter constituted a settlement agreement between plaintiff manufacturer and defendant patent holder. The Court *denied* the manufacturer's motion for summary judgment on its claim for specific performance, and instead granted partial summary judgment *sua sponte* in the patent holder's favor, finding that the letter, lacking several material terms, could not be enforced as a matter of law. *Id*. at 1104-5, 1121-2. The Court found that there were no triable issues of material fact regarding the letter's non-enforceability; and that the manufacturer had been afforded an ample opportunity on summary judgment to present all relevant evidence. *Id.*

*Inamed*, *supra*, cited with approval *Weddington*, 60 Cal.App.4th at 801-2, 812, 815-16, which the prevailing patent owner, like Plaintiffs herein, relied on. In *Weddington,* although the parties could not agree on certain terms of a negotiated music license, the mediator nonetheless used the parties' interim agreement to "formalize a license." The court held the license unenforceable because the parties had not "objectively manifested agreement [to all] material terms." *Id.* at 815-816. The *Inamed* Court held: "Similarly, [here] where there is no meeting of the minds upon the material terms of a contract, the agreement cannot be enforced. One measure of whether terms are 'material' is whether they have been the subject of debate and discussion during the course of the parties' negotiations." *Id.* at 1122. *See also Weddington*, 60 Cal.App.4th at 808 (the record "shows that there was never any meeting of the minds, either subjectively or objectively, as to exactly what these words meant").

---

question of whether the stock options in an employment contract were subject to a vesting schedule. By contrast, here, the subject documents demonstrate on their face many differences in material terms; and thus, the issue of contract formation can be decided as a matter of law.

69

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Similarly favorable is *Banner*, 62 Cal. App. 4th at 360-361 (cited by Defendants and by Plaintiffs in their Motion) where the court found no enforceable arbitration agreement based on defendants addition of new terms to the parties' draft agreements.

Under the analogous facts in this case, the Court should find as a matter of law that there is no binding contract where there was no meeting of the minds between Plaintiffs and Defendants on all material terms, as evidenced by the parties differing interpretations of the previously discussed deal points. Toberoff Decl., Exs. BB, CC, DD. *See Inamed,* 275 F. Supp. 2d at 1122; *Weddington,* 60 Cal.App. 4th at 818-19, and cases cited therein.

*Louis Lesser Enterprises, Ltd. v. Roeder*, 209 Cal. App. 2d 401, 407-8 (1962), cited by Defendants, is similarly instructive. The Court *rejected* the claim that a letter constituted an agreement, finding that because the party in a subsequent letter recited substantial changes in the proposed terms, the alleged agreement was no more than an agreement to agree: "These changes all too well indicate that the [prior] letter…was never intended to be the final memorial of the agreement of the parties." *Id*. "If the document or contract that the parties agree to make is to contain a material item that is not already agreed on no contract has been made; and the so-called 'contract to make a contract' is not a contract at all." *Id*. at 408, *citing* 1 *Corbin on Contracts*, at 67-68; *Myers v. Gager*, 175 Cal.App.2d 314, 323 (1959).

Here, as in *Louis Lesser, supra,* the changes between the October 19, 2001 Letter and the October 26, 2001 Letter and the nature of the communications clearly indicate that the letters were "never intended to be a final memorial" of an agreement. *Id*. at 408. This is further corroborated by the diverging February 1, 2002 Draft. "It is essential to the existence of every contract that there should be a reciprocal assent to a definite proposition, and when the parties to a proposed contract have themselves fixed the manner in which their assent is to be manifested, an assent thereto, in any other or different mode, will not be presumed." *Kessinger v. Organic Fertilizers, Inc*.,

70

1  151 Cal. App. 2d 741, 750 (1957).

2  **B.  Defendants' Contract Analysis Does Not Comport With**

3  **Fundamental Principles Of Contract Law**

4  Defendants are in denial of the axiomatic conclusion that if Marks' October 19,

5  2001 Letter purports to accept an October 16, 2001 proposal by Schulman, and

6  Schulman in response, on October 26, 2001, informs Marks point blank that

7  Schulman's October 16 proposal was materially different (enclosing an outline "*of*

8  *what we believe the deal we discussed is*") then the October 19, 2001 Letter

9  containing different terms then the October 16 proposal, was a *counteroffer*, as a

10  matter of law, rejected by Schulman.  *See Panagotacos v. Bank of America*, 60 Cal

11  App 4th 851, 855-856 (1998)(terms proposed in offer must be met exactly, precisely,

12  and unequivocally for its acceptance to result in a binding contract); *In re Pago Pago*

13  *Air Crash,* 637 F.2d 704, 706 (9th Cir. 1981)(qualified acceptance constitutes a

14  counteroffer terminating original offer which must be accepted by former offeror,

15  now turned offeree, before a binding contract results).  *See also* Cal. Civ. Code §

16  1585; *Corbin on Contracts* § 3.36 (2006).

17  Defendants re-write history by claiming that the October 19, 2001 Letter

18  "represented an acceptance of all material terms offered by Mr. Schulman," relying

19  on Schulman's current declaration as opposed to his objective manifestations of

20  intent at the time in question which say otherwise.  Toberoff Decl., Ex. CC (October

21  26, 2001 Letter), Ex. DD (February 1, 2002 Draft).  *See Russell v. Union Oil Co*., 7

22  Cal. App. 3d 110, 114 (1970). ("Mutual assent is gathered from the… words and acts

23  of the parties, and not from their unexpressed intentions or understanding.")

24  Defendants strain to "freeze in time" the October 19, 2001 Letter, while

25  contradicting the statements in their own Opposition.  *See e.g.* Opp. at 74:22-25:

26  "what the material terms of the contracts are depends on the circumstances of the

27  agreement, including…the subsequent conduct of the parties…" *citing House of*

28  *Prayer,* 113 Cal. App. 4th at 53;  Opp. at 74:26 – 75: 3:  "whether the parties have

71

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

assented to 'the same thing in the same sense'" depends on an examination of "the evidence of the parties' objective intent," *citing Banner.*, 62 Cal. App. 4th at 358 (1998).

Defendants erroneously argue: "even *if* the Schulman Letter or the February Draft did not comport…[with] the Marks Letter…that would only mean that the Schulman Letter and the February Draft did not constitute the agreement of the parties…" (Opp. at 75:27 - 76:4). However, Defendants cannot turn back the clock and claim that some indeterminate contract was reached at an earlier point in the negotiations, when they fail to conclude an agreement due to their overly aggressive negotiating strategy. The parties' outward manifestations must show that the parties *both* agreed "upon the same thing in the same sense." Cal. Civ. Code § 1580. If there is no manifestation of assent to the "same thing" by both parties, then there is no mutual consent to contract and no contract formation. Cal. Civ. Code §§ 1550, 1565, 1580.

According to Defendants, they could have informed Plaintiffs on October 26, 2001 that the "deal" is not correctly reflected in Marks' October 19, 2001 Letter; propose different terms in Schulman's October 26, 2001 Letter, and even more different terms in their February 1, 2002 Draft, and when these are rejected by Plaintiffs in 2002, nonetheless hold Plaintiffs for the first time in late 2004 to the terms in the October 19, 2001 Letter. (Opp. at 76: 22-25). Contract law surely does not work in this way. *Glendale Motor Co. v. Superior Court*, 159 Cal.App.3d 389, 396 (1984), ("California law has generally held that a qualified acceptance or counteroffer affects the viability of the offer itself, so that 'a qualified acceptance amounts to a new proposal or counteroffer *putting an end to the original offer*;'" *quoting Apablasa v. Merritt & Co.*, 176 Cal. App. 2d 719, 726 (1959) (contract requires meeting of the minds on *all* material terms) cited by Defendants.

Defendants attempt to simulate issues of fact and "muddy the waters" with innuendo that Plaintiffs withdrew due to purported higher offers simply does not hold

**ER 2580**

up and fails to establish any "genuine issue of material fact." F.R.C.P. 56 (e).
Firstly, Marks' deposition transcript cited by Defendants *nowhere* states this.
Secondly, it is undisputed that Joanne Siegel's May 9, 2002 Letter emphatically
rejected Defendants' proposals ("we have no deal and this contract makes an
agreement impossible") months before any purported higher offer in August, 2004
(Opp. at 24:17-18). Thirdly, the parties' prior exchange (October 19, 2001 Letter,
October 26, 2001 Letter and February 1, 2002 Draft) demonstrates that as a matter of
law that no contract was reached by the parties, irrespective of Plaintiffs' reasons for
ending the tortured negotiations with Defendants.

### C. Defendants Fail To Refute The Material Differences Between The October 19, 2001 Letter, The October 26, 2001 Letter And The February 1, 2002 Draft

Faced with the indisputable differences between the October 19, 2001 Letter,
the October 26, 2001 Letter and the February 1, 2002 Draft, Defendants claim that
the differences are "irrelevant," ignoring the very contract law cited by them. See
e.g., *Callie,* 829 F.2d at 891; *Banner*, 62 Cal. App. 4th at 357-359.

Defendants subjectively argue purported inferences to be drawn from Marks'
"outward manifestations" and allege that Marks did not point out or protest
Defendants' differing terms. (Opp. at 79:13-17). Firstly, this contradicts Schulman's
own declaration (Schulman Decl., ¶ 11, Ex. A). *See also* Toberoff Decl., Ex. EE.
More importantly, the appropriate contract analysis turns on the documents, as the
*objective* manifestation of the parties' intent, and the uncontroverted and
independently verifiable fact that the material terms of the purported "deal" reflected
in these documents are simply *not* the same. *Callie,* 829 F.2d at 891. *See also*
*Banner*, 62 Cal.App. at 358 ("[T]he failure to reach a meeting of the minds on all
material points prevents the formation of a contract even though the parties have
orally agreed upon some of the terms, or have taken some action related to the
contract.").

73

Defendants continue to hedge stating that the Schulman letter "accurately reflect[ed] the *essential* provisions of the agreement that the parties had reached." (Opp. at 78:24 -79:1, emphasis added).  This is not the test and is inaccurate.  *See Banner*, 62 Cal. App. 4th at 357-8 ("California law is clear that there is no contract until there has been a meeting of the minds on *all* material points."); *see also* Cal. Civ. Code, §§ 1550, 1565 and 1580.

Defendants falsely claim that "Plaintiffs do not …even explain how any of the purported differences reflected in the[ir] Chart are 'material'."  (Opp. at 79:18-20).  Yet, Plaintiffs' chart ("Chart") carefully details numerous differences, and explains their materiality.  (Mot. at 48-57).  In addition, the Chart consistently references furnished excerpts from the deposition transcript of Marks, an experienced entertainment transactional attorney, who describes in clear, painstaking detail the importance, relevance and materiality of these differences.  Toberoff Decl., Ex. EE.

Defendants try, but fail, to explain away some of the differences and do not (because they cannot) even begin to rationalize the many other differences delineated by Plaintiffs.

For instance, while admitting that Shulman's October 26, 2001 Letter and the February 1, 2002 Draft "appear[] to sweep up characters and properties which are *not* related to Superman, Superboy and Spectre (the sole properties covered in the October 19, 2001 Letter),  Defendants speculate, *without offering a scintilla of evidence*, that Siegel's other works must have been "works for hire" or were not subject to Plaintiffs' notices of termination.  (Opp at 81-82).  Firstly, this still would include Siegel's many unpublished stories and other creations.  Secondly, if this had been so "immaterial," Defendants would not have made such a concerted effort to define the scope of the properties so much more broadly in the October 26, 2001 Letter and the February 1, 2002 Draft as "all properties" ever created by Siegel "even if not created for DC Comics."  Toberoff Decl., Ex CC (October 26, 2001 Letter) at 319; Ex. EE (Marks Tr.) at 155:25-156:3.  As explained in Plaintiffs' Chart, this

74

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

supposed "distinction without a legal difference" (Opp. at 82:5) resulted in a definitional "trap door" in Defendants' February 1, 2002 Draft.  Therein, Plaintiffs' 6% royalty, which per the October 19, 2001 Letter was supposed to be tied to the exploitation of DC's 70 years of derivative "Superman" works, was instead tied solely to the exploitation of Siegel's properties (reducing Plaintiffs' share from a 50% accounting to 6% without a corresponding benefit).  *See* Toberoff Decl., Ex. EE (Marks Tr.) at 155:25-156:3; 184:13-187:22 (explaining this definitional "trap door"). Tellingly, this deceptive, but very meaningful distinction, is ignored in Defendants' Opposition even though highlighted in Plaintiffs' Chart (Mot. at 48).

Defendants' analysis of the different terms regarding Plaintiffs' royalty and royalty reductions (obviously material) is similarly inaccurate and/or incomplete. Defendants again hedge when comparing the October 19 and October 26 letters as "similarly defin[ing] the base royalties payable" (not the "same" royalties) on DC's publication and other media revenues, and then *falsely* state that "[t]he amount and circumstances under which those reductions can be made also comport in all respects between the two letters."  (Opp. at 83: 12-15).

The explicit differences set forth in Plaintiffs' Chart (Mot. at 48-57) and Plaintiffs' specific quotations from and citations to the letters prove otherwise.  For instance, as seen from the Chart, Schulman's October 16, 2006 Letter did not simply describe "extraordinary circumstances" (like the *Six Flags* license referred to in the October 19, 2006 Letter) where the royalty could be reduced to 1%, as Defendants argue, it greatly broadened this possibility to any time a DC "licensee is granted rights to utilize a number of DC properties as well as the [Siegel] Properties…and information [regarding  'actual sales of individual products'] is not [purportedly] available…" Toberoff Decl., Ex. CC (October 26, 2001 Letter) at 322-23. Schulman's October 26, 2006 Letter also added new terms regarding revenue allocation (i.e., reduction) for the purpose of computing the royalty on "merchandise actually produced by DC."  *Id*.

75

1    Defendants falsely accuse Plaintiffs' detailed Chart of being "misleading" and

2    "highly deceptive" (Opp. at 83: 5), exclaiming "[b]ut what the Marks Letter *actually*

3    provides for is a royalty floor of 0.5% *other than where there is a cameo appearance*

4    *by the characters*.  (Marks Letter, ¶ 6)."  (Opp. at 83: 27-28, emphasis in original).

5    Yet, Plaintiffs' Chart explicitly repeats in two sections (media/merchandising and

6    publications) that in the October 19, 2001 Letter the royalty will be adjusted pro-rata

7    "(other than [for] 'cameo' type appearance)." (Mot. at 49-50).

8    Defendants completely fail to even address the blatant differences regarding

9    royalties between the October 19, 2001 Letter and February 1, 2002 Draft clearly set

10   forth in the Chart.[38]  The February 1, 2002 Draft is not only significant for adding

11   new material terms, not in the prior letters, but for including in more detail the

12   changes in the October 26, 2001 Letter – highlighting their importance.

13    Defendants admit that a difference exists as to payments beyond the expiration

14   of the copyright term ("royalty extension ('tail')" in the Chart) in that the October 26,

15   2001 Letter, unlike the October 19, 2001 Letter, does not provide the extension for

16

17   _____

[38] For instance, in the draft contract, Plaintiffs royalty is suddenly limited to revenues from DC's "Licensing" which refers to DC "authorizing any third party to commercially exploit"

18   Superman/Spectre and DC's revenues subject to the royalty "shall not include any sums received by DC Comics for providing any services or materials in connection with the licensing of rights" even

19   though Plaintiffs' reduction to a 6% royalty rate already accounted for DC's services. *See* Toberoff Decl., Ex. DD (February 1, 2002 Draft) at 9, ¶¶ 23, 24; Ex. EE (Marks Tr.) at 188:17-189:13. In

20   Defendants proposed contract the revenues to which a reduced 1.5% royalty is applicable are much broader than in the October 19, 2001 Letter, encompassing all products where Superman / Spectre is

21   not the "predominant creative element" nor the "sole predominant identity or title." *See* Toberoff Decl., Ex. DD (February 1, 2002 Draft) at 24; Ex. EE (Marks Tr.) at 159: 10-12.

22   The proposed contract also further broadened the instances where Plaintiffs royalty could be

23   reduced to 1% (well beyond Six Flags or "extraordinary circumstances" to any "Licenses where Revenues from such Licenses are not specifically attributed to royalties earned by the sale of

24   character merchandise that can be directly allocated" to the subject "Properties."). *See* Toberoff Decl., Ex. DD (February 1, 2002 Draft) at 25.  The proposed contract added new terms that only

25   "10% of Revenue, less costs, and subject to pro rata allocations" from merchandise "actually produced" by DC "shall be deemed DC Comics' Revenues for purposes of royalty computation."

26   *Id*. at 24-25.  Instead of paying no less than minimum 0.5% royalty whenever the "Properties" appear, new exceptions were added where no royalty would be payable:  for use of Properties in

27   Time Warner advertising (*Id*. at 27-28); when the Properties "appear in publications or stories based on other properties and the Properties' characters do not appear in the title of the publication or

28   feature in question" (*Id*. at 27) and no royalties are paid on products "returned, damaged, lost, distributed by DC as premiums or promotions and/or distributed to uncollectible accounts or sold at discounts in excess of seventy percent off of cover price." *Id*. at 9.

76

existing movies, television *and* "other substantial projects." (Opp. at 84). Yet, Defendants rationalize that "Plaintiffs utterly fail to establish…that such difference could not be addressed…in the long form…" *Id*. By stating that the parties could have reached an agreement, Defendants unwittingly recognize that they did not. Again, Defendants completely fail to address the October 26, 2002 Draft which includes this difference, *plus* the additional limitation on the royalty extension to "[l]icensing of exhibition and/or broadcast rights to the above motion pictures and television series," *but not to the associated* "sale of any goods or provision of any services ancillary or collateral thereto." Toberoff Decl., Ex. DD (February 1, 2002 Draft) at 27.

Defendants dismissively punt with regard to the many other material differences detailed in the Chart and the evidence cited therein which they simply fail to address. Instead, Defendants weakly repeat the mantra that the parties "were merely going through the later process of refining the provisions of that agreement into a long-form contract." (Opp. at 84:19 - 85:1-4). As set forth above, Schulman's divergent October 26, 2001 reply *outline* of what "we believe the deal…is" is not a long form version of Marks' October 19, 2001 letter. Nor can the numerous new and changed terms in the October 26, 2001 Letter and February 1, 2002 Draft, which are *sharply* in Defendants' favor, be described as mere "refinements."

For instance, Defendants' do not even address the significant differences between Plaintiffs' very limited warranty in the October 19, 2001 Letter, and Plaintiffs' much broader warranties and representations, tied to indemnification obligations, in the October 26, 2001 Letter and February 1, 2002 Draft. As set forth in the Chart, the October 19, 2001 Letter states explicitly that the "Siegel Family would not make any warranties as to the nature of rights, but would represent that they have not transferred the rights to any party." *See* Toberoff Decl., Ex. BB (October 19, 2001 Letter) at 5, ¶ 13; Ex. EE (Marks Tr.) at 156:6-10. Yet, the October 26, 2001 Letter which purports to be "the agreement" requires that Plaintiffs

77

warrant and represent "jointly and severally" that they:  (i) have "no termination nor any other rights remaining except for under this agreement;" (ii) have "no contract of any kind with any other party with respect to or related to the Properties;" (iii) will not "exploit or enter into any agreements" regarding the Properties; and (iv) will not "diminish the DC/WB enjoyment of exclusive ownership, control, and use" of the Properties.  Toberoff Decl., Ex. CC (October 26, 2001 Letter) at 2; Ex. EE (Marks Tr.) at 156:6-10.

The February 1, 2002 Drafts includes these additional warranties and adds even more as follows:  (v) that "they know of no other party with any rights of any kind or that claim to any rights of any kind" in the subject works or trademarks;" (vi) that any of their rights in the works derive from Siegel; (vii) that "no person or entity other than [Plaintiffs/DC] own any rights or could possibly claim any rights of any nature arising out of any [Siegel] Works;" (viii) that Plaintiffs know of no other Siegel Works in which they claim any rights;  (ix) that Plaintiffs know of no Superman works not listed in the Termination Notices; (x) that Joanne Siegel is the sole executor, trustee, administrator, and personal representative of the Siegel Estate.  *See* Toberoff Decl., Ex. DD (February 1, 2002 Draft) at 41-42; Ex. EE (Marks Tr.) at 156:6-10.  Elsewhere in the February 1, 2002 Draft Plaintiffs must additionally represent that they have no right to terminate any new grant of the Siegel works nor right to challenge the agreement.  *See* Toberoff Decl., Ex. DD at 30-31.

**These additional reps and warranties are extremely material because they are tied to Plaintiffs' obligation to fully indemnify Defendants for any breaches or claimed breaches thereof.**  *See* Toberoff Decl., Ex. CC (October 26, 2001 Letter) at 8; Ex. DD (February 1, 2002 Draft) at 45-46.  The October 26, 2001 Letter additionally requires Plaintiffs to "defend and indemnify DC re: third party claims;" to "defend and indemnify DC re: Dennis [Larson] claims;" and "indemnify re: Michael Siegel for all expenses, costs, any reasonable settlement or get Michael Siegel to sign."  *See* Toberoff Decl., Ex. CC (October 26, 2001 Letter) at 325; Ex. EE

78

(Marks Tr.) at 156:14-19; 160:21-25.

The February 1, 2002 Draft adds broad new terms that Plaintiffs must jointly and severally defend and indemnify DC for any and all: (i) claims by DC against Plaintiffs arising from a breach *or claimed breach* by Plaintiffs "(or any of the successors, assigns, heirs, estates, trustees, administrators or executors of Jerome Siegel);" (ii) ***claims by*** Plaintiffs, the estate and heirs of Siegel, Dennis Larson, or ***any other person or entity; including "any claims relating to [Plaintiffs'] representations and warranties"*** [see above]; and ***Plaintiffs' obligation to indemnify is "fully binding regardless of whether any of the…claims [etc.]…are founded, valid, established in law or fact, or based on evidence***." *See* Toberoff Decl., Ex. DD (February 1, 2002 Draft) at 45-46 (emphasis added); Ex. EE (Marks Tr.) at 156:14-19; 160:21-25.

To make matters worse, Marks' October 19, 2001 Letter provided that DC would provide "[f]ull E&O and general liability coverages and full indemnities for Joanne Siegel, Laura Siegel Larson against liability for DC or affiliate actions." *See* Toberoff Decl., Ex. BB (October 19, 2001 Letter) at 5, ¶ 14; Ex. EE (Marks Tr.) at 160:21-25. Yet, both the October 26, 2001 Letter and February 1, 2002 Draft do not obligate DC to provide Plaintiffs with E&O and general liability coverage, and the latter limits indemnification of the Plaintiffs "due to *wrongful* acts by [DC or Warner]." *See* Toberoff Decl., Ex. CC, Ex. DD (February 1, 2002 Draft) at 46.

Defendants' argument that the above warranties/indemnification provisions and the potential liability to which they expose Plaintiffs, are not materially divergent deal points, but mere "refinements" in the "documentation" phase, is specious.

Numerous other material differences are left unchallenged in Defendants' Opposition. For instance, the curtailing of Plaintiffs' credit on movies and TV series, and the outright deletion of the obligation to provide credit in "paid advertising," contrary to Marks' October 19, 2001 Letter. *See* Toberoff Decl., Ex. BB (October 19, 2001 Letter) at 4, ¶¶ 3-4; Ex. CC (October 26, 2001 Letter) at 7; Ex. DD (February 1,

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

2002 Draft) at 39-40; Ex. EE (Marks Tr.) at 161:12-20; and the imposition on Plaintiffs in the October 26, 2001 Letter of new affirmative obligations to "positively publicize the Properties," including "public appearances" and related "travel;" to issue "a joint press release;" and to "consult with DC prior to any personal appearances, written statements, interviews, or other activities they may wish to conduct relating to the Properties," which are then heightened in the February 1, 2002 Draft. Toberoff Decl., Ex. CC (October 26, 2001 Letter) at 2; Ex. DD (February 1, 2002 Draft) at 41; Ex. EE (Marks Tr.) at 157:19-158:3.

No reasonable juror could find that the above differences in these deal points, and the others set for in Plaintiffs' Chart, are immaterial. Moreover, Defendants have utterly failed to meet their burden of providing evidence raising a genuine issue of fact as the materiality of these differing terms. Defendants have admitted, as they must, that there can be no contract unless there is a *"meeting of the minds" "on all material terms* of [an] agreement" (Opp. at 68:10-14, 74:19) as this is well-settled law. *Apablasa*, 176 Cal. App. 2d at 726; *Callie*, 829 F.2d at 891. Accordingly, this Court can and should dispose of this matter on summary judgment by ruling that no contract for the sale of Plaintiffs' recaptured copyright interests was consummated by the parties.

Accordingly, for the reasons set forth above, Plaintiffs move to dismiss Defendants' Third and Fourth Alternative Counterclaims and parts of their Eighth and Ninth Affirmative Defenses, because Defendants fail as a matter of law to establish an agreement on all material terms.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court grant their motion for summary adjudication in the form lodged separately herewith as the Proposed Judgment.

80

1   DATED: June 25, 2007       LAW OFFICES OF MARC TOBEROFF, PLC

2

3                          By_____

4                                    Marc Toberoff

5                          Attorneys for Plaintiffs JOANNE SIEGEL and LAURA SIEGEL LARSON

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ER 2589**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 303 of 321

1   WEISSMANN WOLFF BERGMAN
      COLEMAN GRODIN & EVALL LLP
2   Michael Bergman (SBN 37797)
    Anjani Mandavia (SBN 94092)
3   9665 Wilshire Boulevard, Ninth Floor
    Beverly Hills, California 90212
4   Telephone: 310-858-7888
    Fax:       310-550-7191
5
    FROSS ZELNICK LEHRMAN & ZISSU, P.C.
6   Roger L. Zissu (Admitted *pro hac vice*)
    866 United Nations Plaza
7   New York, New York 10017
    Telephone: 212-813-5900
8   Fax:       212-813-5901
9   PERKINS LAW OFFICE, P.C.
    Patrick T. Perkins (Admitted *pro hac vice*)
10  1711 Route 9D
    Cold Spring, NY 10516
11  Telephone: 845-265-2820
    Fax:       845-265-2819
12
    Attorneys for Defendants and Counterclaimant
13
14              UNITED STATES DISTRICT COURT
         CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

15  JOANNE SIEGEL and LAURA        ) Case No. CV 04-8776 SGL (RZx)
    SIEGEL LARSON,                 )
16                                 ) Hon. Stephen G. Larson, U.S.D.J.
                                   )
17           Plaintiffs,           ) **DECLARATION OF MICHAEL**
                                   ) **BERGMAN IN OPPOSITION TO**
18       vs.                       ) **PLAINTIFFS' MOTION FOR**
                                   ) **PARTIAL SUMMARY**
19  TIME WARNER INC., WARNER       ) **JUDGMENT**
    COMMUNICATIONS INC., WARNER    )
20  BROS. ENTERTAINMENT INC.,      )
    WARNER BROS. TELEVISION        )
21  PRODUCTION INC., DC COMICS,    ) Time:  10:00 a.m.
    and DOES 1-10,                 ) Date:  July 23, 2007
22                                 ) Place: Courtroom  1
             Defendants.           )
23                                 )
                                   )
24                                 )
                                   )
25                                 )
                                   )
26                                 )
                                   )
27  _____    )
    AND RELATED COUNTERCLAIMS.     )
28                                 )

**ER 2590**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 304 of 321

I, Michael Bergman, declare and state as follows:

1.     I am a member of Weissmann Wolff Bergman Coleman Grodin & Evall LLP, counsel for Defendants. This declaration, based upon my own personal knowledge and on our office's records, is submitted in support of Defendants Warner Bros. Entertainment Inc., Time Warner Inc., Warner Communications Inc., Warner Bros. Television Production Inc. and defendant and counterclaimant DC Comics' ("Defendants") Opposition to Plaintiffs' Motion for Partial Summary Judgment.

2.     Attached hereto as Exhibit <u>A</u> is a true and correct copy of an excerpt of Jerome Siegel's ("Siegel") unpublished autobiography, "Creation of a Superhero," along with a certificate of copyright registration for such work.

3.     Attached hereto as Exhibit <u>B</u> is a true and correct copy of a letter dated June 12, 1934 from Siegel to Russell Keaton enclosing early Superman scripts.

4.     Attached hereto as Exhibit <u>C</u> is a true and correct copy of early Superman strips prepared by Russell Keaton.

5.     Attached hereto as Exhibit <u>D</u> is a true and correct copy of the March 1, 1938 assignment from Siegel and Joe Shuster ("Shuster") to Detective Comics ("Detective").

6.     Attached hereto as Exhibit <u>E</u> is a true and correct copy of the September 22, 1938 agreement between Siegel and Shuster and Detective.

7.     Attached hereto as Exhibit <u>F</u> is a true and correct copy of the September 22, 1938 agreement between Siegel and Shuster, Detective and the McClure Newspaper Syndicate.

8.     Attached hereto as Exhibit <u>G</u> is a true and correct copy of the November 30, 1938 Superboy pitch letter from Siegel to Detective.

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 305 of 321

9.   Attached hereto as Exhibit H is a true and correct copy of the December 1940 Superboy script, produced by Plaintiffs in this action.

10.   Attached hereto as Exhibit I is a true and correct copy of an excerpt form the transcript of the deposition of plaintiff Laura Siegel Larson.

11.   Attached hereto as Exhibit J is a true and correct copy of an excerpt from the November 2000 DC Comics Millennium Edition reproduction of *More Fun Comics No. 101*, originally published in 1945, showing the first published appearance of Superboy. Although the comic from which the copy was made is a replica, and not the original, the panels are identical to those in the original comic. A certificate of copyright registration for *More Fun Comics No. 101* is also attached.

12.   Attached hereto as Exhibit K is a true and correct copy of an excerpt from the novel *The Adventures of Superman* by George F. Lowther. The book is a 1996 reprint of the original 1942 publication.

13.   Attached hereto as Exhibit L is a true and correct copy of the December 2000 DC Comics Millennium Edition reproduction of *Superman No. 1*, which was originally published in 1939. Although the comic from which the copy was made is a replica, and not the original, the panels are identical to those in the original comic.

14.   Attached hereto as Exhibit M is a true and correct copy of a collection of the first series of Superman newspaper strips published by the McClure Newspaper Syndicate in 1939. These strips were reproduced from Superman: The Dailies (1939-1942), published by Kitchen Sink Press and DC Comics in 1998.

15.   Attached hereto as Exhibit N is a true and correct copy of the Superman Notice of Termination entitled "Notice of Termination of Transfer Covering Extended Renewal Term: December 4, 1937 Agreement."

16.     Attached hereto as Exhibit <u>O</u> is a true and correct copy of an excerpt from the Superman Notice of Termination entitled "Notice of Termination of Transfer Covering Extended Renewal Term: March 1, 1938 Agreement," excluding the list of works.

17.     Attached hereto as Exhibit <u>P</u> is a true and correct copy of an excerpt from the Superman Notice of Termination entitled "Notice of Termination of Transfer Covering Extended Renewal Term: September 22, 1938 Agreement (1)," excluding the list of works.

18.     Attached hereto as Exhibit <u>Q</u> is a true and correct copy of an excerpt from the Superman Notice of Termination entitled "Notice of Termination of Transfer Covering Extended Renewal Term: September 22, 1938 Agreement (2)," excluding the list of works.

19.     Attached hereto as Exhibit <u>R</u> is a true and correct copy of an excerpt from the Superman Notice of Termination entitled "Notice of Termination of Transfer Covering Extended Renewal Term: December 19, 1939 Agreement," excluding the list of works.

20.     Attached hereto as Exhibit <u>S</u> is a true and correct copy of an excerpt from the Superman Notice of Termination entitled "Notice of Termination of Transfer Covering Extended Renewal Term: May 19, 1948 Agreement," excluding the list of works.

21.     Attached hereto as Exhibit <u>T</u> is a true and correct copy of an excerpt from the Superman Notice of Termination entitled "Notice of Termination of Transfer Covering Extended Renewal Term: December 23, 1975 Agreement," excluding the list of works.

22.     Attached hereto as Exhibit <u>U</u> is a true and correct copy of a letter dated April 15, 1999 from Carol Simkin to Arthur Levine.

3

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 307 of 321

23.     Attached hereto as Exhibit <u>V</u> is a true and correct copy of the First Amended Complaint in Case No. 04-8400 (the "Superman Action").

24.     Attached hereto as Exhibit <u>W</u> is a true and correct copy of the Notice of Termination of Transfer Covering Extended Renewal Term: Superboy.

25.     Attached hereto as Exhibit <u>X</u> is a true and correct copy of a letter dated August 27, 2004 from Patrick Perkins to Marc Toberoff.

26.     Attached hereto as Exhibit <u>Y</u> is a true and correct copy of the First Supplemental Amended Complaint in Case No. 04-8776 (the "Superboy Action").

27.     Attached hereto as Exhibit <u>Z</u> is a true and correct copy of the First Amended Counterclaims in Case No. 04-8776.

28.     Attached hereto as Exhibit <u>AA</u> is a true and correct copy of an excerpt from the Sixth Edition of William F. Patry, *Latman's The Copyright Law*, published in 1986.

29.     Attached hereto as Exhibit <u>BB</u> is a true and correct copy of an excerpt from the Seventh Edition of William, *Patry on Copyright*, published in 2007.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated this 29th day of May, 2007 at Beverly Hills, California.

Michael Bergman

DECLARATION OF MICHAEL BERGMAN

ER 2594

# EXHIBIT A

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 309 of 321

*LIBRARY OF CONGRESS*

# Copyright Office
## of the United States

*WASHINGTON, D.C.*

## ADDITIONAL CERTIFICATE OF REGISTRATION
## OF A CLAIM TO COPYRIGHT



THIS IS TO CERTIFY THAT THE STATE-
MENTS SET FORTH IN THE ATTACHED
HAVE BEEN MADE A PART OF THE
RECORDS OF THE COPYRIGHT OFFICE
WITH CLAIM OF COPYRIGHT REGIS-
TERED UNDER NUMBER
**TXu 11-376**

IN TESTIMONY WHEREOF,
THE SEAL OF THIS OFFICE IS
AFFIXED HERETO ON

**January 4, 2007**

**REGISTER OF COPYRIGHTS**

EXHIBIT _A_

C-731 June 1999 — 10,000

DCC 00142014

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 310 of 321

# FORM TX

UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**TXu · · 11-376**

TX · · · · · · · (TXU)

EFFECTIVE DATE OF REGISTRATION

**NOV 13 1978**

Month · · Day · · Year

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE CONTINUATION SHEET

**(1) Title**

TITLE OF THIS WORK: **CREATION OF A SUPERHERO** | PREVIOUS OR ALTERNATIVE TITLES:

If a periodical or serial give Vol ... No. ... Issue Date ...

PUBLICATION AS A CONTRIBUTION: (If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.)

Title of Collective Work ... Vol ... No. ... Date ... Pages ...

**(2) Author(s)**

IMPORTANT: Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). If any part of this work was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates blank.

**1**

NAME OF AUTHOR: **Jerry Siegel** | DATES OF BIRTH AND DEATH: Born **1914** ... Died ... (Year) ... (Year)

Was this author's contribution to the work a "work made for hire"? Yes ... No. **✓**

AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of **United States** or Domiciled in ... (Name of Country) ... (Name of Country)

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous? Yes ... No. ... **✓**
Pseudonymous? Yes ... No. ... **✓**
If the answer to either of these questions is "Yes," see detailed instructions attached.

AUTHOR OF: (Briefly describe nature of this author's contribution)

**2**

NAME OF AUTHOR: | DATES OF BIRTH AND DEATH: Born ... Died ... (Year) ... (Year)

Was this author's contribution to the work a "work made for hire"? Yes ... No. ...

AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of ... or Domiciled in ... (Name of Country) ... (Name of Country)

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous? Yes ... No. ...
Pseudonymous? Yes ... No. ...
If the answer to either of these questions is "Yes," see detailed instructions attached.

AUTHOR OF: (Briefly describe the nature of this author's contribution)

**3**

NAME OF AUTHOR: | DATES OF BIRTH AND DEATH: Born ... Died ... (Year) ... (Year)

Was this author's contribution to the work a "work made for hire"? Yes ... No. ...

AUTHOR'S NATIONALITY OR DOMICILE:
Citizen of ... or Domiciled in ... (Name of Country) ... (Name of Country)

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK:
Anonymous? Yes ... No. ...
Pseudonymous? Yes ... No. ...
If the answer to either of these questions is "Yes," see detailed instructions attached.

AUTHOR OF: (Briefly describe nature of this author's contribution)

**(3) Creation and Publication**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED: Year **1978**
(This information must be given in all cases.)

DATE AND NATION OF FIRST PUBLICATION:
Date ... (Month) ... (Day) ... (Year)
Nation ... (Name of Country)
(Complete this block ONLY if this work has been published.)

**(4) Claimant(s)**

NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S):
Jerry Siegel, 11928 Darlington Ave., Apt. 102, Los Angeles, CA 90049
Joanne Siegel, 11928 Darlington Ave., Apt. 102, Los Angeles, CA 90049
Laura Siegel, 11928 Darlington Ave., Apt. 102, Los Angeles, CA 90049

TRANSFER: (If the copyright claimant(s) named here in space 4 are different from the author(s) named in space 2 give a brief statement of how the claimant(s) obtained ownership of the copyright.) Author Jerry Siegel is voluntarily sharing with his wife Joanne Siegel, and his daughter Laura Siegel, ownership of his autobiography, CREATION OF A SUPERHERO.

Complete all applicable spaces (numbers 5-11) on the reverse side of this page
• See detailed instructions attached

DO NOT WRITE HERE

Page 1 of ... pages

DCC 00142015

ER 2597    6

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 311 of 321

| | |
|---|---|
| EXAMINED BY: *[signature]* | APPLICATION RECEIVED: NOV 13 1978 |
| CHECKED BY: *[signature]* | |
| CORRESPONDENCE: ☐ Yes | DEPOSIT RECEIVED: NOV 13 1978 |
| DEPOSIT ACCOUNT FUNDS USED: ☐ | REMITTANCE NUMBER AND DATE 44166 NOV13 78 |

TXu 11-376

FOR COPYRIGHT OFFICE USE ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED ADDITIONAL SPACE, USE CONTINUATION SHEET (FORM TX/CON)**

**PREVIOUS REGISTRATION:**

- Has registration for this work or for an earlier version of this work, already been made in the Copyright Office? Yes ...... No ✓
- If your answer is "Yes," why is another registration being sought? (Check appropriate box)
  - ☐ This is the first published edition of a work previously registered in unpublished form
  - ☐ This is the first application submitted by this author as copyright claimant.
  - ☐ This is a changed version of the work, as shown by line 6 of this application.
- If your answer is "Yes," give: Previous Registration Number ........................ Year of Registration ........................

**⑤ Previous Registration**

**COMPILATION OR DERIVATIVE WORK:** (See Instructions)

PREEXISTING MATERIAL: (Identify any preexisting work or works that this work is based on or incorporates.)

MATERIAL ADDED TO THIS WORK: (Give a brief, general statement of the material that has been added to this work and in which copyright is claimed.)

**⑥ Completion or Derivative Work**

**MANUFACTURERS AND LOCATIONS:** (If this is a published work consisting preponderantly of nondramatic literary material in English, the law may require that the copies be manufactured in the United States or Canada for full protection. If so, the names of the manufacturers who performed certain processes, and the places where these processes were performed must be given. See instructions for details.)

| NAMES OF MANUFACTURERS | PLACES OF MANUFACTURE |
|---|---|
| | |

**⑦ Manufacturing**

**REPRODUCTION FOR USE OF BLIND OR PHYSICALLY-HANDICAPPED PERSONS:** (See Instructions)

- Signature of this form at space 10, and a check in one of the boxes here in space 8, constitutes a non-exclusive grant of permission to the Library of Congress to reproduce and distribute solely for the blind and physically handicapped and under the conditions and limitations prescribed by the regulations of the Copyright Office: (1) copies of the work identified in space 1 of this application in Braille (or similar tactile symbols), or (2) phonorecords embodying a fixation of a reading of that work or (3) both

a ☐ Copies and phonorecords    b ☐ Copies Only    c ☐ Phonorecords Only

**⑧ License For Handicapped**

**DEPOSIT ACCOUNT:** (If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.)

Name: ........................
Account Number: ........................

**CORRESPONDENCE:** (Give name and address to which correspondence about this application should be sent.)
Name: Jerry Siegel
Address: 11928 Darlington Ave., Apt. 102
Los Angeles   CA   90049
(City) (State) (ZIP)

**⑨ Fee and Correspondence**

**CERTIFICATION:** ✳ I, the undersigned, hereby certify that I am the: (Check one)
☒ author ☐ other copyright claimant ☐ owner of exclusive rights ☐ authorized agent of: ........................
(Name of author or other copyright claimant, or owner of exclusive rights)
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Handwritten signature: (X) *Jerry Siegel*

Typed or printed name: Jerry Siegel   Date: 11-7-78

**⑩ Certification (Application must be signed)**

| Jerry Siegel (Name) | **MAIL CERTIFICATE TO** |
|---|---|
| 11928 Darlington Ave., Apt. 102 (Number, Street and Apartment Number) | 12 DEC 1978 |
| Los Angeles, California 90049 (City) (State) (ZIP code) | (Certificate will be mailed in window envelope) |

**⑪ Address For Return of Certificate**

✳ 17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

☆ U. S. GOVERNMENT PRINTING OFFICE: 1978 O • 268-824

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 312 of 321

TXu ___ 11-376

Jerry Siegel
11928 Darlington Avenue, Apt. 102
Los Angeles, California 90049
(213) 820-2492

COPYRIGHT OFFICE
NOV 1 3 1978
COPY
LIBRARY OF CONGRESS

CREATION OF A SUPERHERO

By Jerry Siegel

DCC 00142018
ER 2599     8

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 313 of 321



To Joanne, Laura and Joe

yesterday, today and forever

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 314 of 321

PREFACE

I am the writer who originated the idea of doing an adventure comic strip about a character I decided to name "Superman". Then I wrote script for it.

Through the years, various people have asked me to reveal how "Superman" was really created. Does the information which has already been printed on this subject tell the full story?

No.

Others have suggested I write my autobiography and tell the real story about how "Superman" was created and after years of struggle finally was printed and became successful.

This book was written in response to those requests in the hope that it will straighten out some misconceptions and be of interest to "Superman" fans who would like to know the evolution of the "Superman" character.

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 315 of 321

Superman. Superman. Superman.   Some people dream about finding sunken
Atlantis, some people  dream about starring on Broadway, some people think about
transmuting lead into gold, or discovering the meaning of Life, or finding a
quarter in Central Park, but me, I dreamt and thought endlessly about making
a colossal success out of my comic strip inspiration: "Superman".

In mid-1934, I had seen the art work of cartoonist Russell Keaton on the
syndicated "Skyroads" aviation newspaper comic strip, which was written by
Dick Calkins, the artist of "Buck Rogers".

I liked the work of Keaton very much.  I thought that Keaton could probably
draw "Superman" superbly. And so I  wrote to him, care of the newspaper syndicate
for which he worked, asking if he  would be interested in collaborating with me
on new newspaper syndication comic strips.

In a letter dated June 9, 1934, he wrote back  expressing interest in the
possibility of our teaming-up together on a newspaper syndication comic strip.

Ironically, in his letter, Keaton stated he cared for "more of an idea
that isn't too wild and adventurous". Actually, let's face it, it is rather
difficult to think of anything more wild and adventurous than super-powered
Superman. Superman who can pulverize meteors into fragments with his little
finger, race  around the entire circumference  of the world in the twinkling
of an eye, and single-handedly end wars during a coffee break.

However, blithely ignoring Keaton's comment, I submitted for his
consideration the script for wild, adventurous mighty "Superman".

Russell Keaton's letter to me  of June 14, 1934 was very enthusiastic. He
stated that in his opinion "Superman" was already a tremendous hit, and that he
would be glad to collaborate with me on "Superman". However, He was very busy
drawing "Skyroads" several nights a week in addition to ghosting "Buck Rogers"
Sunday pages. However, he was willing to get busy on "Superman" in his extra time.

Upon receiving this enthusiastic letter from Russell, my optimism soared again.

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 316 of 321

Professional artist Leo E. O'Mealia had liked my "Superman" newspaper comic
strip idea, but his interest in the project had apparently dwindled away.
Now another very excellent newspaper syndication cartoonist, too, liked my idea,
thought it had hit possibilities, and was willing to collaborate with me on it.

1933 has been very frustrating for me. Success with my proposed "Superman"
newspaper syndication comic strip had eluded me.

Maybe 1934, with Russell Keaton doing the artwork on my favorite project,
would be the turning point for me and Superman! I was ready and very willing.

On June 22, 1934, Russell Keaton wrote that he had begun work on "Superman".
He stated his friend Norman Marsh, who was drawing "Dan Dunn" for Publishers
Syndicate in Chicago, might possibly help sell "Superman" to Publishers Syndicate.

The mention of Norman Marsh and "Dan Dunn" in Russell Keaton's letter
is quite ironic. The existence of "DETECTIVE DAN", starring Dan Dunn, and
drawn by Norman Marsh, was the catalyst which spurred me into creating
"THE SUPERMAN" comic book and submitting it to Consolidated Book Publishers, Inc.
of Chicago, the publisher of "DETECTIVE DAN". After the prospective publication
of "THE SUPERMAN" pooped out, I created another comic strip, this one entitled
"Superman", in which I had interested both O'Mealia and The Bell Syndicate...
and now I had originated still another version of "Superman" to be drawn by
Keaton ... and now Keaton was suggesting that Norman Marsh could help Keaton
and me sell the "Superman" newspaper strip to a newspaper syndicate.

On June 22, 1934, Keaton wrote to me that I could expect to receive the
"Superman" drawings from him soon.

It all looked very, very promising to me. Finally, it seemed, "Superman"
was going to stop fitfully dragging along, and suddenly burst into fame,
prosperity and success, taking me, his creator, along for the super joy ride.
And the strip's art would be drawn by a superbly gifted cartoonist, Russell
Keaton. Yes, things looked very promising, indeed.

On July 6, 1934, Keaton wrote to me that he would mail to me the week of
daily strips he was working on, as soon as he completed it, so I could look at it
and comment on the artwork. He mentioned that if I came to Chicago for the
Fair, we could meet and talk things over.

I really wasn't too eager to travel to Chicago, and meet Keaton. First
and foremost, I couldn't afford it. I was unemployed and without funds. I hardly
had enough money to take a bus cross-town. Usually, I walked, instead of using
buses or street-cars. In addition, I did not want Keaton to find out that
I was just an inexperienced kid. Such a realization might damage what I hoped would
grow into a mutually worthwhile and profitable relationship.

On July 11, 1934, Keaton wrote that I could expect the "Superman" drawings
by the middle of the next week. He felt it was necessary to produce a second
week, too, for presentation to the syndicates.

By now, I was convinced that Superman was finally going to materialize
in drawn newspaper comic strip form and that a vigorous sales effort to the
major newspaper syndicates would begin soon. Again, my hopes were very high.
Success seemed just around the corner. I had suggested to Keaton that "Superman"
could also be published as a comic book. He wrote back that he did not believe
"Superman" would succeed on the newsstands as a comics magazine because nothing
of that type had succeeded in that field, yet.

Keaton's comment that he did not think "Superman" would be successful as
a newsstand comic book is exceedingly ironic, because years later it was on
the newsstands that "Superman", in the version written by me and drawn by Joe
Shuster, rapidly became outstandingly successful ... so much so that it
inspired hordes of imitators into imitating the costume, super-strength, dual-
identity, postures and feats of trail-blazing "Superman". But Keaton stated
he did have faith that my brainchild "Superman" would be successful.

DCC 00142058

ER 2604   13

Russell mailed to me the first week of the "Superman" daily strips,
and he asked me to rush them immediately back to him. Receiving the artwork,
I thought he had done a terrific art job on the strips and wrote and  told
him so. I promptly returned the art work to him. I did not make photostats of
the strips, and so I can only  recall from memory that they were superbly done
and I was extremely pleased with the excellent job he had done, illustrating
my script.

    I wrote my enthused reaction about his excellent ~~excellent~~ artwork to
Keaton. He responded with thanks and he complimented me on the "Superman"
scripts I had written.

    By this time I had revealed my age to him, and he wrote back that he was
pleased to learn  our ages were almost the same. I had considered my youth to
be a handicap, thinking that perhaps people in the adult world would not
consider my ideas seriously if they knew how young I was.

    Keaton's next letter to me, dated August 7, 1934, commented favorably
on the additional "Superman" script I had sent to him.

    Unfortunately in those days, and for many years after that, I did not keep
carbon copies of letters I wrote... in those early years, I was not even aware
that business people keep carbon copies of correspondence. The letters I wrote
regarding "Superman", in the early thirties, would probably be of enlightening now
to  people who are interested in such matters, since it would reveal a lot of
details about the origination of "Superman", back in the days when "Superman"
was first coming into existence.

    I never did get to  see any additional "Superman" art drawn by Russell
Keaton, other than the first week of "Superman" daily strips he mailed to me,
which I had returned to him immediately. I had, and still have, tremendous
admiration for his wonderful skills as a comics artist.

DCC 00142059

ER 2605   14

Keaton's next letter to me was dated September 11, 1934 and he mentioned that he had pencilled in the second week of "Superman" daily strips. He felt that he could not set a definite date when that second week of daily strips would be completed. He expressed worry that the syndicate where he was currently employed might learn about his "secret" that he was preparing the "Superman" comic strips.

On October 17, 1934 he wrote to state that three strips of the second week were finished, and that the other three were still in rough pencil. He stated that the five dollars page rate of "Famous Funnies" was "ridiculously low".

I had relayed to Keaton a response I had received from "Famous Funnies", a new comics magazine at that time, after I wrote to them about possibly supplying original comics which they could publish along with their reprinted newspaper comics. The page rate they mentioned was extremely low, and they had said they would be interested in syndicating new features they published in "Famous Funnies".

Keaton's next letter to me, sent November 3, 1934, stated "Superman" was in a locker in a bus station, and that he was going to show the feature to Publishers Syndicate, after that weekend.

Russell Keaton had a meeting up at Publishers Syndicate. Though their enthusiasm was not overwhelming, they wanted to know some things about me, my background, my political affiliations, etc. Much of the strip material dealt with Superman as a child. When would Superman, as an adult, zoom into super-activity in the comic strip?

I responded with a letter. I fervently hoped my youth and real lack of comic strip producing experience would not be held against me. I mentioned storyline plans I had for future "Superman" episodes.

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-10, Page 320 of 321

Then I Fate, which during my struggles to get "Superman" before the public had not been particularly helpful and friendly, took careful aim and savagely kicked me in the teeth.

I got a brief note from Russell Keaton.

He wrote that he was completely withdrawing from any participation at all in the "Superman" comic strip and that as far as he was concerned: "the book is closed".

Unhappily, I destroyed the letter.

What a let-down, after all my high hopes!

I felt miserable, awful, depressed, broken-hearted.

I had had such high hopes that "Superman" was finally going to blast off out of total obscurity into meteoric success.

And now, this ...

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 21, 2014, and that all participants in the case are registered CM/ECF users.


Dated:  February 21, 2014                /s/ Marc Toberoff
                                                          Marc Toberoff