APPEAL CASE NOS. 13-56243, 13-56244
CROSS-APPEAL CASE NOS. 13-56257, 13-56259

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————————

LAURA SIEGEL LARSON

*Plaintiff, Counterclaim-Defendant, Appellant, and Cross-Appellee.*

v.

WARNER BROS. ENTERTAINMENT INC., DC COMICS

*Defendants, Counterclaimants, Appellees, and Cross-Appellants.*

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
THE HONORABLE OTIS D. WRIGHT II, JUDGE
CASE NOS. CV-04-8400 ODW (RZx), CV-04-8776 (RZx)

————————————

**APPELLANT LAURA SIEGEL LARSON'S EXCERPTS OF RECORD
VOL. 16 OF 16**

————————————

TOBEROFF & ASSOCIATES, P.C.
Marc Toberoff
 *mtoberoff@ipwla.com*
Keith G. Adams
 *kadams@toberoffandassociates.com*
22337 Pacific Coast Highway, #348
Malibu, CA 90265
Telephone:  (310) 246-3333
Facsimile:  (310) 246-3101

*Attorneys for Plaintiff-Appellant, Laura Siegel
Larson, individually and as personal
representative of the Estate of Joanne Siegel*

# INDEX TO EXCERPTS OF RECORD (Volume 16)

*Larson v. Time Warner Inc. et al.*, CD Cal Case No. 04-CV-08776

| Docket No. | Filing Date | Document Title | Vol. | Page |
|---|---|---|---|---|
| 259 | 7/16/13 | Defendants' Notice of Cross-Appeal | 16 | 3728 |
| 257 | 7/16/13 | Plaintiff's Notice of Appeal | 16 | 3730 |
| 250 | 6/17/13 | Plaintiff's 59(e) Motion | 16 | 3732 |
| 227 | 2/25/13 | Joint Status Report Re: The Superman and Superboy Cases | 16 | 3763 |
| 184 | 12/21/09 | Joint Status Report | 16 | 3779 |
| 103 | 1/12/07 | Defendants' Motion for Reconsideration | 16 | 3804 |
| 56 | 2/15/06 | Defendants' Motion for Summary Judgment | 16 | 3806 |
| 51 | 2/15/06 | Plaintiff's Motion for Partial Summary Judgment | 16 | 3838 |
| 47 | 11/4/05 | Answer to First Amended Counterclaims | 16 | 3870 |
| 44 | 10/18/05 | First Amended Counterclaims | 16 | 3904 |
| 37 | 9/7/05 | Answer to First Supplemental Complaint | 16 | 3943 |
| 34 | 4/13/05 | First Supplemental Complaint | 16 | 3957 |

| | 2/19/14 | Docket Report (Case No. 04-8776) | 16 | 3986 |
|---|---|---|---|---|

## INDEX TO EXCERPTS OF RECORD (all volumes)

| Docket No. | Filing Date | Document Title | Vol. | Page |
|---|---|---|---|---|
| 735 | 6/18/13 | 59(e) Amended Judgment | 1 | 1 |
| 734 | 6/18/13 | 59(e) Order | 1 | 6 |
| 724 | 4/18/13 | "Final Judgment" In Superman | 1 | 8 |
| 723 | 4/18/13 | Order Granting Motion For Summary Judgment Re: Superboy And The Superman Ads | 1 | 12 |
| 717 | 3/20/13 | Order Granting In Part Defendant's Motion For Summary Judgment | 1 | 23 |
| 714 | 3/12/13 | Order Granting Plaintiff Leave to File A Sur-Reply | 2 | 39 |
| 740 | 7/17/13 | Defendants Notice Of Cross-Appeal | 2 | 41 |
| 738 | 7/16/13 | Plaintiff's Notice of Appeal | 2 | 43 |
| 595 | 10/30/09 | Order on Motion for Reconsideration | 2 | 45 |
| 560 | 8/12/09 | Order on Additional Issues | 2 | 87 |
| 293 | 3/26/08 | Order on the Parties' Cross-Motions for Summary Judgment | 2 | 186 |
| 9th Cir. Case 11-55863, | 1/10/13 | Memorandum Disposition [Of Prior Appeal] | 2 | 272 |

| 70-1 | | | | |
|------|------|------|------|------|
| 674 | 6/15/11 | Defendant's Prior Notice of Cross-Appeal | 2 | 278 |
| 671 | 5/27/11 | Plaintiff's Prior Notice of Appeal | 2 | 280 |
| 669 | 5/17/11 | Judgment | 2 | 282 |
| 667 | 5/17/11 | Order Granting Plaintiff's Motion for Entry of Judgment Pursuant to Rule 54(b) | 2 | 285 |
| 664 | 5/5/11 | Order Vacating March 15, 2011 Judgment and Striking Superfluous Allegations from Counterclaim | 2 | 287 |
| 659 | 3/15/11 | Order Granting rule 54(b) Motion | 2 | 288 |
| 656 | 3/3/11 | Answer to Second Amended Counterclaims | 2 | 292 |
| 646 | 2/17/11 | Second Amended Counterclaims | 3 | 323 |
| 645 | 2/17/11 | Answer to Third Amended Complaint | 3 | 361 |
| 644 | 2/3/11 | Third Amended Complaint | 3 | 374 |
| 733 | 6/17/13 | Plaintiff's 59(e) Reply | 3 | 399 |
| 732 | 6/5/13 | Defendants' 59(e) Opposition | 3 | 416 |
| 731 | 5/16/13 | Plaintiff's 59(e) Motion | 3 | 437 |
| 731-1 | 5/16/13 | Plaintiff's Proposed 59(e) Order | 3 | 468 |
| 731-2 | 5/16/13 | Plaintiff's Proposed 59(e) Judgment | 3 | 470 |
| 730 | 5/16/13 | Declaration of Patrick T. Perkins In | 3 | 475 |

iv

| | | | | |
|---|---|---|---|---|
| | | Support of Defendants' Reply In Support Of Application to Tax Costs | | |
| 730 | 5/16/13 | *Exhibit 1: Invoice For Steranko Deposition* | 3 | 479 |
| 730 | 5/16/13 | *Exhibit 2: Invoice For Evanier Deposition* | 3 | 481 |
| 730 | 5/16/13 | *Exhibit 3: Invoice for Lewellen Deposition* | 3 | 483 |
| 730 | 5/16/13 | *Exhibit 4: Invoice for Larson Deposition* | 3 | 485 |
| 729 | 5/14/13 | Defendants' Reply In Support of Application to Tax Costs | 3 | 487 |
| 729-1 | 5/14/13 | Declaration of Brian Pearl In Support of Defendants' Reply in support of Application to Tax Costs | 3 | 498 |
| 729-1 | 5/14/13 | *Exhibit A: Transcript Cover Sheet for Peary Deposition* | 3 | 501 |
| 729-1 | 5/14/13 | *Exhibit B: Transcript Cover Sheet for Peavy Deposition* | 3 | 504 |
| 729-1 | 5/14/13 | *Exhibit C: Transcript Cover Sheet for Feiffer Deposition* | 3 | 507 |
| 729-1 | 5/14/13 | *Exhibit D: Transcript Cover Sheet for Steranko Deposition* | 3 | 511 |
| 729-1 | 5/14/13 | *Exhibit E: Transcript Cover Sheet for Evanier Deposition* | 3 | 514 |
| 729-1 | 5/14/13 | *Exhibit F: Transcript Cover Sheet* | 3 | 518 |

| | | | | |
|---|---|---|---|---|
| | | *for Lewellen Deposition* | | |
| 729-1 | 5/14/13 | *Exhibit G: Transcript Cover Sheet for Larson Deposition* | 3 | 522 |
| 729-1 | 5/14/13 | *Exhibit H: Transcript Cover Sheet for Halloran Deposition* | 3 | 526 |
| 722 | 4/4/13 | Plaintiff's Supplemental Brief re: "Ads" and "Superboy" | 3 | 530 |
| 722-1 | 4/4/13 | Declaration of Keith Adams In Support Of Plaintiff's Supplemental Brief re: "Ads" and "Superboy" | 3 | 549 |
| 722-1 | 4/4/13 | *Exhibit 1: Excerpts from April 12, 1947 Findings of Fact and Conclusions of Law* | 3 | 553 |
| 722-1 | 4/4/13 | *Exhibit 2: October 19, 2001 letter from Kevin Marks to John Schulman* | 3 | 560 |
| 722-1 | 4/4/13 | *Exhibit 3: October 26, 2001 letter from Schulman to Marks* | 3 | 566 |
| 722-1 | 4/4/13 | *Exhibit 4: February 1, 2002 letter from Patrick Perkins to Marks* | 4 | 574 |
| 722-1 | 4/4/13 | *Exhibit 5: November 8, 2002 Notice of Termination re: Superboy* | 4 | 631 |
| 722-1 | 4/4/13 | *Exhibit 6: March 23, 2006 Summary Judgment Order in Superboy Case* | 4 | 644 |
| 722-1 | 4/4/13 | *Exhibit 7: June 12, 2006 Affidavit of Damon Bonesteel* | 4 | 661 |

| 722-1 | 4/4/13 | *Exhibit 8: Excerpts from DC's April 30, 2007 Motion for Summary Judgment* | 4 | 672 |
|---|---|---|---|---|
| 722-1 | 4/4/13 | *Exhibit 9: Excerpts from DC's June 25, 2007 Reply re: Summary Judgment* | 4 | 689 |
| 722-1 | 4/4/13 | *Exhibit 10: September 10, 2007 Affidavit of Donna Josephson* | 4 | 714 |
| 722-1 | 4/4/13 | *Exhibit 11: Excerpts from September 17, 2007 Oral Argument in Superman and Superboy Cases* | 4 | 717 |
| 722-1 | 4/4/13 | *Exhibit 12: March 5, 2012 Notice of Termination re: Superman Advertisements* | 4 | 756 |
| 722-1 | 4/4/13 | *Exhibit 13: DC's Fourth Brief on Cross-Appeal in the Siegel Appeal, filed on June 19, 2012* | 4 | 762 |
| 722-1 | 4/4/13 | *Exhibit 14: September 5, 2012 Oral Argument in the Siegel Appeal* | 4 | 798 |
| 722-2 | 4/4/13 | Declaration of Laura Siegel Larson In Support Of Plaintiff's Supplemental Brief re: "Ads" and "Superboy" | 4 | 840 |
| 721 | 4/4/13 | Defendants' Supplemental Brief re: "Ads" and "Superboy" | 4 | 842 |
| 715 | 3/18/13 | Plaintiff's Court Authorized Sur-Reply re: Defendants' Motion for Summary Judgment | 4 | 867 |

| 713 | 3/8/13 | Defendants' Response to Plaintiffs Genuine Issues and Additional Facts re: Defendants' Motion for Summary Judgment | 5 | 873 |
|---|---|---|---|---|
| 711 | 3/8/13 | Defendants' Reply In Support Of Defendants' Motion for Summary Judgment | 5 | 943 |
| 711-1 | 3/8/13 | Declaration of Matthew T. Kline In Support Of Defendants' Motion for Summary Judgment | 5 | 961 |
| 711-2 | 3/8/13 | *Exhibit A: Appellant Laura Siegel Larson's First Brief On Cross-Appeal, filed in Ninth Circuit Case Nos. 11-55863, 11-56034, DN 12* | 5 | 964 |
| 711-2 | 3/8/13 | *Exhibit B: Appellant Laura Siegel Larson's Third Brief On Cross-Appeal, filed in Ninth Circuit Case Nos. 11- 55863, 11-56034, DN 43-1* | 5 | 1048 |
| 711-2 | 3/8/13 | *Exhibit C: Reply Brief Of Cross-Appellants And Appellees Warner Bros. Entertainment Inc. And DC Comics, filed in Ninth Circuit Case Nos. 11-55863, 11-56034, DN 49* | 6 | 1139 |
| 711-2 | 3/8/13 | *Exhibit D: Letter from Marc Toberoff to Daniel Petrocelli, dated March 7, 2013.* | 6 | 1176 |
| 711-2 | 3/8/13 | *Exhibit E: Excerpt from the transcript of the deposition of Laura Siegel Larson, dated August 1,* | 6 | 1179 |

| | | | | |
|---|---|---|---|---|
| | | *2006.* | | |
| 711-2 | 3/8/13 | *Exhibit F: Excerpt from Plaintiffs Joanne Siegel And Laura Siegel Larson's Responses To Defendant DC Comics' First Set Of Interrogatories No. 1-19, dated January 25, 2006.* | 6 | 1185 |
| 709 | 3/4/13 | Plaintiff's Opposition to Defendants' Motion for Summary Judgment | 6 | 1192 |
| 709-1 | 3/4/13 | Plaintiff's Statement of Genuine Issues and Additional Facts re: Defendants' Motion for Summary Judgment | 6 | 1224 |
| 709-2 | 3/4/13 | Declaration of Keith Adams In Support Of Plaintiff's Opposition to Defendants' Motion for Summary Judgment | 6 | 1252 |
| 709-2 | 3/4/13 | *Exhibit 1: October 19, 2001 letter from Kevin Marks to John Schulman* | 6 | 1257 |
| 709-2 | 3/4/13 | *Exhibit 2: October 26, 2001 letter from Schulman to Marks* | 6 | 1263 |
| 709-2 | 3/4/13 | *Exhibit 3: February 1, 2002 letter from Patrick Perkins to Marks* | 6 | 1271 |
| 709-2 | 3/4/13 | *Exhibit 4: May 9, 2002 letter from Joanne Siegel to Richard D. Parsons* | 6 | 1328 |
| 709-2 | 3/4/13 | *Exhibit 5: May 22, 2002 letter from* | 6 | 1331 |

| | | *Parsons to Joanne Siegel* | | |
|---|---|---|---|---|
| 709-2 | 3/4/13 | *Exhibit 6: September 21, 2002 letter from the Siegels to Marks* | 6 | 1332 |
| 709-2 | 3/4/13 | *Exhibit 7: November 8, 2002 Notice of Termination re: Superboy* | 6 | 1333 |
| 709-2 | 3/4/13 | *Exhibit 8: Letter sent by Ari Emanuel to Bruce Rosenblum* | 6 | 1346 |
| 709-2 | 3/4/13 | *Exhibit 9: Excerpts from August 1, 2006 deposition of Laura Siegel Larson* | 6 | 1347 |
| 709-2 | 3/4/13 | *Exhibit 10: Excerpts from October 7, 2006 deposition of Kevin Marks* | 6 | 1354 |
| 709-2 | 3/4/13 | *Exhibit 11: Excerpts from November 2, 2006 deposition of Ari Emanuel* | 6 | 1388 |
| 709-2 | 3/4/13 | *Exhibit 12: Excerpts from November 11, 2006 deposition of Paul Levitz* | 6 | 1402 |
| 709-2 | 3/4/13 | *Exhibit 13: Excerpts from Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, filed May 29, 2007* | 6 | 1416 |
| 709-2 | 3/4/13 | *Exhibit 14: October 23, 2007 Order* | 7 | 1436 |
| 709-2 | 3/4/13 | *Exhibit 15: March 5, 2012 Notice of Termination re: Superman Advertisements* | 7 | 1441 |

x

| 709-2 | 3/4/13 | *Exhibit 16: DC's Second Brief on Cross-Appeal in the Siegel Appeal, filed on March 23, 2012* | 7 | 1447 |
|---|---|---|---|---|
| 709-2 | 3/4/13 | *Exhibit 17: Larson's Third Brief on Cross-Appeal in the Siegel Appeal, filed on May 24, 2012.* | 7 | 1506 |
| 709-2 | 3/4/13 | *Exhibit 18: DC's Fourth Brief on Cross-Appeal in the Siegel Appeal, filed on June 19, 2012* | 7 | 1562 |
| 709-2 | 3/4/13 | *Exhibit 19: September 5, 2012 Oral Argument in the Siegel Appeal* | 7 | 1579 |
| 709-2 | 3/4/13 | *Exhibit 20: January 29, 2013 Letter from Daniel Petrocelli to Marc Toberoff* | 7 | 1621 |
| 709-2 | 3/4/13 | *Exhibit 21: February 9, 2013 Letter from Toberoff to Petrocelli* | 7 | 1623 |
| 709-2 | 3/4/13 | *Exhibit 22: February 12, 2013 Letter from Petrocelli to Toberoff* | 7 | 1626 |
| 709-2 | 3/4/13 | *Exhibit 23: Excerpts from DC's Statement of Genuine Issue re: Motion for Summary Judgment in DC Comics, filed on February 16, 2013.* | 7 | 1628 |
| 709-2 | 3/4/13 | *Exhibit 24: February 27, 2013 Letter from Toberoff to Petrocelli* | 7 | 1632 |
| 709-2 | 3/4/13 | *Exhibit 25: February 28, 2013 Letter from Petrocelli to Toberoff* | 7 | 1633 |
| 708 | 2/25/13 | Joint Status Report Re: The Superman and Superboy Cases | 7 | 1635 |

| 702 | 2/7/13 | Defendants' Motion for Summary Judgment | 7 | 1651 |
|---|---|---|---|---|
| 702-1 | 2/7/13 | Declaration of Daniel M. Petrocelli In Support Of Defendants' Motion for Summary Judgment | 7 | 1663 |
| 702-2 | 2/7/13 | *Exhibit A: Email Correspondence between Parties Counsel re: Motion for Summary Judgment* | 7 | 1666 |
| 702-2 | 2/7/13 | *Exhibit B: October 19, 2001 letter from Kevin Marks to John Schulman* | 7 | 1683 |
| 702-2 | 2/7/13 | *Exhibit C: Excerpts from DC's Reply In Support Of Motion for Partial Summary Judgment on Its First and Third Claims For Relief in Pacific Pictures case, Case No. CV-10-3633, DN 468* | 7 | 1691 |
| 702-2 | 2/7/13 | *Exhibit D: Order Granting Plaintiff's Motion for Partial Summary Judgment and Denying Defendants' Cross-Motion in Pacific Pictures case, Case No. CV-10-3633, DN 507* | 7 | 1694 |
| 702-3 | 2/7/13 | Defendants' Proposed Statement of Uncontroverted Facts and Conclusions of Law | 7 | 1713 |
| 702-4 | 2/7/13 | Defendant's Proposed Summary Judgment Order | 7 | 1718 |
| 702-5 | 2/7/13 | Defendants' Proposed Judgment | 7 | 1720 |

| 681 | 12/5/11 | Order Certifying and Forwarding Supplemental Record | 7 | 1724 |
|-----|---------|-----|---|------|
| 680 | 12/2/11 | Joint Stipulation To Certify And Forward Supplemental Record | 7 | 1726 |
| 680 | 12/2/11 | *Exhibit A: Excerpt from October 7, 2006 deposition of Kevin Marks* | 8 | 1729 |
| 602 | 12/21/09 | Joint Status Report | 8 | 1773 |
| 373-3 | 9/29/08 | Declaration of Dennis Kitchen re: Defendants' September 26, 2008 Objections | 8 | 1798 |
| 373-3 | 9/29/08 | *Exhibit A: November 12, 1934 Correspondence from Jerome Siegel to Russell Keaton* | 8 | 1801 |
| 364-2 | 9/22/08 | Declaration of Marc Toberoff re: Objections to September 18, 2008 Objections and Exhibit A (Thompson & Thompson Report) | 8 | 1714 |
| 364-1 | 9/22/08 | *Exhibit A: February 1996 Thompson & Thompson Copyright Report re: Superman* | 8 | 1817 |
| 361-1 | 9/18/08 | Exhibit B: Declaration of Michael Bergman re: Objections to Plaintiffs' July 28, 2008 Brief | 8 | 1827 |
| 361-3 | 9/18/08 | *Exhibit C: Copyright Registrations for the First Two Weeks of "Superman" Newspaper Strips* | 8 | 1830 |
| 353-1 | 8/5/08 | Declaration of Michael Bergman re: | 8 | 1867 |

|  |  | Response in Objection to Motion |  |  |
|---|---|---|---|---|
| 353-2 | 8/5/08 | *Exhibit A – January 10, 1938 letter from Vin Sullivan to Jerome Siegel* | 8 | 1871 |
| 353-2 | 8/5/08 | *Exhibit B – September 28, 1938 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1873 |
| 353-2 | 8/5/08 | *Exhibit C – September 30, 1938 letter from Jerome Siegel to J.S. Liebowitz* | 8 | 1877 |
| 353-2 | 8/5/08 | *Exhibit D – April 21, 1938 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1879 |
| 353-2 | 8/5/08 | *Exhibit E – January 23, 1940 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1882 |
| 353-2 | 8/5/08 | *Exhibit F – February 8, 1940 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1885 |
| 353-2 | 8/5/08 | *Exhibit G – May 2, 1940 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1887 |
| 353-2 | 8/5/08 | *Exhibit H – November 5, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1890 |
| 353-2 | 8/5/08 | *Exhibit I – January 22, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1893 |
| 353-2 | 8/5/08 | *Exhibit J – January 29, 1940 letter from J.S. Liebowitz to Jerome* | 8 | 1896 |

| | | *Siegel* | | |
|---|---|---|---|---|
| 353-2 | 8/5/08 | *Exhibit K – March 18, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1899 |
| 353-2 | 8/5/08 | *Exhibit L – November 4, 1940 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1901 |
| 353-2 | 8/5/08 | *Exhibit M – February 19, 1941 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1903 |
| 353-3 | 8/5/08 | *Exhibit N – November 12, 1942 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1906 |
| 353-3 | 8/5/08 | *Exhibit O – February 21 letter from Whitney Ellsworth to Jerome Siegel* | 8 | 1908 |
| 353-3 | 8/5/08 | *Exhibit P – February 3, 1947 letter from J.S. Liebowitz to Jerome Siegel* | 8 | 1910 |
| 353-3 | 8/5/08 | *Exhibit Q – Exhibit showing 1937-1947 payments to Siegel and Shuster* | 8 | 1914 |
| 353-3 | 8/5/08 | *Exhibit R – Renewal Certificates for Post-March 1, 1938 Superman Works* | 8 | 1916 |
| 347 | 7/28/08 | Declaration of Marc Toberoff re: Plaintiffs' Memorandum of Points and Authorities in Opposition and Exhibits A-JJ | 8 | 1946 |

| 347-2 | 7/28/08 | *Exhibit A – Seven-Page Superman Synopsis* | 8 | 1951 |
|---|---|---|---|---|
| 347-2 | 7/28/08 | *Exhibit B – November 21, 1974 letter from Jerome Siegel to Laura Siegel* | 8 | 1959 |
| 347-2 | 7/28/08 | *Exhibit C – June 12, 1934 letter from Jerome Siegel to Russell Keaton* | 8 | 1962 |
| 347-2 | 7/28/08 | *Exhibit D – Superman story illustrated by Russell Keaton* | 8 | 1964 |
| 347-3 | 7/28/08 | *Exhibit E – Continuity for 15 daily "Superman" Newspaper Strips, c. 1934* | 8 | 1974 |
| 347-4 | 7/28/08 | *Exhibit G – Action Comics, No. 2* | 8 | 1981 |
| 347-5 | 7/28/08 | *Exhibit H – Action Comics, No. 3* | 8 | 1990 |
| 347-6 | 7/28/08 | *Exhibit I – Action Comics, No. 4* | 8 | 1999 |
| 347-7 | 7/28/08 | *Exhibit J – Action Comics, No. 5* | 8 | 2008 |
| 347-8 | 7/28/08 | *Exhibit K – Action comics, No. 6* | 8 | 2015 |
| 347-9 | 7/28/08 | *Exhibit L – Excerpts from Superman, No. 1* | 8 | 2024 |
| 347-9 | 7/28/08 | *Exhibit M – June 21, 1941 Saturday Evening Post Article, "Up, Up and Awa-a-y"* | 9 | 2029 |
| 347-9 | 7/28/08 | *Exhibit N – Excerpts from Trial Transcript of 1947 Action* | 9 | 2036 |

| 347-9 | 7/28/08 | *Exhibit O – December 4, 1937 Agreement between Jerome Siegel, Joseph Shuster, and Detective Comics, Inc.* | 9 | 2050 |
|---|---|---|---|---|
| 347-9 | 7/28/08 | *Exhibit P – September 22, 1938 Agreement between Jerome Siegel, Joseph Shuster, and Detective Comics, Inc.* | 9 | 2053 |
| 347-9 | 7/28/08 | *Exhibit Q – Seprember 22, 1938 Agreement between the McClure Newspaper Syndicate, Jerome Siegel, Joseph Shuster, and Detective Comics, Inc.* | 9 | 2057 |
| 347-9 | 7/28/08 | *Exhibit R – Excerpts from "The Creation of a Superhero" by Jerome Siegel* | 9 | 2061 |
| 347-9 | 7/28/08 | *Exhibit S – April 18, 1938 letter from Jerome Siegel to J.S. Liebowitz* | 9 | 2068 |
| 347-9 | 7/28/08 | *Exhibit T – September 7, 1938 letter from Chas Lounsbury to Jerome Siegel* | 9 | 2070 |
| 347-9 | 7/28/08 | *Exhibit U – Excerpts from Superman: The Dailies* | 9 | 2073 |
| 347-9 | 7/28/08 | *Exhibit V – Copyright Registration Certificate for Superman No. 1* | 9 | 2080 |
| 347-10 | 7/28/08 | *Exhibit W – Excerpts from the United States Copyright Office Catalogue of Copyright Entries* | 9 | 2083 |

| 347-10 | 7/28/08 | *Exhibit X – March 1, 1973 Affidavit of Jerome Siegel* | 9 | 2098 |
|---|---|---|---|---|
| 347-10 | 7/28/08 | *Exhibit Y – Excerpts from Superman: Sunday Classics* | 9 | 2110 |
| 347-10 | 7/28/08 | *Exhibit Z - Excerpts from Superman: The Dailies* | 9 | 2119 |
| 347-11 | 7/28/08 | *Exhibit AA – Excerpts from the February 27, 2007 deposition of Mark Waid* | 9 | 2130 |
| 347-11 | 7/28/08 | *Exhibit BB – Article "K-Metal: The Lost Superman Tale" by Mark Waid* | 9 | 2153 |
| 347-11 | 7/28/08 | *Exhibit CC – Unpublished 26-page Superman story* | 9 | 2161 |
| 347-12 | 7/28/08 | *Exhibit DD – Checks and Bank Statements from the American Artists League* | 9 | 2175 |
| 347-12 | 7/28/08 | *Exhibit EE – Excerpts from the business ledger of Jerome Siegel* | 9 | 2196 |
| 347-12 | 7/28/08 | *Exhibit FF – Excerpts from the July 8, 1969 deposition of Jerome Siegel* | 9 | 2204 |
| 347-12 | 7/28/08 | *Exhibit GG – Excerpts from The Story Behind Superman No. 1 by Jerome Siegel* | 9 | 2208 |
| 340 | 7/21/08 | Declaration of Michael Bergman in Support of Defendants' Brief on Additional Issues | 9 | 2211 |
| 340-1 | 7/21/08 | *Exhibit A:  December 19, 1939* | 9 | 2213 |

|  |  | Agreement between Jerome Siegel, Joseph Shuster and Detective Comics, Inc. |  |  |
|---|---|---|---|---|
| 340-1 | 7/21/08 | *Exhibit B: April 8, 1938 letter from J.S. Liebowitz to Jerome Siegel* | 9 | 2217 |
| 337 | 7/21/08 | Declaration of Keith Adams re: Plaintiff's Memorandum of Points and Authorities Pursuant to the Court's July 3, 2008 Order | 9 | 2219 |
| 337-2 | 7/21/08 | *Exhibit A: Stipulation re: Scheduling Order and Order Thereon, entered by the Court on March 20, 2007* | 9 | 2227 |
| 337-2 | 7/21/08 | *Exhibit G: January 12, 2007 Expert Report of James Steranko* | 9 | 2235 |
| 337-2 | 7/21/08 | *Exhibit H: January 12, 2007 Expert Report of Mark Evanier* | 9 | 2259 |
| 337-3 | 7/21/08 | *Exhibit I: February 9, 2007 Expert Rebuttal Report of Mark Evanier* | 9 | 2284 |
| 337-3 | 7/21/08 | *Exhibit J: Excerpts from the March 30, 2007 Deposition of Mark Evanier* | 10 | 2316 |
| 337-3 | 7/21/08 | *Exhibit M: Excerpts from "The Creation of a Superhero" by Jerome Siegel* | 10 | 2331 |
| 290 | 2/21/08 | Stipulation for Order Requesting Status Conference and Briefing Schedule | 10 | 2336 |

| 196 | 6/25/07 | Reply Declaration of Marc Toberoff In Support Of Plaintiff's Motion for Partial Summary Judgment | 10 | 2340 |
|---|---|---|---|---|
| 196 | 6/25/07 | *Exhibit A:  Tolling Agreement Between Plaintiffs and DC Comics, dated April 6, 2000* | 10 | 2343 |
| 196 | 6/25/07 | *Exhibit B:  October 28, 2002 letter from Joanne Siegel and Laura Siegel Larson to Lillian J. Laserson* | 10 | 2349 |
| 196 | 6/25/07 | *Exhibit C:  Excerpts from listings from the Library of Congress' Catalog of Copyright Entries for the years 1939, 1940 and 1976* | 10 | 2352 |
| 196 | 6/25/07 | *Exhibit D:  Plaintiff's Memorandum of Points and Authorities In Support of Motion to Compel Production of Documents* | 10 | 2367 |
| 196 | 6/25/07 | *Exhibit E:  Excerpts from November 7, 2006 Deposition of Paul Levitz* | 10 | 2474 |
| 196 | 6/25/07 | *Exhibit F:  Excerpts from October 7, 2006 Deposition of Kevin Marks, Esq.* | 10 | 2479 |
| 196 | 6/25/07 | *Exhibit G: Excerpts from August 6, 2006 Deposition of Plaintiff Laura Siegel Larson* | 10 | 2485 |
| 196 | 6/25/07 | *Exhibit H:  Defendants' Answer to First Amended Complaint* | 10 | 2491 |
| 194 | 6/25/07 | Plaintiff's Reply In Support Of | 10 | 2508 |

| | | Motion for Partial Summary Judgment | | |
|---|---|---|---|---|
| 184 | 5/29/07 | Declaration of Michael Bergman re: Plaintiffs' Motion for Summary Judgment | 10 | 2590 |
| 184 | 5/29/07 | *Exhibit A:  Copyright Registration and Excerpts from "The Creation of a Superhero" by Jerome Siegel* | 10 | 2595 |
| 184 | 5/29/07 | *Exhibit B:  June 12, 1934 letter from Jerome Siegel to Russell Keaton* | 11 | 2608 |
| 184 | 5/29/07 | *Exhibit D:  March 1, 1938 Assignment from Jerome Siegel and Joseph Shuster to Detective Comics* | 11 | 2623 |
| 184 | 5/29/07 | *Exhibit L:  Copy of Superman No. 1* | 11 | 2625 |
| 184 | 5/29/07 | *Exhibit P:  April 15, 1999 letter from Paul Levitz to Joanne Siegel* | 11 | 2639 |
| 181 | 5/29/07 | Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment | 11 | 2641 |
| 163 | 4/30/07 | Declaration of Marc Toberoff re: Plaintiffs' Motion for Summary Judgment | 11 | 2739 |
| 163 | 4/30/07 | *Exhibit A:  November 21, 1947 Opinion* | 11 | 2745 |
| 163 | 4/30/07 | *Exhibit B:  April 12, 1948 Findings of Fact and Conclusions of Law* | 11 | 2758 |

| 163 | 4/30/07 | *Exhibit C: May 19, 1948 Stipulation of Settlement* | 11 | 2801 |
|---|---|---|---|---|
| 163 | 4/30/07 | *Exhibit D: May 21, 1948 Consent Judgment* | 11 | 2813 |
| 163 | 4/30/07 | *Exhibit F: June 1, 1965 Renewal Copyright Registrations re: Superman* | 11 | 2825 |
| 163 | 4/30/07 | *Exhibit G: Notice of Termination re: March 31, 1938 Grant* | 11 | 2830 |
| 163 | 4/30/07 | *Exhibit H: Notice of Termination re: December 4, 1937 Agreement* | 11 | 2840 |
| 163 | 4/30/07 | *Exhibit I: Notice of Termination re: September 22, 1938 Agreement* | 11 | 2850 |
| 163 | 4/30/07 | *Exhibit J: Notice of Termination re: September 22, 1938 Agreement with McClure* | 11 | 2860 |
| 163 | 4/30/07 | *Exhibit K: Notice of Termination re: 1948 Stipulation* | 11 | 2870 |
| 163 | 4/30/07 | *Exhibit L: Notice of Termination re: December 19, 1939 Agreement* | 11 | 2880 |
| 163 | 4/30/07 | *Exhibit M: Notice of Termination re: December 23, 1975 Agreement* | 11 | 2890 |
| 163 | 4/30/07 | *Exhibit N: Certificates of Recordation re: Notices of Termination* | 12 | 2900 |
| 164 | 4/30/07 | *Exhibit R: Defendants' First Amended Counterclaim* | 12 | 2915 |

| 164 | 4/30/07 | *Exhibit S:  Siegel v. National Periodical Publications, Inc. et al., 364 F. Supp. 1032 (S.D.N.Y. 1973)* | 12 | 2956 |
|---|---|---|---|---|
| 164 | 4/30/07 | *Exhibit T:  Siegel v. National Periodical Publications, Inc. et al., 508 F.2d 909 (2d Cir. 1974)* | 12 | 2965 |
| 164 | 4/30/07 | *Exhibit U:  March 24, 2006 Order by Judge Ronald S. W. Lew in Civ. Case No.  04-08776 RSWL (RZx)* | 12 | 2973 |
| 164 | 4/30/07 | *Exhibit V:  May 23, 2006 Order by Judge Ronald S. W. Lew in Civ. Case No.  04-08776 RSWL (RZx)* | 12 | 2991 |
| 164 | 4/30/07 | *Exhibit W:  Appellate Brief of National Periodical Publications, Inc. et. al.  from Siegel v. National Periodical Publications, Inc. et al., 508 F.2d 909 (2d Cir. 1974)* | 12 | 2995 |
| 164 | 4/30/07 | *Exhibit X:  Plaintiff's Complaint* | 12 | 3014 |
| 164 | 4/30/07 | *Exhibit Y:  December 23, 1975 Agreement between Warner Communications, Inc and Jerome Siegel and Joseph Shuster* | 12 | 3044 |
| 164 | 4/30/07 | *Exhibit Z:  April 6, 2000 Tolling Agreement between Plaintiffs and DC Comics* | 12 | 3057 |
| 164 | 4/30/07 | *Exhibit AA:  September 21, 2002 letter from Joanne Siegel to Kevin S. Marks and Bruce M. Ramer* | 12 | 3061 |

| 164 | 4/30/07 | *Exhibit BB: October 19, 2001 letter from Kevin Marks to John Schulman* | 12 | 3063 |
|---|---|---|---|---|
| 164 | 4/30/07 | *Exhibit CC: October 26, 2001 letter from Schulman to Marks* | 12 | 3070 |
| 164 | 4/30/07 | *Exhibit DD: February 1, 2002 letter from Patrick Perkins to Kevin Marks* | 12 | 3079 |
| 164 | 4/30/07 | *Exhibit EE: Excerpts from October 7, 2006 Deposition of Kevin Marks* | 12 | 3137 |
| 164 | 4/30/07 | *Exhibit FF: March 15, 1982 letter from Martin D. Payson to Joanne Siegel* | 12 | 3156 |
| 164 | 4/30/07 | *Exhibit GG: Plaintiff's First Amended Complaint* | 12 | 3158 |
| 161 | 4/30/07 | Plaintiffs' Motion for Partial Summary Judgment | 13 | 3192 |
| 159 | 4/30/07 | Defendants' Motion for Partial Summary Judgment | 13 | 3255 |
| 46 | 11/1/05 | Plaintiffs' Reply to Defendants' First Amended Counterclaims | 13 | 3373 |
| Case No 04-8776, 125 | 4/30/07 | Declaration of Michael Bergman re: Defendants' Motion for Summary Judgment | 13 | 3407 |
| Case No 04- | 4/30/07 | Exhibit A: December 4, 1937 Agreement between Jerome Siegel, | 13 | 3413 |

| 8776, 125 | | Joseph Shuster and Detective Comics, Inc. | | |
|---|---|---|---|---|
| Case No 10-3633, 74 | 9/20/10 | Minutes From September 20, 2010 Discovery Hearing [1] | 14 | 3416 |
| Case No 10-3633, 348 | 11/25/11 | Defendant Laura Siegel Larson's Answer to First Amended Complaint | 14 | 3418 |
| Case No 10-3633, 1 | 5/14/10 | Plaintiff DC Comics' Complaint | 14 | 3456 |
| | 2/19/14 | Docket Report (Case No. 04-8400) | 14 | 3521 |

[1] Larson requests that this court take judicial notice of certain documents files in the *Pacific Pictures* case – which was deemed "related" to the case below and transferred to the same district court judge – pursuant to Federal Rule of Evidence 201. As this Court has established, "[m]aterials from a proceeding in another tribunal are appropriate for judicial notice." *Biggs v Terhune*, 334 F.3d 910, 916 (9th Cir. 2003) (overruled on other grounds); *see also Reyn's Pasta Bella, LLC v Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (taking judicial notice of "pleadings, memoranda, expert reports, etc." from related case); *U.S. ex rel. Robinson Rancherita Citizen Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("we may take notice of proceedings in other courts") (internal quotations and citations omitted); *U.S. v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases")

# EXCERPTS OF RECORD (From Case No. 04-8776)

| **Docket No.** | **Filing Date** | **Document Title** | **Vol.** | **Page** |
|---|---|---|---|---|
| 254 | 6/18/13 | 59(e) Amended Judgment | 15 | 3598 |
| 253 | 6/18/13 | 59(e) Order | 15 | 3603 |
| 243 | 4/18/13 | "Final Judgment" In Superboy | 15 | 3605 |
| 242 | 4/18/13 | Order Granting Motion For Summary Judgment Re: Superboy And The Superman Ads | 15 | 3609 |
| 235 | 3/20/13 | Order Granting In Part Defendant's Motion For Summary Judgment | 15 | 3620 |
| 175 | 3/31/08 | Order Denying Cross-Motions for Partial Summary Judgment | 15 | 3636 |
| 151 | 7/27/07 | Order Granting Defendants' Motion for Reconsideration | 15 | 3638 |
| 82 | 3/23/06 | Order Granting Plaintiffs' Motion for Partial Summary Judgment & Denying Defendants' Motion for Summary Judgment | 15 | 3711 |
| 259 | 7/16/13 | Defendants' Notice of Cross-Appeal | 16 | 3728 |
| 257 | 7/16/13 | Plaintiff's Notice of Appeal | 16 | 3730 |
| 250 | 6/17/13 | Plaintiff's 59(e) Motion | 16 | 3732 |
| 227 | 2/25/13 | Joint Status Report Re: The Superman and Superboy Cases | 16 | 3763 |

| 184 | 12/21/09 | Joint Status Report | 16 | 3779 |
|---|---|---|---|---|
| 103 | 1/12/07 | Defendants' Motion for Reconsideration | 16 | 3804 |
| 56 | 2/15/06 | Defendants' Motion for Summary Judgment | 16 | 3806 |
| 51 | 2/15/06 | Plaintiff's Motion for Partial Summary Judgment | 16 | 3838 |
| 47 | 11/4/05 | Answer to First Amended Counterclaims | 16 | 3870 |
| 44 | 10/18/05 | First Amended Counterclaims | 16 | 3904 |
| 37 | 9/7/05 | Answer to First Supplemental Complaint | 16 | 3943 |
| 34 | 4/13/05 | First Supplemental Complaint | 16 | 3957 |
|  | 2/19/14 | Docket Report (Case No. 04-8776) | 16 | 3986 |

1　Marc Toberoff (State Bar No. 188547)
　　*mtoberoff@toberoffandassociates.com*
2　Keith G. Adams (State Bar No. 240497)
　　*kadams@toberoffandassociates.com*
3　TOBEROFF & ASSOCIATES, P.C.
　22337 Pacific Coast Highway, #348
4　Malibu, California, 90265
　Telephone:　(310) 246-3333
5　Fax:　　　　(310) 246-3101

6　Attorneys for Plaintiff-Counterclaim
　Defendant, Laura Siegel Larson,
7　individually and as personal representative
　of the Estate of Joanne Siegel

8

9

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| 10　LAURA SIEGEL LARSON, | Case No: 04-CV-08776 ODW (RZx) |
| 11　individually and as personal | |
| 12　representative of the ESTATE OF | Hon. Otis D. Wright II, U.S.D.J. |
| 　JOANNE SIEGEL, | Hon. Ralph Zarefsky, U.S.M.J. |
| 13　　　　　Plaintiff, | **NOTICE OF APPEAL TO THE** |
| 14　　v. | **UNITED STATES COURT OF** |
| | **APPEALS FOR THE NINTH** |
| 15　WARNER BROS. ENTERTAINMENT | **CIRCUIT** |
| 　INC., DC COMICS, and DOES 1-10, | |
| 16　　　　　Defendants and | |
| 17　　　　　Counterclaimants. | |
| 18　LAURA SIEGEL LARSON, | |
| 　individually and as personal | |
| 19　representative of the ESTATE OF | |
| 　JOANNE SIEGEL, | |
| 20　　　　　Plaintiff, | |
| 21　　v. | |
| 22　TIME WARNER INC., WARNER | |
| 　COMMUNICATIONS INC., | |
| 23　WARNER BROS. ENTERTAINMENT | |
| 24　INC., WARNER BROS. TELEVISION | |
| 　PRODUCTION INC., DC COMICS, | |
| 25　and DOES 1-10, | |
| 26　　　　　Defendants and | |
| 27　　　　　Counterclaimants. | |

28

NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

Notice is hereby given that LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, the plaintiff-counterclaim defendant in the above-named case, hereby appeals to the United States Court of Appeals for the Ninth Circuit from the final amended judgment, filed and entered in this case on June 18, 2013 (Docket No. 254) by the Honorable Otis D. Wright, II in the United States District Court for the Central District of California, after the district court, on June 18, 2013 issued an order (Docket No. 253), granting in part the motion, timely filed by plaintiff-counterclaim defendant on May 16, 2013, to amend the prior judgment entered by the district court on April 18, 2013 pursuant to Federal Rule of Civil Procedure 59(e).

July 16, 2013          RESPECTFULLY SUBMITTED,

/s/ Marc Toberoff
TOBEROFF & ASSOCIATES, P.C.
Attorneys for Plaintiff-Counterclaim Defendant,
Laura Siegel Larson

```
 1  Marc Toberoff (State Bar No. 188547)
      mtoberoff@toberoffandassociates.com
 2  Keith G. Adams (State Bar No. 240497)
      kadams@toberoffandassociates.com
 3  TOBEROFF & ASSOCIATES, P.C.
    22337 Pacific Coast Highway, #348
 4  Malibu, California, 90265
    Telephone:  (310) 246-3333
 5  Fax:          (310) 246-3101

 6  Attorneys for Plaintiff-Counterclaim
    Defendant, Laura Siegel Larson,
 7  individually and as personal representative
    of the Estate of Joanne Siegel

 8
```

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

| | |
|---|---|
| LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL,<br><br>        Plaintiff,<br><br>    v.<br><br>WARNER BROS. ENTERTAINMENT INC., DC COMICS, and DOES 1-10,<br>        Defendants and<br>        Counterclaimants. | Case No: 04-CV-08776 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT** |
| LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL,<br><br>        Plaintiff,<br><br>    v.<br><br>TIME WARNER INC., WARNER COMMUNICATIONS INC., WARNER BROS. ENTERTAINMENT INC., WARNER BROS. TELEVISION PRODUCTION INC., DC COMICS, and DOES 1-10,<br>        Defendants and<br>        Counterclaimants. | |

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

　　　　Notice is hereby given that LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, the plaintiff-counterclaim defendant in the above-named case, hereby appeals to the United States Court of Appeals for the Ninth Circuit from the final amended judgment, filed and entered in this case on June 18, 2013 (Docket No. 254)  by the Honorable Otis D. Wright, II in the United States District Court for the Central District of California, after the district court, on June 18, 2013 issued an order (Docket No. 253), granting in part the motion, timely filed by plaintiff-counterclaim defendant on May 16, 2013, to amend the prior judgment entered by the district court on April 18, 2013 pursuant to Federal Rule of Civil Procedure 59(e).

July 16, 2013　　　　　　　RESPECTFULLY SUBMITTED,

　　　　　　　　　　　　　/s/ Marc Toberoff
　　　　　　　　　　　　　TOBEROFF & ASSOCIATES, P.C.
　　　　　　　　　　　　　Attorneys for Plaintiff-Counterclaim Defendant,
　　　　　　　　　　　　　Laura Siegel Larson

NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

1   Marc Toberoff (State Bar No. 188547)
     mtoberoff@toberoffandassociates.com
2   Keith G. Adams (State Bar No. 240497)
     kadams@toberoffandassociates.com
3   TOBEROFF & ASSOCIATES, P.C.
    22337 Pacific Coast Highway, #348
4   Malibu, California, 90265
    Telephone:  (310) 246-3333
5   Fax:         (310) 246-3101

6   Attorneys for Plaintiff-Counterclaim
    Defendant, Laura Siegel Larson,
7   individually and as personal representative
    of the Estate of Joanne Siegel

8

                **UNITED STATES DISTRICT COURT**

9

        **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

10

11  | LAURA SIEGEL LARSON, | Case No: 04-CV-08400 ODW (RZx)* |

LAURA SIEGEL LARSON,
individually and as
personal representative
of the ESTATE OF
JOANNE SIEGEL,
                Plaintiff,
        v.
WARNER BROS. ENTERTAINMENT
INC., DC COMICS, and DOES 1-10,
                Defendants and
                Counterclaimants.

LAURA SIEGEL LARSON,
individually and as personal
representative of the ESTATE OF
JOANNE SIEGEL,
                Plaintiff,
        v.
TIME WARNER INC., WARNER
COMMUNICATIONS INC.,
WARNER BROS. ENTERTAINMENT
INC., WARNER BROS. TELEVISION
PRODUCTION INC., DC COMICS,
and DOES 1-10,
                Defendants and
                Counterclaimants.

Case No: 04-CV-08400 ODW (RZx)*
**Case No: 04-CV-08776 ODW (RZx)***

Hon. Otis D. Wright II, U.S.D.J.
Hon. Ralph Zarefsky, U.S.M.J.

**PLAINTIFF'S NOTICE OF MOTION
AND MOTION FOR AMENDMENT
OF THE COURT'S APRIL 18, 2013
JUDGMENT PURSUANT TO FED.
R. CIV. P. 59(e)**

*[Proposed] Order and [Proposed]
Judgment filed concurrently*

Date:       July 1, 2013
Time:       1:30 p.m.
Place:      Courtroom 11

*:  Docket citations herein are to Case
No. 04-CV-08400.

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 1, 2013 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 11 of the above-captioned Court, located at 312 N. Spring Street, Los Angeles, California, 90012, plaintiff-counterclaim defendant Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel ("Plaintiff"), will and hereby does move for amendment of the Court's April 18, 2013 judgment in the above-captioned actions (Dkt. 724) pursuant to Fed. R. Civ. P. 59(e).

The motion will be made on two principal grounds. *First*, in light of the Court's holding that the October 19, 2001 letter operated as a present transfer of the Siegels' copyrights to DC Comics ("DC"), the resolution of the rescission and acquiescence issues, which present questions for the trier of fact and are ill-suited for summary judgment, was unnecessary to the judgment on DC's Fourth Counterclaim. *Second*, the judgment denied Plaintiff's First Claim, and denied without prejudice DC's First and Second Counterclaims. However, the Court's prior orders on those claims were not addressed or disturbed on appeal, or reconsidered on remand, and therefore remained "law of the case." Accordingly, Plaintiff's First Claim should have been granted to the extent it sought a declaration that Plaintiff's termination notices were valid as to the Superman works set forth in the Court's prior orders, and DC Comics' First and Second Counterclaims, contesting their validity, should have been denied *with prejudice*.

This motion is made following the L.R. 7-3 conference of counsel, which took place on May 15, 2013, and is based on this Notice of Motion, the attached Memorandum of Points and Authorities, all of the pleadings, files, and records in these proceedings, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court.

Dated: May 16, 2013

RESPECTFULLY SUBMITTED,
/s/ Marc Toberoff

TOBEROFF & ASSOCIATES, P.C.
Attorneys for Plaintiff, Laura Siegel Larson

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................... 1

ARGUMENT ........................................................................................... 2

I.     THE POST-2001 CONTRACT ISSUES WERE UNNECESSARILY DECIDED AND NOT SUSCEPTIBLE TO SUMMARY JUDGMENT ....... 2

     A.    The Post-October 19, 2001 State Contract Law Issues Were Unnecessary To The Court's Judgment ................................. 2

     B.    Rescission And Acquiescence Entail Genuine Issues of Fact Precluding Summary Judgment .............................................. 5

          1.    Whether The Siegels Justifiaby Rescinded Or Unjustifiably Repudiated The October 19, 2001 Agreement Was For The Trier Of Fact And Not Suitable For Summary Judgment ......... 6

              a.    A Rescission Is A Justified Repudiation ......................... 6

              b.    Whether The Siegels Rescinded Their October 19, 2001 Acceptance Was A Triable Issue ........................... 6

              c.    California Law Does Not Require A Rescinding Party To First Acknowledge A Contract ................................ 10

              d.    Whether The Siegels' 2002 Letters Gave DC Notice Of Rescission Was For The Trier Of Fact ..................... 12

          2.    On DC's Summary Judgment Motion, The Order Viewed The Acquiescence Evidence In The Light Most Favorable To DC ........................................................................ 14

     C.    Plaintiff Timely Asserted Rescission And Acquiescence ................. 16

II.    THE JUDGMENT SHOULD BE AMENDED TO GRANT PLAINTIFF'S FIRST CLAIM AND DENY DC'S FIRST AND SECOND COUNTERCLAIMS WITH PREJUDICE ................................. 19

CONCLUSION ...................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Ahmad v. Furlong*,
435 F.3d 1196 (9th Cir. 2006) .......................................................... 16-17

*Allied Health Ass'n v. Arthrocare Corp.*,
2009 U.S. Dist. LEXIS 42806 (N.D. Cal. May 20, 2009)......................13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..............................................................................5

*Clark v. Dana Woody & Assocs.*,
2013 U.S. Dist. LEXIS 18996 (S.D. Cal. Feb. 12, 2013)......................23

*Donovan v. RRL Corp.*,
26 Cal. 4th 261 (2001) .................................................................. 10-11

*Don Johnson Prods. v. Rysher Entm't, Inc.*,
2009 U.S. Dist. LEXIS 81594 (C.D. Cal. June 8, 2009).......................23

*Earl v. Saks & Co.*,
36 Cal. 2d 602 (1951) .................................................................... 13-14

*Eddy v. Gallaway*,
11 Cal. App. 3d 185 (1970) .................................................................14

*Fed. Deposit Ins. Corp. v. Air Florida Sys., Inc.*,
822 F.2d 833 (9th Cir. 1987) ................................................................9

*Griffin v. Beresa, Inc.*,
143 Cal. App. 2d 299 (1956) ...............................................................14

*Grunwald-Marx, Inc. v. Los Angeles Joint Board, Amalgamated Clothing Workers*,
192 Cal. App. 2d 268 (1961) ...............................................................14

*Hil-Mac Corp. v. Mendo Wood Products, Inc.*,
235 Cal. App. 2d 526 (1965) ...............................................................14

*Hoffman v. Babbitt Bros. Trading Co.*,
203 F.2d 636 (9th Cir. 1953) ................................................................5

*Honda v. Reed*,
156 Cal. App. 2d 536 (1958) ...............................................................15

*Hull v. Ray*,
211 Cal. 164 (1930) ...................................................................... 10-13

*Johns Hopkins Univ. v. CellPro, Inc.*,
152 F.3d 1342 (Fed. Cir. 1998) ...........................................................18

*Johnson v. Goldberg*,
130 Cal. App. 2d 571 (1955) ................................................................8

*Jordan v. Sony BMG Music Entm't, Inc.*,
2010 U.S. Dist. LEXIS 52585 (S.D. Tex. May 28, 2010)...................................23

*Kam-Ko Bio-Pharm Trading Co., Ltd. v. Mayne Pharma Inc.*,
560 F.3d 935 (9th Cir. 2009) .................................................................10

*Larson v. Warner Bros. Entm't, Inc.*,
2013 U.S. App. LEXIS 671 (9th Cir. January 10, 2013)..............................*passim*

*Lobdell v. Miller*,
114 Cal. App. 2d 328 (1952) ...................................................................6

*Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes*,
191 Cal. App. 4th 435 (2010) ..................................................................8

*Marvel Worldwide, Inc. v. Kirby*,
777 F. Supp. 2d 720 (S.D.N.Y. 2011) .......................................................22

*May v. Watt*,
822 F.2d 896 (9th Cir. 1987) .................................................................14

*McCreary v. Mercury Lumber Distributors*,
124 Cal. App. 2d 477 (1957) .................................................................16

*McGinest v. GTE Serv. Corp.*,
247 Fed. Appx. 72 (9th Cir. 2007)...........................................................16

*McKesson Corp. v. Health Robotics, S.R.L.*,
2011 U.S. Dist. LEXIS 81192 (N.D. Cal. July 26, 2011) ...............................23

*McNeese v. McNeese*,
190 Cal. 402 (1923) .............................................................................11

*Melanie Howard Music, Inc. v. Warner Bros. Records*,
2009 U.S. Dist. LEXIS 105049 (M.D. Tenn. Nov. 10, 2009)...........................23

*Morrison v. Mahoney*,
399 F.3d 1042 (9th Cir. 2005) ...............................................................18

*Pacific Coast Engineering Co. v. Merritt-Chapman & Scott Corp.*,
411 F.2d 889 (9th Cir. 1969) ..............................................................9-10

*Painters Joint Comm. v. J.L. Wallco, Inc.*,
2013 U.S. Dist. LEXIS 22915 (D. Nev. Feb. 19, 2013).................................23

*Paularena v. Superior Court of San Diego County*,
231 Cal. App. 2d 906 (1965) .................................................................14

*Pearson v. Brown*,
27 Cal. App. 125 (1915) .......................................................................11

*Peer Int'l Corp. v. Pausa Records, Inc.*,
909 F.2d 1332 (9th Cir. 1990) ........................................................8-9, 13

*People ex rel. Kennedy v. Beaumont Investment, Ltd.*,
111 Cal. App. 4th 102 (2003) .............................................................6, 10

*Perrey v. Televisa S.A. de C.V.*,
2010 U.S. Dist. LEXIS 142449 (C.D. Cal. Mar. 25, 2010)...................................23

*Ray Charles Found. v. Robinson*,
2013 U.S. Dist. LEXIS 21273 (C.D. Cal. Jan. 25, 2013) .......................................23

*Rice v. May*,
231 F.2d 389 (9th Cir. 1956) ...........................................................................6, 13

*Robinson v. Sanctuary Record Groups, Ltd.*,
763 F. Supp. 2d 629 (S.D.N.Y. 2011) .................................................................21

*Runyan v. Pac. Air Indus.*,
2 Cal. 3d 304 (1970) ..............................................................................................6

*Scorpio Music (Black Scorpio)S.A. v. Willis*,
2013 U.S. Dist. LEXIS 29141 (S.D. Cal. Mar. 4, 2013) .......................................23

*Siegel v. Warner Bros. Entertainment Inc.*,
542 F. Supp. 2d 1098, 1138 (C.D. Cal. 2008) ...............................................*passim*

*Siegel v. Warner Bros. Entertainment Inc.*,
581 F. Supp. 2d 1067 (C.D. Cal. 2008) ...............................................................19

*Siegel v. Warner Bros. Entertainment Inc.*,
658 F. Supp. 2d 1036 (C.D. Cal. 2009) ...........................................................19, 23

*Siegel v. Warner Bros. Entertainment Inc.*,
690 F. Supp. 2d 1048 (C.D. Cal. 2009) ...............................................................19

*Simmons v. Navajo County*,
609 F.3d 1011 (9th Cir. 2010) ..............................................................................16

*Thomas v. Ponder*,
611 F.3d 1144 (9th Cir. 2010) ................................................................................5

*U.S. for Use of Bldg. Rentals Corp. v. W. Cas. & Sur. Co.*,
498 F.2d 335 (9th Cir. 1974) ............................................................................8, 13

*United States v. Kellington*,
217 F.3d 1084 (9th Cir. 2000) ..............................................................................18

*United States v. Moriel-Luna*,
585 F.3d 1191 (9th Cir. 2009) ..............................................................................18

*United States v. Vacante*,
2010 U.S. Dist. LEXIS 73962 (E.D. Cal. June 2, 2010) .......................................23

*Vance v. Latimer*,
648 F. Supp. 2d 914 (E.D. Mich. 2009) ...............................................................23

*Wang Zong Xiao v. Reno*,
837 F. Supp. 1506 (N.D. Cal. 1993) .................................................................3, 21

*Warner Bros. Entm't, Inc. v. X One X Prods.*,
644 F.3d 584 (8th Cir. 2011) ................................................................................23

1

2

*Westendorf v. W. Coast Contrs. of Nev., Inc.,*
712 F.3d 417 (9th Cir. 2013) ........................................................................ 5

*Whitney Inv. Co. v. Westview Dev. Co.,*
273 Cal. App. 2d 594 (1969) ................................................................... 9, 11

*Wong v. Regents of the Univ. of Cal.,*
410 F.3d 1052 (9th Cir. 2005) ...................................................................... 5

3

4

5

6

## **Statutes**

7

Cal. Civ. Code § 1689 .......................................................................... 1, 6, 10

Fed. R. Civ. P. 56 ................................................................................... 5, 17

Fed. R. Civ. P. 59 ..................................................................................... 1, 24

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Tables of Contents and Authorities

ER 3738

**INTRODUCTION**

On January 10, 2013, the Ninth Circuit held that the Siegels' October 19, 2001 letter was "an acceptance" "sufficient" to create an agreement, and remanded for reconsideration of DC's Third and Fourth Counterclaims regarding that agreement. *Larson v. Warner Bros. Entm't, Inc.*, 2013 U.S. App. LEXIS 671 (9th Cir. January 10, 2013). DC then moved for summary judgment on its Fourth Counterclaim, which asked for a declaratory judgment that under the October 19, 2001 agreement the Siegels "*either* transferred *or* are contractually obligated to transfer" their Superman rights to DC Comics. Dkt. 646 ¶103(a) (emphasis added). On April 18, 2013, this Court entered a judgment (Dkt. 724) based on its March 20, 2013 summary judgment order that the Siegels' October 19, 2001 letter "operated itself to transfer the Siegels' Superman rights to DC" (Dkt. 717 ("Order") at 14) – granting DC the relief it requested.

Plaintiff does not challenge that determination here – the central aspect of the judgment and DC's Fourth Counterclaim. Nor does Plaintiff now challenge the Court's preclusion of her statutory terminations regarding Superboy and the Superman "Ads." Dkt. 723. Respectfully, however, two specific aspects of the judgment should be amended pursuant to Fed. R. Civ. P. 59(e).

*First*, the Court's ruling that the Siegels' transferred their recaptured copyrights on October 19, 2001 largely granted DC's Fourth Counterclaim and removed any necessity for the Court to wade into the parties' subsequent conduct/intentions and the fact-laden state-contract-law issues of rescission and/or acquiescence that are not susceptible to summary judgment.

The Order mistakenly adopted DC's erroneous legal argument that a notice of rescission requires that a party first acknowledge a contract. This is not the law in California. In fact, under Cal. Civil Code § 1689, a party can rescind for defects in contract formation. Moreover, DC cannot be heard to object that the notice did not acknowledge a contract when it asserted to the Ninth Circuit and this Court that the

PLAINTIFF'S MOTION TO AMEND THE JUDGMENT                    ER 3739

Siegels' May 9, 2002 notice "acknowledged" the parties' agreement.  Dkt. 722-1, Ex. 13 at 225 ("Everyone continued to refer to the deal the parties had made—even Larson's mother in her letter to Time Warner.").  And DC repeatedly alleged that the Siegels' May 9 and September 21, 2002 letters "repudiat[ed] the agreement reached by the parties."  Dkt. 646 ¶¶55-56.  Though repudiation and rescission have different legal consequences, the two are closely related.  A *justified* repudiation *is* a rescission.  The rescission issue is therefore inextricably tied to the issue of DC's antecedent breach.

Plaintiff presented ample evidence regarding DC's anticipatory and actual breaches of the terms of the October 19, 2001 agreement, the Siegels' justified repudiation/rescission based on DC's breach, and DC's acquiescence due to its utter failure to assert an October 19, 2001 agreement *for two years* and its resumption of different negotiations in 2003-2004.  When viewed in the light most favorable to the non-moving party, such evidence was more than sufficient to raise questions for the trier of fact, precluding summary judgment.

Plaintiff has a fundamental right to trial of these claims and defenses here or in state-court.  The Court rightly concluded that the state-law contract claims of breach and repudiation are best left to a separate state-court action.  Dkt. 717 at 12, 16; Dkt. 723 at 11.  The same applies to Plaintiff's closely-related rescission and acquiescence claims, which are unnecessary to the Court's core judgment.

*Second,* the Court's judgment denied Plaintiff's First Claim (implicitly with prejudice), and denied "without prejudice" DC's First and Second Counterclaims – which all focused on whether the Siegels' termination notices were valid.  In 2011, the Court *granted* the First Claim and denied *with prejudice* the First and Second Counterclaims based on Judge Larson's detailed published decisions.  The Ninth Circuit's decision solely addressed and confirmed DC's October 19, 2001 agreement and thus remanded for reconsideration of DC's Third and Fourth Counterclaims regarding it.  Accordingly, on remand, this Court's summary judgment rulings also

PLAINTIFF'S MOTION TO AMEND THE JUDGMENT

only addressed DC's Fourth Counterclaim (DC moved to dismiss its Third Counterclaim) and did not reconsider any portions of the prior orders which rightly upheld Plaintiff's Superman termination notices.  As such, the Court's prior orders remained "law of the case," see *Wang Zong Xiao v. Reno*, 837 F. Supp. 1506 (N.D. Cal. 1993), and the judgment should be amended to *grant* the First Claim, consistent with the prior rulings, and deny DC's First and Second Counterclaims *with prejudice*.

This would also comport with the parties' pleadings, as DC's Fourth Counterclaim, granted by the Court, was pled *in the alternative* to its First and Second Counterclaims, such that it only had effect if the Siegels' Superman termination was held valid.  Furthermore, such amended judgment would preserve important, hard-earned precedent regarding an emerging area of copyright law that has been repeatedly cited by other courts.  Lastly, such amendment would greatly simplify the closely-related *DC Comics* case if it is remanded, because it would enable the Court to apply issue preclusion to already-decided issues common to both cases, including complex "work-for-hire" issues.

## ARGUMENT

## I.   THE POST-2001 CONTRACT ISSUES WERE UNNECESSARILY DECIDED AND NOT SUSCEPTIBLE TO SUMMARY JUDGMENT

### A.   The Post-October 19, 2001 State Contract Law Issues Were Unnecessary To The Court's Judgment

As the Court is aware, DC appealed this Court's judgment in the Siegels' favor on DC's Third and Fourth Counterclaims, for breach of the October 19, 2001 Letter and declaratory relief regarding that letter, respectively.  On appeal, the Circuit held that the October 19, 2001 Letter was "an acceptance of terms negotiated between the parties" that "was sufficient" to create a contract on October 19, 2001, and remanded so that this Court could "reconsider DC's third and fourth counterclaims in light of our holding that the October 19, 2001, letter created an agreement."  *Larson*, 2013 U.S. App. LEXIS 671 at *3, *6.  On remand, DC moved for summary judgment on

its Fourth Counterclaim only, and to dismiss its remaining counterclaims, including its Third Counterclaim.  Dkt. 702 at 7-8; 702-5.

DC's Fourth Counterclaim, expressly pled in the alternative to its First and Second Counterclaims, sought a declaration that the Siegels "*either* have transferred *or* are contractually obligated to transfer to DC Comics" their rights in the Superman works.  Dkt. 646 ¶103(a) (emphases added).  On DC's motion for summary judgment, the Court found that the October 19, 2001 agreement "operated itself to transfer the Siegels Superman rights to DC."  Dkt. 717 at 14.  The Court thereby granted DC the relief sought in its Fourth Counterclaim – namely, that the Siegels "transferred … to DC Comics" their rights on October 19, 2001.  This unequivocal decision mooted DC's *alternative* relief that the Siegels are currently "contractually obligated to transfer" their rights to DC.

The Court's decision rendered it largely unnecessary for it to wade into or resolve the morass of state-law contract issues regarding what happened *after* the Siegels transferred their rights.  Those issues included whether DC subsequently *breached* the October 19, 2001 agreement, whether the Siegels thereafter repudiated (*i.e.*, breached) or justifiably rescinded the agreement due to DC's antecedent breach, and/or whether DC, by its actions or inaction, acquiesced in the Siegel's repudiation.  These interrelated, fact-intensive issues regarding the parties' conduct and intentions after October 19, 2001, and whether such constituted anticipatory breach, breach, rescission, repudiation or acquiescence, were ill-suited for summary judgment.  The issues were also unnecessary to the Court's judgment on DC's Fourth Counterclaim.  A declaratory judgment need not resolve *all* requested relief.  Whether the agreement is enforceable today in light of the parties' alleged breaches was superfluous given of the Court's decision that the Siegels had "transferred … to DC Comics" their recaptured copyrights on October 19, 2001.

The Court has thrice stated that the parties' breach and repudiation claims are unnecessary to its decision, and that these state-law contract matters are better

PLAINTIFF'S MOTION TO AMEND THE JUDGMENT

1   resolved in "a separate state-court action." Dkt. 717 at 12, 16; Dkt. 723 at 11. The

2   same holds true for the Siegels' rescission and acquiescence claims, which are

3   inextricably intertwined with the issue of whether DC breached the October 19, 2001

4   prior to the Siegels' alleged repudiation or rescission of that agreement.

5   **B.    Rescission And Acquiescence Entail Genuine Issues of Fact**

6          **Precluding Summary Judgment**

7          A motion for summary judgment may only be granted if the moving party

8   demonstrates "that there is no genuine dispute as to any material fact and the movant

9   is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v.*

10  *Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). "'On a motion for summary

11  judgment the court cannot try issues of fact. It can only determine whether there are

12  issues to be tried.'" *Hoffman v. Babbitt Bros. Trading Co.*, 203 F.2d 636, 638 (9th

13  Cir. 1953) (citation omitted); *see also Wong v. Regents of the Univ. of Cal.*, 410 F.3d

14  1052, 1068 (9th Cir. 2005) (on summary judgment, courts "do not weigh the

15  preponderance of the evidence, but decide simply whether genuine issues of fact

16  exist"). The moving party bears the burden of identifying evidence that demonstrates

17  the absence of a genuine issue of material fact for trial. *Anderson*, 477 U.S at 256.

18  Courts must also "view the evidence in the light most favorable to [] the non-moving

19  party" (*Westendorf v. W. Coast Contrs. of Nev., Inc.*, 712 F.3d 417 (9th Cir. 2013)),

20  and "all justifiable inferences are to be drawn" in their favor. *Thomas v. Ponder*, 611

21  F.3d 1144, 1149 (9th Cir. 2010). "Credibility determinations, the weighing of the

22  evidence, and the drawing of legitimate inferences from the facts" are matters for

23  trial, not summary judgment. *Anderson*, 477 U.S at 256.

24         As DC itself argued to the Ninth Circuit: "The question of whether the

25  subsequent events undid the prior [October 19, 2001] agreement or didn't undo the

26  prior agreement, that's a fact question." Dkt. 709-2, Ex. 19 at 345. Plaintiff's fact-

27  intensive rescission and acquiescence defenses presented issues for the trier of fact

28  that could not be decided on summary judgment.

1    **1.**    **Whether The Siegels Justifiably Rescinded Or Unjustifiably**

2    **Repudiated The October 19, 2001 Agreement Was For The**

3    **Trier Of Fact And Not Suitable For Summary Judgment**

4    a.    A Rescission Is A Justified Repudiation

5    A central plank of DC's arguments was the notion that the Siegels' May 9,

6    2002 letter was a "repudiation" of the October 19, 2001 agreement, not a rescission,

7    and that DC's performance was thereby excused. Dkt. 711 at 6-8, 10.  While

8    repudiation and rescission have different legal consequences, they are factually

9    closely related.  A "rescission necessarily involves a repudiation of the contract."

10   *Runyan v. Pac. Air Indus.*, 2 Cal. 3d 304, 316 (1970) (citation omitted); *see People ex*

11   *rel. Kennedy v. Beaumont Investment, Ltd.*, 111 Cal. App. 4th 102, 133 (2003)

12   (same); *Lobdell v. Miller*, 114 Cal. App. 2d 328, 343 (1952) (same).  The difference

13   is substantive, not formalistic, as advocated by DC and adopted by the Order.  In

14   short, "rescission" is the justifiable repudiation of a contract.  The issue is whether a

15   party's repudiation was **justified** by, for example, the other party's antecedent

16   breach.  If justified, it is a "rescission;" if not, it is a "repudiation."  *See Rice v. May*,

17   231 F.2d 389, 395 (9th Cir. 1956) ("One who rescinds without excuse repudiates.").

18   The ample evidence of DC's breach after October 19, 2001, when viewed in

19   the light most favorable to Plaintiff, the non-moving party, raised a triable issue of

20   fact as to whether the Siegel's 2002 letters constituted a justified "rescission," as

21   claimed by Plaintiff, or an unjustified "repudiation," as claimed by DC.

22   b.    Whether The Siegels Rescinded Their October 19, 2001

23   Acceptance Was A Triable Issue

24   As this Court aptly stated, "[u]nder California law one party to a contract may

25   rescind the contract if the other party refuses or fails to fully perform" – *i.e.,* if the

26   other party breaches or substantially non-performs. Dkt. 717 at 7 (citing Cal. Civ.

27   Code § 1689(b)(2)).

28   The Siegels' central obligation under the alleged October 19, 2001 agreement

PLAINTIFF'S MOTION TO AMEND THE JUDGMENT                    **ER 3744**

was to "transfer all of [their] rights in the 'Superman' properties" to DC. Dkt. 709-2, Ex. 1 at 6 ¶C(1). Per DC's allegations (Dkt. 646 ¶103(a)) and summary judgment motion (Dkt. 702 at 6-7), the Court ruled that the Siegels transferred their recaptured copyrights in the October 19, 2001 agreement itself (Dkt. 717 at 14), thereby performing their central contractual obligation.

In exchange, DC was obligated under the October 19, 2001 agreement to provide to the Siegels with: (1) a "signing bonus" of $1 million; (2) $2 million, as an upfront advance against royalties; (3) guaranteed annual payments of $500,000, starting March 31, 2002; (4) "royalty statements," starting March 31, 2002; (5) medical and dental insurance and (6) a "Special Arrangement" credit. Dkt. 709-2, Ex. 1 (October 19, 2001 agreement). None of DC's explicit obligations were contingent on the signing of a long-form agreement. As DC convinced the Circuit: "Our position is [the terms are] everything in this [October 19] letter, nothing more." Dkt. 709-2, Ex. 19 at 346:23-347:1; *see* Dkt. 722-1, Ex. 13 at 219 ("DC has long agreed: the October 19 letter controls."); *Larson*, 2013 U.S. App. LEXIS 671, at *4 ("[T]he letter accurately reflected the material terms … agreed to…."). And as this Court held, "the parties are bound by the terms memorialized in Marks's October 19 letter; nothing more." Dkt. 717 at 15.

However, after the Siegels transferred their rights to DC on October 19, 2001, DC performed ***none*** of its obligations. Instead, DC anticipatorily breached the October 19, 2001 agreement by conditioning its performance, in *both* its October 26, 2001 letter and February 1, 2002 agreement, on material changes to the fundamental terms agreed upon on October 19, 2001. Among those changes were significant royalty reductions, requirements that the Siegels assign additional copyrights to DC, and the replacement of the Siegels' single warranty with six aggressive warranties linked to indemnification by the Siegels. Dkt. 709-1 ¶¶8-16; Dkt. 709-2, Ex. 3 at 59-64. As Judge Larson determined in detailed findings, incorporated in the 2011 judgment (Dkt. 669), DC's October 26, 2001 letter contained "materially" different

PLAINTIFF'S MOTION TO AMEND THE JUDGMENT

terms, and the February 1, 2002 agreement contained "*vastly* different" terms than the terms agreed to in the October 19, 2001 letter. *Siegel v. Warner Bros. Entertainment Inc.*, 542 F. Supp. 2d 1098, 1138 (C.D. Cal. 2008) (emphasis added). The Circuit did not address events after October 19, 2001, nor disturb such findings.

This was **not** a simple matter of incorporating the October 19, 2001 terms in a long-form and including customary additional boilerplate, as DC argued (Dkt. 711 at 7) and the Order appeared to accept. Dkt. 717 at 9-10. Rather, DC grinded the Siegels – materially ***changing*** the agreed October 19, 2001 terms, and conditioning DC's payment on the Siegels' capitulation. DC's February 1, 2002 agreement made the Siegels' $1 million "signing bonus" and $2 million "advance" payable only "[u]pon full execution of this [2002] Agreement." Dkt. 709-2, Ex. 3 at 39.

DC's conduct arguably justified the Siegels' rescission of their October 19, 2001 agreement. *See U.S. for Use of Bldg. Rentals Corp. v. W. Cas. & Sur. Co.*, 498 F.2d 335, 339 (9th Cir. 1974) ("[R]escission is justified where there is either an extended and unreasonable delay [or] imposition of new and onerous conditions to payment….").[1] And Joanne Siegel explicitly cited DC's improper conduct front and center in her May 9, 2001 notice to DC. Dkt. 709-2, Ex. 4 at 76 (DC "condition[ed] our receiving financial compensation for our rights on demands which were not in the proposal we accepted….").

DC then actually breached by failing to pay and account to the Siegels by March 31, 2002, as explicitly and unconditionally set forth in the October 19, 2001 agreement (Dkt. 709-2, Ex. 1 at 4 ¶B(1), 5 ¶¶B(2), (4)), again giving rise to a right of rescission. *See Rubin v. Fuchs*, 1 Cal. 3d 50, 53 (1969) (defendants were "entitled to, and did, rescind the contract" because plaintiff did not make payment); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335 (9th Cir. 1990) (right to rescind

---

[1] *See also Johnson v. Goldberg*, 130 Cal. App. 2d 571, 576 (1955) ("Annexing an unwarranted condition to an offer of performance is a refusal to perform..."); *Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes*, 191 Cal. App. 4th 435, 467 (2010) (same).

PLAINTIFF'S MOTION TO AMEND THE JUDGMENT

where counterparty "made sporadic payments, [but] never complied with the royalty and accounting requirements" of copyright agreement).  This improper conduct was also highlighted in the Siegels' May 9, 2001 notice to DC.  Dkt 709-2, Ex. 4 at 76 ("[W]e are owed more than three years of profits accounting on Superman and related properties which has not been paid.  In addition, my disabled daughter still has not received the medical coverage she and her children were promised.").

DC cannot have its cake and eat it too.  Now that the Court has ruled, at DC's urging, that the October 19, 2001 letter "operated itself to transfer the Siegels Superman rights to DC" (Dkt. 717 at 14), DC's failure to perform is even more evident and inexcusable.  As DC's anticipatory and actual breaches of its payment obligations went to the heart of the Siegels' consideration under the October 19, 2001 agreement, this was more than sufficient to justify rescission by the Siegels.

Even if not part of a formal breach of contract claim, the issue of whether DC breached the October 19, 2001 agreement is inextricably linked to the issue of Plaintiff's "rescission," and gives rise to numerous issues of fact precluding summary judgment.  For instance, whether DC conditioned its performance on changes to the terms of the October 19, 2001 agreement (Dkt. 709-1 ¶¶10, 19, 24); whether these changes and condition breached the October 19, 2001 agreement and were sufficiently material to justify rescission (*id.* ¶¶24-28, 32-33); and whether DC's non-payment by March 31, 2002 and other failures to perform were excused by some contrary understanding (Dkt. 711 at 8-9) are all questions for the trier of fact, not summary judgment.  *See Whitney Inv. Co. v. Westview Dev. Co.*, 273 Cal. App. 2d 594, 601 (1969) ("Whether a breach is so material as to constitute cause for the injured party to terminate a contract is ordinarily a question for the trier of fact."); *Fed. Deposit Ins. Corp. v. Air Florida Sys., Inc.*, 822 F.2d 833, 840 (9th Cir. 1987) ("Whether a breach … [is] sufficient to be deemed material and thus to warrant rescission … is a question of fact properly determined by the trial court."); *Pacific Coast Engineering Co. v. Merritt-Chapman & Scott Corp.*, 411 F.2d 889, 894 (9th

PLAINTIFF'S MOTION TO AMEND THE JUDGMENT

Cir. 1969) ("In each case, it is a question of fact as to whether or not a party has committed an anticipatory breach....").

The Siegels have a fundamental right to trial on these rescission issues, whether in this Court or in a state-court action. *See Kam-Ko Bio-Pharm Trading Co., Ltd. v. Mayne Pharma Inc.*, 560 F.3d 935, 942 (9th Cir. 2009) ("[I]n a declaratory relief action, as in other civil actions, a party has 'an absolute right to a jury trial unless a jury has been waived.'").

        c.    <u>California Law Does Not Require A Rescinding Party To First Acknowledge A Contract</u>

As the Court held, a "notice of rescission need not be formal and explicit" and need only "'clearly show[] the intention of the person rescinding to consider the contract at an end.'" Dkt. 717 at 7 (quoting *Hull v. Ray*, 211 Cal. 164, 167 (1930)). The Order nonetheless adopted DC's erroneous legal argument that the Siegels' 2002 letters "do not constitute proper notices of rescission" because they purportedly did not acknowledge the existence of a contract. Dkt. 717 at 9; Dkt. 711 at 6-8, 10.

This finds no support in California law, which does ***not*** require that a rescinding party to first acknowledge a contract. In fact, a party can rescind for a defect in contract formation. Cal. Civil Code § 1689(1), (5); *see People ex rel. Kennedy*, 111 Cal. App. 4th at 133 (2003) (parties can rescind "'a contract that was never enforceable'") (citation omitted). It would not make sense to require that a notice of rescission "acknowledge" the formation of a contract when rescission itself can be based on a defect in formation.

The California Supreme Court's decision in *Donovan v. RRL Corp.*, 26 Cal. 4th 261 (2001), is also instructive. There, a car dealer's newspaper ad listed an incorrect price for a car; the plaintiff attempted to purchase the car at the advertised price; and the dealer refused to perform or acknowledge the contract. *Id.* at 267-69. The dealer argued that no contract was formed; but the Court concluded that its "advertisement constituted an offer that was accepted by plaintiff's tender of the

PLAINTIFF'S MOTION TO AMEND THE JUDGMENT

advertised price," thereby forming a contract. *Id.* at 276. The Court then cited the same California law as this Court – "'[i]t is not necessary that the notice to rescind shall be formal and explicit; it is sufficient that notice shall be given to the other party which clearly shows the intention of the person rescinding to consider the contract at an end.'" *Id.* at 278 n.5 (citing *Wilson v. Lewis*, 106 Cal. App. 3d 802, 809 (1980)). The Court concluded that the dealer "gave sufficient notice of its intent to rescind" even though the dealer never acknowledged a contract (*id.* at 278 n.5) and, indeed, never argued rescission on appeal. *Id.* at 293-94 (Werdegar, J., dissenting).

Nor does a requirement that rescission acknowledge a contract make sense from a practical perspective. Contract formation is often disputed. When disputes arise justifying rescission, reasonable minds can differ on whether an enforceable contract was even reached – as shown by Judge Larson's detailed opinion, and this Court's 2011 judgment, that the October 19, 2001 letter was not an enforceable agreement. *Siegel*, 542 F. Supp. 2d at 1133-37. If a party must first "acknowledge" a contract to give notice of rescission, it would waive any arguments that a binding contact was not formed. That is not and has never been the law.

All that is required is that a party give notice that they consider their dealings to be "at an end" (*Hull*, 211 Cal. at 167), whether or not there is a binding or potentially binding contract, and informal notice can suffice. *See Wilson*, 106 Cal. App. 3d at 809 (telephone call where party "'repudiat[ed]' her acceptance of the agreement was sufficient" notice of rescission); *Whitney Inv. Co.,* 273 Cal. App. 2d at 603 (triable issue of fact as to rescission where party, during "informal conversation," stated "'in my opinion they have not lived up to their obligations'"); *McNeese v. McNeese*, 190 Cal. 402, 405 (1923) (demand for return of property "was sufficient notice to defendant of plaintiff's desire and determination to rescind"); *Pearson v. Brown*, 27 Cal. App. 125, 131-132 (1915) ("Any appropriate words, or any definite acts, by which the vendor indicated that he would not proceed further … will be taken to amount to a rescission….").

In short, DC's representation of the law that a rescission must acknowledge the existence of a contract, believed by the Court, is contrary to California law and cannot stand as the basis of a decision.

### d. Whether The Siegels' 2002 Letters Gave DC Notice Of Rescission Was For The Trier Of Fact

The Siegel's May 9 and September 21, 2002 letters, written without the advice of counsel, certainly gave DC more than sufficient notice that the parties contractual relationship was "at an end." *Hull*, 211 Cal. at 167. The Court's determination that the Siegels' letters did not constitute notice of rescission as a matter of California law ignored numerous statements that, viewed in the light most favorable to the Siegels and drawing all inferences in their favor, precluded summary judgment.

Notably, even if a notice of rescission had to acknowledge an agreement (it does not), the Siegels made several statements in their 2002 letters that did this:

> We made painful concessions assured if we did we would arrive at an agreement. When we made those difficult concessions and reluctantly accepted John Schulman's last proposal six months ago, …
> But we are owed more than three years of profits accounting on Superman and related properties which has not been paid. In addition, my disabled daughter still has not received the medical coverage she and her children were promised several years ago.
> …. For your representatives to condition our receiving financial compensation for our rights on demands which were not in the proposal we accepted, is deceitful. …. I had hoped that Laura's and my good relationships with Jerry Levin and D C Comics would continue after we reached an agreement. …..
> After four years we have no deal ….

Dkt. 709-2, Ex. 4. And the letter gave clear notice that the Siegels considered their "agreement" to be at an end.

DC can hardly argue that the Siegels' notice was insufficient when DC claimed on appeal that the Siegels acknowledged an agreement in the May 9, 2002 letter. Dkt. 722-1, Ex. 13 at 225 ("Everyone continued to refer to the deal the parties had made—even Larson's mother in her letter to Time Warner."); Dkt. 709-2, Ex. 16 at 224 (DC: on "May 9, 2002, [] Larson's mother sent DC a letter acknowledging that Larson had 'accepted' DC's October 16, 2001, offer"). DC repeatedly pled and argued the same thing to the district court. *See* Dkt. 646 ¶55 (DC: "On May 9, 2002,

12

[] Joanne Siegel wrote a letter … acknowledging that the Siegels had accepted DC Comics' proposal of October 16, 200[1]…."); Dkt. 181 at 73 (DC: "[I]n her May 9, 2002 letter to Richard Parsons, Mrs. Siegel acknowledged that the parties had reached an accord six months earlier…."). Because a justified "repudiation" *is* a "rescission," *Rice,* 231 F.2d at 395, DC's allegations that the Siegels "repudiated" the October 19, 2001 agreement in their May 9 and September 21, 2002 letters (Dkt. 646 ¶¶55-56, 99-100) also effectively acknowledged notice of rescission. As the Court held, the Siegels' letters gave adequate notice that they intended to "otherwise repudiate the continued existence" of an agreement. Dkt. 717 at 9.

Furthermore, even if a notice of rescission had to state the grounds for rescission (it does not), the Siegels did so, identifying (1) DC's failure to pay the Siegels; (2) DC's changing the October 19, 2001 terms; and (3) DC's conditioning its payment on the Siegels' capitulation to those changed terms. Dkt 709-2, Ex. 4 at 76 ("But we are owed more than three years of profits accounting on Superman …which has not been paid. …. For your representatives to condition our receiving financial compensation for our rights on demands which were not in the proposal we accepted, is deceitful."). The Order ignored these proper grounds for rescission (*see U.S. for Use of Bldg. Rentals Corp.* 498 F.2d at 339; *Peer Int'l Corp.*, 909 F.2d at 1335), mistakenly held that the only "stated ground[]" was "the Siegels' disdain for DC's February 1, 2002 long-form," and, on that basis, concluded that notice was insufficient. Dkt. 717 at 9.

Furthermore, a notice of rescission need not state all grounds, or even the proper grounds, as the Court acknowledged. Dkt. 717 at 10 ("[A] statement in the notice of certain grounds for rescission does not prevent the party from thereafter relying upon different and proper grounds.") (citing *Hull*, 211 Cal. at 167); *see also Allied Health Ass'n v. Arthrocare Corp.*, 2009 U.S. Dist. LEXIS 42806, at *26 (N.D. Cal. May 20, 2009) (granting rescission claim despite "failure to cite proper justification" in the notice); *Earl v. Saks & Co.*, 36 Cal. 2d 602, 609 (1951) ("One

PLAINTIFF'S MOTION TO AMEND THE JUDGMENT

1    may justify an asserted rescission by proving that at the time there was an adequate

2    cause although it did not become known to him until later.").

3           Given all of the above, the Siegels gave sufficient notice of rescission to

4    survive summary judgment.  *See Wilson*, 106 Cal. App. 3d at 809 ("[I]f facts exist

5    that justify a rescission by one party, and he declares a rescission in some effectual

6    manner, he terminates the contract.").  The May 9 and September 2002 letters, in

7    conjunction with DC's prior anticipatory and actual breaches, raised triable issues of

8    fact as to whether the Siegels rescinded their October 19, 2001 acceptance and

9    agreement.  *See Hil-Mac Corp. v. Mendo Wood Products, Inc.*, 235 Cal. App. 2d 526,

10   530 (1965) ("The determination of whether a party entitled to rescind a contract has

11   [rescinded] … depends upon the particular facts of each case.  The question is one of

12   fact, to be resolved in the first instance by the trier of fact…."); *Paularena v.*

13   *Superior Court of San Diego County*, 231 Cal. App. 2d 906, 914 (1965) (rescission is

14   triable to a jury); *May v. Watt*, 822 F.2d 896, 900 (9th Cir. 1987) (Reinhardt, J.)

15   (holding that party was entitled to present rescission claim to jury).

16           **2.    On DC's Summary Judgment Motion, The Order Viewed The**

17                   **Acquiescence Evidence In The Light Most Favorable To DC**

18           The Order's determination that DC did not acquiesce in the Siegels' rescission

19   or abandon the October 19, 2001 agreement also decided critical factual issues on

20   summary judgment, by drawing all inferences *against* the non-movants, the Siegels.

21           Under California law, where a party repudiates a contract, and the other party

22   acquiesces, abandonment is implied.  *See Grunwald-Marx, Inc. v. Los Angeles Joint*

23   *Board, Amalgamated Clothing Workers*, 192 Cal. App. 2d 268, 279-280 (1961)

24   ("[A]bandonment of a contract may be implied from the acts of the parties")  (cit'ns

25   omitted); *Griffin v. Beresa, Inc.*, 143 Cal. App. 2d 299, 301 (1956)  ("[A]bandonment

26   of a contract … may be accomplished by the repudiation of the contract by one of the

27   parties and the acquiescence of the other ...."); *Eddy v. Gallaway*, 11 Cal. App. 3d

28   185, 191 (1970) (abandonment "is a mixed question of law and fact").

PLAINTIFF'S MOTION TO AMEND THE JUDGMENT                    **ER 3752**

1    The Order rejected this defense as a matter of law because after these cases

2    were filed in November 2004, DC alleged for the first time, and among numerous

3    alternative defenses, that the October 19, 2001 letter was a binding settlement

4    agreement.  Dkt. 709-2 ¶¶36-37; 717 at 11-12.  This ignored DC's undisputed

5    *inaction* between 2002 and 2004, under circumstances in which DC would naturally

6    have asserted the October 19, 2001 agreement.  After the Siegels rescinded their

7    October 19, 2001 acceptance on May 9, 2002 and after they formally terminated

8    negotiations on September 21, 2002, DC did ***not*** (1) assert that the Siegels were

9    bound by an agreement; (2) even mention the October 19, 2001 letter; (3) assert

10   ownership of the Siegels' recaptured copyrights; (4) perform or tender performance

11   of any of DC's obligations under the October 19 agreement; (5) demand that the

12   Siegels perform by transferring or confirming a transfer of rights under the October

13   19, 2001 agreement; or (6) attempt to use its alleged "power of attorney" under the

14   agreement to transfer the Siegels' copyrights.  Dkt. 709-1 ¶¶32-33.

15   DC's complete and utter inaction is especially telling given the enormous value

16   of the Superman copyrights at issue.  Furthermore, DC entered into new negotiations

17   with the Siegels' new representatives in 2003-2004, again without once asserting that

18   the October 19, 2001 agreement bound the Siegels.  Dkt. 709-1 ¶31; *Honda v. Reed*,

19   156 Cal. App. 2d 536, 538 (1958) ("abandonment" where parties did not perform,

20   "negotiated for a new and different agreement" but "could not agree on terms").

21   Instead of crediting this evidence, the Order focused on DC's May 21, 2002

22   letter, which was not the sole, or even dominant, ground for Plaintiff's defense.

23   Notwithstanding this, DC's May 21, 2002 letter, when viewed in the light most

24   favorable to Plaintiff, also supports her arguments.  The May 21, 2002 letter states

25   DC's "hope" that the parties can reach a new agreement on mutually acceptable

26   terms.  Dkt. 709-2, Ex. 5 at 78 ("John and Paul look forward to meeting with your

27   representatives, and we continue to hope that this agreement can be closed based

28   upon the earlier discussions with your lawyers.").  A jury could well infer from this,

PLAINTIFF'S MOTION TO AMEND THE JUDGMENT

in conjunction with the above evidence, that DC acquiesced in the Siegels'
repudiation, and hoped to reach a new agreement acceptable to both parties.  The
Order nonetheless construed the May 21, 2001 letter in the light most favorable to
DC – the moving party – just as it had done with the May 9, 2002 letter.

Respectfully, Plaintiff's acquiescence defense was for the trier of fact, and
could not be disposed of as a matter of law.  DC's inaction over a prolonged period
after the Siegels' unequivocal repudiation/rescission raises a triable issues of fact as
to the parties' intent, when properly viewed in the light most favorable to the non-
moving party.  *See McCreary v. Mercury Lumber Distributors*, 124 Cal. App. 2d 477,
486 (1957) (holding that "acquiescence is shown … by the absence of a showing that
[the plaintiff] claimed any further rights under the old contract prior to the
commencement of the subject action").

## C.  Plaintiff Timely Asserted Rescission And Acquiescence

The Order criticized the Siegels' arguments as "too little too late," and stated
that the Siegels "waited nearly eight years to raise their abandonment and
acquiescence defense."  Dkt. 717 at 10, 12.  The Siegels expressly raised the defenses
of "Acquiescence," "Waiver" and "Laches" at the first opportunity in their Answer to
DC's Counterclaims (Dkt. 656 ¶¶149-153), as referenced in both Plaintiff's
opposition to DC's motion and Court-ordered sur-reply.  Dkt. 709-1 ¶42; Dkt. 715 at
2.  Plaintiff's Answer also specifically denied DC's allegations that it performed
under the October 19, 2001 agreement (Dkt. 646 ¶¶53, 55-56, 97-105; Dkt. 656 ¶¶53,
55-56, 97-105), placing DC's "non-performance"– the asserted basis for rescission –
at issue.  *See Simmons v. Navajo County*, 609 F.3d 1011, 1023 (9th Cir. 2010)
(answer that "denied the allegation" gave adequate "notice" of defense).

Even if Plaintiff had not pled the issues, the Ninth Circuit has made it clear that
"affirmative defenses that were not pleaded in an answer may be raised for the first
time on summary judgment."  *McGinest v. GTE Serv. Corp.*, 247 Fed. Appx. 72, 75
(9th Cir. 2007) (holding that a party properly raised a new affirmative defense on

summary judgment after remand); *see also Ahmad v. Furlong*, 435 F.3d 1196, 1201 (9th Cir. 2006) ("[S]trict adherence to the pleading requirement is inappropriate when the purpose … has been otherwise fulfilled.  The purpose … is to give the opposing party notice … [and] a chance to argue…").

The only "prejudice" argued by DC was that it purportedly "was deprived of discovery on [the issues] or the chance to litigate them before" (Dkt. 711 at 6), but that does not add up.  DC had every opportunity to take full discovery and depose all relevant witnesses on the contract issues, including the October 19, 2001 letter, the October 26, 2001 letter, DC's February 1, 2002 agreement, and the Siegels' May 9 and September 21, 2002 letters, and did so at the *thirty* depositions in this case.  Dkt. 729-1 ¶2.  Despite this, DC on its own chose not to move for summary judgment on its Fourth Counterclaim until 2013.  Moreover, in the closely related *DC Comics* action, DC was allowed to repeat this discovery with regard to 2001-2004 events, including re-deposing all relevant witnesses.

DC's "eight year" criticism, adopted by the Order, is unfounded.  The junctures to present evidence on a claim/defense are on summary judgment or trial. Parties may move for summary judgment on certain grounds, while preserving others for trial.  Fed. R. Civ. P. 56(a).  The Siegels did not move for summary judgment as to rescission or acquiescence, and instead "argued … that no contract was formed with DC at all" (Dkt. 717 at 10), for good reason.  When the parties cross-moved for partial summary judgment before Judge Larson, the Siegels successfully moved on DC's Third and Fourth Counterclaim, arguing that the parties' objective exchange fell short of a binding agreement.  Dkt. 161 at 45-61.  In opposition to the *Siegels'* motion, DC argued that disputed issues of fact prevented summary judgment as to whether the October 19, 2001 letter constituted a contract.  Dkt. 181 at 67-85. Accordingly, DC did *not* affirmatively move for summary judgment on its Third or Fourth Counterclaims regarding an October 19, 2001 agreement.  *Id.* at 67-68.

Judge Larson's 2007 ruling, and this Court's 2011 judgment, that no contract

PLAINTIFF'S MOTION TO AMEND THE JUDGMENT

was consummated eliminated any need for the Siegels to make alternative contract arguments like rescission or acquiescence. The matter then went up on appeal for a year and a half. The Circuit then found "that the October 19, 2001, letter created an agreement." *Larson*, 2013 U.S. App. LEXIS 671 at *6. The Circuit remanded for adjudication of DC's Third and Fourth Counterclaims "in light of our holding that the October 19, 2001, letter created an agreement." *Id.* The Circuit did not address or even mention events after October 19, 2001, preserving such issues for remand. *See United States v. Kellington*, 217 F.3d 1084, 1092 (9th Cir. 2000) (lower courts on remand "are free as to anything not foreclosed by the mandate"). Thereafter, on February 7, 2013, DC for the first time moved for summary judgment on its Fourth Counterclaim, whereupon Plaintiff properly made her alternative arguments regarding rescission and acquiescence. Dkt. 702. In other words, prior to the recent reversal of this Court's 2011 judgment, there was no reason for Plaintiff to have pressed alternative arguments regarding DC's Fourth Counterclaim, like rescission/acquiescence, that are not conducive to summary judgment.

It is also well-established that a party can assert and the district court can consider new arguments made "for the first time on remand" on remand. *United States v. Moriel-Luna*, 585 F.3d 1191, 1200 (9th Cir. 2009). This is especially proper where, as here, a party had prevailed on other grounds and the appellate court's decision "changed the rules of the game." *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1357 (Fed. Cir. 1998); *see Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005) (permitting review of a new argument made on remand because the mandate rule "does not imply that a party cannot raise on a remand a point not reached when that same party prevailed previously"). The Siegels properly raised rescission and acquiescence in light of the Circuit's finding an October 19, 2001, contract, as there was no reason to press these arguments before.

* * *

Plaintiff respectfully requests, based on all of the above, that the Court

PLAINTIFF'S MOTION TO AMEND THE JUDGMENT

withdraw Section "B" of its order (Dkt. 717 at 6-12), and grant DC's Fourth Counterclaim to the extent it seeks a declaration that the Siegels "transferred" their rights to DC in the October 19, 2001 agreement. This would preserve the integrity of the Court's core decision, while leaving trial of the state-law contract issues to a separate state-court action where they belong, in the event the parties do not settle.

## II.   THE JUDGMENT SHOULD BE AMENDED TO GRANT PLAINTIFF'S FIRST CLAIM AND DENY DC'S FIRST AND SECOND COUNTERCLAIMS WITH PREJUDICE

Plaintiff's First Claim and DC's First and Second Counterclaims all relate to one, fundamental issue: whether or not the Siegels' Superman termination notices were valid. The Court's May 17, 2011 judgment, the subject of the recent appeal, granted Plaintiff's First Claim (in the "Superman" case) and denied with prejudice DC's First, Second, Third and Fourth Counterclaims (in both cases). Dkt. 669. In turn, that judgment was based on several lengthy, published decisions by Judge Stephen G. Larson. *See Siegel v. Warner Bros. Ent. Inc.*, 542 F. Supp. 2d 1098; 581 F. Supp. 2d 1067 (C.D. Cal. 2008); 658 F. Supp. 2d 1036 (C.D. Cal. 2009); 690 F. Supp. 2d 1048 (C.D. Cal. 2009).

The Siegels' First Claim requested only a declaration that "Plaintiffs validly terminated" and recaptured Jerome Siegel's copyright interest in certain of his "Superman" works. Dkt. 644 ¶¶52-55. The Court fully resolved this claim with orders that upheld the validity of the Siegels' statutory termination and determined all the copyrighted Superman works (*e.g.*, *Action Comics,* No. 1) thereby recaptured by the Siegels. 542 F. Supp. 2d at 1130; 658 F. Supp. 2d 1036.

DC's First Counterclaim sought a declaration that the Termination was ineffective on three alleged grounds, each expressly adjudicated and rejected by the Court. *Compare* Dkt. 646 ¶¶68-69 *with* 542 F. Supp. 2d at 1131-32; ¶¶70-76 *with* 542 F. Supp. 2d at 1132-34; ¶¶86-89 *with* 542 F. Supp. 2d at 1117-19.

DC's Second Counterclaim sought declaratory relief that Plaintiff's claims

were barred by the statute of limitations, an argument expressly analyzed and rejected by the Court. *Compare* Dkt. 646 ¶¶90-96 *with* 542 F. Supp. 2d at 1134-36.

DC's Fourth Counterclaim – the only claim granted by the judgment – was expressly pled in the alternative, *if* the Court found that the Siegels' termination notices were valid:

> 3.     In the event that the Superman Notices [of termination] and/or the Superboy Notice [of termination] are deemed effective, declaring on DC Comics'' 'Fourth Alternative Counterclaim that, pursuant to the Agreement:
>
>> a.     Plaintiffs/Counterclaim Defendants have transferred or are contractually obligated to transfer to DC Comics, worldwide and in perpetuity, any and all rights, title, and interest, including all United States copyrights, which they may have in the Superman Works;
>
> ….

Dkt. 646 at 35.

In short, Plaintiff's First Claim sought a declaration that her terminations were valid under the Copyright Act, while DC's First and Second Counterclaims sought a declaration that they were invalid. DC's Fourth Counterclaim, which asked for a declaration that the Siegels transferred their recaptured Superman rights in the October 19, 2001 agreement, ***only*** came into play if, as the Court properly found, the Siegels had recaptured such Superman rights in 1999 pursuant to their 1997 termination notices.

DC's reason for pleading its Fourth Counterclaim "in the alternative" in this fashion is clear: if DC had succeeded in obtaining a declaration that the Siegels' termination was invalid, DC would ***not*** have wanted the Siegels' October 19, 2001 letter to be deemed an enforceable agreement, because then it would have been forced to pay the Siegels under that agreement even though the reason for it– the terminations – had been invalidated.

On appeal, Plaintiff appealed limited aspects of the Court's decision on the First Claim – namely, the determination that certain Superman works were not recaptured because they were "works for hire." DC cross-appealed the adverse determinations against it on all claims – the First Claim as well as the First through

PLAINTIFF'S MOTION TO AMEND THE JUDGMENT

1    Fourth Counterclaims.  Dkt. 709-2, Ex. 18 at 325.  However, the Circuit did <u>not</u>

2    address or reverse the Court's judgment on the First Claim or the First or Second

3    Counterclaims.  It <u>only</u> addressed DC's Third and Fourth Counterclaims, as to the

4    alleged October 19, 2001 agreement:

5

6        Defendants Warner Brothers Entertainment, Inc.  and DC Comics
         (collectively, "DC") appeal the district judge's grant of summary judgment to
7        Plaintiff Laura Siegel Larson as to DC's third and fourth counterclaims (which,
         both parties concede, are governed by California law).n1  The district judge
8        entered judgment pursuant to Federal Rule of Civil Procedure 54(b), and we
         have jurisdiction pursuant to 28 U.S.C. § 1291.  We reverse and remand as to
9        these counterclaims.

10       n.1:  DC also appeals the district judge's grant of summary judgment to Larson
         as to certain aspects of Larson's first claim and DC's first counterclaim, as
11       well as the entirety of DC's second counterclaim. Larson cross-appeals the
         district judge's grant of summary judgment to DC as to the other aspects of
12       Larson's first claim and DC's first counterclaim.  As explained below, we do
         not reach the issues raised by these claims.

13   *Larson*, 2013 U.S. App. LEXIS 671 at *2-3, *6.  The Ninth Circuit <u>expressly</u>

14   declined to reach, much less reverse, the Court's determination on the First Claim, or

15   the First and Second Counterclaims.

16       Thus, when the Ninth Circuit remanded, it remanded only for reconsideration

17   of DC's Third and Fourth Counterclaims, relating to the October 19, 2001 agreement.

18   *Id.* at *6.  That decision – like this Court's 2013 summary judgment opinions (Dkt.

19   717, 723) – left the Court's prior adjudication of Plaintiff's First Claim, and DC's

20   First and Second Counterclaims, untouched and "law of case."  *See Wang Zong Xiao*

21   *v. Reno*, 837 F. Supp. 1506, 1545 (N.D. Cal. 1993) ("The Court's ruling as to the

22   eleven remaining claims was not disturbed by the Ninth Circuit's decision, and

23   consequently, it remains the law of the case."); *Robinson v. Sanctuary Record*

24   *Groups, Ltd.*, 763 F. Supp. 2d 629, 631 (S.D.N.Y. 2011) ("[A] finding of a district

25   court that was properly challenged on appeal though not expressly or implicitly

26   addressed by an appellate court remains the law of the case.").

27       Accordingly, the Court's judgment should have (a) granted Plaintiff's First

28   Claim insofar as it sought a determination that the Siegels' 1997 notices of

termination were valid as to specific Superman works, pursuant to the Court's prior decisions and judgment; and (b) denied *with prejudice* DC's First and Second Claims (instead of "without prejudice").

However, the Court's April 18, 2013 judgment largely adopted DC's proposed judgment (Dkt. 702-5, 724), which tactically ignored DC's own pleadings and the Court's prior orders to DC's unfair advantage. The judgment expressly granted DC's Fourth Counterclaim (pled by DC in the alternative "if" and only if the Court *granted* Plaintiff's First Claim), while flatly denying Plaintiff's First Claim, impliedly with prejudice, and dismissing DC's First and Second Counterclaims "without prejudice."

The Court obviously spent considerable time and resources sorting through the complicated legal and factual issues underlying the First Claim and the First and Second Counterclaims in its detailed published decisions. Amending the judgment to comport with the undisturbed portions of those prior decisions is advisable for several additional reasons.

First, pleading the Fourth Counterclaim "in the alternative" was a tactical choice by DC. DC easily could have chosen to plead the Fourth Counterclaim independently and regardless of whether the Siegel terminations were declared valid – but that would have run the risk that the terminations were found invalid, and DC would still have to pay the Siegels. Although that result would be equitable, since any settlement agreement reflects the risks of litigation, DC sought to have its cake and eat it too. DC must be held to the consequences of its own decisions.

Second, the Court's prior detailed orders set forth persuasive precedent as to numerous issues surrounding statutory terminations, an important and emerging area of copyright law. Numerous other courts and commentators have cited its holdings on termination-related issues that were left intact by the Ninth Circuit's ruling – *e.g.,* work-for-hire and derivative work exceptions, copyrightability, statute of limitations, alter-ego liability and/or jury trial issues.[2] Entering judgment against DC on the First

---

[2] *See, e.g., Warner Bros. Entm't, Inc. v. X One X Prods.*, 644 F.3d 584, 598-599 (8th Cir. 2011); *Marvel Worldwide, Inc. v. Kirby*, 777 F. Supp. 2d 720, 738 (S.D.N.Y. 2011); *Vance*

PLAINTIFF'S MOTION TO AMEND THE JUDGMENT          **ER 3760**

Claim and First and Second Counterclaims, consistent with the Court's prior detailed undisturbed decisions, would leave these important precedents intact.

Third, entry of judgment against DC on the First Claim and First and Second Counterclaims may greatly simplify related litigation before this Court. The Court's prior orders addressed and resolved the complicated "work for hire" issues relating to Siegel and Shuster's Superman work in the 1930's and 1940's, as well as issues relating to a 1948 consent judgment. *Siegel,* 542 F. Supp. 2d at 1126-30, 1131-32; 658 F. Supp. 2d at 1061-68, 1083. In the closely-related *DC Comics* case, DC made virtually-identical "work for hire" and other arguments that have been fully adjudicated against DC in this case. Case No. 10-CV-03633, Dkt. 49 ¶¶126-28, 153-54, 158-59. If the Court properly enters judgment against DC on the First Claim and First and Second Counterclaims, DC will be bound by that judgment and those orders as a matter of issue preclusion. *See Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987). This would greatly simplify resolution of such issues to the extent the Court's Rule 54(b) judgment in *DC Comics* is reversed. Otherwise, the parties will have to re-litigate those substantial issues of fact and law, heavily burdening the Court with further, complicated filings on matters already fully and fairly adjudicated.

In light of the Court's prior well-reasoned determinations, and the Ninth Circuit's narrow decision, the Court's judgment should be amended to grant the First

---

*v. Latimer*, 648 F. Supp. 2d 914, 927 (E.D. Mich. 2009); *Scorpio Music (Black Scorpio) S.A. v. Willis*, 2013 U.S. Dist. LEXIS 29141, at *14 (S.D. Cal. Mar. 4, 2013); *Ray Charles Found. v. Robinson*, 2013 U.S. Dist. LEXIS 21273, at *14 (C.D. Cal. Jan. 25, 2013); *Painters Joint Comm. v. J.L. Wallco, Inc.*, 2013 U.S. Dist. LEXIS 22915, at *4 (D. Nev. Feb. 19, 2013); *Clark v. Dana Woody & Assocs.*, 2013 U.S. Dist. LEXIS 18996, at *11 (S.D. Cal. Feb. 12, 2013); *McKesson Corp. v. Health Robotics, S.R.L.*, 2011 U.S. Dist. LEXIS 81192, at *14-15 (N.D. Cal. July 26, 2011); *United States v. Vacante*, 2010 U.S. Dist. LEXIS 73962, at *11-12 (E.D. Cal. June 2, 2010); *Jordan v. Sony BMG Music Entm't, Inc.*, 2010 U.S. Dist. LEXIS 52585, at *7-8 (S.D. Tex. May 28, 2010); *Perrey v. Televisa S.A. de C.V.*, 2010 U.S. Dist. LEXIS 142449, at *14 (C.D. Cal. Mar. 25, 2010); *Melanie Howard Music, Inc. v. Warner Bros. Records*, 2009 U.S. Dist. LEXIS 105049, at *25 (M.D. Tenn. Nov. 10, 2009); *Don Johnson Prods. v. Rysher Entm't, Inc.*, 2009 U.S. Dist. LEXIS 81594, at *17 (C.D. Cal. June 8, 2009); M. Nimmer & D. Nimmer, *Nimmer on Copyright* §§ 4.12[A], 4.12[B][4], 4.13[a],11.07.

1  Claim and hold that the Siegels' 1997 notices of termination were valid, as set forth

2  in the Court's prior orders.

3  ## CONCLUSION

4    Pursuant to Fed. R. Civ. P. 59(e), Plaintiff respectfully requests that the Court's

5  April 18, 2013 judgment be amended to grant the Siegels' First Claim, deny DC's

6  First and Second Counterclaims with prejudice, and grant DC's Fourth Counterclaim,

7  as set forth in Plaintiff's concurrently-filed proposed judgment.

8   Dated:  May 16, 2013     RESPECTFULLY SUBMITTED,
            /s/ Marc Toberoff

9

10              TOBEROFF & ASSOCIATES, P.C.
            Attorneys for Plaintiff, Laura Siegel Larson

1    DANIEL M. PETROCELLI (S.B. #097802)
       dpetrocelli@omm.com
2    MATTHEW T. KLINE (S.B. #211640)
       mkline@omm.com
3    CASSANDRA L. SETO (S.B. #246608)
       cseto@omm.com
4    O'MELVENY & MYERS LLP
     1999 Avenue of the Stars, Suite 700
5    Los Angeles, CA 90067-6035
     Telephone: (310) 553-6700
6    Facsimile: (310) 246-6779

7    Attorneys for the DC Comics Parties

8    (continued on next page)

9                 **UNITED STATES DISTRICT COURT**

10               **CENTRAL DISTRICT OF CALIFORNIA**

11   LAURA SIEGEL LARSON,                      Case No. CV 04-8400 ODW (RZx)
     individually and as personal             Case No. CV 04-8776 ODW (RZx)
12   representative of the ESTATE OF           Case No. CV 10-3633 ODW (RZx)
     JOANNE SIEGEL,
13                                             **JOINT STATUS REPORT RE: THE**
              Plaintiff and Counter-defendant, **SUPERMAN AND SUPERBOY**
14                                             **CASES PURSUANT TO THE**
          v.                                   **COURT'S FEBRUARY 1, 2013,**
15                                             **ORDERS**
     WARNER BROS. ENTERTAINMENT
16   INC., DC COMICS, and DOES 1-10,           The Hon. Otis D. Wright II

17            Defendants and
              Counterclaimant.
18   ─────────────────────────────
     LAURA SIEGEL LARSON,
19   individually and as personal
     representative of the ESTATE OF
20   JOANNE SIEGEL,

21            Plaintiff and Counter-defendant,

22        v.

23   TIME WARNER INC., WARNER
     COMMUNICATIONS INC.,
24   WARNER BROS. ENTERTAINMENT
     INC., WARNER BROS. TELEVISION
25   PRODUCTION INC., DC COMICS,
     and DOES 1-10,
26
              Defendants and
27            Counterclaimant.

28   (continued on next page)

1  DC COMICS,

2      Plaintiff,

3      v.

4  PACIFIC PICTURES
   CORPORATION, IP WORLDWIDE,
5  LLC, IPW, LLC, MARC TOBEROFF,
   an individual, MARK WARREN
6  PEARY, as personal representative of
   the ESTATE OF JOSEPH SHUSTER,
7  JEAN ADELE PEAVY, an individual,
   LAURA SIEGEL LARSON, an
8  individual and as personal
   representative of the ESTATE OF
9  JOANNE SIEGEL, and DOES 1-10,

10     Defendants.

11

12  MARC TOBEROFF (S.B. #188547)
      mtoberoff@toberoffandassociates.com
13  KEITH G. ADAMS (S.B. #240497)
      kadams@toberoffandassociates.com
14  PABLO D. ARREDONDO (S.B. #241142)
      parredondo@toberoffandassociates.com
15  DAVID A. HARRIS (S.B. #255557)
      dharris@toberoffandassociates.com
16  TOBEROFF & ASSOCIATES, P.C.
17  22337 Pacific Coast Highway #348
   Malibu, CA 90265
18  Telephone:  (310) 246-3333
   Facsimile:   (310) 246-3101
19

20  Attorneys for the Larson, Shuster, and Toberoff Parties

21

22

23

24

25

26

27

28

The parties respectfully submit this Joint Status Report pursuant to the Court's February 1, 2013, orders in the three Superman cases: Case No. CV-04-8400, DN 701 ("*Siegel* Superman Case"); Case No. CV-04-8776, DN 221 ("*Siegel* Superboy Case"); and Case No. CV-10-3633, DN 571 ("*DC Comics* Case"). As ordered, this Joint Status Report reflects the parties' efforts to: (1) provide a concise procedural history of these cases; (2) set forth the current state of affairs in each case; and (3) propose an approach for resolving them. *Id.*[1]

**Summary Of <u>DC's</u> Position**. It is DC's submission that the three Superman cases can be fully complete within the next 60 to 90 days. Based on the Ninth Circuit's recent ruling in the *Siegel* Superman Case, DC moved for final judgment in the *Siegel* Superman and Superboy Cases. *See* Case No. CV-04-8400, DN 702. Such final judgments should enter.

As for the *DC Comics* case, the Court granted partial judgment in DC's favor on its First and Third Claims—mooting its Second Claim. (That judgment is on appeal.) DC moved for terminating default sanctions on its three remaining claims (its Fourth through Sixth Claims). DN 573. DC moved, separately, for summary judgment on its Sixth Claim. DN 588. DC's motions should be granted and, if they are, the only issue remaining to be decided will be DC's damages on its Fourth and Fifth Claims. That issue can be proven quickly by DC's damages expert. Toberoff and the heirs disagree as set forth below, but DC will not use this joint submission to argue its case or respond to their arguments. *Supra* n.1.

**Summary Of the <u>Heirs/Toberoff Defendants</u>' Position**. The Larson (Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel), Shuster (Mark Warren Peary, as personal representative of the Estate of

---

[1] The parties have worked in good faith to prepare a mutually acceptable joint statement and met and conferred on its substance. The parties agree that no party will be prejudiced by the descriptions of claims, defenses, and arguments presented herein, and reserve all rights and arguments as to any statements herein. The parties were unable to agree on certain issues; in such instances, they separately set forth their respective positions and proposals. *Id.*

Joseph Shuster, and Jean Adele Peavy), and Toberoff Parties (Marc Toberoff, Pacific Pictures Corporation ("PPC"), IP Worldwide, LLC and IPW, LLC) (collectively, the "Heirs") submit that the *DC Comics* Case can be resolved within weeks. The First and Third Claims are on appeal, and the Second Claim is currently moot. The Heirs have moved for summary judgment on DC's remaining state-law claims, which would fully resolve this case. DC's Fourth and Fifth Claims are time-barred as the statute of limitations ran in 2008, and DC's Sixth Claim is moot and, in any event, pre-empted by the Copyright Act.

DC motion for an evidentiary hearing to impose drastic terminating sanctions on its Fifth Claim (not "Fourth through Sixth Claims" as DC now asserts) does not salvage its clearly time-barred claims. The Heirs opposed DC's motion as legally unsupportable, unprecedented, and contrary to clear Ninth Circuit authority. DC has had the few documents in question for months (in some cases a year), and has shown no prejudice to justify sanctions. Nor can such sanctions be imposed without due process and a full evidentiary hearing.

Nor has DC submitted any expert testimony or proven any damages.

The Siegel Superman and Siegel Superboy Cases will require a few months of further litigation. DC filed premature motions "for final judgment," despite the fact that the Ninth Circuit specifically did not remand the case for entry of judgment. The Ninth Circuit remanded for further adjudication of DC's contractual Third and Fourth Counterclaims, to which Larson has strong defenses under California contract law. Larson will show in her oppositions to DC's motions (due March 4, 2011), that there remain critical factual and legal issues regarding the October 19, 2001 letter that must be fully adjudicated, as with any contract claim.

## I.   THE *SIEGEL* SUPERMAN AND *SIEGEL* SUPERBOY CASES

### A.   Procedural History

1. Background. In 1997, plaintiff Laura Siegel Larson (and her now-deceased mother, Joanne Siegel) served DC with notices of termination under 17

U.S.C. § 304(c) seeking to recapture Jerome Siegel's copyright interests in certain works. DC disputed the notices, and the parties discussed settlement. The Ninth Circuit has held that an October 19, 2001, letter from the Siegels' lawyer, Kevin Marks, constituted an acceptance of a DC offer, thereby creating an agreement. *Larson v. Warner Bros. Entm't, Inc.*, 2012 WL 6822241, at *1 (9th Cir. Jan. 10, 2013). In 2002, the Siegels served an additional copyright termination notice seeking to recapture Siegel's copyright interests in certain Superboy works, which DC disputed.

In 2004, the Siegels, represented by their attorney Mr. Toberoff, filed two lawsuits—the *Siegel* Superman Case, and the *Siegel* Superboy Case—against the DC parties (DC Comics, Warner Bros. Entertainment Inc., Warner Communications Inc., Warner Bros. Television Production Inc., and Time Warner Inc.).

a. In the now-operative pleading in the *Siegel* <u>Superman</u> Case, Larson asserted four claims:

- Her First Claim sought a declaration that she recaptured, as of 1999, her father's alleged 50% interest in certain Superman copyrights pursuant to her 1997 termination notices, and that she continues to own that interest. Case No. CV-04-8400, DN 644 ¶¶ 52-55.
- Her Second Claim sought a declaration concerning her entitlement to profits from the allegedly recaptured copyrights. *Id.* ¶¶ 56-59.
- Her Third Claim sought a declaration that she recaptured her father's alleged 50% copyright interest in Superman's crest. *Id.* ¶¶ 60-64.
- Her Fourth Claim sought an accounting of DC's post-termination Superman profits. *Id.* ¶¶ 65-73.[2]

DC asserted six counterclaims in the *Siegel* Superman Case:

---

[2] Larson originally asserted, but then dismissed, additional claims for unfair competition under the Lanham Act and California law. DN 376.

JOINT STATUS REPORT RE:
SUPERMAN & SUPERBOY CASES
**ER 3767**

- Its First Counterclaim sought a declaration that Larson's Superman and Superboy termination notices are invalid, alleging, *inter alia*, that they were untimely and did not terminate all of Jerome Siegel's grants to DC.  Case No. CV-04-8400, DN 646 ¶¶ 66-89.
- Its Second Counterclaim alleged Larson's claims were time-barred.  *Id.* ¶¶ 90-96.
- Its Third Counterclaim alleged that Larson breached the October 19, 2001, agreement.  *Id.* ¶¶ 97-101.
- Its Fourth Counterclaim sought a declaration that, by the October 19, 2001, agreement, Larson "transferred or [is] contractually obligated to transfer to DC Comics" "any and all" of her Superman rights.  *Id.* ¶¶ 102-05.
- Its Fifth Counterclaim sought a declaration to limit the scope of Larson's recaptured copyrights (if any).  *Id.* ¶¶ 106-35.
- Its Sixth Counterclaim sought a declaration concerning accounting principles to apply if Larson's termination was valid.  *Id.* ¶¶ 136-39.

b. Larson asserted five claims in the *Siegel* <u>Superboy</u> Case:

- Her First Claim sought an injunction preventing DC from infringing the Superboy copyrights she claims to have recaptured in 2004 by her Superboy notice of termination, as well as damages and other injunctive relief.  Case No. CV-04-8776, DN 43 ¶¶ 61-75.
- Her Second Claim sought a declaration that, pursuant to her Superboy notice of termination, she owns 100% of her father's alleged Superboy copyrights identified in her notice; that the *Smallville* television series is derivative of Superboy; and that DC may not exploit new Superboy derivative works after the 2004 termination date.  *Id.* ¶¶ 76-79.
- Her Third Claim sought damages and an injunction under the Lanham Act to prevent DC from violating her alleged trademark rights in

JOINT STATUS REPORT RE:
SUPERMAN & SUPERBOY CASES

**ER 3768**

Superboy. *Id.* ¶¶ 80-92.

- Her Fourth Claim sought restitution and an injunction under California's unfair competition law requiring DC to credit Jerome Siegel as Superboy's alleged creator. *Id.* ¶¶ 93-102.

- Her Fifth Claim sought an injunction preventing DC from exploiting new Superboy derivative works after the 2004 termination date, and requiring DC to credit Jerome Siegel as Superboy's alleged creator. *Id.* ¶¶ 103-07.

DC asserted the same six counterclaims in the *Siegel* Superboy Case as it asserted in the *Siegel* Superman Case. DN 44.

2. Judge Larson's Summary Judgment Rulings. In March 2008, Judge Larson issued a partial summary judgment order in the *Siegel* Superman and Superboy Cases, holding that pursuant to the Siegels' notices of termination, they recaptured Jerome Siegel's 50% share of the first Superman story, published in *Action Comics No. 1*, but did not recapture rights in pre-*Action Comics No. 1* promotional announcements ("Ads"). Case No. CV-04-8400, DN 293. The Court rejected DC's Second, Third, and Fourth Counterclaims, ruling that Larson's claims were timely, and that the parties had not consummated a binding settlement agreement in October 2001. *Id.* at 57-59. In 2009, Judge Larson issued follow-up orders, in which he ruled that the Siegels had also recovered Jerome Siegel's 50% copyright share in the first two weeks of Superman newspaper strips, and in other early works, but further holding that the remaining Superman works were works-for-hire, *not* subject to termination. DN 560.

In a separate 2007 ruling in the *Siegel* Superboy case, Judge Larson ruled on a variety of the parties' respective arguments, but did not enter judgment in the case. Case No. 04-8776, DN 151 at 53-72; 9/17/07 Hr'g Tr. The parties dispute the impact of Judge Larson's rulings in the *Siegel* Superboy Case; their respective positions are set forth below in their respective case-management proposals.

JOINT STATUS REPORT RE:
SUPERMAN & SUPERBOY CASES
**ER 3769**

After Judge Larson resigned, these cases were reassigned to the Hon. Otis D. Wright II. Case No. CV-04-8400, DN 596; CV-04-08776, DN 180. Laura Siegel Larson filed a motion under Rule 54(b), seeking to appeal portions of Judge Larson's summary judgment rulings described above. Case No. CV-04-8400, DN 628. This Court denied Larson's initial motion, but ultimately granted her renewed Rule 54(b) motion in March 2011. DN 659.

In May 2011, the Court entered partial final judgment on Larson's First Claim ("Declaratory Relief re: Termination") and DC's First through Fourth Counterclaims (First: "Declaration that the Superman Notices and the Superboy Notice are Ineffective"; Second: "Declaration that Any Claim by the Siegels for Co-Ownership of Superman (Including its Derivative Superboy) is Barred by the Statute of Limitations"; Third: "Breach of Contract"; Fourth: "Declaratory Relief Regarding the Agreement"). DN 669. Both parties appealed this Rule 54(b) judgment. DN 671; DN 674. Larson's appeal focused on copyright work-for-hire issues. DC principally challenged Judge Larson's ruling that the parties failed to reached a binding settlement agreement in 2001. This Court stayed the *Siegel* Superman Case pending those appeals, DN 667, and there was little activity in the *Siegel* Superman and Superboy Cases while that appeal was pending.

## B. The Ninth Circuit's January 10, 2013 Ruling

On January 10, 2013, the Ninth Circuit reversed Judge Larson's March 2008, summary judgment order and "direct[ed] the district judge to reconsider DC's third and fourth [settlement-related] counterclaims in light of [its] holding that the October 19, 2001, letter created an agreement." *Larson*, 2012 WL 6822241, at *2. The parties dispute the impact of this ruling; their respective positions are set forth below in their respective case-management proposals.

## C. The Current State of Affairs

After the Ninth Circuit's ruling, DC filed a motion for summary judgment in the *Siegel* Superman and Superboy Cases on February 7, 2013. Case No. CV-04-

JOINT STATUS REPORT RE:
SUPERMAN & SUPERBOY CASES

**ER 3770**

8400, DN 702; Case No. CV-04-8776, DN 222. Larson's opposition is due March 4, 2013, and DC's reply is due March 11, 2013. Case No. CV-04-8400, DN 707 at 2. The Court vacated the hearing on these motions, and stated that "no appearances will be necessary unless otherwise ordered by the Court on a later date." *Id.*

**D.** **DC's Case-Management Proposal**

The Court asked the parties to address the impact of the Ninth Circuit's ruling on these cases. Here is DC's submission:

1. The Ruling. The Ninth Circuit ruled, "as a matter of law," that Marks' "October 19, 2001 letter created an agreement" between Larson and DC, in which the Siegels transferred any Superman and Superboy copyrights they may have recaptured to DC, in exchange for millions of dollars. *Larson*, 2012 WL 6822241, at *1. The Ninth Circuit noted that the "[t]he central issue" on DC's settlement-related appeal was "whether the parties reached a binding settlement agreement during their negotiations over the rights to Superman in 2001 and 2002." *Id.* at *1. The Ninth Circuit held that Judge Larson "failed to address whether the October 19, 2001, letter from [Marks to DC] constituted an acceptance of terms negotiated between the parties, and thus was sufficient to create a contract." *Id.* In answering that question, the court wrote, *id.*:

> We hold, as a matter of law, that the October 19, 2001 letter *did* constitute such an acceptance…. The October 19, 2001, letter itself plainly states that the heirs have "accepted D.C. Comics offer of October 16, 2001in respect of the 'Superman' and 'Spectre' properties. The terms are as follows…." What follows is five pages of terms outlining substantial compensation for the heirs in exchange for DC's continued right to produce Superman works. The letter ends with Larson's attorney thanking DC's attorney for his "help and patience in reaching this monumental accord." Further, although it is the objective, and not subjective, understandings of the parties that determine whether they reached an agreement, extrinsic evidence of the parties' actions may be used to determine whether the oral offer referred to in the letter had, in fact, been made. [Citation.] Statements from the attorneys for both parties establish that the parties had undertaken years of negotiations, that they had resolved the last outstanding point in the deal during a conversation on October 16,

2001, and that the letter accurately reflected the material terms they had orally agreed to on that day.

　　We reject Larson's arguments that either state or federal law precludes a finding that such a contract could have been created by the October 19, 2001, letter.  California law permits parties to bind themselves to a contract, even when they anticipate that "some material aspects of the deal [will] be papered later."  *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1038 (9th Cir. 2011); [citation].…  Nor is 17 U.S.C. § 204(a) a bar to the validity of any such contract; that statute expressly permits an agreement transferring ownership of a copyright to be signed by a "duly authorized agent" of the copyright owner, and Larson does not contest that the heirs' attorney was such an agent.

The Ninth Circuit "direct[ed] the district judge to reconsider DC's third and fourth [settlement-related] counterclaims in light of [its] holding that the October 19, 2001, letter created an agreement."  *Id.* at *2.  It noted:  "Because a judgment on those claims in DC's favor would appear to render moot all of the other questions in this lawsuit, we decline to address these other issues at this time."  *Id.*

　　2.  The Impact.  After over eight years of litigation, the *Siegel* Superman and Superboy Cases can and should now come to an end.  DC's Fourth Counterclaim, asserted in both cases, seeks a declaration that the parties' October 2001 settlement agreement is enforceable, and that DC owns all of the copyrights on which Larson sued.  *See* Case No. CV-04-8400, DN 702.  As DC demonstrated in its pending summary judgment motions, judgment can and should be entered in DC's favor on its Fourth Counterclaims based on the Ninth Circuit's recent ruling.  *Id.*

　　Granting DC judgment on its Fourth Counterclaim in each of the *Siegel* Superman Case and *Siegel* Superboy Cases renders DC's remaining counterclaims in the cases moot (meaning they should be dismissed without prejudice), and requires denial of Larson's claims (meaning they should be dismissed with prejudice).  *Id.*  Among other defects—and as will be addressed in DC's reply brief in support of its summary judgment motion (due March 11, 2013)—defendants' asserted contractual arguments to avoid such a judgment are without merit, contravene the Ninth Circuit's ruling, and were waived.

JOINT STATUS REPORT RE:
SUPERMAN & SUPERBOY CASES

**ER 3772**

After receiving full briefing on DC's pending summary judgment motions on March 11, the Court should enter the proposed final judgments DC submitted with its motions. DN 702-5; Case No. CV-04-8776, DN 222-5. These orders will end these Superman and Superboy Cases, save for DC's fees request, 17 U.S.C. § 505.[3]

### E. **Larson's** Case-Management Proposal

These cases are not over. The Ninth Circuit's ruling is decidedly limited. It holds only that the "October 19, 2001 letter created an agreement" between the Siegels and DC. *Larson*, 2012 WL 6822241, at *2. Nothing in the ruling purports to interpret the meaning of that agreement's terms, or to determine whether and to what extent it was and/or still is enforceable. And it certainly does not hold that the "Siegels transferred any Superman and Superboy copyrights they may have recaptured to DC," as DC argues above. Had the Ninth Circuit believed that its ruling was dispositive on this issue, it certainly would have indicated as such. Instead, it specifically remanded the case and "direct[ed] the district judge to reconsider DC's third and fourth counterclaims in light of [its] holding…." *Id.*

Now that the Ninth Circuit has held that the October 19, 2001 letter created a contract, it falls to this Court to adjudicate DC's claims based on that contract. As will be detailed more fully in Ms. Larson's opposition to DC's motion for summary judgment, there are a host of outstanding issues that preclude DC from the relief it seeks: DC has not and cannot meet the requirements for specific performance; DC failed to perform or to even tender performance by March 31, 2002, the date agreed upon in the October 19, 2001 letter; DC anticipatorily breached by instead demanding unacceptable new and revised terms as a condition to its performance;

---

[3] DC submits that because DC's pending motion will resolve the entirety of the Superman and Superboy Cases, the Court need not address the issues left open by Judge Larson's 2007 Superboy rulings. In any event, DC argues that Judge Larson rightly rejected Larson's copyright infringement claim in the Superboy Case, ruling that the Superboy script at issue in her 2002 copyright termination notice was a joint work between Jerome Siegel and Joseph Shuster. Case No. 04-8776, DN 151 at 53-72; 9/17/07 Hr'g Tr.

JOINT STATUS REPORT RE:
SUPERMAN & SUPERBOY CASES

**ER 3773**

accordingly, the Siegels rescinded the agreement, and DC abandoned the agreement.  Moreover, insofar as Superboy and the Superman promotional announcements are concerned, the October 19, 2001 letter could not have transferred any copyrights because the Copyright Act prevents the anticipatory transfer of terminated rights.  17 U.S.C. §§ 304(c)(5), 304(c)(6)(D).

DC's motion for summary judgment mischaracterizes the Ninth Circuit's ruling and ignores all of these outstanding contract issues in an attempt to push through a judgment.  Granting DC a premature judgment will only lead to problems on appeal and further delay a complete and final resolution of this case.  The Court should instead set a scheduling order for proper briefing and trial on any remaining issues of material fact this summer.

## II.    THE *DC COMICS* CASE

### A.    Procedural History

1.  DC's Claims.  DC filed this third case in May 2010, asserting six claims:

- Its First Claim sought a declaration that the Superman copyright termination notice served by the Estate of Joseph Shuster was invalid. DN 49 ¶¶ 105-34.

- Its Second Claim sought a declaration limiting the scope of rights the Shusters allegedly recaptured—assuming their termination notice was valid.  *Id.* ¶¶ 135-64.

- Its Third Claim sought a declaration that certain of defendants' agreements violated the Copyright Act.  *Id.* ¶¶ 165-72, 192.

- Its Fourth Claim alleged Toberoff and Pacific Pictures intentionally interfered with DC's business relationship and agreements with the Shusters.  *Id.* ¶¶ 175-79.

- Its Fifth Claim alleged Toberoff intentionally interfered with DC's relationships with the Siegels.  *Id.* ¶¶ 181-86.

- Its Sixth Claim sought a declaration that certain of defendants' agreements violated California unfair competition law. *Id.* ¶¶ 188-89.

2. Defendants' Rule 12 And Anti-SLAPP Motions. Defendants moved under Rule 12 to challenge DC's claims. DN 333; 334; 338; 342. They also filed a special motion to strike DC's state-law claims—its Fourth, Fifth, and Sixth Claims—pursuant to California's anti-SLAPP statute. DN 75; 145; 304; 312. The Court denied defendants' SLAPP motion in October 2011. DN 337. Defendants appealed, DN 339, and thereafter withdrew their Rule 12 motion, citing jurisdictional grounds, and answered DC's complaint. DN 343; 347-49. On January 10, 2013, the Ninth Circuit affirmed this Court's denial of defendants' anti-SLAPP motion. *See DC Comics v. Pacific Pictures Corp.*, 2013 WL 120807 (9th Cir. Jan. 10, 2013).

3. The Parties' Cross-Summary Judgment Motions On DC's Federal Claims. In July 2012, DC moved for summary judgment on its First and Third Claims, and defendants opposed and cross-moved for judgment on DC's First through Third Claims. In October 2012, the Court granted summary judgment in DC's favor on its First and Third Claims and deemed its Second Claim moot. DN 507. The Court granted defendants' Rule 54(b) motion, and in December 2012, the Court entered partial final judgment for DC on its First and Third Claims. DN 540. Defendants' appeal of this Rule 54(b) judgment is pending, and will be heard, on an expedited basis, by the same panel that heard the other two appeals in the *Siegel* Superman Case and *DC Comics* Case.

**B.      The Current State of Affairs**

The parties have three sets of substantive motions currently pending before the Court in *DC Comics*.

1. DC's Sanctions Motion. DC moved for an evidentiary hearing, terminating sanctions and various other relief based on defendants' alleged

- 11 -

discovery misconduct.  DN 500; 527; 573.  That motion is fully briefed, and the Court has taken the matter under submission.  DN 575.

2. Defendants' Summary Judgment Motion And DC's Cross-Motion. Defendants moved for summary judgment on DC's Fourth, Fifth, and Sixth Claims, arguing that DC's Fourth and Fifth Claims are barred by the statute of limitations, and that its Sixth Claim is moot, preempted by federal law and, in part, time-barred. DN 577.  DC opposed this motion, filed a Rule 56(d) affidavit in support of the same, and cross-moved for summary judgment on its Sixth Claim.  DN 588; 588-1. These motions will be fully briefed today, February 25, 2013, when defendants file their reply brief.  The Court has ruled that "the matter will be decided upon without oral argument."  DN 581.

3. DC's Motion for Attorneys' Fees.  DC moved to recover attorneys' fees from Mr. Toberoff and Pacific Pictures on its Third Claim.  That motion is fully briefed, DN 559; 576; 582, and the "matter stands submitted."  DN 580.[4]

**C.    DC's Case-Management Proposal**

After nearly three years of litigation, this *DC Comics* case can and should be fully and finally resolved within the next 60 to 90 days.

1. The Court can and should enter summary judgment for DC on its Sixth Claim.  *See* DN 588 at 18-22.  As shown in its pending motion, *id.*, DC seeks a declaration that Toberoff's web of rights-tying agreements with the Siegels and Shusters are void and unenforceable under California's unfair competition laws.  *Id.*

2. DC's Fourth through Sixth Claims can and should be resolved by DC's pending terminating sanctions motion, which seeks default judgment on all three of

---

[4] Also pending before the Court and Magistrate Judge Zarefsky are two discovery matters.  The first is defendants' motion for review of Judge Zarefsky's denial of their motion to compel, which will be fully briefed today, February 25. DN 569; 579.  The Court took the hearing on this motion off calendar.  DN 580. The second is DC's motion before Judge Zarefsky to compel further depositions of Mr. Toberoff, Mark Warren Peary, and Ms. Larson.  DN 584, 594.  That motion, which is fully briefed, is currently set for hearing on March 11, 2013.

JOINT STATUS REPORT RE:
SUPERMAN & SUPERBOY CASES

**ER 3776**

these claims, given defendants' egregious discovery misconduct.  DN 500; 527; 573; 588 at 2-4.  If the Court were to grant DC judgment on this basis, the *only* issue left to prove on Fourth and Fifth Claims is damages, which can be proved quickly and easily.  *E.g.*, DN 588 at 2-4 & n.1.  Defendants' characterization of DC's motion is inaccurate.

### E.    Defendants' Case-Management Proposal

DC's remaining state-law Fourth, Fifth and Sixth Claims are long time-barred or moot.  After nearly three years of litigation, the *DC Comics* case can and should be brought to a close in the next few weeks on Defendants' pending summary judgment motion.  *See* DN 577.

1.  As shown in Defendants' motion, DC's Fourth and Fifth Claims are long barred by the applicable two-year statute of limitations based on an undisputed record demonstrating that DC was on notice of its claims in 2006.  DC's Sixth Claim is moot because the Court already granted DC the requested relief on its Third Claim, and this claim is also preempted by the Copyright Act.

2.  DC's overblown discovery motion for an evidentiary hearing re: sanctions regarding DC's Fifth Claim (not its Fourth, Fifth and Sixth Claims, as DC pretends) does not save its state-law claims from Defendants' summary judgment motion.  Without legal precedent, and contrary to clear Ninth Circuit authority, DC unjustifiably seeks severe terminating sanctions based on (1) a handful of logging errors among thousands of entries, regarding four documents which were produced to DC many months ago; and (2) DC's misrepresentations that Michael Siegel's former counsel sent his files to Mr. Toberoff in 2006, when, as the evidence easily demonstrates, they did not send Mr. Siegels' files to Mr. Toberoff until 2011, and thereafter these documents were all promptly logged or produced.  DN 517 at 4-17.  DC has suffered no prejudice because it received the documents when these discovery issues were resolved, long before any substantive decision on DC's Fifth Claim – the sole claim to which the documents are even remotely relevant.

JOINT STATUS REPORT RE:
SUPERMAN & SUPERBOY CASES

If Defendants' summary judgment motion is granted, there would be no further issues to be decided by this Court, and a final judgment could be entered in this case.

Dated:     February 25, 2013          Respectfully Submitted,
                                       O'MELVENY & MYERS LLP

                                       By: /s/ Daniel M. Petrocelli
                                           Daniel M. Petrocelli

Dated:     February 25, 2013          Respectfully Submitted,
                                       TOBEROFF & ASSOCIATES, P.C.

                                       By: /s/ Marc Toberoff
                                           Marc Toberoff

<u>Attestation</u>

I hereby attest that the other signatories listed, on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:     February 25, 2013          O'MELVENY & MYERS LLP

                                       By: /s/ Daniel M. Petrocelli

Attorneys for Plaintiffs and counterdefendants:
TOBEROFF & ASSOCIATES, P.C.
Marc Toberoff (State Bar No. 188547)
Nicholas C. Williamson (State Bar No. 231124)
Keith G. Adams (State Bar No. 240497)
2049 Century Park East, Suite 2720
Los Angeles, California, 90067
Telephone:  (310) 246-3333
Fax:          (310) 246-3101

Attorneys for Defendants and counterclaimant:
WEISSMANN WOLFF BERGMAN
  COLEMAN GRODIN & EVALL LLP
Michael Bergman (SBN 37797)
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, California  90212
Telephone: (310) 858-7888
Fax:          (310) 550-7191

FROSS ZELNICK LEHRMAN & ZISSU, P.C.
Roger L. Zissu (Admitted pro hac vice)
James D. Weinberger (Admitted pro hac vice)
866 United Nations Plaza
New York, New York 10017
Telephone:  (212) 813-5900
Fax:          (212) 813-5901

PERKINS LAW OFFICE, P.C.
Patrick T. Perkins (Admitted pro hac vice)
1711 Route 9D
Cold Spring, New York  10516
Telephone:  (845) 265-2820
Fax:          (845) 265-2819

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JOANNE SIEGEL and LAURA SIEGEL LARSON,<br><br>    Plaintiffs,<br><br>    v.<br><br>TIME WARNER INC.; WARNER COMMUNICATIONS INC.; WARNER ENTERTAINMENT INC.; WARNER BR TELEVISION PRODUCTION INC.; DC COMICS; and DOES 1-10,<br><br>    Defendants.<br><br>AND RELATED COUNTER-CLAIMS | Case No. CV-04-8700 ODW (RZx)<br>Case No. CV-04-8776 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J<br><br>**JOINT STATUS REPORT** |

1    Plaintiffs Joanne Siegel and Laura Siegel Larson (collectively, "Plaintiffs") and

2 Defendants Time Warner Inc. ("Time-Warner"), Warner Communications Inc., Warner

3 Bros. Entertainment, Inc. ("Warner Bros."), Warner Bros. Television Production Inc., and

4 Defendant and Counterclaimant DC Comics ("DC") (collectively, "Defendants") hereby

5 submit this joint status report in Cases Nos. CV 04-8400 (the "Superman Action") and CV

6 04-8776 (the "Superboy Action"), as directed by the Court.[1]

7    Plaintiffs Joanne Siegel and Laura Siegel Larson are the widow and daughter,

8 respectively, of Jerome Siegel ("Siegel") who, with Joseph Shuster ("Shuster"), co-created

9 Superman.  Siegel and Shuster co-authored the first Superman comic book story which

10 was later published in 1938 by Detective Comics, Inc. ("Detective"), the predecessor of

11 defendant DC Comics, in a new publication entitled *Action Comics No. 1*.  By agreement

12 dated March 1, 1938, Siegel and Shuster granted to Detective all worldwide rights in their

13 Superman story and character, and Detective exploited those rights in various media over

14 the next seventy years.  During the period at issue, from 1938 to 1943, Siegel and Shuster

15 wrote, hundreds of additional Superman comic book stories published by Detective, and

16 hundreds of Superman newspaper strips syndicated by the McClure Newspaper Syndicate.

17    The 1976 Copyright Act, which became effective on January 1, 1978, provided

18 authors and their families with new rights to recapture the author's original copyright(s)

19 for the extended renewal term by noticing the termination of previous grants of copyright.

20 *See* 17 U.S.C. §§ 304(c), 304(d), 203(a).  Pursuant to 304(c) of the 1976 Act, Plaintiffs

21 served notices of termination with respect to  Superman and Superboy ("Termination

22 Notices" or "Terminations") on Defendants on April 3, 1997, and November 8, 2002,

23 respectively, and filed such notices with the U.S. Copyright Office, pertaining to Siegel's

24 alleged copyright interest in Superman and Superboy that had been the subject of certain

25 grants.  Pursuant to section 304(c), the Superman Termination Notices set forth an

26 ───────────────────

27 [1] The parties have worked in good faith to prepare a mutually acceptable joint statement and agree that neither party will be prejudiced by the descriptions of the claims, defenses, and arguments presented herein.

28

394090v1

1 | effective Termination date of April 16, 1999, and the Superboy Termination Notices set
2 | forth an effective Termination date of November 17, 2004.

3 | Defendants challenged the scope and effectiveness of Plaintiffs' Superman and
4 | Superboy Termination Notices. In response, Plaintiffs initiated, in October 2004, the
5 | Superman Action and the Superboy Action for declaratory relief as to the validity of the
6 | Superman and Superboy Terminations, respectively, and additional claims.

7 | Superman is considered a joint work under the Copyright Act because it was co-
8 | authored by Siegel and Shuster. As such, each co-author originally owned an undivided
9 | 50% interest in such joint work's copyright. Joint owners of a copyright each have the
10 | non-exclusive right to exploit such copyright subject to a duty to account to one another.
11 | The Superman Termination Notices related to Siegel's (but not his co-author Shuster's)
12 | 50% interest in the Superman copyrights. Therefore, because DC is currently still the
13 | successor of Shuster's joint copyright interest, the Superman Action is principally an
14 | action for an accounting of Plaintiffs' allocable share of profits from the exploitation of
15 | Plaintiffs' recaptured Siegel Superman copyrights after April 16, 1999, the noticed
16 | Superman Termination date.

17 | The Superboy Action, in contrast, is based on Siegel's alleged sole authorship of the
18 | original Superboy story, and is therefore principally a copyright infringement action, based
19 | on Defendants' alleged exploitation of the allegedly recaptured Superboy copyrights after
20 | November 17, 2004, the noticed Superboy Termination date.

21 | In the more than five years since Plaintiffs filed their actions, the Court has issued a
22 | number of wide-ranging opinions that have substantially refined and narrowed the issues
23 | presented. In the sections that follow, we set forth the procedural history of each case,
24 | describing the issues that have been determined along with the issues that remain pending.

25 | **I.  The Superman Action (Case No. CV 04-8400).**

26 | On April 3, 1997, Plaintiffs served seven notices of termination pursuant to 17
27 | U.S.C. § 304(c), all effective as of April 16, 1999, purporting to terminate Siegel's
28 | copyright grants to DC's predecessors in the Superman character and comic book series

394090v1

2

dating back to 1938.

Plaintiffs filed their initial Complaint in the Superman Action on October 4, 2004. The Complaint contained the following causes of action:

- Plaintiffs' First Cause of Action sought declaratory relief to affirm the validity of Plaintiffs' Superman Termination Notices pursuant to 17 U.S.C. § 304(c), and to declare that Plaintiffs, having recaptured Siegel's fifty percent share of the original Superman copyrights, were entitled to an accounting from Defendants for fifty percent of their profits from the continued exploitation of the recaptured Superman copyrights after April 16, 1999;

- Plaintiffs' Second Cause of Action sought declaratory relief as to the scope of Defendants' duty to account to Plaintiffs for post-April 16, 1999 profits from exploitation of Plaintiffs' recaptured Superman copyrights, including declarations: (a) that Defendants' duty to account extends to profits from foreign territories based on "predicate acts" in the United States; (b) that "apportionment" is applicable to copyright *infringement* claims actions and not to an accounting of profits between joint copyright owners; (c) that if apportionment is held to apply, its application should be limited to derivative Superman works created by the accounting Defendant(s), but not to passive Superman licensing by such accounting Defendant; (d) that profits should include profits from any derivative Superman works created, produced or manufactured on or after the effective Termination date; (e) that profits should not be limited to the Superman profits of Warner Bros.' wholly owned subsidiary, DC, but should include Superman profits of Warner Bros. and Time-Warner as well; and (f) that, in determining profits, deductible costs should be limited to those customarily deducted in arm's-length agreements and comply with Generally-Accepted Accounting Principles ("GAAP");

- Plaintiffs' Third Cause of Action sought a declaration that Defendants have a duty to account for post-April 16, 1999 exploitation of the Superman "crest" and/or Superman "shield" on the ground that they are copyrighted works derivative of the

394090v1

3

copyrighted Superman crest in *Action Comics No. 1*;

- Plaintiffs' Fourth Cause of Action sought an accounting from all Defendants for their respective exploitation of recaptured Superman copyrights after the effective Termination date;

- Plaintiffs' Fifth Cause of Action alleged a claim for waste of the recaptured Superman copyrights after the effective Termination date;

- Plaintiffs' Sixth Cause of Action alleged that Defendants violated the Lanham Act by falsely representing exclusive ownership of Superman after the noticed Termination date;[2]

- Plaintiffs' Seventh Cause of Action alleged that Defendants violated California Business and Professions Code §§ 17200 *et seq.* by omitting the Terminations from Time-Warner's public financial disclosures.

Defendants filed their initial Answer and Counterclaims in the Superman Action on November 22, 2004. Defendant DC Comics asserted the following counterclaims:

- DC's First Counterclaim requested declaratory relief that the Termination Notices are ineffective, alleging five independent reasons: (a) Plaintiffs did not send a notice of termination with respect to a May 21, 1948 Consent Agreement; (b) Plaintiff Joanne Siegel continued to accept benefits under a December 23, 1975 agreement, although she served a termination notice listing that agreement; (c) Plaintiffs' Superboy Notice was ineffective because it was based on works that were unpublished and therefore not subject to termination because they were neither in their first nor their second term of copyright as of January 1, 1978, as required by 17 U.S.C. § 304(c); (d) Siegel's Superboy proposal and story sent to DC's predecessor-in-interest were either prepared without the authorization of the copyright owner

---

[2] Plaintiffs did not include the Fifth and Sixth Causes of Action in their Second Amended Complaint, which was filed on October 8, 2008, with the Court's permission. Defendants filed their Answer to Plaintiffs' Second Amended Complaint on October 20, 2008.

1  and/or were "works made for hire," and therefore Siegel did not own any copyright
2  interest therein that would be subject to copyright termination; and (e) the Superman
3  Termination Notices were not timely served;

4  • DC's Second Counterclaim requested a declaration that the Siegels' claims are
5  barred by the statute of limitations;

6  • DC's Third and Fourth Counterclaims alleged that the parties had entered into a
7  settlement agreement that the Siegels had repudiated,

8  • DC's Fifth Counterclaim alleged on the basis of various limitations provided in
9  section 304(c) that the Court limit the scope and reach of the Superman and
10  Superboy notices in the following seven ways:  (a) Plaintiffs failed to terminate
11  certain Superman Ads published prior to the publication of *Action Comics No. 1*, so
12  that the copyrights therein are still exclusively owned by DC Comics; (b) DC
13  Comics retains the rights to exploit Superman "derivative works" prepared prior to
14  the effective dates of the Superman and Superboy Notices; (c) DC owns all
15  copyrights in post-*Action Comics No. 1* "derivative works," including new super
16  powers, villains, components to the Superman universe, or any other new Superman
17  elements contained therein; (d) Superboy is a "derivative work" based on Superman;
18  (e) Superboy is a joint work of authorship; (f) the television show "Smallville" is not
19  derived from the Siegel Superboy Submissions or any other Superboy work
20  exploited prior to May 21, 1948; and (g) certain "Additional Action Comics No. 1
21  Materials" were works made for hire;

22  • DC's Sixth Counterclaim sought a determination regarding the application of a
23  number of accounting principles in the event that the Superman Termination Notices
24  and/or Superboy Termination Notice were deemed valid and effective.

25

26  The parties subsequently entered into a stipulation permitting Plaintiffs to file their
27  First Amended Complaint and permitting Defendants to file their First Amended
28  Counterclaims, and the Court adopted the stipulation on October 18, 2005.

394090v1

5

1    Plaintiffs' First Amended Complaint largely tracked their initial complaint, except

2  for substantive amendments to Plaintiffs' sixth cause of action under the Lanham Act.

3    Defendants' First Amended Counterclaims contained additional allegations

4  concerning Defendants' alleged "settlement" defense. Defendants filed their Answer to

5  Plaintiffs' First Amended Complaint on November 1, 2005. Plaintiffs filed their Reply to

6  Defendants' First Amended Counterclaims on November 4, 2005.

7  **A.    The Parties' April 30, 2007 Partial Summary Judgment Motions.**

8    On April 30, 2007, the parties filed cross-motions for partial summary judgment in

9  the Superman Action. Plaintiffs sought partial summary judgment as follows:

10 •   That Defendants' Third and Fourth Alternative Counterclaims should be dismissed

11    because the parties failed to consummate a binding settlement agreement;

12 •   That the Superman Termination is valid as a matter of law with respect to at least

13    the original Superman story published in *Action Comics No. 1*, and that Plaintiffs

14    have thereby recaptured Siegel's co-authorship share of the copyrights therein;

15 •   That the defenses to the Terminations alleged in Defendants' First and Second

16    Alternative Counterclaims and parts of their Fifth Alternative Counterclaim lacked

17    merit because: (a) Siegel and Shuster's Superman story published in *Action Comics

18    No. 1* is not a "work made for hire" as it was independently created by them long

19    before their relationship with Detective; (b) that a May 21, 1948 consent judgment

20    need not have been listed in Plaintiffs' Termination Notices because it was not a

21    copyright grant and, in any event, is duplicative of the May 19, 1948 stipulation

22    listed in the Termination Notices; (c) that the December 23, 1975 agreement, was

23    not a copyright grant and, in any event, Plaintiff Joanne Siegel's acceptance of

24    certain pension benefits from Defendants did not reinstate any copyright grants; (d)

25    that the Superman Termination was timely served; and (e) that the Superman

26    Termination is not barred by the statute of limitations; and

27 •   That Plaintiffs are entitled to an accounting of all profits earned from Plaintiffs'

28    recaptured Superman copyrights in the United States and in foreign territories (to the

394090v1

1    extent such foreign profits are based on Defendants' predicate acts in the United

2    States).

3

4    Defendants sought partial summary judgment as follows:

5    • That Plaintiffs have no right under the Copyright Act to share in Defendants' profits

6        derived (a) from the foreign exploitation of any Superman work, including

7        "Superboy," or any other juvenile version of Superman, (b) from the exploitation of

8        the Superman family of trademarks, or (c) from the continued exploitation of any

9        Superman "derivative work," including "Superboy," or any other juvenile version of

10       Superman, created prior to the effective dates of Plaintiffs' Terminations;

11   • That as a result of Plaintiffs' alleged failure to terminate certain copyrighted works

12       as prescribed by the Copyright Act, Defendants remain free to use such

13       unterminated works and the elements contained therein without accounting to

14       Plaintiffs and without liability for copyright infringement; and

15   • That neither Warner Bros. nor Time-Warner is the "alter ego" of DC, and Plaintiffs

16       therefore are not entitled to reach any Superman-related profits of either of these

17       two Defendants.

18

19       The Court issued its ruling on the parties' partial summary judgment motions on

20   March 26, 2008.

21       The Court granted Plaintiffs' motion with respect to Defendants' work-for-hire

22   defense, concluding that "all the Superman material contained in <u>Action Comics</u>, Vol. 1, is

23   not a work-made-for-hire and therefore is subject to termination." *Siegel v. Warner Bros.*

24   *Ent. Inc.*, 542 F.Supp.2d 1098, 1130 (C.D. Cal. 2008) ("*Siegel II*"). The court also granted

25   Plaintiffs' motion in holding that Plaintiffs' omission of the 1948 consent judgment in the

26   Termination Notices did not diminish or invalidate the Notices. *Id.* at 1132. The Court

27   likewise granted Plaintiffs' motion that Joanne Siegel's continued acceptance of benefits

28   under the parties' 1975 agreement did not constitute a "grant" of copyrights under section

394090v1

7

1  304(c)(6)(D) and had no effect on Plaintiffs' Terminations. *Id.* at 1134. The Court also
2  granted Plaintiffs' motion in denying Defendants' statute of limitations defense, holding
3  that Plaintiffs' action was timely filed. *Id.* at 1136. The Court likewise granted Plaintiffs'
4  motion in denying Defendants' defense that the parties had allegedly entered into a
5  binding settlement agreement in 2001, ruling that "the parties' settlement negotiations did
6  not result in an enforceable agreement." *Id.* at 1139.

7      The Court granted Defendants' motion in ruling that certain "promotional
8  announcements," due to their earlier publication, fell outside the statutory time "window"
9  of Plaintiffs' Termination Notices. *Id.* at 1126. The Court defined the scope of the
10  elements in the Promotional Announcements. *Id.*

11      In addition, the Court granted Defendants' motion on the foreign profits issue and
12  denied Plaintiffs' motion, ruling that the "the termination notice is <u>not</u> effective as to …
13  defendants' exploitation of the work abroad," and that therefore Defendants "must account
14  to plaintiffs only for the profits from such domestic exploitation of the Superman
15  copyright." *Id.* at 1142. The Court also granted Defendants' motion that "plaintiffs cannot
16  share in defendants' profits 'purely attributable to [Superman] trademark rights,'" but
17  preserved the issue of Defendants' "accounting [for] the mixed use of trademark and
18  copyright." The Court also granted Defendants' motion that Plaintiffs' accounting "should
19  not include any profits attributable to the 'post-termination exploitation of [Superman]
20  derivative works prepared prior to termination,'" but preserved the issue as to the extent a
21  post-termination "alteration [of] pre-termination derivative works" creates a post-
22  termination derivative work for which Defendants must account. *Id.*

23      The Court denied Defendants' motion to dismiss Plaintiffs' "alter ego" claims,
24  holding that "whether the license fees paid [to DC Comics for the Superman rights]
25  represents the fair market value therefor, or whether the license for the works between the
26  entities was a 'sweetheart deal,' are questions of fact that are not answered on summary
27  judgment…." *Id.* at 1145.

28      Both parties moved for clarification and/or reconsideration of certain portions of the

394090v1

8

1  Court's March 26, 2008 Partial Summary Judgment Order.  Defendants' motion (Docket
2  Entry #307) requested that the Court reconsider its statement regarding the scope of
3  copyrightable material contained in the "promotional announcements."  Plaintiffs' motion
4  (Docket Entry # 300, 312) requested that the Court "(a) clarify that Defendants did not
5  secure any copyrightable Superman elements via the 'promotional announcements;'" and
6  (b) clarify that the promotional announcements did not detract from Plaintiffs' recaptured
7  Superman copyrights.  Plaintiffs also sought clarification that the Court's statements in the
8  background section of its order regarding the Superman elements it did not see in *Action*
9  *Comics No. 1* were *dicta*, on the ground that this literary issue had not been joined.

10      On July 3, 2008, the Court issued an order denying Defendants' motion.  In denying
11  Defendants' motion, the Court "affirm[ed] its conclusion on the scope of the copyrightable
12  material contained in those [promotional] announcements."  Order at 3-4.  The Court
13  denied Plaintiffs' motion, but without prejudice, stating that "[s]hould plaintiffs wish for
14  the Court to deal with the questions identified in their motion, they may append them to
15  those issues identified in the March 31, 2008 Order requiring further briefing."  Order at 4.
16  *See* Discussion of Additional Issues Briefing in Section I(B), *infra*.

17  **B.    Additional Issues Briefing.**

18      On February 21, 2008, a month before the Court issued its March 26, 2008 Partial
19  Summary Judgment Order, the parties filed a stipulation with the Court, requesting that it
20  accept briefing on and decide certain "Additional Issues" that would substantially impact
21  the nature, conduct and length of the trial, as well as the parties' pre-trial preparations.
22  The Additional Issues were:

23  •    If Plaintiffs are successful in their Superman copyright termination claim, is
24       Plaintiffs' share of post-termination profits as a joint owner of the recaptured
25       Superman copyright(s) subject to reduction via an "apportionment" analysis?
26  •    If Plaintiffs are successful in their Superman copyright termination claim, are the
27       following to be determined by the Court or by the jury:  (a) the amount of post-
28       termination Superman profits at issue and (b) the degree, if any, to which Plaintiffs'

394090v1

1    share of such profits should be reduced by "apportionment"?

2    •    If an "apportionment" analysis is held to be appropriate, is the trier of fact (be it the

3         Court or the jury) required to make a separate and independent apportionment

4         determination, if any, for each post-termination Superman work?

5    •    Do Plaintiffs or Defendants bear the burden of proof on (a) the issue of Defendants'

6         profits, and (b) the issue of the apportionment, if any, of those profits?

7    •    If Plaintiffs are successful in their Superman copyright termination claim, are

8         Plaintiffs only entitled to profits derived from Plaintiffs' recaptured copyright

9         interest in *Action Comics No. 1*; that is, was Jerome Siegel's contribution on all

10        *subsequent* Superman works (within the termination "window") as a "work-made-

11        for-hire" and accordingly not subject to termination?

12

13        In a March 31, 2008 Order, issued several days after the Court's Partial Summary

14   Judgment Order, the Court ordered the parties to engage in settlement mediation, and

15   stated that it would set a briefing schedule for the Additional Issues if the parties were

16   unable to reach a settlement.[3]  The Court also requested that the parties brief (along with

17   the Additional Issues) the following issues that had been left unresolved by the Court's

18   March 26, 2008 Partial Summary Judgment Order:

19   •    Whether and to what extent post-termination alterations to pre-termination

20        derivative works fall within the scope of what Plaintiffs regained through their

21        termination notices; and

22   •    Whether and to what extent mixed uses of trademarks and copyright fall within the

23        scope of what Plaintiffs regained through their termination notices.

24

25        Pursuant to the Court's July 3, 2008 Order regarding Plaintiffs' motion for

26   clarification, Plaintiffs also re-briefed the issues of (a) the scope of Defendants' rights

27

28   [3] The parties' mediation efforts are described in Section III below.

394090v1

10

**ER 3789**

1 based on the "promotional announcements," and (b) whether the Court's background

2 statements concerning the absence of certain Superman elements in *Action Comics No. 1*

3 were *dicta*.

4      The parties submitted their initial briefs on the Additional Issues on July 21, 2008

5 and their responsive briefs on July 28, 2008. The Court heard oral argument on September

6 16, 2008, during which the Court bifurcated the trial, with separate trials on (1) the alter

7 ego issues identified in the Court's March 26, 2008 Partial Summary Judgment Order, to

8 determine which Defendants were required to account to Plaintiffs for their Superman

9 profits; and (2) the ultimate accounting claim.

10      On October 6, 2008, the Court issued an Order denying Plaintiffs' request for a jury

11 trial on their "alter ego" and accounting claims. *Siegel v. Warner Bros. Entm't Inc.*, 581 F.

12 Supp. 2d 1067 (C.D. Cal. 2008).[4] The Court "reserve[d decision on the other Additional

13 Issues] until shortly before the time of [the accounting] trial." *Id.* at 1076.

14 **C.**    **Plaintiffs' Lanham (Trademark) Act and Waste Claims**

15      Trial on Plaintiffs' Lanham Act and waste claims was set for November 4, 2008.

16 On September 25, 2008, the parties submitted a stipulation seeking leave for Plaintiffs to

17 file their Second Amended Complaint, removing Plaintiffs' Lanham Act and waste claims.

18 On October 6, 2008, the Court held a status conference to address the parties' stipulation

19 and other trial scheduling issues. The Court then accepted the parties' stipulation, granting

20 Plaintiffs leave to file the Second Amended Complaint, which they did on October 8,

21 2008. Defendants filed their Answer to Plaintiffs' Second Amended Complaint on

22 October 20, 2008.

23      In the Court's October 6, 2008 Order on the jury issues, the Court bifurcated the

24 trial, with separate trials on: (1) the alter ego issues identified in the Court's March 26,

25     

26   

27   

---

[4] Plaintiffs had alternatively requested an advisory jury to the extent the Court engaged in an "apportionment" analysis. Plaintiffs contend that the Court did not decide Plaintiffs' request that it empanel an "advisory jury." Defendants contend that the Court rejected any claim for a jury in connection with the accounting trial and did not leave the question of an advisory jury for later decision.

28

394090v1

11

**ER 3790**

1  2008 partial summary judgment Order, which would determine which Defendants'

2  Superman profits would be subject to an accounting, and (2) the ultimate accounting

3  claims. The Court scheduled the alter ego trial for January 20, 2009 and the accounting

4  trial for March 16, 2009.

5  **D.    The "Alter-Ego Trial"**

6       In its March 26, 2008 Partial Summary Judgment Order, the Court found, with

7  respect to the close relationship between DC and Warner Bros., that "[t]his fact alone

8  raises a specter of a 'sweetheart deal' entered into by related entities in order to pay a less

9  than market value fee for licensing valuable copyrights." *Siegel II,* 542 F.Supp.2d at 1144.

10 Accordingly, the Court conducted the "alter-ego trial" from April 28, 2009 to May 13,

11 2009, and heard closing arguments on May 19, 2009. In its March 13, 2009 Final Pre-

12 Trial Conference Order, the Court stated:

> Given the nature and the characterization of the property in question, the trial shall determine whether the value of the various Superman option and assignment agreements between DC Comics and TWEC [Time Warner Entertainment Company, LP], Warner Bros. Entertainment's predecessor in interest, and the amounts paid to DC Comics by TWEC (and its successor Warner Bros. Entertainment) thereunder, reflect the fair market value of the nonexclusive rights that the Court has determined were transferred from DC Comics to TWEC (and its successor Warner Bros. Entertainment), and, if not, what accounting shall be required of Warner Bros. Entertainment to ensure an equitable result.

18 Final Pretrial Conference Order at 7-8.

19      After the parties finished their closing arguments on May 19, 2009, the Court

20 dismissed Time-Warner from the case pursuant to Rule 52(c) (Tr. at 1598:2 – 1598:3) and

21 held that there was insufficient evidence to establish that the consumer products agreement

22 or animation agreements at issue were not fair market agreements. (Tr. at 1598:4 –

23 1598:8).

24      The Court took the other issues under submission. On July 8, 2009, the Court issued

25 its findings of fact and conclusions of law concerning the "alter-ego trial." The court

26 found in favor of Defendants as of the time of trial with respect to each of the agreements

27 at issue, concluding that:

28 •     "there is insufficient evidence that the Superman film agreement between DC

394090v1

1    Comics and Warner Bros., whether judged by its direct economic terms or its

2    indirect ones, was consummated at below its fair market value." Order at 28; and

3    •   "the Court finds that there is no evidence introduced at trial that demonstrates that

4       the Smallville agreement was for less than fair market terms." *Id.*

5

6    However, the Court held that because the Defendants' Superman film agreement did

7    not contain a customary "reversion" clause in DC's favor, Plaintiffs could seek damages if

8    filming on a Superman sequel has not commenced by 2011:

9    •   "If, however, by 2011, no filming has commenced on a Superman sequel, plaintiffs

10       could bring an accounting action at that time to recoup the damages then realized for

11       the Superman film agreement's failure to contain a reversion clause." *Id.* at 29.

12

13  **E.**   **The August 12, 2009 Decision on "Work-For-Hire" Issues.**

14    On August 12, 2009, the Court issued an "Order Resolving Additional Issues." In

15    its Order, the Court ruled on the work-for-hire arguments presented in the parties'

16    Additional Issues briefing, and denying Plaintiffs' request for a jury trial on the work-for-

17    hire issue. At issue was whether the following works were "works-made-for-hire": (i) a

18    description of "future Superman exploits" written by Siegel; Superman comic strips

19    created by Siegel and artist Russell Keaton (the "Keaton Material"); *Action Comics Nos. 2-*

20    *61*; *Superman Nos. 1-6*; and Superman newspaper strips syndicated by the McClure

21    Newspaper Syndicate. In pertinent part, the Court ruled as follows:

22    •   The "future Superman exploits" paragraph written before the publication of *Action*

23       *Comics No. 1* could not be terminated because it was too generalized to achieve

24       copyright protection. *Siegel v. Warner Bros. Entertainment, Inc.*, 2009 U.S. Dist.

25       LEXIS 78193 at *58-*61 (C.D. Cal. Aug. 9, 2009) ("Siegel III");

26    •   The "Keaton Material" was unpublished and therefore could not be terminated,

27       because it did not "acquire[] statutory copyright protection under the 1909 Act, as it

28       was either never published with the requisite notice or registered as an unpublished

394090v1

1    work." *Id.* at *61;

2    • The Superman material "appearing in <u>Action Comics</u> No. 4 is based almost

3        verbatim on Siegel's pre-1938 script, . . . the Superman material appearing therein

4        was not a work for hire and is subject to termination" and recaptured by Plaintiffs.

5        *Id.* at *66-*67;

6    • <u>Superman</u> No. 1, pages three through six, was not a work made for hire and was

7        thus subject to termination and recaptured by Plaintiffs. *Id.* at *69-*70;

8    • "[T]he Superman material in <u>Action Comics</u> Nos. 2-3 and 5-6 . . . were works made

9        for hire." *Id.* at *78-*79;

10    • "[T]he Superman materials created by Siegel and Shuster during the term of their

11        employment agreement (namely, <u>Action Comics</u> Nos. 7-61, and to <u>Superman</u> Nos.

12        1-23) were works made for hire." *Id.* at *86-*87;

13    • "[T]he two weeks' worth of newspaper comic strip material created by Siegel and

14        Shuster during the spring of 1938, <u>before</u> the execution of the syndication agreement

15        were <u>not</u> works made for hire" and therefore were subject to termination and

16        recaptured by Plaintiffs. *Id.* at *129;

17    • The failure to list the two weeks of newspaper strips in the termination notices "was

18        'harmless error' that does not affect the validity of termination notice" regarding

19        these newspaper strips; and

20    • "[T]he newspaper strips created by Siegel and Shuster after September 22, 1938,

21        were works made for hire, [and] the right to terminate does not reach the grant to

22        those works." *Id.* at *119.

23        As a result of these various rulings, Plaintiffs have recaptured Jerome Siegel's co-

24    authorship interests in,  and co-own with Defendant DC, the copyrights to the following

25    works:  the first Superman story as published in *Action Comics No. 1*, *Action Comics No.*

26    *4*, *Superman No. 1* (pages three through six), and the first two weeks of the Superman

27    newspaper strips.  The Court declined to address the remaining Additional Issues that have

28    been pending before the Court since the parties briefed them in July of 2008, reserving

394090v1

ER 3793

1  decision on those issues to a later date in advance of the accounting trial. *Id.* at *165, n.

2  27.    Defendants filed a motion on October 2, 2009, seeking reconsideration of the

3  Court's ruling that the omission of the first two weeks of the Superman newspaper strips

4  from the Termination Notices was "harmless error."  Plaintiffs filed a motion on October

5  3, 2009, requesting reconsideration of the Court's ruling that the McClure newspaper strips

6  created by Siegel and Shuster after September 22, 1938 were works made for hire.  In an

7  opinion dated October 30, 2009, the Court denied both parties' motions.

8  **F.    Discovery Matters Impacting the Accounting Trial.**

9      The discovery cut-off in these actions was November 16, 2006.  After that discovery

10  cutoff, the Court decided several discovery motions, and ordered on August 13, 2007 an

11  audit of Defendants.  In addition, the parties entered into a stipulation on June 9, 2008 in

12  which they agreed  to supplement production in advance of trial, and Defendants agreed to

13  supplement their financial production at the end of each financial quarter.  Defendants last

14  supplemented their financial information on June 1, 2009.

15      On October 1, 2009, the Court adopted a stipulation by the parties which granted

16  Plaintiffs leave to replace their former expert Mark Halloran.  The stipulation also granted

17  Defendants leave to appoint a new rebuttal expert and if necessary provide limited

18  supplemental rebuttal reports from previously designated experts.

19      The parties' accounting experts will also need to prepare supplemental reports

20  updating their prior analysis of DC's profits as of June 30, 2007, based on the most recent

21  financial data available.

22  **G.    Current Status of the Superman Action.**

23      The Court will need to schedule the trial and corresponding pretrial deadlines for the

24  accounting action.  As established in the alter-ego trial, the accounting action will concern

25  Defendant DC's profits from the exploitation of those Superman copyrights that the Court

26  has held were recaptured by Plaintiffs' Terminations and are co-owned by DC and

27  Plaintiffs (namely, the first Superman story published in *Action Comics No. 1, Action*

28  *Comics No. 4, Superman No. 1* (pages three through six), and the first two weeks of the

394090v1

1  Superman newspaper strips).

2       Both parties respectfully request, however, that the Court determine the remaining

3  undecided Additional Issues which the parties briefed in 2008. Because such Additional

4  Issues define the contours of the pending accounting trial, the parties cannot properly

5  prepare for trial prior to a determination of the Additional Issues. The Additional Issues

6  are not *in limine* motions and have far too large an impact on the trial to be decided like *in*

7  *limine* motions, only days before trial. These remaining Additional Issues include:

8  •    The impact, if any, that Defendants' pre-*Action Comics No. 1* "promotional

9       announcements" have on the scope of Plaintiffs' recaptured copyrights;

10 •    Whether principles of apportionment should be applied to the calculation of

11      Plaintiffs' share of the profits from the recaptured copyrights;

12 •    Whether the apportionment analysis, if applicable, should be on a work-by-work

13      basis or pursuant to a general "template," or whether there should be an alternative

14      method of apportionment;

15 •    Who bears the burden of proof on what issues;

16 •    How broad or narrow is the scope of the mixed use – copyright/trademark –

17      products and merchandise as to which an accounting is required (*e.g.*, t-shirts with

18      both Superman trademarks and copyrightable imagery);

19 •    How much or how little is needed to transform the post-termination sale of a pre-

20      termination "derivative work" into a post-termination "derivative work" so as to

21      require an accounting (*e.g.*, DVD boxed sets of pre-1999 Superman films); and

22 •    Whether the Court's background statements in its March 26, 2008 Partial Summary

23      Judgment Order concerning the literary elements in *Action Comics No. 1* are *dicta*.

24

25      The Court's decision on these remaining Additional Issues will materially impact

26 the parties' pretrial preparations and the accounting trial itself. Without guidance from the

27 Court on these Additional Issues, well in advance of the deadlines set by the Court for the

28 parties' pretrial submissions, the parties' pretrial submissions will likely be unnecessarily

394090v1

1 | duplicative and not conform to the standards the Court ultimately adopts to govern the
2 | trial.

3 | **II.    The Superboy Action (Case No. CV 04-8776).**

4 |         On November 2, 2002, Plaintiffs served a separate notice of termination under 17
5 | U.S.C. § 304(c), as of November 17, 2004, regarding Siegel's copyright grants of the
6 | Superboy character to DC's predecessors.

7 |         Plaintiffs filed their initial Complaint in the Superboy Action on October 22, 2004.
8 | The Complaint contained the following causes of action:

9 | • Plaintiffs' First Cause of Action sought declaratory relief confirming the validity of
10 |         Plaintiffs' Superboy Termination Notice pursuant to 17 U.S.C. § 304(c).  Unlike the
11 |         Superman Action, where Plaintiffs acknowledged that Siegel co-authored Superman
12 |         and that Plaintiffs therefore co-own recaptured Superman copyrights, Plaintiffs
13 |         alleged that Siegel solely authored the first Superboy story and that therefore
14 |         Plaintiffs solely own recaptured Superboy copyrights.

15 | • Plaintiffs' Second Cause of Action alleged that Defendants violated the Lanham Act
16 |         by falsely representing that they are the exclusive owners of Superboy.

17 | • Plaintiffs' Third Cause of Action alleged that Defendants violated California
18 |         Business and Professions Code §§ 17200 *et seq.* by omitting mention of the
19 |         Superboy Termination from Time-Warner's public financial disclosures.

20 | • Plaintiffs' Fourth Cause of Action sought injunctive relief preventing Defendants
21 |         from exploiting derivative post-termination Superboy works.

22 |         Defendants filed their initial Answer and Counterclaims on November 22, 2004.
23 | The Counterclaims asserted therein mirrored those included in Defendants' Counterclaims
24 | filed in the Superman case. *See* Section I, *supra.*

25 |         Plaintiffs filed their First Supplemental Complaint on April 19, 2005.  The principal
26 | change from their initial Complaint was the inclusion of a First Cause of Action for
27 | Defendants' alleged copyright infringement after November 17, 2004, the effective date of
28 | the Superboy Termination.  Plaintiffs alleged that any Superboy works (*e.g.*, the *Smallville*

394090v1

17

**ER 3796**

television series) released by Defendants after the effective Termination date would infringe Plaintiffs' recaptured original Superboy copyright. Defendants filed their Answer to Plaintiffs' First Supplemental Complaint on September 7, 2005.

On October 18, 2005, the Court adopted the parties' stipulation permitting Plaintiffs to file their First Amended Supplemental Complaint, and Defendants to file their First Amended Counterclaims. Defendants filed their Answer to the First Amended Supplemental Complaint on November 1, 2005, and Plaintiffs filed their Reply to Defendants' First Amended Counterclaims on November 4, 2005.

## A. February 15, 2006 Cross-Motions for Summary Judgment.

On February 15, 2006, the parties filed cross-motions for summary judgment. Plaintiffs moved for partial summary judgment, requesting a ruling that their statutory Termination was valid and effective under 17 U.S.C. §304(c), arguing:

- That Jerry Siegel alone created Superboy as embodied in a November 30, 1938 "pitch" letter from Mr. Siegel to DC's predecessor, Detective, and a thirteen-page typed "Superboy" script Mr. Siegel submitted to Detective in December, 1940 (the "Siegel Superboy Materials").

- That the judicial findings in a prior 1947 action between the parties' predecessors in the Supreme Court of the State of New York are binding on Defendants under the doctrines of *res judicata* and collateral estoppel.

- That the 1947 action held that "Siegel is the originator and sole owner of the comic strip feature Superboy."

- That the preclusive effect of the findings and conclusions in the 1947 action was explicitly confirmed by the Second Circuit Court of Appeals in *Jerome Siegel, et al. v. National Periodical Publications*, et al., 509 F.2d 909, 912-913 (2nd Cir. 1974).

- That Plaintiffs' Superboy Notices of Termination complied with the requirements set forth in 17 U.S.C. § 304(c).

- That Plaintiffs' Superboy Notices of Termination were not required to list the 1948 Consent Judgment from the 1947 action, as the Consent Judgment was not a grant

394090v1

18

1    and as Plaintiffs listed the duplicative 1948 Stipulation between the parties; and

2  • That the Superboy materials created by Siegel were not "works-for-hire."

3

4    Defendants cross-moved for summary judgment, arguing:

5  • That because Superboy is derivative of Superman, Plaintiffs should not be permitted
6    to proceed in a separate Superboy action;

7  • That because the Siegel Superboy Materials were never published or registered as an
8    unpublished work, there was no "copyright subsisting in either its first or renewal
9    term on January 1, 1978," and the "Superboy works" were therefore not eligible for
10    termination under 17 U.S.C. § 304(c);

11  • That the Siegel Superboy Materials were not eligible for termination because they
12    were "works for hire;"

13  • That the Siegel Superboy Materials were joint works of Siegel and Shuster, so that if
14    otherwise terminable, Plaintiffs could only recapture a one-half share to the
15    copyrights in such works;

16  • That Plaintiffs failed to terminate the grant in the May 21, 1948 Final Consent
17    Agreement; and

18  • Plaintiffs' claim that the *Smallville* television series infringes the copyright in the
19    Siegel Superboy Materials should be dismissed because Plaintiffs cannot meet the
20    test for establishing infringement.

21

22    Judge Lew, who presided over the Superboy Action at that time, issued a decision
23  on the parties' cross-motions on March 24, 2006, granting Plaintiffs' motion for partial
24  summary judgment and denying Defendants' motion for summary judgment.

25    One of the principal disputes briefed by the parties and addressed in Judge Lew's
26  ruling was whether the 1948 findings of fact and conclusions of law issued in support of an
27  interlocutory ruling in the 1947 state court action had preclusive effect in the Superboy
28  litigation. Judge Lew concluded that the 1948 findings of fact and conclusions of law have

394090v1

1  preclusive effect:

2  > "Having relied on [the 1947 action's] findings for previous favorable determinations
   > regarding Superman, Defendants now take the inconsistent position that this Court is
3  > not bound by the state court findings, as they relate to Superboy…Contrary to
   > Defendants' assertions now, both the Southern District of New York and Second
4  > Circuit looked directly to, even citing to, Judge Young's findings of fact. This Court
   > holds that it is consistent to continue this position and will look to Judge Young's as
5  > binding where relevant."

6  *See* March 24, 2006 Order at 7:4-7; 7:14-19.

7      Judge Lew also held that "no genuine issue of material fact exists regarding the

8  effectiveness of [Plaintiffs'] termination of the Superboy copyrights." *Id.* at 12:8-11.

9  Judge Lew also denied Defendants' motion that Defendants' *Smallville* television series

10 does not infringe Plaintiffs' recaptured copyrights in the Siegel Superboy Material,

11 preserving this issue for trial. *Id.* at 15:8-16:26.

12      Defendants filed a certification motion pursuant to 28 U.S.C. § 1292(b) on April 17,

13 2006, requesting that Judge Lew certify the matter for appeal. Judge Lew denied the

14 certification request in an order dated May 22, 2006.

15      Judge Lew thereafter took senior status and these actions were reassigned to Judge

16 Larson on October 26, 2006. On January 12, 2007, Defendants filed a motion for

17 reconsideration, requesting that Judge Larson reconsider Judge Lew's holding that "Judge

18 Young's findings of fact [in the 1948 Westchester Action between the parties'

19 predecessors] have preclusive res judicata and collateral estoppel effect on this Court."

20 Defendants requested in the alternative that Judge Larson reconsider Judge Lew's denial of

21 Defendants' April 17, 2006 certification motion.

22      Judge Larson granted Defendants' reconsideration motion in an order dated July 27,

23 2007. In that ruling, Judge Larson concluded that the referee's findings in the Westchester

24 Action should have preclusive effect, but as a matter of collateral estoppel, not judicial

25 estoppel. However, Judge Larson ruled that "contrary to the March 24, 2006 Order, those

26 findings are not necessarily determinative of all the issues." *Siegel v. Time Warner Inc.*,

27 496 F. Supp. 2d 1111, 1131 (C.D. Cal. 2007) ("*Siegel I*"). Judge Larson summarized his

28 rulings as follows:

394090v1

1   Based on the referee's findings, the Court has determined that Siegel's Superboy
    submissions were not a work made for hire, but the Court is unable to conclude
2   whether the requisite 'publication' of the Superboy submissions occurred due to
    the unresolved matter regarding the submissions' derivative nature. Similarly, the
3   Court was unable to conclude whether the Superboy submissions were part of a
    joint work, but only because the issue of whether the submissions are a derivative
    work remains unresolved (and a subject of further court-ordered briefing).
4

5   *Id.* at 1155.

6           Judge Larson therefore requested supplemental briefing by the parties on the issue

7   of "the derivative nature, if any, of Siegel's Superboy submissions, bearing in mind the

8   legal principles set forth in *Nichols* [*v. Universal Pictures Corp.*, 45 F.2d 119 (2d Cir.

9   1930)] as expounded in [*Detective Comics, Inc. v.*] *Bruns Publications*[*, Inc.*, 111 F.2d 432

10  (2d Cir. 1940)], *Warner Bros.* [*v. Am. Broad. Cos.*, 720 F.2d 231 (2d Cir. 1983)], and

11  *Sapon* [*v. DC Comics*, 62 U.S.P.Q.2d 1691 (S.D.N.Y. 2002)]." *Id.* The parties submitted

12  their supplemental briefing on September 10, 2007, but Judge Larson did not issue a ruling

13  on the matter.

14  **B.    The Parties' April 30, 2007 Partial Summary Judgment Motions**

15          Between the time Defendants moved for reconsideration of Judge Lew's March 24,

16  2006 Order and the time Judge Larson issued his July 27, 2007 decision granting

17  reconsideration, the parties filed partial summary judgment motions in both cases on April

18  30, 2007. Defendants sought partial summary judgment in the Superboy Action (some of

19  which overlaps with their motions in the Superman Action) on the follow grounds:

20  •   That Plaintiffs have no right under the Copyright Act to share in Defendants' profits

21      derived (a) from the foreign exploitation of any Superboy work, including

22      "Superboy" or any other juvenile version of Superman, (b) from the exploitation of

23      the Superman family of trademarks, or (c) from the continued exploitation of any

24      Superman "derivative work," including "Superboy," or any other juvenile version of

25      Superman, created prior to the effective dates of Plaintiffs' Terminations;

26  •   That as a result of Plaintiffs' alleged failure to terminate certain copyrighted works

27      as prescribed by the Copyright Act, Defendants remain free to use such

28      unterminated works and the elements contained therein without accounting to

394090v1

1     Plaintiffs and without liability for copyright infringement; and

2 •   That the episodes of the television series *Smallville* prepared on or after November

3     17, 2004 are not "substantially similar" to, and therefore do not infringe upon, any

4     of the Superboy copyrights recaptured by Plaintiffs pursuant to their Termination

5     Notices.

6     Plaintiffs cross-moved for partial summary judgment on the following grounds:

7 •   That Plaintiffs are entitled to an accounting of all profits earned from Plaintiffs'

8     recaptured Superboy copyrights, both in the United States and in foreign territories,

9     to the extent that such foreign profits flow from Defendants' exploitation of such

10     copyrights within the United States.

11

12     As discussed in detail in Section I(A) above, the Court issued its ruling on the

13 parties' Superman partial summary judgment motions on March 26, 2008. In addition, the

14 Court issued a separate order related to the Superboy Action on March 31, 2008, in which

15 the Court denied the parties' motions for partial summary judgment in the Superboy

16 Action as moot:

17      As the Court stated during the September 17, 2007 hearing on the parties' cross
     motions for partial summary judgment in these cases, the issues raised by the parties

18      in the Superboy action . . ., in light of the Court's earlier ruling on July 27, 2007,
     and with a forthcoming ruling in the companion Superman action . . ., would be

19      rendered moot.

20 Order at 1.

21     The Court further stated:

22      "[T]he Court reserves issuing an order on the remaining issues brought up in the
     Court's July 27, 2007 Order in the Superboy case (and to which the parties have

23      provided both supplemental briefing and oral argument), and setting the pre-trial and
     trial-dates in the Superboy matter, if needed, until after the conclusion of the trial in

24      the Superman case."

25 Order at 2.

26 **C.   Current Status of the Superboy Action.**

27     Plaintiffs' position is that the Court never issued a final ruling that the Siegel

28 Superboy Materials were a "joint work." Defendants' position is that the Court ruled that

394090v1

1  the Siegel Superboy Materials were a "joint work" if and to the extent that they were

2  copyrightable at all. In addition, given the Court's July 27, 2007 ruling along with its

3  March 31, 2008 ruling, the parties agree that the Court still needs to make determinations

4  on: (1) the extent of the original copyrightable material in Siegel's Superboy Materials, if

5  any; and (2) whether the original material, if any, from the Superboy Materials was

6  published in a work allegedly subject to recapture pursuant to the Superboy Termination

7  Notices.

8       Although Judge Larson suggested in his March 31, 2008 Order that he would wait to

9  resolve these issues until after the conclusion of the accounting trial in the Superman

10  action, the parties submit that they should properly be decided in advance of the Superman

11  accounting trial so that the parties can also account in the Superman Action for Siegel's

12  Superboy Materials, if such is held to be appropriate.

13  **III.    The Parties' Mediation Efforts.**

14       The parties have engaged in two settlement mediations before the Hon. Daniel

15  Weinstein (Ret.), the first in May-June 2008, and the second in September 2009. On

16  November 11, 2009, the parties each submitted a status report to the mediator pursuant to

17  the mediator's directive. Despite the parties' mediation efforts, to date they have not

18  settled these cases.

19

20

21

22

23

24

25

26

27

28

394090v1

ER 3802

1  Respectfully submitted,

2

3  DATED: December 21, 2009      WEISSMANN WOLFF BERGMAN
                                COLEMAN GRODIN & EVALL LLP

4                                      -and-

5                                FROSS ZELNICK LEHRMAN & ZISSU, P.C.

6                                      -and-

7                                PERKINS LAW OFFICE, P.C.

8

9

10

11  By: _____

12  Michael Bergman
    Attorneys for Defendants and counterclaimant

13  DATED: December 21, 2009      TOBEROFF & ASSOCIATES, P.C.

14

15

16

17  By: _____

18  Marc Toberoff
    Attorneys for Plaintiffs/Counterclaim-Defendants

19

20

21

22

23

24

25

26

27

28

394090v1

1  FROSS ZELNICK LEHRMAN & ZISSU, P.C.
   Roger L. Zissu (Admitted *pro hac vice*)
2  866 United Nations Plaza
   New York, New York  10017
3  Telephone:  212-813-5900
   Fax:          212-813-5901
4
   PERKINS LAW OFFICE, P.C.
5  Patrick T. Perkins (Admitted *pro hac vice*)
   1711 Route 9D
6  Cold Spring, NY  10516
   Telephone:  845-265-2820
7  Fax:          845-265-2819

8  WEISSMANN WOLFF BERGMAN
     COLEMAN GRODIN & EVALL LLP
9  Michael Bergman (SBN 37797)
   Anjani Mandavia (SBN 94092)
10 9665 Wilshire Boulevard, Ninth Floor
   Beverly Hills, California  90212
11 Telephone:  310-858-7888
   Fax:          310-550-7191
12
   Attorneys for Defendants and Counterclaimant
13
                 UNITED STATES DISTRICT COURT
14
        CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION
15

16 JOANNE SIEGEL and LAURA          ) Case No. CV 04-08776 SGL (RZx)
   SIEGEL LARSON,                    ) Hon. Stephen G. Larson
17                                   )
              Plaintiffs,            )
18                                   ) DEFENDANTS' NOTICE OF
        vs.                          ) MOTION AND MOTION FOR
19                                   ) RECONSIDERATION;
   TIME WARNER INC., WARNER          ) MEMORANDUM OF POINTS
20 COMMUNICATIONS INC., WARNER       ) AND AUTHORITIES; EXHIBITS
   BROS. ENTERTAINMENT INC.,         ) IN SUPPORT THEREOF
21 WARNER BROS. TELEVISION           )
   PRODUCTION INC., DC COMICS,       ) [DEFENDANTS' APPENDIX OF
22 and DOES 1-10,                    ) DOCUMENTS SUBMITTED
                                     ) CONCURRENTLY HEREWITH]
23            Defendants.            )
                                     ) [APPENDIX OF RELEVANT NEW
24                                   ) YORK CASES SUBMITTED
                                     ) CONCURRENTLY HEREWITH]
25                                   )
                                     ) Date:   February 5, 2007
26                                   ) Time:   10:00 a.m.
                                     ) Place:  Courtroom 1
27 ──────────────────────────────    )
   AND RELATED COUNTERCLAIMS.        )
28                                   )

                                                    **ER 3804**

326974v6 02231.0811        DEFENDANTS' MOTION FOR RECONSIDERATION

1  is not permitted, and the Order is reversed *after* trial, the parties and the Court

2  would be required to revisit and retry these issues, resulting in substantial delay

3  and waste of public and private resources in what is likely to be a lengthy trial

4  before a jury. *See FDIC v. Anders*, 1991 U.S. Dist. LEXIS 20411, *11 (E.D. Cal.

5  1991) ("If the circuit court reverses after trial, a retrial will be required; that

6  would delay the case longer than if the interlocutory appeal were decided prior to

7  trial, even if the trial is postponed to await the resolution of the appeal.")

8          Under these circumstances, immediate appeal of the Order would

9  materially advance the termination of the litigation, by allowing the Ninth Circuit

10  to determine the focused issue of the preclusive effect of the Interlocutory

11  Findings, thus providing guidance and a framework for the remainder of the

12  proceedings in these related actions. Accordingly, the Court's prior denial of

13  Defendants' Motion for Certification should be reconsidered, and the Order

14  should be certified for interlocutory appeal.

15  **VII.  <u>CONCLUSION</u>**

16          For the foregoing reasons, Defendants respectfully request that this Court

17  reconsider and vacate the Order granting Plaintiffs' motion for partial summary

18  judgment. In the alternative, Defendants respectfully request that the Court

19  reconsider the prior denial of their Motion for Certification, and certify the Order

20  for immediate appeal.

21                              Respectfully submitted,

22  DATED:  January 12, 2007      WEISSMANN WOLFF BERGMAN
                                  COLEMAN GRODIN & EVALL LLP
23

24

25                              By: _____

26                                  Michael Bergman
                                    *Attorneys for Defendants and Counterclaimant*
27

28

1 | FROSS ZELNICK LEHRMAN & ZISSU, P.C.
Roger L. Zissu (Admitted *pro hac vice*)
2 | James D. Weinberger (Admitted *pro hac vice*)
Justin Deabler (Admitted *pro hac vice*)
3 | 866 United Nations Plaza
New York, New York 10017
4 | Telephone: (212) 813-5900
Fax: (212) 813-5901
5
PERKINS LAW OFFICE, P.C.
6 | Patrick T. Perkins (Admitted *pro hac vice*)
1711 Route 9D
7 | Cold Spring, New York 10516
Telephone: (845) 265-2820
8 | Fax: (845) 265-2819

9 | WEISSMANN WOLFF BERGMAN
 COLEMAN GRODIN & EVALL LLP
10 | Michael Bergman (SBN 37797)
David L. Burg (SBN 130403)
11 | Adam Hagen (SBN 218021)
9665 Wilshire Boulevard, Ninth Floor
12 | Beverly Hills, California 90212
Telephone: (310) 858-7888
13 | Fax: (310) 550-7191

14 | Attorneys for Defendants and Counterclaimant

15 | **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
16

| 17 | JOANNE SIEGEL and LAURA SIEGEL LARSON. | Case No. CV 04-8776 (RSWL) (RZx) |
| 18 | | **MEMORANDUM OF POINTS AND** |
| 19 | Plaintiffs, vs. | **AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| 20 | TIME WARNER INC., WARNER COMMUNICATIONS INC., WARNER | |
| 21 | BROS. ENTERTAINMENT INC., WARNER BROS. TELEVISION | Date: March 20, 2006 |
| 22 | PRODUCTION INC., DC COMICS, and DOES 1-10, | Time: 9:00 a.m. Courtroom: 21 – 5th Floor |
| 2 | | Judge Ronald S.W. Lew |
| 24 | Defendants. | |
| 25 | AND RELATED COUNTERCLAIM | |
| 26 | | |
| 27 | | |
| 28 | | |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT ........................................................... 1

STATEMENT OF FACTS .................................................................. 3

    The Origins of Superman and Superboy .......................................... 3

    Procedural History ....................................................................... 7

LEGAL BACKGROUND AND ARGUMENT ...................................... 8

    Copyright Protection ................................................................... 8

    Copyright Ownership ................................................................... 9

    Joint Works ................................................................................ 9

    Derivative Works ........................................................................ 9

    Duration and Copyright Termination ............................................ 10

    Summary Judgment Standard ...................................................... 10

Summary of Argument ................................................................... 11

I.    AS A MATTER OF COPYRIGHT LAW, THE SUBMISSIONS
       ARE DERIVATIVE WORKS BASED ON SUPERMAN ...................... 12

II.   PLAINTIFFS' CLAIMS MUST FAIL BECAUSE THE SUPERBOY
      NOTICE IS LEGALLY INEFFECTIVE UNDER SECTION 304(C) ................... 14

    A.    Because The Submissions Were Never Published Or Registered
         As Unpublished Works, There Was No "Copyright Subsisting
         In Either Its First Or Renewal Term On January 1, 1978" And
         Thus Such Works Are Not Eligible for Termination ......................... 15

    B.    The Superboy Notice Is Also Ineffective Because The Submissions
         Were "Works Made For Hire" Not Subject To Termination. ................ 16

        1.    The "Instance" Factor Is Established As A Matter Of Law ............... 17

        2.    Detective Possessed The Right To Reject Or Modify The Works ..... 19

        3.    The Works Were Prepared at the Expense Of DC's Predecessor ....... 19

    C.    By Leaving In Place The May 21, 1948 Grant, Plaintiffs Have
         Not Terminated The Grants Of Copyright In The Submissions ................... 20

III.  AS A MATTER OF LAW, PLAINTIFFS CAN POINT TO
      NO COPYRIGHTABLE MATERIAL IN THE
      SUBMISSIONS THAT IS INFRINGED BY *SMALLVILLE* ............................... 21

ER 3807

A.  Applying The "Filtration Process" To The Submissions
    Demonstrates That Plaintiffs Own Virtually No
    Copyrightable Subject Matter Therein, If Any At All .....................................22

B.  No Episode Of *Smallville* Created After November 14,
    2004 Infringes Any Right Of Plaintiffs ...........................................................23

CONCLUSION ...........................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  **TABLE OF AUTHORITIES**

2  <u>**Cases**</u>

3  *Alchemy II, Inc. v. Yes! Entm't Corp.,*
    844 F. Supp. 560 (C.D. Cal. 1994) ................................................................10
4
   *Aliotti v. R. Dakin & Co.,*
5    831 F.2d 898 (9th Cir. 1987) .........................................................................21

6  *Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) .......................................................................................10
7
   *Apple Computer, Inc. v. Microsoft Corp.,*
8    35 F.3d 1435 (9th Cir. 1994) .........................................................................21

9  *Brattleboro Publ'g Co. v. Winmill Publ'g Corp.,*
    369 F.2d 565 (2d Cir. 1966) ..........................................................................17
10
   *Brother Records, Inc. v. Jardine,*
11    432 F.3d 939 (9th Cir. 2005) .........................................................................13

12 *Burroughs v. Metro-Goldwyn-Mayer, Inc.,*
    683 F.2d 610 (2d Cir. 1982) .....................................................................15, 20
13
   *Celotex Corp. v. Catrett,*
14    477 U.S. 317 (1986) .......................................................................................10

15 *Community for Creative Non-Violence v. Reid,*
    490 U.S. 741 (1980) .......................................................................................19
16
   *Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.,*
17    62 U.S.P.Q.2d 1301 (S.D.N.Y. 2002), *aff'd,* 342 F.3d 149 (2d Cir. 2003).......17, 19

18 *Feist, Publications, Inc. v. Rural Tel. Serv. Co.,*
    499 U.S. 340 (1991) .........................................................................................9
19
   *Idema v. Dreamworks, Inc.,*
20    162 F. Supp. 2d 1129 (C.D. Cal. 2001),
      *aff'd in part, dismissed in part,* 90 Fed.Appx. 496 (9th Cir. 2003) ..................21, 22
21
   *Kouf v. Walt Disney Pictures & Television,*
22    16 F.3d 1042 (9th Cir. 1994) .........................................................................22

23 *Litchfield v. Spielberg,*
    736 F.2d 1352 (9th Cir. 1984) .......................................................................20
24
   *Lin-Brook Builders Hardware v. Gertler,*
25    352 F.2d 298 (9th Cir. 1965) .........................................................................17

26 *In re Marvel Entm't Group,*
    254 B.R. 818 (D. Del. 2000) ..........................................................................18
27
   *May v. Morganelli-Heumann & Assocs.,*
28    618 F.2d 1363, 1368-69 (9th Cir. 1980) ........................................................17

iii

*Milne v. Stephen Slesinger, Inc.*,
 430 F.3d 1036 (9th Cir. 2005) .......................................... 10, 14, 15, 20

*Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*,
 856 F.2d 1341 (9th Cir. 1988) .................................................12, 20

*Neuman v. Pike*,
 456 F. Supp. 1192, 1205 (S.D.N.Y. 1978) .................................13

*Niss v. Columbia Pictures Indus., Inc.*,
 57 U.S.P.Q.2d 1346 (S.D.N.Y. 2000),
 *aff'd*, 25 Fed.Appx. 76 (2d Cir. 2002) ...........................18, 19, 20

*Oddo v. Ries*,
 743 F.2d 63033 (9th Cir. 1984) .........................................9, 20

*Pamfiloff v. Giant Records, Inc.*,
 794 F. Supp. 933 (N.D. Cal. 1992)...........................................20

*Picture Music, Inc. v. Bourne, Inc.*,
 457 F.2d 1213 (2d Cir. 1972), *cert. denied*, 409 U.S. 997 (1972).....................17, 19

*Playboy Enters., Inc. v. Dumas*,
 53 F.3d 549 (2d Cir. 1995)....................................................17, 20

*Pye v. Mitchell*,
 574 F.2d 476, 480 (9th Cir. 1978) ..........................................9

*Rice v. Fox Broad. Corp.*,
 330 F.3d 1170 (9th Cir. 2003) ............................................ 10-11

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*,
 206 F.3d 1322 (9th Cir. 2000) ....................................... 16-17, 20

*Scherr v. Universal Match Corp.*,
 417 F.2d 497 (2d Cir. 1969)..................................................18

*Shaw v. Lindheim*,
 809 F. Supp. 1393 (C.D. Cal. 1992) .......................................21

*Shaw v. Lindheim*,
 919 F.2d 1353 (9th Cir. 1990) ...............................................11

*Siegel v. National Periodical Publications, Inc.*,
 364 F. Supp. 1032 (S.D.N.Y. 1969), *aff'd in part*,
 *rev'd in part*, 508 F.2d 909 (2d Cir. 1974) .........................7, 13, 20

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
 464 U.S. 417 (1984)...........................................................15

*Stewart v. Abend*,
 495 U.S. 216 (1990).................................................9-10, 12, 20-21, 23

*Three Boys Music v. Bolton*,
 212 F.3d 477 (9th Cir. 2000) ................................................22

ER 3810

*Twentieth Century Fox Film Corp. v. Entm't Distrib.*,
    429 F.3d 869 (9th Cir. 2005) ................................................................ 16-17, 18, 19

*Wilkes v. Rhino Records, Inc.*,
    No. 96-56238, 1997 WL 800275 (9th Cir. Dec. 17, 1997) ....................................18

**1909 Copyright Act**

17 U.S.C. § 2 (repealed) ...............................................................................15

17 U.S.C. § 7 (repealed) ...........................................................................9, 20

17 U.S.C. § 10 (repealed) .............................................................................15

17 U.S.C. § 12 (repealed) .............................................................................15

17 U.S.C. § 28 (repealed) .............................................................................17

**1976 Copyright Act**

17 U.S.C. § 101 ......................................................................................9, 12

17 U.S.C. § 102(a) .........................................................................................8

17 U.S.C. § 102(b) ........................................................................8-9, 21, 23

17 U.S.C. § 103(a) ..............................................................................9, 10, 20

17 U.S.C. § 103(b) .................................................................9, 12, 20, 22, 23

17 U.S.C. § 106 ...............................................................................................9

17 U.S.C. § 201(a) ..........................................................................................9

17 U.S.C. § 201(b) .....................................................................................9, 17

17 U.S.C. § 301 .............................................................................................15

17 U.S.C. § 303 .............................................................................................15

17 U.S.C. § 304(a) ........................................................................................10

17 U.S.C. § 304(c) .................................................................................. *passim*

**Copyright Act Legislative History**

H.R. Rep. No. 94-1476, 94th Cong. 2d Sess. (1976) ................................ 8, 9, 14, 15, 17, 22

Supplementary Register's Rep. on the Gen. Revision of U.S. Copyright L. (1965) .........14

**Other Statutes**

28 U.S.C. § 1338 .............................................................................................6

ER 3811

1 **Rules**

2 Fed R. Civ. P. 56(c) ...................................................................10

3 **Regulations**

4 37 C.F.R. § 201.10 (b)(1)(iii) .......................................................20

5 **Treatises**

6 Melville B. Nimmer & David Nimmer,
    *Nimmer on Copyright*, (2005) .....................9, 12, 15-16, 17, 20

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ER 3812

Defendants Time Warner Inc., Warner Communications Inc., Warner Bros. Entertainment Inc., Warner Bros. Television Production Inc. and Defendant and Counterclaimant DC Comics ("DC" and collectively, "Defendants"), hereby submit this memorandum of law in support of their motion for summary judgment.

## PRELIMINARY STATEMENT

The 1976 Copyright Act introduced a new right of authors to terminate prior grants of copyright under specified conditions and prescribed procedures. This case, the second of two consolidated actions seeking termination of certain copyright grants, should never have been brought: the central dispute here — concerning the Superboy character based on Superman — is part of and belongs in the companion action, Case No. CV 04-8400, concerning the Superman character (the "Superman Action"), and should be addressed there.[1]

The plaintiffs in both cases are Joanne Siegel and Laura Siegel Larson ("Plaintiffs"), respectively the widow and daughter of Jerome Siegel ("Siegel") who together with Joseph Shuster ("Shuster") authored the first Superman comic (*Action Comics #1*) published in 1938 by defendant DC's predecessor in interest Detective Comics, Inc. ("Detective"). In April 1997, Plaintiffs served notices under section 304(c) of the 1976 Copyright Act purporting to terminate Siegel's copyright grants to DC's predecessor (the "Superman Notices"). The Superman Notices claimed that, effective April 1999, Seigel's one-half share of the copyright in *Action Comics #1*, as well as in hundreds of derivative works and characters developed by DC over the past sixty years, had been recaptured by Plaintiffs.

Expressly listed among the purportedly terminated items are "Superboy" and numerous Superboy works. Plaintiffs' Superman Notices and the Superman Action conceded that all Plaintiffs could recapture was a 50% share of the rights in the terminated grants: since *Action Comics #1* was a joint work created with Shuster, and since the rights to Shuster's share have not been terminated, they remain with DC. Thus,

---

[1] *See generally* Superman Action Complaint, attached as Exhibit A to the Declaration of Roger L. Zissu ("Zissu Ex. __").

1  the Superman Action seeks a declaration that the Superman Notices are valid, and asks

2  for an accounting of a one-half share of profits from exploitation of Superman, including

3  the derivative Superboy, since April 1999.

4        In October of 2001, after years of negotiation regarding the Superman Notices, the

5  parties reached an agreement resolving all claims, including those related to Superboy.

6  However, Plaintiffs later tried to repudiate that settlement, and in November 2002 served

7  a "new" notice of termination (the "Superboy Notice"), this time directed solely at works

8  featuring the Superboy character. In the Superboy Notice, Plaintiffs contradicted their

9  prior admission that Superboy was derivative of Superman and was a joint creation of

10  Siegel and Shuster, and instead claimed that Superboy was completely unrelated to

11  Superman and that Siegel was its sole creator. Accordingly, this action alleges that

12  Plaintiffs have recaptured 100% of Superboy, and that Defendants' post-termination

13  production of the successful television series *Smallville* – which features Superman as an

14  adolescent – constitutes copyright infringement and should be enjoined.

15        Through this legal sleight of hand, Plaintiffs attempt to divest DC of any post-

16  termination ownership in the story of Superman's childhood and youth, thus substantially

17  increasing their leverage and the recovery to which they might otherwise be entitled by

18  virtue of their potential half-ownership in Superman alone.[2] But the artificial distinction

19  which Plaintiffs seek to maintain between these two actions requires the court to accede

20  to the fiction that the Superboy character has nothing to do with the Superman character.

21  It also requires the court to ignore the statutory definition of derivative works and the

22  bedrock precept that ideas, as opposed to expression, are not copyrightable. Finally, it

23  requires the Court to disregard the clearly expressed conditions and rules that Congress

24  has established to effectuate a copyright termination.

25        Respectfully, for each of the reasons discussed below, there simply is no basis in

26  the law for Plaintiffs to assert a claim regarding Superboy which is separate and apart

---

27  [2] This posture is part of a larger pattern of conduct, which includes claiming a share of

28  revenues for foreign exploitation of Superman, even though the Copyright Act expressly excludes this (17 U.S.C. § 304(c)(6)(E)), and claiming a share of DC's licensee's direct income, as opposed to DC's profits, a position also legally without foundation.

1    from Plaintiffs' existing claim regarding Superman, and this action should be dismissed.

2    Dismissal will not leave Plaintiffs without recourse; whether they are entitled to a share of

3    profits from the exploitation of *Smallville* will be addressed and resolved in the Superman

4    Action, where the issue belongs.

5    **STATEMENT OF FACTS**

6        **The Origins of Superman and Superboy.** In the 1930s, Siegel and Shuster

7    jointly conceived of and created a cartoon strip that became the first Superman story.

8    After a syndicated strip of Superman was rejected numerous times over several years,

9    Detective agreed to publish the first Superman story in *Action Comics #1*. (Zissu Ex. A,

10    ¶¶ 16-26.) On March 1, 1938 Siegel and Shuster executed an assignment to Detective of

11    all rights in Superman (the "1938 Assignment") (*Id.* Ex. C.) Thereafter, Siegel and

12    Shuster agreed to provide further Superman stories for subsequent issues of *Action*

13    *Comics*. (*Id.* Ex. A, ¶¶ 27, 28.) On September 22, 1938, Siegel and Shuster entered into

14    two further agreements (collectively the "September 1938 Agreements"). The first

15    agreement with Detective reaffirmed its copyright ownership of Superman and

16    memorialized the terms of Siegel and Shuster's existing and future engagement and

17    compensation. (*Id.* Ex. D.) The second agreement included the McClure Newspaper

18    Syndicate ("McClure") as a third party and added the terms under which Siegel and

19    Shuster would prepare Superman newspaper comic strips. (*Id.* Ex. E; *see also id.* Ex. F.)

20    Under the first of the September 1938 Agreements, Siegel and Shuster agreed that, if they

21    created any material suitable for comics, they would provide Detective the right of first

22    refusal to publish them. Further, the Agreements make clear that Siegel and Shuster were

23    to furnish Superman comics *only* to Detective. (*Id.* Exs. D, E.)

24        On November 30, 1938, shortly after signing the September 1938 Agreements,

25    Siegel sent a letter to Detective enclosing some of his work assignments and "pitching"

26    some ideas for new comics (the "Pitch"). (*Id.* Ex. G; see also *id.* Ex. L, ¶ 18.) Among the

27    ideas submitted was one for a comic entitled Superboy "which would relate to the

28    adventures of Superman as a youth." (*Id.* Ex. G.) The Pitch discussed conceptually the

3

1 physical format for such a comic but did not set forth any new characteristics or story

2 elements. (*Id.*)  Detective was not interested. (*Id.* Ex. L, ¶ 19.)

3       In December 1940, pursuant to the September 1938 Agreements, Siegel made

4 another submission of a thirteen-page typed script under the byline of Siegel *and* Shuster

5 (the "Script" and, collectively with the Pitch, the "Submissions"). (*Id.* Ex. H; *see also id.*

6 Ex. L, ¶ 22.)  The Script, which contains dialogue and describes panels, was hardly novel

7 and sought again to capitalize on the then-existing popularity of Superman.  Indeed, the

8 very first "script box" reads: "It has to happen!  So many faithful followers of today's

9 leading adventure comic strip, SUPERMAN, wrote in demanding the adventures of Clark

10 Kent as a youth . . . ." (*Id.* Ex. G at 1.)  Siegel went on to repeat Superman's provenance

11 and early upbringing from prior Superman publications, including but not limited to,

12 *Action Comics #1* (*id.* Ex. I), a series of newspaper comic strips published in 1939 (*id.* Ex.

13 F), and *Superman #1* (*id.* Ex. J), published in May 1939.  These works were owned

14 exclusively by Detective and pre-dated the Script.  The chart below shows each of the

15 pre-existing Superman elements included in the Script alongside the corresponding

16 element from Detective's previous publications (the "Chart"):

| Script Element | Pre-existing Superman Element |
|---|---|
| "as the distant planet, Krypton, burst into fragments, superscientist Jor-L and his wife Lora, launched their infant son toward the planet Earth in a trial space-ship . . . ." (Script (Zissu Ex. H) at 1) | "As a distant planet was destroyed by old age, a scientist placed his infant son within a hastily devised space-ship, launching it toward Earth!" (*Action Comics #1* (Ex. I) at 1) |
| | "Jor-L, Krypton's foremost scientist" (1939 Strip (*id.* Ex. F) at 1, panel 2), and his wife Lora (*id.* at 1, panel 4), launch their son, Kal-L in a rocket ship Earth as "*Krypton* explodes into a million fragments." (*id.* at 5, panels 5-8) |
| | "Just before the doomed planet, *Krypton*, exploded into fragments, a scientist placed his infant son within an experimental rocket-ship, launching it toward Earth!" (*Superman #1* (*id.* Ex. J) at 1, panel 1) |
| Panel would "show[] the space-ship hurtling up from the surface of Krypton into space as the planet blows to bits." (*Id.* at 1.) | Same scene shown in: (1) *Action Comics #1* at 1, panel 1; (2) 1939 Strip at 5, panels 5-8; and (3) *Superman #1* at 1, panel 1. |
| "As the solitary vessel hurtled thru [sic] interplanetary space, it narrowly dodged oblivion in | "Peril after peril is narrowly avoided by the rocketing space-flier: – a great jagged meteor . . . The gravity of a giant sun almost draws the vessel to a molten death" |

| Script Element | Pre-existing Superman Element |
|---|---|
| the form of comets, meteors, and other stellar obstacles . . . ." (*Id.* at 1.) | (1939 Strip at 6, panels 1-3) |
| "Alighting upon Earth, it burst into flames. Its tiny passenger was saved by a passing motorist" and a panel is described as showing the motorist lifting the child from the vessel. The motorist then takes the child to an orphanage. (*Id.* at 1.) | "When the vehicle landed on Earth, a passing motorist, discovering the sleeping babe within, turned the child over to an orphanage." (*Action Comics #1* at 1, panel 2) "The sleeping babe is rescued from the burning space ship by a passing motorist, and turned over to an orphan asylum . . ." (1939 Strip at 6, panel 5) An elderly couple, the Kents, discover the child in the space ship and take him to the orphan asylum. (*Superman #1* at 1, panel 2-3) |
| "But the motorist – Charles Kent – finds he can't forget the infant" and from his armchair says "I can't get that little rascal out of my mind, Mary!" The Kents decide to adopt the child. (*Id.* at 2.) | "We – we couldn't get that sweet child out of our mind. We've come to adopt him if you'll permit us." (*Superman #1* at 1, panel 4.) |
| The infant exhibits great strength at the orphanage, wrecking equipment and scaring the staff. The orphanage happily allows the Kents to adopt the infant. (*Id.* at 2-3.) | The infant astounds the orphanage staff with his "feats of strength." (*Action Comics #1*, at 1, panel 3; 1939 Strip at 6, panel 6; *Superman #1* at 1, panel 3.) When the Kents arrive at the asylum, the orphanage director happily allows the Kents to adopt the infant and thinks "Whew! Thank goodness they're taking him away before he wrecks the asylum!" (*Superman #1*, at 1, panel 4) |
| The Kents vow to keep his power a secret so he that he does not become an outcast. (*Id.* at 5-7.) | Clark Kent's father tells the young Clark "Now listen to me Clark! This great strength of yours – you've got to hide it from people or they'll be scared of you!" His mother adds "but when the time comes, you must use it to assist humanity." (*Superman #1* at 1. panel 4.) |
| "The bullets careen harmlessly off his super-tough skin" (*Id.* at 11.) | "The bullet ricochets off Superman's tough skin." (*Action Comics #1* at 4, panel 1) |
| "I could put my hidden strength to work for a good purpose." (*Id.* at 13.) | "But when the time comes, you must use [your strength] to assist humanity." (*Superman #1* at 1, panel 5) |

In addition to the lengthy recap of Superman's origins, the Script then contains dialogue and caption headings for contemplated comic strips involving the young Clark Kent; first as a toddler (Zissu Ex. H at 6-8), then as a kindergartner (*id.* at 8-9), and finally as a fifth grader (*id.* at 11-12), concluding with the young Superman deciding to create his own "masquerade costume" in order to hide his true identity. (*Id.* at 13.) The Script does not

1  describe the costume, but from the context it can be inferred that the Script contemplates
2  the Superman costume that was already famous from previously published comics. (*See*,
3  *e.g.*, *id*. Exs. F, I, J.)

4  On or around November 18, 1944, Detective published a comic strip entitled
5  "Superboy" in *More Fun Comics #101* (*id*. Exs. K, L, ¶ 31) and continued to do so bi-
6  monthly until 1946 and monthly thereafter for many years (*id*. Ex. L, ¶¶ 31, 37). Other
7  than the idea of depicting Superman as a youth and the inclusion of previously-published
8  portions of the origins of Superman, there is no similarity between the *Superboy* stories
9  published in *More Fun Comics #101* and the Script. (*Compare id*. Ex. H *with* K.)

10  In 1947, Siegel and Shuster commenced an action in the Supreme Court of the
11  State of New York (the "Westchester Action") against, *inter alia,* DC's predecessor
12  National Comics Publications, Inc. ("National"), Detective's parent company. (Zissu Ex.
13  M.) The Westchester Action did not involve federal copyright doctrines, which only
14  could have been adjudicated in federal court, 28 U.S.C. § 1338. Instead, Siegel and
15  Shuster sought to annul and rescind agreements with Detective in an effort to recapture
16  rights in Superman. Siegel and Shuster also alleged that, pursuant to their September 22,
17  1938 agreement, Detective had not exercised its right of first refusal to publish Superboy
18  and thus did not have a right to publish it. (Zissu Ex. M.) On November 21, 1947, the
19  referee to whom the case was referred issued a report rejecting almost entirely Siegel and
20  Shuster's claims. (*Id*. Ex. N.) However, the referee found that Superboy "was a separate
21  and distinct entity" from Superman (*id*. Ex. N at 41a-42a) and in Findings of Fact and
22  Conclusions of Law dated April 12, 1948 (the "Interlocutory Findings"), the referee
23  found that Detective's publication of Superboy "embodied and was based upon the idea,
24  conception, and plan" contained in the Pitch and in the Script. (*Id*. Ex. O, ¶¶ 163-166.)
25  Based on his interlocutory rulings, the referee subsequently entered an "Interlocutory
26  Judgment" which, *inter alia*, provided for enjoining the defendants from publishing
27  *Superboy* and declaring that Siegel was the "sole owner of the comic strip feature
28  SUPERBOY." (*Id*. Ex. P at 5.) The parties filed timely notices of appeal. (*See id*. Ex. R

6

1  at 2.)

2       Thereafter, on May 19, 1948, the parties to the Westchester Action entered into a

3  stipulation (the "Stipulation") under which the Interlocutory Judgment was to be "in all

4  respects vacated" and the action would be dismissed in its entirety. (*Id.* Ex. Q.) Siegel

5  and Shuster also agreed, *inter alia*, to assign any rights they owned in Superboy to

6  National, and agreed to be enjoined from either using or associating themselves with

7  Superman or Superboy. (*Id.* Ex. Q.) As consideration, Siegel and Shuster were to be

8  paid $94,013.16. (*Id.*) Pursuant to the Stipulation, on May 21, 1948, the parties to the

9  Westchester Action entered into a second agreement – a "Final Judgment" on consent,

10  duly executed by all of the parties, their counsel, and the Court (the "Final Consent

11  Agreement"). Therein, the parties withdrew their notices of appeal and Siegel and

12  Shuster effectuated their executory stipulation by providing definitively for the transfer of

13  all rights in Superboy to National.[3] (*Id.* Ex. R.)

14       **Procedural History.** On April 3, 1997, Plaintiffs mailed the Superman Notices,

15  purporting to terminate Siegel's share as a co-author in seven grants of rights under

16  copyright made by Siegel and Shuster in the Superman character and stories dating back

17  to 1937 to defendant DC's predecessors-in-interest. 17 U.S.C. § 304(c). (Zissu Exs. S-

18  Y.)[4] The Superman Notices purport to affect only Siegel's – but not Shuster's –

19  participation in these grants. (*Id.* Exs. S-Y at 2.) The Superman Notices also list in

20  excess of 15,000 allegedly terminated Superman works. (*See, e.g., id.* Ex. T at 5-550.)

21  Notably, "Superboy" is among the characters expressly identified therein (*id.* Exs. S-Y at

22  3 n.1), and the Superman Notices list *hundreds of works featuring Superboy* (*see, e.g., id.*

23  Ex. T at 5-550).[5]

---

24  [3] Notwithstanding the Final Consent Agreement, Siegel and Shuster unsuccessfully sued
25  DC's predecessor in federal court in 1969, claiming ownership of the renewal copyright
   for *Action Comics #1*. *See Siegel v. National Periodical Publications, Inc.*, 364 F. Supp.
   1032 (S.D.N.Y. 1969), *aff'd in part, rev'd in part*, 508 F.2d 909 (2d Cir. 1974).
26  [4] DC, by letter dated April 15, 1999, rejected the Superman Notices as untimely and
   legally invalid. (*Id.* Ex. Z.)
27  [5] Each of the Superman Notices states: "This Notice of Termination applies to each and
   every work . . . that includes or embodies any character, story element, or indicia
28  reasonably associated with SUPERMAN or the SUPERMAN stories, such as, without
   limitation, . . . Superboy [and] Smallville." (*Id.* Exs. S-Y at 3 n.1.)

**ER 3819**

1    On November 8, 2002, Plaintiffs mailed the Superboy Notice, purporting to

2  terminate grants by Siegel contained in the Stipulation and a December 23, 1975

3  agreement with Warner Communications, Inc. (the "1975 Agreement"), and listing

4  hundreds of allegedly affected works identical to those listed in the Superman Notices.

5  (*Compare id.* Ex. AA at 6-52 *with, e.g.,* T at 5-550.)[6]  In the Superboy Notice, Plaintiffs

6  purported to terminate the Superboy copyright grant to be made pursuant to the

7  Stipulation in the Westchester Action but failed to terminate the actual assignment

8  effectuated in the Final Consent Agreement, a copy of which was in their possession.[7]

9  (*Id.* Ex. AA).

10    On October 8, 2004, Plaintiffs filed the Superman Action, which is mainly a case

11  for an accounting.  (*Id.* Ex. A.)  On October 22, 2004, Plaintiffs filed this action (the

12  "Superboy Action"), seeking a declaration that Plaintiffs have recaptured all rights in

13  Superboy.  Plaintiffs allege further that "[d]efendants' ongoing exploitation of the

14  'Superboy' mythology, including but not limited to the Superboy Comic Books, and other

15  publications, 'Superboy' merchandising, animated and live action television

16  programming (*e.g.,* the *Smallville* Series)" infringes Plaintiffs' copyright rights in the

17  "Siegel Superboy Material," namely, the Submissions. (*Id.* Ex. L, ¶ 67.)

18                        **LEGAL BACKGROUND AND ARGUMENT**

19    **Copyright Protection.**  Section 102 of the currently effective Copyright Act (the

20  "1976 Act") carries forward "the standard of originality established by the courts" under

21  the predecessor 1909 Copyright Act (the "1909 Act").  H.R. Rep. No. 94-1476, 94th

22  Cong. 2d Sess. at 51 (1976) ("H. Rep.").  Section 102(b) provides that copyright

23  protection subsists for "original works of authorship," 17 U.S.C. §102(a), but "[i]n no

24  case does copyright protection . . . extend to any idea . . . [or] concept . . . regardless of

25  the form in which it is described, explained, illustrated, or embodied in such work."  17

26  _____

27  [6] DC, by letter dated August 27, 2004, also rejected the Superboy Notice as untimely and legally invalid.  (*Id.* Ex. BB).

28  [7] Plaintiffs have produced such a copy in discovery herein (*id.* Ex. R), and refer to the Stipulation and Final Consent Agreement as separate instruments in their complaint in this action (*Id.* Ex. L, ¶ 33).

**ER 3820**

1  U.S.C. §102(b); *See Feist, Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350

2  (1991); H. Rep. at 56 ("[c]opyright does not preclude others from using the ideas or

3  information revealed by the author's works.")

4  **Copyright Ownership.** Section 201 of the 1976 Act also carried forward the

5  basic principles that copyright "vests initially in the author or authors of the work," that

6  "authors of a joint work are co owners of [the] copyright" and that "[i]n the case of works

7  made for hire the employer . . . is considered the author . . ." and initial owner of

8  copyright. 17 U.S.C. § 201(a) & (b). *See also* H. Rep. at 120-21.

9  **Joint Works.** Under the 1909 Act, as today, each joint author is a co-owner who

10 possesses "an undivided ownership in the entire work, including all of the contributions

11 contained therein" (1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, §

12 6.03, at 6-7 (2005) ("*Nimmer*"); *see Pye v. Mitchell*, 574 F.2d 476, 480 (9th Cir. 1978)),

13 and who can nonexclusively exercise all the rights of the copyright owner subject only to

14 a duty to account to other co-owners for their share of profits earned from such use or

15 licensing (*Nimmer* § 6.10; *Oddo v. Ries*, 743 F.2d 630, 632-33 (9th Cir. 1984)). A joint

16 author *cannot* be liable for infringement of copyright from such use or licensing. *Id.*

17 **Derivative Works.** As under section 7 of the 1909 Act, 17 U.S.C. § 7 (repealed),

18 the current statute provides for protection of "derivative works based upon the

19 copyrighted work," 17 U.S.C. § 106 and 103(a), similarly defining a "derivative work" as

20 "a work based upon one or more preexisting works, such as . . . any . . . form in which a

21 work may be recast, transformed, or adapted." 17 U.S.C. § 101. Section 103(b) provides

22 that the "copyright in a . . . derivative work extends only to the material contributed by

23 the author of such work, as distinguished from the preexisting material employed in the

24 work, and does not imply any exclusive right to the preexisting material." 17 U.S.C. §

25 103(b). "The most important point here is one that is commonly misunderstood today

26 [under the 1909 Act]: copyright in a 'new version' covers only the material added by the

27 later author, and has no effect one way or the other on the copyright or public domain

28 status of the preexisting material." H. Rep. at 57; *accord Stewart v. Abend*, 495 U.S.

9

1  207, 224 (1990). Section 103(a) also denies protection to any part of a derivative work

2  employing pre-existing material "in which such material has been used" without

3  permission. 17 U.S.C. § 103(a).

4      **Duration and Copyright Termination.** Under the 1909 Act, an original 28 year

5  term of copyright protection could be renewed for another 28 year "renewal" term.

6  Among the changes made by the 1976 Act was that the renewal term of protection for

7  copyrights subsisting on January 1, 1978 was extended by nineteen years (the "extended

8  renewal term"), thereby extending the combined term of protection from fifty-six to

9  seventy-five years. *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1037 (9th Cir.

10 2005); *see also* 17 U.S.C. § 304(a). Section 304(c) of the 1976 Act also included a new

11 statutory right of "termination," which right enabled the author and the author's heirs to

12 recapture copyrights in specific works by terminating copyright grants made by the

13 author or his heirs to third persons prior to January 1, 1978. 17 U.S.C. § 304(c); *Milne*,

14 430 F.3d at 1040. Such recapture applies only to the U.S. copyright in the original work

15 under the grant – it does not affect foreign copyright rights, trademark rights, or the right

16 to continue to exploit any "derivative work prepared . . . before" the effective date. 17

17 U.S.C. §§ 304(c)(6)(A), (E).

18     **Summary Judgment Standard.** Rule 56(c) provides for summary judgment

19 when "there is no genuine issue as to any material fact and that the moving party is

20 entitled to a judgment as a matter of law." The moving party bears the initial burden of

21 demonstrating the absence of a genuine issue of material fact for trial. *Anderson v.*

22 *Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is "material" if it could affect the

23 outcome of the suit under the governing substantive law. *Id.* at 248. The burden then

24 shifts to the nonmoving party to establish that there is a genuine issue for trial. *Celotex*

25 *Corp. v. Catrett,* 477 U.S. 317, 324 (1986). Courts enter summary judgment in copyright

26 actions where a plaintiff fails to establish one element of its claim, to spare a defendant

27 the burden of meritless litigation. *See, e.g., Alchemy II, Inc. v. Yes! Entm't Corp.*, 844 F.

28 Supp. 560, 565-69 (C.D. Cal. 1994) (citing *Celotex*, 477 U.S. at 322); *Rice v. Fox Broad.*

1  *Corp.*, 330 F.3d 1170, 1174 (9th Cir. 2003); *Shaw v. Lindheim,* 919 F.2d 1353, 1358-59

2  (9th Cir. 1990) (summary judgment in a copyright case is the same as in other civil

3  actions).

## Summary of Argument

5      The Superboy Action seeks a declaration that the Superboy Notice was effective

6  separately and apart from the Superman Notice, and served to vest in Plaintiffs 100% of

7  the copyright ownership in Superboy (as opposed to the 50% they are seeking in

8  Superman).  In support of their position, Plaintiffs claim that certain of the works in

9  which Superboy has appeared were not related to or based upon Superman.  Plaintiffs

10  further assert that as a result of the separate Superboy Notice, Defendants' rights in

11  "Superboy" have been extinguished.  Finally, Plaintiffs allege that the television program

12  *Smallville* is based upon and thus infringes their rights in "Superboy."

13      Plaintiffs' claims rest on the untenable assertion that Superboy is not the Superman

14  character as a young boy – a "derivative work" as that term is used in the 1976 Act – but

15  is an unrelated work from a copyright standpoint.  But Plaintiffs' position is based on an

16  artificial construct which cannot withstand scrutiny: even a cursory review of the

17  Submissions demonstrates, as a matter of law, that Superboy is derivative of Superman

18  and cannot be divorced from that prior creation (Pt. I).  (*See* Chart.)  Further, whether or

19  not Superboy is derivative of Superman, the Submissions are not eligible for copyright

20  termination under section 304(c) for a number of separate reasons: first, due to their

21  "unpublished" status, neither of these works were in their first or original term of

22  copyright on January 1, 1978 (Pt. II.A.); second, both of these works were "works made

23  for hire" (Pt. II.B.); and third, Plaintiffs failed to terminate the May 21, 1948 grant of

24  rights to these works (Pt. II.C.).  Finally, even if the Superboy Notice was effective,

25  Plaintiffs' infringement claim must be dismissed since the Submissions consist almost

26  entirely of elements taken from pre-existing Superman story material not owned by

27  Siegel at the time they were submitted; any arguably new material protected by copyright

28  has not been used by Defendants, either pre- or post-termination, and nothing in

1  *Smallville* is copied from the Submissions (Pt. III).

2  **I.  AS A MATTER OF COPYRIGHT LAW, THE SUBMISSIONS ARE DERIVATIVE WORKS BASED ON SUPERMAN**

3  Section 101 of the 1976 Act defines a "derivative work" as one "based upon one or

4  more preexisting works, such as . . . any . . . form in which a work may be recast,

5  transformed, or adapted." 17 U.S.C. § 101.[8]  *See also Mirage Editions, Inc. v.*

6  *Albuquerque A.R.T. Co.*, 856 F.2d 1341, 1343 (9th Cir. 1988).  Under section 103(b), any

7  copyright protection for a derivative work can only extend to the material newly added

8  "as distinguished from the pre existing material employed" therein and cannot in any way

9  affect the "ownership" of the underlying material.  17 U.S.C. § 103(b).

10  Here, there can be no genuine dispute that the Submissions are derivative of

11  preceding Superman comics.  As demonstrated by the Chart, the Submissions are based

12  upon and, indeed dominated by, pre-existing, published Superman elements owned

13  *exclusively* and previously published by Detective at the time the works were submitted

14  by Siegel.  Indeed, the Submissions expressly refer the reader to the pre-existing

15  Superman story and propose publication of a prequel:[9] Superboy "would relate to the

16  adventures of Superman as a youth" (Zissu Ex. G, at 2); and "[s]o many faithful

17  followers of today's leading adventure comic strip, SUPERMAN, wrote in demanding

18  the adventures of Clark Kent as a youth" (*Id.* Ex. H at 1).  Plaintiffs also have admitted in

19  the Superman Notices that Superboy is both a derivative and joint work, not only because

20  they expressly purport to terminate the Superboy character (*compare id.* Exs. S-Y at 3 n.1

21  *with* Ex. AA), but also because the same Superboy works purportedly covered by the

22  Superboy Notice in 2002 were previously listed as terminated in the Superman Notices in

23  1999. (*compare id. e.g.*, Ex. T at 5-550 *with* Ex. AA at 6-52.)  Accordingly, Siegel could

24  have no ownership in any derivative, pre-existing material reused in the Submissions, and

25

---

26  [8] With respect to copyright ownership of derivative works, there is no difference between the 1909 and 1976 Acts.  As noted by the Supreme Court, "the well-settled rule" under the 1909 Act for determining the extent of the derivative author's copyright ownership

27  was "made explicit" in section 103(b) of the 1976 Act. *Stewart*, 495 U.S. at 224.
   [9] As Nimmer explains, ". . . a subsequently written story employing the same characters

28  in a time setting prior to, rather than contemporaneous with or subsequent to, the time setting in the first story is referred to as a 'prequel.'" 3 *Nimmer*, § 10.14[L] at 10-112.

12

**ER 3824**

1  the Superboy Notice could not apply to such underlying material.

2  In seeking to avoid the rules of ownership under copyright law, and, in particular,

3  the obvious fact that Superboy is a derivative work based upon Superman, Plaintiffs will

4  undoubtedly, as they do in their pleading, misstate the Second Circuit's holding in *Siegel*

5  *v. National Periodical Publications, Inc.*, 508 F.2d 909 (2d Cir. 1974). In particular,

6  Plaintiffs allege in their pleading that the Second Circuit held that the Westchester Action

7  Referee's interlocutory findings of fact and conclusions of law that Siegel was the

8  originator and sole owner of Superboy "were binding on the parties under the doctrine of

9  *res judicata*," thus foreclosing any claim now that "Superboy" is derivative of

10  Superman. (Zissu Ex. L, ¶¶ 33-36; O, ¶¶ 164-68; 171-72.) Plaintiffs' characterization of

11  that decision is demonstrably false. In fact, the Second Circuit in *National* gave *res*

12  *judicata* effect *only* to the Westchester Action *Final Consent Agreement*. *National*, 509

13  F.2d at 912-14.[10] Indeed, as a matter of law, the Second Circuit *could not* have given *res*

14  *judicata* effect to the referee's findings because they were, by their own terms,

15  interlocutory and were not a final judgment. *See Neuman v. Pike*, 456 F. Supp. 1192,

16  1205 (S.D.N.Y. 1978) (interlocutory judgment not final for purposes of *res judicata*

17  under New York law); *see also Brother Records, Inc. v. Jardine*, 432 F.3d 939, 942 (9th

18  Cir. 2005). Moreover, in the Final Consent Agreement, the parties *expressly vacated* the

19  referee's interlocutory judgment. (Zissu Ex. R at 2.) Since the Final Consent Agreement

20  does not state that Siegel owned Superboy, let alone that it was not a derivative work

21  based upon Superman, Plaintiffs' reliance on the Second Circuit's decision is misplaced.

22  Plaintiffs' attempt to claim sole ownership of an idea and pre-existing story

23  elements embodying Superman's origins and youth – elements either not subject to

24

---

25  [10] The Second Circuit made the following holdings: "[w]e are persuaded here that the court below properly decided that the state court *judgment* of *May 21st, 1948* [the date of
26  the Final Consent Agreement] effectively estopped the plaintiffs from relitigating the issue of the ownership of the renewal copyright" (*National*, 509 F.2d at 912-913);
27  "[t]here is no doubt that the *judgment* of the state court is binding in this subsequent federal action . . .[i]t is . . . clear that a *consent judgment* does have res judicata effect"
28  (*id.* at 913); and "[s]ince we hold that the state *judgment* action [sic] determined that the defendants owned all of the rights to the Superman strip without reservation, the doctrine of res judicata is properly applicable" (*id.* at 914, n.1) (emphasis added in all).

13

1  copyright ownership or undisputedly solely owned by Detective *prior* to the Submissions

2  – is impermissible as a matter of law. As Plaintiffs have conceded in the Superman

3  Notices, they can at best claim only a *partial* ownership of these elements – a claim

4  which is already the subject of the companion Superman Action.

5  **II.   PLAINTIFFS' CLAIMS MUST FAIL BECAUSE THE SUPERBOY**

6  **NOTICE IS LEGALLY INEFFECTIVE UNDER SECTION 304(C)**

        Plaintiffs' claims first fail because the Submissions do not, as a matter of law,

7  qualify for copyright termination under Section 304(c) of the 1976 Act. The termination

8  right was added to the 1976 Act to improve the "bargaining position of authors" by

9  giving them another chance to sell rights in their works after they had been sufficiently

10 "exploited" to determine their "value." H. Rep. at 124. However, in drafting the

11 termination provision, Congress crafted "a practical compromise that [would] further the

12 objectives of the copyright law while recognizing the problems and legitimate needs of

13 all interests involved." *Id.* *See also* Supplementary Register's Rep. on the Gen. Revision

14 of U.S. Copyright L. at 72 (1965) (termination provisions were intended to be "of

15 practical benefit to authors and their families without being unfair to publishers, film

16 producers, and other users."). That compromise included significant statutory limitations

17 to the termination right: only grants with respect to copyrights subsisting in their original

18 or renewal statutory terms can be terminated, while grants relating to "works made for

19 hire" cannot (17 U.S.C. § 304(c), first par.). Even when exercised, the statutory

20 termination is not unlimited: it applies only to the U.S. copyright in the original work

21 under the grant – it cannot affect foreign copyright rights, trademark rights, or the right to

22 continue to exploit any "derivative work prepared . . . before" the effective date. 17

23 U.S.C. §§ 304(c)(6)(A), (E).

24     In addition, the copyright termination right is neither "automatic" (H. Rep. at 124),

25 nor "inalienable." *Milne*, 430 F.3d at 1043. Rather, section 304(c) specifies the

26 procedure for exercise of the right. Namely, a termination can only be "effected by

27 serving an advance notice in writing upon the grantee or the grantee's successor in title,"

28 and "the form, content and manner of service" of which "shall [be] prescribe[d] by the

14

ER 3826

1  Register of Copyright." 17 U.S.C. §§ 304(c)(4), (4)(B). Moreover, failure to exercise the

2  termination right within the time specified in the statute results in an inability to exercise

3  such right. 17 U.S.C. § 304(c)(3). These requirements resulted from a 20 year legislative

4  effort. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 462 n.9 (1984).

5  In crafting these provisions, Congress was cognizant that a failure to comply with them

6  would mean that no termination would occur. *See, e.g., Burroughs v. Metro-Goldwyn-*

7  *Mayer, Inc.*, 683 F.2d 610, 621-22 (2d Cir. 1982) (failure to identify certain works while

8  specifying others in notice of termination left grant relating to former unterminated);

9  *Milne*, 430 F.3d at 1048 (attempt by granddaughter of author of "Winnie the Pooh" to

10  terminate copyright grant rejected because statutory requirements not met). Because the

11  Superboy Notice seeks to terminate grants in works not subject to termination, and

12  because it fails to terminate a still-operative grant, it is ineffective as a matter of law.

13
14
15  **A.  Because The Submissions Were Never Published Or Registered As Unpublished Works, There Was No "Copyright Subsisting In Either Its First Or Renewal Term On January 1, 1978" And Thus Such Works Are Not Eligible for Termination.**

15  The 1976 Act specifies that only grants relating to "any copyright subsisting in

16  either its first or renewal term on January 1, 1978" are subject to termination. 17 U.S.C.

17  § 304(c). Under the 1909 Act, which provided for original and renewal terms of 28 years

18  each, works that were not published with notice in compliance with section 10 or

19  registered as unpublished works under section 12 were not protected under the Act, but

20  rather, under section 2, remained protected by common law copyright (*i.e.*, under state

21  law rather than the federal statute). 17 U.S.C. §§ 10, 12, 2 (repealed).[11]  Works protected

22  by common law copyright could not, by definition, be in either their "first" or their

23  "renewal" terms, as those terms relate solely to statutory copyright protection under the

24  1909 Act. In explaining the effect of common law copyrights subsisting on January 1,

25  1978 on termination, Nimmer states:

26
27          a grant of common law copyright (by hypothesis made before January 1, 1978) . . .

_____

28  [11]  With the advent of the 1976 Act, effective January 1, 1978, *see* 17 U.S.C. §§ 301, 303, this "dual system" of copyright was abolished and all copyright protection for such works can exist only under the federal statute. (H. Rep. at 129.)

1   will not be subject to termination if the work in which this interest is granted

2   remained in common law copyright until January 1, 1978 . . . It will not be subject

3   to termination under Section 304(c) because . . . such terminations pertain only to

4   grants "of the renewal copyright or of any right under it." In the case of a work

5   protected by common law copyright until the effective date of the current Act,

6   there is no renewal copyright even after the work has acquired statutory copyright;

7   these works instead fall within the new unitary term gauged by the life of the

8   author, subject to a certain minimum period of protection. Therefore, the

9   termination provisions of Section 304(c), which relate only to grants "of the

10  renewal copyright," are inapplicable.

11  3 *Nimmer* § 11.02[A][1] at 11-11. Plaintiffs admit that the Submissions were

12  unpublished and never registered as unpublished works as of January 1, 1978.[12] (Zissu

13  Ex. AA at 5-6.) As a result, the Submissions were neither in their first nor renewal term

14  as of that date and not eligible for termination.

15      **B.    The Superboy Notice Is Also Ineffective Because The Submissions**
        **Were "Works Made For Hire" Not Subject To Termination.**

16      Even if the Submissions had been subsisting copyrighted works on January 1,

17  1978, they were "works made for hire" and thus not eligible for termination because they

18  were submitted under Siegel and Shuster's contractual relationship with Detective. 17

19  U.S.C. § 304(c) (termination only allowed for "other than a copyright in a work made for

20  hire"). Therefore, both the Submissions remain owned in their entirety by DC.

21      The Ninth Circuit has held that, under the 1909 Act, whenever the person who

22  commissions another is the "motivating factor" in producing a creative work, the work is

23  made for hire.[13] *Self-Realization Fellowship Church v. Ananda Church of Self-*

24  

25  [12] In an apparent attempt to overcome this fact that renders the entire Superboy Notice a nullity, in the Superboy Notice Plaintiffs claim that the Submissions are "embodied" in *More Fun Comics #101*, which itself was published and registered in November 1944.

26  (Zissu Ex. AA, ¶ 2; *see also id.* Ex. L, ¶ 42.) Of course, even a cursory comparison of *More Fun #101* and the Submissions demonstrates that there is no similarity between

27  them except as to material that had previously been published and was owned exclusively by Detective. (*Compare id.* Ex. K with G & H.)

28  [13] The 1909 Act governs whether works created before January 1, 1978 are works for hire. *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 876 (9th Cir.

1  *Realization*, 206 F.3d 1322, 1326 (9th Cir. 2000) (quoting *Lin-Brook Builders Hardware*

2  *v. Gertler,* 352 F.2d 298, 300 (9th Cir. 1965)).[14]  A finding that the hiring party is the

3  motivating force gives rise to a "presumption" of work for hire ownership that could only

4  be altered by an "express" agreement of the hiring party to the contrary.  *May v.*

5  *Morganelli-Heumann & Assocs.*, 618 F.2d 1363, 1368-69 (9th Cir. 1980).[15]  Indeed, to

6  avoid arguments based upon self-serving assertions of subjective intent or other irrelevant

7  facts, the motivating factor inquiry looks only to judicially prescribed, "objective" facts.

8  *Hogarth*, 62 U.S.P.Q.2d at 1327; *May*, 618 F.2d at 1369.  The inquiry focuses on three

9  factors: (a) at whose instance the work was prepared; (b) whether the hiring party had the

10  power to "accept, reject or modify the work"; and (c) at whose expense the work was

11  created.  *Self-Realization*, 206 F.3d at 1326; *Lin-Brook*, 352 F.2d at 300.

12  **1.    The "Instance" Factor Is Established As A Matter Of Law.**  Where an

13  independent contractor has prepared a "derivative work" based upon a pre-existing

14  original work whose copyright is owned by the hiring party, the work is produced at the

15  instance and subject to the right of control of the employing party.  *Playboy Enters., Inc.*

16  *v. Dumas*, 53 F.3d 549, 554 (2d Cir. 1995) (citing *Picture Music*, 457 F.2d at 1216-17;

17  *Hogarth*, 342 F.3d at 163; *accord* 3 Nimmer § 9.03[D] at 9-28.3.  As established in

18  Section I, *supra*, the Submissions were undisputedly derivative works.  This, along with

19  the parties' contractual relationship giving Detective a right of first refusal over Siegel

20  and Shuster's creations and denying them the right to use the Superman character without

21  Detective's approval (Zissu Ex. D, at 1), establishes that Detective was the "motivating

_____

23  2005).

[14] In *Picture Music, Inc. v. Bourne, Inc.*, the Second Circuit described the test as met
24  when "the motivating factor in producing the work was the employer who induced the
creation." 457 F.2d 1213, 1216 (2d Cir. 1972), *cert. denied,* 409 U.S. 997 (1972)
(internal quotation marks and citation omitted).
25  [15] *See also Brattleboro Publ'g Co. v. Winmill Publ'g Corp.*, 369 F.2d 565, 567 (2d Cir.
1966); *Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 62 U.S.P.Q.2d 1301,
26  1318 (S.D.N.Y. 2002), *aff'd*, 342 F.3d 149 (2d Cir. 2003); 1 *Nimmer* § 5.03[D] at 5-
56.10; section 201(b) of the 1976 Act ("[i]n the case of a work made for hire," the hiring
27  party "is considered the author . . . *unless the parties have expressly agreed otherwise* in
a written instrument signed by them.") (emphasis added), which the legislative history
28  describes as adopting the basic principle of 1909 Act law, H. Rep. at 121, and 17 U.S.C.
§ 28 (repealed).

17

1 factor" for these Submissions. If the Submissions were authorized efforts, then they had

2 to have been efforts initiated for the benefit and under the authority of Detective.

3       Instance is also established where, as here, a publisher has a right to supervise,

4 reject or modify an independent contractor's creative efforts. *Twentieth Century,* 429

5 F.3d at 880. In addition, where an incomplete work is provided to a "company" as an

6 "audition," the company is held to be the "motivating factor" behind the creation of that

7 work and at whose instance it is produced. *See, e.g., Niss v. Columbia Pictures Indus.,*

8 *Inc.,* 57 U.S.P.Q.2d 1346, 1353-55 (S.D.N.Y. 2000), *aff'd,* 25 Fed.Appx. 76 (2d Cir.

9 2002) (citing *Wilkes v. Rhino Records, Inc.,* No. 96-56238, 1997 WL 800275, at *1 (9th

10 Cir. Dec. 17, 1997) (holding work submitted for purpose of auditioning to be a work for

11 hire)).[16] In *Niss,* the Court held that where the writer had submitted the "'bare bones' of a

12 story" and a draft of a "screenplay [that] was incomplete," the studio was "the motivating

13 factor in [the] development of the [w]ork" which was held to be a work for hire. 57

14 U.S.P.Q.2d at 1354. The Court held that the works at issue were produced at the studio's

15 instance because, even though the writer was not yet hired, he prepared and "auditioned"

16 works that were "not fully developed." *Id.* at 1354, 1355. In reaching this conclusion,

17 the court relied on *Wilkes,* in which the Ninth Circuit held that works created by an artist

18 *before* he was hired were works made for hire because they were created "for the purpose

19 of auditioning for [the] position" of art director of the Monterey Festival and, thus, the

20 Festival was the motivating factor for the production of the artwork. 57 U.S.P.Q.2d at

21 1354.[17]

22       Here, the Submissions were incomplete works that had to be submitted to

23 Detective by Siegel as an audition or proposal for an ongoing series of Superboy comic

24 _____

25 [16] Because the Ninth Circuit's opinion in *Wilkes* is unpublished, we only refer to this decision to the extent it is cited and excerpted in the Southern District of New York's published decision in *Niss.*

26 [17] *See also Scherr v. Universal Match Corp.,* 417 F.2d 497, 499 (2d Cir. 1969) (discussed in *Niss*) (copyright in statue made by servicemen on their leisure time owned by United

27 States); *In re Marvel Entm't Group,* 254 B.R. 818, 830-31 (D. Del. 2000) (discussed in *Niss*) (writer failed to negate hiring party's instance where he had proposed a "nascent"

28 idea for comic book, submitting "not fully developed" write up "for a character and story").

1  books.  They contain only general concepts and inchoate story proposals – the Pitch

2  merely suggested "a strip named SUPERBOY, which would relate to the adventures of

3  Superman as a youth," but provided reference to only the physical format and the briefest

4  "sales pitch" for such a comic (Zissu Ex. G at 2), *see Niss*, 57 U.S.P.Q.2d at 1353-55, and

5  the Script offered a thirteen-page treatment, without any illustrations, for the first of a

6  series of comics (Zissu Ex. H).  Siegel sent these solicitations to Detective (and not

7  elsewhere) because Detective was the only party entitled to publish and market Superman

8  works, including any derivative works based thereon; that the Submissions were not

9  created pursuant to an express request by Detective is legally irrelevant to determining

10  the element of instance.  Accordingly, since the Submissions were derivative works

11  submitted to Detective – pursuant to the September 1938 Agreements, the only entity that

12  could have published and had the right to control Superboy – for this reason alone

13  Detective must be deemed, as a matter of law, to have induced the creation of the

14  Submissions and to be the motivating force behind their creation.

15       **2.    Detective Possessed The Right To Reject Or Modify The Works.**  With

16  respect to this factor, the recipient need only possess the power to "accept, reject, or

17  modify" the work at issue.  *Twentieth Century*, 429 F.3d at 880 (citing *Picture Music*,

18  457 F.2d at 1217).  Because Detective controlled the underlying works upon which the

19  Submissions were based, it alone possessed the right to direct and supervise any work

20  derived therefrom.  *Hogarth*, 342 F.3d at 163; *Picture Music*, 457 F.2d at 1216-17.  The

21  Submissions by their own terms and context invited Detective's acceptance or rejection

22  of the comics Siegel proposed for publication; they were not and could not have been

23  submitted for consideration by other publishers.

24       **3.    The Works Were Prepared at the Expense Of DC's Predecessor.**  As a

25  matter of law, where the work at issue is to be produced by the hiring party who takes on

26  "all the financial risk" – exactly what Siegel proposed here – the work is created at the

27  hiring party's expense.  *Twentieth Century,* 429 F.3d at 881; *see also Community for*

28  *Creative Non-Violence v. Reid*, 490 U.S. 730, 741 (1989).  The expense element is also

1  satisfied whenever the employing party "simply" pays any sum certain to the creator

2  regardless of amount and regardless of whether these works were ever published.

3  *Playboy*, 53 F.3d at 555. *See also Niss*, 57 U.S.P.Q.2d at 1354. It is immaterial under

4  this analysis that Siegel did not receive payment at the time he submitted the Pitch or the

5  Script to Detective: Siegel received his portion of a payment of $94,013.16 in or around

6  May 1948 for, *inter alia,* his pitch of "Superboy." *National*, 362 F. Supp. at 1035. In

7  sum, because Detective was the motivating party at whose instance and expense the

8  Submissions were prepared, with the power to accept, reject or modify them (*Self-*

9  *Realization*, 206 F.3d at 1327), they are works made for hire which, as a matter of law,

10 cannot be terminated. 17 U.S.C. § 304(c).[18]

### C. By Leaving In Place The May 21, 1948 Grant, Plaintiffs Have Not Terminated The Grants Of Copyright In The Submissions.

12      As set forth above, the 1976 Act termination provisions sought to forge a balance

13 between authors' rights to renegotiate and fair notice to publishers. This is why a notice

14 of termination "must" identify "the grant" to which it applies. 37 C.F.R. § 201.10

15 (b)(1)(iv). Thus, if an author has entered into five separate grants of rights for the same

16 work, and a notice of termination identifies only four of the grants, the fifth grant remains

17 "intact" and the grantee's rights thereunder unaffected. *Cf. Burroughs*, 683 F.2d at 621-

18 22; *Milne*, 430 F.3d at 1048 (copyright termination invalid where pre-1978 grant is still

19 effective); 3 *Nimmer*, § 11.06[B] at 11-40.22(1) n.63. The Superboy Notice identifies for

20 termination only the grants contained in the Stipulation and the 1975 Agreement, and

21 references the other grants in the Superman Notices. (Zissu Ex. AA, ¶ 3 & n.7.) It *fails*

22 to terminate the grant in the Final Consent Agreement in which Siegel, *inter alia,*

---

[18] If the Submissions were not works made for hire, their preparation was unauthorized
and fell outside the scope of permitted activities under the parties' contractual
relationship. This would also render them ineligible for termination because, then,
neither Siegel nor Shuster could claim any copyright ownership in the Submissions. As
established in Section I, *supra*, under both the 1909 Act and the 1976 Act, copyright
protection in a derivative work extends only to the new material added. 17 U.S.C. § 7
(repealed); 17 U.S.C. § 103(b). However, protection for any new material in a derivative
work *does not* attach if the underlying work is used without permission. 17 U.S.C. § 7
(repealed); 17 U.S.C. § 103(a). *See, e.g., Pamfiloff v. Giant Records, Inc.*, 794 F. Supp.
933, 938 (N.D. Cal. 1992); 1 *Nimmer* § 3.06 at 3-34.30. *See also Litchfield v. Spielberg*,
736 F.2d 1352, 1357 (9th Cir. 1984); *Oddo*, 743 F.2d at 634; *Mirage*, 856 F.2d at 1343.

1  effectuated the transfer to National of the sole and exclusive ownership of all rights

2  relating to "Superboy." (*Id.* Exs. AA and R at 5.) Because Plaintiffs failed to identify the

3  Final Consent Agreement, the grant of rights in "Superboy" found therein remains intact.

4  **III.   AS A MATTER OF LAW, PLAINTIFFS CAN POINT TO
         NO COPYRIGHTABLE MATERIAL IN THE**

5  **SUBMISSIONS THAT IS INFRINGED BY *SMALLVILLE***

6  Plaintiffs have sought to manufacture a claim for copyright infringement by

7  claiming that the *Smallville* television series is not based upon Superman but actually

8  copies the Submissions and thus is infringing. That this claim is completely unsupported

9  by any facts is revealed once the Submissions and the *Smallville* show are actually

10 compared in accordance with the established requirements of copyright law.

11 In order to prove copyright infringement, Plaintiffs must show (1) ownership of a

12 valid copyright and (2) Defendants' copying of protected elements of the copyrighted

13 work. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994).

14 However, a plaintiff "may place '*no* reliance upon any similarity in expression resulting

15 from 'unprotectable elements.'" *Id.* at 1443 (quoting *Aliotti v. R. Dakin & Co.*, 831 F.2d

16 898, 901 (9th Cir. 1987)). In assessing a claim of copyright infringement, courts must

17 engage in a "filtration process," removing from the comparison of the works any portion

18 of the plaintiff's work not protected under copyright or not owned by the plaintiff. *Apple*,

19 35 F.3d at 1443; *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1176-77 (C.D. Cal.

20 2001, *aff'd in part, dismissed in part*, 90 Fed.Appx. 496 (9th Cir. 2003). Among the

21 elements to be filtered out are "ideas" as opposed to their expression ("[i]n no case does

22 copyright protection for an original work of authorship extend to any idea . . . concept,

23 principle or discovery, regardless of the form in which it is described, explained,

24 illustrated, or embodied in such work" 17 U.S.C. § 102 (b)), as well as material repeated

25 from pre-existing works (*i.e.*, all Superman works pre-dating the Script), *Shaw v.*

26 *Lindheim,* 809 F. Supp. 1393, 1402 (C.D. Cal. 1992), or "elements borrowed from

27 another author." *Idema*, 162 F. Supp. 2d at 1177. "The aspects of a derivative work

28 added by the derivative author are that author's property, but the element drawn from the

1  pre existing work remains on grant from the owner of the pre-existing work." *Stewart*,

2  495 U.S. at 223 (1990).[19]

3  Once the non-copyrightable elements and matter not owned by the plaintiff are

4  filtered out of the work, an objective comparison of the remaining copyrightable elements

5  of the works at issue is conducted. For literary works, a court will compare such original

6  elements as "plot, theme, dialogue, mood, pace, setting, characters, and sequence of

7  events." *See Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir.

8  1994). The "filtration" described above is part of the Ninth Circuit's "extrinsic" test of

9  substantial similarity, an objective legal test "generally employed at summary judgment .

10  . . ." *Idema*, 162 F. Supp. 2d at 1177 (citing *Three Boys Music v. Bolton*, 212 F.3d 477,

11  481 (9th Cir. 2000)).

12  Plaintiffs' entire claim to exclusive rights in Superboy rests upon the Submissions.

13  (*See* Zissu Ex. L, ¶¶ 18-25.) However, when these works are stripped of both pre-

14  existing derivative and other unprotectable material, such as ideas, Plaintiffs are left with

15  very little, if any, copyrightable material and, as shown below, none used in any

16  *Smallville* episode created after November 14, 2004, the effective date of the Superboy

17  Notice.

18  **A.   Applying The "Filtration Process" To The Submissions**
     **Demonstrates That Plaintiffs Own Virtually No**
19  **Copyrightable Subject Matter Therein, If Any At All.**

20  Seeking to establish some "copyrightable" elements that they own in the

21  Submissions, Plaintiffs grossly misrepresent the contents of the Script. For example, they

22  allege that the Script establishes "'Superboy's character, origins, family and social life as

23  a youth growing up in a small town in the rural American heartland." (Ex. L, ¶ 25.)

24  None of this is true. As demonstrated in the Chart (*see* pages 4-5, *supra*), the character,

25  origins, and family life of young Superman were all established well before 1940 in

26  _____

   [19] This point is explained in the legislative history, "[t]he most important point here is one
27  that is commonly misunderstood today: copyright in a 'new version' covers only the
   material added by the later author, and has no effect one way or the other on the
   copyright or public domain status of the preexisting material." H. Rep. at 57; *see also* 17
28  U.S.C. § 103(b) ("copyright in a . . . derivative work extends only to the material
   contributed by the author of such [derivative] work").

ER 3834

1   materials owned exclusively by Detective. Except for the references to a toddler and

2   grade-school Superman, the Script contains no development of Superman's social life.

3   Nor does the Script reference Superman being raised in "a small-town in the rural

4   American heartland." (*Compare id.* Ex. H *with* L, ¶ 25.) Any claim that the Script "starts

5   with the youth at age eleven or twelve, while he attends junior high school" is similarly

6   false – the Script describes Superman as being in kindergarten and in fifth grade. (*Id.* Ex.

7   H at 8-9.)

8        As noted, Superman's origins and appearance as a youth had already been

9   published by Detective when the Script was submitted. (*See* Chart and Zissu Exs. F, I,

10  J.)[20] Thus, virtually all arguably copyrightable components in the Submissions are taken

11  from that preexisting Superman comics owned exclusively by Detective. As a matter of

12  law, Siegel (and now Plaintiffs) cannot claim ownership in pre-existing material.

13  *Stewart*, 495 U.S. at 223. Once copyrightable components not original to or owned by

14  Siegel are stripped away, *see* 17 U.S.C. § 103(b), the Submissions contain no more than

15  the general concept of a youth with superpowers – an uncopyrightable idea, *see* 17 U.S.C.

16  § 102(b), inevitable in a prequel to Superman.[21] That is, after application of the filtration

17  process, all that remains in the Submissions that is arguably copyrightable is their literal

18  text.

19       **B.    No Episode Of *Smallville* Created After November**
20              **14, 2004 Infringes Any Right Of Plaintiffs.**

         Under section 304(c)(6), even if Plaintiffs could recapture the copyright for

21  Superboy, this only affects DC's right to prepare "*after the termination . . . other*

22  *derivative works* based upon the copyrighted work" (emphasis added). 17 U.S.C. §

23

---

24  [20] In addition to the previously published works identified in Section I, *supra*, such idea
    was also published in *The Adventures of Superman*, a novel by George Lowther

25  published in 1942 (Zissu Ex. CC), as well as in a newspaper strip published in May 1942

26  (*id.* Ex. DD). Neither of these works is named in the Superboy Notice, nor is the notice
    timely as to such works.

27  [21] Even the Westchester Action Interlocutory Findings upon which Plaintiffs rely state
    only that *More Fun Comics* embodied and were "based upon the *idea, conception, and*

28  *plan*" contained in the Pitch and in the Script, and do not identify any copyrightable
    subject matter included in *More Fun Comics*. (Zissu Ex. O, ¶¶ 163-166) (emphasis
    added). *Accord* 17 U.S.C. § 102(b).

1    304(c)(6).  The only specific work of Defendants that Plaintiffs claim infringes the

2    Submissions is *Smallville*.  The series premiered in the fall of 2001, and chronicles the

3    adventures of Clark Kent while in high school in the town of Smallville.  A major

4    premise of *Smallville* – presented only in its first episode – is that, on the day the infant

5    Superman arrived in his space capsule from the planet Krypton, a shower of meteors

6    (Kryptonite) from Krypton also struck Smallville, plaguing the town with a number of

7    unexplained supernatural phenomena ever since.  (*See* Declaration of Melinda Hage

8    ("Hage Decl."), ¶ 3 & Exs. A, B.)  These elements emanate from pre-existing Superman

9    comic books.  (Zissu Exs. F, I, J.) [22]

10        From this background and through the use of familiar Superman characters,

11   *Smallville* moves in its own, new direction.  The show centers around Clark Kent as a

12   modern teenager coming to terms with his powers and dealing with the unusual

13   occurrences in Smallville.  (Hage Decl., ¶ 3.)  The action also highlights his relationships

14   with Lana Lang (his love interest) and a young Lex Luthor, who would eventually

15   become Superman's main enemy.  (*Id.* ¶ 3.)  As the series has progressed, it has

16   increasingly devoted more of its story lines to the supernatural and science fiction – with,

17   among other things, a focus on Superman's discovery of his origins on the planet

18   Krypton and his father, Jor-El, all elements that predated the Submissions.  (*Id.* ¶ 3 &

19   Exs. A-J; *compare with* Chart, *supra*.)  None of these elements are present in the

20   Submissions.

21        The only similarity between *Smallville* on the one hand, and the Submissions on

22   the other, is that they refer to Superman's origins and embody the idea of Superman as a

23   youth.  As a matter of law, Plaintiffs cannot claim ownership of an idea or of the pre-

24   existing Superman story elements reused in the Submissions.  Once these ideas and pre-

25   existing foundation story elements are "filtered out," what remains of the works that may

26   be copyrightable and owned by Plaintiffs does not resemble any of the expressive content

27   in *Smallville*, including any episodes prepared *after* November 14, 2004, the effective

28   [22] As is the case with Superboy, Plaintiffs also conceded in the Superman Notices that
     *Smallville* is a derivative work based on Superman.  (*Id.* Exs. S-Y at 3 n.1.)

**ER 3836**

1    date of the Superboy Notice. Further distinguishing *Smallville* from the Submissions is

2    the way the idea of Superman as a youth is presented in each work. (*Compare* Zissu Exs.

3    G, H, *with* Hage Exs. A-J.) The concept pitched by Siegel of a simple Superboy going

4    around in the Superman costume bears no resemblance to the complex teenage Clark

5    Kent in *Smallville*, who never wears the Superman costume (Hage Decl. ¶ 3) and whose

6    life circumstances are dictated as much by who he is as the modern, supernatural world in

7    which he lives.

8       Accordingly, despite Plaintiffs' boilerplate allegations of substantial similarity

9    between the Script and *Smallville*, (*see* Zissu Ex. L, ¶¶ 37-40, 45), as a matter of law

10    Plaintiffs cannot identify any original, copyrightable expressive element from the Script

11    (or Pitch) exploited in *Smallville* after November 14, 2004. (*See* pages 3-6, *supra*.) The

12    works are so entirely different that there is no possible actionable similarity.

13                                **CONCLUSION**

14       The Superman Action is the proper forum to adjudicate all claims Plaintiffs may

15    have relating to their purported co-ownership of Superman, including its derivative,

16    Superboy. As a matter of law, there is simply no basis for Plaintiffs' separate claims

17    with respect to Superboy, and Defendants therefore respectfully request that the Court

18    grant their summary judgment motion in its entirety.

19    DATED: February 15, 2006         Respectfully submitted,

20                            FROSS ZELNICK LEHRMAN & ZISSU, P.C.

21                            PERKINS LAW OFFICE, P.C.

22                                -and-

23                            WEISSMANN WOLFF BERGMAN
                                COLEMAN GRODIN & EVALL LLP

24

25                       By: _____
                             Roger L. Zissu

26

27                         *Attorneys for Defendants and Counterclaimant*

I:\jweinberger\dcc\Siegel Litigation\Pleadings\04cv8776\060215-0425344-Memo of Law in Support of MSJ Superboy-jdw.DOC

28

1 | Marc Toberoff (CA State Bar No. 188547)
Nicholas C. Williamson (CA State Bar No. 231124)
2 | LAW OFFICES OF MARC TOBEROFF, PLC
1999 Avenue of the Stars, Suite 1540
3 | Los Angeles, CA 90067
Telephone: (310) 246-3333
4 | Facsimile: (310) 246-3101

FILED

2006 FEB 15 PM 4: 02

5 | Attorneys for Plaintiffs and Counterclaim Defendants
JOANNE SIEGEL and LAURA SIEGEL LARSON

6

### UNITED STATES DISTRICT COURT

7

### CENTRAL DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| 9  JOANNE SIEGEL, an individual; and 10 LAURA SIEGEL LARSON, an individual, | Case No. CV 04-08776 RSWL (RZx) |
| 11  Plaintiffs, | [Honorable Ronald S. W. Lew] |
| 12  vs. | **PLAINTIFFS JOANNE SIEGEL AND LAURA SIEGEL LARSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| 13  TIME WARNER INC., a corporation; 14 WARNER COMMUNICATIONS INC., a corporation; WARNER 15 BROS. ENTERTAINMENT INC., a corporation; WARNER BROS. 16 TELEVISION PRODUCTION INC., 17 a corporation; DC COMICS, a general partnership; and DOES 1-10, | [Complaint filed: October 22, 2004]  Date:  March 20, 2006 Time:  9:00 a.m. Place:  Courtroom 21, 5th Floor |
| 18 | |
| 19  Defendants. | [Statement of Uncontroverted Facts and Conclusions Of Law; Declaration |
| 20 | of Marc Toberoff; Request For |
| 21  DC COMICS, | Judicial Notice and [Proposed] Judgment Filed Concurrently |
| 22  Counterclaimant, | Herewith] |
| 23  vs. | |
| 24  JOANNE SIEGEL, an individual; and 25 LAURA SIEGEL LARSON, an individual, | |
| 26 | |
| 27  Counterclaim Defendants. | |
| 28 | |

# TABLE OF CONTENTS

I.  INTRODUCTION.................................................................1

II.  UNDISPUTED FACTS..........................................................2

II.  LEGAL ANALYSIS.............................................................8

    A.  Standard of Review.......................................................8

    B.  The Termination Provisions Of The 1976 Copyright Act ...................................................................8

        1.  The Renewal Term Under The 1909 Copyright Act...................................................................8

        2.  The 1976 Copyright Act Was Designed To Give Authors And Heirs Full Benefits Of The Extended Renewal  Term.........................................9

    C.  Defendants Are Bound By The 1947 State Action ...............11

    D.  Plaintiffs' Duly Exercised Their Termination Right................13

        1.  Plaintiffs' Termination Complied with the Copyright Act......13

        2.  The Termination Notice Was Not Required To List The 1948 Consent Judgment.....................................16

    E.  Plaintiffs' Own A Valid Statutory Copyright In "Superboy".......17

        1.  Copyright Secured By Registration Of The Collective Periodical That Published The Siegel Superboy Material.......17

        2.  Siegel's Had The Legal Right to Create Superboy.............19

        3.  The Siegel Superboy Material Were Not Works-For-Hire......21

IV.  CONCLUSION................................................................25

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                    <u>Pages</u>

*Allen v. McCurry,*
   449 U.S. 90, 101 S.Ct. 411, 66 L.Ed. 2d 308 (1980)...................11

*Ashe v. Swenson,*
   397 U.S. 436, 444, 25 L.Ed. 2d 469, 90 S.Ct. 1189 (1970)...............22

*Burroughs v. MGM,*
   683 F.2d 610, (2d. Cir. 1982)...........................................17

*Dolman v. Agee,*
   157 F.3d 708, 711-712 (9th Cir. 1998)...............................24

*EFCO Corp. v. U.W. Marx, Inc.,*
   124 F.3d 394, 397 (2d Cir. 1997)......................................12

*Foad Consulting Group, Inc. v. Musil Govan Azzalino,*
   270 F.3d 821, 825, 831-832 (9th Cir. 2001)...........................20

*Fred Fisher Music Co. v. M. Witmark & Sons,*
   318 U.S. 643 (1943)...................................................9

*Fuchsberg & Fuchsberg v. Galizia,*
   300 F.3d 105, 109 (2d Cir. 2002).....................................12

*Garguili v. Thompkins,*
   790 F.2d 265, 269 (2d Cir. 1986).....................................12

*Jasper v. Bovina Music, Inc.,*
   314 F.3d 42, 46 (2d Cir. N.Y. 2002)..................................22

*JBJ Fabrics, Inc. v. Brylane, Inc.,*
   714 F. Supp. 107, 110 (S.D.N.Y. 1989) ...............................20

*Jerome Siegel and Joseph Shuster v. National Periodical Publications et al.,*
   364 F. Supp. 1032 (S.D.N.Y. 1973)....................................2

*Jerome Siegel and Joseph Shuster v. National Periodical Publications, et al.,*
   508 F.2d 909 (2nd Cir. 1974)...............................1, 3, 19, 23

*Johnson v. Watkins,*
   101 F.3d 792 (2d Cir. 1996)..........................................12

*Kamilche Co. v. United States,*
   53 F.3d 1059, 1062 (9th Cir. 1995)...................................11

*Knickerbocker Toy Co. v. Faultless Starch Co.,*
   467 F.2d 501, (C.C.P.A. 1972)........................................22

*Lin-Brook Blders Hrdwre v. Gertler,*
   352 F.2d 298, 300 (9th Cir. 1965)....................................24

ii

*Marvel Characters, Inc. v. Simon,*
  310 F.3d 280 (2d Cir. 2002)................................11

*Matsushita Elec. Idus. Co. v. Epstein,*
  516 U.S. 367, 11 S.Ct. 873, 134 L.Ed. 2d 6 (1996).....................11

*Migra v. Warren City Sch. Dist. Bd. of Ed.,*
  465 U.S. 75, 84, 104 S.Ct. 892, 79 L.Ed. 2d 56 (1984).................11

*Mills Music Inc. v. Snyder,*
  469 U.S. 153 (1985)......................................10

*Morse v. Fields,*
  127 F. Supp. 63, 64-65 (SDNY 1954)......................18

*Murphy v. Gallagher,*
  761 F.2d 878, 882 (2d Cir. 1985).........................12

*Music Sales Corp. v. Morris,*
  73 F. Supp. 2d 364 (S.D.N.Y. 1999)......................17

*New York Times Co. v. Tasini,*
  533 U.S. 483 (2001).....................................10

*Norris v. Grosvenor Mktg. Ltd.,*
  803 F.2d 1281 (2d Cir. 1986)............................12

*Pension Trust Fund for Oper. Engineers v. Triple A Machine Shop, Inc.,*
  942 F.2d 1457, 1464-1465 (9th Cir. 1991)................11

*Picture Music, Inc. v. Bourne, Inc.,*
  314 F. Supp. 640, 652 (S.D.N.Y. 1970)...................13

*Playboy Enters., Inc. v. Dumas,*
  53 F.3d 549,554 (2d Cir. 1995)..........................24

*Self-Realization Fellowship Church v. Ananda Church,*
  206 F.3d 1322, 1329 (9th Cir. 2000)..................18,24

*Stewart v. Abend,*
  495 U.S. 207 (1990)...................................8, 9, 10

*T.B. Harms Co. v. Eliscu,*
  339 F.2d 823, 826 (2d Cir. 1964)........................22

*Twentieth Century Fox Film Corp. v. Entertainment Distrib.,*
  429 F.3d 869, 877 (9th Cir. 2005).......................24

*Vernitron Corp. v. Benjamin,*
  440 F.2d 105,108 (2d Cir. 1971)......................13, 19

**STATE CASES**

*O'Brien v. City of Syracuse,*
  54 N.Y.2d 353, 357 (1981)...............................12

iii

*Reilly v. Reid,*
    45 N.Y.2d 24, 29-30 (1978)..................................................12

*Schwartz v. Pub. Adm'r,*
    24 N.Y.2d 65, 71 (1969)....................................................12

*Smith v. Russell Sage College,*
    54 N.Y.2d 185, 192 (1981)................................................12

**STATUTES**

17 U.S.C. § 1 [1909 Act].........................................................8

17 U.S.C. § 26 [1909 Act]...................................................21,24

17 U.S.C. § 101 *et seq*[1976 Act]............................................9

17 U.S.C. § 304(a).................................................................9

17 U.S.C. § 304(b).................................................................9

17 U.S.C. § 304(c).........................................................passim

17 U.S.C. §304(d).................................................................9

37 C.F.R. § 201.10...........................................................7,17

Fed. R. Civ. P. 56(c)..............................................................8

**MISCELLANEOUS**

3-30 *Moore's Federal Practice and Procedure*§ 30.73.................22

18-133 *Moore's Federal Practice-Civil* § 133.30......................11

2-7 *Nimmer on Copyright* § 7.12 ........................................18

3-9 *Nimmer on Copyright* § 9.11[B] [1](2005)........................9

3-10 *Nimmer on Copyright* § 10.03......................................20

.3-12 *Nimmer on Copyright* § 12.01.....................................22

H.R. Rep. No. 94-1476 (1976)..........................................9, 10

S. Rep. No. 104-315 (1996)..................................................9

iv

# I.  INTRODUCTION

Plaintiffs Joanne Siegel and Laura Siegel Larson ("Plaintiffs") are the widow and daughter, respectively, of Jerome Siegel ("Siegel"), the co-author of the world renowned comic book hero, "Superman," and the author of "Superboy."  This case arises out of Plaintiffs' proper exercise on March 8, 2002 of their right under section 304(c) of the 1976 Copyright Act to recapture Siegel's original copyright in "Superboy" by serving statutory notice on the defendants herein ("Defendants") terminating Siegel's prior grant(s) of "Superboy" to Defendants' predecessor(s) (the "Termination").  Plaintiffs' Termination complied with all the requirements of 17 U.S.C. § 304(c) and 37 C.F.R. § 201.10, the regulations promulgated thereunder by the Register of Copyrights.  On November 17, 2004, the noticed Termination date, all rights that Siegel had conveyed in "Superboy" to Defendants' predecessors, duly reverted to Plaintiffs.

Plaintiffs hereby move for partial summary judgment that their statutory Termination is valid and that Plaintiffs have thereby recaptured Siegel's "Superboy."  This issue is ripe for summary judgment.  There are no material issues of fact due to the judicial findings in a prior 1947 action between the parties' predecessors in the Supreme Court of the State of New York involving the same underlying facts relevant to this motion.  The findings of fact and conclusions of law in the 1947 action regarding Siegel's creation/ownership of "Superboy" and the relationship between Siegel and Defendants' predecessors are binding on Defendants under the doctrines of *res judicata* or collateral estoppel and are dispositive of Plaintiffs' motion.  The preclusive effect of the findings and conclusions in the 1947 state court action was explicitly confirmed in *Jerome Siegel and Joseph Shuster v. National Periodical Publications, et al.* 509 F.2d 909, 912-913 (2nd Cir. 1974), a subsequent *federal copyright action* against Defendants' predecessors.

1

## II.    UNDISPUTED FACTS

In or about 1947, Siegel and Joseph Shuster ("Shuster"), the original illustrator of "Superman," filed an action in the Supreme Court of the State of New York, County of Westchester (the "1947 Action") against Defendant DC Comics' predecessor, National Comics Publications, Inc. ("National") to determine the validity of various "Superman" contracts between Siegel and Shuster and National's predecessors, including Detective Comics, Inc. ("Detective"), and to determine the ownership of Siegel's creation "Superboy."

Pursuant to stipulation of the parties the action was tried before an Official Referee of the New York Supreme Court, Judge Addison Young ("Judge Young"). *See Jerome Siegel and Joseph Shuster v. National Periodical Publications et al.*, 364 F. Supp. 1032, 1034-1035 (S.D.N.Y. 1973) *aff'd* 509 F.2d 909, 912-913 (2nd Cir. 1974) (both the District Court and Second Circuit court describe the procedural background of the 1947 Action).

After trial of the 1947 Action, Judge Young rendered an opinion dated November 21, 1947 (the "1947 Opinion"). *Id.* On April 12, 1948, Judge Young signed detailed findings of fact and conclusions of law and rendered an interlocutory judgment from which no appeal was perfected. *Id.* After reviewing considerable documentary and testimonial evidence, Judge Young found that National owned "Superman" pursuant to an instrument dated March 1, 1938, but that Siegel was the sole author and owner of "Superboy." *See* Judge Young's Findings of Fact and Conclusions of Law (Nos. 25-26), dated April 12, 1948, attached as Exhibit "B" to both the Declaration of Marc Toberoff ("Toberoff Decl.") and the Request for Judicial Notice filed concurrently.

Settlement negotiations ensued, resulting in a stipulation of settlement by the parties dated May 19, 1948 ("1948 Stipulation"), and pursuant to the stipulation the entry in the New York Supreme Court of a final consent judgment dated May 21, 1948 ("1948 Consent Judgment"). *Siegel,* 364 F. Supp.

2

1  at 1034-1035; 509 F.2d at 912-913.  *See* 1948 Stipulation and 1948 Consent

2  Judgment attached as Exhibits "B" and "C," respectively, to Toberoff Decl.

3      In 1969, Siegel and Shuster sought declaratory relief in the U.S. District

4  Court for the Southern District of New York regarding ownership of the renewal

5  copyright to "Superman," resulting on appeal in the Second Circuit's decision in

6  *Siegel, supra.*  The Second Circuit found that Judge Young's opinion, findings

7  of fact, conclusions of law and resultant consent judgment after settlement of the

8  1947 Action were binding on the parties under the doctrine of *res judicata*, and

9  based thereon found that National owned the renewal copyright to Superman

10  under the March 31, 1948 Grant.  *Siegel*, 509 F.2d at 912-913.

11     Plaintiffs' motion for partial summary judgment should be granted

12  because the findings of fact and conclusions of law in these prior litigations

13  between the parties' predecessors are dispositive of Plaintiffs' motion.

14                     **The Creation of Superman**

15     The facts and conclusions of law set forth below are from the findings of

16  fact ("1948 FOF") and conclusions of law ("1948 COL") of Judge Young in the

17  1947 Action (*see* Toberoff Decl., Exh. B) and/or from the Second Circuit's

18  decision in *Siegel, supra*, except as otherwise noted:

19     In 1933, Jerome Siegel ("Siegel") conceived of the original idea of a

20  cartoon strip featuring a unique man of superhuman powers who would perform

21  feats for the public good.   Siegel called him "Superman."  1948 FOF, Fact 9;

22  509 F.2d at 911.  In 1934, Siegel wrote, and the artist, Joe Shuster ("Shuster"),

23  illustrated and "inked" multiple "Superman" comic strips intended for

24  publication in a newspaper format.  1948 FOF, Facts 8, 10; 509 F.2d at 911, 914.

25  By 1934, "Superman and his miraculous powers were completely developed [by

26  Siegel and Shuster]."  509 F.2d at 911, 914; *see* 1948 FOF, Facts 8-11.

27     In or about January–February 1938, when Detective expressed interest in

28  publishing Siegel and Shuster's 1934 Superman comic strip in a magazine

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT     **ER 3845**

1  format, Siegel and Shuster chose to cut and paste their 1934 Superman comic
2  strip into separate panels to render their newspaper strip more suitable for a
3  magazine layout.  1948 FOF, Facts 17-18, 31-33; 509 F.2d at 911.

4        By an instrument dated March 1, 1938 (the "March 1, 1938 Grant"),
5  Siegel and Shuster agreed to the publication of their Revised 1934 Superman
6  Comic Strip by Detective in consideration for the sum of $10 per page for this
7  thirteen page installment equal to a total of $130.  1948 FOF, Facts 23-25; 509
8  F.2d at 911, 914.  Detective published Siegel and Shuster's 1934 Superman
9  comic strip in the "June, 1938" issue of "Action Comics No. 1," which was first
10 published on April 18, 1938.  1948 FOF, Facts 30-33.  Siegel and Shuster
11 thereafter continued to create "Superman" comic strips which were published in
12 succeeding issues by Detective.  1948 FOF, Fact 35.

13       On September 22, 1938, Siegel and Shuster entered into an agreement
14 with Detective (the "September 22, 1938 Agreement") to produce the "artwork
15 and continuity" for five existing comic strips created by them, including
16 "Superman." 1948 FOF, Facts 39, 46.  In addition, the September 22, 1938
17 Agreement permitted Siegel and Shuster to create new comic book features,
18 provided National had a right of first refusal to accept or reject same within six
19 weeks of the submission thereof.  1938 Agreement, p.1, Toberoff Decl., Exh. E.

20       On December 19, 1939, Detective and Siegel and Shuster entered into a
21 supplemental agreement raising Siegel and Shuster's per page compensation rate
22 for the increasingly popular "Superman" comic strip.  1948 FOF, Fact 52.

23              **Siegel's Creation Of "Superboy"**

24       In or about 1938, Siegel conceived of a new comic strip series entitled
25 "Superboy." 1948 FOF, Fact 155.  On November 30, 1938 Siegel submitted to
26 Detective for its acceptance or rejection under the terms of the September 22,
27 1938 Agreement, a written synopsis or summary of the character, conception
28 and plan for his "Superboy" comic strip series (the "Superboy Synopsis"), which

4

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          **ER 3846**

1  Siegel suggested could run in Detective's magazines, "More Fun Comics" or
2  "New Adventure Comics." 1948 FOF, Facts 155-156.

3  By letter to Siegel dated December 2, 1938, Detective did not elect to
4  purchase Siegel's "Superboy" within six weeks from it submission per the terms
5  of the September 22, 1938 Agreement. 1948 FOF, Facts 157-159.

6  Thereafter, in December, 1940, Siegel authored a complete original
7  "Superboy" story ("Superboy Story"; collectively referred to with the Superboy
8  Synopsis, as the "Siegel Superboy Material"). 1948 FOF, Fact 160. The Siegel
9  Superboy Material contained in detail and with particularity the unique
10 conception and character of "Superboy;" the continuity and dialogue for the first
11 "release" or "releases" of "Superboy;" and the plan for the future publication of
12 a "Superboy" comic book series. *Id.*

13 On or about December of 1940, Mr. Siegel submitted his Superboy Story
14 to Detective for its further consideration; however, Detective did not elect to
15 purchase the Superboy Story within six weeks of its submission per the
16 September 22, 1938 Agreement. 1948 FOF, Facts 160, 162.

17 Jerome Siegel entered the U.S. Army in July, 1943 to serve his country
18 during World War II. *See* 1948 FOF, Fact 182. While Siegel was stationed
19 abroad, Detective, without notice to Siegel used and published the Siegel
20 Superboy Material as an illustrated comic book story entitled "Superboy" in the
21 body of the magazine issue, More Fun Comics, No. 101, which was published
22 and issued for sale in December, 1944. 1948 FOF, Fact 163-166, 168.
23 Thereafter, Detective released "Superboy" comic strips in magazines bi-monthly
24 until February, 1946 and monthly thereafter. 1948 FOF, Facts 169.

25 Detective's first "comic strip release entitled SUPERBOY published in
26 December of 1944 [in More Fun Comics, No. 101] embodied and was based
27 upon the idea, plan and conception contained in the [Superboy Story] submitted
28 by...SIEGEL to DETECTIVE COMICS, INC. in December of 1940," 1948

1  FOF, Fact 165; and "embodied and was based upon the idea, plan and

2  conception contained in the [Superboy Synopsis] dated November 30, 1938.

3  1948 FOF, Fact 164.

4      In fact "[a]ll of the comic strip material published [by Detective] under the

5  title SUPERBOY was based upon the idea, plan, conception and direction

6  contained in the [Siegel Superboy Material]." 1948 FOF, Facts 171-172.

7      "SUPERMAN...did not contain the plan, scheme, idea or conception of

8  the comic strip SUPERBOY as it was later submitted by...SIEGEL to

9  DETECTIVE COMICS, INC. in [the Siegel Superboy Material]," 1948 FOF,

10  Fact 166; and "did not contain the plan, scheme, idea or conception of the comic

11  strip SUPERBOY as published by DETECTIVE COMICS, INC. and by

12  NATIONAL COMICS PUBLICATIONS, INC from December, 1944 until

13  [April, 1948]." 1948 FOF, Fact 167.

14      "Siegel is the originator and the sole owner of the comic strip feature

15  SUPERBOY." 1948 COL, No. 25. "Siegel, as the originator and owner of the

16  comic strip feature ha[d] the sole and exclusive right to create, sell and distribute

17  comic strip material under the title SUPERBOY of the type and nature

18  [t]heretofore published [by Detective and National]." 1948 COL, No. 26.

19      Upon Siegel's return from the war in January of 1946, Detective entered

20  into negotiations with Siegel to purchase the Siegel Superboy Material and to

21  hire Siegel to write additional "Superboy" comic strips. However, no agreement

22  was reached. 1948 FOF, Facts 183-184.

23      Based on his above findings of fact and conclusions of law, Judge Young

24  concluded in the 1947 Action that the defendants National *et al.* be "perpetually

25  enjoined and restrained from creating, publishing selling or distributing any

26  comic strip material of the nature now and heretofore sold under the title

27  SUPERBOY, or any other comic strip material made in imitation of the

28  conception, characters, nature, incidents, actions or plot of [Siegel's] comic strip

6

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          ER 3848

1   SUPERBOY…" 1948 COL, No. 25; and that defendants "account to… Siegel
2   for all profits derived from the publication, sale and distribution of all comic
3   strip material entitled SUPERBOY…" 1948 COL, No. 27; 1947 Opinion,
4   Toberoff, Exh. A, pp. 11-12.

5        Following Judge Young's opinion, findings of fact and conclusions of
6   law, settlement negotiations ensued, resulting in the 1948 Stipulation of
7   settlement between the parties. Toberoff Decl., Exh. C. In the 1948 Stipulation,
8   Siegel, in exchange for a settlement payment, agreed, in part, that National shall
9   have the exclusive rights to "Superboy." 1948 Stipulation, ¶¶ 9-10, *Id.* Two
10  days later, the New York Supreme Court entered on May 21, 1948 a final
11  consent judgment pursuant to the 1948 Stipulation. Toberoff Decl., Exh. D.

12       On December 23, 1975, Siegel and Shuster entered into an agreement
13  with Warner Communications Inc. (the "1975 Agreement"), the alleged parent
14  company of National, which, in exchange for Siegel and Shuster's
15  acknowledgement that Warner Communications, Inc. was the exclusive owner
16  of *"Superman,"* gave Siegel and Shuster modest annual payments, certain
17  medical benefits and credit as the "creators" of "Superman." The 1975
18  Agreement did not mention "Superboy."

19                    **Plaintiffs' Notice of Termination**

20       On November 8, 2002, Plaintiffs availed themselves of their legal right
21  under the U. S. Copyright Act (17 U.S.C. § 304 (c)) to recapture the "Superboy"
22  copyright by serving notice on the Defendants that Plaintiffs were terminating
23  the grant of "Superboy" in the 1948 Stipulation and to the extent relevant, the
24  1975 Agreement (the "Termination Notice"). Termination was noticed to take
25  effect on November 17, 2004 (the "Termination Date") sixty-six years after
26  Siegel had created "Superboy." Plaintiffs' Termination duly complied with all
27  the requirements of 17 U.S.C. § 304(c) and 37 C.F.R. § 201.10., the regulations
28  promulgated thereunder by the Register of Copyrights.

7

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT           **ER 3849**

# III.   LEGAL ANALYSIS

## A.   Standard Of Review

Plaintiffs are entitled to the entry of summary judgment in their favor if based on the pleadings and evidence on file, there is no genuine issue of material fact and Plaintiffs are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Partial summary judgment" where the Court disposes of some but not all claims or issues within a claim, is also permitted. Fed. R. Civ. P. 56(c), (d).

The instant motion presents a classic example of an issue of law that is ripe for summary judgment, namely the validity of Plaintiffs' Termination under 17 U.S.C. § 304(c). There are no material issues of fact because the relevant underlying facts were previously adjudicated and determined in the 1947 Action and binding herein under the doctrines of *res judicata* and collateral estoppel.

## B.   The Termination Provisions Of The 1976 Copyright Act

The legislative purpose of the termination provisions are best understood by reviewing the policies underlying its enactment and its predecessor reversionary renewal provision under the 1909 Copyright Act (the "1909 Act").

### 1.   The Renewal Term Under The 1909 Copyright Act

Under the 1909 Act, copyright protection was divided into two separate, consecutive terms of twenty-eight years:  the "initial" term and the "renewal" term.  17 U.S.C. § 24.  The renewal term was intended to be a new grant reverting to the author at the end of the initial term, not merely an extension thereof.  In fashioning the renewal term Congress was aware that authors had relatively little bargaining power.  The renewal term was intended to protect authors who may have struck imprudent bargains by allowing them to realize a portion of the increased economic value of their work.  *See Stewart v. Abend*, 495 U.S. 207, 217-20, 110 S. Ct. 1750, 109 L. Ed.2d 184 (1990) (legislative and judicial history of the 1909 Act's renewal provision).

This legislative purpose of the renewal term was emasculated by the

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          **ER 3850**

Supreme Court's decision in *Fred Fisher Music Co.* v. *M. Witmark & Sons*, 318 U.S. 643, 657-59 (1943) which held that authors were able to assign their interest in the renewal term during the initial term. After *Fred Fisher*, publishers routinely insisted that authors assign *both* copyright terms in one initial transfer, eliminating the reversionary renewal right under the 1909 Act and the author's ability to share in his work's success. *Stewart*, 495 U.S. at 219.

### 2. The 1976 Copyright Act Was Designed To Give Authors And Heirs Full Benefits Of The Extended Renewal Term

On January 1, 1978, the 1976 Copyright Act (the "1976 Act") went into effect, and with it, changes to copyright law that significantly enhanced the rights of authors and their heirs. 17 U.S.C. § 101 *et seq.* (1978). The 1976 Act extended the renewal term from 28 to 47 years for works, such as "Superboy," that were in their renewal term when the 1976 Act took effect. 17 U.S.C. § 304(a). Congress intended to give the benefit of the additional 19 years of copyright protection to authors and their heirs, like Siegel and Plaintiffs, rather than to grantees, like Defendants, for whom the extended term would have been an unjustified windfall. H.R. Rep. No. 94-1476 ("H. Rep."), at 140 (1976).

Accordingly, Congress coupled the renewal term extension with the creation of a *new* right of authors and their statutory heirs (principally surviving spouse, children and grandchildren) to recapture the renewal copyright in their works by terminating any prior grant thereof "executed before January 1, 1978," *i.e.,* before the 1976 Act went into effect.[1] 17 U.S.C. § 304(c). Such prior

---

[1] The Sonny Bono Copyright Term Extension Act of 1998 ("CTEA") became effective October 27, 1998 and extended the term of protection for works created prior to January 1, 1978 from seventy-five years to ninety-five years, 17 U.S.C. § 304(b). As with the 1976 Act's original term extension, Congress intended this second term extension as a benefit to authors and their families, not as a windfall for grantees. Congress therefore once again coupled the extended term with an inalienable termination right for authors (and their surviving spouses, children and grandchildren) so they could recapture the additional twenty years of copyright protection. *See* 17 U.S.C. § 304(d). *See* S. Rep. No. 104-315, at 22-23 (1996); 3 *Nimmer on Copyright* § 9.11[B] [1].

9

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT      **ER 3851**

1  grants are terminable at any time during a five-year window beginning 56 years
2  after copyright in the work had originally been secured. 17 U.S.C. § 304(c)(3).

3       The termination right cannot be vitiated by contract and remains
4  effective "notwithstanding any agreement to the contrary." 17 U.S.C. §
5  304(c)(5). The termination clause provides in pertinent part:

6      "In the case of any copyright subsisting in either its first or renewal term
7  on January 1, 1978, other than a copyright in a work made for hire, the
    exclusive or nonexclusive grant of a transfer or license of the renewal
8  copyright or any right under it, executed before January 1, 1978, by any
9  of the persons designated by subsection (a)(1)(C) of this section, otherwise
    than by will, is subject to termination under the following conditions:
10  * * *

11  (5) Termination of the grant may be effected notwithstanding any
    agreement to the contrary, including an agreement to make a will or to
12  make any future grant. 17 U.S.C. §§ 304(c) and 304(c)(5)

13       As the Supreme Court noted in *Mills Music Inc. v. Snyder*, 469 U.S. 153,
14  173, 105 S. Ct. 638, 8 L.Ed. 556 (1985): "The principal purpose of… § 304 was
15  to provide added benefits to authors.... More particularly, the termination right
16  was expressly intended to relieve authors of the consequences of ill-advised and
17  unremunerative grants…" *Mills Music*, 469 U.S. at 172-73 *citing* H.R. Rep. No.
18  94-1476, at 124 (1976). In devising Section 304(c), Congress recognized that
19  authors commonly agree to one-sided copyright grants that publishers with far
20  greater bargaining power design to be as expansive as possible in exchange for
21  as little payment as possible. H.R. Rep. at 124. The results are often supremely
22  unfair, as when a work proves financially successful for many years, but
23  enriches only the grantee and not the author or the author's family.

24       Indeed, the Supreme Court recently recognized the overall intent of the
25  1976 Act to "enhance the author's position" and to adjust "the author/publisher
26  balance," emphasizing the "inalienable authorial right to revoke a copyright
27  transfer." *N.Y. Times v. Tasini,* 533 U.S. 483, 121 S. Ct. 2381, 150 L. Ed. 2d 500
28  (2001) ; *see also Stewart,* 495 U.S. at 230 ("[1976 Act] provides an inalienable

10

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT    **ER 3852**

1    termination right"); *See Marvel Characters, Inc. v. Simon,* 310 F.3d 280 (2d Cir.

2    2002) (pre-1978 settlement agreement cannot bar author's termination right).

3        Admittedly, the termination right lies in stark contrast to ordinary state

4    contract law principles, as it empowers authors and their statutory heirs to

5    terminate prior grants of rights *without cause*, regardless of the contracting

6    parties' promises, intent or the grantee's expectations at the time the grant was

7    made. 17 U.S.C. §304(c)(5). Congress clearly determined that giving authors

8    and their families an equal opportunity to benefit from each extension of the

9    copyright renewal term is of paramount importance.

10      **C.**    <u>**Defendants Are Bound By The 1947 State Action**</u>

11       It is well established that the findings in a prior litigation are binding on

12    the parties or their successors in a subsequent litigation involving the same facts

13    under the doctrines of *res judicata* and/or collateral estoppel. *Kamilche Co. v.*

14    *United States,* 53 F.3d 1059, 1062 (9th Cir. 1995).

15       The Full Faith and Credit Act, 28 U.S.C. § 1738, further commands that a

16    federal court must accord a state court's resolution of issues the same preclusive

17    effect as would be accorded in the rendering court. *See Matsushita Elec. Indus.*

18    *Co. v. Epstein*, 516 U.S. 367, 116 S. Ct. 873, 878, 134 L. Ed. 2d 6 (1996); *Allen*

19    *v. McCurry*, 449 U.S. 90, 96, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980). This rule

20    generally applies regardless of whether the state court construes civil, criminal,

21    state or federal law. *Allen*, 449 U.S. at 104; *see* 18-133 *Moore's Federal*

22    *Practice-Civil* § 133.30. Preclusion applies to issues raised as well as to issues

23    that could have been raised at the time of the earlier action. *Migra v. Warren*

24    *City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 84, 104 S.Ct. 892, 79 L.Ed. 2d 56 (1984).

25       The law is also well settled that a federal court determines the preclusive

26    effect of the findings and conclusions in a prior state court action by looking to

27    the laws of that state to determine whether principles of *res judicata* or collateral

28    estoppel bar the parties' respective arguments. *Pension Trust Fund for Oper.*

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT    **ER 3853**

1  *Engineers v. Triple A Machine Shop, Inc.*, 942 F.2d 1457, 1464-1465 (9ᵗʰ Cir.

2  1991, *citing Migra* 465 U.S. 75, 81.

3       New York has adopted a transactional approach to the doctrine of *res*

4  *judicata* or claim preclusion. *Garguili v. Thompkins*, 790 F.2d 265, 269 (2d Cir.

5  1986); *Reilly v. Reid*, 45 N.Y.2d 24, 29-30 (1978). If a subsequent claim arises

6  from the same "factual grouping" as a previously resolved claim, the subsequent

7  claim is barred regardless of whether the two suits are based on different legal

8  theories or seek different remedies. *Smith v. Russell Sage College*, 54 N.Y.2d

9  185, 192 (1981); *Reilly*, 45 N.Y.2d at 29-30; *see also EFCO Corp. v. U.W.*

10  *Marx, Inc.*, 124 F.3d 394, 397 (2d Cir. 1997). Thus, in New York "once a claim

11  is brought to a final conclusion, all other claims arising out of the same

12  transaction or series of transactions are barred…" *O'Brien v. City of Syracuse*,

13  54 N.Y.2d 353, 357 (1981).

14       "Collateral estoppel prevents a party from re-litigating an issue decided

15  against that party in a prior adjudication" in which that party had a "'full and fair

16  opportunity'" to litigate. *Fuchsberg & Fuchsberg v. Galizia*, 300 F.3d 105, 109

17  (2d Cir. 2002) *quoting Johnson v. Watkins*, 101 F.3d 792, 794-95 (2d Cir. 1996)

18  and *Schwartz v. Pub. Adm'r*, 24 N.Y.2d 65, 71 (1969)). The preclusive effect

19  extends to issues not specifically addressed but which "by necessary implication

20  . . . [are] contained in that which [was] explicitly decided." Id., *quoting Norris*

21  *v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1285 (2d Cir. 1986). The fundamental

22  policies behind collateral estoppel (issue preclusion) are to increase judicial

23  efficiency, to reduce the number of inconsistent rulings and to promote the

24  finality of judgments. *Murphy v. Gallagher*, 761 F.2d 878, 882 (2d Cir. 1985).

25       The application here of the *res judicata* and collateral estoppel doctrines is

26  further based on good reason. The findings and conclusions of Judge Young in

27  1948, nine years after the events in question, are far more factually reliable than

28  any findings that can presently be made. There is little about the operative facts

1  regarding Siegel's creation of "Superboy" and his dealings with Detective
2  regarding "Superboy" that can be supplied by new testimonial evidence.  Siegel
3  is no longer alive and the majority of those who dealt with "Superboy" at the
4  time of its creation by Siegel are likely also dead.  The findings and conclusions
5  in the 1947 Action which concerned the same facts as this motion provide a
6  much more reliable index of the truth than anything that can be mustered by
7  Defendants today.  *See Picture Music, Inc. v. Bourne, Inc.,* 314 F. Supp. 640,
8  652 (S.D.N.Y. 1970).  "The subsequent effect of collateral estoppel…is a result
9  which should be welcomed to avoid the task of reconsidering issues that have
10  already been settled by another competent tribunal." *Vernitron Corp. v.*
11  *Benjamin,* 440 F.2d 105,108 (2d Cir. 1971), *cert. denied,* 402 U.S. 987, 29 L.
12  Ed. 2d 154, 91 S. Ct. 1664 (1971) *citing Klein v. Walston Co.,* 432 F.2d 936 (2d
13  Cir. 1970).

14      Thus, the findings of fact and conclusions of law in the 1947 Action
15  should be accepted as given premises of which there can be no dispute.

16  **D.    Plaintiffs' Duly Exercised Their Termination Right**

17      **1.    Plaintiffs' Termination Complied with the Copyright Act**

18      Plaintiffs fully satisfied the requirements for termination set forth in 17
19  U.S.C. § 304(c) ("Section 304(c)"):

20      • Section 304(c) applies to "any copyright ... subsisting in its renewal term
21  on the effective date of the [1976 Act]."  17 U.S.C. § 304(c).  Copyright in
22  "Superboy" subsisted in its renewal term on the effective date of the 1976 Act,
23  January 1, 1978.  Copyright in the serialized magazine, More Fun Comics, No.
24  101, was secured on November 23, 1944 with the Register of Copyrights under
25  copyright registration number B653651 in the name of Detective and renewed
26  on July 17, 1972 in the name of National, claiming as proprietor of copyright,
27  under copyright renewal registration number R532582.  *See* Toberoff Decl.,
28  Exh. F.  The serialized magazine issue, "More Fun Comics 101" published the

13

1  Siegel Superboy Material. 1948 FOF, Fact 164, 165 ["[Detective's] comic strip
2  release entitled SUPERBOY published in December of 1944 embodied and was
3  based upon the idea, plan and conception contained in the [Superboy Story]
4  submitted by...SIEGEL to DETECTIVE COMICS, INC. in December of 1940,"
5  and "embodied and was based upon the idea, plan and conception contained in
6  the [Superboy Synopsis] dated November 30, 1938."]. [2]

7  • Section 304(c) applies only to transfers or licenses "executed before
8  January 1, 1978," by the author, the author's surviving spouse, children (or
9  certain other designated persons) 17 U.S.C. § 304(c). The grants terminated by
10 Plaintiffs were the 1948 Stipulation and the 1975 Agreement (to the extent
11 relevant), both pre-1978 documents. No post-1978 grant of rights in "Superboy"
12 by Siegel or his heirs exists and none have been alleged by Defendants.

13 • Section 304(c) allows termination by the author's "widow" and
14 "surviving children" which together own and are entitled to exercise more than
15 one-half of the author's termination interest under the statute. 17 U.S.C.
16 §304(c)(1) and (c)(2)(A) and (B). Plaintiff Joanne Siegel is the author Siegel's
17 widow and she therefore owns 50% of Siegel's termination interest. 17 U.S.C.
18 §304(c)(2)(A); *see* Counterclaim, ¶ 2. Plaintiff Laura Siegel Larson is one of
19 Siegel's two children, and she therefore owns 25% of Siegel's termination
20 interest. 17 U.S.C. §304(c)(2)(A); *see* Counterclaim, ¶ 3. Together Plaintiffs
21 own and constitute the more than one-half of Siegel's termination interest
22 required to effect the Termination. 17 U.S.C. §304(c)(1).

23 • Section 304(c) requires the termination notice to "state the effective date

---

24  [2] In fact, Judge Young found that "[a]ll of the comic strip material published [by
25  Detective prior to the trial of the 1947 Action in April, 1948] under the title
26  SUPERBOY was based upon the idea, plan, conception and direction contained in the
    [Siegel Superboy Material]." 1948 FOF, Facts 171-172. As with More Fun Comics,
27  No. 101, statutory copyright for these periodical publications was similarly secured
    through registration by Detective (and later National) and renewal by National with the
28  Register of Copyrights. *See* Termination Notice, pp. 6-7, Toberoff Decl., Exh. G.

14

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          ER 3856

1  of termination, which shall fall within the five-year period" "beginning at the
2  end of 56 years from the date copyright was originally secured," 17 U.S.C. §§
3  304(d)(1), (c)(4)(A), and requires that the termination notice be "served not less
4  than two or more than ten years" before the effective date of termination.  17
5  U.S.C. §§ 304(c)(4)(A).  Plaintiffs' Termination Notice stated the effective date
6  of termination, November 17, 2004, which fell within the appropriate time-
7  frame from the date the copyright was originally secured (November 23, 1944
8  under copyright registration no. B653651); service of the Termination Notice
9  took place on November 8, 2002 by First Class Mail, postage pre-paid (per 37
10 C.F.R. § 201.10(d)) and in addition by certified mail return receipt requested,
11 which service date is "not less than two or more than ten years" before the
12 November 17, 2004 Termination Date.  17 U.S.C. §§ 304(c)(4)(A).

13      • Section 304(c) requires that a copy of the termination notice be "recorded
14 in the Copyright Office before the effective date of termination," 17 U.S.C. §
15 304(c)(4)(A), and that it comply "in form, content, and manner of service, with
16 requirements that the Register of Copyrights shall prescribe by regulation," 17
17 U.S.C. § 304(c)(4)(B).  Plaintiffs' Termination Notice was recorded in the
18 Copyright Office on November 20, 2002, well before the November 17, 2004
19 Termination Date (*see* Toberoff Decl., Exh, H); and the notice fully complied
20 with 37 C.F.R. § 201.10, the regulations issued by the Register of Copyrights
21 under Section 304(c).

22      Because Plaintiffs met all of the statutory requirements of Section 304(c),
23 their Termination should be deemed effective.  On November 17, 2004, the
24 noticed Termination Date, Plaintiffs recaptured Siegel's original copyright in
25 "Superboy."  While Defendants may continue to exploit works derived from
26 "Superboy" created prior to November 17, 2004, Plaintiffs' production and
27 exploitation of "Superboy" derivative works on or after November 17, 2004 is
28 expressly prohibited by 17 U.S.C. § 304(c)(6)(A).

15

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          **ER 3857**

## 2. <u>The Termination Notice Was Not Required To List The 1948 Consent Judgment</u>

The regulations promulgated under 17 U.S.C. §304(c) by the Register of Copyrights require "a brief statement reasonably identifying the grant to which the notice of termination applies." 37 C.F.R. §201.10 (b)(1)(iv). In compliance, the Termination Notice explicitly identifies the 1948 Stipulation dated May 19, 1948 wherein Siegel received compensation for granting "Superboy" to Defendants' alleged predecessors. Termination Notice, ¶ 3, p. 52, Toberoff Decl., Exh. G. The Termination Notice also identified the 1975 Agreement regarding "Superman," to the extent relevant.

Defendants nonetheless asserted in their Answer that Plaintiffs' Termination is purportedly defective for not also listing the consent judgment dated May 21, 1948 ("1948 Consent Judgment"). *See* Counterclaim, ¶¶ 66-68. Firstly, the 1948 Consent Judgment is a judgment, not a "grant" of copyright. 37 C.F.R. §201.10 (b)(1)(iv). Secondly, the 1948 Consent Judgment dated May 21, 1948 merely follows the parties' 1948 Stipulation entered into two days earlier on May 19, 1948. The 1948 Stipulation constitutes the operative grant underlying the 1948 Consent Judgment and, as such, *is* explicitly identified in the Termination Notice. Thirdly, since the prior 1948 Stipulation constituted the operative grant of "Superboy" to National, the subsequent 1948 Consent Judgment did not as a matter of law convey that which was previously granted on May 19, 1948, and already in National's possession on May 21, 1948.

Finally, the 1948 Consent Judgment has no adverse impact on Plaintiffs' Termination as "[t]ermination...may be effected notwithstanding any agreement to the contrary" 17 U.S.C. § 304(c)(5) and assignments of the reversionary termination interest cannot be made until "after the notice of termination has been served" (i.e., November 8, 2002). 17 U.S.C. § 304(c)(6)(B),(D).

As stated, the 1948 Consent Judgment merely adjudges what was

16

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          **ER 3858**

1  previously granted to National two days earlier in the 1948 Stipulation identified

2  in Plaintiffs' Termination Notice. In the unlikely event the Court even views

3  1948 Consent Judgment as a grant, the identification of the underlying 1948

4  Stipulation "reasonably identifies" the parallel consent judgment issued pursuant

5  to the 1948 Stipulation. 37 C.F.R. §201.10 (b)(1)(iv).

6      There is little case law on notice of termination formalities. In *Burroughs*

7  *v. MGM*, the court found that a Section 304(c) termination notice identifying a

8  1923 grant and 35 titles, applied to only the titles listed, but was not rendered

9  ineffective by the fact that many of the titles were assigned in subsequent grants

10  by the author *not* identified in the termination notice. 683 F.2d 610, 614, 618,

11  622 (2d. Cir. 1982) ("As further Tarzan books were written, the rights in these

12  were also transferred to the corporation"). In *Music Sales Corp. v. Morris*, a

13  "generic statement [in a Section 304(c) termination notice which] would not

14  seem to reasonably identify the grant" was nonetheless held adequate. 73 F.

15  Supp. 2d 364, 378 (SDNY 1999) (upheld termination notice that simply

16  identified grant as "grant or transfer of copyright and the rights of copyright

17  proprietor, including publication and recording right only").

18      Defendants received more than ample notice within the statutory time

19  frame of Plaintiffs' intention to terminate prior grants of "Superboy" and were in

20  no way prejudiced by Plaintiffs' not listing the 1948 Consent Judgment in

21  addition to the 1948 Stipulation. The regulations of the Register of Copyright,

22  on which Defendants purport to rely, specifically dissuade such hyper-technical

23  attempts to invalidate termination notices: "Harmless errors in a notice that do

24  not materially affect the adequacy of the information required to serve the

25  purposes of …section 304(c) of title 17, U.S.C….shall not render the notice

26  invalid." 37 CFR § 201.10(e)(1).

27    **E.**   <u>**Plaintiffs' Own A Valid Statutory Copyright In "Superboy"**</u>

28        **1.**   <u>**Copyright Secured By Registration Of The Collective**</u>

17

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT   **ER 3859**

1    **Periodical That Published The Siegel Superboy Material**

2    As stated, the Siegel Superboy Material secured a statutory copyright on

3    November 23, 1944 upon registration with the Copyright Office of the serialized

4    magazine, More Fun Comics, No. 101 (registration no. B653651) in which the

5    Siegel Superboy Material was published in December of 1944.  1948 FOF, Fact

6    164-165; Toberoff Decl., Exh. F.  The statutory copyright in this collective

7    periodical (More Fun Comics, No. 101) secures the statutory copyright in its

8    component part -- the Siegel Superboy Material.  *See Self-Realization*

9    *Fellowship Church v. Ananda Church*, 206 F.3d 1322, 1329 (9th Cir. 2000) (a

10   blanket copyright on a periodical protects its constituent parts); *Morse v. Fields*,

11   127 F. Supp. 63, 64-65 (SDNY 1954) (publication in a collective work will

12   secure a copyright in all component parts); *see also* 2-7 Nimmer on Copyright §

13   7.12 ("The rule with respect to collective works under the 1909 Act...provided

14   that a single notice in the name of the copyright owner of the collective work

15   was sufficient to protect each contribution contained therein.").

16   It is indisputable that the Siegel Superboy Material was published in More

17   Fun Comics No. 101 in December of 1944.  In the 1947 Action, Judge Young

18   found that Detective's "comic strip release entitled SUPERBOY published [in

19   More Fun Comics, No. 101] in December of 1944 embodied and was based

20   upon the idea, plan and conception contained in the [Siegel Superboy Story]

21   submitted by...SIEGEL to DETECTIVE COMICS, INC. in December of 1940,"

22   1948 FOF, Fact 165, and "embodied and was based upon the idea, plan and

23   conception contained in the [Siegel Superboy Synopsis] dated November 30,

24   1938.  1948 FOF, Fact 164.

25   Such findings of fact in the 1947 Action, to which no appeal was taken,

26   are binding on Defendants as successors to the defendants in the 1947 Action

27   under the doctrines of *res judicata* or *collateral estoppel*.  Defendants may

28   nonetheless try to side-step the preclusive effect of the 1947 Action by arguing

18

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          **ER 3860**

1   that it was not a copyright case. However, this is largely irrelevant because the

2   binding 1947 findings are not conclusions of copyright law, but are underlying

3   *factual* findings, i.e. that the "Superboy" comic strip, published in More Fun

4   Comics, No. 101, "embodied and was based upon" the Siegel Superboy

5   Material. 1948 FOF, Facts 164-165.

6         Moreover, in *Siegel, supra,* <u>a federal copyright action</u>, the Second Circuit

7   <u>ruled that Judge Young's findings of fact and conclusions of law are preclusive</u>

8   <u>under *res judicata*</u> and specifically relied on such in holding that Siegel had

9   conveyed the "Superman" renewal copyright to National. 509 F.2d at 912-913.

10        The lower court in *Siegel,* 364 F. Supp. at 1035, *aff'd* 509 F.2d at 913 also

11   explicitly held that Judge Young's findings in the 1947 state action were binding

12   on Defendants' predecessors in the subsequent copyright action, *citing Vernitron*

13   *Corp. v. Benjamin,* 440 F.2d at 108 ("There can be no question but that the

14   doctrine of collateral estoppel would be applied in any instance where the state

15   court had determined a factual issue arising in a subsequent federal litigation").

16        **2.**    **<u>Siegel Had The Legal Right To Create Superboy</u>**

17        Defendants will next predictably argue that Siegel's "Superboy" is not

18   entitled to the benefits of copyright protection by claiming that Siegel was not

19   authorized to create "Superboy." This is incorrect, belied by both the evidence

20   and Judge Young's findings in the 1947 Action.

21        The September 22, 1938 Agreement between Siegel and Shuster and

22   Defendants' predecessor, National, <u>permitted Siegel to create new comic book</u>

23   <u>features, subject to National's right of first refusal to accept or reject same</u>

24   <u>within six weeks of the submission</u> thereof as follows:

25        "In the event you shall do or make any other artwork or continuity
suitable for us as comics or comic strips you shall first give us the right to

26        first refusal thereof by submitting said copy and continuity ideas to us.
We shall have the right to exercise that option for six weeks after sub-

27        mission to us at a price no greater than offered to you by any other party."

28   1938 Agreement, p.1, Toberoff, Exh. E

19

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT    **ER 3861**

Thus, Judge Young specifically found in the 1947 Action:

"On or about November 30, 1938, the plaintiff SIEGEL, in writing and by mail submitted to DETECTIVE COMICS, INC. for it consideration and acceptance or rejection, for publication, under the terms of the contract dated September 22, 1938 …synopsis or summary [Siegel Superboy Synopsis] of the idea and conception and plan of a new comic strip to be known as SUPERBOY…"
1948 FOF, Fact 156.

"DETECTIVE COMICS, INC on or about December 2, 1938, by its letter in writing to the plaintiff SIEGEL did not elect to publish the said comic strip SUPERBOY under the terms of the contract dated September 22, 1938." 1948 FOF, Fact 157.

"During the month of December, 1940 the plaintiff SIEGEL submitted to DETECTIVE COMICS, INC. for its further consideration a complete script [Siegel Superboy Story]…for the first 'release' or 'releases' of the proposed new comic strip SUPERBOY…" 1948 FOF, Fact 160.

"DETECTIVE COMICS, INC. did not within six weeks after submission of the said script or scenario indicate its election to publish the said comic strip SUPERBOY." 1948 FOF, Fact 162.

Moreover, as Judge Young found in the 1947 Action, Detective ultimately published the Siegel Superboy Material in December of 1944 in More Fun Comics No. 101 (1948 FOF, Facts 164-165) and implicit in Detective's publication, acceptance and ratification of this material is Detective's authorization of its creation by Siegel. In addition, Siegel had submitted to Detective his Superboy Synopsis in 1938 and his Superboy Story in 1940 without objection. For instance, when Siegel submitted his "Superboy" synopsis "[o]n December 2, 1938, DETECTIVE COMICS, INC. deferred consideration of a SUPERBOY comic strip until some future time." 1948 FOF, Fact 157.

Moreover, nonexclusive authorization need not be in writing and may be granted orally or implied by conduct. *Foad Consulting Group, Inc. v. Musil Govan Azzalino*, 270 F.3d 821, 825, 831-832 (9th Cir. 2001) ("The Copyright Act permits copyright holders to grant non-exclusive copyright licenses by implication."); *JBJ Fabrics, Inc. v. Brylane, Inc.*, 714 F. Supp. 107, 110 (S.D.N.Y. 1989) ("informal authorization" sustains author's copyright in derivative work); 3-10 Nimmer on Copyright § 10.03 ("nonexclusive licenses

20

1   may be granted orally, or may even be implied from conduct.").

2       Finally, Defendants are equitably estopped from arguing that Siegel's

3 creation of "Superboy" was unauthorized after their predecessors' published it;

4 and both their predecessors and they have willingly benefited from the Siegel

5 Superboy Material for decades. (1947 FOF, Facts 164-165).

6      **3.**    **The Siegel Superboy Material Were Not Works-For-Hire**

7      The termination provisions of Section 304(c) do not apply to a "work

8 made for hire." 17 U.S.C. § 304(c). Defendants will thus also try to argue that

9 the Siegel Superboy Synopsis and the Siegel Superboy Story were owned by

10 Defendants' predecessor, Detective, as "works made for hire" under the now

11 repealed 1909 Copyright Act. See 17 U.S.C. § 26 (states the word "author" shall

12 include an employer in the case of works made for hire). This also flies in the

13 face of the findings of fact in the 1947 Action which resulted in the conclusion

14 of law that Siegel originally owned "Superboy" which binds Defendants under

15 the doctrines of *res judicata* or *collateral estoppel*.

16      As set forth above, Judge Young found in the 1947 Action that even

17 though Siegel and Shuster were to produce five specific comic books under the

18 September 22, 1938 Agreement, the Siegel Superboy Material fell under the

19 category of new comic strip ideas and material for which Detective held only a

20 right of first refusal for six weeks after its submission; and that Detective

21 ultimately declined to exercise such right. 1948 FOF, Facts 156-157; September

22 22, 1938 Agreement, p.1, Toberoff Decl., Exh. E.

23      Judge Young concluded:

24    "Plaintiff Siegel is the originator and sole owner of the comic strip

25 feature SUPERBOY, and the defendants [National *et al.*]…are
perpetually enjoined and restrained from creating, publishing,

26 selling or distributing any comic strip material of the nature now
and heretofore sold under the title SUPERBOY…" 1948 COL, No.

27 25; and

28    "Plaintiff Siegel, as the originator and sole owner of the comic strip
feature SUPERBOY has the sole and exclusive right to create, sell

21

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT    **ER 3863**

1    and distribute comic strip material under the title SUPERBOY of
     the type and nature heretofore published..." 1948 COL, No. 25

2        As set forth above, such findings of fact and conclusions of law bind

3    Defendants under the doctrines of *res judicata* or *collateral estoppel* and are in

4    opposition to Defendants' assertion that the Siegel Superboy Material was

5    owned by Detective / National as "works made for hire" within the scope of

6    Siegel's alleged employment.  Issue preclusion includes not only issues that

7    were clearly litigated but also, by implication, a connected issue. "In other words

8    when the issue for which preclusion is sought is the only rational one that the

9    fact finder could have found, then that issue is considered foreclosed by

10   implication, even if no explicit finding of that issue has been made." 3-30

11   *Moore's Federal Practice and Procedure* § 30.73, *see Ashe v. Swenson*, 397

12   U.S. 436, 444, 25 L.Ed. 2d 469, 90 S.Ct. 1189 (1970).

13       Matters of contract interpretation relating to copyright typically fall within

14   state court jurisdiction.  3-12 *Nimmer on Copyright* § 12.01.  *See T.B. Harms*

15   *Co. v. Eliscu*, 339 F.2d 823, 826 (2d Cir. 1964) (The federal grant of ...a

16   copyright has not been thought to infuse with any national interest a dispute as to

17   ownership...turning on the facts or on ordinary principles of contract law.").

18   *See Jasper v. Bovina Music, Inc.*, 314 F.3d 42, 46 (2d Cir. 2002)( "if the case

19   concerns a dispute as to ownership of a copyright, and the issue of ownership

20   turns on the interpretation of a contract, the case presents only a state

21   law issue"); *Knickerbocker Toy Co. v. Faultless Starch Co.*, 467 F.2d 501,

22   (C.C.P.A. 1972)("Although 28 USC 1338(a) provides that the federal district

23   courts' original jurisdiction over copyright actions "shall be exclusive of the

24   courts of the states," the state courts clearly may pass on the validity of a

25   copyright if it is necessary to do so in the course of deciding a case over which

26   they do have jurisdiction." ).

27       Thus, in *Siegel, supra* the Second Circuit found that National owned the

28   renewal copyright to "Superman" based on Judge Young's first conclusion of

22

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT        ER 3864

1  law that "[b]y virtue of the instrument of March 1, 1938…DETECTIVE

2  COMICS, INC. became the absolute owner of the comic strip SUPERMAN…"

3  even though the 1947 state action did not mention or concern such renewal

4  copyright. 503 F.2d at 912; 1948 COL, No. 1. In response to Siegel's and

5  Shuster's arguments that a general transfer of copyright does not convey the

6  renewal copyright, the Second Circuit held "the state court action determined

7  that the agreements conveyed *all* of the plaintiffs' rights in Superman to the

8  defendants…Under the doctrine of res judicata we are not free collaterally to re-

9  examine the agreements to determine whether the construction placed on them

10  was warranted." 503 F.2d at 913. "The state court was called upon to construe

11  these instruments…that decision is binding on us here." *Id.*

12      Likewise, Defendants are bound by the finding in the 1947 Action that

13  Detective held merely (and failed to exercise) a contractual right of first refusal

14  with respect to the Siegel Superboy Material; and that Siegel, not Defendants'

15  predecessors, therefore owned all rights in "Superboy." Defendants cannot now

16  claim that Detective owned "Superboy" as a "work made for hire" or otherwise,

17  no more than Siegel and Shuster were permitted to argue in federal court that

18  they owned the renewal copyright to "Superman." *Id.*

19      After immensely benefiting for fifty-eight years from the findings and

20  conclusions in the 1947 Action and from the federal decision in *Siegel, supra*

21  regarding "Superman," Defendants now assume positions and arguments

22  completely contrary to both these decisions regarding "Superboy." In addition

23  to the preclusive effect of *res judicata* and collateral estoppel, Defendants are

24  equitably estopped and/or judicially estopped from doing so.

25      Moreover, even if, contrary to these overriding principles, the Court were

26  to re-open the issue of whether Siegel owned "Superboy," the underlying

27  findings of *fact* in the 1947 Action as to the parties' contractual relationship and

28  Siegel's wholly independent creation of "Superboy" inevitably also preclude

23

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          **ER 3865**

1    that "Superboy" was a "work made for hire" under the 1909 Copyright Act.

2       Throughout much of the life of the 1909 Act, until the mid-1960's, federal

3 courts applied the work-for-hire doctrine only to traditional hierarchical

4 employment relationships. *Twentieth Century Fox Film Corp. v. Entertainment*

5 *Distrib.*, 429 F.3d 869, 877 (9th Cir. 2005) *citing Playboy Enters., Inc. v.*

6 *Dumas*, 53 F.3d 549,554 (2d Cir. 1995) "In the last decade that the [1909] Act

7 was effective the Courts expanded the doctrine to include less traditional

8 relationships so long as the hiring party had " 'the right to control the artist's

9 work.' " *Twentieth Century*, 429 F.3d at 877, *quoting Self-Realization*

10 *Fellowship Church v. Ananda Church*, 206 F.3d 1322, 1331 (9th Cir. 2000).

11       The Ninth Circuit has "consistently evaluated claims that a work was

12 made for hire by asking whether it was created at the "instance and expense" of

13 the engaging party. *Id.* at 877, *citing and quoting Dolman v. Agee*, 157 F.3d 708,

14 711-712 (9th Cir. 1998) (a party asserting work for hire defense is "required to

15 present some credible evidence that [the author's] work was done at the

16 'instance and expense' of the commissioning party.").

17       Judge Young found that Siegel independently created his original

18 Superboy Synopsis and Superboy Story under the terms of the September 22,

19 1938 Agreement, which permitted him to originate new comic strip concepts and

20 stories outside the five comic strips Siegel and Shuster were currently producing,

21 subject to a right on the part of Detective to accept or reject same with six weeks

22 of their submission. 1948 FOF, Facts 156-159, 160-162.

23       This first refusal procedure and time limit on Detective's right to purchase

24 and publish the Siegel Superboy Material from a factual perspective runs

25 counter to any notion or intent that Detective owned such material at inception

26 as the "author" of a "work made for hire. *See* 17 U.S.C. § 26 (repealed). *See*

27 *Lin-Brook Blders Hrdwre v. Gertler*, 352 F.2d 298, 300 (9th Cir. 1965) (work for

28 hire status turns on "*mutual intent of the parties* [] that the title of the copyright

24

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT    <strong>ER 3866</strong>

1 | shall be in the person at whose instance and expense the work was done").

2 | Judge Young found that Siegel's Superboy Synopsis created by Siegel on

3 | November 30, 1938 contained the "conception and plan of a new comic strip to

4 | be known as SUPERBOY," 1948 FOF, Fact 156, and that Siegel's Superboy

5 | Story created by Siegel in December of 1940, contained:

6 | "the continuity, plan and dialogue for the first 'release' or 'releases' of the
proposed new comic strip SUPERBOY and…contained within itself the

7 | entire plan for the future publication of the said comic strip SUPERBOY
and the concept and character SUPERBOY, all set forth with detail and

8 | particularity."

9 | 1948 FOF, Fact 160.  Judge Young further found that Detective did not elect to

10 | purchase and publish such material within the six weeks allotted to them in the

11 | September 22, 1938 Agreement.  From this factual scenario, it is impossible to

12 | conclude that the Siegel Superboy Material was created by Siegel "at the

13 | instance and expense" of Detective.  Judge Young found that Siegel owned his

14 | original Superboy material because Detective failed to exercise its right of first

15 | refusal to pay for the Siegel Superboy Material.  1948 FOF, Facts 158, 162, 173;

16 | 1948 COL, Nos. 25-26.  Again, these findings of fact are binding on Defendants

17 | and preclude the conclusion that the Siegel Superboy Material was work-for-hire

18 | even under the 1909 Act's "instance and expense" test.

19 | **IV.  CONCLUSION**

20 | For the foregoing reasons, Plaintiffs respectfully requests that the Court

21 | grant their motion for partial summary adjudication in the form lodged

22 | separately herewith as the Proposed Judgment.

23 |

24 | DATED: February 15 , 2006      LAW OFFICES OF MARC TOBEROFF, PLC

25 |

26 | By _____

Marc Toberoff

27 |

28 | Attorneys for Plaintiffs JOANNE SIEGEL
and LAURA SIEGEL LARSON

25

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is: 1999 Avenue of the Stars, Suite 1540, Los Angeles, California 90067.

On February 15, 2006, I served the attached documents described as

1. Plaintiffs Joanne Siegel and Laura Siegel Larson's Notice of Motion And Motion For Partial Summary Judgment; Memorandum of Points and Authorities In Support Thereof;

2. Plaintiffs Joanne Siegel and Laura Siegel Larson's Statement of Uncontroverted Facts and Conclusions Of Law;

3. Plaintiffs Joanne Siegel and Laura Siegel Larson's Request For Judicial Notice in Support of Motion for Partial Summary Judgment;

4. Declaration of Marc Toberoff in Support of Plaintiffs' Motion for Partial Summary Judgment

5. [Proposed] Judgment Following Partial Summary Judgment

on all interested parties in this action by placing _____ the original _X_ a true copy thereof enclosed in sealed envelope(s) addressed as follows:

David L. Burg
Weissman Wolff Bergman Coleman Grodin & Evall LLP
9665 Wilshire Blvd., Ninth Floor
Beverly Hills, CA 90212
Facsimile No. 310.550.7191

Roger L. Zissu
James D. Weinberger
Fross, Zelnick, Lehrman & Zissu P.C.
866 United Nations Plaza
New York, New York 10017
Facsimile No.: 212-813-5901

[X] :BY FACSIMILE:

As follows: I caused the transmission of the above named document to the fax number set forth above, or on the attached service list.

[X] :BY MAIL:

As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**ER 3868**

:(STATE) - I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X] :(FEDERAL) – I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on February 15, 2006, in Los Angeles, California.

Nicholas C. Williamson

ER 3869

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 171 of 324

1   Marc Toberoff (CA State Bar No. 188547)
    Nicholas C. Williamson (CA State Bar No. 231124)
2   LAW OFFICES OF MARC TOBEROFF, PLC
    1999 Avenue of the Stars, Suite 1540
3   Los Angeles, CA 90067
    Telephone: (310) 246-3333
4   Facsimile: (310) 246-3101

5   Attorneys for Plaintiffs and Counterclaim Defendants
    JOANNE SIEGEL and LAURA SIEGEL LARSON
6

7               UNITED STATES DISTRICT COURT

8               CENTRAL DISTRICT OF CALIFORNIA

9

10  JOANNE SIEGEL, an individual; and        Civil Case No. 04-08776 RSWL (RZx)
    LAURA SIEGEL LARSON, an
11  individual,                              **REPLY TO FIRST AMENDED
                                             COUNTERCLAIMS
12              Plaintiffs,                   [SUPERBOY]**

13       vs.                                 Honorable Ronald S.W. Lew

14
    WARNER BROS.
15  ENTERTAINMENT INC., a
16  corporation; TIME WARNER INC.,
    a corporation; DC COMICS, a general      DEMAND FOR JURY TRIAL
17  partnership; and DOES 1-10,
18
                Defendants.
19

20  ─────────────────────────────

21  DC COMICS,

22              Counterclaimant

23       vs.

24  JOANNE SIEGEL, an individual; and
25  LAURA SIEGEL LARSON, an
    individual,
26

27              Counterclaim Defendants

28

                              1                        **ER 3870**

REPLY TO FIRST AMENDED COUNTERCLAIMS [SUPERBOY]

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 172 of 324

Plaintiffs and counterclaim defendants JOANNE SIEGEL and LAURA SIEGEL LARSON (hereinafter the "Plaintiffs"), by their attorneys of record, hereby answer the counterclaims ("Counterclaims") of defendant DC Comics ("DC" or "Counterclaimant"):

1.     Plaintiffs admit only that DC is engaged in the business of licensing comic books.  Plaintiffs, at present, lack knowledge or information sufficient to admit the truth of the remaining allegations contained in paragraph 1 of the Counterclaims and on that basis deny same.

2.     Plaintiffs admit only that Joanne Siegel is an individual and citizen of the State of California, in the County of Los Angeles, that Joanne Siegel is the widow of author Jerome Siegel ("Siegel"), the individual who, without limitation, originated, created and authored the "Superman" character, premises, themes, setting, back-story, key supporting characters, the first and many subsequent "Superman" stories, but Plaintiffs otherwise deny the allegations in paragraph 2 of the Counterclaims.

3.     Admitted.

4.     Plaintiffs admit only that Defendants purport to assert that this Court has subject matter jurisdiction and supplemental jurisdiction over the Counterclaims as alleged in paragraph 4 but otherwise deny the allegations in paragraph 4 of the Counterclaims.

5.     Admitted.

6.     Plaintiffs admit only that "The Reign of the Superman" written by Siegel with art by Joseph Shuster ("Shuster") was published in 1933 in a magazine entitled "Science Fiction" and that this material shared little, if any, similarity to various subsequent Superman material which Siegel created with art by Shuster but Plaintiffs otherwise deny the allegations in paragraph 6 of the Counterclaims.

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 173 of 324

7.     Plaintiffs admit only that Siegel created and wrote and Shuster drew art for several variations of "Superman" including a 1933 version known as "The Superman" and other versions between 1933 and 1938 known as "Superman" (all created and written by Siegel and some drawn by Shuster) and that these works included but were not limited to the works listed in subparagraphs (a)-(e) in the fourth sentence of paragraph 7 of the Counterclaims, but Plaintiffs otherwise deny the allegations in paragraph 7 of the Counterclaims.

8.     Plaintiffs admit only that between 1933 and 1938, Jerome Siegel and Joseph Shuster ("Siegel & Shuster") submitted certain Superman works to certain prospective publishers and newspaper syndicates; but Plaintiffs otherwise deny the allegations contained in paragraph 8 of the Counterclaims.

9.     Admitted.

10.    Plaintiffs admit only that on or about December 4, 1937, Siegel and Shuster, as independent contractors, entered into an agreement with Detective Comics, Inc. ("DCI") (the "December 4, 1937 Agreement") to continue to produce the comic magazine features, "Slam Bradley" and "The Spy" for a period of two years which agreement provided, in part, that any new and additional features which Siegel and Shuster produced for use in a comic magazine were to be first submitted to DCI which reserved the right to accept or reject same within sixty days; but Plaintiffs otherwise deny the allegations in paragraph 10 of the Counterclaims and respectfully refer the Court to the 1937 Agreement as evidence of the contents thereof.

11.    Plaintiffs admit only the first sentence of paragraph 11; and that a third party provided DCI with the "Superman" comic strips created and written by Siegel and drawn by Shuster in a newspaper syndication format ( the "1934 Superman Comic Strip") and that DCI expressed interest in publishing this work in a thirteen page comic magazine, but Plaintiffs otherwise deny the allegations

3

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 174 of 324

in paragraph 11 of the Counterclaims, including but not limited to, in so far as that Siegel and Shuster alone and of their own accord cut and pasted their 1934 newspaper strips into panels and added a few transitional panels so as to convert from a newspaper to a magazine format (the "Revised 1934 Superman Comic Strip"); but Plaintiffs otherwise deny the allegations in paragraph 11 of the Counterclaims and respectfully refer the Court to Siegel and Shuster's 1934 Superman Comic Strip and Revised 1934 Superman Comic Strip as evidence of the contents thereof.

12. Plaintiffs admit only that in an agreement with DCI dated March 1, 1938 (the "March 1, 1938 Agreement"), concerning a strip entitled "Superman," Siegel and Shuster sold to DCI the "strip, all good will attached thereto and exclusive right to the use of the characters and story, continuity and title to the strip… and…not to employ said characters or story in any other strips…by their names contained therein…"; but Plaintiffs otherwise deny the allegations in paragraph 12 of the Counterclaims and respectfully refer the Court to the March 1, 1939 Agreement as evidence of the contents thereof.

13. Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Counterclaims and on that basis deny the same.

14. Plaintiffs admit only that DCI published the Revised 1934 Superman Comic Strip in "Action Comics No. 1" bearing the cover date, June, 1938, but otherwise deny the allegations in paragraph 14 of the Counterclaims.

15. Plaintiffs admit only that in addition to the Siegel and Shuster material published by DCI in "Action Comics No. 1," Siegel and Shuster created further original "Superman" material and stories; that on or about September 22, 1938, in conjunction with Siegel and Shuster entering into an agreement with The McClure Newspaper concerning new "Superman" material created by Siegel and Shuster specifically for McClure newspaper strips, Siegel and Shuster

4

REPLY TO FIRST AMENDED COUNTERCLAIMS [SUPERBOY]

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 175 of 324

1    entered into an agreement with DCI ( the "September 22, 1938 DCI

2    Agreement") which stated that "[DCI] are the exclusive owners of the comic

3    strips known by the titles "Superman," "Slam Bradley," "Spy," "Radio Squad,"

4    and "Federal Men" and to the rights to publish comics carrying the titles and

5    characters contained therein and continuity thereof" and further stated that

6    Siegel and Shuster had "been doing the artwork and continuity" for comics

7    including "Superman" and that "[w]e wish you to continue to do said work and

8    hereby employ and retain you for said purposes;" but Plaintiffs otherwise deny

9    the allegations in paragraph 15 of the Counterclaims and respectfully refer the

10    Court to the September 22, 1938 DCI Agreement as evidence of the contents

11    thereof.

12       16.    Admitted.

13       17.    Denied.

14       18.    Plaintiffs admit only that on or about November 30, 1938, Siegel

15    wrote to DCI (the "Superboy Summary") expressing his conception of a new

16    comic "strip named SUPERBOY, which would relate the adventures of

17    Superman as a youth…[which] would be very much different from the

18    SUPERMAN strip inasmuch as SUPERBOY would be a child and the type of

19    adventures very much different…" and that DCI did not publish a "Superboy"

20    comic at that time; but Plaintiffs otherwise deny the allegations in paragraph 18

21    of the Counterclaims and respectfully refer the Court to the Superboy Summary

22    as evidence of the contents thereof.

23       19.    Plaintiffs admit only that Superman No. 1 was solely created by

24    Siegel and Shuster, that it had a cover date of Summer 1939, but Plaintiffs

25    otherwise deny the allegations in paragraph 19 of the Counterclaims.

26       20.    Plaintiffs admit only that on or about December 19, 1939, Siegel

27    and Shuster entered into an agreement with DCI (the " December 19, 1939

28    Agreement") which modified the September 22, 1938 DCI Agreement by

5

1   increasing Siegel and Shuster's compensation for the Superman comic strip

2   material independently created by Siegel and Shuster from $10 per page to $20

3   per page, and granted Siegel and Shuster "5% of all net proceeds which may be

4   derived by" DCI from the commercial exploitation of "Superman" outside of

5   comic books and newspaper syndication such as radio, motion pictures and toys,

6   and which stated that DCI "are the sole and exclusive owners of the comic strip

7   entitled 'SUPERMAN';" but Plaintiffs otherwise deny the allegations in

8   paragraph 20 of the Counterclaims and respectfully refer the Court to the

9   December 19, 1939 Agreement as evidence of the contents thereof.

10      21.     Plaintiffs admit only that on or about December, 1940, Siegel solely

11  authored a complete, thirteen page, original "Superboy" story ("Superboy

12  Story"); that in the event his story was published as a comic book, Siegel

13  suggested in a promotional prologue to the story that there should be a box

14  stating : "So many faithful followers of today's leading adventure comic strip,

15  SUPERMAN, wrote in demanding the adventures of Clark Kent as a youth that

16  the creation of this newest and most promising magazine comic strip character

17  was inevitable! And so here he is at last…the answer to your

18  requests…America's outstanding boy hero: SUPERBOY!!;" and that in the

19  event his story was published as a comic book, Siegel further suggested a

20  promotional epilogue in a box stating: "And so was launched the career of

21  SUPERBOY, youthful Champion of Righteousness! In later years he was to

22  become the mighty figure known as SUPERMAN! But the story of

23  SUPERBOY'S amazing and often humorous adventures is a series of

24  astonishing narratives in itself…! Don't miss a single adventure of the comic

25  page's newest sensation: SUPERBOY!!;" but Plaintiffs otherwise deny the

26  allegations in paragraph 21 of the Counterclaims and respectfully refer the Court

27  to Siegel's Superboy Story as evidence of the contents thereof.

28

6

**ER 3875**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 177 of 324

22.     With respect to the allegations in the first sentence of paragraph 22, Plaintiffs admit only that on November 18, 1944, DCI issued for sale More Fun Comics No. 101 with a cover date of January-February 1945 which contained the first Superboy comic story published by DCI, but Plaintiffs otherwise deny the allegations in this first sentence of paragraph 22 of the Counterclaims. Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 22 and on the basis deny the same, and Plaintiffs deny the allegations in the third sentence of paragraph 22 of the Counterclaims.

23.     Plaintiffs admit only that in 1947 Siegel and Shuster brought suit against National Comics Publications, Inc., DCI's purported successor, in the New York Supreme Court in Westchester County (the "Westchester Action"), that the Westchester Action was, in part, the culmination of a dispute between only Siegel (not Siegel and Shuster) and National over DCI's publication of Siegel's "Superboy," and that in addition to a number of other remedies such as an accounting, Siegel and Shuster also sought in the Westchester Action to rescind the March 1, 1938  Agreement and the September 22, 1938 DCI Agreement based on DCI's alleged fraud and repeated breaches of such agreements; but Plaintiffs otherwise deny the allegations in paragraph 23 of the Counterclaims and respectfully refer the Court to the complaint in the Westchester Action as evidence of the contents thereof.

24.     Plaintiffs admit only that after trial of the Westchester Action the court issued an opinion ("Westchester Opinion") in which it found that DCI acted illegally in publishing Superboy on the grounds that the court "[could] not accept [DCI's] view that Superboy was in reality Superman" and that "Superboy was a separate and distinct entity;" and found that the March 31, 1938 Agreement transferred to DCI  Siegel and Shuster's rights in Superman and that the September 22, 1938 DCI Agreement should not be rescinded; but Plaintiffs

7

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 178 of 324

1  otherwise deny the allegations in paragraph 24 of the Counterclaim and

2  respectfully refer the Court to the Westchester Opinion as evidence of the

3  contents thereof.

4       25.    Plaintiffs deny that an appeal was ever actually taken by the

5  defendants in the Westchester Action and Plaintiffs have insufficient knowledge

6  or belief to admit the truth of the allegation that the Westchester Action

7  Interlocutory Judgment was temporarily stayed pending appeal, and on that basis

8  deny this allegation as well, but Plaintiffs otherwise admit the allegations in

9  paragraph 25.

10      26.    Plaintiffs admit only that the parties to the Westchester Action

11 entered into a stipulation dated May 19, 1948 (the "1948 Stipulation") and that

12 the court issued a consent judgment dated May 21, 1948 (the "1948 Consent

13 Judgment"), but Plaintiffs otherwise deny the allegations in paragraph 26 of the

14 Counterclaims and respectfully refer the Court to the 1948 Stipulation and 1948

15 Consent Judgment as evidence of the contents thereof.

16      27.    Plaintiffs admit only that Siegel and Shuster filed an action against

17 National Periodical Publications ("National") in the United States District Court

18 for the Southern District of New York for a declaration as to whether or not they

19 had granted to National's alleged predecessor the renewal copyright to

20 Superman; that the District Court's decision was published in *Siegel v. National*

21 *Periodical Publications, Inc.,* 364 F. Supp. 1032 (S.D.N.Y. 1973) wherein that

22 the court broadly interpreted the grant of "all rights" in Superman in the

23 agreements in question as intended to grant the copyright to Superman for the

24 renewal term; and that the district court's decision was appealed by Siegel and

25 Shuster to the United States Court of Appeals for the Second Circuit and its

26 decision was published in *Siegel v. National Periodical Publications, Inc.,* 508

27 F. 2d 909 (2nd Cir. 1974), but Plaintiffs otherwise deny the allegations in

28

**ER 3877**

REPLY TO FIRST AMENDED COUNTERCLAIMS [SUPERBOY]

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 179 of 324

paragraph 27 of the Counterclaims and respectfully refer the Court to said published opinions as evidence of the contents thereof.

28.     Plaintiffs admit only that in *Siegel v. National Periodical Publications, Inc.*, 508 F. 2d 909 (2nd Cir. 1974), the Court of Appeals affirmed that National owned the original "Superman" copyright for the renewal term based on the *res judicata* effect of the 1947 Westchester Action, and that Siegel and Shuster did not appeal the Second Circuit's decision, but Plaintiffs otherwise deny the allegations in paragraph 28 of the Counterclaims and respectfully refer this Court to the Second Circuit's published opinion as evidence of the contents thereof.

29.     Plaintiffs admit only that Siegel and Shuster signed an agreement with Warner Communications, Inc., dated December 23, 1975 (the "December 23, 1975 Agreement"), wherein it alleged it was the parent company of National, and that the December 23, 1975 Agreement, amongst many other terms and conditions, contains the language quoted in paragraph 29 of the Counterclaims, but Plaintiffs otherwise deny the allegations in paragraph 29 of the Counterclaims and respectfully refer this Court to the 1975 Agreement as evidence of the contents thereof.

30.     Plaintiffs admit only the first sentence of paragraph 30 of the Counterclaims and that under the December 23, 1975 Agreement annual payments were to be made to Joanne Siegel only if Mr. Siegel died before December 21, 1985 (Mr. Siegel died January 28, 1996), but Plaintiffs otherwise deny the allegations in paragraph 30 of the Counterclaims and respectfully refer the Court to the December 23, 1975 Agreement as evidence of the contents thereof.

31.     Plaintiffs admit only that in "Action Comics No. 1" Superman is depicted as, without limitation: having been born on a distant planet, sent to Earth aboard a rocket ship, and as having, among other traits, extraordinary

REPLY TO FIRST AMENDED COUNTERCLAIMS [SUPERBOY]

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 180 of 324

1  physical abilities, including but not limited to, and by way of example,

2  superhuman strength, the ability to leap 1/8 of a mile, the power of superhuman

3  speed, to run faster than a locomotive train, the power of invulnerability, to

4  withstand injury from bullets, knives, etc, and that, without limitation, Superman

5  is a heroic figure in a distinctive costume who uses his extraordinary physical

6  and mental abilities to fight crime, champion the oppressed and benefit mankind;

7  that Superman is the "secret identity" of a mild-mannered bespectacled

8  newspaper reporter, known as Clark Kent, who works for a newspaper originally

9  called "The Daily Star," but later changed to "The Daily Planet;" but Plaintiffs

10  otherwise deny the allegations in paragraph 31 of the Counterclaims and

11  respectfully refer the Court to Action Comics No. 1 as evidence of the contents

12  thereof.

13        32.    Plaintiffs lack knowledge or information sufficient to form a belief

14  as to the truth of the allegations contained in paragraph 32 of the Counterclaims

15  and on that basis Plaintiffs deny the same.

16        33.    Plaintiffs deny the allegations in the last sentence of paragraph 33

17  of the Counterclaims, and with respect to the remaining allegations in paragraph

18  33, Plaintiffs lack knowledge or information sufficient to form a belief as to the

19  truth of such allegations and on that basis deny same.

20        34.    Denied.

21        35.    Plaintiffs admit only that Superman's original crest or shield

22  appearing in Action Comics No. 1 was comprised of a large inverted triangle in

23  the color yellow bearing, in the middle, the letter "S" in the color red, and that

24  over the years this was slightly modified to a large inverted triangle in the color

25  yellow (with its upper corners cropped and outlined in the color red) bearing in

26  the middle, the letter "S" in the color red, and that this "S" crest or shield was

27  conceived and presented by Siegel and Shuster as a strong symbol of the

28

REPLY TO FIRST AMENDED COUNTERCLAIMS [SUPERBOY]

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 181 of 324

1    Superman character they created; but Plaintiffs otherwise deny the allegations in

2    paragraph 35 of the Counterclaims.

3        36.    Plaintiffs admit that DC has registered numerous works featuring

4    Superman with the Register of Copyrights, but otherwise lack knowledge or

5    information sufficient to form a belief as to the truth of the allegations in

6    paragraph 36 of the Counterclaims and on that basis deny same.

7        37.    Denied.

8        38.    Denied.

9        39.    Denied.

10       40.    Plaintiffs lack knowledge or information sufficient to form a belief

11   as to the truth of the allegations contained in paragraph 40 of the Counterclaims

12   and on that basis Plaintiffs deny same.

13       41.    Denied.

14       42.    Plaintiffs admit only the allegations in the first sentence of

15   paragraph 42 of the Counterclaims, except Plaintiffs lack knowledge or

16   information sufficient to form a belief as to whether the April 8, 1997 date is

17   accurate and on that basis deny same; and Plaintiffs admit only the allegations in

18   the second sentence of paragraph 42 of the Counterclaims, but Plaintiffs deny

19   the characterization of the terminations as "purported" and deny the allegations

20   in the third sentence of paragraph 42 of the Counterclaims.

21       43.    Plaintiffs admit only that Plaintiffs' seven Notices of Termination

22   relating to "Superman" ("Superman Notices") terminated under 17 U.S.C. §

23   304(c) the seven grants set forth in paragraph 42 of the Counterclaims regarding

24   Siegel and Shuster's original "Superman" material, Action Comics No. 101 and

25   underlying thousands of additional works all as listed in the Superman Notices;

26   but Plaintiffs otherwise deny the allegations in paragraph 43 of the

27   Counterclaims and respectfully refer the Court to the Superman Notices as

28   evidence of the contents thereof.

ER 3880

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 182 of 324

44.    Denied.

45.    Plaintiffs admit only that Plaintiffs' four Notices of Termination of Transfer relating to "The Spectre" ("Spectre Notices") terminated under 17 U.S.C. § 304(c) the four grants set forth in paragraph 45 of the Counterclaims insofar as any such grant conveyed Siegel's copyright interest in "The Spectre;" but Plaintiffs otherwise deny the allegations in paragraph 45 of the Counterclaims and respectfully refer the Court to the Spectre Notices as evidence of the contents thereof.

46.    Plaintiffs admit only that the "Spectre Notices" terminated under 17 U.S.C. § 304(c) alleged grants of Siegel's copyright interest in "The Spectre," and that the Spectre Notices listed hundreds of works involving "The Spectre," including the works set forth in paragraph 46 of the Counterclaims ("Spectre Works"); but Plaintiffs otherwise deny the allegations in paragraph 46 of the Counterclaims and respectfully refer the Court to the Spectre Notices as evidence of the contents thereof.

47.    Plaintiffs admit only that DC's counsel sent a letter to Plaintiffs' counsel dated April 16, 1997; that sometime thereafter DC requested that the parties enter into a confidentiality agreement, and that DC's counsel also sent Plaintiffs' counsel a letter dated November 5, 1997 which, in part, contained the language quoted in paragraph 47, but Plaintiffs otherwise deny the allegations in paragraph 47 of the Counterclaims and respectfully refer the Court to the above letters as evidence of the contents thereof.

48.    Plaintiffs admit only that Plaintiffs and DC entered into a confidentiality agreement dated December 17, 1997 ("Confidentiality Agreement"), that DC, by its counsel, sent a letter dated December 18, 1997 to Plaintiffs' counsel which discussed issues it believed were relevant to a proposed purchase of all rights arising out of Siegel's authorship of "Superman," but did not set forth the terms of such proposed purchase; which

12

ER 3881

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 183 of 324

letter stated, in part, among many other things that "there is a substantial legal issue as to the effectiveness of your clients' termination of DC's interests in the Superman Comic. Nonetheless DC's offer assumes …that your client's termination and their rights therein are valid and that such termination was effective"; and that on June 19, 1998, Plaintiffs' counsel sent a letter to DC's counsel which requested detailed information regarding the profit definitions and historical revenues of DC and any Time-Warner company from the exploitation of "Superman;" but Plaintiffs otherwise deny the allegations in paragraph 48 of the Counterclaims and respectfully refer the Court to the above letters as evidence of the contents thereof.

49.   Denied.

50.   Plaintiffs admit only that on April 15, 1999, one day before the effective termination date set forth in Plaintiffs' Superman Notices, DC, by its counsel, for the first time purported to deny the validity of the Superman Notices, but Plaintiffs otherwise deny the allegations in paragraph 50 of the Counterclaims and respectfully refer the Court to the April 15, 1999 letter as evidence of the contents thereof.

51.   Plaintiffs admit only that on or about April 30, 1999, the law firm of Gang, Tyre, Ramer & Brown ("Gang, Tyre") wrote a letter to DC Comics indicating that it was then representing Plaintiffs; that DC Comics provided $228,172.65 to Plaintiffs as a non-refundable advance against monies owed by Defendants to Plaintiffs due to the "Superman Notices," and that the parties thereafter engaged in confidential negotiations pursuant to the Confidentiality Agreement, but Plaintiffs otherwise deny the allegations in paragraph 51 of the Counterclaims.

52.   Plaintiffs admit only that Kevin Marks of Gang, Tyre wrote a letter to DC's counsel dated October 19, 2001 outlining initial terms of a proposed agreement for which many other material terms had not yet been offered or

13

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 184 of 324

1  agreed upon; but Plaintiffs otherwise deny the allegations in paragraph 52 of the

2  Counterclaims insofar as the allegations mischaracterize the truth by, without

3  limitation, excluding the complete contents and the context of Kevin Marks'

4  October 19, 2001 letter, and Plaintiffs respectfully refer the Court to this letter as

5  evidence of the contents thereof.

6      53.    Plaintiffs admit only that DC Comics' counsel wrote a letter dated

7  October 26, 2001 to Plaintiffs' counsel and that on or about February 1, 2002

8  DC's counsel sent to Plaintiffs' counsel a proposed written agreement containing

9  many new material terms not contained in DC/Warner Bros. Entertainment's

10 original proposal, and terms that differed from and/or substantially diluted the

11 terms negotiated; but Plaintiffs otherwise deny the allegations in paragraph 53 of

12 the Counterclaims and respectfully refer the Court to this letter and this proposed

13 agreement as evidence of the contents thereof.

14     54.    Plaintiffs lack knowledge or information sufficient to form a belief

15 as to the truth of the allegations contained in paragraph 54 of the Counterclaims

16 and on that basis Plaintiffs deny the same.

17     55.    Plaintiffs admit only that Plaintiff Joanne Siegel wrote a letter dated

18 May 9, 2002 to Richard Parsons, the Co-Chief Operating Officer of AOL Time

19 Warner, Inc. ("Time Warner") objecting to DC/Warner Bros. Entertainment's

20 proposed written agreement as containing "new, outrageous demands that were

21 not in the[ir] proposal," but Plaintiffs otherwise deny the allegations in

22 paragraph 55 of the Counterclaims.

23     56.    Plaintiffs admit only that Plaintiffs sent a letter dated September 21,

24 2002 to DC terminating all negotiations with DC and Time Warner, but

25 Plaintiffs otherwise deny the allegations in paragraph 56 of the Counterclaims.

26     57.    Plaintiffs admit only that they served DC, Warner Bros.

27 Entertainment Inc. ("Warner Bros.") and Time Warner with a Notice of

28 Termination of Transfer which related specifically to "Superboy" ("Superboy

14

ER 3883

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 185 of 324

1    Notice"); that the Superboy Notice terminated, effective November 17, 2004, the

2    two grants of copyright in "Superboy", the 1948 Stipulation and the 1975

3    Agreement, and identified many works containing the character, "Superboy, "

4    but Plaintiffs otherwise deny the allegations in paragraph 57 of the

5    Counterclaims.

6         58.    Plaintiffs admit only that the Superboy Notice terminated the

7    aforesaid grants regarding Siegel's Superboy Summary and Superboy Story as

8    published in the comic book More Fun Comics No. 101, and many additional

9    titles, but Plaintiffs otherwise deny the allegations in paragraph 58 of the

10   Counterclaims and respectfully refer the Court to the Superboy Notice as

11   evidence of the contents thereof.

12        59.    Plaintiffs admit only that the Superboy Notice contains, in part, the

13   language quoted in paragraph 59 of the Counterclaims, but Plaintiffs otherwise

14   deny the allegations in paragraph 59 of the Counterclaims and respectfully refer

15   the Court to the Superboy Notice as evidence of the contents thereof.

16        60.    Plaintiffs admit only that the Superboy Notice states that Jerome

17   Siegel is the sole author of the first and original "Superboy" works, all as set

18   forth in the Superboy Notice, but Plaintiffs otherwise deny the allegations in

19   paragraph 60 of the Counterclaims and respectfully refer the Court to the

20   Superboy Notice as evidence of the contents thereof.

21        61.    Plaintiffs admit only that the Superboy Notice lists the WB

22   "Smallville" television series as a work derived from Jerome Siegel's original

23   "Superboy" copyright(s) and thus affected by Plaintiffs full recovery of such

24   copyright(s) on the effective date of termination set forth in the Superboy

25   Notice; that "Smallville," like Superboy, features the life and relationships of

26   Clark Kent as a youth going to school in a small rural town in the American

27   heartland (named "Smallville" in the comic book "Superboy No. 1") and that

28   this derivative television series naturally contains certain minor supporting

REPLY TO FIRST AMENDED COUNTERCLAIMS [SUPERBOY]

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 186 of 324

1 characters not created by Jerome Siegel. Plaintiffs lack knowledge or

2 information sufficient to form a belief as to the truth of the allegation that

3 "Smallville" contains "storylines wholly original to the series" and on that basis

4 deny the same. Plaintiffs otherwise deny the allegations in paragraph 61 of the

5 Counterclaims and respectfully refer the Court to the Superboy Notice as

6 evidence of the contents thereof.

7      62.    Plaintiffs admit only that on or about June 17, 2004, Ari Emanuel, a

8 talent agent and founder of the Endeavor Talent Agency, sent a letter to Warner

9 Bros. confirming that since "Smallville" is derived from "Superboy," DC

10 Comics and Warner Bros. would be prohibited after November 17, 2004, the

11 effective date of the Superboy Notice from producing and exploiting new

12 derivative "Smallville" episodes; but Plaintiffs otherwise deny the allegations in

13 paragraph 62 of the Counterclaims and respectfully refer the Court to Mr.

14 Emanuel's letter as evidence of the contents thereof.

15      63.    Plaintiffs admit only that by letter dated August 4, 2004, Marc

16 Toberoff, Plaintiffs' attorney of record reiterated that since "Smallville" is

17 derived from "Superboy," DC Comics and Warner Bros. would be prohibited

18 after November 17, 2004, the effective date of the Superboy Notice, from

19 producing and exploiting new derivative "Smallville" episodes, but Plaintiffs

20 otherwise deny the allegations in paragraph 62 of the Counterclaims and

21 respectfully refer the Court to Mr. Toberoff's letter as evidence of the contents

22 thereof.

23      64.    Admitted.

24      65.    Plaintiffs admit only that Plaintiffs filed the within action on

25 October 22, 2004, and that on October 8, 2004 Plaintiffs had filed a different

26 action (Civil Case No. 04-8400) regarding ownership of the "Superman"

27 copyright, which action was assigned to the Honorable Dean D. Pregerson of

28

1  this Court, but Plaintiffs otherwise deny the allegations in paragraph 65 of the

2  Counterclaims.

**FIRST COUNTERCLAIM**

3

4      66.    Plaintiffs re-allege and incorporate by reference paragraphs 1-65

5  inclusive, as though fully set forth herein.

6      67.    Plaintiffs admit only that DC purports to assert that the Superman

7  Notices and/or the Superboy Notice are ineffective for the purported reasons set

8  forth in DC's Counterclaims, but Plaintiffs deny such assertions and otherwise

9  deny the allegations in paragraph 67 of the Counterclaims.

10     68.    Denied.

11     69.    Denied.

12     70.    Admitted.

13     71.    Plaintiffs admit only that DC's counsel sent a letter dated April 15,

14  1999, the day before the effective date of the Superman Notices, purporting to

15  reject the scope and validity of the Superman Notices, including but not limited

16  to the Superman Notice which terminated the 1975 Agreement, to the extent, if

17  any, that it granted or purported to grant, any of Siegel's "Superman" copyright

18  interests,  but Plaintiffs otherwise deny the allegations in paragraph 71 of the

19  Counterclaims, and respectfully refer the Court to this letter as evidence of the

20  contents thereof.

21     72.    Plaintiffs admit only that DC's counsel sent a letter dated August

22  29, 2004, shortly before the effective date of the Superboy Notice, purporting to

23  reject the scope and validity of the Superboy Notice, which, without limitation,

24  terminated the December 23, 1975 Agreement, to the extent, if any, that it

25  granted or purported to grant, any of Jerome Siegel's "Superboy" copyright

26  interests, but Plaintiffs otherwise deny the allegations in paragraph 72 of the

27  Counterclaims, and respectfully refer the Court to this letter as evidence of the

28  contents thereof.

17

73.   Denied.

74.   Denied.

75.   Denied.

76.   Denied.

77.   Plaintiffs admit only that Plaintiffs' Superboy Notice terminated the grant of Siegel's copyright in his Superboy Summary and Superboy Story as published in More Fun Comics No. 101 in 1944, and that the Notice lists many additional published titles which feature or relate to "Superboy," but Plaintiffs otherwise deny the allegations in paragraph 77 of the Counterclaims.

78.   Denied.

79.   Denied.

80.   Plaintiffs admit only that 17 U.S.C. § 304(c) permits the termination of grants of copyrights subsisting in either its first or renewal term as of January 1, 1978, but Plaintiffs otherwise deny the allegations in paragraph 80 of the Counterclaims.

81.   Denied.

82.   Denied.

83.   Denied.

84.   Denied.

85.   Denied.

86.   Denied.

87.   Denied.

88.   Plaintiffs admit only that Plaintiffs deny the allegations in paragraphs 65-87 to the extent denied hereinabove, but Plaintiffs otherwise deny the allegations contained in paragraph 88 of the Counterclaims.

89.   Plaintiffs admit only that a declaration of the Court in this action is necessary, but otherwise deny the allegations contained in paragraph 89 of the Counterclaims.

18

## SECOND ALTERNATIVE COUNTERCLAIM

90.    Plaintiffs re-allege and incorporate by reference paragraphs 1-89 inclusive, as though fully set forth herein.

91.    Plaintiffs admit only that one day before the effective date of the Superman Notice, DC's counsel, by letter to Plaintiffs' counsel, dated April 15, 1999, purported to reject the Superman Notices, but Plaintiffs otherwise deny the allegations in paragraph 91 of the Counterclaims.

92.    Plaintiffs admit only that after April 16, 1999, Warner Bros., Time Warner and DC have, without limitation, failed to account to Plaintiffs for their share of profits from the exploitation of the original "Superman" copyrights, but Plaintiffs otherwise deny the vague and ambiguous allegations in paragraph 92 of the Counterclaims.

93.    Denied.

94.    Denied.

95.    Plaintiffs admit only that Plaintiffs deny the allegations in paragraphs 89-94 to the extent denied hereinabove, but Plaintiffs otherwise deny the allegations contained in paragraph 94 of the Counterclaims.

96.    Plaintiffs admit that a declaration of the Court is necessary, but otherwise deny the allegations contained in paragraph 96 of the Counterclaims.

## THIRD ALTERNATIVE COUNTERCLAIM

97.    Plaintiffs re-allege and incorporate by reference paragraphs 1-96 inclusive, as though fully set forth herein.

98.    Denied.

99.    Denied.

100.    Denied.

101.    Denied

## FOURTH ALTERNATIVE COUNTERCLAIM

19

**ER 3888**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 190 of 324

102. Plaintiffs re-allege and incorporate by reference paragraphs 1-101 inclusive, as though fully set forth herein.

103. Denied.

104. Admitted.

105. Plaintiffs admit that DC seeks a judicial declaration, but Plaintiffs otherwise deny the allegations in paragraph 105 of the Counterclaims.

## FIFTH ALTERNATIVE COUNTERCLAIM

106. Plaintiffs re-allege and incorporate by reference paragraphs 1-65 inclusive, as though fully set forth herein.

107. Plaintiffs admit that the Superman Notices and Superboy Notice are effective and that DC alleges a purported fifth alternative counterclaim, but Plaintiffs otherwise deny the allegations in paragraph 107 of the Counterclaims.

108. Plaintiffs admit that DC makes purported contentions in its purported fifth alternative counterclaim but Plaintiffs otherwise deny the allegations in paragraph 108 of the Counterclaims.

109. Plaintiffs admit that 37 CFR §201.10, promulgated by the US Copyright Office under the 1976 Copyright Act, requires, in the context of and subject to the other provisions of 17 U.S.C. §304(c) and 37 CFR §201.10, that a notice of termination identify "each work to which the notice of termination applies," but Plaintiffs otherwise deny the allegations in or inferences of paragraph 109 of the Counterclaims.

110. Plaintiffs lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 110 of the Counterclaims and on that basis Plaintiffs deny the same.

111. Denied.

112. Denied.

113. Denied.

REPLY TO FIRST AMENDED COUNTERCLAIMS [SUPERBOY]

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 191 of 324

114.    Plaintiffs admit only that the Superman Shield appeared in certain prior works derived from Siegel's Superman works, but Plaintiffs otherwise deny the allegations in paragraph 114 of the Counterclaims.

115.    Denied.

116.    Denied.

117.    Denied.

118.    Denied.

119.    Plaintiffs admit only that certain works derived from Action Comics No. 1 contain additional copyrightable elements not present in Action Comics No. 1, such as new villains, but Plaintiffs otherwise deny the allegations in paragraph 119 of the Counterclaims.

120.    Denied.

121.    Plaintiffs admit only that Siegel's Superboy Summary and Superboy Story contain, in part, the language quoted in paragraph 121 of the Counterclaims, but Plaintiffs otherwise deny the allegations in paragraph 121 of the Counterclaims, and respectfully refer the Court to the Superboy Summary and Superboy Story as evidence of the contents thereof.

122.    Denied.

123.    Denied.

124.    Denied.

125.    Denied.

126.    Plaintiffs admit that More Fun Comics No. 101 contained both artwork and storyline, but Plaintiffs otherwise deny the allegations in paragraph 126 of the Counterclaims, and respectfully refer the Court to More Fun Comics No. 101 as evidence of the contents thereof.

127.    Denied.

128.    Denied.

129.    Denied.

ER 3890

130. Denied.

131. Denied.

132. Denied.

133. Denied.

134. Plaintiffs admit only that Plaintiffs deny the allegations in paragraphs 106-133 to the extent denied hereinabove, but Plaintiffs otherwise deny the allegations contained in paragraph 134 of the Counterclaims.

135. Plaintiffs admit that a declaration of the Court in this action is necessary, but otherwise deny the allegations contained in paragraph 135 of the Counterclaims.

## SIXTH ALTERNATIVE COUNTERCLAIM

136. Plaintiffs re-allege and incorporate by reference paragraphs 1- 65 and 106-135 inclusive, as though fully set forth herein.

137. Denied.

138. Plaintiffs admit that a declaration of the Court in this action is necessary, but otherwise deny the allegations contained in paragraph 138 of the Counterclaims.

139. Plaintiffs admit that a declaration of the Court in this action is necessary, but otherwise deny the allegations contained in paragraph 139 of the Counterclaims.

## PRAYER FOR RELIEF

140. With respect to the relief requested in paragraph 1 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to any of the relief requested in said paragraph.

141. With respect to the relief requested in paragraph 2 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to any of the relief requested in said paragraph.

REPLY TO FIRST AMENDED COUNTERCLAIMS [SUPERBOY]

142. With respect to the relief requested in paragraph 3 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to any of the relief requested in said paragraph.

143. With respect to the relief requested in paragraph 4 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to any of the relief requested in said paragraph.

144. With respect to the relief requested in paragraph 5 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to any of the relief requested in said paragraph.

145. With respect to the relief requested in paragraph 6 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to any of the relief requested in said paragraph.

146. With respect to the relief requested in paragraph 7 of the Prayer for Relief, Plaintiffs specifically and generally deny that Counterclaimant is entitled to any of the relief requested in said paragraph.

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

147. The Counterclaims, and each purported counterclaim alleged therein, fail to allege facts sufficient to state a claim upon which relief sought or any relief could be granted.

### SECOND AFFIRMATIVE DEFENSE
### (Estoppel)

148. The Counterclaims, and each purported counterclaim alleged therein, is barred, in whole or in part, by the doctrine of estoppel.

### THIRD AFFIRMATIVE DEFENSE
### (Laches)

149. The Counterclaims, and each purported counterclaim alleged therein, is barred, in whole or in part, by the equitable doctrine of laches.

23

## FOURTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

144.     The Counterclaims, and each purported counterclaim alleged therein, is barred, in whole or in part, by the equitable doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

### (Waiver)

145.     The Counterclaims, and each purported counterclaim alleged therein, is barred by the doctrine of waiver.

## SIXTH AFFIRMATIVE DEFENSE

### (Acquiescence)

146.     The Counterclaims, and each purported counterclaim alleged therein, is barred by the doctrine of acquiescence.

## SEVENTH AFFIRMATIVE DEFENSE

### (Bad Faith)

147.     Counterclaimant is barred from obtaining any relief from its Counterclaims because Counterclaimant has acted in bad faith for improper purposes with respect to the subject matter of the Counterclaims.

## EIGHTH AFFIRMATIVE DEFENSE

### (Incorporation of Complaint)

148.     Plaintiffs hereby incorporate each of the allegations and claims for relief contained within Plaintiffs' complaint filed herein.

## NINTH AFFIRMATIVE DEFENSE

### (Reservation of Right to Amend)

149.     The Counterclaims and each purported counterclaim therein fails to state the claims for relief with sufficient particularity to permit Plaintiffs to discern and raise all appropriate defenses and Plaintiffs therefore reserve their rights to amend or supplement this answer with additional defenses.

24

**ER 3893**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 195 of 324

## TENTH AFFIRMATIVE DEFENSE

### (Unknown Defenses)

150. The answering Plaintiffs believe, and based upon such information and belief allege, that the Plaintiffs may have additional affirmative defenses available to them, which are not now fully known and which these answering Plaintiffs are not fully aware. The Plaintiffs accordingly reserve the right to assert any additional affirmative defenses after the same have been ascertained.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

151. The Counterclaims and each purported counterclaim therein is barred, in whole or in part, by the equitable doctrine of unjust enrichment.

## TWELFTH AFFIRMATIVE DEFENSE

### (Illegality)

152. Counterclaimant is not entitled to any relief with respect to any of the Counterclaims to the extent of any illegality of any matters set forth in the Counterclaims.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Violations of Law)

153. Counterclaimant has violated one or more laws which thereby eliminate or reduce any and all relief requested in the Counterclaims.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Against Public Policy)

154. Any contract alleged in the Counterclaims which is contrary to public policy is unenforceable and/or any relief requested in the Counterclaims which is contrary to public policy should not be granted.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Failure to Comply With FRCP)

**ER 3894**

REPLY TO FIRST AMENDED COUNTERCLAIMS [SUPERBOY]

155.   Plaintiffs are not required to separately admit or deny each averment contained in each paragraph of the Counterclaims due to Counterclaimant's failure to comply with Rules 8(a) and 8(e) of the Federal Rules of Civil Procedure.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Plaintiffs' Compliance with 17 U.S.C. §304(c))

156.   The termination of the grants of copyright in "Superman" and "Superboy," respectively pursuant to Plaintiffs' Notices of Termination were effective due to Plaintiffs' compliance with 17 U.S.C. § 304(c) and 37 C.F.R. § 201.10.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (Plaintiffs' Termination Notices Not Invalidated By Technical Errors)

157.   Under 17 U.S.C. § 304(c) and 37 C.F.R. § 201.10, Plaintiffs' Termination Notices are not invalidated or curtailed due to technical errors or omissions, if any, since Plaintiffs' intent to terminate all prior grants by Siegel of his copyright interests in "Superman," "Superboy" and other works is made clear to Counterclaimant in the Termination Notices timely served on Counterclaimant.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (Termination Interests Under 17 U.S.C. § 304(c) Cannot Be Waived)

158.   Plaintiffs could not have waived or effectively waived, directly or indirectly, any of its termination rights or interests because such rights or interests under 17 U.S.C. § 304(c) persist "notwithstanding any agreement to the contrary" and cannot be waived.

## NINETEENTH AFFIRMATIVE DEFENSE
### (1948 Consent Judgment Not A Copyright Grant)

159.   The Consent Judgment dated May 21, 1948 need not have been terminated by Plaintiffs pursuant to 17 U.S.C. § 304(c) to regain Siegel's

26

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 197 of 324

copyright interests because the Consent Judgment does not constitute a grant or assignment of a copyright interest in "Superman," "Superboy" or any other work authored by Siegel.

### TWENTIETH AFFIRMATIVE DEFENSE

### (1948 Consent Judgment Not an Operative Agreement)

160.     The Consent Judgment dated May 21, 1948 need not have been terminated by Plaintiffs pursuant to 17 U.S.C. § 304(c) to regain Siegel's copyright interests because it is not an operative agreement or grant of any copyright interest(s); the Consent Judgment merely recites which parties own which copyrights pursuant to a prior grant(s), namely the May 19, 1948 Stipulation, the operative grant which was duly terminated by Plaintiffs' termination notices pursuant to 17 U.S.C. § 304(c).

### TWENTY-FIRST AFFIRMATIVE DEFENSE

### (1975 Agreement Not a Copyright Grant)

161.     The December 23, 1975 Agreement between Counterclaimant's alleged predecessor Warner Communications, Inc. and Siegel and Shuster did not grant or assign any copyright interest of Jerome Siegel to Warner Communications, Inc.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

### (No Assignment of Copyright Under 17 U.S.C. §204(a))

162.     Plaintiffs did not assign their copyright interests in "Superman," "Superboy" or any other work, recovered as result of Plaintiffs' exercise of their termination rights under 17 U.S.C.§ 304 (c), because, without limitation, no written assignment of any such copyright interests was executed by Plaintiffs as required by 17 U.S.C. §204(a).

### TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Failure to List Ad Does Not Affect Superman Termination)

**ER 3896**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 198 of 324

163.     Plaintiffs' "Superman" Termination Notices and "Superboy" Termination Notice are not invalidated or curtailed by failing to list an advertisement(s), allegedly depicting the cover of Action Comics No. 1, if any, since Plaintiffs properly gave notice of their termination of the underlying *grant(s)* of the original "Superman" and "Superboy" copyrights pursuant to 17 U.S.C. § 304(c) and Plaintiffs' Termination Notices identified Action Comics No. 1 and More Fun Comics, No. 101, respectively.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (Not Works For Hire)

164.     The "Superman" works created by Jerome Siegel and/or by Siegel and Shuster, the "Superboy" works created by Jerome Siegel and any other works by Jerome Siegel and/or Joseph Shuster referred to in the Counterclaims do not constitute works-for-hire.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE
### ("Additional Action Comics No. 1" Material Is
### De Minimus and Terminable)

165.     The purported "Additional Action Comics No. 1 Material" referred to in the Counterclaims is *de minimus* and, in any event, was subject to Plaintiffs' termination under 17 U.S.C. §304 (c) since any such material was not work-for-hire.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Counterclaimant Cannot Exploit New Derivative Works)

166.     Counterclaimant cannot exploit new derivative works based on copyrights that Plaintiffs have recovered pursuant to 17 U.S.C. §304 (c) and/or based on works derived from such recovered copyrights.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE
### (Trademarks Cannot Restrain Plaintiffs' Use of Its Copyrights)

REPLY TO FIRST AMENDED COUNTERCLAIMS [SUPERBOY]

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 199 of 324

167.  Counterclaimant cannot use its purported trademark(s) to restrain Plaintiffs' use or exploitation of its copyright interests under the United States Copyright Act.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE
### (Use of "Superman" Shield Is a Use Of
### Plaintiffs' "Superman" Crest Copyright)

168.  Plaintiffs are entitled to an accounting by Counterclaimants for their licensing or other exploitation of the "Superman Shield" because such constitutes an exploitation of the copyright in Siegel and Shuster's "Superman Crest" which, at a minimum, is co-owned by Plaintiffs.

### TWENTY-NINTH AFFIRMATIVE DEFENSE
### ("Superman" Has Changed Very Little Since Its Creation)

169.  "Superman" has changed very little over the years since its original creation and development by Siegel and Shuster.

### THIRTIETH AFFIRMATIVE DEFENSE
### (Apportionment Is Not Applicable To Licensing)

170.  The doctrine of apportionment while at times applicable to the exploitation of derivative works should not be applied to Counterclaimant's receipt of passive licensing fees with respect to "Superman" and other works.

### THIRTY-FIRST AFFIRMATIVE DEFENSE
### (Any Apportionment Should Weigh In Plaintiffs' Favor)

171.  "Superman" is one of those few copyrightable characters wherein the character, itself, *is* the story being told and, as such, any apportionment of profits from the exploitation of "Superman" should weigh heavily in Plaintiffs' favor.   Likewise, "Superboy" is one of those few copyrightable characters wherein the character, itself, *is* the story being told and, as such, any apportionment of profits from the exploitation of "Superboy" should weigh heavily in Plaintiffs' favor.

ER 3898

## THIRTY-SECOND AFFIRMATIVE DEFENSE

### (No Statute of Limitations Applicable To 17 U.S.C. §304 (c) Termination)

172. Since Plaintiffs complied with the timing, notice and other prerequisites to the termination of prior copyright grants under 17 U.S.C. §304(c), no statute of limitations runs against Plaintiffs' Superman Terminations or Superboy Termination, nor is the statute of limitations nonetheless triggered by Counterclaimant's frivolous denial of the validity of such terminations.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### (Statute of Limitations Has Not Run Due To Tolling Agreement)

173. To the extent, if any, a statute of limitations or other time based defense is applicable to Plaintiffs' terminations, such statute has not run, and such time based defenses are ineffective, due to the "Tolling Agreement" executed by Counterclaimant and Plaintiffs dated April 20, 2000; and Counterclaimant has breached such Tolling Agreement by nonetheless asserting herein that Plaintiffs' Superman Terminations and Superboy Termination are barred by the statute of limitations.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

### (Confidentiality Agreement)

174. Plaintiffs are not required to separately admit or deny each averment contained in the Counterclaims relating to confidential negotiations between the parties due to the confidentiality agreement between Counterclaimant and Plaintiffs dated December 17, 1997, and Counterclaimant's breach of such confidentiality agreement.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

### (Rule 408 of the FRE)

175. Plaintiffs are not required to separately admit or deny each averment contained in the Counterclaims relating to conduct or statement made

1  in settlement negotiations between the parties since such is inadmissible under
2  Rule 408 of the Federal Rules of Evidence.

3  ### THIRTY-SIXTH AFFIRMATIVE DEFENSE

4  ### (Payments Not Received By Joanne Siegel

5  ### Under December 23, 1975 Agreement)

6  176.    The December 23, 1975 Agreement provided that Joanne Siegel
7  was to receive payments only if Jerry Siegel died before December 21, 1985;
8  and Mr. Siegel did not die until January 28, 1996.

9  ### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

10 ### (Beyond Scope of Authority)

11 177.    Plaintiffs' attorneys lacked authority and/or exceeded the scope of
12 their authority with respect to the purported settlement agreement alleged by
13 Counterclaimant.

14 ### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

15 ### (Statute of Frauds)

16 178.    The purported settlement agreement alleged by Counterclaimant is
17 barred by the Statute of Frauds.

18 ### THIRTY-NINTH AFFIRMATIVE DEFENSE

19 ### (No Settlement Agreement Consummated)

20 179.    Plaintiffs did not execute a written settlement agreement with
21 Counterclaimant, nor otherwise approve all material terms and conditions of a
22 settlement agreement with Counterclaimant.  When Counterclaimant finally
23 presented Plaintiffs with all material terms of Counterclaimant's settlement offer
24 or counter-offer in the first draft of a written agreement, such was rejected by
25 Plaintiffs, in large part, because it contained many unacceptable material terms
26 that had never been proposed by Counterclaimant, nor agreed to by Plaintiffs.

27 WHEREFORE, Plaintiffs pray for judgment on the Counterclaims as
28 follows:

**ER 3900**

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 202 of 324

1.   That all the Counterclaims be dismissed;

2.   That Counterclaimant takes nothing by its Counterclaims;

3.   That judgment be entered in favor of Plaintiffs on all counts;

4.   That Plaintiffs be awarded costs of suit;

5.   That Plaintiffs be awarded attorneys' fees incurred in defense of the Counterclaims as permitted by Section 505 of the United States Copyright Act; and

6.   That Plaintiffs be awarded such other and further relief, both general and special, as the Court may deem just and proper.

DATED: November 1, 2005      LAW OFFICES OF MARC TOBEROFF, PLC

By: _____
                    Marc Toberoff

Attorneys for Plaintiffs and Counterclaim
Defendants JOANNE SIEGEL and LAURA
SIEGEL LARSON

REPLY TO FIRST AMENDED COUNTERCLAIMS [SUPERBOY]

Case: 13-56243, 02/25/2014, ID: 8992563, DktEntry: 22-16, Page 203 of 324

1

## JURY TRIAL DEMANDED

2        Plaintiffs hereby request a trial by jury on each claim for relief alleged in

3 the Counterclaims.

4 DATED: November 1, 2005     LAW OFFICES OF MARC TOBEROFF, PLC

5

6                     By: _____

                              Marc Toberoff

7

8                     Attorneys for Plaintiffs and Counterclaim

                    Defendants JOANNE SIEGEL and LAURA

9                     SIEGEL LARSON

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ER 3902

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is: 1999 Avenue of the Stars, Suite 1540, Los Angeles, California 90067.

On November 3, 2005, I served the attached documents described as **REPLY TO FIRST AMENDED COUNTERCLAIMS [SUPERBOY]** on all interested parties in this action by placing __ the original _X_ a true copy thereof enclosed in sealed envelope(s) addressed as follows:

David L. Burg
WEISSMANN WOLFF BERGMAN COLEMAN GRODIN & EVALL LLP
9665 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212

James D. Weinberger
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, New York 10017

[X]  :BY MAIL:

As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on November 3, 2005, in Los Angeles, California.

Nicholas C. Williamson

ORIGINAL

1   FROSS ZELNICK LEHRMAN & ZISSU, P.C.
    Roger L. Zissu (Admitted *pro hac vice*)
2   James D. Weinberger (*Admitted pro hac vice*)
    866 United Nations Plaza
3   New York, New York 10017
    Telephone: 212-813-5900
4   Fax:        212-813-5901

5   WEISSMANN WOLFF BERGMAN
      COLEMAN GRODIN & EVALL LLP
6   Michael Bergman (SBN 37797)
    David L. Burg (SBN 130403)
7   Adam Hagen (SBN 218021)
    9665 Wilshire Boulevard, Ninth Floor
8   Beverly Hills, California 90212
    Telephone: 310-858-7888
9   Fax:        310-550-7191

10  PERKINS LAW OFFICE, P.C.
    Patrick T. Perkins (Admitted *pro hac vice*)
11  1711 Route 9D
    Cold Spring, New York 10516
12  Telephone: 845-265-2820
    Fax:        845-265-2819

13

14  Attorneys for Defendants and Counterclaimants

15              UNITED STATES DISTRICT COURT

16            CENTRAL DISTRICT OF CALIFORNIA

17
    JOANNE SIEGEL, an individual; and        )   Case No.
18  LAURA SIEGEL LARSON, an                   )   CV 04-08776 RSWL (RZx)
    individual,                               )   Honorable Ronald S.W. Lew
19                                            )
            Plaintiffs,                       )
20                                            )   Related To Case No.
        vs.                                   )     CV 04-8400 RSWL (RZx)
21                                            )
    TIME WARNER INC., a corporation;          )   **FIRST AMENDED**
22  WARNER COMMUNICATIONS INC., a             )   **COUNTERCLAIMS**
    corporation; WARNER BROS.                 )
23  ENTERTAINMENT INC., a corporation;        )
    WARNER BROS. TELEVISION                    )
24  PRODUCTION INC., a corporation; DC        )
    COMICS, a general partnership; and        )
25  DOES 1-10,                                )
                                              )
26          Defendants.                       )
                                              )
27  _____          )
                                              )
28  AND RELATED COUNTERCLAIMS.                )

FILED
CLERK, U.S. DISTRICT COURT

OCT 18 2005

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

Priority ____
Send     ____
Enter    ____
Closed   ____
JS-5/JS-6 ____
JS-2/JS-3 ____
Scan Only ____

DOCKETED ON CM

OCT 19 2005

BY                009

                              1

1   Defendant/Counterclaimant DC Comics, for its First Amended

2   Counterclaims against Plaintiff/Counterclaim Defendants Joanne Siegel and Laura

3   Siegel Larson, alleges:

4

5                              **PARTIES**

6       1.      Defendant/Counterclaimant DC Comics ("DC" or "DC Comics") is a

7   New York General Partnership engaged in the business of, *inter alia*, creating,

8   exploiting, and licensing comic book stories and characters.  DC is the successor in

9   interest to all rights under copyright and other rights, including trademark rights

10  and the good will in and to the first Superman story and all other works and

11  products relating to the Superman character.

12      2.      Upon information and belief, Plaintiff/Counterclaim Defendant

13  Joanne Siegel is an individual and citizen of the State of California, in the County

14  of Los Angeles.  Upon further information and belief, Joanne Siegel is the widow

15  of Jerome Siegel, the individual credited as a co-creator of the first Superman

16  stories.

17      3.      Upon information and belief, Plaintiff/Counterclaim Defendant Laura

18  Siegel Larson is an individual and citizen of the State of California, in the County

19  of Los Angeles.  Upon further information and belief, Laura Siegel Larson is a

20  daughter of Jerome Siegel.  Plaintiff/Counterclaim Defendants Joanne Siegel and

21  Laura Siegel Larson are referred to herein as "the Siegels."

22                     **JURISDICTION AND VENUE**

23      4.      This Court has jurisdiction of the subject matter hereof under the

24  provisions of the U.S. Copyright Act, 17 U.S.C. § 101 *et seq.*, relating to copyright

25  ownership, under sections 39 and 43 (a) and (c) of the U.S. Trademark Act, also

26  known as the Lanham Act, 15 U.S.C. §§ 1121 and 1125 (a) and (c), and sections

27  1331, 1332, 1338 (a) and 1338 (b) of the Judicial Code, 28 U.S.C. §§ 1331, 1332,

28

314290v1 02231.0811                FIRST AMENDED COUNTERCLAIMS

ER 3905

1 | 1338 (a) and 1338 (b), as well as under principles of supplemental jurisdiction, 18

2 | U.S.C. § 1367.

3     5.     Venue is proper under 28 U.S.C. § 1391 (b) in that, upon information

4 | and belief, a substantial part of the events giving rise to DC's claims occurred or a

5 | substantial part of the properties that are the subject of these counterclaims are

6 | situated in this District and/or the Plaintiffs/Counterclaim Defendants may be

7 | found in this District.

8 | **FACTS COMMON TO ALL COUNTERCLAIMS**

9 | **Background And History**

10     6.     Upon information and belief, in or about 1933, Jerome Siegel

11 | ("Siegel") and his friend and co-creator, Joseph Shuster ("Shuster") collaborated

12 | on creating a number of stories, including a story entitled "The Reign of the

13 | Superman," which was published in a magazine put out by Siegel and Shuster

14 | themselves entitled "Science Fiction." Upon further information and belief, other

15 | than the same name, the "Superman" character in this story shared very little, if

16 | any, similarity with the character that would later become known as Superman.

17     7.     Upon information and belief, in early 1933, Siegel and Shuster began

18 | collaborating on "comic strips," initially for syndication and eventually for

19 | publication in "comic books," a new and growing medium. Among their work

20 | together were a number of comic strips featuring a character they named

21 | Superman. This Superman character bore virtually no resemblance to the character

22 | of the same name that had previously appeared in the "Science Fiction" magazine.

23 | Upon further information and belief, those works, which were never published,

24 | included: (a) twenty four (24) days of Superman comic strips intended for

25 | newspapers; (b) a seven page synopsis of the last eighteen days (weeks 2-4) of

26 | such strips; (c) a paragraph previewing Superman exploits; (d) a nine-page

27 | synopsis covering an additional two months of daily comic strips; and (e) fifteen

28 | daily comic strips (collectively the "Unpublished Superman Works").

3

8. Upon information and belief, between 1933 and 1937 Siegel and Shuster submitted the Unpublished Superman Works to a number of prospective publishers and newspaper syndicates, but the work was rejected by them all.

9. Meanwhile, between 1935 and 1937, Siegel and Shuster created a number of comics strips that were published, including such titles as "Dr. Occult," "Henri Duval," and "Spy."

10. On December 4, 1937, Siegel and Shuster entered into an "Agreement of Employment" (the "December 4, 1937 Agreement") with Detective Comics, Inc. ("DCI"), a predecessor in interest to DC. Under the Agreement, Siegel and Shuster agreed to "give their exclusive services" in producing comic features entitled "Slam Bradley" and "The Spy" for a period of two years. Under the Agreement, Siegel and Shuster were required to submit any new comics to DCI first, which reserved the right to accept or reject the work for a period of sixty (60) days.

11. Early in 1938, DCI was looking for materials for a new comic book it was intending to publish under the name "Action Comics." In that connection, upon information and belief, DCI was provided with the twenty four (24) days of Superman comic strips from the Unpublished Superman Works for review. At the instance and expense of DCI and subject to its right to control, Siegel and Shuster cut and pasted the comic strips, and added certain additional material, to create a thirteen page comic book story which was accepted for publication by DCI.

12. In an agreement with DCI dated March 1, 1938 (the "March 1, 1938 Agreement"), Siegel and Shuster, among other things, transferred to DCI "the strip entitled 'Superman' . . . all good will attached thereto and exclusive right to the use of the characters and story, continuity and title of strip . . ." and agreed not to employ Superman and other characters in the strip "by their names contained therein."

13.    DCI advertised the publication of the new comic story Superman and the new title "Action Comics No. 1" in others of its publications, including but not limited to, "More Fun Comics No. 31," "Detective Comics No. 15," and "New Adventure Comics No. 26," all of which are cover dated May 1938 and, upon information and belief, were distributed in copies to the public on or before April 1, 1938. These advertisements (the "Superman Ads"), which depict the Superman character in his costume, exhibiting super-strength, show almost the entirety of what would become the cover of "Action Comics No. 1."

14.    Upon information and belief, sometime prior to April 16, 1938, but after the Superman Ads, DCI published the thirteen page Superman comic book comprising the first Superman story in "Action Comics No. 1," bearing the "cover" date June 1938 (hereinafter "Action Comics No. 1"). However, Action Comics No. 1 was not comprised entirely of the pre-existing Unpublished Superman Works. Rather, upon information and belief, in response to DCI's instruction that the Unpublished Superman Works be presented as a thirteen page comic book and subject to DCI's right to control, Siegel and Shuster created additional materials to complete Action Comics No. 1 (the "Additional Action Comics No. 1 Materials").

15.    After the publication of Action Comics No. 1, upon information and belief, Siegel and Shuster supplied further original Superman stories at DCI's instance and expense and subject to its right to control. On September 22, 1938, Siegel and Shuster entered into another employment agreement (the "DCI September 22, 1938 Agreement"), confirming that Siegel and Shuster had "been doing the art work and continuity for said comics [including Superman comics] for us. We wish you to continue to do said work and hereby employ and retain you for said purposes . . . ." The DCI September 22, 1938 Agreement also contained an acknowledgement that DCI was the "exclusive" owner of Superman.

16.    Also on September 22, 1938, Siegel and Shuster entered into an agreement with DCI and with the McClure Newspaper Syndicate (the "McClure

1  September 22, 1938 Agreement") concerning the use of Superman in newspaper

2  strips.

3      17.    All of Siegel and Shuster's contributions to Superman comic books

4  and comic strips published subsequent to Action Comics No. 1 as well as the

5  Additional Action Comics No. 1 Materials, were made either under the DCI March

6  1, 1938 Agreement, the DCI September 22, 1938 Agreement, the McClure

7  September 22, 1938 Agreement, or contemporaneous oral agreements confirmed

8  by one or more of these Agreements, or certain subsequent agreements affirming

9  those agreements, as employees of DCI or its successors or at DCI's instance and

10  expense and subject to DCI's right of control, with the result that the copyrights to

11  all Superman materials created by them after preparation of materials included in

12  Action Comics No. 1 and to the Additional Action Comics No. 1 Materials are

13  owned exclusively by DC Comics as works made for hire under the then applicable

14  1909 Copyright Act.

15      18.    On November 30, 1938, Siegel wrote to DCI (the "November 1938

16  Letter") suggesting that it do a comic book named Superboy, "which would relate

17  to the adventures of Superman as a youth." The November 30, 1938 Letter does

18  not contain any discussion of plot, dialogue, appearance, or any other

19  copyrightable material relating to Superboy. DCI decided not to publish a

20  "Superboy" comic at that time.

21      19.    In 1939, among the Superman comics prepared by Siegel and Shuster

22  at the instance and expense of DCI and subject to its right of control, was

23  Superman No. 1, with a cover date of Summer 1939. In Superman No. 1, Clark

24  Kent was depicted as a youth with super powers.

25      20.    On December 19, 1939, Siegel and Shuster entered into a new

26  agreement with DCI (the "December 19, 1939 Agreement"), which agreement

27  modified the DCI September 22, 1938 Agreement by, *inter alia*, doubling Siegel

28  and Shuster's compensation for Superman comic books and newspaper strips. In

6

314290v1 02231.0811    FIRST AMENDED COUNTERCLAIMS

1  addition, the December 19, 1939 Agreement provided for payment for Siegel and

2  Shuster for uses of Superman beyond comic books and newspaper strips, such as

3  radio, motion pictures, and toys. Under the December 19, 1939 Agreement, Siegel

4  and Shuster again acknowledged DCI's sole ownership of Superman.

5      21.    Upon information and belief, in approximately December 1940,

6  Siegel, on behalf of himself and Joe Shuster, submitted to DCI a thirteen-page

7  script of continuity for Superboy (the "Unpublished 1940 Superboy Script"),

8  renewing his suggestion to DCI that it publish a comic book about Superman as a

9  youth. The December 1940 Superboy Script, which sets forth a credit line of "By

10  Jerry Siegel and Joe Shuster," states, in part, "[s]o many faithful followers of

11  today's leading adventure comic strip, SUPERMAN, wrote in demanding the

12  adventures of Clark Kent as a youth . . .And so here he is at last…the answer to

13  your requests…America's outstanding boy hero: SUPERBOY!" The Unpublished

14  1940 Superboy Script goes on to say about Superboy that "[i]n later years he was

15  to become the might [sic] figure known as SUPERMAN!" Again, DCI decided

16  not to publish a "Superboy" comic at that time.

17      22.    Upon information and belief, on a date prior to November 18, 1944,

18  DCI published its first comic book containing the adventures of Superboy, who

19  was Superman as a youth, in "More Fun Comics No. 101" with a "cover" date of

20  January-February 1945 (hereinafter "More Fun Comics No. 101"). Upon

21  information and belief, DCI employed Shuster or an artist from Shuster's art studio

22  (with Shuster's knowledge and under his supervision) to create the artwork and

23  writer Don Cameron to write the Superboy story contained in "More Fun Comics

24  No. 101." The Superboy story in "More Fun Comics No. 101" bears little if any

25  resemblance to anything contained in the Unpublished 1940 Superboy Script, and

26  such similarities as may exist are common to earlier Superman related material

27  owned by DCI.

28

23.     In 1947, Siegel and Shuster brought suit against, *inter alia,* DCI's successor in interest, National Comics Publications, Inc. ("National") in the New York Supreme Court in Westchester County (the "Westchester Action"). The Westchester Action was, in part, the culmination of a dispute between Siegel and Shuster and National over what Siegel and Shuster claimed was DCI's unauthorized publication of Superboy. In the Westchester Action, in addition to seeking redress in connection with Superboy, Siegel and Shuster sought to invalidate the March 1, 1938 Agreement, argued that the DCI September 22, 1938 Agreement was obtained by duress, and sought to recapture all rights in Superman.

24.     On November 21, 1947, the Court in the Westchester Action issued an opinion (the "Westchester Opinion") after trial in which it found that the March 1, 1938 Agreement transferred to DCI all rights in Superman and that the DCI September 22, 1938 Agreement was valid and not obtained under duress. The Court also held that in publishing Superboy, DCI had acted "illegally."

25.     At the Court's request, the parties to the Westchester Action submitted proposed fact findings and conclusions of law. On April 12, 1948, the Court adopted fact findings and conclusions of law and issued an interlocutory judgment (collectively the "Westchester Action Interlocutory Judgment"). The defendants in the Westchester Action filed a notice of appeal, and the Westchester Action Interlocutory Judgment was stayed pending appeal.

26.     Shortly thereafter, the parties to the Westchester Action entered into two separate agreements: (a) a stipulation dated May 19, 1948 (the "May 19, 1948 Stipulation") and (b) a consent judgment dated May 21, 1948 (the "May 21, 1948 Consent Agreement"). Under both documents, *inter alia,* Siegel and Shuster: (a) agreed to vacate the Westchester Action Interlocutory Judgment; (b) acknowledged that, pursuant to the March 1, 1938 Agreement, they transferred to DCI all rights in and to Superman, including "the title, names, characters, concept and formula" as set forth in Action Comics No. 1; (c) acknowledged National was sole and

314290v1 02231.0811     FIRST AMENDED COUNTERCLAIMS

1    exclusive owner of Superman, the conception, idea, continuity, pictorial

2    representation and formula thereof in all media; (d) agreed that they were enjoined

3    from creating, publishing or distributing any Superman work or any imitation

4    thereof, and from using the title Superman or title that contained the word "Super";

5    (e) acknowledged that National was the sole owner of and owned exclusive rights

6    in Superboy; (f) agreed that they were enjoined from creating, publishing or

7    distributing Superboy or any imitation thereof; (g) agreed they were prohibited

8    from representing their past connection with Superman and Superboy in such a

9    way to confuse the public that such connection still existed; and (h) agreed they

10   were prohibited from using any coloring, lettering or printing in referring to

11   Superman or Superboy that was imitative of that used by National.

12        27.    In the 1960s, Siegel and Shuster again brought suit against National,

13   this time in the United States District Court for the Southern District of New York

14   for a declaration that they (and not National) owned the copyright in the renewal

15   copyright term for Action Comics No. 1. In a decision published in *Siegel v.*

16   *National Periodical Publications, Inc.*, 364 F. Supp. 1032 (S.D.N.Y. 1973), the

17   district court held, *inter alia*, that the agreements between Siegel and Shuster on

18   the one hand and DCI (and later National) on the other, intended to assign all rights

19   in Superman to DCI and National, including renewal copyright rights.

20        28.    In a decision published in *Siegel v. National Periodical Publications,*

21   *Inc.*, 508 F.2d 909 (2d Cir. 1974), the Court of Appeals affirmed that portion of the

22   lower court's ruling relating to National's ownership of all rights in Superman.

23   Siegel and Shuster did not further appeal the ruling.

24        29.    On December 23, 1975, Siegel and Shuster entered into an agreement

25   with Warner Communications, Inc., then National's parent company (the

26   "December 23, 1975 Agreement"). Under this agreement, Siegel and Shuster

27   again acknowledged that Warner Communications, Inc. was the sole and exclusive

28   owner of "all right, title and interest in and to the 'Superman' concept, idea,

314290v1 02231.0811          FIRST AMENDED COUNTERCLAIMS

1  continuity, pictorial representation, formula, characters, cartoons and comic strips,

2  title, logo, copyrights and trademarks, including any and all renewals and

3  extensions of such rights, in the United States and throughout the world, in any and

4  all forms of publication, reproduction and presentation, whether now in existence

5  or hereafter devised . . . ."

6       30.   Under the December 23, 1975 Agreement, Siegel and Shuster each

7  were to and did receive throughout their lives annual payments as well as medical

8  insurance coverage.  Upon Siegel's death, annual payments were to be made to

9  Plaintiff/Counterclaim Defendant Joanne Siegel for the remainder of her life.  The

10  amount of the annual payment pursuant to the December 23, 1975 Agreement was

11  increased over the years.  Since Siegel's passing in 1996, Joanne Siegel has

12  continuously received and accepted annual payments and health insurance under

13  that agreement.

## DC Comics' Development And Licensing

## Of Superman Works And Products

16       31.   The initial graphic representations of the Superman character in 1938,

17  now stylistically dated, presented his adventures with a limited number of

18  characters in settings that had the look and feel of that particular period.  From the

19  portrayal of the Superman character in "Action Comics No. 1," we only know that

20  he is an upright hero who was sent as an infant to Earth aboard a space ship from

21  an unnamed distant planet destroyed by old age.  Superman is also depicted as

22  secretly possessed of extraordinary physical abilities, including superhuman

23  strength and the ability to leap $1/8^{th}$ of a mile, hurdle a twenty-story building and

24  run faster than an express train.  In his ordinary life, the character is depicted as a

25  mild-mannered newspaper reporter for The Daily Star known as Clark Kent, and in

26  his alter ego, Superman is a costumed heroic figure using his extraordinary

27  physical abilities to fight against crime.

28

10

32.     Since the publication of "Action Comics No. 1," DC Comics has authored, published and distributed several thousand other comic books containing the adventures of Superman throughout the United States and abroad in many millions of copies, adding more than 60 years worth of material to further define, update and improve upon the Superman character and presenting an ongoing new flow of Superman exploits and characters resulting in the creation of an entire fictional Superman "universe."

33.     In addition to the publication of new comic books containing the Superman comic strip character, DC Comics has over the last 66 years participated in the creation, development and licensing of numerous Superman live action and animated feature length motion pictures, motion picture serials, radio and television serials and live theatrical presentations. These works have also significantly contributed to the modernizing and evolution of the Superman character from his 1938 appearance.

34.     Over the years since Action Comics No. 1, the presentations of Superman provided first by DCI and then DC Comics did not present a static depiction but an ever-evolving portrayal of Superman continuously, featuring new super powers, new villains, new components to the Superman universe, new elements in the Superman back story, and changes in the appearance of Superman. Most notably, many of Superman's powers that are among his most famous today did not appear in Action Comics No. 1 but only appeared in later publications. These include: his ability to fly; his super-vision which enables him to see through walls ("X-ray" vision) and across great distances ("telescopic" vision); his super-hearing which enables him to hear conversations at great distances; his invulnerability to injury which is most often shown as bullets bouncing off his chest and/or arms.

35.     One notable part of the evolution of the appearance of the Superman character undertaken by DC Comics and its predecessors, has been the

11

1 transformation of the emblem on the chest of Superman's costume. In Action

2 Comics No. 1, the emblem was comprised of a small yellow inverted triangle

3 bearing the letter "S" shown in yellow and sometimes in red (the "Action Comics

4 No. 1 Crest"). Thereafter, in changing the appearance of Superman and his

5 costume, DC Comics and/or its predecessors significantly changed the Action

6 Comics No. 1 Crest. Bearing little if any resemblance to the original, it is now a

7 large yellow five-sided shield, outlined in the color red, and bearing the letter "S"

8 in the middle, also in the color red (the "S in Shield Device"). The S in Shield

9 Device, as transformed by DC Comics and its predecessors, has become a strong

10 symbol, standing alone, of all goods and services relating to Superman and his sole

11 source, DC Comics and its predecessors.

12      36.    At all relevant times, DC Comics, its predecessors in interest and

13 licensees have duly complied with the provisions of the 1976 Copyright Act and its

14 1909 predecessor statute with respect to securing copyright protection for the

15 numerous works in which the Superman character has appeared and establishing

16 DC Comics' copyright ownership thereof, including the original and all works

17 based upon and derived therefrom, and have received from the Register of

18 Copyrights, valid and subsisting certificates of copyright registration and renewal

19 with respect thereto.

20      37.    DC Comics and its predecessors have, since 1938, continuously held

21 themselves out as the exclusive owners of all rights under copyright in Superman.

22      38.    DC Comics has over many decades adopted and made long,

23 continuous and exclusive use of (a) the name and mark Superman and (b) certain

24 key symbols and indicia of origin in connection with and to identify all authorized

25 uses of the Superman character in print and all other media (sometimes hereinafter

26 the "Superman symbols and indicia of origin"). The Superman name and mark

27 and Superman symbols and indicia of origin include, *inter alia*, Superman's

28 characteristic outfit, comprised of a full length blue leotard with red cape, a yellow

12

ER 3915

1  belt, the S in Shield Device, as well as certain key identifying phrases. Most

2  notable among the latter is "Look!...Up in the sky!...It's a bird!...It's a

3  plane!...It's Superman!" first used in the introduction to the 1940 radio program

4  The Adventures of Superman, and thereafter continuously repeated in Superman

5  television programming and various Superman publications. All of these

6  Superman symbols and indicia of origin have been used on and in connection with

7  a wide variety of publications and licensed goods and services, as they have been

8  added to the Superman character and mythology under DC Comics' and/or its

9  predecessors' supervision and direction, but, in any event, for the earliest symbols,

10  since as early as 1938.

11       39. As a result of the above-described continuous and exclusive use by

12  DC Comics of the Superman name and mark, as well as the Superman symbols and

13  indicia of origin for over sixty years, the names, marks and symbols and the

14  appearance of the Superman character have become famous and the public has

15  come to recognize that all publications, entertainment and products featuring

16  Superman or bearing such marks all come from the same source, namely, DC

17  Comics, and that DC Comics is the exclusive source of the Superman character

18  and all uses of the character on and in connection with any goods and services.

19       40. DC Comics owns dozens of federal trademark registrations for

20  Superman related indicia across a broad array of goods and services. Those

21  registrations include, but are not limited to the following for the following marks:

22  (a) SUPERMAN (in block letters) Reg. Nos. 2,419,510, 2,204,195, 1,278,177,

23  1,221,718, 1,209,668, 1,175,907, 1,183,841, 1,248,822, 1,216,976, 1,186,803,

24  1,189,393, 1,180,068, 1,184,822, 1,181,536, 1,182,947, 1,070,290; (b)

25  SUPERMAN (in the well-known "telescopic" lettering) Reg. Nos. 2,226,026,

26  1,278,175, 1,200,394, 1,185,526, 1,185,853, 1,209,863, 1,220,896, 1,183,809,

27  1,182,226, 1,181,537, 1,189,355, 1,218,552, 1,108,577, 391,821, 371,803; (c) the

28  "S in Shield" Device (either alone or as part of a rendering of Superman)

ER 3916

2,211,378, 2,226,415, 1,262,572, 1,179,537, 1,197,814, 1,200,387, 1,200,233, 1,209,743, 1,201,167, 1,201,149, 1,229,321, 1,199,690, 1,199,552, 1,199,630, 1,184,881, 1,182,172, 1,189,376, 1,180,292, 1,178,048, 1,182,041, 1,173,150, 1,140,418, 1,235,769, 411,871; (d) SUPERMAN RIDE OF STEEL Reg. No. 2,485,624; (e) MAN OF STEEL Reg. Nos. 2,226,436, 1,433,864; (f) SUPERBOY Reg. Nos. 394,923 (telescopic lettering), 1,221,719 (block letters); (g) SUPERGIRL (stylized and in block letters) Reg. Nos. 987,395, 414,623, 1,238,334; (h) SUPERWOMAN (in telescopic lettering) Reg. No. 394,922; (i) SMALLVILLE Reg. Nos. 2,626,700, 2,809,352, 2,768,213, 2,765,711, 2,882,881; (j) KRYPTONITE Reg. Nos. 2,656,1,239,506; (k) KRYPTO Reg. No. 1,168,306; (l) LOOK, UP IN THE SKY, IT'S A BIRD, IT'S A PLANE Reg. No. 1,527,304; (m) LEX LUTHOR Reg. Nos. 2,802,600, 1,634,007; (n) LOIS LANE Reg. No. 1,184,702; (o) PERRY WHITE Reg. No. 1,184,703; (p) JIMMY OLSEN Reg. No. 1,190,637; (q) LOIS AND CLARK Reg. No. 1,990,231; and (r) ACTION COMICS (stylized) 360,765 (collectively with the SUPERMAN symbols and indicia of origin, the "Superman Marks").

41.     These registrations alone suffice to show the unusual breadth and scope of the use of such marks related to Superman by DC Comics or its licensees on or in connection with a broad range of goods and services, all of which have come to be seen over six decades by countless consumers as indicating an exclusive authorization or sponsorship thereof by plaintiff DC Comics, the publisher and source of all Superman comic books and other Superman productions and products.

### The Superman Notices Of Termination

42.     On April 8, 1997, DC Comics received from Plaintiffs' Counterclaim Defendants Joanne Siegel and Laura Siegel Larson, through their then-counsel, Finnegan, Henderson, Farabow, Garrett & Dunner, seven documents entitled Notice of Termination of Transfer Covering Extended Renewal.  Those documents

1    purport, under 17 U.S.C. § 304 (c), to terminate, effective April 16, 1999, the

2    Siegels' share in the following grants of copyright: (a) the December 4, 1937

3    Agreement; (b) the March 1, 1938 Agreement; (c) the DCI September 22, 1938

4    Agreement; (d) the McClure September 22, 1938 Agreement; (e) the December 19,

5    1939 Agreement; (f) the May 19, 1948 Stipulation; (g) the December 23, 1975

6    Agreement (collectively the "Superman Notices"). However, the Siegels served no

7    notice terminating their share of the copyright grant in the May 21, 1948 Consent

8    Agreement.

9       43.    The Superman Notices purport to terminate the Siegels' share of the

10    above grants listed therein in the Unpublished Superman Works, Action Comics

11    No. 1, and in excess of 15,000 additional works (the "Post-Action Comics No. 1

12    Works"). However, in none of the seven Superman Notices, or anywhere else, do

13    the Siegels purport to terminate their share of any copyright grant in the Superman

14    Ads.

15       44.    In the Superman Notices, the Siegels expressly recognize and

16    acknowledge that the character Superboy is a derivative work based on Superman.

17    The Superman Notices expressly identify Superboy as part of the Superman

18    "family" of characters in which the Siegels are purporting to terminate their grants.

19    Indeed, the more than 15,000 works listed in the Superman Notices include

20    hundreds of publications and other works that feature *only* Superboy (as opposed

21    to Superman), and also Superman No. 1 with a cover date of Summer 1939, in

22    which Superman is depicted as a youth.

23       45.    In late November, 1998, DC Comics received from Plaintiffs/

24    Counterclaim Defendants Joanne Siegel and Laura Siegel Larson, through their

25    then-counsel, Finnegan, Henderson, Farabow, Garrett & Dunner, four documents

26    entitled Notice of Termination of Transfer Covering Extended Renewal. Those

27    documents purport to terminate, effective November 27, 2000, the Siegels' share in

28    the following grants of copyright relating to the character known as "The Spectre":

1　(a) the December 4, 1937 Agreement; (b) a September 22, 1938 Agreement; (c)

2　and October 10, 1939 Agreement and (d) a second October 10, 1939 Agreement

3　(collectively the "Spectre Notices").

4　　　46.　The Spectre Notices purport to terminate the Siegels' share of the

5　above grants in: (a) the Spectre character appearing in costume in an ad in issue

6　No. 51 of "More Fun Comics" with a cover date of January 1940; (b) the first

7　Spectre comic book story published in issue No. 52 of "More Fun Comics" with a

8　cover date of February 1940; (c) part 2 of the first Spectre comic book story

9　published in issue No. 53 of "More Fun Comics" with a cover date of March 1940,

10　and hundreds of additional works listed the Spectre Notices (collectively the

11　"Spectre Works").

**The Parties' Negotiations**

**And The Agreement Reached**

14　　　47.　On April 17, 1997, less than ten days after DC Comics received the

15　Superman Notices, its counsel wrote to the Siegels' counsel inviting negotiation.

16　The Siegels requested that DC Comics make an initial settlement proposal. But

17　prior to making such proposal, DC Comics requested that the parties enter into a

18　confidentiality agreement. Frustrated by the Siegels' delay in responding to its

19　proposed form confidentiality agreement, on November 5, 1997, DC Comics'

20　counsel wrote the Siegels' counsel and stated, *inter alia*, "[a]s we had advised you

21　in the past, our client has elected, for settlement purposes only, not to respond to

22　the [Superman Notices] served upon them by challenging their validity or scope *at*

23　*this time*." (Emphasis added.)

24　　　48.　On December 17, 1997, DC Comics and the Siegels finally entered

25　into a confidentiality agreement. On December 18, 1997, DC Comics forwarded

26　its first substantive proposal with respect to the copyrights at issue, and in

27　connection therewith also raised certain defects in the termination notice, stating

28　"that there is a substantial legal issue as to the effectiveness of your clients'

16

1  termination of DC's interest in the Superman Comic." For more than six months,

2  despite repeated requests for feedback, DC Comics heard no response to its

3  December 18, 1997 proposal. Finally, on June 19, 1998, the Siegels' counsel sent

4  a letter to DC Comics' counsel that did not respond to the proposal but only

5  requested more information.

6      49.    On July 23, 1998, DC Comics provided the Siegels with the answers

7  to the questions posed in their counsel's letter of June 19, 1998. Despite requests

8  for feedback for another several months, DC Comics again received no response to

9  its proposal.

10     50.    Having heard no response from the Siegels, on April 15, 1999, one

11 day before the purported "Effective Date" set forth in the Superman Notices, DC

12 Comics provided a more comprehensive written notice to Plaintiffs/Counterclaim

13 Defendants Joanne Siegel and Laura Siegel Larson detailing, among other things,

14 the reasons it considered the Superman Notices to be invalid.

15     51.    On April 30, 1999, DC Comics received a letter from the firm of

16 Gang, Tyre, Ramer & Brown, Inc. ("Gang, Tyre") indicating it now represented

17 the Siegels in negotiations with DC Comics. Thereafter, the parties engaged in

18 extensive negotiations with their respective lawyers attending meetings in

19 California and New York, and exchanging proposals. During that time period, at

20 the Siegels' request, DC Comics provided a payment of $250,000 (the "Advance

21 Payment") to the Siegels which payment was agreed to be an advance against any

22 future sums provided under an agreement to be entered into between the parties.

23     52.    On October 16, 2001, a legal representative for DC Comics made an

24 offer to the Siegels through Gang, Tyre by telephone. On October 19, 2001, Kevin

25 Marks of Gang, Tyre, on behalf of the Siegels, accepted the October 16, 2001

26 offer. That day, Mr. Marks wrote a letter confirming that the Siegels had

27 "accepted D.C. Comics offer of October 16, 2001" and outlined all of the material

28 terms in detail. Those terms included, *inter alia,* that the Siegels transferred or

1  would transfer all of their rights in the Superman property (which was defined in

2  the letter as Superman, Superboy and related properties including but not limited to

3  Supergirl, Steel, Lois & Clark, and Smallville) and in "The Spectre." In exchange,

4  the Siegels were to receive: (a) a sizeable non-returnable advance; (b) a sizeable

5  non-recoupable and non-returnable signing bonus; (c) "forgiveness" of the

6  Advance Payment; (d) significant guaranteed minimum payments as advances

7  against royalties; and (e) percentage royalties from DC Comics' exploitations of

8  Superman across all media, worldwide.

9      53.    By return letter of October 26, 2001, DC Comics' representative

10  wrote back providing a "more fulsome outline" of the agreed upon points. Neither

11  the Siegels nor any of their representatives in any way disputed the October 26,

12  2001 confirmatory outline from DC Comics. On February 1, 2002, DC Comics

13  forwarded a draft of a more formal written agreement memorializing the terms

14  agreed to in the October 19 and 26, 2001 correspondence.

15     54.    After the October 2001 agreement, DC Comics entered into a written

16  Option Purchase Agreement with Warner Bros., A Division of Time Warner

17  Entertainment Company, L.P. (now known as defendant Warner Bros.

18  Entertainment Inc.) dated as of November 6, 1999, pursuant to which DC Comics

19  granted to Warner Bros. the option to license certain exclusive rights in Superman,

20  and Warner Bros. has commenced photography of a feature-length motion picture

21  based on the property.

22     55.    On May 9, 2002, Plaintiff/Counterclaim Defendant Joanne Siegel

23  wrote a letter to the Co-Chief Operating Officer of DC Comics' parent company

24  acknowledging that the Siegels had accepted DC Comics' proposal of October 16,

25  2002, but purporting to object to unspecified provisions of the formal written draft

26  and repudiating the agreement reached by the parties in October 2001. To this day,

27  the Siegels have not identified a single provision of the February 1, 2002 formal

28

314270v1 02231.0811          FIRST AMENDED COUNTERCLAIMS

1   draft that was inconsistent with the provisions in the Siegels' October 19, 2001

2   acceptance of DC Comics' proposal.

3        56.   On September 30, 2002, however, DC Comics received a letter from

4   the Siegels stating they were breaking off all discussions with DC Comics and

5   again repudiating the agreement reached by the parties in October 2001.

6                   **The Superboy Termination Notices**

7        57.   Notwithstanding the fact that the Siegels had already purported to

8   terminate grants with respect to the Superboy character effective April 16, 1999,

9   on November 8, 2002, the Siegels mailed to DC Comics another Notice of

10   Termination of Transfer purporting to relate solely to Superboy (the "Superboy

11   Notice"). The Superboy Notice purports to terminate, effective November 17,

12   2004, only two grants of copyright: (a) the May 19, 1948 Stipulation and (b) the

13   December 23, 1975 Agreement, and identifies many of the same works identified

14   in the Superman Notices. As was the case with the Superman Notices, the Siegels

15   served no notice terminating the copyright grant in the May 21, 1948 Consent

16   Agreement.

17        58.   The Superboy Notice purports to terminate the above grants

18   regarding the following works: (a) the unpublished November 30, 1938 Letter; (b)

19   the unpublished 1940 Superboy Script; (c) More Fun Comics No. 101; and (d)

20   approximately 1,600 additional titles. However, the Superboy Notice lists and

21   purports to terminate grants of rights under copyright relating to hundreds of the

22   same works already purportedly terminated by the earlier Superman Notices. The

23   Superboy Notice does not purport to terminate the 1939 depiction of Superman as

24   a youth in Superman No. 1.

25        59.   In the Superboy Notice, the Siegels make the claim that Superboy is a

26   "separate and distinct copyrighted work and character from the copyrighted work

27   and character Superman." This contention is erroneous.

28

ER 3922

314270v1 02231 0811       FIRST AMENDED COUNTERCLAIMS

60.     In the Superboy Notices, the Siegels also claim that Jerome Siegel was the sole author of Superboy. This contention is also erroneous.

61.     Among the works listed in the Superboy Notice that the Siegels claim are terminated by such notice of termination (as well as by the Superman Notices), is the WB television series entitled "Smallville." "Smallville" is a modern, teen-oriented drama about the life and relationships of Clark Kent and his circle of friends during Clark's high school years; it features numerous characters not created or developed by Siegel and story lines wholly original to the series.

62.     On June 17, 2004, talent agent Ari Emanuel, representing the Siegels, sent a letter to DC Comics' licensee and affiliated company, Warner Bros., stating, *inter alia,* that as of the effective date of the Superboy Notice, November 17, 2004, DC Comics and its licensees would be cut off from making any further episodes of "Smallville"

63.     On August 4, 2004, the Siegels' new counsel and attorney of record in this case, Marc Toberoff, contacted Warner Bros. and reiterated the Siegels' position that, as of November 17, 2004, DC Comics and its licensees would be cut off from making any further episodes of "Smallville."

64.     On August 27, 2004, DC Comics' counsel herein, Fross Zelnick Lehrman & Zissu, P.C., sent a letter to the Siegels' counsel rejecting the interpretation of the effect of the Superboy Notice and unequivocally informing the Siegels that DC Comics and its licensees would proceed with their planned production, copying, distribution, and exploitation of new episodes of "Smallville."

**The Siegels' Filing Of Two Related Cases**

65.     On October 8, 2004, the Siegels filed the instant action and on October 22, 2004, they filed a second action, Civil Case No. 04-08776, which case was assigned to Judge Lew in this Court.

314270v1 02231.0811                     FIRST AMENDED COUNTERCLAIMS          ER 3923

## FIRST COUNTERCLAIM FOR DECLARATION
## THAT THE SUPERMAN NOTICES AND THE
## SUPERBOY NOTICE ARE INEFFECTIVE

66. DC Comics repeats and realleges paragraphs 1 - 65 above as if fully set forth herein.

67. DC Comics contends that the Superman Notices and/or the Superboy Notice are ineffective, *inter alia*, for any or all of the following five independent reasons:

### #1 The May 21, 1948 Consent Agreement Has Not Been Terminated

68. The May 21, 1948 Consent Agreement is a written agreement entered into by Jerome Siegel and Joseph Shuster with DC Comics' predecessor in interest and includes a grant of all rights in Superman and Superboy by Siegel and Shuster to DC Comics' predecessor in interest, including all rights under copyright therein.

69. As a result of the Siegels' failure to send a Notice of Termination with respect to the May 21, 1948 Consent Agreement, the grant contained therein to all copyrights related to Superman remains in full force and effect. Thus, DC Comics is and continues to be the sole owner of all rights of any kind, including rights under copyright, in Superman (including its derivative work Superboy) pursuant to the May 21, 1948 Consent Agreement.

### #2 The December 23, 1975 Agreement

70. Through both the Superman Notices and the Superboy Notice, the Siegels purport to terminate their share of the grant of copyright in Superman and Superboy contained in the December 23, 1975 Agreement.

71. By letter dated April 15, 1999, the day before the Superman Notice purported to become effective, DC Comics rejected the scope and validity of the Superman Notices, including but not limited to, that Superman Notice purporting to terminate the grant in the December 23, 1975 Agreement.

ER 3924

72.    By letter dated August 29, 2004, DC Comics rejected the scope and validity of the Superboy Notice, including but not limited to the Siegels' claim that such notice terminated the December 23, 1975 Agreement.

73.    Notwithstanding the Siegels having, by virtue of the Superman Notices, purportedly terminated the grant of copyright contained in the December 23, 1975 Agreement, and with full knowledge of DC Comics' rejection of the Superman Notice, after April 16, 1999, the purported effective date of such notices of termination, DC Comics continued to perform under the December 23, 1975 Agreement and Plaintiff/Counterclaim Defendant Joanne Siegel continued to accept the benefits under that agreement. DC Comics has relied upon Joanne Siegel's continued acceptance of benefits under the December 23, 1975 Agreement and has continued to perform under that Agreement without accounting to the Siegels and without making any other change in the manner in which it has exploited Superman.

74.    Notwithstanding the Siegels having, by virtue of the Superboy Notice, purportedly terminated the grant of copyright contained in the December 23, 1975 Agreement, and with full knowledge of DC Comics' August 29, 2004 rejection of the notice of termination, DC Comics has continued to perform under the December 23, 1975 Agreement. DC Comics has relied upon Joanne Siegel's continued acceptance of benefits under the December 23, 1975 Agreement and has continued to perform under that Agreement without accounting to the Siegels and without making any other change in the manner in which it has exploited Superboy.

75.    Because of DC Comics' continued performance under the December 23, 1975 Agreement and Plaintiff/Counterclaim Defendant Joanne Siegel's continued acceptance of the benefits of such agreement after she purportedly terminated it in both the Superman Notices and the Superboy Notice, the

ER 3925

1 December 23, 1975 Agreement, and the grant of copyright therein, remains in full

2 force and effect.

3     76.    Thus, DC Comics is and continues to be the sole owner of all rights

4 of any kind, including rights under copyright, in Superman (and its derivative work

5 Superboy), rendering the Superman Notices and the Superboy Notice ineffective.

6         **#3   The Unpublished Superboy Works**

7     77.    In the Superboy Notice, the Siegels purport to terminate copyright

8 grants of rights in the November 1938 Letter and the Unpublished 1940 Superboy

9 Script and approximately 1,600 additional published titles purportedly relating to

10 Superboy (the "Published Superboy Works").

11     78.    Upon information and belief, as of January 1, 1978, both the

12 November 1938 Letter and the Unpublished 1940 Superboy Script (the "Siegel

13 Superboy Proposals") remained unpublished and thus were neither in their first nor

14 their second term of copyright as of that date.

15     79.    Copyright in the Published Superboy Works is owned exclusively by

16 DC Comics by virtue of their having been prepared as works made for hire for DC

17 Comics' and/or its predecessors, or by virtue of other copyright grants that remain

18 in full force and effect.

19     80.    Pursuant to the requirements set forth by section 304 (c) of the 1976

20 Copyright Act, 17 U.S.C. § 304 (c), only copyright grants in works that were in

21 their first or second term of copyright as of January 1, 1978, could be terminated

22 under that provision. As a result, the Superboy Notice is ineffective as to the

23 Siegel Superboy Proposals or any portion of any derivative works containing any

24 copyrightable material therefrom and DC Comics remains the sole owner thereof.

25 Therefore, the Superboy Notice is ineffective.

26

27

28

**ER 3926**

## #4  Siegel Owned No Copyright In Superboy

81.     The Siegel Superboy Proposals are derivative works based upon the pre-existing copyrighted Superman character and stories owned by DC Comics' predecessors.

82.     Upon information and belief, Siegel, in collaboration with Shuster, prepared the Siegel Superboy Proposals without the prior knowledge or consent of DC Comics' predecessors.

83.     Upon further information and belief, Siegel developed the contents of the Siegel Superboy Proposals within the scope of his employment contracts with DC Comics' predecessors and/or at their instance and expense and subject to their right to control.

84.     As a result of the foregoing, the Siegel Superboy Proposals were derivative works based upon Superman, prepared without the authorization of the copyright owner, and/or were works made for hire, owned *ab initio* by the copyright owner in Superman.

85.     Whether the Siegel Superboy Proposals were derivative works prepared without the prior authorization of the copyright owner, or were works made for hire, Siegel could not and did not own any copyright interest therein that would be subject to copyright termination pursuant to 17 U.S.C. § 304 (c).  Thus, the Superboy Notice is ineffective.

## #5  The Superman Notices Were Not Timely Served

86.     Upon information and belief, DC Comics' predecessor in interest first secured copyright in Action Comics No. 1 by publication with copyright notice prior to April 16, 1938.

87.     All grants made by Siegel and Shuster or rights in Action Comics No. 1 are still in effect, and all rights under copyright granted therein are still owned exclusively by DC Comics, because the Superman Notices served by the Siegels are ineffective for failure to comply with the legal requirements therefore

FIRST AMENDED COUNTERCLAIMS

1  prescribed by section 304 (c) of the U.S. Copyright Act of 1976, 17 U.S.C. § 304

2  (c), in that: the "Effective date" of the Superman Notices, namely April 16, 1999,

3  was too late to fall within the required period specified in 17 U.S.C. § 304 (c) (3)

4  and such notices of termination were served less than two years before the

5  allowable effective date in violation of 17 U.S.C. § 304 (c) (4) (A).

6      88.    On information and belief, plaintiffs deny DC Comics' contentions

7  and/or the legal effect ascribed thereto as set forth in paragraphs 66 – 87 above.

8  Accordingly, an actual controversy has arisen and now exists between

9  Plaintiffs/Counterclaim Defendants and DC Comics concerning the above issues.

10      89.    A justiciable controversy exists concerning the above issues and a

11  judicial declaration is necessary and appropriate to determine the parties'

12  respective rights with regard thereto.

13  **SECOND ALTERNATIVE COUNTERCLAIM FOR**

14  **DECLARATION THAT ANY CLAIM BY THE SIEGELS FOR**

15  **CO-OWNERSHIP OF SUPERMAN (INCLUDING ITS DERIVATIVE**

16  **SUPERBOY) IS BARRED BY THE STATUTE OF LIMITATIONS**

17      90.    DC Comics repeats and realleges paragraphs 1 - 89 above as if fully

18  set forth herein.

19      91.    Since as early as 1998, Plaintiffs/Counterclaim Defendants were on

20  notice of DC Comics' position that the Superman Notices contained legal defects.

21  Moreover, effective at least as early as April 15, 1999, Plaintiffs/Counterclaim

22  Defendants were on notice that DC Comics rejected the Superman Notices and

23  asserted exclusive ownership of all copyright in Superman.

24      92.    Since April 16, 1999, the purported effective date of the Superman

25  Notices, Plaintiffs/Counterclaim Defendants have been deprived of the benefits of

26  their purported co-ownership of copyright in Action Comics No. 1.

27      93.    In response to DC Comics' above actions and assertion and such

28  deprivation to the Siegels of the benefits of their alleged copyright co-ownership,

1 Plaintiffs/Counterclaim Defendants took no action until filing the instant action on

2 October 8, 2004, more than six years after DC Comics advised

3 Plaintiffs/Counterclaim Defendants in writing of defects in the Superman Notices

4 and more than five years after being placed on notice by DC Comics of its claim of

5 exclusive ownership of copyright in Superman and that it rejected and repudiated

6 the Superman Notices and during which time period the Siegels were deprived of

7 benefits to which they claim they are entitled.

8     94.    Because Plaintiffs/Counterclaim Defendants' claim of partial

9 ownership of copyright accrued more than three years prior to

10 Plaintiffs/Counterclaim Defendants bringing the instant action, even taking into

11 consideration any purported agreements to toll the statute of limitations, any claim

12 of ownership of copyright in Superman by Plaintiffs/Counterclaim Defendants is

13 barred by the three-year statute of limitations of the Copyright Act.

14     95.    On information and belief, plaintiffs deny DC Comics' contentions

15 and/or the legal effect ascribed thereto as set forth in paragraphs 90 – 94 above.

16 Accordingly, an actual controversy has arisen and now exists between

17 Plaintiffs/Counterclaim Defendants and DC Comics concerning the above issues.

18     96.    A justiciable controversy exists concerning the above issues and a

19 judicial declaration is necessary and appropriate to determine the parties'

20 respective rights with regard thereto.

21                **THIRD ALTERNATIVE COUNTERCLAIM**

22                    **FOR BREACH OF CONTRACT**

23     97.    DC Comics repeats and realleges paragraphs 1 - 96 above as if fully

24 set forth herein.

25     98.    In or about October 2001, Plaintiffs/Counterclaim Defendants entered

26 into a written agreement with DC Comics memorialized by the authorized agent of

27 Plaintiffs/Counterclaim Defendants, Kevin Marks, and by the authorized agent of

28 DC Comics, John Schulman, which subsequently was confirmed and ratified in

1  writing by Plaintiff/Counterclaim Defendant Joanne Siegel (the "Agreement"),
2  pursuant to which, among other things, Plaintiffs/Counterclaim Defendants (1)
3  transferred to DC Comics, worldwide and in perpetuity, or, alternatively, agreed to
4  transfer to DC Comics, worldwide and in perpetuity, any and all rights, title, and
5  interest, including all United States copyrights, which they may have in any and all
6  past, present, and future Superman and Superboy-related properties, works,
7  characters, names, and trademarks (collectively, the "Superman Works"), (2)
8  agreed to accept certain compensation from DC Comics in consideration of any
9  and all rights, title, and interest which they may have in the Superman Works (the
10 "Financial Terms"), and (3) covenanted never to sue DC Comics for any claim
11 related to the Superman Works other than for breach of the Agreement (the
12 "Covenant Not To Sue").

13       99.    DC Comics has performed all of its obligations under the Agreement,
14 except to the extent such performance has been prevented or excused by the acts or
15 omissions of Plaintiffs/Counterclaim Defendants.  Specifically, and without
16 limiting the foregoing, DC Comics established a reserve account of the moneys
17 due to Plaintiffs/Counterclaim Defendants based upon the Financial Terms, which
18 DC Comics would have paid to Plaintiffs/Counterclaim Defendants pursuant to the
19 Agreement but for their repudiation and breach of the Agreement as herein alleged.
20 DC Comics always has been and remains ready, willing, and able to perform all of
21 its obligations under the Agreement, and will resume doing so upon either a
22 withdrawal by Plaintiffs/Counterclaim Defendants of their repudiation of the
23 Agreement or a final adjudication that the Agreement is enforceable and binding
24 on the parties.

25       100.   Plaintiffs/Counterclaim Defendants have repudiated and otherwise
26 breached the Agreement by, among other things:

27            a.     Claiming, including in this action, that they have not transferred
28 and are not contractually obligated to transfer to DC Comics, worldwide and in

314290v1 02231.0811              FIRST AMENDED COUNTERCLAIMS

1  perpetuity, all of their rights, title, and interest, including all United States

2  copyrights, which they may have in the Superman Works, and refusing to execute

3  a formal written transfer thereof to DC Comics;

4         b.    Repudiating the Financial Terms and claiming, including in this

5  action, that they are entitled to additional compensation for the Superman Works;

6  and

7         c.    Initiating this action in violation of the Covenant Not To Sue.

8      101.   As a direct and foreseeable result of the contractual breaches on the

9  part of Plaintiffs/Counterclaim Defendants herein alleged, DC Comics has been

10  damaged in an amount to be proven at trial.

11                **FOURTH ALTERNATIVE COUNTERCLAIM FOR**

12        **DECLARATORY RELIEF REGARDING THE AGREEMENT**

13      102.   DC Comics repeats and realleges paragraphs 1 - 101 above as if fully

14  set forth herein.

15      103.   An actual controversy now exists between DC Comics and

16  Plaintiffs/Counterclaim Defendants, in that DC Comics contends the Agreement is

17  binding and enforceable and, therefore, that:

18         a.    Plaintiffs/Counterclaim Defendants either have transferred or

19  are contractually obligated to transfer to DC Comics, worldwide and in perpetuity,

20  any and all rights, title, and interest, including all United States copyrights, which

21  they may have in the Superman Works;

22         b.    If for any reason Plaintiffs/Counterclaim Defendants are

23  adjudged not to have transferred or not to be contractually obligated to transfer to

24  DC Comics, worldwide and in perpetuity, all rights, title, and interest, including all

25  United States copyrights, which they may have in the Superman Works, then the

26  remaining terms of the Agreement are valid and enforceable and

27  Plaintiffs/Counterclaim Defendants are not entitled to any compensation for any

28

1   past, present, or future exploitation of the Superman Works by or upon license from

2   DC Comics other than pursuant to the Financial Terms; and

3           c.      If for any reason Plaintiffs/Counterclaim Defendants are

4   adjudged not to have transferred or not to be contractually obligated to transfer to

5   DC Comics, worldwide and in perpetuity, all rights, title, and interest, including all

6   United States copyrights, which they may have in the Superman Works, then

7   Plaintiffs/Counterclaim Defendants nevertheless are not entitled to license or

8   otherwise exploit the Superman Works in any manner.

9           104.    DC Comics is informed and believes, and on that basis alleges, that

10  Plaintiffs/Counterclaim Defendants dispute these contentions.

11          105.    DC Comics seeks a judicial determination of the parties' respective

12  rights and obligations, which is necessary and appropriate to allow them to

13  properly govern their future conduct.

14                  **FIFTH ALTERNATIVE COUNTERCLAIM FOR**

15              **DECLARATION OF LIMITATIONS ON THE SCOPE OF THE**

16                **SUPERMAN NOTICES AND THE SUPERBOY NOTICE**

17          106.    DC Comics repeats and realleges paragraphs 1 - 65 above as if fully

18  set forth herein.

19          107.    In the event the Superman Notices and/or the Superboy Notice are

20  deemed effective and the settlement agreement between the parties is not enforced,

21  DC Comics asserts the following alternative counterclaim for a declaration limiting

22  the scope and reach of the Superman Notices and the Superboy Notice in six

23  separate and independent ways.

24          108.    DC Comics contends that:

25                          **#1  The Superman Ads**

26          109.    The regulations governing the contents of notices of termination

27  promulgated by the U.S. Copyright Office under authority of the 1976 Copyright

28  Act require, in relevant part, that a notice of termination served pursuant to section

314290v1 02231.0811        FIRST AMENDED COUNTERCLAIMS

304 (c) of the 1976 Copyright Act name "each work to which the notice of termination applies."

110. Upon information and belief, all of the Superman Ads first secured copyright protection by publication with copyright notice prior to April 16, 1938 and prior to publication of Action Comics No. 1.

111. The Superman Ads contain and show the appearance of Superman, his costume, and his super-strength.

112. The grants made by Siegel and Shuster as to the appearance of Superman, his costume, and his super-strength, are still in effect, and all rights under copyright granted therein are still owned exclusively by DC Comics, because the Superman Notices served by the Siegels do not list the works in which the Superman Ads were first published.

113. Thus, DC Comics is the exclusive owner of all copyright in and to the Superman Ads and thereby retains exclusive ownership of copyright in the appearance of Superman therein, including but not limited to, the appearance of the Superman costume.

### #2 Use Of Superman And Superboy Derivative Works
### Prepared Prior To The Purported Effective Dates Of The
### Superman Notices And The Superboy Notice

114. The Superman Notices purport to terminate the Siegels' share in the copyright grant of Jerome Siegel in all Superman-related works thereafter derived from Action Comics No. 1, including but not limited to the more than 15,000 Superman related works (in addition to Action Comics No. 1) listed in the Superman Notices (the "Superman Derivative Works"). Included among the Superman Derivative Works is the image of the "S in Shield Device" that has become a strong trademark of Superman and his single source, DC Comics.

ER 3933

314290v1 02231.0811     FIRST AMENDED COUNTERCLAIMS

115.    The Superboy Notice purports to terminate the Siegels' share in the copyright grant of Jerome Siegel in the approximately 1,600 of the Published Superboy Works.

116.    The Superman Derivative Works and the Published Superboy Works are all based upon pre-existing works and were prepared under the authority of the grants of copyright entered into by Siegel and Shuster to DC Comics and/or its predecessors.

117.    Regardless of whether the Superman Notices and the Superboy Notice are legally effective, under the Copyright Act, 17 U.S.C. § 304 (c)(6)(A), DC Comics retains the right to make use of the Superman Derivative Works and the Superboy Published Works under the terms of the original grants under which they were prepared without any duty to account to the Siegels for any such use.

### #3  DC Comics Owns All Superman Derivative Works

118.    All copyright rights in any of the works listed in the Superman Notices, or any other derivative works based upon and that post-date Action Comics No. 1 (the "Post Action Comics No. 1 Works") are owned exclusively by DC Comics.  DC Comics' ownership of such copyrights is not subject to termination pursuant to the Copyright Act.

119.    The Post Action Comics No. 1 Works contain many copyrightable elements not present in Action Comics No. 1 (the "Post Action Comics No. 1 Elements").  These include, but are not limited to, new super powers, new villains, new components to the Superman universe, new elements in the Superman back story, and changes in the appearance of Superman.  Notably, many of Superman's powers that are among his most famous today did <u>not</u> appear in Action Comics No. 1 but only appeared later in the Post Action Comics No. 1 Works.

120.    Regardless of whether the Superman Notices and the Superboy Notice are valid and effective, DC Comics remains the sole owner of the Post

31

ER 3934

1 Action Comics No. 1 Works and in the Post Action Comics No. 1 Elements.

2 Moreover, the Siegels can make no use of the Post Action Comics No. 1 Elements.

3 ### #4 Superboy Is A Derivative Work Based On Superman

4     121. In the November 1938, Letter suggesting the idea for a Superboy

5 comic strip, Siegel stated such comic "would relate to the adventures of Superman

6 as a youth." In the Unpublished 1940 Superboy Script, Siegel wrote "[s]o many

7 faithful followers of today's leading adventure comic strip, SUPERMAN, wrote in

8 demanding the adventures of Clark Kent as a youth . . .And so here he is at

9 last...the answer to your requests...America's outstanding boy hero:

10 SUPERBOY!"

11     122. As demonstrated by the foregoing, the Siegel Superboy Proposals

12 were based upon the pre-existing Superman character and stories and are thus

13 derivative works based thereon, and were not made at the instigation of Siegel.

14     123. Thus, even if the Superboy Notice were effective, any recapture of

15 copyright rights would be limited to any new copyrightable subject matter added

16 by Siegel and Shuster to the pre-existing Superman character and stories

17 exclusively owned by DC Comics and its predecessors.

18     124. The new copyrightable subject matter contained in the Siegel

19 Superboy Proposals is *de minimis* and thus, even if the Siegels could recapture

20 U.S. Copyrights therein, such recapture could not affect DC Comics' continuing

21 right to create and exploit new derivative works that do not include such new

22 copyrightable subject matter, including but not limited to, the television series

23 "Smallville."

24 ### #5 The Derivative Work Superboy Is A Joint Work Of Authorship

25     125. Upon information and belief, the Siegel Superboy Proposals were

26 joint works of authorship as they were prepared jointly with Shuster and because it

27 was intended that their contents would be merged with artwork to create a comic

28 book or comic strip.

1    126.   As eventually published, the works containing the Superboy character

2    included both artwork and storyline.

3    127.   The joint author's share in the Siegel Superboy Proposals is owned

4    by DC Comics and cannot be terminated either by the Superman Notices or the

5    Superboy Notice.

6    128.   As a result of the foregoing, DC Comics right to continue to exploit

7    the Siegel Superboy Proposals and any derivative works based thereon cannot be

8    affected by either the Superman Notices or the Superboy Notice.

9    **#6 "Smallville" Is Not Derived From Superboy**

10   129.   Among the derivative works based upon Superman and authorized by

11   DC Comics is the weekly television series, "Smallville."

12   130.   Regardless of whether the Superboy Notice is effective and further

13   regardless of whether Superboy is a derivative work based upon Superman,

14   "Smallville" was derived from and based upon Superman and is not a derivative

15   work based upon the Siegel Superboy Proposals or any succeeding Superboy

16   comic or Superboy work exploited by DC Comics and/or its predecessors prior to

17   May 21, 1948.  Beyond sharing the idea of depicting Superman as a youth,

18   Smallville is not substantially similar to the Siegel Superboy Works.

19   131.   Thus, irrespective of any accounting issues relating to the Siegels'

20   purported right to receive compensation with respect to new episodes of

21   "Smallville," DC Comics' right to continue to authorize production, distribution,

22   and airing of "Smallville" television episodes remains unaffected by the Superman

23   Notices and the Superboy Notice.

24   **#7 The Additional Action Comics No. 1 Materials**

25   132.   The Additional Action Comics No. 1 Materials created in 1938 were

26   prepared at the instance and expense of DCI and subject to its right to control.

27   Thus, under the 1909 Copyright Act, the Additional Action Comics No. 1

28

1  Materials were "works made for hire" and copyright therein was owned by DC *ab*
2  *initio.*

3      133.  Because the Additional Action Comics No. 1 Materials were works
4  made for hire, the grant of U.S. Copyright therein cannot be terminated pursuant to
5  17 U.S.C. § 304 (c). As a result, DC Comics remains the sole owner of the
6  Additional Action Comics No. 1 Materials.

7      134.  On information and belief, plaintiffs deny DC Comics' contentions
8  and/or the legal effect ascribed thereto as set forth in paragraphs 106 - 133 above.
9  Accordingly, an actual controversy has arisen and now exists between
10 Plaintiffs/Counterclaim Defendants and DC Comics concerning the above issues.

11     135.  A justiciable controversy exists concerning the above issues and a
12 judicial declaration is necessary and appropriate to determine the parties'
13 respective rights with regard thereto.

14 **SIXTH ALTERNATIVE COUNTERCLAIM FOR**
15 **DECLARATION REGARDING THE PRINCIPLES**
16 **TO BE APPLIED IN AN ACCOUNTING**

17     136.  DC Comics repeats and realleges paragraphs 1 - 65 and 106 - 135
18 above as if fully set forth herein.

19     137.  DC Comics contends that in the event the Superman Notices and/or
20 the Superboy Notice were deemed valid and effective, any accounting to which the
21 Siegels would be entitled relating to Superman (including its derivative work
22 Superboy, collectively for this Counterclaim "Superman") would be subject to the
23 following limitations and reductions:

24     a.  The Siegels would not be entitled to any revenues derived from
25         exploitation of Superman outside of the United States because
26         termination pursuant to 17 U.S.C. § 304 (c) cannot affect any grant of
27         non-United States copyrights. 17 U.S.C. § 304 (c) (6) (E).

28

34

FIRST AMENDED COUNTERCLAIMS

b. The Siegels would not be entitled to any revenues derived from exploitation of the Superman Derivative Works and the Superboy Derivative Works. 17 U.S.C. § 304 (c) (6) (A).

c. Any accounting of profits for exploitation of Superman would be reduced to account for the value of the appearance of Superman based upon the Siegels' failure to terminate the Superman Ads.

d. Any accounting of recoverable profits for exploitation of Superman would be reduced to that portion of such profits that are attributable to the copyrightable elements from Action Comics No. 1 less the Additional Action Comics No. 1 Materials (if any), actually present in the Superman works subject to accounting.

e. Any accounting of recoverable profits would be limited to profits of DC Comics, the sole owner of rights under any purportedly terminated grants and the sole owner of copyright in Action Comics No. 1, and the Siegels would not be entitled to any share of revenues earned by any third party licensees of DC Comics, including but not limited to, any of the other defendants.

f. The Siegels would not be entitled to any accounting for profits attributable to DC Comics' continuing exercise of its rights to use all other rights other than rights under copyright with respect to Superman and Superboy, including but not limited to, any trademark rights. As a result, any accounting of profits would be further reduced by the value in Superman and the Superman Marks that have been built up by DC Comics and its predecessors over the last six decades by virtue of, *inter alia*, the Post Action Comics No. 1 Works and Elements, and the Superman Marks

g. Any accounting of profits would be further reduced by additional factors, including but not limited to, DC Comics' direct and indirect

35

314290v1 02231.0811 FIRST AMENDED COUNTERCLAIMS

1  expenses, taxes, and DC Comics' independent role as a publisher of

2  Superman.

3     h. Subject to all reductions aforesaid and otherwise determined by the

4  Court to be applicable, the Siegels would be entitled to an accounting

5  of only one-half of the copyright co-owner's profits.

6      138. On information and belief, plaintiffs deny DC Comics' contentions

7  and/or the legal effect ascribed thereto as set forth above. Accordingly, an actual

8  controversy has arisen and now exists between Plaintiffs/Counterclaim Defendants

9  and DC Comics as to the above issues.

10      139. A justiciable controversy exists concerning the above issues and a

11  judicial declaration is necessary and appropriate to determine the parties'

12  respective rights with regard thereto.

13      WHEREFORE, DC Comics demands judgment as follows:

14      1. Declaring that the Superman Notices and the Superboy Notice are

15  ineffective for one or more of the reasons set forth in DC Comics' First

16  Counterclaim;

17      2. In the event that the Superman Notices and/or the Superboy Notice

18  are deemed effective, for damages according to proof at trial on DC Comics' Third

19  Alternative Counterclaim;

20      3. In the event that the Superman Notices and/or the Superboy Notice

21  are deemed effective, declaring on DC Comics' Fourth Alternative Counterclaim

22  that, pursuant to the Agreement:

23      a. Plaintiffs/Counterclaim Defendants have transferred or are

24  contractually obligated to transfer to DC Comics, worldwide and in perpetuity, any

25  and all rights, title, and interest, including all United States copyrights, which they

26  may have in the Superman Works;

27      b. In the event that Plaintiffs/Counterclaim Defendants are

28  adjudged not to have transferred or not to be contractually obligated to transfer to

36

1 DC Comics, worldwide and in perpetuity, all rights, title, and interest, including all

2 United States copyrights, which they may have in the Superman Works, then the

3 remaining terms of the Agreement are valid and enforceable and

4 Plaintiffs/Counterclaim Defendants are not entitled to any compensation for any

5 past, present, or future exploitation of the Superman Works by or upon license from

6 DC Comics other than pursuant to the Financial Terms; and

7            c.      In the event that Plaintiffs/Counterclaim Defendants are

8 adjudged not to have transferred or not to be contractually obligated to transfer to

9 DC Comics, worldwide and in perpetuity, all rights, title, and interest, including all

10 United States copyrights, which they may have in the Superman Works, then

11 Plaintiffs/Counterclaim Defendants nevertheless are not entitled to license or

12 otherwise exploit the Superman Works in any manner;

13       4.      In the event that the Superman Notices and/or the Superboy Notice

14 are deemed effective, and DC Comics is not granted the relief sought on its Fourth

15 Alternative Counterclaim, declaring that the scope and effect of the Superman

16 Notices and the Superboy Notice are limited as set forth in DC Comics' Fifth

17 Alternative Counterclaim;

18       5.      In the event that the Superman Notices and/or the Superboy Notice

19 are deemed effective, and DC Comics is not granted the relief sought on its Fourth

20 Alternative Counterclaim, declaring that any accounting to which

21 Plaintiffs/Counterclaim Defendants may be entitled will be limited by all

22 applicable principles, including but not limited to, those set forth in DC Comics'

23 Sixth Alternative Counterclaim;

24       6.      Awarding DC Comics its costs and reasonably attorneys' fees

25 incurred in connection with DC Comics' defenses and claims herein seeking

26 declarations with respect to copyright ownership; and

27

28

314290v1 02231.0811      FIRST AMENDED COUNTERCLAIMS

7.   Awarding DC Comics such other and further relief as may be just.

DATED:   October 14, 2005

SCANNED

      FROSS ZELNICK LEHRMAN & ZISSU, P.C.
      Roger L. Zissu
      James D. Weinberger

                  -and-

      WEISSMANN WOLFF BERGMAN
      COLEMAN GRODIN & EVALL LLC
      Michael Bergman
      David L. Burg
      Adam Hagen

                  -and-

      PERKINS LAW OFFICE, P.C.
      Patrick T. Perkins

      By: _____
          David L. Burg

      Attorneys for Defendants Time Warner Inc.,
      Warner Communications Inc., Warner Bros.
      Entertainment Inc., and Warner Bros. Television
      Production Inc., and Defendant and
      Counterclaimant DC Comics

38

ER 3941

PROOF OF SERVICE
1013A(3) C.C.P. Revised 5/1/88

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF LOS ANGELES        )

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 9665 Wilshire Blvd, Suite 900, Beverly Hills, CA 90212. On the date shown below, I served the foregoing document described as **FIRST AMENDED COUNTERCLAIMS** on the interested parties in said action9, by placing a true copy thereof enclosed in a sealed envelope, addressed as follows:

Marc Toberoff
Law Offices of Marc Toberoff, PLC
1999 Avenue of the Stars, Suite 1540
Los Angeles, CA 90067

**XX**    **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Beverly Hills, California. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

___    **(FACSIMILE SERVICE)** I caused such document to be transmitted via facsimile to the offices of the addressees at the numbers listed above.

___    **(BY FEDERAL EXPRESS)** I caused a copy of such document(s) to be delivered to the offices of the addressee(s) via Federal Express, next business day delivery service.

Executed on **October 17, 2005**, at Beverly Hills, California.

___    **STATE**    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**XX**    **FEDERAL**    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Adrienne Crayton-Sarpy

1  FROSS ZELNICK LEHRMAN & ZISSU, P.C.
   Roger L. Zissu (Admitted *pro hac vice*)
2  James D. Weinberger (Admitted *pro hac vice*)
   866 United Nations Plaza
3  New York, New York 10017
   Telephone: (212) 813-5900
4  Fax: (212) 813-5901

5  WEISSMANN WOLFF BERGMAN
      COLEMAN GRODIN & EVALL LLP
6  Michael Bergman (SBN 37797)
   David L. Burg (SBN 130403)
7  Adam Hagen (SBN 218021)
   9665 Wilshire Boulevard, Ninth Floor
8  Beverly Hills, California 90212
   Telephone: (310) 858-7888
9  Fax: (310) 550-7191

10 Attorneys for Defendants Time Warner Inc.,
   Warner Communications Inc., Warner Bros.
11 Entertainment Inc., Warner Bros. Television
   Production, Inc., and DC Comics

12
                    **UNITED STATES DISTRICT COURT**
13                  **CENTRAL DISTRICT OF CALIFORNIA**

14
   | JOANNE SIEGEL and LAURA SIEGEL | Case No. CV 04-8776 DDP (RZx) |
15 | LARSON. | (related to CV 04-8400 DDP (RZx)) |

16 |               Plaintiffs, | **DEFENDANTS' ANSWER TO** |
                vs.                          **FIRST SUPPLEMENTAL**
17                                           **COMPLAINT**

18 TIME WARNER INC., WARNER
   COMMUNICATIONS INC., WARNER
   BROS. ENTERTAINMENT INC.,
19 WARNER BROS. TELEVISION
   PRODUCTION INC., DC COMICS, and
20 DOES 1-10..

21               Defendants.

22 DC COMICS,

23               Counterclaimant,
          vs.
24
   JOANNE SIEGEL and LAURA SIEGEL
25 LARSON,

26               Counterclaim Defendants.

27

28

1    Defendants Time Warner, Inc. ("Time Warner"), Warner Communications

2  Inc. ("WCI"), Warner Bros. Entertainment Inc. ("WBE"), Warner Bros. Television

3  Production Inc. ("WBTV"), and DC Comics ("DC") (collectively "Defendants"), by

4  their attorneys, hereby answer Plaintiffs' First Supplemental Complaint:[1]

5    1.    Defendants admit only that plaintiffs have brought this civil action for

6  the alleged causes of action set forth in the Complaint, but otherwise deny the

7  allegations in paragraph 1.

8    2.    Defendants admit only that plaintiffs purport to assert that this Court

9  has subject matter jurisdiction as alleged in paragraph 2 but otherwise deny the

10  allegations contained in paragraph 2.

11    3.    Defendants admit only that plaintiffs purport to assert that this Court

12  has supplemental jurisdiction as alleged in paragraph 3 but otherwise deny the

13  allegations contained in paragraph 3.

14    4.    Defendants admit only that they regularly do business in the State of

15  California and in this District but otherwise deny the allegations in paragraph 4.

16    5.    Admitted.

17    6.    Defendants lack knowledge or information sufficient to form a belief as

18  to the truth of the allegations contained in paragraph 6 and on that basis deny the

19  same.

20    7.    Defendants lack having knowledge or information sufficient to form a

21  belief as to the truth of the allegations contained in paragraph 7 and on that basis

22  deny the same.

23    8.    Admitted.

24    9.    Admitted.

25

26  [1] Defendants were never provided with a copy of the executed stipulation as approved by the Court granting Plaintiff leave to file its First Supplemental Complaint (pursuant to Local Rule 15-3), or otherwise served with the First Supplemental Complaint as filed with

27  the Court, and are answering herein based on having obtained a copy of the First Supplemental Complaint from the Court's files. The filing of this Answer to First

28  Supplemental Complaint does not and is not intended to affect in any manner Defendants' counterclaims, filed in this action on November 22, 2004.

**ER 3944**

10.   Admitted.

11.   Defendants deny the allegations contained in paragraph 11 except admit that DC is a general partnership organized and existing under the laws of the State of New York, that it has its principal place of business in the State of New York, and regularly conducts business in the State of California and in the County of Los Angeles.

12.   Defendants deny the allegations in paragraph 12 except admit that DC Comics is the successor-in-interest to, *inter alia*, Detective Comics, Inc. and National Periodical Publications, Inc. and except to the extent the allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

13.   Defendants deny the allegations in paragraph 13, except admit that Time Warner Inc. is Delaware corporation with its corporate headquarters in the State of New York, that certain of its wholly owned subsidiaries regularly conduct business within this judicial district and that WCI, Warner Bros., WBTV are companies affiliated with Time Warner Inc. Defendants further admit that DC Comics is a New York general partnership whose general partners are entities affiliated with defendant Time Warner Inc.

14.   Denied.

15.   Denied.

16.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 and on that basis deny the same.

17.   Denied.

18.   Defendants deny the allegations contained in the first sentence of paragraph 18. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 18 and on that basis deny the same, except to the extent the allegations accurately reflect the contents of

2

ER 3945

1   documents, and respectfully refer the Court to such documents for evidence of the
2   contents thereof.

3       19.    Defendants lack knowledge or information sufficient to form a belief as
4   to the truth of the allegations contained in paragraph 19 and on that basis deny the
5   same except to the extent the allegations accurately reflect the contents of
6   documents, and respectfully refer the Court to such documents for evidence of the
7   contents thereof.

8       20.    Defendants deny the allegations contained in paragraph 20 except
9   admit that in 1933 Siegel and Shuster co-created a character entitled Superman,
10  which character was thereafter substantially changed prior to its first publication in
11  1938, and that as of December 1938, Detective Comics, Inc. was publishing comic
12  books featuring stories about Superman prepared by Siegel and Shuster at Detective
13  Comics, Inc.'s instance and expense and subject to its right to control.

14      21.    Defendants lack knowledge or information sufficient to form a belief as
15  to the truth of the allegations contained in paragraph 21 and on that basis deny the
16  same except to the extent the allegations accurately reflect the contents of
17  documents, and respectfully refer the Court to such documents for evidence of the
18  contents thereof.

19      22.    Defendants deny the allegations contained in paragraph 22 except
20  admit that in December 1940, Siegel submitted a script entitled "Superboy" which
21  script credits both Siegel and Shuster as authors, and except to the extent the
22  allegations accurately reflect the contents of documents, and respectfully refer the
23  Court to such documents for evidence of the contents thereof.

24      23.    Defendants deny the allegations contained in paragraph 23 except to
25  the extent the allegations accurately reflect the contents of documents, and
26  respectfully refer the Court to such documents for evidence of the contents thereof.

27      24.    Denied.

28

**ER 3946**

25. Defendants deny the allegations contained in paragraph 25, except to the extent the allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

26. Defendants deny the allegations contained in paragraph 26, except to the extent the allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

27. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 and on that basis deny the same, except to the extent the allegations refer to the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

28. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 and on that basis deny the same, except to the extent the allegations refer to the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

29. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 and on that basis deny the same, except to the extent the allegations refer to the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

30. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 and on that basis deny the same.

31. Defendants deny the allegations contained in paragraph 31 except admit that Detective Comics, Inc. published the January-February 1945 issue of More Fun Comics, No. 101, which contained a story about the adventures of Superman as a boy, and except to the extent the allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

1    32.    Defendants deny the allegations contained in paragraph 32 except to

2  the extent the allegations accurately reflect the contents of documents, and

3  respectfully refer the Court to such documents for evidence of the contents thereof.

4    33.    Defendants admit the allegations of paragraph 33 except that

5  defendants deny that the Official Referee's opinion in the 1947 Action was dated

6  November 1, 1947, deny that the Official Referee found that Jerome Siegel was the

7  originator and sole owner of the comic strip feature "Superboy," deny that none of

8  the parties perfected an appeal of the Official Referee's opinion, findings of fact and

9  conclusions of law, and lack knowledge or information sufficient to form a belief as

10  to whether the Official Referee "signed" detailed findings of fact on April 12, 1948

11  and on that basis deny the same.

12    34.    Defendants deny the allegations contained in paragraph 34 except to

13  the extent the allegations accurately reflect the contents of documents, and

14  respectfully refer the Court to such documents for evidence of the contents thereof.

15    35.    Defendants admit that Siegel assigned to National Periodical

16  Publications, Inc., any rights of any kind he may have owned in Superboy in, *inter*

17  *alia*, the 1948 Stipulation, as well as separately in the subsequent May 21, 1948

18  Consent Agreement but deny the remaining allegations in paragraph 35 except to the

19  extent the allegations accurately reflect the contents of documents, and respectfully

20  refer the Court to such documents for evidence of the contents thereof.

21    36.    Denied.

22    37.    Defendants deny the allegations contained in paragraph 37 except to

23  the extent the allegations accurately reflect the contents of documents or

24  publications, and respectfully refer the Court to such documents for evidence of the

25  contents thereof.

26    38.    Denied.

27

28

39.     Defendants deny the allegations contained in paragraph 39 except to the extent the allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

40.     Defendants deny the allegations contained in paragraph 40 except to the extent the allegations accurately reflect the contents of documents or publications, and respectfully refer the Court to such documents for evidence of the contents thereof.

41.     Denied.

42.     Defendants deny the allegations contained in paragraph 42 except to the extent the allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

43.     Denied.

44.     Denied.

45.     Denied.

46.     Defendants admit that plaintiffs purport to have mailed a notice of termination on November 8, 2002, but deny the remaining allegations contained in paragraph 46 except to the extent the allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

47.     Defendants deny the allegations contained in paragraph 47 except to the extent the allegations accurately reflect the contents of documents, and respectfully refer the Court to such documents for evidence of the contents thereof.

48.     Denied.

49.     Defendants deny the allegations contained in paragraph 49 except admit that Siegel assigned any and all rights he may have owned in Superboy pursuant to the 1948 Stipulation and separately pursuant to the May 21, 1948 Consent Agreement.

50.     Denied.

6

1    51.    Denied.

2    52.    Denied.

3    53.    Defendants deny the allegations contained in paragraph 53 except to

4  the extent the allegations accurately reflect the contents of documents, and

5  respectfully refer the Court to such documents for evidence of the contents thereof.

6    54.    Defendants deny the allegations contained in paragraph 54 except

7  admit that plaintiffs were put on notice at least as early as August 27, 2004 of DC

8  Comics' rejection of the scope and effect of the purported notice of termination and

9  except to the extent the allegations accurately reflect the contents of documents, and

10 respectfully refer the Court to such documents for evidence of the contents thereof.

11   55.    Defendants deny the allegations contained in paragraph 55 except to

12 the extent the allegations accurately reflect the contents of documents, and

13 respectfully refer the Court to such documents for evidence of the contents thereof.

14   56.    Defendants deny the allegations contained in paragraph 56 except

15 admit that plaintiffs have been on notice since at least as early as August 27, 2004

16 that, notwithstanding plaintiffs' purported termination, DC Comics asserted the

17 unfettered right to authorize the preparation, production, copying, distribution, and

18 exploitation of new episodes of "Smallville" and except to the extent the allegations

19 accurately reflect the contents of documents, and respectfully refer the Court to such

20 documents for evidence of the contents thereof.

21   57.    Defendants deny the allegations contained in paragraph 57 except

22 admit that the December 23, 1975 Agreement provides, in part, that DC Comics has

23 the right to cease providing the benefits of such Agreement in the event plaintiff

24 Joanne Siegel (1) commences an action or claims any right in the "'Superman'

25 concept, idea, continuity, pictorial representation, formula, characters, cartoons and

26 comic strips, title, logo, copyrights and trademarks; or (2) assert[s] any financial

27 claims against [defendants] or any licensee . . . ." all of which plaintiff Joanne Siegel

28 has done in violation of the December 23, 1975 Agreement, including but not

7

1   limited to, purporting to terminate the December 23, 1975 Agreement in the notice

2   of termination, and except to the extent the allegations accurately reflect the

3   contents of documents, and respectfully refer the Court to such documents for

4   evidence of the contents thereof.

5        58.     Defendants deny the allegations contained in paragraph 58 except to

6   the extent the allegations accurately reflect the contents of documents (including

7   publicly available financial filings), and respectfully refer the Court to such

8   documents for evidence of the contents thereof.

9        59.     Defendants deny the allegations contained in paragraph 59 except

10   admit that, as plaintiffs have known for more than five years, DC Comics will

11   continue to prepare, produce, copy, distribute, or exploit new works derivative of

12   Superman, or authorize such activity as it and its predecessors have done since

13   1938.

14        60.     Denied.

15                 **FIRST CLAIM FOR RELIEF**

16        61.     Defendants re-allege and incorporate by reference paragraphs 1 through

17   60 inclusive, as though fully set forth herein.

18        62.     Denied.

19        63.     Denied.

20        64.     Denied.

21        65.     Denied except respectfully refer to the Notices of Termination for the

22   contents thereof.

23        66.     Denied.

24        67.     Denied.

25        68.     Denied.

26        69.     Denied.

27        70.     Denied.

28        71.     Denied.

1    72.   Denied.

2    73.   Denied.

3    74.   Denied.

4    75.   Denied.

5                    **SECOND CLAIM FOR RELIEF**

6    76.   Defendants re-allege and incorporate by reference paragraphs 1 through

7  76 inclusive, as though fully set forth herein.

8    77.   Defendants deny the allegations contained in paragraph 77 except

9  admit that an actual and justiciable controversy has arisen and now exists between

10  the parties.

11   78.   Defendants admit that plaintiffs contend and that defendants deny all of

12  the assertions contained in paragraph 78, including but not limited to, subparagraphs

13  (a) – (d).

14   79.   Defendants deny the allegations contained in paragraph 79 except

15  admit that a declaration of the Court is necessary.

16                     **THIRD CLAIM FOR RELIEF**

17   80.   Defendants re-allege and incorporate by reference paragraphs 1 through

18  79 inclusive, as though fully set forth herein.

19   81.   Defendants deny the allegations contained in paragraph 81 except lack

20  knowledge or information sufficient to form a belief as to the truth of the allegations

21  pertaining to "comic book fans" and the "comic book world" and on that basis deny

22  the same.

23   82.   Denied.

24   83.   Defendants deny the allegations contained in paragraph 68 except

25  admit that DC Comics will continue to exercise its rights in the Superman

26  copyrights, including but not limited to, Superboy.

27   84.   Denied.

28

85. Defendants deny the allegations contained in paragraph 85 except admit that DC Comics will continue to hold itself out as the owner of copyright in the Superman copyrights, including but not limited to Superboy.

86. Denied.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

91. Denied.

## FOURTH CLAIM FOR RELIEF

92. Defendants re-allege and incorporate by reference paragraphs 1 through 91 inclusive, as though fully set forth herein.

93. Defendants admit that defendant Time Warner Inc. has made no mention of plaintiffs' ineffective termination notice in publicly reported documents, but otherwise deny the allegations in paragraph 93.

94. Denied.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

99. Denied.

100. Denied.

101. Denied.

102. Denied.

## FIFTH CLAIM FOR RELIEF

103. Defendants re-allege and incorporate by reference paragraphs 1 through 102 inclusive, as though fully set forth herein.

104. Denied.

10

1  105.  Denied.

2  106.  Denied.

3  107.  Denied.

### FIRST AFFIRMATIVE DEFNSE

5  108.  Plaintiffs' complaint fails to state a claim upon which relief may be
6  granted.

### SECOND AFFIRMATIVE DEFENSE

8  109.  Plaintiffs' claims are barred by the doctrines of laches, waiver,
9  acquiescence, and/or estoppel.

### THIRD AFFIRMATIVE DEFENSE

11  110.  Plaintiffs' claims are barred because plaintiffs have failed to timely
12  terminate a grant of rights in Superman by Siegel and Shuster.

### FOURTH AFFIRMATIVE DEFENSE

14  111.  Plaintiffs' claims are barred because plaintiffs have continued to accept
15  the benefits of one of the grants of rights in Superman they allege to have
16  terminated, even after the purported effective date of such termination.

### FIFTH AFFIRMATIVE DEFENSE

18  112.  The "Siegel Superboy Story" is not eligible for termination under the
19  Copyright Act or, if it is, termination is premature.

### SIXTH AFFIRMATIVE DEFENSE

21  113.  Plaintiffs' claims are barred by the statute of limitations, including but
22  not limited to, 17 U.S.C. § 507 (b).

### SEVENTH AFFIRMATIVE DEFENSE

24  114.  Plaintiffs' claims are barred on the basis of settlement.

### EIGHTH AFFIRMATIVE DEFENSE

26  115.  Because the various paragraphs of plaintiffs' Complaint do not comply
27  with Fed. R. Civ. P. 8(a) and (e), defendants are not required to separately admit or
28  deny each averment contained therein.

1    FOR THESE REASONS, defendants pray that the Court dismiss all of

2  plaintiffs' claims and find for defendants on all counts, that defendants be awarded

3  costs, including reasonable attorneys' fees under Section 505 of the United States

4  Copyright Act, and pray for such other and further relief as this Court deems just

5  and proper.

6  DATED:  September 7, 2005      FROSS ZELNICK LEHRMAN & ZISSU, P.C.
                                  Roger L. Zissu
7                                 James D. Weinberger

8                                          -and-

9                                 WEISSMANN WOLFF BERGMAN
                                     COLEMAN GRODIN & EVALL LLP
10                                Michael Bergman
                                  David L. Burg
11                                Adam Hagen

12

13                                By: _____
                                      David L. Burg
14
                                  Attorneys for Defendants Time Warner Inc.,
15                                Warner Communications Inc., Warner Bros.
                                  Entertainment Inc., Warner Bros. Television
16                                Production Inc., and Defendant and
                                  Counterclaimant DC Comics
17

18  I:\jweinberger\dcc\Siegel Litigation\Pleadings\04cv8776\050907-0452344-Ans Am Compl (final)-jdw.doc

19

20

21

22

23

24

25

26

27

28

12

PROOF OF SERVICE
1013A(3) C.C.P. Revised 5/1/88

STATE OF CALIFORNIA          )
                             )  ss.
COUNTY OF LOS ANGELES        )

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 9665 Wilshire Blvd, Suite 900, Beverly Hills, CA 90212. On the date shown below, I served the foregoing document described as **DEFENDANTS' ANSWER TO FIRST SUPPLEMENTAL COMPLAINT** on the interested parties in said action, by placing a true copy thereof enclosed in a sealed envelope, addressed as follows:

Marc Toberoff
Law Offices of Marc Toberoff, PLC
1999 Avenue of the Stars, Suite 1540
Los Angeles, CA 90067

**XX**     **(BY MAIL)**   I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Beverly Hills, California. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

___     **(FACSIMILE SERVICE)**  I caused such document to be transmitted via facsimile to the offices of the addressees at the numbers listed above.

___     **(BY FEDERAL EXPRESS)** I caused a copy of such document(s) to be delivered to the offices of the addressee(s) via Federal Express, next business day delivery service.

Executed on **September 7, 2005**, at Beverly Hills, California.

___     **STATE**       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**XX**     **FEDERAL**     I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
Adrienne Crayton-Sarpy

**ER 3956**

1  Marc Toberoff (CA State Bar No. 188547)
   Rex D. Glensy (CA State Bar No. 198909)
2  Nicholas C. Williamson (CA State Bar No. 231124)
   LAW OFFICES OF MARC TOBEROFF, PLC
3  1999 Avenue of the Stars, Suite 1540
   Los Angeles, CA 90067
4  Telephone: (310) 246-3333
   Facsimile: (310) 246-3101
5
6  Attorneys for Plaintiffs and Counterclaim Defendants
   Joanne Siegel and Laura Siegel Larson

**ORIGINAL**

7  **UNITED STATES DISTRICT COURT**

8  **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 9 JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, | Case No. **CV 04-08776 DDP (RZx)** |
| 10 | |
| 11 Plaintiffs, | **FIRST SUPPLEMENTAL COMPLAINT FOR**: |
| 12 vs. | [1] COPYRIGHT INFRINGEMENT, 17 U.S.C. §§ 101 *ET SEQ.*; |
| 13 TIME WARNER INC., a corporation; WARNER COMMUNICATIONS INC., a corporation; WARNER BROS. ENTERTAINMENT INC., a corporation; WARNER BROS. TELEVISION PRODUCTION INC., a corporation; DC COMICS, a general partnership; and DOES 1-10, | [2] DECLARATORY RELIEF RE: TERMINATION, 17 U.S.C.§304(c); |
| 14 | [3] VIOLATION OF LANHAM ACT, 15 U.S.C. § 1125; |
| 15 | [4] VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONAL CODE §§ 17200 *ET SEQ.*; and |
| 16 | [5] INJUNCTIVE RELIEF. |
| 17 | |
| 18 Defendants. | |
| 19 | |
| 20 DC COMICS, | DEMAND FOR JURY TRIAL |
| 21 Counterclaimant, | |
| 22 vs. | |
| 23 JOANNE SIEGEL, an individual; and LAURA SIEGEL LARSON, an individual, | |
| 24 | |
| 25 Counterclaim Defendants. | |
| 26 | |

DOCKETED ON CM
APR 2 0 2005
BY _____ 009

1

1    Plaintiffs JOANNE SIEGEL and LAURA SIEGEL LARSON (hereinafter the

2 "Plaintiffs"), by and through their attorney of record, hereby allege as follows:

3                           **JURISDICTION AND VENUE**

4        1.     This is a civil action for copyright infringement, declaratory relief,

5 violations of the Lanham Act and violations of the California unfair competition laws

6 arising out of Plaintiffs' termination of prior grants of copyright in and to the original

7 character and work created by Jerome Siegel known as "Superboy" and subsequent

8 "Superboy" works pursuant to the United States Copyright Act of 1976, 17 U.S.C. §

9 304(c), and defendants' willful misconduct with respect thereto.

10       2.     This Court has original subject matter jurisdiction over the claims set

11 forth in this Complaint pursuant to the United States Copyright Act (hereinafter, the

12 "Copyright Act"),  17 U.S.C. § 101 *et al.* and 28 U.S.C. §§ 1331, 1338(a) and 1332 .

13       3.     This Court has supplemental jurisdiction over the related state claims

14 herein in that these claims form part of the same case and controversy as the federal

15 claims herein.

16       4.     This Court has personal jurisdiction over the defendants in that

17 defendants are regularly doing business in the State of California and in this District,

18 and because a substantial portion of the relevant acts complained of herein occurred in

19 the State of California and this District.

20       5.     Venue is proper in the United States District Court for the Central

21 District of California pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a) because

22 the unfair competition and other wrongful acts that give rise to the claims herein below

23 occurred in this district and because WARNER BROS. ENTERTAINMENT INC. and

24 WARNER BROS. TELEVISION PRODUCTION INC. have principal places of

25 business in this district.

                                     **PARTIES**

26       6.     Plaintiff JOANNE SIEGEL (hereinafter "Joanne Siegel") is an

27 individual and citizen of, and resides in, the State of California, in the County of Los

                                        2

Complaint for Copyright Infringement, Declaratory Relief. Lanham Act Violation·

rate

DC.

ιall also

ιrolling

usively

ι

: not "arm's

ι, and thus,

fair Competitio

1  do not reflect the appropriate market values of the copyrights to "Superboy," at issue

2  herein.

3       15.    Plaintiffs are informed and believe and based thereon allege that

4  Defendants Time Warner, WCI, Warner Bros., WBTV and DC are, and at all times

5  material hereto were, the alter-egos of each other and there exists and has existed at all

6  times material hereto a unity of interest and ownership among such Defendants such

7  that any separateness has ceased to exist in that Defendants, and/or each of them, used

8  assets of the other Defendants, and/or each of them, for its and/or their separate,

9  individual purposes, and caused valuable assets, property, rights and/or interests to be

10  transferred to each other without adequate consideration.

11       16.    Plaintiffs are informed and believe and based thereon allege that the

12  fictitiously named Defendants captioned hereinabove as Does 1 through 10, inclusive,

13  and each of them, were in some manner responsible or legally liable for the actions,

14  damages, events, transactions and circumstances alleged herein. The true names and

15  capacities of such fictitiously named defendants, whether individual, corporate,

16  associate, or otherwise are presently unknown to Plaintiffs, and Plaintiffs will amend

17  this Complaint to assert the true names and capacities of such fictitiously named

18  Defendants when the same have been ascertained. For convenience, each reference

19  herein to a named Defendant shall also refer to the Doe Defendants and each of them.

20       17.    Plaintiffs are informed and believe and based thereon allege that each of

21  the Defendants was the agent, partner, servant, employee, or employer of each of the

22  other Defendants herein, and that at all times herein mentioned, each of the Defendants

23  was acting within the course and scope of such employment, partnership and/or agency

24  and that each of the Defendants is jointly and severally responsible for the damages

25  hereinafter alleged.

26                   **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

27       18.    In or about 1938, Jerome Siegel conceived of a new comic strip series

28  entitled "Superboy." On November 30, 1938 he submitted to Detective Comics for its

5

ER 3959

1    first "release" or "releases" of "Superboy," and the plan for the future publication of a

2    "Superboy" comic book series.

3        24.    No other person, nor entity, aside from Jerome Siegel, authored or

4    contributed to the Siegel Superboy Material.

5        25.    The Siegel Superboy Material sets forth the following: "Superboy's"

6    character, origins, family and social life as a youth growing up in a small-town in the

7    rural American heartland; while grappling with the challenges of growing up,

8    "Superboy" must face the challenges and responsibilities of his extraordinary strength

9    and developing powers and of concealing that he is very different from others;

10   "Superboy" is raised in his small town by foster parents, the "Kents," humble, moral

11   people who are sensitive to their "son's" uniqueness, keep his secret and gently guide

12   him; after describing "Superboy's" origins and his antics as a baby who is taught by

13   the Kents to restrain or conceal his tremendous strength, Mr. Siegel's "Superboy"

14   series starts with the youth at age eleven or twelve, while he attends junior high school

15   in the hometown where his crime fighting adventures take place; "Superboy" protects

16   his small town and its inhabitants, including his classmates, from accidents and evil

17   doers; "Superboy's" central dilemma, while facing adolescence, school cliques, bullies

18   and "bad guys" alike is to conceal his true self while using his great powers to help

19   those in need.

20       26.    By comparison, in Action Comics No. 1, where "Superman" debuted in

21   1938, we see "Superman" as an infant in only one panel on page one. By the next

22   panel on page one he has already become an adult with fully developed superpowers.

23       27.    On or about December, 1940, Mr. Siegel submitted the Siegel Superboy

24   Story to Detective Comics for its further consideration; however, Detective Comics

25   continued to reject and did not elect to publish the "Superboy" comic book series.

26       28.    Thereafter, by letters dated February 6, 1941, July 1, 1941 and January 1,

27   1942, Jerome Siegel again wrote to Detective Comics in an attempt to pique their

28   interest in his new "Superboy" comic book series.

7

29. Detective Comics, however, consistently purported to reject Mr. Siegel's proposals and material regarding a new "Superboy" comic book series.

30. Jerome Siegel entered the U.S. Army in July 1943 to serve his country during World War II.

31. While Mr. Siegel was stationed in the Pacific, Detective Comics, without notice to Jerome Siegel and without his consent, illegally used and published the Siegel Superboy Material as an illustrated comic book story in the body of the January-February, 1945 issue of More Fun Comics, No. 101, which was published and issued for sale on November 18, 1944. The copyright to More Fun Comics No. 101 was renewed on July 17, 1972, in the name of Detective Comics' successor, National Periodical Publications, Inc., claiming as proprietor of copyright.

32. Defendant DC states in its book, <u>DC Comics: A Celebration of the World's Favorite Comic Book Heroes</u>, Copyright 1995, 2003 DC Comics: "MORE FUN COMICS # 101 [incorporating the Siegel Superboy Material] ...la[id] the groundwork for countless stories and new directions to come. Superboy's learning experiences and the gentle guidance of Ma and Pa Kent become important touchstones in the character's development..."

33. In or about 1947, Siegel and Shuster filed an action in the Supreme Court of the State of New York, County of Westchester against National Comics Publications, Inc. (hereinafter, the "1947 Action") to determine the origin and ownership of "Superboy;" and to determine the validity of various "Superman" contracts between Siegel and Shuster and National Comics Publications, Inc.'s predecessors–in–interest (including Detective Comics). Pursuant to stipulation of the parties the action was referred for decision to an official referee of the New York Supreme Court (hereinafter, the "Official Referee"). After trial of the action the Official Referee rendered an opinion dated November 1, 1947. On April 12, 1948, the Official Referee signed detailed findings of fact and conclusions of law and entered an interlocutory judgment. The Official Referee found that Jerome Siegel was the

8

1  originator and sole owner of the comic strip feature, "Superboy." None of said parties

2  perfected an appeal of the Official Referee's opinion, findings of fact and conclusions

3  of law.  Settlement negotiations ensued, resulting in a stipulation of settlement between

4  said parties executed on or about May 19, 1948 (hereinafter, the "1948 Stipulation"),

5  and the entry in the New York Supreme Court of a final consent judgment dated May

6  21, 1948.

7        34.     In the 1947 Action, the Official Referee found, after reviewing

8  considerable documentary and testimonial evidence regarding "Superboy" (and

9  Plaintiffs reiterate and allege herein): (i) that the original "Superboy" material created

10  solely by Jerome Siegel contained with detail and particularity the continuity, plan and

11  dialogue for the first "release" or "releases" of "Superboy", the conception and

12  character of "Superboy" and the entire plan for the future publication of "Superboy";

13  (ii) that all of the comic strip material published under the title "Superboy" by

14  Detective Comics and later by its successor, National Comics Publications, Inc., up

15  until trial of the 1947 Action, on or about April 12, 1948, copied, embodied and was

16  based upon the conception, expression, plan and direction contained in Jerome Siegel's

17  original November 30, 1938 letter to Detective Comics and in the Siegel Superboy

18  Story, solely created by Jerome Siegel; (iii) that "Superman" did not contain the plan,

19  scheme or conception of Jerome Siegel's comic strip, "Superboy" and that "Superboy"

20  was a work different and distinct from "Superman"; (iv) that the publication of all such

21  comic strip material entitled "Superboy" by Detective Comics was at all times illegal

22  and without the permission of Jerome Siegel; and (v) that Jerome Siegel, was the

23  originator and sole owner of the comic strip feature, "Superboy," and had the sole and

24  exclusive right to create, sell and distribute comic strip material under the title

25  "Superboy," of the type and nature published by Detective Comics.

26        35.     Subsequent to these court findings, Mr. Siegel assigned rights in

27  "Superboy" to National Periodical Publications, Inc in the 1948 Stipulation.

28  / / /

9

36.    In <u>Jerome Siegel and Joseph Shuster v. National Periodical Publications,</u> <u>Inc. et al.</u>, 509 F.2d 909 (2nd Cir., 1974) the Second Circuit held that the Official Referee's findings of fact and conclusions of law in the 1947 Action, to which no appeals were taken, are binding on the parties under the doctrine of *res judicata*.

37.    "Superboy's" small town adventures were published in "More Fun Comics," Nos. 101-107 (1944-1945), "Adventure Comics" Nos. 103-503 (1946-1983), "Superboy" Nos. 1-235 (1949-1977), "The New Adventures of Superboy" Nos. 1-54 (1979-1984), and another series of comics entitled "Superboy" (sometimes also known as "The Adventures of Superboy") Nos. 1-100 (1989-2002), which were published at regular intervals and in numerous other comic book publications (these series of comic books featuring "Superboy" are hereinafter sometimes referred to, in whole or in part, as the "Superboy Comic Books"). "Superboy" has also been exploited in several television series, including the animated "The Adventures of Superboy" (1966), the live action series "The Adventures of Superboy" (1988-1992) and "Smallville" (2001-ongoing) and in considerable merchandising over the years.

38.    The aforesaid Superboy Comic Books, television programs and merchandising are substantially similar to and derivative of the Siegel Superboy Material.

39.    As originally conceived by Jerome Siegel, "Superboy" was to naturally mature from an eleven or twelve year old in junior high school to a teenager in high school. Mr. Siegel wrote in the Siegel Superboy Story: "And so was launched the career of SUPERBOY, youthful Champion of Righteousness! In later years he was to become the mighty figure known as Superman! But the story of SUPERBOY'S amazing and often humorous adventures is a series of astonishing narratives in itself!" The adventures were to take place in the same small rural American town in which he grew up with his foster parents, the Kents. This fictional town was named "Smallville" early on in "Superboy No. 2.," published in 1949. In the Superboy Comic Books and in the animated and live action "The Adventures of Superboy" television

10

1  series, "Superboy's" crime fighting adventures, throughout the years, for the most part
2  have taken place in "Smallville," the hometown he protects. For more than 50 years in
3  this large body of published and broadcast material and thus, in the public's mind, the
4  town of "Smallville" has been associated with "Superboy."

5       40.    Defendant WBTV's television series, "Smallville" (hereinafter referred
6  to as the "Smallville Series") which debuted in October, 2001 and is currently in its
7  fourth season is derivative of the Siegel Superboy Material. The Smallville Series is set
8  in "Superboy's" small rural hometown from which the series takes its name. The
9  Smallville Series focuses on a youth with extraordinary powers raised in the American
10  heartland, who, while grappling with the challenges of growing up, must face the
11  responsibilities of his emerging powers and conceal that he is very different from
12  others. Like the Siegel Superboy Material, the Smallville Series follows the
13  anonymous crime fighting adventures of its superhero in the small town he protects,
14  while examining the character's social and family life. In the Smallville Series, as in
15  the Siegel Superboy Story, the main character is raised by his humble, earnest and
16  understanding foster parents, the Kents, who keep his secret and to whom he turns for
17  guidance as he faces daily challenges due to his differences/superpowers of which he
18  gradually becomes aware. Warner Bros.' own marketing materials for the Smallville
19  Series state: "Between the boy Clark Kent thought he was and the man he is destined
20  to become lie the compelling stories of 'Smallville'" -- a premise and expression
21  derivative of the Siegel Superboy Materials.

22       41.    The Siegel Superboy Story and the Siegel Superboy Material are wholly
23  original with author Jerome Siegel and constitute copyrightable subject matter under
24  the laws of the United States.

25       42.    The Siegel Superboy Material was published in the serialized magazine,
26  More Fun Comics, No. 101, for which copyright was secured on November 23, 1944
27  with the Register of Copyrights under copyright registration number B653651 and
28  renewed on July 17, 1972 in the name of National Periodicals Publications, claiming

1  as proprietor of copyright, under copyright renewal registration number R532582. The

2  Siegel Superboy Material was also published in subsequent "Superboy" publications

3  for which copyright was secured through registration with the United States Register

4  of Copyrights prior to November 17, 1948; and renewed with the Register of

5  Copyrights.

6       43.    Jerome Siegel was the sole proprietor of all right, title and interest in and

7  to the copyrights in the Siegel Superboy Material prior to granting rights in

8  "Superboy" to National Comics Publications, Inc. in the 1948 Stipulation.

9       44.    As the sole proprietor of such copyrights, Jerome Siegel had the

10  exclusive right to, among other things, prepare or authorize the preparation of

11  derivative works based on the Siegel Superboy Material.

12       45.    The main character, conception, story, continuity and other elements in

13  More Fun Comics No. 101 and subsequent Superboy Comic Books and television

14  programs, including the Smallville Series are substantially similar to the protected

15  expression in the Siegel Superboy Story and Siegel Superboy Material.

16       46.    On November 8, 2002, Plaintiffs, Joanne Siegel and Laura Siegel, served

17  by first class mail and by certified mail, return receipt requested, both postage prepaid,

18  a notice of termination, as permitted by the Copyright Act, 17 U.S.C. § 304 (c)

19  (hereinafter, the "Termination Notice") on each of the Defendants and a number of

20  their subsidiaries, licensees and affiliates, which terminates, effective November 17,

21  2004 (hereinafter, the "Termination Date"), Jerome Siegel's alleged grant in the 1948

22  Stipulation (and in any other alleged prior grants) of the renewal copyrights to the

23  "Superboy" character(s), conceptions, stories, continuity, setting, themes and other

24  copyrightable "Superboy" element or aspects originally created and owned by Jerome

25  Siegel (hereinafter sometimes referred to collectively as the "Recaptured Copyrights").

26  The Termination Notice was duly recorded with the Library of Congress and the

27  United States Copyright Office.

28  / / /

12

---

47.     The Siegel Superboy Material was published in (i) More Fun Comics Nos. 101 -107 (statutory copyright to More Fun Comics No. 107 was secured on November 20, 1945), (ii) Adventure Comics No. 103-135 (statutory copyright to Adventure Comics No. 135 was secured on October 20, 1948) and (iii) subsequent works involving "Superboy," all for which copyright was registered and renewed with the United States Register of Copyrights, as set forth in the Notice of Termination.

48.     The Notice of Termination was drafted, served on Defendants and filed with the United States Copyright Office, all in full compliance with the Copyright Act, 17 U.S.C. 304(c), and the regulations promulgated thereunder by the United States Register of Copyrights, 37 C.F.R. § 201.10 (2003). (Plaintiffs' aforesaid exercise of their termination rights under 17 U.S.C. § 304(c) regarding "Superboy" is sometimes hereinafter referred to as the "Termination").

49.     As the sole creator and author of "Superboy," Jerome Siegel owned all rights in "Superboy," including the copyrights to "Superboy" prior to the alleged transfer or assignment of "Superboy" pursuant to the 1948 Stipulation.

50.     The Notices of Termination terminated on November 17, 2004 (hereinafter, the "Termination Date") all prior grants or purported grants of the renewal copyrights in and to "Superboy" for the extended renewal term (hereinafter, sometimes referred to individually and collectively as the "Recaptured Copyrights"), including all such grants in the 1948 Stipulation.

51.     On November 17, 2004, the Termination Date, Plaintiffs recovered ownership to the Recaptured Copyrights for their extended renewal terms.  In accordance with 17 U.S.C. 304(c), and as set forth in the Notice of Termination, Jerome Siegel's surviving son, Michael Siegel, is also entitled to share in the proceeds from this recaptured interest.

52.     Notwithstanding the clear findings of fact in the 1947 Action that Jerome Siegel had solely created "Superboy," Defendants continue to publicly distribute false and misleading representations as to the origins and creation of "Superboy."

13

53.     For instance, in Defendant DC's book alleged hereinabove, DC Comics: A Celebration of the World's Favorite Comic Book Heroes, *supra*, DC states "Editor Jack Schiff is credited with the original suggestion for the "Superboy" series...The initial scripts were by writer Don Cameron...One reader who didn't care for "Superboy" was another returning soldier, Jerry Siegel..."  In the introduction to Defendant DC's November 2000 reprint of More Fun Comics No. 101 in which "Superboy" made his first appearance in 1944, DC gives the following credit: " 'Superboy' Story by Unknown," even though it had been held in the 1947 Action that the "Superboy" story appearing in More Fun Comics No. 101 was directly "lifted" from the Siegel Superboy Story.

54.     On August 27, 2004, over twenty-one months after the Termination Notice had been served on Defendants, Defendant DC, by its attorneys (Fross Zelnick, *et al*) sent a letter to the Plaintiffs' attorneys of record (hereinafter the "August 27, 2004 Letter"), stating in relevant part:

> "DC Comics hereby rejects the Superboy Notice [of
> Termination] to the extent it seeks to terminate any matter
> beyond such novel plot and dialogue additions, to the
> extent copyrightable, that may exist in Superboy based
> upon the script and scenario submitted by Mr. Siegel to DC
> in 1940."

55.     Nonetheless, DC asserts in its August 27, 2004 Letter:

> "DC Comics will vigorously oppose any attempt by Mrs.
> Siegel and Mrs. Siegel Larson...to exploit or authorize the
> exploitation of any copyrights, or indeed any rights at all,
> based on the Superboy Notice [of Termination]."

56.     Defendants further indicated in the August 27, 2004 Letter that, notwithstanding the Termination, DC and its licensees, including but not limited to Warner Bros. and Time Warner, would, after the Termination Date, continue to

14

prepare, produce, copy, distribute and exploit new episodes of the derivative Smallville Series, in addition to other new "Superboy" works.

57.    Defendants also state in the August 27, 2004 Letter that if Plaintiffs continue to assert their rights in "Superboy" under the Copyright Act, Defendants may take away Plaintiff Joanne Siegel's widow's pension and medical benefits on which the elderly Mrs. Siegel heavily relies, even though such benefits are payable pursuant to a written agreement between Defendant WCI and Siegel and Shuster, dated December 23, 1975, which had nothing to do with the "Superboy" Termination:

> "This letter… is written without prejudice to any of our
> client's rights or remedies, including with respect to the
> parties' continuing rights and obligations under their
> agreements providing, among other things, compensation
> and other benefits to Mrs. Siegel…"

58.    Defendant DC's August 27, 2004 Letter constitutes a thinly veiled threat that if Plaintiffs persist with the assertion of their statutory rights under the Copyright Act, 17 U.S.C. § 304(c) and/or attempt to exploit *any* of their Recaptured Copyrights in "Superboy," Defendants would launch a campaign of intimidation, including, but not limited to, withholding widow's pension and medical benefits that Defendants had promised in writing to provide to Joanne Siegel, instituting retaliatory litigation against Plaintiffs; and wielding Defendants' enormous market power to constrict Plaintiffs' ability to exploit their Recaptured Copyrights.  Given that Time Warner is one of the largest media companies in the world, with over $38 billion in annual revenues, Defendants' threats wrongfully encumbered and will continue to encumber the bona fide copyright interests that Plaintiffs regain on November 17, 2004 under 17 U.S.C. § 304 (c).

59.    Subsequent to the Termination Date, Defendants have continued to prepare, produce, copy, distribute or exploit, and/or authorize others to prepare,

15

1   produce, copy, distribute or exploit, new derivative works which copy and are based
2   on the Siegel Superboy Material in willful violation of the Copyright Act.

3       60.    As a direct and proximate result of Defendants' actions Plaintiffs have
4   suffered and will continue to suffer irreparable harm and damages, much of which
5   cannot be reasonably or adequately measured or compensated in damages.

6   **FIRST CLAIM FOR RELIEF**

7   (Copyright Infringement, 17 U.S.C. §§ 101 *et seq.* - Against All Defendants)

8       61.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 60
9   inclusive, as though fully set forth herein.

10      62.    The Siegel Superboy Material is wholly original and copyrightable
11  subject matter under the laws of the United States.

12      63.    The Siegel Superboy Material was initially published in More Fun
13  Comics No. 101, which was registered for copyright on November 18, 1944 under
14  registration number B653651, and such copyright was renewed on July 17, 1972 under
15  registration number R532582.

16      64.    The Siegel Superboy Material was also published, in whole or in part, in
17  subsequent comic books, including but not limited to, More Fun Comics No. 102,
18  which was registered for copyright on January 16,1945 under registration number
19  B661073, and such copyright was renewed on July 17, 1972 under registration number
20  R532589; More Fun Comics No. 103, which was registered for copyright on March
21  20,1945 under registration number B669959, and such copyright was renewed on
22  November 1, 1972 under registration number R538883; More Fun Comics No. 104,
23  which was registered for copyright on May 28,1945 under registration number
24  B679484, and such copyright was renewed on January 10, 1973 under registration
25  number R544129; More Fun Comics No. 105, which was registered for copyright on
26  July 23,1945 under registration number B687306, and such copyright was renewed on
27  May 10, 1973 under registration number R552083; More Fun Comics No. 106, which
28  was registered for copyright on  September 23,1945 under registration number

1  B696308, and such copyright was renewed on May 10, 1973 under registration number

2  R552091; More Fun Comics No. 107, which was registered for copyright on

3  November 20,1945 under registration number B701661, and such copyright was

4  renewed on May 10, 1973 under registration number R552094; Adventure Comics No.

5  103, which was registered for copyright on February 25, 1946 under registration

6  number B10729, and such copyright was renewed on November 9, 1973 under

7  registration number R562273;   Adventure Comics No. 104, which was registered for

8  copyright on March 26, 1946 under registration number B16106, and such copyright

9  was renewed on November 9, 1973 under registration number R562278; Adventure

10  Comics No. 105, which was registered for copyright on April 23, 1946 under

11  registration number B18577, and such copyright was renewed on November 9, 1973

12  under registration number R562282; Adventure Comics No. 106, which was registered

13  for copyright on May 22, 1946 under registration number B24371, and such copyright

14  was renewed on November 9, 1973 under registration number R562286; Adventure

15  Comics No. 107, which was registered for copyright on June 19, 1946 under

16  registration number B26595, and such copyright was renewed on November 9, 1973

17  under registration number R562290; Adventure Comics No. 108, which was registered

18  for copyright on July 22, 1946 under registration number B30049, and such copyright

19  was renewed on November 9, 1973  under registration number R562294; Adventure

20  Comics No. 109, which was registered for copyright on August 19, 1946 under

21  registration number B34035, and such copyright was renewed on November 9, 1973

22  under registration number R562298; Adventure Comics No. 110, which was registered

23  for copyright on September 23, 1946 under registration number B40315, and such

24  copyright was renewed on November 9, 1973 under registration number R562302;

25  Adventure Comics No. 111, which was registered for copyright on October 21, 1946

26  under registration number B50223, and such copyright was renewed on November 9,

27  1973 under registration number R562306; Adventure Comics No. 112, which was

28  registered for copyright on November 20, 1946 under registration number B50224, and

17

1  such copyright was renewed on July 10, 1974 under registration number R580544;

2  Adventure Comics No. 113, which was registered for copyright on December 18, 1946

3  under registration number B55663, and such copyright was renewed on July 10, 1974

4  under registration number R580554; Adventure Comics No. 114, which was registered

5  for copyright on January 22, 1947 under registration number B60632, and such

6  copyright was renewed on July 10, 1974 under registration number R580562;

7  Adventure Comics No. 115, which was registered for copyright on February 19, 1947

8  under registration number B63437, and such copyright was renewed on July 10, 1974

9  under registration number R580567; Adventure Comics No. 116, which was registered

10  for copyright on March 19, 1947 under registration number B68976, and such

11  copyright was renewed on July 10, 1974 under registration number R580577;

12  Adventure Comics No. 117, which was registered for copyright on April 27, 1947

13  under registration number B73542, and such copyright was renewed on July 10, 1974

14  under registration number R580584; Adventure Comics No. 118, which was registered

15  for copyright on May 21, 1947 under registration number B78377, and such copyright

16  was renewed on September 16, 1974 under registration number R585271; Adventure

17  Comics No. 119, which was registered for copyright on June 18, 1947 under

18  registration number B83287, and such copyright was renewed on September 16, 1974

19  under registration number R585272; Adventure Comics No. 120, which was registered

20  for copyright on July 21, 1947 under registration number B88104, and such copyright

21  was renewed on September 16, 1974 under registration number R585273; Adventure

22  Comics No. 121, which was registered for copyright on August 20, 1947 under

23  registration number B93830, and such copyright was renewed on September 16, 1974

24  under registration number R585274; Adventure Comics No. 122, which was registered

25  for copyright on September 17, 1947 under registration number B97348, and such

26  copyright was renewed on January 23, 1975 under registration number R596253;

27  Adventure Comics No. 123, which was registered for copyright on October 20, 1947

28  under registration number B102774, and such copyright was renewed on January 23,

18

1975 under registration number R596260; Adventure Comics No. 124, which was registered for copyright on November 19, 1947 under registration number B106643, and such copyright was renewed on June 20, 1975 under registration number R608028; Adventure Comics No. 125, which was registered for copyright on December 17, 1947 under registration number B112479, and such copyright was renewed on June 20, 1975 under registration number R608045, Adventure Comics No. 126, which was registered for copyright on January 19, 1948 under registration number B118353, and such copyright was renewed on June 20, 1975 under registration number R608071; Adventure Comics No. 127, which was registered for copyright on February 18, 1948 under registration number B123413, and such copyright was renewed on June 20, 1975 under registration number R608091; Adventure Comics No. 128, which was registered for copyright on March 17, 1948 under registration number B126013, and such copyright was renewed on June 20, 1975 under registration number R608106; Adventure Comics No. 129, which was registered for copyright on April 19, 1948 under registration number B132341, and such copyright was renewed on June 20, 1975 under registration number R608849; Adventure Comics No. 130, which was registered for copyright on May 19, 1948 under registration number B137544, and such copyright was renewed on December 24, 1975 under registration number R620946; Adventure Comics No. 131, which was registered for copyright on June 21, 1948 under registration number B142664, and such copyright was renewed on December 24, 1975 under registration number R620950; Adventure Comics No. 132, which was registered for copyright on July 21, 1948 under registration number B148381, and such copyright was renewed on December 24, 1975 under registration number R620954; Adventure Comics No. 133, which was registered for copyright on August 18, 1948 under registration number B150760, and such copyright was renewed on December 24, 1975 under registration number R620956, Adventure Comics No. 134; which was registered for copyright on September 21, 1948 under registration number B155947, and such copyright was renewed on December 24, 1975 under registration number

19

1    R620961; Adventure Comics No. 135, which was registered for copyright on October

2    20, 1948 under registration number B163757, and such copyright was renewed on

3    December 24, 1975 under registration number R620966.

4         65.    Plaintiffs' Notices of Termination terminated on November 17, 2004 all

5    prior grants or purported grants of the renewal copyrights in and to the Siegel

6    Superboy Material; and Plaintiffs thereby recovered on said date exclusive ownership

7    of the Recaptured Copyrights in "Superboy" for their extended renewal terms.

8         66.    As the sole proprietor of the Recaptured Copyrights, Plaintiffs have the

9    rights, among other things, to prepare and exploit derivative works based on the

10    Recaptured Copyrights and/or to license to others the rights to do so.

11         67.    Defendants ongoing exploitations of the "Superboy" mythology,

12    including but not limited to the Superboy Comic Books and other publications,

13    "Superboy" merchandising, animated and live action television programming (e.g., the

14    Smallville Series) copy and are derivative of the Siegel Superboy Material and the

15    Recaptured Copyrights.

16         68.    The preparation, production, reproduction, distribution and/or

17    exploitation by Defendants, their licensees and/or assigns, on or after November 17,

18    2004, of *new* derivative works or products based on the "Superboy" mythology,

19    including, but not limited to, new publications, merchandising, motion pictures, new

20    episodes of the Smallville Series and/or other new derivative television programs

21    infringes Plaintiffs' Recaptured Copyrights.

22         69.    Plaintiffs placed Defendants on notice of such infringements, yet

23    Defendants knowingly and willfully continue to infringe Plaintiffs' Recaptured

24    Copyrights in total disregard of and indifference to Plaintiffs' rights under the

25    Copyright Act.

26         70.    As a direct and proximate result of Defendants' copyright infringements,

27    Plaintiffs have suffered and will continue to suffer severe injuries and harm, much of

28    which cannot be reasonably or adequately measured or compensated in money

20

1   damages if such wrongful conduct is allowed to continue unabated. The ongoing harm

2   this wrongful conduct will continue to cause Plaintiffs is both imminent and

3   irreparable. Plaintiffs' injuries and damages include, but are not limited to loss of

4   customers, dilution of goodwill, injury to their business reputation, and diminution of

5   the value of their intellectual property.

6        71.    Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary

7   injunction, during the pendency of this action, and to a permanent injunction, enjoining

8   Defendants, their officers, agents and employees, and all persons acting in concert with

9   them, from engaging in such further violations of the Copyright Act.

10       72.    Pursuant to 17 USCS § 503 (a) and (b), Plaintiffs are entitled to impound

11  and to have destroyed all such infringing works, copies and materials, including but

12  not limited to all masters, digital and video tapes, film negatives, computer discs or

13  other articles by means of which such infringing copies are being reproduced, as

14  justice requires.

15       73.    Plaintiffs are further entitled to recover from Defendants the damages,

16  including pre-judgment interest it sustained and will sustain, and any income, gains,

17  compensation, profits, and advantages obtained by Defendants as a result of their

18  wrongful acts alleged hereinabove (hereinafter referred to as "Proceeds"); in an

19  amount which cannot yet be fully ascertained, but which shall be assessed at the time

20  of trial.

21       74.    Plaintiffs are entitled to the restitution of all such Proceeds; and by

22  reason of the foregoing and Defendants' resultant unjust enrichment, Plaintiffs are

23  entitled to the imposition of a constructive trust for the benefit of Plaintiffs on all such

24  Proceeds.

25       75.    Plaintiffs are further entitled to their attorney's fees and full costs

26  pursuant to 17 U.S.C. § 505.

27               **SECOND CLAIM FOR RELIEF**

28   (Declaratory Relief Re: Termination, 17 U.S.C. § 304(c) - Against All Defendants)

21

---

76. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 75 inclusive, as though fully set forth herein.

77. By reason of the foregoing facts, an actual and justiciable controversy has arisen and now exists between Plaintiffs and Defendants under Federal copyright law, 17 U.S.C. §§ 101 *et seq.*, concerning their respective rights and interests in and to the copyrights to "Superboy," for which Plaintiffs desires a declaration of rights.

78. Plaintiffs contend and Defendants deny that:

a. Jerome Siegel was the sole proprietor of the copyright(s) in and to the unique character and literary conception of "Superboy," prior to his granting rights in "Superboy" to National Comics Publications, Inc. in the 1948 Stipulation;

b. As of the effective Termination Date, November 17, 2004, the Notice of Termination terminated any prior grant(s) by Jerome Siegel of his wholly owned copyrights in and to "Superboy," for the copyrights' extended renewal term, to any of the Defendants, their predecessors-in-interest and additional parties served with the Notices of Termination, including, but not limited to, such grant(s) in the 1948 Stipulation;

c. As of November 17, 2004, Plaintiffs exclusively own all right, title and interest in and to the Recaptured Copyrights to "Superboy" for their extended renewal terms.

d. The preparation, production, reproduction, distribution and/or exploitation, by Defendants, their licensees and/or assigns of *new* derivative works or products based on the "Superboy" mythology, including, but not limited to, new publications, merchandising, motion pictures, new episodes of the Smallville Series and/or other new derivative television programs, on or after November 17, 2004, without Plaintiffs' authorization, is prohibited under the Copyright Act.

79. A declaration of the Court is necessary pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., so that the parties may know their respective rights and obligations with respect to the Termination and the copyright interests

22

1 | thereby recaptured by Plaintiffs.

2 | **THIRD CLAIM FOR RELIEF**

3 | (Violation of the Lanham Act § 43(a), 15 U.S.C. § 1125, Unfair Competition –

4 | Against All Defendants)

5 | 80. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 79

6 | inclusive, as though fully set forth herein.

7 | 81. Plaintiffs are informed and believe and thereon allege that,

8 | notwithstanding the binding findings of fact and conclusions of law of the Official

9 | Referee in the 1947 Action, Defendants have and continue to willfully misrepresent in

10 | its commercial advertising and promotional materials the nature of "Superboy's"

11 | creation by failing to properly attribute "Superboy" to Jerome Siegel and/or falsely

12 | attributing "Superboy's" creation to themselves or their predecessors, all with an

13 | intention to mislead and misrepresent the nature, characteristics and qualities of

14 | Defendants' goods, services or commercial activities. Such misrepresentations are

15 | particularly harmful to comic book fans who care deeply about the creators of their

16 | favorite "superheroes." In the comic book world, the comic book's creator is closely

17 | tied in the public's mind to the nature, value, quality and other characteristics of the

18 | comic book itself, and of derivative products.

19 | 82. As a result of such false and misleading designation, marketing and

20 | advertising, members of the public, who read "Superboy" comic books, watch

21 | derivative television programming, purchase derivative merchandising, view

22 | Defendants' Internet sites and other advertising and promotional materials, are likely

23 | to be confused about the nature, characteristics and qualities of the "Superboy"

24 | products they are consuming.

25 | 83. Plaintiffs are informed and believe and thereon allege that Defendants

26 | DC, Warner Bros., WBTV, WCI and Time Warner, after and notwithstanding their

27 | service with the Termination Notice and the binding findings of fact and conclusions

28 | in the 1947 Action, falsely represented to third parties that Defendants own all rights

23

---

1  to "Superboy" for their full duration and willfully omitted disclosure of the

2  Termination Notice to such third parties, and that based upon such false claims,

3  representations and omissions have induced such third parties to enter into agreements

4  with them, including but not limited to agreements to license, develop, and produce

5  new derivative "Superboy" works on or after November 17, 2004.

6      84.    Plaintiffs are informed and believe and thereon allege that Defendants

7  used such misrepresentations and omissions in interstate commerce in order to induce

8  others to enter into contracts or other forms of business arrangements with Defendants.

9  Such actions constitute the use of false description or representation in interstate

10 commerce, likely to cause confusion, mistake or to deceive and is in opposition to the

11 protection of the public interest.

12     85.    Subsequent to the Termination Date, Defendants misrepresent

13 "Superboy" to be the sole property of Defendants, thus wrongfully misappropriating

14 and encumbering Plaintiffs' rights to the use and enjoyment of their intellectual

15 property and the goodwill attendant thereto, and resulting in likely confusion of and a

16 fraud on the public.

17     86.    As a direct and proximate cause of Defendants' unfair trade practices and

18 unfair competition, Plaintiffs have suffered and will continue to suffer severe injuries

19 and damages, much of which cannot be reasonably or adequately measured or

20 compensated in damages if such wrongful conduct is allowed to continue unabated.

21 The ongoing harm this wrongful conduct will continue to cause Plaintiffs is both

22 imminent and irreparable. Plaintiffs' injuries and damages include, but are not limited

23 to loss of customers, dilution of goodwill, injury to their business reputation, and

24 diminution of the value of their recaptured intellectual property.

25     87.    By reason of the foregoing, Defendants have violated and continue to

26 violate the Lanham Act, 15 U.S.C. §§ 1117 and 1125.

27     88.    Plaintiffs are entitled to an injunction, during the pendency of this action,

28 and permanently (i) enjoining Defendants, their officers, agents and employees, and all

24

1  persons acting in concert with them, from engaging in such further violations of the

2  Lanham Act, 15 U.S.C. §§ 1117 and 1125; and (ii) requiring Defendants, their

3  licensees, assigns and all persons acting in concert with them, to properly designate

4  Jerome Siegel on all "Superboy" publications, products, advertising and promotional

5  materials as the creator of "Superboy."

6       89.    Plaintiffs have no adequate remedy at law with respect to these ongoing

7  violations.

8       90.    Plaintiffs are further entitled to recover from Defendants the damages,

9  including attorneys' fees and costs, it sustained and will sustain, and any income,

10  gains, profits, and advantages obtained by Defendants as a result of their wrongful acts

11  and omissions alleged hereinabove, in an amount which cannot yet be fully

12  ascertained, but which shall be assessed at the time of trial.

13       91.    Plaintiffs are informed and believe and thereon allege that Defendants'

14  wrongful conduct, acts and omissions were conducted in an intentional, callous, and

15  calculated manner in conscious disregard for Plaintiffs' rights, health and feelings, and

16  knowingly and intentionally injured and damaged Plaintiffs, which conduct constituted

17  oppression and malice as defined by California Civil Code § 3294. In accordance with

18  California Civil Code § 3294, Plaintiffs are entitled to punitive damages in an amount

19  sufficient to punish Defendants DC, Warner Bros., WBTV, WCI and Time Warner, to

20  be assessed at trial.

21                     **FOURTH CLAIM FOR RELIEF**

22         (Violation of California Business and Professions Code, §§ 17200 *et seq.*

23                (Unfair Competition) - Against All Defendants)

24       92.    Plaintiffs re-allege and incorporate herein by reference the allegations set

25  forth in paragraphs 1 through 91, inclusive, as though fully set forth herein.

26       93.    In addition to the wrongful acts and omissions alleged hereinabove and

27  incorporated herein, Plaintiffs are informed and believe that despite being served with

28  the Termination Notice, Defendant Warner Bros.' and its parent, Defendant Time

1  Warner, have intentionally omitted from Time Warner's Annual Reports on Form 10-

2  K, Quarterly Reports on Form 10-Q, Current Reports on Form 8-K and other publicly

3  reported documents any and all mention of the Termination, even though the

4  Termination drastically curtails Defendants' ability to continue to exploit "Superboy" -

5  - one of their more valuable intellectual properties. Such systematic public

6  misrepresentations by omission are likely to deceive, cause confusion and mistake and

7  run counter to the public interest.

8      94.    In addition to the wrongful acts and omissions alleged hereinabove and

9  incorporated herein, Defendants wrongful conduct amounts to the bodily appropriation

10 of the Siegel Superboy Material and to "reverse passing off," depriving Plaintiffs of

11 the full use and value of the "Superboy" property and of attendant goodwill, and

12 resulting in likely confusion of and a fraud on the public. Defendants, unless

13 restrained, will likely continue to misrepresent and pass off "Superboy" to be their sole

14 property and creation.

15     95.    Plaintiffs are further informed and believe and thereon allege that

16 Defendants' attempts to pass off "Superboy" as Defendants' sole property for a much

17 longer duration than Defendants controlled the property are calculated to deceive

18 Plaintiffs' potential licensors and/or customers and members of the public.

19     96.    Defendants' wrongful conduct, acts, and omissions alleged hereinabove

20 constitute unlawful, unfair business practices and unfair competition under California

21 Business and Professions Code §§ 17500 *et seq.*, and under the common law.

22     97.    As a direct and proximate result of Defendants' conduct, acts, and

23 omissions as alleged hereinabove, Plaintiffs are entitled to recover their share of any

24 income, gains, compensation, profits and advantages obtained, received or to be

25 received by Defendants, or any of them, arising from the exploitation after the

26 Termination Date of any element of the "Superboy" mythology protected by the

27 Recaptured Copyrights, excluding derivative works produced prior to the Termination

28

Complaint for Copyright Infringement, Declaratory Relief, Lanham Act Violations and Unfair Competition

ER 3979

1  Date; and are entitled to an order requiring Defendants, jointly and severally, to render

2  an accounting to ascertain the amount of such proceeds.

3      98.    As a direct and proximate result of Defendants' wrongful conduct, acts

4  and omissions pleaded hereinabove, Plaintiffs have been damaged, and Defendants

5  will be unjustly enriched during the pendency of this action, in an amount that shall be

6  assessed at trial for which damages and/or restitution and disgorgement is appropriate.

7  Such damages and/or restitution and disgorgement should include a declaration by this

8  Court that Defendants are jointly and severally the constructive trustee for the benefit

9  of Plaintiffs and an order that Defendants convey to Plaintiffs all Proceeds received by

10 Defendants that are attributable to the wrongful exploitation of "Superboy," excluding

11 derivative works produced prior to the Termination Date.

12     99.    Defendants' wrongful conduct, acts and omissions have proximately

13 caused and will continue to cause Plaintiffs substantial injury and damage including,

14 without limitation, loss of customers, dilution of goodwill, injury to Plaintiffs'

15 reputation, and diminution of the value of Plaintiffs' Recaptured Copyrights.  The

16 harm this wrongful conduct causes to Plaintiffs is ongoing and irreparable, and the

17 amount of damage sustained by Plaintiffs will be difficult to ascertain if such wrongful

18 conduct is allowed to continue without restraint.

19     100.   Plaintiffs are entitled to an injunction, during the pendency of this action,

20 and permanently (i) enjoining Defendants, their officers, agents and employees, and all

21 persons acting in concert with them, from engaging in such further unfair business

22 practices and unfair competition under California Business and Professions Code §§

23 17500 *et seq.*, and under the common law; and (ii) requiring Defendants, their

24 licensees, assigns and all persons acting in concert with them, to properly designate

25 Jerome Siegel on all "Superboy" publications, products, advertising and promotional

26 materials as the creator of "Superboy."

27     101.   Plaintiffs have no adequate remedy at law with respect to such ongoing

28 unlawful conduct.

27

102.    Plaintiffs are informed and believe and thereon allege that Defendants' wrongful conduct, acts and omissions were conducted in an intentional, malicious, calculated and oppressive manner in conscious disregard for Plaintiffs' rights, health and feelings, and knowingly and intentionally injured and damaged Plaintiffs, which conduct constituted oppression and malice as defined by California Civil Code § 3294. In accordance with California Civil Code § 3294, Plaintiffs are entitled to punitive damages in an amount sufficient to punish Defendants, to be assessed at trial.

## FIFTH CLAIM FOR RELIEF

(Injunctive Relief – Against All Defendants)

103.    Plaintiffs re-allege and incorporate herein by reference the allegations set forth in paragraphs 1 through 102, inclusive, as though fully set forth herein.

104.    Unless enjoined and restrained by order of the Court, Defendants' conduct will continue to infringe Plaintiffs' Recaptured Copyrights.

105.    By reason of Defendants' blatant copyright infringement and Defendants' unfair trade practices and unfair competition against Plaintiffs, Plaintiffs have sustained and, unless and until Defendants are enjoined, will continue to sustain substantial and irreparable injury, loss and damage, including repeated infringement of their copyrights, diminution of the value of their copyrights, loss of customers, dilution of goodwill, and injury to their business reputation.

106.    Plaintiffs have no adequate remedy at law for many of their ongoing injuries in that such injuries cannot be reasonably, adequately or precisely measured or compensated in damages if such wrongful conduct is not restrained and allowed to continue unabated.

107.    Plaintiffs are entitled to a preliminary injunction during the pendency of this action and a permanent injunction ordering that Defendants, their agents, employees. licensees and assigns (i) be enjoined from producing, reproducing and exploiting or authorizing the production, reproduction or exploitation, after the Termination Date, of new "Superboy" derivative works including, but not limited to,

28

ER 3004

112.  For the imposition of a constructive trust for the benefit of Plaintiffs on any and all such unlawful gains, compensation, profits and advantages received and to be received by Defendants;

113.  For Plaintiffs' attorney's fees and full costs pursuant to 17 U.S.C. § 505; and

114.  For such other and further relief and remedies available under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, which the Court may deem just and proper.

<u>ON THE SECOND CLAIM FOR RELIEF</u>

115.  For a declaration as follows:

    a.  That pursuant to the Copyright Act, 17 U.S.C.§304(c), Plaintiffs validly terminated, effective November 17, 2004, all prior grants, assignments or transfers, to any of the Defendants and any of their predecessors-in-interest, of the renewal copyrights in and to the Siegel Superboy Material and the Recaptured Copyrights;

    b.  That, as of November 17, 2004, Plaintiffs exclusively own the Recaptured Copyrights; and that on or after that date all pertinent copyright notices shall bear their names;

    c.  That Defendants' exploitations of the "Superboy" mythology, including but not limited to the Superboy Comic Book, merchandising, animated and live action television programming, including the Smallville Series, are derivative of the Siegel Superboy Material;

    d.  That the preparation, production, reproduction, distribution and/or exploitation, by Defendants, their licensees and/or assigns of *new* derivative works or products based on or using the "Superboy" mythology in any and all media, including, but not limited to, new publications, merchandising, motion pictures, new episodes of the Smallville Series and/or other new derivative television programs, on or after November 17, 2004, without Plaintiffs' authorization, is prohibited under the Copyright Act.

30

Complaint for Copyright Infringement, Declaratory Relief, Lanham Act Violations and Unfair Competition

ON THE THIRD CLAIM FOR RELIEF

116.    For an order preliminarily during the pendency of this action and thereafter permanently (i) enjoining Defendants, their officers, agents, employees, licensees and assigns and all persons acting in concert with them, from engaging in such further violations of the Lanham Act, 15 U.S.C. §§ 1117 and 1125; and (ii) requiring them to properly designate Jerome Siegel as the creator of "Superboy" on all "Superboy" publications, products, advertising and promotional materials;

117.    For compensatory and consequential damages according to proof as shall be determined at trial;

118.    For such other and further relief and remedies available under the Lanham Act, 15 U.S.C. § 1125, which the Court may deem just and proper; and

119.    For punitive and exemplary damages as may be awarded at trial.

ON THE FOURTH CLAIM FOR RELIEF

120.    For an accounting of any and all Proceeds;

121.    For the imposition of a constructive trust for the benefit of Plaintiffs on any and all unlawful Proceeds received and to be received by Defendants;

122.    For restitution to Plaintiffs of any and all unlawful Proceeds;

123.    For an order preliminarily during the pendency of this action and thereafter, permanently, (i) enjoining Defendants, their officers, agents, employees, licensees and assigns, and all persons acting in concert with them, from engaging in such further unfair business practices and unfair competition under California Business and Professions Code §§ 17500 *et seq.*, and/or under the common law, as alleged hereinabove; and (ii) requiring them to properly designate Jerome Siegel as the creator of "Superboy" on all "Superboy" publications, products, advertising and promotional materials;

124.    For compensatory and consequential damages according to proof as shall be determined at trial;

31

Complaint for Copyright Infringement, Declaratory Relief, Lanham Act Violations and Unfair Competition

125.    For such other and further relief and remedies available under California Business and Professions Code, §§ 17200 *et seq.*, which the Court may deem just and proper; and

126.    For punitive and exemplary damages as may be awarded at trial.

### ON THE FIFTH CLAIM FOR RELIEF

127.    For an order preliminarily during the pendency of this action and thereafter, permanently, (i) enjoining Defendants, their officers, agents, employees, licensees and assigns, and all persons acting in concert with them, from producing, exploiting or authorizing the production or exploitation of new derivative works based on the "Superboy" mythology, on or after November 17, 2004, including, but not limited to, new "Superboy" publications, merchandising, motion pictures, new episodes of the Smallville Series and other derivative television programs; and (ii) requiring Defendants to credit Jerome Siegel as the creator of "Superboy" on all "Superboy" publications, products, advertising and promotional materials.

### ON ALL CLAIMS FOR RELIEF

128.    For Plaintiffs' costs of suit;

129.    For interest at the highest lawful rate on all sums awarded Plaintiffs other than punitive damages;

130.    For reasonable attorneys' fees; and

131.    For such other and further relief as the Court deems just and appropriate.

Dated: April _13_, 2005

LAW OFFICES OF MARC TOBEROFF

By: _____
        Marc Toberoff

Attorneys for Plaintiffs and Counterclaim Defendants Joanne Siegel and Laura Siegel Larson

32

Complaint for Copyright Infringement, Declaratory Relief, Lanham Act Violations and Unfair Competition

1

## JURY TRIAL DEMANDED

2      Plaintiffs hereby request a trial by jury on each claim for relief alleged in the

3   Complaint.

4   Dated: April _13_, 2005                    LAW OFFICES OF MARC TOBEROFF

5
                                               By: _____
6                                                        Marc Toberoff

7                                              Attorneys for Plaintiffs and Counterclaim
                                               Defendants Joanne Siegel and Laura
8                                              Siegel Larson

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

33

(RZx),APPEAL,CLOSED,DISCOVERY,MANADR,PROTORD,RELATED–G

# UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA (Western Division – Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:04–cv–08776–ODW–RZ

Joanne Siegel et al v. Time Warner Inc et al
Assigned to: Judge Otis D. Wright, II
Referred to: Magistrate Judge Ralph Zarefsky
 Related Case:  2:04–cv–08400–ODW–RZ
 Case in other court:  9th CCA, 13–56244
                       9th CCA, 13–56259
Cause: 17:101 Copyright Infringement

Date Filed: 10/22/2004
Date Terminated: 04/18/2013
Jury Demand: Plaintiff
Nature of Suit: 820 Copyright
Jurisdiction: Federal Question

**Plaintiff**

**Laura Siegel Larson**
*as personal representative of the Estate
of jJanne Siegel
also known as*
Joanne Siegel

represented by  **Jeffrey Bruce Linden**
Marc Toberoff Law Offices
1999 Avenue of the Stars, Suite 1540
Los Angeles, CA 90067
310–246–3333
Email: jeffrey.b.linden@gmail.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Marc Toberoff**
Toberoff &Associates PC
22337 Pacific Coast Highway Suite 348
Malibu, CA 90265
310–246–3333
Fax: 310–246–3101
Email: mtoberoff@toberoffandassociates.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Nicholas Calvin Williamson**
Toberoff &Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
310–246–3333
Fax: 310–246–3101
Email: nwilliamson@ipwla.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Rafael Gomez–Cabrera**
Marc Toberoff Law Offices
1999 Avenue of the Stars, Suite 1540
Los Angeles, CA 90067
310–246–3333
Email: rafael.gomez@post.harvard.edu
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**David S Harris**
Toberoff and Associates PC
22337 Pacific Coast Highway Suite 348
Malibu, CA 90265
310–246–3333
Fax: 310–246–3101
Email: dharris@toberoffandassociates.com
*TERMINATED: 03/08/2013
ATTORNEY TO BE NOTICED*

**ER 3986**

**Keith Gregory Adams**
Toberoff and Associates P C
22337 Pacific Coast Highway Suite 348
Malibu, CA 90265
310–246–3333
Email: kadams@toberoffandassociates.com
*ATTORNEY TO BE NOTICED*

**Pablo D Arredondo**
Toberoff &Associates PC
22631 Pacific Coast Highway Suite 348
Malibu, CA 90265
310–246–3333
Fax: 310–246–3101
Email: parredondo@toberoffandassociates.com
*TERMINATED: 03/08/2013*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Laura Siegel Larson**<br>*an individual* | represented by | **Jeffrey Bruce Linden**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Marc Toberoff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicholas Calvin Williamson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rafael Gomez–Cabrera**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David S Harris**
(See above for address)
*TERMINATED: 03/08/2013*
*ATTORNEY TO BE NOTICED*

**Keith Gregory Adams**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pablo D Arredondo**
(See above for address)
*TERMINATED: 03/08/2013*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Time Warner Inc**<br>*a corporation* | represented by | **Adam Beriah Hagen**<br>Miller Barondess LLP<br>1999 Avenue of the Stars<br>Suite 1000<br>Los Angeles, CA 90067<br>310–552–4400 |

**ER 3987**

Fax: 310–552–8400
Email: ahagen@millerbarondess.com
*TERMINATED: 02/23/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel M Petrocelli**
O'Melveny and Myers LLP
400 South Hope Street 18th Floor
Los Angeles, CA 90071–2899
213–430–6000
Fax: 213–430–6407
Email: dpetrocelli@omm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Loren Burg**
NBC Universal Inc
Building 1280–6
100 Universal City Plaza
Universal City, CA 91608
818–777–1856
Fax: 818–866–1999
Email: david.burg@nbcuni.com
*TERMINATED: 12/13/2007*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Aaron Grossman**
Loeb and Loeb
10100 Santa Monica Blvd Suite 2200
Los Angeles, CA 90067–4120
310–282–2000
Fax: 310–282–2200
Email: dgrossman@loeb.com
*TERMINATED: 04/14/2005*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James D Weinberger**
Fross Zelnick Lehrman &Zissu PC
866 United Nations Plaza 6th Floor
New York, NY 10017
212–813–5900
Fax: 212–813–5901
Email: jweinberger@frosszelnick.com
*TERMINATED: 02/26/2010*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Zavin**
Loeb and Loeb LLP
345 Park Avenue
New York, NY 10154
212–407–4000
Fax: 212–407–4990
Email: jzavin@loeb.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Justin Deabler**
Fross Zelnick Lehrman and Zissu
866 United Nations Plaza

New York, NY 10017
212–813–5900
*TERMINATED: 01/30/2008*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Bergman**
Weissmann Wolff Bergman Coleman
Grodin &Evall
9665 Wilshire Blvd, Ste 900
Beverly Hills, CA 90212–2316
310–858–7888
Email: mbergman@wwllp.com
*TERMINATED: 02/23/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick T Perkins**
Warner Bros.
4000 Warner Blvd.
Bldg. 156 North
Room 4030
Burbank, CA 91522
818–954–2768
Fax: 818–954–3855
Email: patrick.perkins@warnerbros.com
*TERMINATED: 06/21/2012*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Roger L Zissu**
Fross Zelnick Lehrman and Zissu
866 United Nations Plaza
6th Fl
New York, NY 10017
212–813–5900
Fax: 212–813–5901
Email: rzissu@frosszelnick.com
*TERMINATED: 02/26/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cassandra L Seto**
OMelveny and Myers
1999 Avenue of the Stars
7th Floor
Los Angeles, CA 90067–6035
310–246–6703
Email: cseto@omm.com
*ATTORNEY TO BE NOTICED*

**Matthew T Kline**
O'Melveny and Myers LLP
1999 Avenue of the Stars Suite 700
Los Angeles, CA 90067
310–246–6840
Fax: 310–246–6779
Email: mkline@omm.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Warner Communications Inc**          represented by   **Adam Beriah Hagen**
*a corporation*                                        (See above for address)

**ER 3989**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel M Petrocelli**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Loren Burg**
(See above for address)
*TERMINATED: 12/13/2007*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Aaron Grossman**
(See above for address)
*TERMINATED: 04/14/2005*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James D Weinberger**
(See above for address)
*TERMINATED: 02/26/2010*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Zavin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Justin Deabler**
(See above for address)
*TERMINATED: 01/30/2008*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Bergman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick T Perkins**
(See above for address)
*TERMINATED: 06/21/2012*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Roger L Zissu**
(See above for address)
*TERMINATED: 02/26/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cassandra L Seto**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew T Kline**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Warner Bros Entertainment Inc**
*a corporation*

represented by **Adam Beriah Hagen**
(See above for address)
*TERMINATED: 02/23/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Loren Burg**
(See above for address)
*TERMINATED: 12/13/2007*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Aaron Grossman**
(See above for address)
*TERMINATED: 04/14/2005*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James D Weinberger**
(See above for address)
*TERMINATED: 02/26/2010*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Zavin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Justin Deabler**
(See above for address)
*TERMINATED: 01/30/2008*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Bergman**
(See above for address)
*TERMINATED: 02/23/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick T Perkins**
(See above for address)
*TERMINATED: 06/21/2012*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Roger L Zissu**
(See above for address)
*TERMINATED: 02/26/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cassandra L Seto**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel M Petrocelli**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ER 3991**

Matthew T Kline
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Warner Brothers Television**
**Production Inc**
*a corporation*

represented by **Adam Beriah Hagen**
(See above for address)
*TERMINATED: 02/23/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Loren Burg**
(See above for address)
*TERMINATED: 12/13/2007*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Aaron Grossman**
(See above for address)
*TERMINATED: 04/14/2005*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James D Weinberger**
(See above for address)
*TERMINATED: 02/26/2010*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Zavin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Justin Deabler**
(See above for address)
*TERMINATED: 01/30/2008*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Bergman**
(See above for address)
*TERMINATED: 02/23/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick T Perkins**
(See above for address)
*TERMINATED: 06/21/2012*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Roger L Zissu**
(See above for address)
*TERMINATED: 02/26/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cassandra L Seto**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Daniel M Petrocelli**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew T Kline**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**DC Comics**
*a general partnership*

represented by **Daniel M Petrocelli**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Loren Burg**
(See above for address)
*TERMINATED: 12/13/2007*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Aaron Grossman**
(See above for address)
*TERMINATED: 04/14/2005*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James D Weinberger**
(See above for address)
*TERMINATED: 02/26/2010*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Zavin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Justin Deabler**
(See above for address)
*TERMINATED: 01/30/2008*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Bergman**
(See above for address)
*TERMINATED: 02/23/2010*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick T Perkins**
(See above for address)
*TERMINATED: 06/21/2012*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Roger L Zissu**
(See above for address)
*TERMINATED: 02/26/2010*
*LEAD ATTORNEY*

**ER 3993**

*ATTORNEY TO BE NOTICED*

**Adam Beriah Hagen**
(See above for address)
*TERMINATED: 02/23/2010*
*ATTORNEY TO BE NOTICED*

**Cassandra L Seto**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew T Kline**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Does**
*1 – 10*

**Counter Defendant**

**Laura Siegel Larson**                     represented by **Marc Toberoff**
*as personal representaive of the Estate of*                 (See above for address)
*Joanne Siegel*                                              *LEAD ATTORNEY*
*also known as*                                              *ATTORNEY TO BE NOTICED*
Joanne Siegel
                                                            **Nicholas Calvin Williamson**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Rafael Gomez–Cabrera**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **David S Harris**
                                                            (See above for address)
                                                            *TERMINATED: 03/08/2013*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Keith Gregory Adams**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Pablo D Arredondo**
                                                            (See above for address)
                                                            *TERMINATED: 03/08/2013*
                                                            *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**DC Comics**                               represented by **Daniel M Petrocelli**
*a general partnership*                                      (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **David Loren Burg**
                                                            (See above for address)
                                                            *TERMINATED: 12/13/2007*
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **James D Weinberger**
                                                            (See above for address)

*TERMINATED: 02/26/2010*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael Bergman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cassandra L Seto**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew T Kline**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick T Perkins**
(See above for address)
*TERMINATED: 06/21/2012*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Roger L Zissu**
(See above for address)
*TERMINATED: 02/26/2010*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Time Warner Inc**
*a corporation*

represented by **Daniel M Petrocelli**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James D Weinberger**
(See above for address)
*TERMINATED: 02/26/2010*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cassandra L Seto**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew T Kline**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Warner Bros Entertainment Inc**
*a corporation*

represented by **James D Weinberger**
(See above for address)
*TERMINATED: 02/26/2010*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cassandra L Seto**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel M Petrocelli**
(See above for address)

**ER 3995**

*ATTORNEY TO BE NOTICED*

**Matthew T Kline**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Warner Bros Television Inc**          represented by   **Daniel M Petrocelli**
*a corporation*                                          (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **James D Weinberger**
                                                         (See above for address)
                                                         *TERMINATED: 02/26/2010*
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Cassandra L Seto**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Matthew T Kline**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Warner Communications Inc**          represented by   **Daniel M Petrocelli**
*a corporation*                                          (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **James D Weinberger**
                                                         (See above for address)
                                                         *TERMINATED: 02/26/2010*
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Cassandra L Seto**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Matthew T Kline**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Laura Siegel Larson**                represented by   **Marc Toberoff**
*an individual*                                          (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Nicholas Calvin Williamson**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Rafael Gomez–Cabrera**

**ER 3996**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David S Harris**
(See above for address)
*TERMINATED: 03/08/2013*
*ATTORNEY TO BE NOTICED*

**Keith Gregory Adams**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pablo D Arredondo**
(See above for address)
*TERMINATED: 03/08/2013*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/23/2013 | 267 | TRANSCRIPT for proceedings held on March 20, 2006 10:00 am. Court Reporter/Electronic Court Recorder: Sheri Kleeger, phone number 213–894–6604. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Electronic Court Recorder before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 12/14/2013. Redacted Transcript Deadline set for 12/24/2013. Release of Transcript Restriction set for 2/21/2014. (Kleeger, Sheri) (Entered: 11/23/2013) |
| 11/21/2013 | 266 | TRANSCRIPT for proceedings held on Monday, September 17, 2007; 1:38 PM. Court Reporter: THERESA LANZA, phone number www.theresalanza.com, 661–303–4776. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 12/12/2013. Redacted Transcript Deadline set for 12/22/2013. Release of Transcript Restriction set for 2/19/2014. (Lanza, Theresa) (Entered: 11/21/2013) |
| 11/21/2013 | 265 | TRANSCRIPT for proceedings held on Monday, February 12, 2007; 10:16 AM. Court Reporter: THERESA LANZA, phone number www.theresalanza.com, 661–303–4776. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 12/12/2013. Redacted Transcript Deadline set for 12/22/2013. Release of Transcript Restriction set for 2/19/2014. (Lanza, Theresa) (Entered: 11/21/2013) |
| 08/13/2013 | 264 | TRANSCRIPT ORDER as to plaintiff Laura Siegel Larson(an individual) Court Reporter. Court will contact Justin Gomes at jgomes@toberoffandassociates.com with any questions regarding this order. Transcript portion requested: Other: Pre–Trial Hearings: March 20, 2006; February 12, 2007; September 17, 2007. Transcript preparation will not begin until payment has been satisfied with the court reporter/recorder. (Toberoff, Marc) (Entered: 08/13/2013) |
| 08/12/2013 | 263 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Notice (Other) 262 . The following error(s) was found: Incorrect Event used. Please file your document under Civil> Other Filings> Transcripts> G–120 Form. You must electronically refile the above referenced Request for Transcript in this case to correct this deficiency. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (mw) TEXT ONLY ENTRY (Entered: 08/12/2013) |
| 08/09/2013 | 262 | NOTICE of Intent re: Designation and Ordering of Transcripts filed by plaintiff Laura Siegel Larson(an individual). (Toberoff, Marc) (Entered: 08/09/2013) |

| 07/18/2013 | <u>261</u> | NOTIFICATION by Circuit Court of Appellate Docket Number 13–56259 9th CCA regarding Notice of Appeal to 9th Circuit Court of Appeals <u>259</u> as to Defendants and Counter Claimants Time Warner Inc, Warner Bros Entertainment Inc. (dmap) (Entered: 07/19/2013) |
|---|---|---|
| 07/17/2013 | <u>260</u> | REPRESENTATION STATEMENT re Notice of Appeal to 9th Circuit Court of Appeals,_259 . (Petrocelli, Daniel) (Entered: 07/17/2013) |
| 07/17/2013 | <u>259</u> | NOTICE OF APPEAL to the 9th CCA filed by Defendants and Counterclaimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc. Appeal of Judgment,,,,,,,,,,,,,_254 , Order on Motion to Alter Judgment,,,_253 , Order, Terminate Deadlines and Hearings,,_174 (Appeal fee of $455 receipt number 0973–12418358 paid.) (Attachments: #_1 Statement Of Related Cases)(Petrocelli, Daniel) (Entered: 07/17/2013) |
| 07/16/2013 | <u>258</u> | NOTIFICATION by Circuit Court of Appellate Docket Number 13–56244 9th CCA regarding Notice of Appeal to 9th Circuit Court of Appeals_257 as to Plaintiff and counter–defendant Laura Siegel Larson(an individual), Laura Siegel Larson(as personal representaive of the Estate of Joanne Siegel). (dmap) (Entered: 07/17/2013) |
| 07/16/2013 | <u>257</u> | NOTICE OF APPEAL to the 9th CCA filed by Plaintiff Laura Siegel Larson(an individual), Laura Siegel Larson(as personal representaive of the Estate of Joanne Siegel), Laura Siegel Larson(as personal representative of the Estate of jJanne Siegel). Appeal of Judgment,,,,,,,,,,,,,_254 , Order on Motion to Alter Judgment,,,_253 (Appeal fee of $455 receipt number 0973–12409941 paid.) (Attachments: #_1 Representation Statement, #_2 Proof of Service)(Toberoff, Marc) (Entered: 07/16/2013) |
| 07/08/2013 | <u>256</u> | RESPONSE filed by Defendant DC Comics, Counter Claimant DC Comicsto Motion Related Document,_255 *(Response and Objection)* (Petrocelli, Daniel) (Entered: 07/08/2013) |
| 07/07/2013 | <u>255</u> | Notice of Amended Judgment re APPLICATION to the Clerk to Tax Costs against plaintiff and counter defendant Laura Siegel Larson(an individual), Laura Siegel Larson(as personal representaive of the Estate of Joanne Siegel)_246 filed by Plaintiffs Laura Siegel Larson, Laura Siegel Larson, Counter Defendants Laura Siegel Larson, Laura Siegel Larson. (Toberoff, Marc) (Entered: 07/07/2013) |
| 06/18/2013 | <u>254</u> | AMENDED JUDGMENT by Judge Otis D. Wright, II: This Court now enters an amended final judgment based on DCs Fourth Counterclaim in two of three long–running Superman cases presently before this Court: (1) the Superman case; and (2) the Superboy case. In the parties October 19, 2001 settlement agreement, Larson (and her family) transfer[red] all of [their] rights to DC, resulting in 100% ownership to D.C. Comics, effective October 19, 2001. Declaration of Daniel M. Petrocelli (Petrocelli Decl.) Ex. B, at 21; Larson, 2013 WL 1113259, at *1. This complete transfer on October 19, 2001, bars certain of Larsons remaining claims in this case and entitles DC to judgment on its Fourth Counterclaim, which seeks a declaration confirming the October 19, 2001 settlement agreement against Larson. The remaining claims are granted, denied, or dismissed as set forth below. Therefore: RE: Plaintiffs Claims (Superman, Case No. CV–04–8400) IT IS ORDERED AND ADJUDGED that Plaintiffs First Claim for Relief in the Superman case, for Declaratory Relief re: Termination, is GRANTED, but only to the extent that it sought a declaration that on April 16, 1999, the Siegels validly terminated under the Copyright Act all prior grants, assignments, or transfers by Jerome Siegel to any of the Defendants, or their predecessors–in–interest, of the renewal copyrights in and to Action Comics, No. 1, as well as Action Comics, No. 4, Superman, No. 1 (pages 36), and the first two weeks of the Superman newspaper strips, and judgment is hereby entered in Plaintiffs favor on this claim as set forth herein. See Superman case, ECF Nos. 293, 560. IT IS FURTHER ORDERED AND ADJUDGED that Plaintiffs Second Claim for Declaratory Relief re: Profits from Recaptured Copyrights, Third Claim for Declaratory Relief re: Use of the Superman Crest, and Fourth Claim forAccounting for Profits in the Superman case are DISMISSED, WITHOUT PREJUDICE, AS MOOT. RE:Plaintiffs Claims (Superboy Case, Case No. CV–04–8776) IT IS ORDERED AND ADJUDGED that Plaintiffs First Claim forCopyright Infringement, Second Claim for Declaratory Relief re: Termination,Third Claim for Violation of the Lanham Act § |

| | | |
|---|---|---|
| | | 43(a)(1)(B), Fourth Claim forViolation of California Business and Professions Code, §§ 17200 et seq., and Fifth Claim for Injunctive Relief in the Superboy case are DISMISSED, WITHOUT PREJUDICE, AS MOOT. RE: DCs Counterclaims (Superman and Superboy Cases) IT IS ORDERED AND ADJUDGED that DCs First Counterclaim, For Declaration That The Superman Notices And The Superboy Notice Are Ineffective,is DENIED WITH PREJUDICE in its entirety in the Superman case and as to Parts(1), (2), and (5) in the Superboy case. See Superman case, ECF Nos. 293, 664(striking parts (3) and (4) from the First Counterclaim in the Superman case).IT IS FURTHER ORDERED AND ADJUDGED that DCs Second Counterclaim, For Declaration That Any Claim By The Siegels For Co−Ownership Of Superman (Including Its Derivative Superboy) Is Barred By The Statute Of Limitations, is DENIED WITH PREJUDICE. See Superman case, ECF No. 293.IT IS FURTHER ORDERED AND ADJUDGED that DCs Fourth Counterclaim, for Declaratory Relief Regarding the [2001 Settlement] Agreement, is GRANTED in part as follows. The Court declares that the parties October 19, 2001 settlement agreement (embodied in Kevin Markss letter of the same date)remains binding and enforceable solely under the terms contained in that agreement. Under that agreement, Larson and her family transferred to DC, worldwide and in perpetuity, any and all rights, title, and interest, including all copyright interests, that they had in Superman and Superboy, effective October 19, 2001. Petrocelli Decl. Ex. B, at 19, 21; Larson, 2013 WL 1113259, at *12. Judgment is hereby entered in DCs favor and against Larson on this counterclaim. IT IS FURTHER ORDERED that DCs Third, Fifth, and Sixth Counterclaims are DISMISSED, WITHOUT PREJUDICE, AS MOOT. (lc) (Entered: 06/18/2013) |
| 06/18/2013 | 253 | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS MOTION TO AMEND THECOURTS APRIL 18, 2013 JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(e) 250 by Judge Otis D. Wright, II: The Court will not withdraw Section B of its March 20, 2013 summary−judgment order. The Court determines that Section Bfinding that the 2001 Agreement remains an enforceable contract because Larson had not rescinded it and DC had not abandoned itis a necessary prerequisite to the Courts subsequent finding in Section C that the still−valid Agreement had operated to transfer the Siegels Superman rights to DC (the continued legal effect of which depends on the continued enforceability of the Agreement). But, for the well−articulated reasons set forth on pages 19:9 to 22:9 of Plaintiffs moving papers, the Court will enterPlaintiffs proposed amended judgment in Case Nos. 04−CV−8400 and 04−CV−8776. (lc) (Entered: 06/18/2013) |
| 06/17/2013 | 252 | REPLY MOTION to Alter Judgment re Judgment,,,,,,, 243 . *Plaintiff's Motion For Amendment Of The Court's April 18, 2013 Judgment Pursuant To Fed. R. Civ. P. 59(e)* 250 filed by Plaintiffs Laura Siegel Larson, Laura Siegel Larson, Counter Defendants Laura Siegel Larson, Laura Siegel Larson. (Toberoff, Marc) (Entered: 06/17/2013) |
| 06/05/2013 | 251 | OPPOSITION re: MOTION to Alter Judgment re Judgment,,,,,,, 243 . *Plaintiff's Motion For Amendment Of The Court's April 18, 2013 Judgment Pursuant To Fed. R. Civ. P. 59(e)* 250 filed by Defendant DC Comics, Counter Claimant DC Comics. (Petrocelli, Daniel) (Entered: 06/05/2013) |
| 05/16/2013 | 250 | NOTICE OF MOTION AND MOTION to Alter Judgment re Judgment,,,,,,, 243 . *Plaintiff's Motion For Amendment Of The Court's April 18, 2013 Judgment Pursuant To Fed. R. Civ. P. 59(e)* filed by Plaintiff Laura Siegel Larson(an individual), Laura Siegel Larson(as personal representaive of the Estate of Joanne Siegel), Laura Siegel Larson(as personal representative of the Estate of jJanne Siegel). Motion set for hearing on 7/1/2013 at 01:30 PM before Judge Otis D. Wright II. (Attachments: # 1 Proposed Order, # 2 Proposed Judgment)(Toberoff, Marc) (Entered: 05/16/2013) |
| 05/16/2013 | 249 | DECLARATION of Patrick T. Perkins re Reply (Motion related), 248 filed by Defendant DC Comics, Counter Claimant DC Comics. (Petrocelli, Daniel) (Entered: 05/16/2013) |
| 05/14/2013 | 248 | REPLY in support of APPLICATION to the Clerk to Tax Costs against plaintiff and counter defendant Laura Siegel Larson(an individual), Laura Siegel Larson(as |

| | | personal representaive of the Estate of Joanne Siegel) 246 filed by Defendant DC Comics, Counter Claimant DC Comics. (Attachments: #1 Declaration of Brian Pearl)(Petrocelli, Daniel) (Entered: 05/14/2013) |
|---|---|---|
| 05/10/2013 | 247 | Objection re: APPLICATION to the Clerk to Tax Costs against plaintiff and counter defendant Laura Siegel Larson(an individual), Laura Siegel Larson(as personal representaive of the Estate of Joanne Siegel) 246 filed by Plaintiffs Laura Siegel Larson, Laura Siegel Larson, Counter Defendants Laura Siegel Larson, Laura Siegel Larson. (Attachments: #1 Declaration of Marc Toberoff)(Toberoff, Marc) (Entered: 05/10/2013) |
| 05/02/2013 | 246 | APPLICATION to the Clerk to Tax Costs against plaintiff and counter defendant Laura Siegel Larson(an individual), Laura Siegel Larson(as personal representaive of the Estate of Joanne Siegel) filed by defendant and counter claimant DC Comics. Application set for hearing on 5/17/2013 at 01:00 PM before Clerk of Court. (Attachments: #1 CV−59 Proposed Bill of Costs, #2 Declaration of Matthew T. Kline in Support of, #3 Exhibits A through C, #4 Exhibits D through F, #5 Exhibit G, #6 Declaration of Wayne M. Smith in Support of)(Petrocelli, Daniel) (Entered: 05/02/2013) |
| 04/22/2013 | 244 | REPORT ON THE DETERMINATION OF AN ACTION Regarding a Copyright. (Closing) Mailed Closing Report to Copyright Office. (Attachments: #1 judgment) (lc) (Entered: 04/22/2013) |
| 04/18/2013 | 245 | APPEAL RECORD RETURNED from 9th CCA RECEIVED 6 voluminous documents Transcripts(s): 2 [See document for item numbers] (car) (Entered: 04/22/2013) |
| 04/18/2013 | 243 | FINAL JUDGMENT IN THE SIEGEL SUPERBOY CASE by Judge Otis D. Wright, II: A. LARSON'S CLAIMS: IT IS ORDERED AND ADJUDGED that Larsons First Claim for Relief, for Copyright Infringement, is DENIED, and judgment is hereby entered in DCs favor and against Larson on this claim. IT IS FURTHER ORDERED AND ADJUDGED that Larsons Second Claim for Relief, for Declaratory Relief re: Termination, is DENIED, and judgment is hereby entered in DCs favor and against Larson on this claim. IT IS FURTHER ORDERED AND ADJUDGED that Larsons Third Claim for Relief, for Violation of the Lanham Act § 43(a)(1)(B), is DENIED, and judgment is hereby entered in DCs favor and against Larson on this claim.IT IS FURTHER ORDERED AND ADJUDGED that Larsons Fourth Claim for Relief, for Violation of California Business and Professions Code, §§ 17200 et seq., is DENIED, and judgment is hereby entered in DCs favor and against Larson on this claim.IT IS FURTHER ORDERED AND ADJUDGED that Larsons Fifth Claimfor Relief, for Injunctive Relief, is DENIED, and judgment is hereby entered inDCs favor and against Larson on this claim. B. DC'S COUNTERCLAIMS: IT IS ORDERED AND ADJUDGED that DCs Fourth Counterclaim, for Declaratory Relief Regarding the [2001 Settlement] Agreement, is GRANTED, and judgment is hereby entered in DCs favor and against Larson on this counterclaim. The Court declares that, under the parties October 19, 2001 settlement agreement, Larson and her family transferred to DC, worldwide and in perpetuity, any and all rights, title, and interest, including all copyright interests,that they may have in Superman, Superboy, and Spectre.IT IS ACCORDINGLY FURTHER ORDERED that DCs First, Second, Third, Fifth, and Sixth Counterclaims are DISMISSED, WITHOUT PREJUDICE, AS MOOT. (MD JS−6, Case Terminated). (lc) (Entered: 04/19/2013) |
| 04/18/2013 | 242 | ORDER GRANTING DEFENDANTS MOTION FOR SUMMARY JUDGMENT RE: SUPERBOY AND THE SUPERMAN ADS 222 . A judgment will issue by Judge Otis D. Wright, II .(lc). Modified on 4/18/2013 (lc). (Entered: 04/18/2013) |
| 04/10/2013 | 241 | APPEAL RECORD RETURNED from 9th CCA. Received: Volume(s): 8 through 11; RE: Appeal Record Sent to USCA (A−26) 215 . (dmap) (Entered: 04/10/2013) |
| 04/04/2013 | 240 | Supplemental BRIEF filed by Plaintiff Laura Siegel Larson(an individual), Laura Siegel Larson(as personal representative of the Estate of Joanne Siegel), Laura Siegel Larson(as personal representative of the Estate of jJanne Siegel). *Court−Ordered Supplemental Brief Re: Effect of the Court's March 20, 2013 Order on the "Ads" and "Superboy" Terminations* regarding Order on Motion for |

**ER 4000**

| | | |
|---|---|---|
| | | Summary Judgment,,,, 235 . (Attachments: # 1 Declaration of Keith Adams, # 2 Declaration of Laura Siegel Larson)(Toberoff, Marc) (Entered: 04/04/2013) |
| 04/04/2013 | 239 | SUPPLEMENTAL BRIEF filed by Defendant and Counterclaimant DC Comics. regarding Order on Motion for Summary Judgment,,,, 235 . (Petrocelli, Daniel) (Entered: 04/04/2013) |
| 04/04/2013 | 238 | DECLARATION of Daniel M. Petrocelli re Order on Motion for Summary Judgment,,,, 235 filed by Defendant DC Comics, Counter Claimant DC Comics. (Attachments: # 1 Exhibit 1–10, # 2 Exhibit 11 [Part 1 of 3], # 3 Exhibit 11 [Part 2 of 3], # 4 Exhibit 11 [Part 3 of 3], # 5 Exhibit 12–15, # 6 Exhibit 16–21, # 7 Exhibit 22–31, # 8 Exhibit 32–36, # 9 Exhibit 37–39, # 10 Exhibit 40–58, # 11 Exhibit 59, # 12 Exhibit 60 [Part 1 of 2], # 13 Exhibit 60 [Part 2 of 2], # 14 Exhibit 61–64, # 15 Exhibit 65–66, # 16 Exhibit 67, # 17 Exhibit 68–69)(Petrocelli, Daniel) (Entered: 04/04/2013) |
| 03/22/2013 | 237 | ORDER by Judge Otis D. Wright, II, re Stipulation 236 the parties shallelectronically file their supplemental briefs in response to this Courts March 20, 2013, summary judgment ruling by no later than 5:00 p.m. on Thursday, April 4,2013. (lc) (Entered: 03/22/2013) |
| 03/21/2013 | 236 | Joint STIPULATION to Continue Continue Deadline for Court–Ordered Supplemental Brief from March 28, 2013 to April 4, 2013 Re: Order on Motion for Summary Judgment,,,, 235 filed by Defendant and Counterclaimant DC Comics. (Attachments: # 1 Proposed Order)(Petrocelli, Daniel) (Entered: 03/21/2013) |
| 03/20/2013 | 235 | ORDER GRANTING IN PART DEFENDANTS MOTION FOR SUMMARY JUDGMENT 222 AND ORDERING FURTHER BRIEFING by Judge Otis D. Wright, II: The parties are therefore ORDERED to file supplemental briefs addressing how the Courts holding that the October 19 agreement remains binding and enforceable today affects the parties respective rights to Superboy and the Superman ad works. The briefs should not exceed 15 pages in length and should devote particular attention to the relevant factual and procedural history with respect to these works, including the continued effect various earlier rulings by the Court have on these claims today. The briefs must also include a brief proposal for swift resolution of the Superboy and Superman ad issues should the Court find that the October 19 agreement does not extend to these works. The parties shall submit all documents on which they rely as exhibits. The parties supplemental briefs are due no later than 5:00 p.m. on Thursday, March 28, 2013 . (lc). Modified on 3/20/2013. (lc). (Entered: 03/20/2013) |
| 03/18/2013 | 234 | Sur–Reply In Opposition to re: MOTION for Summary Judgment 222 *Plaintiff's Court–Authorized Sur–Reply* filed by Plaintiffs Laura Siegel Larson, Laura Siegel Larson, Counter Defendants Laura Siegel Larson, Laura Siegel Larson. (Toberoff, Marc) (Entered: 03/18/2013) |
| 03/12/2013 | 233 | ORDER GRANTING PLAINTIFFS LEAVE TO FILE A SUR–REPLY by Judge Otis D. Wright, II. Plaintiff is therefore granted leave to file a sur–reply no longer thant 5 pages in length to respond to any arguments addressed in Defendants' Reply. Should she choose to file a sure–reply, Plaintiff must to so no later than Monday, March 18, 2013., (bp) (Entered: 03/12/2013) |
| 03/08/2013 | 232 | RESPONSE filed by Defendant DC Comics, Counter Claimant DC Comicsto Objection/Opposition (Motion related), 228 */DC Comics' Response to Plaintiff's Statement of Genuine Issues and Additional Facts [228–1]* (Petrocelli, Daniel) (Entered: 03/08/2013) |
| 03/08/2013 | 231 | NOTICE of Change of Attorney Information for attorney Marc Toberoff counsel for Plaintiffs Laura Siegel Larson, Laura Siegel Larson, Counter Defendants Laura Siegel Larson, Laura Siegel Larson.Pablo D. Arredondo is no longer attorney of record for the aforementioned party in this case for the reason indicated in the G–06 Notice. Filed by Plaintiff Laura Siegel Larson (Toberoff, Marc) (Entered: 03/08/2013) |
| 03/08/2013 | 230 | NOTICE of Change of Attorney Information for attorney Marc Toberoff counsel for Plaintiffs Laura Siegel Larson, Laura Siegel Larson, Counter Defendants Laura Siegel Larson, Laura Siegel Larson.David Harris is no longer attorney of record for |

| | | the aforementioned party in this case for the reason indicated in the G–06 Notice. Filed by Plaintiff Laura Siegel Larson (Toberoff, Marc) (Entered: 03/08/2013) |
|---|---|---|
| 03/08/2013 | 229 | REPLY in support of MOTION for Summary Judgment 222 filed by Defendant DC Comics, Counter Claimant DC Comics. (Attachments: # 1 Declaration of Matthew T. Kline, # 2 Exhibit A–F to Declaration of Matthew T. Kline)(Petrocelli, Daniel) (Entered: 03/08/2013) |
| 03/04/2013 | 228 | Opposition re: MOTION for Summary Judgment 222 filed by Plaintiffs Laura Siegel Larson, Laura Siegel Larson, Counter Defendants Laura Siegel Larson, Laura Siegel Larson. (Attachments: # 1 Statement of Genuine Issues, # 2 Declaration of Keith Adams and Exhibits 1–25)(Toberoff, Marc) (Entered: 03/04/2013) |
| 02/25/2013 | 227 | STATUS REPORT *Joint Status Report Re: The Superman and Superboy Cases Pursuant to the Court's February 1, 2013, Order* filed by Defendant DC Comics, Counter Claimant DC Comics. (Petrocelli, Daniel) (Entered: 02/25/2013) |
| 02/08/2013 | 226 | ORDER GRANTING PLAINTIFFS EX PARTE APPLICATION TO CONTINUE OPPOSITION ANDHEARING DATES RE: MOTIONS FOR SUMMARY JUDGMENT (Case No. CV–08776, 223 by Judge Otis D. Wright, II: The Court CONTINUES the noticed hearing date (and all associated briefing dates) on Defendants motions for summary judgment in the Superman and Superboy cases (Case No. 04–CV–08400, ECF No. 702; Case No. 04–CV–08776, 222 to March 25, 2013. Plaintiffs opposition is therefore due no later than March 4, and Defendants reply (if any) is due no later than March 11. Nevertheless, the Court hereby VACATES the hearing on these motions, and no appearances will be necessary unless otherwise ordered by the Court on a later date. The Court will likewise vacate all March 11 hearing dates in all related Superman matters (Case Nos. 04–CV–08400, 04–CV–8776, and 10–CV–03633) in a forthcoming minute order. No appearances will be necessary on any pending motions in any of these matters unless otherwise ordered by the Court. All other briefing schedules related to all other pending motions remain fixed. (lc) (Entered: 02/08/2013) |
| 02/08/2013 | 225 | REPLY in support of EX PARTE APPLICATION to Continue Opposition and Hearing Dates from March 11, 2013 to March 25, 2013 Re: MOTION for Summary Judgment 222 EX PARTE APPLICATION to Continue Opposition and Hearing Dates from March 11, 2013 to March 25, 2013 Re: MOTION for Summary Judgment 222 223 filed by Plaintiffs Laura Siegel Larson, Laura Siegel Larson, Counter Defendants Laura Siegel Larson, Laura Siegel Larson. (Toberoff, Marc) (Entered: 02/08/2013) |
| 02/08/2013 | 224 | Opposition re: EX PARTE APPLICATION to Continue Opposition and Hearing Dates from March 11, 2013 to March 25, 2013 Re: MOTION for Summary Judgment 222 EX PARTE APPLICATION to Continue Opposition and Hearing Dates from March 11, 2013 to March 25, 2013 Re: MOTION for Summary Judgment 222 223 filed by Defendant DC Comics, Counter Claimant DC Comics. (Attachments: # 1 Declaration of Matthew T. Kline, # 2 Exhibit A–F to Declaration of Matthew T Kline)(Petrocelli, Daniel) (Entered: 02/08/2013) |
| 02/07/2013 | 223 | EX PARTE APPLICATION to Continue Opposition and Hearing Dates from March 11, 2013 to March 25, 2013 Re: MOTION for Summary Judgment 222 filed by plaintiff and counterclaim defendant Laura Siegel Larson(an individual), Laura Siegel Larson(as personal representaive of the Estate of Joanne Siegel), Laura Siegel Larson(as personal representative of the Estate of jJanne Siegel). (Attachments: # 1 Declaration of Keith Adams and Exhibits A–D, # 2 Proposed Order)(Toberoff, Marc) (Entered: 02/07/2013) |
| 02/07/2013 | 222 | NOTICE OF MOTION AND MOTION for Summary Judgment filed by Defendant DC Comics. Motion set for hearing on 3/11/2013 at 01:30 PM before Judge Otis D. Wright II. (Attachments: # 1 Declaration of Daniel M. Petrocelli, # 2 Exhibit A–D to Declaration of Daniel M. Petrocelli, # 3 Proposed Statement of Uncontroverted Facts and Conclusions of Law, # 4 Proposed Order, # 5 Proposed Final Judgment)(Petrocelli, Daniel) (Entered: 02/07/2013) |
| 02/01/2013 | 221 | MINUTE ORDER IN CHAMBERS by Judge Otis D. Wright, II:In light of the recent rulings from the Ninth Circuit and various other appeals still pending before |

|  |  | the Ninth Circuit, the parties are hereby directed to file a joint status report providing the Court with a concise procedural history of this case and a summary of the current state of affairs in each of the above titled actions no later than 1/25/2013. (see document for specific requirements). (lc) (Entered: 02/01/2013) |
|---|---|---|
| 01/25/2013 | 220 | NOTICE of Change of Attorney Information for attorney Marc Toberoff counsel for Plaintiffs Laura Siegel Larson, Laura Siegel Larson, Counter Defendants Laura Siegel Larson, Laura Siegel Larson. Adding David Harris as attorney as counsel of record for Laura Siegel Larson for the reason indicated in the G–06 Notice. Filed by plaintiff and counter defendant Laura Siegel Larson (Toberoff, Marc) (Entered: 01/25/2013) |
| 01/25/2013 | 219 | NOTICE of Change of Attorney Information for attorney Marc Toberoff counsel for Plaintiffs Laura Siegel Larson, Laura Siegel Larson, Counter Defendants Laura Siegel Larson, Laura Siegel Larson. Changing e–mail for attorney Pablo D. Arredondo to parredondo@toberoffandassociates.com. Filed by plaintiff and counter defendant Laura Siegel Larson (Toberoff, Marc) (Entered: 01/25/2013) |
| 01/25/2013 | 218 | NOTICE of Change of Attorney Information for attorney Marc Toberoff counsel for Plaintiffs Laura Siegel Larson, Laura Siegel Larson, Counter Defendants Laura Siegel Larson, Laura Siegel Larson. Changing e–mail for attorney Keith G. Adams to kadams@toberoffandassociates.com. Filed by plaintiff and counter defendant Laura Siegel Larson (Toberoff, Marc) (Entered: 01/25/2013) |
| 01/25/2013 | 217 | NOTICE of Change of Attorney Information for attorney Marc Toberoff counsel for Plaintiffs Laura Siegel Larson, Laura Siegel Larson, Counter Defendants Laura Siegel Larson, Laura Siegel Larson. Changing e–mail for attorney Marc Toberoff to mtoberoff@toberoffandassociates.com. Filed by plaintiff and counter defendant Laura Siegel Larson (Toberoff, Marc) (Entered: 01/25/2013) |
| 11/02/2012 | 216 | RECORD ON APPEAL sent to Circuit Court re: Appeal number: Related to 11–55863 Record consists of Six volumes, 2 transcripts. (dmap) (Entered: 11/02/2012) |
| 11/02/2012 | 215 | RECORD ON APPEAL sent to Circuit Court re: Appeal number: Case related to 11–55863. The record consists of Four volumes. (dmap) (Entered: 11/02/2012) |
| 06/21/2012 | 214 | ORDER by Judge Otis D Wright, II: granting 213 unopposed APPLICATION of Patrick T. Perkins to Withdraw as Attorney for Defendants Time Warner Inc., Warner Communications Inc., Warner Bros. Entertainment Inc., and Warner Bros. Television Production Inc., and Defendant and Counterclaimant DC Comics (lc) (Entered: 06/21/2012) |
| 06/13/2012 | 213 | APPLICATION of Patrick T. Perkins to Withdraw as Attorney *for Defendants* filed by Defendants DC Comics. (Attachments: # 1 Proposed Order)(Perkins, Patrick) (Entered: 06/13/2012) |
| 03/12/2012 | 212 | NOTICE of Change of address by Marc Toberoff attorney for Plaintiffs Laura Siegel Larson, Laura Siegel Larson, Counter Defendants Laura Siegel Larson, Laura Siegel Larson. Changing attorneys address to 22337 Pacific Coast Highway, #348 Malibu, CA 90265. Filed by Plaintiffs Laura Siegel Larson, Laura Siegel Larson, Counter Defendants Laura Siegel Larson, Laura Siegel Larson. (Attachments: # 1 G–06 Keith G. Adams, # 2 G–06 Pablo D. Arredondo)(Toberoff, Marc) (Entered: 03/12/2012) |
| 02/24/2012 |  | Notice of Electronic Filing re Notice of Change of Attorney Information (G–06), Notice of Change of Attorney Information (G–06) 211 , Notice of Change of Attorney Information (G–06), Notice of Change of Attorney Information (G–06) 210 e–mailed to jeffrey.b.linden@disney.com bounced due to unknown address. Primary e–mail address corrected. Notice of Electronic Filing resent addressed to jeffrey.b.linden@gmail.com. Pursuant to the General Order and Local Rules it is the attorneys obligation to maintain all personal contact information including e–mail address in the CM/ECF system. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY.(tyw) TEXT ONLY ENTRY (Entered: 02/27/2012) |

| 02/24/2012 | 211 | NOTICE of Change of Attorney Information for attorney Marc Toberoff counsel for Plaintiffs Laura Siegel Larson, Laura Siegel Larson, Counter Defendants Laura Siegel Larson, Laura Siegel Larson. Adding Pablo D. Arredondo as attorney as counsel of record for Laura Siegel Larson, Laura Siegel Larson for the reason indicated in the G–06 Notice. Filed by Plaintiff Laura Siegel Larson (Toberoff, Marc) (Entered: 02/24/2012) |
|---|---|---|
| 02/24/2012 | 210 | NOTICE of Change of Attorney Information for attorney Marc Toberoff counsel for Plaintiffs Laura Siegel Larson, Laura Siegel Larson, Counter Defendants Laura Siegel Larson, Laura Siegel Larson. Adding Keith G. Adams as attorney as counsel of record for Laura Siegel Larson, Laura Siegel Larson for the reason indicated in the G–06 Notice. Filed by Plaintiff Laura Siegel Larson (Toberoff, Marc) (Entered: 02/24/2012) |
| 12/09/2011 | 209 | NOTICE of Change of address by Marc Toberoff attorney for Plaintiffs Laura Siegel Larson, Laura Siegel Larson, Counter Defendants Laura Siegel Larson, Laura Siegel Larson. Changing attorneys address to 22631 Pacific Coast Highway #348, Malibu, California 90265. Filed by Plaintiffs Laura Siegel Larson, Laura Siegel Larson, Counter Defendants Laura Siegel Larson, Laura Siegel Larson. (Toberoff, Marc) (Entered: 12/09/2011) |
| 05/23/2011 | 208 | ORDER by Judge Otis D Wright, II, granting Stipulation 207 to SUBSTITUTE Laura Siegel Larson as plaintiff and counter defendant for Joanne Siegel Pursuant to Fed. R. Civ. P. 25(a). (lc) Modified on 5/23/2011 (lc). (Entered: 05/23/2011) |
| 05/18/2011 | 207 | Joint STIPULATION to SUBSTITUTE Laura Siegel Larson for Joanne Siegel Pursuant to Fed. R. Civ. P. 25(a) filed by Plaintiff Laura Siegel Larson. (Attachments: # 1 Proposed Order)(Toberoff, Marc) (Entered: 05/18/2011) |
| 02/19/2011 | 206 | STATEMENT Re: Death of a Party filed by Plaintiff Laura Siegel Larson (Williamson, Nicholas) (Entered: 02/19/2011) |
| 09/10/2010 | 205 | OBJECTIONS to Response (non–motion), Response (non–motion) 204 filed by Plaintiffs Laura Siegel Larson, Joanne Siegel. (Toberoff, Marc) (Entered: 09/10/2010) |
| 09/09/2010 | 204 | RESPONSE filed by Defendants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, Warner Communications Inc, Counter Claimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Incto Objections – non–motion, 203 (Petrocelli, Daniel) (Entered: 09/09/2010) |
| 09/07/2010 | 203 | OBJECTIONS to Statement, 202 of Defendants' Position in Advance of the September 27, 2010 Hearing filed by Plaintiffs Laura Siegel Larson, Joanne Siegel. (Attachments: # 1 Declaration of Marc Toberoff, # 2 Exhibits A–I)(Toberoff, Marc) (Entered: 09/07/2010) |
| 08/30/2010 | 202 | STATEMENT of Defendants' Position in Advance of September 27, 2010 Hearing re: Approach for Resolving the Remaining Issues in These Cases filed by Defendants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Counter Claimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc (Attachments: # 1 Exhibit A to Statement of Defendants' Position, # 2 Exhibit B to Statement of Defendants' Position)(Petrocelli, Daniel) (Entered: 08/30/2010) |
| 08/26/2010 | 201 | NOTICE of Change of Attorney Information for attorney Cassandra L Seto counsel for Defendants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, Warner Communications Inc, Counter Claimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc. Adding Cassandra Seto as attorney as counsel of record for Time Warner Inc., Warner Communications Inc., Warner Bros. Entertainment Inc., Warner Bros. Television Production Inc., and DC Comics for the reason indicated in the G–06 Notice. Filed by Defendants Time Warner Inc., Warner Communications Inc., Warner Bros. Entertainment Inc., Warner Bros. Television Production Inc., and DC Comics (Seto, Cassandra) (Entered: 08/26/2010) |
| 08/26/2010 | 200 | NOTICE of Change of Attorney Information for attorney Matthew T Kline counsel for Defendants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, |

| | | |
|---|---|---|
| | | Warner Brothers Television Production Inc, Warner Communications Inc, Counter Claimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc. Adding Matthew T. Kline as attorney as counsel of record for Time Warner Inc., Warner Communications Inc., Warner Bros. Entertainment Inc., Warner Bros. Television Production Inc., and DC Comics for the reason indicated in the G–06 Notice. Filed by Defendants Time Warner Inc., Warner Communications Inc., Warner Bros. Entertainment Inc., Warner Bros. Television Production Inc., and DC Comics (Kline, Matthew) (Entered: 08/26/2010) |
| 08/25/2010 | 199 | Joint STIPULATION for Review of Relevant Briefing and Docket Entries re Status Conference, 198 filed by Defendants and Counterclaim Plaintiff DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Brothers Television Production Inc, Warner Communications Inc.(Petrocelli, Daniel) (Entered: 08/25/2010) |
| 08/13/2010 | 198 | MINUTES OF Status Conference held before Judge Otis D Wright, II: Case called, appearances made. The Court confers with counsel re case status. Counsel is required to provide the Court with docket numbers of all the outstanding motions. Any outstanding motions that have been briefed, argued, and under submission stands submitted and will be ruled on. Court Reporter: Kathie Thibodeaux. (yl) (Entered: 08/13/2010) |
| 07/22/2010 | 197 | ORDER by Judge Otis D Wright, II, re Stipulation that Plaintiffs Joanne Siegel and Laura Siegel Larson and Defendants Time Warner Inc., Warner Communications Inc., Warner Entertainment Inc., Warner Bros. Television Production Inc., and DC Comics will submit an updated joint status report in the above–entitled cases on or before August 6, 2010, and will appear for a status conference in the above–entitled cases on August 13, 2010 at2:00 p.m. (lc) (Entered: 07/22/2010) |
| 02/26/2010 | 196 | ORDER by Judge Otis D Wright, II: granting 192 Fross Zelnick Lehrman and Zissu to withdraw as counsel for Application to Withdraw as Attorney for Defendants and Counterclaimant DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Brothers Television Production Inc, Warner Communications Inc. Attorney James D Weinberger and Roger L Zissu terminated (lc) Modified on 5/28/2010 (lc). (Entered: 03/01/2010) |
| 02/23/2010 | 195 | ORDER by Judge Otis D Wright, II Granting Stipulation to Substitute Attorney Daniel Petrocelli 185 , 186 , 187 , 188 , 189 for Warner Brothers Entertainment, Inc., DC Comics, and Time Warner, Inc., in place of attorneys Michael Bergman, Anjani Mandavia and Adam Hagen (mg) (Entered: 02/24/2010) |
| 02/23/2010 | 194 | ORDER by Judge Otis D Wright, II Granting Substituting attorney Daniel M Petrocelli for Warner Bros Entertainment Inc in place and stead of attorney Michael Bergman and Adam Beriah Hagen, Anjani Mandavia. (lc) (Entered: 02/24/2010) |
| 02/23/2010 | 193 | ORDER by Judge Otis D Wright, II Granting Substituting attorney Daniel M Petrocelli for Warner Brothers Television Production Inc in place and stead of attorney Michael Bergman and Adam Beriah Hagen Anjani Mandavia. (lc) (Entered: 02/24/2010) |
| 02/18/2010 | 192 | APPLICATION of Fross Zelnick Lehrman &Zissu, P.C. to Withdraw as Attorney *for Defendants and Counterclaimant* filed by Defendants and Counterclaimant DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Brothers Television Production Inc, Warner Communications Inc. (Attachments: # 1 Proposed Order Granting Application)(Weinberger, James) (Entered: 02/18/2010) |
| 02/18/2010 | 191 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: MOTION of Fross Zelnick Lehrman &Zissu, P.C. to Withdraw as Attorney *for Defendants and Counterclaimant and [Proposed] Order* MOTION of Fross Zelnick Lehrman &Zissu, P.C. to Withdraw as Attorney *for Defendants and Counterclaimant and [Proposed] Order* 190 . The following error(s) was found: Incorrect event selected.Proposed Document was not submitted as a separate attachment.Other error(s) with document(s) are specified below. The correct event is: Application to withdraw as counsel (pdf in not a true motion with heaing date). |

| | | Other error(s) with document(s): combined format of motion with order on last page; all proposed orders are to be formally prepared and submitted as a separate attachment to main document.. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (lc) (Entered: 02/18/2010) |
|---|---|---|
| 02/17/2010 | 190 | NOTICE OF MOTION AND MOTION of Fross Zelnick Lehrman &Zissu, P.C. to Withdraw as Attorney *for Defendants and Counterclaimant and [Proposed] Order* filed by Defendants and counterclaimant DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Brothers Television Production Inc, Warner Communications Inc. (Weinberger, James) (Entered: 02/17/2010) |
| 02/16/2010 | 189 | STIPULATION to Substitute attorney Daniel Petrocelli in place of attorney Michael Bergman filed by defendants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc. (Attachments: # 1 Proposed Order re DC Comics)(Hagen, Adam) (Entered: 02/16/2010) |
| 02/16/2010 | 188 | STIPULATION to Substitute attorney Daniel Petrocelli in place of attorney Michael Bergman filed by defendants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc. (Attachments: # 1 Proposed Order re Time Warner Inc.)(Hagen, Adam) (Entered: 02/16/2010) |
| 02/16/2010 | 187 | STIPULATION to Substitute attorney Daniel Petrocelli in place of attorney Michael Bergman filed by defendants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc. (Attachments: # 1 Proposed Order re Warner Communications Inc.)(Hagen, Adam) (Entered: 02/16/2010) |
| 02/16/2010 | 186 | STIPULATION to Substitute attorney Daniel Petrocelli in place of attorney Michael Bergman filed by defendants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc. (Attachments: # 1 Supplement re Warner Bros. Television Prod. Inc.)(Hagen, Adam) (Entered: 02/16/2010) |
| 02/16/2010 | 185 | STIPULATION to Substitute attorney Daniel Petrocelli in place of attorney Michael Bergman filed by defendants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc. (Attachments: # 1 Proposed Order re Warner Bros. Entertainment Inc.)(Hagen, Adam) (Entered: 02/16/2010) |
| 12/21/2009 | 184 | STATUS REPORT *Joint Status Report* filed by Counter Claimant DC Comics, Defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (Hagen, Adam) (Entered: 12/21/2009) |
| 12/02/2009 | 183 | MINUTES OF IN CHAMBERS ORDER held before Judge Otis D Wright, II: The parties are hereby directed to file a joint status report that provides the Court with a concise procedural history of this case. Status Report due by 12/21/2009. (rne) (Entered: 12/02/2009) |
| 12/02/2009 | 182 | STANDING ORDER REGARDING NEWLY ASSIGNED CASES by Judge Otis D Wright, II: READ THIS ORDER CAREFULLY. IT CONTROLS THIS CASE AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES. (rne) (Entered: 12/02/2009) |
| 12/02/2009 | 181 | MINUTES OF IN CHAMBERS ORDER held before Judge Otis D Wright, II: This action has been reassigned to the Honorable Otis D. Wright II, United States District Judge. The magistrate judges assignment remains the same. Please substitute the initials ODW in place of the initials SGL. The case number will now read: CV 04−8776 ODW(RZx). (rne) (Entered: 12/02/2009) |
| 11/20/2009 | 180 | NOTICE OF REASSIGNMENT OF CASE due to Unavailability of Judicial Officer filed. The previously assigned District Judge is no longer available. Pursuant to directive of the Chief District Judge and in accordance with the rules of this Court, the case has been returned to the Clerk for reassignment. This case has been reassigned to Judge Otis D Wright, II for all further proceedings. Case number will now read CV 04−08776 ODW (RZx). (kg) (Entered: 11/20/2009) |

| 01/16/2009 | 178 | NOTICE OF FILING TRANSCRIPT filed for proceedings 1/14/09; 1:32 pm (Lanza, Theresa) (Entered: 01/16/2009) |
|---|---|---|
| 01/16/2009 | 177 | TRANSCRIPT for proceedings held on 1/14/09; 1:32 pm. Court Reporter: Theresa Lanza, phone number www.theresalanza.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 2/6/2009. Redacted Transcript Deadline set for 2/17/2009. Release of Transcript Restriction set for 4/16/2009. (Lanza, Theresa) (Entered: 01/16/2009) |
| 01/15/2009 | 179 | RECEIPT FOR EXHIBITS submitted to Exhibits Custodian filed. Submitted to Custodian on 1/15/2009. (gg) (Entered: 01/16/2009) |
| 09/02/2008 | 176 | NOTICE of Change of Attorney Information for attorney Marc Toberoff counsel for Plaintiffs Joanne Siegel, Laura Siegel Larson. Changing FIRM NAME to Toberoff &Associates, P.C.. Filed by Plaintiffs Joanne Siegel and Laura Siegel Larson (Toberoff, Marc) (Entered: 09/02/2008) |
| 03/31/2008 | 175 | MINUTES OF IN CHAMBERS ORDER DENYING AS MOOT PARTIES CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT IN CV–04–8776 CASE; ORDER REQUIRING PARTIES TO ENGAGE IN MEANINGFUL SETTLEMENT NEGOTIATIONS; ORDER SETTING PRE–TRIAL AND TRIAL DATES; ORDER STAYING RULING ON OUTSTANDING ISSUES CONTAINED IN JULY 27, 2007, ORDER PENDING SETTLEMENT DISCUSSIONS held before Judge Stephen G. Larson : re: MOTION for Partial Summary Judgment 131 , and MOTION for Partial Summary Judgment 116 . Jury Trial set in the Superman case for 11/4/2008 at 09:30 AM before Judge Stephen G. Larson. Pretrial Conference set in the Superman case for 10/6/2008 at 11:00 AM before Judge Stephen G. Larson. (mrgo) (Entered: 04/02/2008) |
| 03/26/2008 | 174 | ORDER by Judge Stephen G. Larson: ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS MOTION FOR PARTIAL SUMMARY JUDGMENT [re MOTION for Partial Summary Judgment 131 , MOTION for Partial Summary Judgment 116 (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit # 7 Exhibit) (jh) (Entered: 03/26/2008) |
| 01/30/2008 | 173 | NOTICE of Change of Attorney Information for attorney James D Weinberger counsel for Counter Claimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Communications Inc, Warner Communications Inc, Defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. Justin Deabler will no longer receive service of documents from the Clerks Office for the reason indicated in the G–06 Notice.Justin Deabler is no longer attorney of record for the aforementioned party in this case for the reason indicated in the G–06 Notice. Filed by Defendants and counterclaimant Time Warner Inc. et al. (Weinberger, James) (Entered: 01/30/2008) |
| 12/13/2007 | 172 | NOTICE of Change of Attorney Information: David L Burg is no longer attorney of record in this case for the reason indicated in the G–06 Notice. Filed by defendants Laura Siegel Larson, Joanne Siegel, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics (cbr) (Entered: 01/16/2008) |
| 11/16/2007 | 171 | MINUTES OF IN CHAMBERS ORDER RE SCHEDULING OF CASE NO. CV04–8400–SGL (RZx) held before Judge Stephen G. Larson : The Court has received and reviewed the parties' stipulation re: scheduling order, filed on November 15, 2007. The parties stipulate and agree to continue certain scheduling dates in Case No. CV 04–8400–SGL (RZx), the "Superman" case. The Court declines to adopt the proposed dates provided by the parties. On its own motion, the Court hereby sets the following dates in CV 04–8400–SGL (RZx): Motions in Limine to be filed by 2/11/2008. Last date to conduct settlement conference is 1/16/2008. Final Pretrial Conference set for 2/25/2008 at 11:00 AM before Judge Stephen G. Larson. Jury Trial set for 3/11/2008 at 09:30 AM before Judge Stephen G. Larson. (mrgo) (Entered: 11/19/2007) |

| 09/17/2007 | 170 | MINUTES RE OUTSTANDING Discovery Matters held before Stephen G. Larson : Except as set forth below, discovery in these matters is ORDERED closed: 1) Bryan Singer is ORDERED to sit for a deposition by no later than 11/30/07; plaintiff Laura Siegel Larson is ORDERED to sit for a deposition by no later than 10/9/07; defendant DC Comics is ORDERED to produce the "reserve account document" to plaintiffs on or before 9/21/07; defendants are ORDERED to produce to plaintiffs all requested "ultimates" by 9/21/07; plaintiff's EX PARTE APPLICATION for Order for Modifying Court's 8/13/07 Scheduling Order is GRANTED in part in that plaintiffs are afforded until 10/9/07, to complete their damages–related audit of defendants Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Production Ind and DC Comics. (See document for further specifics)Court Reporter: Theresa Lanza.(mrgo) (Entered: 09/19/2007) |
|---|---|---|
| 09/11/2007 | 169 | OBJECTION to Plaintiffs' Supplemental Brief 166 filed by Counter Claimants, Defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (ad) (Entered: 09/13/2007) |
| 09/10/2007 | 168 | DECLARATION of James Steranko in support of Supplemental Brief submitted Pursuant to the Court's 7/27/07 Order 166 filed by Counter Defendants, Plaintiffs Joanne Siegel, Laura Siegel Larson. (ad) (Entered: 09/13/2007) |
| 09/10/2007 | 167 | DECLARATION of Mark Evanier in support of Supplemental Brief submitted Pursuant to the Court's 7/27/07 Order 166 filed by Counter Defendants, Plaintiffs Joanne Siegel, Laura Siegel Larson. (ad) (Entered: 09/13/2007) |
| 09/10/2007 | 166 | SUPPLEMENTAL BRIEF submitted Pursuant to the Court's 7/27/07 Order 151 filed by plaintiffs and counter defendants Laura Siegel Larson, Joanne Siegel. (ad) (Entered: 09/13/2007) |
| 09/10/2007 | 165 | PROOF OF SERVICE filed by defendants and counter claimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Warner Brothers Television Production Inc, re Supplemental Memorandum of Points and Authorities 155 and supporting documents 7 Notices of Lodging 162 , 164 , 160 , 158 , 163 , 159 , 161 , 2 Declarations 156 , 157 , served on 9/10/07. (ad) (Entered: 09/13/2007) |
| 09/10/2007 | 164 | NOTICE OF LODGING Exhibit G to the Declaration of Michael Bergman in support of Supplemental Memorandum of Points and Authorities on Derivative Work Issue 155 filed by defendants and counter claimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Warner Brothers Television Production Inc. (ad) (Entered: 09/13/2007) |
| 09/10/2007 | 163 | NOTICE OF LODGING Exhibit F to the Declaration of Michael Bergman in support of Supplemental Memorandum of Points and Authorities on Derivative Work Issue 155 filed by defendants and counter claimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Warner Brothers Television Production Inc. (ad) (Entered: 09/13/2007) |
| 09/10/2007 | 162 | NOTICE OF LODGING Exhibit E to the Declaration of Michael Bergman in support of Supplemental Memorandum of Points and Authorities on Derivative Work Issue 155 filed by defendants and counter claimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Warner Brothers Television Production Inc. (ad) (Entered: 09/13/2007) |
| 09/10/2007 | 161 | NOTICE OF LODGING Exhibit D to the Declaration of Michael Bergman in support of Supplemental Memorandum of Points and Authorities on Derivative Work Issue 155 filed by defendants and counter claimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Warner Brothers Television Production Inc. (ad) (Entered: 09/13/2007) |
| 09/10/2007 | 160 | NOTICE OF LODGING Exhibit C to the Declaration of Michael Bergman in support of Supplemental Memorandum of Points and Authorities on Derivative Work Issue 155 filed by defendants and counter claimants DC Comics, Time |

| | | Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Warner Brothers Television Production Inc. (ad) (Entered: 09/13/2007) |
|---|---|---|
| 09/10/2007 | 159 | NOTICE OF LODGING Exhibit B to the Declaration of Michael Bergman in support of Supplemental Memorandum of Points and Authorities on Derivative Work Issue 155 filed by defendants and counter claimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Warner Brothers Television Production Inc. (ad) (Entered: 09/13/2007) |
| 09/10/2007 | 158 | NOTICE OF LODGING Exhibit A to the Declaration of Michael Bergman in support of Supplemental Memorandum of Points and Authorities on Derivative Work Issue 155 filed by defendants and counter claimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Warner Brothers Television Production Inc. (ad) (Entered: 09/13/2007) |
| 09/10/2007 | 157 | DECLARATION of Michael Bergman in support of Supplemental Memorandum of Points and Authorities on Derivative Work Issue 155 filed by Counter Claimants, Defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (ad) (Entered: 09/13/2007) |
| 09/10/2007 | 156 | DECLARATION of Expert Jeff Rovin Offered in connection with Supplemental Memorandum of Points and Authorities on Derivative Work Issue 155 filed by Counter Claimants, Defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (ad) (Entered: 09/13/2007) |
| 09/10/2007 | 155 | SUPPLEMENTAL MEMORANDUM of Points and Authorities filed by defendants and counter claimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, on Derivative Work Issue Pursuant to Court's 7/27/07 Order Granting defendants' motion for reconsideration 151 . (ad) (Entered: 09/13/2007) |
| 09/06/2007 | | DOCUMENT number 155, Notice of Ex Parte Application of Non–Party for Order deleted for the following reason: docket entry belongs to case CV 04–8400 (ad).(la) (Entered: 09/13/2007) |
| 08/08/2007 | 154 | MINUTES OF IN CHAMBERS ORDER held before Judge Stephen G. Larson. The Joint Stipulation to continue the hearing date on plaintiffs' MOTION to Compel 133 and plaintiffs' MOTION to Compel 137 is DENIED. The hearing on those 2 discovery motions remains calendared for 8/13/07, at 10:00am. The Joint Stipulation to continue the hearing date on plaintiffs' MOTION to Compel 130 is also DENIED; however, in lieu of hearing the matter on 8/13/07, the hearing on this motion is VACATED and the Court will decide the motion based on the papers submitted and the transcript of the hearing before Judge Zarefsky. (mrgo) (Entered: 08/10/2007) |
| 08/08/2007 | 153 | TRANSCRIPT filed for proceedings held on 5/14/07, am session. Court Reporter: Exceptional Reporting Services, Inc. (ml) (Entered: 08/09/2007) |
| 08/06/2007 | 152 | MINUTES: (IN CHAMBERS) ORDER RESCHEDULING PARTIES CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT IN CV–04–9776–SGL(RZx) MATTER. In light of the unresolved issues identified in the Courts 7/27/07, Order Granting Defendants Motion for Reconsideration, the Court hereby re–schedules the parties cross–motions for partial summary judgment in the CV08–8776 SGL(RZx) matter to be heard on 9/10/07, at 10:00 AM in Courtroom One. The parties cross–motion for partial summary judgment in the CV04–8400SGL(RZx) matter (as well as the discovery motions identified in the Courts 7/31/07, minute order) remain on calendar for a hearing on 8/13/07 at 10:00 AM in Courtroom One. IT IS SO ORDERED, by Judge Stephen G. Larson. (de) (Entered: 08/07/2007) |
| 07/27/2007 | 151 | ORDER by Judge Stephen G. Larson GRANTING defendants' MOTION for Reconsideration re Order on Motion for Partial Summary Judgment, 85 103 . |

| | | |
|---|---|---|
| | | Consistent with this holding, the Court VACATES the following portions of the 3/23/06, Order: (See document for specifics). (mrgo) (Entered: 07/30/2007) |
| 07/11/2007 | 150 | MINUTES: ORDER GRANTING DEFENDANTS EX PARTE APPLICATION 201 TO CONTINUE HEARING DATE. For good cause shown, the Court GRANTS defendants ex parte application to continue the 7/23/07, hearing date. However, the hearing on the parties cross–motions is continued to 8/13/07 at 10:00 AM in Courtroom One, a date well after when the state court trial should be concluded. The continuance of the hearing date on the parties cross–motions for partial summary judgment does not affect the previously set dates in this case (See document for details.) IT IS SO ORDERED, by Judge Stephen G. Larson. (de) (Entered: 07/13/2007) |
| 06/27/2007 | 149 | NOTICE OF ERRATA filed by Defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. correcting Reply in support of MOTION for Partial Summary Judgment 144 (am) (Entered: 07/02/2007) |
| 06/25/2007 | 148 | REPLY declaration of Marc Toberoff in support of plaintiffs' MOTION for Partial Summary Judgment 131 filed by Counter Defendants Laura Siegel Larson, Joanne Siegel, Plaintiffs Joanne Siegel, Laura Siegel Larson. (mrgo) (Entered: 06/26/2007) |
| 06/25/2007 | 147 | DECLARATION of Michael Bergman in support of defendants' reply in support of MOTION for Partial Summary Judgment 116 filed by Counter Claimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo) (Entered: 06/26/2007) |
| 06/25/2007 | 146 | OBJECTIONS to evidence presented in plaintiffs' opposition to defendants' re: MOTION for Partial Summary Judgment 116 filed by Counter Claimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo) (Entered: 06/26/2007) |
| 06/25/2007 | 145 | RESPONSES TO PLAINTIFFS' EVIDENTIARY OBJECTIONS IN OPPOSITION to defendants' MOTION for Partial Summary Judgment 116 filed by Counter Claimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo) (Entered: 06/26/2007) |
| 06/25/2007 | 144 | REPLY in support of MOTION for Partial Summary Judgment 116 filed by Counter Claimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo) (Entered: 06/26/2007) |
| 06/25/2007 | 143 | STATEMENT OF GENUINE ISSUES IN OPPOSITION to plaintiffs' MOTION for Partial Summary Judgment 131 filed by Counter Defendants Laura Siegel Larson, Joanne Siegel, Plaintiffs Joanne Siegel, Laura Siegel Larson. (mrgo) (Entered: 06/26/2007) |
| 06/25/2007 | 142 | EVIDENTIARY OBJECTIONS to defendants' opposition to MOTION for Partial Summary Judgment 131 filed by Counter Defendants Laura Siegel Larson, Joanne Siegel, Plaintiffs Joanne Siegel, Laura Siegel Larson. (mrgo) (Entered: 06/26/2007) |
| 06/25/2007 | 141 | REPLY memorandum of points and authorities in support of MOTION for Partial Summary Judgment 131 filed by Counter Defendants Laura Siegel Larson, Joanne Siegel, Plaintiffs Joanne Siegel, Laura Siegel Larson. (mrgo) (Entered: 06/26/2007) |
| 05/29/2007 | 140 | PROOF OF SERVICE filed by defendants and counterclaimants DC Comics, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, re Declaration (Motion related), Declaration (Motion related) 138 , Motion Related Document, 139 , MEMORANDUM in Opposition to Motion 135 , Declaration (Motion related) 136 , Statement (Motion |

**ER 4010**

| | | related), Statement (Motion related) 137 were served on 5/29/07. (mrgo, ) (Entered: 05/30/2007) |
|---|---|---|
| 05/29/2007 | 139 | NOTICE OF LODGING OF EXHIBIT N TO DECLARATON OF MICHAEL BERGMAN in opposition to plaintiffs' MOTION for Partial Summary Judgment 131 filed by Counter Claimant DC Comics, Defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo, ) (Entered: 05/30/2007) |
| 05/29/2007 | 138 | DECLARATION of Michael Bergman in opposition to plaintiffs' MOTION for Partial Summary Judgment 131 filed by Counter Claimant DC Comics, Defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo, ) (Entered: 05/30/2007) |
| 05/29/2007 | 137 | STATEMENT of GENUINE ISSUES OF MATERIAL FACT AND CONCLUSIONS OF LAW in opposition to plaintiffs' MOTION for Partial Summary Judgment 131 filed by Counter Claimant DC Comics, Defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, DC Comics. (mrgo, ) (Entered: 05/30/2007) |
| 05/29/2007 | 136 | DECLARATION of Paul Levitz in opposition to plaintiffs' MOTION for Partial Summary Judgment 131 filed by Counter Claimant DC Comics, Defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, DC Comics. (mrgo, ) (Entered: 05/30/2007) |
| 05/29/2007 | 135 | Opposition to plaintiffs' MOTION for Partial Summary Judgment 131 filed by Counter Claimant DC Comics, Defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, DC Comics. (mrgo, ) (Entered: 05/30/2007) |
| 05/22/2007 | 134 | TRANSCRIPT filed for proceedings held on 04/30/2007. Court Reporter: Exceptional Reporting Services.Tape Number: CS. (ry, ) (Entered: 05/25/2007) |
| 04/30/2007 | 133 | DECLARATION of Marc Toberoff in support of MOTION for Partial Summary Judgment 131 filed by plaintiffs and counterclaim defendants Laura Siegel Larson, Joanne Siegel, Joanne Siegel, Laura Siegel Larson. (mrgo, ) (Entered: 05/09/2007) |
| 04/30/2007 | 132 | MEMORANDUM of points and authorities in Support of MOTION for Partial Summary Judgment 131 filed by plaintiffs and counterclaim defendants Laura Siegel Larson, Joanne Siegel, Joanne Siegel, Laura Siegel Larson. (mrgo, ) (Entered: 05/09/2007) |
| 04/30/2007 | 131 | NOTICE OF MOTION AND MOTION for Partial Summary Judgment filed by plaintiffs and counterclaim defendants Laura Siegel Larson, Joanne Siegel, Joanne Siegel, Laura Siegel Larson. Motion set for hearing on 7/16/2007 at 10:00 AM before Judge Stephen G. Larson. Lodged statement of uncontroverted facts and order. (mrgo, ) (Entered: 05/09/2007) |
| 04/30/2007 | 130 | PROOF OF SERVICE filed by defendants and counterclaimant DC Comics, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics, re Declaration (Motion related), Declaration (Motion related) 119 , Declaration (Motion related), Declaration (Motion related) 120 , MOTION for Partial Summary Judgment 116 , Motion Related Document, 127 , Motion Related Document, 123 , Motion Related Document, 129 , Declaration (Motion related), Declaration (Motion related) 121 , Declaration (Motion related), Declaration (Motion related) 122 , Declaration (Motion related), Declaration (Motion related) 124 , Declaration (Motion related), Declaration (Motion related) 117 , Declaration (Motion related), Declaration (Motion related) 125 , Motion Related Document, 126 , Declaration (Motion related), Declaration (Motion related) 118 , Motion Related Document, 128 , were served on 4/30/07. (mrgo, ) (Entered: 05/02/2007) |
| 04/30/2007 | 129 | NOTICE OF LODGING OF NON–PAPER EXHIBIT H TO DECLARATION OF MELINDA HAGE in support of defendants' MOTION for Partial Summary Judgment 116 filed by defendants and counterclaimant DC Comics, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner |

| | | |
|---|---|---|
| | | Brothers Television Production Inc, DC Comics. (mrgo, ) (Entered: 05/02/2007) |
| 04/30/2007 | 128 | NOTICE OF LODGING OF NON–PAPER EXHIBIT F TO DECLARATION OF MELINDA HAGE in support of defendants' MOTION for Partial Summary Judgment 116 filed by defendants and counterclaimant DC Comics, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo, ) (Entered: 05/02/2007) |
| 04/30/2007 | 127 | NOTICE OF LODGING OF NON–PAPER EXHIBIT D TO DECLARATION OF MELINDA HAGE in support of defendants' MOTION for Partial Summary Judgment 116 filed by defendants and counterclaimant DC Comics, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo, ) (Entered: 05/02/2007) |
| 04/30/2007 | 126 | NOTICE OF LODGING OF NON–PAPER EXHIBIT B TO DECLARATION OF MELINDA HAGE in support of defendants' MOTION for Partial Summary Judgment 116 filed by defendants and counterclaimant DC Comics, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo, ) (Entered: 05/02/2007) |
| 04/30/2007 | 125 | DECLARATION of Michael Bergman in support of defendants' MOTION for Partial Summary Judgment 116 filed by defendants and counterclaimant DC Comics, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo, ) (Entered: 05/02/2007) |
| 04/30/2007 | 124 | LOCAL RULE 7–17 DECLARATION of Michael Bergman in support of defendants' MOTION for Partial Summary Judgment 116 filed by defendants and counterclaimant DC Comics, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo, ) (Entered: 05/02/2007) |
| 04/30/2007 | 123 | NOTICE OF LODGING OF EXHIBIT X TO DECLARATION OF MICHAEL BERGMAN in support of defendants' MOTION for Partial Summary Judgment 116 filed by defendants and counterclaimant DC Comics, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo, ) (Entered: 05/02/2007) |
| 04/30/2007 | 122 | DECLARATION of Jeff Rovin in support of defendants' MOTION for Partial Summary Judgment 116 filed by defendants and counterclaimant DC Comics, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo, ) (Entered: 05/02/2007) |
| 04/30/2007 | 121 | DECLARATION of Mark Rose in support of defendants' MOTION for Partial Summary Judgment 116 filed by defendants and counterclaimant DC Comics, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo, ) (Entered: 05/02/2007) |
| 04/30/2007 | 120 | DECLARATION of Julie Spencer in support of defendants' MOTION for Partial Summary Judgment 116 filed by defendants and counterclaimant DC Comics, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo, ) (Entered: 05/02/2007) |
| 04/30/2007 | 119 | DECLARATION of Janice Cannon in support of defendants' MOTION for Partial Summary Judgment 116 filed by defendants and counterclaimant DC Comics, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo, ) (Entered: 05/02/2007) |
| 04/30/2007 | 118 | DECLARATION of Paul Levitz in support of defendants' MOTION for Partial Summary Judgment 116 filed by defendants and counterclaimant DC Comics, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo, ) (Entered: 05/02/2007) |

| 04/30/2007 | 117 | DECLARATION of Melinda Hage in support of defendants' MOTION for Partial Summary Judgment 116 filed by defendants and counterclaimant DC Comics, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo, ) (Entered: 05/02/2007) |
|---|---|---|
| 04/30/2007 | 116 | NOTICE OF MOTION AND MOTION for Partial Summary Judgment filed by defendants and counterclaimant DC Comics, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. Memorandum of points and authorities; Schedules A &B in support. Motion set for hearing on 7/16/2007 at 10:00 AM before Judge Stephen G. Larson. Lodged orders. (mrgo, ) (Entered: 05/02/2007) |
| 04/20/2007 | <u>115</u> | ORDER granting plaintiff's ex parte application [lodged 4–17–07] by Judge Stephen G. Larson: summary judgment filing cutoff 4/30/07, opposition brief due 5/28/07, and reply brief due 6/18/07. [Set Deadlines:, ORDER by Judge Stephen G. Larson, re Stipulation and Order. Set Deadlines/Hearings, <u>90</u> Motions due by 4/30/2007. (jh, ) (Entered: 04/20/2007) |
| 04/17/2007 | 114 | DECLARATION of Marc Toberoff in support of EX PARTE APPLICATION to Amend/Correct 113 filed by plaintiff and counterdefendants Laura Siegel Larson, Joanne Siegel, Joanne Siegel, Laura Siegel Larson. (mrgo, ) (Entered: 04/20/2007) |
| 04/17/2007 | 113 | EX PARTE APPLICATION and Order Modifying the Parties' Summary Judgment Briefing Schedule filed by plaintiff and counterdefendant Laura Siegel Larson, Joanne Siegel, Joanne Siegel, Laura Siegel Larson. Lodged order. (mrgo, ) (Entered: 04/20/2007) |
| 02/12/2007 | <u>112</u> | MINUTES OF Motion Hearing held before Judge Stephen G. Larson RE: defendant and counter–claimants MOTION for Reconsideration re Order on Motion for Partial Summary Judgment, Order on Motion for Summary Judgment, 85 103 . Court hears oral arguement and takes the matter under submission.Court Reporter: Theresa Lanza. (mrgo, ) (Entered: 02/21/2007) |
| 02/05/2007 | 111 | REPLY Memorandum of points and authorities in support of MOTION for Reconsideration re Order on Motion for Partial Summary Judgment,, Order on Motion for Summary Judgment, 85 103 filed by defendants and counterclaimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (mrgo, ) (Entered: 02/08/2007) |
| 02/01/2007 | 110 | NOTICE OF ERRATA filed by Counter Defendants Laura Siegel Larson, Joanne Siegel, Plaintiffs Joanne Siegel, Laura Siegel Larson correcting Response in Opposition to Motion, 109 .(mrgo, ) (Entered: 02/07/2007) |
| 01/29/2007 | 109 | OPPOSITION to defendants MOTION for Reconsideration re Order on Motion for Partial Summary Judgment,, Order on Motion for Summary Judgment, 85 103 filed by defendants and counterclaim defendants Laura Siegel Larson, Joanne Siegel, Joanne Siegel, Laura Siegel Larson. (mrgo, ) (Entered: 01/30/2007) |
| 01/29/2007 | 108 | DECLARATION of Marc Toberoff in support of plaintiffs opposition to defendants MOTION for Reconsideration re Order on Motion for Partial Summary Judgment, Order on Motion for Summary Judgment, 85 103 filed by plaintiffs and counterclaim defendants Laura Siegel Larson, Joanne Siegel, Joanne Siegel, Laura Siegel Larson. (Volume II) (mrgo, ) (Entered: 01/30/2007) |
| 01/29/2007 | 107 | DECLARATION of Marc Toberoff in support of opposition to defendants MOTION for Reconsideration re Order on Motion for Partial Summary Judgment, Order on Motion for Summary Judgment, 85 103 filed by plaintiffs and counterclaim defendants Laura Siegel Larson, Joanne Siegel, Joanne Siegel, Laura Siegel Larson. (Volume I) (mrgo, ) (Entered: 01/30/2007) |
| 01/16/2007 | <u>106</u> | MINUTES OF IN CHAMBERS ORDER held before Judge Stephen G. Larson: MOTION for Reconsideration re Order on Motion for Partial Summary Judgment 85 103 will be heard on 2/12/2007 at 10:00 AM before Judge Stephen G. Larson.Court Reporter: None. (la, ) (Entered: 01/17/2007) |

| 01/16/2007 | 105 | APPENDIX of relevant New York cases submitted in support of MOTION for Reconsideration re Order on Motion for Partial Summary Judgment,, Order on Motion for Summary Judgment, 85 103 filed by Defendants and Counterclaimant DC Comics, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (la, ) (Entered: 01/17/2007) |
| --- | --- | --- |
| 01/16/2007 | 104 | APPENDIX of documents submitted in support of MOTION for Reconsideration re Order on Motion for Partial Summary Judgment,, Order on Motion for Summary Judgment, 85 103 filed by Defendants and Counterclaimant DC Comics, Warner Bros Television Inc, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, DC Comics. (la, ) (Entered: 01/17/2007) |
| 01/16/2007 | 103 | NOTICE OF MOTION AND MOTION for Reconsideration re Order on Motion for Partial Summary Judgment,, Order on Motion for Summary Judgment, 85 , Memorandum of Points and Authorities, exhibits in support filed by Defendants and counterclaimant DC Comics, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. Motion set for hearing on 2/5/2007 at 10:00 AM before Judge Stephen G. Larson. (la, ) (Entered: 01/17/2007) |
| 12/12/2006 | 102 | MINUTES OF IN CHAMBERS ORDER held before Judge Stephen G. Larson: The Court's Minute Order of 11/28/06 is hereby modified as follows: The reference to the dates setting the Non−expert discovery cutoff and Expert cutoff are vacated, as the Court previously approved and will maintain such dates as set forth in the Stipulation and Order filed 11/15/06 in both cases referenced above. All other dates referenced in the 11/28/06 order remain as stated therein. (am, ) (Entered: 12/13/2006) |
| 11/28/2006 | 101 | MINUTES OF Status Conference held before Judge Stephen G. Larson : A status conference was held on 11/27/06. The defendants requested relief from the Courts rule regarding the filing of multiple summary judgment motions. The Court denied this request, but granted a waiver of the page limitation on such motions. The page limitation is waived as to plaintiffs as well. (See document for specifics)Court Reporter: Theresa Lanza. (mrgo, ) (Entered: 11/30/2006) |
| 11/13/2006 | 100 | MINUTE ORDER (IN CHAMBERS) by Judge Stephen G. Larson: ?Counsel and/or parties are hereby notified that a Status Conference requiring mandatory appearances is hereby set down on calendar on November 27, 2006, at 11:00 a.m., in Courtroom #1 of the above−referenced court. IT IS SO ORDERED.[Set Deadlines/Hearings: Status Conference set for 11/27/2006 11:00 AM before Judge Stephen G. Larson.Court Reporter: none. (jh, ) (Entered: 11/13/2006) |
| 11/07/2006 | 99 | STANDING ORDER by Judge Stephen G. Larson. (See document for details.)(la, ) (Entered: 11/07/2006) |
| 10/30/2006 | 98 | ORDER TO REASSIGN CASE due to self−recusal pursuant to Section 3.2 of General Order 224 by Judge Margaret M. Morrow. Case transferred to the calendar of Judge Stephen G. Larson for all further proceedings. Case number now reads as CV 04−8776 SGL (RZx).(rn, ) (Entered: 10/30/2006) |
| 10/18/2006 | 97 | ORDER TO REASSIGN CASE due to self−recusal pursuant to Section 3.2 of General Order 224 by Judge S. James Otero. Case transferred to the calendar of Judge Margaret M. Morrow for all further proceedings. Case number now reads as CV 04−8776 MMM (RZx).(rn, ) (Entered: 10/19/2006) |
| 10/10/2006 | 96 | ORDER TO REASSIGN CASE due to self−recusal pursuant to Section 3.2 of General Order 224 by Judge Percy Anderson. Case transferred to the calendar of Judge S. James Otero for all further proceedings. Case number now reads as CV 04−8776 SJO (RZx).(rn, ) (Entered: 10/10/2006) |
| 09/20/2006 | 95 | ORDER RETURNING CASE FOR REASSIGNMENT by Judge Ronald S.W. Lew. ORDER case returned to the Clerk for random reassignment pursuant to General Order 224. Case randomly reassigned from Judge Ronald S.W. Lew to Judge Percy Anderson for all further proceedings. The case number will now reflect the initials of the transferee Judge CV 04−8776 PA (RZx).(rn, ) (Entered: 09/20/2006) |

| 06/29/2006 | 94 | STIPULATION AND ORDER by Judge Ralph Zarefsky Re: Discovery Dispute: DCs Interrogatory No. 1 is withdrawn and will not be counted against DCs allotted number of interrogatories as set forth in Fed.R.Civ.P. 33(d). In place of withdrawn Interrogatory No. 1, the following Interrogatory (New Interrogatory No. 1) shall be considered served on plaintiffs: (see document for details). (mg, ) (Entered: 06/29/2006) |
| --- | --- | --- |
| 05/22/2006 | 93 | ORDER by Judge Ronald S.W. Lew denying defendants MOTION to Certify this Courts Order for Immediate Appeal 88 (mg, ) (Entered: 05/23/2006) |
| 05/15/2006 | 92 | REPLY MEMORANDUM of points and authorities in support of MOTION to Certify Order of 3/24/06 for Immediate Appeal 88 filed by defendants / counterclaimants (mg, ) (Entered: 05/22/2006) |
| 05/08/2006 | 91 | OPPOSITION to Defendants' Motion to Certify Order for Appeal Under 28 U.S.C. Section 1292(b) 88 filed by Plaintiffs Joanne Siegel and Laura Siegel Larson. (gk, ) (Entered: 05/17/2006) |
| 04/26/2006 | 90 | STIPULATION AND ORDER by Judge Ronald S.W. Lew: It Is Hereby Ordered that the 4/29/05 scheduling order be modified as follows: Non–expert Discovery cut–off: 11/17/2006. Motions due by 3/19/2007. Pretrial Conference set for 5/21/2007 at 11:00 AM. Jury Trial set for 6/26/2007 at 09:00 AM before Judge Ronald S.W. Lew. (mg, ) (Entered: 04/26/2006) |
| 04/25/2006 | 89 | JOINT STIPULATION AND ORDER by Judge Ronald S.W. Lew that the briefing schedule for defendants MOTION to Certify Order of 3/24/06 for immediate appeal 88 is modified as follows: Opposition due by 5/8/2006; Reply due by 5/15/2006. Motion set for hearing on 5/22/2006 at 09:00 AM before Judge Ronald S.W. Lew.(mg, ) Modified on 4/26/2006 (mg, ). (Entered: 04/26/2006) |
| 04/18/2006 | 88 | MOTION to Certify Order of March 24, 2006 for immediate appeal; Memorandum of points and authorities in support thereof; filed by defendants. Motion set for hearing on 5/8/2006 at 09:00 AM before Judge Ronald S.W. Lew. (mg, ) (Entered: 04/26/2006) |
| 04/05/2006 | 87 | STIPULATION RE: PROTECTIVE ORDER by Judge Ronald S.W. Lew (mg, ) (Entered: 04/05/2006) |
| 03/23/2006 | 86 | STATEMENT of uncontroverted facts and conclusions of law in support of MOTION for Partial Summary Judgment 51 filed by plaintiffs and counterclaim defendants Laura Siegel Larson, Joanne Siegel (mg, ) (Entered: 03/27/2006) |
| 03/22/2006 | 84 | NOTICE OF CLERICAL ERROR: Due to clerical error, Non–Public Entry #82 was erroneously issued an item control number. No such number exists. (kd) (Entered: 03/22/2006) |
| 03/21/2006 | 83 | NOTICE of Change of Attorney Information: adding Marc Toberoff as attorney as counsel of record for Joanne Siegel and Laura Siegel Larson for the reason indicated in the G–06 Notice. Filed by Plaintiffs Joanne Siegel, Laura Siegel Larson (yl, ) (Entered: 03/22/2006) |
| 03/20/2006 | 81 | MINUTES OF Motion Hearing held before Judge Ronald S.W. Lew: Court and counsel confer. The Court takes the following motions UNDER SUBMISSION: MOTION for Partial Summary Judgment 51 and MOTION for Summary Judgment 55 The Court's order will issue. Court Reporter: Sheri Kleeger. (kd) (Entered: 03/22/2006) |
| 03/15/2006 | 80 | DEFENDANTS NOTICE OF ERRATA Regarding Citations in Summary Judgment Memoranda 55 filed by Defendants and Counterclaimants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (yl, ) (Entered: 03/21/2006) |
| 03/10/2006 | 79 | DECLARATION of Marc Toberoff in support of Partial Summary Judgment 51 filed by Plaintiffs and Counterdefendants Laura Siegel Larson, Joanne Siegel, Joanne Siegel, Laura Siegel Larson. (shb, ) (Entered: 03/17/2006) |
| 03/10/2006 | 78 | Plaintiff's REPLY in Support of MOTION for Partial Summary Judgment 51 filed by Plaintiffs and Counterdefendants Laura Siegel Larson, Joanne Siegel, Joanne Siegel, Laura Siegel Larson. (shb, ) (Entered: 03/17/2006) |

| 03/10/2006 | 77 | REPLY DECLARATION of Roger L Zissu in further Support of Defendants' MOTION for Summary Judgment 55 filed by endants and Counterclaimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (shb, ) (Entered: 03/17/2006) |
|---|---|---|
| 03/10/2006 | 76 | REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANTS' MOTION for Summary Judgment 55 filed by Defendants and Counterclaimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (shb, ) (Entered: 03/17/2006) |
| 03/08/2006 | <u>74</u> | JOINT STIPULATION AND ORDER REGARDING Extension of Plaintiffs and Defendants Time to file Reply Briefs by Judge Ronald S.W. Lew : The parties by their counsel hereby stipulate and agree to the following: The time for Plaintiffs and Defendants to file their reply briefs in support of their respective summary judgment motion is hereby extended two days until Friday, March 10, 2006. The parties rationale is that this short extension until March 10, 2006 should not materially interfere with the Court's review of the motion papers since the hearing is not schedued until March 20, 2006. SO ORDERED.(yl, ) (Entered: 03/08/2006) |
| 03/01/2006 | 75 | Defendant's Local Rulde 56.1 STATEMENT of Disputed Facts and Conclusions of Law in Opposition to Plaintiff's MOTION for Partial Summary Judgment 51 filed by Defendants and Counterclaimants Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc. (shb, ) (Entered: 03/16/2006) |
| 03/01/2006 | 73 | PROOF OF SERVICE filed by Defendants and Counterclaimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics, re MEMORANDUM in Opposition to Motion, 70 , Motion Related Document,, 71 , Response (non–motion), Response (non–motion) 72 , Declaration (Motion related), Declaration (Motion related) 69 , was served on 3/1/06. (shb, ) (Entered: 03/06/2006) |
| 03/01/2006 | 72 | Defendants' RESPONSE to Request for Judicial Notice of Related Documents 53 filed by Counter Claimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comicsto (shb, ) (Entered: 03/06/2006) |
| 03/01/2006 | 71 | Defendants' Notice of Lodging of Previously Filed Declaration of Roger L Zissu and Exhibits thereto in Opposition to Plaintiff's Motion for Summary Judgment 51 filed by Defendants and Counterclaimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Laura Siegel Larson, Joanne Siegel, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics, Joanne Siegel. (shb, ) (Entered: 03/06/2006) |
| 03/01/2006 | 70 | Defendants' MEMORANDUM of points and authorities in Opposition to Plaintiff's MOTION for Partial Summary Judgment 51 filed by Defendant and Counterclaimant DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (shb, ) (Entered: 03/06/2006) |
| 03/01/2006 | 69 | DECLARATION of Roger L Zissu in Opposition to Plaintiff's MOTION for Partial Summary Judgment 51 filed by Defendants and Counterclaimants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc, Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television |

| | | |
|---|---|---|
| | | Production Inc, DC Comics. (shb, ) (Entered: 03/06/2006) |
| 03/01/2006 | 68 | DECLARATION of Marc Toberoff in Opposition to Defendants MOTION for Summary Judgment 55 filed by Plaintiffs Joanne Siegel, Laura Siegel Larson. (shb, ) (Entered: 03/06/2006) |
| 03/01/2006 | 67 | Plaintiff Joanne Siegel and Laura Siegel Larson's OPPOSITION to Defendants' MOTION for Summary Judgment 55 filed by Plaintiffs Joanne Siegel, Laura Siegel Larson. (shb, ) (Entered: 03/06/2006) |
| 03/01/2006 | 66 | Plaintiff Joanne Sieel and Laura SIegel Larson's STATEMENT of Genuine Issues in Opposition to Defendants' Motion for Summary Judgment 55 filed by Plaintiffs Joanne Siegel, Laura Siegel Larson. (shb, ) (Entered: 03/06/2006) |
| 02/15/2006 | 65 | PROOF OF SERVICE of NOTICE OF LODGING OF NON–PAPER EXHIBIT H to Declaration of Melinda Hage in support of Defendants MOTION for Summary Judgment 62 , NOTICE OF LODGING OF NON–PAPER EXHIBIT J to Declaration of Melinda Hage in support of Defendants MOTION for Summary Judgment 63 , NOTICE OF LODGING OF NON–PAPER EXHIBIT T to Declaration of Rogert L. Zissu in support of Defendants MOTION for Summary Judgment 64 , MOTION for Summary Judgment 55 , MEMORANDUM OF POINTS AND AUTHORITIES in Support of MOTION for Summary Judgment 56 , Declaration of ROGER L. ZISSU in support of Defendants MOTION for Summary Judgment 57 , Declaration of ROGER L. ZISSU in support of Defendants MOTION for Summary Judgment 58 , NOTICE OF LODGING OF NON–PAPER EXHIBIT H to Declaration of Melinda Hage in support of Defendants MOTION for Summary Judgment 59 , NOTICE OF LODGING OF NON–PAPER EXHIBIT D to Declaration of Melinda Hage in support of Defendants MOTION for Summary Judgment 60 , NOTICE OF LODGING OF NON–PAPER EXHIBIT F to Declaration of Melinda Hage in support of Defendants MOTION for Summary Judgment 61 , was served on 2/15/2006 filed by defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (jp, ) (Entered: 02/22/2006) |
| 02/15/2006 | 64 | NOTICE OF LODGING OF NON–PAPER EXHIBIT T to Declaration of Rogert L. Zissu in support of Defendants MOTION for Summary Judgment 55 filed by defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (jp, ) (Entered: 02/22/2006) |
| 02/15/2006 | 63 | NOTICE OF LODGING OF NON–PAPER EXHIBIT J to Declaration of Melinda Hage in support of Defendants MOTION for Summary Judgment 55 filed by defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (jp, ) (Entered: 02/22/2006) |
| 02/15/2006 | 62 | NOTICE OF LODGING OF NON–PAPER EXHIBIT H to Declaration of Melinda Hage in support of Defendants MOTION for Summary Judgment 55 filed by defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. Lodged (1) Envelope. (jp, ) (Entered: 02/22/2006) |
| 02/15/2006 | 61 | NOTICE OF LODGING OF NON–PAPER EXHIBIT F to Declaration of Melinda Hage in support of Defendants MOTION for Summary Judgment 55 filed by defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. Lodged (1) Envelope. (jp, ) (Entered: 02/22/2006) |
| 02/15/2006 | 60 | NOTICE OF LODGING OF NON–PAPER EXHIBIT D to Declaration of Melinda Hage in support of Defendants MOTION for Summary Judgment 55 filed by defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (jp, ) (Entered: 02/22/2006) |
| 02/15/2006 | 59 | NOTICE OF LODGING OF NON–PAPER EXHIBIT B to Declaration of Melinda Hage in support of Defendants MOTION for Summary Judgment 55 filed by |

| | | defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. Lodged (1) Envelope. (jp, ) (Entered: 02/22/2006) |
|---|---|---|
| 02/15/2006 | 58 | DECLARATION of ROGER L. ZISSU in support of Defendants MOTION for Summary Judgment 55 filed by defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (jp, ) (Entered: 02/22/2006) |
| 02/15/2006 | 57 | DECLARATION of MELINDA HAGE in support of defendants MOTION for Summary Judgment 55 filed by defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (jp, ) (Entered: 02/22/2006) |
| 02/15/2006 | 56 | MEMORANDUM OF POINTS AND AUTHORITIES in Support of MOTION for Summary Judgment 55 filed by defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. (jp, ) (Entered: 02/22/2006) |
| 02/15/2006 | 55 | NOTICE OF MOTION AND MOTION for Summary Judgment filed by Defendants, Counter Claimants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. Motion set for hearing on 3/20/2006 at 09:00 AM before Judge Ronald S.W. Lew. Lodged Proposed Statement and Order. (jp, ) (Entered: 02/22/2006) |
| 02/15/2006 | 54 | DECLARATION of MARC TOBEROFF in support of Plaintiffs MOTION for Partial Summary Judgment 51 filed by Plaintiffs, Counter Defendants Joanne Siegel, Laura Siegel Larson. (jp, ) (Entered: 02/22/2006) |
| 02/15/2006 | 53 | REQUEST FOR JUDICIAL NOTICE in support of MOTION for Partial Summary Judgment 51 filed by Plaintiffs, Counter Defendants Joanne Siegel, Laura Siegel Larson. (jp, ) (Entered: 02/22/2006) |
| 02/15/2006 | 52 | MOTION for Partial Summary Judgment 51 filed by Plaintiffs, Counter Defendants Joanne Siegel, Laura Siegel Larson. (jp, ) (Entered: 02/22/2006) |
| 02/15/2006 | 51 | NOTICE OF MOTION AND MOTION for Partial Summary Judgment; Memoradum of Points and Authorities filed by Plaintiffs, Counter Defendants Joanne Siegel, Laura Siegel Larson. Motion set for hearing on 3/20/2006 at 09:00 AM before Judge Ronald S.W. Lew. Lodged Judgment and Proposed Statement. (jp, ) (Entered: 02/22/2006) |
| 02/14/2006 | 50 | STIPULATION AND ORDER approved by Judge Ronald S.W. Lew: Cross motions for summary judgment due as follows: Moving briefs due 2/15/2006; opposition briefs due 03/01/2006; reply briefs due 03/8/2006; Hearing to be set for 03/20/2006, 9 am. (kd) (Entered: 02/14/2006) |
| 12/01/2005 | 49 | ORDER by Judge Ronald S.W. Lew: granting 48 Application to Appear Pro Hac Vice by Attorney Justin Deabler on behalf of defendants, designating Michael Bergman as local counsel. (mg, ) (Entered: 12/01/2005) |
| 11/30/2005 | | FAX number for Attorney Justin Deabler is 212−813−5901. (mg, ) (Entered: 12/01/2005) |
| 11/30/2005 | 48 | APPLICATION for attorney Justin Deabler to Appear Pro Hac Vice. FEE PAID. filed by defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics. Lodged Order. (mg, ) (Entered: 12/01/2005) |
| 11/04/2005 | 47 | ANSWER to First Amended Counterclaim 44 filed by plaintiff / counterclaim defendant Laura Siegel Larson, Joanne Siegel (mg, ) (Entered: 11/07/2005) |
| 11/01/2005 | 46 | ANSWER to First Amended Supplemental Complaint, 43 filed by defendants Time Warner Inc, Warner Bros Entertainment Inc, Warner Brothers Television Production Inc, DC Comics.(mg, ) (Entered: 11/02/2005) |
| 10/24/2005 | 45 | NOTICE OF ENTRY OF ORDER granting leave to file first supplemental amended complaint and first amended counterclaims filed by defendants / counterclaimants (mg, ) (Entered: 10/26/2005) |

| 10/18/2005 | 44 | FIRST AMENDED COUNTERCLAIMS against counterdefendants Laura Siegel Larson and Joanne Siegel; amending Counterclaim 24 ; filed by counterclaimant DC Comics (mg, ) (Entered: 10/19/2005) |
|---|---|---|
| 10/18/2005 | 43 | FIRST AMENDED SUPPLEMENTAL COMPLAINT against defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Bros Television Production Inc, DC Comics, and Does amending Complaint – (Discovery) 1 ; filed by plaintiffs Joanne Siegel, Laura Siegel Larson (mg, ) (Entered: 10/19/2005) |
| 10/18/2005 | 42 | STIPULATION AND ORDER by Judge Ronald S.W. Lew granting leave to file First Supplemental Amended Complaint and First Amended Counterclaims. (mg, ) (Entered: 10/19/2005) |
| 09/30/2005 | 41 | MINUTES OF IN CHAMBERS ORDER by Judge Ronald S.W. Lew: This action has been reassigned. Please substitute the initials RSWL in place of the initials DDP. It is imperative that the initials RSWL be used on all documents to prevent any delays in processing of documents. The Final Pretrial Conference is set for 08/28/06, 11 am. The Jury Trial is set for 09/05/06, 9 am. This Court is located at: 312 N. Spring Street, Fifth Floor, Courtroom 21, Los Angeles, California, 90012. Court Reporter: Not Present. (kd) (Entered: 09/30/2005) |
| 09/21/2005 | 40 | ORDER by Judge Dean D. Pregerson granting Ex parte application extending time for defendants and counterclaimants to amend their pleadings to 10/17/05 (mg, ) (Entered: 09/22/2005) |
| 09/21/2005 | 39 | ORDER TO REASSIGN CASE due to self–recusal pursuant to Section 3.2 of General Order 224 by Judge Dean D. Pregerson. Case transferred to the calendar of Judge Ronald S.W. Lew for all further proceedings. Case number now reads as CV 04–8776 RSWL (RZx).(rn, ) (Entered: 09/21/2005) |
| 09/14/2005 | 38 | NOTICE of Change of Attorney Information: changing Firm Name and Address to Perkins Law Office, 1711 Route 9D, Cold Spring, New York 10516; Telephone number 845–265–2820; Fax number: 845–265–2819; Email address: pperkins@ptplaw.com for attorney Patrick T. Perkins. Filed by defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, DC Comics (jp, ) (Entered: 09/15/2005) |
| 09/07/2005 | | FAX number for Attorney Adam Hagen is 310–550–7191. (mg, ) (Entered: 09/09/2005) |
| 09/07/2005 | 37 | ANSWER to First Supplemental Complaint – (Discovery) 1 filed by defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc.(mg, ) (Entered: 09/09/2005) |
| 04/29/2005 | 36 | SCHEDULING ORDER by Judge Dean D. Pregerson: Amended Pleadings due by 9/15/2005. Discovery cut–off 5/17/2006. Motions due by 6/19/2006. Pretrial Conference set for 8/28/2006 04:00 PM. Jury Trial set for 9/5/2006 09:00 AM before Honorable Dean D. Pregerson. (mg, ) (Entered: 04/29/2005) |
| 04/19/2005 | 35 | NOTICE OF ENTRY OF ORDER granting defendants and counterclaimants substitution of attorneys filed by defendants Time Warner Inc, Warner Communications Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, DC Comics. (mg, ) (Entered: 04/21/2005) |
| 04/19/2005 | 34 | FIRST SUPPLEMENTAL COMPLAINT, filed by Plaintiffs / Counter Defendants Laura Siegel Larson, Joanne Siegel. Jury Demand. (mg, ) (av). (Entered: 04/20/2005) |
| 04/15/2005 | 33 | STIPULATION AND ORDER by Judge Dean D. Pregerson pursuant to FRCP 15(D) for filing of plaintiffs First Supplemental Complaint – (Discovery) 1 .(mg, ) (Entered: 04/18/2005) |
| 04/14/2005 | 32 | Substitution of Attorney filed. Substituting attorneys Michael Bergman and David L Burg for Warner Communications Inc; Warner Bros Entertainment Inc; Warner Bros Television Inc; DC Comics; and Time Warner Inc in place and stead of attorney David Aaron Grossman by Judge Dean D. Pregerson. (mg, ) (Entered: 04/15/2005) |

| 03/14/2005 | 31 | MINUTES Scheduling Conference held before Judge Dean D. Pregerson: Court and counsel confer re case status. Court sets trial dates. (Refer to the SCHEDULING ORDER to be issued hereager.) Court Reporter: None Present. (jp, ) (Entered: 03/21/2005) |
| 02/18/2005 | 30 | NOTICE OF DISCREPANCY AND ORDER by Judge Dean D. Pregerson, ORDERING Notice of defendants / counterclaimants Motion to consolidate related cases (filed in CV 04–8400) submitted by Defendants, received on 2/9/05 is not to be filed but instead rejected. Denial based on: Submitted with Motion case number CV 04–8400, sharing supporting documents.(mg, ) (Entered: 02/22/2005) |
| 01/26/2005 | 29 | MINUTES (IN CHAMBERS ORDER) by Judge Dean D. Pregerson: Counsel are notified that this action has been transferred to the calendar of Judge Dean D. Pregerson for all further proceedings. On all documents subsequently filed in this case, please substitute the initials DDP after th case number in place of the initials of the prior judge so that the case number will now read: CV 04–8776 DDP (AJWx). Counsel are encouraged to review the Central Districts website: http://www.cacd.uscourts.gov. Court Reporter: None Present. (mg, ) (Entered: 01/27/2005) |
| 01/11/2005 | 28 | REPLY to counterclaims of DC Comics filed by counterdefendants Laura Siegel Larson, Joanne Siegel. Demand for jury trial.(mg, ) (Entered: 01/12/2005) |
| 12/21/2004 | 27 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 224 –Related Case– filed. Related Case No: CV 04–8400 DDP (RZx). Case transfered from Judge Ronald S.W. Lew and Andrew J. Wistrich to Judge Dean D. Pregerson and Ralph Zarefsky for all further proceedings. The case number will now reflect the initials of the transferee Judge CV 04–8776 DDP (RZx).Signed by Judge Dean D. Pregerson (rn, ) (Entered: 12/21/2004) |
| 12/08/2004 | 26 | STIPULATION AND ORDER by Judge Ronald S.W. Lew granting counterdefendants Laura Siegel Larson and Joanne Siegel an extension of time to respond to defendant/counterclaimant DC Comics counterclaims to 1/11/2005 (mg, ) (Entered: 12/09/2004) |
| 11/24/2004 | 25 | PROOF OF SERVICE filed by defendants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc. 23 Certificate of Interested Parties, 24 Answer to Complaint (Discovery), Counterclaim; served on 11/22/04. (mg, ) (Entered: 11/29/2004) |
| 11/22/2004 | 24 | ANSWER to Complaint – (Discovery)_1 and COUNTERCLAIM against Laura Siegel Larson, Joanne Siegel filed by defendants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc.(mg, ) (Entered: 11/24/2004) |
| 11/22/2004 | 23 | NOTICE of Interested Parties filed by Defendants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc. (mg, ) (Entered: 11/24/2004) |
| 11/17/2004 | | PREPARED ORDER RE TRANSFER Pursuant to General Order 224 (Related Case) by Clerk; related to CV 04–8400 DDP (RZx). (rn, ) (Entered: 11/17/2004) |
| 11/16/2004 | 17 | PROOF OF SERVICE filed by defendants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc. Further Notice of Related Cases served on 11/12/04. (mg, ) (Entered: 11/17/2004) |
| 11/15/2004 | 19 | DECLARATION of Marc Toberoff in support of opposition re Notice of Related Case(s) 16 filed by Plaintiffs Laura Siegel Larson, Joanne Siegel. (bg, ) (Entered: 11/18/2004) |
| 11/15/2004 | 18 | OBJECTIONS to Notice of Related Case(s) 16 filed by Plaintiffs Laura Siegel Larson, Joanne Siegel. (bg, ) (Entered: 11/18/2004) |
| 11/12/2004 | 22 | NOTICE of Related Case(s) filed by Defendants Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc. Related Case(s): CV 04 –8400 DDP (rn, ) (Entered: 11/22/2004) |

**ER 4020**

| 11/10/2004 | 21 | DECLARATION of Marc Toberoff in support of opposition re Notice of Related Case(s) 16 filed by Plaintiffs Laura Siegel Larson, Joanne Siegel. (bg, ) (Entered: 11/19/2004) |
|---|---|---|
| 11/10/2004 | 20 | OPPOSITION to Notice of Related Case(s) 16 filed by Plaintiffs Laura Siegel Larson, Joanne Siegel. (bg, ) (Entered: 11/19/2004) |
| 11/09/2004 | 15 | PROOF OF SERVICE Executed by plaintiffs, upon DC Comics, a General Partnership, Attn: Paul Levitz, President and Publisher; Served on 10/27/04, Answer due 11/18/04. The Summons and Complaint were served by personal service, by (statute not cited), upon Ms. Sandra Krizman, Authorized Agent. Due Dilligence declaration not attached. Original Summons not returned. (mg, ) (Entered: 11/16/2004) |
| 11/08/2004 | 14 | NOTICE OF DISCREPANCY AND ORDER by Judge Ronald S.W. Lew, ORDERING Affidavit of Service submitted by Plaintiffs, received on 11/5/04 is not to be filed but instead rejected. Denial based on: LR 11−3.8, Lacking name, address, phone number.(mg, ) (Entered: 11/16/2004) |
| 11/08/2004 | 13 | NOTICE OF ERRATA filed by Plaintiffs Laura Siegel Larson, Joanne Siegel correcting Complaint − (Discovery) 1 (mg, ) (Entered: 11/10/2004) |
| 11/08/2004 | 12 | APPLICATION AND ORDER of Non−Resident Attorney to Appear in a Specific Case by Jonathan Zavin for defendants Warner Bros Entertainment Inc; Warner Bros Television Inc; Warner Communications Inc; DC Comics and Time Warner Inc, designating David Grossman as local counsel. Fee paid. Approved by Judge Ronald S.W. Lew.(mg, ) (Entered: 11/09/2004) |
| 11/08/2004 | 11 | STIPULATION AND ORDER by Judge Ronald S.W. Lew. Plaintiffs shall correct the name of defendantWarner Bros. Television Inc to Warner Bros. Television Production Inc by filing a Notice of Errata. The time for each defendant to respond to complaint is extended: DC Comics; Time Warner Inc; Warner Bros Entertainment Inc; Warner Bros Television Inc; and Warner Communications Inc: answer due 11/22/2004.(mg, ) (Entered: 11/09/2004) |
| 11/03/2004 | 10 | APPLICATION AND ORDER of Non−Resident Attorney to Appear in a Specific Case by James D Weinberger for Warner Bros Entertainment Inc; Warner Bros Television Inc; Warner Communications Inc; DC Comics and Time Warner Inc, designating David Grossman as local counsel. Fee paid. Approved by Judge Ronald S.W. Lew.(mg, ) (Entered: 11/03/2004) |
| 11/03/2004 | 9 | APPLICATION AND ORDER of Non−Resident Attorney to Appear in a Specific Case by Roger L Zissu for Warner Bros Entertainment Inc; Warner Bros Television Inc; Warner Communications Inc; DC Comics and Time Warner Inc, designating David Grossman as local counsel. Fee paid. Approved by Judge Ronald S.W. Lew.(mg, ) (Entered: 11/03/2004) |
| 11/03/2004 | 8 | APPLICATION AND ORDER of Non−Resident Attorney to Appear in a Specific Case by Patrick T Perkins for defendants Warner Bros Entertainment Inc; Warner Bros Television Inc; Warner Communications Inc; DC Comics and Time Warner Inc, designating David Grossman as local counsel. Fee paid. Approved by Judge Ronald S.W. Lew.(mg, ) (Entered: 11/03/2004) |
| 11/02/2004 | 16 | NOTICE of Related Case(s) filed by Defendants Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc. Related Case(s): CV 04−8400 DDP (rn, ) (Entered: 11/16/2004) |
| 10/28/2004 | 7 | PROOF OF SERVICE Executed by plaintiff Laura Siegel Larson, Joanne Siegel, upon Warner Bros Television Production Inc., a corporation. The Summons and Complaint were served by (Method missing), by FRCP statute, upon (name/title of person accepting service missing). Due Dilligence declaration not attached. Original Summons not returned. (bg, ) (Entered: 10/29/2004) |
| 10/28/2004 | 6 | PROOF OF SERVICE Executed by plaintiffs Laura Siegel Larson, Joanne Siegel, upon Time Warner Inc, a corporation. Date of service is not specified. The Summons and Complaint were served by FRCP statute, upon (name and title of person who received service is not specified). Due Dilligence declaration not attached. Original Summons not returned. (mg, ) (Entered: 10/29/2004) |

| 10/28/2004 | 5 | PROOF OF SERVICE Executed by plaintiffs Laura Siegel Larson, Joanne Siegel, upon Warner Bros Entertainment Inc, a corporation; Date of service not provided. The Summons and Complaint were served by FRCP statute, upon (name and title of person who received service is not specified). Due Dilligence declaration not attached. Original Summons not returned. (mg, ) (Entered: 10/29/2004) |
| --- | --- | --- |
| 10/28/2004 | 4 | PROOF OF SERVICE Executed by plaintiff Laura Siegel Larson, Joanne Siegel, upon Warner Communications Inc, a corporation. The Summons and Complaint were served on: (date not specified), by FRCP statute. Name and title of person who received service is not specified. Due diligence declaration not attached. Summons not returned. (mg, ) (Entered: 10/29/2004) |
| 10/22/2004 | | REPORT ON THE FILING OF AN ACTION REGARDING COPYRIGHT (cc: form mailed to Washington, D.C.) (Opening) (jag, ) (Entered: 10/28/2004) |
| 10/22/2004 | 3 | NOTICE TO PARTIES OF ADR PILOT PROGRAM filed.(jag, ) (Entered: 10/28/2004) |
| 10/22/2004 | 2 | CERTIFICATION and NOTICE of Interested Parties filed by Plaintiffs Laura Siegel Larson, Joanne Siegel. (jag, ) (Entered: 10/28/2004) |
| 10/22/2004 | 1 | COMPLAINT against defendants DC Comics, Time Warner Inc, Warner Bros Entertainment Inc, Warner Bros Television Inc, Warner Communications Inc. (Filing fee $150.) Jury Demand. filed by plaintiffs Laura Siegel Larson, Joanne Siegel.(jag, ) (av). (Entered: 10/28/2004) |

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing with the Clerk of the Court for the

United States Court of Appeals for the Ninth Circuit by using the appellate

CM/ECF system on February 21, 2014, and that all participants in the case are

registered CM/ECF users.

Dated:  February 21, 2014                    /s/ Marc Toberoff
                                             Marc Toberoff